UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


JULIO HERRERA-LOA,                          )
                                            )
        and                                 )
                                            )
RAMIRO GRACIA-CANTU,                        )
                                            )
        In their own right and name )
        and as representatives of   )
        others similarly situated,  )
                                            )
        Plaintiffs,                         )
                                            )
v.                                          )     C.A. No. B - 94 - 215 i
                                            )
E.M. TROMINSKI,                             )
                                            )
        District Director,                  )
        Immigration and                     )
        Naturalization Service,             )
                                            )
HON. JANET RENO,                            )
                                            )
        United States                       )
        Attorney General                    )
                                            )
        and                                 )
                                            )
IMMIGRATION AND NATURALIZATION              )
        SERVICE,                            )
                                            )
        Defendants.                         )
_____)

── filed state ···
Southern District of Texas
FILED

JUL 15 1994

Michael A. ··· ···


PETITION FOR WRIT OF HABEAS CORPUS AND
CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF

Come Julio Herrera-Loa and Ramiro Gracia-Cantu, in their own name
and in the name of all others similarly situated, and file the
instant Petition for a Writ of Habeas Corpus, and Class Action
Complaint, seeking declaratory and injunctive relief, and in
support of same, respectfully shows as follows:

1402

CHJPDF - www.fxxisc.com

## I.  JURISDICTION

1.   Jurisdiction over the instant action is laid under 28 USC
1346(a)(2) (action against and agency and/or officers of the United
States); 8 USC 1329 (action arising under the Immigration and
nationality Act); 28 USC 2201 et seq (declaratory judgment action);
and 5 USC 701 et seq, (action by one adversely affected by final
agency action), coupled with 28 USC 1331 (federal question).

## II.  THE PARTIES

2.   Petitioners Julio Herrera-Loa and Ramiro Gracia-Cantu are
lawful permanent residents of the United States, who are presently
residing in Brownsville, and Edinburg, Texas, respectively, within
the jurisdiction of this Court.

3.  Respondent Immigration and Nationality Service is an executive
agency of the United States, with offices in Harlingen, Texas,
within the jurisdiction of this Court.

4.   Respondent E.M. Trominski is the District Director of the
Harlingen,  Texas,  District  of  Respondent  Immigration  and
Nationality Service, with offices in Harlingen, Texas, within the
jurisdiction of this Court.

5.   Respondent Hon. Janet Reno is the duly appointed Attorney
General of the United States.

## III.  THE FACTS

6.  Ramiro Gracia-Cantu, (hereinafter, "Mr. Gracia"), is a native
and citizen of Mexico, who has resided in the United States as a
lawful permanent resident since June 25, 1984.  His wife and
daughter are citizens of the United States.

2

CISPDF - www.texita.com

7.  On or about December 11, 1992, Mr. Gracia was convicted in
State Court in Illinois of an offense relating to the distribution
of a controlled substance, to wit, marijuana, for which offense he
was fined and sentenced to four years' probation.  He has been
complying fully with the terms of his probation.

8.  Said conviction renders Mr. Gracia deportable from the United
States.  However, he is eligible for relief from deportation under
8 U.S.C. Section 1182(c).

9.  In approximately June, 1994, Defendants contacted Mr. Gracia,
and asked him to present himself to the Investigations branch of
the INS office in Harlingen, Texas.  Mr. Gracia obtained counsel,
who was informed by the INS agent in charge of the case that he was
to be served with an Order to Show Cause, (an "OSC"), initiating
deportation proceedings, and a warrant of arrest.  It was agreed
that Mr. Gracia would surrender on June 22, 1994, for service of
the OSC, and to post bond.

10.  On June 22, 1994, Mr. Gracia appeared at the INS office in
Harlingen, Texas, with counsel.  The OSC was served, and bond was
posted.  During the processing, however, the INS agent asked
whether Mr. Gracia had his resident alien card with him. [1]
Counsel inquired whether it was the agent's intention to confiscate
his green card, and was told that it was.  The agent informed her
that it was the practice of the Investigations branch of the
Harlingen INS Office to confiscate green cards in such cases, for
fear that, if the individual were ultimately deported, he or she
might not surrender it, but might continue to use it illegally.

11.  Counsel inquired of the Assistant District Director for

_____

[1]  Hereinafter, resident alien cards, issued on forms I-551
and I-151, will be referred to as "green cards."

3

1404

Investigations, and of the INS District Counsel, whether this was in fact the practice. Both confirmed that it was.

12. Under protest, Mr. Gracia surrendered his green card, and was given an I-94, valid only until December 21, 1994, with his photo, and a very small, almost illegible stamp, stating that it is a "Temporary Form I-551," and indicating that he was admitted for permanent residence at "HLG/IR6/06-2584." However, the I-94 contains no "employment authorization" stamp. Rather, in large, fully legible letters, it bears the following notation, Plaintiffs' Exhibit A, herein incorporated by reference:

> "DEPORTATION PROCEEDINGS INITIATED
> 241(a)(2)(B)(i) & 241(a)(2)(A)(iii)."

