UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| JULIO HERRERA-LOA, | ) |
| and | ) |
| RAMIRO GRACIA-CANTU, | ) |
| In their own right and name and as representatives of others similarly situated, | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. B-94-215 |
| E.M. TROMINSKI, | ) |
| District Director, Immigration and Naturalization Service, | ) |
| HON. JANET RENO, | ) |
| United States Attorney General | ) |
| and | ) |
| IMMIGRATION AND NATURALIZATION SERVICE, | ) |
| Defendants. | ) |

JUL 15 1994

MOTION FOR PRELIMINARY INJUNCTION
WITH INCORPORATED POINTS AND AUTHORITIES

1392

Come now the Plaintiffs, by and through their undersigned counsel, and respectfully seek a preliminary injunction, enjoining and restraining Defendants from confiscating the resident alien cards, Forms I-151 and I-551, ("green cards"), of lawful permanent resident aliens who are placed in deportation proceedings, but not held in detention, and against whom there is no final order of deportation, and from not returning, upon request by the alien or his counsel, the green cards of such persons which have been previously confiscated.

Plaintiffs also seek a preliminary injunction, enjoining and restraining Defendants from considering the fact that a lawful permanent resident is under deportation proceedings, and/or that he has posted bond in conjunction therewith, in determining whether to admit the person as a returning resident, or place him in exclusion proceedings, following a departure from the United States.

Plaintiffs also seek a preliminary injunction, enjoining and restraining Defendants from forfeiting or canceling the bond of an alien in deportation proceedings for the sole reason that said person has made a departure from the United States.

## INTRODUCTION

The instant case seeks to enforce the decision of the Fifth Circuit in <u>Molina v. Sewell</u>, 983 F.2d 676 (5th Cir. 1993), in which the Court held that the fact that a lawful permanent resident is under deportation proceedings does not affect his status as a lawful permanent resident. Notwithstanding this Decision, Defendants continue to curtail the rights of class members, by confiscating their green cards, and providing substitute documentation which, as a practical matter, greatly interferes with the exercise of their rights as lawful permanent residents of the United States.

2

1393

## A. THE REQUIREMENTS FOR ISSUANCE OF A PRELIMINARY INJUNCTION HAVE BEEN MET

The proponent of preliminary injunctive relief must make certain showings before such a request is granted, <u>Hardin v. Houston Chronicle Publ. Co.</u>, 572 F.2d 1106 (5th Cir. 1978). These include:

1. Substantial likelihood of ultimate success on the merits;
2. A showing that the movant will suffer irreparable injury unless the injunction issues;
3. Proof that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and
4. A showing that the injunction, if issued, would not be adverse to the public interest.

### 1. THERE EXISTS A VERY SUBSTANTIAL LIKELIHOOD THAT PLAINTIFFS WILL EVENTUALLY PREVAIL ON THE MERITS.

In the case at bar, there exists a very substantial likelihood that Plaintiffs will prevail on the merits. Under <u>Molina v. Sewell</u>, 983 F.2d 676 (5th Cir. 1993), it is unlawful for Defendants to restrict the rights and privileges attendant on status as a lawful permanent resident for the sole reason that the resident is subject to deportation proceedings. As the Court held therein, <u>Id</u>. at 680:

> The fact that an alien is subject to deportation proceedings does not affect his status as a permanent resident alien. A permanent resident alien's status terminates only when the order of deportation is affirmed by the BIA or otherwise becomes administratively final.

8 USC Section 1304(d) provides that every alien who has been properly registered "shall be issued a certificate of alien registration or an alien registration receipt card in such form and manner and at such time as shall be prescribed under regulations issued by the Attorney General." Said regulations, found at 8 CFR Section 264.1 et seq, provide for two different forms to be used as

3

/394

proof of lawful permanent resident status, to wit, Form I-151, and Form I-551, (8 CFR Section 264.1(a)). As provided therein, (emphasis added), Form I-94, "Arrival-Departure Record," is utilized in the case of:

> Aliens admitted as nonimmigrant aliens paroled into the United States under section 212(d)(5) of the Immigration and Nationality Act; aliens whose claimed entry prior to July 1, 1924 cannot be verified, they having satisfactorily established residency in the United States prior to July 1, 1924; aliens lawfully admitted to the United States for permanent residence who have not been registered previously; <u>aliens</u> who are granted permission to depart without the institution of deportation proceedings or <u>against whom deportation proceedings are being instituted</u>.

The fact that the underscored provision is not intended to include lawful permanent residents against whom deportation proceedings are being initiated can readily be seen by the fact that, unless it is attached to an unexpired foreign passport,[1] and contains the notation "employment authorization," such a document would not adequately establish employment eligibility to shield a potential employer from possible sanctions.

