*/*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JULIO HERRERA-LOA, | ) | |
| | ) | United States District Court |
| and | ) | Southern District of Texas |
| | ) | FILED |
| RAMIRO GRACIA-CANTU, | ) | |
| | ) | JUL 2 8 1994 |
| In their own right and name | ) | |
| and as representatives of | ) | Michael N. Milby, Clerk |
| others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. B-215 |
| | ) | |
| E.M. TROMINSKI, | ) | |
| | ) | |
| District Director, | ) | |
| Immigration and | ) | |
| Naturalization Service, | ) | |
| | ) | |
| HON. JANET RENO, | ) | |
| | ) | |
| United States | ) | |
| Attorney General | ) | |
| | ) | |
| and | ) | |
| | ) | |
| IMMIGRATION AND NATURALIZATION | ) | |
| SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFFS' FIRST AMENDED PETITION

FOR WRIT OF HABEAS CORPUS AND
CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF

Come Julio Herrera-Loa and Ramiro Gracia-Cantu, in their own name
and in the name of all others similarly situated, and file the
instant First Amended Petition for a Writ of Habeas Corpus, and
Class Action Complaint, seeking declaratory and injunctive relief,
and in support of same, respectfully shows as follows:

*1364*

## I.  JURISDICTION

1.   Jurisdiction over the instant action is laid under 28 USC 1346(a)(2) (action against and agency and/or officers of the United States); 8 USC 1329 (action arising under the Immigration and nationality Act); 28 USC 2201 et seq (declaratory judgment action); and 5 USC 702 et seq, (action by one adversely affected by final agency action), coupled with 28 USC 1331 (federal question).

## II.  THE PARTIES

2.   Petitioners Julio Herrera-Loa and Ramiro Gracia-Cantu are lawful permanent residents of the United States, who are presently residing in Brownsville, and Edinburg, Texas, respectively, within the jurisdiction of this Court.

3.  Respondent Immigration and Nationality Service is an executive agency of the United States, with offices in Harlingen, Texas, within the jurisdiction of this Court.

4.   Respondent E.M. Trominski is the District Director of the Harlingen, Texas, District of Respondent Immigration and Nationality Service, with offices in Harlingen, Texas, within the jurisdiction of this Court.

5.   Respondent Hon. Janet Reno is the duly appointed Attorney General of the United States.

## III.  THE FACTS

6.  Ramiro Gracia-Cantu, (hereinafter, "Mr. Gracia"), is a native and citizen of Mexico, who has resided in the United States as a lawful permanent resident since June 25, 1984.  His wife and daughter are citizens of the United States.

2

7.   On or about December 11, 1992, Mr. Gracia was convicted in State Court in Illinois of an offense relating to the distribution of a controlled substance, to wit, marijuana, for which offense he was fined and sentenced to four years' probation.   He has been complying fully with the terms of his probation.

8.   Said conviction renders Mr. Gracia deportable from the United States.   However, he is eligible for relief from deportation under 8 U.S.C. Section 1182(c).

9.   In approximately June, 1994, Defendants contacted Mr. Gracia, and asked him to present himself to the Investigations branch of the INS office in Harlingen, Texas.   Mr. Gracia obtained counsel, who was informed by the INS agent in charge of the case that he was to be served with an Order to Show Cause, (an "OSC"), initiating deportation proceedings, and a warrant of arrest.   It was agreed that Mr. Gracia would surrender on June 22, 1994, for service of the OSC, and to post bond.

10.   On June 22, 1994, Mr. Gracia appeared at the INS office in Harlingen, Texas, with counsel.   The OSC was served, and bond was posted.   During the processing, however, the INS agent asked whether Mr. Gracia had his resident alien card with him. [1] Counsel inquired whether it was the agent's intention to confiscate his green card, and was told that it was.   The agent informed her that it was the practice of the Investigations branch of the Harlingen INS Office to confiscate green cards in such cases, for fear that, if the individual were ultimately deported, he or she might not surrender it, but might continue to use it illegally.

