/1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
FILED

DEC 06 1994

MICHAEL N. MILBY, CLERK

JULIO HERRERA-LOA, et al,          )
                                   )
                                   )
v.                                 )          C.A. No. B-215
                                   )
                                   )
E.M. TROMINSKI, et al.             )
_____)

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
AND REQUEST FOR HEARING THEREON

Come Plaintiffs, and respectfully file the instant motion for class
certification, and request a hearing on said motion.  In support
thereof, Plaintiffs would respectfully show as follows:

I.  THE BACKGROUND

The instant action was filed on July 15, 1994, challenging
Defendants' practice of confiscating, without providing adequate
substitute documents, forms I-151 and I-551, (hereinafter referred
to as "green cards"), from lawful permanent residents who have been
placed under deportation or exclusion proceedings.

Defendants admitted that this practice violates the mandate of
cases such as <u>Molina v. Sewell</u>, 983 F.2d 676 (5th Cir. 1993) (fact
that lawful permanent resident is under deportation proceedings
does not alter his status as lawful permanent resident), and <u>Etuk
v. Slattery</u>, 936 F.2d 1433 (2nd Cir. 1991).  Settlement
negotiations commenced, and, for a while, seemed promising.

However, the Court will be necessary in order to reach, and to
enforce, a just settlement.  The course of action undertaken by
Defendants, supposedly to "cure" the problem, has resulted in

1335

egregious injustices. [1]   Petitioners have not been allowed to participate meaningfully in the formulation of the proposed "remedial" actions.  No reply was received in response to <u>Exhibit E</u>, and later a attempt to reach Defendants' counsel by phone, with respect to the problems outlined therein, was unsuccessful.

Defendants also failed to reply to Plaintiff's First Set of Requests For Admission, served on or about July 23, 1994, (<u>Petitioners' Exhibit G</u>, hereby incorporated by reference.  Nor was any request made for an extension of time with respect thereto. Under Rule 36(a), F.R.Civ.P., Defendants' failure to deny the matters contained in the request for admission constitutes an admission of the truth of said matters.

### II.   THE INSTANT CLASS SHOULD BE CERTIFIED

#### A.   THE INTERESTS OF THE PETITIONERS CAN ONLY BE ADEQUATELY PROTECTED IF THE CLASS IS CERTIFIED

Rule 23(c)(1), F.R.Civ.P., mandates that the Court determine, by order, whether the action shall be maintained as a class action "[a]s soon as practicable after the commencement of an action brought as a class action..."

---

[1]   Under the guise of sending notice to putative class members, requesting that they come in to receive substitute documents, Defendants sent call-in letters to a virtually random group of residents and former residents, including individuals in whose cases orders of deportation had been entered at hearings of which they had not received notice, and who were unaware that they were under orders of deportation.  <u>See</u>, <u>Petitioners' Exhibit E</u>, herein incorporated by reference.  Such persons who responded to the call-in letters were immediately detained, in contemplation of deportation.  In this regard, the Court may take judicial notice of the administrative files of Jaime Gonzalez-Alvarez, A34 008 773, and Jorge Luis Palacios Vallejas, A21 338 881, who sought the services of the undersigned in order to halt their threatened deportation, <u>Petitioners' Exhibit F</u>, herein incorporated by reference.  Some victims of the hoax, who were not sufficiently sophisticated to seek counsel, may already have been deported.

2

CUtePDF - www.fenito.com

Given doubt that exists as to whether an amicable settlement could otherwise be reached, and enforced, it is urged that certification of the instant class is necessary to protect vital interests of the class, and that it is in the interests of the class that such certification be accomplished as soon as possible.

B.   THE REQUIREMENTS OF A CLASS ACTION ARE SATISFIED HEREIN.

Rule 23, F.R.Civ.P., sets forth the requirements for maintaining a class action.  These are as follows:

> 1.  the class is so numerous that joinder of all members is impracticable;
> 2.  there are questions of law or fact common to the class;
> 3.  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> 4.  the representative parties will fairly and adequately protect the interests of the class.

In addition, it is required that one of three other criteria be satisfied, including the following:

> (2)  the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

It is submitted that each and every requirement is satisfied.

