/

15

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUANA ASCENCIO-GUZMAN,          )
                                )
EFRAIN MERINO,                  )
                                )
ARTURO LOPEZ-LOZANO,            )
                                )
ALEJANDRA GUTIERREZ,            )
                                )
JUAN SANCHEZ-SALINAS,           )
                                )
ADELITA CANTU de CABRERA,       )
                                )
     and                        )
                                )
RAMIRO GRACIA-CANTU,            )
                                )
     In their own right and name )
     and as representatives of  )
     others similarly situated, )
                                )
     Plaintiffs,                )
                                )
v.                              )          C.A. No. B-215
                                )
E.M. TROMINSKI,                 )
                                )
     District Director,         )
     Immigration and            )
     Naturalization Service,    )
                                )
HON. JANET RENO,                )
                                )
     United States              )
     Attorney General           )
                                )
     and                        )
                                )
IMMIGRATION AND NATURALIZATION  )
     SERVICE,                   )
                                )
     Defendants.                )
_____)

United States District Court
Southern District of Texas
FILED

JAN 17 1995

Michael N. Milby, Clerk

1287

United States District Court
Southern District of Texas
FILED

JAN 1 7 1995

Michael N. Milby, Clerk

PLAINTIFFS' SECOND AMENDED PETITION
FOR WRIT OF HABEAS CORPUS AND
CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF

Come Juana Ascencio-Guzman, Efrain Merino, Arturo Lopez-Lozano,
Alejandra Gutierrez, Juan Sanchez-Salinas, Adelita Cantu de
Cabrera, and Ramiro Gracia-Cantu, in their own name and in the name
of all others similarly situated, and file their Second Amended
Petition for a Writ of Habeas Corpus, and Class Action Complaint,
seeking declaratory and injunctive relief, and in support of same,
respectfully shows as follows:

## I.  JURISDICTION

1.   Jurisdiction over the instant action is laid under 28 USC
1346(a)(2) (action against and agency and/or officers of the United
States); 8 USC 1329 (action arising under the Immigration and
Nationality Act); 28 USC 2201 et seq (declaratory judgment action);
and 5 USC 702 et seq, (action by one adversely affected by final
agency action), coupled with 28 USC 1331 (federal question).

## II.  THE PARTIES

2. Petitioners Juana Ascencio-Guzman, Efrain Merino, Arturo Lopez-
Lozano, Alejandra Gutierrez, Juan Sanchez-Salinas, Adelita Cantu de
Cabrera, and Ramiro Gracia-Cantu are all lawful permanent residents
of the United States.  Petitioners Sanchez, and Cantu de Cabrera,
reside in Weslaco, Texas; Petitioners Lopez and Gracia reside in
Brownsville, and Edinburg, respectively, within the jurisdiction of
this Court.  Petitioners Ascencio, Merino, Gutierrez, and Cabrera
were stopped by Defendants at Ports of Entry, also within the
jurisdiction of this Court, and placed in exclusion proceedings.

3.  Respondent Immigration and Nationality Service is an executive
agency of the United States, with offices in Harlingen, Texas,

2

12&88

within the jurisdiction of this Court.

4.   Respondent E.M. Trominski is the District Director of the Harlingen, Texas, District of Respondent Immigration and Nationality Service, with offices in Harlingen, Texas, within the jurisdiction of this Court.

5.   Respondent Hon. Janet Reno is the duly appointed Attorney General of the United States.

### III.   THE FACTS

6.   Ramiro Gracia-Cantu, (A26 948 199), is a native and citizen of Mexico, who has resided in the United States as a lawful permanent resident since June 25, 1984.  His wife and daughter are citizens of the United States.

7.   On or about December 11, 1992, Mr. Gracia was convicted in State Court in Illinois of an offense allegedly relating to the distribution of a controlled substance, for which offense he was fined and sentenced to four years' probation.

9.   In approximately June, 1994, Defendants contacted Mr. Gracia, and asked him to present himself to the Investigations branch of the INS office in Harlingen, Texas.  Mr. Gracia obtained counsel, who was informed by the INS agent in charge of the case that he was to be served with an Order to Show Cause, (an "OSC"), initiating deportation proceedings, and a warrant of arrest.  It was agreed that Mr. Gracia would surrender on June 22, 1994, for service of the OSC, and to post bond.

10.   On June 22, 1994, Mr. Gracia appeared at the INS office in Harlingen, Texas, with counsel.  The OSC was served, and bond was posted.  During the processing the INS agent asked whether Mr.

1289

Gracia had his resident alien card with him. [1]   Counsel inquired
whether it was the agent's intention to confiscate his green card,
and was told that it was.   The agent informed her that it was the
practice of the Investigations branch of the Harlingen INS Office
to confiscate green cards in such cases, for fear that, if the
individual were ultimately deported, he or she might not surrender
it, but might continue to use it illegally.

11.   Counsel inquired of the Assistant District Director for
Investigations, and of the INS District Counsel, whether this was
in fact the practice.  Both confirmed that it was.

12.   Under protest, Mr. Gracia surrendered his green card, and was
given an I-94, valid only until December 21, 1994, with his photo,
and a very small, almost illegible stamp, stating that it is a
"Temporary Form I-551," and indicating that he was admitted for
permanent residence at "HLG/IR6/06-2584," and that he is under
bond, Plaintiffs' Exhibit A.   The I-94 contained no "employment
authorization" stamp.  Rather, in large, fully legible letters, it
bore the following notation:

> "DEPORTATION PROCEEDINGS INITIATED
> 241(a)(2)(B)(i) & 241(a)(2)(A)(iii)."

13.   Said document placed a cloud over Mr. Gracia's status as a
lawful permanent resident, interfering with the exercise of the
rights which attend that status.  Ultimately, at the insistence of
counsel, Mr. Gracia was issued a new replacement card, which does
not bear the offending notation.

14.   Plaintiff Arturo Lopez-Lozano, (A37 522 584), has been a
lawful permanent resident of the United States since June 16, 1981.

---

[1]   Hereinafter, resident alien cards, issued on forms I-551
and I-151, will be referred to as "green cards."

