UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 2 8 1995

Michael N. Milby, Clerk

HERRERA, et al                    )
                                  )
v.                                )      C.A. No.  B-94-215
                                  )
TROMINSKI, et al.                 )
_____    )

PLAINTIFFS' (OPPOSED) MOTION FOR DEFAULT JUDGMENT

Come Plaintiffs, and pursuant to Rule 55, Federal Rules of Civil
Procedure, and based on the pleadings and exhibits on file herein,
respectfully move this Honorable Court for a default judgment, and
in support thereof, would respectfully show as follows:

The instant action was filed on July 15, 1994.  Timely service was
accomplished on all Defendants, the United States Attorney in
Houston, and the U.S. Attorney General.

On July 23, 1994, Plaintiffs served their first set of requests for
admission, (Plaintiffs' Exhibit "G" filed December 6, 1994, as an
exhibit to Plaintiffs' Motion for Class Certification).   No
responsive pleading was ever received.

On July 28, 1994, Plaintiffs filed and served their first amended
complaint, simultaneously, requesting a preliminary injunction.

On  December  6,  1994,  Plaintiffs  filed  a  motion  for  class
certification, and requested a hearing thereon.

On December 5, 1994, Plaintiffs served their first set of requests
for production, (herein incorporated by reference as Plaintiffs'
Exhibit "N").  None of the documents requested therein have ever
been produced.

1259

On or about December 20, 1994, Defendants filed an agreed motion, requesting an extension to, and including January 21, 1995, [1] in which to respond to Plaintiffs' First Amended Complaint. By informal agreement of counsel, that date was further extended.

Plaintiffs' first set of requests for production, and second set of requests for admission, were the subject of similar, informal agreements between counsel.

On January 17, 1995, Plaintiffs filed an (opposed) motion, seeking leave to file their Second Amended Complaint, removing one named Plaintiff who is deceased, and adding several others.

On February 8, 1995, Plaintiffs served on Defendants a document entitled "Proposed Partial Settlement, and Discussion of Outstanding Issues," [2] in order to facilitate a formal determination by Defendants of the extent to which settlement was possible. To date, the terms of said proposed settlement have not been accepted, and no counter proposal has been received.

On February 16, 1995, Plaintiffs served their second set of requests for admission, (herein incorporated by reference as Plaintiffs' Exhibit "O"). To date, no response has been received.

In early 1995, situations arose with respect to two persons whom Plaintiffs' consider to be members of the putative class herein, involving the rights at issue. In one case, (Jesus Garza-Pacheco), the issue involved extension of the employment authorization document of a long-time permanent resident whose case has, admittedly, become a procedural nightmare, and whose status as a

---

[1] The pleading states January 21, 1994, but this is obviously a typographical error.

[2] Because this document falls within the realm of settlement negotiations, it is not being presented to the Court.

2

member of the putative class is at issue.

The other involves a person in exclusion proceedings, (Juana Ascencio-Guzman, the lead plaintiff in the second amended complaint), who has been paroled into the United States during the pendency of these proceedings. Her mother is hospitalized in Mexico, and she has requested assurances that if she travels to Mexico to visit her mother, and in the absence of changed circumstances justifying a refusal, she will be re-paroled into the United States on her return.

Negotiations were underway with Defendants' counsel to find a way of resolving these individual problems in a manner which did not compromise the rights, or legal positions, of either party.

In mid-March, 1995, Plaintiffs' counsel was informed that the Special United States Attorney representing Defendants would no longer be involved with the case, and that a new attorney would be filing a notice of appearance. In order to ensure that there were no misunderstandings regarding the due dates of Defendants' pleadings, on March 17, 1995, Plaintiffs prepared, and served on the Office of the United States Attorney in Brownsville, both by mail, and by FAX, a document entitled "Advisal of Due Dates For Answering the Instant Complaint, and Responding to Plaintiffs' First Set of Requests for Production of Documents and Plaintiffs' Second Set of Requests for Admission and Similar Unresolved Matters" (herein incorporated by reference as Plaintiffs' Exhibit "P").

In that document, Plaintiffs advised Defendants that the informal extensions which had previously been granted for filing Defendants Answer, responding to Plaintiffs' outstanding discovery requests, and resolving the problems of Ms. Ascencio-Guzman, and Mr. Garza-Pacheco, would expire on March 24, 1995, (Id.).

