25

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 13 1995

Michael N. ...

HERRERA, et al )
)
v. ) C.A. No. B-94-215
)
TROMINSKI, et al. )
_____)

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR EXTENSION OF TIME TO ANSWER COMPLAINT

AND REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR DEFAULT JUDGMENT

Come Plaintiffs, by and through their undersigned counsel, and respectfully file the instant opposition to Defendants' Motion For Extension of Time to Answer Complaint, (hereinafter cited as (INS1:___). Simultaneously, and in light of the fact that the two pleadings are, in essence, opposite sides of the same coin, Plaintiffs' would reply to Defendants' Opposition to Plaintiffs' Motion for Default Judgment, (hereinafter cited as INS2:___).

In their motion, Defendants assert as follows, (INS1:1):

> Defendants did not respond to Plaintiffs' complaint earlier because settlement negotiations were underway and settlement as to some of the issues seemed likely. However, settlement efforts have failed to date. Additionally, attorneys from the Department of Justice, Office of Immigration Litigation are replacing the United States Attorney Office, Southern District of Texas, as counsel in this case, and will need time to investigate and prepare the defense.

This statement is misleading in several material aspects. First, there has, to date, been no good faith effort on the part of Defendants to actually settle the case. To say that "settlement efforts have failed to date" implies that such efforts have been

1238

mutual, if unsuccessful. This is simply not the case.

The "settlement efforts" to date have been one-sided. Although Defendants' (prior) counsel acted in good faith, and even announced to the Court that a partial settlement was imminent, there has been little if any subsequent progress. Defendants have made no attempt to finalize any portion of proposed agreement, and have made no counter-offers with respect to any aspects with which they are in disagreement. And it now appears that Defendants have no intention of settling any portion of the case. What they are now requesting is time to "investigate and prepare a defense," (Id.).[1] If that was Defendants' intention, it is highly untimely.

As noted in Defendants' opposition to Plaintiffs' Motion for Default Judgment, Plaintiffs' agreements to extend the time for Defendants to file certain pleadings were based on the "ongoing settlement negotiations," (INS2:1). In the words of Defendants' current counsel, (INS2:2) (emphasis added):

> On or about March 17, 1995, Defendants' current counsel contacted Plaintiffs' counsel to advise that seven days would not be sufficient time to respond to all Plaintiffs' pleadings, and requested that Plaintiffs' counsel provide at least thirty days before moving the Court to enter a default judgment or to deem admitted any allegations not responded to by Defendants. The thirty days requested, Defendants' counsel stated, would be used by Defendants' new attorneys to investigate the case, begin production of requested documents, respond to outstanding pleadings, <u>and to determine whether settlement negotiations should proceed</u>.

In other words, Defendants' entire approach to the instant case had

---

[1] It should be noted that the attorney currently representing Defendants advised the undersigned that she was assigned to "monitor" the case from its inception. She is not new to the case, and should not be unfamiliar with the issues.

2

had changed. When it became clear that the reasons for which prior extensions had been granted were no longer applicable, Plaintiffs were completely within their rights to refuse to further extend the deadlines. Nor was that refusal unreasonable, given that the request was not based on ongoing negotiations, but on an alleged need of time to prepare the requisite pleadings.

For an Attorney who has been assigned to monitor a case since its inception, some eight months earlier, seven days should be sufficient to address the time-sensitive matters, i.e., to file an answer to the complaint, and finish the preparation of Defendants' response to the (second set of) requests for admission, which was, according to prior counsel, already well underway before responsibility for the case changed hands.

Significantly, Defendants did not even bother to request additional time from the Court, <u>prior to</u> the expiration of the final extension granted by Plaintiffs. This demonstrates an inappropriately cavalier attitude towards the litigation, and towards the Court, and should not be rewarded.

Such conduct is particularly inappropriate given the reasons that the undersigned did not agree to the additional extension requested, to wit, Defendants' refusal to grant, or at least to agree not to oppose, preliminary relief for two individuals who were, (and <u>are</u>), being gravely prejudiced by the delays.

Yes, as INS notes, Ms. Ascencio-Guzman, (and her husband, Efrain Merino), were placed in exclusion proceedings in July of 1994, for allegedly attempting to "smuggle an alien into the United States," (INS2:2), to wit, his three-month old nephew, who was ill, and

3

1240

needed medical treatment.[2] After they were administratively excluded for several months, in derrogation of their status as lawful permanent residents, the undersigned was finally able to obtain leave for them to be paroled into the United States for the duration of exclusion proceedings. Now they desire to visit Ms. Guzman's mother, who is hospitalized in Mexico for a heart ailment, and seek assurances that, unless they commit some act justifying a refusal, they will be re-paroled upon their return.

