IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 3 0 1995

Michael N. Milby, Clerk

| | | |
|---|---|---|
| JULIO HERRERA LOA, JUANA ASCENCIO-GUZMAN, et. al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. B-94-215 |
| E.M. TROMINSKI, District Director, Immigration and Naturalization Service, HON. JANET RENO, United States Attorney General, and IMMIGRATION AND NATURALIZATION SERVICE, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' REQUEST FOR PRELIMINARY RELIEF AS TO JESUS GARZA-PACHECO

The defendants, by and through the undersigned counsel, move the Court to deny plaintiffs' request of preliminary relief as to Mr. Jesus Garza-Pacheco. The reasons for this opposition are as follows:

### BACKGROUND

On July 15, 1994, plaintiffs filed a class action law suit against the defendants seeking to represent all lawful permanent resident (LPRs) aliens who are members of the class defined as all LPRs:

> who are under deportation or exclusion proceedings, in whose cases no final order of deportation or exclusion has been entered, who are not presently held in detention, whose I-151 or I-155 cards have been confiscated by Defendants, and are being retained by or under the authorization of the

1136

Harlingen Office of the Immigration and
Naturalization Service.

(Plaintiffs' Second Amended Petition at 12 (paragraph 38).)
Plaintiffs raise four (4) issues on behalf of the class, within
which are several sub-issues.  All the issues raised by
plaintiffs relate to the defendants' Harlingen, Texas office
and/or the defendants' Harlingen, Texas branch offices.

First, plaintiffs assert that the defendants confiscate the
green cards of members in the defined class who have been placed
in deportation or exclusion proceedings without providing a
substitute document which does not place a "cloud"[1] over the
member's "status as a LPR," thus "curtail[ing] their rights and
privileges" which include the ability to obtain and maintain
employment, and to travel freely.  (Id. at 10-11 (paragraph 35),
13-14 (paragraph 46 and 47).)  Plaintiffs also claim that this
issue has been "a source of controversy with the defendants
Harlingen Office . . . for at least a dozen years."  (Id. at 12
(paragraph 35.)  Plaintiffs claim that placing anything other
than "employment authorized" on the substitute green card
interferes with and violates the rights and privileges conferred
upon the defined class member by virtue of the member's LPR
status and "constitutes an undue restriction" on the member's
liberty.  (Id. at 12 (paragraph 37), 14 (paragraph 46).)  Namely,

_____

[1]  Plaintiffs state that a replacement document places a
cloud over the member's LPR status if defendants make note on the
card that: (1) it is valid for a specified time period of time;
(2) the alien is under exclusion or deportation proceedings;
(3) it is not valid for re-entry or employment; and (4) the alien
is out on bond.

2

CSMPDF - www.fastio.com

plaintiffs assert that a member bearing the complained of substitute card is more likely to be: (1) denied employment, (2) placed into exclusion proceedings upon applying for admission into the United States as a returning LPR who has made a brief, casual, and innocent departure from the United States, and (3) not be re-paroled into the United States if the member makes a brief, casual, and innocent departure from the United States during the pendency of exclusion proceedings without first submitting a new application for parole to the District Director. (Id. at 14-15 (paragraphs 47-50).)  As a result of the alleged violations, plaintiffs claim that they are entitled to a Writ of Habeas Corpus on the ground that defendants are depriving them of their liberty, without due process of law, by placing "restrictions on their liberty not shared by the population at large."  (Id. 15 (paragraph 51).)

Second, plaintiffs assert that the defendants violate the status of members of the defined class by not automatically paroling all LPRs who are in exclusion proceedings into the United States during the pendency of such proceedings, and failing to re-parole LPRs back into the United States following what plaintiffs' would alleged was a brief, casual and innocent departure from the United States.[2]  Based thereon, plaintiffs

_____

[2] Plaintiffs assert that it is the defendants' practice to parole LPRs into the United States who present themselves to the ports of entry under the defendants' Harlingen, Texas office when the LPR is believed to have committed a criminal offense in which criminal prosecution is contemplated and based on that same offense the LPR is subject to exclusion proceedings.  (Plaintiffs
(continued...)

1178

request the Court to prelimanarily and permanently enjoined the defendants from the alleged acts.

Third, plaintiffs asserts that <u>Molina v. Sewell</u>, 983 F.2d 676 (5th Cir. 1993) prohibits the defendants from taking into consideration the fact that the alien departed the United States while out of the defendants' custody on bond pending deportation proceedings when determining whether the departure was "meaningful" as set forth under the dictates of <u>Rosenberg v. Fleuti</u>, 374 U.S. 449 (1963). (<u>Id</u>. at 16 (paragraph 57).) Consideration of such fact, plaintiffs assert, "violates [the alien's] rights as a [LPR]." (<u>Id</u>.) Consequently, plaintiffs assert that they are entitled to declaratory and injunctive relief. (<u>Id</u>. at 16 (paragraph 59, 61).)

Fourth, plaintiffs assert that the defendants cancel or forfeit the bond of members in the defined class based solely upon the fact that the member departed the United States while on bond, and thereby deprive the member of liberty without first providing due process of law. (<u>Id</u>. at 17 (paragraph 63).) For this alleged act, plaintiffs assert that they are entitled to both declaratory and injunctive relief. (<u>Id</u>. at 17 (paragraph 64 and 66).)

_____

[2](...continued)
Second Amended Petition at 9 (paragraph 28).) Plaintiffs also assert that when criminal prosecution is not contemplated for the offense although the offense serves as a ground for an exclusion proceedings, it is the defendants' practice to place the alien in exclusion proceedings but not parole the LPR into the United States. (<u>Id</u>. at 9 (paragraph 29).)

4

1139

## HISTORY OF MR. GARZA-PACHECO

Mr. Garza-Pacheco was admitted to the United States as an
LPR on September 4, 1971.  On March 13, 1985, he was convicted in
United States District Court for the Southern District of Texas,
Brownsville Division of two counts of possession with intent to
distribute heroin (in one count the amount of heroin alleged was
102.6 grams).  Based upon his convictions, the INS issued an
Order to Show Cause (OSC) on December 18, 1985, charging
Mr. Garza-Pacheco with deportability under Immigration and
Nationality Act ("INA") § 241(a)(11).  On August 28, 1987,
Mr. Garza-Pacheco was ordered deported in absentia.
September 14, 1987, was designated as the date by which
Mr. Garza-Pacheco had to submit his appeal of the Immigration
Judge's ("IJ") decision.  Mr. Garza-Pacheco, however, failed to
appeal the IJ's decision to Board of Immigration Appeals
("Board").  Thereafter, on October 28, 1987, two months after the
IJ's decision, Mr. Garza-Pacheco was deported from the United
States.  In or about April 1991, Mr. Garza-Pacheco reentered the
United States without authorization using his green card at a
port of entry where he was known by the defendants' agents, who
permitted him to pass without interruption.  The defendants
learned of Mr. Garza-Pacheco's illegal presence in the United
States and on or about August 26, 1991, and arrested Mr. Garza-
Pacheco pursuant to an OSC which charged three grounds of
deportability: INA § 241(a)(1)(B), entry without inspection; INA
§ 241(a)(1)(A) and 212(a)(2)(A)(i)(II), having been convicted of

5

a law relating to controlled substance at time of entry; and INA
§ 241(a)(1)(A) and 212(a)(6)(B)(i), excludable at time of entry
as an alien who seeks admission within twenty years of the date
of a prior deportation.

