United States District Court
Southern District of Texas
FILED
JUN 2 1995
Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO, et al )
)
v. ) C.A. No. B-94-215
)
TROMINSKI, et al. )
)

PETITIONERS' EXHIBIT "T"
IN SUPPORT OF STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE EXISTS NO SUBSTANTIAL CONTROVERSY

CERTIFICATE OF CONSULTATION AND SERVICE

I hereby certify that on May 16, 1995, I served the document attached hereto, and an unredacted copy of the same document, on current counsel for Respondents, advising them that, given their denial of Paragraph 35 of the Second Amended Petition herein, it was necessary to file said Exhibit. At that time, I requested their opinion as to whether they preferred that I file the original, or the redacted version, from which references to settlement negotiations had been deleted. On May 30, 1995, counsel for Respondents stated that she preferred the redacted version, attached hereto. I further certify that copies of the instant document were likewise served on Regina Byrd, Attorney, David Guerra, AUSA, and Ken Muir, Of Counsel, this 2nd day of June, 1995.

Respectfully Submitted,

Lisa S. Brodyaga
Attorney at Law

1128

ClibPDF - www.fastio.com

**LAW OFFICES OF REFUGIO DEL RIO GRANDE**
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226
July 29, 1994

Howard Rose, SAUSA
Office of the United States Attorney
Civil Division
910 Travis, Suite 1500
Houston, Texas 77002

Re: Herrera et al v. Trominski et al, CA B-94-215

Dear Howard:

Thank you for taking the time to discuss the case with me today. [redacted]

[redacted] you requested that I put in writing some of the history [redacted] You might find the two enclosed letters amusing in this context. They demonstrate, inter alia, that Mr. Trominski is the third straight District Director with whom we have battled this issue, and that we have been threatening litigation over this problem since at least April of 1988. (I am sure that I could locate some additional letters on this point, if you wanted).

You also might find it informative to review Mr. Castillo's A-file. We came very close to filing a damage action in that case; we even filed the necessary paperwork to pursue the issue under the Tort Claims Act. But because we did not, apparently no-one paid any attention. We ultimately won his deportation case, and he received a new I-551. But the issue did not go away.

The problem has been exacerbated by the trigger-happy manner with which INS Officers at the port of entry have historically slapped exclusion proceedings on returning residents, solely on the basis of whether or not they were "excludable," and without reference to whether or not they were making an "entry." Over the years, this issue has been litigated on a case by case basis, with a great deal of success in terms of being able to terminate individual cases, but with absolutely no impact on the procedures and predispositions in effect in the office of District Counsel, or at the ports of entry along the River, particularly in Brownsville.

1129

ClibPDF - www.fastio.com

With the advent of Etuck v. Slattery, and Molina v. Sewell, I thought that we were well on our way to resolving the documentation issues. We were even able to get green cards back for a number of clients, and many more reported that their cards had not been lifted. But the problems at the ports of entry persisted, apparently unabated. From what I could see, Molina v. Sewell brought no changes at all, either in terms of the criteria under which exclusion proceedings were initiated, or the zeal with which the Trial Attorneys prosecuted them, once filed.

When Mr. Gracia's card was lifted on June 22, 1994, I was startled, because I thought we had won this portion of the battle, in favor of a policy of not confiscating green cards, as I understood was also the case in other parts of the country. Neither Deportations, nor the Border Patrol, were routinely lifting green cards any more, and, as mentioned, cards which had been confiscated were being returned. Although not completely resolving the problem at the bridge, this fact greatly reduced its impact, because most LPR's who present their green cards are simply waived through, without further questions, other than "what are you bringing?"

It was for this reason that I originally formulated the demand in terms of the actual green card, because I knew of no other manner in which to give full effect to the right of a lawful permanent resident, even one under deportation proceedings, to make Fleuti-type departures, and return to the United States, without running a very high risk of being placed in exclusion proceedings.

The reason that I put my foot down, and said that the issue had to be resolved on a class-wide basis, and that I would not accept a solution that simply involved my clients, should be evident from my letter of February 5, 1981, to Mr. Boldin. Thirteen years is long enough to try to resolve an issue without litigation. I did my best to understand what INS' concerns were, and why some sectors were so insistent about confiscating green cards, but at no time did anyone ask why I was so insistent, or what difference it made whether the person had a green card, or an I-94. Nor did anyone make any effort to explore the possibility of a mutually agreeable solution, prior to our conversation of Friday, July 29, 1994.

As you know, there has been no SAUSA in the Harlingen District for close to a year. Similarly, there have been no meetings between the INS and the private bar for several years. I have requested that such meetings be reinstated, through John Carte, the General Attorney designated to play the role of contact person with the



1130

ClibPDF - www.fastio.com

AUSA, in matters involving potential litigation, but to no avail.

Nancy Masso, AUSA, who handles cases involving INS in the Brownsville Division, and David Guerra, AUSA, who performs this function in the McAllen Division, have both been most helpful, and reasonable, but have lacked both the authority, and the expertise, to engage in direct negotiations in matters such as the case at bar. Mr. Carte has also been both reasonable and helpful, but has not been invested with the authority to play this crucial role.

When the issue exploded on June 22nd, the best that Ms. Masso was able to do was to ask for a period of time in which to run the issue past the higher-ups, to see their reaction. At her request, I extended the deadline several times, because she had not been able to obtain a response, as key personnel were out of town.

