38

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 7 1995

Michael N. Milby
Clerk of Court

ASCENCIO, et al            )
                           )
v.                         )      C.A. No. B-94-215
                           )
TROMINSKI, et al.          )
_____)

PETITIONERS' REPLY TO RESPONDENTS' OPPOSITION TO PETITIONERS'
MOTION TO COMPEL DISCOVERY, OPPOSITION TO RESPONDENTS'
MOTION TO HOLD DISCOVERY IN ABEYANCE, AND
RENEWAL OF REQUEST FOR HEARING ON MOTION FOR CLASS CERTIFICATION

Come Petitioners, and respectfully file the instant reply to Respondents' opposition to Petitioners' motion to compel discovery. Petitioners' also oppose herein Respondents' motion to hold discovery in abeyance, and renew their request for a hearing on their motion for class certification.

I. REPLY TO RESPONDENTS' OPPOSITION TO MOTION TO COMPEL AND
OPPOSITION TO RESPONDENTS' MOTION TO HOLD DISCOVERY IN ABEYANCE

In Respondents' opposition to Petitioners' motion to compel production of documents, and motion to hold discovery in abeyance, (hereinafter referred to as "Respondents' Motion," and cited as (RES:___) at page 1), Respondents assert that, contrary to Petitioners' recollection of their telephone discussion, they had advised the undersigned that, upon compliance with the Privacy Act:

> all requested documents would be made available, excepting those requested in the third paragraph of plaintiffs' request for production of documents, which seeks alien files ("A-files") of all aliens to whom G-56 notices were sent.

Leaving aside as unproductive disputes as to who said what to whom, it is noted that this assertion is nonetheless inconsistent with

Respondents' current position, as set forth in their motion to hold discovery in abeyance, in which Respondents argue that no discovery should be conducted. And, in fact, none of the documents sought in Petitioners' First Set of Requests for Production of Documents have been provided, not even the materials requested in Paragraph 2 of the request, to most of which the Privacy Act would not apply.[1]

Respondents claim that the Privacy Act precludes release to Petitioners' counsel of any information from the A-files of the members of the putative class that have been identified by Respondents. Although Respondents do not cite the statutory language upon which they purportedly rely, it would seem that this interpretation of the Privacy Act is conveniently overbroad.

The Privacy Act was never intended to shield wrongdoing by an administrative agency, by precluding disclosure of information about such wrongdoing, even where arrangements are made to protect the identities of the victims.[2]

Respondents also claim that the information requested in Paragraph

---

[1] Paragraph 2 requested the following:

All memoranda, instructions, correspondence, and other written records which describe or discuss actions which are contemplated, which are to be taken, or which have been taken, by Defendants, or any agent or agent of Defendants, as a result of the instant action; and the A-files of any individuals affected thereby.

[2] As current counsel was informed in the discussion of May 3, 1995, the agreement with prior counsel was that the files of the two persons deported after falling into INS' trap would be in some way redacted to prevent disclosure of information which would legitimately fall under the Privacy Act. It was anticipated that the actual identities of the persons involved would become relevant if, and only if, it were determined that they were improperly deported, as, for example, if some remedy would have been available which was lost due to some impropriety on the part of INS. What would have transpired under such circumstances is a bridge which would have been crossed only upon arrival at that point.

2

Three has "no bearing on the present suit," on the grounds that "those aliens who were mailed G-56 notices are not members of the class defined in the subject suit," (RES:3). [3] Again, Respondents are attempting to sweep their wrongdoing under the rug, by means of an overbroad generalization, which evaporates under scrutiny.

In support of their claim that the "aliens who were mailed G-56 notices are not members of the class defined in the subject suit," Respondents cite, and attach, a letter from Petitioners' counsel, [4] complaining that the G-56's were being sent to, (among others), people who were not class members, and requesting that the G-56's be cancelled until the appropriate recipients could be identified.

Of the four G-56 notices received by counsel for Petitioners, in their capacity as attorneys of record for the individuals involved, one was a class member, and three were not. Petitioners' counsel were in a position to make this determination precisely because of their pre-existing relationship with the four individuals.

However, G-56 notices were also sent to individuals other than the four persons discussed in the letter of October 21, 1994. Unless and until the requested discovery is granted, Petitioners cannot know which of the remaining individuals are (or were) members of the putative class herein, and which were victims of the trap which INS set, using the instant action as bait.

Respondents would now attribute their own lack of good faith to Petitioners, claiming that it was Petitioners who "failed to honor their agreement by refusing to provide defendants adequate opportunity to respond to plaintiffs' pleadings," (RES:3).

---

[3] A "G-56" is a call-in letter, setting an appointment. Petitioners' Exhibit E, which contains several examples.

[4] The complete letter, with attachments, has already submitted to the Court as Petitioners' Exhibit E.

3

1625

On this basis, Respondents claim justification for renouncing all agreements made by prior counsel, (RES:4). Such a miniscule fig leaf does not begin to cover Respondents' large areas of exposure. And their refusal to honor their prior agreement to provide Petitioners' counsel with access even to redacted versions of the files of the people they have victimized, in the name of the instant action, is simply unconscionable.

It is also not true that Respondents' prior counsel made the agreement to provide such access in order "to quell the discord" between the parties, (RES:2). To the contrary, it was based, and he has repeatedly stated that it was based, on his sense of fairness, and his personal commitment to justice. It must not be forgotten that it is the obligation of all attorneys who represent the United States not to represent solely the interest of their "clients," but to ensure that justice is done. Allowing counsel for Petitioners to determine whether or not a gross miscarriage of justice has been perpetuated by INS, under cover of the instant action, certainly falls within that category.

## II. THE NEED FOR CLASS CERTIFICATION

The invocation by Respondents of the Privacy Act as a shield against any and all discovery designed to protect the interests of the members of the putative class, points up the necessity for class certification. Respondents' current counsel has conditioned the release of any information about those putative class members who have been "identified by Respondents" on the ability of Petitioners' counsel to obtain proper releases from the affected individuals. Logically, this is impossible, since, by definition, only Respondents know their identities.

Since Respondents have now openly acknowledged that they are reneging on all agreements made by prior counsel, and have decided to completely stonewall discovery, there is no option but to

4

1126

proceed henceforth in a fully adversarial manner. Unfortunately, this includes class certification, as there is no other means of protecting the interests of the members of the putative class.

### III. CONCLUSION

It is therefore urged that Respondents' motion to hold discovery in abeyance be denied, and that a hearing be held as soon as possible on Petitioners' pending motion for class certification.

Respectfully Submitted,

/s/ Lisa S. Brodyaga

Lisa S. Brodyaga
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226

Thelma O. Garcia
301 E. Madison
Harlingen, Texas 78550
(210) 425-3701

### CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing were mailed to Regina Byrd, Attorney, OIL, U.S. Department of Justice, Civil Division, Box 878, Ben Franklin Station, Washington, D.C. 20044, David Guerra, AUSA, 1701 W. Highway 83, #305, McAllen, Texas 78501, and Ken Muir, General Attorney, INS, 2102 Teege, Harlingen, Texas 78550, this 2nd day of June, 1995.

/s/ Lisa S. Brodyaga

Lisa S. Brodyaga
Attorney at Law