46

i

ł

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

|  |  |  |
|---|---|---|
| JULIO HERRERA LOA, JUANA ASCENCIO-GUZMAN, et. al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. B-94-215 |
| E.M. TROMINSKI, District Director, Immigration and Naturalization Service, HON. JANET RENO, United States Attorney General, and IMMIGRATION AND NATURALIZATION SERVICE, | ) ) ) ) ) ) ) ) | DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION |
| Defendants. | ) ) ) | |

## STATEMENT OF JURISDICTION AND TIMELINESS

On June 12, 1995, the Magistrate Judge in the case sub

judice issued what is styled as an "Order Granting Preliminary

Relief to Jesus Garza-Pacheco (Order or Order of June 12, 1995)."

The Order requires the defendants to grant work authorization to

Mr. Garza-Pacheco, an alien unlawfully in the United States.

This Court has jurisdiction and is required to render a final

decision in all civil actions where a magistrate judge has been

designated by the district court to preside and determine

pretrial matters.  8 U.S.C. § 636(b).  In cases such as this,

where the parties have not consented to have their case presided

over or decided by a magistrate judge, the magistrate judge only

has authority to submit proposed findings and recommendations for

this Court's de novo review.  Reynaga v. Cammisa, 971 F.2d 414

(9th Cir. 1992).  The magistrate judge does not have authority

867

when designated under 8 U.S.C. § 636(b) to preside over or decide motions for injunctive relief among other forms of motions cited in that section.  Any party objecting to the magistrate judge's proposed findings and recommendations may submit written objections to the appropriate district court "[w]ithin <u>ten days after being served</u> with a copy" of the magistrate judge's recommendations.  8 U.S.C. § 636(b)(1)(C) (emphasis added.)

The defendants received the Magistrate Judge's Order on June 19, 1995, thus their objections are not due to the Court until June 29, 1995.  Accordingly, defendants objections are timely submitted to the Court.

<strong><u>OBJECTIONS</u></strong>

1.  The Magistrate Judge does not have the authority to issue orders in the case <u>sub judice</u>.

2.  The Court does not have jurisdiction over this alien who is not a named plaintiff or class member and whose factual predicate is not in any way similar to those facts that the plaintiffs allege are common to the defined class.

3.  The Magistrate Judge erred in recommending that this Court order defendants to grant work authorization to Mr. Garza-Pacheco, an illegal alien who does not meet the criterion for such benefit.

4.  Even if the Magistrate Judge was empowered to direct the entry of a judgment of the district court, his attempt to do so in this case would have been in error because plaintiffs have failed to submit a motion requesting such action.

2

888

CtiiPDF - www.texisi.com

## **BACKGROUND**

During a status conference held on April 26, 1995, the
Magistrate Judge heard arguments on plaintiffs' motion for
default judgment against defendants.  Plaintiffs also moved the
Magistrate Judge to grant preliminary relief to one Jesus Garza-
Pacheco in the form of ordering the defendants to issue a work
authorization for Mr. Garza-Pacheco.  The Magistrate Judge
declined, and rightfully so, to rule on plaintiffs' motion for
default judgment.  Parks v. Collins, 761 F.2d 1101 (5th Cir.
1985).  However, the Magistrate Judge instructed the plaintiffs
to file  an order temporarily restraining defendants from
withholding the relief requested.

On May 17, 1995, plaintiffs filed among other documents
their proposed "Order Granting Request for Preliminary Relief to
Jesus Garza-Pacheco."  The defendants responded, on May 30, 1995,
through their "Opposition to Plaintiffs' Request for Preliminary
Relief," wherein defendants asserted that the relief sought
should be denied because: (1) Mr. Garza-Pacheco is neither a
named plaintiff nor a member of the class as defined; and
(2) plaintiffs failed to meet their burden to demonstrate that
preliminary injunctive relief is justified.

Notwithstanding the defendants' opposition, on June 12,
1995, the Magistrate Judge signed, without modification,
plaintiffs' "Order Granting Request for Preliminary Relief to
Jesus Garza-Pacheco."  The Order directs the defendants to issue
a work authorization to Mr. Garza-Pacheco, and to renew it "in

3

889

increments of not less than six months, until such time as his pending case before the Board of Immigration Appeals is fully and finally determined, including judicial review, if such review is taken." Order at 7.  Moreover, the Magistrate Judge's Order failed to address or even mention the defendants' assertion that Mr. Garza-Pacheco is not a named member of the class nor are the facts of his case sufficient to include him as an unnamed member of the defined class.  Thus, as argued before the Magistrate Judge, plaintiffs must therefore seek relief, if at all, "through an independent action brought on behalf of Mr. Garza-Pacheco." (Defendants' Opposition to Plaintiffs' Request for Preliminary Relief as to Jesus Garza-Pacheco at 7).  The Magistrate Judge through his verbatim adoption of plaintiffs' Order made several findings of facts that defendants' object, to as will be discussed _infra_.

### HISTORY OF THE CASE

On July 15, 1994, plaintiffs filed a class action law suit against the defendants seeking to represent all lawful permanent resident aliens (LPRs) who are members of the class defined as all LPRs:

> who are under deportation or exclusion
> proceedings, in whose cases no final order of
> deportation or exclusion has been entered,
> who are not presently held in detention,
> whose I-151 or I-155 cards have been
> confiscated by Defendants, and are being
> retained by or under the authorization of the
> Harlingen Office of the Immigration and
> Naturalization Service.

4

(Plaintiffs' Second Amended Petition at 12 (paragraph 38).)
Plaintiffs raised four (4) issues on behalf of the class, within
which are several sub-issues.  All the issues raised by
plaintiffs relate to the defendants' Harlingen, Texas, office
and/or the defendants' Harlingen, Texas, branch offices.

First, plaintiffs assert that the defendants confiscated the
green cards of members in the defined class who have been placed
in deportation or exclusion proceedings without providing a
substitute document which does not place a "cloud"[1] over the
member's "status as a LPR," thus "curtail[ing] their rights and
privileges," which include the ability to obtain and maintain
employment, and to travel freely.  (Id. at 10-11 (paragraph 35),
13-14 (paragraph 46 and 47).)  Plaintiffs also claim that this
issue has been "a source of controversy with the defendants'
Harlingen Office . . . for at least a dozen years."  (Id. at 12
(paragraph 35.)  Plaintiffs claim that placing anything other
than "employment authorized" on the substitute green card
interferes with and violates the rights and privileges conferred
upon the defined class member by virtue of the member's LPR
status and "constitutes an undue restriction" on the member's
liberty.  (Id. at 12 (paragraph 37), 14 (paragraph 46).)  Namely,
plaintiffs assert, although a class has not been certified, that

---

[1]  Plaintiffs state that a replacement document places a
cloud over the member's LPR status if defendants make note on the
card that: (1) it is valid for a specified time period of time;
(2) the alien is under exclusion or deportation proceedings;
(3) it is not valid for re-entry or employment; or (4) the alien
is out on bond.

891

a class member bearing the complained of substitute card is more likely to be: (1) denied employment; (2) placed into exclusion proceedings upon applying for admission into the United States as a returning LPR who has made a brief, casual, and innocent departure from the United States; and (3) denied re-parole into the United States if the class member makes a brief, casual, and innocent departure from the United States during the pendency of exclusion proceedings without first submitting a new application for parole to the District Director.  (Id. at 14-15 (paragraphs 47-50).)  As a result of the alleged violations, plaintiffs claim that they are entitled to a Writ of Habeas Corpus on the ground that defendants are depriving them of their liberty, without due process of law, by placing "restrictions on their liberty not shared by the population at large."  (Id. 15 (paragraph 51)) (emphasis added.)

Second, plaintiffs assert that the defendants violate the rights status of members of the defined class by not automatically paroling all LPRs who are in exclusion proceedings into the United States during the pendency of such proceedings, and by  failing to re-parole LPRs back into the United States following what plaintiffs would alleged are brief, casual and innocent departures from the United States.[2]  Based thereon,

_____

[2]  Plaintiffs assert that it is the defendants' practice to parole LPRs into the United States who present themselves at ports of entry under the jurisdiction of defendants' Harlingen, Texas office, when such LPRs are believed to have committed criminal offenses in which criminal prosecution is contemplated, and based on the same offenses the LPRs are subject to exclusion
(continued...)

6

892

plaintiffs request the Court to preliminarily and permanently enjoin the defendants from the alleged acts.

Third, plaintiffs assert that <u>Molina v. Sewell</u>, 983 F.2d 676 (5th Cir. 1993), prohibits the defendants from taking into consideration the fact that an alien departed the United States while out of the defendants' custody on bond pending deportation proceedings when determining whether the departure was "meaningful" as set forth under the dictates of <u>Rosenberg v. Fleuti</u>, 374 U.S. 449 (1963). (<u>Id</u>. at 16 (paragraph 57).) Consideration of such fact, plaintiffs assert, "violates [the alien's] rights as a [LPR]." (<u>Id</u>.) Consequently, plaintiffs assert that they are entitled to declaratory and injunctive relief. (<u>Id</u>. at 16 (paragraph 59, 61).)

Fourth, plaintiffs assert that the defendants cancel or forfeit the bond of members in the defined class based solely upon the fact that the member departed the United States while on bond, and thereby deprive the member of liberty without first providing due process of law. (<u>Id</u>. at 17 (paragraph 63).) For this alleged act, plaintiffs assert that they are entitled to both declaratory and injunctive relief. (<u>Id</u>. at 17 (paragraph 64 and 66).)

---

[2](...continued)
proceedings. (Plaintiffs Second Amended Petition at 9 (paragraph 28).) Plaintiffs also assert that when criminal prosecution is not contemplated for an offense, although the offense serves as a ground for exclusion proceedings, it is the defendants' practice to place the alien in exclusion proceedings, but not parole the LPR into the United States. (<u>Id</u>. at 9 (paragraph 29).)

7

893

## HISTORY OF MR. GARZA-PACHECO

Although plaintiffs filed this class action suit on July 15, 1994, the first record indication of Mr. Garza-Pacheco's possible membership in the class was asserted through plaintiffs' letter of February 17, 1995.  (See Attachment 1 - Plaintiffs' Letter of February 17, 1995, to Defendants' Harlingen, Texas Office at 2.)  To date, plaintiffs have not moved to amend their complaint to add Mr. Garza-Pacheco to the suit.  Additionally, in this letter plaintiffs themselves admittedly were not pursing Mr. Garza-Pacheco's claim as a member of the class, and asserted that they "if necessary, [would] pursue the matter through the Herrera case" if defendants failed to grant Mr. Garza-Pacheco a temporary I-551 as plaintiffs requested.  (Id. at 2.)

