47

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 3 0 1995

Michael N. Milby, Clerk

ASCENCIO, et al )
)
v. )        C.A. No.   B-94-215
)
TROMINSKI, et al. )
_____)

PETITIONERS' REPLY TO DEFENDANTS' OBJECTIONS TO THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Come Petitioners, and respectfully file the instant reply to
"Defendants' Objections to the Magistrate Judge's Report and
Recommendations," hereinafter referred to as "Defendants'
Objections," and cited as (INS2:__).  [1]

I.   INTRODUCTION

Petitioners would first apologize to the Magistrate Judge, and to
this Honorable Court, for believing that an Order from the
Magistrate Judge would resolve the immediate problem of convincing
Defendants to renew Mr. Garza-Pacheco's employment authorization,
without the necessity of bringing the matter before this Honorable
Court.  As stated in Finding of Fact Number 9(m) (emphasis added),
following the hearing on April 26, 1995, counsel for Petitioners,
and the Magistrate Judge, were left with the impression that:

> Defendants base[d] their refusal to extend Mr. Garza-
> Pacheco's employment authorization on their contention
> that they no longer have the authority to grant
> employment authorization to persons such as Mr. Garza-
> Pacheco, due to a recent change in the regulations,

_____

[1]   "Defendants' Opposition to Plaintiffs' Request for
Preliminary Relief as to Jesus Garza-Pacheco," also discussed
herein, will be referred to as "Defendants' Opposition," and will
be cited as (INS1:__).

865

CutePDF - www.foxio.com

**although they have indicated that they would be willing
to do so, if such authority existed.**

Apparently, Defendants either: (1) consider that an Order from the
Magistrate Judge is insufficient "authority" upon which to base a
grant of employment authorization, or (2) are in fact not willing
to do so, absent a binding and enforceable Order from this
Honorable Court.  Defendants' Objections leave their position on
this, and other crucial matters, in doubt, [2]  although given the
bulk of their Objections, it will be assumed herein that they are
indeed unwilling to do so, absent such an Order from this Court.

## II.   DEFENDANTS' SUBSTANTIVE OBJECTIONS ARE WITHOUT MERIT

On page 2 of Defendants' Objections, four specific bases are
identified.   Apart from their (correct) assertion that the
Magistrate Judge does not have the authority to issue the type of
binding and enforceable Order that is apparently necessary to
overcome Defendants' unwillingness to extend the authorization as
requested, their objections are wholly without foundation.

## A.  MR. GARZA-PACHECO'S DISPUTE IS INDEED PROPERLY BEFORE THE COURT

### 1.   MR. GARZA-PACHECO NEED NOT BE A NAMED PETITIONER IN ORDER FOR THE COURT TO CONSIDER HIS CLAIM

A classic example of the frivolity of Defendants' Objections is
their citation to Rule 10(a), Federal Rules of Civil Procedure, for
the proposition that Mr. Garza-Pacheco's case is not properly
before the Court, because he was not named as a party, (INS2:11).

---

[2]    As  is  discussed  infra  at  Section  III,  Defendants'
objections to the findings of fact relating to Mr. Garza-Pacheco,
(Findings of Fact Nos. 9(a) through 9(m)), do not "specifically
identify those findings objected to," Nettles v. Wainright, 677
F.2d 404, 410,n.8 (1982).  To the contrary, they are precisely the
type of "[f]rivolous, conclusive or general objections [which] need
not be considered by the district court," Id..

2

The Second Amended Petition, on which the Court is proceeding, (like both the original, and first amended versions), was styled as a class action.  It was not possible, much less necessary, to name all of the individuals involved, Rule 23, F.R. Civ. Procedure.

Defendants claim that Mr. Garza-Pacheco's case is not sufficiently "similar" to the named plaintiffs to be a member of the putative class, (INS2:11).  To the contrary, his case is very similar to that of (named) Petitioner Arturo Lopez-Lozano.  At the time they confiscated Mr. Lopez-Lozano's green card, and other documents, and refused him re-admission to the U.S. as a returning resident, INS was under the impression that his case was still on appeal to the BIA.  Under their interpretation of 8 CFR 3.4, his <u>Fleuti</u> [3] excursion on December 22, 1994, would have constituted an automatic deportation, [4] so the officials on duty believed that he was no longer entitled to readmission as a lawful permanent resident alien, (<u>Petitioners' Exhibit H</u>).

Defendants claim that the cases are dissimilar because Mr. Lopez-Lozano has never had an order of deportation entered in his case, (INS2:12).  This is incorrect.  As admitted in their Answer, (ANS:4), Mr. Lopez-Lozano was ordered deported by an Immigration Judge in Harlingen, Texas.  He appealed said order to the Board of Immigration Appeals, which appeal was granted.  As also admitted, (<u>Id</u>.), it was because the grant of his appeal had not been entered in the computer that the official on duty refused his application for admission, and confiscated his green card, believing that, under 8 CFR 3.4, he had therefore been deported.

