'77

UNITED STATES DISTRICT C   RT
SOUTHERN DISTRICT OF TEXAS
ENTERED

JUL 1 2 1995

MICHAEL N. MILBY, Clerk
By Deputy Clerk *Maurine Haze*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 10, 1995

Michael N. Milby, Clerk of Court

| | |
|---|---|
| ASCENCIO, et al | ) |
| | ) |
| v. | ) C.A. No.  B-94-215 |
| | ) |
| TROMINSKI, et al. | ) |

DECISION, AND ORDER, MODIFYING AND ADOPTING
THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Upon de novo consideration of "Defendants' Objections to the
Magistrate Judge's Report and Recommendations,"   "Petitioners'
Reply to Defendants' Objections to the Magistrate Judge's Report
and Recommendation," and the entire record herein, the Court makes
the following Findings of Fact and Conclusions of Law, and enters
the following Order, adopting, with very minor modifications, the
Report and Recommendation of the Magistrate Judge.

I.   INTRODUCTION

The instant action was initially filed on July 15, 1995, and,
pursuant to 28 USC Section 636(b), was referred to the Magistrate
Judge for pretrial proceedings, reports, and recommendations.

The case, which is styled as a class action, has to date proceeded
slowly, due to the representations of the Parties on August 1,
1994, at the scheduled hearing on the motion for a preliminary
injunction, that a settlement had been reached of most of the
issues presented herein, and that the motion had been withdrawn.
The Parties also indicated that a joint proposed Order would be
forthcoming.  This has not occurred, and it no longer appears that
settlement of any significant portion of the action is at all likely.

The action challenges certain practices of the Attorney General and her delegates, regarding the treatment of lawful permanent residents of the United States, ("LPRs"), particularly during the period after an initial decision is made by Defendants to place an LPR in deportation or exclusion proceedings, and until a full and final determination is reached in the case. Unfortunately, this frequently spans a number of years.

Most of the specifics of Plaintiffs' challenges relate to the confiscation of their "green cards," (i.e., the laminated cards evidencing their status as lawful permanent residents, Forms I-151 and I-551), and the resulting disabilities suffered by them. Also involved are issues relating to the curtailment of their rights as LPRs during this period, specifically, the right to reside, and engage in lawful employment, in the United States.

The first portion of this action to reach this Court is the application for some form of preliminary relief of one Jesus Garza-Pacheco, who claims membership in the putative class herein. Although Defendants urge that Mr. Garza-Pacheco is not encompassed in the definition of the class, he has asserted, and made an unrebutted, prima facie, showing of all of the elements of class membership, as defined in the operative pleadings, and must be treated as a member, at least until the question of class certification is resolved.

## II.   DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE ARE WITHOUT MERIT

The Court will first examine Defendants' Objections to the Report and Recommendation of the Magistrate Judge.

## A.   MR. GARZA-PACHECO'S DISPUTE IS INDEED PROPERLY BEFORE THE COURT

The first objection raised by Defendants is that Mr. Garza-

2

842

Pacheco's dispute is not properly before the Court, because he was not named as a party, and is not, according to Defendants, a member of the putative class.  This objection is unfounded.

Defendants claim that Mr. Garza-Pacheco's case is not sufficiently similar to those of the named plaintiffs to be a member of the putative class herein.  To the contrary, his case contains crucial elements in common with that of (named) Petitioner Arturo Lopez-Lozano.  Defendants claim that the cases are dissimilar because Mr. Lopez-Lozano has never had an order of deportation entered in his case.  This is incorrect.

Mr. Lopez-Lozano was ordered deported by an Immigration Judge in Harlingen, Texas, and appealed said order to the Board of Immigration Appeals.  The appeal was granted, on or about August 25, 1994.  On December 22, 1994, however, when Mr. Lopez-Lozano applied for re-admission to the U.S. as a returning resident, after a brief, casual, and innocent departure, Defendants' agents at the Port of Entry refused his application, because they were under the impression that his case was still on appeal to the BIA. [1]

Because INS' current interpretation of 8 CFR 3.4, [2]  is that any

---

[1]  This occurred because INS' computer erroneously indicated, some four months after the fact, that the appeal was still pending before the Board of Immigration Appeals.

[2]  8 CFR Section 3.4 provides in relevant part:

Departure from the United States of a person who is the subject to [sic] deportation proceedings subsequent to the taking of an appeal but prior to a decision thereon shall constitute a withdrawal of the appeal, and the initial decision in the case shall be final to the same extent as though no appeal had been taken.

3

843

departure, even one of a <u>Fleuti</u> nature, [3] constitutes an automatic withdrawal of any pending appeal, the agents concluded that Mr. Lopez-Lozano's <u>Fleuti</u> excursion meant that he had been deported, [4] and that he was no longer a lawful permanent resident alien. As a result, they refused his request for readmission, confiscated his green card and other documents, and returned him to Mexico.

