5'

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JULIO HERRERA LOA, JUANA )
ASCENCIO-GUZMAN, EFRAIN MERINO, )
ARTURO LOPEZ-LOZANO, ALEJANDRA )
GUTIERREZ, JUAN SANCHEZ-SALINAS,)
ADELITA CANTU De CABRERA, )
RAMIRO GRACIA-CANTU, In their )
own right and name and as )
representatives of others )
similarly situated, )
                        )
      Plaintiffs, )
                        )
v. )
                        )
E.M. TROMINSKI, District )
Director, Immigration and )
Naturalization Service, HON. )
JANET RENO, United States )
Attorney General, and )
IMMIGRATION AND NATURALIZATION )
SERVICE, )
                        )
      Defendants. )
_____)

C.A. No. B-94-215

United States District Court
Southern District of Texas
FILED

AUG 28 1995

Michael N. Milby
Clerk of Court

**DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE EXISTS NO SUBSTANTIAL CONTROVERSY,
AND OBJECTIONS TO PLAINTIFFS' AMENDED STATEMENT OF MATERIAL FACTS**

      COME NOW, Defendants E.M. TROMINSKI, District Director,
Immigration and Naturalization Service, HON. JANET RENO, United
States Attorney General, and IMMIGRATION AND NATURALIZATION
SERVICE, in their official capacity, by and through REGINA BYRD,
Attorney, Office of Immigration Litigation, and present herewith
their Statement of Material Facts As To Which Their Exists No
Substantial Controversy, and objections to Plaintiffs' Second
Amended Statement of Material Facts.

802

## SOURCES OF MATERIAL FACTS AS TO WHICH
## THERE EXISTS NO SUBSTANTIAL CONTROVERSY

At the status conference conducted on April 26, 1995, both Parties represented to the Court that the facts which are material to the instant action are not in dispute.  These representations are fully supported by the record herein, which consists of Plaintiffs' Second Amended Petition, exhibits filed by Plaintiffs, exhibits filed by Defendants, and Defendants' Answers to the Plaintiffs' Second Amended Petition.

In Plaintiffs' Amended Statement of Material Facts As To Which There Exists No Substantial Controversy, filed in May of 1995[1], Plaintiffs allege that all matters set forth in their First and Second Sets of Requests for Admission are taken as conclusively established, due to the untimely filing of Defendants answers to same.  Plaintiffs did not attempt to reach a stipulation with Defendants as to what the material facts in this case are. Plaintiffs rely extensively upon these requests for admissions in their statement of facts.  However, as discussed at the Pre-Trial Conference of April 26, 1995, there was an unwritten agreement between the parties to extend the deadlines for responding to these discovery requests, and Defendants did in fact provide answers to both Requests for Admissions to counsel for Plaintiffs shortly before the Pre-Trial conference held on April 26, 1995.  Because Plaintiffs have relied on their requests for admissions in their

---

[1]     The Certificate of Service does not bear a date, but states that the copy was mailed on the "_____th day of May, 1995".

803

CthPDF - www.fwsio.com

statement of facts, and because the Court has not ordered that those requests are deemed admitted, Defendants have attached copies of their answers to this Statement; the requests are not and should not be deemed admitted at this time.[2]

Wherever the Parties are in agreement on the facts, Defendants have adopted Plaintiffs' version of facts. However, Defendants have left out any details thought to be irrelevant or immaterial to the four issues involved in this case. After the statement of facts set forth below, Defendants have made objections to specified portions of Plaintiffs' Statement of Facts.

## I.   **MATERIAL FACTS NOT IN DISPUTE**

1. Plaintiffs Juana Ascencio-Guzman, Efrain Merino, Arturo Lopez-Lozano, Alejandra Gutierrez, Juan Sanchez-Salinas, Adelita Cantu de Cabrera, and Ramiro Gracia-Cantu are all lawful permanent residents of the United States. Plaintiffs Ascencio, Merino, Gutierrez, Sanchez, and Cabrera were all in exclusion proceedings, and plaintiffs Gracia and Lopez were in deportation proceedings, in the Harlingen EOIR district at the time of filing of the Original Complaint. Plaintiffs Cabrera and Lopez have since been granted relief by an Immigration Judge.

