53

United States District Court
Southern District of Texas
FILED

SEP 1 9 1995

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

ASCENCIO-GUZMAN, et al.,      )
                             )
    Plaintiffs,              )
                             )
v.                           )      C.A. No. B-94-215
                             )
E.M. TROMINSKI, District     )
Director, Immigration and    )
Naturalization Service; HON. )
JANET RENO, United States    )
Attorney General; and        )
IMMIGRATION AND NATURALIZATION )
SERVICE,                     )
                             )
    Defendants.              )
_____)

## NOTICE OF SUBSTITUTION OF COUNSEL

COMES NOW, Defendants, by and through the United States Department of Justice, Civil Division, Office of Immigration Litigation, and file this Notice of Substitution of Counsel, requesting this Court to substitute David J. Kline as attorney of record for the defendants in the stead of Mark C. Walters.

Respectfully submitted,

GAYNELLE GRIFFIN JONES
UNITED STATES ATTORNEY

REGINA BYRD
Attorneys
Department of Justice
Office of Immigration Litigation
P. O. Box 878
Washington, D.C. 20044
Telephone: (202) 616-4860

591

United States District Court
Southern District of Texas
FILED

SEP 1 9 1995

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN, et al.,          )
                 Plaintiffs,      )
v.                                )          C.A. No. B-94-215
                                  )
E.M. TROMINSKI, District          )
Director, Immigration and         )
Naturalization Service; HON.      )
JANET RENO, United States         )
Attorney General; and             )
IMMIGRATION AND NATURALIZATION    )
SERVICE,                          )
                 Defendants.      )
_____)

## DEFENDANTS' OPPOSED MOTION FOR LEAVE TO SUBMIT EXHIBITS

Defendants respectfully move the Court for leave to submit
Exhibits (10) (Defendants' Answer to Plaintiffs' First Request
for Admissions) and (11) (Defendants' Answer to Plaintiffs'
Second Request for Admissions) as exhibits to their Statement of
Material Facts As To Which There Exists No Substantial
Controversy, and Objections To Plaintiffs' Amended Statement Of
Material Facts ("Statement of Material Facts").  Exhibits (10)
and (11) are submitted with this motion.

In their Statement of Material Facts, defendants repeatedly
cite their answers to plaintiffs' requests for admission and
assert that such answers are attached as exhibits.  Defendants
filed their Statement of Material Facts with the Court on
August 28, 1995.  Defendants, however, inadvertently failed to
attached their answers to plaintiffs' requests for admission to
their Statement of Material Facts.  Thus, defendants now move the

598

CVISPDF - www.fsvisa.com

Court to grant this motion for leave to submit Exhibits (10) and (11).

Defendants have conferred with plaintiffs' counsel who opposes this motion. Notwithstanding plaintiffs opposition, defendants assert that Exhibits (10) and (11) should be admitted by the Court in support of their Statement of Material Facts because the omission of the exhibits was inadvertent.

## CONCLUSION

Defendants' Opposed Motion for Leave to Submit Exhibits should be granted.

Respectfully submitted,

GAYNELLE GRIFFIN JONES
United States Attorney
Southern District of Texas

DAVID J. KLINE
Assistant Director

REGINA BYRD
NELDA C. REYNA
Attorneys
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
Post Office Box 878
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4860

Of Counsel:
KENNETH M. MUIR
General Attorney
District Counsel's Office
U.S. Department of Justice
Immigration and Naturalization Service
P.O. Box 1711
Harlingen, TX 78551

Attorneys for Defendants

September 18, 1995

2

599

**EXHIBIT (10)**

600

CutePDF - www.faxtix.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JULIO HERRERA LOA, JUANA          )
ASCENCIO-GUZMAN, et. al.,         )
                                  )
        Plaintiffs,               )
                                  )
v.                                )          C.A. No. B-94-215
                                  )
                                  )
E.M. TROMINSKI, District          )
Director, Immigration and         )
Naturalization Service, HON.      )
JANET RENO, United States         )
Attorney General, and             )
IMMIGRATION AND NATURALIZATION    )
SERVICE,                          )
                                  )
        Defendants.               )
_____    )

**DEFENDANTS' ANSWER TO PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS**

Come Defendants, and pursuant to Rule 36, F.R.Civ.P., present
their answer to Plaintiffs' first set of requests for admission:

I. REQUESTS FOR ADMISSION

1.   From the date of the issuance of the decision of the Fifth
Circuit Court of Appeals in the case of Molina v. Sewell, 983
F.2d 676 (5th Cir. 1993), to wit, February 22, 1993, until the
date of the filing of the instant action, on July 15, 1994,
Defendants made no changes in their practices, procedures, or
policies regarding the confiscation of green cards of lawful
permanent residents who are placed under deportation proceedings,
as a result of, or based on, the Court's ruling in said case.

     Admitted.

2.   Between February 22, 1993, and July 15, 1994, Defendants

6.01

made no changes in their practices, procedures, or policies
regarding the admission of class members as returning residents,
pursuant to 8 C.F.R. 211.1, as a result of, or based on, the
ruling in Molina v. Sewell, supra.

