6²

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 11 1995

Michael N. Milby
Clerk of Court

ASCENCIO-GUZMAN, et al., )
                    Plaintiffs, )
v.                                )          C.A. No. B-94-215
                                  )
E.M. TROMINSKI, District          )
Director, Immigration and         )
Naturalization Service; HON.      )
JANET RENO, United States         )
Attorney General; and             )
IMMIGRATION AND NATURALIZATION    )
SERVICE,                          )
                    Defendants.   )
_____ )

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' (OPPOSED) MOTION TO STRIKE
DEFENDANTS' ANSWERS TO PLAINTIFFS' FIRST AND SECOND REQUESTS
FOR ADMISSION; AND IN THE ALTERNATIVE, IF THE COURT DEEMS THE
MATTERS ADMITTED, DEFENDANTS' MOTION TO PERMIT WITHDRAWAL OF ALL
ADMITTED MATTERS.**

### INTRODUCTION

Plaintiffs make substantially the same arguments now as they
did in their Motion for Default Judgment filed on April 5, 1995,
and in their April 20, 1995, Reply to Defendants' Opposition to
Plaintiffs' Motion for Default Judgment.  Specifically, on
July 23, 1994, plaintiffs served their First Requests for
Admission on the defendants.  Defendants, then represented by
Special Assistant United States Attorneys ("SAUSA") Howard E.
Rose and William C. Peterson, did not respond in writing to
plaintiffs' requests for admission.  This was because settlement
negotiations had been initiated and an oral agreement had been
made between the parties such that defendants were not required
to "respond to plaintiffs' pleadings including the Requests for
Admission while these settlement negotiations proceeded."

(Attachment (1) at 2; Attachment (2) at 2) (Declaration of Howard E. Rose and John D. Carte, respectively);[1] see also Exhibit (12) at 2 -- Second Declaration of John D. Carte.)

Plaintiffs served defendants with their Second Requests for Admission on February 16, 1995. Defendants then were represented by SAUSA John D. Carte. The parties agreed that plaintiffs would extend the due dates for submission of defendants' answers to plaintiffs' First and Second Requests for Admission, inter alia, as long as the parties continued to progress in settlement negotiations. (Attachment (2) at 2; Exhibit (12) at 3.) The parties also agreed that if progress was not made in the settlement negotiations that, upon reasonable notice, the extension granted by plaintiffs could be terminated. (Attachment (2) at 2.) Mr. Carte and plaintiffs' counsel further agreed "that all past deadlines, including submission of answers to plaintiffs' complaint and responding to plaintiffs' requests for admission, were effectively extended . . . ." (Exhibit (12) at 2.)

On March 8, 1995, Mr. Carte resigned his SAUSA position. (Id.) Thereafter, on March 17, 1995, plaintiffs' counsel served the United States Attorneys Office, Brownsville, Texas, with a document entitled Advisal of Due Dates for Answering the Instant

---

[1] The declarations of Mr. Rose and Mr. Carte were submitted to this Court on April 21, 1995, as attachments to Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion for Extension of Time to Answer Complaint and Plaintiffs' Response to Defendants' Opposition to Plaintiffs' (Opposed) Motion for Default Judgment.

Complaint, and Responding To Plaintiffs' First Set of Requests
for Production of Documents and Plaintiffs' Second Set of
Requests for Admission and Similar Unresolved Matters ("Advisal
of Due Dates" at Attachment (3)). In that document, plaintiffs
stated, <u>inter alia</u>, that defendants had until March 24, 1995 --
approximately seven days from the date of service -- to submit a
response to plaintiffs' Complaint, First Set of Requests for
Production of Documents, and the Second Set of Requests for
Admission. (Attachment (3) at 1.) On or about March 17, 1995,
upon receipt of plaintiffs' Advisal of Due Dates, the undersigned
counsel, who had been assigned as lead counsel in this case,
contacted plaintiffs' counsel to advise that seven days would not
be sufficient time to submit answers to all documents filed by
plaintiffs. (Attachment (4) -- Defendants' Response in
Opposition to Plaintiffs' (Opposed) Motion for Default Judgment
at 1-2; Attachment (5) -- Plaintiffs' (Opposed) Motion for
Default Judgment at 4.) Defendants' counsel requested that
plaintiffs allow defendants at least thirty days to respond
before moving the Court to enter a default judgment or to deem
admitted any allegations not responded to by defendants.
(Attachment (4) at 2; Attachment (5) at 4.) Plaintiffs agreed to
wait thirty days on the condition that defendants grant the
relief plaintiffs requested for two aliens. (<u>Id</u>.) As a result
of ongoing discussions between the parties, the March 24, 1995,
due date unilaterally imposed by plaintiffs' counsel was pushed

3

505

back.  (See Attachment (5) at 4.)  When defendants were unable to provide both aliens the relief plaintiffs requested, on March 28, 1995, plaintiffs' counsel filed their Opposed Motion for Default Judgment against defendants.  (Attachment (4) at 3; Attachment (5) at 4.)

Plaintiffs urged the Court to grant their motion for default judgment on the grounds that defendants failed to timely submit answers to plaintiffs' Complaint, Requests for Production of Documents, and First and Second Sets of Requests of Admission. Defendants filed their Motion for Extension of Time to Answer the Complaint on March 29, 1995, and on April 6, 1995, filed their Response and Opposition to Plaintiffs' (Opposed) Motion for Default Judgment.[2]  Defendants also served plaintiffs with answers to the complaint and to both sets of requests for admission within thirty days after plaintiffs filed their motion for default judgment.[3]  Defendants were not in default in light of the agreement between the parties which required plaintiffs to give defendants a reasonable period of time to respond to plaintiffs' pleadings and other documents before seeking a resolution from the Court.  Consequently, defendants argued in their Response and Opposition to Plaintiffs' Motion for Default

---

[2]  On April 10, 1995, plaintiffs filed a motion opposing defendants' request for an extension of time to answer the complaint and filed a reply to defendants' opposition to plaintiffs' motion for default judgment.

[3]  On April 21, 1995, defendants served on plaintiffs their answer to Plaintiffs' Second Amended Petition for Writ of Habeas Corpus.  Defendants served plaintiffs with their answers to both sets of plaintiffs' Requests for Admission on April 26, 1995.

4

Judgment that plaintiffs were estopped from arguing that defendants were in default.  Defendants also moved the Court to accept their answers as timely.

The defendants did not file a motion to withdraw any answers that plaintiffs alleged had been admitted by the defendants' not responding when plaintiffs claim the defendants should have responded.  A motion to withdraw was not necessary because the answers were neither untimely nor admitted in light of plaintiffs' agreement to allow defendants sufficient time to file answers to the complaint and requests for admission.

The parties appeared before the Magistrate Judge on April 26, 1995, for a status conference.  The Magistrate Judge also heard argument on plaintiffs' motion for default judgment and request for an order temporarily restraining the defendants from withholding work authorization in the case of Jesus Garza-Pacheco.  The Magistrate Judge did not rule on plaintiffs' motions but directed plaintiffs to file an order granting temporary injunctive relief to Garza-Pacheco and a motion requesting summary judgment on their complaint.  Neither of these motions has been decided by this Court.

## ARGUMENT

### A.

**PLAINTIFFS ARE ESTOPPED FROM ARGUING THAT DEFENDANTS' ANSWERS TO PLAINTIFFS' FIRST AND SECOND REQUESTS FOR ADMISSION SHOULD BE STRICKEN FROM THE RECORD**

Plaintiffs assert in their motion to strike, as they asserted in their motion for default judgment against defendants,

507

that defendants failed to submit a timely response to plaintiffs'
first and second requests for admission, and, therefore, any and
all references to such documents in defendants' Opposition to
Plaintiffs' Motion for Partial Summary Judgment and Counter-
Motion for Summary Judgment should be stricken. (Plaintiffs'
Motion to Strike at 1.) Defendants assert now, as they did in
their Response in Opposition to Plaintiffs' Motion for Default
Judgment filed on April 6, 1995, and as asserted during their
argument before the Magistrate Judge on April 26, 1995, that
plaintiffs are estopped from arguing that the defendants were in
default and that defendants' answers to plaintiffs' requests for
admission were untimely. (See Attachment (4) at 4; see also
Attachment (6) -- Defendants' Reply to Plaintiffs' Opposition to
Defendant's Response in Opposition to Plaintiffs' Motion for
Default Judgment.)

The "doctrine of estoppel is grounded on a notion of fair
dealing and good conscience. It is designed to aid the law in
the administration of justice where without its aid injustice
might result." DeShong v. Seaboard Coast Line Railroad Corp.,
737 F.2d 1520, 1552 (11th Cir. 1984). Estoppel attaches when:
(1) a declarant makes a representation to the party claiming
estoppel as to some material fact, which representation is
contrary to the condition of affairs later asserted by the
declarant; (2) the party claiming estoppel relies upon the
declarant's representation; and (3) the party asserting estoppel
changes his position to his detriment as a result of relying on

6

the declarant's representation.   <u>Travelers Indemnity v. Swanson</u>,
662 F.2d 1098, 1101 (5th Cir. 1981).  Consequently, plaintiffs'
Motion to Strike should fail where, as here, it was plaintiffs'
own representations during settlement negotiations which led
defendants to believe that defendants need not submit answers to
plaintiffs' requests for admission within the time prescribed by
pertinent rules of procedure.  (Attachments (1) at 2; (2) at 2;
Exhibit (12) at 2-3.)

It was with plaintiffs' agreement that defendants decided
not to respond to plaintiffs' Complaint, and to plaintiffs' First
and Second Requests for Admission while the parties were engaged
in settlement negotiations.  (<u>Id</u>.)  Notwithstanding plaintiffs'
counsel's declaration (Attachment "AA" of Plaintiffs' Motion to
Extend and to Strike) stating to the contrary, an agreement
existed between the parties wherein plaintiffs agreed that
defendants need not submit answers and that plaintiffs would
first provide defendants sufficient time to file their answers in
the event that settlement negotiations failed.  (<u>Id</u>.)  This
agreement was reached because both parties were engaged in good
faith settlement negotiations.  Plaintiffs should not now be
allowed to benefit from their own conduct which violated their
own agreement.  (<u>Id</u>.)

