UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 2 5 1995

Michael N. Milby, Clerk

ASCENCIO, et al                )
                               )
v.                             )        C.A. No.   B-94-215
                               )
TROMINSKI, et al.              )
_____)

SUPPLEMENTAL POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
(OPPOSED) MOTION TO STRIKE FROM THE RECORD DEFENDANTS' ANSWERS
TO PLAINTIFFS' FIRST AND SECOND SETS OF REQUESTS FOR ADMISSION, AND
ALL REFERENCES THERETO, AND

OPPOSITION TO DEFENDANTS' ALTERNATIVE MOTION TO WITHDRAW MATTERS
PREVIOUSLY DEEMED ADMITTED BY DEFAULT, AND REQUEST FOR EVIDENTIARY
HEARING, IF THE COURT DEEMS IT NECESSARY TO RESOLVE ANY FACTUAL
QUESTIONS RAISED BY THE DECLARATIONS OF DEFENDANTS' PRIOR COUNSEL.

Come Plaintiffs, through the undersigned, and respectfully file the
instant Supplemental Points and Authorities, in Support of their
Opposed Motion to strike from the record Defendants' belated
Answers to Plaintiffs' First and Second Sets of Requests for
Admission, and all references thereto.  Simultaneously, Plaintiffs
would hereby oppose Defendants' alternative motion to permit
withdrawal of the matters therein deemed admitted by default, and
would request a hearing, if the Court considers that the
Declarations of Defendants' prior counsel raise any factual issues
which are not readily disproven simply by reference to the record.

In their opposition to Plaintiffs' motion to strike, and in support
of their alternative motion to allow withdrawal of their default
admissions, [1]  Defendants would rewrite history, and use a
dramatically altered version of events as the basis of an estoppel

_____

[1]  "Defendants' Opposition to Plaintiffs' (Opposed) Motion to
Strike Defendants' Answers to Plaintiffs' First and Second Requests
For Admission; and in the Alternative, If the Court Deems the
Matters Admitted, Defendants' Motion to Permit Withdrawal of All
Admitted Matters," (hereinafter cited as (OPP2:__).

475

CVAPDF - www.fesio.com

against Plaintiffs.  This revision is based exclusively on one or more alleged oral agreements by Plaintiffs, the existence of which is not only vehemently denied, but is contradicted by clear and unequivocal evidence on the record herein.

I.  THE POSITION CURRENTLY TAKEN BY DEFENDANTS IS VAGUE, ILLOGICAL, AND INTERNALLY INCONSISTENT.

Defendants assert, (OPP2:2), that their Answers to Plaintiffs' First and Second Sets of Requests for Admission, first handed to Plaintiffs as they entered Court on April 26, 1995, are timely, because Plaintiffs allegedly agreed to:

> extend the due dates for submission of defendants' answers to plaintiffs' First and Second Requests for Admission, inter alia, as long as the parties continued to progress in settlement negotiations.

Although Defendants do not specify with whom, or when the agreement was allegedly made, logically it had to have been with Mr. Rose, or Bill Peterson, since replies to the First Set of Requests for Admission were due in August of 1994, while they were responsible for the case.  However, since the Second Set of Requests for Admission was not served until February 16, 1995, it could not have been included in any agreement made in August of 1994.

Moreover, had such an agreement been negotiated, Defendants' Answers to the First Set of Requests for Admission would have been due no later than October, 1994, because the parties had by then ceased to "progress in settlement negotiations," (Plaintiffs' Exhibit E).  Defendants made no good faith effort to finalize the agreement reached, and announced to the Court, on August 1, 1994. They have subsequently made no counter offers, and are now defending each and every aspect of the conduct challenged herein; see, Defendants' Opposition to Plaintiffs' Motion For Partial Summary Judgment, and Counter Motion for Summary Judgment.

2

476

Defendants also claim that Plaintiffs agreed that, if negotiations failed, Plaintiffs would give Defendants a "reasonable period of time to respond to plaintiffs' pleadings and other documents before seeking a resolution from the Court," (OPP2:4). Apparently Defendants consider this additional embellishment necessary to get over the hurdle that there was no "progress in settlement negotiations" after August of 1994. The fact that even the tentative agreement reached with Mr. Rose had fallen apart is demonstrated by Petitioners' Motion For Class Certification, filed December 6, 1994, and served on Nancy Masso, AUSA, Howard Rose, SAUSA, and Bill Peterson, INS General Attorney.

In the Motion for Class Certification, Plaintiffs stated, (at p. 1), as follows:

> Defendants admitted that this practice violates the mandate of cases such as Molina v. Sewell, 983 F.2d 676 (5th Cir. 1993) (fact that lawful permanent resident is under deportation proceedings does not alter his status as lawful permanent resident), and Etuk v. Slattery, 936 F.2d 1433 (2nd Cir. 1991). Settlement negotiations commenced, and for a while, seemed promising.
>
> However, [intervention by] the Court will be necessary in order to reach, and to enforce, a just settlement. The course of action undertaken by Defendants, supposedly to "cure" the problem, has resulted in egregious injustices. Petitioners have not been allowed to participate meaningfully in the formulation of the proposed "remedial" actions. No reply was received in response to Exhibit E, and [a later] attempt to reach Defendants' counsel by phone, with respect to the problems outlined therein, was unsuccessful.

Defendants' concept of a "reasonable time" is also remarkable, since the purported Answers to the First Set of Requests for Admission were presented to Plaintiffs on April 26, 1995, more than six months after the settlement unravelled, in October, 1994.

