United States District Court
Southern District of Texas
FILED

AUG 2 3 1996

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN, et al., )
          Plaintiffs, )
v. )      C.A. No. B-94-215
 )
E.M. TROMINSKI, District )
Director, Immigration and )
Naturalization Service; HON. )
JANET RENO, United States )
Attorney General; and )
IMMIGRATION AND NATURALIZATION )
SERVICE, )
          Defendants. )
_____)

## SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' COUNTER MOTION FOR SUMMARY JUDGMENT

### BACKGROUND

Pursuant to the Court's Order rendered in open court on July 31, 1996, defendants, by their undersigned counsel, respectfully file this Supplemental Brief In Support Of Defendants' Counter Motion For Summary Judgment. On July 31, 1996, the Court held oral argument on plaintiffs' Motion For Partial Summary Judgment and on defendants' Opposition To Plaintiffs' Motion For Partial Summary Judgment And Defendants' Counter Motion For Summary Judgment. At oral argument, the Court directed both parties to file a supplemental brief on the issue or issues specifically appointed by the Court to that party. The Court directed defendants to brief the issue of whether the Immigration and Naturalization Service ("INS") has the authority not only to deny an alien's request for admission into the United States when such alien claims to be a lawful permanent resident of the United States but also to place such alien in exclusion proceedings at

the land border where entry is attempted and to have the alien wait in the contiguous country until termination of the alien's exclusion proceedings.

Additionally, the Court gave both parties leave to supplement any issues that had been raised in their initial briefs.  The Court stated that the supplemental briefs were to be filed within fifteen days from the date of the oral argument and that five days after receipt of such brief the parties may file replies.  On August 8, 1996, the Court extended the due date of the parties supplemental briefs pursuant to plaintiffs' Unopposed Motion To Extend Briefing Schedule filed on August 1, 1996.  The Court designated August 23, 1996 as the deadline for filing the supplemental briefs, with August 30, 1996, being designated as the due date for the parties to file reply briefs.

## INTRODUCTION

The issue which the Court has directed defendants to brief actually raises two questions.  The first question is whether the INS has the authority to refuse to admit any persons into the United States, including persons claiming to be lawful permanent resident aliens ("LPRs"), when such persons fail to demonstrate to the examining immigration officer that they are clearly and beyond a doubt entitled to enter the United States.  The second question is whether the INS acts within its scope of authority when it requires persons placed in exclusion proceedings at land borders, including persons claiming to be LPRs, to remain in the contiguous country pending completion of exclusion proceedings.

2

CVisPDF - www.texla.com

## SUMMARY OF ARGUMENT

The INS has the authority and is mandated by Congress to administer and enforce the immigration laws of the land. Immigration and Nationality Act ("INA") § 103, 8 U.S.C. § 1103. As such, it is fully empowered and mandated to test the entitlement to enter of every person who requests admission into the United States. INA § 235(b), 8 U.S.C. § 1225(b); 8 C.F.R. § 235.1. Consequently, even persons claiming to be United States citizens, if required, must satisfy the examining immigration officer stationed at this nations ports of entry that such person is entitled, clearly and beyond a doubt, to enter the United States by virtue of their citizenship. See Id. This requirement that every person must satisfy the examining immigration officer of their eligibility to enter applies equally to LPRs who seek to enter the United States. See INA § 235(b), 8 U.S.C. § 1225(b). Thus, every LPR, like every United States citizens and everyone else who appears at this nations borders seeking to enter, must first demonstrate their eligibility to enter this country if and when requested by the examining immigration officer. Therefore, persons claiming to be an LPR do not enjoy the right to enter automatically into the United States simply because of their claimed status. Given that anyone may claim to be a United States citizen, or an LPR, or may represent themselves to be a member of any class of aliens that have been authorized to enter the United States, the INS acts within its authority when it examines those who claim entitlement to enter.

