IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN, et al.,          )
            Plaintiffs,           )
v.                                )        C.A. No. B-94-215
                                  )
E.M. TROMINSKI, District          )
Director, Immigration and         )
Naturalization Service; HON.      )
JANET RENO, United States         )
Attorney General; and             )
IMMIGRATION AND NATURALIZATION    )
SERVICE,                          )
            Defendants.           )
_____)

**DEFENDANTS' RESPONSE TO PETITIONERS' [SIC] SUPPLEMENTAL
POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT**

### BACKGROUND

Pursuant to the Court's order dated August 8, 1996,

defendants, by their undersigned counsel, respectfully file

Defendants' Response to Petitioners' [sic] Supplemental Points

And Authorities In Support Of Motion For Partial Summary

Judgment.  The Court's order designated August 30, 1996 as the

date for the parties to file their response.  That order granted

plaintiffs' August 1, 1996, Unopposed Motion to Extend Briefing

Schedule which the Court set in open court on July 31, 1996.  The

Court also specified, in open court, the issues on which it

wanted the parties to file supplemental briefs on and gave the

parties leave to supplement any issues already before the Court.

In particular, the Court ordered defendants to brief the issue of

whether the Immigration and Naturalization Service ("INS") has

the authority to have a lawful permenant resident ("LPR") alien

293

who has been placed in exclusion proceedings at a land border
wait in the contiguous country until termination of the alien's
exclusion proceedings.  Plaintiffs were directed to brief three
issues: (1) whether defendants may place notations on the
replacement documentation (Form I-94) given to an alien whose
alien registration receipt card (Form I-551), commonly referred
to as green card, has been confiscated; (2) whether parole
expires when an alien in exclusion proceedings leaves the United
States; and (3) whether defendants may confiscate non-INS
documents in the possession of an alien who is placed in
exclusion proceedings.

**INTRODUCTION**

On or about August 14, 1996, plaintiffs filed a document
entitled, "Petitioners' [sic] Supplemental Points And Authorities
In Support Of Motion For Partial Summary Judgement."  Plaintiffs
briefed two of the three issues identified above -- whether
defendants may place notations on the replacement documents, and
whether parole expires when an alien in exclusion proceedings
leaves the United States.  See Petitioners' [sic] Supplemental
Points And Authorities In Support Of Motion For Partial Summary
Judgment.  They did not supplement their argument on whether
defendants may confiscate non-INS documents in the possession of
an alien who is placed in exclusion proceedings.  See Id;
Plaintiffs' Motion For Partial Summary Judgment 22-23, 27-28.

Additionally, although not requested by the Court,
plaintiffs briefed the issue of whether defendants may confiscate

2

294

green cards issued to LPRs.  See Petitioners' [sic] Supplemental
Points And Authorities In Support Of Motion For Partial Summary
Judgment 2-9.  Plaintiffs stated that they "do not contest
Defendants' right to lift the green card of a resident placed in
exclusion proceedings, but only the adequacy of the replacement
documents issued.  However, with respect to [LPRs] under
deportation proceedings, a number of other problems still
exist."[1]  Id. at 3.  Defendants will not respond to plaintiffs'
arguments in that regard, as the Court has already decided
whether defendants may confiscate the green card from LPRs who
are in deportation proceedings.

On July 31, 1996, during oral argument, the Court held that
defendants may confiscate the green cards issued to LPRs in
deportation proceedings and may note on the Form I-94 (issued as
a temporary replacement for the green card) [referred to
hereinafter as "temporary Form I-551"].  The Court further held
that defendants should also note on the temporary Form I-551 that
it is renewable.  Specifically, the Court also held that

---

[1]  Plaintiffs' statement that defendants have "admitted at
Oral Argument . . . the green cards of Plaintiff class are not
uniformly lifted when the individual is placed under deportation
proceedings" is not completely accurate.  See Petitioners' [sic]
Supplemental Points And Authorities In Support Of Motion For
Partial Summary Judgment at 4-5.  Defendants follow the McNary
Memorandum issued on March 14, 1990, when determining whether to
confiscate the green card issued to an LPR.  Whether or not the
green card is lifted will depend upon the circumstances of each
case as viewed by defendants' agent who must apply the policy set
forth in the McNary Memorandum.  Consequently, while defendants
do have a uniform policy, the application of it may vary as well
it should in light of the particulars of the case before
defendants' agents.

