**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

FEB 0 5 1997

Michael N. Milby, Clerk

| | |
|---|---|
| ASCENCIO-GUZMAN, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>E.M. TROMINSKI, District )<br>Director, Immigration and )<br>Naturalization Service; HON. )<br>JANET RENO, United States )<br>Attorney General; and )<br>IMMIGRATION AND NATURALIZATION )<br>SERVICE, )<br><br>Defendants. )<br>_____ ) | C.A. No. B-94-215 |

---

**MEMORANDUM TO SUPPLEMENT DEFENDANTS' SUPPLEMENTAL BRIEF
IN SUPPORT OF DEFENDANTS' COUNTER MOTION FOR SUMMARY JUDGMENT**

---

## INTRODUCTION

Defendants hereby submit this memorandum to both inform the
Court of the effects that the recently enacted legislation --
Illegal Immigration Reform and Immigrant Responsibility Act of
1996, Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996) ("IIRIRA")
-- will have on the subject case, and in light of IIRIRA, to
supplement the arguments made in defendants' Supplemental Brief
In Support Of Defendants' Counter Motion For Summary Judgment[1]
and their Response to Petitioners' [sic] Supplemental Points And
Authorities In Support Of Motion for Partial Summary Judgment.[2]

---

[1] On August 23, 1996, pursuant to the Court's oral order of
July 31, 1996, defendants filed their Supplemental Brief In
Support of Defendants' Counter Motion For Summary Judgment
("Defendants' Supplemental Brief").

[2] On August 30, 1996, defendants filed their Response to
Petitioners' [sic] Supplemental Points And Authorities In Support
Of Motion For Partial Summary Judgment.

2/6

Specifically, this memorandum discusses the issues which plaintiffs have raised that are affected by the enactment of IIRIRA, and it presents defendants' arguments regarding the resolution of such issues in light of IIRIRA.

IIRIRA directly impacts upon the following issues raised by plaintiffs:

(1) Whether defendants violate any rights accorded to an alien, who either claims to be a lawful permanent resident ("LPR") of the United States but who fails to demonstrate clearly and beyond a doubt eligibility for admission, or who has sufficient proof of his LPR status but whose continued eligibility is questioned due to commission of an excludable offense,[3] when defendants require the alien to wait in the contiguous territory at a land border port of entry and during the pendency of exclusion proceedings.

(2) Whether a grant of parole to an alien in exclusion proceedings who fails to demonstrate eligibility for admission terminates automatically by operation of law when such an alien departs the United States, or alternatively, whether the "Fleuti" doctrine attaches to the parole grant itself, so as to exempt such an alien from having to apply for parole again upon arriving at the port of entry.

Although the changes made by IIRIRA which directly impact upon this case do not become effective until April 1, 1997, those changes are nonetheless essential to a resolution of this case. This is so because IIRIRA demonstrates that Congress has itself specifically confirmed that defendants' present interpretation of the term "detain," found at the Immigration and Nationality Act ("INA") § 235(b), 8 § U.S.C 1225(b), is correct and does not violate any rights to which a LPR applicant for admission is

---

[3] Both groups of aliens shall be referred to herein as a "LPR applicant for admission".

217

entitled.  In other words, in IIRIRA § 302, Congress has itself
said that an alien applicant for admission may be "detained" by
requiring the alien to remain in the contiguous territory until
resolution of the exclusion proceedings.[4]  See IIRIRA § 302(a),
amending INA § 235(b)(2)(A), (C) at Attachment (1).  IIRIRA shows
that Congress has also confirmed defendants' contention that the
Fleuti brief, casual, and innocent departure doctrine does not
apply to subsequent departures made by a LPR applicant for
admission who departs the United States after having been paroled
into this country.  In fact, it is through IIRIRA § 301(a) that
Congress eliminated entirely the applicability of the Fleuti
departure doctrine to LPR aliens.  IIRIRA § 301(a) amending INA
§ 101(a)(13) now cited as INA § 101(a)(13)(A) at Attachment (1).
In addition, in its comment to IIRIRA § 301(a), Congress makes
clear that it has always intended that all aliens paroled into
the United States not be considered as having been admitted.
Consequently, Congress has confirmed defendants' position that
the Flueti, brief, casual, and innocent doctrine was not intended
to apply to a grant of parole.

Even though, neither IIRIRA § 301(a) nor 302 is now
effective, the Court should still render its decision in light of
those provisions because they provide further support that
defendants have correctly construed the term "detain" and have

---

[4]  As of April 1, 1997, there will be no more exclusion or
deportation proceedings, for cases where the notice to appear is
filed on or after the effective date.  Those proceedings have
been merged, by Congress through IIRIRA § 304, into what Congress
refers to as "Removal Proceedings."

218

properly determined that the _Fleuti_ departure doctrine is not applicable to grants of parole.  In addition, Congress' comment to IIRIRA § 301(a) directly supports defendants' position, and it is now applicable and should be applied.

## IIRIRA'S IMPACT -- IN SUMMARY

IIRIRA effects a sweeping overhaul of the immigration laws. Particularly, it sets forth statutes which recognize and upholds defendants' long-held practice of detaining a LPR applicant for admission at the land border port of entry and requiring such alien to await resolution of the exclusion proceedings in the contiguous country outside the land border port of entry where admission is sought.  See IIRIRA § 302; see also Defendants' Supplemental Brief at 12-24 (Where defendants argued, _inter alia_, that they have construed the term "detain" set forth in the INA § 235(b), 8 U.S.C. § 1225(b), as being satisfied by requiring the alien to remain in the contiguous country.)[5]

Additionally, IIRIRA eliminates the doctrine which allowed a LPR to show that his departure from this country was not intended to be a meaningful departure.  See IIRIRA §§ 301(a).  Put simply, IIRIRA sets aside the brief, casual, and innocent departure

---

[5]  Before INA § 235 was amended by IIRIRA § 302, it provided that "Every alien . . . who may not appear to the examining immigration officer at the port of arrival to be clearly and beyond a doubt entitled to land **shall be detained** for further inquiry to be conducted by a special immigration officer . . . ." (Emphasis added.)  IRRIRA § 302, however, made significant changes to INA § 235 and essentially enacted a new INA § 235. One change is that an alien arriving on land from a foreign territory contiguous to the United States may be returned to that territory pending "removal" proceedings.  See IIRIRA § 302(a), amending INA § 235(b)(2)(C).

2/9

doctrine enunciated by the United States Supreme Court in

_Rosenburg v. Fleuti_, 374 U.S. 449 (1963) as it pertains to

departures made by a LPR.

### DISCUSSION

I.    **IIRIRA EXPLICITLY AUTHORIZES DEFENDANTS TO RETURN A LPR APPLICANT FOR ADMISSION TO THE CONTIGUOUS TERRITORY PENDING RESOLUTION OF EXCLUSION PROCEEDINGS**

The parties have extensively briefed the issue of whether

defendants may lawfully return a LPR applicant for admission to

the contiguous territory -- from which admission is sought -- to

await the resolution of exclusion proceedings.  This issue stems

from plaintiffs' literal interpretation of the term "detained"

contained in the INA § 235(b), 8 U.S.C. § 1255(b).  Plaintiffs

argue that the term "detained" requires defendants to:

(1) physically detain the LPR applicant for admission in

facilities within the United States, (2) parole the LPR applicant

for admission into the United States; or (3) parole the LPR

applicant for admission into the United States for further

inspection.  See Petitioners' [sic] Motion For Partial Summary

Judgment at 22-24, 26; Petitioners' [sic] Reply To INS'

Supplemental Brief In Support Of Counter Motion For Summary

Judgment at 1, 3-5.  Stated differently, plaintiffs assert that

when a LPR applicant for admission presents himself for admission

at a land border port of entry, defendants meet the detention

requirement of INA § 235(b) only by detaining the alien through

one of the ways espoused by them.  Returning the alien to the

contiguous territory to await resolution of the exclusion

proceedings is not among the choices available, plaintiffs claim.

In support of their position, among other arguments, plaintiffs claimed that in Sanchez-Avila, Int. Dec. 3283 (BIA June 14, 1996), the Board of Immigration Appeals ("Board") itself rejected defendants' practice. See Petitioners' [sic] Supplemental Points And Authorities In Support Of Motion For Summary Judgment at 17; Petitioners' [sic] Reply To INS' Supplemental Brief In Support Of Counter Motion For Summary Judgment at 2, 5, 7-9. Plaintiffs, however, have misread the Board's decision. Rather, in Sanchez-Avila, the Board held only that an alien who did not appear at the exclusion hearing, after having been returned to Mexico by the Immigration and Naturalization Service ("INS"), could not be ordered excluded *in absentia*. Sanchez-Avila, Int. Dec. at 24-25. As previously explained to the Court by defendants, although in Sanchez-Avila the Board stated that "there is no explicit provision in the Act or its implementing regulations authorizing the return of applicants for admission" to the contiguous territory, it recognized that "the present statutory scheme does not necessarily preclude" it. Id.; see Defendants' Supplemental Brief at 21-22. In fact, the Board suggested that a regulation could be implemented authorizing the practice. Sanchez-Avila, Int. Dec. at 24-25.

As argued in Defendants' Supplemental Brief at 3-24, defendants contend that their practice of returning an alien to the contiguous territory to await resolution of exclusion

6

ユユl

proceedings is lawful, and need not be supported by regulation.
See Id.[6]  However, with the enactment of IIRIRA, in particular
IIRIRA § 302, Congress has specifically authorized defendants'
practice.  Although IIRIRA § 302 does not become effective until
April 1, 1997, it should be considered by the Court because it
supports defendants' argument that they have not violated any
rights to which these aliens are entitled.  See IIRIRA §§
303(b)(1), 309(a).

Particularly, IIRIRA § 302 made significant amendments to
INA § 235, 8 U.S.C. § 1225, essentially overhauling that section,
and creating new INA § 235.  The relevant portions  of new INA
§ 235 are (b)(2)(A) and (C):

>   "(2)   INSPECTION OF OTHER ALIENS.--
>
>   "(A)   IN GENERAL.--Subject to subparagraphs (B) and
>   (C), in the case of an alien who is an applicant for
>   admission, if the examining officer determines that an
>   alien seeking admission is not clearly and beyond a
>   doubt entitled to be admitted, the alien shall be
>   detained for a proceeding under section 240.[7]

---

[6]  In Defendants' Supplemental Brief at 3-24, defendants
argued that they have properly construed INA § 235(b), 8 U.S.C.
§ 1225(b), and that to construe the term "[d]etained" in that
provision literally would create an absurd result and thwart the
overall purpose of the statute.  Further, among other arguments,
defendants stated that their interpretation of the term "detain"
as including the return of a LPR applicant for admission to the
contiguous territory to await resolution of the exclusion
proceedings is supported by well-established judicial holdings
and a longstanding agency practice.  Thus, defendants argue that
even if plaintiffs' literal construction of the term "detained"
is accepted by the Court, the Court should nevertheless give
deference to defendants' interpretation of the statute.

[7]  A LPR arriving at a port of entry is seeking admission
if, inter alia, he engaged in illegal activity after having
departed the United States, or he departed during the pendency of
(continued...)

"(C)   TREATMENT OF ALIENS ARRIVING FROM CONTIGUOUS
TERRITORY.--In the case of an alien described in
subparagraph (A) who is **arriving on land** (whether or
not at a designated port of arrival) from a foreign
territory contiguous to the United States, **the Attorney
General may return the alien to that territory pending
a proceeding under section 240.**

(Emphasis added.)   Through those provisions, Congress has given

defendants the authority to return aliens to the contiguous

territory at land borders pending resolution of the removal

proceedings.  See IIRIRA § 304.  (As will be discussed below, as

of April 1, 1997, exclusion and deportation proceedings will be

merge into one proceeding termed "Removal Proceedings" for cases

where the Notice to appear is filed on or after the effective

date.)  Further, the Department of Justice has published proposed

regulations implementing the statute.  See 62 Fed. Reg. 444

(January 3, 1997) at Attachment (2).  The proposed regulations

state that:

> In its discretion, the Service may require any alien who
> appears inadmissible and who arrives at a land border port-
> of-entry from Canada or Mexico, to remain in that country
> while awaiting a removal hearing.  Such alien shall be
> considered detained for a proceeding within the meaning of
> section 235(b) of the Act and may be ordered removed in
> absentia by an immigration judge if the alien fails to
> appear for the hearing.

8 C.F.R. § 235.3(d), as amended at 62 Fed. Reg. at 480 (Jan. 3,

1997) at Attachment (3).  In the comments to the proposed

regulations implementing the practice, the Department of Justice

noted that "[t]his [regulation] simply adds to statute [INA] and

---

[7](...continued)
removal proceedings.  See New INA § 101(a)(13)(C), 8 U.S.C.
§ 1101(a)(13)(C), as amended by IIRIRA § 301.

223

regulation a long-standing practice of the Service."  62 Fed.
Reg. at 445 at Attachment (2).

Although, as stated above, IIRIRA § 302 is not yet
effective, the Court should still dismiss plaintiffs' challenge
to defendants' practice of returning aliens placed in exclusion
proceedings at land borders to contiguous territory.  This result
is appropriate because, as discussed above, plaintiffs have
failed to identify any authority which prohibits defendants'
practice, because none exist.  Moreover, dismissal is appropriate
because defendants have derived their practice from a reasonable
interpretation of the statute which they are charged to enforce.
See Castellon-Contreras v. INS, 45 F.3d 149, 152-53 (5th Cir.
1994) (citing Chevron, U.S.A., Inc. v. Natural Resources Defense
Council, Inc., 467 U.S. 837, 843-44 (1984)).  Additionally,
dismissal is warranted because through IIRIRA § 302, Congress,
which has plenary powers over immigration matters, demonstrated
its awareness of defendants' practice and explicitly authorized
defendants to continue it.

  II.  **IIRIRA OVERTURNS THE FLEUTI, "BRIEF, CASUAL,
       AND INNOCENT" DEPARTURE DOCTRINE AS IT
       CONCERNS THE RETURNING LAWFUL PERMANENT
       RESIDENT ALIEN**

Plaintiffs argue that when a LPR applicant for admission has
been placed in exclusion proceedings and is thereafter paroled
into the United States, the Fleuti departure doctrine attaches to
the grant of parole itself.  Thus, plaintiffs argue that should
such a LPR subsequently depart from the United States, he need
not reapply for parole upon arriving again at the port of entry.

9

See Petitioners' [sic] Motion For Partial Summary Judgment at 24.
Defendants, however, have argued from the beginning of this case
that a grant of parole terminates automatically by operation of
law when the LPR applicant for admission departs the United
States, and that the "brief, casual, and innocent" departure
doctrine enunciated by Supreme Court in Fleuti does not apply to
parole.  See Defendants' Opposition To Plaintiffs' Motion For
Partial Summary Judgment And Defendants' Counter Motion For
Summary Judgment at 55-57; see also Defendants' Response To
Petitioners' [sic] Supplemental Points And Authorities In Support
Of Motion For Partial Summary Judgment at 18-24.

