93

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 0 1 1997

| | | |
|---|---|---|
| ASCENCIO, et al | ) | Michael N. Milby, Clerk of Court |
| | ) | |
| v. | ) | C.A. No.  B-94-215 |
| | ) | |
| TROMINSKI, et al. | ) | |
| | ) | |

PLAINTIFFS' FIRST REPLY TO DEFENDANTS' MEMORANDUM SUPPLEMENTING
ITS BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Come Plaintiffs, by and through the undersigned, and respectfully
file their initial reply to the Memorandum filed by Defendants on
or about February 4, 1997, in support of their counter motion for
summary judgment. [1]   The interim regulations implementing the
Illegal Immigration Reform and Immigrant Responsibility Act of
1996, ("IIRIRA"), were just published in the Federal Register on
March 6, 1997, and differ from the proposed regulations, submitted
by Defendants as Attachment 1 to their memo, in several material
respects.  The interim regulations cover some 179 pages, as printed
out from the Internet.  Written comments are due on or before July
7, 1997.  The interim regulations contain a number of provisions of
questionable  constitutionality,  which  will  doubtless  cause
substantial controversy, and may be changed when the final version
is published.  Various challenges are being prepared, and have been
and/or will be filed shortly in Washington, D.C..  Given these
facts, and the complexity of the issues raised by the new law,
Plaintiffs anticipate filing a further reply.

I.   INTRODUCTION

The changes wrought by IIRIRA are profound, and Draconian in their
severity.  The interim regulations are in some instances even more
severe, and include such provisions as mandatory detention during

---

[1]   Said Memo will be hereinafter cited as (D:_).

187

the pendency of removal proceedings, [2] without possibility of release on parole or bond, of persons seeking admission at a port of entry, who claim U.S. citizenship or lawful permanent residence, whose claims cannot be immediately verified to the "satisfaction" of the inspecting officer. In such cases, an expedited order of removal will issue, which is subject only to limited review by an Immigration Judge. If the Judge rejects the claim of citizenship or LPR status, the Judge will affirm the expedited removal order, and, under the interim regulations, the individual has no right to appeal. 8 CFR §§235.1(b) and 235.3(b)(5)(i) and (iv). [3]

The new regulations also provide that the cases of all persons placed under exclusion or deportation proceedings prior to April 1, 1997, will proceed under the provisions of the law as it existed prior to that date, and the new procedures affecting such persons closely track those which were previously in effect. *See,* 8 CFR Part 240, Subparts D, E, and F, (8 CFR §§ 240.30 through 240.57).

## II.  ISSUES PRESENTED

A. NOTWITHSTANDING THAT CONGRESS HAS PURPORTED TO AUTHORIZE THE SUMMARY EXCLUSION PROCEDURES AT ISSUE HEREIN, SAID PROCEDURES, AS APPLIED TO LAWFUL PERMANENT RESIDENTS (AND UNITED STATES CITIZENS) VIOLATE THE CONSTITUTIONAL GUARANTEES OF EQUAL PROTECTION, AND DUE PROCESS OF LAW.

---

[2]  Previously called exclusion, or deportation, proceedings, such proceedings often last for years, as is shown by the cases of the named Plaintiffs herein.

[3]  The only right to review which survives in such cases is by means of habeas corpus. 8 USC 1252(a)(2)(i) and 1252(e)(2). As a practical matter, it would be difficult for most such persons to bring a habeas action, as they would already be in Mexico, and access to counsel would be extremely limited. *See also, Espinoza et al v. Trominski et al,* B-96-240, wherein INS is disputing jurisdiction, under similar circumstances.

188

B.  GIVEN THAT THE STATUTE UNDER CONSIDERATION IN *ROSENBERG v. FLEUTI*, 8 USC § 1101(A)(13), REPRESENTED A CODIFICATION OF PRIOR COURT DECISIONS, AND WAS LIBERALLY CONSTRUED TO ENCOMPASS THE FULL SCOPE OF THOSE DECISIONS, IT IS NOT NECESSARILY SUBJECT TO BEING STATUTORILY OVERRULED, WITH RESPECT TO PERSONS SUCH AS PLAINTIFFS HEREIN, WHO FALL WITHIN THE SCOPE OF THOSE PRIOR COURT DECISIONS.

## III.  ARGUMENT

First, it should be note that the provisions at issue not only do not take effect until April 1, 1997, [4] but will probably never be applicable to persons against whom proceedings were initiated prior to that date.  Under Section 309 of IIRIRA, the amendments referred to will not apply to persons already in proceedings, unless the Attorney General exercises one of two options to bring them within its provisions.  As noted above, by means of the interim regulations which were published on March 6, 1997, the Attorney General has opted to exercise this discretion by continuing under the provisions of the prior law, in those cases where the proceedings were instituted prior to April 1, 1997.

A. NOTWITHSTANDING THAT CONGRESS HAS PURPORTED TO AUTHORIZE THE SUMMARY EXCLUSION PROCEDURES AT ISSUE HEREIN, SAID PROCEDURES, AS APPLIED TO LAWFUL PERMANENT RESIDENTS (AND UNITED STATES CITIZENS) VIOLATE THE CONSTITUTIONAL GUARANTEES OF EQUAL PROTECTION, AND DUE PROCESS OF LAW.

1.  THE NEW PROCEDURES FOR DETERMINING THE ADMISSIBILITY OF LAWFUL PERMANENT RESIDENTS ARE UNCONSTITUTIONAL.

As amended, 8 USC §1225 will permit the summary exclusion of persons seeking admission to the United States, other than asylum-

---

[4]  The interim regulations were not published until March 6, 1997, and supposedly take effect on April 1, 1997.  A challenge based on the Administrative Procedure Act has been filed in Washington, D.C., seeking to postpone the effective date until April 6, 1997, thirty days after publication.

*185*

seekers, who are alleged to be excludable under 8 USC §§1182(a)(6)(c) or (a)(7), to wit, those who have no documents, or whose documents the officer believes to have been obtained by fraud. 8 USC §1225(b)(1)(A)(i). This would include persons claiming U.S. citizenship, or LPR status, where the claim is disputed by the Government.

Lawful permanent resident status can usually, but not always, be verified with relative ease. By contrast, U.S. citizenship is much less easily verified, except in cases where citizenship was obtained through naturalization, or where a Certificate of Citizenship has been issued. Contested claims to U.S. citizenship, either through birth, or acquisition, frequently require years to resolve. *See, for example, Perez-Dominguez et al v. Trominski et al*, B-96-116, presently pending before this Court.

8 CFR §235.1(b) provides that a person claiming to be a United States citizen who cannot "satisfy" the examining officer of the merits of the claim "shall thereafter be inspected as an alien." Virtually by definition, such a person will be ineligible for admission "as an alien." Rather, an "expedited order of removal" would generally be issued. The same would occur in the case of a person claiming LPR status, which could not be immediately verified. In both cases, the person would be detained, and referred to an immigration judge, whose decision will be final, and not subject to review. 8 CFR §235.3(b)(5)(iv). Under the interim regulations, parole is authorized in both types of cases only where "required to meet a medical emergency or [where] necessary for a legitimate law enforcement objective." 8 CFR §235.3(b)(2)(iii).