13. Said document places a cloud over Mr. Gracia's status as a lawful permanent resident, interfering with the exercise of the rights which attend that status.

14. Julio Herrera-Loa is a native and citizen of Mexico, who has been a lawful permanent resident of the United States since on or about May 12, 1989. His wife, and three daughters, are citizens of the United States. The Herreras are domiciled in Florida, but, as a result of the events leading to the instant action, the family is temporarily residing in Brownsville, Texas.

15. On or about March 5, 1991, Mr. Herrera was granted deferred adjudication in Tampa, Florida, for a weapons offense, and was placed on probation for two years. On or about January 9, 1992, he was convicted in Tampa, Florida, of the offense of criminal mischief, a misdemeanor, for which he was also granted probation.

16. In both cases, Mr. Herrera successfully completed his probationary terms, and has been discharged.

4

1405

CUtePDF - www.testsa.com

17.  INS claims that, as a result of these incidents, Mr. Herrera is deportable from the United States, for conviction of a weapons offense, and of a crime involving moral turpitude for which he was sentenced to a term of imprisonment of one year or more.  Mr. Herrera disputes this claim as a matter of law.  However, as the spouse of a United States citizen, even if he is ultimately found to be deportable, he is eligible for relief from deportation under 8 USC Section 1255, adjustment of status.

18.  On July 7, 1994, while in the Rio Grande Valley on a combined business and pleasure trip, Mr. Herrera was arrested by agents of the Defendants, placed in deportation proceedings, and held on bond of $30,000, which bond was posted by his Father.  At the time of his arrest, agents of the Defendants confiscated his green card.

19.  When he posted bond, and again the following day, Mr. Herrera requested that Defendants return his green card.  Defendants refused.   Instead, Defendants provided him with an "I-94," indicating that he is a lawful permanent resident, with employment authorization, but noting that he is under deportation proceedings, for conviction of a weapons offense, and of a crime involving moral turpitude, and that he is out on bond, (Plaintiffs' Exhibit "B," herein incorporated by reference).

20.  A lawful permanent resident who has made a "brief, casual, and innocent" departure from the United States and seeks readmission as a returning resident, who presents an I-94 such as those provided to Mr. Gracia and Mr. Herrera, (Exhibits "A" and "B"), is far more likely to be detained, and placed in exclusion proceedings, than would be the case if he presented his green card.

21.  INS has previously asserted to this Court that when a lawful permanent resident who has posted bond in connection with deportation proceedings, departs from the United States, the bond is subject to either forfeiture or cancellation, in the discretion

5

1406

of the Defendants, and has never retracted said assertion. [2]

22. Mr. Herrera has legitimate business and personal needs which require him to make "casual, brief, and innocent" trips across the border into Mexico, and back, but has been prevented from making such trips by the action of Defendants in confiscating his green card, and providing him with substitute documentation which greatly increases the possibility that he would be placed in exclusion proceedings on return, and that the bond he has posted would be cancelled, and possibly even forfeited.   He is also permanently domiciled in Florida, and it constitutes an undue hardship to force him to return to the Rio Grande Valley in six months for the purpose of renewing his I-94.

23. A lawful permanent resident seeking employment who presents to a potential employer an I-94 such as those provided to Mr. Gracia and Mr. Herrera is far more likely to be denied employment than would be the case if he presented his green card.

---

[2]   In this regard, Plaintiffs would request that this Court take judicial notice of Respondent's Answer to Petition for Writ of Habeas Corpus and Request for Dismissal of Action, filed May 30, 1986, in the case of Lozano-Molina v. Sewell, C.A. B-86-101, at paragraph 13, where Defendants assert that a departure to Mexico by a lawful permanent resident who is at liberty on bond while under deportation proceedings constitutes a violation of the terms of the bond "because a demand upon the obligor to present the [alien] would have been impossible."

In Molina v. Sewell, 983 F.2d 676 (5th Cir. 1993), the Court reaffirmed the principle that a lawful permanent resident in deportation proceedings does not lose his status as a lawful permanent resident, or the rights and privileges attendant upon that status.  It is also requested that this Court take judicial notice of the fact that, notwithstanding this decision, however, Defendants continue to prosecute exclusion proceedings against Mr. Lozano-Molina, on the theory that his departure to Mexico, while under deportation proceedings, is a factor "to be given some weight in determining whether [his] departure was a meaningful one," In re Lozano-Molina, A36 599 698, "Service Response to Applicant's Motion To Terminate," filed on or about May 5, 1994, at page 2, (Plaintiffs' Exhibit C, herein incorporated by reference).

1407

## IV.   CLASS ALLEGATIONS

24.   The confiscation of the green cards of lawful permanent residents placed in deportation proceedings, and the attendant restrictions on their rights and privileges, has been a source of controversy with the Harlingen Office of INS for at least 12 years. Some sectors of the local INS office, including the Harlingen Deportations branch, and the McAllen Sector of the Border Patrol, have recognized that confiscating a resident's green card is inconsistent with his status as a lawful permanent resident alien, [3] and have stopped the practice, even, in some cases, returning green cards which had been previously confiscated. [4]

21.   Other sectors, notably the Investigations Branch of the Harlingen Office, continue the practice.   Respondent Reno has delegated the decision of whether to confiscate the resident's green card in such cases to the INS District Director, who has, in turn, delegated it to the sector chiefs, or the individual agents.