8 CFR Sec. 274a.2 governs verification of employment eligibility. Under said section, a potential employer is authorized to accept only certain specific documents as proof of employment eligibility. Among them are the following, 8 CFR 274a.2(b)(v)(A):

> (4) An unexpired foreign passport which:
> (i) Contains an unexpired stamp therein which reads, "Processed for I-551. Temporary evidence of Lawful Admission for permanent residence. Valid until _____. Employment authorized." or

---

[1] Many lawful permanent residents no longer have valid, unexpired foreign passports to which to attach an I-94.

4

/395

>    (ii) Has attached thereto a Form I-94 bearing the same name as the passport and contains an employment authorization stamp, so long as the period of endorsement has not yet expired and the proposed employment is not in conflict with any restrictions or limitations identified on the Form I-94;

Even assuming, <u>arguendo</u>, that it is lawful for Defendants to confiscate the green cards of class members, the I-94's which are (sometimes) given as replacement documents are grossly inadequate, in that they cast a long shadow over the individual's residency, and interfere with the exercise of the rights and privileges attendant thereon. For example, persons carrying such documents are subjected to far greater scrutiny when applying for readmission to the United States as returning lawful permanent residents, and are often denied admission, and placed in exclusion proceedings, for the sole reason that they are under deportation proceedings.

Some employers, (with good enough eyesight to read the virtually illegible stamp on "Exhibit A" stating that its bearer is a lawful permanent resident), are sophisticated, or bold, enough to accept such a document, even when not attached to a valid passport, as satisfying the above requirements. However, many employers, particularly in the Rio Grande Valley, are hesitant to accept documents such as "Exhibit A" and "Exhibit B," which are easily forged, as adequate proof of employment authorization, and frequently deny employment to the bearers of such documents.

The mere fact that a lawful permanent resident is in deportation proceedings has, in the past, been viewed by the Defendants as sufficient justification to place such a person in exclusion proceedings when he applies for readmission, c.f., <u>Molina v. Sewell</u>, 983 F.2d 676 (5th Cir. 1993). Although that practice has been judicially disapproved, Immigration Inspectors, INS Trial Attorneys, and other agents of the Defendants, still maintain that different standards apply to lawful permanent residents seeking

readmission, depending on whether or not they are in deportation proceedings, and consider that the appropriate means of determining whether they are eligible for readmission, pursuant to Rosenberg v. Fleuti, 374 U.S. 449 (1963), is in exclusion proceedings.

For example, on remand, the individual involved in Molina v. Sewell, supra, is being forced to litigate, in exclusion proceedings, the fact that he was not making an "entry," within the meaning of the Fleuti doctrine, but should have been readmitted as a returning resident, when he returned from Mexico, in 1986, following a one-day trip to take his mother to her uncle's graveside in China, Nuevo Leon, Mexico, (Plaintiffs' Exhibit C).[2]

Defendants' claim that the departure from the United States of an alien who has posted bond in conjunction with deportation proceedings constitutes a violation of the terms of the bond, on the theory that the departure would render it impossible for the obligor to produce the alien for hearing on demand, is equally defective. In addition to the (false) premise that the departure is a factor to be considered in deciding whether or not a departure was a meaningful one, within the contemplation of Rosenberg v. Fleuti, supra, it is pure sophistry to claim that the obligor would not be able to present the person for hearing, simply because INS would not permit him to attend.

2. PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF PRELIMINARY RELIEF IS NOT GRANTED.

---

[2] Ironically, his green card was recently returned to him by Defendants, even though he has two convictions for crimes relating to the distribution of a controlled substance, i.e., two "aggravated felonies," as defined by 8 USC Section 1101(a)(43), while Mr. Herrera, who has no such convictions, and, given the minimal nature of his offenses, may not even be deportable as charged, has been deprived of his green card, and of the ability to travel freely back and forth across the Mexican border.

6

1396

Contested deportation (or exclusion) proceedings often last for years. For example, the alien involved in Molina v. Sewell, supra, is scheduled for a hearing, on remand, in August, 1994, to determine, inter alia, whether he was properly placed in exclusion proceedings in February of 1986, when he applied for admission as a returning resident of the United States.

Many putative class members, including Mr. Herrera, have legitimate reasons for needing to travel back and forth from Mexico, which, as a practical matter, they are unable to do with the documentation provided, for fear of being (improperly) detained, placed in exclusion proceedings, and having their bonds either cancelled, or forfeited. Some class members have even been informed by agents of the Defendants that they are not entitled to depart from, and re-enter, the United States during the pendency of their deportation proceedings. The I-94's provided to some class members reputedly bear such an inscription. Other class members have been, and will continue to be, denied employment, as a result of the conduct complained of herein.