11.   Counsel inquired of the Assistant District Director for Investigations, and of the INS District Counsel, whether this was

---

[1]   Hereinafter, resident alien cards, issued on forms I-551 and I-151, will be referred to as "green cards."

3

in fact the practice.  Both confirmed that it was.

12.  Under protest, Mr. Gracia surrendered his green card, and was given an I-94, valid only until December 21, 1994, with his photo, and a very small, almost illegible stamp, stating that it is a "Temporary Form I-551," and indicating that he was admitted for permanent residence at "HLG/IR6/06-2584," and that he is under bond, Plaintiffs' Exhibit A, herein incorporated by reference.  The I-94 contains no "employment authorization" stamp.   Rather, in large, fully legible letters, it bears the following notation:

> "DEPORTATION PROCEEDINGS INITIATED
> 241(a)(2)(B)(i) & 241(a)(2)(A)(iii)."

13.  Said document places a cloud over Mr. Gracia's status as a lawful permanent resident, interfering with the exercise of the rights which attend that status.

14.  Julio Herrera-Loa is a native and citizen of Mexico, who has been a lawful permanent resident of the United States since on or about May 12, 1989.  His wife, and three daughters, are citizens of the United States.  Mr. Herrera is domiciled in Florida, but, as a result of the events leading to the instant action, is temporarily residing in Brownsville, Texas.

15.  On or about March 5, 1991, Mr. Herrera was granted deferred adjudication in Tampa, Florida, for a weapons offense, and was placed on probation for two years.  On or about January 9, 1992, he was convicted in Tampa, Florida, of the offense of criminal mischief, a misdemeanor, for which he was also granted probation. In both cases, Mr. Herrera successfully completed his probationary terms, and has been discharged.

16.  On July 7, 1994, while in the Rio Grande Valley on a combined business and pleasure trip, Mr. Herrera was arrested by agents of

4

1367

the Defendants, placed in deportation proceedings, charged with
deportability for conviction of a weapons offense, and of a crime
involving moral turpitude for which he was sentenced to a term of
imprisonment of one year or more, and was detained at the Port
Isabel Service Processing Center. At the time of his arrest,
agents of the Defendants confiscated his green card.

17. When he posted bond, on July 11, 1994, and again the following
day, Mr. Herrera requested that Defendants return his green card.
Defendants refused. Instead, Defendants provided him with an "I-
94," indicating that he is a lawful permanent resident, with
employment authorization, but noting that he is under deportation
proceedings, for conviction of a weapons offense, and of a crime
involving moral turpitude, and that he is out on bond, (<u>Plaintiffs'
Exhibit "B</u>," herein incorporated by reference).

18. On July 22, 1994, INS re-served Mr. Herrera with an Order To
Show Cause which charged deportability only on the basis of the
weapons offense, an offense which constitutes a basis for
deportation, but not for exclusion from the United States. As the
spouse of a United States citizen, who has filed a new I-130 on his
behalf, even if he is ultimately found to be deportable on this
charge, Mr. Herrera is eligible for relief from deportation under
8 USC Section 1255, adjustment of status.

19. Also on July 22, 1994, Defendants gave Mr. Herrera a new I-94,
which stated that he was a lawful permanent resident under
deportation proceedings, but did not specify the section of law
under which deportation proceedings were being prosecuted,
<u>Plaintiffs' Exhibit D</u>, herein incorporated by reference, but still
refused to return his green card.

20. At the time Defendants gave Mr. Herrera his new OSC and I-94,
he inquired whether the I-94 was valid for travel to Mexico, and
was initially told that it was. However, as he was leaving, a

5

CMPDF - www.fazia.com

supervisory agent of Defendants, Jim Knight, approached Mr. Herrera and his counsel and informed them that the I-94 was not valid for that purpose, and that if he were to depart the United States while under deportation proceedings, without obtaining an advance parole, he would automatically be deported. After heated discussion with Mr. Herrera's counsel, Mr. Knight retreated from this position, and indicated that he did not know whether the I-94 would enable Mr. Herrera to cross into Mexico and back.