### 1.   THE CLASS IS SUFFICIENTLY NUMEROUS THAT JOINDER IS IMPRACTICABLE

First, the class is sufficiently numerous that joinder is impracticable.  By their failure to deny same, Defendants have admitted, (Exhibit F, Request No. 22), that the number of class members in the instant action exceeds two hundred.  However, even if, in fact, there were only twenty or thirty members at present,

3

joinder would still be impracticable, given that their identity is known only to Defendants, and there exists substantial doubt as to whether even Defendants are able to identify current class members.

In addition, in the absence of an enforceable order, the class will doubtless continue to grow.  Joinder of new class members as they came into existence would also be impracticable, given the inability of Petitioners' counsel to know of their existence.

    2.   THERE ARE QUESTIONS OF LAW <u>AND</u> FACT COMMON TO THE CLASS

The underlying legal issue herein is whether lawful permanent residents are entitled to documents which demonstrate this status clearly, and unequivocally, in a form which does not place them under a cloud in the eyes of those who may examine their documents, such as potential employers, and even Immigration Agents.  This issue is common to the entire class.  In addition, there are factual issues, common to the class, such as what constitutes adequate evidence of lawful permanent resident status.

3. THE CLAIMS OF THE NAMED PLAINTIFFS ARE TYPICAL OF THE CLASS.

The claims of the two named Plaintiffs are typical of the class. Both are lawful permanent residents, under deportation proceedings, from whom Defendants confiscated their "green cards," without providing adequate substitute documents.

This caused Plaintiff Herrera great inconvenience, and, particularly given the timing, as he was arranging for the sale of the harvest from his family's lands in Mexico, threatened substantial business interests. Plaintiff Gracia was deterred from exercising his right to make brief, casual, and innocent visits to Mexico until adequate substitute documents were provided, which was, in his case, a very protracted process.

4

1338

### 4. THE REPRESENTATIVE PARTIES WILL FAIRLY AND ADEQUATELY REPRESENT THE INTERESTS OF THE CLASS

The named Petitioners have demonstrated their commitment to the case. In addition, by their failure to deny same, Defendants have admitted that the undersigned have the ability, commitment, and resources, to adequately represent the instant class, (Exhibit F, Request No. 23). Even without this admission, this Court could take judicial notice of the legal experience, and dedication to their clients, of the undersigned.

### 5. DEFENDANTS HAVE ACTED ON GROUNDS APPLICABLE TO THE CLASS AS A WHOLE, MAKING INJUNCTIVE AND/OR DECLARATORY RELIEF APPROPRIATE HEREIN.

The actions of Defendants herein have been taken on grounds applicable to the class as a whole; i.e., Defendants have confiscated Plaintiffs' "green cards" because they were placed under exclusion or deportation proceedings. Only injunctive, or corresponding declaratory, relief, can resolve the problem for the class as a whole, and prevent other lawful permanent residents from being subjected to the same treatment, thereby becoming class members as well. Defendants have a history of difficulties in convincing all of their agents to abide by agreements made by their attorneys, if those agreements are not embodied in Court Orders. The instant issues are too important to leave them to the haphazard enforcement which would result if injunctive and/or declaratory relief is not granted.

### III. PLANTIFFS HAVE ATTEMPTED TO CONSULT WITH DEFENDANTS WITH RESPECT TO THE INSTANT MOTION

The undersigned attempted to consult with counsel for Defendants with respect to the instant motion, but so far without success. On December 5, 1994, counsel spoke with INS General Attorney Bill Peterson, who had been designated as local contact person on the

5

*1339*

case, and was informed that he was leaving the area for six months, and would not be working on the case during that period. Nancy Masso, AUSA, will be on leave until the first of the year. Early in the morning of December 6, 1994, counsel called Howard Rose, SAUSA, and was informed that he would be in trial all week. She left a message with the secretary who answered the phone, advising her that the call was in reference to a proposed motion for class certification, and requesting that Mr. Rose return the call. However, no return call had been received as of the time the instant motion was prepared.

It is therefore urged that a hearing be held on the instant motion for class certification, and that following said hearing, the putative class as set forth herein be certified.

Respectfully Submitted,

Lisa S. Brodyaga                              Thelma O. Garcia
402 E. Harrison, 2nd Floor                    301 E. Madison
Harlingen, Texas 78550                        Harlingen, Texas 78550
(210) 421-3226                                (210) 425-3701

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing were served as follows: by personal service on the Office of the United States Attorney, Nancy Masso, Esq., AUSA, 1036 E. Levee, Brownsville, TX, and by first-class mail, postage prepaid, to Howard Rose, SAUSA, Office of the U.S. Attorney, Civil Division, 910 Travis, #1500, Houston, Texas 77002, and Bill Peterson, General Attorney, INS, 2102 Teege, Harlingen, Texas 78550, this 6th day of December, 1994.