1290

CVbPDF - www.fenrir.com

On May 2, 1988, Mr. Lopez was convicted in the 105th District Court
of Kleberg County, Texas, of the aggravated possession of
marijuana, and placed under probation for a period of ten years.
The following day, Defendants initiated deportation proceedings
against Mr. Lopez, who conceded deportability, and applied for
relief from deportation under Section 212(c) of the Act, (8 USC
Sec. 1182(c)).  Following a hearing, an Immigration Judge in
Harlingen, Texas, denied said application in the exercise of
discretion.  Mr. Lopez appealed this decision to the Board of
Immigration Appeals, ("BIA"), who, on August 25, 1994, granted his
appeal, and remanded the case to the Immigration Judge for further
proceedings and entry of a new decision.

15.  Mr. Lopez' wife, three children, and step child, with whom he
resides in Brownsville, Texas, are all United States Citizens.

16.  On Thursday, December 22, 1994, Mr. Lopez made a casual and
innocent departure from Brownsville, Texas, to Matamoros, Mexico,
for the purpose of attempting to locate a stolen automobile that
belonged to his sister-in-law, and to buy some sodas for the
holidays.  He returned in the early morning hours of Friday,
December 23, 1994, and presented himself for inspection at the Port
of Entry in Brownsville, Texas, tendering his green card to the
official, Plaintiffs' Exhibit H, herein incorporated by reference.

17.  The official asked some questions, as to where he was coming
from, and what he was bringing.  Mr. Lopez stated that he was only
bringing some sodas, and attempted to explain about the car.  The
official also asked why the car he was driving had Florida plates,
and he explained that he and his wife were migrants, and that it
had been purchased in Florida.  Mr. Lopez has a speech impediment,
and had difficulty making himself understood, Id..

18.  The Officer requested that he get out of the car.  He
complied.  The vehicle, which was NOT carrying contraband, was

5

searched, both manually, and with a dog.  In the process, the lining of the ceiling was ripped. Eventually, Mr. Lopez was told to go inside, where he was questioned further.  During the questioning, the officers indicated that he was not supposed to have gone to Mexico, to which he replied that it was his understanding that he was now permitted to do so.   Nonetheless, his resident alien card, and his Texas driver's license, were confiscated by Defendants, and he was returned to Mexico, Id..

19.  Later in the day, his wife contacted his attorneys, the undersigned, who, given his membership in the putative class herein, contacted counsel for Defendants.  It was ascertained that he had been denied admission because the remand from the BIA had not been entered in INS' computer, which error was corrected. Defendants' counsel advised Mr. Lopez' counsel that he should return to the Port of Entry, and that he would be admitted.  Mr. Lopez' wife went back to Matamoros, and returned with him to the Brownsville Port of Entry, arriving at approximately 3:30 p.m.. They again requested that Mr. Lopez be admitted as a returning resident, and informed the official on duty that the computer now would reflect the fact that he was entitled to readmission.  The official refused to re-admit Mr. Lopez, or even check the computer, and instructed his wife that she would have to go to the INS Office in Harlingen, Texas, on Tuesday, December 27, to get some "paper" stating that INS had agreed to let him return to the United States. By this time, it was late in the afternoon, on the Friday before Christmas, Mr. Lopez' counsel had left the office, so there was nothing to do but wait, Id..

20.  On Tuesday, December 27, 1994, Mrs. Lopez went with counsel to the INS Office in Harlingen, and requested that he be re-admitted to the United States. Eventually, that request was granted, and on the afternoon of December 27, 1994, he was finally re-admitted, Id.

21.  Plaintiffs Juana Ascencio-Guzman, (A90 775 805), and Efrain

6

1292

Merino, (A91 495 976), are husband and wife, and are both lawful permanent residents of the United States, who reside in Houston, Texas. They have two United States citizen children. On or about July 3, 1994, they were stopped at the Brownsville, Texas, Port of Entry, following a brief departure to Mexico, and placed in exclusion proceedings, for allegedly attempting to illegally bring Mr. Merino's nephew, who was ill, into the United States for medical treatment. Their resident alien cards, Mr. Merino's Texas driver's license, and Ms. Ascencio's Texas I.D. card, were all confiscated by Defendants, who forced them to return to Mexico, where they were required to remain, causing great personal hardship to themselves, and their United States citizen children. They finally secured counsel, who, on October 31, 1994, was able to obtain permission for them to be paroled into the United States pending completion of their exclusion proceedings.

22. However, the parole documents given to Plaintiffs Ascencio and Merino, (Plaintiffs' Exhibit I, herein incorporated by reference), carry a notation that they have been paroled pending determination of their right to re-enter, thereby placing a cloud over their status as lawful permanent residents, and interfering with the exercise of the attendant rights, including the right to make innocent, brief, and casual border crossings, and, in the current political climate, to obtain employment in the United States.

23. Plaintiff Alejandra Gutierrez, (A41 858 559), is a lawful permanent resident of the United States. On or about August 4, 1994, she was stopped at the Brownsville, Texas, Port of Entry, and placed in exclusion proceedings, for allegedly attempting to illegally cross her sister into the United States. Defendants confiscated her green card, and forced her to return to Mexico. On January 6, 1995, Ms. Gutierrez obtained counsel, who immediately filed a request that she be paroled into the United States, without bond, (Plaintiffs' Exhibit J, herein incorporated by reference). To date, no reply has been received to said request.

7

1293

24.   Juan Sanchez-Salinas (A13 102 286) obtained lawful permanent residency in 1964.   As a result of complicated circumstances following a conviction for an offense involving a controlled substance, Mr. Sanchez was placed in exclusion proceedings, paroled into the U.S., and, ultimately, held in detention at the Port Isabel Service Processing Center.   His motion to terminate exclusion proceedings is pending before an Immigration Judge. Though counsel, Mr. Sanchez sought permission to be released from detention, upon payment of a bond.   Said request was granted, and on or about August 17, 1994, Mr. Sanchez posted bond, and was released.   He was given an I-94, with his photo and fingerprint. However, the document initially given Mr. Sanchez specified that it was "Not Valid For Employment," Plaintiffs' Exhibit K, herein incorporated by reference, which defect was cured only through the intervention of the SAUSA handling the instant action.