3

1261

On March 20, 1995, Plaintiffs filed an unopposed request for
resetting of the status conference, which had been scheduled for
April 7, 1995, seeking that it be rescheduled for April 17, 1995.
This request was made at the behest of an attorney from the Office
of Immigration Litigation, Regina Byrd, Esq., who advised the
undersigned that although she had been assigned to monitor the
instant case from its inception, she would now be undertaking
direct control of the case, and that she needed additional time to
familiarize herself with the file, and attempt to obtain final
approval of the tentative agreements that had been reached.

Said attorney also requested that the deadlines noted in Exhibit
"P" be further extended, which request Plaintiffs' counsel
conditioned upon an agreement to provide some form of temporary
relief to Ms. Ascencio-Guzman and Mr. Garza-Pacheco, so that they
would not be harmed by further delay in the case.  No such
agreement was reached, so the deadlines were not further extended.

On Tuesday, March 28, 1995, not having received any further word
from Defendants, Plaintiffs' counsel called the Office of the
Clerk, to inquire whether Defendants had recently filed a notice of
substitution of counsel, or other pleadings, and was informed that
nothing had been received from the Defendants in March, 1995.

Plaintiffs' counsel has conferred with Defendants' counsel of
record herein, to wit, John Carte, Esq., who informed her that he
had been advised by his employer that he was no longer involved in
the case, but that to the extent he is still listed as counsel of
record, he would oppose the motion.  Counsel also conferred
telephonically with Regina Byrd, Attorney, and was informed that
Defendants oppose the motion.

WHEREFORE, it is respectfully urged that the Default of Defendants
be entered, and that a hearing be held, pursuant to Rule 55(e),
Federal Rules of Civil Procedure, to determine the nature and scope

1262

of the relief to which Plaintiffs are entitled.

Respectfully Submitted,

Lisa S. Brodyaga
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226

Thelma O. Garcia
301 E. Madison
Harlingen, Texas 78550
(210) 425-3701

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was personally served on the Office of the U.S. Attorney, 1036 E. Levee, Brownsville, Texas, 78520, and that an additional copy was mailed to Regina Byrd, Attorney, OIL, U.S. Department of Justice, Civil Division, Box 878, Ben Franklin Station, Washington, D.C. 20044, this 28th day of March, 1995.



1263

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| HERRERA, et al | ) | |
| | ) | |
| v. | ) | C.A. No.  B-94-215 |
| | ) | |
| TROMINSKI, et al. | ) | |
| | ) | |

EXHIBIT "N"

1264

CUtPDF - www.fineite.com

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JULIO HERRERA-LOA, et al,       )
                                )
                                )
v.                              )        C.A. No. B-215
                                )
                                )
E.M. TROMINSKI, et al.          )
_____  )

PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Come Plaintiffs, by and through the undersigned, and, pursuant to
Rule 34, F.R.Civ.P., present their first set of requests for
production of documents, and request that within thirty (30) days
of service of same, Defendants be permitted to inspect and copy, or
that copies be made available to them of, the following documents:

1.  The Immigration A-files of all persons whom Defendants have
identified as possible members of the putative class herein;

2.  All memoranda, instructions, correspondence, and other written
records which describe or discuss actions which are contemplated,
which are to be taken, or which have been taken, by Defendants, or
any agent or agents of Defendants, as a result of the instant
action; and the A-files of any individuals affected thereby; and

3.  The A-files of all individuals to whom G-56 notices were sent
for reasons related to the instant action.

Respectfully Submitted,

*[signature]*

1265

Lisa S. Brodyaga                          Thelma O. Garcia
402 E. Harrison, 2nd Floor                301 E. Madison
Harlingen, Texas 78550                    Harlingen, Texas 78550
(210) 421-3226                            (210) 425-3701


### CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing were mailed to Nancy
Masso, Esq., AUSA, 1036 E. Levee, Brownsville, Texas 78520; Howard
Rose, SAUSA, Office of the U.S. Attorney, Civil Division, 910
Travis, #1500, Houston, Texas 77002, and Bill Peterson, General
Attorney, INS, 2102 Teege, Harlingen, Texas 78550, this 5th day of
December, 1994.