This is precisely the crux of the instant suit. As lawful permanent residents, they should not even be required to <u>request</u> such leave. It is their absolute right, c.f., <u>Molina v. Sewell</u>, 983 F.2d. 676 (5th Cir. 1993). The delay in resolving the action is highly prejudicial to Ms. Ascencio and her husband.

As to Mr. Garza-Pacheco, as noted, his case is a procedural nightmare. In brief, the manner in which he was deported, with no chance to apply for relief from deportation, was a travesty of justice, and he promptly returned to his home of many years, his wife, and U.S. citizen sons. He was waived in, through a port of entry, where he was well known. When INS discovered that he was back, they instituted both criminal, and deportation proceedings.

Contrary to INS' claim, (INS2:3, n.3), however, he was <u>not</u> convicted of unlawful reentry after deportation, but of entry by willfully concealing the fact that he no longer had his I-551. His motion to reopen deportation proceedings, to assert his right to seek relief from deportation under 8 USC Section 1182(c) was granted by the Immigration Judge, and INS initially waived appeal.

In a now familiar pattern, a subsequent INS Attorney later changed

---

[2] C.f., Plaintiffs' Second Set of Requests for Admission, Numbers 7 and 8, which are taken herein as admitted. <u>See</u>, Plaintiffs' Exhibit O.

4

1241

INS' collective mind, and opposed reopening. The Immigration Judge then retracted his order, reopening proceedings, and ordered that he be deported. An appeal was filed, which is still pending.

During these protracted proceedings, Mr. Garza-Pacheco had previously been granted employment authorization, and extensions of that authorization, the most recent grant of which expired earlier this year. INS has thus far refused to renew it, on the grounds that, due to a change in the regulations, he no longer fits into any of the neat "categories" of those who are authorized by the regulations to be employed in the United States. As a result, he has lost his job, and is prohibited from any employment.

Defendants' request for additional time would mean a corresponding delay in adjudicating the rights of persons such as Ms. Ascencio and Mr. Garza-Pacheco. To avoid prejudice to them, and as an indicia of Defendants' good faith, Plaintiffs conditioned an agreement to provide yet another extension of time upon Defendants' cooperation in obtaining temporary relief for two individuals.

Defendants now claim that it was because they were "unable" to meet these demands that Plaintiffs' refused to further extend the deadline. This is simply not true. Defendants were not "unable" to meet them, they were simply <u>unwilling</u> to do so. [3]

Defendants are now acting as if it is their right to have additional time. Defendants argue, in essence, that because Plaintiffs have granted extensions in the past, (on the basis that good faith negotiations were in progress), they are obliged to grant them forever, (even when negotiations have broken down).

---

[3] Because INS disputes his status as a lawful permanent resident, and in order to address their concern that INS did not have the legal right to give him such authorization, it was suggested that it be accomplished by means of a request to the Court for temporary relief, which request INS would not oppose.

5

1242

As expressed by Defendants, (INS2:3):

> Plaintiffs now use the very conduct of that they agreed to, [sic], although informally, to persuade this Court this Court that Defendants have purposely violated the Rules of Civil Procedure. It was with the consent of Plaintiffs that the Defendants decided not to respond to Plaintiffs' pleadings. Both parties were engaged in a good faith attempt to settle their differences.[4] Neither party could anticipate that settlement negotiations would not be expeditious and sought creative means to facilitate the process.[5] In that regard, Plaintiffs led Defendants to believe that sufficient time would be allowed to respond to Plaintiffs' pleadings in the event that settlement negotiations failed or were in some way impeded.

Of all the disingenuous statements contained in this pleading, this one stands out as being the most egregious, and, if made in good faith, demonstrates that the writer has not kept herself informed of the progress of the case, as required by her role of "monitor."

There was no open-ended agreement, as Defendants imply, to continue granting extensions until negotiations were completed, or broke down, with a further extension thereafter for Defendants to "investigate and prepare a defense."

Rather, Defendants' prior counsel would request extensions, and

---

[4] Plaintiffs now doubt that Defendants are, indeed, attempting to settle the differences in good faith. Defendants' counsel has informed the undersigned that she plans to file a motion to dismiss, and, to the best of the knowledge and belief of the undersigned, has made no attempt whatsoever to further settlement negotiations. In fact, the undersigned has come to doubt whether, as an institutional question, Defendants are even capable of settling the instant case, or whether they are paralyzed by their own internal divisions into "good cops" and "bad cops."