In May of 1992, Mr. Garza-Pacheco's counsel filed a motion
to reopen the 1987 proceedings.  On April 9, 1993, the IJ denied
the motion, and ordered Mr. Garza-Pacheco deported based upon the
charges set forth in the August 26, 1991 OSC.  On April 13, 1993,
Mr. Garza-Pacheco appealed the IJ's decision.  The appeal is
currently pending before the Board.

I.

**MR. GARZA-PACHECO MAY NOT SEEK PRELIMINARY INJUNCTIVE
RELIEF IN THIS CASE**

Rule 10(a) of the Federal Rules of Civil Procedure provides,
inter alia, that "[i]n the complaint, the title of the action
shall include the names of all the parties...."  As stated by the
defendants during the April 26, 1995 status conference with this
Court, Mr. Garza-Pacheco has not been named as a plaintiff or
party, nor is he a member of the class as defined by plaintiffs.
As discussed above, the facts of Mr. Garza-Pacheco's case and the
events which led to his current deportation proceedings and to
the confiscation of his green card are not in anyway similar to
those facts present in the cases of the named plaintiffs (Gracia-
Cantu and Lopez-Lozano) which plaintiffs hold out as being fair
and adequate persons to protect the interests of the class.  (See
Plaintiffs' Second Amended Complaint at 12 (paragraph 39.)

6

1141

Mr. Gracia-Cantu is awaiting his deportation hearing before an IJ, as was Mr. Lopez-Lozano until he was granted a waiver of inadmissibility by an IJ on February 24, 1995. Therefore, unlike Mr. Garza-Pacheco, they have not had their LPR status terminated and are still LPRs until the deportation proceedings demonstrate otherwise. Additionally, neither Mr. Gracia-Cantu or Mr. Lopez-Lozano has had an order of deportation entered in his case. Nor have they been deported and subsequently returned to the United States, as Mr. Garza-Pacheco did, still holding his green card as if he were legally authorized to carry it. Most importantly, because their deportation proceedings have not been conducted or concluded their LPR status is still intact and their status is only being questioned. Mr. Gracia-Pacheco's LPR status has been terminated and he, unlike the plaintiffs set forth as having claims typical of the class, is now seeking to have his status restored.

Clearly, Mr. Garza-Pacheco cannot reasonably be held out as a member of the class as currently defined. Consequently the relief sought must be requested and granted, if at all, through an independent action brought on behalf of Mr. Garza-Pacheco. However, no case has been commenced with respect to Mr. Garza-Pacheco, as he is not even been a named plaintiff nor or the facts of his case similar to the class as defined. Thus, this Court lacks jurisdiction to consider any requests for relief on behalf of Mr. Garza-Pacheco. See <u>National Commodity and Barter Ass'n v. Gibbs</u>, 886 F.2d 1240, 1245 (10th Cir. 1989).

7

1142

Additionally, Mr. Garza-Pacheco's LPR status was terminated when the IJ's order of deportation became administratively final as a result of Mr. Garza-Pacheco's failure to appeal the IJ's decision to the Board. Matter of Lok, 18 I&N Dec. 101 (BIA 1981); Rivera v. INS, 810 F.2d 540, reh. denied., 816 F.2d 677 (5th Cir. 1987). Subsequently, Mr. Garza-Pacheco was deported from the United States, thus rendering this Court without jurisdiction to review the propriety of the 1987 deportation order. Title 8 U.S.C. § 1105a(c) provides that "an order of deportation or of exclusion shall not be reviewed by any court if the alien ... has departed from the United States after the issuance of the order." The United States Court of Appeals for the Fifth Circuit has interpreted this provision as unequivocal, and has held that no court may review a deportation or exclusion order once the deportation has occurred, regardless of alleged error in the deportation process. Quezada v. INS, 898 F.2d 474, 476-77 (5th Cir. 1990); Cipriano v. INS, 24 F.3rd 763 (5th Cir. 1994); Umanzor v. Lambert, 782 F.2d 1299 (5th Cir. 1986). Therefore, even if a separate suit is brought on behalf of Mr. Garza-Pacheco, this Court would lack jurisdiction to review the propriety of the 1987 order of deportation.

## II.

### MR. GARZA-PACHECO IS NOT IN THE CLASS OF ALIENS THAT ARE AUTHORIZED TO BE EMPLOYED

Even if this Court determines that Mr. Garza-Pacheco is a member of the defined class and therefore a separate law suit is not required, the Court should still deny the preliminary

8

1143

injunctive relief requested.  Mr. Garza-Pacheco is currently an alien who possesses no lawful immigration status in this country, and who is asking the Board to reinstate the lawful permanent resident status which he lost in 1987.  The regulation which allowed aliens who were in deportation proceedings to apply for work authorization, 8 C.F.R. 274a.12(c)(13), was eliminated in the final regulations published on December 5, 1994, effective January 4, 1995.  (Code of Federal Regulations, Title 8, at 484, Effective Date Note 2 to 8 C.F.R. 274a.12 (Rev. as of January 1, 1995 - Attachment (A).)  Since there are no other provisions in the regulations which allows an undocumented alien in Mr. Garza-Pacheco's circumstances to obtain work authorization, an order granting plaintiffs' request to compel defendants to grant work authorization would be contrary to pertinent regulations.  (See Id.)  Further, contrary to Plaintiffs' assertions, no courts have held to date that an undocumented alien has a due process right to obtain work authorization in the United States.

### III.

### PLAINTIFFS HAVE NOT MET THEIR BURDEN TO DEMONSTRATE THAT A PRELIMINARY INJUNCTION IS JUSTIFIED

The United States Court of Appeals for the Fifth Circuit requires a district court to determine on a motion for a preliminary injunction[3] (1) whether the movant has a substantial

---

[3]  Although Plaintiffs have styled their request as one for "preliminary relief," it seems clear that it is a request for a preliminary injunction.  Certainly that is what this Honorable
(continued...)

1144

likelihood of success on the merits; (2) whether the movant will suffer irreparable injury if the preliminary injunction is not granted; (3) whether that harm outweighs the harm to the opposing party if the preliminary injunction is granted; and (4) whether the preliminary injunction is in the public interest. <u>Hull v. Quitman County Bd. of Educ.</u>, 1 F.3d 1450 (5th Cir. 1993); <u>Sierra Club, Lone Star Chapter v. FDIC</u>, 992 F.2d 545 <u>reh</u>. <u>denied</u>., 3 F.3d 441 (5th Cir. 1993). The movant is also required to carry the burden of proof on each factor. <u>Doe v. Duncanville Ind. Sch. Dist.</u>, 994 F.2d 160 (5th Cir. 1993); <u>Roho, Inc. v. Marquis</u>, 902 F.2d 356 (5th Cir. 1990).