After the incident on June 22nd, with Mr. Gracia, I began to make inquiries to determine just how widespread the problem was. I was horrified to learn that it was still the practice that when an LPR bonded out from the Corralon, he would only be given bond papers, and not even an I-94. I was even more stunned when I learned that a number of people had <u>asked</u> for some document showing that they were LPR's, and had been told to wait for their hearings.

All of this information I passed on, through either John Carte, or Nancy Masso, or both, during the time I was awaiting a reply. Apparently, the higher-ups did not consider that these facts were significant, or that it would be useful for anyone to talk directly to me. Other than the suggestion that something might be done in Mr. Herrera's case, which I rejected as inadequate, because it did not address the problem on a class-wide basis, the only response I ever received was a message, delivered by Ms. Masso, on Thursday, July 14, 1994, that INS considered that it was on solid legal ground, and that I might as well go ahead and file suit. So I did.

Even after filing suit, I continued to inquire who would be responsible for the action, and was told that this decision had not been made. It was not until the Magistrate set a date for a hearing that INS apparently decided to take the issue seriously enough to even designate anyone to handle it. On Thursday afternoon, July 28, 1994, when I served the amended complaint, I inquired, and was told that the case had been assigned to you. And as you know, the following morning, I called you. [redacted]



1131



Sincerely,

Lisa S. Brodyaga
Attorney at Law

cc: Nancy Masso, AUSA
David Guerra, AUSA
John Carte, Esq.





ClibPDF - www.fastio.com





LAW OFFICES OF GARCIA, BRODYAGA, & NETTLES
Attorneys - Abogados
402 E. Harrison
2nd Floor - 2° Piso
Harlingen, Texas 78550
(512) 425-9552

February 5, 1981

Hal W. Boldin, District Director
Immigration and Naturalization Service
719 Grimes
Harlingen, Texas 78550

Re: Porfirio Armando CASTILLO-Beza
A17 303 622
Our file: B-319/81

Dear Mr. Boldin:

This will confirm our conversation of today. Mr. Castillo, a permanent resident alien, needs some form of document, be it his I-151, an I-94 "temporary" I-151, or other substitute, which will enable him to claim and enjoy the benefits of his status as lawful permanent resident alien, specifically the ability to travel outside the United States and seek readmission as a returning resident.

It is my strong belief that the fact that there are pending deportation proceedings against Mr. Castillo does not give INS the right to terminate his status as lawful permanent resident, or to deprive him of the benefits of such status, until his hearing has been completed, at the earliest, and probably until a final order of deportation has been rendered.

Mr. Castillo desires to make a brief visit to Mexico this week-end, to make contact with his fiancee, who is potentially a witness in his case. Therefore, I urgently request that he be given appropriate documentation as a lawful permanent resident by February 6, 1981.

Thank you for your consideration.

Very Truly Yours,

Lisa S. Brodyaga
Attorney for Respondent

cc: client



ClibPDF - www.fastio.com

Omer Sewell, District Director
Immigration and Naturalization Service
2102 Teege
Harlingen, Texas 78550
April 19, 1988

Re: Porfirio Armando Castillo
A17 303 622

Dear Mr. Sewell:

Please accept this letter as a request for compensation for the damagaes which have been, and continue to be, suffered by Mr. Castillo as a result of your refusal to return to him his proof of status as a lawful permanent resident, with all the rights and privileges that pertain thereto.

As we have earlier informed you, Mr. Castillo is suffering economic, as well as emotional losses, from his inability to legally cross back and forth from Mexico, file a relative petition (I-130) for his wife, and otherwise enjoy his status as a lawful permanent resident.

District counsel, David Ayala, Esq., informed me over the telephone today that our request for the return of his card or other indicia of his continuing status as a lawful permanent resident (albeit one under deportation proceedings, but still with all the rights and privileges that accrue to said status) has been denied, except that an I-94 (with significant limitations) will be issued.

We will therefore be forced to file suit to recover his card, and will be requesting, in due time, damages for what we consider to be your willful misconduct. We are aware of no statute or other authority which gives you the power, discretionary or otherwise, to interfere in this manner with Mr. Castillo's enjoyment of his status as lawful permanent resident.

As a result of your actions, Mr. Castillo has suffered, and will continue to suffer, pecuniary damages in the amount of approximately Fifty dollars ($50.00) per day. We will be requesting damages from October, 1985, when we first requested the return of Mr. Castillo's card. We would accept, at this point in time, recompense in the amount of $40,000, plus the return of his card.

If the matter is not settled amicably, we will consider that the damages are continuing to accrue, at the rate aforementioned, and will seek a corresponding amount through appropriate court action. We consider that your refusal to return Mr. Castillo's card or otherwise give him indicia of his lawful permanent resident status without significant restriction (other than that imposed by the conditions of his appearance bond), to be an anticipatory denial of this claim.



ClibPDF - www.fastio.com

If you would prefer that this claim be made on a government form, please send us one which you consider appropriate.

Thank you for your consideration.

Sincerely,

Lisa S. Brodyaga
Counsel for Claimant
301 E. Madison
Harlingen, Texas 78550
(512) 425-3701

Thelma O. Garcia
Counsel for Claimant
301 E. Madison
Harlingen, Texas 78550
(512) 425-3701

cc: client



ClibPDF - www.fastio.com