The facts of Mr. Garza-Pacheco's case are not in any way similar to those of the named class members or to the class as defined by the plaintiffs.  Specifically, Mr. Garza-Pacheco was admitted to the United States as an LPR on September 4, 1971. On March 13, 1985, he was convicted in the United States District Court for the Southern District of Texas, Brownsville Division of two counts of possession with intent to distribute heroin.  (In one count, the amount of heroin alleged was 102.6 grams.)  Based upon his convictions, on December 18, 1985, the INS issued an Order to Show Cause to Mr. Garza-Pacheco charging him with being deportable under Immigration and Nationality Act ("INA") § 241(a)(11).

8

894

On August 28, 1987, Mr. Garza-Pacheco was ordered deported
_in absentia_.  September 14, 1987, was designated as the date by
which Mr. Garza-Pacheco had to submit his appeal of the
Immigration Judge's ("IJ") decision.  Mr. Garza-Pacheco, however,
failed to appeal the IJ's decision to Board of Immigration
Appeals ("Board").  Thereafter, on October 28, 1987, two months
after the IJ's decision, Mr. Garza-Pacheco was deported from the
United States.  In or about April 1991, Mr. Garza-Pacheco
reentered the United States without authorization using his green
card at a port of entry where he was known by the defendants'
agents, who permitted him to pass without interruption.  The
defendants learned of Mr. Garza-Pacheco's illegal presence in the
United States and on or about August 26, 1991, arrested
Mr. Garza-Pacheco pursuant to an OSC which charged three grounds
of deportability: (1) INA § 241(a)(1)(B), based on his entry
without inspection; (2) INA §§ 241(a)(1)(A) and
212(a)(2)(A)(i)(II), based on his having been convicted for
violation of a law relating to a controlled substance at time of
entry; and (3) INA §§ 241(a)(1)(A) and 212(a)(6)(B)(i), based on
his being excludable at time of entry as an alien who seeks
admission within twenty years of the date of a prior deportation.

In May of 1992, Mr. Garza-Pacheco's counsel filed a motion
to reopen the 1987 proceedings.  On April 9, 1993, the IJ denied
the motion, and ordered Mr. Garza-Pacheco deported based upon the
charges set forth in the August 26, 1991 Order to Show Cause.  On

9

895

April 13, 1993, Mr. Garza-Pacheco appealed the IJ's decision.
The appeal is currently pending before the Board.

I.

### THE MAGISTRATE JUDGE LACKED JURISDICTION TO ORDER PRELIMINARY INJUNCTIVE RELIEF IN THIS CASE

A district court judge may "designate a magistrate to hear
and determine any pretrial matter pending before the court." 28
U.S.C. § 636(b)(1)(A). However, when a magistrate judge has been
so designated, his authority does not extend to deciding motions
for injunctive relief, (id), unless the parties have consented to
have the magistrate judge conduct any or all proceedings and to
order the entry of judgment in the case, 28 U.S.C. § 636(c)(1).
Section 636(c)(2) requires the clerk of the district court to
notify the parties of the availability of a magistrate judge to
exercise jurisdiction over the case. After the parties have
given their writing consent, a magistrate judge may be designated
who will then be empowered to "conduct any or all proceedings in
a jury or nonjury civil matter and order the entry of judgment in
the case." 8 U.S.C. § 636(c)(1); see also Federal Local Court
Rules 15, United States District Court for the Southern District
of Texas at 11.

In the present case, the Magistrate Judge exceeded his
authority in issuing an order granting injunctive relief.
Neither plaintiffs nor defendants have consented to have this
civil case decided by a magistrate judge, 8 U.S.C. § 636(c), thus
the mandatory requirements set forth in 8 U.S.C. § 636(c)(1) and

10

896

(2) have not been meet in this case.  Therefore, the Magistrate
Judge in the case <u>sub judice</u> was, at most, only empowered to make
recommendations and submit a report for the Court's ultimate
decision.  8 U.S.C. § 636(b)(1).  Consequently, the Order issued
by the Magistrate Judge in this case on June 12, 1995, although
styled and referred to as an "Order Granting Request for
Preliminary Relief," must be regarded as a Report and
Recommendation, rather than an order of the this Court.

II.

### MR. GARZA-PACHECO'S DISPUTE WAS NOT PROPERLY BEFORE THE MAGISTRATE JUDGE IN THIS ACTION

Rule 10(a) of the Federal Rules of Civil Procedure provides,
<u>inter alia</u>, that "[i]n the complaint, the title of the action
shall include the names of all the parties . . . ."  As stated by
the defendants during the April 26, 1995 hearing before the
Magistrate Judge, Mr. Garza-Pacheco has not been named as a
plaintiff or party, nor is he a member of the class as defined by
plaintiffs.  As discussed above, the facts of Mr. Garza-Pacheco's
case and the events which led to his current deportation
proceedings and to the confiscation of his green card are not in
any way similar to those facts present in the cases of the named
plaintiffs, Gracia-Cantu and Lopez-Lozano, whom plaintiffs hold
out as being fair and adequate persons to protect the interests
of the class.  (<u>See</u> Plaintiffs' Second Amended Complaint at 12
(paragraph 39).)  The named plaintiffs, unlike Mr. Garza-Pacheco,
are LPRs who have not undergone deportation proceedings wherein
their LPR status was terminated.  Specifically, Mr. Gracia-Cantu

11

897

is awaiting his deportation hearing before an IJ, as was Mr. Lopez-Lozano until he was granted a waiver of inadmissibility by an IJ on February 24, 1995. Therefore, unlike Mr. Garza-Pacheco, they have not had their LPR status terminated and are still LPRs unless or until that status is terminated in their deportation proceedings.

Additionally, neither Mr. Gracia-Cantu or Mr. Lopez-Lozano has had an order of deportation entered in his case. Nor have they been deported and subsequently returned to the United States without authorization, as did Mr. Garza-Pacheco, while still holding his green card as if he were legally authorized to carry it. Most importantly, because their deportation proceedings have not been conducted or concluded their LPR status is still intact and is only being questioned. By contrast, Mr. Garza-Pacheco's LPR status has been terminated and he, unlike the plaintiffs identified as having claims typical of the class, is now seeking to have his status restored.

Clearly, Mr. Garza-Pacheco cannot reasonably be held out as a member of the class as it is currently defined. Resultantly, the relief sought must be requested and granted, if at all, through an independent action brought on behalf of Mr. Garza-Pacheco. However, no case has been commenced with respect to Mr. Garza-Pacheco. Thus, this Court lacks jurisdiction to consider any requests for relief on behalf of Mr. Garza-Pacheco. See National Commodity and Barter Ass'n v. Gibbs, 886 F.2d 1240, 1245 (10th Cir. 1989).

12

898

Additionally, Mr. Garza-Pacheco's LPR status was terminated when the IJ's order of deportation became administratively final as a result of Mr. Garza-Pacheco's failure to appeal the IJ's decision to the Board.  <u>Matter of Lok</u>, 18 I&N Dec. 101 (BIA 1981); <u>Rivera v. INS</u>, 810 F.2d 540 (5th Cir. 1987). Subsequently, Mr. Garza-Pacheco was deported from the United States, thus rendering this Court without jurisdiction to review the propriety of the 1987 deportation order.  8 U.S.C. § 1105a(c).

Title 8 U.S.C. § 1105a(c) provides that "an order of deportation or of exclusion shall <u>not</u> be reviewed by any court if the alien ... has departed from the United States after the issuance of the order."  (Emphasis added.)  The United States Court of Appeals for the Fifth Circuit has interpreted this provision as unequivocal, and has held that no court may review a deportation or exclusion order once the deportation has occurred, regardless of alleged errors in the deportation process.  <u>Quezada v. INS</u>, 898 F.2d 474, 476-77 (5th Cir. 1990); <u>Cipriano v. INS</u>, 24 F.3rd 763 (5th Cir. 1994); <u>Umanzor v. Lambert</u>, 782 F.2d 1299 (5th Cir. 1986).  Therefore, even if a separate suit is brought on behalf of Mr. Garza-Pacheco, this Court would lack jurisdiction to review the propriety of the 1987 order of deportation.

13

899

III.

## THE MAGISTRATE JUDGE ERRED IN RECOMMENDING THAT THIS COURT ORDER DEFENDANTS TO GRANT WORK AUTHORIZATION TO MR. GARZA-PACHECO

Under the INA, the Attorney General of the United States is charged with the administration and enforcement of laws relating to immigration, and has been given the authority to promulgate regulations necessary to carry out this charge.   INA § 102, 8 U.S.C. § 1103.   On December 5, 1994, the Attorney General exercised her authority to administer and enforce the INA by eliminating 8 C.F.R. § 274a.12(c)(13) -- the regulation which allowed aliens who were in deportation proceedings to apply for work authorization.   (Code of Federal Regulations, Title 8, at 484, Effective Date Note 2 to 8 C.F.R. 274a.12 (Rev. as of January 1, 1995 - Attachment (2).)   This regulation became effective on September 20, 1994.

Thereafter, through  8 C.F.R. § 274a.12(a), the Attorney General specifically described twelve classes of aliens who are authorized to received work authorization.   Nowhere in this regulation does the Attorney General make provisions to include those aliens who present the factual predicate demonstrated by Mr. Garza-Pacheco.

Plaintiffs themselves admit that, through 8 C.F.R. § 274a.12(a), the Attorney General has prescribed classes of aliens who may be authorized to obtain work authorization, (see Magistrate Order of June 12 at 5-6 paragraphs 5-9), and that there is "no statutory or regulatory limitation on the authority

14

900

of the Attorney General . . . to grant employment authorization to other aliens, under such conditions, and for such reasons, as the Attorney General may deem appropriate." (*Id*. at 5 paragraph 4.)  Despite their recognition of the scope of authority the Attorney General has in regard to promulgating regulations that she deems appropriate to carry out her responsibilities under the INA, plaintiffs fail to acknowledge that it is through 8 C.F.R. § 274a.12 that the Attorney General has exercised her authority and thereby limited her agents authority to grant work authorization to only those classes of aliens that she specifically described in 8 C.F.R. § 274a.12(a).