---

[3]  <u>Rosenberg v. Fleuti</u>, 374 U.S. 449 (1964) (return from a brief, casual, and innocent departure does is not an "entry" within the meaning of 8 USC Sec. 1101(a)(13).

[4]  Which interpretation is one of the points challenged by the instant action, on the grounds that it is inconsistent with both <u>Fleuti</u>, <u>supra</u>, and <u>Molina v. Sewell</u>, 983 F.2d 676 (5th Cir. 1993).

The primary difference between the two sets of facts is that in the case of Mr. Lopez-Lozano, INS ultimately relented, and recognized that he was, indeed, still an LPR, whereas in the case of Mr. Garza-Pacheco, they still dispute his claim, which claim is currently under review by the Board of Immigration Appeals.

The claims of the named class members need not be identical to those of non-named members, but only "typical," Rule 23(a), F.R. Civ.Proc.. Although the threshold requirements of typicality are "not high," Shipes v. Trinity Industries, 987 F.2d 311, 316 (5th Cir. 1993), Mr. Garza-Pacheco's case is so unique that it arguably would not have been proper to have named him as a representative party.  But this does not mean that he cannot be a member of the class.  Mr. Garza-Pacheco resides in this INS (and judicial) District.  He has consistently claimed LPR status.  He is under deportation proceedings, in which no final order has issued, and his green card has been confiscated and retained by INS. [5]

Respondents claim, (INS2:12), that, because "Mr. Garza-Pacheco's LPR status has been terminated ... [he] cannot reasonably be held out as a member of the class as it is currently defined."  The problem with this argument is that it is premised on the very fact in dispute: to wit, whether Mr. Garza-Pacheco's status as an LPR has been lawfully "terminated."

In this regard, INS confuses jurisdiction to review a deportation

---

[5]   In this regard, INS has also misrepresented certain material facts, claiming that Mr. Garza-Pacheco last entered the United States "using his green card," (INS1:5) (INS2:9), and that when he entered, he was "still holding his green card as if he were legally authorized to carry it," (INS1:7).  This is simply false.

To the contrary, his green card was confiscated by INS when he was "deported" in 1987, and his plea, after re-entry, was to the offense of wilfully failing to disclose a material fact when he re-entered, to wit, the material fact that he no longer had his green card, Plaintiffs' Exhibit Z, herein incorporated by reference.

4

868

order under 8 USC Section 1105a, with <u>termination</u> of the status of lawful permanent residence, (INS2:13). Even assuming that the Board dismisses Mr. Garza-Pacheco's current appeal, in which he asserts that the prior order was illegal, and that he remains an LPR, he would be able to obtain review of such a decision under 8 USC Section 1105a. <u>Umanzor v. Lambert</u>, 782 F.2d 1299 (5th Cir. 1986), and its progeny, cited by INS for the proposition that <u>no</u> court can entertain a collateral attack on the 1987 deportation, (INS2:13), are only apposite to the extent that they demonstrate that Mr. Garza-Pacheco could not have obtained <u>direct</u> review of the 1987 order, and that his current, collateral, attack on that order is the only one possible under the circumstances.

Similarly, Defendants assert, (<u>Id</u>.), that:

> [E]ven if a separate suit is brought on behalf of Mr. Garza-Pacheco, this Court would lack jurisdiction to review the propriety of the 1987 order of deportation.

This would be true, if and <u>only</u> if, the jurisdictional basis for the suit were 8 USC Section 1105a. <u>Umanzor</u> is exquisitely clear that the basis for the lack of jurisdiction under Section 1105a is the specific language of that section, not any general principle of jurisprudence which forbids review of agency misconduct under other applicable jurisdictional statutes. <u>Id</u>. at 782 F.2d 1302.

To the contrary, the Supreme Court has held that a defendant charged with unlawful re-entry following deportation, (8 USC Section 1326), may collaterally attack the underlying deportation order, <u>U.S. v. Mendoza-Lopez</u>, 95 L.Ed.2d 772, 107 S.Ct. 2148 (1987). [6] Obviously, such an attack would be impossible if, as

---

[6]    The BIA has also held that even a fully executed deportation order may be collaterally attacked, if it was accomplished in violation of law, and the individual had no prior opportunity to raise the issues which are the basis of the challenge, <u>Matter of Yih-Hsiung Wang</u>, 17 I&N Dec. 565 (BIA 1980).