Mr. Garza-Pacheco's green card was confiscated when he reported to INS for what he believed would be his deportation hearing, and was, instead, removed to Mexico on the spot. This occurred because his hearing, of which he had received no notice, actual or constructive, had been conducted in his absence, and an order of deportation, of which he also had no notice, had been entered against him. His claim that such a procedure is ineffective to deprive him of his LPR status has been pending before the BIA for approximately two and a half years.

Both men urge that INS' legal basis for treating them as if they were no longer LPRs is flawed. Both men claim that they have been deprived of important rights, as a result on INS' erroneous legal positions. Although different legal interpretations are involved, for purposes of the instant action, the primary difference between the two is that in the case of Mr. Lopez-Lozano, INS ultimately relented, and recognized that he was, indeed, still an LPR, whereas in the case of Mr. Garza-Pacheco, they still dispute his claim.

As a result, Mr. Lopez-Lozano's documents have been returned to him, whereas Defendants are now unwilling to provide Mr. Garza-Pacheco even with employment authorization, while his case is under

---

[3]   <u>Rosenberg v. Fleuti</u>, 374 U.S. 449 (1964) (return from a brief, casual, and innocent departure does is not an "entry" within the meaning of 8 USC Sec. 1101(a)(13).

[4]   Which interpretation is one of the points challenged by the instant action, on the grounds that it is inconsistent with both <u>Fleuti</u>, <u>supra</u>, and <u>Molina v. Sewell</u>, 983 F.2d 676 (5th Cir. 1993).

4

administrative, and possibly, judicial review.

The claims of the named class members need not be identical to those of non-named members, but only "typical," Rule 23(a), F.R. Civ.Proc., c.f., <u>Shipes v. Trinity Industries</u>, 987 F.2d 311 (5th Cir. 1993). Indeed, Mr. Garza-Pacheco's case contains elements which are, hopefully, a-typical of the class. But this does not mean that he cannot be a class member. Mr. Garza-Pacheco resides in this INS (and judicial) District. He has consistently claimed LPR status, and has demonstrated that the proceedings which allegedly stripped him of that status were conducted without notice or an opportunity to be heard. He is currently under deportation proceedings, in which no final order has issued, and his green card has been confiscated and retained by INS. [5]

Defendants claim that because Mr. Garza-Pacheco's LPR status has been "terminated" he cannot reasonably be held out as a member of the class as it is currently defined. The problem with this argument is that it is premised on the very fact in dispute: to wit, whether the 1987 proceedings were adequate to deprive Mr. Garza-Pacheco of his status as an LPR. They also claim that 8 USC Sec. 1105a precludes all review of the 1987 proceedings.

There is a great difference between direct review of a given deportation order, under 8 USC Section 1105a, and termination of status of lawful permanent residence. Even assuming that the BIA dismisses Mr. Garza-Pacheco's current appeal, he would be able to obtain review of such a decision under 8 USC 1105a. <u>Umanzor v.</u>

---

[5] INS currently claims that Mr. Garza-Pacheco last entered the United States by using his green card. This is incorrect. The administrative record, as well as the record of criminal proceedings following his return, of which this Court can, and does, take judicial notice, demonstrate that his green card was confiscated by INS when he was removed from the U.S. in 1987. His most recent entry was accomplished precisely by concealment of the fact that his green card had been taken away from him.

845

Lambert, 782 F.2d 1299 (5th Cir. 1986), and its progeny, cited by Defendants for the proposition that no court can entertain a collateral attack on the 1987 deportation, are only apposite to the extent that they demonstrate that, given the manner in which he was removed from the country, Mr. Garza-Pacheco could not have obtained direct review of the 1987 order, and that his current collateral attack is the only one possible under the circumstances.

However, a direct appeal is not the only means by which review may be conducted.  The Supreme Court has held that a defendant charged with unlawful re-entry following deportation, (8 USC Section 1326), may collaterally attack the underlying deportation order, U.S. v. Mendoza-Lopez, 95 L.Ed.2d 772, 107 S.Ct. 2148 (1987).  See also, Chadha v. INS, 103 S.Ct. 2764, 2777 (1983) (review of a final order of deportation includes "all matters on which the validity of the final order is contingent, rather than only those determinations actually made at the hearing."); amd U.S. v. Palacios-Martinez, 845 F.2d 89, 91 (5th Cir. 1988). [6]

Obviously, such an attack would be impossible if, as Defendants assert, no court may review a deportation or exclusion order once the deportation has occurred.  Whether or not review is possible ultimately depends on the nature of the proceeding in which it is sought, and the jurisdictional basis upon which review is predicated.  See also, Chadha v. INS, supra; and Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999 (1971) (where legal rights have been invaded, and a federal statute