---

[2]     Defendants' answer to the Second Amended Petition is hereinafter cited as "ANS:___", where, for example, ANS:15 would refer to paragraph 15 of Defendants Answer. Likewise, Defendants' answer to Plaintiffs First and Second Requests for Admission will be cited as "ANSREQ1:___" and "ANSREQ2:___". Plaintiffs' Amended Statement of Material Facts as to Which There Exists No Substantial Controversy will be cited as "FACTS:___".

2.   Defendant Immigration and Naturalization Service is an executive agency of the United States, with offices in Harlingen, Texas, within the jurisdiction of this court.

3.   Defendant E.M. Trominski is the District Director of the Harlingen, Texas, District of the Immigration and Naturalization Service, with offices in Harlingen, Texas, within the jurisdiction of this court.

4.   Defendant Hon. Janet Reno is the duly appointed Attorney General of the United States.

5.   The policies followed by Defendants when confiscating Lawful Permanent Resident ("LPR" or "Green" cards), and when issuing temporary forms I-551 to aliens in deportation proceedings, or when issuing parole documents to aliens in exclusion proceedings, are set forth, in part, in a March 14, 1990 Memorandum from the INS Commissioner, and in INS Operations Instruction 264.2 as referenced by the Commissioner.  Exhibit 1, Memorandum of Gene McNary, INS Commissioner, dated March 14, 1990; Exhibit 2, Operations Instruction 264.2; Exhibit 9, Memorandum of James J. Hogan, INS Executive Associate Commissioner, dated November 3, 1992.

4

805

6.  Plaintiff Ramiro Gracia-Cantu[3] has been a lawful permanent resident ("LPR") since June 25, 1984.  Mr. Gracia was placed in deportation proceedings by Order to Show Cause ("OSC") issued June 22, 1994, alleging deportability for a conviction of an aggravated felony (racketeering), pursuant to Title 8 U.S.C. Section 1251 (a)(2)(A)(iii).  Deportability has been established in his case, and the case is set for an August 29, 1995 hearing on whether Mr. Gracia should be granted a waiver of inadmissibility under Section 212(c) of the Immigration and Nationality Act (the "Act"), 8 U.S.C. 1182(c).

7.  When Mr. Gracia surrendered his LPR card to Defendants on June 22, 1994, he was provided with temporary evidence of his LPR status on Form I-94 (Plaintiffs' Exhibit A).  The form stated that he was a permanent resident, and bore the notation "Deportation Proceedings Initiated" on the back, but did not bear an employment authorization stamp.  Subsequently, at the insistence of counsel for Mr. Gracia, he was issued another I-94 which did not bear the notation about deportation proceedings, and which did contain an employment authorization stamp (Plaintiffs' Exhibits V and W).

---

[3]     In Plaintiffs' Amended Statement of Material Facts, two paragraphs discuss Mr. Herrera-Loa, a former plaintiff.  (FACTS: 5-6).  As he is not now a named plaintiff, the facts in his case are not material and will not be addressed.

5

806

8.  Plaintiff Arturo Lopez-Lozano has been an LPR since June 16, 1981.  Mr. Lopez was placed in deportation proceedings by an OSC issued on May 3, 1988, alleging deportability for a controlled substance violation (possession of 50-200 pounds marijuana), pursuant to Section 241(a)(11) of the Act, 8 USC 1251(a)(11) (1988).  When he posted bond on May 17, 1988 at Port Isabel Service Processing Center ("PISPC"), his LPR card was returned to him, and he was allowed to keep it throughout the pendency of proceedings. (Government Exhibit __, voucher signed by Plaintiff Lopez).

9.  Plaintiff Lopez was ordered deported by the Immigration Judge ("IJ") on May 17, 1990.  His appeal was sustained by the Board of Immigration Appeals ("BIA"), which remanded his case to the IJ.  On remand, the IJ granted a Section 212(c) waiver of inadmissibility on February 24, 1995.