Objection. The request is vague, in that 8 C.F.R. 211.1
covers several matters, and it is unclear to Defendants which
part of 8 C.F.R. 211.1 is being referred to.

3.   Between February 22, 1993, and July 15, 1994, Defendants
made no changes to their practices, procedures, or policies
regarding the regarding the [sic] cancellation or forfeiture of
the bond of a class member who is has [sic] posted a bond in
connection with pending deportation proceedings, but who has been
placed in exclusion proceedings on return from a trip abroad, as
a result of, or based on, the ruling in Molina v. Sewell, supra.

Admitted.

4.   Between February 22, 1993 and July 15, 1994, it was the
practice of the Investigations branch of the Harlingen INS Office
to confiscate the green cards of lawful permanent resident aliens
on whom they served Orders to Show Cause and Warrants of Arrest,
regardless of whether the individual simultaneously posted bond
or was released on recognizance.

Admitted.

5.   Between February 22, 1993 and July 15, 1994, it was the
practice of the Investigations branch of the Harlingen INS Office
to provide class members who posted bond or were released on
recognizance with I-94's, with a stamp indicating that the

2

individual had been admitted as a lawful permanent resident.

Admitted.

6. In situations described in Request for Admission No. 5, above, not all of the I-94's provided to class members included the notation: "EMPLOYMENT AUTHORIZED."

Admitted, because sometimes Contact Representatives issued the I-94's without that notation in the absence of the investigator. However, when the omission was brought to the INS' attention, the notation would be added.

7. In situations such as described in No. 5, above, it was the practice of the Investigations branch of the Harlingen INS Office to put a notation on the back of the I-94, indicating that the individual was under deportation proceedings.

Admitted.

8. In situations such as described in No. 5, above, where bond was posted, it was the practice of the Investigations branch of the Harlingen INS Office to put a notation on the back of the I-94, indicating that the individual had been released on bond.

Admitted.

9. In situations such as described in No. 5, above, notions were sometimes placed on the I-94, indicating that it was not valid for re-entry to the United States.

Admitted, because sometimes Contact Representatives issued the I-94's with that notation in the absence of the investigator. However, if it was brought to the INS' attention that this had occurred, the notation would be corrected.

603

10.  On July 22, 1994, in the offices of the Investigations branch of the Harlingen INS Office, an agent of Defendants, (to wit, Jim Knight), told Plaintiff Herrera in the presence of his counsel, after Mr. Herrera had been served with a (superseding) Order to Show Cause charging deportability on under Section 241(a)(2)(C) of the Act, and a new I-94, that since he is under deportation proceedings, if he were to cross into Mexico without first obtaining an advance parole, he would automatically be deported.

Denied.

11.  Between February 22, 1993 and July 15, 1994, when class members who were issued an I-94 by the Investigations branch of the Harlingen INS Office inquired whether they could use that document to go to Mexico and back, it was Defendants' practice to inform them that the I-94 was not valid for that purpose.

Denied.

12.  Between February 22, 1993 and July 15, 1994, when a class member who had been detained at PISPC posted bond or was released on recognizance, it was the practice of Defendants to provide that person with no evidence of his status as a lawful permanent resident other than the bond or release papers, and the Order to Show Cause, unless the individual or his representative made a specific request for such a document.

Admitted.

13.  Some class members who were detained at PISPC have posted bond or been released on recognizance, between February 22, 1993

4

664

and July 15, 1994, and have been given no evidence of their status as lawful permanent residents other than the bond or release papers, even though the individual or his representative did make a specific request to an agent of Defendants that he or she be provided with such a document.

Denied.

14. As of July 15, 1994, it was <u>not</u> the practice of the Deportations branch of the Harlingen INS Office to confiscate the green cards of lawful permanent resident aliens on whom they served Orders to Show Cause and Warrants of Arrest, in situations where the individual simultaneously posted bond or was released on recognizance.

Admitted.

15. As of July 15, 1994, it was <u>not</u> the practice of the McAllen Sector of the U.S. Border Patrol to confiscate the green cards of lawful permanent resident aliens on whom they served Orders to Show Cause and Warrants of Arrest, in situations where the individual simultaneously posted bond or was released on recognizance.

Admitted.

16. On June 22, 1994, an agent of Defendants, (to wit, Joe Reyna), told Petitioner Gracia in the presence of his counsel that the primary reason that it was the practice of his office to confiscate the individual's green card in cases such as his was a concern that, if and when the person were deported from the United States, he might not surrender the card, but might

5

continue to use it illegally.

Admitted.

17.  On July 22, 1994, an agent of Defendants, (to wit, Pablo Zamora), told Petitioner Herrera in the presence of his counsel that the primary reason that it was the practice of his office to confiscate the green cards in cases such as his was a concern that, if and when the person was deported from the U.S., he might not surrender the card, but might continue to use it illegally.

Admitted.

18.  The primary reason that, between February 22, 1993 and July 15, 1994, it was the practice of the Investigations branch of the Harlingen INS Office to confiscate the green cards of lawful permanent residents when they are placed under deportation proceedings was the concern of the Defendants that, if and when the person were deported from the United States, he or she might not surrender the card, but might continue to use it illegally.

Denied.  It is one of the reasons.