Plaintiffs have admitted that agreements were made with
defendants to permit additional time to answer Plaintiffs' Second
Requests for Admission.  (Plaintiffs' Motion to Extend and to
Strike at 2; Plaintiffs' (Opposed) Motion For Default Judgement

505

at 2.)  However, plaintiffs allege that the submission date for defendants' answers to the second set of requests for admission expired on March 24, 1995, and that the submission date for defendants' answers to the first set of requests for admission had expired earlier.  (Plaintiffs' Motion to Extend and Motion to Strike at 2, 3.)

Plaintiffs' allegations are disputed in the declarations of SAUSA's Howard E. Rose and John D. Carte with whom these agreements were made.  (Attachments (1), (2); Exhibit (12).) Plaintiffs agreed that defendants could delay the filing of their responses to plaintiffs' requests for admission.  However, after John D. Carte, the last SAUSA assigned to this case resigned his position, plaintiffs served defendants with a their Advisal of Due Dates dated March 17, 1995, which advised that in seven days -- March 24, 1995 -- defendants must respond to plaintiffs' First Amended Complaint and First and Second Requests for Admission.

Plaintiffs' unilateral termination of the agreement and decision to provide defendants only seven days to submit their answers clearly is contrary to plaintiffs' agreement to provided defendants sufficient time to submit their answers.  (Attachments (1), (2); Exhibit (12).  Plaintiffs threatened to file a motion seeking a default judgment against defendants in order to coerce defendants to give in to plaintiffs' demands.  Plaintiffs acted on their threat only when defendants were unable to grant relief to one of the aliens for whom plaintiffs had requested relief.

8

Under the circumstance here presented, an injustice will result to defendants if plaintiffs are allowed to succeed.

**B.**

### DEFENDANTS SHOULD BE ALLOWED TO WITHDRAW THEIR ADMISSIONS IN THE EVENT THE COURT FINDS THE ADMISSIONS REQUESTS HAVE BEEN ADMITTED BY DEFENDANTS

If the Court finds that defendants have admitted the matters contained within plaintiffs' Requests for Admission, then defendants move the Court to allow them to withdraw their admissions.  The Court "may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits."  Fed. R. Civ. P. 36(b); see also American Automobile Associate Inc. v. AAA Legal Clinic of Jefferson Crooke, 930 F.2d 1117, 1119 (5th Cir. 1991).  Rule 36(b) sets forth a two-pronged test.  Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir. 1995); FDIC v. Prusia, 18 F.3d 637, 640 (8th Cir. 1994).  However, "the focus under Rule 36(b) is not on the moving party's explanation for its non-compliance with the Rule."  Prusia, 18 F.3d at 640.

"The first [prong] of Rule 36(b) is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case."  Hadley, 45 F.3d at 1348.  The second prong is not satisfied by the fact "that the party who obtained the admission will now have to convince the factfinder of its truth.  Rather, it relates to the difficulty a party may face in

9

511

proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence." Hadley, 45 F.3d at 1348 (quoting Brooks Village N. Assoc. v. General Electric Co., 686 F.2d 66, 70 (1st Cir. 1982)).

Here, the first prong of Rule 36(b) is satisfied. If defendants are not allowed to withdraw their admissions, then all facts must be determined in the manner most favorable to plaintiffs because that is the way in which plaintiffs phrased their admissions requests. Although defendants believe that there are no material issues in dispute (see Attachment (7) -- Defendants' Statement of Material Facts as to Which There Exist No Substantial Controversy, And Objections to Plaintiffs' Amended Statement of Material Facts) they should not both be deprived of trial and forced to litigate at such disadvantage. Thus, not only would there be no merits presentation, but what presentation there is would be heavily weighted unfairly in plaintiffs' favor.

Regarding the second prong of Rule 36(b), plaintiffs obviously have the burden of proof. In an effort to prove prejudice plaintiffs assert that because they believed all matters contained in their requests for admission were established they did not attempt to obtain evidence to support their factual allegations. (See Plaintiffs' Motion to Strike at 4-5.) Plaintiffs' statement in no way demonstrates that their case will be prejudiced if the Court grants defendants' motion to withdraw admission. See Hadley, 45 F.3d at 1348 (second prong of

10

5/2

Rule 36(b) is not satisfied simply because a party has to prove the matter).

Moreover, this case is not approaching the eve of trial. No trial date has been set and no pretrial conferences have been held; thus there is not even a remote possibility that plaintiffs will face difficulty proving their case if a trial is necessary. Brooks Village N. Assoc., 686 F.2d at 70. And in any event, the Fifth Circuit Court of Appeals has approved withdrawal or amendment of admissions prior to or during trial. American Automobile Assoc., 930 F.2d at 1120, citing Laughlin v. Prudential Ins. Co., 882 F.2d 187, 191 (5th Cir. 1989); Reyes v. Vantage S.S. Co., 672 F.2d 556, 557-58 (5th Cir. 1982).

Finally, the fact that plaintiffs claim to have only recently learned, through Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment and Counter-Motion for Summary Judgment, that defendants did not deem themselves to have admitted the matters in plaintiffs' Requests for Admission (Plaintiffs' Motion to Strike at 4-5) adds no weight in favor of plaintiffs' burden of demonstrating prejudice. See FDIC v. Prusia, 18 F.3d at 640 (Filing a motion for summary judgment after requested withdrawal of admissions does not constitute prejudice.) Plaintiffs claim further that their belief was strengthened by Mr. Carte's representation that the only disputed issued concerned the number of members of the putative class. (Motion to Strike at 4.) Mr. Carte however asserts that he never made such a representation to plaintiffs. (See Exhibit (12) at

513

2.)  Thus, a withdrawal is appropriate in this case if the Court deems the requests admitted.

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' Motion to Strike the Defendants' Answers to Plaintiffs' First and Second Requests for Admission.  If the Court deems defendants to have admitted the matters in plaintiffs' requests for admission, defendants request the Court to grant their Motion to Withdraw their Answers to  Plaintiffs' First and Second Requests for Admission.

Respectfully submitted,

GAYNELLE GRIFFIN JONES
United States Attorney
Southern District of Texas

DAVID J. KLINE
Assistant Director

REGINA BYRD
NELDA C. REYNA
Attorneys
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
Post Office Box 878
Ben Franklin Station
Washington, D.C.  20044
        Telephone:  (202) 616-4860

Of Counsel:
KENNETH M. MUIR
General Attorney
District Counsel's Office
U.S. Department of Justice
Immigration and Naturalization Service
P.O. Box 1711
Harlingen, TX  78551

Attorneys for Defendants

October 11, 1995

12

CVisPDF - www.lexisx.com

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion was mailed to counsel for Plaintiffs, certified mail, return receipt requested, at:

    Lisa S. Brodyaga, Esq.
    402 E. Harrison, 2nd Floor
    Harlingen, Texas  78550

    Thelma O. Garcia, Esq.
    301 E. Madison
    Harlingen, Texas  78550

Served on this the __11th__ day of October, 1995.

                              _____
                              Regina Byrd
                              Attorney for Defendants

5/5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN, et al.,        )
                Plaintiffs,     )
v.                              )        C.A. No. B-94-215
                                )
E.M. TROMINSKI, District        )
Director, Immigration and       )
Naturalization Service; HON.    )
JANET RENO, United States       )
Attorney General; and           )
IMMIGRATION AND NATURALIZATION  )
SERVICE,                        )
                Defendants.     )
_____ )

**ORDER DENYING PLAINTIFFS' (OPPOSED) MOTION TO STRIKE DEFENDANTS' ANSWERS TO PLAINTIFFS' FIRST AND SECOND REQUESTS FOR ADMISSION.**

Upon consideration of the motion filed by the plaintiffs, the opposition thereto filed by defendants, and all other relevant documents and argument, it is hereby:

ORDERED, that Plaintiffs' Motion to Strike Defendants' Answers to Plaintiffs' First and Second Requests for Admission is DENIED; and it is

FURTHER ORDERED, that defendants' answers to plaintiffs first and second requests for admission shall be accepted into evidence; and it is

Done at Brownsville, Texas,

this _____ day of _____, 1995.

_____
JUDGE PRESIDING

*5/6*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ASCENCIO-GUZMAN, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. B-94-215 |
| | ) | |
| E.M. TROMINSKI, District | ) | |
| Director, Immigration and | ) | |
| Naturalization Service; HON. | ) | |
| JANET RENO, United States | ) | |
| Attorney General; and | ) | |
| IMMIGRATION AND NATURALIZATION | ) | |
| SERVICE, | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER GRANTING DEFENDANTS' MOTION TO WITHDRAW THEIR ANSWERS.**

Upon consideration of the motion filed by plaintiffs to strike defendants' answers to plaintiffs' first and second requests of admission from the record and the opposition thereto filed by defendants; and upon consideration of defendants' motion in the alternative to withdraw their admissions, and all other relevant documents and arguments, is hereby:

FURTHER ORDERED, that defendants' motion to withdraw their admissions is GRANTED; and it is

Done at Brownsville, Texas,

this _____ day of _____, 1995.

_____
JUDGE PRESIDING

5/7

.

**ATTACHMENT (1)**

1

CutePDF – www.texta.com

UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JULIO HERRERA-LOA, et al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. B-93-215 |
| | § | |
| E. M. TROMINSKI, | § | |
| | § | |
| Defendants. | § | |
| | § | |

### DECLARATION OF HOWARD E. ROSE

1.  My name is Howard E. Rose.  I am employed by the Immigration and Naturalization Service (INS) as a Special Assistant United States Attorney (SAUSA) in the Office of the United States Attorney for the Southern District of Texas.  I have held this position since April 1987.  Prior to that, I was the District Counsel for the INS Miami District, Miami, Florida.