3

477

Defendants also claim that, in exchange for the privilege of meeting with certain INS personnel on January 11, 1995, [2] Plaintiffs allegedly agreed to allow the case to be "begun again," (OPP2:3-4) (Defendants' Exhibit 12, at 2). By this, Defendants appear to claim that Plaintiffs agreed to allow Defendants to respond to the First Set of Requests for Admission, de novo, as if there had never been a default. This is simply false, as is shown, inter alia, by Mr. Carte's first Declaration, (Defendants' Exhibit 2), in which he admits that the agreement was limited to situations where "it would be inaccurate or misleading to let an admission stand without a response."

Although Mr. Carte attempted to persuade his employer to finalize the agreement reached with Mr. Rose, and/or to resume negotiations, he was unsuccessful. The meeting of January 11, 1995, (see, Defendants' Exhibit 12), was so unproductive that virtually immediately thereafter, on January 17, 1995, Plaintiffs sought leave to file their Second Amended Complaint, and, on February 16, 1995, served their Second Set of Requests for Admission.

When it was learned that Mr. Carte had been removed from the case, Plaintiffs decided that enough was enough, and refused to agree to any further extensions beyond March 24, 1995, for submission of outstanding pleadings, and evidence to show that "it would be inaccurate or misleading" to allow any of the First Set of Requests for Admission to "stand without a response." To surmount this hurdle, Defendants resort to pure slight of hand, (OPP2:3-4):

> As a result of the ongoing discussions between the
> parties, the March 24, 1995 due date unilaterally imposed

---

[2]   The fact that negotiations were not proceeding in good faith can also be seen by Defendants' claim that they obtained concessions from Plaintiffs just for agreeing to a meeting at which Plaintiffs' counsel could "express her views and concerns" about the case, see, Defendants' Exhibit 12, at pp. 1-2.

4

47P

by plaintiffs' counsel was pushed back.

The authority cited for this statement is page 4 of Plaintiffs' (Opposed) Motion for Default Judgment, which, unfortunately for Defendants, says exactly the opposite, (emphasis added):

> [Ms. Byrd] also requested that the deadlines noted in Exhibit "P" be further extended, which request Plaintiffs' counsel conditioned upon an agreement to provide some form of temporary relief to Ms. Ascencio-Guzman and Mr. Garza-Pacheco, so that they would not be harmed by further delay in the case. <u>No such agreement was reached</u>, <u>so the deadlines were not further extended</u>.

Defendants make no attempt to explain how they reached the conclusion that the deadlines were "pushed back" from Plaintiffs' assertion that they "were not further extended."

II.  SOME OBSERVATIONS ON THE NATURE OF THE EVIDENCE PRESENTED BY DEFENDANTS, AND REQUEST FOR HEARING IF THE COURT DEEMS IT NECESSARY TO RESOLVE ANY FACTUAL ISSUES.

It must also be noted that the <u>only</u> evidence to which Defendants have tendered in support of their contentions are the Declarations of two prior counsel.  Such Declarations must be taken with a generous helping of salt, as the Declarants doubtless must justify their conduct for professional reasons, and it is always easier to blame the opposition than one's client, (i.e., one's employer), much less one's own self, for any lapses.

In his Declaration, (Defendants' Exhibit 1), Defendants' first attorney, Howard Rose, purports to set forth events extending into the fall of 1994, [3]  but admits that his role after the initial

---

[3]  Mr. Rose claims that "settlement negotiations proceeded during the fall of 1994." If by "settlement negotiations" he means offer/counter-offer, this is not true, as no other Attorney was ever empowered to make any offers or agreements on behalf of

5

479

announcement that a settlement had been reached, on August 1, 1994, was very limited.  A new SAUSA, Bill Peterson, had been designated, but not sworn in.   Thereafter, Mr. Rose was only supposed "to review and sign the pleadings which were to be drafted by Mr. Peterson," and when Mr. Peterson was sworn in as SAUSA, Mr. Rose was to "sit second chair," (<u>Id</u>. at p. 1).

From August to December, 1994, virtually all of Plaintiffs' direct contacts were with Mr. Peterson.  The principal exception was in mid-October, 1994, when serious problems arose with the proposed settlement negotiated by Mr. Rose. At that time, Plaintiffs sought his assistance in resolving the problems, (<u>Plaintiffs' Exhibit E</u>).

However, no corrective measures were taken.  It was by then crystal clear that the August 1, 1994 agreement was in grave jeopardy. Since INS refused to formalize the agreement made by Mr. Rose, and tendered   no   counter-proposals,   Plaintiffs   concluded   that intervention by this Court would be necessary to reach,  and enforce, a just settlement.  As a result, on December 6, 1994, Plaintiffs filed their motion for class certification, relying heavily on the First Set of Requests for Admission, to which Defendants had never responded.

Primary responsibility for the case rested with Mr. Peterson from August to December, 1994, and it was his responsibility to draft any pleadings, (Defendants' Exhibit 1).  One would therefore expect that any requests for extensions of time to respond to the Requests for Admission would have been negotiated by him.   Yet INS has presented no Declaration from Mr. Peterson, a glaring gap in their already flimsy evidentiary basis for their claims.

Similarly, if Defendants had believed, in December, 1994, that an

---

Defendants, and Mr. Rose made none after the original agreement of August 1, 1994, which agreement has been disavowed by INS.