3

CSAPDF - www.fsoto.com

Persons failing to demonstrate the examining immigration officer's satisfaction that they are clearly and beyond a doubt entitled to enter shall be detained for further questioning.  <u>See</u> INA § 235(b), 8 U.S.C. § 1225(b).  To carry out Congress' mandate, the INS places persons whose entitlement to enter is in question in exclusion proceedings.  <u>See</u> INA § 234, 8 U.S.C. 1224. Further, to comply with Congress's mandate, the INS "detains" such persons from entering the United States by either placing them in a detention facility within the United States, by requiring them to remain outside the United States until termination of the exclusion proceedings, or by paroling them into the United States.  The INS acts within its authority in using any one of the three methods to "detain" such aliens.  <u>See</u> INA § 235(b), 8 U.S.C. § 1225(b); 8 C.F.R. §§ 235.1(f)(2); 235.3.  This is so not only because the INS has interpreted the word "detained" to include having such persons remain outside the United States, but also because that interpretation has resulted from many years of administrative practice and judicial interpretation.  <u>See Chevron, U.S.A., Inc., v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842-43 (1984) (The Supreme Court set a forth two step rule for statutory interpretation: (1) the court must determine the intent of Congress and "[i]f the intent is clear, that is the end of the matter;" and (2) if the statute is silent or ambiguous the court "must defer to any reasonable reading of the statute by the agency responsible for the enforcement and interpretation of the

4

373

CSPDF - www.fasiso.com

statute."); <u>Lorillard v. Pons</u>, 434 U.S. 475, 580-81 (1987) (once terms in a statute acquire settled judicial or administrative interpretations and Congress subsequently amends or revises that statute without substantial change, it is reasonable to conclude that Congress intended to adopt the settled interpretation.) Consequently, this Court should not now disturb the INS's practice. This is especially true when to do so would mean, as plaintiffs state should be the case, that all aliens claiming to be LPRs would have to be detained within the United States when their entitlement to enter is in question. Such interpretation of the word "detained" would result in the INS being required to detain hundreds of aliens in facilities within the United States or to parole them into this country based merely on the alien's claimed LPR status. Such interpretation would encourage any alien who desires to enter the United States to make such a claim, even if unfounded, so as to enter this country. Thus, the INS would lose control of this nation's boundaries and borders and would be required to open this nation's boundaries and borders to every one who claimed LPR status. As this result could clearly not have been intended by Congress and would lead to an absurd result, as well as thwart the purpose of the INA, the Court should enter summary judgement in favor of defendants. <u>See Castellon-Contreras</u>, 45 F.3d 149, 153 (5th Cir. 1995); <u>see also White v. INS</u>, 75 F.3d 213 (5th Cir. 1996) (the court rejected the INS interpretation of a statutory provision upon finding that the language of the statute was clear stating that

5

374

CUisPDF – www.fasiso.com

when the language is not ambiguous and is clear that the only way
it would uphold a contrary interpretation is when failing to
uphold the interpretation "would defeat the statutory scheme or
create an absurd result").

**ARGUMENT**

I.

> **DEFENDANTS ACT WITHIN THE AUTHORITY GRANTED
> BY CONGRESS WHEN THEY REFUSE TO ADMIT INTO
> THE UNITED STATES EVERY PERSONS CLAIMING TO
> BE LAWFUL PERMANENT RESIDENT ALIENS**

Plaintiffs are misguided in their claim that the defendants
violate the rights of LPRs by not automatically admitting such
persons into the United States.  The claim plaintiffs make is
inherently flawed as it assumes that everyone who appears at this
country's borders requesting admission based on their assertion
of having obtained the status of LPR is in fact an LPR.  It also
assumes that persons claiming to be LPRs do not have to submit
themselves to an examination by an examining immigration officer
at the port of entry and to demonstrate their claimed status.  As
stated in defendants' Opposition To Plaintiffs' Motion For
Partial Summary Judgment And Defendants' Motion For Summary
Judgment ("Motion For Summary Judgment"), any person seeking to
enter the United States must establish his or her admissibility.
That statement is supported by the INA § 235(b), 8 U.S.C.
§ 1255(b), which provides that "**Every alien** [applicant] . . . who
may not appear to the examining immigration office at the port of
arrival to be clearly and beyond a doubt entitled to land shall
be detained for further inquiry to be conducted by a special

6

375

inquiry officer."[1]  To carry out the requirement of INA §

235(b), the Attorney General implemented C.F.R. § 235.1(a) which

states, "Application to enter the United States shall be made in

person to an immigration officer at a U.S. port of entry . . . at

a time when the immigration office at the port is open for

inspection."[2] (Emphasis in original).  The Attorney General also

implemented

8 C.F.R. § 235.1(b), entitled "U.S. Citizens," to carry out her

responsibilities under INA § 235(b), 8 U.S.C. § 1225(b).

Title 8 section 235.1(b) requires an examining immigration

officer to even examine persons claiming to be United States

citizens.  It further directs the examining immigration officer

to "inspect" such persons "as an alien" if such persons are

unable to demonstrate to the examining immigration officer's

satisfaction that they are in fact a United States citizen.