3

295

defendants may continue their practice of indicating on the temporary Form I-551 which it issues to LPRs in deportation proceedings that it constitutes temporary evidence of lawful admission as an LPR and employment authorization.  Plaintiffs agreed, in open Court, to work with defendants to develop a proposed order which sets forth the Court's findings.[2] Consequently, plaintiffs should not be allowed to resurrect the issue of whether defendants may confiscate the green card issued to aliens in deportation proceeding,[3] and the Court should disregard their arguments as to that matter.  In the event that defendants are themselves mistaken as to the Court's holding, they stand on the arguments made in Defendants' Opposition To Plaintiffs' Motion For Partial Summary Judgment And Defendants' Counter Motion For Summary Judgment regarding defendants' authority to confiscate the green card issued to LPRs in either exclusion or deportation proceedings.  See Defendants' Opposition To Plaintiffs' Motion For Partial Summary Judgment And Defendants' Counter Motion For Summary Judgment at 14-29, 37-39.

---

[2]  The parties have not yet agreed upon the specific wording to use in the proposed order.

[3]  Plaintiffs have conceded that defendants may confiscate the green cards issued to aliens placed in exclusion proceedings. Petitioners' Supplemental Points And Authorities In Support Of Motion for Partial Summary Judgment at 3.  Defendants need only address the adequacy of notations placed on the temporary Form I-551, deportation proceeding, as LPRs placed in exclusion proceedings are not provided with a temporary Form I-551.  Rather if parole is granted they are issued a parole document on Form I-94.

296

## SUMMARY OF ARGUMENT

Plaintiffs have supplemented only two of the issues raised in their Motion for Partial Summary Judgment. First plaintiffs supplemented their challenge to defendants' practice of placing notations on the temporary Form I-551. They complain that notations placed on the temporary Form I-551 (which defendants use as temporary evidence of the aliens LPR status) which reveal that they are in deportation or exclusion proceedings, on bond, or paroled into the United States pending a determination of their admissibility, "places a cloud over their status" as LPRs and violates the Privacy Act.

Plaintiffs lack standing to raise a challenge to defendants' practice of placing factually correct notations on the temporary Form I-551. Because plaintiffs have not identified even one class member who has personally been denied employment as a direct result of the notations, their challenge must fail. Nat'l Treasury Employees Union and Carrie L. Bravo v. United States, 25 F.3d 237, 240 (5th Cir. 1994) (citing Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982)). Therefore, they cannot meet even their threshold burden to demonstrate that they have a personal stake in the outcome of the case, i.e., that a case or controversy exists which is capable of being resolved by the Court. They cannot await an evidentiary hearing to meet this burden as they have requested to do; they must meet the requirement to demonstrate the existence of a case or controversy

5

297

before the Court may accept this case for review. For without case or controversy, the Court lacks jurisdiction to review the issue and must dismiss it. Nat'l Treasury Employees Union, 25 F.3d 240-41 (citing Valley Forge Christian College, 454 U.S. 472; Warth v. Seldin, 422 U.S. 490, 498 (1975)).

As to their claim that defendants violate the Privacy Act by disclosing information about them through the notations, they cannot prevail on this issue because the Privacy Act does not pertain to the complained of disclosures. See Nat'l Treasury Employees Union, 25 F.3d 242. The Privacy Act seeks to protect individuals from having to be embarrassed or in anyway personally injured by information disclosed by the government that it obtained from the individual under confidential circumstances. Id. (citing Plante v. Gonzalez, 575 F.2d 1119, 1132 (5th Cir. 1978)). Here, plaintiffs did not reveal the complained of information under confidential circumstances. Rather it was gathered by defendants as a result of either plaintiffs' failure to demonstrate eligibility to enter the United States or because plaintiffs violated the Immigration and Nationality Act ("INA"). Clearly, plaintiffs could not have had a reasonable expectation that their actions in either circumstance listed would be kept confidential. They therefore cannot claim entitlement to an application of the Privacy Act to their case.

The second issue supplemented by plaintiffs concerns their claim that once parole is granted to a returning alien, such alien should be able to use his grant of parole to freely leave

6

298

and reenter the United States during the pendency of exclusion
proceedings absent changed circumstances.  Their claim is not at
all supported by the law.  It is clear that the INS has the
authority to require all aliens to demonstrate their entitlement
to enter the United States.  See Landon v. Plasencia, 459 U.S. 21
(1982).  No exception has been carved out for these plaintiffs.
They, like any other alien, must comply with the regulations
which do not bestow upon them the right to automatically enter
the United States simply because they left this country while on
parole.  See 8 C.F.R. § 212.5(d)(1)(i).  In fact, under the
regulations, parole automatically terminates when the alien
leaves this country.  Consequently, plaintiffs can only avoid the
impact of 8 C.F.R. § 212.5(d)(1)(i) by applying for advance
parole and obtaining it prior to their departure.