As stated by plaintiffs, this issue has been "[t]he heart of
[their] case."  See Petitioners' [sic] Reply To INS' Supplemental
Brief In Support Of Counter Motion For Summary Judgment at 4.  In
fact, the parties agree that the Fleuti doctrine was based on an
interpretation of the statutory term "entry" as defined in INA
§ 101(a)(13) before it was amended by IIRIRA § 301(a) which has
created new INA § 101(a)(13)(A).  Petitioners' [sic] Motion For
Partial Summary Judgment at 20.  The parties also agree that in
construing the term "entry" the Supreme Court, in Fleuti, stated
that "[t]he crucial factor was the **intent** of the [LPR] at the
time of his or her 'departure' from the United States."  See id.
(Emphasis added.)  The LPR's intent, the Supreme Court stated,
must be determined by examining whether the departure was
"innocent, casual, and brief."  See Id.  This method of
determining the LPR's intent has become known as the Fleuti

10

"brief, casual, and innocent" departure doctrine.  Whether this doctrine attaches to a grant of parole received by a LPR applicant for admission who has been placed in exclusion proceedings is the issue which the parties have disputed.[8]

Before discussing the applicability of the _Fleuti_ doctrine to a grant of parole issued to a LPR applicant for admission, it is important to first examine the statutory term "entry" as defined at INA § 101(a)(13), 8 U.S.C. § 1101(a)(13).  That term was important both at the time of the 1963 _Fleuti_ decision and presently.  Specifically, "entry" is defined as:

> any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, **except** that an **alien having a lawful permanent residence in the United States shall <u>not</u> be regarded as making an entry in the United States** . . . if he proves to the satisfaction of the Attorney General [examining immigration officer] that his departure . . . was not intended or reasonably to be expected by him or his presence in a foreign port . . . was not voluntary . . . .

INA § 101(a)(13), 8 U.S.C. § 1101(a)(13) (emphasis added).  As can be seen, the question of intent was very important under INA

---

[8]  Plaintiffs originally argued that the _Fleuti_ doctrine also applied to the regulation, 8 C.F.R. § 3.4, which provides that departure from the United States during pendency of an appeal to the Board constitutes an automatic withdrawal of the appeal from the order of deportation.  Petitioners' [sic] Partial Motion for Summary Judgment at 33-37.  In fact, plaintiffs stated that that issue would "doubtless[ly] be the most hotly contested legal point" in this case.  See _Id_.  Plaintiffs, however, dropped that argument after defendants pointed out that the United States Court of Appeals for the Fifth Circuit had already rejected the argument over twenty years ago, in _Aleman-Fiero v. INS_, 481 F.2d 601 (5th Cir. 1973).  Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment and Defendants' Counter Motion for Summary Judgment at 65-67.

11

226

CVisPDF - www.cvisia.com

§ 101(a)(13).  Also in INA § 101(a)(13), Congress established an
exception to the "entry" concept which was in favor of the LPR
alien.  In other words, through INA § 101(a)(13) Congress said
that the LPR will not be considered as making an "entry" if he
demonstrates that his departure from the United States was either
not intended, not reasonably expected, or not voluntary.

To provide guidance to defendants as they carried out the
mandates of INA § 101(a)(13), the Supreme Court issued its <u>Fleuti</u>
decision which set forth its interpretation of the statutory term
"entry."  <u>See Fleuti</u>, 374 U.S. 452-53.  In that decision the
Supreme Court held "that it effectuates Congressional purpose to
construe the **intent exception** to § 101(a)(13) as meaning an
**intent to depart in a manner** which can be regarded as
**meaningfully interruptive** of the alien's permanent residence."
<u>Fleuti</u>, 374 U.S. at 462.  To determine whether an alien's
departure was intended to be "meaningfully interruptive of the
alien's permanent residence," the Supreme Court stated that the
answer rested upon whether the alien could demonstrate that his
or her departure from the United States was **"innocent, casual,
and brief."**  <u>Id</u>.  Hence, a LPR applicant for admission who could
satisfy the examining immigration officer that his departure from
the United States was either unintended, not reasonably expected,
or not voluntary could come within the exception carved out in
INA § 101(a)(13).  The LPR applicant for admission could then
avoid being placed in exclusion proceedings and obtain admission

12

into the United States.  See Landon v. Plasencia, 459 U.S. 21, 28
(1982) (A LPR is subject to exclusion only if he is attempting to
make an "entry.")

As to whether the Fleuti brief, casual, and innocent
departure doctrine is applicable to a LPR applicant for admission
who has been paroled into the United States, defendants contend
that Fleuti is inapplicable.  Defendants base their contention
upon the INA itself.  Specifically, under INA § 212(d)(5)(A) any
alien who is paroled into the United States is "not to be
regarded as" having ever been admitted.[9]  Unlike INA
§ 101(a)(13), in INA § 212(d)(5)(a), Congress did not carve out
an exception for the LPR alien.  Thus, it stands to reason, as
defendants have argued, that the Flueti brief, causal, and
innocent departure doctrine does not apply to a LPR who has only
been paroled into the United States -- and consequently has not
been admitted -- since the Flueti departure doctrine applies only

_____

[9]  INA § 212(d)(5)(A) provides,

The Attorney General may, except as provided in
subparagraph (B) or in section 1184(f) this title, in
his discretion **parole into the United States**
temporarily under such conditions as he may prescribes
for emergent reasons or for reasons deemed strictly in
the public interest **any alien applying for admission** to
the United States, **but** such parole of such alien shall
**not be regarded as an admission of the alien** and when
the purposes of such parole shall, in the opinion of
the Attorney General have been served the alien shall
forthwith return or be returned to the custody from
which he was paroled and thereafter his case shall
continue to be dealt with in the same manner as that of
any other applicant for admission to United States.

Emphasis Added.

CVAPDF – www.texiss.com

to the LPR who has been "admitted" into this country.  Logically,
because the LPR applicant for admission who is in this country
only by virtue of his parole and therefore considered not to have
ever entered, upon his departure he will have no right to be
admitted into this country.  Nor will such alien have a right, as
plaintiffs' claim, to be again paroled into this country
automatically upon his request.

In its comment to IIRIRA § 301(a), Congress confirms that
defendants have properly determined that the LPR applicant for
admission, who is paroled into the United States, is not entitled
to be automatically paroled back into the United States upon his
return.  Specifically, in commenting on its changes to INA
§ 101(a)(13), Congress stated:

> This subsection is **intended to replace** certain aspects
> of the current **"entry doctrine,"** under which illegal
> aliens who have entered the United States without
> inspection gain equities and privileges in immigration
> proceedings that are not available to aliens who
> present themselves for inspection at a port of entry.
> Hence, the **pivotal factor** in determining an alien's
> status will be whether or not the alien has been
> **lawfully admitted.  Parolees under INA section
> 212(d)(5), who are not considered to have made an
> "entry" under current law, [FN122] will likewise not be
> considered to have been admitted under this new
> definition.**  Finally, this section preserves a portion
> of the **Fleuti** doctrine [FN123] by stating that a
> returning lawful permanent resident shall not be
> regarded as seeking admission unless the alien has
> relinquished lawful permanent resident status; has
> engaged in criminal activity after having left the
> U.S.; has departed the U.S. while under removal or
> extradition proceedings; or has been convicted of an
> aggravated felony, unless since such conviction the
> alien has been granted relief under new section 240A(a)
> (cancellation of removal for certain aliens lawfully
> admitted for permanent residence). However, this
> section **intends to overturn certain interpretations of
> Fleuti** [FN124] by stating that a returning lawful

14

229

> permanent resident alien is **seeking admission** if the
> alien is attempting to enter or has entered the United
> States without inspection and authorization by an
> immigration officer.

See H.R.Rep No. 104-469(I) at 225.  As shown, Congress notes that

the changes made by IIRIRA § 301(a) will not effect the parolees

status and that the parolee will still be considered as not

having been admitted.  Thus, Congress reveals, as defendants have

argued, that it had always intended parolees, including LPR

applicants for admission, to be treated the same -- as if they

had not been admitted.  Therefore, a LPR applicant for admission,

who departs the United States after having been paroled into the

country is not entitled to be paroled automatically should he

depart the United States.

In addition to the comment Congress made to IIRIRA § 301(a),

through the enactment of IIRIRA, Congress has drastically

changed the content itself of INA § 101(a)(13).  *Inter alia*,

Congress abrogated the statutory "entry" concept as it relates to

the question of whether a returning LPR applicant for admission

is entitled to be admitted into the United States or whether

exclusion proceedings are appropriate.  Moreover, Congress

eliminated the requirement that defendants must determine the

"intent" of the LPR applicant for admission.  Specifically,

IIRIRA § 301(a) replaces the term "entry," with the terms

"admission" and "admitted," thus amending "Paragraph (13) of

section 101(a), (8 U.S.C. § 1101(a)(13)) . . . to read as
follows:

> (A) The terms **"admission"** and **"admitted"** mean, with
> respect to an alien, the lawful **entry** of an alien into
> the United States after inspection and authorization by
> an immigration officer.
> "(B) an alien who is **paroled** under section 212(d)(5) or
> permitted to land temporarily as an alien crewman shall
> not be considered to have been **admitted.**
> "(C) An alien **lawfully admitted** for **permanent residence**
> in the United States **shall not** be regarded **as seeking
> an admission** into the United States for purposes of the
> immigration laws **unless** the alien-
> "(i) has abandoned or relinquished that status,
> "(ii) has been absent from the United States for a
> continuous period in excess of 180 days,
> "(iii) has engaged in illegal activity after having
> departed the United States,
> "(iv) has departed from the United States while under
> legal process seeking removal of the alien from the
> United States, including removal proceedings under this
> Act and extradition proceedings,
> "(v) has committed an offense identified in section
> 212(a)(2), unless since such offense the alien has been
> granted relief under section 212(h) or 240(a), or
> "(iv) is attempting to enter at a time or place other
> than as designated by immigration officers or has not
> been admitted to the United States after inspection and
> authorization by an immigration officer.

(Emphasis added).  See Attachment (1).

As can be seen, IIRIRA § 301(a) makes the question of

"entry" irrelevant and it creates an entirely new concept which

it refers to as "admissibility."[10]  INA § 101(a)(13), 8 U.S.C.

§ 1101(a)(13), amended by IIRIRA § 301(a).[11]  Thus, under IIRIRA

---

[10]   The concept of entry was formerly important because an
alien who was seeking "entry" into the United States belonged
properly in exclusion proceedings.

[11]   The amendment to 8 U.S.C. § 1101(a)(13) will be effective
on April 1, 1997.  Although it will not apply to aliens already
in proceedings as of that date, the Attorney General has been
vested with the authority and options to place certain aliens,
(continued...)

CVISPDF - www.fenrir.com

§ 301(a) the pivotal question is no longer whether the alien is seeking to make an "entry." The question now is whether the alien seeks "admission" or has been "admitted."

IIRIRA § 301(a) also strikes all reference to the intention of the alien in departing the United States and does not look to whether the departure was either voluntary or involuntary. Rather, in subparagraphs (C)(i) through (vi) of INA § 101(a)(13), as amended by IIRIRA § 301(a), Congress sets forth very clearly the six circumstances under which a LPR of the United States will be deemed to be seeking admission into the United States, and therefore, placed in removal proceedings. One of those circumstances -- INA § 101(a)(13)(C)(iv), as amended by IIRIRA § 301(a) -- is that a LPR who departs physically from the United States while removal proceedings are pending against him will be considered as seeking admission. Clearly, the language used by Congress in (C)(iv) of INA § 101(a)(13) as amended by IIRIRA § 301(a) is definite, as is the language used in (C)(i) through (iii) and (C)(v) through (vi), and does not require defendants to first apply the <u>Fleuti</u> doctrine before determining whether a LPR applicant for admission is deemed admissible or inadmissible. This is so because INA § 101(a)(13) as amended by IIRIRA § 301(a) abrogates both the "entry" concept and the applicability of <u>Fleuti</u> to the LPR applicants for admission.

---

[11](...continued)
including aliens who might fit in the class which has been certified in this lawsuit, under the new law. IIRIRA § 309(c).

232

Moreover, as stated above, another provision of IIRIRA, section 304, merges what were formerly INA § 242, 8 U.S.C. § 1252 (deportation proceedings) and INA § 236, 8 U.S.C. § 1226 (exclusion proceedings), into one proceeding referred to as "Removal Proceeding," and creates the new INA § 240. See IIRIRA § 304 at Attachment (1); see also 62 Fed. Reg. 448 at Attachment (4). The new INA § 240(a)(3) provides:

> EXCLUSIVE PROCEDURES.--**Unless otherwise**
> **specified** in this Act, a proceeding under
> this section **shall** be the **sole and exclusive**
> **procedure for determining whether an alien**
> **may be admitted to the United States** or, if
> the alien has been so **admitted**, removed from
> the United States. . . .

(Emphasis added.) IIRIRA § 304(a), amending INA § 240. Nowhere in the new INA § 240 is the term "entry" used as defined by INA § 101(a)(13) -- prior to its amendment by IIRIRA § 301(a) -- or as it was construed in Fleuti. See IIRIRA § 304 at Attachment (1). Rather, consistent with INA § 101(a)(13), as amended by IIRIRA § 301(a), the term "admitted" appears instead. Thus, the statutory "entry" concept set forth in pre-IIRIRA section 101(a)(13) of the INA has been completely abrogated from the statute. See INA § 101(a)(13), as amended by IIRIRA § 301(a); INA § 235, 8 U.S.C. § 1225, amended by IIRIRA § 302(a) (Inspection By Immigration Officers);[12] IIRIRA § 304.

---

[12] IIRIRA § 302(a) amends INA § 235 (8 U.S.C. § 1225) to read as follows:

"INSPECTION BY IMMIGRATION OFFICERS; EXPEDITED REMOVAL
OR INADMISSIBLE ARRIVING ALIENS; REFERRAL FOR HEARING
"Sec. 235.(a) INSPECTION.-
                                        (continued...)

233

As a result of the amendments made by IIRIRA §§ 301(a) and 304, the questions which the Supreme Court sought to address in Fleuti -- the application and interpretation of INA § 101(a)(13) -- will be irrelevant as of April 1, 1997, when IIRIRA § 301(a) becomes effective because the statutory "entry" concept has been abrogated and "intent" is no longer a factor in the newly created concept of "admissibility." Consequently, Fleuti's "brief, casual, and innocent" departure doctrine will no longer be applicable for any purpose in removal proceedings commenced after April 1, 1997, because IIRIRA §§ 301(a) and 304 will have swept away the statutory "entry" concept upon which the Supreme Court's decision was premised.[13]

Although, INA § 101(a)(13), as amended by IIRIRA § 301(a) has not yet become effective, it is a significant because the abrogation of the "entry" concept consequently will eliminate any

_____

[12](...continued)
    "(1) ALIENS TREATED AS APPLICANTS FOR ADMISSION.-
An alien present in the United States who has not been **admitted** or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) **shall** be deemed for purposes of this Act an applicant for **admission.**

(Emphasis added.)


[13]  In light of the enactment of IIRIRA § 302, the case of Molina v. Sewell, 983 F.2d 676 (5th Cir. 1993), which held that a lawful permanent resident in exclusion proceedings had the burden of proof on the Fleuti issue, and that departure during deportation proceedings was not per se a "meaningful" departure, has been overruled.  See 8 U.S.C. § 1101(a)(13)(C)(iv) (as amended) (any departure during removal proceedings will cause the lawful permanent resident to be regarded as seeking admission).

19

234

question concerning whether the _Fleuti_ brief, innocent, and casual departure doctrine applies, as plaintiffs claim, to a LPR who has been paroled into the United States.  In other words, because the Supreme Court's _Fleuti_ brief, casual, and innocent departure doctrine was formulated to serve as the guide by which the statutory "entry" concept would be interpreted -- from which the LPR's intent would be derived -- the abrogation of the "entry" concept consequently overturns the _Fleuti_ decision as it relates to the admissibility of a returning LPR.  Logically, if the _Flueti_ brief, casual, and innocent departure doctrine will not be applicable to the LPR applicant for admission, it will most certainly not be applicable to the LPR who is in this country only by virtue of parole.  Therefore, despite the fact that IIRIRA § 301(a) is not yet effective, the Court should still render its decision in light of the statute because it demonstrates that defendants have correctly interpreted both the INA § 101(a)(13) and the _Flueti_ brief, casual, and innocent departure doctrine as not being applicable to any alien who has been paroled into the United States.