Most applicants *with* documents, who are believed to be excludable on other grounds, including a person presenting a non-immigrant visa, or lawful permanent resident, are covered by 8 USC §1225(b)(2), which provides, in relevant part, as follows:

4

*190*

CVisPDF - www.texiss.com

(b)(2) INSPECTION OF OTHER ALIENS.—
    (A) IN GENERAL.—Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240.
    (B) EXCEPTION.—Subparagraph (A) shall not apply to an alien—
        (i) who is a crewman,
        (ii) to whom paragraph (1) applies, or
        (iii) who is a stowaway.
    (C) TREATMENT OF ALIENS ARRIVING FROM CONTIGUOUS TERRITORY.—In the case of an alien described in subparagraph (A) who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 240.

In other words, subject to the possibility that such a person may be returned to Mexico, under §1225(b)(2)(C), he or she shall be detained for a proceeding under INA §240, (8 USC §1230). Neither the statute nor the interim regulations set forth any guidelines for the exercise of discretion under §1225(b)(2)(C), in deciding to return an applicant to Mexico to await proceedings. The interim regulation, 8 CFR §235.3(d), provides as follows:

> Service custody. The Service will assume custody of any alien subject to detention under paragraph (b) or (c) of this section. In its discretion, the Service may require any alien who appears inadmissible and who arrives at a land border port-of-entry from Canada or Mexico, to remain in that country while awaiting a removal hearing. Such alien shall be considered detained for a proceeding within the meaning of section 235(b) of the Act and may be ordered removed in absentia by an immigration judge if the alien fails to appear for the hearing.

The interim regulations also neglect to address the interaction of this 8 USC 1225(b)(2)(C) with 8 USC §1182(d)(5)(A), setting forth the parole authority of the District Director. As applied to

CutePDF - www.fenito.com

lawful permanent residents, the class involved herein (and to United States citizens), however, it is submitted that the invocation of §1225(b)(2)(C) would be the functional equivalent of summary exclusion, and would constitute an abuse of discretion.

> 2. AS APPLIED TO LAWFUL PERMANENT RESIDENTS AND UNITED STATES CITIZENS, THE POWER ASSERTED BY INS TO FORCE CERTAIN APPLICANTS FOR ADMISSION ARRIVING BY LAND TO REMAIN IN MEXICO UNTIL THEIR HEARINGS ARE COMPLETED IS A VIOLATION OF EQUAL PROTECTION AND DUE PROCESS.

First, it should be noted that by asserting that the forcible return of LPRs (and U.S. citizens) to Mexico to await a hearing, while simultaneously imposing the penalty of an *in absentia* hearing if the individual fails to appear, the Service is imposing the worst features of both worlds on the LPR or US citizen claimant.

Generally, a person who is "detained" can be assured of receiving actual notice of the hearing. Indeed, when a person is "detained," it has historically been the responsibility of INS to produce the individual for a hearing, and Immigration Judges have consistently refused to proceed *in absentia* in cases where the individual *has been* detained, i.e., where the Order to Show Cause is coupled with a warrant of arrest, unless and until INS provides proof that bond was posted, or that the person was released on recognizance.

A person who is "detained" by being forcibly returned to Mexico has no reasonable guarantee that he or she will receive actual notice of the hearing. Precisely this occurred in the case of Plaintiff Merino herein. *See,* Plaintiffs' Exhibit X. Although the Court mailed notice to his address in Mexico, he did not receive the notice. Fortunately, his wife, Plaintiff Ascencio, received notice of her hearing, which had been scheduled for the same date and time. She advised the Judge that her husband had not received notice, and the Court rescheduled his hearing. *Id.*.

6

*192*

Under the new law, INS is required to provide written notice, in
person if practicable, and by mail if not, of the time and place at
which proceedings will be held.   8 USC §1229(a)(1)(G)(i).   The
person must be advised of any change or postponement of the hearing
in like manner. 8 USC §1229(a)(2)(A). Service by mail is considered
sufficient if there is "proof of attempted delivery to the last
address provided" by the individual.   8 USC §1229(c).   It is
unknown how this will be interpreted.   And once an *in absentia*
order has been entered, it will be virtually impossible to set
aside, without access to a knowledgeable attorney in the U.S..

Significantly, 8 USC §1225(b)(2) does *not* specify the manner in
which it interacts with the exercise of the parole authority of
INS.   Nor did IIRIRA make significant modifications to the parole
provision, 8 USC §1182(d)(5)(A), which reads as follows:

> (5)(A) The Attorney General may, except as provided in
> subparagraph (B) or in section 214(f), in his discretion
> parole into the United States temporarily under such
> conditions as he may prescribe only on a case-by-case
> basis for urgent humanitarian reasons or significant
> public benefit any alien applying for admission to the
> United States, but such parole of such alien shall not be
> regarded as an admission of the alien and when the
> purposes of such parole shall, in the opinion of the
> Attorney General, have been served the alien shall
> forthwith return or be returned to the custody from which
> he was paroled and thereafter his case shall continue to
> be dealt with in the same manner as that of any other
> applicant for admission to the United States.

However, the corresponding interim regulation has undergone major
revisions, including the removal, as a category of persons eligible
for parole, of those who have close family ties in the United
States.   Until April 1, 1997, 8 CFR §212.5(a)(2)(iii) provided:

> (2) The parole of aliens within the following groups
> would generally come within the category of aliens for
> whom the granting of the parole exception would be
> "strictly in the public interest," provided that the

7

*193*

aliens present neither a security risk nor a risk of
absconding:
...
> (iii) Aliens who have close family relatives
> in the United States (parent, spouse,
> children, or siblings who are United States
> citizens or lawful permanent resident aliens)
> who are eligible to file, and have filed, a
> visa petition on behalf of the detainee;

Under the interim regulations, there are no longer any provisions
which would specifically authorize the grant of parole, either on
the grounds that the applicant for admission is an LPR, (or claims
to be U.S. citizen), or because such a person has close family ties
in the United States. The interim regulations do include provisions
authorizing "parole for deferred inspection," which encompasses
situations where the examining officer believes the individual may
be eligible for certain forms of relief. 8 CFR §235.2 now provides:

> (b) And examining immigration officer may defer further
> examination and refer the alien's case to the district
> director ... if the examining immigration officer has
> reason to believe that the alien can overcome a finding
> of inadmissibility by:
>> (1) Posting a bond under § 213 of the Act;
>> (2) Seeking and obtaining a waiver under
>> section 211 or 212(d)(3) or (4) of the Act; or
>> (3) Presenting additional evidence of
>> admissibility not available at the time and
>> place of the initial examination. [5]

Section 211 of the INA (8 USC §1181), allows for the admission,
without a visa, of children born abroad to lawful permanent
residents, and LPRs who are otherwise admissible, but have lost or
forgotten their documents. Section 212(d)(3) of the INA, (8 USC
§1182(d)(3)), allows for waivers of excludability for some *non-
immigrants*. And Section 212(d)(4), (8 USC §1182(d)(4)), authorizes

---

[5] Since this provision is directed at overcoming a finding of
"inadmissibility" rather than an allegation of "alienage," it is
unknown whether it will be used to parole U.S. citizen claimants.

CRAPDF - www.texiu.com

the waiver of documents for aliens in transit, in an "unforeseen emergency," or on the basis of certain reciprocity agreements.

Conspicuously absent from the categories eligible for such parole are claimants to U.S. citizenship, and LPRs considered excludable, who are eligible for a waiver under the successor provisions of the old §212(c) waiver, to wit, under the new "cancellation of removal" provisions of INA -§240A(a), (8 USC §1230A(a)).  Due to the limitations of 8 CFR §235.3(b)(2)(iii), they are not even eligible under the "catch-all" category, 8 CFR §212.5(a)(5):

> (a)(5) Aliens whose continued detention is not in the public interest as determined by the district director or chief patrol agent.