22.   The Investigations branch of the Harlingen INS Office is responsible for issuing Orders to Show Cause in many, but not all, cases identified as "criminal aliens," namely, aliens who are allegedly deportable on the basis of criminal convictions.

23.   On information and belief, Plaintiffs allege that it is the practice of the Investigations Branch of the Harlingen INS office to confiscate the green card of most lawful permanent resident aliens on whom they serve Orders to Show Cause, regardless of whether they are held in detention, and to refuse to return the

---

[3]   C.f., Molina v. Sewell, supra, at 680 (5th Cir. 1993) (That alien is subject to deportation proceedings does not affect his status as permanent resident alien).

[4]   These includes cards confiscated from lawful permanent residents with more serious criminal records than either Mr. Gracia or Mr. Herrera.

7

1408

cards of residents who post bond and are released from custody.

24. On information and belief, Plaintiffs further allege that the practice is inconsistently implemented, at the discretion of the official responsible for a given case, and that the green cards are not confiscated from some individuals with much more serious criminal records than that of, for example, Mr. Herrera.

25. On information and belief, Plaintiffs further allege that in cases where the green cards are confiscated, and the resident is held in detention, no I-94 or other evidence of his status as a lawful permanent resident is provided upon his release on bond, unless the individual specifically requests same.

26. In cases where Defendants do issue I-94's as replacement documentation, they carry notations which restrict the person's ability to exercise the rights and privileges of lawful permanent resident status, (including the ability to seek and maintain employment, and to travel), such as, <u>inter alia</u>, the notation that the person is in deportation proceedings, is on bond, or that the card is not valid for re-entry to the United States.

27. Following the incident with Mr. Gracia, counsel brought the problem to the attention of Defendants, including the facts that: (a) the practice of confiscating green cards is inconsistently applied, even within the Investigation Branch of Harlingen INS; (b) there exist serious defects in the substitute documentation, which unduly restrict the ability of Plaintiffs to exercise the rights and privileges of lawful permanent resident status, and gave Defendants a reasonable period of time in which to take corrective action prior to the instigation of the instant proceedings.

27. Plaintiffs seek to represent the class of all those lawful permanent residents who are under deportation proceedings, in whose cases no final order of deportation has been entered, who are not

8

1409

presently held in detention, whose lawful permanent resident cards have been confiscated by Defendants, and are being retained by or under the authority of the Harlingen District Office of the Immigration and Naturalization Service.

28. Mr. Gracia's and Mr. Herrera's claims are typical of the claims of the putative class members, and they will fairly and adequately protect the interests of the class.

29. The class is so numerous that joinder of all members is impracticable, and there are questions of law and fact which are common to the class.

30. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for the Defendants.

31. Defendants have also acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the whole class.

32. Attorney Lisa Brodyaga has been certified as an immigration specialist by the Texas Board of Legal Specialization for over ten years, and is experienced in federal court litigation in cases involving immigration matters. Co-counsel, Thelma O. Garcia, is also an experienced litigator. The two have frequently collaborated in federal litigation involving INS. They are able, and have the necessary resources, to adequately represent the interests of the instant class.

### V. FIRST CAUSE OF ACTION - HABEAS CORPUS

33. Plaintiffs herein incorporate by reference the allegations of Paragraphs 1 - 32, inclusive.

9

1410

CUtePDF - www.fasina.com

34.   The confiscation of the I-151 or I-551 card of a lawful permanent resident who is under deportation proceedings, but who is not held in detention, prior to the issuance of a final order of deportation, violates that person's rights as a lawful permanent resident alien, in that it interferes with the exercise of the rights and privileges attendant upon that status, and constitutes an undue restriction on that person's liberty.

35.   Particularly where the replacement document is valid only for a limited period of time, and carries a notation that the person is under deportation proceedings, and/or is out on bond, and, in some cases, is not stamped "employment authorized," or states that it is not valid for re-entry, it places a cloud over the person's status as a lawful permanent resident, interfering with the exercise of his or her rights as a lawful permanent resident, including the ability to obtain and maintain employment, and to travel freely.

36.   Documents such as "Exhibit A" and "Exhibit B" greatly increase the likelihood that a potential employer will decide against offering employment, for fear of being subjected to sanctions, or from a concern that the individual will not be allowed to continue in the employment past the date of validity of the I-94.

37.   Documents such as "Exhibit A" and "Exhibit B" also greatly increase the likelihood that a class member who makes a casual, innocent, and brief departure from the United States will be detained and placed in exclusion proceedings upon return, and that any bond posted in connection with the deportation proceedings will be cancelled, or possibly even forfeited.