Mr. Herrera, who is domiciled in Florida, has been unable to accomplish the purpose of his trip to the Rio Grande Valley, as a result of Defendants' conduct. He is also placed in a position where he will be required to make innumerable, and totally unnecessary, trips from Florida to Texas, in order to renew the I-94 with which he was provided, ("Exhibit B").

These losses are irremedial. Defendants cannot retroactively restore Plaintiffs' rights to travel, the business they have lost, or family contacts which they have been forced to forego, as a result of their inability to make brief, casual, and innocent trips across the border. Nor can Defendants obtain for them the employment which they have lost as a result of the confiscation of their documents, and provision of substitute documents which place a dark cloud over their status as lawful permanent residents.

7

3. **THE INJURY TO PLAINTIFFS FAR OUTWEIGHS ANY POTENTIAL LOSS TO THE DEFENDANTS IF THE PROPOSED INJUNCTION IS GRANTED.**

The only reason given by Defendants for confiscating Plaintiffs' green cards is a concern that, if they are deported, they will refuse to surrender said cards, and will use them improperly. This is pure speculation, and is not a legally cognizable injury.

Plaintiffs are indisputable still lawful permanent residents of the United States. <u>Molina v. Sewell</u>, <u>supra</u>. To deprive them of the rights and privileges attendant upon that status, on the basis of pure speculation: (1) that they will ultimately be subject to a final order of deportation from the United States;[3] (2) that they will at that time, refuse to surrender the evidence of their status as lawful permanent residents, and (3) that they will thereafter continue to use the cards illegally, is unconscionable.

4. **THE PROPOSED INJUNCTION IS CONSISTENT WITH THE PUBLIC INTEREST.**

There is no valid public interest to be served by depriving Plaintiffs of their rights as lawful permanent residents, on the basis of groundless speculation regarding future events.

Plaintiffs therefore request a preliminary injunction, enjoining and restraining Defendants from confiscating the green cards of lawful permanent resident aliens who have been placed in deportation proceedings, but who are not held in custody, and against whom there is no final deportation order, and from not returning the green cards of such lawful permanent residents from whom they have been confiscated.

---

[3] Just because a lawful permanent resident has been placed in deportation proceedings creates no presumption that said person will ultimately be ordered deported from the United States. Some class members are not even deportable as charged. Others will win relief from deportation under various ameliorative provisions.

8

Plaintiffs also seek a preliminary injunction, restraining and enjoining agents of the Defendants from considering the fact that a lawful permanent resident is under deportation proceedings, or has posted bond in conjunction therewith, in determining whether he should be admitted to the United States as a returning resident, or is to be held in exclusion proceedings.

Plaintiffs also seek a preliminary injunction, restraining and enjoining agents of the Defendants from canceling or forfeiting the bond of a class member who is under deportation proceedings, solely for the reason that the individual has made a departure from the United States, on the theory that such a departure would make it impossible for the obligor to present him or her for hearing.

Respectfully Submitted,


_/s/ Lisa S. Brodyaga_  
Lisa S. Brodyaga  
402 E. Harrison, 2nd Floor  
Harlingen, Texas 78550  
(210) 421-3226

_/s/ Thelma O. Garcia_  
Thelma O. Garcia  
301 E. Madison  
Harlingen, Texas 78550  
(210) 425-3701


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was personally served on Nancy Masso, Esq., AUSA, 1036 E. Levee, Brownsville, Texas this 15th day of July, 1994, and by first-class mail, postage prepaid, to O.I.L., US Dept. of Justice, Box 878, Ben Franklin Sta., Wash. D.C. 20044.

_/s/ LSB_


ClibPDF - www.fastio.com

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| JULIO HERRERA-LOA, | ) |
| and | ) |
| RAMIRO GRACIA-CANTU, | ) |
| In their own right and name and as representatives of others similarly situated, | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. B-94-215 |
| E.M. TROMINSKI, | ) |
| District Director, Immigration and Naturalization Service, | ) |
| HON. JANET RENO, | ) |
| United States Attorney General | ) |
| and | ) |
| IMMIGRATION AND NATURALIZATION SERVICE, | ) |
| Defendants. | ) |

ORDER GRANTING PRELIMINARY INJUNCTION

Upon consideration of Plaintiffs' motion for preliminary injunctive relief, the response of the Defendants to same, and good cause