21. On July 23, 1994, at about 10:00 or 11:00 a.m., Mr. Herrera presented Exhibit "D" at the Brownsville, Texas Port of Entry, when applying for admission as a returning resident, following a "brief, casual, and innocent" trip to Mexico.

22. As a proximate result of the fact that he did not present his green card, but only an I-94 stating that he was under deportation proceedings, Mr. Herrera was interrogated and detained for approximately one and three-quarters hours, while he, his vehicle, and his personal effects, including his wallet, were searched in a manner which exceeded any reasonable search for contraband, and caused him both inconvenience and public humiliation.

23. A lawful permanent resident who has made a "brief, casual, and innocent" departure from the United States and seeks readmission as a returning resident, who presents an I-94 such as those provided to Mr. Gracia and Mr. Herrera, (Exhibits "A," "B" and "C"), is more likely to be detained, and placed in exclusion proceedings, than would be the case if he presented his green card.

24. When it comes to Defendants' attention that lawful permanent residents whom Defendants have reason to believe have committed an act or been convicted of an offense which would make them subject to deportation proceedings, which act or conviction also constitutes a grounds for exclusion, are applying for admission as returning residents, following "brief, casual and innocent"

6

1365

departures from the United States, it is Defendants' practice [2]
to place them in exclusion proceedings and confiscate their green
cards, and to refuse to return said cards, regardless of whether
they are held in detention, or paroled into the United States and
released on bond, unless and until all expulsion proceedings are
terminated, in the alien's favor.

25.  INS has previously asserted to this Court that when a lawful
permanent resident who has posted bond in connection with
deportation proceedings, departs from the United States, the bond
is subject to either forfeiture or cancellation, in the discretion
of the Defendants, and has never retracted said assertion. [3]

26.  Many lawful permanent residents whose green cards have been
confiscated by Defendants because they have been placed in
exclusion or deportation proceedings have legitimate business and

---

[2]  As used herein, the term "practice" means an act performed
or procedure followed in more than half of the instances described.

[3]  In this regard, Plaintiffs would request that this Court
take judicial notice of Respondent's Answer to Petition for Writ of
Habeas Corpus and Request for Dismissal of Action, filed May 30,
1986, in the case of Lozano-Molina v. Sewell, C.A. B-86-101, at
paragraph 13, where Defendants assert that a departure to Mexico by
a lawful permanent resident who is at liberty on bond while under
deportation proceedings constitutes a violation of the terms of the
bond "because a demand upon the obligor to present the [alien]
would have been impossible."

In Molina v. Sewell, 983 F.2d 676 (5th Cir. 1993), the Court
reaffirmed the principle that a lawful permanent resident in
deportation proceedings does not lose his status as a lawful
permanent resident, or the rights and privileges attendant upon
that status.  It is also requested that this Court take judicial
notice of the fact that, notwithstanding this decision, however,
Defendants continue to prosecute exclusion proceedings against Mr.
Lozano-Molina, on the theory that his departure to Mexico, while
under deportation proceedings, is a factor "to be given some weight
in determining whether [his] departure was a meaningful one," In re
Lozano-Molina, A36 599 698, "Service Response to Applicant's Motion
To Terminate," filed on or about May 5, 1994, at page 2,
(Plaintiffs' Exhibit C, herein incorporated by reference).

7

personal needs which require them to make "casual, brief, and
innocent" trips across the border into Mexico, and back, but are
deterred from making such trips by the action of Defendants in
confiscating their green cards, and providing them either with no
substitute documentation, or with substitute documentation which
greatly increases the possibility that they would be placed in
exclusion proceedings on return.

27. A lawful permanent resident seeking employment who presents to
a potential employer an I-94 such as those provided to Mr. Gracia
and Mr. Herrera is more likely to be denied employment than would
be the case if he presented his green card.

28. When Defendants provide I-94's as replacement documentation to
lawful permanent residents whose green cards were confiscated
because they were placed in deportation or exclusion proceedings,
it is Defendants' practice to limit the validity of those I-94's to
a period of six (6) months, and to require that the residents
return to the Harlingen Office of INS to renew their I-94's every
six months, for the duration of the expulsion proceedings.