1340

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


JULIO HERRERA-LOA, et al,          )
                                   )
                                   )
v.                                 )        C.A. No. B-215
                                   )
                                   )
E.M. TROMINSKI, et al.             )
_____)


EXHIBIT "E" IN SUPPORT OF

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
AND REQUEST FOR HEARING THEREON

CISPDF - www.fastio.com

**LAW OFFICES OF REFUGIO DEL RIO GRANDE**
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226
October 21, 1994

Howard Rose, SAUSA
Office of the United States Attorney
Civil Division
910 Travis, Suite 1500
Houston, Texas 77002

Re: <u>Herrera et al v. Trominski et al</u>, CA B-94-215

Dear Howard:

Thank you for returning my call yesterday with respect to the
instant case.  I hope that the flood waters have receded
sufficiently to allow you to get in to your office, and resume your
life, in the near future.

However, I regret to inform you that the problems in the Harlingen
INS office are very serious, and I must insist that, in the future,
I am consulted <u>beforehand</u>, when actions are to be taken with
respect to supposed class members.  It was my understanding
previously that you were reluctant to discuss proposed actions with
me until they had been approved by the pertinent authorities, but
I did <u>not</u> understand that you proposed to go ahead with such
actions, unilaterally, after they were approved.

The instant fiasco with respect to the "notices" sent to supposed
class-members is a perfect example of the reasons underlying this
request.  There are two, extremely serious, problems.

First, the notices are not being sent to class members.  So far, in
my capacity as attorney of record for the individuals involved, I
have received copies of four notices, (copies attached); to wit:

1)  Mauro Paz Avila, A26 945 830.

Mr. Paz is a Mexican national who lived in the United States for
many years under a false claim of U.S. citizenship, and has been
under deportation proceedings since 1983.  He never has been, and
has never claimed to be, a lawful permanent resident, and has never
possessed an I-151 or I-551.  His deportation proceedings were
recently reopened by the BIA, for the purpose of allowing him to
seek relief from deportation, and he is scheduled for a master
calendar appearance next week before an Immigration Judge in Harlingen.

1342

2)   Jose Daniel Soto Benavides, A34 007 888

Although Mr. Soto is under deportation proceedings, he is not a member of the class, insofar as his I-551 was never lifted by INS.

3)   Fernando Javier Cerda Serna, A34 652 678

Mr. Cerda is a former lawful permanent resident who was ordered deported on May 7, 1993.  No appeal was taken, and no motion to reopen has been filed.  I have no current contact with him, and therefore cannot say whether his I-551 was lifted or not.  It is my understanding that he has returned to Mexico.  To the best of my knowledge and belief, the only matter pending with respect to Mr. Cerda is a motion to reopen bond forfeiture proceedings, on behalf of the obligor.

4)   Nancy Minnely Peña, A42 962 231

Bingo!  Ms. Peña appears to be a member of the class.  She is a lawful permanent resident under exclusion proceedings, whose appeal is currently pending at the BIA, although she is in Chicago, and I have not yet been able to make contact with her to ascertain for certain that her I-551 was lifted by INS.

However, I did not receive copies of G-56's for other lawful permanent residents in exclusion proceedings whose cards were lifted by INS, (and whom I represent), so it may just be a random "hit," that INS got one out of four correct.

The second defect is equally egregious.  This relates to the form of the letter.  It appears that INS is taking advantage of the situation to force people to come to INS in person, for their own purposes, e.g., so that INS may take photos, and obtain copies of any documents which the individual may have which INS considers relevant to their cases.  Only as an afterthought, does it appear that INS intends to determine whether the person is eligible for some form of documentation.

Moreover, in some cases, it appears that INS is setting a trap. For example, Mr. Cerda is under a final order of deportation. Sending him a letter promising that he will be issued his "new LPR Card, I-151 or Employment Card," is beyond misleading.  It is simply false.  If he were still in the U.S., and if he appeared as required, there is no doubt in my mind but that he would be taken into custody at that time.  If he returns to the U.S. to attend the

2

1343

appointment, he could be subject to criminal proceedings, new deportation proceedings, and endless expense and heartache. This is simply unconscionable.