25.  The new card still places a cloud over Mr. Sanchez' residency, as it specifies that he is in exclusion proceedings.   Mr. Sanchez needs medical treatment which he desires to obtain in Mexico.   His counsel has raised the issue with Defendants, who have refused assurances that he would be re-paroled into the U.S..   As a result, he has been unable to obtain the needed medical treatment.

26. Adelita Cantu de Cabrera, (A38 102 369), was paroled into the United States on November 9, 1993, pending exclusion proceedings, Plaintiffs' Exhibit "M", herein incorporated by reference, but was initially denied employment authorization, unless and until she paid a fee, which error Defendants offered to cure only after being told that she was to be added as a Plaintiff herein.

27.  A lawful permanent resident who makes a "brief, casual, and innocent" departure from the U.S. and seeks readmission as a returning resident, who presents an I-94 such as Exhibits "A" "B" and "D", is more likely to be detained, and placed in exclusion proceedings, than would be the case if he presented his green card.

8

1294

CutePDF - www.texiia.com

28.   When a lawful permanent resident applies for admission as a returning resident at a port of entry under the jurisdiction of the Harlingen, Texas, INS Office, and Defendants have reason to believe that said person has committed an act which would subject him or her to exclusion proceedings, if criminal prosecution is also contemplated, it is the practice [2] of Defendants to parole the individual into the United States for prosecution, and place him or her under exclusion proceedings.  If the prosecution results in a conviction, it is the practice of Defendants to detain said individual at the Service Processing Center at Los Fresnos, Texas, pending exclusion proceedings.  Upon request of counsel, it is also Defendants' practice to permit said person to be paroled into the United States pending conclusion of the exclusion proceedings, and released from detention, usually upon payment of a bond.

29.   When a lawful permanent resident applies for admission as a returning resident at a port of entry under the jurisdiction of the Harlingen, Texas, INS Office, and Defendants have reason to believe that said person has committed an act which would subject him or her to exclusion proceedings, if criminal prosecution is not contemplated, it is the practice of Defendants to initiate exclusion proceedings, and force said person to return to Mexico, without advising him or her of the possibility of being paroled into the United States.  In such cases, unless the individual obtains counsel, it is very difficult to ascertain, and follow, the procedures necessary to request parole into the United States.

29.   In the Harlingen, Texas, INS District, when Defendants place lawful permanent resident under exclusion proceedings, it was, at the time of filing the instant action, Defendants' practice to confiscate their green cards, and other documents in their possession, such as their drivers' licenses or identification

---

[2]   As used herein, the term "practice" means an act performed or procedure followed in more than half of the instances described.

1295

cards, regardless of whether such documents had any evidentiary
value in either the criminal prosecution or exclusion proceedings,
and to refuse to return said documents, regardless of whether the
individual was returned to Mexico, or paroled into the United
States, and subsequently released, with or without bond, unless and
until all expulsion proceedings are terminated, in the alien's
favor, Plaintiffs' Exhibit L, herein incorporated by reference.

30.  INS has previously asserted to this Court that when a lawful
permanent resident who has posted bond in connection with
deportation proceedings, departs from the United States, the bond
is subject to either forfeiture or cancellation, in the discretion
of the Defendants, and has never retracted said assertion. [3]

31.  Many lawful permanent residents whose green cards have been
confiscated by Defendants because they have been placed in
exclusion or deportation proceedings have legitimate business and
personal needs which require them to make "casual, brief, and

---

[3]  In this regard, Plaintiffs would request that this Court
take judicial notice of Respondent's Answer to Petition for Writ of
Habeas Corpus and Request for Dismissal of Action, filed May 30,
1986, in the case of Lozano-Molina v. Sewell, C.A. B-86-101, at
paragraph 13, where Defendants assert that a departure to Mexico by
a lawful permanent resident who is at liberty on bond while under
deportation proceedings constitutes a violation of the terms of the
bond "because a demand upon the obligor to present the [alien]
would have been impossible."

In Molina v. Sewell, 983 F.2d 676 (5th Cir. 1993), the Court
reaffirmed the principle that a lawful permanent resident in
deportation proceedings does not lose his status as a lawful
permanent resident, or the rights and privileges attendant upon
that status.  It is also requested that this Court take judicial
notice of the fact that, notwithstanding this decision, however,
Defendants continued to prosecute exclusion proceedings against Mr.
Lozano-Molina, on the theory that his departure to Mexico, while
under deportation proceedings, was a factor "to be given some
weight in determining whether [his] departure was a meaningful
one," In re Lozano-Molina, A36 599 698, "Service Response to
Applicant's Motion To Terminate," filed on or about May 5, 1994, at
page 2, (Plaintiffs' Exhibit C, herein incorporated by reference).

1296

innocent" trips across the border into Mexico, and back, but are deterred from making such trips by the action of Defendants in confiscating their green cards, and providing them either with no substitute documentation, or with substitute documentation which greatly increases the possibility that they would not be allowed to re-enter, or be re-paroled, into the United States on their return.

32. A lawful permanent resident seeking employment who presents to a potential employer a substitute document such Exhibits "A" "B" "D" "I" "K" and "M" is more likely to be denied employment than would be the case if he presented his green card, or substitute documentation which places no cloud over his or her status as a lawful permanent resident.

33.   When Defendants provide replacement documentation to lawful permanent residents whose green cards were confiscated because they were placed in deportation or exclusion proceedings, it is Defendants' practice to limit the validity of those I-94's to a period of six (6) months, and to require that the residents return to the Harlingen Office of INS to renew their I-94's every six months, for the duration of the expulsion proceedings.

34.   Many lawful permanent residents whose green cards have been confiscated and who have received replacement documents which are valid for only six months either reside or are seasonally employed outside of the Rio Grande Valley, and are greatly inconvenienced by the requirement that they return to the Valley to renew them.