_____

2

1266

CMxPDF - www.texia.com

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| HERRERA, et al | ) | |
| | ) | |
| v. | ) | C.A. No.  B-94-215 |
| | ) | |
| TROMINSKI, et al. | ) | |
| _____ | ) | |

EXHIBIT "O"

1267

CVisPDF - www.texila.com

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

HERRERA, et al                )
                              )
v.                            )     C.A. No.  B-94-215
                              )
TROMINSKI, et al.             )
_____)

## PLAINTIFFS' SECOND SET OF REQUESTS FOR ADMISSION

Come Plaintiffs, and, pursuant to Rule 36, F.R.Civ. Proc., present
their second set of requests for admission, and request that within
thirty (30) days of service of same, Defendants admit the truth of
the following statements.

### I.   DEFINITIONS

The terms lawful permanent resident, green card, PISPC, the Act,
and class member, are defined herein in the same manner as in
Plaintiff's First Set of Requests for Admission.

Except in requests for admission numbers 5 and 6, the term
"practice" as used herein means an act performed or procedure
followed in more than 70% of the instances described.

### II.   REQUESTS FOR ADMISSION

1.  The Court has jurisdiction over the instant action under 28 USC
1346(a)(2) (action against and agency and/or officers of the United
States); 8 USC 1329 (action arising under the Immigration and
Nationality Act); 28 USC 2201 et seq (declaratory judgment action);
and 5 USC 702 et seq, (action by one adversely affected by final
agency action), coupled with 28 USC 1331 (federal question).

1268

CutePDF - www.fastio.com

2.  Arturo Lopez-Lozano, (A37 522 584) (hereinafter, "Mr. Lopez"), has been a lawful permanent resident of the United States since June 16, 1981.  On May 2, 1988, Mr. Lopez was placed under probation for a period of ten years by the 105th District Court of Kleberg County, Texas, for the offense of aggravated possession of marijuana.  The following day, Defendants initiated deportation proceedings against Mr. Lopez, who applied for relief from deportation under Section 212(c) of the Act, (8 USC Sec. 1182(c)). Following a hearing, an Immigration Judge in Harlingen, Texas, denied said application in the exercise of discretion.  Mr. Lopez appealed this decision to the Board of Immigration Appeals, ("BIA"), who, on August 25, 1994, granted his appeal, and remanded the case for further proceedings and entry of a new decision.

3.  Mr. Lopez' wife, three children, and step child, with whom he resides in Brownsville, Texas, are all United States Citizens.

4.  In the early morning hours of Friday, December 23, 1994, Mr. Lopez applied for admission as a returning resident at the Port of Entry in Brownsville, Texas, tendering his green card to the official.  The official asked some questions, as to where he was coming from, and what he was bringing.  Mr. Lopez stated that he was only bringing some sodas, and attempted to explain the reason for the trip.  The official also asked why the car he was driving had Florida plates, and he explained that he and his wife were migrants, and that it had been purchased in Florida.  The Officer requested that he get out of the car.  Mr. Lopez complied.  The vehicle, which was NOT carrying contraband, was searched, both manually, and with a dog.  In the process, the lining of the ceiling was ripped.  Eventually, Mr. Lopez was told to go inside, where he was questioned further.  During the questioning, the officers indicated that he was not supposed to have gone to Mexico, to which Mr. Lopez replied that it was his understanding that he was now permitted to do so.  Nonetheless, his resident alien card, and his Texas driver's license, were confiscated by Defendants, and

2

1269

Mr. Lopez was forced to return to Mexico.

5.  Later in the day of December 23, 1994, counsel for Defendants was contacted by the undersigned attorney Brodyaga.  Defendants' counsel ascertained that the remand from the BIA had not been entered in INS' computer, and caused the error to be corrected. Defendants' counsel advised Mr. Lopez' counsel that Mr. Lopez should return to the Port of Entry, and that he would be admitted. Mr. Lopez' wife accompanied him to the Brownsville Port of Entry, arriving at approximately 3:30 p.m..  They again requested that Mr. Lopez be admitted as a returning resident, and informed the official on duty that the computer now would reflect the fact that he was entitled to readmission.  The official refused to re-admit Mr. Lopez, or even check the computer, and instructed his wife that she would have to go to the INS Office in Harlingen, Texas, on Tuesday, December 27, to get some "paper" stating that INS had agreed to let him return to the United States.