[5] With all due respect, the undersigned has seen no evidence of any such "creative means to facilitate the process."

6

1243

Plaintiffs would grant them. The last such extension was for "a few days," while prior counsel handled some criminal cases. That expired in approximately early March.[6] Subsequently, Plaintiffs <u>sua sponte</u> granted another extension, when the internal upheaval occurred in Defendants' camp. When the results of that upheaval demonstrated that Defendants' approach to settlement had hardened, Plaintiffs refused to grant any more extensions.

The document of March 17, 1995, advising Defendants' that no further extensions would be granted beyond March 24, 1995, was prepared as a courtesy, to ensure that whoever subsequently took responsibility for the case knew its status. By this document, Plaintiffs hoped to avoid the very problem that is now occurring.

Defendants' further allege as follows, (INS2:4):

> And in any event, Plaintiffs are estopped from succeeding on this motion when it was their own words and conduct that led the Defendants to commit the acts Plaintiffs now claim are error. Moreover, Plaintiffs have acted unfairly by using a threat to abruptly, unilaterally terminate the agreed upon informal extension as a means to compel Defendants to grant the relief requested as to the two above named aliens.

This is simply outrageous. It was not Plaintiffs' "words and conduct" that induced Defendants not to prepare and file their Answer, or respond to the Requests for Admission. To the contrary, it was Defendants' own internal "good cop - bad cop" struggle.

Plaintiffs never said, or intimated, that Defendants did not need to file an answer, or respond to the discovery requests, unless and until settlement negotiations succeeded, or failed. To the contrary, Defendants repeatedly advised Plaintiffs that these

---

[6] Prior counsel for Defendants would be able to provide a more exact date.

7

pleadings were in process, and requested extensions, to complete them. The fact that Plaintiffs granted such requests in the past, does not mean that they are obliged to grant them forever.

Nor did Plaintiffs use threats to "abruptly, unilaterally terminate the agreed upon informal extension," in order to seek benefits for the two individuals mentioned above. Again, this implies that Plaintiffs had agreed to an open-ended extension, and were retracting that agreement. This is simply false, as Defendants' current counsel would know, if she had asked prior counsel.

To the contrary, as discussed above, Plaintiffs conditioned any agreement to a _new_ extension upon certain acts demonstrating good faith, which Defendants were unwilling, (not unable), to make. Plaintiffs requested only that provisional relief be granted, or, at the very least, not opposed, with respect to two specific individuals who were being harmed by the endless delays.

Plaintiffs should not have to suffer because Defendants are afflicted by a form of institutional schizophrenia, which, in the instant case, seems to have completely paralyzed them. The parties are no closer to a settlement than they were when they first announced to the Court that a tentative agreement had been reached. Since that date, INS has made no visible efforts towards finalizing the tentative agreements made, let alone trying to resolve the remaining differences. New counsel has indicated an intention to fight, rather than settle the case.

It is time to move this litigation forward. In the very first status call, Defendants represented to the Court that certain agreements had been reached. Action by this Court is obviously required, to force, (or enable), Defendants to live up to the representations made at that time. It is therefore urged that Defendants' (untimely) request for extensions of time to file their answer and other pleadings be denied.

8

It is further urged, under Federal Rules of Civil Procedure, Rule 55(e), that Defendants' default be entered, and that a hearing be held, to determine the nature and scope of the relief to which Plaintiffs are entitled.

Respectfully Submitted,

| | |
|---|---|
| Lisa S. Brodyaga | Thelma O. Garcia |
| 402 E. Harrison, 2nd Floor | 301 E. Madison |
| Harlingen, Texas 78550 | Harlingen, Texas 78550 |
| (210) 421-3226 | (210) 425-3701 |

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of April, 1995, copies of the foregoing were mailed, first-class postage prepaid, addressed to the following:

1.  Regina Byrd, and Mark C. Walters, Attorneys, OIL, U.S. Department of Justice, Civil Division, Box 878, Ben Franklin Station, Washington, D.C. 20044;

2.  Nancy Masso, AUSA, Office of the U.S. Attorney, 1036 E. Levee, Brownsville, Texas, 78520 this 28th day of March, 1995;

3.  David Guerra, AUSA, Office of the U.S. Attorney, 1701 W. Highway 83, #305, McAllen, Texas 78502; and

4.  John Carte, Attorney, INS, 2102 Teege, Harlingen, Texas 78550.



9

12.46