In the case at hand, plaintiffs have failed to even mention these four factors, much less carry their burden on each one. As to the first factor, they have failed to show that Mr. Garza-Pacheco[4] has a substantial likelihood of success of winning his motion to reopen before the Board. Likewise, plaintiffs have failed to meet their burden on each of the other three prongs of

---

[3] (...continued)
Court advised the Plaintiffs to request at the status conference held on April 26, 1995.

[4] In footnote two, page three of plaintiffs' proposed Order Granting Request For Preliminary Relief, plaintiffs assert that defendants agreed at the Pre-Hearing Conference on April 26, 1995 that there were no material facts in dispute with respect to Mr. Garza-Pacheco. This was certainly not the case. Defendants asserted that there did not appear to be any substantial issues of fact with respect to the <u>named plaintiffs</u>. Additionally, defendants' advised the Court that Mr. Garza-Pacheco was not a named plaintiff in this case. Defendants do not agree with the detailed litany of facts relating to Mr. Garza-Pacheco as set forth in plaintiffs' proposed order, but instead would adopt the facts and legal position set forth by the government in its brief to the Board. (Attachment (B).)

10

the test for preliminary injunction.  They have failed to
demonstrate that Mr. Garza-Pacheco will suffer irreparable injury
if the preliminary injunction is not granted; that harm to Mr.
Garza-Pacheco outweighs the harm to the defendants if the
preliminary injunction is granted; and that the preliminary
injunction is in the public interest.  To the contrary, it is
clear that a decision granting Mr. Garza-Pacheco work
authorization would harm the efficiency of the Immigration and
Naturalization Service and would not be in the public interest.
It would provide a nationwide signal that any undocumented
aliens, regardless of the Attorney General's regulations and the
alien's criminal record, will be allowed to work in the United
States, as long as their motions or appeals from the orders of
deportation in their cases remain pending.

11

1146

CMPDF - www.fesira.com

## CONCLUSION

For the reasons stated above, the defendants pray that the Court will dismiss plaintiffs' motion for a Preliminary Injunction.

Respectfully submitted,


GAYNELLE GRIFFIN JONES
UNITED STATES ATTORNEY

REGINA BYRD
MARK C. WALTERS
Attorneys
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
Post Office Box 878
Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 616-4860

Of Counsel:
KENNETH M. MUIR
General Attorney
Immigration and Naturalization
Service
U.S. Department of Justice
P.O. Box 1711
Harlingen, TX  78551

Attorneys for Defendants


12

1147

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Opposition to Plaintiffs' Motion for Preliminary Relief as to Jesus Garza-Pacheco was mailed to counsel for Plaintiffs, certified mail, return receipt requested, at:

Lisa S. Brodyaga, Esq.
402 E. Harrison, 2nd Floor
Harlingen, Texas  78550

Thelma O. Garcia, Esq.
301 E. Madison
Harlingen, Texas  78550

Served on this the 30th day of May, 1995.

For Regina Byrd
Attorney for Defendants

1148

**ATTACHMENT (A)**

11 49

CVISPDF – www.fastio.com

(i) The size of the business of the employer being charged;

(ii) The good faith of the employer;

(iii) The seriousness of the violation;

(iv) Whether or not the individual was an unauthorized alien; and

(v) The history of previous violations of the employer.

(3) Where an order is issued with respect to a respondent composed of distinct, physically separate subdivisions which do their own hiring, or their own recruiting or referring for a fee for employment (without reference to the practices of, and under the control of, or common control with another subdivision) the subdivision shall be considered a separate person or entity.

(c) *Enjoining pattern or practice violations.* If the Attorney General has reasonable cause to believe that a person or entity is engaged in a pattern or practice of employment, recruitment or referral in violation of section 274A(a)(1)(A) or (2) of the Act, the Attorney General may bring civil action in the appropriate United States District Court requesting relief, including a permanent or temporary injunction, restraining order, or other order against the person or entity, as the Attorney General deems necessary.

[52 FR 16221, May 1, 1987, as amended at 55 FR 25935, June 25, 1990; 56 FR 41786, Aug. 23, 1991]

§ 274a.11  [Reserved]

## Subpart B—Employment Authorization

### § 274a.12  Classes of aliens authorized to accept employment.

(a) *Aliens authorized employment incident to status.* Pursuant to the statutory or regulatory reference cited, the following classes of aliens are authorized to be employed in the United States without restrictions as to location or type of employment as a condition of their admission or subsequent change to one of the indicated classes. Any alien who is within a class of aliens described in paragraphs (a)(3) through (a)(8) or (a)(10) through (a)(13) of this section, and who seeks to be employed in the United States, must apply to the Service for a document ev-

idencing such employment authorization.

(1) An alien who is a lawful permanent resident (with or without conditions pursuant to section 216 of the Act), as evidenced by Form I-151 or Form I-551 issued by the Service. An expiration date on the Form I-551 reflects only that the card must be renewed, not that the individual's work authorization has expired;

(2) An alien admitted to the United States as a lawful temporary resident pursuant to sections 245A or 210 of the Act, as evidenced by an employment authorization document issued by the Service;

(3) An alien admitted to the United States as a refugee pursuant to section 207 of the Act for the period of time in that status, as evidenced by an employment authorization document issued by the Service;

(4) An alien paroled into the United States as a refugee for the period of time in that status, as evidenced by an employment authorization document issued by the Service;

(5) An alien granted asylum under section 208 of the Act for the period of time in that status, as evidenced by an employment authorization document issued by the Service;

(6) An alien admitted to the United States as a nonimmigrant fiance or fiancee pursuant to section 101(a)(15)(K) of the Act, or an alien admitted as the child of such alien, for the period of admission of the United States, as evidenced by an employment authorization document issued by the Service;

(7) An alien admitted as a parent (N-8) or dependent child (N-9) of an alien granted permanent residence under section 101(a)(27)(I) of the Act, as evidenced by an employment authorization document issued by the Service;

(8) An alien admitted to the United States as a citizen of the Federated States of Micronesia (CFA/FSM) or of the Marshall Islands (CFA/MIS) pursuant to agreements between the United States and the former trust territories, as evidenced by an employment authorization document issued by the Service;

(9) [Reserved]

458

m-    idencing such employment authoriza-
tion.