Even a cursory reading of 8 C.F.R. § 274a.12(a) reveals that Mr. Garza-Pacheco is not among the twelve classes of aliens whom the Attorney General has exercised her discretion to provide authorization to work.  Thus, plaintiffs' attack on the denial of a work authorization for Mr. Garza-Pacheco must be construed as an attack on the Attorney General's statutory authority to limit work authorization to those aliens she has specifically described in 8 C.F.R. § 274a.12(a), as well as an attack on the constitutionality of that regulation.  That statement is based on the Magistrate Judge's verbatim adoption of plaintiffs' finding of facts and conclusions of law.  Specifically, as a conclusion of law, the Magistrate Judge stated:

> It would constitute a violation of the Equal
> Protection Clause of the Fourteenth
> Amendment, as applied through the Due Process
> Clause of the Fifth Amendment of the United
> States Constitution, to authorize employment
> to the above categories [set forth in 8

15

901

> C.F.R. § 274a.12(a)] of aliens, but not to a
> person who has lived in this country as a
> permanent resident for many years . . . .

(Id. at 6-7 paragraph 10.)   Soaring in the forefront of this

conclusion of law is a constitutional question which, if adopted

by this Court, would cause the Court to decided a matter not

properly before it.   Additionally, such a conclusion of law will

have been reached by this Court without as much as giving any

consideration to whether the regulation is in fact valid.[3]   In

order for the Court to invalidate the Attorney General's

regulation, it would have to find that the distinction between

classes of aliens is "wholly irrational."   See e.g. Matthew v.

Diaz, 426 U.S. 67 (1976); Fiallo v. Bell, 430 U.S. 787 (1977).

Consequently, the INS District Director's denial of

Mr. Garza-Pacheco's request for work authorization was not only

proper, but was required by the Attorney General who exercised

her discretion as empowered by Congress in issuing the regulation

which mandated the District Director's action.   Plaintiffs'

attack upon the District Director is therefore misplaced.   The

District Director was simply carrying out the regulations of the

Attorney General as he is required to do.

Finally, even if this Court determines that Mr. Garza-

Pacheco is a member of the defined class and therefore a separate

---

[3]   The United States Supreme Court has upheld the Attorney
General's regulations promulgated to carry out her responsibility
under the INA when the regulation is "consistent with the
established concern of immigration law to preserve jobs for
American workers."   United States v. Witkovich, 353 U.S. 194
(1957).

16

902

law suit is not required, the Court should still deny the
preliminary injunctive relief requested.  Mr. Garza-Pacheco is
currently an alien who possesses no lawful immigration status in
this country, and who is asking the Board to reinstate the lawful
permanent resident status which he lost in 1987.  Since there are
no other provisions in the regulations which allow an
undocumented alien in Mr. Garza-Pacheco's circumstances to obtain
work authorization, an order granting plaintiffs' request to
compel defendants to grant work authorization would be contrary
to pertinent and unchallenged regulations.  Further, contrary to
conclusion of law made by the Magistrate Judge in his Order of
June 12, 1995, no courts have held to date that an undocumented
alien under Mr. Garza-Pacheco's circumstances has a due process
right to obtain work authorization in the United States.  (See
Order at 6-7.)

IV.

PLAINTIFFS' FAILURE TO FILE A MOTION
REQUESTING INJUNCTIVE RELIEF DEPRIVES THE
COURT OF JURISDICTION TO DECIDE THIS MATTER

The Magistrate Judge erred in recommending that this Court
grant plaintiffs' request for preliminary relief because
plaintiffs' failure to comply with Fed. R. Civ. P. 6, which
provides:

> An application to the court for an order
> shall be by motion which, unless made during
> a hearing or trial, shall be made in writing,
> shall state with particularity the grounds
> therefor, and shall set forth the relief or
> order sought.  The requirement of writing is
> fulfilled if the motion is stated in a

17

903

CibPDF - www.fenlio.com

written notice of the hearing of the motion.
In the present case, plaintiffs' request for preliminary
injunctive relief was made at neither a hearing or a trial.
Although styled as an order granting "Preliminary Relief," it
seems clear that plaintiffs' request is one for a preliminary
injunction.  Even if this Court deems the April 26, 1995 status
conference to be the same as a hearing, the Court still must
reject the Magistrate Judge's recommendation because plaintiffs
have not once asserted or even attempted to demonstrate how their
case meets the four prong test for granting preliminary
injunctive relief.  The United States Court of Appeals for the
Fifth Circuit requires a district court to determine on a motion
for a preliminary injunction: (1) whether the movant has a
substantial likelihood of success on the merits; (2) whether the
movant will suffer irreparable injury if the preliminary
injunction is not granted; (3) whether that harm outweighs the
harm to the opposing party if the preliminary injunction is
granted; and (4) whether the preliminary injunction is in the
public interest.  Hull v. Quitman County Bd. of Educ., 1 F.3d
1450 (5th Cir. 1993); Sierra Club, Lone Star Chapter v. FDIC, 992
F.2d 545 (5th Cir. 1993).  The movant is also required to carry
the burden of proof on each factor.  Doe v. Duncanville Ind. Sch.
Dist., 994 F.2d 160 (5th Cir. 1993); Roho, Inc. v. Marquis, 902
F.2d 356 (5th Cir. 1990).

904

As to the first factor, plaintiffs fail to show that
Mr. Garza-Pacheco has a substantial likelihood of success of
winning his motion to reopen before the Board.  Likewise,
plaintiffs have failed to meet their burden on each of the other
three prongs of the test for preliminary injunction.  They have
failed to demonstrate: that Mr. Garza-Pacheco will suffer
irreparable injury if the preliminary injunction is not granted;
that any harm to Mr. Garza-Pacheco outweighs the harm to the
defendants if the preliminary injunction is granted; and that the
preliminary injunction is in the public interest.  To the
contrary, it is clear that a decision granting Mr. Garza-Pacheco
work authorization would harm the efficiency of the Immigration
and Naturalization Service and would not be in the public
interest.  It would provide a nationwide signal that any
undocumented aliens, regardless of the Attorney General's
regulations and the alien's criminal record, will be allowed to
work in the United States, as long as their motions or appeals
from the orders of deportation in their cases remain pending.
Because plaintiffs have not submitted a motion at all so as to
properly raise constitutional or statutory challenges to 8 C.F.R.
§ 274a.12(a), this Court's adopting of the Magistrate Judge's
conclusion of law in this regard would cause the Court to reach
an issue not properly before it, and rule in opposition with well
established case law.

19

905

## V.

### OBJECTIONS TO THE FINDINGS OF FACT AND
### CONCLUSIONS OF LAW CONTAINED IN THE
### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendants object to the Magistrate Judge's first finding of fact. The July 15, 1994 motion for preliminary injunction was not submitted on behalf of Mr. Garza-Pacheco. In fact, plaintiffs did not mention that Mr. Garza-Pacheco may be a member of the class until long after submission of their July 15, 1994 motion for injunctive relief. (See Plaintiffs' Letter of February 15, 1995 - (Attachment (1)); Plaintiffs' Letter of March 17, 1995 and Advisal of Due Dates for Answering the Instant Complaint - (Attachment (4)).) Although plaintiffs now claim to be sure and certain that Mr. Garza-Pacheco is in fact a member of the putative class, and suggest in their first finding of fact that he was considered as such during the filing of their July 15, 1994 motion for preliminary injunction, their reassurance and certainty obviously did not become manifest until some point after plaintiffs forwarded the defendants their Advisal of Due Dates attached to their letter of March 15, 1995. (See Attachment (1) and (4) at 3.) Plaintiffs uncertainty can be seen in their statement that,

> Plaintiffs have made several suggestions as
> to means by which he [Mr. Garza-Pacheco]
> could be provided with such a document [work
> authorization], while still taking into
> consideration the <u>concerns of Plaintiffs</u>,
> which arise from the fact that his case is,
> admittedly, a procedural nightmare, and <u>his
> [Mr. Garza-Pacheco] status as a member of the
> putative class herein is in question</u>.

20



(Attachment (4) at (3)) (emphasis added.)  That statement
demonstrates that some eight months after plaintiffs filed their
motion for a preliminary injunction that it was not filed with
Mr. Garza-Pacheco in mind, or with him included as an unnamed
member of the class.  Moreover, the issues plaintiffs raise in
the July 15, 1995 motion for a preliminary injunction have no
bearing on Mr. Garza-Pacheco.  Therefore, defendants object to
the first recommended finding of fact, and request the Court to
reject it entirely.

     Defendants also object to the fourth recommended finding of
fact.  As stated in Defendants' Opposition to Plaintiffs' Motion
for Default Judgment, plaintiffs did more than merely not present
"serious opposition" to the delays that have clearly occurred in
this case.  Plaintiffs acquiesced in and were a party to the
delays.  Additionally, the circumstances surrounding the
resignation of defendants' prior counsel is of no moment in the
resolution of this case.  As such that recommended finding should
be rejected because it does nothing more than to muddy the
record, and place before the Court irrelevant facts not in issue.

     Defendants also object to the fifth recommended finding of
fact because it fails to accurately set forth defendants'
assertions.  During the April 26, 1995 status conference,
defendants did not nor are they now disavowing the prior proposed
settlement negotiations.  Defendants advised the Magistrate Judge
that they discontinued settlement negotiations because plaintiffs
repeatedly demonstrated that any disagreement as to the

21

907

settlement terms would result in plaintiffs threatening the
defendants with a motion for default judgment, as evident by the
very fact that defendants were at that moment defending against
such a motion.  (See Defendants' Opposition to Plaintiffs' Motion
for Default Judgment.)  Defendants stated further that they could
not, and would not continue settlement negotiations under such
terms, and could only continue if they were on a level playing
field with plaintiffs.  Defendants asserted that this could be
achieved only through answering all of the pleadings filed by
plaintiffs, which had not been answered by prior defendants'
counsel due to an informal agreement with plaintiffs' counsel.
(See Id.)  To enter into negotiations prior to answering
plaintiffs' pleadings, which defendants had done before the
status conference, would inhibit the ability to zealously protect
the defendants' rights and interests.

     Additionally, defendants' counsel stated that before she
could determine which issue should be settled that time would be
needed to conclude her investigation.  However, based on a review
of the law, defendants' counsel advised the Magistrate Judge that
there were no substantial disputes as to material facts and that
the case could be resolved as a matter of law.  If however, the
case was not resolved through the filing of appropriate motions,
the defendants' counsel stated that at that time she would review
the case for settlement of appropriate issues.  Based thereon,
defendant request the Court to reject the fifth recommended
finding of fact.