5

Defendants assert, "no court may review a deportation or exclusion order once the deportation has occurred," (INS2:13). Whether or not review is possible depends on the nature of the proceeding, and the jurisdictional basis upon which review is premised. [7]

It is also significant that Defendants did not object to the Magistrate Judge's Finding of Fact Number 6, which reads as follows, (emphasis added):

> 6. Given the change in the posture of the Defendants, at a status conference conducted on April 26, 1995, at 2:00 p.m., Plaintiffs renewed their request for preliminary relief, with respect to two individual cases, whom they claim have been prejudiced by the (unproductive) delays, to wit, those of Juana Ascencio-Guzman, and her husband, Efrain Merino, <u>and of Jesus Garza-Pacheco</u>, <u>whose claim to membership in the putative class has not been resolved, in large part due to the delays granted to enable Defendants to make an institutional decision regarding settlement of the case.</u>

Defendants' acceptance of this factual finding is inconsistent with their current allegation that Mr. Garza cannot "reasonably" be held out as a member of the class herein, and, once again, points to the necessity of a determination of Plaintiffs' pending motion for

---

See <u>also</u>, <u>Matter of Roman</u>, 19 I&N Dec. 855, 856-857 (BIA 1988); and <u>Matter of Malone</u>, 11 I&N Dec 730 (BIA 1966).

[7] Ironically, <u>Mendoza-Lopez</u> is cited by INS in its Brief in opposition to Mr. Garza-Pacheco's appeal to the BIA, (Attachment 3, at page 3-4), in support of their claim that Mr. Garza-Pacheco could not now attack the 1987 order, because he had not done so when charged with a violation of 8 USC Sec. 1326. This overlooks the fact that the Sec. 1326 charges were dropped, precisely <u>because</u> he mounted such a challenge. He pled guilty to the information charging a violation of 8 USC Section 1325(a)(3), because he was guilty of concealing the fact that he no longer had his green card. It had been confiscated by INS in 1987, when he presented himself for his hearing, and was, instead, deported. The illegality of the deportation would not have been a defense to that charge, c.f., <u>Petitioners' Exhibit Z</u>.

870

class certification.  If INS persists in claiming that persons such
as Mr. Garza-Pacheco are not members of the instant class, perhaps
the definition of the class will have to be modified accordingly,
if and when Plaintiffs' pending motion for class certification is
finally resolved.  No-one can be "sure and certain" of membership
in a class that has not been certified.

Nor should Defendants have been surprised by Mr. Garza-Pacheco's
claim to membership in the instant class.  As demonstrated by
"Attachment #1" to Defendants' Objections, this claim has been
made, in writing, since at least February 17, 1995.  Indeed, Mr.
Garza-Pacheco asserted the <u>facts</u>, from which his claim derives, in
his motion to reopen of August, 1992.  These facts were set forth,
in writing, to the Harlingen INS District, on September 21, 1992,
long before the instant action was filed, <u>Petitioners' Exhibit Z</u>.

In his I-765 of that date, Mr. Garza-Pacheco provided his address
in McAllen, Texas, asserted entitlement to employment authorization
under 8 CFR 274a.12(a)(1), on the grounds that he was "a lawful
permanent resident (in reopened deportation proceedings)" and that
his "I-551 [was] taken by INS when [he was] deported," (<u>Id</u>.).

Defendants' unwillingness to see that justice is done is also
demonstrated by their presentation of the "History of Mr. Garza-
Pacheco," (INS1:5-6).   The facts demonstrating the blatant
illegality of the 1987 proceedings, undisputed at his deportation
hearing, and upon which the collateral attack is premised, are
simply ignored, in a manner that is seriously misleading.

In Defendants' Opposition, (INS1:5), and again in Defendants'
Objections, (INS2:9), it is noted that Mr. Garza-Pacheco was
ordered deported <u>in absentia</u>.  However, there is no mention in
either pleading of the undisputed fact that he had no notice of the
1987 hearing. Defendants also assert that he "failed to appeal the
IJ's decision to Board of Immigration Appeals," (INS1:5) (INS2:9),

7

871

again implying, incorrectly, that he had <u>notice</u> of the decision.

Defendants also note that on April 9, 1993, the Immigration Judge denied Mr. Garza-Pacheco's motion to reopen, (INS1:6) (INS2:9). Again, this overlooks the fact that, on August 27, 1992, the Immigration Judge <u>granted</u> the motion, discussed procedures for a hearing on the merits of Mr. Garza-Pacheco's application for relief under Section 212(c) of the Act. The INS Attorney had (initially) even waived appeal of the decision to reopen proceedings, (<u>Exhibit Z</u>, Tab 5(c), at pages 10-12).

What happened between August 27, 1992, and the scheduled hearing on the merits of the Section 212(c) application, on January 11, 1993, to cause the Immigration Judge to change his mind, is unknown, <u>see</u> <u>Exhibit Z</u>, Tab 5(d). No "new" facts were uncovered in the interim. [8] Indeed, Mr. Garza-Pacheco had to engage in a protracted battle even to have the transcript of the August 27, 1992 hearing prepared, and included in the record of proceedings, (<u>Id</u>. at Tab 4).