---

[6]     The BIA has also held that even a fully executed deportation order may be collaterally attacked, if it was accomplished in violation of law, and the individual had no prior opportunity to raise the issues which are the basis of the challenge, Matter of Yih-Hsiung Wang, 17 I&N Dec. 565 (BIA 1980).  See also, Matter of Roman, 19 I&N Dec. 855, 856-857 (BIA 1988) (even a fully executed deportation order may be collaterally attacked, if it resulted in a miscarriage of justice); and Matter of Malone, 11 I&N Dec. 730, 731 (BIA 1966) (If there was a "gross miscarriage of justice, the error should not be perpetuated").

6

846

provides a right to sue, the federal courts may use any available remedy to make good the wrong done).

In urging that Mr. Garza-Pacheco's request for an extension of his employment authorization document is not properly before the Court, Defendants also claim that Plaintiffs failed to comply with Rule 6, F.R.Civ.Proc., which provides, in relevant part:

> An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing...

Defendants assert that the request for relief for Mr. Garza-Pacheco was never made in writing, and not made either at a hearing or a trial, and urge that Plaintiffs' alleged failure to file a motion requesting such relief deprives this Court of jurisdiction to decide the matter.  This claim, also, must fail.

There is no claim that Defendants were unaware of the request. They argued vigorously against it at the April 26th hearing, and filed a lengthy written opposition to the proposed Order submitted by Plaintiffs.  Moreover, any such defect in the request as it was presented to the Magistrate is cured by Plaintiffs' written submission to this Court, from whom the ultimate order must issue.

B.   DEFENDANTS' HAVE ADMITTED THAT THE ATTORNEY GENERAL HAS THE AUTHORITY TO ISSUE THE REQUESTED EMPLOYMENT AUTHORIZATION, AND CANNOT NOW BE HEARD TO COMPLAIN THAT SUCH AUTHORITY DOES NOT EXIST.

Defendants urge this Court to reject the Report and Recommendation of the Magistrate Judge on the grounds that there is no legal authority for the issuance of employment authorization to Mr. Garza-Pacheco, because he is not a member of any of the classes of aliens described in 8 CFR Section 274a.12(a).

But in Defendants' Objections, they explicitly accept all of the

7

Conclusions of Law of the Magistrate Judge, with the exception of
Conclusion Number 10.   Among the conclusions accepted, (Nos. 1 -
4), are those which hold that, apart from those groups listed in 8
CFR Section 274a.12, the Attorney General possesses a reserve power
to grant employment authorization, under 8 USC Section 1324a(h)(3),
and that said power may be exercised "under such conditions, and
for such reasons, as the Attorney General may deem appropriate,"
(Conclusion of Law Number 4).

Consequently, Defendants cannot be heard to complain that no such
reserve power exists, because the cited regulation exhausts the
power of the Attorney General to issue employment authorization,
and that there would be no legal basis for issuing an employment
authorization document to a person not enumerated therein.   [7]

Defendants would have this Court to construe Plaintiffs' argument,
and the Conclusions of the Magistrate Judge as a challenge the
constitutionality of 8 CFR Section 274a.12(a).   However, once
Defendants have admitted, as they have, that the reserve power
exists, there is no need to mount such a challenge in order to find
that the refusal to grant employment authorization to a person such
as Mr. Garza-Pacheco constitutes a denial of Equal Protection.

C.   PLAINTIFFS HAVE MET THE TEST FOR THE ISSUANCE OF PRELIMINARY
RELIEF TO MR. GARZA-PACHECO.

Finally, Defendants argue that Plaintiffs have not met the four-
prong test required for issuance of preliminary relief to Mr.
Garza-Pacheco, c.f., <u>Sierra Club, Lone Star Chapter v. FDIC</u>, 992
F.2d 545 (5th Cir. 1993).   However, in light of the Findings of

---

[7]   Defendants claim that "it is through 8 C.F.R. Sec. 274a.12
that the Attorney General has exercised her authority and thereby
limited her agents authority to grant work authorization to only
those classes of aliens that she specifically described in 8 C.F.R.
Sec. 274a.12(a)." Defendants' Objections, page 15.

848

Fact, particularly Findings Numbers 9(a) through 9(m), [8] and the Conclusions of Law, drawn herein, it is clear that preliminary relief is warranted.

1. GIVEN THE ABSOLUTE LACK OF NOTICE TO MR. GARZA-PACHECO OF THE PROCEEDINGS AGAINST HIM, THERE IS A SUBSTANTIAL LIKELIHOOD THAT HIS COLLATERAL ATTACK ON THE 1987 DEPORTATION ORDER WILL BE SUCCESSFUL.