10.  When Plaintiff Lopez sought admission to the U.S. as a returning resident on December 23, 1994, he was initially denied admission, and his LPR card was confiscated, as the computer at the Port of Entry ("P.O.E.") did not accurately reflect the current status of his immigration case.  After the Defendants were contacted by counsel for Mr. Lopez, steps were taken to correct the problem, and he was eventually readmitted to the United States on December 27, 1994.[4]

_____

[4]  Mr. Lopez does not fit within the class sought to be certified by Plaintiffs.  He was allowed to keep his LPR card
(continued...)

6

11.  Plaintiffs Juana Ascencio-Guzman and Efrain Merino have been LPR's since February 4, 1991 and January 6, 1992, respectively. They were placed in exclusion proceedings when a Form I-122, Notice to Applicant for Admission Detained for Hearing Before Immigration Judge, was issued on July 3, 1994, charging excludability for alien smuggling, pursuant to Section (212)(a)(6)(E) of the Act, 8 USC 1182(a)(6)(E). Both plaintiffs were ordered deported and excluded by an IJ on October 19, 1994, after the IJ made a finding that they had made a meaningful departure from the United States and were excludable as charged. Their cases are currently on appeal to BIA.

12.  Plaintiffs Ascencio and Merino both had their LPR cards confiscated by Defendants on the day they were placed in exclusion proceedings, and were returned to Mexico. On October 31, 1994, they were paroled into the United States pending completion of exclusion proceedings. The parole document for both plaintiffs, Form I-94, state, among other things, that they have been paroled pending determination of their right to re-enter and that employment is authorized. Plaintiffs' Exhibit I. On May 2, 1995, both plaintiffs were granted special permission for humanitarian reasons to leave the United States and be automatically reparoled into the United States upon their return from Mexico.

---

[4](...continued)
during the pendency of proceedings, and his problem in December of 1994 was a computer error which has nothing to do with any of the four issues raised by Plaintiffs in this case.

CutePDF - www.texisx.com

13.  Plaintiff Alejandra Gutierrez has been an LPR since February 28, 1991.  She was placed in exclusion proceedings when a Form I-122 was issued on August 4, 1994, charging excludability for alien smuggling, pursuant to Section (212)(a)(6)(E) of the Act, 8 USC 1182(a)(6)(E). At that time, her LPR card was confiscated, and she was returned to Mexico.  Her exclusion case is set for a hearing on the issue of excludability for October 6, 1995.  On January 27, 1995, her request for parole was granted.  Plaintiffs have not objected to the form of the I-94 parole document issued to Ms. Gutierrez.

14.  Plaintiff Juan Sanchez-Salinas has been an LPR since March 23, 1964.  He was placed in exclusion proceedings when a Form I-122 was issued on November 4, 1994, charging excludability for illicit trafficking in a controlled substance, pursuant to Section (212)(a)(2)(C) of the Act, 8 USC 1182(a)(2)(C).  At a hearing on May 10, 1995, the IJ found that Mr. Sanchez had made a meaningful departure from the United States and was excludable as charged. The case is set for a hearing on the merits of his application for a Section 212(c) waiver of inadmissibility on August 2, 1995.

15.  Mr. Sanchez' LPR card was confiscated on November 4, 1991, and he was paroled into the United States for prosecution.  Upon release from penal custody, he was transferred to the Port Isabel Service Processing Center ("PISPC").  When he posted bond and was released from PISPC on August 17, 1994, he was given an I-94

8

805

(departure record) with the notation that it was "not valid for employment". Upon being notified of the error, the Service corrected it by issuing an I-94 without the offending notation. Plaintiffs' Exhibit K.

16. Plaintiff Adelita Cantu de Cabrera has been an LPR since June 1, 1983. She was placed in exclusion proceedings when a Form I-122 was issued on October 8, 1993, charging excludability for illicit trafficking in a controlled substance, pursuant to Section (212)(a)(2)(C) of the Act, 8 USC 1182(a)(2)(C). The IJ found Ms. Cantu was excludable and that she had made a meaningful departure from the United States, and the IJ granted her a Section 212(c) waiver of inadmissibility on Jan. 25, 1995.