19.  As of the date of responding to the instant Requests for Admission, the number of class members in the instant action exceeds twenty-five.

Admitted.

20.  As of the date of responding to the instant Requests for Admission, the number of class members in the instant action exceeds fifty.

Denied.

21.  As of the date of responding to the instant Requests for

606

Admission, the number of class members in the instant action exceeds one hundred.

Denied.

22. As of the date of responding to the instant Requests for Admission, the number of class members in the instant action exceeds two hundred.

Denied.

23. Attorneys Lisa Brodyaga and Thelma Garcia have the ability, commitment, and resources, to adequately represent the class as defined in Paragraph 27 of the Petition and Complaint herein.

Defendants can neither admit nor deny this request, because after reasonable inquiry, the information known or readily available to defendants is insufficient to enable them to admit or deny.

24. Under the practices and procedures in effect at the ports of entry under the direction and control of the Harlingen INS Office between February 22, 1993 and July 15, 1994, a lawful permanent resident who had made a "brief, casual, and innocent" departure from the United States and sought readmission as a returning resident, who presented an I-94 such as Plaintiffs' Exhibits "A" and "B" herein, was more likely to be detained, and placed in exclusion proceedings, than would have been the case of he had presented his green card.

Denied. Lawful permanent residents are only placed in exclusion proceedings if the resident has not satisfied the Inspecting Officer that his or her departure was "brief, casual

7

(607)

and innocent", and that he or she is beyond a doubt entitled to enter.  The United States Immigration Judge then determines whether the departure was "brief, casual and innocent".

25.  Under the practices and procedures in effect at the ports of entry under the direction and control of the Harlingen INS office between February 22, 1993 and July 15, 1994, a lawful permanent resident who had made a "brief, casual, and innocent" departure from the United States and sought readmission as a returning resident, who presented an I-94 stating that he was under deportation proceedings, was more likely to be detained, and placed in exclusion proceedings, that would have been the case if he had presented his green card.

Denied.  Lawful permanent residents are only placed in exclusion proceedings if the resident has not satisfied the Inspecting officer that his or her departure was "brief, casual and innocent", and that he or she is beyond a doubt entitled to enter.  The United States Immigration Judge then determines whether the departure was "brief, casual and innocent".

26.  Defendant INS has asserted to this Court that if a lawful permanent resident who posted bond in connection with deportation proceedings departs the United States, the bond is subject to either forfeiture or cancellation, in the discretion of the Defendants, and as of July 15, 1994, had not retracted said assertion.

Objection.  The request is vague.  Defendants have been before this court on numerous occasions in regard to numerous

civil actions, and it is unknown by Defendants what Plaintiffs are referring to.  If Plaintiffs are referring to the matter referred to in footnote 3 of Plaintiff's Second Amended Petition, then Plaintiffs have mischaracterized the argument of defendants' counsel in the responsive pleading referred to in the first paragraph of footnote 3; further, Defendants are not bound by any arguments of counsel made in the referenced case nine years ago.

27.  It is still the position of Defendants that if a lawful permanent resident who posted bond in connection with deportation proceedings departs the United States, the bond is subject to either forfeiture or cancellation, in the discretion of the Defendants.

Denied.  The bond is subject to forfeiture or cancellation as permitted by regulation.

28.  A lawful permanent resident seeking employment in the Rio Grande Valley, who presents to a potential employer an I-94 such as Plaintiffs' Exhibits "A" and "B" herein is more likely to be denied employment that would be the case if he presented his green card.

Denied.  An I-94 indicating employment authorization is clearly identified as an acceptable employment and identity document on the instructions to "Form I-9" which employers are required to fill out when they hire someone.

29.  A lawful permanent resident seeking employment in the Rio Grande Valley, who presents to a potential employer an I-94 bearing a stamp indicating that he or she has been admitted for

9

609

lawful permanent residence, is more likely to be refused employment than would be the case if he presented a green card.

Denied. An I-94 indicating employment authorization is clearly identified as an acceptable employment and identity document on the instructions to "Form I-9" which employers are required to fill out when they hire someone.

30. The Investigations branch issues Orders to Show Cause in many, but not all, cases of "criminal aliens," i.e., aliens who are allegedly deportable on the basis of criminal convictions, who are found within the jurisdiction of the Harlingen INS Office.

Admitted.

31. The practice of confiscating the green cards of lawful permanent residents who are placed under deportation proceedings is inconsistently implemented by the agents of the Investigations branch of the Harlingen INS Office, at the discretion of the official responsible for a given case, and, since February 22, 1993, there have been instances in which individuals with much more serious criminal and prior immigration records than that of Plaintiff Herrera, were not asked to surrender their green cards.

Denied. The agents of the Investigation branch evaluate each case on its own merits, depending upon the facts presented and in accordance with the memorandum set forth on March 14, 1990 by Gene McNary, Commissioner of the Immigration Service, and the memorandum of November 3, 1992 from James J. Hogan, Executive Associate Commissioner. The Investigations branch of the

6/0

Harlingen INS office is not aware of instances where individuals with offenses more serious than Plaintiff Herrera were not asked to surrender their green cards.

32.  Many class members are _prima_ _facie_ eligible for relief from deportation, under, _inter_ _alia_, Sections 212(c) and 245 of the Act.