2.  In the latter half of July 1994, I was assigned to be counsel of record for the above action until INS General Attorney Bill Peterson's application to be designated a SAUSA was approved.  It was agreed that I would review and sign the pleadings which were to be drafted by Mr. Peterson.  When he was sworn in as a SAUSA, I was to turn the case over to him and sit second chair.

3.  I was immediately confronted with a motion for preliminary injunction.  In response, I quickly completed a factual investigation by telephone conversations with Mr. Peterson and others in the INS Harlingen District Office and completed the necessary legal research.  I obtained a laptop computer from the INS and drafted a response to the motion one night at my home.

CISPDF - www.fasto.com





4.   Prior to filing the response to the motion, I contacted plaintiffs' attorney Lisa Brodyaga upon the suggestion of AUSA Nancy Masso.  When I explained the position I would take at the motion hearing, Ms. Brodyaga felt that a settlement of the case was a distinct possibility.  Almost immediately, my emphasis in this action went from litigation to settlement negotiations.

5.   Ms. Brodyaga and I reached an understanding that it was not necessary for me to respond to plaintiffs pleadings including the Request for Admissions while these settlement negotiations proceeded.  I felt that this could eliminate needless expenditure of government resources and the accumulation of attorney fees for the plaintiffs' which they might seek to recover under the Equal Access to Justice Act.

6.   One of my initial concerns was the Request for Admissions which seemed to have been filed by plaintiffs with the complaint.  It is my recollection that this discovery request was included in the understanding.

7.   The settlement negotiations proceeded during the fall of 1994. Almost all my contacts with the Harlingen District were through Mr. Peterson.  Through him, the INS attempted to identify the potential class members and provide them with notice that they could obtain substitute documents containing the agreed language.

8.   Around October 21, 1994, Ms Brodyaga informed me that there were difficulties with this document replacement process.  At this time, Mr. Peterson's designation as a SAUSA was approved.  I then advised Ms. Brodyaga that it would be more expeditious to negotiate directly with Mr. Peterson.



9. Later, I learned that Mr. Peterson was sent on detail to California. However, another SAUSA, Mr. John Carte, who had handled civil cases before, had been designated to cover for Mr. Peterson. The case file was officially transferred to Mr. Carte in December 1994. I was never contacted by Mr. Carte or anyone in the Harlingen District about this case until March 1995, when I was called by attorney Regina Byrd of the Justice Department Office of Immigration Litigation (OIL).

I declare under penalty of perjury that the foregoing is true and correct.

HOWARD E. ROSE

**ATTACHMENT (2)**

522

CutePDF – www.testio.com



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JULIO HERRERA-LOA, ET. AL.,           )
                 Plaintiffs,          )
                                      )
vs.                                   )    Civil Action No. B-94-215
                                      )
E.M. TROMINSKI, DISTRICT DIRECTOR,    )
ET. AL.,                              )
                 Defendants.          )
_____)

## DECLARATION OF JOHN D. CARTE

My name is John D. Carte, an attorney in Harlingen, Texas, for the Immigration and Naturalization Service, United States Department of Justice. With regard to the above captioned case, I state as follows:

1.  Since the end of July, 1993, I was "acting" as a civil Special Assistant United States Attorney ("SAUSA"), working only out of the Harlingen District Counsel's Office in Harlingen, Texas.

2.  Many of the plaintiffs/respondents with pending civil cases were represented by attorney Lisa Brodyaga. The number of existing cases and issues necessitated that she and I work together in a manner acceptable to the judges in the Brownsville Division.

3.  On November 4, 1994, I was sworn in as a criminal SAUSA to prosecute criminal immigration cases, working only out of the United States Attorney's Office in Brownsville, Texas.

4.  On December 8, 1994, I was assigned the added responsibility of civil SAUSA to defend civil immigration cases, working only out of the Harlingen District Counsel's Office in Harlingen, Texas.

5.  By mid-December, 1994, I began having conversations with attorney Lisa Brodyaga, because I learned that the above captioned case was to be assigned to me as civil SAUSA. Thereafter, the case was assigned to me, and I substituted as counsel of record on December 20, 1994.

6.  On various occasions, I discussed with attorney Brodyaga the status of the above captioned case. Among the various issues discussed were the United States' answer, the response to Plaintiffs' First Set of Requests for Admission, and the response to Plaintiff's First Set of Requests for Production

523



of Documents. Specifically discussed was the Plaintiffs' Motion for Class Certification and Request for Hearing Thereon, dated December 6, 1994, and at page two, wherein attorney Brodyaga alleges that Defendants' failed to deny the matters contained in Plaintiff's First Set of Requests for Admission.

7.  With attorney Brodyaga's approval, I filed on December 20, 1994, Federal Defendants' Unopposed Motion for Extension to Respond to Plaintiffs' First Amended Petition for Writ of Habeas Corpus and Class Action Complaint for Declaratory Judgment and Injunctive Relief.

8.  On December 22, 1994, attorney Brodyaga and I had a meeting with the District Counsel regarding various issues of the above captioned case.  She and I reaffirmed our existing, informal agreement that extensions of deadlines would be granted, as needed, provided progress towards resolving issues was made.  What "progress" meant was not precisely defined, but it was deemed to include simply being able to narrow the issues that would necessitate litigation, or being flexible as to the demonstrated needs of her client's during the pendency of the suit.

9.  Because the parties had a meeting with the Deputy District Director on January 11, 1995, during which attorney Brodyaga was allowed to express her clients' concerns, an understanding was reached regarding the United States' response to Plaintiffs' First Set of Requests for Admission.  It was agreed that if it would be inaccurate or misleading to let an admission stand without a response, the United States could file its response to any and all questions posed.

10.  During the time that I was civil SAUSA and assigned the above captioned case, attorney Brodyaga and I had an existing, informal agreement concerning every deadline.

11.  Numerous extensions of deadlines had been granted to me by attorney Brodyaga based on the professional working relationship she and I had developed over several years. These extensions tended to be tied to specific dates or events, but all were subject to movement depending upon my caseload and the demands of my criminal docket. However, it was understood that should negotiations or progress cease on the above captioned case then the case would, on reasonable notice, be appropriate for resolution before the court.

PURSUANT TO TITLE 28 U.S.C. SECTION 1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.  EXECUTED ON APRIL 19, 1995.

JOHN D. CARTE, Attorney, INS-DOJ

52¢

**ATTACHMENT (3)**

CVisPDF – www.fastio.com

525

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

HERRERA, et al                    )
                                  )
v.                                )      C.A. No.  B-94-215
                                  )
TROMINSKI, et al.                 )
                                  )

ADVISAL OF DUE DATES FOR ANSWERING THE INSTANT COMPLAINT,
AND RESPONDING TO
PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
AND PLAINTIFFS' SECOND SET OF REQUESTS FOR ADMISSION
AND SIMILAR UNRESOLVED MATTERS

Come Plaintiffs, and advise Defendants of certain unresolved
matters, including the following:

1.  As of the present, Defendants have not filed their Answer to
the First Amended Complaint herein, nor responded to the two
outstanding requests for discovery, to wit, Plaintiffs' First Set
of Requests for Productions of Documents, served on December 5,
1994, and Plaintiffs' Second Set of Requests for Admission, served
on February 16, 1995.

Extensions of the due date for all three pleadings were the subject
of oral agreements between counsel for the Plaintiffs, and counsel
for Defendants.    However, upon receipt of information that
Defendants will (again) be substituting counsel, and in the
interest of ensuring that there be no misunderstandings with
respect thereto, Plaintiffs hereby advise that the Answer to the
Complaint, and the responses to the First Set of Requests for
Production of Documents, and to the Second Set of Requests for
Admission, are due no later than March 24, 1995, and that it is not
anticipated that further extensions will be granted, except upon
Order of the Court.

526



2. Plaintiffs would also note that it had been orally agreed between the Parties that, if Defendants could provide evidence demonstrating that any of the admissions were factually incorrect, which admissions had been made by default when Defendants failed to respond to Plaintiffs' First Set of Requests for Admission, Plaintiffs would agree to the withdrawal of said admission. To date, no such evidence has been tendered. Plaintiffs would advise Defendants that any such evidence is also due on or before March 24, 1995. After that date, any requests for withdrawal of admissions made by default will have to be directed to the Court.

3. Defendants have advised Plaintiffs that at least two individuals were deported as a result of the fact that they responded to the call-in letters, purportedly sent to members of the putative class herein, advising them that the purpose of the call-in was to "review [their] Immigration status, take photos, and [be] issued [their] new LPR Card, I-151 or Employment Card," c.f., <u>Exhibit "F" In Support of Plaintiffs' Motion for Class Certification and Request for Hearing Thereon.</u>

According to information received from Defendants, the majority of said letters were sent to individuals known to Defendants <u>not</u> to be members of the putative class, for the reason that they were already under administratively final orders of deportation. Defendants have admitted that when such persons responded to the call-in letters, (c.f., <u>Exhibit "F"</u>), they were taken into custody. Plaintiffs remain very concerned about the fate of these individuals, particularly of those who were deported.

The request to review the files of these individuals was included in Plaintiffs' First Set of Request For Production of Documents. Although Defendants have indicated that they would allow Plaintiffs' counsel to review these files, particularly those of the persons who were deported because they responded to the deceptive call-in letters, this has not yet occurred.

2

527

CAMPDF - www.texisc.com

Plaintiffs would therefore advise Defendants that, if these files are not presented by March 24, 1995, Plaintiffs intend to seek not only an Order mandating their production, but a show cause hearing, to determine whether the individuals in questions should be allowed to return to the United States, in order to pursue any relief from deportation which might have been available to them.