6

480

agreement existed such as is now claimed, one would have expected
that either Mr. Rose, or Mr. Peterson, to take immediate steps to
correct the error, by filing a Rule 36(b) motion with the Court.

Yet Defendants filed no pleadings at all, (and responded to no
discovery), until December 20, 1994, when a new SAUSA, Defendants'
second managing attorney, John Carte, filed a notice of
substitution, and an unopposed motion to delay filing Defendants'
answer to Plaintiffs' First Amended Complaint, until January 21,
1995.   Significantly, nothing was filed, even at that time,
relating to the First Set of Requests for Admission.

The Declarations of Mr. Carte prepared in April, and October, 1995,
must be seen in the context of his removal from responsibility for
the case, and his own admission that they were not intended as "an
all encompassing written summary as to each and every term of the
agreements" made with Plaintiffs, (Defendants' Exhibit 12, p. 1).
This caveat is particularly important, since the two Declarations
submitted by Mr. Carte appear to be mutually inconsistent.

Mr. Carte acknowledged in the first Declaration, (Defendants'
Exhibit 2, at p. 2), that the agreement reached with respect to the
First Set of Admissions contained conditions, ("It was agreed that
if it would be inaccurate or misleading to let an admissions stand
without a response, the United States could file its response to
any and all questions posed").  [4]   A crucial condition, to wit,
that the determination of inaccuracy would be a mutual one, made
upon presentation of evidence demonstrating the falsity of the
admission, was not set forth therein.  As Mr. Carte admitted, the
Declaration was not "all-encompassing," and anything which would
have been favorable to Plaintiffs was apparently omitted.

---

[4]   Even this is not quite accurate, as Mr. Carte had already
acknowledged that the truth of some of the admissions had been
verified, and others were too obvious to dispute.

481

In his Second Declaration, (Defendants' Exhibit 12, at p. 2), Mr. Carte takes a position which appears to contradict his first Declaration. He claims therein that the case was "in essence, 'begun again'" following the meeting on January 11, 1995. This phrase is then interpreted by Defendants' current counsel as an extension of the alleged open-ended agreement that Defendants did not need to file anything, "so long as the parties continued to progress in settlement negotiations," (OPP2:2). According to Defendants, this renders both sets of Answers "timely," (OPP2:1-3).

In his Second Declaration, Mr. Carte does not deny any of the specific assertions of matters which would be within his knowledge, as set forth in the Declaration of Lisa S. Brodyaga, filed September 13, 1995, in support of Plaintiffs' Motion to Strike and for Extension of Time, (hereinafter cited as (LSB:__)). Should he dispute any such assertions, it would be expected that he would deny them, and his failure to do so constitutes an admission of their truth, c.f., <u>Southern Stone Co. Inc. v. Singer</u>, 665 F.2d 698, 702-703 (5th Cir. Unit B, 1982), and the authorities cited therein.

Specifically, Mr. Carte does not deny that he advised Plaintiffs' counsel that Mr. Rose had a different recollection regarding the events surrounding the First Set of Requests for Admission, and that this fact was one of the reasons that Plaintiffs agreed to allow the withdrawal of those admissions "with respect to which Defendants produced evidence that the admission, as formulated, was factually incorrect," (LSB:1-2). [5]

Defendants' current version of events is simply false, as is easily

---

[5] This is important not only because it demonstrates that the agreement was limited to instances where <u>evidence</u> was produced, but also because it shows that the issue was discussed by Mr. Rose and Mr. Carte, prior to making the agreement, and that Mr. Rose was therefore aware long before April, 1995, that there was a problem regarding the First Set of Requests for Admission.

8

demonstrated from the record herein. After reviewing the record, there should be no doubt but that Plaintiffs never made any such agreements, and that, to the contrary, they have been seriously prejudiced, not only by the tardiness of the Answers themselves, but also by the late date at which Defendants opted to assert their claim that they should be relieved from their default, and permitted to file Answers to either or both of Plaintiffs' Sets of Requests for Admission. However, should the Court consider that there are any such lingering doubts, Plaintiffs would request an evidentiary hearing on the issue, at which the attendance of <u>all</u> current and prior counsel should be required.

It would constitute a miscarriage of justice to allow Defendants to make their case only by means of Declarations whose makers are not subject to cross-examination, particularly where at least one of the Declarants has enough integrity to admit that his Declarations are not "all-encompassing," i.e., do not contain the <u>whole</u> truth.

However, Plaintiffs submit that it is not necessary to reach this point, insofar as the record itself demonstrates that no such agreements as alleged by Defendants ever existed.

III. THE HISTORY RELATING TO PLAINTIFFS' FIRST AND SECOND SETS OF REQUESTS FOR ADMISSIONS, AS SHOWN BY THE RECORD HEREIN.

Plaintiffs' First Set of Requests for Admission, (<u>Plaintiffs' Exhibit G</u>), was served on Defendants on or about July 23, 1995. Timely Answers were not submitted. After his initial appearance on August 1, 1994, Mr. Rose turned the case over to Mr. Peterson, (Defendants' Exhibit 1). However, by October, 1994, it was clear that Defendants were unwilling, or unable, to formalize even that agreement which had been reached, and announced, by Mr. Rose on August 1, 1994, (<u>Plaintiffs' Exhibit E</u>).