Thus if Congress requires the INS to examine even United

States citizens under the circumstance described above, LPRs must

necessarily be subject to the same examination and should not be

heard to complain that they are entitled automatically to enter

---

[1]  Returning LPRs bear the burden of proof in exclusion
proceedings and must demonstrate that they fall within the
Fleuti, or "brief, casual and innocent departure" doctrine.
Rosenberg v. Fleuti, 374 U.S. 449 (1963); Molina v. Sewell, 983
F.2d 676, 678 (5th Cir. 1993); Landon v. Plasencia, 459 U.S. 21,
31-32 (1982).

[2]  Throughout this supplemental brief, defendants use the
terms "land border" or "ports of entry."  The law regulating
admission into the United States is substantially the same and
applies equally whether the alien arrived by land, air or sea.
The five named plaintiffs in the present case who are in
exclusion proceedings, however, all arrived by land.

376

the United States just because of their immigration status.   This
statement is buttressed by INA § 221(h), 8 U.S.C. § 1201(h) which
provides,

> Nothing in this chapter shall be construed to
> entitle any alien, to whom a visa or other
> documentation has been issued, to enter the
> United States, if, upon arrival at a port of
> entry in the United States, he is found to be
> inadmissible under this chapter, or any other
> provision of law.

Moreover, the language of INA § 235(b), 8 U.S.C. § 1225(b)
clearly requires "Every alien" to be examined by the examining
officer.   There can be no question that the words "Every alien"
means that all classes of aliens are included, and that no aliens
or for that matter persons are exempted from being examined.   In
interpreting the meaning of a statutes one must apply the test
set forth by the Supreme Court in Chevron, U.S.A., Inc., v.
Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43
(1984).   In that case, the Supreme Court set forth a two step
rule.   In the first step, the court is required to look to the
statute itself to determine the meaning of Congress.   "If the
intent of Congress is clear, that is the end of the matter; for
the Court, as well as the agency, must give effect to the
unambiguously expressed intent of Congress.'"   Chevron, U.S.A.,
Inc., v. Natural Resources Defense Council, Inc., 467 U.S. 842-
43.   This has become known as Chevron's first step.   In the
second step, if the statute is silent or ambiguous as to the
question at issue, the court must defer to any reasonable reading
of the statute given by the agency responsible for the

8

377

enforcement and interpretation of the statute at issue.  This is known as Chevron's second step and is only reached in those cases where the intent of Congress is not clear on the face of the statute.  Chevron, 467 U.s. 843-44; see also Castellon-Contreras v. INS, 45 F.3d 149, 152-53 (5th Cir. 1994) (citing same).

In case sub judice, the words **"Every alien"** contained in INA § 235(b), 8 U.S.C. § 1225(b) are not words that lend themselves to varied meanings.  As such, those words clearly and unambiguously show that Congress intended every alien to be examined -- including LPRs.  The Attorney General to whom Congress has given the responsibility to administer and to enforce the immigration laws, has interpreted INA § 235(b) to pertain to all persons presenting themselves for admission at a United States port of entry as discussed above.  INA § 103, 8 U.S.C. § 1103.  Because the Attorney General's interpretation of INA § 235(b) is consistent with the clear intent of Congress, the Court should go no further, and must give effect to the unambiguously expressed intent of Congress.  Castellon-Contreras, 45 F.3d 152-53 (citing Chevron, 467 U.S. 842-43).

The INS acts within its authority when its immigration examining officers refuse to admit into the United States those LPRs who appear to be inadmissible.  The INS also properly refers such aliens to exclusions proceedings.[3]  Congress has designated exclusion proceedings as the proper forum to test the claims of

---

[3]  In the case at hand, all five of the named plaintiffs who were placed in exclusion proceedings were eventually paroled into the United States.

9

378

aliens who assert that they are admissible despite having failed to demonstrate their admissibility to the satisfaction of the immigration examining officer.[4]   INA § 236, 8 U.S.C. §1226. Consequently, plaintiffs' attempt to have this Court carve out an exception for LPRs which would require the INS to treat them differently than other aliens must fail.  The Court, therefore, should rule that defendants are complying with the mandate of Congress as set forth in INA § 235(b), 8 U.S.C. § 1225(b) in examining every person, including those claiming to be LPRs, who present themselves at this country's ports of entry seeking admission.