## ARGUMENT

### I.

### PLAINTIFFS LACK STANDING TO CHALLENGE THE NOTATIONS PLACED ON THE TEMPORARY FORM I-551

Plaintiffs contend that placing any notations on the
temporary Form I-551 beyond the alien's LPR status and his
authorization to be employed in the United States causes a
"cloud" to be placed over the LPR's immigration status and
results in a violation of the Privacy Act.  See Petitioners'
[sic] Supplemental Points And Authorities In Support Of Motion
For Partial Summary Judgment at 10-13.  Specifically, plaintiffs
argue that defendants may not place a notation on the temporary
Form I-551 which discloses, even if true, that the LPR is in

7

299

deportation or exclusion proceedings, that the LPR has been paroled into the United States "pending determination of right to re-enter," and that the LPR is on bond.[4]  See Id. at 11; see also Petitioners' [sic] Motion For Partial Summary Judgment at 32.  The Court should dismiss plaintiffs' allegations concerning notation placed on the temporary Form I-551 as plaintiffs lack standing to raise the issue.

### A.   Plaintiffs Have Failed To Identify Even One LPR Who Has Suffered An Injury As A Result Of The Notations Placed On The Temporary Form I-551

In the present case, plaintiffs do not claim that any of their class members have been injured or threatened as a result of defendants' practice of placing factually correct notations of

_____

[4]  They do not raise these defects now, but in there Motion For Partial Summary Judgment plaintiffs argued that the temporary I-551 also placed a cloud over their status when: (1) it does not include an "employment authorized" stamp; (2) the bearer is not authorized to be employed; (3) it states not valid for reentry; and (4) it contains an expiration date which is significantly shorter than the deportation or exclusion proceeding can reasonably be expected to last.  Petitioners' [sic] Motion For Partial Summary Judgment at 32.  Plaintiffs are correct in regard to their complain about the "employment not authorized" and "not valid for reentry" notations.  Such notations are factually incorrect and should not have been placed on the temporary I-551.  In fact, as stated in Defendants' Opposition To Plaintiffs' Motion For Partial Summary Judgment And Defendants' Counter Motion For Summary Judgment, defendants quickly corrected the two incidents which were identified by plaintiffs. (See Defendants' Statement of Uncontroverted Facts at 8-9).  Plaintiffs never even claimed that these two short-lived errors in any way prejudiced their abilities to work or remain in this country.  Clearly, defendants recognize that aliens lawfully admitted for permanent residence retain their status and are authorized to be employed, reside in the United States, and make non-meaningful departures from the United States so long as no administratively final order of deportation has been entered against them.  Rivera v. INS, 810 F.2d 540, 542 (5th Cir. 1987); 8 U.S.C. § 1101(a)(20).

8

300

CVAPDF - www.fesna.com

the temporary Form I-551.  They argue simply that defendants

practice of placing notations on the temporary Form I-551 other

than the LPR's name, immigration status, and authorization to

work places a cloud over their status as LPRs.  See Petitioners'

[sic] Supplemental Points And Authorities In Support Of Motion

For Partial Summary Judgment at 10-13.  They claim further that

an evidentiary hearing will show the injury.  Id. at 12.

Plaintiffs state,

> If an evidentiary hearing were held, Plaintiffs
> would affirm, as an offer of proof, that, even
> apart from the offending annotations, a great many
> local employers are distrustful of the cardboard
> substitute documents, and that it often requires
> intervention by legal counsel, to convince them
> that they are valid.  The placement of notations
> on such cards regarding deportation proceedings,
> bond, etc., only aggravates the problem . . . .

Id.  In fact, plaintiffs suggest that they would have identified

the class members who have suffered an injury as a result of the

notations placed on the temporary Form I-551 had defendants not

"re-asserted their supposed right to make such notations."  Id.

11-12.

Defendants, however, have always stood firm on their claimed

authority to make factually correct notations on the temporary

Form I-551.  See Defendants' Answer To Plaintiffs' Second Request

For Admission at 16, filed on April 26, 1995, (where defendants

admitted that in some cases they place notations on the

replacement documents issued to aliens who have had their green

card confiscated by defendants' agents); see also Defendants'

Opposition To Plaintiffs' Motion For Partial Summary Judgment And

301

Defendants' Cross Motion For Summary Judgment at 26-29 (where
defendants state that they place factually correct notations on
the temporary Form I-551 which state that the LPR is on bond or
in deportation proceedings, etc.).  Thus, the Court should turn a
deaf ear to plaintiffs' current disingenuous assertion, and
should resolve this issue now without resorting to an evidentiary
hearing.  No evidentiary hearing is needed because plaintiffs'
burden is a simple one.  They are required to identify the
persons whom they claim have been injured and specifically
describe the injury which they assert has been caused by
defendants' alleged putatively illegal conduct.  <u>Nat'l Treasury
Employees Union and Carrie L. Bravo v. United States</u>, 25 F.3d
237, 240 (5th Cir. 1994) (citing <u>Valley Forge Christian College
v. Americans United for Separation of Church and State, Inc.</u>, 454
U.S. 464, 472 (1982)).