### CONCLUSION

Defendants pray that the Court will grant summary judgment in their favor as to all the issues presented by plaintiffs in

20

light of defendants' previous arguments and the arguments herein

presented on the issues remaining before the Court.[14]

Respectfully submitted,

GAYNELLE GRIFFIN JONES
United States Attorney
Southern District of Texas

PHILEMINA McNeill JONES
Assistant Director

DAVID V. BERNAL
Senior Litigation Counsel

REGINA BYRD
Attorney
Office of Immigration Litigation
Civil Division
Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 616-4860

KENNETH M. MUIR
Special Assistant U.S. Attorney
P.O. Box 1711
Harlingen, TX  78551

February 4, 1997                Attorneys for Defendants

---

[14] On July 31, 1996, the Court issued an oral decision which
resolved, in defendants' favor, the issue of whether defendants
may confiscate green cards from lawful permanent resident aliens
placed in deportation proceedings.  The Court held that as long
as the substitute documents indicates that the holder is a
resident alien, that employment is authorized, and that the card
is renewable, defendants may continue its practice of
confiscating such cards.  See Defendants' Memorandum And Proposed
Order Setting Forth The Court's Oral Decision . . . filed with
the Court on October 7, 1996.  Plaintiffs have also conceded that
a green card may be lifted from a returning resident alien who
has been placed in exclusion proceedings.  See Petitioners' [sic]
Supplemental Points And Authorities In Support Of Partial Summary
Judgment at 3.

236

CVinPDF - www.texsa.com

**ATTACHMENT (1)**

CitePDF – www.fastio.com

(1) between the sentences for peonage, involuntary servitude, and slave trade offenses, and the sentences for kidnapping offenses in effect on the date of the enactment of this Act; and

(2) between the sentences for peonage, involuntary servitude, and slave trade offenses, and the sentences for alien smuggling offenses in effect on the date of the enactment of this Act and after the amendment made by subsection (a).

(c) AMENDMENT OF SENTENCING GUIDELINES.—

(1) IN GENERAL.—Pursuant to its authority under section 994(p) of title 28, United States Code, the United States Sentencing Commission shall review its guidelines on sentencing for peonage, involuntary servitude, and slave trade offenses under sections 1581 through 1588 of title 18, United States Code, and shall amend such guidelines as necessary to—

(A) reduce or eliminate any unwarranted disparity found under subsection (b) that exists between the sentences for peonage, involuntary servitude, and slave trade offenses, and the sentences for kidnapping offenses and alien smuggling offenses;

(B) ensure that the applicable guidelines for defendants convicted of peonage, involuntary servitude, and slave trade offenses are sufficiently stringent to deter such offenses and adequately reflect the heinous nature of such offenses; and

(C) ensure that the guidelines reflect the general appropriateness of enhanced sentences for defendants whose peonage, involuntary servitude, or slave trade offenses involve—

(i) a large number of victims;

(ii) the use or threatened use of a dangerous weapon; or

(iii) a prolonged period of peonage or involuntary servitude.

(2) EMERGENCY AUTHORITY TO SENTENCING COMMISSION.—The Commission shall promulgate the guidelines or amendments provided for under this subsection as soon as practicable in accordance with the procedure set forth in section 21(a) of the Sentencing Act of 1987, as though the authority under that Act had not expired.

(d) EFFECTIVE DATE.—This section and the amendments made by this section shall apply with respect to offenses occurring on or after the date of the enactment of this Act.

**SEC. 218. ADMISSIBILITY OF VIDEOTAPED WITNESS TESTIMONY.**

Section 274 (8 U.S.C. 1324) is amended by adding at the end thereof the following new subsection:

"(d) Notwithstanding any provision of the Federal Rules of Evidence, the videotaped (or otherwise audiovisually preserved) deposition of a witness to a violation of subsection (a) who has been deported or otherwise expelled from the United States, or is otherwise unable to testify, may be admitted into evidence in an action brought for that violation if the witness was available for cross examination and the deposition otherwise complies with the Federal Rules of Evidence.".

**SEC. 220. SUBPOENA AUTHORITY IN DOCUMENT FRAUD ENFORCEMENT.**

Section 274C(d)(1) (8 U.S.C. 1324c(d)(1)) is amended—

(1) by striking "and" at the end of subparagraph (A);

(2) by striking the period at the end of subparagraph (B) and inserting ", and"; and

(3) by inserting after subparagraph (B) the following:

"(C) immigration officers designated by the Commissioner may compel by subpoena the attendance of witnesses and the production of evidence at any designated place prior to the filing of a complaint in a c ⁓ ⁓ par graph (2).".

## TITLE III—INSPECTION, APPREHENSION, DETENTION, ADJUDICATION, AND REMOVAL OF INADMISSIBLE AND DEPORTABLE ALIENS

### Subtitle A—Revision of Procedures for Removal of Aliens

**SEC. 301. TREATING PERSONS PRESENT IN THE UNITED STATES WITHOUT AUTHORIZATION AS NOT ADMITTED.**

(a) "ADMISSION" DEFINED.—Paragraph (13) of section 101(a) (8 U.S.C. 1101(a)) is amended to read as follows:

"(13)(A) The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.

"(B) An alien who is paroled under section 212(d)(5) or permitted to land temporarily as an alien crewman shall not be considered to have been admitted.

"(C) An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien—

"(i) has abandoned or relinquished that status,

"(ii) has been absent from the United States for a continuous period in excess of 180 days,

"(iii) has engaged in illegal activity after having departed the United States,

"(iv) has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this Act and extradition proceedings,

"(v) has committed an offense identified in section 212(a)(2), unless since such offense the alien has been granted relief under section 212(h) or 240A(a), or

"(vi) is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer.".

(b) INADMISSIBILITY OF ALIENS PREVIOUSLY REMOVED AND UNLAWFULLY PRESENT.—

(1) IN GENERAL.—Section 212(a) (8 U.S.C. 1182(a)) is amended by redesignating paragraph (9) as paragraph (10) and by inserting after paragraph (8) the following new paragraph:

"(9) ALIENS PREVIOUSLY REMOVED.—

"(A) CERTAIN ALIENS PREVIOUSLY REMOVED.—

"(i) ARRIVING ALIENS.—Any alien who has been ordered removed under section 235(b)(1) or at the end of proceedings under section 240 initiated upon the alien's arrival in the United States and who again seeks admission within 5 years of the date of such removal (or within 20 years in the case of a second or subsequent removal or at any time in the case of an alien convicted of an aggravated felony) is inadmissible.

"(ii) OTHER ALIENS.—Any alien not described in clause (i) who—

"(I) has been ordered removed under section 240 or any other provision of law, or

"(II) departed the United States while an order of removal was outstanding,
and who seeks admission within 10 years of the date of such alien's departure or removal (or within 20 years of such date in the case of a second or subsequent removal or at any time in the case of an alien convicted of an aggravated felony) is inadmissible.

"(iii) EXCEPTION.—Clauses (i) and (ii) shall not apply to an alien seeking admission within a period if, prior to the date of the alien's reembarkation at a place outside the United States or attempt to be admitted from foreign contiguous territory, the Attorney General has consented to the alien's reapplying for admission.

"(B) ALIENS UNLAWFULLY PRESENT.—

"(i) IN GENERAL.—Any alien (other than an alien lawfully admitted for permanent residence) who—

"(I) was unlawfully present in the United States for a period of more than 180 days but less than 1 year, voluntarily departed the United States (whether or not pursuant to section 244(e)) prior to the commencement of proceedings under section 235(b)(1) or section 240, and again seeks admission within 3 years of the date of such alien's departure or removal, or

"(II) has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States,
is inadmissible.

"(ii) CONSTRUCTION OF UNLAWFUL PRESENCE.—For purposes of this paragraph, an alien is deemed to be unlawfully present in the United States if the alien is present in the United States after the expiration of the period of stay authorized by the Attorney General or is present in the United States without being admitted or paroled.

"(iii) EXCEPTIONS.—

"(I) MINORS.—No period of time in which an alien is under 18 years of age shall be taken into account in determining the period of unlawful presence in the United States under clause (i).

"(II) ASYLEE.—No period of time in which an alien has a bona fide application for asylum pending under section 208 shall be taken into account in determining the period of unlawful presence in the United States under clause (i) unless the alien during such period was employed without authorization in the United States.

"(III) FAMILY UNITY.—No period of time in which the alien is a beneficiary of family unity protection pursuant to section 301 of the Immigration Act of 1990 shall be taken into account in determining the period of unlawful presence in the United States under clause (i).

"(IV) BATTERED WOMEN AND CHILDREN.—Clause (i) shall not apply to an alien who would be described in paragraph (6)(A)(ii) if 'violation of the terms of the alien's nonimmigrant visa' were substituted for 'unlawful entry into the United States' in subclause (III) of that paragraph.

"(iv) TOLLING FOR GOOD CAUSE.—In the case of an alien who—

"(I) has been lawfully admitted or paroled into the United States,

"(II) has filed a nonfrivolous application for a change or extension of status before the date of expiration of the period of stay authorized by the Attorney General, and

"(III) has not been employed without authorization in the United States before or during the pendency of such application,
the calculation of the period of time specified in clause (i)(I) shall be tolled during the pendency of such application, but not to exceed 120 days.

"(v) WAIVER.—The Attorney General has sole discretion to waive clause (i) in the case of an immigrant who is the spouse or son or daughter of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien. No court shall have jurisdiction to review a decision or a waiver under this clause.

"(C) ALIENS UNLAWFULLY PRESENT AFTER PREVIOUS IMMIGRATION VIOLATIONS.—

"(i) IN GENERAL.—Any alien who—

"(I) has been unlawfully present in the United States for an aggregate period of more than 1 year, or

"(II) has been ordered removed under section 235(b)(1), section 240, or any other provision of law,
and who enters or attempts to reenter the United States without being admitted is inadmissible.

"(ii) EXCEPTION.—Clause (i) shall not apply to an alien seeking admission more than 10 years after the date of the alien's last departure from

Case 1:94-cv-00215  Document 91  Filed in TXSD on 02/05/1997  Page 24 of 39

the United States if, prior to the alien's re-
embarkation at a place outside the United
States or attempt to be readmitted from a foreign
contiguous territory, the Attorney General has
consented to the alien's reapplying for admis-
sion.".

"(2) LIMITATION ON CHANGE OF STATUS.—Sec-
tion 248 (8 U.S.C. 1258) is amended by inserting
"and · who is not inadmissible under section
212(a)(9)(B)(i) (or whose inadmissibility under
such · section is waived under section
212(a)(9)(B)(v))" after "maintain that status".

"(3) TREATMENT OF UNLAWFUL PRESENCE BE-
FORE EFFECTIVE DATE.—In applying section
212(a)(9)(B) of the Immigration and Nationality
Act, as inserted by paragraph (1), no period be-
fore the title III–A effective date shall be in-
cluded in a period of unlawful presence in the
United States.".

· (c) REVISION TO GROUND OF INADMISSIBILITY
FOR ILLEGAL ENTRANTS AND IMMIGRATION VIO-
LATORS.—
(1) IN GENERAL.—Subparagraphs (A) and (B)
of section 212(a)(6) (8 U.S.C. .1182(a)(6)) are
amended to read as follows:
"(A) ALIENS PRESENT WITHOUT ADMISSION OR
PAROLE.—
"(i) IN GENERAL.—An alien present in the
United States without being admitted or pa-
roled, or who arrives in the United States at any
time or place other than as designated by the
Attorney General, is inadmissible.
"(ii) EXCEPTION FOR CERTAIN BATTERED
WOMEN AND CHILDREN.—Clause (i) shall not
apply to an alien who demonstrates that—
"(I) the alien qualifies for immigrant status
under subparagraph (A)(iii), (A)(iv), (B)(ii), or
(B)(iii) of section 204(a)(1),
"(II)(a) the alien has been battered or sub-
jected to extreme cruelty by a spouse or parent,
or by a member of the spouse's or parent's fam-
ily residing in the same household as the alien
and the spouse or parent consented or acqui-
esced· to such battery or cruelty, or (b) the
alien's child has been battered or subjected to
extreme cruelty by a spouse or parent of the
alien (without the active participation of the
alien in the battery or cruelty) or by a member
of the spouse's or parent's family residing in the
same household as the alien when the spouse or
parent consented to or acquiesced in such bat-
tery or cruelty and the alien did not actively
participate in such battery or cruelty, and
"(III) there was a substantial connection be-
tween the battery or cruelty described in sub-
clause (I) or (II) and the alien's unlawful entry
into the United States.
"(B) FAILURE TO ATTEND REMOVAL PROCEED-
ING.—Any alien who without reasonable cause
fails or refuses to attend or remain in attend-
ance at a proceeding to determine the alien's in-
admissibility or deportability and who seeks ad-
mission to the United States within 5 years of
such alien's subsequent departure or removal is
inadmissible. ".
(2) TRANSITION FOR BATTERED SPOUSE · OR
CHILD PROVISION.—The requirements of sub-
clauses (II) and (III) of section 212(a)(6)(A)(ii)
of the Immigration and Nationality Act, as in-
serted by paragraph (1), shall not apply to an
alien who demonstrates that the alien first ar-
rived in the United States before the title III–A
effective date (described in section 309(a) of this
division).
(d) ADJUSTMENT IN GROUNDS FOR DEPORTA-
TION.—Section 241 (8 U.S.C. 1251), before redes-
ignation as section 237 by section 305(a)(2) of
this division, is amended—
(1) in the matter before paragraph (1) of sub-
section (a), by striking "in the United States"
and inserting "in and admitted to the United
States";
(2) in subsection (a)(1), by striking "EXCLUD-
ABLE" each place it appears and inserting "IN-
ADMISSIBLE";
(3) in subsection (a)(1)(A), by striking "ex-
cludable" and inserting "inadmissible"; and
(4) by amending subparagraph (B) of sub-
section (a)(1) to read as follows:

"(B) PRESENT IN VIOLATION OF LAW.—Any
alien who is present in the United States in vio-
lation of this Act or any other law of the United
States is deportable.
SEC. 302. INSPECTION OF ALIENS; EXPEDITED RE-
MOVAL OF INADMISSIBLE ARRIVING
ALIENS; REFERRAL FOR HEARING
(REVISED SECTION 235).
(a) IN GENERAL.—Section 235 (8 U.S.C. 1225) is
amended to read as follows:
"INSPECTION BY IMMIGRATION OFFICERS; EXPE-
DITED REMOVAL OF INADMISSIBLE ARRIVING
ALIENS; REFERRAL FOR HEARING
"SEC. 235. (a) INSPECTION.—
"(1) ALIENS TREATED AS APPLICANTS FOR AD-
MISSION.—An alien present in the United States
who has not been admitted or who arrives in the
United States (whether or not at a designated
port of arrival and including an alien who is
brought to the United States after having been
interdicted in international or United States wa-
ters) shall be deemed for purposes of this Act an
applicant for admission.
"(2) STOWAWAYS.—An arriving alien who is a
stowaway is not eligible to apply for admission
or to be admitted and shall be ordered removed
upon inspection by an immigration officer.
Upon such inspection if the alien indicates an
intention to apply for asylum under section 208
or a fear of persecution, the officer shall refer
the alien for an interview under subsection
(b)(1)(B). A stowaway may apply for asylum
only if the stowaway is found to have a credible
fear of persecution under subsection (b)(1)(B).
In no case may a stowaway be considered an
applicant for admission or eligible for a hearing
under section 240.
"(3) INSPECTION.—All aliens (including alien
crewmen) who are applicants for admission or
otherwise seeking admission or readmission to or
transit through the United States shall be in-
spected by immigration officers.
"(4) WITHDRAWAL OF APPLICATION FOR ADMIS-
SION.—An alien applying for admission may, in
the discretion of the Attorney General and at
any time, be permitted to withdraw the applica-
tion for admission and depart immediately from
the United States.
"(5) STATEMENTS.—An applicant for admis-
sion may be required to state under oath any in-
formation sought by an immigration officer re-
garding the purposes and intentions of the ap-
plicant in seeking admission to the United
States, including the applicant's intended
length of stay and whether the applicant in-
tends to remain permanently or become a United
States citizen, and whether the applicant is in-
admissible.
"(b) INSPECTION OF APPLICANTS FOR ADMIS-
SION.—
"(1) INSPECTION OF ALIENS ARRIVING IN THE
UNITED STATES AND CERTAIN OTHER ALIENS WHO
HAVE NOT BEEN ADMITTED OR PAROLED.—
"(A) SCREENING.—
"(i) IN GENERAL.—If an immigration officer
determines that an alien (other than an alien
described in subparagraph (F)) who is arriving
in the United States or is described in clause (iii)
is inadmissible under section 212(a)(6)(C) or
212(a)(7), the officer shall order the alien re-
moved from the United States without further
hearing or review unless the alien indicates ei-
ther an intention to apply for asylum under sec-
tion 208 or a fear of persecution.
"(ii) CLAIMS FOR ASYLUM.—If an immigration
officer determines that an alien (other than an
alien described in subparagraph (F)) who is ar-
riving in the United States or is described in
clause (iii) is inadmissible under section
212(a)(6)(C) or 212(a)(7) and the alien indicates
either an intention to apply for asylum under
section 208 or a fear of persecution, the officer
shall refer the alien for an interview by an asy-
lum officer under subparagraph (B).
"(iii) APPLICATION TO CERTAIN OTHER
ALIENS.—
"(I) IN GENERAL.—The Attorney General may
apply clauses (i) and (ii) of this subparagraph

to any or all aliens described in subclause (II) as
designated by the Attorney General. Such des-
ignation shall be in the sole and unreviewable
discretion of the Attorney General and may be
modified at any time.
"(II) ALIENS DESCRIBED.—An alien described
in this clause is an alien who is not described in
subparagraph (F), who has not been admitted or
paroled into the United States, and who has not
affirmatively shown, to the satisfaction of an
immigration officer, that the alien has been
physically present in the United States continu-
ously for the 2-year period immediately prior to
the date of the determination of inadmissibility
under this subparagraph.
"(B) ASYLUM INTERVIEWS.—
"(i) CONDUCT BY ASYLUM OFFICERS.—An asy-
lum officer shall conduct interviews of aliens re-
ferred under subparagraph (A)(ii), either at a
port of entry or at such other place designated
by the Attorney General.
"(ii) REFERRAL OF CERTAIN ALIENS.—If the of-
ficer determines at the time of the interview that
an alien has a credible fear of persecution
(within the meaning of clause (v)), the alien
shall be detained for further consideration of
the application for asylum.
"(iii) REMOVAL WITHOUT FURTHER REVIEW IF
NO CREDIBLE FEAR OF PERSECUTION.—
"(I) IN GENERAL.—Subject to subclause (III), if
the officer determines that an alien does not
have a credible fear of persecution, the officer
shall order the alien removed from the United
States without further hearing or review.
"(II) RECORD OF DETERMINATION.—The officer
shall prepare a written record of a determina-
tion under subclause (I). Such record shall in-
clude a summary of the material facts as stated
by the applicant, such additional facts (if any)
relied upon by the officer, and the officer's
analysis of why, in the light of such facts, the
alien has not established a credible fear of per-
secution. A copy of the officer's interview notes
shall be attached to the written summary.
"(III) REVIEW OF DETERMINATION.—The Attor-
ney General shall provide by regulation and
upon the alien's request for prompt review by an
immigration judge of a determination under sub-
clause (I) that the alien does not have a credible
fear of persecution. Such review shall include
an opportunity for the alien to be heard and
questioned by the immigration judge, either in
person or by telephonic or video connection. Re-
view shall be concluded as expeditiously as pos-
sible, to the maximum extent practicable within
24 hours, but in no case later than 7 days after
the date of the determination under subclause
(I). .
"(iv) MANDATORY DETENTION.—Any alien
subject to the procedures under this clause shall
be detained pending a final determination of
credible fear of persecution and, if found not to
have such a fear, until removed.
"(iv) INFORMATION ABOUT INTERVIEWS.—The
Attorney General shall provide information con-
cerning the asylum interview described in this
subparagraph to aliens who may be eligible. An
alien who is eligible ,for such interview may con-
sult with a person or persons of the alien's
choosing prior to the interview or any review
thereof, according to regulations prescribed by
the Attorney General. Such consultation shall
be at no expense to the Government and shall
not unreasonably delay the process.
"(v) CREDIBLE FEAR OF PERSECUTION DE-
FINED.—For purposes of this subparagraph, the
term 'credible fear of persecution' means that
there is a significant possibility, taking into ac-
count the credibility of the statements made by
the alien in support of the alien's claim and
such other facts as are known to the officer,
that the alien could establish eligibility for asy-
lum under section 208.
"(C) LIMITATION ON ADMINISTRATIVE RE-
VIEW.—Except as provided in subparagraph
(B)(iii)(III), a removal order entered in accord-
ance with subparagraph (A)(i) or (B)(iii)(I) is
not subject to administrative appeal, except that

CMPDF • www.fastio.com

the Attorney General shall provide by regulation for prompt review of such an order under subparagraph (A)(i) against an alien who claims under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, after having been warned of the penalties for falsely making such claim under such conditions, to have been lawfully admitted for permanent residence, to have been admitted as a refugee under section 207, or to have been granted asylum under section 208.

"(D) LIMIT ON COLLATERAL ATTACKS.—In any action brought against an alien under section 275(a) or section 276, the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii).

"(E) ASYLUM OFFICER DEFINED.—As used in this paragraph, the term 'asylum officer' means an immigration officer who—

"(i) has had professional training in country conditions, asylum law, and interview techniques comparable to that provided to full-time adjudicators of applications under section 208, and

"(ii) is supervised by an officer who meets the condition described in clause (i) and has had substantial experience adjudicating asylum applications.

"(F) EXCEPTION.—Subparagraph (A) shall not apply to an alien who is a native or citizen of a country in the Western Hemisphere with whose government the United States does not have full diplomatic relations and who arrives by aircraft at a port of entry.

"(2) INSPECTION OF OTHER ALIENS.—

"(A) IN GENERAL.—Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240.

"(B) EXCEPTION.—Subparagraph (A) shall not apply to an alien—

"(i) who is a crewman,

"(ii) to whom paragraph (1) applies, or

"(iii) who is a stowaway.

"(C) TREATMENT OF ALIENS ARRIVING FROM CONTIGUOUS TERRITORY.—In the case of an alien described in subparagraph (A) who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 240.

"(3) CHALLENGE OF DECISION.—The decision of the examining immigration officer, if favorable to the admission of any alien, shall be subject to challenge by any other immigration officer and such challenge shall operate to take the alien whose privilege to be admitted is so challenged, before an immigration judge for a proceeding under section 240.

"(c) REMOVAL OF ALIENS INADMISSIBLE ON SECURITY AND RELATED GROUNDS.—

"(1) REMOVAL WITHOUT FURTHER HEARING.—If an immigration officer or an immigration judge suspects that an arriving alien may be inadmissible under subparagraph (A) (other than clause (ii)), (B), or (C) of section 212(a)(3), the officer or judge shall—

"(A) order the alien removed, subject to review under paragraph (2);

"(B) report the order of removal to the Attorney General; and

"(C) not conduct any further inquiry or hearing until ordered by the Attorney General.

"(2) REVIEW OF ORDER.—(A) The Attorney General shall review orders issued under paragraph (1).

"(B) If the Attorney General—

"(i) is satisfied on the basis of confidential information that the alien is inadmissible under subparagraph (A) (other than clause (ii)), (B), or (C) of section 212(a)(3), and

"(ii) after consulting with appropriate security agencies of the United States Government,

concludes that disclosure of the information would be prejudicial to the public interest, safety, or security,

the Attorney General may order the alien removed without further inquiry or hearing by an immigration judge.

"(C) If the Attorney General does not order the removal of the alien under subparagraph (B), the Attorney General shall specify the further inquiry or hearing that shall be conducted in the case.

"(3) SUBMISSION OF STATEMENT AND INFORMATION.—The alien or the alien's representative may submit a written statement and additional information for consideration by the Attorney General.

"(d) AUTHORITY RELATING TO INSPECTIONS.—

"(1) AUTHORITY TO SEARCH CONVEYANCES.—Immigration officers are authorized to board and search any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States.

"(2) AUTHORITY TO ORDER DETENTION AND DELIVERY OF ARRIVING ALIENS.—Immigration officers are authorized to order an owner, agent, master, commanding officer, person in charge, purser, or consignee of a vessel or aircraft bringing an alien (except an alien crewmember) to the United States—

"(A) to detain the alien on the vessel or at the airport of arrival, and

"(B) to deliver the alien to an immigration officer for inspection or to a medical officer for examination.

"(3) ADMINISTRATION OF OATH AND CONSIDERATION OF EVIDENCE.—The Attorney General and any immigration officer shall have power to administer oaths and to take and consider evidence of or from any person touching the privilege of any alien or person he believes or suspects to be an alien to enter, reenter, transit through, or reside in the United States or concerning any matter which is material and relevant to the enforcement of this Act and the administration of the Service.

"(4) SUBPOENA AUTHORITY.—(A) The Attorney General and any immigration officer shall have power to require by subpoena the attendance and testimony of witnesses before immigration officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this Act and the administration of the Service, and to that end may invoke the aid of any court of the United States.

"(B) Any United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer may, in the event of neglect or refusal to respond to a subpoena issued under this paragraph or refusal to testify before an immigration officer, issue an order requiring such persons to appear before an immigration officer, produce books, papers, and documents if demanded, and testify, and any failure to obey such order of the court may be punished by the court as a contempt thereof.".

"(b) GAO STUDY ON OPERATION OF EXPEDITED REMOVAL PROCEDURES.—

"(1) STUDY.—The Comptroller General shall conduct a study on the implementation of the expedited removal procedures under section 235(b)(1) of the Immigration and Nationality Act, as amended by subsection (a). The study shall examine—

"(A) the effectiveness of such procedures in deterring illegal entry,

"(B) the detention and adjudication resources saved as a result of the procedures,

"(C) the administrative and other costs expended to comply with the provision,

"(D) the effectiveness of the procedures in processing asylum claims by undocumented aliens who assert a fear of persecution, including the accuracy of credible fear determinations, and

"(E) the cooperation of other countries and air carriers in accepting and returning aliens removed under such procedures.

"(2) REPORT.—By not later than 18 months after the date of the enactment of this Act, the Comptroller General shall submit to the Committees on the Judiciary of the House of Representatives and the Senate a report on the study conducted under paragraph (1).

SEC. 303. APPREHENSION AND DETENTION OF ALIENS (REVISED SECTION 236).

(a) IN GENERAL.—Section 236 (8 U.S.C. 1226) is amended to read as follows:

"APPREHENSION AND DETENTION OF ALIENS

"SEC. 236. (a) ARREST, DETENTION, AND RELEASE.—On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

"(1) may continue to detain the arrested alien; and

"(2) may release the alien on—

"(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

"(B) conditional parole; but

"(3) may not provide the alien with work authorization (including an 'employment authorized' endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

"(b) REVOCATION OF BOND OR PAROLE.—The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien.

"(c) DETENTION OF CRIMINAL ALIENS.—

"(1) CUSTODY.—The Attorney General shall take into custody any alien who—

"(A) is inadmissible by reason of having committed any offense covered in section 212(a)(2),

"(B) is deportable by reason of having committed any offense covered in section 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D),

"(C) is deportable under section 237(a)(2)(A)(i) on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, or

"(D) is inadmissible under section 212(a)(3)(B) or deportable under section 237(a)(4)(B),

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

"(2) RELEASE.—The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of title 18, United States Code, that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

"(d) IDENTIFICATION OF CRIMINAL ALIENS.—(1) The Attorney General shall devise and implement a system—

"(A) to make available, daily (on a 24-hour basis), to Federal, State, and local authorities the investigative ... of the Service to determine whether individuals arrested by such authorities for aggravated felonies are aliens;

''(B) to designate and train officers and employees of the·Service to serve as a liaison to Federal, State, and local law enforcement and correctional agencies and courts with respect to the arrest, conviction, and release of any alien charged with an aggravated felony; and

''(C) which uses computer resources to maintain a current record of aliens who have been convicted of an aggravated felony, and indicates those who have been removed.

''(2) The record under paragraph (1)(C) shall be made available—

''(A) to inspectors at ports of entry and to border patrol agents at sector headquarters for purposes of immediate identification of any alien who was previously ordered removed and is seeking to reenter the United States, and

''(B) to officials of the Department of State for use in its automated visa lookout system.

''(3) Upon the request of the governor or chief executive officer of any State, the Service shall provide assistance to State courts in the identification of aliens unlawfully present in the United States pending criminal prosecution.

''(a) JUDICIAL REVIEW.—The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.''.

(b) EFFECTIVE DATE.—

(1) IN GENERAL.—The amendment made by subsection (a) shall become effective on the title III–A effective date.

(2) NOTIFICATION REGARDING CUSTODY.—If the Attorney General, not later than 10 days after the date of the enactment of this Act, notifies in writing the Committees on the Judiciary of the House of Representatives and the Senate that there is insufficient detention space and immigration and Naturalization Service personnel available to carry out section 236(c) of the Immigration and ·Nationality Act, as amended by subsection (a), or the amendments made by section 440(c) of Public Law 104–132, the provisions in paragraph (3) shall be in effect for a 1-year period beginning on the date of such notification, instead of such section or such amendments. The Attorney General may extend such 1-year period for an additional year if the Attorney General provides the same notice not later than 10 days before the end of the first 1-year period. After the end of such 1-year or 2-year periods, the provisions of such section 236(c) shall apply to individuals released after such periods.

(3) TRANSITION PERIOD CUSTODY RULES.—

(A) IN GENERAL.—During the period in which this paragraph is in effect pursuant to paragraph (2), the Attorney General shall take into custody any alien who—

(i) has been convicted of an aggravated felony (as defined under section 101(a)(43) of the Immigration and Nationality Act, as amended by section 321 of this division),

(ii) is inadmissible by reason of having committed any offense covered in section 212(a)(2) of such Act,

(iii) is deportable by reason of having committed any offense covered in section 241(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of such Act (before redesignation under this subtitle), or

(iv) is inadmissible under section 212(a)(3)(B) of such Act or deportable under section 241(a)(4)(B) of such Act (before redesignation under this subtitle),

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(B) RELEASE.—The Attorney General may release the alien only if the alien is an alien described in the subparagraph (A)(ii) or (A)(iii) and—

(i) the alien was lawfully admitted to the United States and satisfies the Attorney General

that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding, or

(ii) the alien was not lawfully admitted to the United States, cannot be removed because the designated country of removal will not accept the alien, and satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.

**SEC. 304. REMOVAL PROCEEDINGS; CANCELLATION OF REMOVAL AND ADJUSTMENT OF STATUS; VOLUNTARY DEPARTURE (REVISED AND NEW SECTIONS 239 TO 240C).**

(a) IN GENERAL.—Chapter 4 of title II is amended—

(1) by redesignating section 239 (8 U.S.C. 1229) as section 234 and by moving such section to immediately follow section 233;

(2) by redesignating section 240 (8 U.S.C. 1230) as section 240C; and

(3) by inserting after section 238 the following new sections:

''INITIATION OF REMOVAL PROCEEDINGS

''SEC. 239. (a) NOTICE TO APPEAR.—

''(1) IN GENERAL.—In removal proceedings under section 240, written notice (in this section referred to as a 'notice to appear') shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any) specifying the following:

''(A) The nature of the proceedings against the alien.