LPRs placed under proceedings, and U.S. citizenship claimants would also be excluded from the other broad category, 8 CFR §212.5(b), which authorizes parole of almost anyone else:

> (b) In the case of all other arriving aliens, except those detained under Sec.  235.3(b) or (c) of this chapter, [6] and paragraph (a) of this section, [7] the district director or chief patrol agent may, after review of the individual case, parole into the United States temporarily in accordance with section 212(d)(5)(A) of the Act, any alien applicant for admission ... as he or she may deem appropriate.

In determining whether parole of an LPR under proceedings, or a U.S. citizenship claimant would be of "significant public benefit" under 8 USC §1182(d)(5)(A), the interim regulations preclude consideration of such facts as that the applicant is an LPR, (or

---

[6]  I.e., persons subject to expedited removal, as discussed above, and those placed under Section 240 removal proceedings, i.e., virtually all LPRs placed under proceedings and U.S. citizenship claimants whose claims are disputed.

[7]  I.e., persons who are eligible for parole under the other provisions of the regulation.

195

has a strong claim to U.S. citizenship), [8] and has close family ties here.  A U.S. citizen whose status is disputed, or an LPR seeking admission who is placed under proceedings, may *only* be paroled where "required to meed a medical emergency or [where] necessary for a legitimate law enforcement objective." 8 CFR §235.3 (b)(2)(iii). By contrast, someone who seeks parole simply to go shopping may be granted this privilege, under 8 CFR §212.5(b).

Neither the provisions for return of an individual to Mexico to await a hearing, nor those relating to parole, address the constitutional ramifications of their application to LPRs and U.S. citizenship claimants.  And far from giving preference to such persons, they are excluded from most of the parole provisions, regardless of the strength of their claims.  Rather, they are subject to being unceremoniously returned to Mexico to await a hearing, of which they may, or may not, receive actual notice, and which will be conducted in their absence if they fail to appear.

Sadly, and notwithstanding Defendants' assertion to the contrary, (D:2-3), there is *no indication* that Congress even considered, much less expressed an opinion on, the constitutionality of these provisions as applied to LPRs (or U.S. citizens).

The new provision allowing INS to force an applicant for admission to await a hearing in Mexico, 8 USC §1225(b)(2)(C), is explicitly discretionary: "the Attorney General *may* return the alien to that territory pending a proceeding under section 240."  It is

---

[8]  It is recognized that there are a great many willful false claims to U.S. citizenship.  In most such cases, however, the alien admits that the claim is false once it has been detected, and if exclusion/deportation proceedings are conducted, citizenship is not an issue.  There are also, however, a significant number of valid claims, which are initially contested by INS, and which are (favorably) resolved following a hearing, and/or appeal.  Many of this latter category take years to resolve.  *See, Dominguez et al v. Trominski et al*, B-96-116, presently pending before this Court.

10

*196*

respectfully submitted that the exercise of such discretion in the case of a lawful permanent resident (or U.S. citizen), would constitute summary exclusion, and would violate the constitutional guarantees of Due Process, and Equal Protection. [10]

It should be noted that this provision only applies to individuals arriving *by land* from "from a foreign territory contiguous to the United States," to wit, Mexico and Canada. A lawful permanent resident (or U.S. citizen) who arrives, for example, on a flight from England, or even from Mexico City, is not subject to being returned pending such a hearing. To attach such Draconian consequences to the irrelevant and arbitrary fact that one is returning, afoot, for example, from a two hour excursion into Brownsville, while exempting someone who is arriving after a long absence from the interior of the country, is *per se* violative of Equal Protection. *See, generally, Yeung v. INS*, 61 F.3d 833 (11th Cir. 1995); *Bedoya-Valencia v. INS*, 6 F.3d 891 (2nd Cir. 1993); *Ghassan v. INS*, 972 F.2d 631, 633 n.2 (5th Cir. 1992); and *Francis v. INS*, 532 F.2d 891 (2nd Cir. 1976) (It is a violation of Equal Protection to base provisions affecting the rights of aliens on arbitrary factors, such as whether or not the individual has departed the United States and returned).

If it is a denial of Equal Protection to base a determination of an individual's rights on the arbitrary factor of whether or not the person has departed the U.S., *a fortiori* it is a denial of Equal Protection to base such a determination on the even more arbitrary factor of the means of return - by land, sea, or air.

Even more importantly, as has been previously urged, the application of this provision to *any* lawful permanent resident (or

_____

[10] *See, for example, Rafeedie v. INS*, 880 F.2d 506 (D.C.Cir. 1989) (summary exclusion provisions of 8 USC §1225(c) unconstitutional as applied to LPR).

*197*

U.S. citizen) is a violation of Due Process, and is inconsistent with the rights attending that status. *See, Landon v. Plasencia,* 459 U.S. 21, 32 (1982) (lawful permanent resident has constitutionally enhanced status).

Nothing in IIRIRA changes the fundamental principle that, once a person has attained the status of lawful permanent *resident* of the United States, that status, and the attendant rights, continue until such time as the status changes, for example, by the entry of an administratively final order of exclusion, deportation, or, in the case of an individual placed under proceedings after April 1st, a final order of removal. As provided by 8 USC §1101(a)(20):

> (20)   The term "lawfully admitted for permanent residence" means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed.

*See also, Molina v. Sewell,* 983 F.2d 676 (5th Cir. 1993); *Rivera v. INS,* 810 F.2d 540 (5th Cir. 1987).

Finally, there is nothing in the provisions of IIRIRA, and Defendants have tendered nothing from the legislative history, indicating that Congress even *considered* the Due Process (and Equal Protection) implications of these summary exclusion provisions. The fact that, under the interim regulations, they apply equally to U.S. citizens and lawful permanent residents only serves to reinforce the implication that *there was no such consideration*. It is almost too horrible to contemplate that Congress would adopt such Draconian measures, so clearly violative of Due Process and Equal Protection, if they had actually *thought about* their Constitutional implications.

Under the interim regulations, the parole authority in the case of most persons claiming to be lawful permanent residents or U.S.

12

*199*

CutePDF - www.tevlu.com

citizens, whose claims cannot be immediately verified to the "satisfaction" of the inspecting officer, can only be exercised "to meet a medical emergency or ... for a legitimate law enforcement objective."   [11]   Similarly, any applicant for admission whose documents the examining officer considers to have been obtained by fraud, (including a person presenting immigrant visa, where there is, for example, a significant age difference between husband and wife, and the officer suspects marriage fraud), could be subjected to summary exclusion, without a hearing before an immigration judge, or other appeal rights, and may only be paroled in a medical emergency, or for law enforcement purposes.   8 CFR §§ 235.3(b)(1)(i) and (b)(2).  [12]

Plaintiffs would urge that these restrictions on the parole authority of the Attorney General have no basis in the law, old or new, and are therefore *ultra vires*. It is also submitted that, as applied to U.S. citizens and lawful permanent residents, they are unconstitutional, as a violation of Equal Protection, and Due Process of Law.

B.   GIVEN THAT THE STATUTE UNDER CONSIDERATION IN *ROSENBERG v. FLEUTI*, 8 USC § 1101(A)(13), REPRESENTED A CODIFICATION OF PRIOR COURT DECISIONS, AND WAS LIBERALLY CONSTRUED TO ENCOMPASS THE FULL SCOPE OF THOSE DECISIONS, IT IS NOT NECESSARILY SUBJECT TO BEING STATUTORILY OVERRULED, WITH RESPECT TO PERSONS SUCH AS PLAINTIFFS HEREIN, WHO FALL WITHIN THE SCOPE OF THOSE PRIOR COURT DECISIONS.