38.   Plaintiffs therefore are being deprived of their liberty, without Due Process of Law, in that they are subject to restrictions on their liberty not shared by the population at large, and they are entitled to a Writ of Habeas Corpus, freeing them from this unlawful restraint.

## VI.   SECOND CAUSE OF ACTION - INJUNCTIVE RELIEF

39.  Plaintiffs hereby incorporate by reference the allegations of Paragraphs 1 through 38 above.

40.  The confiscation of Plaintiffs' lawful permanent resident cards, and provision of substitute documents which place a cloud over their status as lawful permanent residents, deprives them of both liberty and property interests, without Due Process of Law, and Plaintiffs are entitled to injunctive relief, enjoining and restraining Defendants from such conduct.

## VII.   THIRD CAUSE OF ACTION - DECLARATORY JUDGMENT

41.  Plaintiffs hereby incorporate by reference the allegations of Paragraphs 1 through 40 above.

42.  The confiscation of Plaintiffs' lawful permanent resident cards, and provision of substitute documents which places a cloud over their status as lawful permanent residents, deprives them of liberty and property interests, without Due Process of Law, and Plaintiffs are entitled to declaratory relief, declaring that such conduct is a violation of the rights and privileges attendant upon their status as lawful permanent residents of the United States.

## VIII.   FOURTH CAUSE OF ACTION - DECLARATORY JUDGMENT

43.  Plaintiffs herein incorporate by reference the allegations of Paragraphs 1 through 42 above.

44.  Under Molina v. Sewell, supra, the facts that a lawful permanent resident is under deportation proceedings, and/or has posted bond in conjunction with such proceedings, are not relevant factors to be taken into consideration in determining whether or not a departure from the United States is a "meaningful" one, as

11

CISIPDF - www.texisi.com

that term is used in <u>Rosenberg v. Fleuti</u>, 374 U.S. 449 (1963).

45.  The consideration of such facts in determining whether or not to re-admit a class member who is applying for admission as a returning resident of the United States violates that person's rights as a lawful permanent resident.

46.  Plaintiffs are therefore entitled to a declaratory judgment, declaring that it is a violation of their rights as lawful permanent residents of the United States for Defendants to take into consideration the facts that they are under deportation proceedings, and/or are under bond, in determining whether to readmit them as lawful permanent residents or to hold them in exclusion proceedings when they apply for readmission as returning residents of the United States.

### IX.  FIFTH CAUSE OF ACTION - INJUNCTIVE RELIEF

47.  Plaintiffs hereby incorporate by reference the allegations of Paragraphs 1 through 46 above.

48.  Plaintiffs are entitled to a preliminary and permanent injunction, restraining and enjoining Defendants from considering the fact that a lawful permanent resident is under deportation proceedings, or has posted bond in conjunction therewith, in determining whether he should be admitted to the United States as a returning resident, or held in exclusion proceedings.

### X.  SIXTH CAUSE OF ACTION - DECLARATORY JUDGMENT

49.  Plaintiffs hereby incorporate by reference the allegations of Paragraphs 1 through 48 above.

50.  The cancellation or forfeiture of the bond of a class member, for the sole reason that he has made a departure from the United

CutePDF - www.faxiia.com

States, deprives that person of liberty without Due Process of Law.

51.   Plaintiffs are therefore entitled to a declaratory judgment, declaring that the cancellation or forfeiture of the bond of a class member, for the sole reason that he has made a departure from the United States, deprives him of liberty and property interests, without Due Process of Law.

XI.   SEVENTH CAUSE OF ACTION – INJUNCTIVE RELIEF

52.   Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 51 above.

53.   Plaintiffs are therefore entitled to preliminary and permanent injunctive relief, restraining and enjoining agents of the Defendants from forfeiting or cancelling the bond of a lawful permanent resident who is under deportation proceedings, for the sole reason that he has made a departure from the United States.

PRAYER FOR RELIEF

Plaintiffs therefore seek a Writ of Habeas Corpus, ordering Defendants to free them from the unlawful restraints which they have placed on them, by returning their green cards, evidencing their status as lawful permanent residents of the United States.

Plaintiffs also request both preliminary and permanent injunctive relief, enjoining and restraining Defendants from confiscating the green cards of lawful permanent resident aliens who have been placed in deportation proceedings, against whom there is no final deportation order, and who are not held in custody, and from not returning the green cards of such lawful permanent residents from whom they have been previously confiscated.

Plaintiffs also seek a declaratory judgment, declaring that the

13

1413

confiscation of, and the refusal to return, the green cards of lawful permanent resident aliens placed in deportation proceedings, who are not held in custody, and against whom there exists no final order of deportation, is a violation of their rights.

Plaintiffs also seek a declaratory judgment, declaring that the facts that a lawful permanent resident is under deportation proceedings, and/or has posted bond in conjunction therewith, are not relevant factors to be taken into consideration in determining whether a departure from the United States is a "meaningful" one, as that term is used in Rosenberg v. Fleuti, 374 U.S. 449 (1963).