29. Many lawful permanent residents whose green cards have been
confiscated and who have received replacement I-94's which are
valid for only six months either reside or are seasonally employed
outside of the Rio Grande Valley, and are greatly inconvenienced by
the requirement that they return to the Valley to renew the I-94's.

IV.   CLASS ALLEGATIONS

30.   The confiscation of the green cards of lawful permanent
residents placed in deportation or exclusion proceedings, and the
attendant restrictions on their rights and privileges, has been a
source of controversy with the Harlingen Office of INS for at least
12 years.   Some sectors of the local INS office, including the
Harlingen Deportations branch, and the McAllen Sector of the Border

8

Patrol, have stopped the practice, even, in some cases, returning green cards which had been previously confiscated, [4] on the grounds that confiscating a resident's green card is inconsistent with his status as a lawful permanent resident alien. [5]

31. Other sectors, notably the Investigations Branch of the Harlingen Office, continue the practice of confiscating the green cards of lawful permanent residents placed in exclusion or deportation proceedings, regardless of whether the person is held in detention, and of refusing to return the green cards for the duration of the expulsion proceedings. Respondent Reno has delegated the decision of whether to confiscate the resident's green card in such cases to the INS District Director, who has, in turn, delegated it to the sector chiefs, or the individual agents.

32. The Investigations branch of the Harlingen INS Office is responsible for issuing Orders to Show Cause in many, but not all, cases identified as "criminal aliens," namely, aliens who are allegedly deportable on the basis of criminal convictions.

33. On information and belief, Plaintiffs allege that it is the practice of the Investigations Branch of the Harlingen INS office to confiscate the green card of lawful permanent resident aliens on whom they serve Orders to Show Cause, regardless of whether they are held in detention, and to refuse to return the cards of residents who post bond and are released from custody.

34. On information and belief, Plaintiffs further allege that the practice is inconsistently implemented, at the discretion of the

---

[4]   These includes cards confiscated from lawful permanent residents with more serious criminal records than either Mr. Gracia or Mr. Herrera.

[5]   C.f., <u>Molina v. Sewell</u>, <u>supra</u>, at 680 (5th Cir. 1993) (That alien is subject to deportation proceedings does not affect his status as permanent resident alien).

/372

official responsible for a given case, and that some individuals
with much more serious criminal records than that of, for example,
Mr. Herrera, are not asked to surrender their green cards.

35.  On information and belief, Plaintiffs further allege that in
cases where the green cards are confiscated, and the resident is
held in detention, no I-94 or other evidence of his status as a
lawful permanent resident is provided upon his release on bond,
unless the individual specifically requests same, and that in some
cases, no replacement documentation is provided even when the
resident does request such documentation.

36.  On information and belief, Plaintiffs further allege that it
is the practice of the Harlingen Office of INS to confiscate the
green cards of lawful permanent residents placed in exclusion
proceedings, and to refuse to return said cards for the duration of
said proceedings, regardless of whether the resident is held in
detention, or is paroled into the U.S. or released on bond.

37.  In cases where Defendants have confiscated the green card of
a lawful permanent resident placed in exclusion or deportation
proceedings, and do issue I-94's as replacement documentation, it
is Defendants' practice to place notations on the I-94's which
interfere with the resident's ability to exercise the rights and
privileges of lawful permanent resident status, such as, _inter
alia_, the notation that the person is under deportation or
exclusion proceedings, is on bond, or that the card is not valid
for re-entry to the United States.

38.  Following the incident with Mr. Gracia, counsel brought the
problem to the attention of Defendants, including the facts that:
(a) the practice of confiscating green cards of lawful permanent
residents placed in deportation or exclusion proceedings is
inconsistent with _Molina v. Sewell_, _supra_;  (b) the practice is
inconsistently applied, even within the Investigations Branch of

10

1373

the Harlingen office of INS;  and (c) there exist serious defects
in the substitute documentation, which unduly restrict the ability
of Plaintiffs to exercise the rights and privileges of lawful
permanent resident status, and gave Defendants a reasonable period
of time in which to take corrective action prior to filing the
instant action.