Even for the class members, a G-56 is inappropriate. As noted, Ms. Peña is in Chicago. She is also represented by counsel. There is no need to force her to come down from Chicago to "review [her] immigration status, take photos, and issued [sic] [her] new LPR Card, I-151 or Employment Card."

I must therefore request that the following corrective actions be taken.

First, letters should be sent to all those persons to whom G-56's have been sent, advising them that the appointments are canceled.

Second, a letter should be drafted, advising possible class members of the existence of the action, and the fact that, if they are indeed members of the class, they are eligible for replacement documentation. I would like to review the letter, however, before it is sent out.

Third, I would like to review the files of all those persons to whom letters are to be sent, to ascertain whether or not they are members of the class, before any contact is made with them, allegedly deriving from this action.

Thank you for your attention.

Sincerely,

Lisa S. Brodyaga
Attorney at Law

cc:  Nancy Masso, AUSA
     David Guerra, AUSA
     Bill Peterson, Esq.

3



**U.S. Department of Justice**

**Immigration and Naturalization Service**

Route 3, Box 341
Los Fresnos, Texas 78566

File Number

A42 962 231

NANCY MINNELY PENA
3402 WEST 60th PLACE
CHICAGO, IL. 60629-0000

Date

OCTOBER 17, 1994

Please come to the office shown below at the time and place indicated in connection with an official matter.

| OFFICE LOCATION | Room No.    Floor No.<br>United States Immigration & Naturalization Service Office, Rt.3 Box 341; Los Fresnos, Texas 78566. |
|---|---|
| DATE AND HOUR | At 10:00 A.M. on NOVEMBER 17, 1994. |
| ASK FOR | Deportation Officer, Gail Durand; (210)233-4431 ext 241 or 238. |
| REASON FOR APPOINTMENT | To review your Immigration Status, take photos, and issued your new LPR Card, I-151 or Employment Card. |
| BRING WITH YOU | Correspondence or documentation you may have received from the Immigration Service, or an American Consul. |

IT IS IMPORTANT THAT YOU KEEP THIS APPOINTMENT AND BRING THIS LETTER WITH YOU.
If you are unable to do so, state your reason, sign below and return this letter to this office at once.

cc: LISA S BRODYAGA, ESQ.

| I am unable to keep the appointment because: | | Very truly yours, |
|---|---|---|
| | | |
| SIGNATURE | DATE | E.M. Trominski<br>District Director |

Form G-56
(Rev. 5-1-83)Y

THIS COPY TO BE MAILED TO THE ATTORNEY OR REPRESENTATIVE IF ANY



**U.S. Department of Justice**

**Immigration and Naturalization Service**

Route 3, Box 341
Los Fresnos, Texas 78566

---

FERNANDO JAVIER CERDA SERNA
ROUTE 3, BOX 285 M
MISSION, TEXAS 78572-0000

File Number
A34 652 678

Date

OCTOBER 17, 1994

Please come to the office shown below at the time and place indicated in connection with an official matter.

| | Room No.      Floor No. |
|---|---|
| **OFFICE LOCATION** | United States Immigration & Naturalization Service Office, Rt.3 Box 341; Los Fresnos, Texas 78566. |
| **DATE AND HOUR** | At 10:00 A.M. on NOVEMBER 22, 1994. |
| **ASK FOR** | Deportation Officer, Gail Durand; (210)233-4431 ext 241 or 238. |
| **REASON FOR APPOINTMENT** | To review your Immigration Status, take photos, and issued your new LPR Card, I-151 or Employment Card. |
| **BRING WITH YOU** | Correspondence or documentation you may have received from the Immigration Service, or an American Consul. |

**IT IS IMPORTANT THAT YOU KEEP THIS APPOINTMENT AND BRING THIS LETTER WITH YOU.**
If you are unable to do so, state your reason, sign below and return this letter to this office at once.

cc: LISA S. BRODYAGA, ESQ.

| I am unable to keep the appointment because: | | Very truly yours, |
|---|---|---|
| | | E.M. Trominski District Director |
| **SIGNATURE** | **DATE** | |