IV.   CLASS ALLEGATIONS

35.   The confiscation of the green cards of lawful permanent residents placed in deportation or exclusion proceedings in the Harlingen INS District, without provision of substitute documents which place no cloud over their status as lawful permanent residents, and the resultant curtailment of their rights and

11

(297)

privileges, has been a source of controversy with the Harlingen
Office of INS for at least a dozen years.

36.  On information and belief, Plaintiffs allege that at the time
of filing the instant action, it was the practice of one or more
branches of the Harlingen INS Office to confiscate the green cards
of lawful permanent residents who were placed under deportation or
exclusion proceedings, and to refuse to return the cards or provide
adequate substitute documentation for those who are released from,
or are not held in, detention.

37.  When Defendants confiscate the green card of a lawful
permanent resident placed in exclusion or deportation proceedings,
and do issue replacement documentation, it is their practice to
place notations on the replacement documentation which interfere
with the resident's ability to exercise the rights and privileges
of lawful permanent resident status, such as, inter alia, the
notation that the person is under deportation or exclusion
proceedings, is on bond, is not authorized to be employed, and/or
that the card is not valid for re-entry to the United States.

38.  Plaintiffs seek to represent the class of all those lawful
permanent residents who are under deportation or exclusion
proceedings, in whose cases no final order of deportation or
exclusion has been entered, who are not presently held in
detention, whose I-151 or I-551 cards have been confiscated by
Defendants, and are being retained by or under the authority of the
Harlingen Office of the Immigration and Naturalization Service.

39.  Mr. Gracia's and Lopez' claims are typical of the claims of
those putative class members under deportation proceedings, and
they will fairly and adequately protect the interests of the class.

40.  The claims of Plaintiffs Ascencio, Merino, Gutierrez, and
Sanchez are typical of the claims of those putative class members

1298

under exclusion proceedings, and they will fairly and adequately protect the interests of the class.

41. The class is so numerous that joinder of all members is impracticable, and there are questions of law and fact which are common to the class.

42. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for the Defendants.

43. Defendants have also acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the whole class.

44. Attorney Lisa Brodyaga has been certified as an immigration specialist by the Texas Board of Legal Specialization for over ten years, and is experienced in federal court litigation in cases involving immigration matters. Co-counsel, Thelma O. Garcia, is also an experienced litigator. The two have frequently collaborated in federal litigation involving INS. They are able, and have the necessary resources, and commitment, to adequately represent the interests of the instant class.

V.   FIRST CAUSE OF ACTION - HABEAS CORPUS

45. Plaintiffs herein incorporate by reference the allegations of Paragraphs 1 - 44, inclusive.

46. The confiscation of the I-151 or I-551 card of a lawful permanent resident, who is under deportation or exclusion proceedings, but who is not held in detention, prior to the issuance of a final order of deportation or exclusion, and without provision of replacement documentation which places no cloud over

13

1299

the status of the resident, violates that person's rights as a lawful permanent resident alien, in that it interferes with the exercise of the rights and privileges attendant upon that status, and constitutes an undue restriction on that person's liberty.

47. Particularly where any replacement document provided is valid only for a limited period of time, carries a notation that the person is under exclusion or deportation proceedings, is out on bond, is not stamped "employment authorized," and/or states that it is not valid for re-entry, or for employment, it places a cloud over the person's status as a lawful permanent resident, interfering with the exercise of his or her rights as a lawful permanent resident, including the ability to obtain and maintain employment, and to travel freely.

48. A lawful permanent resident who presents a document such as Exhibits "A" "B" "D" "I" "K" or "M" to a potential employer is more likely to be denied employment, than if s/he presented a green card, or other document which places no cloud over his or her status as a lawful permanent resident.

49. A lawful permanent resident who makes a "brief, casual, and innocent" departure from the United States and thereafter applies for admission as a returning resident, presenting a document such as Exhibits "A" "B" or "D," is more likely to be detained and placed in exclusion proceedings upon return, than would be the case if he or she presented a green card.

50. In the case of lawful permanent resident in exclusion proceedings who has been paroled into the United States, and makes a "brief, casual and innocent" departure from the United States and thereafter returns, presenting a document such as Exhibits "I" "K" or "M" it is the practice of Defendants not to re-parole the individual into the United States, unless the person makes a new application for parole to the INS District Director, which process

14

CAMPDF - www.texisa.com

usually takes approximately two to four weeks.

51.  Plaintiffs are being deprived of their liberty, without Due
Process of Law, in that they are subject to restrictions on their
liberty not shared by the population at large, and they are
entitled to a Writ of Habeas Corpus, freeing them from this
unlawful restraint.

VI.   SECOND CAUSE OF ACTION - INJUNCTIVE RELIEF

52.  Plaintiffs hereby incorporate by reference the allegations of
Paragraphs 1 through 51 above.

53.  The confiscation of Plaintiffs' lawful permanent resident
cards, and provision of substitute documents which place a cloud
over their status as lawful permanent residents, deprives them of
both liberty and property interests, without Due Process of Law,
and Plaintiffs are entitled to injunctive relief, enjoining and
restraining Defendants from such conduct.

VII.   THIRD CAUSE OF ACTION - DECLARATORY JUDGMENT

54.  Plaintiffs hereby incorporate by reference the allegations of
Paragraphs 1 through 52 above.

55.  The confiscation of Plaintiffs' lawful permanent resident
cards, and provision of substitute documents which place a cloud
over their status as lawful permanent residents, deprives them of
liberty and property interests, without Due Process of Law, and
Plaintiffs are entitled to declaratory relief, declaring that such
conduct is a violation of the rights and privileges attendant upon
their status as lawful permanent residents of the United States.

VIII.   FOURTH CAUSE OF ACTION - DECLARATORY JUDGMENT

15

56.  Plaintiffs herein incorporate by reference the allegations of Paragraphs 1 through 55 above.

57.  Under <u>Molina v. Sewell</u>, 983 F.2d 676 (5th Cir. 1993), the facts that a lawful permanent resident is under deportation proceedings, and/or has posted bond in conjunction with such proceedings, are not relevant factors to be taken into consideration in determining whether or not a departure from the United States is a "meaningful" one, as that term is used in <u>Rosenberg v. Fleuti</u>, 374 U.S. 449 (1963).