6.  On Tuesday, December 27, 1994, Mrs. Lopez went with counsel to the INS Office in Harlingen, where they spoke with Mrs. Oralia Gonzalez, a supervisory official in the Examinations branch of the Harlingen INS Office.  Mrs. Gonzalez investigated the matter, and informed Mrs. Lopez and her counsel that he would be readmitted. On the afternoon of December 27, 1994, Mr. and Mrs. Lopez again went to the Brownsville, Texas, Port of Entry, and sought admission.  They were questioned, inter alia, as to whether or not they were related to Mrs. Oralia Gonzalez, (which they are not), and Mr. Lopez was finally re-admitted to the United States.

7.  Juana Ascencio-Guzman, (A90 775 805) (hereinafter, "Ms. Ascencio"), and Efrain Merino, (A91 495 976) (hereinafter, "Mr. Merino"), are husband and wife, are both lawful permanent residents of the United States, and reside in Houston, Texas.  They have two United States citizen children.  On or about July 3, 1994, they applied for admission as returning residents at the Brownsville,

3

1270

Texas, Port of Entry, following a brief departure to Mexico. Admission was denied, and they were placed in exclusion proceedings, for allegedly attempting to illegally bring Mr. Merino's nephew, who was ill, into the United States for medical treatment. Their resident alien cards, Mr. Merino's Texas driver's license, and Ms. Ascencio's Texas I.D. card, were all confiscated by Defendants, who forced them to return to Mexico. On October 7, 1994, they finally secured counsel, who, on October 31, 1994, was able to obtain permission for them to be paroled into the United States pending completion of their exclusion proceedings.

8. Copies of the parole documents given to Ms. Ascencio and Mr. Merino have been submitted to the Court as <u>Plaintiffs' Exhibit I</u>, and carry a notation that they have been paroled pending determination of their right to re-enter, thereby placing a cloud over their status as lawful permanent residents, and interfering with the exercise of the attendant rights, including the right to make innocent, brief, and casual border crossings.

9. Alejandra Gutierrez, (A41 858 559) (hereinafter, "Ms. Gutierrez"), is a lawful permanent resident of the United States. On or about August 4, 1994, she applied for admission as a returning resident at the Brownsville, Texas, Port of Entry. Admission was denied, and she was placed in exclusion proceedings, for allegedly attempting to illegally cross her sister into the United States. Defendants confiscated her green card, and forced her to return to Mexico. On January 6, 1995, Ms. Gutierrez finally obtained counsel, who immediately filed a request that she be paroled into the United States, without bond, which request was ultimately granted on or about January 27, 1995.

10. Juan Sanchez-Salinas, (A13 102 286), (hereinafter, "Mr. Sanchez"), obtained lawful permanent residency in 1964. Following a conviction for an offense involving a controlled substance, Mr. Sanchez presented himself, with his bondsman, at the Brownsville

4

Port of Entry, at which time he was paroled into the U.S.. He was also placed in exclusion proceedings, and, ultimately, held in detention at the Port Isabel Service Processing Center. Though counsel, Mr. Sanchez sought permission to be paroled from detention, upon payment of a bond. Said request was granted, and on or about August 17, 1994, Mr. Sanchez posted bond, and was released. He was given a card by Defendants, with his photo and fingerprint, and the notation that it was "Not Valid For Employment." A new card, without this notation, was provided at the insistence of his counsel, with the assistance of the SAUSA handling the instant action at that point in time.

11. The new card still places a cloud over Mr. Sanchez' residency, as it specifies that he is in exclusion proceedings. Mr. Sanchez needs medical treatment which he desires to obtain in Mexico. His counsel has raised the issue with Defendants, who have refused to provide assurances that if he departs the United States to obtain medical treatment, and in the absence of new circumstances justifying such a refusal, he would be re-paroled into the U.S. upon his return.