(1) An alien who is a lawful perma-
nent resident (with or without condi-
tions pursuant to section 216 of the
Act), as evidenced by Form I-151 or
Form I-551 issued by the Service. An
expiration date on the Form I-551 re-
flects only that the card must be re-
newed, not that the individual's work
authorization has expired;

(2) An alien admitted to the United
States as a lawful temporary resident
pursuant to sections 245A or 210 of the
Act, as evidenced by an employment
authorization document issued by the
Service;

(3) An alien admitted to the United
States as a refugee pursuant to section
207 of the Act for the period of time in
that status, as evidenced by an employ-
ment authorization document issued
by the Service;

(4) An alien paroled into the United
States as a refugee for the period of
time in that status, as evidenced by an
employment authorization document
issued by the Service;

(5) An alien granted asylum under
section 208 of the Act for the period of
time in that status, as evidenced by an
employment authorization document
issued by the Service;

(6) An alien admitted to the United
States as a nonimmigrant fiance or
fiancee pursuant to section
101(a)(15)(K) of the Act, or an alien ad-
mitted as the child of such alien, for
the period of admission of the United
States, as evidenced by an employment
authorization document issued by the
Service;

(7) An alien admitted as a parent (N-
8) or dependent child (N-9) of an alien
granted permanent residence under
section 101(a)(27)(I) of the Act, as evi-
denced by an employment authoriza-
tion document issued by the Service;

(8) An alien admitted to the United
States as a citizen of the Federated
States of Micronesia (CFA/FSM) or of
the Marshall Islands (CFA/MIS) pursu-
ant to agreements between the United
States and the former trust territories
as evidenced by an employment au-
thorization document issued by the
Service;

(9) [Reserved]

(10) An alien granted withholding of
deportation under section 243(h) of the
Act for the period of time in that sta-
tus, as evidenced by an employment
authorization document issued by the
Service; or

(11) An alien who has been granted
extended voluntary departure by the
Attorney General as a member of a na-
tionality group pursuant to a request
by the Secretary of State. Employment
is authorized for the period of time in
that status as evidenced by an employ-
ment authorization document issued
by the Service;

(12) An alien granted Temporary Pro-
tected Status under section 244A of the
Act for the period of time in that sta-
tus, as evidenced by an employment
authorization document issued by the
Service; or

(13) An alien granted voluntary de-
parture by the Attorney General under
the Family Unity Program established
by section 301 of the Immigration Act
of 1990, as evidenced by an employment
authorization document issued by the
Service.

(b) *Aliens authorized for employment
with a specific employer incident to sta-
tus.* The following classes of non-
immigrant aliens are authorized to be
employed in the United States by the
specific employer and subject to the re-
strictions described in the section(s) of
this chapter indicated as a condition of
their admission in, or subsequent
change to, such classification. An alien
in one of these classes is not issued an
employment authorization document
by the Service:

(1) A foreign government official (A-
1 or A-2), pursuant to §214.2(a) of this
chapter. An alien in this status may be
employed only by the foreign govern-
ment entity;

(2) An employee of a foreign govern-
ment official (A-3), pursuant to
§214.2(a) of this chapter. An alien in
this status may be employed only by
the foreign government official;

(3) A foreign government official in
transit (C-2 or C-3), pursuant to
§214.2(c) of this chapter. An alien in
this status may be employed only by
the foreign government entity;

(4) [Reserved]

(5) A nonimmigrant treaty trader (E-
1) or treaty investor (E-2), pursuant to

§214.2(e) of this chapter. An alien in
this status may be employed only by
the treaty-qualifying company through
which the alien attained the status.
Employment authorization does not
extend to the dependents of the prin-
cipal treaty trader or treaty investor
(also designated "E'1" or "E-2"), other
than those specified in paragraph (c)(2)
of this section;

(6) A nonimmigrant (F-1) student
who is in valid nonimmigrant student
status and pursuant to 8 CFR 214.2(f) is
seeking:

(i) On-campus employment for not
more than twenty hours per week when
school is in session or full-time em-
ployment when school is not in session
if the student intends and is eligible to
register for the next term or session.
Part-time on-campus employment is
authorized by the school and no spe-
cific endorsement by a school official
or Service officer is necessary;

(ii) Part-time off-campus employ-
ment authorization based on an ap-
proved attestation from the employer
pursuant to 8 CFR 214.2(f) and who pre-
sents an I-20 ID endorsed by the des-
ignated school official; or

(iii) Curricular practical training (in-
ternships, cooperative training pro-
grams, or work-study programs which
are part of an established curriculum)
after having been enrolled full-time in
a Service-approved institution for at
least nine months. Curricular practical
training (part-time or full-time) is au-
thorized by the Designated School Offi-
cial on the student's I-20 ID; no Service
endorsement is necessary.

(7) A representative of an inter-
national organization (G-1, G-2, G-3, or
G-4), pursuant to §214.2(g) of this chap-
ter. An alien in this status may be em-
ployed only by the foreign government
entity or the international organiza-
tion;

(8) A personal employee of an official
or representative of an international
organization (G-5), pursuant to
§214.2(g) of this chapter. An alien in
this status may be employed only by
the official or representative of the
international organization;

(9) A temporary worker or trainee
(H-1, H-2A, H-2B, or H-3), pursuant to
§214.2(h) of this chapter. An alien in
this status may be employed only by

459

the petitioner through whom the status was obtained;

(10) An information media representative (I), pursuant to § 214.2(i) of this chapter. An alien in this status may be employed only for the sponsoring foreign news agency or bureau. Employment authorization does not extend to the dependents of an information media representative (also designated "I");

(11) An exchange visitor (J-1), pursuant to § 214.2(j) of this chapter and 22 CFR 514.24. An alien in this status may be employed only by the exchange visitor program sponsor or program designee and within the guidelines of the program approved by the United States Information Agency as set forth in the Certificate of Eligibility (Form IAP-66) issued by the program sponsor;

(12) An intra-company transferee (L-1), pursuant to § 214.2(l) of this chapter. An alien in this status may be employed only by the petitioner through whom the status was obtained;

(13) An alien having extraordinary ability in the sciences, arts, education, business, or athletics (0-1), and an accompanying alien (0-2), pursuant to § 214.2(o) of this chapter. An alien in this status may be employed only by the petitioner through whom the status was obtained;

(14) An athlete, artist or entertainer (P-1, P-2 or P-3), pursuant to § 214.2(p) of this chapter. An alien in this status may be employed only by the petitioner through whom the status was obtained;

(15) An international cultural exchange visitor (Q), pursuant to § 214.2(q) of this chapter. An alien in this status may only be employed by the petitioner through whom the status was obtained;

(16) An alien having a religious occupation, pursuant to § 214.2(r) of this chapter. An alien in this status may be employed only by the religious organization through whom the status was obtained;

(17) Officers and personnel of the armed services of nations of the North Atlantic Treaty Organization, and representatives, officials, and staff employees of NATO (NATO-1, NATO-2, NATO-3, NATO-4, NATO-5 and NATO-6), pursuant to § 214.2(o) of this chapter.