908

Defendants further object to the eighth recommended finding of fact in light of its inaccuracy and immateriality. Upon questioning by the Magistrate Judge, defendants' counsel stated that temporary relief could and would be provided to Mrs. Juana Ascencio-Guzman and her husband Efrain Merino. However, defendants' counsel advised the Magistrate that the defendants did not have the authority to provide the relief requested for Mr. Garza-Pacheco.

Thus, contrary to plaintiffs' assertion, defendants agreed through their counsel to provide Mrs. Ascencio-Guzman and her husband the requested relief on April 26, 1995, as opposed to May 2, 1995. Clearly, neither the date in which defendants granted temporary relief to Mrs. Ascencio-Guzman and her husband, nor the fact that such relief was granted, is material and relevant to the issues before the Court. Therefore, defendants request this Court to reject this finding of fact, or to modify it so as to accurately reflect the date in question if the Court finds it is relevant and material.

Additionally, defendants object to paragraph nine. In footnote two of that paragraph, the Magistrate Judge recommended that the Court find as fact that defendants agreed at the April 26, 1995 Status Conference that there were no material facts in dispute with respect to Mr. Garza-Pacheco, and based thereon set forth a litany of facts as to Mr. Garza-Pacheco. This recommended factual finding should be rejected because of its inaccuracy. Although the recommendation accurately note that

23



the defendants advised the Magistrate Judge that there were no
material facts in dispute, it fails to mention that the
defendants also stated that this case could be resolved as a
matter of law.  Nor does it note that defendants advised the
Magistrate Judge at the Status Conference that Mr. Garza-Pacheco
was neither a named plaintiff nor a member of the defined class.
These circumstances are crucial and must be considered.  They
demonstrate that defendants could obviously not have intended
their statement that there were no material facts in dispute to
include Mr. Garza-Pacheco's case.  Since Mr. Garza-Pacheco is not
a named plaintiff, nor a class member, the facts regarding his
situation are simply immaterial.  That does not mean that the
facts in his case are undisputed.

In the unlikely event the Court finds that Mr. Garza-Pacheco
is a member of the class, the defendants request that the Court's
finding of facts be rendered consistently with those facts set
forth in Attachment 3.

Finally, defendants do not object to the Magistrate Judge's
conclusions of law with the exception of the tenth paragraph.
Based on the reasons set forth supra, defendants request the
Court to reject paragraph ten.

24

## CONCLUSION

For the reasons stated above, the defendants pray that the Court will reject the Magistrate Judge's Report and Recommendation, and deny the preliminary relief sought.

Respectfully submitted,

GAYNELLE GRIFFIN JONES
UNITED STATES ATTORNEY

FOR REGINA BYRD          w/ permission
MARK C. WALTERS
Assistant Deputy Director
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
Post Office Box 878
Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 616-4860

Of Counsel:
KENNETH M. MUIR
General Attorney
Immigration and Naturalization
Service
U.S. Department of Justice
P.O. Box 1711
Harlingen, TX  78551

Attorneys for Defendants

Dated: June 22, 1995.

911

# A T T A C H M E N T    #1

9/2

CibPDF - www.fxoio.com

RECEIVED

**LAW OFFICES OF LISA BRODYAGA**
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226
February 17, 1995

95 FEB 17 AM 10: 4

HARLINGEN TEXA

Immigration and Naturalization Service
2102 Teege
Harlingen, Texas 78550

Re:  Jesus Garza-Pacheco
     A31 298 296
Attn:  Deportations

Gentlepersons:

Enclosed please find an I-765 on behalf of Jesus Garza-Pacheco, and
the earlier correspondence in the case, which was returned, pending
receipt of a copy of Mr. Garza's A-file from El Paso.  I have been
informed that Mr. Carte, SAUSA, has now received said copy.

As I stated earlier, the instant case is a procedural nightmare.
We are still claiming that Mr. Garza-Pacheco is a lawful permanent
resident, although INS, (naturally, disputes this claim).  His
appeal is still pending at the BIA from the denial of his
application for Section 212(c) relief, coupled with a retroactive
waiver under Section 241(a)(1)(H) of the Act, c.f., <u>Matter of Sosa-Hernandez</u>, I.D.3214 (BIA 1993).

Now that Mr. Carte has a copy of the file, you can confirm our
assertion that on August 27, 1992, an Immigration Judge in El Paso,
Texas granted Mr. Garza-Pacheco's motion to reopen the proceedings
which had resulted in Mr. Garza-Pacheco being improperly deported
on or about October 28, 1987, in order to permit him to apply for
relief from deportation pursuant to Section 212(c) of the Act.  We
based our motion on cases such as <u>Matter of Yih-Hsiung Want</u>, 17 I&N
Dec. 565 (BIA 1980) (an alien can challenge even a fully executed
order of deportation, if it was accomplished in violation of law,
and if he had no prior opportunity to raise the issues which are
the basis of his challenge).

As you will note from the transcript of the August 27, 1992
hearing, (page 12), not only did the Judge reopen the prior
deportation proceedings, but INS waived appeal from this Order.
INS later retracted this waiver, and the Judge purported to retract
his decision to reopen proceedings, which makes the case an ever
greater procedural nightmare.  In fact, we had to fight even to get

9/3

the proceedings transcribed, and included in the record, wherein
the Judge granted our motion to reopen!

We would assert that Mr. Garza-Pacheco is a member of the class in
Herrera et al v. Trominski, CA B-94-215, currently pending in
United States District Court, in Brownsville, Texas.   However,
given the controversy regarding his status, and other factors, we
would be satisfied if INS were to renew his EAD, rather than issue
a temporary I-551.  If that is not possible, we will have no option
but to insist upon a temporary I-551, and, if necessary, pursue the
matter through the Herrera case.

We have modified the I-765, which is attached hereto, to reflect
the fact that subsection (c)(13) no longer provides a basis for
issuing an EAD.   Since there is no longer any legal basis for a
"fee-paid" application, but only for the issuance of a document, be
it an EAD, or a temporary I-551, based on his claim to lawful
permanent resident status, no check is enclosed.

We look forward to prompt resolution of the instant matter.

Thank you for your consideration.

Sincerely,

Lisa S. Brodyaga
Attorney at Law

cc:  John Carte, SAUSA

2

914

# A T T A C H M E N T   #2

915

☑ 005

(i) The size of the business of the employer being charged;

(ii) The good faith of the employer;

(iii) The seriousness of the violation;

(iv) Whether or not the individual was an unauthorized alien; and

(v) The history of previous violations of the employer.

(3) Where an order is issued with respect to a respondent composed of distinct, physically separate subdivisions which do their own hiring, or their own recruiting or referring for a fee for employment (without reference to the practices of, and under the control of, or common control with another subdivision) the subdivision shall be considered a separate person or entity.

(c) *Enjoining pattern or practice violations.* If the Attorney General has reasonable cause to believe that a person or entity is engaged in a pattern or practice of employment, recruitment or referral in violation of section 274A(a)(1)(A) or (2) of the Act, the Attorney General may bring civil action in the appropriate United States District Court requesting relief, including a permanent or temporary injunction, restraining order, or other order against the person or entity, as the Attorney General deems necessary.

[52 FR 16221, May 1, 1987, as amended at 55 FR 25935, June 23, 1990; 56 FR 41786, Aug. 23, 1991]

**§ 274a.11  [Reserved]**

## Subpart B—Employment Authorization

**§ 274a.12  Classes of aliens authorized to accept employment.**

(a) *Aliens authorized employment incident to status.* Pursuant to the statutory or regulatory reference cited, the following classes of aliens are authorized to be employed in the United States without restrictions as to location or type of employment as a condition of their admission or subsequent change to one of the indicated classes. Any alien who is within a class of aliens described in paragraphs (a)(3) through (a)(8) or (a)(10) through (a)(13) of this section, and who seeks to be employed in the United States, must apply to the Service for a document ev-

idencing such employment autho... tion.

(1) An alien who is a lawful per... nent resident (with or without c... tions pursuant to section 216 of Act), as evidenced by Form I-15... Form I-551 issued by the Service. expiration date on the Form I-551 flects only that the card must be newed, not that the individual's ... authorization has expired;

(2) An alien admitted to the U... States as a lawful temporary res... pursuant to sections 245A or 210 of Act, as evidenced by an employ... authorization document issued by Service;

(3) An alien admitted to the U... States as a refugee pursuant to ... 207 of the Act for the period of ti... that status, as evidenced by an ... ment authorization document ... by the Service;

(4) An alien paroled into the U... States as a refugee for the perio... time in that status, as evidenced by employment authorization docum... issued by the Service;

(5) An alien granted asylum ... section 208 of the Act for the peri... time in that status, as evidenced by employment authorization docum... issued by the Service;

(6) An alien admitted to the U... States as a nonimmigrant fiance fiancee pursuant to secti... 101(a)(15)(K) of the Act, or an alien mitted as the child of such alien, the period of admission of the Uni... States, as evidenced by an employ... authorization document issued by Service;

(7) An alien admitted as a parent (N-8) or dependent child (N-9) of an al... granted permanent residence ... section 101(a)(27)(I) of the Act, as e... denced by an employment author... tion document issued by the Service;

(8) An alien admitted to the Uni... States as a citizen of the Feder... States of Micronesia (CFA/FSM) or the Marshall Islands (CFA/MIS) pur... ant to agreements between the Uni... States and the former trust territor... as evidenced by an employment ... thorization document issued by ... Service;

(9)  [Reserved]

458

CMsPDF – www.fesio.com

idencing such employment authoriza-
tion.