Defendants sidestep admitting the truth of these crucial facts by the ruse of making a general objection to Finding of Fact Number 9 of the Magistrate Judge's Report, on the grounds that "the facts regarding his situation are simply immaterial," (INS2:24). They also claim that this factual finding "should be rejected because of its inaccuracy," (INS2:23), but fail to specify which, if any, of

---

[8] Mr. Garza-Pacheco voluntarily announced that, since he had been unable to obtain his residence through his LPR wife, whose husband refused to divorce her, he had married a friend, to obtain his residence, (<u>Exhibit Z</u>, Tab 5(d), at 21-22). However, this announcement, upon which the Immigration Judge relied in his Decision, (<u>Exhibit Z</u>, Tab 8), in fact came <u>after</u> the Judge had made his own announcement, that he would not honor his prior ruling to reopen the 1987 proceedings. This decision was based on INS' theory that the 1991 conviction for entry by willful concealment of the material fact that he no longer possessed his green card rendered the legality of the 1987 proceedings <u>res adjudicata</u>, (<u>Id</u>. Tab 5(d) at 10-18).

872

the subsections "a" through "m" are allegedly "inaccurate."  C.f.,
Nettles v. Wainwright, supra at 410 (The parties have the "duty to
pinpoint those portions of the magistrate's report that the
district court must specially consider.").

Such an approach is unworthy of the Department of Justice, whose
duty it is to seek justice, not to obscure crucial facts, thereby
misleading the Court, and perpetuating a grave injustice.  As held
in Celestine v. Veterans Admin. Hosp., 746 F.2d 1360 (Eighth Cir.
1984), quoting Berger v. U.S., 295 U.S. 78, 88, 55 S.Ct. 629, 633,
79 L.Ed. 1314 (1935):

> The United States Attorney is the representative not of
> an ordinary party to a controversy, but of a sovereignty
> whose obligation to govern impartially is as compelling
> as its obligation to govern at all; and whose interest,
> therefore, ... is not that it shall win a case, but that
> justice shall be done.

2.  DEFENDANTS' CLAIM THAT PLAINTIFFS HAVE NOT SUBMITTED A MOTION
    REQUESTING RELIEF FOR MR. GARZA-PACHECO IS WHOLLY FRIVOLOUS.

In urging that Mr. Garza-Pacheco's request for an extension of his
employment authorization document is not properly before the Court,
Defendants claim, (INS2:17), that Plaintiffs failed to comply with
Rule 6, F.R.Civ.Proc., which provides, in relevant part:

> An application to the court for an order shall be by
> motion which, unless made during a hearing or trial,
> shall be made in writing...

Defendants assert, (INS2:18), that the request for relief for Mr.
Garza-Pacheco was never made in writing, and "was made at neither
a hearing or a trial."  Defendants also urge that Plaintiffs'
"failure to file a motion" requesting such relief "deprives the
Court of jurisdiction" to decide this matter, (INS2:17).

9

873

This is simply untrue.  Plaintiffs' request has been made both in writing, and orally.  The request was made orally at the April 26, 1995 hearing.  In fact, the better part of that proceeding was devoted to a discussion of Mr. Garza-Pacheco's case, and to re-urging of the motion for preliminary injunction, [9]  with respect to him, and another individual who had been prejudiced by the endless, and unproductive, delays in the case.

It was made again, in writing, by virtue of the Certificate of Service of May 10, 1995, and proposed Orders.  Defendants responded to this submission with a lengthy "Opposition to Plaintiffs' Request for Preliminary Relief as to Jesus Garza-Pacheco."  This presupposes a "Request for Preliminary Relief" which could be opposed.  Notably, they did not allege therein that the request was not properly before the Court, because it had not been made "in writing" or at a "hearing."  Their opposition on this basis is frivolous, just as was the claim in their Answer that the Court lacked jurisdiction over the subject matter of the instant suit.

Moreover, any such "defect" in the request as it was presented to the Magistrate is cured by the instant written submission, as it is now clear that the final Order would have to be issued by this Court, before it would be honored by Defendants.

B.   DEFENDANTS' HAVE COMPLETELY MISCONSTRUED THE LEGAL BASIS OF PLAINTIFFS' ARGUMENT THAT THE ATTORNEY GENERAL HAS THE AUTHORITY TO ISSUE THE REQUESTED EMPLOYMENT AUTHORIZATION.

Defendants' claim that "The Magistrate Judge Erred in Recommending That This Court Order Defendants To Grant Work Authorization to Mr. Garza-Pacheco" is based on what can only be viewed as a deliberate misconstruction of the legal basis for Plaintiffs' request.

---

[9]   The motion had been withdrawn in reliance on Defendants' representation that the majority of the issues presented herein would be settled, which representation proved to be incorrect.

974

After the hearing on April 26, 1995, Plaintiffs discussed with Defendants their position that the Attorney General has independent authority, apart from that of 8 CFR Section 274a.12, to grant employment authorization.   Plaintiffs cited the example of the longstanding practice of giving such documents to INS informants, for whom no specific authorization exists under Section 274a.12.