Mr. Garza-Pacheco had neither actual, nor constructive, notice of the hearing, which was conducted in absentia. Nor was he served with the deportation order, or otherwise learn of its existence, until he reported to INS for what he believed would be his hearing, and was removed from the U.S. on the spot. Such a proceeding does not begin to conform with the most rudimentary elements of Due Process, which include notice, and an opportunity to be heard, Mullane v. Central Hanover Bank & Trust, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

As discussed above, there is precedent from both the Board of Immigration Appeals, and from the Supreme Court of the United States, permitting collateral attacks on deportation orders, even after the deportation has been accomplished. If any such attack can succeed, there is more than a "substantial likelihood" that Mr. Garza-Pacheco's will be successful.

2. MR. GARZA-PACHECO WILL SUFFER IRREPARABLE INJURY IF NOT GRANTED EMPLOYMENT AUTHORIZATION WHILE HIS CASE IS PENDING.

Mr. Garza-Pacheco is a 49 year-old man, the husband of a lawful permanent resident, and father of four United States citizen sons. The injury to such a man, if he cannot be lawfully employed in the United States, is almost too obvious to require explanation, McNary v. Haitian Refugee Center, 112 L.Ed.2d 1005, 1017 (1991) (the

---

[8] As is discussed infra, and for the reasons stated therein, this Court adopts said findings, with only minor modifications.

849

impact of a denial of the opportunity to obtain gainful employment
is plainly sufficient to mandate constitutionally fair procedures).

The lack of employment authorization renders Mr. Garza-Pacheco
dependent on his wife and sons; it undermines his ability to pursue
his legal case, due to the scarcity of financial resources, and is
damaging to his self-esteem.  There is no way in which time lost
can be restored.  The clock cannot be turned back.  Truly, such an
injury is, by definition, "irreparable."

3.  THE HARM TO MR. GARZA-PACHECO FAR OUTWEIGHS ANY INCONVENIENCE
    TO DEFENDANTS OF ISSUING AN EMPLOYMENT AUTHORIZATION DOCUMENT.

Apart from the "floodgates" argument, which INS urges this Court to
consider, the only harm to INS of issuing the requested document is
the trivial, administrative inconvenience.  And if there are other
persons similarly situated, who were stripped of their LPR status
with no notice or opportunity to be heard, and who are emboldened
by the fact that Mr. Garza-Pacheco obtained such an authorization
while he is fighting to regain recognition of his LPR status, so be
it.  This would further the ends of justice.  Hopefully, too few
persons have been treated in this manner to cause a "flood."

4.  IT IS IN THE PUBLIC INTEREST THAT MR. GARZA-PACHECO BE GRANTED
    EMPLOYMENT AUTHORIZATION DURING THE PENDENCY OF HIS CASE.

Justice is in the public interest.  Enabling people with long-
standing ties to this country, who have been unlawfully stripped of
their LPR status to at least have the means of survival while they
pursue their cases through the legal system is in the public
interest.  Enabling a man to support of his United States Citizen
sons, and LPR wife, through lawful employment, is in the public
interest.  And furthering the <u>perception</u>, as well as the <u>reality</u>,
of justice, is also in the public interest.

There is little question but that the 1987 proceedings violated the

10

850

most fundamental aspects of Due Process. The public interest is
well served by making available some form of provisional relief
from the collateral consequences of that proceeding, while Mr.
Garza-Pacheco pursues his remedies through the administrative, and
possibly, judicial venues.

III. DEFENDANTS' OBJECTIONS TO THE FINDINGS OF FACT OF THE
MAGISTRATE JUDGE LACK SUFFICIENT SPECIFICITY TO BE CONSIDERED BY
 THIS COURT, AND ARE CONTRADICTED BY THE RECORD OF PROCEEDINGS.

Finally, Defendants object to the Findings of Fact numbers 1, 4, 5,
8, and 9. Each objection will be separately analyzed.

1. On July 15, 1994, Plaintiffs filed a motion for a preliminary
injunction herein, on which motion a hearing was scheduled for
August 1, 1994. At that hearing, the Parties represented to the
Court that an agreed Order would be submitted with respect to most,
if not all, of the issues presented herein, and that, as a result,
the request for preliminary injunction had been withdrawn.

The thrust of Defendants' objection to the first finding of fact is
that the July 15, 1994 motion for preliminary injunction was not
submitted on behalf of Mr. Garza-Pacheco. This claim is based on
the assertion that, in July of 1994, Plaintiffs were (allegedly)
not "sure and certain" that Mr. Garza-Pacheco is a class member.