17. Ms. Cantu's LPR card was lifted on October 8, 1993, and she was paroled into the United States on November 9, 1993, but no employment authorized notation was placed on the I-94 until Defendants were told that she was being added as a plaintiff in this lawsuit. Plaintiffs' Exhibit M.

18. When a lawful permanent resident applies for admission as a returning resident at a port of entry under the jurisdiction of the Harlingen, Texas, INS Office, and Respondents have reason to believe that said person has committed an act which would subject him or her to exclusion proceedings, if criminal prosecution is

9

also contemplated, it is the practice[5] of Respondents to parole the individual into the United States for prosecution, and place him or her under exclusion proceedings.  If the prosecution results in a conviction, it is the practice of Defendants to detain said individual at the Service Processing Center at Los Fresnos, Texas, pending exclusion proceedings.  Upon request of counsel, and in some cases upon payment of a bond, such persons are frequently paroled into the United States.[6]  If criminal prosecution is <u>not</u> contemplated, it is the practice of Defendants to initiate exclusion proceedings, and, in most instances, return said person to Mexico, without advising him or her of the possibility of being paroled into the United States.

19.  In the Harlingen, Texas INS District, when Defendants place lawful permanent residents under exclusion proceedings, it is Defendants' practice to confiscate their green cards, and not to return these cards unless and until exclusion proceedings are terminated in favor of the resident.

---

[5]   As used herein, the term "practice" means an act performed or procedure followed in more than half of the instances described.

[6]   In footnote 11 of Plaintiffs' statement of facts (Facts:25, note 11), Plaintiffs mischaracterize one of Defendants' answers to Plaintiffs' Second Amended Complaint. (ANS:28).  What Defendants stated in their answer was that each request for parole from PISPC is considered individually on its own merits.

10

20.   When Defendants provide replacement documentation to lawful permanent residents whose green cards were confiscated because they were placed in deportation proceedings, Defendants usually limit the validity of those documents to a period of not less than six (6) months, and allow the renewal of the documents at any Immigration and Naturalization Service office.   ANS:33; Exhibit 1, Memorandum of Gene McNary, INS Commissioner, dated March 14, 1990; Exhibit 2, Memorandum of James J. Hogan, INS Executive Associate Commissioner, dated November 3, 1992.

21.   When Defendants parole LPR's into the United States for prosecution or for pending exclusion proceedings, the parole grant generally is not limited to a specific time period, but rather, it is generally valid for the duration of the applicant's exclusion and/or prosecution proceedings.

22.   From the date of the issuance of the decision of the Fifth Circuit Court of Appeals in the case of <u>Molina v. Swell</u>, 983 F.2d 676 (5th Cir. 1993), to wit, February 22, 1993, until the date of the filing of the instant action, on July 15, 1994, Defendants made no changes in their practices, procedures, or policies regarding the confiscation of green cards of lawful permanent residents who are placed under deportation proceedings, as a result of, or based on, the Court's ruling in said case.

11

CMsPDF - www.texiss.com

23. Between February 22, 1993 and July 15, 1994, it was the practice of the Investigations branch of the Harlingen INS office to confiscate the green cards of lawful permanent resident aliens on whom they served Orders to Show Cause and Warrants of Arrest, regardless of whether the individual simultaneously posted bond or was released on recognizance. ANSREQ1:4.

24. Between February 22, 1993 and July 15, 1994, it was Defendants practice to provide I-94s, with a stamp indicating that the individual had been admitted as a lawful permanent resident, and that employment was authorized to lawful permanent residents who were processed for deportation proceedings by the Investigations branch of the Harlingen INS Office, and who, at the time of processing, either posted bond or were released on recognizance. Although, due to staff error, not all of the I-94's provided included the notation: "EMPLOYMENT AUTHORIZED," the notation was always added whenever this omission was brought to the attention of the Defendants. ANSREQ1:6.