Admitted that many of the named plaintiffs are eligible to apply for such relief.  As to unnamed class members, defendants can neither admit nor deny this request, because after reasonable inquiry, the information known or readily available to defendants is insufficient to enable them to admit or deny.

33.  Under _Molina_ _v._ _Sewell_, _supra_, the facts that a lawful permanent resident is under deportation proceedings, and/or has posted bond in conjunction with such proceedings, are not relevant factors to be taken into consideration in determining whether or not a departure from the United States is a "meaningful" one, as that term is used in _Rosenberg_ _v._ _Fleuti_, 374 U.S. 449 (1963).

It is admitted that under the law the fact that a permanent resident was in deportation proceedings when he or she departed the United States is not in and of itself relevant to the issue of whether the departure was "meaningful".  However, the INS does have a right to initiate "_Fleuti_" questioning on every permanent resident who arrives at a port of entry.  See 8 U.S.C. Section 1225(b); _Molina_ _v._ _Sewell_, 983 F.2d 676 (5th Cir. 1993) (The returning resident alien has the burden to show that his

6.11

departure was brief, casual and innocent).

Respectfully submitted,

GAYNELLE GRIFFIN JONES
UNITED STATES ATTORNEY

*Regina Byrd*
REGINA BYRD
MARK C. WALTERS
Attorneys
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
Post Office Box 878
Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 616-4860

Of Counsel:
KENNETH M. MUIR
General Attorney
Immigration and Naturalization
Service
U.S. Department of Justice
P.O. Box 1711
Harlingen, TX  78551

Attorneys for Defendants

12

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendants' Answer to Plaintiffs' First Request for Admissions was hand-delivered to counsel for Plaintiffs:

Lisa S. Brodyaga, Esq.
402 E. Harrison, 2nd Floor
Harlingen, Texas  78550

Thelma O. Garcia, Esq.
301 E. Madison
Harlingen, Texas  78550

Served on this the  26th  day of April, 1995.


_Regina Byrd_
Regina Byrd
Attorney for Defendants

6(3

**EXHIBIT (11)**

614

CutePDF - www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JULIO HERRERA LOA, JUANA )
ASCENCIO-GUZMAN, et. al., )
                          )
     Plaintiffs,          )
                          )
v.                        )          C.A. No. B-94-215
                          )
                          )
E.M. TROMINSKI, District  )
Director, Immigration and )
Naturalization Service, HON. )
JANET RENO, United States )
Attorney General, and     )
IMMIGRATION AND NATURALIZATION )
SERVICE,                  )
                          )
     Defendants.          )
_____)

**DEFENDANTS' ANSWER TO PLAINTIFFS' SECOND REQUEST FOR ADMISSIONS**

Come Defendants, and pursuant to Rule 36, F.R.Civ.P., present
their answer to Plaintiffs' second set of requests for admission:

## I. REQUESTS FOR ADMISSION

1.   The Court has jurisdiction over the instant action under 28
USC 1346(a)(2) (action against and [sic] agency and/or officers
of the United States); 8 USC 1329 (action arising under the
Immigration and Nationality Act); 28 USC 2201 et seq (declaratory
judgment action); and 5 USC 702 et seq, (action by one adversely
affected by final agency action), coupled with 28 USC 1331
(federal question).

     Denied.

2.   Arturo Lopez-Lozano, (A 37 522 584) (hereinafter, "Mr.

6/5

Lopez"), has been a lawful permanent resident of the United States since June 16, 1981. On May 2, 1988, Mr. Lopez was placed under probation for a period of ten years by the 105th District Court of Kleberg County, Texas, for the offense of aggravated possession of marijuana. The following day, Defendants initiated deportation proceedings against Mr. Lopez, who applied for relief from deportation under Section 212(c) of the Act, (8 USC Sec. 1182(c)). Following a hearing, an Immigration Judge in Harlingen, Texas, denied said application in the exercise of discretion. Mr. Lopez appealed this decision to the Board of Immigration Appeals, ("BIA"), who, on August 25, 1994, granted his appeal, and remanded the case for further proceedings and entry of a new decision.

Admitted. Defendants further aver that Mr. Lopez was granted a waiver of inadmissibility under 8 U.S.C. 1182(c), Section 212(c) of the Immigration and Nationality Act, by a United States Immigration Judge on February 24, 1995, and that Defendants did not appeal this decision.

3. Mr. Lopez' wife, three children, and step child, with whom he resides in Brownsville, Texas, are all United States Citizens.

Defendants can neither admit nor deny this request, because after reasonable inquiry, the information known or readily available to defendants is insufficient to enable them to admit or deny.