4.   There has also been no resolution as of yet to the problem of Jesus Garza-Pacheco, A31 298 296.  Plaintiffs assert that he is a member of the putative class herein, for the reasons set forth in their letter of February 17, 1995, a copy of which was forwarded to counsel for Defendants.

Mr. Garza-Pacheco has, at present, no valid document authorizing that he be employed in the United States.   Plaintiffs have made several suggestions as to means by which he could be provided with such a document, while still taking into consideration the concerns of Plaintiffs, which arise from the fact that his case is, admittedly, a procedural nightmare, and his status as a member of offered any counter-suggestions, or replied to Plaintiffs' letter.

Plaintiffs therefore advise that, if no resolution of this issue has been reached by March 24, 1995, Plaintiffs will also bring the matter to the attention of the Court, and request that the Court hold a hearing with respect thereto.

5.   Finally, Plaintiffs would remind Defendants that the deadline for accepting the Proposed Partial Settlement, of February 8, 1995, was, according to its terms, "the date of the next court appearance," which is set for April 7, 1995.  After that date, re-negotiation will be required.  As of the present, no reply has been received to the Proposed Partial Settlement.

3

Thank you for giving these matters your immediate attention.

Respectfully Submitted,



Lisa S. Brodyaga                          Thelma O. Garcia
402 E. Harrison, 2nd Floor               301 E. Madison
Harlingen, Texas 78550                   Harlingen, Texas 78550
(210) 421-3226                           (210) 425-3701

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, first-class postage prepaid, to the Office of the United States Attorney, 1036 E. Levee, Brownsville, Texas 78520, and by FAX to (210) 548-2711, this 17th day of March, 1995.

4

525

**ATTACHMENT (4)**

CVisPDF – www.fastio.com

_Brief_

## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

APR 6 1995

JULIO HERRERA-LOA, et. al.,       )
                                  )
              Plaintiffs,         )
                                  )
vs.                               )        C.A. No. B-94-215
                                  )
E. M. TROMINSKI, District Director,)
Immigration and Naturalization    )
Service, HON. JANET RENO,         )
United States Attorney General and )
IMMIGRATION AND                   )
NATURALIZATION SERVICE            )
                                  )
              Defendants.         )

RECEIVED 1995 APR 12 P 4: OFFICE OF IMMIGRATION LITIGATION

---

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' (OPPOSED) MOTION FOR DEFAULT JUDGMENT

Defendants oppose Plaintiffs' motion for default judgement[1] against the Defendants, who are officers and an agency of the United States government.

Plaintiffs admit in their motion for default judgement that an informal agreement was made with the Defendants to permit additional time to answer Plaintiffs' complaint and other pleading in light of ongoing settlement negotiations. (Motion For Default Judgement at 2.) In essence, Plaintiffs agreed that the Defendants could await filing their responses to Plaintiffs' pleadings and that Plaintiffs would not move the Court to enter an adverse decision in that regard. However, upon learning that

---

[1] Plaintiffs initially filed their brief under the caption of Julio Herrera-Loa and Ramiro Gracia-Cantur, lead plaintiffs. However after the death of Mr. Herrera-Loa, plaintiffs filed their second amended petition which deleted Mr. Herrera-Loa and Mr. Gracia-Cantur from the caption and named Juana Ascencio-Guzman as lead plaintiff. Plaintiffs have captioned their subsequent pleadings as "Herrera, et al."

39.74-1172

CMPDF - www.texta.com

the Special Assistant United States Attorney ("SAUSA") then
assigned to represent Defendants resigned as the SAUSA,
Plaintiffs served Defendants with a document dated March 17,
1995, which advised that in seven days, March 24, 1995,
Defendants must respond to all Plaintiffs' pleadings.  (See
Motion For Default Judgement at 3.)

On or about March 17, 1995, Defendants' current counsel
contacted Plaintiffs' counsel to advise that seven days would not
be sufficient time to respond to all Plaintiffs' pleadings, and
requested that Plaintiffs' counsel provide at least thirty days
before moving the Court to enter a default judgment or to deem
admitted any allegations not responded to by Defendants.  The
thirty days requested, Defendants counsel stated, would be used
by Defendants' new attorneys to investigate the case, begin
production of requested documents, respond to outstanding
pleadings, and to determine whether settlement negotiations
should proceed.  Plaintiffs' counsel agreed to await thirty days
only if Defendants would agree to provide the requested relief as
to two aliens, one of whom is a named Plaintiff.

The first alien, Ms. Ascencio-Guzman is currently in
exclusion proceedings for attempting to smuggle an alien into the
United States.[2]  Plaintiffs requested the Defendants to approve

_____

[2]  On October 19, 1994, the United States Immigration
Service ordered Ms. Ascencio-Guzman excluded and deported from
the United States for her violation of the Immigration and
Nationality Act § 212(a)(6)(E) as an alien who attempted to
smuggle an unlawful alien into the United States.  That decision
is on appeal to the Board of Immigration Appeals.  She was
initially paroled into the United States by the Service on
October 31, 1994, pending completion of exclusion proceedings.

CVisPDF - www.fesina.com

Ms. Ascencio-Guzman's reentry into the United States prior to her departure for Mexico. As to the second alien, Mr. Garza-Pacheco[3] who was ordered deported for drug trafficking, Plaintiffs requested work authorization until such time as the Board rules on his motion to reopen. (See Plaintiffs' Motion For Default Judgement at 2-3.) When Defendants were unable to meet both of Plaintiffs' demands, Plaintiffs' counsel moved the Court to enter a default judgment against Defendants.

Plaintiffs now use the very conduct of that they agreed to, although informally, to persuade this Court that Defendants have purposely violated the Rules of Civil Procedure. It was with the consent of Plaintiffs that the Defendants decided not to respond to Plaintiffs' pleadings. Both parties were engaged in a good faith attempt to settle their differences.[4] Neither party could anticipate that settlement negotiations would not be expeditious and sought creative means to facilitate the process. In that regard, Plaintiffs led Defendants to believe that sufficient time would be allowed to respond to Plaintiffs' pleadings in the event that settlement negotiations failed or were in some way impeded.

Clearly, seven days to respond to Plaintiffs' numerous

---

[3]   Mr. Garza-Pacheco is not a named plaintiff. His order of deportation was executed on October 28, 1987. Upon his return to the United States he was convicted of reentry after deportation. His appeal from the denial of his motion to reopen is pending before the Board.

[4]   At the February 9, 1995 pre-hearing conference, the Court was advised that the Defendants opposed Plaintiffs' latest amended complaint, and that settlement negotiations were ongoing. The Court granted sixty additional days so that counsel could attempt to work out a settlement before a pre-hearing conference which Court scheduled for April 7, 1995.

533

pleadings is not sufficient.  And in any event, Plaintiffs are estopped from succeeding on this motion when it was their own words and conduct that led the Defendants to commit the acts Plaintiffs now claim are error.  Moreover, Plaintiffs have acted unfairly by using a threat to abruptly, unilaterally terminate the agreed upon informal extension as a means to compel Defendants to grant the relief requested as to the two above named aliens.

**CONCLUSION**

For the reasons stated above, the Plaintiffs motion for default judgement should be denied.

Respectfully submitted,

FRANK W. HUNGER
Assistant Attorney General


REGINA BYRD
MARK C. WALTERS
Attorneys
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
Post Office Box 878
Ben Franklin Station
Washington, DC  20044
(202) 616-4860

David Guerra,
Assistant United States Attorney
1701 West Hwy 83
Suite 305
McAllen, TX 78501

534

**ATTACHMENT (5)**

535

CVisPDF – www.fasiso.com

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

RECEIVED

1995 APR -5 P 5: 14

OFFICE OF
IMMIGRATION LITIGATION

| | | |
|---|---|---|
| HERRERA, et al | ) | |
| | ) | |
| v. | ) | C.A. No.   B-94-215 |
| | ) | |
| TROMINSKI, et al. | ) | |
| | ) | |

PLAINTIFFS' (OPPOSED) MOTION FOR DEFAULT JUDGMENT

Come Plaintiffs, and pursuant to Rule 55, Federal Rules of Civil
Procedure, and based on the pleadings and exhibits on file herein,
respectfully move this Honorable Court for a default judgment, and
in support thereof, would respectfully show as follows:

The instant action was filed on July 15, 1994.  Timely service was
accomplished on all Defendants, the United States Attorney in
Houston, and the U.S. Attorney General.

On July 23, 1994, Plaintiffs served their first set of requests for
admission, (Plaintiffs' Exhibit "G" filed December 6, 1994, as an
exhibit to Plaintiffs' Motion for Class Certification).   No
responsive pleading was ever received.

On July 28, 1994, Plaintiffs filed and served their first amended
complaint, simultaneously, requesting a preliminary injunction.

On December 6, 1994, Plaintiffs filed a motion for class
certification, and requested a hearing thereon.

On December 5, 1994, Plaintiffs served their first set of requests
for production, (herein incorporated by reference as Plaintiffs'
Exhibit "N").  None of the documents requested therein have ever
been produced.

536                    29-74-1172

On or about December 20, 1994, Defendants filed an agreed motion, requesting an extension to, and including January 21, 1995, [1] in which to respond to Plaintiffs' First Amended Complaint. By informal agreement of counsel, that date was further extended.

Plaintiffs' first set of requests for production, and second set of requests for admission, were the subject of similar, informal agreements between counsel.

On January 17, 1995, Plaintiffs filed an (opposed) motion, seeking leave to file their Second Amended Complaint, removing one named Plaintiff who is deceased, and adding several others.

On February 8, 1995, Plaintiffs served on Defendants a document entitled "Proposed Partial Settlement, and Discussion of Outstanding Issues," [2] in order to facilitate a formal determination by Defendants of the extent to which settlement was possible. To date, the terms of said proposed settlement have not been accepted, and no counter proposal has been received.

On February 16, 1995, Plaintiffs served their second set of requests for admission, (herein incorporated by reference as Plaintiffs' Exhibit "O"). To date, no response has been received.