Between August, 1994, when Mr. Rose ceased to play an active role

CutePDF - www.fenriz.com

in the case, (Defendants' Exhibit 1), and December, of 1994, when Mr. Carte filed his notice of substitution, INS made no efforts to settle the case other than actions taken, supposedly to implement the proposed agreement, according to their own criteria. Moreover, the actions taken were, for the most part, not even directed at members of the putative class, and served only to trap and deport the unwary. [6]   Input from Plaintiffs was not permitted, and Plaintiffs' objections went unheeded, (Plaintiffs' Exhibit E).

As a result, on December 6, 1995, Plaintiffs' Motion for Class Certification and Request for Hearing Thereon was filed, (here-inafter cited as (CLASS:__). In addition to advising the Court of the problems noted above, Plaintiffs asserted as follows:

> Defendants also failed to reply to Plaintiffs' First Set of Requests for Admission, served on or about July 23, 1994, (Petitioners' Exhibit G, hereby incorporated by reference). Nor was any request made for an extension of time with respect thereto. Under Rule 36(a), F.R.Civ.P., Defendants' failure to deny the matters contained in the request for admission constitutes an admission of the truth of said matters.

At this time, Defendants were represented only by Mr. Rose, and in a much more limited capacity, by Nancy Masso, AUSA. Mr. Rose's designated successor, Mr. Peterson, had already been scheduled to leave the area for six months, and had advised Plaintiffs that he would no longer be working in the case, (CLASS:5-6).

Yet Defendants made no attempt to deny any of the representations contained therein until April 26, 1995, when Mr. Rose submitted a

---

[6]   To this date, Defendants have refused to provide the information necessary to determine whether any of the people so deported were class members. Defendants have never provided any response to Plaintiffs' Request for Production of Documents, directed, in part, at determining this fact. Plaintiffs' Motion to Compel same has been pending before this Court since May 10, 1995.

Declaration stating that it was his "recollection" that there had been an agreement that he need not respond to the Requests for Admission "while these settlement negotiations proceeded," (Defendants' Exhibit 1, p. 2). Even then, however, Defendants opted not to seek an Order from this Court, under Rule 36(b), relieving them from their default.

Defendants' failure to promptly deny the representations contained in Plaintiffs' Motion for Class Certification constitutes an admission that, indeed, no extension of time in which to reply to the First Set of Requests for Admission, had been requested. It also constitutes acquiescence in Plaintiffs' assertion that the First Set of Requests for Admission was deemed admitted; c.f., Southern Stone Co. Inc. v. Singer, supra.

On December 20, 1994, Defendants' second managing attorney, John Carte, filed a notice of substitution as counsel for Defendants. Simultaneously, he filed an unopposed motion for extension of time in which to respond to the First Amended Complaint, until January 21, 1994 [sic]. In said motion, Defendants stated as follows:

> In support of this request for extension, the Federal Defendants respectfully submit the undersigned has resumed negotiations with Plaintiffs' counsel regarding the fundamental issues raised in Plaintiffs' first amended petition for writ of habeas corpus. Furthermore, negotiations as to various matters relating to a potential class [sic] necessary for certifying the class are pending.

Conspicuously absent was any mention of Plaintiffs' First Set of Requests for Admission, (hereinafter referred to as the "First Admissions"). This further demonstrates that, at this time, Defendants acknowledged that the First Admissions had been deemed admitted, by default.

11

485

The very fact that a motion was filed also shows that there was no open-ended agreement, that Defendants need not file anything so long as settlement negotiations "progressed." Had there been such an agreement, the motion for an extension of time to a specific date in the relatively near future would have been inappropriate.

After taking over the case, Mr. Carte advised the undersigned that Mr. Rose had a different recollection of events relating to the First Set of Requests for Admission. [7]   Plaintiffs therefore agreed to a compromise solution, in part as a question of fairness, and, in part, in order to ensure that no matters which were, in fact, false, were placed before the Court as established fact. As a further incentive, Defendants offered Plaintiffs the opportunity to discuss the case with certain INS personnel.

The agreement was that, if there were specific matters in the First Admissions which were factually incorrect, and upon presentation of evidence to this effect, Plaintiffs would permit the withdrawal of Defendants' default admission of same. This formula was chosen to prevent any "game playing" on the part of Defendants, particularly since Mr. Herrera-Loa was by then deceased, and a number of the admissions related to matters involving him.

The only Admission specifically discussed in this context was the size of the class, although the door was not closed that Defendants might, upon investigation, discover that other matters were incorrect. Had this occurred, and upon presentation of evidence of this fact, Plaintiffs would have allowed other admissions to be

---

[7]     In his Declaration, Mr. Rose claims that he "was never contacted by Mr. Carte or anyone in the Harlingen District about this case until March 1995, when [he] was called by Attorney Regina Byrd," (Id. at 3).   However, a large part of the reason that Plaintiffs made an accommodation with Defendants regarding the First Set of Requests for Admission was that Mr. Carte advised the undersigned that Mr. Rose had a different recollection of the matter, (c.f., Plaintiffs' Exhibit AA, at pp. 1-2).

486

withdrawn. However, no evidence with respect tending to cast doubt on _any_ of the matters admitted has ever been presented.

The initial extension of time to respond to Plaintiffs' First Amended Complaint, and the withdrawal of the Motion for a Preliminary Injunction, were granted because a settlement was pending, which settlement INS was never willing to formalize.

Following the meeting on January 11, 1995, it was clear that hopes of settling any portion of the action were fading. Therefore, on January 17, 1995, Plaintiffs filed their Second Amended complaint.