## II.

### DEFENDANTS INTERPRETATION OF A STATUTORY PROVISION THAT ITS IS CHARGED TO IMPLEMENT AND ENFORCE SHOULD BE UPHELD

**A.    The INS Is Not Required To Detain All LPRs Who Have Been Placed In Exclusion Proceedings in The United States**

Besides making it mandatory that the INS examine "Every alien," INA § 235(b), 8 U.S.C. § 1225(b) also makes it mandatory that the INS **detain** aliens who fail to demonstrate their admissibility to the satisfaction of the examining immigration officer.  Plaintiffs do not dispute this point.  Rather the point of contention concerns the meaning of the term "detained" as used in INA § 235(b), 8 U.S.C. § 1225(b).  Plaintiffs claim the term

---

[4]   An alien who is presently residing in the United States, whether by having been inspected and admitted, or by having effectively evaded inspection, would be subject to deportation proceedings as opposed to exclusion proceedings.  See INA § 242B, 8 U.S.C. § 1252b.

10

379

CutePDF - www.hwaisz.com

"detained" means that the INS must: (1) detain LPRs within the
United States; (2) parole LPRs into this country; or (3) admit
them.  Plaintiffs Motion For Summary Judgment ("PMSJ") at 22-29.
Plaintiffs argue further that having LPRs wait in Mexico until
the completion of the aliens' exclusion proceeding is not an
option lawfully available to the INS.  Id.

Although INA § 235(b), 8 U.S.C. § 1225(b) specifies
detention as the only option available to the INS when it
declines to admitted an alien into the United States, it is
clear, as defendants stated in their Motion For Summary Judgment,
that parole is also an option which the INS may grant under INA
§ 212(d)(5), 8 U.S.C. § 1182(d)(5).  To carry out her duties and
responsibilities under INA § 212(d)(5), the Attorney General
implemented 8 C.F.R. §§ 235.1(f)(2) which allows the INS to
parole aliens into the United States and 235.3 which contains the
authority to detain aliens.  The INS, therefore, has the option
either to parole or to detain "Every alien" into the United
States when the alien's admissibility is in question.  INA
§§ 235.1(f)(2); 235.3.  However, contrary to plaintiffs claim,
INA § 235(b), 8 U.S.C. § 1225(b) does not require the INS to
detain the alien in a facility within the United States.  As will
be discussed below, Congress could not have intended the INS to
detain "Every alien" who failed to demonstrate admissibility
because of the overwhelming responsibility that would be imposed
upon the INS.  Thus, defendants have interpreted the term
"detained" to mean that the INS must either (1) "detain" the

11

380

alien in a facility within the United States, (2) "detain" the alien by declining to permit him or her to enter the United States pending completion of exclusion proceedings or, (3) parole the alien into the United States pending completion of deferred inspection by an immigration officer or termination of the exclusion proceedings.  <u>See</u> 8 C.F.R. §235.3.  As will be shown, defendants have not erred in their interpretation of the word "detained" as used in INA § 235(b), 8 U.S.C. § 1225(b).

> B.    **Defendants' Interpretation Of The Term "Detained" Is In Keeping With The Concern That A Statute Should Not Be Interpreted, Even If The Language Is Clear, So As To Bring About An Absurd Result Or To Thwart The Overall Purpose Of The Statute**

The United States Court of Appeals For The Fifth Circuit ("Fifth Circuit") has indicated that <u>Chevron's</u> first step is "the most reliable indicator of congressional intent."  <u>See</u> <u>Castellon-Contreras</u>, 45 F.3d 153 (citing <u>Central States, et al. v. Cullum Companies</u>, 973 F.2d 1333, 1339 (7th Cir.1992)) (citation omitted).  In other words, the court must first look to the statute itself to determine the meaning of Congress.  "If the intent of Congress is clear, that is the end of the matter."  <u>Chevron</u> 467 U.S. 842-43.  The Fifth Circuit went on to recognize that <u>Chevron's</u> first step is not conclusive in those "rare cases [in which] the literal application of a statue will produce a result **demonstrably at odds** with the **intentions** of its drafters."  <u>Castellon-Contreras</u>, 45 F.3d 153 (citing <u>United States v. Ron Pair Inc.</u>, 489 U.S. 235, 242 (1989)).  The <u>Castellon-Contreras</u> court also referred to the Supreme Courts decision in <u>United</u>

12

CutePDF - www.texto.com

States v. Real Estate, 903 F.2d 490, 492 (7th Cir.1990), cert. denied sub nom. Born v. United States, 498 U.S. 1126, (1991) where that Court stated "We do not enforce the plain language of a statute only when a literal interpretation would lead to an absurd result or thwart the purpose of the overall statutory scheme." Castellon-Contreras, 45 F.3d 153; see also White v. INS, 75 F.3d 213 (5th Cir. 1996).