     In <u>Nat'l Treasury Employees Union</u>, the court held that
"Determining whether the plaintiffs have standing requires that
we consider both constitutional limitation on federal court
jurisdiction and prudential limitations on its exercise."  <u>Nat'l
Treasury Employees Union</u>, 25 F.3d 240-41 (citing <u>Valley Forge
Christian College</u>, 454 U.S. 472; <u>Warth v. Seldin</u>, 422 U.S. 490,
498 (1975)).  In other words, the court stated that it must first
determine whether there is a case or controversy in which
plaintiffs have a personal stake.  If so, the court may exercise
its remedial powers to review the case.  "The requirement of
standing is designed to confine the federal courts to their

                                10

                              302

proper -- and properly limited -- role in a democratic society."
Id.  The case or controversy issue is the threshold question in
every federal case, as it determines the power of the court to
entertain the suit.  Nat'l Treasury Employees Union, 25 F.3d 241
(citing Warth, 422 U.S. 498).  "[A]t an irreducible minimum, Art.
III requires the party who invokes the court's authority to 'show
that he personally has suffered some actual or threatened injury
as a result of the putatively illegal conduct of the defendant.'"
Nat'l Treasury Employees Union, 25 F.3d 241 (citing Valley Forge
Christian College, 454 U.S. 472).  "[T]he critical standing
question is whether the plaintiff has demonstrated a personal,
distinct, and palpable injury-in-fact that is fairly traceable to
the defendant's allegedly unlawful conduct, and that such an
injury is likely to be redressed by a favorable judicial
decision."  Nat'l Treasury Employees Union, 25 F.3d 241
(citations omitted).

     Because plaintiffs in the present case have failed to meet
the threshold requirement -- to show that there is a case or
controversy in which they have a personal stake -- they cannot
demonstrate standing.  Thus, their claim to have been personally
injured by the notations placed on the temporary Form I-551, like
their attempt to prolong litigation through an evidentiary
hearing, must fail.  Specifically, assuming that the "cloud"
which plaintiffs claim have been placed over their status relates
to employment, they have made no allegations that any of the
plaintiffs have been denied employment because of the notations.

11

303

Thus, none of the plaintiff class members claim to have suffered actual injury as a result of the notations. Nor have plaintiffs identified even one class member who has encountered difficulties obtaining employment as a result of the notations. Plaintiffs have based their suit, as to this issue, on an injury which is merely hypothetical and conjectural.[5] They, therefore, cannot meet their burden to demonstrate standing to bring this case as the facts presented show that there is no case or controversy. Id. Their offer to prove this matter at an evidentiary hearing, as stated above, is simply not sufficient to meet their burden, as their burden to demonstrate standing is an immediate one and may not await an evidentiary hearing. See Nat'l Treasury Employees Union, 25 F.3d 242. The Court should, therefore, dismiss this issue as plaintiffs lack standing to raise it.

---

[5]   Even if plaintiffs had identified a class member who, as they assert, has been denied employment as a result of the notations placed on the Form I-551, a civil action against defendants would not be the proper course. It is unlawful for an employer to require a particular type of document to establish an individual's employment eligibility. See 8 U.S.C. § 1324a(b)(1)(A); 8 C.F.R. § 274a.2(b)(1)(v). Such conduct is actionable under the anti-discrimination provisions of the Immigration Reform and Control Act (IRCA). 8 U.S.C. § 1324b. It does not follow, however, as plaintiffs would have the Court believe, that the remedy for employer discrimination is to have a federal court intervene and monitor the notations the INS places on its replacement documentation. Rather, employers who do not understand IRCA must be educated as to the requirements of the law. Those who continue to violate the law must be held accountable for their actions and charged under the anti-discrimination provisions.

12

304

**B.    Plaintiffs Have No Expectations Of Privacy As
       To The Information Noted On The Temporary
       Form I-551**

Plaintiffs' argument appears to be that defendants have violated the Privacy Act because they place notations on the temporary Form I-551 that discloses information about plaintiffs that the Privacy Act protects.  Presumably, as they have requested the Court to do as to their other allegations, plaintiffs seek the Court to grant both a declaratory judgment and a permanent injunction against placing notations on the temporary Form I-551.  See Petitioners' [sic] Motion For Partial Summary Judgment at 40-43.  However, they cannot obtain such relief under the Privacy Act.  See 5 U.S.C. 552a(g)(3)(A).  The Privacy Act authorizes the court to issue injunctions in only two instances -- (1) to amend the individual's record and (2) to order the agency to produce agency records improperly withheld from an individual.  See Id.; see also Parks, et al. v. IRS, et al., 618 F.2d 677, 684 (10th Cir. 1980).  As plaintiffs seek neither of the two remedies which the Court may grant upon finding a Privacy Act violation, the Court should dismiss this claim as the relief that plaintiffs seek is beyond the Court's jurisdiction to grant.  Id.