''(B) The legal authority under which the proceedings are conducted.

''(C) The acts or conduct alleged to be in violation of law.

''(D) The charges against the alien and the statutory provisions alleged to have been violated.

''(E) The alien may be represented by counsel and the alien will be provided (i) a period of time to secure counsel under subsection (b)(1) and (ii) a current list of counsel prepared under subsection (b)(2).

''(F)(i) The requirement that the alien must immediately provide (or have provided) the Attorney General with a written record of an address and telephone number (if any) at which the alien may be contacted respecting proceedings under section 240.

''(ii) The requirement that the alien must provide the Attorney General immediately with a written record of any change of the alien's address or telephone number.

''(iii) The consequences under section 240(b)(5) of failure to provide address and telephone information pursuant to this subparagraph.

''(G)(i) The time and place at which the proceedings will be held.

''(ii) The consequences under section 240(b)(5) of the failure, except under exceptional circumstances, to appear at such proceedings.

''(2) NOTICE OF CHANGE IN TIME OR PLACE OF PROCEEDINGS.—

''(A) IN GENERAL.—In removal· proceedings under section 240,·in the case of any change or postponement in the time and place of such proceedings, subject to subparagraph (B) a written notice shall be given in person to the alien·(or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any) specifying—

''(i) the new time or place of the proceedings, and

''(ii) the consequences under section 240(b)(5) of failing, except under exceptional circumstances, to attend such proceedings.

''(B) EXCEPTION.—In the case of an alien not in detention, a written ·notice shall not be required under this paragraph if the alien has failed to provide the address required under paragraph (1)(F).

''(3) CENTRAL ADDRESS FILES.—The Attorney General shall create a system to record and preserve on a.timely basis notices of ·ddresses and

telephone numbers (and changes) provided under paragraph (1)(F).

''(b) SECURING OF COUNSEL.—

''(1) IN GENERAL.—In order that an alien be permitted the opportunity to secure counsel before the first hearing date in proceedings under section 240, the hearing date shall not be scheduled earlier than 10 days after the service of the notice to appear, unless the alien requests in writing an earlier hearing date.

''(2) CURRENT LISTS OF COUNSEL.—The Attorney General shall provide for lists (updated not less often than quarterly) of persons who have indicated their availability to represent pro bono aliens in proceedings· under section 240. Such lists shall be provided under subsection (a)(1)(E) and otherwise made generally available.

''(3) RULE OF CONSTRUCTION.—Nothing in this subsection may be construed to prevent the Attorney General from proceeding against an alien pursuant to section 240 if the time period described in paragraph (1) has elapsed and the alien has failed to secure counsel.

''(c) SERVICE BY MAIL.—Service by mail under ·is section shall be sufficient if there is proof of attempted delivery to the last address provided by the alien in accordance with subsection (a)(1)(F).

''(d) PROMPT INITIATION OF REMOVAL.—·; In the case of an alien who is convicted of an offense which makes the alien deportable, the Attorney General shall begin any removal proceeding as expeditiously as possible after the date of the conviction.

''(2) Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.

''REMOVAL PROCEEDINGS

''SEC. 240. (a) PROCEEDING.—

''(1) IN GENERAL.—An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien.

''(2) CHARGES.—An alien placed in proceedings under this section may be charged with any applicable ground of inadmissibility under section 212(a) or any applicable ground of deportability under section 237(a).

''(3) EXCLUSIVE PROCEDURES.—Unless otherwise specified in this Act, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States. Nothing in this section shall affect proceedings conducted pursuant to section 238.

''(b) CONDUCT OF PROCEEDING.—

''(1) AUTHORITY OF IMMIGRATION JUDGE.—The immigration judge shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses. The immigration judge may issue subpoenas for the attendance of witnesses and presentation of evidence. The immigration judge shall have authority (under regulations prescribed by the Attorney General) to sanction by civil money penalty any action (or inaction) in contempt of the judge's proper exercise of authority under this Act.

''(2) FORM OF PROCEEDING.—

''(A) IN GENERAL.—The proceeding may take place—

''(i) in person,

''(ii) where agreed to by the parties, in the absence of the alien,

''(iii) through video conference, or

''(iv) subject to subparagraph (B), through telephone conference.

''(B) CONSENT REQUIRED IN CERTAIN CASES.—An evidentiary hearing on the merits may only be conducted through a telephone conference with the consent of the alien involved after the alien has been advised of the right to proceed in person or through video conference.

''(3) PRESENCE OF ALIEN.—If it is impracticable by reason of an alien's mental incompetency

Case 1:94-cv-00215   Document 91   Filed in TXSD on 02/05/1997   Page 27 of 39

for the alien to be present at the proceeding, the Attorney General shall prescribe safeguards to protect the rights and privileges of the alien.

"(4) ALIENS RIGHTS IN PROCEEDING.—In proceedings under this section, under regulations of the Attorney General—

"(A) the alien shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings,

"(B) the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government but these rights shall not entitle the alien to examine such national security information as the Government may proffer in opposition to the alien's admission to the United States or to an application by the alien for discretionary relief under this Act, and

"(C) a complete record shall be kept of all testimony and evidence produced at the proceeding.

"(5) CO_ _QUENCES OF FAILURE TO APPEAR.—

"(A) IN GENERAL.—Any alien who, after written notice required under paragraph (1) or (2) of section 239(a) has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable (as defined in subsection (e)(2)). The written notice by the Attorney General shall be considered sufficient for purposes of this subparagraph if provided at the most recent address provided under section 239(a)(1)(F).

"(B) NO NOTICE IF FAILURE TO PROVIDE ADDRESS INFORMATION.—No written notice shall be required under subparagraph (A) if the alien has failed to provide the address required under section 239(a)(1)(F).

"(C) RESCISSION OF ORDER.—Such an order may be rescinded only—

"(i) upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (e)(1)(i)), or

"(ii) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 239(a) or the alien demonstrates that the alien was in Federal or State custody and the failure to appear was through no fault of the alien.

The filing of the motion to reopen described in clause (i) or (ii) shall stay the removal of the alien pending disposition of the motion by the immigration judge.

"(D) EFFECT ON JUDICIAL REVIEW.—Any petition for review under section 242 of an order entered in absentia under this paragraph shall (except as cases described in section 242(b)(5)) be confined to (i) the validity of the notice provided to the alien, (ii) the reasons for the alien's not attending the proceeding, and (iii) whether or not the alien is removable.

"(E) ADDITIONAL APPLICATION TO CERTAIN ALIENS IN CONTIGUOUS TERRITORY.—The preceding provisions of this paragraph shall apply to all aliens placed in proceedings under this section, including any alien who remains in a contiguous foreign territory pursuant to section 235(b)(2)(C).

"(6) TREATMENT OF FRIVOLOUS BEHAVIOR.— The Attorney General shall, by regulation—

"(A) define in a proceeding before an immigration judge or before an appellate administrative body under this title, frivolous behavior for which attorneys may be sanctioned,

"(B) specify the circumstances under which an administrative appeal of a decision or ruling will be considered frivolous and will be summarily dismissed, and

"(C) impose appropriate sanctions (which may include suspension and disbarme—t) in the case _ous behavior.

Nothing in this paragraph shall be construed as limiting the authority of the Attorney General to take actions with respect to inappropriate behavior.

"(7) LIMITATION ON DISCRETIONARY RELIEF FOR FAILURE TO APPEAR.—Any alien against whom a final order of removal is entered in absentia under this subsection and who, at the time of the notice described in paragraph (1) or (2) of section 239(a), was provided oral notice, either in the alien's native language or in another language the alien understands, of the time and place of the proceedings and of the consequences under this paragraph of failing, other than because of exceptional circumstances (as defined in subsection (e)(1)) to attend a proceeding under this section, shall not be eligible for relief under section 240A, 240B, 245, 248, or 249 for a period of 10 years after the date of the entry of the final order of removal.

"(c) DECISION AND BURDEN OF PROOF.—

"(1) DECISION.—

"(A) IN GENERAL.—At the conclusion of the proceeding the immigration judge shall decide whether an alien is removable from the United States. The determination of the immigration judge shall be based only on the evidence produced at the hearing.

"(B) CERTAIN MEDICAL DECISIONS.—If a medical officer or civil surgeon or board of medical officers has certified under section 232(b) that an alien has a disease, illness, or addiction which would make the alien inadmissible under paragraph (1) of section 212(a), the decision of the immigration judge shall be based solely upon such certification.

"(2) BURDEN ON ALIEN.—In the proceeding the alien has the burden of establishing—

"(A) if the alien is an applicant for admission, that the alien is clearly and beyond doubt entitled to be admitted and is not inadmissible under section 212; or

"(B) by clear and convincing evidence, that the alien is lawfully present in the United States pursuant to a prior admission.

In meeting the burden of proof under subparagraph (B), the alien shall have access to the alien's visa or other entry document, if any, and any other records and documents, not considered by the Attorney General to be confidential, pertaining to the alien's admission or presence in the United States.

"(3) BURDEN ON SERVICE IN CASES OF DEPORTABLE ALIENS.—

"(A) IN GENERAL.—In the proceeding the Service has the burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable. No decision on deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence.

"(B) PROOF OF CONVICTIONS.—In any proceeding under this Act, any of the following documents or records (or a certified copy of such an official document or record) shall constitute proof of a criminal conviction:

"(i) An official record of judgment and conviction.

"(ii) An official record of plea, verdict, and sentence.

"(iii) A docket entry from court records that indicates the existence of the conviction.

"(iv) Official minutes of a court proceeding or a transcript of a court hearing in which the court takes notice of the existence of the conviction.

"(v) An abstract of a record of conviction prepared by the court in which the conviction was entered, or by a State official associated with the State's repository of criminal justice records, that indicates the charge or section of law violated, the disposition of the case, the existence and date of conviction, and the sentence.

"(vi) Any document or record prepared by, or under the direction of, the court in which the conviction was entered that int '\(tes the e-ist-ence of a conviction.

"(vii) Any document or record _ _ g in the conviction that is maintained by c.n official of a

State or Federal penal institution, which is the basis for that institution's authority to assume custody of the individual named in the record.

"(C) ELECTRONIC RECORDS.—In any proceeding under this Act, any record of conviction or abstract that has been submitted by electronic means to the Service from a State or court shall be admissible as evidence to prove a criminal conviction if it is—

"(i) certified by a State official associated with the State's repository of criminal justice records as an official record from its repository or by a court official from the court in which the conviction was entered as an official record from its repository, and

"(ii) certified in writing by a Service official as having been received electronically from the State's record repository or the court's record repository.

A certification under clause (i) may be by means of a computer-generated signature and statement of authenticity.

"(4) NOTICE.—If the immigration judge decides that the alien is removable and orders the alien to be removed, the judge shall inform the alien of the right to appeal that decision and of the consequences for failure to depart under the order of removal, including civil and criminal penalties..

"(5) MOTIONS TO RECONSIDER.—

"(A) IN GENERAL.—The alien may file one motion to reconsider a decision that the alien is removable from the United States.

"(B) DEADLINE.—The motion must be filed within 30 days of the date of entry of a final administrative order of removal.

"(C) CONTENTS.—The motion shall specify the errors of law or fact in the previous order and shall be supported by pertinent authority.

"(6) MOTIONS TO REOPEN.—

"(A) IN GENERAL.—An alien may file one motion to reopen proceedings under this section.

"(B) CONTENTS.—The motion to reopen shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material.

"(C) DEADLINE.—

"(i) IN GENERAL.—Except as provided in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal.

"(ii) ASYLUM.—There is no time limit on the filing of a motion to reopen if the basis of the motion is to apply for relief under sections 208 or 241(b)(3) and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding.

"(iii) FAILURE TO APPEAR.—The filing of a motion to reopen an order entered pursuant to subsection (b)(5) is subject to the deadline specified in subparagraph (C) of such subsection.

"(d) STIPULATED REMOVAL.—The Attorney General shall provide by regulation for the entry by an immigration judge of an order of removal stipulated to by the alien (or the alien's representative) and the Service. A stipulated order shall constitute a conclusive determination of the alien's removability from the United States.

"(e) DEFINITIONS.—In this section and section 240A:

"(1) EXCEPTIONAL CIRCUMSTANCES.—The term 'exceptional circumstances' refers to exceptional circumstances (such as serious illness of the alien or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien.

"(2) REMOVABLE.—The term 'removable' means—

"(A) in the case of an alien not admitted to the United States, that the alien is inadmissible under section 212, or

"(B) in the case of an alien admitted to the United States, that the alien is deportable under section 237.

_ _ _

CIMPDF — www.texis.com

"CANCELLATION OF REMOVAL; ADJUSTMENT OF STATUS

"SEC. 240A. (a) CANCELLATION OF REMOVAL FOR CERTAIN PERMANENT RESIDENTS.—The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—

"(1) has been an alien lawfully admitted for permanent residence for not less than 5 years,

"(2) has resided in the United States continuously for 7 years after having been admitted in any status, and

"(3) has not been convicted of any aggravated felony.

"(b) CANCELLATION OF REMOVAL AND ADJUSTMENT OF STATUS FOR CERTAIN NONPERMANENT RESIDENTS.—

"(1) IN GENERAL.—The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—

"(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

"(B) has been a person of good moral character during such period;

"(C) has not been convicted of an offense under section 212(a)(2), 237(a)(2), or 237(a)(3); and

"(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

"(2) SPECIAL RULE FOR BATTERED SPOUSE OR CHILD.—The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien demonstrates that—

"(A) the alien has been battered or subjected to extreme cruelty in the United States by a spouse or parent who is a United States citizen or lawful permanent resident (or is the parent of a child of a United States citizen or lawful permanent resident and the child has been battered or subjected to extreme cruelty in the United States by such citizen or permanent resident parent);

"(B) the alien has been physically present in the United States for a continuous period of not less than 3 years immediately preceding the date of such application;

"(C) the alien has been a person of good moral character during such period;

"(D) the alien is not inadmissible under paragraph (2) or (3) of section 212(a), is not deportable under paragraph (1)(G) or (2) through (4) of section 237(a), and has not been convicted of an aggravated felony; and

"(E) the removal would result in extreme hardship to the alien, the alien's child, or (in the case of an alien who is a child) to the alien's parent.

In acting on applications under this paragraph, the Attorney General shall consider any credible evidence relevant to the application. The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General.

"(3) ADJUSTMENT OF STATUS.—The Attorney General may adjust to the status of an alien lawfully admitted for permanent residence any alien who the Attorney General determines meets the requirements of paragraph (1) or (2). The number of adjustments under this paragraph shall not exceed 4,000 for any fiscal year. The Attorney General shall record the alien's lawful admission for permanent residence as of the date the Attorney General's cancellation of removal under paragraph (1) or (2) or determination under this paragraph.

"(c) ALIENS INELIGIBLE FOR RELIEF.—The provisions of subsections (a) and (b)(1) shall not apply to any of the following aliens:

"(1) An alien who entered the United States as a crewman subsequent to Jun. 30, 1964.

"(2) An alien who was admitted to the United States as a nonimmigrant exchange alien as defined in section 101(a)(15)(J), or has acquired the status of such a nonimmigrant exchange alien after admission, in order to receive graduate medical education or training, regardless of whether or not the alien is subject to or has fulfilled the two-year foreign residence requirement of section 212(e).

"(3) An alien who—

"(A) was admitted to the United States as a nonimmigrant exchange alien as defined in section 101(a)(15)(J) or has acquired the status of such a nonimmigrant exchange alien after admission other than to receive graduate medical education or training,

"(B) is subject to the two-year foreign residence requirement of section 212(e), and

"(C) has not fulfilled that requirement or received a waiver thereof.