The Government also (accurately) notes, (D:14-15), that Section IIRIRA purports to overrule certain court decisions based on

---

[11]   Ironically, if INS also charged such a person with excludability on some other grounds, such as drug or alien smuggling, s/he would be entitled to a full hearing before an Immigration Judge, and would also be eligible for parole under 8 USC 1182(d)(5)(A). *See,* 8 CFR § 235.3(b)(3).

[12]   Again, if other grounds of inadmissibility are alleged, the applicants have full hearing rights, and would be eligible for parole. 8 CFR § 235.3(b)(3)

13

*Rosenberg v. Fleuti*, 374 U.S. 449 (1963).  In so doing, they treat *Fleuti* as if it were simply an interpretation of a statute.  This overlooks the fact that 8 USC §1101(a)(13) was enacted to codify certain court decisions, and was given an expansive interpretation in *Fleuti,* in order to harmonize it with those decisions.

As the Court noted therein, *Id.* at 457 - 458 (emphasis added):

> It was in light of all of these developments in the case law that § 101(a)(13) was included in the immigration laws with the 1952 revision.  As the House and Senate Committee Reports, the relevant material from which is quoted in the margin, (footnote omitted) make clear, the major congressional concern in codifying the definition of 'entry' was with 'the status of an alien who has previously entered the United States and resided therein * * *.'  This concern was in the direction of ameliorating the harsh results visited upon resident aliens by the rule of United States ex rel. Volpe v. Smith, supra, as is indicated by the recognition that 'the courts have departed from the rigidity of (the earlier) rule,' and the statement that '(t)he bill (gives) due recognition to the judicial precedents.'  It must be recognized, of course, that the only liberalizing decisions to which the Reports referred specifically were Di Pasquale and Delgadillo, and that there is no indication one way or the other in the legislative history of what Congress thought about the problem of resident aliens who leave the country for insignificantly short periods of time.  Nevertheless, it requires but brief consideration of the policies underlying § 101(a)(13), *and of certain other aspects of the rights of returning resident aliens*, to conclude that Congress, in approving the judicial undermining of Volpe, supra, and the relief brought about by the Di Pasquale and Delgadillo decisions, could not have meant to limit the meaning of the exceptions it created in § 101(a)(13) to the facts of those two cases.

In keeping with the principle that the Court does not decide constitutional issues where they can be fairly avoided, *Id.* at 451, the Court limited itself to the conclusion that Congress "could not have meant" to limit §1101(a)(13) to the facts of the *Di Pasquale*

14

200

and *Delgadillo* decisions, [13] and did not fully explore the "other aspects of the rights of returning resident aliens" to which it alluded.  Now that Congress *has* clearly expressed such an intent, the Courts will be obliged to address the questions reserved in *Fleuti*, to wit, the extent to which the principles therein are constitutionally based.  *Cf., Landon v. Plasencia, supra.*

Of the cases based on *Fleuti* which Congress attempted to overrule in IIRIRA, one which is of particular note herein is *Molina v. Sewell,* 983 F.2d 676 (5th Cir. 1993) (lawful permanent resident under deportation proceedings, who made a 24 hour trip to take his mother to a relative's funeral in Mexico, was not making an "entry" when he presented himself for inspection upon his return). [14]

Lawful permanent residents residing near the border are accustomed to making *Fleuti*-type departures, to visit relatives, go shopping, etc..  As INS conceded on remand, when exclusion proceedings were terminated, the fact that Mr. Lozano-Molina was under deportation proceedings at the time he made the brief, casual and innocent excursion, did not mean that there was anything about the trip, or his state of mind on departure, which rendered the excursion meaningfully interruptive of his residence in the United States.

Under IIRIRA, this would change.  Without warning, such persons, many of whom have made innumerable *Fleuti*-type trips in the past, been inspected and admitted on their return, would suddenly find themselves detained at the bridge, and either returned to Mexico, or held at the INS detention center, for the duration of the

---

[13] *DiPasquale v. Karnuth,* 158 F.2d 1878 (2nd Cir. 1947); and *Delgadillo v. Carmichael,* 332 U.S. 338 (1948).

[14] It should be noted that, contrary to Defendants' claims, (D:9-14), Plaintiffs have never argued that an LPR under parole who departs the United States makes an "entry" upon return.  To the contrary, Plaintiffs have urged that such a person should be re-paroled, unless the facts of the departure mandate otherwise.

201

proceedings. It is respectfully urged that the constitutional underpinnings of the cases which brought about the enactment of 8 USC 1101(a)(13) would not permit such a result.

As previously noted, the provisions of IIRIRA will not affect those lawful permanent residents who are under proceedings as of April 1, 1997. For persons placed under proceedings after that date, much remains to be seen. But the fundamentals apparently will not. INS continues to assert the authority to force lawful permanent residents, and claimants to U.S. citizenship, to remain in Mexico pending a determination of their cases. Now, for the first time, that authority is statutorily based, but applies only to applicants have arrived by land. What is even worse, under the interim regulations, the parole authority for such persons appears to be sharply curtailed, and INS will doubtless argue that this Court would not have jurisdiction to review the denial of parole under such circumstances.

These provisions are simply unconstitutional as applied to lawful permanent residents. [15] They violate Equal Protection, and Due Process, and should be stricken by this Court.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney at Law
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226

---

[15] They are also unconstitutional as applied to U.S. citizens, but since they did not previously apply to this group, notwithstanding INS' prior assertion of their alleged power to so apply them, U.S. citizens are not part of the instant class.

16

202

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing, and of Plaintiffs'
Exhibit GG, were mailed, first-class postage prepaid, to Regina
Byrd, Attorney, OIL, Box 878, Benfranklin Sta, Washington, D.C.
20044, and Ken Muir, SAUSA, Box 1711, Harlingen, Texas 78551, this
1st day of April, 1997.

17

203

CHJPDF - www.fastio.com

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO, et al                    )
                                   )
v.                                 )        C.A. No.  B-94-215
                                   )
TROMINSKI, et al.                  )
_____)


EXHIBIT "GG" IN SUPPORT OF PLAINTIFFS'
FIRST REPLY TO DEFENDANTS' MEMORANDUM SUPPLEMENTING
ITS BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Case 1:94-cv-00215   Document 93   Filed in TXSD on 04/01/1997   Page 19 of 28

86. Section 235.1 is revised to read as follows:


Sec. 235.1  Scope of examination.

(a) General. Application to lawfully enter the United States shall be made in

[[Page 10354]]

person to an immigration officer at a U.S. port-of-entry when the port is open for inspection, or as otherwise designated in this section.

(b) U.S. citizens. A person claiming U.S. citizenship must establish that fact to the examining officer's satisfaction and must present a U.S. passport if such passport is required under the provisions of 22 CFR part 53. If such applicant for admission fails to satisfy the examining immigration officer that he or she is a U.S. citizen, he or she shall thereafter be inspected as an alien.

(c) Alien members of United States Armed Forces and members of a force of a NATO country. Any alien member of the United States Armed Forces who is in the uniform of, or bears documents identifying him or her as a member of, such Armed Forces, and who is coming to or departing from the United States under official orders or permit of such Armed Forces is not subject to the removal provisions of the Act. A member of the force of a NATO country signatory to Article III of the Status of Forces Agreement seeking to enter the United States under official orders is exempt from the control provision of the Act. Any alien who is a member of either of the foregoing classes may, upon request, be inspected and his or her entry as an alien may be recorded. If the alien does not appear to the examining immigration officer to be clearly and beyond a doubt entitled to enter the United States under the provisions of the Act, the alien shall be so informed and his or her entry shall not be recorded.