Plaintiffs also seek a preliminary and permanent injunction, restraining and enjoining agents of the Defendants from considering the fact that a lawful permanent resident is under deportation proceedings, or has posted bond in conjunction therewith, in determining whether he should be admitted to the United States as a returning resident, or held in exclusion proceedings.

Plaintiffs also seek a preliminary and permanent injunction, restraining and enjoining agents of the Defendants from canceling or forfeiting the bond of a lawful permanent resident who is under deportation proceedings, solely for the reason that the individual has made a departure from the United States.

Plaintiffs also seek a declaratory judgment, declaring that it violates Plaintiffs' rights to cancel or forfeit the bond of a lawful permanent resident under deportation proceedings, solely for the reason that he has made a departure from the United States.

And finally, Plaintiffs seek costs, reasonable attorneys' fees, and such other and further relief as this Court may deem appropriate and justified under all of the circumstances herein.

Respectfully Submitted,

14

1414



Lisa S. Brodyaga
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226

Thelma O. Garcia
301 E. Madison
Harlingen, Texas 78550
(210) 425-3701

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was personally served
on Nancy Masso, Esq., AUSA, 1036 E. Levee, Brownsville, Texas this
15th day of July, 1994, and by first class-mail, postage prepaid,
to Office of Immigration Litigation, Dept. of Justice, Box 878, Ben
Franklin Station, Washington, D.C. 20044.

15

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JULIO HERRERA-LOA, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RAMIRO GRACIA-CANTU, | ) | |
| | ) | |
| In their own right and name | ) | |
| and as representatives of | ) | |
| others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. B - 9 4 - 2 1 5 |
| v. | ) | |
| | ) | |
| E.M. TROMINSKI, | ) | |
| | ) | |
| District Director, | ) | |
| Immigration and | ) | |
| Naturalization Service, | ) | |
| | ) | |
| HON. JANET RENO, | ) | |
| | ) | |
| United States | ) | |
| Attorney General | ) | |
| | ) | |
| and | ) | |
| | ) | |
| IMMIGRATION AND NATURALIZATION | ) | |
| SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |

EXHIBIT "A" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS AND
CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF

14/6

**Número de entrada**
2 5 2 0 1 1 ...

Servicio de Inmigración
y Naturalización
I-94
Registro de llegada

1. Apellido
G R A C I A - C A N T U

2. Primer nombre
R A M I R O

6. Ciudadanía
M E X I C O

6. No. de pasaporte
A 2 6 9 4 8 1 9 9

8. País donde Ud. vive
U S A

10. Ciudad de comienzo de ruta
H I D A L G O

12. Dirección en E.U. (No. y calle)
R O U T E   5   B O X   2 0 0 9

13. Ciudad y Estado
E D I N B U R G ,   T E X A S

3. Fecha de nac. (día/mes/año)
1 3 1 1 1 5 8

5. Sexo (Male o Female)
M A L E

Aerolínea y No. de vuelo

9. Puerto de embarque
H I D A L G O

11. Fecha de comienzo de ruta (día/mes/año)
0 6 1 2 5 1 8 4

1. Occupation

2. Waiver

3. INS File
A - 26-945-199

4. Prior Number

INS FCC
HLG/INV 067

Program Number

Prospective Number

Bond

Other Comments:   HLG/ACAF  (067

DEPORTATION PROCEEDINGS INITIATED.

241(a)(2)(B)(i) & 241(a)(2)(A)(iii)

TWOV Ticket Number

1417

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JULIO HERRERA-LOA,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀and⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
RAMIRO GRACIA-CANTU,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀In their own right and name )
⠀⠀and as representatives of⠀)
⠀⠀others similarly situated,⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀C.A. No. B - 9 2 - 2 15
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
E.M. TROMINSKI,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀District Director,⠀⠀⠀⠀)
⠀⠀Immigration and⠀⠀⠀⠀⠀)
⠀⠀Naturalization Service,⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
HON. JANET RENO,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀United States⠀⠀⠀⠀⠀⠀)
⠀⠀Attorney General⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀and⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
IMMIGRATION AND NATURALIZATION )
⠀⠀SERVICE,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀Defendants.⠀⠀⠀⠀⠀⠀⠀)
_____)

EXHIBIT "B" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS AND
CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF

1418



PROCESSED FOR I-55L
TEMPORARY EVIDENCE OF
LAWFUL ADMISSION FOR
PERMANENT RESIDENCE
VALID UNTIL Jan. 11, 1995
EMPLOYMENT AUTHORIZED

1 Apellido
HERRERA, LOA

2 Primer nombre
JULIO

Fecha de nacimiento
07 07 60

4 Cuidadania
MEXICO

5 Sexo (Male or Female)
MALE

6 No. de pasaporte
A41-784-390

7 Asylum y No. de visa

8 Pais donde Ud. vive
USA

9 Puerto de embarque

10 Ciudad de emision de visa
BROWNSVILLE

11 Fecha de emision de visa
05 12 89

12 Direccion en I I (No. y calle)
5218  VERNICE ST.

13 Ciudad y Estado
WIMAUMA, FLORIDA

18 Occupation
AGRICULTURE

19 Waivers

20 INS File
A - 41-784-390

21 INS FCO
HLG/INV

22 Petition Number

23 Program Number

24 [X] Bond

25 [ ] Prospective Student

26 Itinerary/Comments

UNDER DEPORTATION PROCEEDINGS
241(a)(2)(C) & 241(a)(2)(A)(i)