39.  Plaintiffs seek to represent the class of all those lawful
permanent residents who are under deportation or exclusion
proceedings, in whose cases no final order of deportation or
exclusion has been entered, who are not presently held in
detention, whose I-151 or I-551 cards have been confiscated by
Defendants, and are being retained by or under the authority of the
Harlingen Office of the Immigration and Naturalization Service.

40.  Mr. Gracia's and Mr. Herrera's claims are typical of the
claims of the putative class members, and they will fairly and
adequately protect the interests of the class.

41.  The class is so numerous that joinder of all members is
impracticable, and there are questions of law and fact which are
common to the class.

42.  The prosecution of separate actions by individual members of
the class would create a risk of inconsistent or varying
adjudications with respect to individual class members which would
establish incompatible standards of conduct for the Defendants.

43.  Defendants have also acted on grounds generally applicable to
the class, thereby making appropriate final injunctive relief or
corresponding declaratory relief with respect to the whole class.

44.  Attorney Lisa Brodyaga has been certified as an immigration
specialist by the Texas Board of Legal Specialization for over ten
years, and is experienced in federal court litigation in cases

*1374*

involving immigration matters.  Co-counsel, Thelma O. Garcia, is also an experienced litigator.  The two have frequently collaborated in federal litigation involving INS.  They are able, and have the necessary resources, and commitment, to adequately represent the interests of the instant class.

## V.   FIRST CAUSE OF ACTION - HABEAS CORPUS

45.  Plaintiffs herein incorporate by reference the allegations of Paragraphs 1 - 44, inclusive.

46.   The confiscation of the I-151 or I-551 card of a lawful permanent resident who is under deportation or exclusion proceedings, but who is not held in detention, prior to the issuance of a final order of deportation or exclusion, violates that person's rights as a lawful permanent resident alien, in that it interferes with the exercise of the rights and privileges attendant upon that status, and constitutes an undue restriction on that person's liberty.

47.  Particularly where any replacement document provided is valid only for a limited period of time, and carries a notation that the person is under exclusion or deportation proceedings, and/or is out on bond, and, in some cases, is not stamped "employment authorized," or states that it is not valid for re-entry, it places a cloud over the person's status as a lawful permanent resident, interfering with the exercise of his or her rights as a lawful permanent resident, including the ability to obtain and maintain employment, and to travel freely.

48.  A lawful permanent resident who presents a document such as Exhibits "A" "B" or "D" to a potential employer is more likely to be denied employment, than if he presented his green card.

49.  A lawful permanent resident who makes a "brief, casual, and

12

1375

innocent" departure from the United States and thereafter applies
for admission as a returning resident, presenting a document such
as Exhibits "A" "B" or "D," is more likely to be detained and
placed in exclusion proceedings upon return, than would be the case
if he or she presented his green card.

50. A bond posted by a lawful permanent resident under deportation
proceedings, who makes a "brief, casual, and innocent" departure
from the United States and thereafter applies for admission as a
returning resident, presenting a document such as Exhibits "A" "B"
or "D," is more likely to be cancelled, or even forfeited, than
would be the case if he presented his green card.

51. Plaintiffs are being deprived of their liberty, without Due
Process of Law, in that they are subject to restrictions on their
liberty not shared by the population at large, and they are
entitled to a Writ of Habeas Corpus, freeing them from this
unlawful restraint.

## VI.   SECOND CAUSE OF ACTION - INJUNCTIVE RELIEF

52. Plaintiffs hereby incorporate by reference the allegations of
Paragraphs 1 through 51 above.

53. The confiscation of Plaintiffs' lawful permanent resident
cards, and provision of substitute documents which place a cloud
over their status as lawful permanent residents, deprives them of
both liberty and property interests, without Due Process of Law,
and Plaintiffs are entitled to injunctive relief, enjoining and
restraining Defendants from such conduct.