Form G-66
(Rev. 5-1-83)Y

THIS COPY TO BE MAILED TO THE ATTORNEY OR REPRESENTATIVE, IF ANY



**U.S. Department of Justice**

**Immigration and Naturalization Service**

Route 3, Box 341
Los Fresnos, Texas 78566

File Number

A26 945 830

MAURO PAZ AVILA
ROUTE 8, BOX 826X
EDINBURG, TEXAS 78539-0000

Date

OCTOBER 13, 1994

Please come to the office shown below at the time and place indicated in connection with an official matter.

| | |
|---|---|
| **OFFICE LOCATION** | Room No.          Floor No.<br>United States Immigration & Naturalization Service Office, Rt. 3 Box 341; Los Fresnos, Texas 78566. |
| **DATE AND HOUR** | At 10:00 A.M. on NOVEMBER 16, 1994. |
| **ASK FOR** | Deportation Officer, Gail Durand; (210)233-4431 ext 241 or 238. |
| **REASON FOR APPOINTMENT** | To review your Immigration Status, take photos, and issued your new LPR Card, I-151 or Employment Card. |
| **BRING WITH YOU** | Correspondence or documentation you may have received from the Immigration Service, or an American Consul. |

**IT IS IMPORTANT THAT YOU KEEP THIS APPOINTMENT AND BRING THIS LETTER WITH YOU.**

If you are unable to do so, state your reason, sign below and return this letter to this office at once.

cc: LISA S BRODYAGA, ESQ.

P 878 460 727

| I am unable to keep the appointment because: | | Very truly yours, |
|---|---|---|
| | | |
| **SIGNATURE** | **DATE** | E.M. Trominski<br>District Director |

Form G-56
(Rev. 5-1-83)Y

*13/7*

THIS COPY TO BE MAILED TO THE ATTORNEY OR REPRESENTATIVE, IF ANY



**U.S. Department of Justice**

**Immigration and Naturalization Service**

Route 3, Box 341
Los Fresnos, Texas 78566

File Number

A34 007 888

Date

JOSE DANIEL SOTO BENAVIDES
2755 LIMA STREET
BROWNSVILLE, TX. 78520-0000

OCTOBER 12, 1994

Please come to the office shown below at the time and place indicated in connection with an official matter.

| | Room No.         Floor No |
|---|---|
| **OFFICE LOCATION** | United States Immigration & Naturalization Service Office, Rt. 3 Box 341; Los Fresnos, Texas 78566. |
| **DATE AND HOUR** | At 10:00 A.M. on NOVEMBER 15, 1994. |
| **ASK FOR** | Deportation Officer, Gail Durand; (210)233-4431 ext 241 or 238. |
| **REASON FOR APPOINTMENT** | To review your Immigration Status and take photos. |
| **BRING WITH YOU** | Correspondence or documentation you may have received from the Immigration Service, or an American Consul. |

**IT IS IMPORTANT THAT YOU KEEP THIS APPOINTMENT AND BRING THIS LETTER WITH YOU.**

If you are unable to do so, state your reason, sign below and return this letter to this office at once.

cc: LISA S. BRODYAGA, ESQ.

P 878 460 605

| I am unable to keep the appointment because: | | Very truly yours, |
|---|---|---|
| | | |
| **SIGNATURE** | **DATE** | E.M. Trominski
District Director |

Form G-56
(Rev. 5-1-83)Y

*1348*

THIS COPY TO BE MAILED TO THE ATTORNEY OR REPRESENTATIVE, IF ANY

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


JULIO HERRERA-LOA, et al,          )
                                   )
                                   )
v.                                 )       C.A. No. B-215
                                   )
                                   )
E.M. TROMINSKI, et al.             )
_____    )


EXHIBIT "F" IN SUPPORT OF

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
AND REQUEST FOR HEARING THEREON


*1349*

U.S. Departm        of Justice

Immigration and Naturalization Service
Route 3,  Box .341
Los Fresnos,  Texas 78566

File Number
A34 008 773

JAIME GONZALEZ ALVAREZ
900 NORTH 29TH STREET
MC ALLEN, TEXAS 78501-0000

Date OCTOBER 13, 1994

Please come to the office shown below at the time and place indicated in connection with an official matter.

| OFFICE LOCATION | United States Immigration & Naturalization Service Office, Rt.3 Box 341; Los Fresnos, Texas 78566. |
| --- | --- |
| DATE AND HOUR | At 10:00 A.M. on NOVEMBER 16, 1994. |
| ASK FOR | Deportation Officer, Gail Durand; (210)233-4431 ext 241 or 238. |
| REASON FOR APPOINTMENT | To review your Immigration Status, take photos, and issued your new LPR Card, I-151 or Employment Card. |
| BRING WITH YOU | Correspondence or documentation you may have received from the Immigration Service, or an American Consul. |