58.  The consideration of such facts in determining whether or not to re-admit a class member who is applying for admission as a returning resident of the United States violates that person's rights as a lawful permanent resident.

59.  Plaintiffs are therefore entitled to a declaratory judgment, declaring that it is a violation of their rights as lawful permanent residents of the United States for Defendants to take into consideration the facts that they are under deportation proceedings, and/or are under bond, in determining whether to readmit them as lawful permanent residents or to hold them in exclusion proceedings when they apply for readmission as returning residents of the United States.

IX.  FIFTH CAUSE OF ACTION - INJUNCTIVE RELIEF

60.  Plaintiffs hereby incorporate by reference the allegations of Paragraphs 1 through 59 above.

61.  Plaintiffs are entitled to a preliminary and permanent injunction, restraining and enjoining Defendants from considering the fact that a lawful permanent resident is under deportation proceedings, or has posted bond in conjunction therewith, in determining whether he should be admitted to the United States as

16

1302

a returning resident, or held in exclusion proceedings.

### X.   SIXTH CAUSE OF ACTION - DECLARATORY JUDGMENT

62.  Plaintiffs hereby incorporate by reference the allegations of Paragraphs 1 through 61 above.

63.  The cancellation or forfeiture of the bond of a class member, for the sole reason that he has made a departure from the United States, deprives that person of liberty without Due Process of Law.

64.  Plaintiffs are therefore entitled to a declaratory judgment, declaring that the cancellation or forfeiture of the bond of a class member, for the sole reason that he has made a departure from the United States, deprives him of liberty and property interests, without Due Process of Law.

### XI.   SEVENTH CAUSE OF ACTION - INJUNCTIVE RELIEF

65.  Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 64 above.

66.  Plaintiffs are therefore entitled to preliminary and permanent injunctive relief, restraining and enjoining agents of the Defendants from forfeiting or canceling the bond of a lawful permanent resident who is under deportation proceedings, for the sole reason that he has made a departure from the United States.

### PRAYER FOR RELIEF

Plaintiffs therefore seek a Writ of Habeas Corpus, ordering Defendants to free them from the unlawful restraints which they have placed on them, by returning their green cards, evidencing their status as lawful permanent residents of the United States, or by providing them with substitute documentation which places no

17

(303

cloud over their status as lawful permanent residents.

Plaintiffs also request both preliminary and permanent injunctive relief, enjoining and restraining Defendants from confiscating the green cards of lawful permanent resident aliens who have been placed in deportation or exclusion proceedings, against whom there is no final deportation order, and who are not held in custody, and from not returning the green cards of such lawful permanent residents from whom they have been previously confiscated, or from not providing substitute documentation which places no cloud over their status as lawful permanent residents.

Plaintiffs also request both preliminary and permanent injunctive relief, enjoining and restraining Defendants from taking any actions that would interfere with the right of a lawful permanent resident of the United States to live and work in this country, including, but not limited to, failing to parole a lawful permanent resident placed in exclusion proceedings into the United States during the pendency of such proceedings, and failing to re-parole such a person back into the United States following a brief, casual, and innocent departure.

Plaintiffs also seek a declaratory judgment, declaring that the confiscation of, and the refusal to return, the green cards of lawful permanent resident aliens placed in deportation or exclusion proceedings, who are not held in custody, and against whom there exists no final order of deportation or exclusion, without provision of a substitute document which places no cloud over their status as lawful permanent residents, is a violation of their rights as lawful permanent residents.

Plaintiffs also seek a declaratory judgment, declaring that it is a violation of Plaintiffs' rights as lawful permanent residents of the United States for Defendants to take any action that interferes with their rights to live and work in this country, including, but

18

1304

not limited to, failing to parole a lawful permanent resident placed in exclusion proceedings into the United States during the pendency of such proceedings, and failing to re-parole such a person back into the United States following a brief, casual, and innocent departure.

Plaintiffs also seek a declaratory judgment, declaring that the facts that a lawful permanent resident is under deportation proceedings, and/or has posted bond in conjunction therewith, are not relevant factors to be taken into consideration in determining whether a departure from the United States is a "meaningful" one, as that term is used in Rosenberg v. Fleuti, 374 U.S. 449 (1963).

Plaintiffs also seek a preliminary and permanent injunction, restraining and enjoining agents of the Defendants from considering the fact that a lawful permanent resident is under deportation proceedings, or has posted bond in conjunction therewith, in determining whether he should be admitted to the United States as a returning resident, or held in exclusion proceedings.

Plaintiffs also seek a preliminary and permanent injunction, restraining and enjoining agents of the Defendants from canceling or forfeiting the bond of a lawful permanent resident who is under deportation proceedings, solely for the reason that the individual has made a departure from the United States.

Plaintiffs also seek a declaratory judgment, declaring that it violates Plaintiffs' rights to cancel or forfeit the bond of a lawful permanent resident under deportation proceedings, solely for the reason that he has made a departure from the United States.

And finally, Plaintiffs seek costs, reasonable attorneys' fees, and such other and further relief as this Court may deem appropriate and justified under all of the circumstances herein.

1305

Respectfully Submitted,

Lisa S. Brodyaga
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226

Thelma O. Garcia
301 E. Madison
Harlingen, Texas 78550
(210) 425-3701

## VERIFICATION

I, Lisa S. Brodyaga, hereby certify that I am familiar with the facts set forth above, and that they are true and correct to the best of my knowledge and belief.



## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was personally served on John Carte, SAUSA, and Nancy Masso, AUSA, 1036 E. Levee, Brownsville, Texas, this 17th day of January, 1995.