12. Adelita Cantu de Cabrera, (A38 102 369), (hereinafter, "Ms. Cantu"), was paroled into the United States on November 9, 1993, pending exclusion proceedings. On or about January 17, 1995, her counsel was informed by agents of Defendants that Ms. Cantu would not be granted employment authorization, unless and until she filed a fee-paid application, which error Defendants cured only after being told that she was to be added as a Plaintiff herein.

13. A lawful permanent resident who makes a "brief, casual, and innocent" departure from the U.S. and seeks readmission as a returning resident, who presents a document such as Exhibits "A" "B" and "D" herein is more likely to be detained, and placed in exclusion proceedings, than would be the case if he presented his or her green card.

5

1272

14.  From at least February 22, 1992 to the present, when a lawful permanent resident has applied for admission as a returning resident at a port of entry under the jurisdiction of the Harlingen, Texas, INS Office, and Defendants have had reason to believe that circumstances exist which would make him or her amenable to exclusion proceedings, if criminal prosecution is also contemplated, it has been the practice of Defendants to parole the individual into the United States for prosecution, and place him or her under exclusion proceedings.  If the prosecution results in a conviction, it has been the practice of Defendants to detain said individual at the Service Processing Center at Los Fresnos, Texas, pending exclusion proceedings.  Upon request of counsel, it has also been Defendants' practice to permit said person, upon payment of a bond, to be paroled from detention into the United States pending conclusion of the exclusion proceedings.

15.  From at least February 22, 1993 to the present, when a lawful permanent resident applies for admission as a returning resident at a port of entry under the jurisdiction of the Harlingen, Texas, INS Office, and Defendants have reason to believe that circumstances exist which would make him or her amenable to exclusion proceedings, but where criminal prosecution is not contemplated, it has been the practice of Defendants to initiate exclusion proceedings, and return said person to Mexico.  During that period, it has likewise been the practice of Defendants not to advise him or her of the possibility of being paroled into the United States during the pendency of such proceedings; if the individual inquires about being allowed to return to the United States during the proceedings, it has been the practice of Defendants to inform the person that such an request must be made at Harlingen, Texas.

16.   From February 22, 1993 to the present, fewer than 30% of lawful permanent resident placed under exclusion proceedings in the Harlingen District who are not paroled into the United States for prosecution, and who do not obtain counsel to represent them in the exclusion proceedings, have been paroled into the United during the

6

1273

pendency of the exclusion proceedings.

17.   From February 22, 1993 to the present, at least 70% of lawful permanent resident placed under exclusion proceedings in the Harlingen District who were paroled into the United States for prosecution and who did obtain counsel to represent them in the exclusion proceedings were subsequently re-paroled during the pendency of the exclusion proceedings.

18.   From February 22, 1993 to the present, fewer than 30% of lawful permanent residents placed under exclusion proceedings in the Harlingen District, who were not paroled into the United States for criminal prosecution, were paroled in during the pendency of their exclusion proceedings.

19.   From February 22, 1993 to the present, at least 70% of lawful permanent resident placed under exclusion proceedings in the Harlingen District who were paroled into the United States for prosecution, were subsequently re-paroled during the pendency of the exclusion proceedings.

20.   In the Harlingen, Texas, INS District, when Defendants place lawful permanent resident under exclusion proceedings, it was, at the time of filing the instant action, Defendants' practice to confiscate their green cards, and, if such documents were found in their possession, to confiscate their social security cards, and drivers' licenses or identification cards, regardless of whether such documents had any evidentiary value in either the criminal prosecution or exclusion proceedings, and to refuse to return said documents unless and until all expulsion proceedings were terminated in the alien's favor, regardless of whether the person was returned to Mexico, or paroled into the United States.

21.   INS has previously asserted to this Court that when a lawful permanent resident who has posted bond in connection with

7

deportation proceedings, departs from the United States, the bond is subject to either forfeiture or cancellation, in the discretion of the Defendants, and has never retracted said assertion.

22.   Many lawful permanent residents whose green cards have been confiscated by Defendants because they have been placed in exclusion or deportation proceedings have legitimate business and personal needs for making "casual, brief, and innocent" trips across the border into Mexico, and back, but have been deterred from making such trips by the action of Defendants in confiscating their green cards, and providing them either with no substitute documentation, or with substitute documentation which greatly increases the possibility that they would not be allowed to re-enter, or be re-paroled, into the United States on their return.