An alien in this status may be employed only by NATO;

(18) An attendant, servant or personal employee (NATO-7) of an alien admitted as a NATO-1, NATO-2, NATO-3, NATO-4, NATO-5, or NATO-6, pursuant to § 214.2(o) of this chapter. An alien admitted under this classification may be employed only by the NATO alien through whom the status was obtained;

(19) A nonimmigrant pursuant to section 214(e) of the Act. An alien in this status must be engaged in business activities at a professional level in accordance with the provisions of Chapter 16 of the North American Free Trade Agreement (NAFTA); or

(20) A nonimmigrant alien within the class of aliens described in paragraphs (b)(2), (b)(5), (b)(8), (b)(9), (b)(10), (b)(11), (b)(12), (b)(13), (b)(14), (b)(16), and (b)(19) of this section whose status has expired but who has filed a timely application for an extension of such stay pursuant to §§ 214.2 or 214.6 of this chapter. These aliens are authorized to continue employment with the same employer for a period not to exceed 240 days beginning on the date of the expiration of the authorized period of stay. Such authorization shall be subject to any conditions and limitations noted on the initial authorization. However, if the district director or service center director adjudicates the application prior to the expiration of this 240 day period and denies the application for extension of stay, the employment authorization under this paragraph shall automatically terminate upon notification of the denial decision.

(c) *Aliens who must apply for employment authorization.* An alien within a class of aliens described in this section must apply for work authorization. If authorized, such an alien may accept employment subject to any restrictions stated in the regulations or cited on the employment authorization document:

(1) An alien spouse or unmarried dependent child; son or daughter of a foreign government official (A-1 or A-2) pursuant to § 214.2(a)(2) of this chapter and who presents a fully executed Form I-566 bearing the endorsement of an authorized representative of the Department of State;

460

Case 1:94-cv-00215  Document 36  Filed in TXSD on 05/30/1995  Page 18 of 28

n in this status may be employed only by NATO:

An attendant, servant or per-employee (NATO-7) of an alien d as a NATO-1, NATO-2, , NATO-4, NATO-5, or NATO-6, t to §214.2(o) of this chapter. n admitted under this classi- may be employed only by the .lien through whom the status ained;

nonimmigrant pursuant to sec-.e) of the Act. An alien in this nust be engaged in business ac-.at a professional level in ac-e with the provisions of Chap-.of the North American Free greement (NAFTA); or

nonimmigrant alien within the aliens described in paragraphs )(5), (b)(8), (b)(9), (b)(10), (b)(11), b)(13), (b)(14), (b)(16), and (b)(19) ection whose status has expired has filed a timely application extension of such stay pursuant 2 or 214.6 of this chapter. These re authorized to continue em-.t with the same employer for a ot to exceed 240 days beginning ate of the expiration of the au-period of stay. Such author-shall be subject to any condi-d limitations noted on the ini-.orization. However, if the dis-ector or service center director tes the application prior to the on of this 240 day period and .e application for extension of .e employment authorization his paragraph shall automati-.rminate upon notification of il decision.

*ns who must apply for employ-.horization.* An alien within a aliens described in this section ply for work authorization. If ed, such an alien may accept .ent subject to any restrictions 1 the regulations or cited on .loyment authorization docu-

alien spouse or unmarried de-.child: son or daughter of a for-ernment official (A-1 or A-2) to §214.2(a)(2) of this chapter ) presents a fully executed 66 bearing the endorsement of rized representative of the De-.of State;

(2) An alien spouse or unmarried dependent son or daughter of an alien employee of the Coordination Council for North American Affairs (E-1) pursuant to §214.2(e) of this chapter;

(3) A nonimmigrant (F-1) student who:

(i) Is seeking employment for purposes of optional practical training pursuant to 8 CFR 214.2(f), provided the alien will be employed only in an occupation which is directly related to his or her area of studies and that he or she presents an I-20 ID endorsed by the designated school official;

(ii) Has been offered employment under the sponsorship of an international organization within the meaning of the International Organization Immunities Act (59 Stat. 669) and who presents a written certification from the international organization that the proposed employment is within the scope of the organization's sponsorship. The F-1 student must also present an I-20 ID endorsed by the DSO in the last 30 days; or

(iii) Is seeking employment because of severe economic hardship pursuant to 8 CFR 214.2(f)(9)(ii)(C) and has filed the Form I-20, Form I-538 and any other supporting materials such as affidavits which further detail the unforeseen economic circumstances that require the student to seek employment authorization and evidence the fact that the student has attempted to find employment under 8 CFR 214.2(f)(9)(ii)(B);

(4) An alien spouse or unmarried dependent child: son or daughter of an officer of, representative to, or employee of an international organization (G-1, G-3 or G-4) pursuant to §214.2(g) of this chapter who presents a fully executed Form I-566 bearing the endorsement of an authorized representative of the Department of State;

(5) An alien spouse or minor child of an exchange visitor (J-2) pursuant to §214.2(j) of this chapter;

(6) A nonimmigrant (M-1) student seeking employment for practical training pursuant to 8 CFR 214.2(m) following completion of studies. The alien may be employed only in an occupation or vocation directly related to his or her course of study as recommended by the

endorsement of the designated school official on the I-20 ID;

(6) A nonimmigrant (M-1) student seeking employment for practical training pursuant to 8 CFR 214.2(m) following completion of studies. The alien may be employed only in an occupation or vocation directly related to his or her course of study as recommended by the endorsement of the designated school official on the I-20 ID;

(7) A dependent of an alien classified as NATO-1 through NATO-7 pursuant to §214.2(n) of this chapter;

(8) An alien who has filed a non-frivolous application for asylum pursuant to part 208 of this chapter. Employment authorization shall be granted in increments not exceeding one year during the period the application is pending (including any period when an administrative appeal or judicial review is pending) and shall expire on a specified date;

(9) An alien who has filed an application for adjustment of status to lawful permanent resident pursuant to part 245 of this chapter. Employment authorization shall be granted in increments not exceeding one year during the period the application is pending (including any period when an administrative appeal or judicial review is pending) and shall expire on a specified date;

(10) An alien who has filed an application for suspension of deportation pursuant to part 244 of this chapter, if the alien establishes an economic need to work; if the alien establishes an economic need to work. Employment authorization shall be granted in increments not exceeding one year during the period the application is pending (including any period when an administrative appeal or judicial review is pending) and shall expire on a specified date;

(11) An alien paroled into the United States temporarily for emergent reasons or reasons deemed strictly in the public interest pursuant to §212.5 of this chapter;

(12) A deportable alien granted voluntary departure, either prior to or after hearing, for reasons set forth in §242.5(a)(2)(v), (a)(2)(vi), or (a)(2)(viii) of this chapter may be granted permission to be employed for that period of

461

1153

time prior to the date set for voluntary departure including any extension granted beyond such date; if the alien establishes an economic need to work. Factors which may be considered in adjudicating the application for employment authorization of such an alien granted voluntary departure include, but are not limited to, the following:

(i) The length of voluntary departure granted;

(ii) The existence of a dependent spouse and/or children in the United States who rely on the alien for support;

(iii) Whether there is a reasonable chance that legal status may ensue in the near future; and

(iv) Whether there is a reasonable basis for consideration of discretionary relief.