(1) An alien who is a lawful perma-
nent resident (with or without condi-
tions pursuant to section 216 of the
Act), as evidenced by Form I-151 or
Form I-551 issued by the Service. An
expiration date on the Form I-551 re-
flects only that the card must be re-
newed, not that the individual's work
authorization has expired;

(2) An alien admitted to the United
States as a lawful temporary resident
pursuant to sections 245A or 210 of the
Act, as evidenced by an employment
authorization document issued by the
Service;

(3) An alien admitted to the United
States as a refugee pursuant to section
207 of the Act for the period of time in
that status, as evidenced by an employ-
ment authorization document issued
by the Service;

(4) An alien paroled into the United
States as a refugee for the period of
time in that status, as evidenced by an
employment authorization document
issued by the Service;

(5) An alien granted asylum under
section 208 of the Act for the period of
time in that status, as evidenced by an
employment authorization document
issued by the Service;

(6) An alien admitted to the United
States as a nonimmigrant fiance or
fiancee pursuant to section
101(a)(15)(K) of the Act, or an alien ad-
mitted as the child of such alien, for
the period of admission of the United
States, as evidenced by an employment
authorization document issued by the
Service;

(7) An alien admitted as a parent (N-
5) or dependent child (N-9) of an alien
granted permanent residence under
section 101(a)(27)(I) of the Act, as evi-
denced by an employment authoriza-
tion document issued by the Service;

(8) An alien admitted to the United
States as a citizen of the Federated
States of Micronesia (CFA/FSM) or of
the Marshall Islands (CFA/MIS) pursu-
ant to agreements between the United
States and the former trust territories,
as evidenced by an employment au-
thorization document issued by the
Service;

(9) [Reserved]

(10) An alien granted withholding of
deportation under section 243(h) of the
Act for the period of time in that sta-
tus, as evidenced by an employment
authorization document issued by the
Service; or

(11) An alien who has been granted
extended voluntary departure by the
Attorney General as a member of a na-
tionality group pursuant to a request
by the Secretary of State. Employment
is authorized for the period of time in
that status as evidenced by an employ-
ment authorization document issued
by the Service;

(12) An alien granted Temporary Pro-
tected Status under section 244A of the
Act for the period of time in that sta-
tus, as evidenced by an employment
authorization document issued by the
Service; or

(13) An alien granted voluntary de-
parture by the Attorney General under
the Family Unity Program established
by section 301 of the Immigration Act
of 1990, as evidenced by an employment
authorization document issued by the
Service.

(b) *Aliens authorized for employment
with a specific employer incident to sta-
tus.* The following classes of non-
immigrant aliens are authorized to be
employed in the United States by the
specific employer and subject to the re-
strictions described in the section(s) of
this chapter indicated as a condition of
their admission in, or subsequent
change to, such classification. An alien
in one of these classes is not issued an
employment authorization document
by the Service:

(1) A foreign government official (A-
1 or A-3), pursuant to §214.2(a) of this
chapter. An alien in this status may be
employed only by the foreign govern-
ment entity;

(2) An employee of a foreign govern-
ment official (A-3), pursuant to
§214.2(a) of this chapter. An alien in
this status may be employed only by
the foreign government official;

(3) A foreign government official in
transit (C-2 or C-3), pursuant to
§214.2(c) of this chapter. An alien in
this status may be employed only by
the foreign government entity;

(4) [Reserved]

(5) A nonimmigrant treaty trader (E-
1) or treaty investor (E-2), pursuant to

§214.2(e) of this chapter. An alien in
this status may be employed only by
the treaty-qualifying company through
which the alien attained the status.
Employment authorization does not
extend to the dependents of the prin-
cipal treaty trader or treaty investor
(also designated "E-1" or "E-3"), other
than those specified in paragraph (c)(2)
of this section;

(6) A nonimmigrant (F-1) student
who is in valid nonimmigrant student
status and pursuant to 8 CFR 214.2(f) is
seeking:

(i) On-campus employment for not
more than twenty hours per week when
school is in session or full-time em-
ployment when school is not in session
if the student intends and is eligible to
register for the next term or session.
Part-time on-campus employment is
authorized by the school and no speci-
cific endorsement by a school official
or Service officer is necessary;

(ii) Part-time off-campus employ-
ment authorization based on an ap-
proved attestation from the employer
pursuant to 8 CFR 214.2(f) and who pre-
sents an I-20 ID endorsed by the des-
ignated school official; or

(iii) Curricular practical training (in-
ternships, cooperative training pro-
grams, or work-study programs which
are part of an established curriculum)
after having been enrolled full-time in
a Service-approved institution for at
least nine months. Curricular practical
training (part-time or full-time) is au-
thorized by the Designated School Offi-
cial on the student's I-20 ID; no Service
endorsement is necessary.

(7) A representative of an inter-
national organization (G-1, G-2, G-3, or
G-4), pursuant to §214.2(g) of this chap-
ter. An alien in this status may be em-
ployed only by the foreign government
entity or the international organiza-
tion;

(8) A personal employee of an official
or representative of an international
organization (G-5), pursuant to
§214.2(g) of this chapter. An alien in
this status may be employed only by
the official or representative of the
international organization;

(9) A temporary worker or trainee
(H-1, H-2A, H-2B, or H-3), pursuant to
§214.2(h) of this chapter. An alien in
this status may be employed only by

459

the petitioner through whom the status was obtained;

(10) An information media representative (I), pursuant to §214.2(i) of this chapter. An alien in this status may be employed only for the sponsoring foreign news agency or bureau. Employment authorization does not extend to the dependents of an information media representative (also designated "I");

(11) An exchange visitor (J-1), pursuant to §214.2(j) of this chapter and 22 CFR 514.24. An alien in this status may be employed only by the exchange visitor program sponsor or appropriate designee and within the guidelines of the program approved by the United States Information Agency as set forth in the Certificate of Eligibility (Form IAP-66) issued by the program sponsor;

(12) An intra-company transferee (L-1), pursuant to §214.2(l) of this chapter. An alien in this status may be employed only by the petitioner through whom the status was obtained;

(13) An alien having extraordinary ability in the sciences, arts, education, business, or athletics (O-1), and an accompanying alien (O-2), pursuant to §214.2(o) of this chapter. An alien in this status may be employed only by the petitioner through whom the status was obtained;

(14) An athlete, artist or entertainer (P-1, P-2 or P-3), pursuant to §214.2(p) of this chapter. An alien in this status may be employed only by the petitioner through whom the status was obtained;

(15) An international cultural exchange visitor (Q), pursuant to §214.2(q) of this chapter. An alien in this status may only be employed by the petitioner through whom the status was obtained;

(16) An alien having a religious occupation, pursuant to §214.2(r) of this chapter. An alien in this status may be employed only by the religious organization through whom the status was obtained;

(17) Officers and personnel of the armed services of nations of the North Atlantic Treaty Organization, and representatives, officials, and staff employees of NATO (NATO-1, NATO-2, NATO-3, NATO-4, NATO-5 and NATO-6), pursuant to §214.2(o) of this chapter.

An alien in this status may be employed only by NATO;

(18) An attendant, servant or personal employee (NATO-7) of an alien admitted as a NATO-1, NATO-2, NATO-3, NATO-4, NATO-5, or NATO-6, pursuant to §214.2(o) of this chapter. An alien admitted under this classification may be employed only by the NATO alien through whom the status was obtained;

(19) A nonimmigrant pursuant to section 214(e) of the Act. An alien in this status must be engaged in business activities at a professional level in accordance with the provisions of Chapter 16 of the North American Free Trade Agreement (NAFTA); or

(20) A nonimmigrant alien within the class of aliens described in paragraphs (b)(2), (b)(5), (b)(8), (b)(9), (b)(10), (b)(11), (b)(12), (b)(13), (b)(14), (b)(16), and (b)(19) of this section whose status has expired but who has filed a timely application for an extension of such stay pursuant to §§214.2 or 214.6 of this chapter. These aliens are authorized to continue employment with the same employer for a period not to exceed 240 days beginning on the date of the expiration of the authorized period of stay. Such authorization shall be subject to any conditions and limitations noted on the initial authorization. However, if the district director or service center director adjudicates the application prior to the expiration of this 240 day period and denies the application for extension of stay, the employment authorization under this paragraph shall automatically terminate upon notification of the denial decision.

(c) *Aliens who must apply for employment authorization.* An alien within a class of aliens described in this section must apply for work authorization. If authorized, such an alien may accept employment subject to any restrictions stated in the regulations or cited on the employment authorization document:

(1) An alien spouse or unmarried dependent child; son or daughter of a foreign government official (A-1 or A-2) pursuant to §214.2(a)(2) of this chapter and who presents a fully executed Form I-566 bearing the endorsement of an authorized representative of the Department of State;

Case 1:94-cv-00215  Document 46  Filed in TXSD on 06/22/1995  Page 32 of 50

908

@006
CIVIL Division    05/30/95 THU 15:55 FAX 202 616 4850
06/22/95 THU 12:31 FAX 202 616 9777

in this status may be em-
by NATO:

attendant, servant or per-
son (NATO-7) of an alien
as a NATO-1, NATO-2,
ATO-4, NATO-5, or NATO-6,
to §214.2(c) of this chapter,
admitted under this classi-
be employed only by the
through whom the status

pursuant to sec-
of the Act. An alien in this
be engaged in business ac-
a professional level in ac-
with the provisions of Chap-
the North American Free
(NAFTA); or

alien within the
described in paragraphs
(b)(9), (b)(9), (b)(10), (b)(11),
(13), (b)(14), (b)(16), and (b)(19)
whose status has expired
has filed a timely application
of such stay pursuant
or 214.6 of this chapter. These
authorized to continue em-
with the same employer for a
to exceed 240 days beginning
te of the expiration of the au-
period of stay. Such author-
hall be subject to any condi-
limitations noted on the au-
orization. However, if the dis-
ctor or service center director
es the application prior to the
n of this 240 day period and
e application for extension of
employment authorization
is paragraph shall automati-
minate upon notification of
decision.

who must apply for employ-
orization. An alien within a
lens described in this section
y for work authorization. If
such an alien may accept
nt subject to any restrictions
the regulations or cited as
yment authorization docu-

ien spouse or unmarried de-
ild; son or daughter of a for-
nment official (A-1 or A-2)
§214.2(a)(2) of this chapter
presents a fully executed
bearing the endorsement of
d representative of the De-
State;

(2) An alien spouse or unmarried de-
pendent son or daughter of an alien
employee of the Coordination Council
for North American Affairs (E-1) pursu-
ant to §214.2(e) of this chapter;

(3) A nonimmigrant (F-1) student
who:

(i) Is seeking employment for pur-
poses of optional practical training
pursuant to 8 CFR 214.2(f), provided the
alien will be employed only in an occu-
pation which is directly related to his
or her area of studies and that he or
she presents an I-20 ID endorsed by the
designated school official;

(ii) Has been offered employment
under the sponsorship of an inter-
national organization within the mean-
ing of the International Organization
Immunities Act (59 Stat. 669) and who
presents a written certification from
the international organization that the
proposed employment is within the
scope of the organization's sponsorship.
The F-1 student must also present an
I-20 ID endorsed by the DSO in the last
30 days; or