Defendants acknowledged the practice, thereby also acknowledging that the authority of the Attorney General to issue such documents is <u>not</u> exhausted by 8 CFR Section 274a.12.  Their only response was that Mr. Garza-Pacheco could not be issued a document as an informant, because he was not an informant.  This misses the point. And indeed, in Defendants' Objections, (INS2:24), [10]   they explicitly accept the corresponding Conclusions of Law, (Nos. 1 - 4), holding that such a reserve power exists, and may be exercised "under such conditions, and for such reasons, as the Attorney General may deem appropriate," (Conclusion of Law Number 4).

But in the same pleading, Defendants claim, (INS2:14-17), that the cited regulation exhausts the power of the Attorney General to issue employment authorization, and that there would be no legal basis for issuing an employment authorization document to a person not enumerated by said section. [11]  This is wholly inconsistent.

Rather than address, head-on, the implications of the fact that this reserve power exists, Defendants have opted to misconstrue Plaintiffs' argument, and the Magistrate Judge's Conclusions of Law

---

[10]    "Finally, defendants do not object to the Magistrate Judge's conclusions of law with the <u>exception</u> of the tenth paragraph." (INS2:24) (emphasis in original).

[11]    "[I]t is through 8 C.F.R. Sec. 274a.12 that the Attorney General has exercised her authority and thereby limited her agents authority to grant work authorization to only those classes of aliens that she specifically described in 8 C.F.R. Sec. 274a.12(a)."  (INS2:15).

Nos. 1 - 4, urging, (INS2:15), that:

> Plaintiffs' attack on the denial of a work authorization
> for Mr. Garza-Pacheco must be construed as an attack on
> the Attorney General's statutory authority to limit work
> authorization to those aliens she has specifically
> described in 8 C.F.R. Sec. 274a.12(a), as well as an
> attack on the constitutionality of that regulation.

Once Defendants have admitted, as they have, that the reserve power
exists, there is no need to challenge the constitutionality of 8
CFR Section 274a.12(a). And to claim that Plaintiffs are attacking
"the Attorney General's statutory authority to limit work
authorization" to the categories described in 8 CFR 274a.12(a),
implies that the Attorney General has in some manner relinquished
her reserve power to grant such documents "under such conditions,
and for such reasons, as the Attorney General may deem
appropriate." This is simply not true, as Defendants well know,
(and have admitted herein), and as is well illustrated by the
issuance of such documents to informants, collaborators, etc.

C. PLAINTIFFS HAVE MET THE TEST FOR THE ISSUANCE OF PRELIMINARY
   RELIEF TO MR. GARZA-PACHECO.

Finally, Defendants argue that Plaintiffs have not met the four-
prong test required for issuance of preliminary relief to Mr.
Garza-Pacheco, (INS2:18-19). Again, this is incorrect. [12]

1. GIVEN THE ABSOLUTE LACK OF NOTICE TO MR. GARZA-PACHECO OF THE
PROCEEDINGS AGAINST HIM, THERE IS A SUBSTANTIAL LIKELIHOOD THAT HIS
   COLLATERAL ATTACK ON THE DEPORTATION ORDER WILL BE SUCCESSFUL.

---

[12] Defendants' claim, (INS2:18), that Plaintiffs have not
"once asserted or even attempted to demonstrate" that preliminary
relief is appropriate, overlooks the arguments made at the April
26th hearing. But since it is this Court that must act, before
Defendants will comply, the arguments are made in writing herein.

976

Mr. Garza-Pacheco had neither actual, nor constructive, notice of his deportation hearing, which was conducted in absentia, or of the deportation order itself, until he reported to INS for what he believed would be his hearing, and was removed from the U.S. on the spot, (Exhibit Z). Such a proceeding does not begin to conform with the most rudimentary elements of Due Process, which include notice, and an opportunity to be heard, Mullane v. Central Hanover Bank & Trust, 70 S.Ct. 652 (1950).

As noted above, (at page 5), there is case law from the Board of Immigration Appeals, and from the Supreme Court of the United States, permitting collateral attacks on deportation orders. If any such attack can succeed, Mr. Garza-Pacheco's should.

## 2.   MR. GARZA-PACHECO WILL SUFFER IRREPARABLE INJURY IF NOT GRANTED EMPLOYMENT AUTHORIZATION WHILE HIS CASE IS PENDING.

Mr. Garza-Pacheco is a 49 year-old man, the husband of a lawful permanent resident, and father of four United States citizen sons, (Exhibit Z). The injury to the head of a household who cannot be lawfully employed in the United States is almost too obvious to require explanation. c.f., McNary v. Haitian Refugee Center, 112 L.Ed.2d 1005, 1017 (1991). It makes him dependent on his wife and sons; it undermines his ability to pursue his legal case, due to the scarcity of financial resources, and is devastating to his self-esteem. There is no way in which time lost can be restored. Truly, such an injury is, by definition, "irreparable."

## 3.   THE HARM TO MR. GARZA-PACHECO FAR OUTWEIGHS ANY INCONVENIENCE TO DEFENDANTS OF ISSUING AN EMPLOYMENT AUTHORIZATION DOCUMENT.