However, since at least August of 1992, Mr. Garza-Pacheco has
consistently claimed facts which would establish his membership in
the putative class herein. He has asserted that he continues to be
an LPR, because the 1987 proceedings were ineffective to deprive
him of that status. He resides in the Harlingen INS District, and
his green card was confiscated, and retained, by INS.

4. These extended delays were granted without serious opposition
from Plaintiffs, who accepted the good faith representations of
Defendants' second managing attorney that he was doing everything
within his capabilities to shepherd the proposed settlement through

11

851

the requisite procedural, and bureaucratic hurdles.  However, he now has been removed from the case, [9] and a third attorney has now taken over the management role herein.  (footnote in original).

Defendants object to the characterization of the delays as being granted "without serious opposition from Plaintiffs," preferring to hold Plaintiffs out as equal partners in the delays.  This is inconsistent with Defendants' acceptance of Finding of Fact No. 6, to the effect that Mr. Garza-Pacheco had been prejudiced by the "(unproductive) delays ... granted to enable Defendants to make an institutional decision regarding settlement of the case."

Defendants further assert that the circumstances surrounding the resignation of Defendants' prior counsel is of "no moment" in the resolution of the case.  To the extent that it is not necessary for the Court to actually choose between Plaintiffs' version, (that he was forced out), and Defendants' position, (that his resignation was entirely voluntary), this is correct.

However, the fact that this was Plaintiffs' understanding of the circumstances, and that Plaintiffs had acquiesced in the prior delays because they were conscious of the difficulties Defendants' prior counsel was experiencing, is relevant, particularly in light of Defendants' Objections to Finding of Fact Number 5, infra.

As noted in the March 17, 1995 cover letter to Plaintiffs' Exhibit P, submitted to the Court by Defendants, when the difficulties that led to the removal of prior counsel for Defendants "first erupted," Plaintiffs agreed to grant a further extension of the various, imminent, deadlines for "a few days."  The letter also expressed

---

[9]     The Parties disagree as to whether the second attorney voluntarily resigned his position as Special Assistant United States Attorney for Immigration, thereby requiring that a new attorney be substituted, or whether he was subjected to intense pressure by those in a position to make it virtually impossible for him to perform his duties in this, and other, cases.

hope that matters could "still be resolved."  Although the "few days" were stretched out to a few weeks, this was not sufficient for Defendants, who sought, and obtained, a further extension, over Plaintiffs' opposition.  These facts belie Defendants' assertion that Plaintiffs were equally responsible for the delays.

5.  Under the new managing attorney, Defendants have disavowed the prior agreement to settle a major portion of the instant action. According to their own representations, Defendants now consider that "settlement efforts have failed to date," and have requested significant time for their new counsel, the third managing attorney since July 1994, to "investigate and prepare a defense," <u>see</u>, "Defendants' Motion For Extension of Time to Answer Complaint," hereinafter cited as (INS:__), at page 1).

With respect to this finding of fact, Defendants claim as follows, (Defendants' Objections, at pages 21-22) (emphasis added):

> Defendants advised the Magistrate Judge that they discontinued settlement negotiations <u>because plaintiffs repeatedly demonstrated that any disagreement as to the settlement terms would result in plaintiffs threatening the defendants with a motion for default judgment</u>, as evident by the very fact that defendants were at that moment defending against such a motion.

Plaintiffs have taken greater exception to this, than any other of Defendants' objections.  Because it relates to settlement negotiations, Plaintiffs have properly refrained from charging into battle over this point.  Upon examination, however, the charge collapses of its own weight.  If Plaintiffs had "repeatedly" threatened that "any disagreement as to the settlement terms" could result in a motion for default judgment, any competent attorney would have long ago filed an Answer, to avoid such a possibility. This Court refuses to entertain the suggestion that if such threats had been made, Defendants' prior attorneys, including Howard Rose, SAUSA, Nancy Masso, AUSA, and John Carte, SAUSA, would have risked a default judgment by failing to file an Answer.

Defendants also assert that, prior to determining which issues should be settled, current counsel needed additional time to conclude her investigation. Defendants' current counsel admitted at the April 26th hearing that she had been assigned to the case from its inception, in July 1994, and cannot now be heard to say that she needed additional time, beyond March of 1995, to complete her investigation of the case.

8. On or about May 2, 1995, Defendants agreed to the preliminary relief requested in the case of Ms. Ascencio and Mr. Merino, (see, "Plaintiffs' Exhibit "Q"), leaving pending only the request with respect to Mr. Garza-Pacheco.

Defendants object to this finding on the grounds that it is inaccurate, because Defendants allege that, at the April 26th hearing, they agreed to provide Ms. Ascencio-Guzman and her husband with the requested relief. Rather than order a transcript solely to resolve this issue, Plaintiffs have stipulated that the exact date, (whether it was April 26, 1995, or May 2, 1995), on which Defendants agreed to provide such relief is not relevant. This finding has therefore been modified accordingly.