25. In situations such as described in No. 22 above, it was Defendants' practice to put a notation on the I-94, indicating that the individual was under deportation proceedings, and that bond had been posted, if the individual had been released on bond. Additionally, although it was not the practice to do so, notations were sometimes erroneously placed on the I-94, indicating that it was not valid for re-entry to the United States. However, this

12

8/3

notation was always deleted, whenever Defendants were notified that this had occurred. ANSREQ1:9.

26. Between February 22, 1993 and July 15, 1994, when a proposed class member who had been detained at the Port Isabel Service Processing Center posted bond or was released on recognizance, if the individual or his representative did not specifically request such a document, it was <u>not</u> Defendants' practice to provide any evidence of his status as a lawful permanent resident other than the bond or release papers, and the Order to Show Cause. ANSREQ1:12.

27. As of July 15, 1994, it was <u>not</u> the practice of the Deportation branch of the Harlingen INS office or the McAllen Sector of the U.S. Border Patrol to confiscate the green cards of lawful permanent resident aliens on whom they served Orders to Show Cause and Warrants of Arrest, in situations where the individual simultaneously posted bond or was released on recognizance. ANSREQ1:14,15.

28. On June 22, 1994, and July 22, 1994, an agent of Defendants told Plaintiffs Gracia and Herrera-Loa that the primary reason that it was the practice of his office to confiscate the individual's green card, in cases such as theirs, was a concern that if and when they were deported from the United States, they might not surrender the card, but might continue to use it illegally. ANSREQ1:16,17.

13

29.   In four of the five cases of named plaintiffs who were in exclusion proceedings when this litigation commenced (Ascencio, Merino, Sanchez, and Cantu), the Immigration Judge has already found that their departures were not in fact "brief, casual, or innocent," but rather, that their departures were "meaningful." ANSREQ2:7.

## II.   **MATERIAL FACTS IN DISPUTE**

There are no material facts which are in dispute.

## III.   **IMMATERIAL FACTS IN DISPUTE**

1.   Certain information relating to Julio Herrera-Loa is in dispute.  It was not previously addressed by Defendants in their Answer, as Mr. Herrera was not mentioned in the Plaintiffs' Second Amended Petition. FACTS:5,6.  It is not material to the resolution of this case, however, as Mr. Herrera is no longer a named plaintiff.  See Id.

2.   With respect to Mr. Lopez' December 23-24, 1994 alleged incident (FACTS:17,18), after reasonable inquiry, the information known or readily available to defendants is insufficient to enable them to admit or deny.  FACTS:17-18; ANSREQ2:4-6.  Additionally, Note 6, page 7 of the Plaintiffs' Statement of Material Facts is objected to, as there is no record evidence to demonstrate what the

14

8/5

unnamed official alluded to thought on that occasion.    FACTS:16,
Note 6.


3.    Plaintiffs' statements (FACTS:27), that in exclusion cases
Defendants often also confiscate other documents, such as a (valid)
U.S. drivers' licenses, state issued identification cards, and
Mexican passports; and that Defendants have in some cases refused
to return such documents unless and until exclusion proceedings are
terminated in favor of the permanent resident, was denied by
Defendants in their Answer.    ANS:29(B).    Nevertheless, it is
immaterial as Plaintiffs have not raised as an issue in this case
whether Defendants have a right to seize certain documents for the
purpose of using them as evidence in exclusion proceedings.


4.    Plaintiffs' claim, that many LPR's are deterred from making
"brief, casual, and innocent" departures while in <u>deportation</u>
proceedings by the actions of Defendants (FACTS:29), is not
supported by any facts of record, and was disputed by Defendants.
ANS:31; ANSREQ2:22.    The claim, moreover, is immaterial to the
resolution of the issues in this case, which involve the legal
question of what <u>rights</u> LPR's have.

    Likewise, Petitioners' claim that many LPR's are deterred from
making "brief, casual, and innocent" departures in <u>exclusion</u>
proceedings by the actions of Defendants is nonsense.    In exclusion
proceedings, unlike deportation proceedings, LPR's who are paroled
into the United States pending resolution of their proceedings, are

8/6

not considered to have been admitted or to have effected an "entry." Absent having effected an "entry", an LPR who subsequently leaves the United States does not make "departure", of either kind, casual or meaningful. By regulation and caselaw, the parole status automatically terminates when the parole grantee leaves the United States.