4. In the early morning hours of Friday, December 23, 1994, Mr. Lopez applied for admission as a returning resident at the Port

2

6/6



of Entry in Brownsville, Texas, tendering his green card to the official.  The official asked some questions, as to where he was coming from, and what he was bringing.  Mr. Lopez stated that he was only bringing some sodas, and attempted to explain the reason for the trip.  The official also asked why the car he was driving had Florida plates, and he explained that he and his wife were migrants, and that it had been purchased in Florida.  The Officer requested that he get out of the car.  Mr. Lopez complied.  The vehicle, which was <u>NOT</u> carrying contraband, was searched, both manually, and with a dog.  In the process, the lining of the ceiling was ripped.  Eventually, Mr. Lopez was told to go inside, where he was questioned further.  During the questioning, the officers indicated that he was not supposed to have gone to Mexico, to which Mr. Lopez replied that it was his understanding that he was now permitted to do so.  Nonetheless, his resident alien card, and his Texas driver's license, were confiscated by Defendants, and  Mr. Lopez was forced to return to Mexico.

The first and last sentences are admitted, with the understanding that the term "forced to return to Mexico" indicates only that Mr. Lopez was not permitted to enter the United States.  Defendants can neither admit nor deny the remainder of this request, because after reasonable inquiry, the information known or readily available to defendants is insufficient to enable them to admit or deny.

5.   Later in the day of December 23, 1994, counsel for Defendants was contacted by the undersigned attorney Brodyaga.

3

617

Defendants' counsel ascertained that the remand from the BIA had not been entered in INS' computer, and caused the error to be corrected.  Defendants' counsel advised Mr. Lopez' counsel that Mr. Lopez should return to the Port of Entry, and that he would be admitted.  Mr. Lopez' wife accompanied him to the Brownsville Port of Entry, arriving at approximately 3:30 p.m..  They again requested that Mr. Lopez be admitted as a returning resident, and informed the official on duty that the computer now would reflect the fact that he was entitled to readmission.  The official refused to re-admit Mr. Lopez, or even check the computer, and instructed his wife that she would have to go to the INS Office in Harlingen, Texas, on Tuesday, December 27, to get some "paper" stating that  INS had agreed to let him return to the United States.

The first three sentences are admitted.  Defendants can neither admit nor deny the remainder of this request, because after reasonable inquiry, the information known or readily available to defendants is insufficient to enable them to admit or deny.

6.  On Tuesday, December 27, 1994, Mrs. Lopez went with counsel to the INS Office in Harlingen, where they spoke with Mrs. Oralia Gonzalez, a supervisory official in the Examinations branch of the Harlingen INS Office.  Mrs. Gonzalez investigated the matter, and informed Mrs. Lopez and her counsel that he would be readmitted.  On the afternoon of December 27, 1994, Mr. and Mrs. Lopez again went to the Brownsville, Texas, Port of Entry, and

4

618



sought admission. They were questioned, _inter alia_, as to whether or not they were related to Mrs. Oralia Gonzalez, (which they are not), and Mr. Lopez was finally re-admitted to the United States.

Admitted, except that defendants can neither admit nor deny whether Plaintiff Lopez was questioned about whether she was related to Oralia Gonzalez, because after reasonable inquiry, the information known or readily available to defendants is insufficient to enable them to admit or deny.

7.   Juana Ascencio-Guzman, (A 90 775 805) (hereinafter, "Ms. Ascencio"), and Efrain Merino, (A 91 495 976) (hereinafter, "Mr. Merino"), are husband and wife, are both lawful permanent residents of the United States, and reside in Houston, Texas. They have two United States citizen children.  On or about July 3, 1994, they applied for admission as returning residents at the Brownsville, Texas, Port of Entry, following a brief departure to Mexico.  Admission was denied, and they were placed in exclusion proceedings, for allegedly attempting to illegally bring Mr. Merino's nephew, who was ill, into the United States for medical treatment.  Their resident alien cards, Mr. Merino's Texas driver's license, and Ms. Ascencio's Texas I.D. card, were all confiscated by Defendants, who forced them to return to Mexico. On October 7, 1994, they finally secured counsel, who, on October 31, 1994, was able to obtain permission for them to be paroled into the United States pending completion of their exclusion proceedings.

5

619



Admitted, except that defendants can neither admit nor deny that plaintiffs Juana Ascencio-Guzman and Efrain Merino are husband and wife, that they reside in Houston, Texas, that they have two United States citizen children, that Plaintiff Merino's Texas driver's license was confiscated, or that they were "forced" to return to Mexico and required to remain there at great personal hardship to themselves and their children, because after reasonable inquiry, the information known or readily available to defendants is insufficient to enable them to admit or deny. Defendants further aver that both Plaintiffs Juana Ascencio-Guzman and Efrain Merino were ordered excluded and deported by a United States Immigration Judge on October 19, 1994, and that their appeals are pending before the Board of Immigration Appeals.

8.   Copies of the parole documents given to Ms. Ascencio and Mr. Merino have been submitted to the Court as <u>Plaintiffs</u>' Exhibit I, and carry a notation that they have been paroled pending determination of their right to re-enter, thereby placing a cloud over their status as lawful permanent residents, and interfering with the exercise of the attendant rights, including the right to make innocent, brief, and casual border crossings.

Denied, except to admit that the parole documents given to plaintiffs Ascencio and Merino carry a notation that they have been paroled pending determination of their right to re-enter.

9.   Alejandra Gutierrez, (A 41 858 559) (hereinafter, "Ms. Gutierrez"), is a lawful permanent resident of the United States.