In early 1995, situations arose with respect to two persons whom Plaintiffs' consider to be members of the putative class herein, involving the rights at issue. In one case, (Jesus Garza-Pacheco), the issue involved extension of the employment authorization document of a long-time permanent resident whose case has, admittedly, become a procedural nightmare, and whose status as a

---

[1] The pleading states January 21, 1994, but this is obviously a typographical error.

[2] Because this document falls within the realm of settlement negotiations, it is not being presented to the Court.

2

CVisPDF - www.fsvico.com



member of the putative class is at issue.

The other involves a person in exclusion proceedings, (Juana Ascencio-Guzman, the lead plaintiff in the second amended complaint), who has been paroled into the United States during the pendency of these proceedings. Her mother is hospitalized in Mexico, and she has requested assurances that if she travels to Mexico to visit her mother, and in the absence of changed circumstances justifying a refusal, she will be re-paroled into the United States on her return.

Negotiations were underway with Defendants' counsel to find a way of resolving these individual problems in a manner which did not compromise the rights, or legal positions, of either party.

In mid-March, 1995, Plaintiffs' counsel was informed that the Special United States Attorney representing Defendants would no longer be involved with the case, and that a new attorney would be filing a notice of appearance. In order to ensure that there were no misunderstandings regarding the due dates of Defendants' pleadings, on March 17, 1995, Plaintiffs prepared, and served on the Office of the United States Attorney in Brownsville, both by mail, and by FAX, a document entitled "Advisal of Due Dates For Answering the Instant Complaint, and Responding to Plaintiffs' First Set of Requests for Production of Documents and Plaintiffs' Second Set of Requests for Admission and Similar Unresolved Matters" (herein incorporated by reference as Plaintiffs' Exhibit "P").

In that document, Plaintiffs advised Defendants that the informal extensions which had previously been granted for filing Defendants Answer, responding to Plaintiffs' outstanding discovery requests, and resolving the problems of Ms. Ascencio-Guzman, and Mr. Garza-Pacheco, would expire on March 24, 1995, (Id.).

3

538



On March 20, 1995, Plaintiffs filed an unopposed request for resetting of the status conference, which had been scheduled for April 7, 1995, seeking that it be rescheduled for April 17, 1995. This request was made at the behest of an attorney from the Office of Immigration Litigation, Regina Byrd, Esq., who advised the undersigned that although she had been assigned to monitor the instant case from its inception, she would now be undertaking direct control of the case, and that she needed additional time to familiarize herself with the file, and attempt to obtain final approval of the tentative agreements that had been reached.

Said attorney also requested that the deadlines noted in Exhibit "P" be further extended, which request Plaintiffs' counsel conditioned upon an agreement to provide some form of temporary relief to Ms. Ascencio-Guzman and Mr. Garza-Pacheco, so that they would not be harmed by further delay in the case. No such agreement was reached, so the deadlines were not further extended.

On Tuesday, March 28, 1995, not having received any further word from Defendants, Plaintiffs' counsel called the Office of the Clerk, to inquire whether Defendants had recently filed a notice of substitution of counsel, or other pleadings, and was informed that nothing had been received from the Defendants in March, 1995.

Plaintiffs' counsel has conferred with Defendants' counsel of record herein, to wit, John Carte, Esq., who informed her that he had been advised by his employer that he was no longer involved in the case, but that to the extent he is still listed as counsel of record, he would oppose the motion. Counsel also conferred telephonically with Regina Byrd, Attorney, and was informed that Defendants oppose the motion.

WHEREFORE, it is respectfully urged that the Default of Defendants be entered, and that a hearing be held, pursuant to Rule 55(e), Federal Rules of Civil Procedure, to determine the nature and scope

4



of the relief to which Plaintiffs are entitled.

Respectfully Submitted,



Lisa S. Brodyaga                           Thelma O. Garcia
402 E. Harrison, 2nd Floor                 301 E. Madison
Harlingen, Texas 78550                     Harlingen, Texas 78550
(210) 421-3226                             (210) 425-3701

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was personally served
on the Office of the U.S. Attorney, 1036 E. Levee, Brownsville,
Texas, 78520, and that an additional copy was mailed to Regina
Byrd, Attorney, OIL, U.S. Department of Justice, Civil Division,
Box 878, Ben Franklin Station, Washington, D.C.  20044, this 28th
day of March, 1995.

540

**ATTACHMENT (6)**



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JULIO HERRERA LOA, JUANA           )
ASCENCIO-GUZMAN, et al.,           )
                                   )
            Plaintiffs,            )
                                   )
v.                                 )        C.A. No. B-94-215
                                   )
                                   )
E.M. TROMINSKI, District           )
Director, Immigration and          )
Naturalization Service, HON.       )
JANET RENO, United States          )
Attorney General, and              )
IMMIGRATION AND NATURALIZATION     )
SERVICE,                           )
                                   )
            Defendants.            )
_____)

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR EXTENSION OF TIME TO ANSWER COMPLAINT AND
PLAINTIFFS' RESPONSE TO DEFENDANTS' OPPOSITION TO PLAINTIFFS'
(OPPOSED) MOTION FOR DEFAULT JUDGMENT**

In response to allegations made by Plaintiffs in reply to

Defendants' Response In Opposition To Plaintiffs' (Opposed)

Motion For Default Judgment, the Defendants, by and through their

undersigned, counsel, submits the attached declarations of

Howard E. Rose,[1] Attorney, Immigration and Naturalization Service

(INS)/Special Assistant United States Attorney (SAUSA) and

_____

[1]Due to time constraints, Defendants have submitted a faxed
copy of the original declaration of Mr. Rose.  However, the
original will be made available and filed with the court as soon
as possible.

542

John D. Carte, Attorney, INS\SAUSA, who were the attorneys previously assigned to represent Defendants in the above captioned case.

## CONCLUSION

For the reasons set forth in Defendants' Response In Opposition To Plaintiffs' (Opposed) Motion For Default Judgment, and as supported by the attached declarations, the Defendants pray that this Court will deny Plaintiffs' (Opposed) Motion for Default Judgment.

Respectfully submitted,

FRANK W. HUNGER
Assistant Attorney General

_for_ REGINA BYRD
MARK C. WALTERS
Attorneys
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
Post Office Box 878
Ben Franklin Station
Washington, DC  20044
(202) 616-4860

Of Counsel:
KENNETH M. MUIR
General Attorney
District Counsel's Office
U.S. Department of Justice
Immigration and Naturalization Service
P.O. Box 1711
Harlingen, TX  78551

Attorneys for Defendants

543

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendants'
Answer to Plaintiffs' Second Amended Petition was mailed via
first class mail, postage prepaid to attorneys for plaintiffs at:


Lisa S. Brodyaga, Esq.
402 E. Harrison, 2nd Floor
Harlingen, Texas  78550

Thelma O. Garcia, Esq.
301 E. Madison
Harlingen, Texas  78550

Served on this the __21st__ day of April, 1995.

For: Regina Byrd
Attorney for Defendants

544

**ATTACHMENT (7)**

CutePDF – www.fwisia.com

545

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JULIO HERRERA LOA, JUANA            )
ASCENCIO-GUZMAN, EFRAIN MERINO,     )
ARTURO LOPEZ-LOZANO, ALEJANDRA      )
GUTIERREZ, JUAN SANCHEZ-SALINAS,    )
ADELITA CANTU De CABRERA,           )
RAMIRO GRACIA-CANTU, In their       )
own right and name and as           )
representatives of others           )
similarly situated,                 )
                                    )
        Plaintiffs,                 )
                                    )
v.                                  )
                                    )
E.M. TROMINSKI, District            )
Director, Immigration and           )
Naturalization Service, HON.        )
JANET RENO, United States           )
Attorney General, and               )
IMMIGRATION AND NATURALIZATION      )
SERVICE,                            )
                                    )
        Defendants.                 )
_____)

United States District Court
Southern District of Texas
FILED

AUG 28 1995

Michael N. Milby
Clerk of Court

C.A. No. B-94-215

**DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE EXISTS NO SUBSTANTIAL CONTROVERSY,
AND OBJECTIONS TO PLAINTIFFS' AMENDED STATEMENT OF MATERIAL FACTS**

COME NOW, Defendants E.M. TROMINSKI, District Director, Immigration and Naturalization Service, HON. JANET RENO, United States Attorney General, and IMMIGRATION AND NATURALIZATION SERVICE, in their official capacity, by and through REGINA BYRD, Attorney, Office of Immigration Litigation, and present herewith their Statement of Material Facts As To Which Their Exists No Substantial Controversy, and objections to Plaintiffs' Second Amended Statement of Material Facts.

544

## SOURCES OF MATERIAL FACTS AS TO WHICH
## THERE EXISTS NO SUBSTANTIAL CONTROVERSY

At the status conference conducted on April 26, 1995, both Parties represented to the Court that the facts which are material to the instant action are not in dispute. These representations are fully supported by the record herein, which consists of Plaintiffs' Second Amended Petition, exhibits filed by Plaintiffs, exhibits filed by Defendants, and Defendants' Answers to the Plaintiffs' Second Amended Petition.

In Plaintiffs' Amended Statement of Material Facts As To Which There Exists No Substantial Controversy, filed in May of 1995[1], Plaintiffs allege that all matters set forth in their First and Second Sets of Requests for Admission are taken as conclusively established, due to the untimely filing of Defendants answers to same. Plaintiffs did not attempt to reach a stipulation with Defendants as to what the material facts in this case are. Plaintiffs rely extensively upon these requests for admissions in their statement of facts. However, as discussed at the Pre-Trial Conference of April 26, 1995, there was an unwritten agreement between the parties to extend the deadlines for responding to these discovery requests, and Defendants did in fact provide answers to both Requests for Admissions to counsel for Plaintiffs shortly before the Pre-Trial conference held on April 26, 1995. Because Plaintiffs have relied on their requests for admissions in their

---

[1]    The Certificate of Service does not bear a date, but states that the copy was mailed on the "_____th day of May, 1995".