In one last attempt, on February 8, 1995, Plaintiffs put into writing the areas where settlement had once seemed possible, and set a deadline for an agreement, in a document entitled "Proposed Partial Settlement," (_see_, Plaintiffs' Exhibit P). No reply, or counter-proposal, was ever received.

As previously noted, Defendants had requested an extension to answer the complaint, until January 21, 1995, with the consent of Plaintiffs. Given the situation as it existed after the January 11, 1995, meeting, the only reason for agreeing to further extensions of time, was one of professional courtesy, a personal accommodation to John Carte, in light of the difficulties he was experiencing in his role as SAUSA. [8]

At Mr. Carte's request, this deadline was further extended past January 21, 1995. These extensions were not based on the "progress" of settlement negotiations, however, but on the fact

---

[8] These difficulties were alluded to during the hearing on April 26, 1995, although Defendants denied that they existed. However, Plaintiffs had been informed that it was becoming increasingly difficult for the SAUSA to do the work assigned to him, in part because of restrictions as to where he was physically allowed to perform what tasks, and in part, for other reasons.

487

that, due to difficulties in his office, Mr. Carte had been unable
to complete the work, which by then included not only the answer to
the complaint, but production of documents, and eventually, the
Second Set of Requests for Admission, filed February 16, 1995,
(Plaintiffs' Exhibit O).   The last such extension, for a "few
days," was agreed to in early March, 1995, when the situation
reached the point of crisis, (Plaintiffs' Exhibit CC, herein
incorporated by reference).

When Plaintiffs learned that Mr. Carte would be replaced by yet
another (new) attorney for Defendants, Plaintiffs' patience was
exhausted, and there was, from Plaintiffs' point of view, no reason
to agree to further extensions.  Given the history of the case, and
in order to prevent exactly the type of "he-said-she-said" to which
Defendants have presently resorted, Plaintiffs considered it
prudent to put matters into writing.

Consequently, on March 17, 1995, Plaintiffs served on Defendants a
document, captioned "Advisal of Due Dates for Answering the Instant
Complaint, And Responding to Plaintiffs' First Set of Requests For
Production of Documents and Plaintiffs' Second Set of Requests for
Admission and Similar Unresolved Matters, advising in relevant
part, as follows, (Plaintiffs' Exhibit P):

>    1.  As of the present, Defendants have not filed their
>    Answer to the First Amended Complaint herein, nor
>    responded to the two outstanding requests for discovery,
>    to wit, Plaintiffs' First Set of Requests for Productions
>    of Documents, served on December 5, 1994, and Plaintiffs'
>    Second Set of Requests for Admission, served on February
>    16, 1995.
>
>    Extensions of the due date for all three pleadings were
>    the subject of oral agreements between counsel for the
>    Plaintiffs, and counsel for Defendants.  However, upon
>    receipt of information that Defendants will (again) be
>    substituting counsel, and in the interest of ensuring

14

488

that there be no misunderstandings with respect thereto, Plaintiffs hereby advise that the Answer to the Complaint, and the responses to the First Set of Requests for Production of Documents, and to the Second Set of Requests for Admission, are due no later than March 24, 1995, and that it is not anticipated that further extensions will be granted, except upon Order of the Court.

2.    Plaintiffs would also note that it had been orally agreed between the Parties that, if Defendants could provide evidence demonstrating that any of the admissions were factually incorrect, which admissions had been made by default when Defendants failed to respond to Plaintiffs' First Set of Requests for Admission, Plaintiffs would agree to the withdrawal of said admission.  To date, no such evidence has been tendered. Plaintiffs would advise Defendants that any such evidence is also due on or before March 24, 1995.   After that date, any requests for withdrawal of admissions made by default will have to be directed to the Court.

. . .
4.    There has also been no resolution as of yet to the problem of Jesus Garza-Pacheco, A31 298 296.  Plaintiffs assert that he is a member of the putative class herein, for the reasons set forth in their letter of February 17, 1995, a copy of which was forwarded to counsel for Defendants.

Mr. Garza-Pacheco has, at present, no valid document authorizing that he be employed in the United States. Plaintiffs have made several suggestions as to means by which he could be provided with such a document, while still taking into consideration the concerns of Plaintiffs, which arise from the fact that his case is, admittedly, a procedural nightmare, and his status as a member of the putative class herein is in question.   To date, however, Defendants have not accepted any of Plaintiffs' suggestions, offered any counter-suggestions, or replied to Plaintiffs' letter.

Plaintiffs therefore advise that, if no resolution of

15

this issue has been reached by March 24, 1995, Plaintiffs
will also bring the matter to the attention of the Court,
and request that the Court hold a hearing with respect
thereto.

5.  Finally, Plaintiffs would remind Defendants that the
deadline for accepting the Proposed Partial Settlement,
of February 8, 1995, was, according to its terms, "the
date of the next court appearance," which was set for
April 7, 1995.  After that date, re-negotiation will be
required.  As of the present, no reply has been received
to the Proposed Partial Settlement.

This document was accompanied by a cover letter, and was served on
the only known Attorney still involved in the matter, Nancy Masso,
AUSA, (Plaintiffs' Exhibit CC).   Said cover letter stated, in
relevant part, as follows:

I  am  very  concerned  about  the  recent  developments
regarding the removal of the SAUSA who has been working
on  the  instant  case.   As  he  informed  you,  I  agreed  to
extend the imminent deadlines for outstanding pleadings
for "a few days" when the difficulties first erupted.   I
have  since  been  informed  that  he  has  been  removed  from
his duties as SAUSA.   In order that there be no question
as  to  where  we  stand,  I  have  prepared  the  accompanying
document.    In  the  hopes  that  matters  can  still  be
resolved, I will not file it with the Court at this time.