Defendants do not concede that the term "detained" is subject to but one meaning, as plaintiffs would assert.  However, assuming arguendo, that plaintiffs have correctly concluded that the intent of Congress is clear, here application of Chevron's first step will not end this matter because the literal interpretation of the word "detained" will produce a result demonstrably at odds with the intentions of its drafters.  See Castellon-Contreras, 45 F.3d 152-53.  That is so because if the word "detained" is interpreted in light of the meaning that plaintiffs assert -- all aliens claiming to be LPRs must be detained within the border of the United States or paroled into this country.  Such an interpretation would "lead to an absurd result [and would] thwart the purpose of the overall statutory scheme."  See Id. at 153 (citation omitted).

Specifically, the Attorney General has authorized the Commissioner of the INS to "perform or exercise" her powers, privileges, and duties conferred upon her by the INA § 103(a), 8 U.S.C. § 1103(a).  See 8 C.F. R. 2.1.  This includes the "power and duties to control and guard the boundaries and borders of the

13

United States . . . ." _Id_.  The Commissioner has properly
delegated that authority to the INS, which in 1993 inspected at
U.S. land ports of entry approximately 409 million people.  House
Report No. 104-469(I), March 4, 1996, 1996 WL 168955 at 367.  In
the Harlingen, Texas, INS District, in Fiscal Year 1994,
approximately 67 million primary inspections were conducted.  _See_
Government Exhibit (C) attached to Defendants' Motion for Summary
Judgment.  Consequently, even if one concludes that the word
"detained" has a plain meaning and that plaintiffs'
interpretation is consistent with that meaning, the INS would be
mandated under such "literal interpretation" to admit, parole or
detain all 67 million persons into the United States.  Such a
result is "absurd" and certainly "thwart[s] the purpose of the
overall statutory scheme." _White_, 75 F.3d 213 (5th Cir. 1996)
(citing _Castellon-Contreras_, 45 F.3d at 153).

Additionally, this lawsuit only involves LPRs.  However, a
ruling in plaintiffs' favor on this issue would necessarily force
the defendants to change their practice with respect to _all_
aliens who arrive at land border ports of entry and are placed in
exclusion proceedings, as there is no meaningful way to
differentiate between LPR and other aliens on this issue.  Thus,
the government would be forced to expend large sums of money on
detention facilities throughout the United States and to detain
the thousands of additional aliens under such an order.

In addition, since the INA § 235(b), 8 U.S.C. § 1225(b)
states "shall," then even if an LPR or other alien wanted to wait

14

383

CEsPDF – www.fesiso.com

in the contiguous host country pending exclusion proceedings rather than be placed in a detention center, the government would be unable to allow them to do so.  Further, if the government was unable to obtain the additional resources required to comply with the Court's order, then it would be forced to parole all of the aliens into the United States pending the exclusion proceedings. Thus, plaintiffs interpretation of the word "detained" would cause the INS to lose control of the United States boundaries and borders and would eliminate any practical distinction between exclusion and deportation proceedings.  The INS would be mandated to allow every person to enter the United States based merely on a claimed entitlement to enter with or without sufficient documentation to support their claimed status.  Clearly, this is one of those "rare cases" referred to in Castellon-Contreras which would cause a result "demonstrably at odds with the intentions" of Congress.  The fact that Congress does not intend such a result can be seen in its recent enactment of the Antiterrorism and Effective Death Penalty Act, Public Law No. 104-132, 110 Stat, 1241 (April 24, 1996) ("AEDPA") § 440 -- 440 (to be codified at 8 U.S.C. § 1105a(a)).  The AEDPA deprives the judiciary of jurisdiction to review certain petitions for review. This includes petitions filed by LPRs.  See AEDPA § 440(a) (which eliminates judicial review of any final deportation order against "an alien who is deportable by reason of having committed [certain specifically identified] criminal offense.)  On April 24, 1996, President Clinton signed the AEDPA

15

384

into law.  It is therefore, not logical that a Congress that has so recently enacted legislation aimed at taking control of our boundaries and borders would have intended to open wide the boundaries and borders to all persons pursuant to INA § 235(b), 8 U.S.C. § 1225(b).  <u>See</u>  <u>White</u>, 75 F.3d 213 (citing <u>Castellon-Contreras</u>, 45 F.3d 153); <u>see also</u> <u>Ron Pair, Inc.</u>, 489 U.S. 242.