Turning to the Privacy Act itself, it is "designed to prevent the kind of illegal, unwise, overbroad, [sic] investigation and record surveillance of law-abiding citizens produced in recent years from actions of some over-zealous investigators, and the curiosity of some government

13

305

CAMPDF - www.texisi.com

administrators, or the wrongful disclosure and use, in some cases, of personal files held by Federal agencies." Johnson v. Department of Treasury, 700 F.2d 971, 975 (5th Cir. 1983).  The information which the Privacy Act protects, however, is "information given by a an individual **in circumstances of confidence . . . ."** Id. (emphasis added).  It seeks to protect the individual against disclosure of irrelevant embarrassing facts relating to his or her own private life."  To demonstrate standing to raise a claim which is based on the right to privacy, the movant must have a personal interest.  See Nat'l Treasury Employees Union, 25 F.3d 242.  In other word, "[t]he particular right asserted here is the 'individual interest in avoiding disclosure of personal matters' . . . which is properly called the right to confidentiality." Id. (citing Plante v. Gonzalez, 575 F.2d 1119, 1132 (5th Cir. 1978)).

Therefore, "[i]n addressing the merits of an individual's right to confidentiality claim, a court must weigh the government's interest in disclosure against the individual's privacy interest." See Nat'l Treasury Employees Union, 25 F.3d 242 (citing Woodland v. City of Houston, 940 F.2d 134, 138 (5th Cir. 1991)).  The Court applies "an intermediate standard of review rather than a strict-scrutiny analysis." See Nat'l Treasury Employees Union, 25 F.3d 243 (citations omitted).  Thus, the Court must "[i]nitially . . . identify what interests of privacy the plaintiffs have in the present case," i.e., do the plaintiffs "have a reasonable expectation of privacy" in the

14

information disclosed on the temporary Form I-551.  Id.  If
plaintiffs have "no reasonable expectation of privacy," they do
not "have standing to sue in federal court."  Id. (citing United
States v. Elwood, 993 F.2d 1146, 1151 (5th Cir. 1993); United
States v. Pofahl, 990 F.2d 1456, 1478 n.23 (5th Cir. 1993)).

Here the information obtained by defendants and placed as
notation on the temporary Form I-551 was not obtained from
plaintiffs by defendants under the pretext that it would be held
in confidence.  Johnson, 700 F.2d 975.  Rather it was obtained in
the process of defendants carrying out their delegated
responsibility and duty to perform such "acts as [they] deem[]
necessary" to implement and to enforce the Immigration and
Nationality Act ("INA").  See INA § 103, 8 U.S.C. § 1103;
8 C.F.R. § 100.2.

Besides plaintiffs can have no reasonable expectation of
privacy in the information disclosed on the temporary Form I-551
because it was generated by defendants as a direct consequence of
plaintiffs' own actions and obtained by defendants under
circumstances that certainly could not have been believed by
plaintiffs to be confidential.  Nat'l Treasury Employees Union,
25 F.3d 243.  Specifically, plaintiffs in the subject case who
have been placed in deportation proceedings were issued a
temporary Form I-551 after having been charged with having
violated the INA.  Plaintiffs, therefore, could not have
reasonably expected that the INS would keep this matter
confidential.  Deportation proceedings themselves are open to the

15

307

public.  8 C.F.R. § 242.16(a).  There being "no reasonable expectation of privacy" in the information noted on the Form I-551, plaintiffs do not "have standing to sue in federal court." See Id. (citing Elwood, 993 F.2d 1151; Pofahl, 990 F.2d 1456, 1478 n.23).  The Court must therefore dismiss this claim as it lacks jurisdiction to decide it.

As stated in Exhibit (4) of Defendants' Opposition To Plaintiffs' Motion For Partial Summary Judgment And Counter Motion For Summary Judgment, those notations serve a valid administrative purpose.  The "notations are made because the alien may be encountered again by another agent of the Immigration and Naturalization Service anywhere in the United States.  Upon seeing this notation, the agent will be advised that the alien has already been processed for deportation.  This measure saves time and resources, avoiding possible duplication of efforts by another agent.  It also makes such encounters shorter and easier for the alien."  Defendants' Opposition To Plaintiffs' Motion For Partial Summary Judgment And Counter Motion For Summary Judgment, Exhibit (4).  Consequently, the notations placed on the temporary Form I-551 are relevant and have not been inserted to embarrass the alien or to interfere with his LPR status or his private life.  See Nat'l Treasury Employees Union, 25 F.3d 242.