"(4) An alien who is inadmissible under section 212(a)(3) or deportable under section 237(a)(4).

"(5) An alien who is described in section 241(b)(3)(B)(i).

"(6) An alien whose removal has previously been cancelled under this section or whose deportation was suspended under section 244(a) or who has been granted relief under section 212(c), as such sections were in effect before the date of the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996.

"(d) SPECIAL RULES RELATING TO CONTINUOUS RESIDENCE OR PHYSICAL PRESENCE.—

"(1) TERMINATION OF CONTINUOUS PERIOD.— For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end when the alien is served a notice to appear under section 239(a) or when the alien has committed an offense referred to in section 212(a)(2) that renders the alien inadmissible to the United States under section 212(a)(2) or removable from the United States under section 237(a)(2) or 237(a)(4), whichever is earliest.

"(2) TREATMENT OF CERTAIN BREAKS IN PRESENCE.—An alien shall be considered to have failed to maintain continuous physical presence in the United States under subsections (b)(1) and (b)(2) if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days.

"(3) CONTINUITY NOT REQUIRED BECAUSE OF HONORABLE SERVICE IN ARMED FORCES AND PRESENCE UPON ENTRY INTO SERVICE.—The requirements of continuous residence or continuous physical presence in the United States under subsections (a) and (b) shall not apply to an alien who—

"(A) has served for a minimum period of 24 months in an active-duty status in the Armed Forces of the United States and, if separated from such service, was separated under honorable conditions, and

"(B) at the time of the alien's enlistment or induction was in the United States.

"(e) ANNUAL LIMITATION.—The Attorney General may not cancel the removal and adjust the status under this section, nor suspend the deportation and adjust the status under section 244(a) (as in effect before the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996), of a total of more than 4,000 aliens in any fiscal year. The previous sentence shall apply regardless of when an alien applied for such cancellation and adjustment and whether such an alien had previously applied for suspension of deportation under such section 244(a)..

"VOLUNTARY DEPARTURE

"SEC. 240B. (a) CERTAIN CONDITIONS.—

"(1) IN GENERAL.—The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense under this subsection, in lieu of being subject to proceedings under section 240 or prior to the completion of such proceedings, if the alien is not deportable under section 237(a)(2)(A)(iii) or section 237(a)(4)(B).

"(2) PERIOD.—Permission to depart voluntarily under this subsection shall not be valid for a period exceeding 120 days.

"(3) BOND.—The Attorney General may require an alien permitted to depart voluntarily under this subsection to post a voluntary departure bond, to be surrendered upon proof that the alien has departed the United States within the time specified.

"(4) TREATMENT OF ALIENS ARRIVING IN THE UNITED STATES.—In the case of an alien who is arriving in the United States and whom proceedings under section 240 are (or would otherwise be) initiated at the time of such alien's arrival, paragraph (1) shall not apply. Nothing in this paragraph shall be construed as preventing such an alien from withdrawing the application for admission in accordance with section 235(a)(4).

"(b) AT CONCLUSION OF PROCEEDINGS.—

"(1) IN GENERAL.—The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense if, at the conclusion of a proceeding under section 240, the immigration judge enters an order granting voluntary departure in lieu of removal and finds that—

"(A) the alien has been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was served under section 239(a);

"(B) the alien is, and has been, a person of good moral character for at least 5 years immediately preceding the alien's application for voluntary departure;

"(C) the alien is not deportable under section 237(a)(2)(A)(iii) or section 237(a)(4); and

"(D) the alien has established by clear and convincing evidence that the alien has the means to depart the United States and intends to do so.

"(2) PERIOD.—Permission to depart voluntarily under this subsection shall not be valid for a period exceeding 60 days.

"(3) BOND.—An alien permitted to depart voluntarily under this subsection shall be required to post a voluntary departure bond, in an amount necessary to ensure that the alien will depart, to be surrendered upon proof that the alien has departed the United States within the time specified.

"(c) ALIENS NOT ELIGIBLE.—The Attorney General shall not permit an alien to depart voluntarily under this section if the alien was previously permitted to so depart after having been found inadmissible under section 212(a)(6)(A).

"(d) CIVIL PENALTY FOR FAILURE TO DEPART.—If an alien is permitted to depart voluntarily under this section and fails voluntarily to depart the United States within the time period specified, the alien shall be subject to a civil penalty of not less than $1,000 and not more than $5,000, and be ineligible for a period of 10 years for any further relief under this section and sections 240A, 245, 248, and 249. The order permitting the alien to depart voluntarily shall inform the alien of the penalties under this subsection.

"(e) ADDITIONAL CONDITIONS.—The Attorney General may by regulation limit eligibility for voluntary departure under this section for any class or classes of aliens. No court may review any regulation issued under this subsection.

"(f) JUDICIAL REVIEW.—No court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure under subsection (b), nor shall any court order a stay of an alien's removal pending consideration of any claim with respect to voluntary departure.".

(b) REPEAL OF SECTION 212(c).—Section 212(c) (8 U.S.C. 1182(c)) is repealed.

(c) STREAMLINING REMOVAL OF CRIMINAL ALIENS.—

(1) In GENERAL.—Section 242A(b)(4) (8 U.S.C. 1252a(b)(4))., as amended by section 442(a) of Public Law 104–132 and before redesignation by section 306(b)(5) of this division, is amended—

(A) by striking subparagraph (D);

(B) by amending subparagraph (E) to read as follows:

"(D) a determination is made for the record that the individual upon whom the notice for the proceeding under this section is served (either in person or by mail) is, in fact, the alien named in such notice;"; and

(C) by redesignating subparagraphs (F) and (G) as subparagraphs (E) and (F), respectively.

(2) EFFECTIVE DATE.—The amendments made by paragraph (1) shall be effective as if included in the enactment of section 442(a) of Public Law 104–132.

**SEC. 306. DETENTION AND REMOVAL OF ALIENS ORDERED REMOVED (NEW SECTION 241).**

(a) IN GENERAL.—Title II is further amended—

(1) by striking section 237 (8 U.S.C. 1227),

(2) by redesignating section 241 (8 U.S.C. 1251) as section 237 and by moving such section to immediately follow section 236, and

(3) by inserting after section 240C (as redesignated by section 304(a)(3)) of this division the following new section:

"DETENTION AND REMOVAL OF ALIENS ORDERED REMOVED

"SEC. 241. (a) DETENTION, RELEASE, AND REMOVAL OF ALIENS ORDERED REMOVED.—

"(1) REMOVAL PERIOD.—

"(A) IN GENERAL.—Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period').

"(B) BEGINNING OF PERIOD.—The removal period begins on the latest of the following:

"(i) The date the order of removal becomes administratively final.

"(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

"(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

"(C) SUSPENSION OF PERIOD.—The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

"(2) DETENTION.—During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 212(a)(2) or 212(a)(3)(B) or deportable under section 237(a)(2) or 237(a)(4)(B)....

"(3) SUPERVISION AFTER 90-DAY PERIOD.—If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien—

"(A) to appear before an immigration officer periodically for identification;

"(B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;

"(C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and

"(D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

"(4) ALIENS IMPRISONED, ARRESTED, OR ON PAROLE, SUPERVISED RELEASE, OR PROBATION.—

"(A) IN GENERAL.—Except as provided in section 343(a) of the Public Health Service Act (42 U.S.C. 259(a)) and paragraph (2), the Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment. Parole, supervised release, probation, or possibility of arrest or further imprisonment is not a reason to defer removal.

"(B) EXCEPTION FOR REMOVAL OF NONVIOLENT OFFENDERS PRIOR TO COMPLETION OF SENTENCE OF IMPRISONMENT.—The Attorney General is authorized to remove an alien in accordance with applicable procedures under this Act before the alien has completed a sentence of imprisonment—

"(i) in the case of an alien in the custody of the Attorney General, if the Attorney General determines that: (I) the alien is confined pursuant to a final conviction for a nonviolent offense (other than an offense related to smuggling or harboring of aliens or an offense described in section 101(a)(43)(B), (C), (E), (I), or (L) and (II) the removal of the alien is appropriate and in the best interest of the United States; or

"(ii) in the case of an alien in the custody of a State (or a political subdivision of a State), if the chief State official exercising authority with respect to the incarceration of the alien determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense (other than an offense described in section 101(a)(43)(C) or (E)), (II) the removal is appropriate and in the best interest of the State, and (III) submits a written request to the Attorney General that such alien be so removed.

"(C) NOTICE.—Any alien removed pursuant to this paragraph shall be notified of the penalties under the laws of the United States relating to the reentry of deported aliens, particularly the expanded penalties for aliens removed under subparagraph (B).

"(D) NO PRIVATE RIGHT.—No cause or claim may be asserted under this paragraph against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien.

"(5) REINSTATEMENT OF REMOVAL ORDERS AGAINST ALIENS ILLEGALLY REENTERING.—If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this Act, and the alien shall be removed under the prior order at any time after the reentry.

"(6) INADMISSIBLE OR CRIMINAL ALIENS.—An alien ordered removed who is inadmissible under section 212, removable under section 237(a)(1)(C), 237(a)(2), or 237(a)(4) or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

"(7) EMPLOYMENT AUTHORIZATION.—No alien ordered removed shall be eligible to receive authorization to be employed in the United States unless the Attorney General makes a specific finding that—

"(A) the alien cannot be removed due to the refusal of all countries designated by the alien or under this section to receive the alien, or

"(B) the removal of the alien is otherwise impracticable or contrary to the public interest.

"(b) COUNTRIES TO WHICH ALIENS MAY BE REMOVED.—

"(1) ALIENS ARRIVING AT THE UNITED STATES.—Subject to paragraph (3)—

"(A) IN GENERAL.—Except as provided by subparagraphs (B) and (C), a? alien who arrives at the United States and ?t? espect to whom proceedings under section  C were  ?itiated at the

time of such alien's arrival shall be removed to the country in which the alien boarded the vessel or aircraft on which the alien arrived in the United States.

"(B) TRAVEL FROM CONTIGUOUS TERRITORY.—If the alien boarded the vessel or aircraft on which the alien arrived in the United States in a foreign territory contiguous to the United States, an island adjacent to the United States, or an island adjacent to a foreign territory contiguous to the United States, and the alien is not a native, citizen, subject, or national of, or does not reside in, the territory or island, removal shall be to the country in which the alien boarded the vessel that transported the alien to the territory or island.

"(C) ALTERNATIVE COUNTRIES.—If the government of the country designated in subparagraph (A) or (B) is unwilling to accept the alien into that country's territory, removal shall be to any of the following countries, as directed by the Attorney General:

"(i) The country of which the alien is a citizen, subject, or national.

"(ii) The country in which the alien was born.

"(iii) The country in which the alien has a residence.

"(iv) A country with a government that will accept the alien into the country's territory if removal to such country described in a previous clause of this subparagraph is impracticable, inadvisable, or impossible.

"(2) OTHER ALIENS.—Subject to paragraph (3)—

"(A) SELECTION OF COUNTRY BY ALIEN.—Except as otherwise provided in this paragraph—

"(i) any alien not described in paragraph (1) who has been ordered removed may designate one country to which the alien wants to be removed, and

"(ii) the Attorney General shall remove the alien to the country the alien so designates.

"(B) LIMITATION ON DESIGNATION.—An alien may designate under subparagraph (A)(i) a foreign territory contiguous to the United States, an adjacent island, or an island adjacent to a foreign territory contiguous to the United States as the place to which the alien is to be removed only if the alien is a native, citizen, subject, or national of, or has resided in, that designated territory or island.

"(C) DISREGARDING DESIGNATION.—The Attorney General may disregard a designation under subparagraph (A)(i) if—

"(i) the alien fails to designate a country promptly;

"(ii) the government of the country does not inform the Attorney General finally, within 30 days after the date the Attorney General first inquires, whether the government will accept the alien into the country;

"(iii) the government of the country is not willing to accept the alien into the country; or

"(iv) the Attorney General decides that removing the alien to the country is prejudicial to the United States.

"(D) ALTERNATIVE COUNTRY.—If an alien is not removed to a country designated under subparagraph (A)(i), the Attorney General shall remove the alien to a country of which the alien is a subject, national, or citizen unless the government of the country—

"(i) does not inform the Attorney General or the alien finally, within 30 days after the date the Attorney General first inquires or within another period of time the Attorney General decides is reasonable, whether the government will accept the alien into the country; or

"(ii) is not willing to accept the alien into the country.

"(E) ADDITIONAL REMOVAL COUNTRIES.—If an alien is not removed to a country under the previous subparagraphs of this paragraph, the Attorney General shall remove the alien to any of the following countries:

"(i) The country from which the alien was admitted to the United States.

**ATTACHMENT (2)**

ClibPDF – www.fastio.com

**DEPARTMENT OF JUSTICE**

**Immigration and Naturalization Service and Executive Office for Immigration Review**

8 CFR Parts 1, 3, 103, 204, 207, 208, 209, 211, 212, 213, 214, 216, 217, 221, 223, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 248, 249, 251, 252, 253, 274a, 286, 287, 299, 316, 318, and 329

[INS No. 1788–96; AG Order No. 2065–96]

RIN 1115–AE47

**Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures**

**AGENCY:** Immigration and Naturalization Service, Justice, and Executive Office for Immigration Review, Justice.

**ACTION:** Proposed rule.

**SUMMARY:** This rule proposes to amend the regulations of the Immigration and Naturalization Service (Service) and the Executive Office for Immigration Review (EOIR) governing the conduct of both expedited and regular removal proceedings, and handling of asylum claims. The regulation addresses other activities involving the apprehension, detention, hearing of claims and ultimately the removal of inadmissible and deportable aliens. In addition, this rule incorporates a number of changes which are a part of the Administration's reinvention initiative, mandated in a directive signed by the President on March 4, 1995, requiring all heads of departments and agencies to conduct a page-by-page review of all regulations and to eliminate or revise those that are outdated or otherwise in need of reform. This rule is necessary to implement the provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) and the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

**DATES:** Written comments must be submitted on or before February 3, 1997.

**ADDRESSES:** Please submit written comments, in triplicate, to the Director, Policy Directives and Instructions Branch, Immigration and Naturalization Service, 425 I Street, NW., Room 5307, Washington, DC 20536. To ensure proper handling, please refer INS number 1788–96 on your correspondence. Comments are available for public inspection at the above address by calling (202) 514–3048 to arrange for an appointment.

**FOR FURTHER INFORMATION CONTACT:**

For matters relating to the Executive Office for Immigration Review—Peggy Philbin, General Counsel, Executive Office for Immigration Review, 5107 Leesburg Pike, Suite 2400, Falls Church, VA 22041, telephone number (703) 305–0470; for asylum issues—Michael Shaul, Field Manual Project Office, Immigration and Naturalization Service, 425 I Street NW., ULLB–4th Floor, Washington, DC 20536, telephone number (202) 616–7439; for inspections issues—Linda Loveless, Office of Inspections, Immigration and Naturalization Service, 425 I Street NW., Room 4064, Washington, DC 20536, telephone number (202) 616–7489; for detention and removal issues—Len Loveless, Office of Detention and Deportation, Immigration and Naturalization Service, 425 I Street NW., Room 3008, Washington, DC 20536, telephone number (202) 616–7799.

**SUPPLEMENTARY INFORMATION:** The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Public Law 104–208, enacted on September 30, 1996, amends the Immigration and Nationality Act (Act) in several ways. This rule proposes to implement the IIRIRA by creating a new, expedited removal process for aliens attempting to enter the United States through fraud or misrepresentation or without proper documents while providing a mechanism for the determination and review of applicants who demonstrate a credible fear of persecution if returned to their own country. It consolidates exclusion and deportation proceedings into one unified removal proceeding. It revises the asylum process.