(d) Alien applicants for admission. (1) Each alien seeking admission at a United States port-of-entry shall present whatever documents are required and shall establish to the satisfaction of the immigration officer that he or she is not subject to removal under the immigration laws, Executive Orders, or Presidential Proclamations and is entitled under all of the applicable provisions of the immigration laws and this chapter to enter the United States. A person claiming to have been lawfully admitted for permanent residence must establish that fact to the satisfaction of the inspecting immigration officer and must present proper documents in accordance with Sec. 211.1 of this chapter.

(2) An alien present in the United States who has not been admitted or paroled or an alien who seeks entry at other than an open, designated port-of-entry, except as otherwise permitted in this section, is subject to the provisions of section 212(a) of the Act and to removal under section 235(b) or 240 of the Act.

(3) An alien who is brought to the United States, whether or not to a designated port-of-entry and regardless of the means of transportation, after having been interdicted in international or United States waters, is considered an applicant for admission and shall be examined under section 235(b) of the Act.

(4) An alien stowaway is not an applicant for admission and may not be admitted to the United States. A stowaway shall be removed from the United States under section 235(a)(2) of the Act. The provisions of section 240 of the Act are not applicable to stowaways, nor is the stowaway entitled to further hearing or review of the removal, except that an alien stowaway who indicates an intention to apply for asylum shall be referred to an asylum officer for a determination of credible fear of persecution in accordance with section 235(b)(1)(B) of the Act and Sec. 208.30 of this chapter. An alien stowaway who is determined to have a credible fear of persecution shall have his or her asylum

CitiPDF - www.fsvia.com

Case 1:94-cv-00215   Document 93   Filed in TXSD on 04/01/1997   Page 20 of 28

application adjudicated in accordance with Sec. 208.2(b)(2) of this chapter. Nothing in this section shall be construed to require expedited removal proceedings in accordance with section 235(b)(1) of the Act. A stowaway who absconds either prior to inspection by an **immigration** officer or after being ordered removed as a stowaway pursuant to section 235(a)(2) of the Act is not entitled to removal proceedings under section 240 of the Act and shall be removed under section 235(a)(2) of the Act as if encountered upon arrival. A stowaway who has been removed pursuant to section 235(a)(2) of the Act and this section shall be considered to have been formally removed from the United States for all purposes under the Act.

(e) U.S. citizens, lawful permanent residents of the United States, Canadian nationals, and other residents of Canada having a common nationality with Canadians, entering the United States by small craft. Upon being inspected by an **immigration** officer and found eligible for admission as a citizen of the United States, or found eligible for admission as a lawful permanent resident of the United States, or in the case of a Canadian national or other resident of Canada having a common nationality with Canadians being found eligible for admission as a temporary visitor for pleasure, a person who desires to enter the United States from Canada in a small pleasure craft of less than 5 net tons without merchandise may be issued, upon application and payment of a fee prescribed under Sec. 103.7(b)(1) of this chapter, Form I-68, Canadian Border Boat Landing Card, and may thereafter enter the United States along with the immediate shore area of the United States on the body of water designated on the Form I-68 from time to time for the duration of that navigation season without further inspection. In the case of a Canadian national or other resident of Canada having a common nationality with Canadians, the Form I-68 shall be valid only for the purpose of visits not to exceed 72 hours and only if the alien will remain in nearby shopping areas, nearby residential neighborhoods, or other similar areas adjacent to the immediate shore area of the United States. If the bearer of Form I-68 seeks to enter the United States by means other than small craft of less than 5 net tons without merchandise, or if he or she seeks to enter the United States for other purposes, or if he or she is an alien, other than a lawful permanent resident alien of the United States, and intends to proceed beyond an area adjacent to the immediate shore area of the United States, or remains in the United States longer than 72 hours, he or she must apply for admission at a United States port-of-entry.

(f) Form I-94, Arrival Departure Record. (1) Unless otherwise exempted, each arriving nonimmigrant who is admitted to the United States shall be issued, upon payment of a fee prescribed in Sec. 103.7(b)(1) of this chapter for land border admissions, a Form I-94 as evidence of the terms of admission. A Form I-94 issued at a land border port-of-entry shall be considered issued for multiple entries unless specifically annotated for a limited number of entries. A Form I-94 issued at other than a land border port-of-entry, unless issued for multiple entries, must be surrendered upon departure from the United States in accordance with the instructions on the form. Form I-94 is not required by:

(i) Any nonimmigrant alien described in Sec. 212.1(a) of this chapter and 22 CFR 41.33 who is admitted as a visitor for business or pleasure or admitted to proceed in direct transit through the United States;

(ii) Any nonimmigrant alien residing in the British Virgin Islands who was admitted only to the U.S. Virgin Islands as a visitor for business or pleasure under Sec. 212.1(b) of this chapter;

(iii) Any Mexican national in possession of a valid nonresident alien Mexican border crossing card, or a valid Mexican passport and a multiple-entry nonimmigrant visa issued under section 101(a)(15)(B) of the Act, who is admitted as a nonimmigrant visitor at a Mexican border port of entry for a

CNPDF — www.fasoo.com

Case 1:94-cv-00215  Document 93  Filed in TXSD on 04/01/1997  Page 21 of 28

[[Page 10355]]

period not to exceed 72 hours to visit within 25 miles of the border;
    (iv) Bearers of Mexican diplomatic or official passports described
in Sec. 212.1(c-1) of this chapter.
    (2) Paroled aliens. Any alien paroled into the United States under
section 212(d)(5) of the Act, including any alien crewmember, shall be
issued a completely executed Form I-94, endorsed with the parole stamp.
    87. Section 235.2 is revised to read as follows:


Sec. 235.2  Parole for deferred inspection.

    (a) A district director may, in his or her discretion, defer the
inspection of any vessel or aircraft, or of any alien, to another
Service office or port-of-entry. Any alien coming to a United States
port from a foreign port, from an outlying possession of the United
States, from Guam, Puerto Rico, or the Virgin Islands of the United
States, or from another port of the United States at which examination
under this part was deferred, shall be regarded as an applicant for
admission at that onward port.
    (b) An examining immigration officer may defer further examination
and refer the alien's case to the district director having jurisdiction
over the place where the alien is seeking admission, or over the place
of the alien's residence or destination in the United States, if the
examining immigration officer has reason to believe that the alien can
overcome a finding of inadmissibility by:
    (1) Posting a bond under section 213 of the Act;
    (2) Seeking and obtaining a waiver under section 211 or 212(d)(3)
or (4) of the Act; or
    (3) Presenting additional evidence of admissibility not available
at the time and place of the initial examination.
    (c) Such deferral shall be accomplished pursuant to the provisions
of section 212(d)(5) of the Act for the period of time necessary to
complete the deferred inspection.
    (d) Refusal of a district director to authorize admission under
section 213 of the Act, or to grant an application for the benefits of
section 211 or section 212(d)(3) or (4) of the Act, shall be without
prejudice to the renewal of such application or the authorizing of such
admission by the immigration judge without additional fee.
    (e) Whenever an alien on arrival is found or believed to be
suffering from a disability that renders it impractical to proceed with
the examination under the Act, the examination of such alien, members
of his or her family concerning whose admissibility it is necessary to
have such alien testify, and any accompanying aliens whose protection
or guardianship will be required should such alien be found
inadmissible shall be deferred for such time and under such conditions
as the district director in whose district the port is located imposes.
    88. Section 235.3 is revised to read as follows:


Sec. 235.3  Inadmissible aliens and expedited removal.