OUT ON BOND

27 TWOV Ticket Number

1419

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JULIO HERRERA-LOA,                  )
                                    )
     and                            )
                                    )
RAMIRO GRACIA-CANTU,                )
                                    )
     In their own right and name )
     and as representatives of      )
     others similarly situated,     )
                                    )
     Plaintiff,                     )
                                    )
v.                                  )     C.A. No.  B - 9 4 - 2 1 5
                                    )
E.M. TROMINSKI,                     )
                                    )
     District Director,             )
     Immigration and                )
     Naturalization Service,        )
                                    )
HON. JANET RENO,                    )
                                    )
     United States                  )
     Attorney General               )
                                    )
     and                            )
                                    )
IMMIGRATION AND NATURALIZATION      )
     SERVICE,                       )
                                    )
     Defendants.                    )
_____)

EXHIBIT "C" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS AND
CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF

1420

A36 599 698

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
OFFICE OF THE IMMIGRATION JUDGE
HARLINGEN, TEXAS

IN THE MATTER OF                    )
                                    )
ISRAEL LOZANO-MOLINA               )      IN EXCLUSION PROCEEDINGS
A36 599 698                         )
                                    )
HARLINGEN DISTRICT                  )

SERVICE RESPONSE TO APPLICANT'S
MOTION TO TERMINATE

TO THE HONORABLE IMMIGRATION JUDGE JEFFREY ZLATOW:

Applicant has filed a written motion to terminate exclusion proceedings.  As directed by the court on March 21, 1994, the Service hereby files its response to such motion.  The procedural history and relevant stipulated facts which were requested by the court are attached hereto as Exhibit "A".

This case was remanded by the United States Court of Appeals for the Fifth Circuit so that applicant "can be heard on his motion to terminate exclusion proceedings."  Molina v. Sewell, 983 F.2d 676 at 681 (5th Cir. 1993).  The Court of Appeals held that the alien bears the burden in these proceedings of proving that he comes within the statutory exception to the entry definition.  Molina, 983 F.2d at 678.  The applicant must prove to this court that his trip to Mexico in 1986 was "brief, casual, and innocent."

1421

To date, applicant has presented no evidence on the issue of entry.  He must, at a minimum, testify concerning this issue at a hearing before the immigration judge.   The mere offering of an affidavit is not sufficient to sustain the applicant's burden.  Matter of Barcenas, 19 I&N Dec. 609 at 611 (BIA 1988).   The Service must be provided with a meaningful opportunity to cross-examine the applicant on the question of his intent and actions in going to Mexico in 1986.   The Service is not required to present any evidence on entry until the applicant has presented some evidence on this issue.   The "entry" issue was never addressed at the 1986 exclusion hearing, and the U.S. Court of Appeals for the Fifth Circuit, did not in its published decision make any determination as to whether the applicant in this case had made an entry.

The applicant makes two arguments in support of his contention that he should not be in exclusion proceedings.   The first argument is that on February 14, 1986, he was returning from an innocent, brief, and casual excursion into Mexico. However, no evidence has yet been presented, either through testimony of applicant or his mother, or through documentary evidence, to support this assertion.

It is clear that the applicant left the United States during the pendency of deportation proceedings.   This factor, although not sufficient by itself, is nevertheless a factor to be considered in this case and to be given some weight in determining whether applicant's departure was a meaningful one.

2

1422

CutePDF - www.tavtra.com

It is equally clear that on January 10, 1992, applicant's
probation was revoked in the 1985 offense, in part because he was
convicted of a subsequent drug-related offense, and in part
because he had violated his probation by leaving the judicial
district without permission (i.e., by going to Mexico). (See
Conviction Document, attached hereto as Exhibit "B"). He was
sentenced to thirty-three (33) months imprisonment and a two (2)
year special parole term. This sentence was to run concurrently
with his sentence in his conviction of January 10, 1992, in the
United States District Court for the Southern District of Texas,
for the offense of "Use of a Communication facility, that is, the
U.S. Postal Service, to facilitate the commission of a felony,
that is, conspiracy to possess, with intent to distribute, less
than 50 kilograms, that is, 45 pounds of marijuana." The fact
that applicant's departure actually caused his probation to be
revoked in his criminal case is another highly significant factor
to be considered in this case. The Service will be presenting
its evidence on entry at the hearing, after applicant presents
his case.