## VII.   THIRD CAUSE OF ACTION - DECLARATORY JUDGMENT

54. Plaintiffs hereby incorporate by reference the allegations of
Paragraphs 1 through 52 above.

13

/374

CVISPDF - www.faxisa.com

55.   The confiscation of Plaintiffs' lawful permanent resident cards, and provision of substitute documents which place  a cloud over their status as lawful permanent residents, deprives them of liberty and property interests, without Due Process of Law, and Plaintiffs are entitled to declaratory relief, declaring that such conduct is a violation of the rights and privileges attendant upon their status as lawful permanent residents of the United States.

VIII.   FOURTH CAUSE OF ACTION - DECLARATORY JUDGMENT

56.  Plaintiffs herein incorporate by reference the allegations of Paragraphs 1 through 55 above.

57.   Under <u>Molina v. Sewell</u>, <u>supra</u>, the facts that a lawful permanent resident is under deportation proceedings, and/or has posted bond in conjunction with such proceedings, are not relevant factors to be taken into consideration in determining whether or not a departure from the United States is a "meaningful" one, as that term is used in <u>Rosenberg v. Fleuti</u>, 374 U.S. 449 (1963).

58.  The consideration of such facts in determining whether or not to re-admit a class member who is applying for admission as a returning resident of the United States violates that person's rights as a lawful permanent resident.

59.  Plaintiffs are therefore entitled to a declaratory judgment, declaring that it is a violation of their rights as lawful permanent residents of the United States for Defendants to take into consideration the facts that they are under deportation proceedings, and/or are under bond, in determining whether to readmit them as lawful permanent residents or to hold them in exclusion proceedings when they apply for readmission as returning residents of the United States.

IX.   FIFTH CAUSE OF ACTION - INJUNCTIVE RELIEF

14

1377

60.  Plaintiffs hereby incorporate by reference the allegations of Paragraphs 1 through 59 above.

61.  Plaintiffs are entitled to a preliminary and permanent injunction, restraining and enjoining Defendants from considering the fact that a lawful permanent resident is under deportation proceedings, or has posted bond in conjunction therewith, in determining whether he should be admitted to the United States as a returning resident, or held in exclusion proceedings.

X.   SIXTH CAUSE OF ACTION - DECLARATORY JUDGMENT

62.  Plaintiffs hereby incorporate by reference the allegations of Paragraphs 1 through 61 above.

63.  The cancellation or forfeiture of the bond of a class member, for the sole reason that he has made a departure from the United States, deprives that person of liberty without Due Process of Law.

64.  Plaintiffs are therefore entitled to a declaratory judgment, declaring that the cancellation or forfeiture of the bond of a class member, for the sole reason that he has made a departure from the United States, deprives him of liberty and property interests, without Due Process of Law.

XI.  SEVENTH CAUSE OF ACTION - INJUNCTIVE RELIEF

65.  Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 64 above.

66.  Plaintiffs are therefore entitled to preliminary and permanent injunctive relief, restraining and enjoining agents of the Defendants from forfeiting or canceling the bond of a lawful permanent resident who is under deportation proceedings, for the sole reason that he has made a departure from the United States.

1378

PRAYER FOR RELIEF

Plaintiffs therefore seek a Writ of Habeas Corpus, ordering Defendants to free them from the unlawful restraints which they have placed on them, by returning their green cards, evidencing their status as lawful permanent residents of the United States.

Plaintiffs also request both preliminary and permanent injunctive relief, enjoining and restraining Defendants from confiscating the green cards of lawful permanent resident aliens who have been placed in deportation or exclusion proceedings, against whom there is no final deportation order, and who are not held in custody, and from not returning the green cards of such lawful permanent residents from whom they have been previously confiscated.

Plaintiffs also seek a declaratory judgment, declaring that the confiscation of, and the refusal to return, the green cards of lawful permanent resident aliens placed in deportation or exclusion proceedings, who are not held in custody, and against whom there exists no final order of deportation or exclusion, is a violation of their rights as lawful permanent residents.