IT IS IMPORTANT THAT YOU KEEP THIS APPOINTMENT AND BRING THIS LETTER WITH YOU.
If you are unable to do so, state your reason, sign below and return this letter to this office at once.

cc:

P 878 460 659

| I am unable to keep the appointment because: | |
| --- | --- |
| SIGNATURE | DATE |

Very truly yours,

E.M. Trominski
District Director

Form G-56
(Rev. 5-1-83)Y

1350

U.S. Departm    of Justice

Immigration and Naturalization Service

Route 3, Box 341
Los Fresnos, Texas 78566

File Number

A21 338 881

Date

JORGE LUIS PALACIOS VALLEJO
ROUT 1, BOX 211-F
EDINBURG, TEXAS 78539-0000

OCTOBER 13, 1994

Please come to the office shown below at the time and place indicated in connection with an official matter.

| OFFICE LOCATION | Room No.          Floor No.<br>United States Immigration & Naturalization Service Office, Rt.3 Box 341; Los Fresnos, Texas 78566. |
|---|---|
| DATE AND HOUR | At 10:00 A.M. on NOVEMBER 15, 1994. |
| ASK FOR | Deportation Officer, Gail Durand; (210)233-4431 ext 241 or 238. |
| REASON FOR APPOINTMENT | To review your Immigration Status, take photos, and issued your new LPR Card, I-151 or Employment Card. |
| BRING WITH YOU | Correspondence or documentation you may have received from the Immigration Service, or an American Consul. |

IT IS IMPORTANT THAT YOU KEEP THIS APPOINTMENT AND BRING THIS LETTER WITH YOU.

If you are unable to do so, state your reason, sign below and return this letter to this office at once.

DID SHOW, BUT HAS OUTSTANDING
W/D I205

cc: LAURIER D MC DONALD, ESQ

P 878 460 729

| I am unable to keep the appointment because: | | Very truly yours, |
|---|---|---|
| | | E.M. Trominski<br>District Director |
| SIGNATURE | DATE | |

Form G-56
(Rev. 5-1-83)Y

1351

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


JULIO HERRERA-LOA, et al,            )
                                     )
                                     )
v.                                   )      C.A. No. B-215
                                     )
                                     )
E.M. TROMINSKI, et al.               )
_____)


EXHIBIT "G" IN SUPPORT OF

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
AND REQUEST FOR HEARING THEREON


/352

CitaPDF - www.fasiso.com

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JULIO HERRERA-LOA, et al,          )
                                    )
                                    )
v.                                  )          C.A. No. B-215
                                    )
                                    )
E.M. TROMINSKI, et al.              )
_____ )

PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION

Come Plaintiffs, and, pursuant to Rule 36, F.R.Civ.P., present
their first set of requests for admission, and request that within
thirty (30) days of service of same, Defendants admit the truth of
the following statements:

I.  DEFINITIONS

A.   "Lawful permanent resident:"  an individual who has been
lawfully accorded the privilege of residing permanently in the
United States as an immigrant, such status not having changed.

B.   "Green card:"  Laminated card evidencing lawful permanent
resident status, issued on forms I-151 and I-551.

C.   "PISPC:"  The Port Isabel Service Processing Center, at
Bayview, Texas.

D.   "Class member:" Members of the putative class, as defined in
Paragraph 27 of the Petition and Complaint herein.

E.   "The Act:"  The Immigration and Nationality Act, as amended.

F.   "Practice:"  An act performed or procedure followed in more
than fifty percent (50 %) of the instances described.

/353

## II.   REQUESTS FOR ADMISSION

1.   From the date of the issuance of the decision of the Fifth
Circuit Court of Appeals in the case of <u>Molina v. Sewell</u>, 983 F.2d
676 (5th Cir. 1993), to wit, February 22, 1993, until the date of
the filing of the instant action, on July 15, 1994, Defendants made
no changes in their practices, procedures, or policies regarding
the confiscation of green cards of lawful permanent residents who
are placed under deportation proceedings, as a result of, or based
on, the Court's ruling in said case.