20

1306

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| JUANA ASCENCIO-GUZMAN, | ) |
| | ) |
| et al, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )    C.A. No. B-215 |
| | ) |
| E.M. TROMINSKI, | ) |
| | ) |
|     District Director, | ) |
|     Immigration and | ) |
|     Naturalization Service, | ) |
| | ) |
| HON. JANET RENO, | ) |
| | ) |
|     United States | ) |
|     Attorney General | ) |
| | ) |
|     and | ) |
| | ) |
| IMMIGRATION AND NATURALIZATION | ) |
|     SERVICE, | ) |
| | ) |
|     Defendants. | ) |

EXHIBIT "H"

1307

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

HERRERA, et al )
)
v. ) C.A. No. B-94-215
)
TROMINSKI, et al. )
_____ )

DECLARATION OF ARTURO LOPEZ-LOZANO

I, Arturo Lopez-Lozano, hereby declare under penalty of perjury of
the laws of the United States as follows:

I am a lawful permanent resident of the United States. I
immigrated on or about June 16, 1981. I am married to a United
States citizen, with whom I have three U.S. Citizen children, and
one step-child. We live in Brownsville, Texas.

Since May of 1988, I have been under deportation proceedings. My
case was remanded from the Board of Immigration Appeals in August
of 1994, and I am scheduled to appear again before an Immigration
Judge in January of 1995.

On Thursday, December 22, 1994, I crossed from Brownsville into
Matamoros. A car belonging to my wife's sister had been stolen
about a week earlier, and we had received a call saying that it was
located at such-and-such a place in Matamoros, and that we could go
pick it up. Since I am familiar with Matamoros, it was agreed that
I should go get it. I also planned to get some sodas for
Christmas. I crossed over in the evening, but was unable to locate
it. So I came back, attempting to cross through the New Bridge,
during the early morning hours of Friday, December 23, 1994.

At the inspection station, I took out my wallet, and showed the
official my resident alien card. He asked some questions, about
where I was coming from, and what I was bringing. I told him that
I was just bringing some sodas, and attempted to explain about the
car. They asked why the car had Florida plates, and I explained
that my wife and I migrate, and we had bought it in Florida. I
have a speech defect, and I think the officer may not have

1308

CMPDF - www.fastio.com

understood me very well.

The officer, who was dressed in blue, asked me to get out of the car.  I complied.  They began to search it, but did not find anything.  After a few minutes, one of the officers drove the car over to the secondary inspection area, where they continued to search.  They put their dog in it, and even took out the seat, but there was nothing there.  I later noticed that they had torn the lining of the ceiling, apparently still looking for contraband.

Eventually, they had me go inside.  They asked if I had ever been in jail, and I told them yes.  They asked for how long, and I said about three weeks.  They asked for, and I gave them, my permanent resident card, and driver's license, which they kept.  They asked if I knew that I was not supposed to go across into Mexico, and I said that there had been a time when I could not, but that now I believed that I could.

Eventually, they told me that I had to go back to Mexico, and that they were keeping my documents.  So I returned.  That was when I noticed that they had ripped the ceiling lining of the car.  I called my wife, who called my attorney.

On Friday, December 23rd, in the early afternoon, my wife came to Matamoros to look for me.  She found me asleep in my car in front of a friend's house.  My wife told me that she had talked to the attorney, and that everything had been arranged.  She said that the attorney had told her that the problem had been that INS had not put the Decision of the BIA, remanding my case to the Immigration Judge, in the computer, but that it had now been entered, and if I went back to the Bridge, they would let me back in.

So she and I went back to the Bridge.  We arrived somewhere around 3:30 in the afternoon.  I showed them an expired driver's license by means of identification.  My wife tried to explain what the attorney had told her, but they were not interested.  The official refused to check the computer, and told her that she had to go with the attorney to the INS office in Harlingen, the following Tuesday, and ask for some paper, saying that INS was willing to let me back in.  She argued with them about what I was supposed to do for Christmas, since I had no-one in Matamoros, and would have to sleep in the car.  They said that was my problem, and still refused to see if there was anything in the computer.  It was by then too late to do anything, so we had to wait until Tuesday.

1309

CUldPDF - www.fastio.com

On Tuesday, the Attorney went with my wife to INS in Harlingen.
The attorney was confident that they would let me in, so she told
my wife to go back to Matamoros to get me, bring me to the Bridge,
and call her from there.  When we called, the attorney said that
the INS Officer from Harlingen who had interviewed my wife had just
called her, about half an hour earlier, telling her that everything
was arranged.  So my wife and I went back to the officials at the
Bridge.  This time they let me in, and gave me back my documents,
although they were very surprised that I was being allowed to
return.  They asked my wife several times whether she was related
to Ms. Gonzalez, (the INS Official in Harlingen who had interviewed
my wife), as if they still believed that I should not be allowed to
return, and thought that something improper was happening.

Further Declarant sayeth not.

_Arturo López_
_____

### CERTIFICATE OF INTERPRETER

I, Lisa Brodyaga, hereby certify that I am competent in both the
English and Spanish languages, that the above was prepared by me on
the basis of the contemporaneous oral statements of the Declarant,
that I read and explained the above to him in Spanish, that he
affirmed that it was true and correct, and in witness thereof,
signed the same in my presence, this 27th day of December, 1994.

_Lisa S. Brodyaga_
_____

1310

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUANA ASCENCIO-GUZMAN,     )
    )
et al,    )
    )
   Plaintiffs,    )
    )
v.    )   C.A. No. B-215
    )
E.M. TROMINSKI,    )
    )
   District Director,    )
   Immigration and    )
   Naturalization Service,    )
    )
HON. JANET RENO,    )
    )
   United States    )
   Attorney General    )
    )
   and    )
    )
IMMIGRATION AND NATURALIZATION  )
   SERVICE,    )
    )
   Defendants.    )
_____)

EXHIBIT "I"

1311

Departure Number

268752624  04

Immigration and
Naturalization Service

I-94
Departure Record

Returning resident
applicant at BRO on
11/21/94. Paroled pending
determination of right to
reenter. Employment Auth.

EMPLOYMENT
AUTHORIZED

| 14 Family Name | | | | 16 Birth Date (Day/Mo./Yr) |
|---|---|---|---|---|
| MORINO, | | | | |
| 15 First (Given) Name | | | | 0 5  0 9 7 1 |
| Efrain | | | | |
| 17 Country of Citizenship | | | | |
| Mexico | | | | |

See Other Side                    STAPLE HERE

Departure Number

268752606  04

Immigration and
Naturalization Service

I-94
Departure Record

Returning resident
applicant at BRO on
11/21/94. Paroled pending
determination of right to
reenter. Employment Auth.