23.   A lawful permanent resident seeking employment who presents to a potential employer a substitute document such Exhibits "A" "B" "D" "I" "K" and "M" on file herein is more likely to be denied employment than would be the case if he presented his green card, or substitute documentation which places no cloud over his or her status as a lawful permanent resident.

24.   The confiscation of the green cards of lawful permanent residents placed in deportation or exclusion proceedings in the Harlingen INS District, without provision of substitute documents which place no cloud over their status as lawful permanent residents, has been a source of controversy for more than 12 years.

25.   At the time of filing the instant action, it was the practice of one or more branches of the Harlingen INS Office to confiscate the green cards of lawful permanent residents who were placed under deportation or exclusion proceedings, and to refuse to return the cards or provide substitute documentation which does not place a cloud over their status as lawful permanent residents, even to those who were released from, or were not held in, detention.

8

26.   When Defendants confiscate the green card of a lawful permanent resident placed in exclusion or deportation proceedings, and <u>do</u> issue replacement documentation, it was at the time of the commencement of the instant action their practice to place notations on the replacement documentation which interfere with the resident's ability to exercise the rights and privileges of lawful permanent resident status, such as, <u>inter</u> <u>alia</u>, the notation that the person is under deportation or exclusion proceedings, is on bond, is not authorized to be employed, and/or that the card is not valid for re-entry to the United States.

27.   When Defendants parole into the United States a permanent resident placed in exclusion proceedings, it is still their practice to place notations on any substitute documentation provided which may interfere with his or her ability to exercise the rights and privileges of lawful permanent resident status, such as, <u>inter</u> <u>alia</u>, the notation that the person has been paroled pending determination of his or her right to enter, is under exclusion proceedings, and/or that the document is not valid for re-entry to the United States.

28.   Mr. Gracia's and Lopez' claims are typical of the claims of those putative class members under deportation proceedings.

29.   The claims of Ms. Ascencio, Mr. Merino, Ms. Gutierrez, and Mr. Sanchez are typical of the claims of those putative class members under exclusion proceedings.

30.   The putative class is sufficiently numerous, and its composition sufficiently fluid, as new members frequently come into existence, and the cases of prior members resolved, that joinder of all members is impracticable.  There are also questions of law and fact which are common to the class.

31.   The prosecution of separate actions by individual members of

9

127b

the class would create a risk of inconsistent or varying
adjudications with respect to individual class members which would
establish incompatible standards of conduct for the Defendants.

32. Defendants have acted on grounds generally applicable to the
class, with respect to which, if Plaintiffs prevail, final
injunctive relief or corresponding declaratory relief with respect
to the whole class would be appropriate.

Respectfully Submitted,



Lisa S. Brodyaga                          Thelma O. Garcia
402 E. Harrison, 2nd Floor                301 E. Madison
Harlingen, Texas 78550                    Harlingen, Texas 78550
(210) 421-3226                            (210) 425-3701

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, first-
class postage prepaid, to John Carte, SAUSA, Office of the United
States Attorney, 1036 E. Levee, Brownsville, Texas 78520, this 16th
day of February, 1995.

10

1277

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


HERRERA, et al                    )
                                  )
v.                                )     C.A. No.  B-94-215
                                  )
TROMINSKI, et al.                 )
_____)


EXHIBIT "P"


1278

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


HERRERA, et al                    )
                                  )
v.                                )          C.A. No.  B-94-215
                                  )
TROMINSKI, et al.                 )
_____)

ADVISAL OF DUE DATES FOR ANSWERING THE INSTANT COMPLAINT,
AND RESPONDING TO
PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
AND PLAINTIFFS' SECOND SET OF REQUESTS FOR ADMISSION
AND SIMILAR UNRESOLVED MATTERS

Come Plaintiffs, and advise Defendants of certain unresolved
matters, including the following:


1. As of the present, Defendants have not filed their Answer to
the First Amended Complaint herein, nor responded to the two
outstanding requests for discovery, to wit, Plaintiffs' First Set
of Requests for Productions of Documents, served on December 5,
1994, and Plaintiffs' Second Set of Requests for Admission, served
on February 16, 1995.