(13) Any non-detained alien against whom exclusion or deportation proceedings have been instituted and who does not have a final order of deportation or exclusion, may be granted employment authorization if the district director determines that employment authorization is appropriate. Factors which may be considered by the district director in adjudicating the application for employment authorization include, but are not limited to, the following:

(i) The existence of economic necessity to be employed;

(ii) The existence of a dependent spouse and/or children in the United States who rely on the alien for support;

(iii) Whether there is a reasonable chance that legal status may ensue in the near future; and

(iv) Whether there is a reasonable basis for consideration of discretionary relief;

(14) An alien who has been granted deferred action, an act of administrative convenience to the government which gives some cases lower priority, if the alien establishes an economic necessity for employment;

(15) [Reserved]

(16) Any alien who has filed an application for creation of record of lawful admission for permanent residence pursuant to part 249 of this chapter. Employment authorization shall be granted in increments not exceeding one year during the period the application is pending (including any period when an administrative appeal or judicial review is pending) and shall expire on a specific date;

(17) A nonimmigrant visitor for business (B-1) who:

(i) Is a personal or domestic servant who is accompanying or following to join an employer who seeks admission into, or is already in, the United States as a nonimmigrant defined under sections 101(a)(15) (B), (E), (F), (H), (I), (J), (L) or section 214(e) of the Act. The personal or domestic servant shall have a residence abroad which he or she has no intention of abandoning and shall demonstrate at least one year's experience as a personal or domestic servant. The nonimmigrant's employer shall demonstrate that the employer/employee relationship has existed for at least one year prior to the employer's admission to the United States; or, if the employer/employee relationship existed for less than one year, that the employer has regularly employed (either year-round or seasonally) personal or domestic servants over a period of several years preceding the employer's admission to the United States;

(ii) Is a domestic servant of a United States citizen accompanying or following to join his or her United States citizen employer who has a permanent home or is stationed in a foreign country, and who is visiting temporarily in the United States. The employer/employee relationship shall have existed prior to the commencement of the employer's visit to the United States; or

(iii) Is an employee of a foreign airline engaged in international transportation of passengers freight, whose position with the foreign airline would otherwise entitle the employee to classification under section 101(a)(15)(E)(i) of the Immigration and Nationality Act, and who is precluded from such classification solely because the employee is not a national of the country of the airline's nationality or because there is no treaty of commerce and navigation in effect between the United States and the country of the airline's nationality.

(18) An alien against whom a final order of deportation exists and who is released on an order of supervision

— the period the application (including any period when —ative appeal or judicial re———ing) and shall expire on a

—migrant visitor for business who:

personal or domestic servant —mpanying or following to —yer who seeks admission already in. the United States —ant defined under sec- —(15) (B), (E), (F). (H),.(I), (J), —n 214(a) of the Act. The — domestic servant shall have — abroad which he or she has —— of abandoning and shall — at least one year's experi- —onal or domestic servant. —ant's employer shall — that the employer/em- —ionship has existed for at — prior to the employer's to the United States; or, if —employee relationship ex- — than one year, that the — regularly employed (ei- —— or seasonally) personal servants over a period of. — preceding the employer's — the United States; —onic servant of a United — accompanying or follow- — or her United States cit- — who has a permanent —tioned in a foreign coun- is visiting temporarily in States. The employer/em- —onship shall have existed commencement of the em- to the United States; or —ployee of a foreign air- in international transpor- —— freight, whose po- —ne foreign airline would — the employee to clas- — section 101(a)(15)(E)(i) —tion and Nationality is precluded from such solely because the em- —'s nationality or because —eaty of commerce and effect between the United — country of the airline's

— against whom a final —ation exists and who is — order of supervision

—der the authority contained in sec- —ion 242(d) of the Act may be granted —mployment authorization if the dis- —rict director determines that employ- —ment authorization is appropriate. Factors which may be considered by —he district director in adjudicating —he application for employment au- —horization include, but are not limited —to, the following:

(i) The existence of economic neces- —sity to be employed;

(ii) The existence of a dependent —spouse and/or children in the United States who rely on the alien for sup- —port; and

(iii) The anticipated length of time —before the alien can be removed from —the United States.

(19) An alien applying for Temporary —Protected Status pursuant to section —244A of the Act shall apply for employ- —ment authorization only in accordance —with the procedures set forth in part —240 of this chapter.

(d) *Basic criteria to establish economic* —*necessity.* Title 45—Public Welfare, Pov- —erty Guidelines, 45 CFR 1060.2 should be —used as the basic criteria to establish —eligibility for employment authoriza- —tion when the alien's economic neces- —sity is identified as a factor. The alien —shall submit an application for employ- —ment authorization listing his or her —assets, income, and expenses as evi- —dence of his or her economic need to —work. Permission to work granted on —the basis of the alien's application for —employment authorization may be re- —voked under § 274a.14 of this chapter —upon a showing that the information —contained in the statement was not —true and correct.

[55 FR 15221, May 1, 1987, as amended at 53 FR 8614, Mar. 16, 1988; 53 FR 46855, Nov. 21, 1988; 54 FR 16, Jan. 3, 1989; 55 FR 25926, June 25, 1990; 56 FR 624, Jan. 7, 1991; 56 FR 23499, May 22, 1991; 56 FR 41787, Aug. 23, 1991; 56 FR 55616, Oct. 29, 1991; 57 FR 6462, Feb. 25, 1992; 57 FR 14027, Apr. 21, 1992; 57 FR 31956, July 20, 1992; 57 FR 42855, Sept. 17, 1992; 58 FR 69217, Dec. 30, 1993]

EFFECTIVE DATE NOTE: At 59 FR 48780, Sept. 20, 1993, § 274a.12(a)(1) was amended by removing the term "Form I-151 or" from the first sentence; and by revising the phrase "the individual's work authorization" to read "the bearer's work authorization", ef- fective September 20, 1994.

## § 274a.13 Application for employment authorization.

(a) *General.* An application for em- ployment authorization (Form I-765) by an alien under § 274a.12(a) (3)-(8) and (10)-(13), and under § 274a.12(c) of this part, except for § 274a.12(c)(8), shall be filed in accordance with the instruc- tions on Form I-765 with the district director having jurisdiction over the applicant's residence, or the district di- rector having jurisdiction over the port of entry at which the alien applies, or with such other Service office as the Commissioner may designate. The ap- proval of such an application for em- ployment authorization shall be within the discretion of the district director. Where economic necessity has been identified as a factor, the alien must provide information regarding his or her assets, income, and expenses in ac- cordance with instructions on Form I- 765. An initial application for employ- ment authorization (Form I-765) for asylum applicants under § 274a.12(c)(8) of this part shall be filed in accordance with the instructions on or attached to Form I-765 with the regional service center, with the district director hav- ing jurisdiction over the applicant's residence, with the district director having jurisdiction over the port of entry at which the alien applies, with the asylum office having jurisdiction over the asylum claim or with such other Service office as the Commis- sioner may designate. An application for renewal of employment authoriza- tion submitted in relation to a pending claim for asylum, as provided for in 8 CFR 208.7, shall be filed in accordance with the instructions on or attached to Form I-765 with the asylum office hav- ing jurisdiction over the asylum appli- cation, with the district director hav- ing jurisdiction over the applicant's residence, with the district director having jurisdiction over the port of entry at which the alien applies, or with such other Service office as the Commissioner may designate. An ap- plication for an initial employment au- thorization or for a renewal of employ- ment authorization filed in relation to a pending claim for asylum shall be ad- judicated in accordance with 8 CFR 208.7.