(iii) Is seeking employment because
of severe economic hardship pursuant
to 8 CFR 214.2(f)(9)(ii)(C) and has filed
the Form I-20, Form I-538 and any
other supporting materials such as affi-
davits which further detail the unfore-
seen economic circumstances that re-
quire the student to seek employment
authorization and evidence the fact
that the student has attempted to find
employment under 8 CFR
214.2(f)(9)(ii)(B);

(4) An alien spouse or unmarried de-
pendent child; son or daughter of an of-
ficer or representative to, or employee
of an international organization (G-1,
G-3 or G-4) pursuant to §214.2(g) of this
chapter who presents a fully executed
Form I-566 bearing the endorsement of
an authorized representative of the De-
partment of State;

(5) An alien spouse or minor child of
an exchange visitor (J-2) pursuant to
§214.2(j) of this chapter:II(5) A non-
immigrant (M-1) student seeking em-
ployment for practical training pursu-
ant to 8 CFR 214.2(m) following comple-
tion of studies. The alien may be em-
ployed only in an occupation or voca-
tion directly related to his or her
course of study as recommended by the

endorsement of the designated school
official on the I-20 ID;

(6) A nonimmigrant (M-1) student
seeking employment for practical
training pursuant to 8 CFR 214.2(m) fol-
lowing completion of studies. The alien
may be employed only in an occupation
or vocation directly related to his or
her course of study as recommended by
the endorsement of the designated
school official on the I-20 ID;

(7) A dependent of an alien classified
as NATO-1 through NATO-7 pursuant
to §214.2(n) of this chapter;

(8) An alien who has filed a non-frivo-
lous application for asylum pursuant
to part 208 of this chapter. Employ-
ment authorization shall be granted in
increments not exceeding one year dur-
ing the period the application is pend-
ing (including any period when an ad-
ministrative appeal or judicial review
is pending) and shall expire on a speci-
fied date;

(9) An alien who has filed an applica-
tion for adjustment of status to lawful
permanent resident pursuant to part
245 of this chapter. Employment au-
thorization shall be granted in incre-
ments not exceeding one year during
the period the application is pending
(including any period when an adminis-
trative appeal or judicial review is
pending) and shall expire on a specified
date;

(10) An alien who has filed an applica-
tion for suspension of deportation pur-
suant to part 244 of this chapter, if the
alien establishes an economic need to
work; if the alien establishes an eco-
nomic need to work. Employment au-
thorization shall be granted in incre-
ments not exceeding one year during
the period the application is pending
(including any period when an adminis-
trative appeal or judicial review is
pending) and shall expire on a specified
date;

(11) An alien paroled into the United
States temporarily for emergent rea-
sons or reasons deemed strictly in the
public interest pursuant to §212.5 of
this chapter;

(12) A deportable alien granted vol-
untary departure, either prior to or
after hearing, for reasons set forth in
§242.5(a)(2)(v), (a)(2)(vi), or (a)(2)(viii) of
this chapter may be granted permis-
sion to be employed for that period of

461

time prior to the date set for voluntary departure including any extension granted beyond such date; if the alien establishes an economic need to work. Factors which may be considered in adjudicating the application for employment authorization of such an alien granted voluntary departure include, but are not limited to, the following:

(i) The length of voluntary departure granted;

(ii) The existence of a dependent spouse and/or children in the United States who rely on the alien for support;

(iii) Whether there is a reasonable chance that legal status may ensue in the near future; and

(iv) Whether there is a reasonable basis for consideration of discretionary relief.

(12) Any non-detained alien against whom exclusion or deportation proceedings have been instituted and who does not have a final order of deportation or exclusion, may be granted employment authorization if the district director determines that employment authorization is appropriate. Factors which may be considered by the district director in adjudicating the application for employment authorization include, but are not limited to, the following:

(i) The existence of economic necessity to be employed;

(ii) The existence of a dependent spouse and/or children in the United States who rely on the alien for support;

(iii) Whether there is a reasonable chance that legal status may ensue in the near future; and

(iv) Whether there is a reasonable basis for consideration of discretionary relief;

(14) An alien who has been granted deferred action, an act of administrative convenience to the government which gives some cases lower priority, if the alien establishes an economic necessity for employment;

(15) [Reserved]

(16) Any alien who has filed an application for creation of record of lawful admission for permanent residence pursuant to part 249 of this chapter. Employment authorization shall be granted in increments not exceeding one year during the period the application is pending (including any period when an administrative appeal or judicial review is pending) and shall expire on a specific date;

(17) A nonimmigrant visitor for business (B-1) who:

(i) Is a personal or domestic servant who is accompanying or following to join an employer who seeks admission into, or is already in, the United States as a nonimmigrant defined under sections 101(a)(15) (B), (E), (F), (H), (I), (J), (L) or section 214(e) of the Act. The personal or domestic servant shall have a residence abroad which he or she has no intention of abandoning and shall demonstrate at least one year's experience as a personal or domestic servant. The nonimmigrant's employer shall demonstrate that the employer-employee relationship has existed for at least one year prior to the employer's admission to the United States; or, if the employer/employee relationship existed for less than one year, that the employer has regularly employed (either year-round or seasonally) personal or domestic servants over a period of several years preceding the employer's admission to the United States;

(ii) Is a domestic servant of a United States citizen accompanying or following to join his or her United States citizen employer who has a permanent home or is stationed in a foreign country, and who is visiting temporarily in the United States. The employer/employee relationship shall have existed prior to the commencement of the employer's visit to the United States; or

(iii) Is an employee of a foreign airline engaged in international transportation of passengers freight, whose position with the foreign airline would otherwise entitle the employee to classification under section 101(a)(15)(E)(i) of the Immigration and Nationality Act, and who is precluded from such classification solely because the employee is not a national of the country of the airline's nationality or because there is no treaty of commerce and navigation in effect between the United States and the country of the airline's nationality.

(18) An alien against whom a final order of deportation exists and who is released on an order of supervision

462

the period the application (including any period when ___ appeal or judicial re___, and shall expire on a ___ visitor for busi-___ who;

personal or domestic servant ___ ___ or following to ___ who seeks admission already in the United States ___ defined under sec-___ (B), (E), (F), (H)..(I), (J), ___ 214(a) of the Act. The ___ or domestic servant shall have ___ abroad which he or she has ___ of abandoning and shall ___ at least one year's experi-___ personal or domestic servant ___ ___ that the employer-employee ___ ___ has existed for at ___ year prior to the employer's ___ to the United States; or, if ___ relationship ex-___ less than one year, that the ___ has regularly employed (ei-___ or seasonally) personal ___ servants over a period of ___ ___ preceding the employer's ___ to the United States; domestic servant of a United ___ ___ accompanying or follow-___ his or her United States cit-___ who has a permanent ___ stationed in a foreign coun-___ is visiting temporarily in ___ States. The employer-em-___ ___ shall have existed ___ commencement of the em-___ to the United States; or employee of a foreign air-___ in international transpor-___ ___ freight, whose po-___ the foreign airline would ___ ___ the employee to clas-___ under section 101(a)(15)(E)(i) ___ ___ and Nationality ___ ___ is precluded from such ___ solely because the em-___ a national of the country ___ nationality or because ___ treaty of commerce and ___ ___ effect between the United ___ ___ the country of the airline's ___

___ against whom a final ___ ___ exists and who is ___ an order of supervision

___ the authority contained in sec-tion 263(d) of the Act may be granted employment authorization if the dis-trict director determines that employ-ment authorization is appropriate. Factors which may be considered in the district director in adjudicating the application for employment au-thorization include, but are not limited to, the following:

(i) The existence of economic neces-sity to be employed;

(ii) The existence of a dependent spouse and/or children in the United States who rely on the alien for sup-port; and

(iii) The anticipated length of time before the alien can be removed from the United States.

(19) An alien applying for Temporary Protected Status pursuant to section 244A of the Act shall apply for employ-ment authorization only in accordance with the procedures set forth in part 240 of this chapter.

(d) Basic criteria to establish economic necessity. Title 45—Public Welfare, Pov-erty Guidelines. 45 CFR 1060.2 should be used as the basic criteria to establish eligibility for employment authoriza-tion when the alien's economic neces-sity is identified as a factor. The alien shall submit an application for employ-ment authorization listing his or her assets, income, and expenses as evi-dence of his or her economic need to work. Permission to work granted on the basis of the alien's application for employment authorization may be re-voked under §274a.14 of this chapter upon a showing that the information contained in the statement was not true and correct.

[54 FR 10321, May 1, 1987, as amended at 53 FR 3834, Mar. 19, 1988; 53 FR 4888, Nov. 21, 1988; 54 FR 18, Jan. 3, 1989; 54 FR 28864, June 28, 1989; 56 FR 584, Jan. 7, 1991; 56 FR 23491, May 22, 1991; 56 FR 41767, Aug. 23, 1991; 56 FR 55614, Oct. 29, 1991; 57 FR 6455, Feb. 25, 1992; 57 FR 16857, Apr. 21, 1992; 57 FR 23305, July 21, 1992; 57 FR 40866, Sept. 17, 1992; 58 FR 69217, Dec. 30, 1993]

EFFECTIVE DATE NOTE: At 58 FR 48764, Sept. 23, 1993, §274a.12(a)(1) was amended by removing the term "Form I-151 or" from the first sentence; and by revising the phrase "the individual's work authorization" to read "the bearer's work authorization", ef-fective September 23, 1994.

## §274a.13 Application for employment authorization.

(a) General. An application for em-ployment authorization (Form I-765) by an alien under §274a.12(a) (3)-(8) and (10)-(15), and under §274a.12(c) of this part, except for §274a.12(c)(8), shall be filed in accordance with the instruc-tions on Form I-765 with the district director having jurisdiction over the applicant's residence, or the district di-rector at the port of entry at which the alien applies, or with such other Service office as the Commissioner may designate. The ap-proval of such an application for em-ployment authorization shall be within the discretion of the district director. Where economic necessity has been identified as a factor, the alien must provide information regarding his or her assets, income, and expenses in ac-cordance with instructions on Form I-765. An initial application for employ-ment authorization (Form I-765) for asylum applicants under §274a.12(c)(8) of this part shall be filed in accordance with the instructions on or attached to Form I-765 with the regional service center, with the district director hav-ing jurisdiction over the applicant's residence, or the district director having jurisdiction over the port of entry at which the alien applies, with the asylum office having jurisdiction over the asylum claim or with such other Service office as the Commis-sioner may designate. An application for renewal of employment authoriza-tion submitted in relation to a pending claim for asylum, as provided for in 8 CFR 208.7, shall be filed in accordance with the instructions on or attached to Form I-765 with the asylum office hav-ing jurisdiction over the asylum appli-cation, with the district director hav-ing jurisdiction over the applicant's residence, or the district director having jurisdiction over the port of entry at which the alien applies, or with such other Service office the Commissioner may designate. An ap-plication for an initial employment au-thorization or for a renewal of employ-ment authorization filed in relation to a pending claim for asylum shall be ad-judicated in accordance with 8 CFR 208.7.