Apart from the "floodgates" argument, (INS1:11) (INS2:19), the only harm to INS of issuing the requested document is the trivial, administrative inconvenience. And if there are other persons similarly situated to Mr. Garza-Pacheco, who were stripped of their LPR status with no notice or opportunity to be heard, and who are

13

emboldened by the fact that Mr. Garza-Pacheco obtained such an authorization, so be it.  This would further the ends of justice. Hopefully, there are not enough people in this situation to cause the "flood" about which INS frets.

4.  IT IS CLEARLY IN THE PUBLIC INTEREST THAT MR. GARZA-PACHECO BE GRANTED EMPLOYMENT AUTHORIZATION DURING THE PENDENCY OF HIS CASE.

"Justice" is in the public interest.  Enabling people with long-standing ties to this country, who have been unlawfully stripped of their status to at least have the means of survival while they pursue their cases through the legal system is in the public interest.  Enabling a man to at least assist in the support of his United States Citizen sons, and LPR wife, through lawful employment, is in the public interest.   And furthering the perception, as well as the reality, of justice, is also in the public interest.

III.   DEFENDANTS' OBJECTIONS TO THE FINDINGS OF FACT OF THE MAGISTRATE JUDGE ARE IN SOME CASES, FRIVOLOUS, AND IN OTHERS, LACK SUFFICIENT SPECIFICITY TO BE CONSIDERED BY THIS COURT.

Finally, Defendants object to the Findings of Fact numbers 1, 4, 5, 8, and 9.  Each objection will be separately analyzed.

1.  On July 15, 1994, Plaintiffs filed a motion for a preliminary injunction herein, on which motion a hearing was scheduled for August 1, 1994.  At that hearing, the Parties represented to the Court that an agreed Order would be submitted with respect to most, if not all, of the issues presented herein, and that, as a result, the request for preliminary injunction had been withdrawn.

Defendants' objection to the first finding of fact is simply that the "July 15, 1994 motion for preliminary injunction was not submitted on behalf of Mr. Garza-Pacheco," (INS2:20).  This claim is based solely on the assertion that, in July of 1994, Plaintiffs were (allegedly) not "sure and certain" that Mr. Garza-Pacheco is

14

a class member. [13]   In support of this position, Defendants quote,
(INS2:20-21), out of context, from Plaintiffs' letter of March 17,
1995, (Plaintiffs' Exhibit "P"), in which Plaintiffs acknowledge
that Mr. Garza-Pacheco's status as a class member "is in question."

Defendants utilize the passage, containing an obvious typographical
error, ("Plaintiffs" instead of "Defendants"), in an attempt to
change the meaning of the letter.  The full paragraph clearly shows
that Plaintiffs were trying to accommodate Defendants' concerns,
not their own, (Plaintiffs' Exhibit P, at page 3):

> Mr. Garza-Pacheco has, at present, no valid document
> authorizing that he be employed in the United States.
> Plaintiffs have made several suggestions as to means by
> which he could be provided with such a document, while
> still taking into consideration the concerns of
> Plaintiffs, [Defendants], which arise from the fact that
> his case is, admittedly, a procedural nightmare, and his
> status as a member of the putative class herein is in
> question.  To date, however, Defendants have not accepted
> any of Plaintiffs' suggestions, offered any counter-
> suggestions, or replied to Plaintiffs' letter.

Since at least 1992, Mr. Garza-Pacheco has consistently claimed
that he is an LPR, whose green card was confiscated by INS,
(Plaintiffs' Exhibit Z).  To say that his status is "in question"
is simply to recognize the obvious:  INS disagrees.  Given this
disagreement, Plaintiffs attempted to find means of accommodating
INS' concerns.  Shame on Plaintiffs for trying to be reasonable.
They should have known that it would be used against them.

4.  These extended delays were granted without serious opposition
from Plaintiffs, who accepted the good faith representations of
Defendants' second managing attorney that he was doing everything
within his capabilities to shepherd the proposed settlement through

---

[13]   Obviously, one cannot be "sure and certain" of membership
in any class, unless and until the class is certified.

CVAPDF - www.fevia.com

the requisite procedural, and bureaucratic hurdles.  However, he now has been removed from the case, [14]  and a third attorney has now taken over the management role herein.  (footnote in original).

Defendants object to the characterization of the delays as being granted "without serious opposition from Plaintiffs," preferring to hold Plaintiffs out as equal partners in the delays, (INS2:21). This is inconsistent with their acceptance of Finding of Fact No. 6, to the effect that Mr. Garza-Pacheco had been prejudiced by the "(unproductive) delays ... granted to enable Defendants to make an institutional decision regarding settlement of the case."

Defendants further assert that the circumstances surrounding the resignation of Defendants' prior counsel "is of no moment in the resolution of the case," (INS2:21).  To the extent that it is not necessary for the Court to actually choose between Plaintiffs' version, (that he was forced out), and Defendants' position, set forth with great assurance and certainty at the April 26th hearing, (that his resignation was entirely voluntary), Plaintiffs agree.