9. In the case of Mr. Garza-Pacheco, the Plaintiffs represented to the Court that the pertinent facts were as follows, which representations Defendants did not dispute: [10]

a. Mr. Garza-Pacheco is a Mexican national, who resided in the United States as a permanent resident for many years, prior to being placed under deportation proceedings, as a result of a conviction for an offense involving a controlled substance;

b. He posted an immigration bond, and returned to his home in McAllen, Texas, to await his deportation hearing;

c. A deportation hearing was conducted, of which he had no notice, actual or constructive, and at which he was ordered

---

[10] At the hearing on April 26, 1995, both Plaintiffs and Defendants advised the Court that there were no material facts in dispute, which the Court takes to include the representations made by Plaintiffs with respect to Mr. Garza-Pacheco.

14

854

deported, with no opportunity to apply for relief from deportation;

d.  He was subsequently advised by the company which had posted his bond, that his deportation hearing was scheduled for a given time and place;

e.  He presented himself when and as instructed, but instead of being granted a hearing, he was immediately deported to Mexico;

f.  He returned to his home in McAllen, Texas, shortly thereafter, by simply presenting himself at a port of entry, where he was personally known, and was waived in without being questioned as to his citizenship or status in the United States;

g.  He was subsequently apprehended by INS, following which he was charged with, and pled guilty to, the offense of re-entering the United States by means of the wilful concealment of a material fact, to wit, the fact that he no longer had his lawful permanent resident card, (which card had been taken from him by Defendants), and he was again placed in deportation proceedings;

h.  At said proceedings, Mr. Garza-Pacheco moved to reopen the prior proceedings, on the grounds that the deportation had been accomplished in violation of Due Process of law, and that a miscarriage of justice had occurred, and sought to apply for relief from deportation, which relief, if granted, would restore his status as a lawful permanent resident of the United States;

i.  An Immigration Judge entered an interlocutory Order, granting Mr. Garza-Pacheco's motion to reopen, which Order INS initially represented that it would not appeal;

j.  INS later changed its mind, and requested that the Judge rescind his Order, which request the Judge granted, and then ordered that Mr. Garza-Pacheco be deported from the United States, which Order is currently on appeal to the Board of Immigration Appeals in Falls Church, Virginia;

k.  During these proceedings, Defendants granted Mr. Garza-Pacheco employment authorization, and extensions thereof, the last extension of which has now expired;

l.  Mr. Garza-Pacheco has requested that Defendants extend his employment authorization, which request Defendants have thus far refused to grant; and

m.  Defendants base their refusal to extend Mr. Garza-Pacheco's employment authorization on their contention that they no longer have the authority to grant employment authorization to persons such as Mr. Garza-Pacheco, due to a recent change in the regulations, although they have indicated that they would be willing to do so, if such authority existed.  (footnote in original).

15

Defendants request that the above factual findings be rejected on the grounds of inaccuracy, but do not state which, if any, of the thirteen specific points they consider to be inaccurate. This lack of specificity is fatal to the objection. Clearly, Defendants are not challenging each and every detail of all thirteen points, and without such specificity, this Court cannot, and need not, address the objection, c.f., <u>Nettles v. Wainwright</u>, <u>supra</u>.

Defendants have access to the administrative record, and were in a position not only to specify which points they consider inaccurate, but to provide relevant portions of the administrative record to substantiate their position. INS' brief to the BIA, submitted by Defendants, does not serve this function, particularly since the "Statement of Facts" contained therein does not include any citations to the record. Plaintiffs have also submitted a major portion of the record, which amply supports the facts as stated at the April 26th hearing, and found by the Magistrate Judge.

Consequently, the Court hereby adopts the Findings of Fact of the Magistrate Judge, with only the following, minor, modifications.

### III.   FINDINGS OF FACT

1.   On July 15, 1994, Plaintiffs filed the original complaint herein, and a motion for a preliminary injunction. A hearing was scheduled on the motion for preliminary injunction for August 1, 1994. At that hearing, the Parties represented to the Court that an agreed Order would be submitted with respect to most, if not all, of the issues presented herein, and that, as a result, the request for preliminary injunction had been withdrawn.

2.   In October and November of 1994, certain problems arose which called the proposed settlement into doubt, and on December 6, 1994, Plaintiffs filed their Motion for Class Certification and Request for Hearing Thereon. Very shortly thereafter, a new attorney was

856

designated to represent Defendants, who indicated that he believed that the proposed settlement could be put back on track. Plaintiffs concurred that new counsel was acting in good faith, and consequently, expressed hope that settlement was still possible.

3.  As a result, there has, as of yet, been neither a hearing, nor a ruling, on the motion for class certification.  Further delays were granted, to give Defendants ample opportunity to finalize the proposed partial settlement, and to clarify the remaining issues.