5. Plaintiffs' contention, that the confiscation of LPR green cards has been a "source of controversy" within the Harlingen INS District Office for at least a dozen years (FACTS:33, 52), was previously denied by Defendants. ANS:35. In support of their claim, Plaintiffs have submitted only two letters they wrote and sent, several years apart, to the INS District Directors regarding one individual (Mr. Castillo). The claim is, moreover, immaterial to the resolution of any issues in this case.

6. Petitioners' contention, that requests for parole are not usually granted if an LPR's exclusion case is on appeal to the BIA (FACTS:32), was previously denied by Defendants. ANS:28. Defendants have previously stated that each request for parole is adjudicated on its own merits. ANS:28. The percentage of parole requests granted, however, is immaterial to the resolution of the issues presented in this case.

7. That an agent of Defendants allegedly told Mr. Herrera that he would automatically be deported if he traveled to Mexico without

16

obtaining advance parole since he was in deportation proceedings (FACTS:40), was previously denied by Defendants.   ANSREQ1:10.   It is immaterial to the resolution of the issues in this case, however, both because Mr. Herrera is no longer a named plaintiff, and also because Plaintiffs have not raised any issues alleging that Defendants are deporting persons without orders from immigration judges.

8.   Petitioners' contention, that Defendants' agents from the Investigations branch told LPRs who were in deportation proceedings that I-94s could not be used to leave and reenter the United States (FACTS:41), was previously denied by Defendants.   ANSREQ1:11.   It is nevertheless immaterial to the resolution of the issues in this case because Defendants' position has been, and remains to be, that a LPR remains in such status until a final order is issued, thereby entitling him or her to reenter the United States, subject to the admissibility requirements.

9.   Petitioners' claim, that LPRs who make "brief, casual and innocent" departures from the United States are more likely to be placed in exclusion proceedings upon their return if they present an I-94 as opposed to a green card (FACTS:47), was previously denied by Defendants.   ANSREQ1:24.   As Defendants previously stated, an LPR is only placed in exclusion proceedings if he or she does not satisfy the inspecting officer that his or her departure was "brief, casual, and innocent," and that he or she is beyond a

17

818

doubt entitled to enter.  Exhibit 3, Declaration of Larry P. Doyle.
The United States Immigration Judge then determines whether the
departure was "brief, casual and innocent."  Indeed, in four of the
five cases of named plaintiffs who were in exclusion proceedings
when this litigation commenced (Ascencio, Merino, Sanchez, and
Cantu), the Immigration Judge has already found that their
departures were not in fact "brief, casual, or innocent," but
rather, that their departures were "meaningful." Petitioners'
allegation, nevertheless, is immaterial to the resolution of the
issues in these motions because the issue is not whether the named
Plaintiffs effected an "entry" but, rather, what rights a lawful
permanent resident has in exclusion proceedings.

10.  Whether or not counsel for Plaintiffs "have the necessary
resources and commitment to adequately represent the interests of
the" proposed class (FACTS:48), is immaterial to the resolution of
the issues in these motions.  Moreover, as previously stated,
Defendants are without sufficient knowledge to admit or deny the
claim.  ANS:44.

11.  Petitioners' claims, that the proposed class as defined is
sufficiently numerous that joinder of all members is impracticable,
and that there are questions of law and fact which are common to
the class (FACTS:49), was previously denied by Defendants.  ANS:41.
Moreover, Petitioners' claim is immaterial to the resolution of the

8/5

issues which affect the named plaintiffs in this case, and are the subject of these motions for summary judgment.

12.  Plaintiffs' allegation that Defendants have acted on grounds generally applicable to the class (FACTS:50), was previously denied by Defendants.  ANS:43.  The allegation is nevertheless immaterial to the resolution of the issues presented in these motions.