6

620

On or about August 4, 1994, she applied for admission as a returning resident at the Brownsville, Texas, Port of Entry. Admission was denied, and she was placed in exclusion proceedings, for allegedly attempting to illegally cross her sister into the United States.  Defendants confiscated her green card, and forced her to return to Mexico.  On January 6, 1995, Ms. Gutierrez finally obtained counsel, who immediately filed a request that she be paroled into the United States, without bond, which request was ultimately granted on or about January 27, 1995.

Admitted, except to deny the last sentence contained in this paragraph and that portion of the second sentence which asserts that plaintiff Gutierrez was placed in exclusion proceedings for attempting to illegally cross her sister into the United States. Defendants further aver that Plaintiff Gutierrez was placed in exclusion proceedings for illegally attempting to cross not only her sister, but also her three nieces into the United States. Defendants can neither admit nor deny the allegations that counsel was obtained on January 6, 1995, and that she "immediately" filed a request for parole, because after reasonable inquiry, the information known or readily available to defendants is insufficient to enable them to admit or deny. Defendants further aver that Plaintiff Gutierrez' request for parole into the United States was granted on January 27, 1995. 10.  Juan Sanchez-Salinas, (A 13 102 286), (hereinafter, "Mr. Sanchez"), obtained lawful permanent residency in 1964.

7

621



Following a conviction for an offense involving a controlled substance, Mr. Sanchez presented himself, with his bondsman, at the Brownsville Port of Entry, at which time he was paroled into the U.S.. He was also placed in exclusion proceedings, and, ultimately, held in detention at the Port Isabel Service Processing Center. Though counsel, Mr. Sanchez sought permission to be paroled from detention, upon payment of a bond. Said request was granted, and on or about August 17, 1994, Mr. Sanchez posted bond, and was released. He was given a card by Defendants, with his photo and fingerprint, and the notation that it was "Not Valid For Employment." A new card, without this notation, was provided at the insistence of his counsel, with the assistance of the SAUSA handling the instant action at that point in time.

Admitted.

11. The new card still places a cloud over Mr. Sanchez' residency, as it specifies that he is in exclusion proceedings. Mr. Sanchez needs medical treatment which he desires to obtain in Mexico. His counsel has raised the issue with Defendants, who have refused to provide assurances that if he departs the United States to obtain medical treatment, and in the absence of new circumstances justifying such a refusal, he would be re-paroled into the U.S. upon his return.

The first sentence of this paragraph is denied. Defendants can neither admit nor deny sentences two or three, because after reasonable inquiry, the information known or readily available to

8

622

defendants is insufficient to enable them to admit or deny. Also, objection to the third sentence as vague. The third sentence fails to meaningfully identify the person or persons with whom counsel has "raised the issue."

12. Adelita Cantu de Cabrera, (A 38 102 369), (hereinafter, "Ms. Cantu"), was paroled into the United States on November 9, 1993, pending exclusion proceedings. On or about January 17, 1995, her counsel was informed by agents of Defendants that Ms. Cantu would not be granted employment authorization, unless and until she filed a fee-paid application, which error Defendants cured only after being told that she was to be added as a Plaintiff herein.

Admitted. Defendants further aver that plaintiff Cabrera was granted a waiver of inadmissibility under 8 U.S.C. 1182(c), Section 212(c) of the Immigration and Nationality Act, by a United States Immigration Judge on January 25, 1995, and that Defendants did not appeal this decision. Therefore, the issues raised as to plaintiff Cabrera are moot.

13. A lawful permanent resident who makes a "brief, casual, and innocent" departure from the U. S. and seeks readmission as a returning resident, who presents a document such as Exhibits "A" "B" and "D" herein is more likely to be detained, and placed in exclusion proceedings, than would be the case if he presented his or her green card.

Denied. Lawful permanent residents are only placed in exclusion proceedings if the resident has not satisfied the Inspecting Officer that his or her departure was "brief, casual

9

623

and innocent", and that he or she is beyond a doubt entitled to enter.  The United States Immigration Judge then determines whether the departure was "brief, casual and innocent".

14.  From at least February 22, 1992 to the present, when a lawful permanent resident has applied for admission as a returning resident at a port of entry under the jurisdiction of the Harlingen, Texas, INS Office, and Defendants have had reason to believe that circumstances exist which would make him or her amenable to exclusion proceedings, if criminal prosecution is also contemplated, it has been the practice of Defendants to parole the individual into the United States for prosecution, and place him or her under exclusion proceedings.  If the prosecution results in a conviction, it has been the practice of defendants to detain said individual at the Service Processing Center at Los Fresnos, Texas, pending exclusion proceedings.  Upon request of counsel, it has also been Defendants' practice to permit said person, upon payment of a bond, to be paroled from detention into the United States pending conclusion of the exclusion proceedings.

Admitted as to the first and second sentences, but denied as to the third sentence.  Defendants further aver that each request for parole is considered individually on its own merits, and that payment of a bond is not always required.