547

statement of facts, and because the Court has not ordered that those requests are deemed admitted, Defendants have attached copies of their answers to this Statement; the requests are not and should not be deemed admitted at this time.[2]

Wherever the Parties are in agreement on the facts, Defendants have adopted Plaintiffs' version of facts. However, Defendants have left out any details thought to be irrelevant or immaterial to the four issues involved in this case. After the statement of facts set forth below, Defendants have made objections to specified portions of Plaintiffs' Statement of Facts.

## I.  MATERIAL FACTS NOT IN DISPUTE

1.  Plaintiffs Juana Ascencio-Guzman, Efrain Merino, Arturo Lopez-Lozano, Alejandra Gutierrez, Juan Sanchez-Salinas, Adelita Cantu de Cabrera, and Ramiro Gracia-Cantu are all lawful permanent residents of the United States. Plaintiffs Ascencio, Merino, Gutierrez, Sanchez, and Cabrera were all in exclusion proceedings, and plaintiffs Gracia and Lopez were in deportation proceedings, in the Harlingen EOIR district at the time of filing of the Original Complaint. Plaintiffs Cabrera and Lopez have since been granted relief by an Immigration Judge.

---

[2]    Defendants' answer to the Second Amended Petition is hereinafter cited as "ANS:___", where, for example, ANS:15 would refer to paragraph 15 of Defendants Answer. Likewise, Defendants' answer to Plaintiffs First and Second Requests for Admission will be cited as "ANSREQ1:___" and "ANSREQ2:___". Plaintiffs' Amended Statement of Material Facts as to Which There Exists No Substantial Controversy will be cited as "FACTS:___".

548

2.   Defendant Immigration and Naturalization Service is an executive agency of the United States, with offices in Harlingen, Texas, within the jurisdiction of this court.

3.   Defendant E.M. Trominski is the District Director of the Harlingen, Texas, District of the Immigration and Naturalization Service, with offices in Harlingen, Texas, within the jurisdiction of this court.

4.   Defendant Hon. Janet Reno is the duly appointed Attorney General of the United States.

5.   The policies followed by Defendants when confiscating Lawful Permanent Resident ("LPR" or "Green" cards), and when issuing temporary forms I-551 to aliens in deportation proceedings, or when issuing parole documents to aliens in exclusion proceedings, are set forth, in part, in a March 14, 1990 Memorandum from the INS Commissioner, and in INS Operations Instruction 264.2 as referenced by the Commissioner.   Exhibit 1, Memorandum of Gene McNary, INS Commissioner, dated March 14, 1990; Exhibit 2, Operations Instruction 264.2; Exhibit 9, Memorandum of James J. Hogan, INS Executive Associate Commissioner, dated November 3, 1992.

4

6.    Plaintiff Ramiro Gracia-Cantu[3] has been a lawful permanent resident ("LPR") since June 25, 1984.  Mr. Gracia was placed in deportation proceedings by Order to Show Cause ("OSC") issued June 22, 1994, alleging deportability for a conviction of an aggravated felony (racketeering), pursuant to Title 8 U.S.C. Section 1251 (a)(2)(A)(iii).   Deportability has been established in his case, and the case is set for an August 29, 1995 hearing on whether Mr. Gracia should be granted a waiver of inadmissibility under Section 212(c) of the Immigration and Nationality Act (the "Act"), 8 U.S.C. 1182(c).

7.    When Mr. Gracia surrendered his LPR card to Defendants on June 22, 1994, he was provided with temporary evidence of his LPR status on Form I-94 (_Plaintiffs' Exhibit A_).  The form stated that he was a permanent resident, and bore the notation "Deportation Proceedings Initiated" on the back, but did not bear an employment authorization stamp.  Subsequently, at the insistence of counsel for Mr. Gracia, he was issued another I-94 which did not bear the notation about deportation proceedings, and which did contain an employment authorization stamp (_Plaintiffs' Exhibits V and W_).

---

[3]    In Plaintiffs' Amended Statement of Material Facts, two paragraphs discuss Mr. Herrera-Loa, a former plaintiff.  (FACTS: 5-6).  As he is not now a named plaintiff, the facts in his case are not material and will not be addressed.

5

8.   Plaintiff Arturo Lopez-Lozano has been an LPR since June 16, 1981.   Mr. Lopez was placed in deportation proceedings by an OSC issued on May 3, 1988, alleging deportability for a controlled substance violation (possession of 50-200 pounds marijuana), pursuant to Section 241(a)(11) of the Act, 8 USC 1251(a)(11) (1988).   When he posted bond on May 17, 1988 at Port Isabel Service Processing Center ("PISPC"), his LPR card was returned to him, and he was allowed to keep it throughout the pendency of proceedings. (Government Exhibit __, voucher signed by Plaintiff Lopez).

9.   Plaintiff Lopez was ordered deported by the Immigration Judge ("IJ") on May 17, 1990.   His appeal was sustained by the Board of Immigration Appeals ("BIA"), which remanded his case to the IJ.   On remand, the IJ granted a Section 212(c) waiver of inadmissibility on February 24, 1995.

10.   When Plaintiff Lopez sought admission to the U.S. as a returning resident on December 23, 1994, he was initially denied admission, and his LPR card was confiscated, as the computer at the Port of Entry ("P.O.E.") did not accurately reflect the current status of his immigration case.   After the Defendants were contacted by counsel for Mr. Lopez, steps were taken to correct the problem, and he was eventually readmitted to the United States on December 27, 1994.[4]

---

   [4]   Mr. Lopez does not fit within the class sought to be certified by Plaintiffs.   He was allowed to keep his LPR card
                                        (continued...)

6

551

11.   Plaintiffs Juana Ascencio-Guzman and Efrain Merino have been LPR's since February 4, 1991 and January 6, 1992, respectively. They were placed in exclusion proceedings when a Form I-122, Notice to Applicant for Admission Detained for Hearing Before Immigration Judge, was issued on July 3, 1994, charging excludability for alien smuggling, pursuant to Section (212)(a)(6)(E) of the Act, 8 USC 1182(a)(6)(E). Both plaintiffs were ordered deported and excluded by an IJ on October 19, 1994, after the IJ made a finding that they had made a meaningful departure from the United States and were excludable as charged. Their cases are currently on appeal to BIA.

12.   Plaintiffs Ascencio and Merino both had their LPR cards confiscated by Defendants on the day they were placed in exclusion proceedings, and were returned to Mexico. On October 31, 1994, they were paroled into the United States pending completion of exclusion proceedings. The parole document for both plaintiffs, Form I-94, state, among other things, that they have been paroled pending determination of their right to re-enter and that employment is authorized. Plaintiffs' Exhibit I. On May 2, 1995, both plaintiffs were granted special permission for humanitarian reasons to leave the United States and be automatically reparoled into the United States upon their return from Mexico.

---

⁴(...continued)
during the pendency of proceedings, and his problem in December of 1994 was a computer error which has nothing to do with any of the four issues raised by Plaintiffs in this case.

552

13. Plaintiff Alejandra Gutierrez has been an LPR since February 28, 1991. She was placed in exclusion proceedings when a Form I-122 was issued on August 4, 1994, charging excludability for alien smuggling, pursuant to Section (212)(a)(6)(E) of the Act, 8 USC 1182(a)(6)(E). At that time, her LPR card was confiscated, and she was returned to Mexico. Her exclusion case is set for a hearing on the issue of excludability for October 6, 1995. On January 27, 1995, her request for parole was granted. Plaintiffs have not objected to the form of the I-94 parole document issued to Ms. Gutierrez.

14. Plaintiff Juan Sanchez-Salinas has been an LPR since March 23, 1964. He was placed in exclusion proceedings when a Form I-122 was issued on November 4, 1994, charging excludability for illicit trafficking in a controlled substance, pursuant to Section (212)(a)(2)(C) of the Act, 8 USC 1182(a)(2)(C). At a hearing on May 10, 1995, the IJ found that Mr. Sanchez had made a meaningful departure from the United States and was excludable as charged. The case is set for a hearing on the merits of his application for a Section 212(c) waiver of inadmissibility on August 2, 1995.

15. Mr. Sanchez' LPR card was confiscated on November 4, 1991, and he was paroled into the United States for prosecution. Upon release from penal custody, he was transferred to the Port Isabel Service Processing Center ("PISPC"). When he posted bond and was released from PISPC on August 17, 1994, he was given an I-94

8

553

(departure record) with the notation that it was "not valid for employment".   Upon being notified of the error, the Service corrected it by issuing an I-94 without the offending notation. Plaintiffs' Exhibit K.

16.   Plaintiff Adelita Cantu de Cabrera has been an LPR since June 1, 1983.  She was placed in exclusion proceedings when a Form I-122 was issued on October 8, 1993, charging excludability for illicit trafficking in a controlled substance, pursuant to Section (212)(a)(2)(C) of the Act, 8 USC 1182(a)(2)(C).  The IJ found that Ms. Cantu was excludable and that she had made a meaningful departure from the United States, and the IJ granted her a Section 212(c) waiver of inadmissibility on Jan. 25, 1995.

17.   Ms. Cantu's LPR card was lifted on October 8, 1993, and she was paroled into the United States on November 9, 1993, but no employment authorized notation was placed on the I-94 until Defendants were told that she was being added as a plaintiff in this lawsuit.  Plaintiffs' Exhibit M.