Once again, the representations made therein went unchallenged, and
discussions with both Ms. Masso, and Mr. Carte, confirmed to the
undersigned that none was disputed.   In particular, there was no
dispute but that Plaintiffs were within their right in refusing to
agree to extend the deadline beyond March 24, 1995, and that the
agreement to allow withdrawal of any of the First Set of Requests
for Admission was contingent upon the production of "evidence
demonstrating that any of the admissions were factually incorrect."

Indeed,  Mr.  Carte's  first  Declaration,  drafted  in  response  to

16

490

Plaintiffs' Motion for Default Judgment, acknowledged that the agreement to allow the withdrawal of any of the defaulted admissions from the First Set of Requests for Admission had been limited to situations where it "would be inaccurate or misleading to let an admission stand without a response." If the terms of that agreement were not as stated by Plaintiffs in their Advisal of Due Dates, (<u>Plaintiffs' Exhibit P</u>), it would have been logical to set forth any disagreement at that time.

Shortly after serving the Advisal of Due Dates, the undersigned received a call from Defendants' current counsel, Regina Byrd, in which she requested an additional extension. Plaintiffs conditioned their agreement to this request on Defendants' willingness to provide temporary relief to Mr. Garza-Pacheco, and a named Plaintiff, who were being prejudiced by the seemingly endless delays. Defendants refused, and Plaintiffs consequently refused to agree to a further extension of time.

March 24, 1995 came and went. As of March 28, 1995, Defendants had still done nothing:  they had presented no evidence to demonstrate the incorrectness of any of the First Set of Admissions; they had filed no Answer to the First Amended Complaint, no reply to the outstanding motions and pending discovery requests, and no motion to the Court for further extensions of time.

Therefore, on March 28, 1995, Plaintiffs' (Opposed) Motion for Default Judgment was filed. In said Motion, Plaintiffs set forth the pertinent history, including the fact that "[n]o responsive pleading was ever received" to Plaintiffs' First Admissions, (<u>Id.</u>, at page 1), and that by "informal agreement of counsel," the deadlines to respond to the First Amended Complaint, the Second Set of Requests for Admission, and the First Set of Requests for Production of Documents, had been extended, (<u>Id</u>. at 2).

In their Opposition to Plaintiffs' Motion for Default Judgment,

17

491

filed on April 6, 1995, Defendants made no claim that the agreement included the right to respond <u>de novo</u> to the First Admissions, as opposed to being permitted to withdraw only those admissions for which Defendants produced evidence that the admissions, if allowed to stand, would be inaccurate.   Their failure to make any such claim at that time is a strong reason for not believing it now, c.f., <u>Southern Stone v. Singer</u>, <u>supra</u>.

The first hint that there might be any problem with respect to the agreement regarding the First Set of Requests for Admission was on April 26, 1995, when, after leaving Court, Plaintiffs had an opportunity to read the materials which had been handed them as they entered Court, including what purported to be Answers to both the First and Second Sets of Requests for Admission.   The Answers to the First Set of Requests for Admission did not comport with the agreement.   To the contrary, Defendants denied therein matters which Mr. Carte had previously stated had been "verified," including some relating to an incident at which the undersigned and Mr. Herrera-Loa, who was by then deceased, had been present.

In addition, the Second Set of Requests for Admission, the reply to which was initially due on March 20, 1995, had been deemed admitted on March 24, 1995, in accordance with the terms of the March 17, 1995 advisal, (<u>Plaintiffs' Exhibits P and CC</u>).

Upon receipt of the purported Answers, Plaintiffs immediately wrote Defendants as follows, (<u>Plaintiffs Exhibit BB</u>, (emphasis added):

> Lest there be any doubt, please be advised that I do not consider that "Defendants' Answer to Plaintiffs' First Request For Admission" fits within the parameters of the agreement reached with prior counsel, that Defendants could file answers to any of the first set of requests for admission which were, in fact, untrue, and for which there was evidence to back up a denial. A number of the denials contained therein are frivolous, and are

18

492

precisely the improper "game playing" which prior counsel and I agreed would not occur, if I permitted late answers to be filed.

We are also greatly prejudiced by the tardiness of your responses to some of the matters which you are now denying, as they relate to events which transpired almost a year ago, and involve people who are now deceased, retired, or otherwise unavailable. I am also deeply offended by some of these denials, which relate to events which, as noted in the requests for admission, I personally witnessed. Such denials imply that I am asserting, as true, matters which I know to be false, and are simply insulting.

The same characterization of frivolity applies to your answers to the second set of requests for admission. Since there was no agreement with respect to this set, so far as I am concerned, the answers are untimely, and will not be considered for any purpose.

Moreover, I took your representation to the Court yesterday that there were no material facts in dispute, and that the case could proceed on motions for summary judgment, to mean that none of the pertinent matters contained in either set of requests for admission were controverted. Since you only handed me the answers as we entered Court, I had no idea at that time of their contents.

I will therefore continue to take as established any and all matters covered by either set of requests for admission, unless and until you present evidence demonstrating that something contained therein is untrue, and/or obtain a Court Order permitting you to make such frivolous, insulting, and tardy, denials.