Therefore, even if plaintiffs are correct, and we argue that they are not, that the word "detained" means literally that the INS must either detain LPRs in the United States or parole them into this country, the Court should not apply the literal meaning of that word because such application will defeat the statutory purpose and create an absurd results.  <u>Castellon-Contreras</u>, 45 F.3d 153.  Because of the effects that a literal interpretation of the word "detained" will have on this case, the Court may not end its review by merely applying <u>Chevron's</u> first step.  <u>See</u> <u>Chevron</u>, 467 U.S. 842-43.  The Court must review the INS's interpretation of the word "detained" in light of <u>Chevron's</u> second step, i.e., is the interpretation that the INS has given the word "detained" **reasonable**.  <u>Chevron</u>, 467 U.S. 843-44.  If the INS's interpretation is reasonable the Court must defer to its interpretation.  <u>Id</u>.  As will be discussed, the INS has reasonably interpreted the word "detained" to mean that the INS must (1) "detain" the alien in a facility within the United States, (2) "detain" the alien by declining to permit him or her to enter the United States pending completion of exclusion proceedings, or (3) parole the alien into the United States

16

285

pending completion of deferred inspection by an immigration
officer or termination of the exclusion proceedings.  The Court
should therefore uphold the interpretation of the INS as it is
the agency charged to administer and enforce this country's
immigration laws.

> **C.   The Court Must Defer To Defendants'
>        Reasonable Interpretation Of Term "Detained"**

As stated above, "if the intent of Congress is clear, that
is the end of the matter," however, when the "statute is silent
or ambiguous as to the question at issue, [the reviewing court]
must defer to any reasonable reading of the statute by the agency
responsible for the enforcement and interpretation of the statute
at issue."  Castellon-Contreras, 45 F.3d 152-53 (citing Chevron,
467 U.S. 843-44).  The word "detained" means to "arrest, to
check, to delay, to hinder, to hold . . . to retard, to restrain
from proceeding, and to stop."  Black's Law Dictionary, Rev.
Fifth Ed., p. 404 (1979).  To argue that "detained" within the
meaning of INA § 235(b), 8 U.S.C. § 1225(b) means only that the
alien must be placed in a detention center within the United
States, as plaintiffs argue, is to ignore other common and well-
established administrative meanings.  As a result, it could be
argued that the meaning of the word "detained" in INA § 235(b),
8 U.S.C. § 1225(b) is not clear from a plain reading of the
statute.  Nowhere in the statute does Congress define what it
means by "detained."  Consequently, the Court has been called
upon to resolve the present dispute.  As stated above, plaintiffs
allege that the word "detained" means that the INS must hold LPRs

386

in detention facilities within the United States or must grant
them parole.  Defendants, on the other hand, have set forth their
interpretation of the word "detained," as shown above, and argue
that their interpretation is reasonable.

The Court must defer to the defendants interpretation of the
word "detained" if such interpretation is reasonable.  Castellon-
Contreras, 45 F.3d 152-53 (citing Chevron, 467 U.S. 843-44).  As
discussed above, to interpret the word "detained" as used in INA
§ 235(b) in a manner inconsistent with the interpretation given
by defendants would result in an absurd and unmanageable outcome.
Thus, defendants interpretation is reasonable as it allows the
agency which has been delegated the authority to control our
boundaries and borders the discretion to decide how best to
enforce INA § 235(b) in light of each case presented.

Additionally, one of the most basic rules of statutory
construction is that once terms in a statute acquire settled
judicial or administrative interpretations, and Congress
subsequently amends or revises that statute without substantial
change, it is reasonable to conclude that Congress intended to
adopt the settled interpretation.  Lorillard v. Pons, 434 U.S.
475, 580-81 (1978).  The legislative history of the 1952 INA did
not contain any references to what Congress meant by "detained"
as used in INA § 235(b), 8 U.S.C. §1225(b).  H. R. No. 82-1365,
82nd Cong., 2d Sess. 1952, 1952 U.S.C.C.A.N. 1653.  Congress has
amended and revised the immigration laws many times since it
adopted the present version of 8 U.S.C. § 1225 on June 27, 1952.