The objective of making the notations, as shown, is to facilitate the efforts of the INS which must implement and enforce the immigration laws of the land.  The INS has a

308

CutePDF - www.fesko.com

tremendous responsibility in that the number of aliens that it encounters yearly places overwhelming demands on its agents. For example, in 1993 the INS inspected at U.S. land ports of entry approximately 409 million people. House Report No. 104-469(I), March 4, 1996, 1996 WL 168955 at 367. In the Harlingen, Texas, INS District, in Fiscal Year 1994, approximately 67 million primary inspections were conducted. See Exhibit (C) Defendants' Opposition To Plaintiffs' Motion For Partial Summary Judgment And Counter Motion For Summary Judgment. Thus, under the circumstances here, it is clear that even if plaintiffs had demonstrated an expectation of privacy in the information disclosed on the temporary Form I-551, their privacy interest would not prove greater than defendants interest in disclosure. See Nat'l Treasury Employees Union, 25 F.3d 242 (citing Woodland v. City of Houston, 940 F.2d 134, 138 (5th Cir. 1991)). As such, even if applicable, the Privacy Act does not forbid disclosure of the information which plaintiffs complain about.

Accordingly, the incidental disclosure of the information to potential employers is not protected by the Privacy Act. Even if plaintiffs had demonstrated that they have an expectation of privacy in the information noted on the temporary Form I-551, defendants' disclosure of that information would still not have necessarily amounted to an actionable offense. This is so because, as discussed above, defendants do not intend to violate any rights that plaintiffs may have. Johnson v. Department of Treasury, 700 F.2d 975 (citation omitted) ("The purpose of this

17

309

CVisPDF - www.texisa.com

Act . . . is to provide certain safeguards for an individual against an invasion of personal privacy by requiring Federal agencies, except as otherwise provided by law, to . . . be subject to civil suit for any damages which occur as a result of willful or intentional action which violates any individual's rights under this Act.")  As a result, plaintiffs may not prevail on this claim, and it must be dismissed.

II.

### A GRANT OF PAROLE TO AN ALIEN, INCLUDING AN LPR, WHO HAS BEEN PLACED IN EXCLUSION PROCEEDINGS, TERMINATES AUTOMATICALLY WHEN THE ALIEN PHYSICALLY DEPARTS THE UNITED STATES

Plaintiffs seemingly disagree that parole terminates automatically when an alien, including an LPR, physically departs the United States.  See Petitioners' [sic] Supplemental Points And Authorities In Support Of Motion For Partial Summary Judgment at 15.  They claim that "in the absence of changed circumstances" once parole is granted to a returning resident alien such alien should be able to use his grant of parole to freely leave and reenter the United States during the pendency of exclusion proceedings.[6]  Id. (emphasis in original).  Further they assert that LPRs who have been paroled into the United States, should not have their parole terminated by operation of law when they

_____

[6]  All five of the named plaintiffs who were placed in exclusion proceedings were granted parole into the United States by the District Director.  Therefore, plaintiffs do not have standing to raise this issue because they cannot show that any class member has been injured by the claim unlawful conduct of defendants.  See  Nat'l Treasury Employees Union, 25 F.3d 241 (citing Warth, 422 U.S. 498).

18

3/10

make "_Fleuti_" departures.  Alternatively, they argue that even if

the parole does automatically terminate, that said aliens should

automatically be re-paroled following a "_Fleuti_" departure.  See

_Id_. 17-18.  Thus, plaintiffs claim that the "_Fleuti_" doctrine

applies to the parole procedure.  Consequently, under plaintiffs'

interpretation of parole law, all returning LPRs would

essentially be exempted from any further inspection by

immigration officers once exclusion proceedings have begun,

regardless of the circumstances surrounding subsequent arrivals

by them at the ports of entry.  This result would occur because

as a threshold matter, all returning LPRs who contest their

exclusion proceedings allege that they have made "_Fleuti_"

departures.

Contrary to plaintiffs' claim, _Fleuti_ does not apply to

excludable aliens in parole status.  Parole does not constitute

an "entry" within the meaning of 8 U.S.C. §1101(a)(13), anyway.[7]

---

[7]  Parole procedure was initially an administrative device
fashioned by the Immigration Service to serve its purposes.
_Matter of R_, 3 I&N Dec. 45 (BIA 1947).  However, it was accorded
statutory recognition in the 1952 Immigration Act, which was
amended and currently provides as follows:
   (A)  The Attorney general may ... in his discretion
   parole into the United States temporarily under such
   conditions as he may prescribe for emergent reasons or
   for reasons deemed strictly in the public interest any
   alien applying for admission to the United States, but
   such parole of such alien shall not be regarded as an
   admission of the alien and when the purposes of such
   parole shall, in the opinion of the Attorney general,
   have been served the alien shall forthwith return or be
   returned to the custody from which he was paroled and
   thereafter his case shall continue to be dealt with in
   the same manner as that of any other applicant for
   admission to the United States.
                                    (continued...)