It provides that persons who are present in the United States without inspection are considered applicants for admission and indicates that such persons will not be subject to expedited removal unless and until the INS Commissioner invokes the provisions in the statute and this rule allowing her to expand the use of the expedited removal process to include such individuals. Also, various sections of IIRIRA have revised and expanded the grounds of inadmissibility (formerly exclusion grounds).

The effective date of the changes implementing the expedited removal process is April 1, 1997. The Antiterrorism and Effective Death Penalty Act of 1996, Public Law 104–132, was enacted April 24, 1996. Many of its major provisions were superseded by IIRIRA before they became effective. Several of the remaining provisions will be implemented with this rulemaking.

Taken together, the provisions of IIRIRA have made pervasive changes in the laws governing admission, inspection, removal, and detention of aliens—eliminating or revising old standards, creating new ones, and reorganizing and revising numerous provisions of existing law. In some respects, even after the effective date of the new provisions, existing legal standards will still be applied with respect to legal matters initiated prior to that date. The length of this rulemaking document alone—only one of the regulatory actions necessary to implement IIRIRA— demonstrates the breadth and complexity of these changes.

Congress directed that the provisions of Title III–A of IIRIRA take effect on April 1, 1997, and also directed that the Attorney General publish implementing regulations by March 1, 1997. A five-month period is an extremely short time frame for completing the regulatory process for a rule of this magnitude, given the time needed to draft the rule, coordinate with interested agencies, complete the regulatory review process by OMB pursuant to Executive Order 12866, and allow time for public comment. In particular, it means that there is not adequate time for the usual rulemaking model of 60 days public notice.

Because of these exigencies, the Department has limited the public comment period on this proposed rule to 30 days. However, in order to provide a fuller opportunity for public input on the numerous issues addressed in this rulemaking, the Department will allow a 120-day comment period on the Interim Rule when that is published by the beginning of March, prior to the development of a Final Rule.

As of the date this document was submitted for publication, Public Law 104–208 had not been printed. The conference report accompanying the House version of the bill, however, contains the provisions of IIRIRA. See H.R. Conf. Rep. No. 863, 104th Cong. 2d Sess., at 561. The Act should be printed in its entirety in the next few weeks.

**Applicants for Admission and Arriving Aliens**

Section 302 of IIRIRA amends section 235(a) of the Act to describe as applicants for admission both aliens who are arriving in the United States (whether or not they arrive at a designated port-of-entry) and aliens present in the United States who have not been admitted. This section also includes aliens brought to the United States after having been interdicted in international or United States waters. Prior to the enactment of the IIRIRA, aliens apprehended after entering the

United States without inspection were subject to deportation proceedings under section 242 of the Act. By considering such aliens to be applicants for admission, this amendment significantly changes the manner in which aliens who have entered the United States without inspection are considered under the Act.

In some instances, IIRIRA distinguishes between the broader term "applicants for admission" and a narrower group, "arriving aliens." For clarity, "arriving alien" has now been specifically defined in 8 CFR part 1. The proposed definition of "arriving alien" in section 1.1(q) includes aliens arriving at a port-of-entry, aliens interdicted at sea, and aliens previously paroled upon arrival. The term "arriving alien" could also include other classes of aliens, e.g., those apprehended crossing a land border between ports-of-entry. The Department would value commentary on the proper scope of the regulatory definition.

**Parole of Aliens**

The proposed rule amends § 212.5 to permit chief patrol agents to authorize parole from Service custody of aliens who have not been admitted to the United States. The regulations previously allowed the district director to exercise this authority for emergent reasons or when strictly in the public interest. Because many of the aliens apprehended and processed under the jurisdiction of a chief patrol agent will now be considered applicants for admission, this change is necessary to allow discretionary release of those aliens in the particular circumstances enumerated in § 212.5.

**Custody of Aliens Applying at Land Border Ports-of-entry**

The proposed regulation implements a new provision added to section 235(b)(2) of the Act to state that an applicant for admission arriving at a land border port-of-entry and subject to a removal hearing under section 240 of the Act may be required to await the hearing in Canada or Mexico. This simply adds to statute and regulation a long-standing practice of the Service. If the alien fails to appear for the hearing, the immigration judge may order the alien removed *in absentia*.

**Withdrawal of Application for Admission**

Section 302(a) of IIRIRA incorporates into section 235(a)(4) of the Act the longstanding practice used by the Service to permit applicants for admission to voluntarily withdraw their applications for admission to the United States, in lieu of removal proceedings, and to depart immediately. Permitting an alien to withdraw his or her application for admission allows the Service to better manage its resources by removing inadmissible aliens quickly at little or no expense to the Government, and may be considered instead of expedited or regular removal when the circumstances of the inadmissibility may not warrant a formal removal. The option to permit withdrawal is solely at the discretion of the Government, and is not a right of the alien. An immigration judge may allow only arriving aliens to withdraw an application for admission. Such a grant should ordinarily require the Service's concurrence once the issue of inadmissibility or deportability has been resolved. During the pendency of an appeal from an order of removal, permission to withdraw must be obtained from the immigration judge or the Board of Immigration Appeals (Board).

**Expedited Removal of Certain Applicants for Admission**

Pursuant to section 302(a) of IIRIRA, aliens who attempt to enter the United States by fraud or misrepresentation or who arrive without valid entry documents may be removed under an expedited process without further hearing or review. An exception is provided for Cuban nationals arriving by aircraft at a port-of-entry. Aliens who are inadmissible on other grounds will be referred for proceedings before an immigration judge under the new removal provisions of section 240 of the Act. Although not required by statute, the proposed regulation provides for review and approval of the expedited removal order by a supervisory immigration officer prior to removal of the alien. The expedited removal order bars reentry for 5 years following the removal, or 20 years in the case of a second or subsequent removal, unless the alien obtains advance permission to reenter the Untied States.

The Department requests public comment regarding the appropriate use of the authority conferred by the statute upon the Attorney General to expand the class of aliens subject to expedited removal. Section 235(b)(1)(A)(iii) of the Act permits the Attorney General, in her sole and unreviewable discretion, to apply expedited removal to aliens not admitted or paroled (and not described in section 235(b)(1)(H)) who cannot establish continuous physical presence in the United States for the previous two years.

Under the proposed rule, expedited removal will generally apply only to "arriving aliens," as defined in section 1.1(q), i.e., aliens arriving at a port-of-entry, aliens interdicted at sea, and aliens previously paroled upon arrival. The Commissioner may, however, elect to apply the expedited removal procedures to additional classes of aliens within the limits set by the statute, if, in the Commissioner's discretion, such action is operationally warranted. The Commissioner's designation may be localized, in response to specific needs within a particular region, or nationwide, as appropriate. The designation would become effective upon publication in the Federal Register, except where circumstances require immediate implementation. The Department would value commentary on two alternative approaches as well: (1) application of expedited removal only to "arriving aliens"; and (2) application of expedited removal to all aliens not admitted or paroled (and not described in section 235(b)(1)(F) who cannot demonstrate continuous physical presence for the previous two years.

Finally, commentary on the proper scope of the term "arriving alien" would be helpful to the Department in implementing section 235(b)(1). The proposed regulatory definition in section 1.1(q) includes aliens arriving at a port-of-entry, aliens interdicted at sea, and aliens previously paroled upon arrival. The term "arriving alien" could also include other classes of aliens, e.g., those apprehended crossing a land border between ports-of-entry.

**Review of Claim to Lawful Permanent Resident, Refugee, or Asylee Status in Expedited Removal**

An expedited removal order entered against an alien by an immigration officer at the time of arrival or by an asylum officer following a determination that the alien does not have a credible fear of persecution is not subject to administrative appeal, but may be reviewed by an immigration judge upon request of the alien. An exception is provided in section 235(b)(1)(C) of the act for an alien who claims under oath or under penalty or perjury to be a lawful permanent resident, to have been admitted as a refugee under section 207 of the Act, or to have been granted asylum under section 208 of the Act.

Before entering an expedited removal order against these aliens, the Service will attempt to verify the alien's claim to lawful permanent resident, refugee, or asylee status. If a claim to lawful permanent resident status is verified, the examining officer will determine whether the alien is considered an applicant for admission within the

**ATTACHMENT (3)**

248

ClibPDF - www.fastio.com

**478**

admission. A Form I-94 issued at a
border port-of-entry which is
issued for multiple entries, must be
specifically annotated to set forth the
number of entries. A Form I-94 issued
at other than a land border port-of-entry,
unless issued for multiple entries, must
be surrendered upon departure from the
United States in accordance with the
instructions on the form. Form I-94 is
not required by:

(i) Any nonimmigrant alien described
in § 212.1(a) of this chapter and 22 CFR
41.33 who is admitted as a visitor for
business or pleasure or admitted to
proceed in direct transit through the
United States;

(ii) Any nonimmigrant alien residing
in the British Virgin Islands who was
admitted only to the U.S. Virgin Islands
as a visitor for business or pleasure
under § 212.1(b) of this chapter;

(iii) Any Mexican national in
possession of a valid nonresident alien
Mexican border crossing card, or a valid
Mexican passport and a multiple-entry
nonimmigrant visa issued under section
101(a)(15)(B) of the Act, who is
admitted as a nonimmigrant visitor at a
Mexican border port of entry for a
period not to exceed 72 hours to visit
within 25 miles of the border;

(iv) Bearers of Mexican diplomatic or
official passports described in § 212.1(c–
1) of this chapter.

(2) *Paroled aliens.* Any alien paroled
into the United States under section
212(d)(5) of the Act, including any alien
crewmember, shall be issued a
completely executed Form I-94,
endorsed with the parole stamp.

88. Section 235.2 is revised to read as
follows:

**§ 235.2   Deferred inspection.**

(a) A district director may, in his or
her discretion, defer the inspection of
any vessel or aircraft, or of any alien, to
another Service office or port-of-entry.
Any alien coming to a United States
port from a foreign port, from an
outlying possession of the United States,
from Guam, Puerto Rico, or the Virgin
Islands of the United States, or from
another port of the United States at
which examination under this part was
deferred, shall be regarded as an
applicant for admission at that onward
port.

(b) An examining immigration officer
may defer further examination and refer
the alien's case to the district director
having jurisdiction over the place where
the alien is seeking admission, or over
the place of the alien's residence or
destination in the United States, if the
examining immigration officer has
reason to believe that the alien can

seeking admission under
section 213 or for adjustment under
section ... ; or

(3) Presenting additional evidence of
admissibility not available at the time
and place of the initial examination.

(c) Such deferral shall be
accomplished pursuant to the
provisions of section 212(d)(5) of the
Act for the period of time necessary to
complete the deferred inspection.

(d) Refusal of a district director to
authorize admission under section 213
of the Act, or to grant an application for
the benefits of section 211 or section
212(d)(3) or (4) of the Act, shall be
without prejudice to the renewal of such
application or the authorizing of such
admission by the immigration judge
without additional fee.

(e) Whenever an alien on arrival is
found or believed to be suffering from
a disability that renders it impractical to
proceed with the examination under the
Act, the examination of such alien,
members of his or her family concerning
whose admissibility it is necessary to
have such alien testify, and any
accompanying aliens whose protection
or guardianship will be required should
such alien be found inadmissible shall
be deferred for such time and under
such conditions as the district director
in whose district the port is located
imposes.

89. Section 235.3 is revised to read as
follows:

**§ 235.3   Inadmissible aliens and expedited
removal.**

(a) *Detention prior to inspection.* All
persons arriving at a port-of-entry in the
United States by vessel or aircraft shall
be detained aboard the vessel or at the
airport of arrival by the owner, agent,
master, commanding officer, person in
charge, purser, or consignee of such
vessel or aircraft until admitted or
otherwise permitted to land by an
officer of the Service. Notice or order to
detain shall not be required. The owner,
agent, master, commanding officer,
person in charge, purser, or consignee of
such vessel or aircraft shall deliver
every alien requiring examination to an
immigration officer for inspection or to
a medical officer for examination. The
Service will not be liable for any
expenses related to such detention or
presentation or for any expenses of a
passenger who has not been presented
for inspection and for whom a
determination has not been made
concerning admissibility by a Service
officer.

(b) ...
... is ...
... to paragraph (b)(2)(i) of this
section who is determined to be
inadmissible under section 212(a)(6)(C)
or 212(a)(7) of the Act (except an alien
for whom documentary requirements
are waived under § 211.1(b)(3) or § 212.1
of this chapter), shall be ordered
removed from the United States in
accordance with section 235(b)(1) of the
Act. The examining immigration officer
shall serve the alien with Form I-860,
Notice and Order of Expedited Removal.
Except as otherwise provided in this
section, such alien is not entitled to a
hearing before an immigration judge in
proceedings conducted pursuant to
section 240 of the Act, or to an appeal
of the expedited removal order by the
Board of Immigration appeals. An alien
whose inadmissibility is being
considered under this section or who
has been ordered removed pursuant to
this section shall be detained pending
determination and removal, except that
parole of such alien, in accordance with
section 212(d)(5) of the Act, may be
permitted only when the Attorney
General determines, in the exercise of
discretion, that parole is required to
meet a medical emergency or is
necessary for a legitimate law
enforcement objective.

(2) *Applicability.* The expedited
removal provisions shall apply to the
following classes of aliens who are
determined to be inadmissible under
section 212(a)(6)(C) or (7) of the Act:

(i) Arriving aliens, as defined in
§ 1.1(q) of this chapter, except for
citizens of Cuba arriving at a United
States port-of-entry by aircraft;

(ii) As specifically designated by the
Commissioner, aliens who arrive in,
attempt to enter, or have entered the
United States without having been
admitted or paroled following
inspection by an immigration officer at
a designated port-of-entry, and who
have not established to the satisfaction
of the immigration officer that they have
been physically present in the United
States continuously for the 2-year
period immediately prior to the date of
determination of inadmissibility. The
Commissioner shall have the sole
discretion to apply the provisions of
section 235(b)(1) of the Act, at any time,
to any class of aliens described in this
section. The Commissioner's
designation shall become effective upon
publication of a notice in the **Federal
Register**. However, if the Commissioner
determines, in the exercise of discretion,
that the delay caused by publication
would adversely affect the interests of

the United States or the effective enforcement of the immigration laws, the Commissioner's designation shall become effective immediately upon issuance, and shall be published in the **Federal Register** as soon as practicable thereafter. When these provisions are in effect for aliens who enter without inspection, the burden of proof rests with the alien to affirmatively show that he or she has the required continuous physical presence in the United States. Any absence from the United States shall serve to break the period of continuous physical presence. An alien who was not inspected and admitted or paroled into the United States but who establishes that he or she has been continuously physically present in the United States for the 2-year period immediately prior to the date of determination of inadmissibility shall be detained in accordance with section 235(b)(2) of the Act for a proceeding under section 240 of the Act.

(3) *Additional charges of inadmissibility.* In the expedited removal process, the Service may not charge an alien with any additional grounds of inadmissibility other than section 212(a)(6)(C) or 212(a)(7) of the Act. if an alien appears to be inadmissible under other grounds contained in section 212(a) of the Act, and if the Service wishes to pursue such additional grounds of inadmissibility, the alien shall be detained and referred for a removal hearing before an immigration judge pursuant to sections 235(b)(2) and 240 of the Act for inquiry into all charges. Once the alien is in removal proceedings under section 240 of the Act, the Service is not precluded from lodging additional charges against the alien. Nothing in this paragraph shall preclude the Service from pursuing such additional grounds of inadmissibility against the alien in any subsequent attempt to reenter the United States, provided the additional grounds of inadmissibility still exist.