    (a) Detention prior to inspection. All persons arriving at a port-
of-entry in the United States by vessel or aircraft shall be detained
aboard the vessel or at the airport of arrival by the owner, agent,
master, commanding officer, person in charge, purser, or consignee of
such vessel or aircraft until admitted or otherwise permitted to land
by an officer of the Service. Notice or order to detain shall not be
required. The owner, agent, master, commanding officer, person in
charge, purser, or consignee of such vessel or aircraft shall deliver
every alien requiring examination to an immigration officer for
inspection or to a medical officer for examination. The Service will

Case 1:94-cv-00215    Document 93    Filed in TXSD on 04/01/1997    Page 22 of 28

not be liable for any expenses related to such detention or
presentation or for any expenses of a passenger who has not been
presented for inspection and for whom a determination has not been made
concerning admissibility by a Service officer.

     (b) Expedited removal. (1) Applicability. The expedited removal
provisions shall apply to the following classes of aliens who are
determined to be inadmissible under section 212(a)(6)(C) or (7) of the
Act:

     (i) Arriving aliens, as defined in Sec. 1.1(q) of this chapter,
except for citizens of Cuba arriving at a United States port-of-entry
by aircraft;

     (ii) As specifically designated by the Commissioner, aliens who
arrive in, attempt to enter, or have entered the United States without
having been admitted or paroled following inspection by an **immigration**
officer at a designated port-of-entry, and who have not established to
the satisfaction of the **immigration** officer that they have been
physically present in the United States continuously for the 2-year
period immediately prior to the date of determination of
inadmissibility. The Commissioner shall have the sole discretion to
apply the provisions of section 235(b)(1) of the Act, at any time, to
any class of aliens described in this section. The Commissioner's
designation shall become effective upon publication of a notice in the
Federal Register. However, if the Commissioner determines, in the
exercise of discretion, that the delay caused by publication would
adversely affect the interests of the United States or the effective
enforcement of the **immigration** laws, the Commissioner's designation
shall become effective immediately upon issuance, and shall be
published in the Federal Register as soon as practicable thereafter.
When these provisions are in effect for aliens who enter without
inspection, the burden of proof rests with the alien to affirmatively
show that he or she has the required continuous physical presence in
the United States. Any absence from the United States shall serve to
break the period of continuous physical presence. An alien who was not
inspected and admitted or paroled into the United States but who
establishes that he or she has been continuously physically present in
the United States for the 2-year period immediately prior to the date
of determination of inadmissibility shall be detained in accordance
with section 235(b)(2) of the Act for a proceeding under section 240 of
the Act.

     (2) Determination of inadmissibility. (i) Record of proceeding. An
alien who is arriving in the United States, or other alien as
designated pursuant to paragraph (b)(1)(ii) of this section, who is
determined to be inadmissible under section 212(a)(6)(C) or 212(a)(7)
of the Act (except an alien for whom documentary requirements are
waived under Sec. 211.1(b)(3) or Sec. 212.1 of this chapter), shall be
ordered removed from the United States in accordance with section
235(b)(1) of the Act. In every case in which the expedited removal
provisions will be applied and before removing an alien from the United
States pursuant to this section, the examining **immigration** officer
shall create a record of the facts of the case and statements made by
the alien. This shall be accomplished by means of a sworn statement
using Form I-867AB, Record of Sworn Statement in Proceedings under
Section 235(b)(1) of the Act. The examining **immigration** officer shall
read (or have read) to the alien all information contained on Form I-
867A. Following questioning and recording of the alien's statement
regarding identity, alienage, and inadmissibility, the examining
**immigration** officer shall record the alien's response to the questions
contained on Form I-867B, and have the alien read (or have read to him
or her) the statement, and the alien shall sign and initial each page
of the statement and each correction. The examining **immigration** officer
shall advise the alien of the charges against him or her

     [[Page 10356]]

Mar 09 1997                                                 04:02 PM

                         208
CSMPDF - www.fenrir.com

Case 1:94-cv-00215   Document 93   Filed in TXSD on 04/01/1997   Page 23 of 28

on Form I-860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement. After obtaining supervisory concurrence in accordance with paragraph (b)(7) of this section, the examining **immigration** official shall serve the alien with Form I-860 and the alien shall sign the reverse of the form acknowledging receipt. Interpretative assistance shall be used if necessary to communicate with the alien.

(ii) No entitlement to hearings and appeals. Except as otherwise provided in this section, such alien is not entitled to a hearing before an **immigration** judge in proceedings conducted pursuant to section 240 of the Act, or to an appeal of the expedited removal order to the Board of **Immigration** Appeals.

(iii) Detention and parole of alien in expedited removal. An alien whose inadmissibility is being considered under this section or who has been ordered removed pursuant to this section shall be detained pending determination and removal, except that parole of such alien, in accordance with section 212(d)(5) of the Act, may be permitted only when the Attorney General determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective.

(3) Additional charges of inadmissibility. In the expedited removal process, the Service may not charge an alien with any additional grounds of inadmissibility other than section 212(a)(6)(C) or 212(a)(7) of the Act. If an alien appears to be inadmissible under other grounds contained in section 212(a) of the Act, and if the Service wishes to pursue such additional grounds of inadmissibility, the alien shall be detained and referred for a removal hearing before an **immigration** judge pursuant to sections 235(b)(2) and 240 of the Act for inquiry into all charges. Once the alien is in removal proceedings under section 240 of the Act, the Service is not precluded from lodging additional charges against the alien. Nothing in this paragraph shall preclude the Service from pursuing such additional grounds of inadmissibility against the alien in any subsequent attempt to reenter the United States, provided the additional grounds of inadmissibility still exist.

(4) Claim of asylum or fear of persecution. If an alien subject to the expedited removal provisions indicates an intention to apply for asylum, a fear of persecution, or a fear of return to his or her country, the inspecting officer shall not proceed further with removal of the alien until the alien has been referred for an interview by an asylum officer in accordance with Sec. 208.30 of this chapter to determine if the alien has a credible fear of persecution. The examining **immigration** officer shall record sufficient information in the sworn statement to establish and record that the alien has indicated such intention, fear, or concern, and to establish the alien's inadmissibility.

(i) Referral. The referring officer shall provide the alien with a written disclosure on Form M-444, Information About Credible Fear Interview, describing:

(A) The purpose of the referral and description of the credible fear interview process;

(B) The right to consult with other persons prior to the interview and any review thereof at no expense to the United States Government;

(C) The right to request a review by an **immigration** judge of the asylum officer's credible fear determination; and

(D) The consequences of failure to establish a credible fear of persecution.

(ii) Detention pending credible fear interview. Pending the credible fear determination by an asylum officer and any review of that determination by an **immigration** judge, the alien shall be detained. Parole of such alien in accordance with section 212(d)(5) of the Act may be permitted only when the Attorney General determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective.

CVPDF - www.fenho.com

Case 1:94-cv-00215    Document 93    Filed in TXSD on 04/01/1997    Page 24 of 28

Prior to the interview, the alien shall be given time to contact and consult with any person or persons of his or her choosing. Such consultation shall be made available in accordance with the policies and procedures of the detention facility where the alien is detained, shall be at no expense to the government, and shall not unreasonably delay the process.