The second argument applicant makes, is that he effected an
entry on May 22, 1986, when a United States Magistrate allegedly
told him he was free to go home. It is interesting that
applicant's affidavit of May 27, 1986, mentions nothing about
being released on May 22, 1986 from custody. In fact, nothing in
the Service file reflects this, and no evidence has been
submitted to date to support this allegation. However, the

3

1423

claimed incident is not even relevant, because the events of the time period between February 16, 1986, when applicant was detained at the Hidalgo Port of Entry, and June 10, 1986, when applicant was physically taken to the border and "excluded and deported" from the United States have in essence been erased by the action taken by the United States Court of Appeals for the Fifth Circuit in remanding this case. The only facts to be examined by this court are those concerning the applicant's trip to Mexico immediately prior to February 16, 1986.

However, even if it were appropriate for the court to consider this argument, the argument would fail. In Matter of Lin, 18 I&N Dec. 219 (BIA 1982), the Board held that an alien who absconds from an INS detention facility while awaiting exclusion proceedings does not make an entry. In Matter of Ching and Chen, 19 I&N Dec. 203 at 206 (BIA 1984), the Board noted that the critical factor in Lin, supra, was that the alien had already been placed in exclusion proceedings. In the case at hand, the applicant had not only been placed in exclusion proceedings, but had already been ordered excluded by an immigration judge, at the time he was allegedly told to go home by a United States Magistrate. Thus, the applicant would not have made an entry in this case, even if the alleged incident did occur.

In support of this latter proposition, the applicant cites two cases. However, neither applies to the situation presented here. In Matter of Sanchez, 17 I&N Dec. 218 (BIA 1980), no I-122 had ever been issued to the respondent, who argued that he should

4

1424

have been placed in exclusion proceedings.  In our case, the I-122 was issued on February 16, 1986.  In <u>Matter of Areguillin</u>, 17 I&N Dec. 308 (BIA 1980), the Board discussed what happens when an immigration inspector waves an applicant through at a port of entry.  That discussion by the Board does not relate in any way to the situation applicant alleges occurred with the United States Magistrate.

The Service requests that the court deny applicant's motion to terminate exclusion proceedings in this case.

Respectfully submitted,

Kenneth M. Muir
General Attorney
Immigration & Naturalization Service
P. O. Box 1711
Harlingen, Texas  78551

5

1425

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon counsel or applicant by depositing it in the U.S. mail, postage prepaid, addressed to:

Lisa S. Brodyaga, Esq.
402 E. Harrison, 2nd Floor
Harlingen, Texas  78550

on this _____5th_____ day of May, 1994.

_____
Legal Clerk
Immigration & Naturalization Service

6

1426

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BEFORE THE IMMIGRATION JUDGE

In re:

ISRAEL LOZANO-MOLINA
A36 599 698

PROCEDURAL HISTORY, AND RELEVANT STIPULATED FACTS

Come now Israel Lozano-Molina, and the Immigration and
Naturalization Service, by and through their respective undersigned
counsel, and file the instant summary of the Procedural History,
and Relevant Stipulated Facts in the case at bar.

Respondent Israel Lozano-Molina, (hereinafter, "Mr. Lozano"),
entered the United States as a lawful permanent resident on July
22, 1980.  On March 14, 1985, Mr. Lozano pled guilty to the offense
of possessing with intent to distribute approximately 30 pounds of
marijuana, for which offense he was sentenced to four years
imprisonment, of which he was required to serve 179 days, with the
balance suspended for a period of four years of probation.

As a result, an Order to Show Cause why Mr. Lozano should not be
deported under (then) Section 241(a)(11) of the Act, with
accompanying Warrant of Arrest, was issued on or about August 16,
1985.  On or about August 20, 1985, Mr. Lozano posted bond, and was
released from INS custody, to await his hearing.

On or about August 28, 1985, Mr. Lozano's deportation case came to
be heard by Immigration Judge Michael Horn, at the Port Isabel
Service Processing Center, Los Fresnos, Texas.  Insofar as Mr.
Lozano had not been notified of this hearing, and was not present,
the case was rescheduled for April 22, 1986, for the purpose of
providing notice to Mr. Lozano.

On or about February 14, 1986, Mr. Lozano applied for admission to

1427

the United States at Progreso, Texas, as a returning resident. At that time, he presented his resident alien card. However, he was taken into custody, and placed in exclusion proceedings.

On March 17, 1986, Mr. Lozano appeared _pro se_ at an exclusion hearing conducted at PISPC, and was ordered excluded and deported by Immigration Judge Daniel Kahn. A timely appeal was filed. On May 27, 1986, while his appeal was still pending, Mr. Lozano filed with the BIA a pleading entitled "Motion To Terminate Exclusion Proceedings." On June 6, 1986, the BIA dismissed Mr. Lozano's appeal, and ordered that he be excluded and deported from the United States.

On June 10, 1986, Mr. Lozano filed a Petition for Writ of Habeas Corpus in federal district court, (No. CA B-86-124), seeking, _inter alia_, judicial review of the order of exclusion. Those proceedings were ultimately concluded by the Fifth Circuit Court of Appeals, in its decision of February 22, 1993, _Lozano-Molina v. Sewell_, 983 F.2d 676 (5th Cir. 1993), vacating the exclusion order, and remanding the matter, so that Mr. "Lozano could be heard on his motion to terminate exclusion proceedings," (_Id_. at 681).