Plaintiffs also seek a declaratory judgment, declaring that the facts that a lawful permanent resident is under deportation proceedings, and/or has posted bond in conjunction therewith, are not relevant factors to be taken into consideration in determining whether a departure from the United States is a "meaningful" one, as that term is used in Rosenberg v. Fleuti, 374 U.S. 449 (1963).

Plaintiffs also seek a preliminary and permanent injunction, restraining and enjoining agents of the Defendants from considering the fact that a lawful permanent resident is under deportation proceedings, or has posted bond in conjunction therewith, in determining whether he should be admitted to the United States as a returning resident, or held in exclusion proceedings.

16

Plaintiffs also seek a preliminary and permanent injunction, restraining and enjoining agents of the Defendants from canceling or forfeiting the bond of a lawful permanent resident who is under deportation proceedings, solely for the reason that the individual has made a departure from the United States.

Plaintiffs also seek a declaratory judgment, declaring that it violates Plaintiffs' rights to cancel or forfeit the bond of a lawful permanent resident under deportation proceedings, solely for the reason that he has made a departure from the United States.

And finally, Plaintiffs seek costs, reasonable attorneys' fees, and such other and further relief as this Court may deem appropriate and justified under all of the circumstances herein.

Respectfully Submitted,


Lisa S. Brodyaga                    Thelma O. Garcia
402 E. Harrison, 2nd Floor          301 E. Madison
Harlingen, Texas 78550              Harlingen, Texas 78550
(210) 421-3226                      (210) 425-3701


                        VERIFICATION

I, Lisa S. Brodyaga, hereby certify that I am familiar with the facts set forth above, and that they are true and correct to the best of my knowledge and belief.

                            17


                          1380

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was personally served on Nancy Masso, Esq., AUSA, 1036 E. Levee, Brownsville, Texas, and, by first-class postage prepaid, on OIL, Civil Division, U.S. Department of Justice, P.O. Box 878, Ben Franklin Station, Washington, D.C. 20044, this 28th day of July, 1994.

18

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| JULIO HERRERA-LOA, )<br><br> and )<br><br>RAMIRO GRACIA-CANTU, )<br><br> In their own right and name )<br> and as representatives of )<br> others similarly situated, )<br><br> Plaintiff, )<br><br>v. )<br><br>E.M. TROMINSKI, )<br><br> District Director, )<br> Immigration and )<br> Naturalization Service, )<br><br>HON. JANET RENO, )<br><br> United States )<br> Attorney General )<br><br> and )<br><br>IMMIGRATION AND NATURALIZATION )<br> SERVICE, )<br><br> Defendants. )<br>———————————————————) | C.A. No.   B-215 |

EXHIBIT "D" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS AND
CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF

*1382*



4

Temporary Form I-551   Admission for permanent residence at _5218 Vernice St. Wimauma Fl._

verified. This document valid until _Jan 11, 1995_

issued at _HLG/INV_

_BR 267_

## "EMPLOYMENT AUTHORIZED"

Family Name
H E R R E R A , L O A

First (Given) Name / Birth Date (mo, da, year)
J U L I O                    0 7 0 7 6 0

Country of Citizenship / Sex (Male or Female)
M E X I C O                  M A L E

Passport Number / Visa Number and Flight Number
A 4 1 7 8 4 3 9 0

Country Where You Live / Date Where You Boarded
U S A

Address While in the United States (Number and Street) / Date Permit Begins
B R O W N S V I L L E       0 5 1 2 8 9

City and State
5 2 1 8   V E R N I C E   S T R E E T
W I M A U M A ,   F L O R I D A

| 18. Occupation AGRICULTURE | 19. Waivers |
|---|---|
| 20. INS File A - 41 784 390 | 21. INS FCO HLG/INV |
| 22. Petition Number | 23. Program Number |
| 24. ☒ Bond | 25. ☐ Prospective Student |

26. Itinerary/Comments

UNDER DEPORTATION PROCEEDINGS

------- OUT ON BOND -------

27 TWOV Ticket Number

1383