2.   Between February 22, 1993, and July 15, 1994, Defendants made
no changes in their practices, procedures, or policies regarding
the admission of class members as returning residents, pursuant to
8 CFR 211.1, as a result of, or based on, the ruling in <u>Molina v.
Sewell</u>, <u>supra</u>.

3.   Between February 22, 1993, and July 15, 1994, Defendants made
no changes to their practices, procedures, or policies regarding
the regarding the cancellation or forfeiture of the bond of a class
member who is has posted a bond in connection with pending
deportation proceedings, but who has been placed in exclusion
proceedings on return from a trip abroad, as a result of, or based
on, the ruling in <u>Molina v. Sewell</u>, <u>supra</u>.

4.   Between February 22, 1993 and July 15, 1994, it was the
practice of the Investigations branch of the Harlingen INS office
to confiscate the green cards of lawful permanent resident aliens
on whom they served Orders to Show Cause and Warrants of Arrest,
regardless of whether the individual simultaneously posted bond or
was released on recognizance.

5.   Between February 22, 1993 and July 15, 1994, it was the
practice of the Investigations branch of the Harlingen INS office
to provide class members who posted bond or were released on

1354

recognizance with I-94's, with a stamp indicating that the individual had been admitted as a lawful permanent resident.

6.  In situations described in Request for Admission No. 5, above, not all of the I-94's provided to class members included the notation: "EMPLOYMENT AUTHORIZED."

7.  In situations such as described in No. 5, above, it was the practice of the Investigations branch of the Harlingen INS office to put a notation on the back of the I-94, indicating that the individual was under deportation proceedings.

8.  In situations such as described in No. 5, above, where bond was posted, it was the practice of the Investigations branch of the Harlingen INS office to put a notation on the back of the I-94, indicating that the individual had been released on bond.

9.  In situations such as described in No. 5, above, notations were sometimes placed on the I-94, indicating that it was not valid for re-entry to the United States.

10.  On July 22, 1994, in the offices of the Investigations branch of the Harlingen INS office, an agent of Defendants, (to wit, Jim Knight), told Plaintiff Herrera in the presence of his counsel, after Mr. Herrera had been served with a (superseding) Order to Show Cause charging deportability only under Section 241(a)(2)(C) of the Act, and a new I-94, that since he is under deportation proceedings, if he were to cross into Mexico without first obtaining an advance parole, he would automatically be deported.

11.  Between February 22, 1993 and July 15, 1994, when class members who were issued an I-94 by the Investigations branch of the Harlingen INS office inquired whether they could use that document to go to Mexico and back, it was Defendants' practice to inform them that the I-94 was not valid for that purpose.

3

1355

12.  Between February 22, 1993 and July 15, 1994, when a class member who had been detained at PISPC posted bond or was released on recognizance, it was the practice of Defendants to provide that person with no evidence of his status as a lawful permanent resident other than the bond or release papers, and the Order to Show Cause, unless the individual or his representative made a specific request for such a document.

13.  Some class members who were detained at PISPC have posted bond or been released on recognizance, between February 22, 1993 and July 15, 1994, and have been given no evidence of their status as lawful permanent residents other than the bond or release papers, even though the individual or his representative did make a specific request to an agent of Defendants that he or she be provided with such a document.

14.  As of July 15, 1994, it was <u>not</u> the practice of the Deportations branch of the Harlingen INS office to confiscate the green cards of lawful permanent resident aliens on whom they served Orders to Show Cause and Warrants of Arrest, in situations where the individual simultaneously posted bond or was released on recognizance.

15.  As of July 15, 1994, it was <u>not</u> the practice of the McAllen Sector of the U.S. Border Patrol to confiscate the green cards of lawful permanent resident aliens on whom they served Orders to Show Cause and Warrants of Arrest, in situations where the individual simultaneously posted bond or was released on recognizance.

16.  On June 22, 1994, an agent of Defendants, (to wit, Joe Reyna), told Petitioner Gracia in the presence of his counsel that the primary reason that it was the practice of his office to confiscate the individual's green card in cases such as his was a concern that, if and when the person were deported from the United States,

4

he might not surrender the card, but might continue to use it illegally.

17.   On July 22, 1994, an agent of Defendants, (to wit, Pablo Zamora), told Petitioner Herrera in the presence of his counsel that the primary reason that it was the practice of his office to confiscate the green cards in cases such as his was a concern that, if and when the person was deported from the U.S., he might not surrender the card, but might continue to use it illegally.