EMPLOYMENT
AUTHORIZED

| 14 Family Name | | | | 16 Birth Date (Day/Mo./Yr) |
|---|---|---|---|---|
| ASCENCIO, - Guzman | | | | |
| 15 First (Given) Name | | | | 0 8 0 3 6 2 |
| Juana | | | | |
| 17 Country of Citizenship | | | | |
| Mexico | | | | |

See Other Side                    STAPLE HERE

1312

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


JUANA ASCENCIO-GUZMAN,           )
                                 )
et al,                           )
                                 )
     Plaintiffs,                 )
                                 )
v.                               )          C.A. No. B-215
                                 )
E.M. TROMINSKI,                  )
                                 )
     District Director,          )
     Immigration and             )
     Naturalization Service,     )
                                 )
HON. JANET RENO,                 )
                                 )
     United States               )
     Attorney General            )
                                 )
     and                         )
                                 )
IMMIGRATION AND NATURALIZATION   )
     SERVICE,                    )
                                 )
     Defendants.                 )
_____)


EXHIBIT "J"

1313

**LAW OFFICES OF REFUGIO DEL RIO GRANDE**
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226
January 6, 1995

Immigration and Naturalization Service
2102 Teege
Harlingen, Texas 78550

Re:   Alejandra Gutierrez
      A41 858 559

Attn:  Larry Doyle, ADDE

Dear Mr. Doyle:

Pursuant to 8 CFR 212.5(b), we request that the above-captioned
lawful permanent resident of the United States be paroled into the
U.S., pending final resolution of her exclusion proceedings.  It is
also requested that she be given evidence of her status as lawful
permanent residents, in accordance with the pending settlement of
<u>Herrera et al v. Trominski et al</u>, CA B-94-215.

Ms. Gutierrez is alleged to be excludable for attempting to bring
her sister into the United States in violation of law, and will be
seeking relief from exclusion pursuant to the (first clause of)
Section 212(d)(11) of the Act.

This form of relief has not yet been finally judically established
as applying in such cases, so we anticipate that the exclusion
proceedings may be prolonged.  Among other hardships, she has
already lost her employment as a Houston Bus Driver as a result of
the instant problem.

We would therefore request that she be paroled into the United
States, without bond, given her scarce financial resources.

Sincerely,

Lisa S. Brodyaga
Attorney at Law

1314

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUANA ASCENCIO-GUZMAN, | ) | |
| | ) | |
| et al, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. B-215 |
| | ) | |
| E.M. TROMINSKI, | ) | |
| | ) | |
|     District Director, | ) | |
|     Immigration and | ) | |
|     Naturalization Service, | ) | |
| | ) | |
| HON. JANET RENO, | ) | |
| | ) | |
|     United States | ) | |
|     Attorney General | ) | |
| | ) | |
|     and | ) | |
| | ) | |
| IMMIGRATION AND NATURALIZATION | ) | |
|     SERVICE, | ) | |
| | ) | |
|     Defendants. | ) | |

EXHIBIT "K"

1315

Departure Number

**043627632 02**

PAROLED  PURSUANT TO SEC. 212(d) (5)
OF THE I & N ACT TO:
*INDEFINITELY*
PURPOSE: *PENDING*
*EXCLUSION PROCEEDINGS*
*PISPC 08/17/94 P03*
(Port)        (Date)        (Officer)

Immigration and
Naturalization Service

I-94
Departure Record

*NOT VALID FOR EMPLOYMENT.*

14 Family Name
*SANCHEZ SALINAS*

15 First (Given) Name
*JUAN*

16 Birth Date (Day Mo Yr)
*28,07,39*

17 Country of Citizenship
*MEXICO*

*A# 13-102-286*

**See Other Side**                    **STAPLE HERE**

**Warning** - A nonimmigrant who accepts unauthorized employment is subject to deportation

**Important** - Retain this permit in your possession, *you must surrender it when you leave the U.S.* Failure to do so may delay your entry into the U.S. in the future

You are authorized to stay in the U.S. only until the date written on this form. To remain past this date, without permission from immigration authorities, is a violation of the law

**Surrender this permit when you leave the U.S.:**
   By sea or air, to the transportation line,
   Across the Canadian border, to a Canadian Official,
   Across the Mexican border, to a U.S. Official

Students planning to reenter the U.S. within 30 days to return to the same school, see "Arrival-Departure" on page 2 of Form I-20 prior to surrendering this permit.

**Record of Changes**

**Port:**                              **Departure Record**

**Date.**

**Carrier:**

**Flight #/Ship Name:**

For sale by the Superintendent of Documents, U.S. Government Printing Office
Washington, D.C. 20402

1316

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUANA ASCENCIO-GUZMAN,          )
                               )
et al,                         )
                               )
      Plaintiffs,              )
                               )
v.                             )          C.A. No. B-215
                               )
E.M. TROMINSKI,                )
                               )
      District Director,       )
      Immigration and          )
      Naturalization Service,  )
                               )
HON. JANET RENO,               )
                               )
      United States            )
      Attorney General         )
                               )
      and                      )
                               )
IMMIGRATION AND NATURALIZATION )
      SERVICE,                 )
                               )
      Defendants.              )
_____)

EXHIBIT "L"



### *John A. Stanton*
**Attorney & Counselor At Law**

121 1/2 N. Woodland Blvd. Ste.3
Deland, Florida 32720

RECEIVED

94 JUL 11 PH 12: 40

.... TX

**Office**
(904) 736-4683

**July 8, 1994**

The Immigration and Naturalization Services
Records Department
2102 Peege Ave.
Harlingen, TX 78550

RE: Ester Martinez's documents, File #91-132-930(T)

To: Whom it may Concern:

Please be informed that Mrs. Martinez has retained my office to
assist her in the return of her Driver's license, Passport(Mexican) and her
Alien Registration cards and other documents siezed from her on about April
17, 1994.

I have been in contact with several individuals at the INS office,
including Mr. Eduardo Alaniz. I was instructed to submitt a G-28, which was
done, on behalf of Mrs. Martinez. As of to date I have made several attempts
to regain my clients' documents but little success.