Extensions of the due date for all three pleadings were the subject
of oral agreements between counsel for the Plaintiffs, and counsel
for Defendants.   However, upon receipt of information that
Defendants will (again) be substituting counsel, and in the
interest of ensuring that there be no misunderstandings with
respect thereto, Plaintiffs hereby advise that the Answer to the
Complaint, and the responses to the First Set of Requests for
Production of Documents, and to the Second Set of Requests for
Admission, are due no later than March 24, 1995, and that it is not
anticipated that further extensions will be granted, except upon
Order of the Court.

1279

2. Plaintiffs would also note that it had been orally agreed between the Parties that, if Defendants could provide evidence demonstrating that any of the admissions were factually incorrect, which admissions had been made by default when Defendants failed to respond to Plaintiffs' First Set of Requests for Admission, Plaintiffs would agree to the withdrawal of said admission. To date, no such evidence has been tendered. Plaintiffs would advise Defendants that any such evidence is also due on or before March 24, 1995. After that date, any requests for withdrawal of admissions made by default will have to be directed to the Court.

3. Defendants have advised Plaintiffs that at least two individuals were deported as a result of the fact that they responded to the call-in letters, purportedly sent to members of the putative class herein, advising them that the purpose of the call-in was to "review [their] Immigration status, take photos, and [be] issued [their] new LPR Card, I-151 or Employment Card," c.f., Exhibit "F" In Support of Plaintiffs' Motion for Class Certification and Request for Hearing Thereon.

According to information received from Defendants, the majority of said letters were sent to individuals known to Defendants not to be members of the putative class, for the reason that they were already under administratively final orders of deportation. Defendants have admitted that when such persons responded to the call-in letters, (c.f., Exhibit "F"), they were taken into custody. Plaintiffs remain very concerned about the fate of these individuals, particularly of those who were deported.

The request to review the files of these individuals was included in Plaintiffs' First Set of Request For Production of Documents. Although Defendants have indicated that they would allow Plaintiffs' counsel to review these files, particularly those of the persons who were deported because they responded to the deceptive call-in letters, this has not yet occurred.

2

1280

Plaintiffs would therefore advise Defendants that, if these files are not presented by March 24, 1995, Plaintiffs intend to seek not only an Order mandating their production, but a show cause hearing, to determine whether the individuals in questions should be allowed to return to the United States, in order to pursue any relief from deportation which might have been available to them.

4.   There has also been no resolution as of yet to the problem of Jesus Garza-Pacheco, A31 298 296.  Plaintiffs assert that he is a member of the putative class herein, for the reasons set forth in their letter of February 17, 1995, a copy of which was forwarded to counsel for Defendants.

Mr. Garza-Pacheco has, at present, no valid document authorizing that he be employed in the United States.  Plaintiffs have made several suggestions as to means by which he could be provided with such a document, while still taking into consideration the concerns of Plaintiffs, which arise from the fact that his case is, admittedly, a procedural nightmare, and his status as a member of the putative class herein is in question.  To date, however, Defendants have not accepted any of Plaintiffs' suggestions, offered any counter-suggestions, or replied to Plaintiffs' letter.

Plaintiffs therefore advise that, if no resolution of this issue has been reached by March 24, 1995, Plaintiffs will also bring the matter to the attention of the Court, and request that the Court hold a hearing with respect thereto.

5.   Finally, Plaintiffs would remind Defendants that the deadline for accepting the Proposed Partial Settlement, of February 8, 1995, was, according to its terms, "the date of the next court appearance," which is set for April 7, 1995.  After that date, re-negotiation will be required.  As of the present, no reply has been received to the Proposed Partial Settlement.

1281

Thank you for giving these matters your immediate attention.

Respectfully Submitted,



Lisa S. Brodyaga                          Thelma O. Garcia
402 E. Harrison, 2nd Floor                301 E. Madison
Harlingen, Texas 78550                    Harlingen, Texas 78550
(210) 421-3226                            (210) 425-3701

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, first-
class postage prepaid, to the Office of the United States Attorney,
1036 E. Levee, Brownsville, Texas 78520, and by FAX to (210) 548-
2711, this 17th day of March, 1995.

**4**