**ATTACHMENT (B)**

4456

CitaPDF – www.fastio.com

A 31 298 296

## UNITED STATES DEPARTMENT OF JUSTICE
## BOARD OF IMMIGRATION APPEALS

IN THE MATTER OF:           )    IN DEPORTATION PROCEEDINGS

Jesus Garza Pacheco        )       A 31 298 296

                            )

RESPONDENT               )

## APPEAL FROM THE DECISION OF THE
## IMMIGRATION COURT

## APPELLEE
## THE IMMIGRATION AND NATURALIZATION SERVICE
## REPLY BRIEF

Thomas R. Murphy
Trial Attorney
700 E. San Antonio
Room C-201
El Paso, Tx 79901

(157)

UNITED STATES DEPARTMENT OF JUSTICE
BOARD OF IMMIGRATION APPEALS

IN THE MATTER OF:               §
                                §        A31 298 296
Jesus GARZA Pacheco             §
                                §
RESPONDENT                      §
                                §
                                §
                                §
                                §        DEPORTATION PROCEEDINGS

Comes now the Immigration and Naturalization Service and responds
to the Respondent's post hearing brief.

## I. ISSUES PRESENTED

A) Does the execution of an order of deportation deprive the
Immigration Court of jurisdiction to review a subsequent
application for suspension of deportation under section 212 (c)
of the Act?

B) Did the respondent waive the right to challenge his prior
deportation by his failure to collaterally attack the lawfulness
of that deportation as a defense to a criminal indictment for re-
entry after deport and by pleading guilty to a criminal
information charging him with obtaining entry by
misrepresentation of material facts?

C) Is the respondent, who obtained admission as a permanent
resident based upon a fraudulent marriage, a "lawful" permanent
resident entitled to seek discretionary waiver of deportation
under section 212(c) of the Act?

## II. SUMMARY OF ARGUMENTS

A) Deportation deprives the Immigration Court of jurisdiction to
review the deportation order and renders moot collateral
challenges of the deportation and subsequent applications for
discretionary relief from deportation under section 212(c) of the
Act.

B)  The respondent's failure to contest the validity of his prior
deportation as a defense to an indictment for illegal re-entry
after deportation, and his subsequent plea of guilty to unlawful
entry in violation of 8 U.S.C.§ 1325, constitutes a waiver by the
respondent of the right to further challenge the deportation. The
lawfulness of the deportation is res judicata.

C) The respondent, who obtained permanent resident status through a fraudulent marriage, has not been "lawfully" accorded that status, and thus is not entitled to seek a discretionary waiver of deportation under section 212(c) of the Act.

## III. STATEMENT OF THE CASE

This response is submitted to respondent's post hearing brief.

## IV. STATEMENT OF THE FACTS

The respondent was admitted to the United States as a permanent resident on November 4, 1971. The status was accorded based upon the respondent's marriage to Genoveva Alvarez de Garza. In open court the respondent admitted that his marriage to Genoveva Alvarez de Garza was fraudulent and was entered into for the purpose of immigrating to the United States.

On March 13, 1985, the respondent was convicted in Federal District Court for possession with intent to distribute heroin. Based upon this conviction, the Immigration and Naturalization Service issued an order to show cause, dated August 28, 1987, charging the respondent as deportable under §241 (a)(11) of the Immigration and Nationality Act. On August 28, 1987, the Immigration Court, in an in-absentia hearing, found the respondent deportable as charged and ordered his deportation to Mexico. On October 28, 1987, the respondent was deported pursuant to the order of deportation.

On September 17, 1991, the respondent was indicted for unlawfully entering the United States without having obtained the consent of the attorney general. The respondent pled guilty to an information containing two counts of knowingly and willfully obtaining entry to the United States by "willfully making a false or misleading misrepresentation, or the willful concealment of a material facts, namely, that the said Jesus Garza Pacheco possessed immigration documents that entitled him to reside in the United States."

## V. ARGUMENT

A) Execution of a deportation order deprives the Immigration Court of jurisdiction to review that deportation order.

The respondent's reliance upon Matter of Yih-hsiung Wang, 17 I&N Dec. 565 (BIA 1980) for the proposition that aliens may collaterally attack a prior deportation is in error. This case holds that respondents who voluntarily depart the United States cannot thereafter successfully move to reopen the prior deportation proceedings to raise issues which should have been presented prior to departure. In reaching this conclusion the Board distinguished the case of Mendez v. INS, 563 F.2d 956 (9 Cir. 1977) in which a collateral attack was allowed where a respondent's deportation was effected by procedurally defective

means. In dicta contained in Matter of Roman, 19 I&N Dec. 855 (BIA 1988),however, the respondent does find language which would support a limited right to collaterally attack a prior deportation if the prior order resulted in a gross miscarriage of justice. The court in Thorsteinsson v. I.N.S., 724 F. 2d 1365, 1367, (9 Cir. 1984) identifies and examines the line of cases which have developed this judicial exception to the preclusion of judicial review of deportation orders found at 8 U.S.C. §1105a(c). This exception finds its roots in Mendez which held that a deportation in derogation of the right to counsel was not a "departure" for the purposes of 8 U.S.C. § 1105.

Unfortunately for the respondent, Mendez and its progeny are not followed by the Fifth Circuit Court of Appeals, which is the controlling circuit in his case. In Quezada V. Ins, 898 F. 2d 274 (5 Cir. 1990) the Fifth Circuit Court of Appeals analyzed the statutory grant of jurisdiction to the Circuit and District Courts to review an order of deportation. The court found that the legislative mandate contained in 8 U.S.C. §1105(c) was clear in providing that "an order of deportation ... shall not be reviewed by any court if the alien ... has departed from the United States after the issuance of the order." The court ruled that it was without statutory jurisdiction to review the deportation. In reaching the decision, the court noted that the Ninth Circuit Court of Appeals in Mendez had strayed from the plain meaning of the statute to hold it inapplicable to departures effected unlawfully. The court observed that Mendez had become a sinkhole that swallowed the rule of 8 U.S.C. §1105a(c). The Fifth Circuit Court of Appeals conclude that Congress meant what it said when it provided that "no court" may review a deportation order once deportation has occurred and the court specifically rejected the Mendez decision in reaching that ruling. The "no court" provision contained within 8 U.S.C. §1105a(c), which removes jurisdiction from the Federal Courts to review an order of deport once an alien has departed also removes jurisdiction from lower courts such as Immigration Courts to review such order of deportation. The respondent's motion to reopen his case in order to collaterally attack his prior deportation should be denied.