# A T T A C H M E N T   #3

922

ClickPDF - www.fasvio.com

A 31 298 296

UNITED STATES DEPARTMENT OF JUSTICE
BOARD OF IMMIGRATION APPEALS


IN THE MATTER OF:           )        IN DEPORTATION PROCEEDINGS
                            )
Jesus Garza Pacheco         )           A 31 298 296
                            )
RESPONDENT                  )


APPEAL FROM THE DECISION OF THE
IMMIGRATION COURT


APPELLEE
THE IMMIGRATION AND NATURALIZATION SERVICE
REPLY BRIEF


                                    Thomas R. Murphy
                                    Trial Attorney
                                    700 E. San Antonio
                                    Room C-201
                                    El Paso, Tx 79901

UNITED STATES DEPARTMENT OF JUSTICE
BOARD OF IMMIGRATION APPEALS

IN THE MATTER OF:          §
                           §          A31 298 296
Jesus GARZA Pacheco        §
                           §
RESPONDENT                 §
                           §
                           §
                           §
                           §
                           §          DEPORTATION PROCEEDINGS


Comes now the Immigration and Naturalization Service and responds
to the Respondent's post hearing brief.

## I. ISSUES PRESENTED

A) Does the execution of an order of deportation deprive the
Immigration Court of jurisdiction to review a subsequent
application for suspension of deportation under section 212 (c)
of the Act?

B) Did the respondent waive the right to challenge his prior
deportation by his failure to collaterally attack the lawfulness
of that deportation as a defense to a criminal indictment for re-
entry after deport and by pleading guilty to a criminal
information charging him with obtaining entry by
misrepresentation of material facts?

C) Is the respondent, who obtained admission as a permanent
resident based upon a fraudulent marriage, a "lawful" permanent
resident entitled to seek discretionary waiver of deportation
under section 212(c) of the Act?


## II. SUMMARY OF ARGUMENTS

A) Deportation deprives the Immigration Court of jurisdiction to
review the deportation order and renders moot collateral
challenges of the deportation and subsequent applications for
discretionary relief from deportation under section 212(c) of the
Act.

B)  The respondent's failure to contest the validity of his prior
deportation as a defense to an indictment for illegal re-entry
after deportation, and his subsequent plea of guilty to unlawful
entry in violation of 8 U.S.C. § 1325, constitutes a waiver by the
respondent of the right to further challenge the deportation. The
lawfulness of the deportation is res judicata.

924

C) The respondent, who obtained permanent resident status through a fraudulent marriage, has not been "lawfully" accorded that status, and thus is not entitled to seek a discretionary waiver of deportation under section 212(c) of the Act.

## III. STATEMENT OF THE CASE

This response is submitted to respondent's post hearing brief.

## IV. STATEMENT OF THE FACTS

The respondent was admitted to the United States as a permanent resident on November 4, 1971. The status was accorded based upon the respondent's marriage to Genoveva Alvarez de Garza. In open court the respondent admitted that his marriage to Genoveva Alvarez de Garza was fraudulent and was entered into for the purpose of immigrating to the United States.

On March 13, 1985, the respondent was convicted in Federal District Court for possession with intent to distribute heroin. Based upon this conviction, the Immigration and Naturalization Service issued an order to show cause, dated August 28, 1987, charging the respondent as deportable under §241 (a)(11) of the Immigration and Nationality Act. On August 28, 1987, the Immigration Court, in an in-absentia hearing, found the respondent deportable as charged and ordered his deportation to Mexico. On October 28, 1987, the respondent was deported pursuant to the order of deportation.

On September 17, 1991, the respondent was indicted for unlawfully entering the United States without having obtained the consent of the attorney general. The respondent pled guilty to an information containing two counts of knowingly and willfully obtaining entry to the United States by "willfully making a false or misleading misrepresentation, or the willful concealment of a material facts, namely, that the said Jesus Garza Pacheco possessed immigration documents that entitled him to reside in the United States."

## V. ARGUMENT

A) Execution of a deportation order deprives the Immigration Court of jurisdiction to review that deportation order.

The respondent's reliance upon Matter of Yih-hsiung Wang, 17 I&N Dec. 565 (BIA 1980) for the proposition that aliens may collaterally attack a prior deportation is in error. This case holds that respondents who voluntarily depart the United States cannot thereafter successfully move to reopen the prior deportation proceedings to raise issues which should have been presented prior to departure. In reaching this conclusion the Board distinguished the case of Mendez v. INS, 563 F.2d 956 (9 Cir. 1977) in which a collateral attack was allowed where a respondent's deportation was effected by procedurally defective



015
015
CMPDF - www.fenco.com

means. In dicta contained in Matter of Roman, 19 I&N Dec. #55 (BIA 1988),however, the respondent does find language which would support a limited right to collaterally attack a prior deportation if the prior order resulted in a gross miscarriage of justice. The court in Thorsteinsson v. I.N.S., 724 F. 2d 1365, 1367, (9 Cir. 1984) identifies and examines the line of cases which have developed this judicial exception to the preclusion of judicial review of deportation orders found at 8 U.S.C. §1105a(c). This exception finds its roots in Mendez which held that a deportation in derogation of the right to counsel was not a "departure" for the purposes of 8 U.S.C. § 1105.

Unfortunately for the respondent, Mendez and its progeny are not followed by the Fifth Circuit Court of Appeals, which is the controlling circuit in his case. In Quezada v. Ins, 898 F. 2d 274 (5 Cir. 1990) the Fifth Circuit Court of Appeals analyzed the statutory grant of jurisdiction to the Circuit and District Courts to review an order of deportation. The court found that the legislative mandate contained in 8 U.S.C. §1105a(c) was clear in providing that "an order of deportation ... shall not be reviewed by any court if the alien ... has departed from the United States after the issuance of the order." The court ruled that it was without statutory jurisdiction to review the deportation. In reaching the decision, the court noted that the Ninth Circuit Court of Appeals in Mendez had strayed from the plain meaning of the statute to hold it inapplicable to departures effected unlawfully. The court observed that Mendez had become a sinkhole that swallowed the rule of 8 U.S.C. §1105a(c). The Fifth Circuit Court of Appeals conclude that Congress meant what it said when it provided that "no court" may review a deportation order once deportation has occurred and the court specifically rejected the Mendez decision in reaching that ruling. The "no court" provision contained within 8 U.S.C. §1105a(c), which removes jurisdiction from the Federal Courts to review an order of deport once an alien has departed also removes jurisdiction from lower courts such as Immigration Courts to review such order of deportation. The respondent's motion to reopen his case in order to collaterally attack his prior deportation should be denied.

B) The respondent's failure to contest the validity of his prior deportation as a defense to an indictment for illegal re-entry after deportation, and his subsequent plea of guilty before a Federal Magistrate to an information containing two counts of gaining entry to the United States by willful misrepresentation of material facts, constitutes a waiver by the respondent of the right to further challenge the deportation. The lawfulness of the deportation is res judicata.

Criminal courts, unlike civil courts, have jurisdiction to review the lawfulness of a prior deportation when that deportation is an element of the charged criminal offense. More specifically, charging a defendant with a violation of 8 U.S.C. §1326, re-entry after deport, opens the door to a collateral attack of a prior deportation. In United States v. Mendoza-Lopez,

926

481 US 828, 95 L Ed 2d 772, 107 S Ct 2148, (1987), the court squarely confronted this issue in the context of 8 U.S.C. §1326. The court restated its established doctrine that where a determination made in an administrative proceeding plays a critical role in the subsequent imposition of a criminal sanction, due process requires some meaningful review of the administrative proceeding. The court ruled that collateral challenges to prior deportations are specifically allowed in §1326 prosecutions.

The respondent defended himself before a forum which had an express grant of jurisdiction to review the lawfulness of his prior deportation. The respondent was under indictment for a violation of 8 U.S.C. §1326, which specifically charged him with unlawfully re-entering the United States after having been previously deported. The deportation charged in the criminal indictment is the same one the defendant now seeks to collaterally attack before the Immigration Court. This indictment provided the defendant with the opportunity to collaterally attack the deportation order which not only resulted in his deportation from the United States, but also stripped him of his status as permanent resident. Rather than seizing his opportunity to challenge his deportation and the ensuing harshness that deportation brought to his life, the respondent chose to plea bargain his right away. He plead to an indictment containing two counts of a violation of the sister statute, 8 U.S.C. §1325. By his plea, he waived his right to challenge his deportation.

The respondent's contention that his plea to a violation of 8 U.S.C. §1325 does not constitute res judicata is without merit. The respondent had been admitted to the United States as a permanent resident. The information he pled to specifically charges that he gained entry to the United States by willful misrepresentation of material facts, namely, that he possessed immigration documents that entitled him to reside in the United States. It was the execution of the order of deportation which stripped him of his status as a permanent resident, and a collateral attack, if successful, of the order of deportation would restore his status. Once he regained his status as a permanent resident, he would not be guilty of misrepresenting that he had documents which would allow him to reside in the United States in violation of 8 U.S.C §1325. Clearly, the respondent's case is one where "a determination made in an administrative proceeding plays a critical role in the subsequent imposition of a criminal sanction." The reasoning followed by the court in Mendoza-Lopez is as equally compelling against the respondent for a §1325 violation as it is for a §1326 violation.

The respondent's criminal attorney was aware of the respondent's contention that his deportation was improper. The respondent, under the advice of counsel, still chose to enter into a plea bargain by which he pled guilty to a violation of 8 U.S.C. §1325. By his guilty plea, he acknowledged he was guilty of every element of the offense. He waived his right to raise defenses which were available to him prior to his guilty plea. He is collaterally estopped from re-litigating issues which were

☒ 015
☒ 017

8
05/30/95  TUE 16:05  FAX 202 616 4930

06/22/95  THU 12:36  FAX 202 616 9777

essential elements of a criminal charge against him. He cannot
collaterally attack before the Immigration court those facts
established by his conviction. See Howard v. Immigration &
Naturalization Service, 930 F. 2d 432, (5 Cir. 1991). With his
guilty plea the lawfulness of his prior deportation became res
judicata.