However, the fact that this was Plaintiffs' understanding of the circumstances, and that Plaintiffs had acquiesced in the prior delays because they understood the difficulties he was undergoing, is relevant, particularly in light of Defendants' Objections to Finding of Fact Number 5, infra.

As noted in the March 17, 1995 cover letter to Plaintiffs Exhibit

---

[14]   The Parties disagree as to whether the second attorney voluntarily resigned his position as Special Assistant United States Attorney for Immigration, thereby requiring that a new attorney be substituted, or whether he was subjected to intense pressure by those in a position to make it virtually impossible for him to perform his duties in this, and other, cases.

880

P, [15]   when the difficulties that led to the removal of prior
counsel for Defendants "first erupted," Plaintiffs agreed to grant
a further extension of the various, imminent, deadlines for "a few
days." The letter also expressed hope that matters could "still be
resolved," and noted that, for that reason, what is now <u>Exhibit P</u>
was not being filed with the Court at that time. Although the "few
days" were stretched out to a few weeks, this was not sufficient
for Defendants, who sought, and obtained, a further extension.

5.  Under the new managing attorney, Defendants have disavowed the
prior agreement to settle a major portion of the instant action.
According to their own representations, Defendants now consider
that "settlement efforts have failed to date," and have requested
significant time for their new counsel, the third managing attorney
since July 1994, to "investigate and prepare a defense," <u>see</u>,
"Defendants' Motion For Extension of Time to Answer Complaint,"
hereinafter cited as (INS:__), at page 1).

With respect to this finding of fact, Defendants claim, in relevant
part, as follows, (INS2:21-22) (emphasis added):

> Defendants advised the Magistrate Judge that they
> discontinued settlement negotiations <u>because plaintiffs
> repeatedly demonstrated that any disagreement as to the
> settlement terms would result in plaintiffs threatening
> the defendants with a motion for default judgment</u>, as
> evident by the very fact that defendants were at that
> moment defending against such a motion.

This is perhaps the most outrageous of all of Defendants'
objections. And unfortunately, because it relates to settlement
negotiations, Defendants are somewhat shielded from having the

---

[15]   Plaintiffs did not submit said letter as part of <u>Exhibit
P</u>, due to their concerns as to the propriety of such a submission,
but are grateful to Defendants for doing so. <u>See</u> Attachment 4 to
Defendants' Objections, at page 1.

truth brought fully to light. [16]

However, it is unnecessary to introduce evidentiary material relating to the settlement negotiations, because the patent absurdity of this claim is self-evident. If Plaintiffs had "repeatedly" threatened that "any disagreement as to the settlement terms" could result in a motion for default judgment, any sane and competent attorney would have long ago filed an Answer, to avoid such a possibility. Certainly, Defendants are not asserting that, under such circumstances, their prior attorneys, including Howard Rose, SAUSA, Nancy Masso, AUSA, and John Carte, SAUSA, would all have risked a default judgment by failing to file an Answer.

In this context, Defendants' reference to a "level playing field," coupled with the assertion that to conduct negotiations prior to answering all of the outstanding pleadings, "which defendants had done before the status conference, would inhibit the ability to zealously protect the defendants' rights and interests," (INS2:22), is particularly disturbing.

The implication is that prior counsel for Defendants had conducted negotiations under threat of a default judgment, and had therefore not protected Defendants' rights and interests "zealously." This is insulting, both to prior counsel for Defendants, and Plaintiffs.

Once again, to defend against this charge would require revelation of settlement negotiations. In the absence of an indication from the Court that it is being taken seriously, Plaintiffs will not dignify the accusation with a "zealous" defense.

Defendants also assert that, prior to determining which issues

---

[16] For example, <u>Plaintiffs' Exhibit T</u> was submitted in a redacted version, following consultation with Defendants, to remove portions relating to settlement negotiations.

18

882

should be settled, current counsel needed additional time "to conclude her investigation," (INS2:22). This overlooks the fact that current counsel for Defendants admitted at the April 26th hearing that she had been assigned to the case from its inception.

8. On or about May 2, 1995, Defendants agreed to the preliminary relief requested in the case of Ms. Ascencio and Mr. Merino, (see, "Plaintiffs' Exhibit "Q"), leaving pending only the request with respect to Mr. Garza-Pacheco.

Defendants object to this finding on the grounds that it is inaccurate, because, at the April 26th hearing, Defendants had "agreed to provide Mrs. Ascencio-Guzman and her husband the requested relief," (INS2:23). Whether such an agreement was as absolute as Defendants now claim could only be verified with the transcript of the hearing. Plaintiffs' recollection is that Defendants' counsel was much more ambiguous than she apparently recalls. But Plaintiffs do agree that the exact date on which Defendants agreed to provide relief to Ms. Ascencio and Mr. Merino, (whether it was April 26, 1995, or May 2, 1995), is not relevant, and have modified this portion of the proposed Order accordingly.