4.  These extended delays were granted without serious opposition from Plaintiffs, who accepted the good faith representations of Defendants' second managing attorney that he was doing everything within his capabilities to shepherd the proposed settlement through the requisite procedural, and bureaucratic hurdles.  However, he now has been removed from the case, [11] and a third attorney has now taken over the management role herein.

5.  Under the new managing attorney, Defendants have disavowed the prior agreement to settle a major portion of the instant action, although they now claim that settlement negotiations may be resumed at some undetermined future date.  They have previously represented, however, that "settlement efforts have failed to date." On this basis, they requested additional time for their new counsel, the third managing attorney since July 1994, to "investigate and prepare a defense," "Defendants' Motion For Extension of Time to Answer Complaint," at page 1).

6.  Given the change in the posture of the Defendants, at a status

---

[11]    The Parties disagree as to whether the second attorney voluntarily resigned his position as Special Assistant United States Attorney for Immigration, thereby requiring that a new attorney be substituted, or whether he was subjected to intense pressure by those in a position to make it virtually impossible for him to perform his duties in this, and other, cases.

17

851

conference conducted on April 26, 1995, at 2:00 p.m., Plaintiffs renewed their request for preliminary relief, with respect to two individual cases, whom they claim have been prejudiced by the (unproductive) delays, to wit, those of Juana Ascencio-Guzman, and her husband, Efrain Merino, and of Jesus Garza-Pacheco, whose claim to membership in the putative class has not been resolved, in large part due to the delays granted to enable Defendants to make an institutional decision regarding settlement of the case.

7.  In consideration of this request, and of the procedural history of the case, the Magistrate requested that Plaintiffs submit a proposed Order, for consideration by the Court.  The proposed Order was served on Defendants, who filed a lengthy Opposition thereto.

8.  Prior to the issuance of the Report and Recommendation of the Magistrate Judge, Defendants agreed to the preliminary relief requested in the case of Ms. Ascencio and Mr. Merino, leaving pending only the request with respect to Mr. Garza-Pacheco.

9.  The pertinent facts in the case of Mr. Garza-Pacheco are as follows:

a.  Mr. Garza-Pacheco is a Mexican national, who resided in the United States as a permanent resident for many years, prior to being placed under deportation proceedings, as a result of a conviction for an offense involving a controlled substance;

b.  He posted an immigration bond, and returned to his home in McAllen, Texas, to await his deportation hearing;

c.  A deportation hearing was conducted, of which he had no notice, actual or constructive, and at which he was ordered deported in absentia, with no opportunity to apply for relief from deportation.  He was also not served with the deportation order itself, or with the notice to report for deportation;

d.  The notice to report for deportation was served, however, on the company which had posted his bond.  Mr. Garza-Pacheco was

18

858

subsequently advised by representatives of that company, that his deportation hearing was scheduled for a given time and place;

e.   He presented himself when and as instructed, but instead of being granted a hearing, his green card was confiscated, and he was immediately removed to Mexico;

f.   He returned to his home in McAllen, Texas, shortly thereafter, by simply presenting himself at a port of entry, where he was personally known, and was waived in without being questioned as to his citizenship or status in the United States;

g.   He was subsequently apprehended by INS, following which he was charged with unlawful re-entry following deportation.   He defended against these charges on the grounds of the illegality of the 1987 deportation, and the charges were dropped.   He was subsequently charged with, and pled guilty to, the offense of re-entering the United States by means of the wilful concealment of a material fact, to wit, the fact that he no longer had his green card, evidencing his entitlement to reside in the United States, and he was again placed in deportation proceedings;

h.   At said proceedings, Mr. Garza-Pacheco moved to reopen the prior proceedings, on the grounds that the deportation had been accomplished in violation of Due Process of law, and that a miscarriage of justice had occurred, and sought to apply for relief from deportation, which relief, if granted, would restore his status as a lawful permanent resident of the United States;

i.   An Immigration Judge entered an interlocutory Order, granting Mr. Garza-Pacheco's motion to reopen, which Order INS initially represented that it would not appeal;

j.   INS later changed its mind, and requested that the Judge rescind his Order, which request the Judge granted, and then ordered that Mr. Garza-Pacheco be deported from the United States, which Order is currently on appeal to the Board of Immigration Appeals in Falls Church, Virginia;

k.   During these proceedings, Defendants granted Mr. Garza-Pacheco employment authorization, and extensions thereof, the last extension of which has now expired;

19

859

CVisPDF - www.fsvisi.com

l. Mr. Garza-Pacheco has requested that Defendants extend his employment authorization, either on the basis that he retains his status as an LPR, or under the reserve power vested in the Attorney General by 8 USC Section 1324a(h)(3), which request Defendants have thus far refused to grant; and

m. Defendants base their refusal to extend Mr. Garza-Pacheco's employment authorization on their contention that they no longer have the authority to grant employment authorization to persons such as Mr. Garza-Pacheco, due to a recent change in the regulations, 8 CFR Section 274a.12(a).