13.  Plaintiffs' contentions, that the claims of the named Plaintiffs are typical of the claims of the proposed class, and that the named Plaintiffs will fairly and adequately protect the interests of the class (FACTS:51), is in dispute as Defendants previously stated that they were without sufficient knowledge to admit or deny the assertion.  ANS:39-40.  Nevertheless, the assertion is immaterial to the resolution of the issues in this case.

14.  Plaintiffs' claim, that different agents employed by Defendants follow different procedures for confiscating LPR cards (FACTS:53), is denied.  While Defendants' agents are subject to the same procedures, implementation of the procedures is not uniform, based upon the availability, or lack of, resources.  Exhibit 5, Declaration of Mario Garcia, Jr.

19

820

## IV.  **STATEMENT OF IMMATERIAL FACTS NOT IN DISPUTE**

1.   That Defendants confiscated Plaintiff Lopez' Texas driver's license is not disputed by Defendants but is, nevertheless, immaterial to the resolution of the issues in this case because this action was the result of computer error and was remedied by Defendant upon notification of the error.  FACTS:16.

2.  Plaintiffs' claims regarding why Plaintiffs Ascencio and Merino left the United States, and that their Texas Identification cards were confiscated, are not disputed by Defendants but are, nevertheless, immaterial as neither claim is at issue in this lawsuit.  FACTS:17.

3.   Plaintiffs' claim, that in exclusion cases, unless the individual obtains counsel, it is "very" difficult for an alien to ascertain, and follow, the procedures necessary to request that he or she be paroled into the U.S. during the exclusion proceedings, is immaterial to the issues involved in this case.   Whether Defendants are required to inform applicants in exclusion proceedings of the parole procedures when placed in exclusion proceedings has not been raised by Plaintiffs as an issue in this case.  FACTS:26.  Further, the meaning of "very" is not readily quantifiable, since upon asking an immigration inspector how to apply for a permit to enter or be paroled into the United States,

821

the applicant for admission will be informed of parole procedures.
Exhibit 3, Declaration of Larry P. Doyle.


## V.   "MATERIAL FACTS" WHICH ARE REALLY LEGAL
##      ARGUMENT AND ARE THEREFORE OBJECTIONABLE


1.   The first sentence in Paragraph 21 and footnotes 8 and 9 which
accompany that sentence consist purely of legal argument, going to
the heart of the issues in this case, and are therefore misplaced.
FACTS:19; NOTES 9,10).

21

822

2.   The assertions claimed to be "fact" in paragraph 28 and note 12 of Plaintiffs statement of facts are really assertions of legal argument from an unrelated case (Mr. Molina is not a named Plaintiff in this case; nor is it asserted that he fits within the proposed class).  FACTS:28; NOTE 12.

3.   Contrary to Plaintiffs' contention, whether an alien who is paroled into the United States has effected an "entry" or has been "admitted" to the United States for purposes of Title 8 of the United States Code, is a question of law, not fact.  FACTS:32. Similarly, whether a grant of parole terminates automatically upon an alien's departure from the United States is a question of law, not fact.  FACTS:32.

<div style="margin-left: 40%">

Respectfully submitted,

GAYNELLE GRIFFIN JONES
UNITED STATES ATTORNEY

MARK C. WALTERS
Assistant Director


REGINA BYRD
NELDA C. REYNA
Attorneys
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
Post Office Box 878
Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 616-4860

Attorneys for Defendants

</div>

823

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing DEFENDANTS'
STATEMENT OF MATERIAL FACTS AS TO WHICH THERE EXISTS NO SUBSTANTIAL
CONTROVERSY, AND OBJECTIONS TO PLAINTIFFS' AMENDED STATEMENT OF
MATERIAL FACTS was mailed via first class mail, postage prepaid to
attorneys for plaintiffs at:


Lisa S. Brodyaga, Esq.
402 E. Harrison, 2nd Floor
Harlingen, Texas  78550

Thelma O. Garcia, Esq.
301 E. Madison
Harlingen, Texas  78550

Served on this the ___23rd___ day of August, 1995.

                              _____
                              Regina Byrd
                              Attorney for Defendants

82-4