15.  From at least February 22, 1993 to the present, when a lawful permanent resident applies for admission as a returning resident at a port of entry under the jurisdiction of the

10

624

Harlingen, Texas, INS Office, and Defendants have reason to believe that circumstances exist which would make him or her amenable to exclusion proceedings, but where criminal prosecution is not contemplated, it has been the practice of Defendants to initiate exclusion proceedings, and return said person to Mexico. During that period, it has likewise been the practice of Defendants not to advise him or her of the possibility of being paroled into the United States during the pendency of such proceedings; if the individual inquires about being allowed to return to the United States during the proceedings, it has been the practice of Defendants to inform the person that such a request must be made at Harlingen, Texas.

Admitted, except that it is denied that it has been the practice of Defendants to, upon inquiry, inform the person that such a request must be made at Harlingen. Rather upon inquiry, the alien is told that the request must be addressed to the District Director in Harlingen, but may be filed at the port of entry.

16. From February 22, 1993 to the present, fewer than 30% of lawful permanent resident [sic] placed under exclusion proceedings in the Harlingen District who are not paroled into the United States for prosecution, and who do not obtain counsel to represent them in the exclusion proceedings, have been paroled into the United States during the pendency of the exclusion proceedings.

Defendants can neither admit nor deny this request, because

625

after reasonable inquiry, the information known or readily
available to defendants is insufficient to enable them to admit
or deny.

17.  From February 22, 1993 to the present, at least 70% of
lawful permanent resident [sic] placed under exclusion
proceedings in the Harlingen District who were paroled into the
United States for prosecution and who did obtain counsel to
represent them in the exclusion proceedings were subsequently re-
paroled during the pendency of the exclusion proceedings.

Defendants can neither admit nor deny this request, because
after reasonable inquiry, the information known or readily
available to defendants is insufficient to enable them to admit
or deny.

18.  From February 22, 1993 to the present, fewer than 30% of
lawful permanent residents placed under exclusion proceedings in
the Harlingen District, who were not paroled in the United States
for criminal prosecution, were paroled in during the pendency of
their exclusion proceedings.

Defendants can neither admit nor deny this request, because
after reasonable inquiry, the information known or readily
available to defendants is insufficient to enable them to admit
or deny.

19.  From February 22, 1993 to the present, at least 70% of
lawful permanent resident placed under exclusion proceedings in
the Harlingen District who were paroled into the United States
for prosecution, were subsequently re-paroled during the pendency

12

CibPDF - www.fenrir.com

of the exclusion proceedings.

Defendants can neither admit nor deny this request, because after reasonable inquiry, the information known or readily available to defendants is insufficient to enable them to admit or deny.

20.   In the Harlingen, Texas, INS District, when Defendants place lawful permanent resident under exclusion proceedings, it was, at the time of filing the instant action, Defendants' practice to confiscate their green cards, and, if such documents were found in their possession, to confiscate their social security cars, and drivers' licenses or identification cards, regardless of whether such documents had any evidentiary value in either the criminal prosecution or exclusion proceedings, and to refuse to return said documents unless and until all expulsion proceedings were terminated in the alien's favor, regardless of whether the person was returned to Mexico, or paroled into the United States.

Denied, except that it is admitted that in the Harlingen, Texas INS District, when defendants placed lawful permanent residents under exclusion proceedings, it was, at the time of filing of the instant action, the defendants' practice to confiscate their resident alien cards.

21.   INS has previously asserted to this Court that when a lawful permanent resident who has posted bond in connection with deportation proceedings, departs from the United States, the bond is subject to either forfeiture or cancellation, in the discretion of the Defendants, and has never retracted said

13

627



assertion.

Objection.   The request is vague.   Defendants have been before this court on numerous occasions in regard to numerous civil actions, and it is unknown by Defendants what Plaintiffs are referring to.   If Plaintiffs are referring to the matter referred to in footnote 3 of Plaintiff's Second Amended Petition, then Plaintiffs have mischaracterized the argument of defendants' counsel in the responsive pleading referred to in the first paragraph of footnote 3; further, Defendants are not bound by any arguments of counsel made in the referenced case nine years ago.

22.   Many lawful permanent residents whose green cards have been confiscated by Defendants because they have been placed in exclusion or deportation proceedings have legitimate business and personal needs for making "casual, brief, and innocent" trips across the border into Mexico, and back, but have been deterred from making such trips by the action of Defendants in confiscating their green cards, and providing them either with no substitute documentation, or with substitute documentation which greatly increases the possibility that they would not be allowed to re-enter, or be re-paroled, into the United States on their return.

Defendants can neither admit nor deny this request, because after reasonable inquiry, the information known or readily available to defendants is insufficient to enable them to admit or deny.

23.   A lawful permanent resident seeking employment who presents

14

628

to a potential employer a substitute document such Exhibits "A" "B" "D" "I" "K" and "M" on file herein is more likely to be denied employment than would be the case if he presented his green card, or substitute documentation which places no cloud over his or her status as a lawful permanent resident.

Denied.  An I-94 indicating employment authorization is clearly identified as an acceptable employment and identity document on the instructions to "Form I-9" which employers are required to fill out when they hire someone.

24.  The confiscation of the green cards of lawful permanent residents placed in deportation or exclusion proceedings in the Harlingen INS District, without provision of substitute documents which place no cloud over their status as lawful permanent residents, has been a source of controversy for more than 12 years.

Denied.