18. When a lawful permanent resident applies for admission as a returning resident at a port of entry under the jurisdiction of the Harlingen, Texas, INS Office, and Respondents have reason to believe that said person has committed an act which would subject him or her to exclusion proceedings, if criminal prosecution is

9

554

also contemplated, it is the practice[5] of Respondents to parole the individual into the United States for prosecution, and place him or her under exclusion proceedings.  If the prosecution results in a conviction, it is the practice of Defendants to detain said individual at the Service Processing Center at Los Fresnos, Texas, pending exclusion proceedings.  Upon request of counsel, and in some cases upon payment of a bond, such persons are frequently paroled into the United States.[6]  If criminal prosecution is <u>not</u> contemplated, it is the practice of Defendants to initiate exclusion proceedings, and, in most instances, return said person to Mexico, without advising him or her of the possibility of being paroled into the United States.

19.  In the Harlingen, Texas INS District, when Defendants place lawful permanent residents under exclusion proceedings, it is Defendants' practice to confiscate their green cards, and not to return these cards unless and until exclusion proceedings are terminated in favor of the resident.

---

[5]     As used herein, the term "practice" means an act performed or procedure followed in more than half of the instances described.

[6]     In footnote 11 of Plaintiffs' statement of facts (Facts:25, note 11), Plaintiffs mischaracterize one of Defendants' answers to Plaintiffs' Second Amended Complaint. (ANS:28).  What Defendants stated in their answer was that each request for parole from PISPC is considered individually on its own merits.

20. When Defendants provide replacement documentation to lawful permanent residents whose green cards were confiscated because they were placed in deportation proceedings, Defendants usually limit the validity of those documents to a period of not less than six (6) months, and allow the renewal of the documents at any Immigration and Naturalization Service office. ANS:33; Exhibit 1, Memorandum of Gene McNary, INS Commissioner, dated March 14, 1990; Exhibit 2, Memorandum of James J. Hogan, INS Executive Associate Commissioner, dated November 3, 1992.

21. When Defendants parole LPR's into the United States for prosecution or for pending exclusion proceedings, the parole grant generally is not limited to a specific time period, but rather, it is generally valid for the duration of the applicant's exclusion and/or prosecution proceedings.

22. From the date of the issuance of the decision of the Fifth Circuit Court of Appeals in the case of <u>Molina v. Swell</u>, 983 F.2d 676 (5th Cir. 1993), to wit, February 22, 1993, until the date of the filing of the instant action, on July 15, 1994, Defendants made no changes in their practices, procedures, or policies regarding the confiscation of green cards of lawful permanent residents who are placed under deportation proceedings, as a result of, or based on, the Court's ruling in said case.

11

556

23. Between February 22, 1993 and July 15, 1994, it was the practice of the Investigations branch of the Harlingen INS office to confiscate the green cards of lawful permanent resident aliens on whom they served Orders to Show Cause and Warrants of Arrest, regardless of whether the individual simultaneously posted bond or was released on recognizance.  ANSREQ1:4.

24. Between February 22, 1993 and July 15, 1994, it was Defendants practice to provide I-94s, with a stamp indicating that the individual had been admitted as a lawful permanent resident, and that employment was authorized to lawful permanent residents who were processed for deportation proceedings by the Investigations branch of the Harlingen INS Office, and who, at the time of processing, either posted bond or were released on recognizance. Although, due to staff error, not all of the I-94's provided included the notation:  "EMPLOYMENT AUTHORIZED,"  the notation was always added whenever this omission was brought to the attention of the Defendants.  ANSREQ1:6.

25. In situations such as described in No. 22 above, it was Defendants' practice to put a notation on the I-94, indicating that the individual was under deportation proceedings, and that bond had been posted, if the individual had been released on bond. Additionally, although it was not the practice to do so, notations were sometimes erroneously placed on the I-94, indicating that it was not valid for re-entry to the United States.  However, this

12

557

notation was always deleted, whenever Defendants were notified that this had occurred.  ANSREQ1:9.

26.  Between February 22, 1993 and July 15, 1994, when a proposed class member who had been detained at the Port Isabel Service Processing Center posted bond or was released on recognizance, if the individual or his representative did not specifically request such a document, it was <u>not</u> Defendants' practice to provide any evidence of his status as a lawful permanent resident other than the bond or release papers, and the Order to Show Cause. ANSREQ1:12.

27.  As of July 15, 1994, it was <u>not</u> the practice of the Deportation branch of the Harlingen INS office or the McAllen Sector of the U.S. Border Patrol to confiscate the green cards of lawful permanent resident aliens on whom they served Orders to Show Cause and Warrants of Arrest, in situations where the individual simultaneously posted bond or was released on recognizance. ANSREQ1:14,15.

28.  On June 22, 1994, and July 22, 1994, an agent of Defendants told Plaintiffs Gracia and Herrera-Loa that the primary reason that it was the practice of his office to confiscate the individual's green card, in cases such as theirs, was a concern that if and when they were deported from the United States, they might not surrender the card, but might continue to use it illegally.  ANSREQ1:16,17.

13

29.   In four of the five cases of named plaintiffs who were in exclusion proceedings when this litigation commenced (Ascencio, Merino, Sanchez, and Cantu), the Immigration Judge has already found that their departures were not in fact "brief, casual, or innocent," but rather, that their departures were "meaningful." ANSREQ2:7.

## II.   MATERIAL FACTS IN DISPUTE

There are no material facts which are in dispute.

## III.   IMMATERIAL FACTS IN DISPUTE

1.   Certain information relating to Julio Herrera-Loa is in dispute.  It was not previously addressed by Defendants in their Answer, as Mr. Herrera was not mentioned in the Plaintiffs' Second Amended Petition.  FACTS:5,6.  It is not material to the resolution of this case, however, as Mr. Herrera is no longer a named plaintiff.  See Id.

2.   With respect to Mr. Lopez' December 23-24, 1994 alleged incident (FACTS:17,18), after reasonable inquiry, the information known or readily available to defendants is insufficient to enable them to admit or deny.  FACTS:17-18; ANSREQ2:4-6.  Additionally, Note 6, page 7 of the Plaintiffs' Statement of Material Facts is objected to, as there is no record evidence to demonstrate what the

14

555

unnamed official alluded to thought on that occasion.  FACTS:16, Note 6.

3.   Plaintiffs' statements (FACTS:27), that in exclusion cases Defendants often also confiscate other documents, such as a (valid) U.S. drivers' licenses, state issued identification cards, and Mexican passports; and that Defendants have in some cases refused to return such documents unless and until exclusion proceedings are terminated in favor of the permanent resident, was denied by Defendants in their Answer.  ANS:29(B).  Nevertheless, it is immaterial as Plaintiffs have not raised as an issue in this case whether Defendants have a right to seize certain documents for the purpose of using them as evidence in exclusion proceedings.

4.   Plaintiffs' claim, that many LPR's are deterred from making "brief, casual, and innocent" departures while in <u>deportation</u> proceedings by the actions of Defendants (FACTS:29), is not supported by any facts of record, and was disputed by Defendants. ANS:31; ANSREQ2:22.   The claim, moreover, is immaterial to the resolution of the issues in this case, which involve the legal question of what <u>rights</u> LPR's have.

      Likewise, Petitioners' claim that many LPR's are deterred from making "brief, casual, and innocent" departures in <u>exclusion</u> proceedings by the actions of Defendants is nonsense.  In exclusion proceedings, unlike deportation proceedings, LPR's who are paroled into the United States pending resolution of their proceedings, are

15

560

not considered to have been admitted or to have effected an "entry." Absent having effected an "entry", an LPR who subsequently leaves the United States does not make "departure", of either kind, casual or meaningful. By regulation and caselaw, the parole status automatically terminates when the parole grantee leaves the United States.

5. Plaintiffs' contention, that the confiscation of LPR green cards has been a "source of controversy" within the Harlingen INS District Office for at least a dozen years (FACTS:33, 52), was previously denied by Defendants. ANS:35. In support of their claim, Plaintiffs have submitted only two letters they wrote and sent, several years apart, to the INS District Directors regarding one individual (Mr. Castillo). The claim is, moreover, immaterial to the resolution of any issues in this case.

6. Petitioners' contention, that requests for parole are not usually granted if an LPR's exclusion case is on appeal to the BIA (FACTS:32), was previously denied by Defendants. ANS:28. Defendants have previously stated that each request for parole is adjudicated on its own merits. ANS:28. The percentage of parole requests granted, however, is immaterial to the resolution of the issues presented in this case.

7. That an agent of Defendants allegedly told Mr. Herrera that he would automatically be deported if he traveled to Mexico without

16

561

CibPDF - www.fasfix.com

obtaining advance parole since he was in deportation proceedings (FACTS:40), was previously denied by Defendants.  ANSREQ1:10.  It is immaterial to the resolution of the issues in this case, however, both because Mr. Herrera is no longer a named plaintiff, and also because Plaintiffs have not raised any issues alleging that Defendants are deporting persons without orders from immigration judges.

8.  Petitioners' contention, that Defendants' agents from the Investigations branch told LPRs who were in deportation proceedings that I-94s could not be used to leave and reenter the United States (FACTS:41), was previously denied by Defendants.  ANSREQ1:11.  It is nevertheless immaterial to the resolution of the issues in this case because Defendants' position has been, and remains to be, that a LPR remains in such status until a final order is issued, thereby entitling him or her to reenter the United States, subject to the admissibility requirements.

9.  Petitioners' claim, that LPRs who make "brief, casual and innocent" departures from the United States are more likely to be placed in exclusion proceedings upon their return if they present an I-94 as opposed to a green card (FACTS:47), was previously denied by Defendants.  ANSREQ1:24.  As Defendants previously stated, an LPR is only placed in exclusion proceedings if he or she does not satisfy the inspecting officer that his or her departure was "brief, casual, and innocent," and that he or she is beyond a

17

doubt entitled to enter. Exhibit 3, Declaration of Larry P. Doyle. The United States Immigration Judge then determines whether the departure was "brief, casual and innocent." Indeed, in four of the five cases of named plaintiffs who were in exclusion proceedings when this litigation commenced (Ascencio, Merino, Sanchez, and Cantu), the Immigration Judge has already found that their departures were not in fact "brief, casual, or innocent," but rather, that their departures were "meaningful." Petitioners' allegation, nevertheless, is immaterial to the resolution of the issues in these motions because the issue is not whether the named Plaintiffs effected an "entry" but, rather, what rights a lawful permanent resident has in exclusion proceedings.