This will also serve as notice that we have decided not to take depositions on June 14, 1995, as previously indicated. It would be impractical, under the schedule established by the Court, and all of the material we need is covered by the admissions.

19

453

The above letter was sent to current counsel, Ms. Byrd, with copies to John Carte, Nancy Masso, David Guerra, and Howard Rose.  Once again, Defendants did not reply to, let alone dispute, any of the assertions in Plaintiffs' letter.  And once again, by their silence, Defendants have effectively agreed that it was accurate, <u>Southern Stone Co., Inc. v. Singer</u>, <u>supra</u>.  Under these facts, if there is to be an estoppel, it should be against Defendants!

Defendants have never presented <u>any</u> evidence to back up any of the denials of either set of Requests for Admission.  Nor did they file a motion with this Court, seeking redress from their default, until October 11, 1995.  Their conduct lulled Plaintiffs into believing that the matters involved therein were not disputed.

As a result, the prejudice to Plaintiffs has escalated, because Plaintiffs did not seek alternative sources of documentation, and proof, for the matters which Defendants would now deny.  With the additional passage of time, such proof would be ever more difficult to obtain.  A key Plaintiff is now deceased, and Plaintiffs cancelled the depositions which had been tentatively scheduled for June of 1995, (<u>Plaintiffs' Exhibit BB</u>).  And the time to present evidence in support of the motion for Summary Judgment has passed.

Significantly, it was not until after Plaintiffs had filed their Motion for Summary Judgment, that Defendants sprung their latest trap, attempting to simply insinuate their tardy, and mostly frivolous, Answers into the record, without seeking leave of Court, as contemplated by Rule 36(b).  It was only when they were challenged, through the instant Motion to Strike, that Defendants even attempted to justify their use.

IV.  DEFENDANTS HAVE SERIOUSLY MISREPRESENTED THE FACTS TO THIS COURT, AND SHOULD BE MORE NEARLY SANCTIONED, THAN REWARDED WITH AN OPPORTUNITY TO WITHDRAW THEIR ADMISSIONS MADE BY DEFAULT.

20

494

In their Opposition to Plaintiffs' Motion To Strike, and alternate motion to permit withdrawal of all admitted matters, Defendants have seriously misstated the operative facts.  Even assuming that these misrepresentations are the result of lapses in communication between the various attorneys who have worked on the case, they should more nearly provoke sanctions, than the "reward" of being allowed to withdraw the admissions which have been made by default.

In addition to the inaccuracies pointed out above, Plaintiffs would note that Defendants have simply fabricated portions of their Opposition out of whole cloth.  The clearest example of this is the following claim, (OPP2:3-4) (emphasis added):

> On or about March 17, 1995, upon receipt of plaintiffs' Advisal of Due Dates, the undersigned counsel, who had been assigned as lead counsel in this case, contacted plaintiffs' counsel to advise that seven days would not be sufficient time to submit answers to all documents filed by plaintiffs. [9]  (citations omitted). Defendants' counsel requested that plaintiffs allow defendants at least thirty days to respond before moving the Court to enter a default judgment or to deem admitted any allegations not responded to by defendants. [10] Plaintiffs agreed to wait thirty days on the condition that defendants grant the relief plaintiffs requested for

---

[9]  This statement makes it sound as though Defendants had not even begun preparation of any of the pertinent pleadings; a claim which is inconsistent with the fact that, in early March, 1995, Defendants' counsel requested, and received, an extension of only "a few days" for that purpose, (Plaintiffs' Exhibit CC).  If a "few days" would have been sufficient, in early March, then those "few days" plus an additional week should have been more than ample.

[10]  If by "allegations," Defendants' counsel is referring to the Requests for Admission, as opposed to the allegations of the Complaint, this is simply not true.  There was no mention in that discussion of Plaintiffs not deeming any of the Requests for Admission to have been admitted.  Given that Plaintiffs had already done such "deeming," no later than December 6, 1994, any such request by current counsel would have drawn a response of, "I'm sorry, you are simply too late for that."

21

two aliens.  (citation omitted).  <u>As a result of ongoing
discussions between the parties, the March 24, 1995, due
date unilaterally imposed by plaintiffs' counsel was
pushed back</u>.  (<u>See</u> Attachment (5) at 4.).

Herein lies the crux of the problem.  Defendants seem to think that
they had an absolute right to indefinite extensions, and that
Plaintiffs were reduced to the role of bystanders in the process.

Defendants' Attachment (5), (Plaintiffs Opposed Motion for Default
Judgment), at page 4, specifically states that the deadlines "were
not further extended" beyond the final extension granted by
Plaintiffs, until March 24, 1995.   Defendants' claim that
Plaintiffs' Motion supports a contrary position is almost surreal.

Finally, Defendants have conspicuously omitted any reference to
Plaintiffs' letter of April 27, 1995, (<u>Plaintiffs' Exhibit BB</u>), in
which Plaintiffs advised that they would:

> ... continue to take as established any and all matters
> covered by either set of requests for admission, unless
> and until you present evidence demonstrating that
> something contained therein is untrue, and/or obtain a
> Court Order permitting you to make such frivolous,
> insulting, and tardy, denials.