18

387

Congress has never sought to change the settled interpretation of that section regarding the administrative practice of having aliens who are placed in exclusion proceedings at land ports of entry wait outside the borders pending completion of such proceedings, absent a grant of parole. Thus, Congress has effectively "adopted" or ratified this administrative practice.

### 1. The Term "Detained" Has Acquired A Well Established Judicial Interpretation

The INS interpretation of "detained" has acquired a well settled judicial interpretation. The Supreme Court has repeatedly indicated that the United States has the power to control its borders in such a manner as to prevent aliens from entering. The Supreme Court stated in 1889:

> the government of the United States . . . can exclude aliens from its territories is a proposition which we do not think open to controversy. Jurisdiction over its own territory to that extent is an incident of every independent nation. It is a part of its independence. If it could not exclude aliens, it would be to that extent subject to the control of another power.

The Chinese Exclusion Case, 130 U.S. 581 (1889). Three years later, the Supreme court stated,

> It is an accepted maxim of international law, that every sovereign has the power, as inherent in sovereignty, and essential to preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe.

Ekiu v. U.S., 142 U.S. 651 (1892). The Supreme Court has also stated that "[a]liens seeking entry from contiguous lands obviously can be turned back without more." Shaughnessy v. U.S.

19

ex rel. Mezei, 345 U.S. 206, 215 (1953) (emphasis added); see
also Ahrens v. Rojas, 292 F.2d 406, 410 (5th Cir. 1961) (citing
same).  In Mezei, the Supreme Court treated a returning alien who
had been an **LPR for 25 years**, but was ordered excluded, as an
"entrant alien or assimilated to [that] status for constitutional
purposes," holding that he did not benefit from the greater
constitutional protections afforded resident aliens.  Id. at 214.
Mezei established what is known as the "entry fiction," which
provides that "[a]lthough aliens seeking admission into the
United States may physically be allowed within its borders
pending a determination of admissibility, such aliens are legally
considered to be detained at the border and hence as never having
effected entry into this country."  Gisbert v. U.S. Att'y Gen.,
988 F.2d 1437, 1440 (5th Cir.), amended, 997 F.2d 1122 (1993);
Lynch v. Cannatella, 810 F.2d 1363, 1370, 1373-74 (5th Cir. 1987)
("the sovereign interest in self-determination weighs so much
more heavily in this scheme than does the alien's interest in
entering the country"); see also U.S. ex rel. Polymeris v.
Trudell, 284 U.S. 279, 280 (U.S. 1932) (a returning LPR, native
and citizen of Greece, was found to have been properly detained
at the port of entry on the Canadian border pending exclusion
proceedings).

    Since Congress has created this "entry fiction" by stating
that someone in exclusion proceedings has not "entered" the
United States, it would not then make sense for Congress to have
intended to require defendants to place such aliens seeking

389

admission into detention centers within this country.  See
Barrera-Echavarria v. Rison, 44 F.3d 1441, 1450 (9th Cir. 1995)
(The Ninth Circuit noted that "[b]cause excludable aliens are
deemed under the entry doctrine not to be present on United
States territory, a holding that they have no substantive right
to be free from immigration detention reasonably follows"); Jean
v. Nelson, 727 F.2d 957, 969 (11th Cir. 1984) (en banc), aff'd
472 U.S. 846 (1985) ("Since an alien's legal status is not
altered by detention or parole under the entry doctrine fiction,
it seems clear that plaintiffs here can claim no greater rights
or privileges under our laws than any other group of aliens **who
have been stopped at the border**") (emphasis added).

Defendants' interpretation of the word "detained" has also
been continuously upheld by the Board of Immigration Appeals
("Board").  See Matter of Kennedy, 13 I&N Dec. 242 (BIA 1969)
(alien refused admission into the United States remained in
Canadian territory where entry into the United States was
attempted pending completion of exclusion proceedings); Matter of
A-T-, 3 I&N Dec. 178 (BIA 1948) (alien attempted to enter a
Mexican border denied admission).  The Board recently noted in
dicta its opinion that, although there is no explicit statutory
or regulatory authority for a practice of returning aliens for
admission at land border ports to Mexico or Canada to await their
hearings, the present statutory scheme does not necessarily
preclude such a practice.  Matter of Sanchez-Avila, Int. Dec.