19

_311_

Not only is plaintiffs' interpretation contrary to law, but it does not make any sense. It would mean in practical terms the extinction of exclusion proceedings for returning resident aliens. But see Landon v. Plasencia, 459 U.S. 21 (1982) (holding that the INS has statutory authority to proceed in exclusion proceedings to determine whether returning aliens are making an "entry" and are excludable). By operation of law, parole is revoked automatically upon any departure from the country, meaningful or otherwise. The regulations are quite clear on this point. Title 8 C.F.R. § 212.5(d)(1)(i) provides that "Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien . . . ." Thus, in the opinion of the Attorney General as set forth in the regulations, and as authorized in 8 U.S.C. § 1182(d)(5), the purposes of the parole have been served when the alien departs the United States. The alien is thus returned to the "custody from which he was paroled," i.e., to a location outside the borders of the United States from which the alien must request a new parole. 8 U.S.C. § 1182(d)(5)(A).

---

[7](...continued)
8 U.S.C. § 1182(d)(5) (emphasis added). The regulations state that: "In determining whether or not an alien shall be detained, paroled or paroled for deferred inspection, the inspecting officer shall consider the likelihood that the alien will abscond or pose a security risk." 8 C.F.R. § 235.3(c). The INS Operations Instructions provide that the Attorney General's authority to grant parole is delegated to the district director in charge of the port of entry, and that it may not be re-delegated below the level of officer or immigration inspector in charge. 8 C.F.R. § 212.5; INS Operations Instruction § 212.5(a).

312

To the extent that plaintiffs imply that a grant of parole somehow affects a returning resident alien's status so that the Fleuti doctrine attaches once parole has been granted, they are misguided as shown by this statement by the Supreme Court:

> For over a half century this Court has held that the detention of an alien in custody pending determination of his admissibility does not legally constitute an entry though the alien is physically within the United States.  ... The parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted. It was never intended to affect an alien's status, and to hold that petitioner's parole placed her legally 'within the United States' is inconsistent with the congressional mandate, the administrative concept of parole, and the decisions of this court.  Physical detention of aliens is now the exception, not the rule, and is generally employed only as to security risks or those likely to abscond. ... The acceptance of petitioner's position in this case, however, with its inherent suggestion of an altered parole status, would be quite likely to prompt some curtailment of current parole policy--an intention we are reluctant to impute to the Congress.

(emphasis added).  Leng May Ma v. Barber, 357 U.S. 185, 188-90 (1958).  In Leng May Ma, the Supreme Court cited an earlier decision by Justice Oliver Wendell Holmes who stated, "[When an applicant for admission being detained on Ellis Island was paroled to the custody of the Hebrew Society] he was still in theory of law at the boundary line and had gained no foothold in the United States."  Kaplan v. Tod, 267 U.S. 228, 230 (1925). Accord, Shaughnessy v. Mezei, 345 U.S. 206 (1953).  Thus, the Supreme Court has made it clear that parole grants do not affect an alien's status, do not constitute an entry, and may be revoked once their purpose has been served.  Clearly, the Fleuti doctrine is inapplicable in this arena, and parole, once granted,

21

313

terminates automatically upon a physical departure from the United States.

The legislative history of the parole statute demonstrates clearly that Congress intended that parole be granted infrequently, where exigent circumstances were present.[8] Barrera -Echavarria v. Rison, 44 F.3d 1441, 1446 (9th Cir. 1995); Amanullah, 811 F.2d 6 ("The legislative history of the parole statute ... demonstrates beyond cavil that Congress consistently visualized parole as an indulgence to be granted only occasionally, in the case of rare and exigent circumstances, and only when it would plainly serve the public interest."). The courts have consistently held that excludable aliens cannot challenge parole decisions under a claim of constitutional right. Jean v. Nelson, 727 F.2d 957, 972 (11th Cir. 1984); Perez-Perez v. Hanberry, 781 F.2d 1477, 1479 (11th Cir. 1986);

---

[8]   The scope of the parole authority granted to the Attorney General by Congress is close to plenary. Amanullah v. Nelson, 811 F.2d 1, 5 (1st Cir. 1987). Accord, Etuk v. Blackman, 748 F.Supp. 990, 1000 (E.D.N.Y. 1990). According to the United States Court of Appeals for the Fifth Circuit, "The language of the statute does not require the Attorney General to parole any alien, nor does it mandate parole on any particular finding or findings or place any substantive restriction on the authority to deny parole." Gisbert v. U.S. Att'y Gen., 988 F.2d 1437, 1443 (5th Cir.), amended, 997 F.2d 1122 (1993). As the United States Court of Appeals for the Eleventh Circuit has said, "Congress has delegated remarkably broad discretion to executive officials under the [Immigration and Nationality Act], and these grants of statutory authority are particularly sweeping in the context of parole." Jean v. Nelson, 727 F.2d 957, 977 (11th Cir. 1984) (en banc), aff'd in part on nonconstitutional grounds, 472 U.S. 846 (1985).