(4) *Claim of asylum or fear of persecution.* If an alien subject to the expedited removal provisions indicates an intention to apply for asylum, a fear of persecution, or a fear of return to his or her country, the inspecting officer shall, before proceeding further with the case, detain the alien and refer him or her for an interview by an asylum officer in accordance with § 208.30 of this chapter to determine if the alien has a credible fear of persecution. The referring officer shall provide information to the alien concerning the nature and purpose of the credible fear interview and shall advise the alien that he or she may, prior to the interview, consult with a person or person of his

or her choosing, at no expense to the Government and without unreasonably delaying the process. Pending the credible fear determination, the alien shall be detained. Parole of such alien in accordance with section 212(d)(5) of the Act may be permitted only when the Attorney General determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective.

(5) *Claim to lawful permanent resident, refugee, or asylee status.* (i) *Verification of status.* If an applicant for admission who is subject to expedited removal pursuant to section 235(b)(1) of the Act claims to have been lawfully admitted for permanent residence, admitted as a refugee under section 207 of the Act, or granted asylum under section 208 of the Act, the immigration officer shall attempt to verify the alien's claim. Such verification shall include a check of all available Service data systems and any other means available to the officer. An alien whose claim to lawful permanent resident, refugee, or asylee status cannot be verified will be advised of the penalties for perjury, and will be placed under oath or allowed to make a declaration as permitted under 28 U.S.C. 1746, concerning his or her lawful admission for permanent residence, admission as a refugee under section 207 of the Act, or grant of asylum status under section 208 of the Act. Whenever practicable, a written statement shall be taken from the alien. The immigration officer shall issue an expedited order of removal under section 235(b)(1)(A)(i) of the Act and refer the alien to the immigration judge for review of the order in accordance with paragraph (b)(5)(iv) of this section and § 235.6(a)(2)(ii).

(ii) *Claimed lawful permanent residents.* If the claim to lawful permanent resident status is verified, and such status has not been terminated in exclusion, deportation, or removal proceedings, the examining immigration officer shall not order the alien removed pursuant to section 235(b)(1) of the Act. The examining immigration officer will determine in accordance with section 101(a)(13)(C) of the Act whether the alien is considered to be making an application for admission. If the alien is determined to be seeking admission and the alien is otherwise admissible, except that he or she is not in possession of the required documentation, a discretionary waiver of documentary requirements may be considered in accordance with section 211(b) of the Act and § 211.1(b)(3) of this chapter or the alien's inspection may be deferred to an onward office for presentation of the

required documents. If the alien appears to be inadmissible. the immigration officer may initiate removal proceedings against the alien under section 240 of the Act.

(iii) *Claimed refugees and asylees.* If a check of Service records or other means indicates that the alien has been granted refugee status or asylee status, and such status has not been terminated in deportation, exclusion, or removal proceedings, the immigration officer shall not order the alien removed pursuant to section 235(b)(1) of the Act. If the alien is not in possession of a valid, unexpired refugee travel document, the examining immigration officer may accept an application for a refugee travel document in accordance with § 223.2(b)(2)(ii) of this chapter. If accepted, the immigration officer shall readmit the refugee or asylee in accordance with § 223.3(d)(2)(i) of this chapter. If the alien is determined not to be eligible to file an application for a refugee travel document the immigration officer may initiate removal proceedings against the alien under section 240 of this Act.

(iv) *Review of order for claimed lawful permanent residents, refugees, or asylees.* When an alien whose status has not been verified but who is claiming under oath or under penalty of perjury to be a lawful permanent resident, refugee, or asylee is ordered removed pursuant to section 235(b)(1) of the Act, the case will be referred to an immigration judge for review of the expedited removal order under section 235(b)(1)(C) of the Act and § 235.6(a)(2)(ii). If the immigration judge determines that the alien has never been admitted as a lawful permanent resident or as a refugee, or granted asylum status, the order issued by the immigration officer will be affirmed and the Service will remove the alien. There is no appeal from the decision of the immigration judge. If the immigration judge determines that the alien was once so admitted as a lawful permanent resident or as a refugee, or was granted asylum status, and such status has not been terminated by final administrative action, the immigration judge will terminate proceedings and vacate the expedited removal order. The Service may initiate removal proceedings against such an alien in proceedings under section 240 of the Act. During removal proceedings, the immigration judge may consider any waivers, exceptions, or requests for relief for which the alien is eligible.

(6) *Opportunity for the alien to establish that he or she was admitted or paroled into the United States.* If the Commissioner determines that the

[...] be given a reasonable opportunity to establish to the satisfaction of the examining immigration officer that he or she was admitted or paroled into the United States following inspection at a port-of-entry. The alien will be allowed to present evidence or provide sufficient information to support the claim. Such evidence may consist of documentation in the possession of the alien, the Service, or a third party. The examining immigration officer will consider all such evidence and information, make further inquiry if necessary, and will attempt to verify the alien's status through a check of all available Service data systems. The burden rests with the alien to satisfy the examining immigration officer of the claim of lawful admission or parole. If the alien establishes that he or she was lawfully admitted or paroled, the case will be examined to determine if grounds of deportability under section 237(a) of the Act are applicable, or if paroled, whether such parole has been, or should be, terminated, and whether the alien is inadmissible under section 212(a) of the Act. An alien who cannot satisfy the examining officer that he or she was lawfully admitted or paroled will be ordered removed pursuant to section 235(b)(1) of the Act.

(7) *Review of expedited removal orders.* Any removal order entered by an examining immigration officer pursuant to section 235(b)(1) of the Act must be reviewed and approved by the appropriate supervisor before the order is considered final. Such supervisory review shall not be delegated below the level of the second line supervisor, or a person acting in that capacity. The supervisory review and approval of an expedited removal order for an alien described in section 235(b)(1)(A)(iii) of the Act must include a review of any claim of lawful admission or parole and any evidence or information presented to support such a claim, prior to approval of the order. In such cases, the supervisor may request additional information from any source and may require further interview of the alien.

(8) *Removal procedures relating to expedited removal.* An alien ordered removed pursuant to section 235(b)(1) of the Act shall be removed from the United States in accordance with section 241(c) of the Act and 8 CFR part 241.

(9) *Waivers of documentary requirements.* Nothing in this section limits the discretionary authority of the Attorney General, including authority

[...] section [...] of [...] of § 235.3(c) do not apply to an applicant for admission under section 217 of the Act.

(c) *Other inadmissible aliens.* Any alien applicant for admission, as included in sections 101(a)(13) and 235(a)(1) of the Act and § 235.1(d) of this chapter, who appears to the inspecting officer to be inadmissible, but who does not fall within paragraph (b) of this section, may be detained, paroled, or paroled for deferred inspection by the inspecting officer. In determining whether or not an alien shall be detained, paroled, or paroled for deferred inspection, the inspecting officer shall consider the likelihood that the alien will abscond or pose a security risk.

(d) *Service custody.* The Service will assume custody of any alien subject to detention under paragraph (b) or (c) of this section. In its discretion, the Service may require any alien who appears inadmissible and who arrives at a land border port-of-entry from Canada or Mexico, to remain in that country while awaiting a removal hearing. Such alien shall be considered detained for a proceeding within the meaning of section 235(b) of the Act and may be ordered removed in absentia by an immigration judge if the alien fails to appear for the hearing.

(e) *Detention in non-Service facility.* Whenever an alien is taken into Service custody and detained at a facility other than at a Service Processing Center, the public or private entities contracted to perform such service shall have been approved for such use by the Service's Jail Inspection Program or shall be performing such service under contract in compliance with the Standard Statement of Work for Contract Detention Facilities. Both programs are administered by the Detention and Deportation Service having jurisdiction over the alien's place of detention. Under no circumstances shall an alien be detained in facilities not meeting the four mandatory criteria for usage. These are:

(1) 24-Hour supervision,

(2) Conformance with safety and emergency codes,

(3) Food Service, and

(4) Availability of emergency medical care.

(f) *Privilege of communication.* The mandatory notification requirements of consular and diplomatic officers pursuant to § 236.1(e) of this chapter

**§ 235.4  Withdrawal of application for admission.**

a) The Attorney General may, in his or her discretion, permit any alien applicant for admission to withdraw his or her application for admission in lieu of removal proceedings under section 240 of the Act or expedited removal under section 235(b)(1) of the Act. The alien's decision to withdraw his or her application for admission must be made voluntarily, but nothing in this section shall be construed as to give an alien the right to withdraw his or her application for admission. Permission to withdraw an application for admission should not normally be granted unless the alien intends and is able to depart the United States immediately. An alien permitted to withdraw his or her application for admission shall normally remain in carrier or Service custody pending departure, unless the district director determines that parole of the alien is warranted in accordance with § 212.5(a) of this chapter.

(b) An immigration judge may allow only an arriving alien to withdraw an application for admission. Once the issue of inadmissibility or deportability has been resolved, permission to withdraw an application for admission should ordinarily be granted only with the concurrence of the Service. An immigration judge shall not allow an alien to withdraw an application for admission unless the alien, in addition to demonstrating that he or she possesses both the intent and the means to depart immediately from the United States, establishes that factors directly relating to the issue of inadmissibility indicate that the granting of the withdrawal would be in the interest of justice. In addition, during the pendency of an appeal from the order of removal, permission to withdraw an application for admission must be obtained from the immigration judge or the Board.

91. Section 235.5 is revised to read as follows:

**§ 235.5  Preinspection.**

(a) *In United States territories and possessions.* In the case of any aircraft proceeding from Guam, Puerto Rico, or the United States Virgin Islands destined directly and without touching at a foreign port or place, to any other of such places, or to one of the States of the United States or the District of Columbia, the examination of the passengers and crew required by the Act

251

**ATTACHMENT (4)**

CVISPDF – www.fastio.com

44d

expeditiously rem[...] [...]
stowaway who meers the credible fear
threshold and is allowed to present an
asylum or withholding of removal
application in a proceeding before an
immigration judge may appeal the
resulting decision to the BIA.

## Proposed Changes Not Mandated by IIRIRA

The rulemaking also proposes to
remove §§ 208.13(b)(2)(ii) and
208.16(b)(4) which require that
adjudicators give "due consideration to
evidence that the government of the
applicant's country of nationality or last
habitual residence persecutes its
nationals or residents if they leave the
country without authorization or seek
asylum in another country." The
regulations accomplish little and are
potentially misleading in their current
form. The term "due consideration"
provides little guidance. Moreover, the
question of whether punishment for a
migration-related offense is
"persecution" hinges on an evaluation
of the circumstances of each case. Under
current law, prosecution for migration-
related offenses does not ordinarily
amount to persecution. Since the
provision does not offer any assistance
in adjudicating claims involving
prosecution for unauthorized departure,
we propose removing it from the
regulations.

The rule provides a special regulation
to govern the application of section
243(h)(3) of the Act, a provision added
by section 413(f) of AEDPA that was
eliminated by section 307 of IIRIRA.
That section provided that,
notwithstanding any other provision of
law, the Attorney General could grant
an alien withholding of deportation if
she determined that it was necessary to
do so to ensure compliance with the
1967 Protocol Relating to the Status of
Refugees. In new section 241(b)(3)(B) of
the Act, the only change Congress made
to the existing bars to withholding of
deportation was to require, in the case
of an alien convicted of an aggravated
felony (or felonies), that the alien
receive an aggregate term of
imprisonment of at least 5 years before
such crime or crimes are automatically
considered to be particularly serious.
We understand this change to reflect
Congress' conclusion that the bars to
withholding of deportation or removal
are consistent with the United States'
obligations under the 1967 Protocol
Relating to the Status of Refugees,
except potentially in the case of an
aggravated felon who receives less than
a 5-year aggregate sentence. The
Department proposes a regulatory
interpretation of section 243(h)(3) that is

attempt[...] [...]
243(h)(3) of the Act only if[...]
an aggravated felon who re[...]
aggregate senten[...]ce o[...] less t[...]n [...] yea[...]
and can establish that the crime or
crimes of which he or she has been
convicted are not particularly serious.
This will require a case-by-case
determination whether the crime or
crimes committed by the alien are
particularly serious. Only if the crime is
determined not to be particularly
serious will the alien be entitled to have
his or her withholding of deportation
claim considered. Because section
243(h)(3) of the Act was eliminated by
IIRIRA, this rule applies only to
applications for withholding made in
proceedings commenced before April
1, 1997, so long as a final action on any
such withholding request was not taken
prior to April 24, 1996, the date of
AEDPA's passage.

## Establishment of a Fee for Filing an Application for Asylum

This rulemaking does not propose to
establish a fee for filing an application
for asylum or to expand the situations
under which fees may be charged for
asylum-based applications for work
authorization, despite the statutory
permission to do so contained in section
208(d)(3) of the Act. Should the
Department decide to do so at a later
date, that action would be part of a
separate rulemaking.

## Employment Authorization for Asylum Applicants

The proposed regulations will
continue to allow asylum applicants to
apply for an employment authorization
document (EAD) once the asylum
application has been pending for 150
days, which is 30 days before the new
statutorily-mandated time for granting
such authorization contained in section
208(d)(2) of the Act.

## Rules of Procedure for Executive Office for Immigration Review

Implementation of IIRIRA will impact
the rules of procedure for proceedings
before the Executive Office for
Immigration Review. These proposed
rules amend the regulations to expand
the scope of the rules of procedure to
include new removal proceedings in
provisions regarding motions to reopen
and reconsider, jurisdiction and
commencement of proceedings,
stipulated requests for orders, in
absentia hearings, public access to
hearings, and additional charges. The
proposed rules also add provisions

Subpoenas by Immigration Judges

[...] .i.4 ot IIRIRA bestows upon
immigration judges the statutory
authority to issue subpoenas for the
attendance of witnesses and
presentation of evidence in removal
proceedings. This subpoena power had
previously been granted to immigration
judges by regulation only and the
immigration judges had to enlist the
district director to invoke the aid of the
district court for failure to comply with
the subpoena. The proposed rule
amends the subpoena provisions to
provide that an immigration judge
directly invokes the aid of the district
court for an order requiring the
compliance with a subpoena instead of
requiring the district director to take
such action.

### New Removal Proceedings

Section 240 of the Act as amended by
section 304(a) of IIRIRA merges the
separate proceedings of exclusion and
deportation into one removal
proceeding. In this single proceeding,
the immigration judge will determine
whether an alien is inadmissible under
section 212 of the Act or deportable
under section 237 (formerly section 241)
of the Act. In light of these statutory
changes, individuals in these removal
proceedings are referred to in the
proposed rule as determined to be
removable or ordered removed after
being found to be either inadmissible or
deportable (but no longer will be
referred to as excludable or excluded).
Removal proceedings will in nearly all
respects resemble present day
deportation or exclusion proceedings,
with some minor differences outlined
below and implemented by this
proposed rule.

Although not as a result of any
provision of IIRIRA, the Department is
soliciting public comments on whether
these regulations should include a
provision for appointment of a guardian
ad litem in a case where a minor or
incompetent respondent in removal
proceedings is otherwise unrepresented.

### Applicability of New Removal Provisions

The IIRIRA provides that the newly
created removal procedures and the new
amended forms of relief available in
removal proceedings which appear in
title III–A of IIRIRA will apply to all
individuals placed into removal
proceedings on or after April 1, 1997,
and will not affect individuals who

253

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum To Supplement Defendants' Supplemental Brief In Support Of Defendants' Counter Motion For Summary Judgment was mailed to counsel for plaintiffs, by placing it in the Department of Justice mail room for same day mailing, addressed to:

Lisa S. Brodyaga, Esq.
402 E. Harrison, 2nd Floor
Harlingen, Texas  78550

Thelma O. Garcia, Esq.
301 E. Madison
Harlingen, Texas  78550

Served on this the __4th__ day of February, 1997.

Regina Byrd
Attorney for Defendants

254