(5) Claim to lawful permanent resident, refugee, or asylee status or U.S. citizenship.--(i) Verification of status. If an applicant for admission who is subject to expedited removal pursuant to section 235(b)(1) of the Act claims to have been lawfully admitted for permanent residence, admitted as a refugee under section 207 of the Act, granted asylum under section 208 of the Act, or claims to be a U.S. citizen, the immigration officer shall attempt to verify the alien's claim. Such verification shall include a check of all available Service data systems and any other means available to the officer. An alien whose claim to lawful permanent resident, refugee, asylee status, or U.S. citizen status cannot be verified will be advised of the penalties for perjury, and will be placed under oath or allowed to make a declaration as permitted under 28 U.S.C. 1746, concerning his or her lawful admission for permanent residence, admission as a refugee under section 207 of the Act, grant of asylum status under section 208 of the Act, or claim to U.S. citizenship. A written statement shall be taken from the alien in the alien's own language and handwriting, stating that he or she declares, certifies, verifies, or states that the claim is true and correct. The immigration officer shall issue an expedited order of removal under section 235(b)(1)(A)(i) of the Act and refer the alien to the immigration judge for review of the order in accordance with paragraph (b)(5)(iv) of this section and Sec. 235.6(a)(2)(ii). The person shall be detained pending review of the expedited removal order under this section. Parole of such person, in accordance with section 212(d)(5) of the Act, may be permitted only when the Attorney General determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective.

(ii) Verified lawful permanent residents. If the claim to lawful permanent resident status is verified, and such status has not been terminated in exclusion, deportation, or removal proceedings, the examining immigration officer shall not order the alien removed pursuant to section 235(b)(1) of the Act. The examining immigration officer will determine in accordance with section 101(a)(13)(C) of the Act whether the alien is considered to be making an application for admission. If the alien is determined to be seeking admission and the alien is otherwise admissible, except that he or she is not in possession of the required documentation, a discretionary waiver of documentary requirements may be considered in accordance with section 211(b) of the Act and Sec. 211.1(b)(3) of this chapter or the alien's inspection may be deferred to an onward office for presentation of the required documents. If the alien appears to be inadmissible, the immigration officer may initiate removal proceedings against the alien under section 240 of the Act.

(iii) Verified refugees and asylees. If a check of Service records or other means indicates that the alien has been granted refugee status or asylee status, and such status has not been terminated in deportation, exclusion, or removal proceedings, the immigration officer shall not order the alien removed pursuant to section 235(b)(1) of the Act.

[[Page 10357]]

If the alien is not in possession of a valid, unexpired refugee travel document, the examining immigration officer may accept an application for a refugee travel document in accordance with Sec. 223.2(b)(2)(ii) of this chapter. If accepted, the immigration officer shall readmit the

Case 1:94-cv-00215   Document 93   Filed in TXSD on 04/01/1997   Page 25 of 28

refugee or asylee in accordance with Sec. 223.3(d)(2)(i) of this
chapter. If the alien is determined not to be eligible to file an
application for a refugee travel document the **immigration** officer may
initiate removal proceedings against the alien under section 240 of the
Act.

(iv) Review of order for claimed lawful permanent residents,
refugees, asylees, or U.S. citizens. A person whose claim to U.S.
citizenship has been verified may not be ordered removed. When an alien
whose status has not been verified but who is claiming under oath or
under penalty of perjury to be a lawful permanent resident, refugee,
asylee, or U.S. citizen is ordered removed pursuant to section
235(b)(1) of the Act, the case will be referred to an **immigration** judge
for review of the expedited removal order under section 235(b)(1)(C) of
the Act and Sec. 235.6(a)(2)(ii). If the **immigration** judge determines
that the alien has never been admitted as a lawful permanent resident
or as a refugee, granted asylum status, or is not a U.S. citizen, the
order issued by the **immigration** officer will be affirmed and the
Service will remove the alien. There is no appeal from the decision of
the **immigration** judge. If the **immigration** judge determines that the
alien was once so admitted as a lawful permanent resident or as a
refugee, or was granted asylum status, or is a U.S. citizen, and such
status has not been terminated by final administrative action, the
**immigration** judge will terminate proceedings and vacate the expedited
removal order. The Service may initiate removal proceedings against
such an alien, but not against a person determined to be a U.S.
citizen, in proceedings under section 240 of the Act. During removal
proceedings, the **immigration** judge may consider any waivers,
exceptions, or requests for relief for which the alien is eligible.

(6) Opportunity for alien to establish that he or she was admitted
or paroled into the United States. If the Commissioner determines that
the expedited removal provisions of section 235(b)(1) of the Act shall
apply to any or all aliens described in paragraph (b)(2)(ii) of this
section, such alien will be given a reasonable opportunity to establish
to the satisfaction of the examining **immigration** officer that he or she
was admitted or paroled into the United States following inspection at
a port-of-entry. The alien will be allowed to present evidence or
provide sufficient information to support the claim. Such evidence may
consist of documentation in the possession of the alien, the Service,
or a third party. The examining **immigration** officer will consider all
such evidence and information, make further inquiry if necessary, and
will attempt to verify the alien's status through a check of all
available Service data systems. The burden rests with the alien to
satisfy the examining **immigration** officer of the claim of lawful
admission or parole. If the alien establishes that he or she was
lawfully admitted or paroled, the case will be examined to determine if
grounds of deportability under section 237(a) of the Act are
applicable, or if paroled, whether such parole has been, or should be,
terminated, and whether the alien is inadmissible under section 212(a)
of the Act. An alien who cannot satisfy the examining officer that he
or she was lawfully admitted or paroled will be ordered removed
pursuant to section 235(b)(1) of the Act.

(7) Review of expedited removal orders. Any removal order entered
by an examining **immigration** officer pursuant to section 235(b)(1) of
the Act must be reviewed and approved by the appropriate supervisor
before the order is considered final. Such supervisory review shall not
be delegated below the level of the second line supervisor, or a person
acting in that capacity. The supervisory review shall include a review
of the sworn statement and any answers and statements made by the alien
regarding a fear of removal or return. The supervisory review and
approval of an expedited removal order for an alien described in
section 235(b)(1)(A)(iii) of the Act must include a review of any claim
of lawful admission or parole and any evidence or information presented
to support such a claim, prior to approval of the order. In such cases,

2(1)

Case 1:94-cv-00215   Document 93   Filed in TXSD on 04/01/1997   Page 26 of 28

the supervisor may request additional information from any source and
may require further interview of the alien.

(8) Removal procedures relating to expedited removal. An alien
ordered removed pursuant to section 235(b)(1) of the Act shall be
removed from the United States in accordance with section 241(c) of the
Act and 8 CFR part 241.

(9) Waivers of documentary requirements. Nothing in this section
limits the discretionary authority of the Attorney General, including
authority under sections 211(b) or 212(d) of the Act, to waive the
documentary requirements for arriving aliens.

(10) Applicant for admission under section 217 of the Act. The
provisions of Sec. 235.3(b) do not apply to an applicant for admission
under section 217 of the Act.

(c) Arriving aliens placed in proceedings under section 240 of the
Act. Except as otherwise provided in this chapter, any arriving alien
who appears to the inspecting officer to be inadmissible, and who is
placed in removal proceedings pursuant to section 240 of the Act shall
be detained in accordance with section 235(b) of the Act. Parole of
such alien shall only be considered in accordance with Sec. 212.5(a) of
this chapter. This paragraph shall also apply to any alien who arrived
before April 1, 1997, and who was placed in exclusion proceedings.

(d) Service custody. The Service will assume custody of any alien
subject to detention under paragraph (b) or (c) of this section. In its
discretion, the Service may require any alien who appears inadmissible
and who arrives at a land border port-of-entry from Canada or Mexico,
to remain in that country while awaiting a removal hearing. Such alien
shall be considered detained for a proceeding within the meaning of
section 235(b) of the Act and may be ordered removed in absentia by an
immigration judge if the alien fails to appear for the hearing.