Respectfully Submitted,

For Mr. Lozano:
Lisa S. Brodyaga, Esq.
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226

For INS:
Ken Muir, General Attorney
2102 Teege
Harlingen, Texas 78550
(210) 427-8695

2

1428

AO 245 (Rev. 8/87) Judgment in a Criminal ▬

95

AJ/tg (rr)

# United States District Court

SOUTHERN _____ DISTRICT OF _____ TEXAS

CORPUS CHRISTI DIVISION
COURT SITTING IN McALLEN, TEXAS

UNITED STATES OF AMERICA

V.

## JUDGMENT IN A CRIMINAL CASE

ISRAEL M. LOZANO

Case Number:   C-84-170-01

(Name and Address of Defendant)

Thelma O. Garcia
Attorney for Defendant

## THE DEFENDANT ENTERED A PLEA OF:

[☑ TRUE   ☐ nolo contendere] on January 10, 1992 to violation of Condition #1 and Condition #4 which ordered that the probationer, Israel M. Lozano, refrain from violation of any law (federal, state, or local), and shall not leave the judicial district without permission of the probation officer, respectively, imposed on March 14, 1985, when the probationer was:

CONVICTED OF THE OFFENSE(S) OF:  Possession, with intent to distribute, approximately 16 kilograms of marihuana, in violation of 21 USC 841(a)(1), as charged in the single-count Indictment, for which the probationer was sentenced to four (4) years imprisonment and a two (2) year Special Parole Term; 179 days to serve and the balance of the imprisonment sentence suspended for four (4) years probation with supervision with the special conditions of  (1) 120 days confinement in a halfway house to commence upon release from confinement, and (2) participation in an alcohol abuse treatment program.

THE COURT FOUND THAT:  The probationer violated Condition #1 of supervision in that he was arrested and charged with use of a communication facility in order to facilitate the commission of a felony in Criminal Docket Number M-91-218-01 and was subsequently convicted. In addition, the probationer violated Condition #4 of supervision in that he was arrested on February 14, 1986 by I.N.S. upon returning to the United States from Mexico.

**IT IS THE JUDGMENT OF THIS COURT THAT:** probation be revoked, and the probationer is sentenced to thirty-three (33) months imprisonment and a two (2) year Special Parole Term.

The Court further orders that the sentence imposed in Criminal Docket Number C-84-170-01 run concurrently with the sentence imposed in Criminal Docket Number M-91-218-01.

TRUE COPY I CERTIFY
ATTEST
MICHAEL N. MILBY, Clerk

By _____
Deputy Clerk

In addition to any conditions of probation imposed above, IT IS ORDERED that the conditions of proba-

1429

AO 245 (Reverse)

## CONDITIONS OF PROBATION

Where probation has been ordered the defendant shall

(1)  refrain from violation of any law (federal, state, and local) and get in touch immediately with your probation officer if arrested or questioned by a law-enforcement officer;

(2)  associate only with law abiding persons and maintain reasonable hours;

(3)  work regularly at a lawful occupation and support your legal dependents, if any, to the best of your ability (When out of work notify your probation officer at once, and consult him prior to job changes);

(4)  not leave the judicial district without permission of the probation officer;

(5)  notify your probation officer immediately of any changes in your place of residence;

(6)  follow the probation officer's instructions and report as directed

The court may change the conditions of probation, reduce or extend the period of probation, and at any time during the probation period or within the maximum probation period of 5 years permitted by law, may issue a warrant and revoke probation for a violation occurring during the probation period

IT IS FURTHER ORDERED that the defendant shall pay a total special assessment of $_____
pursuant to Title 18, U.S.C. Section 3013 for count(s)_____ as follows:

IT IS FURTHER ORDERED THAT counts_____are DISMISSED on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall pay to the United States attorney for this district any amount imposed as a fine, restitution or special assessment. The defendant shall pay to the clerk of the court any amount imposed as a cost of prosecution. Until all fines, restitution, special assessments and costs are fully paid, the defendant shall immediately notify the United States attorney for this district of any change in name and address.

IT IS FURTHER ORDERED that the clerk of the court deliver a certified copy of this judgment to the United States marshal of this district.

☐  The Court orders commitment to the custody of the Attorney General and recommends:

January 10, 1992
Date of Imposition of Sentence

Signature of Judicial Officer
Honorable Ricardo H. Hinojosa
U.S. District Judge
Name and Title of Judicial Officer

1/29/92
Date

United States District Court
Southern District of Texas
FILED

JAN 2 9 1992

Jesse E. Clark, Clerk

## RETURN

I have executed this Judgment as follows:

_____
_____
_____

Defendant delivered on _____ to _____ at
                                    Date

_____, the institution designated by the Attorney
General, with a certified copy of this Judgment in a Criminal Case.

_____
United States Marshal

By_____

1430