18.   The primary reason that, between February 22, 1993 and July 15, 1994, it was the practice of the Investigations branch of the Harlingen INS office to confiscate the green cards of lawful permanent residents when they are placed under deportation proceedings was the concern of the Defendants that, if and when the person were deported from the United States, he or she might not surrender the card, but might continue to use it illegally.

19.   As of the date of responding to the instant Requests for Admission, the number of class members in the instant action exceeds twenty-five.

20.   As of the date of responding to the instant Requests for Admission, the number of class members in the instant action exceeds fifty.

21.   As of the date of responding to the instant Requests for Admission, the number of class members in the instant action exceeds one hundred.

22.   As of the date of responding to the instant Requests for Admission, the number of class members in the instant action exceeds two hundred.

23.   Attorneys Lisa Brodyaga and Thelma Garcia have the ability,

5

1357

commitment, and resources, to adequately represent the class as defined in Paragraph 27 of the Petition and Complaint herein.

24.   Under the practices and procedures in effect at the ports of entry under the direction and control of the Harlingen INS office between February 22, 1993 and July 15, 1994, a lawful permanent resident who had made a "brief, casual, and innocent" departure from the United States and sought readmission as a returning resident, who presented an I-94 such as Plaintiffs' Exhibits "A" and "B" herein, was more likely to be detained, and placed in exclusion proceedings, than would have been the case if he had presented his green card.

25.   Under the practices and procedures in effect at the ports of entry under the direction and control of the Harlingen INS office between February 22, 1993 and July 15, 1994, a lawful permanent resident who had made a "brief, casual, and innocent" departure from the United States and sought readmission as a returning resident, who presented an I-94 stating that he was under deportation proceedings, was more likely to be detained, and placed in exclusion proceedings, than would have been the case if he had presented his green card.

26.   Defendant INS has asserted to this Court that if a lawful permanent resident who posted bond in connection with deportation proceedings departs the United States, the bond is subject to either forfeiture or cancellation, in the discretion of the Defendants, and as of July 15, 1994, had not retracted said assertion.

27.   It is still the position of Defendants that if a lawful permanent resident who posted bond in connection with deportation proceedings departs the United States, the bond is subject to either forfeiture or cancellation, in the discretion of the Defendants.

6

28.   A lawful permanent resident seeking employment in the Rio Grande Valley, who presents to a potential employer an I-94 such as Plaintiffs' Exhibits "A" and "B" herein is more likely to be denied employment than would be the case if he presented his green card.

29.   A lawful permanent resident seeking employment in the Rio Grande Valley, who presents to a potential employer an I-94 bearing a stamp indicating that he or she has been admitted for lawful permanent residence, is more likely to be refused employment than would be the case if he presented a green card.

30.   The Investigations branch issues Orders to Show Cause in many, but not all, cases of "criminal aliens," i.e., aliens who are allegedly deportable on the basis of criminal convictions, who are found within the jurisdiction of the Harlingen INS Office.

31.   The practice of confiscating the green cards of lawful permanent residents who are placed under deportation proceedings is inconsistently implemented by the agents of the Investigations branch of the Harlingen INS office, at the discretion of the official responsible for a given case, and, since February 22, 1993, there have been instances in which individuals with much more serious criminal and prior immigration records than that of Plaintiff Herrera, were not asked to surrender their green cards.

32.   Many class members are prima facie eligible for relief from deportation, under, inter alia, Sections 212(c) and 245 of the Act.

33.   Under Molina v. Sewell, supra, the facts that a lawful permanent resident is under deportation proceedings, and/or has posted bond in conjunction with such proceedings, are not relevant factors to be taken into consideration in determining whether or not a departure from the United States is a "meaningful" one, as that term is used in Rosenberg v. Fleuti, 374 U.S. 449 (1963).

7

1355

Respectfully Submitted,



Lisa S. Brodyaga                          Thelma O. Garcia
402 E. Harrison, 2nd Floor                301 E. Madison
Harlingen, Texas 78550                    Harlingen, Texas 78550
(210) 421-3226                            (210) 425-3701


### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed to Nancy
Masso, Esq., AUSA, 1036 E. Levee, Brownsville, Texas 78520, and to
OIL, Civil Division, U.S. Dept. of Justice, 878 Ben Franklin Sta,
Wash. D.C. 20044, this 23rd day of July, 1994.

1360