I do not see where these documents seized by the Border Patrol have any
relevance to any deportation proceedings which maybe pending against Mrs. Martinez.
My client needs her driver's license, social security card, alien registration
card and other documents which would go to her being in the United States legally.
I am now requesting that these documents be forwarded to my office to be returned
to Mrs. Martinez.

Your prompt attention to this important matter is greatly appreciated.

Respectfully Yours!

John A. Stanton, Esquire

JAS/

1318

July 19, 1994

John A. Stanton
Attorney and Counselor At Law
121 1/2 N. Woodland Blvd., Ste. 3
Deland, FL  32720

RE:  Martinez-Martinez, Esther
     A91 132 930

Dear Mr. Stanton:

A review of your client's case reveals Ms. Martinez was processed for an exclusion hearing upon her application for admission.  This action was taken after her arrest by agents of the United States Customs Service due to discovery of narcotics in the vehicle she was traveling in.

Ms. Martinez will be scheduled for a hearing before an Immigration Judge concerning her admission to the United States and return of her documents.

Sincerely,

Larry P. Doyle
Assistant District Director
  For Examinations

LPD/hv

1319

**LAW OFFICES OF REFUGIO DEL RIO GRANDE**
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226
October 8, 1994

Immigration and Naturalization Service
2102 Teege
Harlingen, Texas 78550

Re:   Ester Martinez
      A91 132 930
Attn:  Deportations

Gentlepersons:

Ms. Martinez is a lawful permanent resident in exclusion
proceedings.   We contend that such proceedings should be
terminated, and that, in the alternative, she is eligible for
relief from exclusion under Section 212(c) of the Act.

She is not being held in detention, and we would therefore request
that she be given evidence of her status as a lawful permanent
resident, in accordance with the pending settlement of <u>Herrera et
al v. Trominski et al</u>, CA B-94-215.


Sincerely,



Lisa S. Brodyaga
Attorney at Law

1320



02

Returning resident
applicant at Brownsville
on 4/17/94.  Paroled pend-
ing determination of right
to reenter. Employment
Authorized.

1. Family Name
Martinez-Martinez

2. First (Given) Name
Esther

3. Birth Date (Day/Mo/Yr)
03 | 11 | 55

4. Country of Citizenship
Mexico

5. Sex (Male or Female)
Female

6. Passport Number
A91 132 930

7. Airline and Flight Number

8. Country Where You Live
USA

9. City Where You Boarded

10. City Where Visa Was Issued

11. Date Issued (Day/Mo/Yr)

12. Address While in the United States (Number and Street)
209 S. Chandler Rd.

13. City and State
Deland, Florida  33720

132/

CitiPDF - www.faxio.com

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
OFFICE OF THE IMMIGRATION JUDGE
201 E. JACKSON, HARLINGEN, TX  78550

THE MATTER OF:                    )
Martinez Martinez - Esther        )    CASE NO. A 91-132-930
          APPLICANT               )
                                  )
EXCLUSION PROCEEDINGS             )

Lisa Brodyaga, Esq.                   District Counsel
  (hand-served)                       U. S. Immigration and
                                        Naturalization Service
                                      2102 Teege Avenue
                                      Harlingen, TX  78550

ORDER OF THE IMMIGRATION JUDGE

After considering the facts and circumstances of this case and as
there is no opposition from the parties, it is HEREBY ORDERED that these
proceedings be terminated *based on the parties' agreement that Applic*
*a Fleuti departure and, therefore, is not attempting an "entr*

Dated this ___19th___ day of ___October_____, 1994.

                                    _Howard Achtsam_
                                    HOWARD ACHTSAM
                                    Immigration Judge

Copy of this decision has been served upon the parties.

Waived by Both Parties

/0009E

1322

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUANA ASCENCIO-GUZMAN,              )
                                    )
et al,                              )
                                    )
     Plaintiffs,                    )
                                    )
v.                                  )          C.A. No. B-215
                                    )
E.M. TROMINSKI,                     )
                                    )
     District Director,             )
     Immigration and                )
     Naturalization Service,        )
                                    )
HON. JANET RENO,                    )
                                    )
     United States                  )
     Attorney General               )
                                    )
     and                            )
                                    )
IMMIGRATION AND NATURALIZATION      )
     SERVICE,                       )
                                    )
     Defendants.                    )
_____)

EXHIBIT "M"

1323

Número de salida

**2520 36117 01**

PAROLED PURSUANT TO SEC. 212(d) (5)
OF THE I & N ACT TO:

Conclusion of

PURPOSE: Exclusion

Proceedings

Servicio de Inmigración
y Naturalización

I-94
Registro de salida

(Port)     (Date)     (until?)

PISPC  11/9/93  DP

A38 102 369          BOND POSTED

14 Apellido

C,A,N,T,U,-,D,E, ,C,A,B,R,E,R,A,

15 Primer nombre

A,d,e,l,i,t,a,

16. Fecha de nac. (día/mes/año)

2,4,0,4,5,6,

17 Ciudadanía

M,e,x,i,c,o,

CMJPDF - www.fasiio.com

**Aviso** -Si la persona que no es inmigrante acepta empleo sin autorización está sujeta a deportación.

**Nota importante** - Retenga Ud. este permiso que debe presentar al salir de E.U. *Al no hacerlo prolongará su entrada a E.U. en el futuro.*

UD. está autorizado a quedarse en E.U. solamente hasta la fecha indicada en esta planilla. Al pasar la fecha indicada sin el permiso de las autoridades de Inmigración seria violar la ley.

**Entréguele este permiso al salir de E.U.**
- A la línea de transportación, ya sea por mar o por aire;
- al oficial canadiense al cruzar la frontera canadiense;
- al cruzar la frontera mejicana.

E _____ ?— a entrar a los E.U. con plazo de 30 días para asistir a
la _____ 5—a y salida" en página 2, Formulario I-20 antes de
et _____ b —**Record of Changes**

_____

_____ R T

_____

P _____

D _____         **Departure Record**

C _____

**Flight #/Ship Name**

1325