B) The respondent's failure to contest the validity of his prior deportation as a defense to an indictment for illegal re-entry after deportation, and his subsequent plea of guilty before a Federal Magistrate to an information containing two counts of gaining entry to the United States by willful misrepresentation of material facts, constitutes a waiver by the respondent of the right to further challenge the deportation. The lawfulness of the deportation is res judicata.

Criminal courts, unlike civil courts, have jurisdiction to review the lawfulness of a prior deportation when that deportation in an element of the charged criminal offense. More specifically, charging a defendant with a violation of 8 U.S.C. §1326, re-entry after deport, opens the door to a collateral attack of a prior deportation. In United States v. Mendoza-Lopez,

CMPDF - www.fsxta.com

481 US 828, 95 L Ed 2d 772, 107 S Ct 2148, (1987), the court squarely confronted this issue in the context of 8 U.S.C. §1326. The court restated its established doctrine that where a determination made in an administrative proceeding plays a critical role in the subsequent imposition of a criminal sanction, due process requires some meaningful review of the administrative proceeding. The court ruled that collateral challenges to prior deportations are specifically allowed in §1326 prosecutions.

The respondent defended himself before a forum which had an express grant of jurisdiction to review the lawfulness of his prior deportation. The respondent was under indictment for a violation of 8 U.S.C. §1326, which specifically charged him with unlawfully re—entering the United States after having been previously deported. The deportation charged in the criminal indictment is the same one the defendant now seeks to collaterally attack before the Immigration Court. This indictment provided the defendant with the opportunity to collaterally attack the deportation order which not only resulted in his deportation from the United States but also stripped him of his status as permanent resident. Rather than seizing his opportunity to challenge his deportation and the ensuing harshness that deportation brought to his life, the respondent chose to plea bargain his right away. He plead to an indictment containing two counts of a violation of the sister statute, 8 U.S.C. §1325. By his plea, he waived his right to challenge his deportation.

The respondent's contention that his plea to a violation of 8 U.S.C. §1325 does not constitute res judicata is without merit. The respondent had been admitted to the United States as a permanent resident. The information he pled to specifically charges that he gained entry to the United States by willful misrepresentation of material facts, namely, that he possessed immigration documents that entitled him to reside in the United States. It was the execution of the order of deportation which stripped him of his status as a permanent resident, and a collateral attack, if successful, of the order of deportation would restore his status. Once he regained his status as a permanent resident, he would not be guilty of misrepresenting that he had documents which would allow him to reside in the United States in violation of 8 U.S.C §1325. Clearly, the respondent's case is one where "a determination made in an administrative proceeding plays a critical role in the subsequent imposition of a criminal sanction." The reasoning followed by the court in Mendoza-Lopez is as equally compelling against the respondent for a §1325 violation as it is for a §1326 violation.

The respondent's criminal attorney was aware of the respondent's contention that his deportation was improper. The respondent, under the advice of counsel, still chose to enter into a plea bargain by which he pled guilty to a violation of 8 U.S.C. §1325. By his guilty plea, he acknowledged he was guilty of every element of the offense. He waived his right to raise defenses which were available to him prior to his guilty plea. He is collaterally estopped from re-litigating issues which were

essential elements of a criminal charge against him. He cannot collaterally attack before the Immigration court those facts established by his conviction. See Howard v. Immigration & Naturalization Service, 930 F. 2d 432, (5 Cir. 1991). With his guilty plea the lawfulness of his prior deportation became res judicata.

C) The respondent, who obtained permanent resident status through a fraudulent marriage, has not been "lawfully" accorded that status, and thus is not entitled to seek a discretionary waiver of deportation under section 212(c) of the Act.

The respondent, in open court, declared that he had entered into his marriage solely for obtaining entry to the United States as a permanent resident. A judicial confession is the strongest form of proof known to the law and based upon his statement alone and without receiving any additional evidence the Immigration Judge can find that the respondent obtained his immigrant visa by fraud.

The respondent's reliance on Zamora-Morel v. INS, 905 F.2d 833, (5th Cir. 1990) for the proposition that a finding of unlawful residence cannot be made without a charge alleging fraud is unfounded. In Zamora-Morel the alien had been improperly held to be ineligible for a waiver to §241(f)(2) which was available to aliens who were subject to deportation under §241 (a)(11) for a single conviction for possession of 30 grams or less. Having been charged with only a single conviction, the court correctly held the alien could not be barred as having two convictions. The disqualifications for this waiver was tied to the charge of deportability. There is no similiar between the qualifications for relief under §212(c) of the Act and any particular ground of deportation. What is required, however, is a showing of statutory eligibility to apply for relief under §212(c). The respondent, not the service, has the burden of showing eligibility for relief in making applications for discretionary relief.

While the respondent had been accorded status as a permanent resident that status had been obtained by fraud. The respondent had not been "lawfully" admitted to the United States. See Monet v. Immigration & Naturalization Service, 791 F. 2d 752, 754 (9 Cir. 1986). In Monet the alien argued, as the respondent is now arguing, that although he unlawfully obtained he status as a permanent resident alien, he should retain his status until a formal adjudication of the unlawful procurement in made. The court rejected this argument holding that Congress required not only admission as a permanent resident but that the admission be lawful. The court ruled that the alien failed to demonstrate that he was statutorily eligible for relief under §212(c) of the Act. The Fifth Circuit, from which the respondent's case arises, similarly requires an alien to be lawfully admitted for the entire 7 years in order to apply for a §212(c) waiver. See Prichard-Ciriza v. INS, 978 F.2d 219 (5th Cir. 1992). Mr. Garza is not statutorily eligible to apply for relief under §212(c) of the Act.

Nor is he statutorily eligible to apply for relief under section 241(a)1(H) of the Act. Three grounds of deportation alleged against the respondent. Those grounds are Section 241(a)(1)(B) entry without inspection, Section 241(a)(1)(A) excludable at time of entry for a controlled substance conviction and Section 241(a)(1)(A) excludable at entry as an alien seeking entry within 5 years of being deported. Not withstanding his admission that he gained his status through fraud the respondent is not charged with being deportable based upon that fraud. Seeking a waiver for fraud does him no good. His fraud is not essential to the establishment of the any of the grounds of deportation charged against him. The respondent does not have the power to substitute for his own convenience a ground of deportation not involved in the deportation proceedings against him, **Matter of Tsaconas**, 12 I&N Dec. 332 (BIA 1967).

**WHEREFORE**, the Service respectfully requests that the instant motion to re-open be denied.

Respectfully submitted,

Thomas R. Murphy
General Attorney
700 E. San Antonio Street
El Paso, Texas '79901
(915) 534-6348
FTS 570-6348


### CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of September, 1993, I mailed a true and correct copy of the foregoing to Lisa S. Brodyaga, Attorney for the Respondent, REFUGIO DEL RIO GRANDE, 402 E. Harrison, 2nd Floor, Harlingen, Texas 78550.

Legal Assistant