C) The respondent, who obtained permanent resident status through
a fraudulent marriage, has not been "lawfully" accorded that
status, and thus is not entitled to seek a discretionary waiver
of deportation under section 212(c) of the Act.

The respondent, in open court, declared that he had entered
into his marriage solely for obtaining entry to the United States
as a permanent resident. A judicial confession is the strongest
form of proof known to the law and based upon his statement alone
and without receiving any additional evidence the Immigration
Judge can find that the respondent obtained his immigrant visa by
fraud.

The respondent's reliance on Zamora-Moral v. INS, 905 F.2d
832, (5th Cir. 1990) for the proposition that a finding of
unlawful residence cannot be made without a charge alleging fraud
is unfounded. In Zamora-Moral the alien had been improperly held
to be ineligible for a waiver to §241(f)(2) which was available
to aliens who were subject to deportation under §241 (a)(11) for
a single conviction for possession of 30 grams or less. Having
been charged with only a single conviction, the court correctly
held the alien could not be barred as having two convictions. The
disqualifications for this waiver was tied to the charge of
deportability. There is no similiar between the qualifications
for relief under §212(c) of the Act and any particular ground of
deportation. What is required, however, is a showing of statutory
eligibility to apply for relief under §212(c). The respondent,
not the service, has the burden of showing eligibility for relief
in making applications for discretionary relief.

While the respondent had been accorded status as a permanent
resident that status had been obtained by fraud. The respondent
had not been "lawfully" admitted to the United States. See Monet
v. Immigration & Naturalization Service, 791 F. 2d 752, 754 (9
Cir. 1986). In Monet the alien argued, as the respondent is now
arguing, that although he unlawfully obtained he status as a
permanent resident alien, he should retain his status until a
formal adjudication of the unlawful procurement in made. The
court rejected this argument holding that Congress required not
only admission as a permanent resident but that the admission be
lawful. The court ruled that the alien failed to demonstrate that
he was statutorily eligible for relief under §212(c) of the Act.
The Fifth Circuit, from which the respondent's case arises,
similarly requires an alien to be lawfully admitted for the
entire 7 years in order to apply for a §212(c) waiver. See
Prichard-Ciriza v. INS, 978 F.2d 219 (5th Cir. 1992). Mr. Garza
is not statutorily eligible to apply for relief under §212(c) of
the Act.

# A T T A C H M E N T    #4

930

☑02
CutePDF - www.cutepdf.com

**LAW OFFICES OF REFUGIO DEL RIO GRANDE**
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226
March 17, 1995

Nancy Masso, AUSA
Office of the United States Attorney
1036 E. Levee
Brownsville, Texas 78520

By FAX: (210) 548-2711

Re: <u>Herrera et al v. Trominski et al</u>
    C.A. No. B-94-215

Dear Nancy:

I am very concerned about the recent developments regarding the removal of the SAUSA who has been working on the instant case. As he informed you, I agreed to extend the imminent deadlines for outstanding pleadings for "a few days" when the difficulties first erupted. I have since been informed that he has been removed from his duties as SAUSA. In order that there be no question as to where we stand, I have prepared the accompanying document. In the hopes that matters can still be resolved, I will not file it with the Court at this time.

Please advise me as soon as there has been a re-assignment of the case. As I recall, John Carte substituted in for Howard Rose, but I do not know whether you were ever officially in, (or out of), the case, or to whom to direct questions, etc.. For this reason, the accompanying document is simply served on your office, so that it may be forwarded to whomever is now in charge of the matter.

What can I say. It is Friday. Have a nice week-end.

Sincerely,

Lisa S. Brodyaga
Attorney at Law

931

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Opposition to Plaintiffs' Motion for Preliminary Relief as to Jesus Garza-Pacheco was mailed to counsel for Plaintiffs, certified mail, return receipt requested, at:


Lisa S. Brodyaga, Esq.
402 E. Harrison, 2nd Floor
Harlingen, Texas  78550

Thelma O. Garcia, Esq.
301 E. Madison
Harlingen, Texas  78550

Served on this the __22nd__ day of June, 1995.

FLR: Regina Byrd    w/ permission
Attorney for Defendants

936

Case 1:94-cv-00215   Document 46   Filed in TXSD on 06/22/1995   Page 46 of 50

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

HERRERA, et al                    )
                                  )
v.                                )        C.A. No.  B-94-215
                                  )
TROMINSKI, et al.                 )
_____   )

ADVISAL OF DUE DATES FOR ANSWERING THE INSTANT COMPLAINT,
AND RESPONDING TO
PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
AND PLAINTIFFS' SECOND SET OF REQUESTS FOR ADMISSION
AND SIMILAR UNRESOLVED MATTERS

Come Plaintiffs, and advise Defendants of certain unresolved
matters, including the following:

1.  As of the present, Defendants have not filed their Answer to
the First Amended Complaint herein, nor responded to the two
outstanding requests for discovery, to wit, Plaintiffs' First Set
of Requests for Productions of Documents, served on December 5,
1994, and Plaintiffs' Second Set of Requests for Admission, served
on February 16, 1995.

Extensions of the due date for all three pleadings were the subject
of oral agreements between counsel for the Plaintiffs, and counsel
for Defendants.    However, upon receipt of information that
Defendants will (again) be substituting counsel, and in the
interest of ensuring that there be no misunderstandings with
respect thereto, Plaintiffs hereby advise that the Answer to the
Complaint, and the responses to the First Set of Requests for
Production of Documents, and to the Second Set of Requests for
Admission, are due no later than March 24, 1995, and that it is not
anticipated that further extensions will be granted, except upon
Order of the Court.

*942*

2.   Plaintiffs would also note that it had been orally agreed
between the Parties that, if Defendants could provide evidence
demonstrating that any of the admissions were factually incorrect,
which admissions had been made by default when Defendants failed to
respond to Plaintiffs' First Set of Requests for Admission,
Plaintiffs would agree to the withdrawal of said admission.   To
date, no such evidence has been tendered.   Plaintiffs would advise
Defendants that any such evidence is also due on or before March
24, 1995.   After that date, any requests for withdrawal of
admissions made by default will have to be directed to the Court.

3.   Defendants have advised Plaintiffs that at least two
individuals were deported as a result of the fact that they
responded to the call-in letters, purportedly sent to members of
the putative class herein, advising them that the purpose of the
call-in was to "review [their] Immigration status, take photos, and
[be] issued [their] new LPR Card, I-151 or Employment Card," c.f.,
Exhibit "F" In Support of Plaintiffs' Motion for Class
Certification and Request for Hearing Thereon.

According to information received from Defendants, the majority of
said letters were sent to individuals known to Defendants not to be
members of the putative class, for the reason that they were
already under administratively final orders of deportation.
Defendants have admitted that when such persons responded to the
call-in letters, (c.f., Exhibit "F"), they were taken into custody.
Plaintiffs remain very concerned about the fate of these
individuals, particularly of those who were deported.

The request to review the files of these individuals was included
in Plaintiffs' First Set of Request For Production of Documents.
Although Defendants have indicated that they would allow
Plaintiffs' counsel to review these files, particularly those of
the persons who were deported because they responded to the
deceptive call-in letters, this has not yet occurred.

2

933

Case 1:94-cv-00215   Document 46   Filed in TXSD on 06/22/1995   Page 48 of 50

Plaintiffs would therefore advise Defendants that, if these files
are not presented by March 24, 1995, Plaintiffs intend to seek not
only an Order mandating their production, but a show cause hearing,
to determine whether the individuals in questions should be allowed
to return to the United States, in order to pursue any relief from
deportation which might have been available to them.

4.   There has also been no resolution as of yet to the problem of
Jesus Garza-Pacheco, A31 298 296.  Plaintiffs assert that he is a
member of the putative class herein, for the reasons set forth in
their letter of February 17, 1995, a copy of which was forwarded to
counsel for Defendants.

Mr. Garza-Pacheco has, at present, no valid document authorizing
that he be employed in the United States.  Plaintiffs have made
several suggestions as to means by which he could be provided with
such a document, while still taking into consideration the concerns
of Plaintiffs, which arise from the fact that his case is,
admittedly, a procedural nightmare, and his status as a member of
the putative class herein is in question.  To date, however,
Defendants have not accepted any of Plaintiffs' suggestions,
offered any counter-suggestions, or replied to Plaintiffs' letter.

Plaintiffs therefore advise that, if no resolution of this issue
has been reached by March 24, 1995, Plaintiffs will also bring the
matter to the attention of the Court, and request that the Court
hold a hearing with respect thereto.

5.   Finally, Plaintiffs would remind Defendants that the deadline
for accepting the Proposed Partial Settlement, of February 8, 1995,
was, according to its terms, "the date of the next court
appearance," which is set for April 7, 1995.  After that date, re-
negotiation will be required.  As of the present, no reply has been
received to the Proposed Partial Settlement.

3

934

Thank you for giving these matters your immediate attention.

Respectfully Submitted,

Lisa S. Brodyaga                          Thelma O. Garcia
402 E. Harrison, 2nd Floor                301 E. Madison
Harlingen, Texas 78550                    Harlingen, Texas 78550
(210) 421-3226                            (210) 425-3701

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, first-
class postage prepaid, to the Office of the United States Attorney,
1036 E. Levee, Brownsville, Texas 78520, and by FAX to (210) 548-
2711, this 17th day of March, 1995.



4

935

☑ 02
ClibPDF - www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JULIO HERRERA LOA, JUANA           )
ASCENCIO-GUZMAN, et. al.,          )
                                   )
        Plaintiffs,                )
                                   )
v.                                 )        C.A. No. B-94-215
                                   )
                                   )
E.M. TROMINSKI, District           )
Director, Immigration and          )
Naturalization Service, HON.       )
JANET RENO, United States          )
Attorney General, and              )
IMMIGRATION AND NATURALIZATION     )
SERVICE,                           )
                                   )
        Defendants.                )
_____)

### ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY RELIEF AS TO JESUS GARZA-PACHECO

Upon consideration of the plaintiffs request for Preliminary Injunctive Relief as to Jesus Garza-Pacheco, the opposition filed by defendants, and the pleadings and evidence on file herein, it is:

ORDERED, that Plaintiffs' Request for Preliminary Injunctive Relief as to Jesus Garza-Pacheco be and is hereby DENIED.

Done at Brownsville, Texas,

this _____ day of _____, 1995.


_____
        DISTRICT COURT JUDGE