9. In the case of Mr. Garza-Pacheco, the Plaintiffs represented to the Court that the pertinent facts were as follows, which representations Defendants did not dispute: [17]

    a. Mr. Garza-Pacheco is a Mexican national, who resided in the United States as a permanent resident for many years, prior to being placed under deportation proceedings, as a result of a conviction for an offense involving a controlled substance;
    b. He posted an immigration bond, and returned to his home in McAllen, Texas, to await his deportation hearing;
    c. A deportation hearing was conducted, of which he had no notice, actual or constructive, and at which he was ordered

---

[17] At the hearing on April 26, 1995, both Plaintiffs and Defendants advised the Court that there were no material facts in dispute, which the Court takes to include the representations made by Plaintiffs with respect to Mr. Garza-Pacheco.

19

deported, with no opportunity to apply for relief from deportation;

d. He was subsequently advised by the company which had posted his bond, that his deportation hearing was scheduled for a given time and place;

e. He presented himself when and as instructed, but instead of being granted a hearing, he was immediately deported to Mexico;

f. He returned to his home in McAllen, Texas, shortly thereafter, by simply presenting himself at a port of entry, where he was personally known, and was waived in without being questioned as to his citizenship or status in the United States;

g. He was subsequently apprehended by INS, following which he was charged with, and pled guilty to, the offense of re-entering the United States by means of the wilful concealment of a material fact, to wit, the fact that he no longer had his lawful permanent resident card, (which card had been taken from him by Defendants), and he was again placed in deportation proceedings;

h. At said proceedings, Mr. Garza-Pacheco moved to reopen the prior proceedings, on the grounds that the deportation had been accomplished in violation of Due Process of law, and that a miscarriage of justice had occurred, and sought to apply for relief from deportation, which relief, if granted, would restore his status as a lawful permanent resident of the United States;

i. An Immigration Judge entered an interlocutory Order, granting Mr. Garza-Pacheco's motion to reopen, which Order INS initially represented that it would not appeal;

j. INS later changed its mind, and requested that the Judge rescind his Order, which request the Judge granted, and then ordered that Mr. Garza-Pacheco be deported from the United States, which Order is currently on appeal to the Board of Immigration Appeals in Falls Church, Virginia;

k. During these proceedings, Defendants granted Mr. Garza-Pacheco employment authorization, and extensions thereof, the last extension of which has now expired;

l. Mr. Garza-Pacheco has requested that Defendants extend his employment authorization, which request Defendants have thus far refused to grant; and

m. Defendants base their refusal to extend Mr. Garza-Pacheco's employment authorization on their contention that they no longer have the authority to grant employment authorization to persons such as Mr. Garza-Pacheco, due to a recent change in the regulations, although they have indicated that they would be willing to do so, if such authority existed. (footnote in original).

20

884

Defendants request that the above factual findings be rejected
because of their "inaccuracy," (INS2:23), but neglect to state
which, if any, of the thirteen specific points they consider
inaccurate.   In fact, with the possible exception of the last
phrase of subparagraph 9(m) (that Defendants had indicated that
they would be willing to grant employment authorization, "if such
authority existed"), each and every one of the above noted facts
can be confirmed by taking judicial notice of the administrative
proceedings, and material in Mr. Garza-Pacheco's A-file, c.f.,
Plaintiffs' Exhibit Z.

Moreover, this very lack of specificity is fatal to the objection.
Clearly, Defendants are not challenging each and every detail of
the thirteen points, and without such specificity, the Court
cannot, and need not, address the objection, c.f., Nettles v.
Wainwright, supra.  Defendants also have full and complete access
to the administrative record, in order to assuage any lingering
doubts current counsel may have regarding the specifics set forth.

If they indeed doubted any of the facts set forth, they were
therefore in a position to make a specific challenge, and even
introduce portions of the record to substantiate any claims.  The
use of INS' brief on appeal does not fulfill this function,
particularly since the "Statement of Facts" in the brief does not
contain any citations to the record of proceedings.

## IV.  CONCLUSION

It is therefore urged that the Magistrate's Report and
Recommendation be adopted virtually in its entirely, with only the
minor modifications set forth above, and that the accompanying
proposed Order, incorporating those modifications, be issued.

Respectfully Submitted,

21



Lisa S. Brodyaga
Attorney at Law
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226

Thelma O. Garcia
Attorney at Law
301 E. Madison
Harlingen, Texas 78550
(210) 425-3701

Counsel for Petitioners

CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing, <u>Plaintiffs' Exhibit Z</u>, and the enclosed proposed Order, were mailed to Regina Byrd, Attorney, OIL, U.S. Department of Justice, Civil Division, Box 878, Ben Franklin Station, Washington, D.C. 20044, David Guerra, AUSA, 1701 W. Highway 83, #305, McAllen, Texas 78501, and Ken Muir, General Attorney, INS, 2102 Teege, Harlingen, Texas 78550, this 30th day of June, 1995.

Lisa S. Brodyaga
Attorney at Law

22

886