## IV. CONCLUSIONS OF LAW

1. Under Section 274a(a)(1)(A) of the Immigration and Nationality Act, (hereinafter, "the Act"), 8 U.S.C. Section 1324a(a)(1)(A), it is unlawful for a person or other entity to hire an alien, knowing that he or she is unauthorized to be employed in the United States, as defined by Section 274a(h)(3) of the Act, (8 U.S.C. Section 1324a(h)(3)), which Section provides as follows, (emphasis added):

> As used in this section, the term "unauthorized alien" means, with respect to the employment of an alien at a particular time, that the alien is not at that time either (a) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed <u>by this Act or by the Attorney General</u>.

2. Said provision provides for two separate categories of employment authorization; those authorized by the Immigration and Nationality Act, and those authorized by the Attorney General;

3. Certain classes of aliens are specified, some by the Act, and others by regulation, which classes are, or may be, authorized to be employed in the United States, <u>see</u>, 8 CFR Sec. 274a.12(a);

4. There is, however, no statutory or regulatory limitation on the

20

860

authority of the Attorney General, as provided by Section 274a(h)(3)(B) of the Act, to grant employment authorization to other aliens, under such conditions, and for such reasons, as the Attorney General may deem appropriate;

5.   Some categories of aliens, including those lawfully admitted for permanent residence, are authorized by the Act, as a condition of their status, to be employed in the United States, c.f., Section 274a(h)(3)(A) of the Act, 8 U.S.C. 1324a(h)(3)(A);

6.   Aliens who have applications pending with the Immigration and Naturalization Service for lawful permanent resident status, under Sections 244(a), 245, and 249 of the Act, 8 U.S.C. Sections 1254(a), 1255, and 1259, are entitled to be employed in the United States, c.f., 8 C.F.R. Section 274a.12(c)(10), (c)(9), and (c)(16);

7.   Aliens who have applications pending with the Immigration and Naturalization Service for lawful temporary resident status are also entitled to employment authorization, c.f., Section 210, and 245A of the Act, 8 U.S.C. Sections 1160 and 1255a;

8.   A large variety of other categories of aliens, including those who have been granted asylum, or voluntary departure, those who have been admitted or paroled into the United States as refugees, or paroled in for emergent or humanitarian reasons, and even aliens who are under final orders of deportation, and have been released under an order of supervision, or have been placed under deferred action, as a matter of administrative convenience, may also be granted employment authorization; c.f., 8 C.F.R. Section 274a.12 (a)(5), (c)(12), (a)(3), (a)(4), (c)(11), (c)(18) and (c)(14);

9.   Even some non-immigrant aliens may be granted employment authorization, including foreign students, dependents of exchange visitors, vocational foreign students, and even visitors for business who are the domestic or personal servants of employers who

21

are temporarily in the United States, or of foreign airlines, c.f., 8 C.F.R. Section 274a.12(c)(3)(i) and (ii), (c)(5), (c)(6), and (c)(17)(i) and (ii);

10.  It would constitute a violation of the Equal Protection Clause of the Fourteenth Amendment, as applied through the Due Process Clause of the Fifth Amendment of the United States Constitution, to authorize employment to the above categories of aliens, but to refuse to exercise the reserve power vested in the Attorney General by 8 U.S.C. Section 1324a(h)(3), to grant employment authorization to a person who has lived in this country as a permanent resident for many years, who was stripped of his status and deported by virtue of proceedings of which he had no notice or opportunity to be heard, and whose case is pending before the Board of Immigration Appeals, in a procedural posture which, if he is ultimately successful, would restore his status as a lawful permanent resident of the United States.

### III.  ORDER

In consideration of the foregoing, IT IS HEREBY ORDERED that, pursuant to the authority granted to the Attorney General by Section 274a(h)(3)(B) of the Immigration and Nationality Act, (8 U.S.C. Section 1324a(h)(3)(B)), Defendants grant Jesus Garza-Pacheco's application for employment authorization, and renew said authorization, in increments of not less than six months, until such time as his case, currently pending before the Board of Immigration Appeals, is fully and finally determined, including judicial review, if such review is taken.

IT IS FURTHER ORDERED that the Clerk shall send a copy of the instant Order to all counsel of record.

DONE AT BROWNSVILLE, TEXAS,

862

this __10th__ day of ____July_____, 1995

_____
FILEMON B. VELA
JUDGE PRESIDING

23

863