25.  At the time of filing the instant action, it was the practice of one or more branches of the Harlingen INS Office to confiscate the green cards of lawful permanent residents who were placed under deportation or exclusion proceedings, and to refuse to return the cards or provide substitute documentation which does not place a cloud over their status as lawful permanent residents, even to those who were released from, or were not held in, detention.

Denied.

26.  When Defendants confiscate the green card of a lawful

15

CutePDF - www.fenito.com

permanent resident placed in exclusion or deportation proceedings, and do issue replacement documentation, it was at the time of the commencement of the instant action their practice to place notations on the replacement documentation which interfere with the resident's ability to exercise the rights and privileges of lawful permanent resident status, such as, inter alia, the notation that the person is under deportation or exclusion proceedings, is on bond, is not authorized to be employed, and/or that the card is not valid for re-entry to the United States.

It is admitted that defendants sometimes place notations, although not necessarily the notations referred to by plaintiffs, on the replacement documentation which is issued.  The remainder of the allegations are denied.

27.  When Defendants parole into the United States a permanent resident placed in exclusion proceedings, it is still their practice to place notations on any substitute documentation provided which may interfere with his or her ability to exercise the rights and privileges of lawful permanent resident status, such as, inter alia, the notation that the person has been paroled pending determination of his or her right to enter, is under exclusion proceedings, and/or that the document is not valid for re-entry to the United States.

It is admitted that defendants sometimes place notations, although not necessarily the notations referred to by plaintiffs, on the replacement documentation which is issued.  The remainder

16

CUIsPDF - www.texisa.com



of the allegations are denied.

28. Mr. Garcia's and Lopez' claims are typical of the claims of those putative class members under deportation proceedings.

Defendants can neither admit nor deny this request, because after reasonable inquiry, the information known or readily available to defendants is insufficient to enable them to admit or deny.

29. The claims of Ms. Ascencio, Mr. Merino, Ms. Gutierrez, and Mr. Sanchez are typical of the claims of those putative class members under exclusion proceedings.

Defendants can neither admit nor deny this request, because after reasonable inquiry, the information known or readily available to defendants is insufficient to enable them to admit or deny.

30. The putative class is sufficiently numerous, and its composition sufficiently fluid, as new members frequently come into existence, and the cases of prior members resolved, that joinder of all members is impracticable.  There are also questions of law and fact which are common to the class.

Denied.

31. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for the Defendants.

Denied.

17

631

32.   Defendants have acted on grounds generally applicable to the class, with respect to which, if Plaintiffs prevail, final injunctive relief or corresponding declaratory relief with respect to the whole class would be appropriate.

Denied.

Respectfully submitted,

GAYNELLE GRIFFIN JONES
UNITED STATES ATTORNEY

*Regina Byrd*

REGINA BYRD
MARK C. WALTERS
Attorneys
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
Post Office Box 878
Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 616-4860

Of Counsel:
KENNETH M. MUIR
General Attorney
Immigration and Naturalization
Service
U.S. Department of Justice
P.O. Box 1711
Harlingen, TX  78551

Attorneys for Defendants

18

632

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendants' Answer to Plaintiffs' Second Request for Admissions was hand delivered to counsel for Plaintiffs:

Lisa S. Brodyaga, Esq.
402 E. Harrison, 2nd Floor
Harlingen, Texas  78550

Thelma O. Garcia, Esq.
301 E. Madison
Harlingen, Texas  78550

Served on this the 26th day of April, 1995.

Regina Byrd
Attorney for Defendants

633

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion For Leave to Submit Exhibits was mailed to counsel for Plaintiffs, certified mail, return receipt requested, at:

> Lisa S. Brodyaga, Esq.
> 402 E. Harrison, 2nd Floor
> Harlingen, Texas  78550
>
> Thelma O. Garcia, Esq.
> 301 E. Madison
> Harlingen, Texas  78550

Served on this the __18th__ day of September, 1995.

Regina Byrd
Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN, et al.,        )
                  Plaintiffs,   )
v.                              )        C.A. No. B-94-215
                                )
E.M. TROMINSKI, District        )
Director, Immigration and       )
Naturalization Service; HON.    )
JANET RENO, United States       )
Attorney General; and           )
IMMIGRATION AND NATURALIZATION  )
SERVICE,                        )
                  Defendants.   )
_____ )

## ORDER GRANTING DEFENDANTS' (OPPOSED) MOTION FOR LEAVE TO SUBMIT EXHIBITS

Upon consideration of the opposed Motion filed by Defendants to submit Exhibits (10) and (11) as exhibits to their Statement of Material Facts As To Which There Exists No Substantial Controversy, and Objections To Plaintiffs' Amended Statement Of Material Facts, it is:

ORDERED, that Defendants' motion for leave to submit Exhibits (10) and (11) is hereby GRANTED; and it is

FURTHER ORDERED, that Exhibits (10) and (11), as submitted with Defendants' Opposed Motion for Leave to Submit Exhibits, shall be considered as exhibits to Defendants' Statement of Material Facts As To Which There Exist No Substantial Controversy, and Objections to Plaintiffs' Amended Statement of Material Facts.

Done at Brownsville, Texas,

this _____ day of _____, 1995.

_____
JUDGE PRESIDING

635