10.   Whether or not counsel for Plaintiffs "have the necessary resources and commitment to adequately represent the interests of the" proposed class (FACTS:48), is immaterial to the resolution of the issues in these motions. Moreover, as previously stated, Defendants are without sufficient knowledge to admit or deny the claim. ANS:44.

11.   Petitioners' claims, that the proposed class as defined is sufficiently numerous that joinder of all members is impracticable, and that there are questions of law and fact which are common to the class (FACTS:49), was previously denied by Defendants. ANS:41. Moreover, Petitioners' claim is immaterial to the resolution of the

18

563

issues which affect the named plaintiffs in this case, and are the subject of these motions for summary judgment.

12.  Plaintiffs' allegation that Defendants have acted on grounds generally applicable to the class (FACTS:50), was previously denied by Defendants.  ANS:43.  The allegation is nevertheless immaterial to the resolution of the issues presented in these motions.

13.  Plaintiffs' contentions, that the claims of the named Plaintiffs are typical of the claims of the proposed class, and that the named Plaintiffs will fairly and adequately protect the interests of the class (FACTS:51), is in dispute as Defendants previously stated that they were without sufficient knowledge to admit or deny the assertion.  ANS:39-40.  Nevertheless, the assertion is immaterial to the resolution of the issues in this case.

14.  Plaintiffs' claim, that different agents employed by Defendants follow different procedures for confiscating LPR cards (FACTS:53), is denied.  While Defendants' agents are subject to the same procedures, implementation of the procedures is not uniform, based upon the availability, or lack of, resources.  Exhibit 5, Declaration of Mario Garcia, Jr.

19

564

## IV. __STATEMENT OF IMMATERIAL FACTS NOT IN DISPUTE__

1.   That Defendants confiscated Plaintiff Lopez' Texas driver's license is not disputed by Defendants but is, nevertheless, immaterial to the resolution of the issues in this case because this action was the result of computer error and was remedied by Defendant upon notification of the error.  FACTS:16.

2. Plaintiffs' claims regarding why Plaintiffs Ascencio and Merino left the United States, and that their Texas Identification cards were confiscated, are not disputed by Defendants but are, nevertheless, immaterial as neither claim is at issue in this lawsuit.  FACTS:17.

3.   Plaintiffs' claim, that in exclusion cases, unless the individual obtains counsel, it is "very" difficult for an alien to ascertain, and follow, the procedures necessary to request that he or she be paroled into the U.S. during the exclusion proceedings, is immaterial to the issues involved in this case.   Whether Defendants are required to inform applicants in exclusion proceedings of the parole procedures when placed in exclusion proceedings has not been raised by Plaintiffs as an issue in this case.  FACTS:26.  Further, the meaning of "very" is not readily quantifiable, since upon asking an immigration inspector how to apply for a permit to enter or be paroled into the United States,

565

the applicant for admission will be informed of parole procedures. Exhibit 3, Declaration of Larry P. Doyle.

## V.   "MATERIAL FACTS" WHICH ARE REALLY LEGAL
##      ARGUMENT AND ARE THEREFORE OBJECTIONABLE

1.   The first sentence in Paragraph 21 and footnotes 8 and 9 which accompany that sentence consist purely of legal argument, going to the heart of the issues in this case, and are therefore misplaced. FACTS:19; NOTES 9,10).

21

566

2.  The assertions claimed to be "fact" in paragraph 28 and note 12 of Plaintiffs statement of facts are really assertions of legal argument from an unrelated case (Mr. Molina is not a named Plaintiff in this case; nor is it asserted that he fits within the proposed class).  FACTS:28; NOTE 12.

3.  Contrary to Plaintiffs' contention, whether an alien who is paroled into the United States has effected an "entry" or has been "admitted" to the United States for purposes of Title 8 of the United States Code, is a question of law, not fact.  FACTS:32.  Similarly, whether a grant of parole terminates automatically upon an alien's departure from the United States is a question of law, not fact.  FACTS:32.

Respectfully submitted,

GAYNELLE GRIFFIN JONES
UNITED STATES ATTORNEY

MARK C. WALTERS
Assistant Director

_____
REGINA BYRD
NELDA C. REYNA
Attorneys
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
Post Office Box 878
Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 616-4860

Attorneys for Defendants

22

**EXHIBIT (12)**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO, ET. AL.,                    )
                  Plaintiffs,         )
                                      )
vs.                                   )   Civil Action No. B-94-215
                                      )
E.M. TROMINSKI, DISTRICT DIRECTOR,    )
ET. AL.,                              )
                  Defendants.         )
_____  )

### SECOND DECLARATION OF JOHN D. CARTE

My name is John D. Carte, an Assistant District Counsel in New
Orleans, LA, for the Immigration and Naturalization Service, United
States Department of Justice. With regard to the above captioned
case, I state as follows:

1.    I make this second declaration to amplify my statements made
      in my Declaration of John D. Carte ("Declaration"), dated
      April 19, 1995.

2.    I have reviewed my prior Declaration; it is neither in error
      nor inaccurate, to the best of my recollection.

3.    My Declaration was not, and is not, intended to have been an
      all encompassing written summary as to each and every term of
      the agreements between myself and plaintiffs' attorney, Lisa
      S. Brodyaga. However, by this statement, I in no way mean to
      imply that there was no verbal agreement between the parties
      as to the Plaintiff's First Set of Requests for Admission.
      There was a specific agreement:  no response by the United
      States was required to Plaintiff's First Set of Requests for
      Admission until the necessary background research was
      completed to determine the factual bases as to each and every
      numbered request.

4.    There were a number of cases within the Southern District of
      Texas, in both the Brownsville and McAllen Divisions, in which
      attorney Brodyaga and I appeared as opposing counsel. In most
      cases, if not all, we had informal, unwritten agreements as to
      how the case would be handled. These verbal agreements were
      a reasonable accommodation among attorneys faced with
      litigating a complex class action case as an effective way of
      appropriately litigating such a case before the federal
      judiciary.

5.    After the above case was assigned to me as a civil Special
      Assistant United States Attorney ("SAUSA"), I and attorney
      Brodyaga entered into a negotiated agreement in the above
      case.   We agreed that she would be given a face-to-face
      meeting with the Deputy District Director, for the purpose of
      expressing her views and concerns about the above case.   I in
      turn obtained an agreement that all past deadlines, including
      answering the plaintiffs' complaint and responding to the
      plaintiffs' request for admissions, were effectively extended.
      The above case was in essence "begun again," following a
      meeting on January 11, 1995 between the Harlingen Deputy
      District Director, the Harlingen District Counsel, myself, and
      attorney Brodyaga.

6.    On March 8, 1995, my resignation as SAUSA was necessitated.
      I was immediately relieved of responsibility on my civil
      cases, including the above case; my civil cases were to be
      reassigned.   (I concluded my responsibility on all criminal
      cases   on   March   31,   1995,   and   they   were   immediately
      reassigned.)   I promptly notified Attorney Brodyaga that I was
      relieved of responsibility on my civil cases, including the
      above case.   No deadline had then been missed by me on the
      above case, as extensions had been verbally agreed to by the
      parties.

7.    Essentially all matters were still on the "table" in the above
      case.   I discussed with attorney Brodyaga any progress or
      delays I encountered.   For example, she was advised when
      critical personnel within the agency were unavailable, due to
      being temporarily detailed out of the Harlingen District or
      for some other reason, so that they were unable to advise me
      as to an allegation's validity, and I thus needed an extension
      of   time.     Such   was   the   situation   with   regard   to   the
      defendants' response to Plaintiffs' First Set of Requests for
      Admission.   These admissions were discussed in general terms
      by the parties.   I was never in a position to finally and
      conclusively state whether any, or all, of the requested
      admissions necessitated a response because the background
      research into the validity of the requests had not been
      completed.     Consequently,   I   never   stated   that   the   only
      disputed issue was the number of members in the proposed
      class.

8.    The parties were negotiating to see whether issues in the
      above case could be narrowed and if any parts could be
      resolved without the necessity of further litigation before
      the court.   Again, critical personnel within the agency were
      unavailable   so   these   negotiations   were   delayed   or   side-

2

tracked. Thus, attorney Brodyaga and I continued the above case by verbal agreement.

9. Part of the verbal agreement reached by the parties was that should negotiations stalemate, then upon reasonable notice it would be appropriate to seek resolution before the court. "Reasonable notice" was not defined by the parties. A fundamental principle upon which attorney Brodyaga and I had always agreed upon was that there would be no surprise actions taken by either the plaintiffs or defendants. Attorney Brodyaga was kept informed, in general terms, as to my workload when it impacted on the progress of the above case (or another case we had pending in the Southern District of Texas). Thus, extensions granted to me in the above case were tied to matters relating specifically to the above case, to other pending cases the parties had pending, and to the volume of my workload as a SAUSA.

PURSUANT TO TITLE 28 U.S.C. SECTION 1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON OCTOBER 11, 1995.

JOHN J. CARTE
Assistant District Counsel

3

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing DEFENDANTS'
STATEMENT OF MATERIAL FACTS AS TO WHICH THERE EXISTS NO SUBSTANTIAL
CONTROVERSY, AND OBJECTIONS TO PLAINTIFFS' AMENDED STATEMENT OF
MATERIAL FACTS was mailed via first class mail, postage prepaid to
attorneys for plaintiffs at:


Lisa S. Brodyaga, Esq.
402 E. Harrison, 2nd Floor
Harlingen, Texas  78550

Thelma O. Garcia, Esq.
301 E. Madison
Harlingen, Texas  78550

Served on this the ___23rd___ day of August, 1995.

Regina Byrd
Attorney for Defendants

572