Defendants never responded to this letter.  They did not seek an
Order from this Court, relieving them of their default.  Once
again, by their silence, Defendants led Plaintiffs to believe that
the discovery issue was closed.  As a result, Plaintiffs not only
advised the Court on April 26, 1995, that there were no material
facts in dispute, but relied very heavily on the matters contained
in the Requests for Admission in support of their Motion for
Summary Judgment, foregoing the opportunity to even <u>attempt</u> to seek
alternative forms of proof.

There is a striking irony in Defendants' argument that Plaintiffs

22

are estopped from asserting that Defendants' default in responding
to Plaintiffs' Requests for Admission caused them to be admitted.
If there is to be an estoppel, is should be on the other foot.

Since December, 1994, Plaintiffs have taken the First Set of
Requests for Admission as admitted. [11]   Plaintiffs offered, and
remain willing, to permit withdrawal of any <u>demonstrably inaccurate</u>
admissions.   Defendants have opted not to take advantage of this
offer.   There was never any "reliance" by Defendants on any oral
agreements by Plaintiffs.   Defendants did not forego answering
because Plaintiffs lulled them into believing that it was not
necessary to answer.   To the contrary, Mr. Carte requested, and
Plaintiffs agreed to, extensions of time in which to submit
Defendants' pleadings, and produce the requested documents, based
on his expressed need for additional time, due to internal
problems, workload, etc..

The fact that Plaintiffs attempted to be reasonable, and agreed to
extensions when there was a specific need, did not create a
reasonable expectation that Plaintiffs would agree to further
extensions based on the fact that Defendants continued to play
"musical chairs" with their attorneys.   This is particularly true
since all indications were that Defendants' approach to the case
had hardened, and all hopes of settlement were in vain.

The reliance, and prejudice, is all on the part of the Plaintiffs.
Plaintiff Herrera-Loa is now deceased, and can no longer provide
testimony as to his experiences when he was arrested, or what he
was told, in the presence of his attorney, about the validity and
use of any replacement documentation.   Alterative sources of proof
would now be difficult, if not impossible, to locate.

---

[11]   It should be noted that, in order not to mislead the Court,
in the one area where Plaintiffs had reason to believe that the
information contained therein might be inaccurate, to wit, in the
number of class members, Plaintiffs did <u>not</u> use the Admissions.

23

497

Defendants' silence in the face of repeated written assertions that both sets of Requests for Admission were established, by default, led Plaintiffs to believe that the issue was closed. Under the schedule established by the Court, and agreed to by Plaintiffs, in reliance on the belief that there were no material facts in dispute, the time for Plaintiffs to gather, and present, evidence in support of their motion for summary judgment has long passed.

Defendants correctly note, (OPP2:6), that the "doctrine of estoppel is grounded on a notion of fair dealing and good conscience. It is designed to aid the law in the administration of justice where without its aid injustice might result," quoting DeShong v. Seaboard Coast Line Rrd. Corp., 737 F.2d 1520, 1552 (11th Cir. 1984).

To apply the doctrine of estoppel against Plaintiffs would create an enormous injustice. Defendants cannot claim that they come before the Court with clean hands. Apart from having reneged on their agreement to settle any portion of the instant action, Defendants have attempted to convert Plaintiffs' good faith, and fair dealing, into an excuse for their own inaction, even after being advised that Plaintiffs' patience had been exhausted. When necessary, Defendants simply invent facts, and cite to pleadings stating precisely the opposite, as support for their fabrications.

The record is replete with instances where Plaintiffs set forth their position, and Defendants responded with silence. To date, Defendants have made no attempt to present evidence that any of the factual matters admitted by default are incorrect, doubtless because such an attempt would be, from their perspective counterproductive. No such evidence exists. In every instance, with the possible exception of the number of members in the putative class herein, the matters sought to be admitted are true.

The only evidence submitted by Defendants in support of their claim of estoppel are the admittedly incomplete Declarations of prior

24

498

counsel.  It would be grossly unfair to allow these Declarations to form the basis of an evidentiary finding, contrary to substantial documentary evidence to the contrary, without, at the very least, forcing <u>all</u> current and prior counsel to come before the Court, and state the truth, the <u>whole</u> truth, and nothing but the truth.

However, it is respectfully submitted that there is no need for an evidentiary hearing.  Defendants have by no stretch of the imagination provided an adequate basis for permitting them to withdraw their admissions, much less for applying the equitable remedy of estoppel against Plaintiffs, whose attempt to be fair and reasonable in their dealings with Defendants has, to Plaintiffs' great chagrin and sorrow, provided the grist for Defendants' mill.

It is therefore urged that Defendants' Answers to Plaintiffs' First and Second Sets of Requests for Admission, and all references thereto, be stricken from the record, and that Defendants' requests for estoppel against Plaintiffs, and/or relief from the default admissions, be denied.

Respectfully Submitted,

Lisa S. Brodyaga
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226

Thelma O. Garcia
301 E. Madison
Harlingen, Texas 78550
(210) 425-3701

25

## CERTIFICATE OF SERVICE

I certify that copies of the foregoing, and Exhibit "CC" were mailed, first class postage prepaid, to Regina Byrd, Attorney, OIL, U.S. Dpt. of Justice, Civil Division, Box 878, Ben Franklin Station, Wash., D.C. 20044, Ken Muir, SAUSA, Box 1711, Harlingen, Texas 78551, David Guerra, AUSA, 1701 W. Highway 83, #305, McAllen, Texas 78501, and Nancy Masso, AUSA, Box 1671, Brownsville, Texas 78522, this 25th day of October, 1995.



500