21

390

3283 at 24-25 (BIA June 14, 1996).[5]  As a recent decision by the

United States District Court for the Southern District of Texas

(Brownsville Division) noted:

> In discussing the importance of United
> States' immigration laws, the Supreme Court
> has repeatedly emphasized the importance
> which sovereign nations place upon
> controlling entry through their borders
> . . . . The ability to control entry and to
> identify those admitted remains vital to the
> welfare and security of the people. . . .
> Protection of the borders represents a
> national obligation fulfilled by the
> Government for the benefit of all Americans.

U.S. v. Elder, 601 F.Supp. 1574, 1578  (S.D. Texas, Brownsville

Div. 1985).

   2.   Defendants' Interpretation Of The Word
        "Detained" Is Consistent With Its Long
        Established Operation Instructions

   Through decades of administrative practice, the word

"detained," as set forth in the INA, also has come to be

interpreted as "restraining" or "preventing" aliens from entering

the United States at land ports of entry once exclusion

proceedings have been initiated.  See INS Operations Instruction

235.6(a) ("The inspecting officer [immigration examining officer]

shall make every effort to establish a ground of inadmissibility

before service of the Form I-122 . . . .  When the alien is

returned to contiguous territory to await an appointment at a

---

   [5]  Matter of Sanchez-Avila, Int. Dec. 3283 also provides
that the Board may not hold an alien's deportation hearing in
absentia when the alien is waiting in a contiguous country.
Therefore, even if plaintiffs had a named class member who
presents this problem, their concern about having the exclusion
proceeding held in absentia is resolved by Sanchez-Avila.  See
PMSJ at 26-27.

391

later date . . . "); Gordon & Mailman, Immigration Law and
Procedure, § 8.09(1), pp. 8-17 (1996) ("When an inspection is not
promptly completed at a border station, the applicant [alien]
from an adjacent country can be asked to return at a later
time"); INS General Counsel Opinion No. 91-13 (February 5, 1991)
("As an offshoot of the exercise of parole authority in exclusion
proceedings, the [INS] developed an administrative practice of
releasing aliens back to a contiguous country in exclusion
proceedings commenced at land border ports of entry").  The
government interest in utilizing this administrative practice is
quite clear:

> The practice evolved as a means of avoiding needless
> confinement in Service custody in those land border
> exclusion cases in which the alien was not paroled into
> the United States pending a determination of
> excludability.  This practice, acknowledged in
> Operations Instruction 235.6a, has permitted the [INS]
> to pursue exclusion proceedings that would otherwise
> have been deemed unavailable for lack of adequate
> detention and hearing resources.  The release of such
> aliens back to the contiguous country pending a
> determination of excludability also would not pose a
> threat to the safety and welfare of the United States
> nor would there be concern with the alien absconding
> outside of the United States.

INS General Counsel Opinion No. 91-13 (February 5, 1991).

Consequently, the Court should uphold the INS's
interpretation of the word "detained."  The INS has long
interpreted the word "detained" to mean that it must either
(1) "detain" the alien in a facility within the United States,
(2) "detain" the alien by declining to permit him or her to enter
the United States pending completion of exclusion proceedings or,
(3) parole the alien into the United States pending completion of

23

392

deferred inspection by an immigration officer or termination of the exclusion proceedings.  Plaintiffs have failed to provide any valid reasons why this Court should disturb the INS's interpretation of the statute which it is charged to implement and enforce.  The Court should therefore rule in defendants' favor and grant their request for summary judgment.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny plaintiffs Motion For Partial Summary Judgment and grant Summary Judgment in defendants favor.

Respectfully submitted,

GAYNELLE GRIFFIN JONES
United States Attorney
Southern District of Texas

PHILEMINA MCNEILL JONES
Assistant Director

REGINA BYRD
Attorneys
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
Post Office Box 878,
Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 616-4860

KENNETH M. MUIR
Special Assistant United States Attorney
P.O. Box 1711
Harlingen, TX  78551

Attorneys for Defendants

August 23, 1996

24

393

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Supplemental Brief In Support Of Defendants Counter Motion For Summary Judgment was mailed to counsel for plaintiffs, certified mail, return receipt requested, at:

        Lisa S. Brodyaga, Esq.
        402 E. Harrison, 2nd Floor
        Harlingen, Texas  78550

        Thelma O. Garcia, Esq.
        301 E. Madison
        Harlingen, Texas  78550

Served on this the _23rd_ day of August, 1996.

                    Regina Byrd
                    Attorney for Defendants

394