314

CVsPDF - www.fasiso.com

<u>Alvarez-Mendez v. Stock</u>, 941 F.2d 956, 963 (9th Cir. 1991);
<u>Amanullah</u>, 811 F.2d 8.

As demonstrated, aliens have no constitutional right to be
admitted into this country. <u>Landon v. Plasencia</u>, 459 U.S. 21, 32
(1982); <u>Kleidienst v. Mandel</u>, 408 U.S. 753, 762 (1972). Denial
of parole does not rise to the level of a constitutional
infringement. <u>Fernandez-Roque v. Smith</u>, 734 F.2d 576, 581-82
(11th Cir. 1984). The United States Court of Appeals for the
Fifth Circuit has recognized that it is dangerous for courts to
interfere with the government's discretionary authority in parole
cases citing <u>Leng May Ma v. Barber</u>, 357 U.S. 185 (1958). <u>Ahrens
v. Rojas</u>, 292 F.2d 406, 411 (5th Cir. 1961). In fact, the Fifth
Circuit has held that there is no right to a hearing on
revocation of parole. <u>Rojas</u>, 292 F.2d 410. The Fifth Circuit
has further held that applicants for admission to the United
States do not have a constitutionally protected liberty interest
in being paroled. <u>Gisbert v. U.S. Att'y Gen.</u>, 988 F.2d 1437,
1443 (5th Cir. 1993).

Based on the above, plaintiffs' efforts to change the law
and regulations as they relate to parole of aliens must fail.
Consequently, plaintiffs, once paroled, cannot obtain automatic
re-admission into the United States without the necessity of
first applying for advance parole before they depart in
accordance with the procedures set forth by the INS. In the
alternative, they may re-apply for parole when they arrive at the
port of entry from the contagious country. Clearly, these are

23

*315*

the procedures that plaintiffs do not like and wish to have set aside.  <u>See</u> Petitioners' [sic] Supplemental Points And Authorities In Support Of Motion For Partial Summary Judgment at 15.

Thus, plaintiffs claim that the criteria upon which the applications for advance parole are adjudicated is "arbitrary, and vary from one request to another." <u>Id</u>.  To support their claim, plaintiffs call the Court's attention to two letters issued by defendants in response to plaintiffs' request for advance parole.  <u>Id</u>.  Pointing to both letters, plaintiffs state that defendants do not consistently follow their own criterion for adjudication of requests for advance parole because they were directed to file an application only in the second letter issued to them by defendants.  <u>Id</u>.  What plaintiffs fail to tell the Court is that defendants did in fact orally direct them to file an application for advance parole the first time they requested it.  Defendants waived the requirement that plaintiffs file an application upon the Magistrate Judge's request to defendants, made in open court on April 26, 1995, to expedite this matter as plaintiffs claimed that the concerned aliens wanted to depart the United States to care for an ill parent.  Defendants therefore have not acted inconsistently here, and have sought to fairly carry out their duties under the INA.  Plaintiffs' attempt to obtain an exemption as to the members of their class should not be permitted.  There exists no valid reason in law or under the regulations to support their request for exemption or their

24

3/6

interpretation of the law as it relates to parole.  The Court should dismiss this claim as it has no basis in law and fact -- all of the class members in exclusion proceedings have been paroled into the United States, and those who have inquired about how to obtain advance parole have not even applied for it.

### CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny plaintiffs Motion For Partial Summary Judgment and grant Summary Judgment in defendants' favor.

Respectfully submitted,

GAYNELLE GRIFFIN JONES
United States Attorney
Southern District of Texas

DAVID V. BERNAL
Senior Litigation Assistant

REGINA BYRD
Attorneys
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
Post Office Box 878,
Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 616-4860

KENNETH M. MUIR
Special Assistant United States Attorney
P.O. Box 1711
Harlingen, TX  78551

Attorneys for Defendants

August 30, 1996

25

317

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendants' Response To Petitioners' [sic] Supplemental Points And Authorities In Support Of Motion For Partial Summary Judgment was mailed to counsel for plaintiffs, certified mail, return receipt requested, at:

      Lisa S. Brodyaga, Esq.
      402 E. Harrison, 2nd Floor
      Harlingen, Texas  78550

      Thelma O. Garcia, Esq.
      301 E. Madison
      Harlingen, Texas  78550

Served on this the __30th__ day of August, 1996.

      Regina Byrd
      Attorney for Defendants

318