(e) Detention in non-Service facility. Whenever an alien is taken
into Service custody and detained at a facility other than at a Service
Processing Center, the public or private entities contracted to perform
such service shall have been approved for such use by the Service's
Jail Inspection Program or shall be performing such service under
contract in compliance with the Standard Statement of Work for Contract
Detention Facilities. Both programs are administered by the Detention
and Deportation section having jurisdiction over the alien's place of
detention. Under no circumstances shall an alien be detained in
facilities not meeting the four mandatory criteria for usage. These
are:

(1) 24-Hour supervision,
(2) Conformance with safety and emergency codes,
(3) Food service, and
(4) Availability of emergency medical care.

(f) Privilege of communication. The mandatory notification
requirements of consular and diplomatic officers pursuant to
Sec. 236.1(e) of this chapter apply when an inadmissible alien is
detained for removal proceedings, including for purpose of conducting
the credible fear determination.

[[Page 10358]]

89. Section 235.4 is revised to read as follows:


Sec. 235.4  Withdrawal of application for admission.

(a) The Attorney General may, in his or her discretion, permit any
alien applicant for admission to withdraw his or her application for
admission in lieu of removal proceedings under section 240 of the Act
or expedited removal under section 235(b)(1) of the Act. The alien's
decision to withdraw his or her application for admission must be made
voluntarily, but nothing in this section shall be construed as to give
an alien the right to withdraw his or her application for admission.

CVAPDF - www.texia.com

Case 1:94-cv-00215   Document 93   Filed in TXSD on 04/01/1997   Page 27 of 28

Permission to withdraw an application for admission should not normally
be granted unless the alien intends and is able to depart the United
States immediately. An alien permitted to withdraw his or her
application for admission shall normally remain in carrier or Service
custody pending departure, unless the district director determines that
parole of the alien is warranted in accordance with Sec. 212.5(a) of
this chapter.

    (b) An **immigration** judge may allow only an arriving alien to
withdraw an application for admission. Once the issue of
inadmissibility has been resolved, permission to withdraw an
application for admission should ordinarily be granted only with the
concurrence of the Service. An **immigration** judge shall not allow an
alien to withdraw an application for admission unless the alien, in
addition to demonstrating that he or she possesses both the intent and
the means to depart immediately from the United States, establishes
that factors directly relating to the issue of inadmissibility indicate
that the granting of the withdrawal would be in the interest of
justice. During the pendency of an appeal from the order of removal,
permission to withdraw an application for admission must be obtained
from the **immigration** judge or the Board.
    90. Section 235.5 is revised to read as follows:


Sec. 235.5  Preinspection.

    (a) In United States territories and possessions. In the case of
any aircraft proceeding from Guam, Puerto Rico, or the United States
Virgin Islands destined directly and without touching at a foreign port
or place, to any other of such places, or to one of the States of the
United States or the District of Columbia, the examination of the
passengers and crew required by the Act may be made prior to the
departure of the aircraft, and in such event, final determination of
admissibility shall be made immediately prior to such departure. The
examination shall be conducted in accordance with sections 232, 235,
and 240 of the Act and 8 CFR parts 235 and 240. If it appears to the
examining **immigration** officer that any person in the United States
being examined under this section is prima facie removable from the
United States, further action with respect to his or her examination
shall be deferred and further proceedings regarding removability
conducted as provided in section 240 of the Act and 8 CFR part 240.
When the foregoing inspection procedure is applied to any aircraft,
persons examined and found admissible shall be placed aboard the
aircraft, or kept at the airport separate and apart from the general
public until they are permitted to board the aircraft. No other person
shall be permitted to depart on such aircraft until and unless he or
she is found to be admissible as provided in this section.
    (b) In foreign territory. In the case of any aircraft, vessel, or
train proceeding directly, without stopping, from a port or place in
foreign territory to a port-of-entry in the United States, the
examination and inspection of passengers and crew required by the Act
and final determination of admissibility may be made immediately prior
to such departure at the port or place in the foreign territory and
shall have the same effect under the Act as though made at the destined
port-of-entry in the United States.
    91. Section 235.6 is revised to read as follows:


Sec. 235.6  Referral to **immigration** judge.

    (a) Notice. (1) Referral by Form I-862, Notice to Appear. An
**immigration** officer or asylum officer will sign and deliver a Form I-
862 to an alien in the following cases:
    (i) If, in accordance with the provisions of section 235(b)(2)(A)

CUIPDF - www.fastio.com

Case 1:94-cv-00215   Document 93   Filed in TXSD on 04/01/1997   Page 28 of 28

of the Act, the examining **immigration** officer detains an alien for a
proceeding before an **immigration** judge under section 240 of the Act; or
      (ii) If, in accordance with section 235(b)(1)(B)(ii) of the Act, an
asylum officer determines that an alien in expedited removal
proceedings has a credible fear of persecution and refers the case to
the **immigration** judge for consideration of the application for asylum.
      (iii) If, in accordance with section 235(b)(1)(B)(iii)(III) of the
Act, the **immigration** judge determines that an alien in expedited
removal proceedings has a credible fear of persecution and vacates the
expedited removal order issued by the asylum officer pursuant to
section 235(b)(1)(B)(iii) of the Act.
      (iv) If an **immigration** officer verifies that an alien subject to
expedited removal under section 235(b)(1) of the Act has been admitted
as a lawful permanent resident, refugee, or asylee, or upon review
pursuant to Sec. 235.3(b)(5)(iv) an **immigration** judge determines that
the alien was once so admitted, provided that such status has not been
terminated by final administrative action, and the Service initiates
removal proceedings against the alien under section 240 of the Act.
      (2) Referral by Form I-863, Notice of Referral to **Immigration**
Judge. An **immigration** officer will sign and deliver a Form I-863 to an
alien in the following cases:
      (i) If, in accordance with section 235(b)(1)(B)(iii)(III) of the
Act, an asylum officer determines that an alien does not have a
credible fear of persecution, and the alien requests a review of that
determination by an **immigration** judge; or
      (ii) If, in accordance with section 235(b)(1)(C) of the Act, an
**immigration** officer refers an expedited removal order entered on an
alien claiming to be a lawful permanent resident, refugee, asylee, or
U.S. citizen for whom the officer could not verify such status to an
**immigration** judge for review of the order.
      (iii) If an **immigration** officer refers an applicant described in
Sec. 208.2(b)(1) of this chapter to an **immigration** judge for an asylum
hearing under Sec. 208.2(b)(2) of this chapter.
      (b) Certification for mental condition; medical appeal. An alien
certified under sections 212(a)(1) and 232(b) of the Act shall be
advised by the examining **immigration** officer that he or she may appeal
to a board of medical examiners of the United States Public Health
Service pursuant to section 232 of the Act. If such appeal is taken,
the district director shall arrange for the convening of the medical
board.


Sec. 235.7  [Removed]

      92. Section 235.7 is removed.


Sec. 235.13  [Redesignated as Sec. 235.7]

      93. Section 235.13 is redesignated as Sec. 235.7.
      94. Section 235.8 is revised to read as follows:


Sec. 235.8  Inadmissibility on security and related grounds.

      (a) Report. When an **immigration** officer or an **immigration** judge
suspects that an arriving alien appears to be inadmissible under
section 212(a)(3)(A) (other than clause (ii)), (B), or (C) of the

[[Page 10359]]

Act, the **immigration** officer or **immigration** judge shall order the alien

CSMPDF - www.fastio.com