United States District Court
Southern District of Texas
FILED

OCT 01 1998

Michael N. Milby, Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

ASCENCIO-GUZMAN, ET AL.,    )
         Plaintiffs,    )
                   )
        v.            )   C.A. No. B-94-215
                   )
E.M. TROMINSKI, District    )
Director, Immigration and    )
Naturalization Service; HON.    )
JANET RENO, United States    )
Attorney General; and    )
IMMIGRATION AND NATURALIZATION    )
SERVICE,    )
         Defendants.    )

---

### DEFENDANTS' RESPONSE TO PETITIONERS' MEMORANDUM AND ORDER

---

Comes now the defendants and present this their reply to the plaintiffs' proposed Memorandum and Order filed with the Court on September 11, 1998.

**THE COURT SHOULD NOT ADOPT THE PROPOSED MEMORANDUM AND ORDER FILED BY THE PLAINTIFFS**

**A.    Plaintiffs' Proposed Order and Memorandum Must Be Rejected Because They Have Failed To Re-urge The Court to Consider Any Of Their Previously Filed Motions Effected By The Court's Order Of May 21, 1998**

On May 21, 1998, the Court issued an order which denied without prejudice "[a]ll pending motions filed on or before April 14, 1998." The Court further granted the parties the opportunity to "re-urge any of these motions." On September 11, 1998, plaintiffs filed a document entitled, "Memorandum And Order." Therein, plaintiffs set forth language for the Court to adopt, which, if accepted and adopted, they claim presumably will dispose of the issues in controversy. However, plaintiffs'

proposed order, if accepted and adopted by the Court, would have the Court ruling on factual matters that are not in controversy and legal matters that they raise for the first time in their proposed order.  The issues in this case have already been narrowed by the Court.  Plaintiffs' proposed order, if accepted and adopted, would have the Court ruling on issues other than those the Court has determined are before it.

Moreover, plaintiffs have failed to identify the motions in which they previously raised and argued the issues addressed and disposed of by the proposed order that they now seek the Court to accept and adopt.  They have also failed to "re-urge" the Court to consider and to rule on such motions.  Plaintiffs' failure to identify the motions and to "re-urge" the Court's consideration of them means that the Court may not accept and adopt their proposed order.  This is so because the parties have not filed any motions on or after April 14, 1998.  Any issues on which plaintiffs desire the Court to rule necessarily would have had to be filed with the Court before April 14, 1998.  Therefore, presumably, plaintiffs' position is that they raised the issues addressed in their proposed order before April 14, 1998.  Since the Court has denied "[a]ll motions pending on or before April 14, 1998," without prejudice, and granted the parties an opportunity to "re-urge" consideration of the motions, there are presently no pending motions before the Court on which the Court may rule.  Therefore, the Court may not accept and adopt plaintiffs' proposed order ever if it reflected a legally and

2

170

factually accurate resolution of this case, because the Court may
not issue an order where there are no issues before it awaiting
resolution.  In other words, plaintiffs' failure to "re-urge"
their motions filed before April 14, 1998, which were all denied
without prejudice, means that plaintiffs have no motions pending
before the Court.  Clearly, before the Court may accept and adopt
plaintiffs' proposed order, plaintiffs must first place before
the Court a motion previously filed, but dismissed without
prejudice by the Court, which sets forth and argues the issues
addressed in the proposed order.  Plaintiffs' decision to issue
their proposed order without first "re-urg[ing]" the Court to
consider the motion or motions in which they set forth and argue
the issues addressed in their proposed order must necessarily
result in the rejection of their proposed order.

**B.   The Court May Not Rule On Issues Which Exceed
       Those Deemed By The Court To Be Before It For
       Resolution**

The Court's Order of May 21, 1998, does not reverse any of
the decisions already entered by the Court.  Still controlling
this case, therefore, are the Court's oral decisions entered on
April 26, 1995 and July 31, 1998.[1]  On April 26, 1995, the Court
held that no fact issues were involved in this case, that the
case turned upon legal issues, and that motions for summary

---

[1]   The defendants have the transcript of the April 26, 1995
status hearing.  The Court has been contacted to request a
transcript of the July 31, 1996 status hearing.  Pertinent
portions of the July 31, 1996 transcript will be forwarded to the
Court along with a motion requesting the Court to grant
defendants permission to supplement the present response.

3

CitaPDF - www.texia.com

judgment would resolve the controversy.  See Attachment (1).

As to the Court's decision of July 31, 1996, the Court held that the defendants may continue their practice of confiscating the Form I-551, commonly referred to as the green card, from lawful permanent resident aliens who are placed in deportation proceedings, and may issue to such aliens the Form I-94 so as to ensure the aliens' appearance at the deportation hearing or for other justifiable purposes.  The Court also requested the defendants to note on the Form I-94 that the bearer is a lawful permanent resident alien of the United States to whom employment authorization has been granted and that the Form I-94 is "Renewable."[2]  In addition, the Court held that a lawful permanent resident alien, similar to a United States citizen charged with a criminal offense, does not have a right to parole.

The Court recessed the July 31, 1996 status hearing after having ordered the parties to collaborate on an order setting forth its finding regarding the defendants' confiscation of the green card and issuance of the Form I-94.  The parties, however, were unable to agree upon the language to be placed in the order. When the status hearing was reconvened during the late afternoon

---

[2]  The defendants' counsel advised the Court that a representation could not at that time be made, without the consent of the defendants, that all Form I-94's would contain the notation requested by the Court.  As can be seen from the Defendants' Memorandum And Proposed Order Setting Forth The Court's Oral Decision Of July [31], 1996, Regarding Petitioners' Motion For Partial Summary Judgment, filed with the Court on October 3, 1996, the defendants were prepared to issue a directive requiring the Form I-94 to contain a notation consistent with the Court's directive.

4

122

of July 31, 1996, the parties advised the Court that additional
time was needed.  The Court granted the parties request.
Unfortunately, three months after the July 31, 1996 status
hearing, the parties had still been unable to agree upon the
precise language that would be placed in the joint order.  They
filed separate orders with the Court.  See Defendants' Memorandum
And Proposed Order Setting Forth The Court's Oral Decision Of
July [31], 1996, Regarding Petitioners' Motion For Partial
Summary Judgment; And Defendants' Opposition  To Plaintiffs'
Motion For Partial Summary Judgment And Defendants' Motion For
Summary Judgment" filed with the Court on October 3, 1996.  The
Court has not issued a written order regarding this matter.
However, it is the defendants' position that the Court's oral
decision still stands and that it is that decision, which the
Court should deem controlling here.

During the July 31, 1996 status hearing, the Court also
narrowed the issues before it and directed the parties to submit
supplemental briefs addressing those issues.[3]  The Court ordered
defendants to brief the issue of whether the Immigration and
Naturalization Service ("INS") has the authority to require a
lawful permanent resident ("LPR") alien, who has been placed in
exclusion proceedings at a land border, to await in the

---

[3]  The parties have differed regarding their recollection of
issues which the Court identified as being before it for
resolution.  Therefore, the defendants have inquired about
ordering the transcript of the July 31, 1998 status hearing.
Once the transcript is received, the defendants will move the
Court to permit them to supplement the present motion.

contiguous country until termination of the alien's exclusion
proceedings.  Plaintiffs were directed to brief three issues:
(1) whether defendants may place notations, other than lawful
permanent resident alien and authorized to work, on the Form I-
94, given to an alien whose alien green card has been
confiscated; (2) whether parole expires when an alien in
exclusion proceedings leaves the United States; and (3) whether
defendants may confiscate non-INS documents in the possession of
an alien who is placed in exclusion proceedings.[4]  Consequently,
the Court's oral decision of July 31, 1996, further limited the
issues before the Court beyond the limit set forth in the Court's
oral decision of April 26, 1995.

Thus, the parties are limited in terms of the issues which
they may "re-urge" the Court to consider and decide.[5]  Inasmuch

---

[4]  Plaintiffs have conceded that defendants may confiscate
the green cards issued to aliens placed in exclusion proceedings.
Petitioners' Supplemental Points And Authorities In Support Of
Motion for Partial Summary Judgment at 3.

[5]  In a motion filed simultaneously with the present motion,
the defendants have "re-urge[d]" the Court to consider and rule
upon Defendants' Supplemental Brief In Support Of Defendants'
Counter Motion For Summary Judgment," setting forth the
defendants' arguments on the issue the Court ordered the
defendants to brief; Defendants' Response To Petitioners' [sic]
Supplemental Points And Authorities In Support Of Motion For
Partial Summary Judgment, responding to plaintiffs' argument on
the issues assigned to them by the Court; and Defendants'
Memorandum To Supplement Defendants' Supplemental Brief In
Support Of Defendants' Counter Motion For Summary Judgment,
advising the Court of recently enacted legislation that impacted
upon plaintiffs' complaint.

124

CVisPDF - www.fineline.com

as plaintiffs' proposed order seeks findings on factual matters,[6]

which the Court has decided it would not reach through its oral

decision of April 26, 1995,[7] exceeds the legal issues identified

---

[6]  Plaintiffs now claim that their class also consist of
aliens in "expulsion proceedings."  Plaintiffs' Memorandum and
Order at 3.  Plaintiffs have claimed throughout that they are a
class of aliens who had been placed in either deportation or
exclusion proceedings.  It was this class of aliens that the
plaintiffs based their request for class certification upon, and
it was that class which the Court certified.  See Court's Order
of July 16, 1996; see also Attachment (2) at 1.  Thus, to the
extent that they seek to expand their class, their attempt must
fail and the Court must not accept or issue their proposed order.


[7]  Plaintiffs set forth several factual findings which
differ from their initial factual claims.  Although the Court
should not enter the factual findings sought by plaintiffs in
light of the Court's oral decision of April 26, 1996, the
plaintiffs' present factual statement should be rejected because
it distorts the facts plaintiffs previously asserted.  Plaintiffs
now assert that green cards issued to "lawful permanent resident
aliens in expulsion proceedings, but who are not being held in
custody" are confiscated "without making the determination to do
so on a case by case basis . . . ."  Plaintiffs' Memorandum and
Order at 3; but see Attachment (3) at 9 (plaintiffs acknowledge
that the defendants' decision to confiscate the green card issued
to lawful permanent resident aliens is based upon a belief that
criminal activity is afoot).  Also under that portion of their
Memorandum and Order entitled "Factual Background," plaintiffs
set forth a lengthy factual statement which distorts their
factual assertions set forth in their complaint on the same
matters.  Specifically, in paragraph two, plaintiffs would have
the Court to issue factual findings that the defendants routinely
and without justification treat lawful permanent resident aliens
found in possession of large amounts of a control substance while
seeking admission at land borders more favorably than similarly
situated aliens found with smaller amounts of a control
substance; that the defendants "frequently" confiscate green
cards and other documents; aliens claiming to be a lawful
permanent resident alien are "generally returned to Mexico to
await a hearing;" and that the hearing notices are sent by mail
and are "frequently" not received in a timely fashion.  See
Plaintiffs' Memorandum and Order at 2; but see Attachment (3) at
8-11 (where plaintiffs' factual statement shows that plaintiffs
are fully aware that the defendants do not admit all aliens
claiming to be lawful permanent resident aliens into the United

7

125

by the Court on July 31, 1998,[8] and does not accurately reflect the immigration law or the agencies' lawful practices, the Court may not accept and adopt plaintiffs' proposed order.

The outcome of plaintiffs' proposed order should be the same even if plaintiffs had identified and "re-urge[d]" the Court to consider and to rule upon a previously filed motion wherein they raised and argued the issues which their proposed order purportedly resolves. Plaintiffs simply should not be allowed to obtain a result that differs from the Court's oral decisions of April 26, 1995 and July 31, 1996, based solely on the Court's decision to permit the parties to "re-urge" any pending motion which was dismissed without prejudice by the Court pursuant to its Order of May 21, 1998. Those matters decided by the Court's oral decisions of April 26, 1995 and July 31, 1996, should not be deemed to have been revived by the Court's Order of May 21, 1998.

---

States based upon the quantity of control substance in these aliens' possession and that other actions are taken against aliens based upon a belief that the aliens are either not entitled to enter or are committing a crime). Plaintiffs also assert for the first time that the administrative "proceedings are frequently protracted" in cases where the alien has a "non-frivolous defense to charges." Plaintiffs' Memorandum and Order at 3.

[8] Plaintiffs are seeking the Court to issue a ruling which provides that the defendants "act arbitrarily and capriciously" when confiscating the green card issued to an alien "placed under expulsion proceedings" but not detained, and by confiscating other documents which do not provide "*bona fide* evidence of unlawful conduct," among other legal conclusions. See Plaintiffs' Memorandum and Order at 3-4.

12b

CMPDF - www.fineto.com

Since plaintiffs have not challenged the Court's decisions, they should not be permitted to use the Court's order of May 21, 1998, as the catalyst for their attempt to obtain a decision contrary to the Court's decisions of April 26, 1995 and July 31, 1996. Nor should they be permitted to expand the legal issues that the Court has already determined are before it by setting forth a proposed order for the Court's signature that includes legal issues which the Court has excluded from the scope of its inquiry.

Finally, the Court must reject the plaintiffs' proposed order because, as argued by defendants in their previous motions, plaintiffs can not prevail on their claims as a matter of law. The defendants stand on the arguments made in their previous motions, which, in a motion filed simultaneously with the present motion, they are "re-urg[ing]" the Court to consider. Based upon the arguments set forth in those motions, the defendants are "re-urg[ing]" the Court to grant summary judgment in defendants' favor.

9

127

## CONCLUSION

For the foregoing reasons the Court should decline to accept and adopt the plaintiffs' Memorandum and Proposed Order.

Respectfully submitted,

JAMES H. DeATLEY
United States Attorney

BRENDA ELLISON,
Senior Litigation Counsel

REGINA BYRD
ATTORNEY
Office of Immigration Litigation
P.O. Box 878 Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 616-4860

September 30, 1998          Attorneys for Defendants

10

128

**ATTACHMENT (1)**

129

CVisPDF – www.favsio.com

THIS TRANSCRIPT HAS BEEN FURNISHED AT
PUBLIC EXPENSE UNDER THE CRIMINAL
JUSTICE ACT AND MAY BE USED ONLY AS
AUTHORIZED BY COURT ORDER.
UNAUTHORIZED REPRODUCTION WILL
RESULT IN AN ASSESSMENT AGAINST
COUNSEL FOR THE COST OF AN ORIGINAL
AND ONE COPY AT THE OFFICIAL RATE.
GENERAL ORDER 94-15, UNITED STATES
DISTRICT COURT, SOUTHERN DISTRICT
OF TEXAS.

United States District Court
Southern District of Texas
FILED

NOV 16 1995

Michael N. Milby
Clerk of Court

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE SOUTHERN DISTRICT OF TEXAS

3    BROWNSVILLE DIVISION

4

JULIO LOA-HERRERA, ET AL        §    CASE NO. CA B-94-215
5                                §
VERSUS                          §    BROWNSVILLE, TEXAS
6                                §    APRIL 26, 1995
E.M. TROMINSKI, ET AL           §    2:20 TO 3:22 O'CLOCK P.M.
7

8                    STATUS CONFERENCE

9

BEFORE THE HON. FIDENCIO G. GARZA, JR., U. S. MAGISTRATE JUDGE
10

11   APPEARANCES:

12

For the Plaintiff:              ELISABETH S. BRODYAGA
13                              THELMA GARCIA
                                P.O. Box 901
14                              Harlingen, Texas  78550

15

For the Defendant:              KENNETH M. MUIR
16                              REGINA BYRD
                                1813 Evergreen St.
17                              Harlingen, Texas  78550

18

Court Recorder:                 Gabriel Mendieta
19

20
.
21                              PREPARED BY:

22                              JUDICIAL TRANSCRIBERS OF TEXAS, INC.
                                7035 West Tidwell
22                              Building J, Suite 109
23                              Houston, Texas  77092
                                (713) 462-6434

24
Proceedings recorded by electronic sound recording, transcript
25   produced by transcription service.

JUDICIAL TRANSCRIBERS OF TEXAS, INC.
Fax (713) 462-3042  •  Office (713) 462-6434

130

1    THE COURT:  And regardless of what the tempo is in

2 regard to immigrants in the country, the fact remains we still

3 have people who are here who have availed themselves of our

4 immigration policies and cards have been issued, and we should

5 view that in the same light as we always have viewed it because

6 it's still the United States of America.  It hasn't changed yet

7 and they haven't enacted new laws to -- now everybody can strap

8 on a six-gun, walk down the street.  If you don't like somebody,

9 shoot them.  With the new legislation, they're enacted.  So --

10 but that hasn't happened yet as far as our rights are concerned,

11 I don't think.

12    MS. BYRD:  Your Honor, what we would like, many of the

13 issues here are issues that turn upon questions of law, and we'd

14 like an opportunity, Your Honor, to be able to brief those issues

15 and to submit whatever appropriate motions made that -- may --

16 that this question may lend itself to.  And perhaps this question

17 can be resolved on the motions without any necessity, Your Honor,

18 of going any further.

19    THE COURT:  All right.  Let me ask you all a question.

20 Would you all consider a mediation with this.  This, to me, is

21 apparently legal issues.  There's no fact issues involved.

22    MS. BYRD:  I agree with Your Honor this is definitely

23 legal issues here.

24    THE COURT:  And that's all you have.  You don't have

25 any fact issues.

1    MS. BYRD:  For the most part, Your Honor, there are no

2    major disputes of fact.  But what we would like to do, instead of

3    mediation, Your Honor, is to -- is to have the Court to resolve

4    the issues on the motions to give --

5         THE COURT:  On which motions?

6    MS. BYRD:  Whatever motions, Your Honor, after we

7    finish conducting our research.  We definitely have already

8    identified some legal questions here.  And the main one is, as we

9    were talking earlier, about the green card.  The Government would

10   contend that there are already case law that answers this ques-

11   tion.  And --

12        THE COURT:  Well, it hasn't answered it to my satisfac-

13   tion yet.

14   MS. BYRD:  I understand that, Your Honor.

15        THE COURT:  That's why I'm still concerned.

16   MS. BYRD:  But, Your Honor, the motions would give the

17   Court an opportunity rule, and if at that time the Court rules

18   against the Defendants, then we would be more than happy, Your

19   Honor, then to step back, reassess things and see where we go

20   from there.

21        (Pause)

22   MS. BRODYAGA:  Your Honor, if I may.  On the question

23   of mediation, since most of it is legal issues, I'm not quite

24   sure how that would work.  But if I could present --

25        THE COURT:  Well, don't worry about it.  We're just

**ATTACHMENT (2)**

133

CVisPDF – www.fastio.com

7-23-94

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JULIO HERRERA-LOA, et al,           )
                                    )
                                    )
v.                                  )        C.A. No. B-215
                                    )
                                    )
E.M. TROMINSKI, et al.              )
_____ )

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
AND REQUEST FOR HEARING THEREON

Come Plaintiffs, and respectfully file the instant motion for class
certification, and request a hearing on said motion. In support
thereof, Plaintiffs would respectfully show as follows:

I.   THE BACKGROUND

The instant action was filed on July 15, 1994, challenging
Defendants' practice of confiscating, without providing adequate
substitute documents, forms I-151 and I-551, (hereinafter referred
to as "green cards"), from lawful permanent residents who have been
placed under deportation or exclusion proceedings.

Defendants admitted that this practice violates the mandate of
cases such as Molina v. Sewell, 983 F.2d 676 (5th Cir. 1993) (fact
that lawful permanent resident is under deportation proceedings
does not alter his status as lawful permanent resident), and Etuk
v. Slattery, 936 F.2d 1433 (2nd Cir. 1991). Settlement
negotiations commenced, and, for a while, seemed promising.

However, the Court will be necessary in order to reach, and to
enforce, a just settlement. The course of action undertaken by
Defendants, supposedly to "cure" the problem, has resulted in

134

egregious injustices. [1]    Petitioners have not been allowed to participate meaningfully in the formulation of the proposed "remedial" actions.  No reply was received in response to Exhibit E, and later a attempt to reach Defendants' counsel by phone, with respect to the problems outlined therein, was unsuccessful.

Defendants also failed to reply to Plaintiff's First Set of Requests For Admission, served on or about July 23, 1994, (Petitioners' Exhibit G, hereby incorporated by reference.  Nor was any request made for an extension of time with respect thereto. Under Rule 36(a), F.R.Civ.P., Defendants' failure to deny the matters contained in the request for admission constitutes an admission of the truth of said matters.

## II.   THE INSTANT CLASS SHOULD BE CERTIFIED

### A.   THE INTERESTS OF THE PETITIONERS CAN ONLY BE ADEQUATELY PROTECTED IF THE CLASS IS CERTIFIED

Rule 23(c)(1), F.R.Civ.P., mandates that the Court determine, by order, whether the action shall be maintained as a class action "[a]s soon as practicable after the commencement of an action brought as a class action..."

---

[1]    Under the guise of sending notice to putative class members, requesting that they come in to receive substitute documents, Defendants sent call-in letters to a virtually random group of residents and former residents, including individuals in whose cases orders of deportation had been entered at hearings of which they had not received notice, and who were unaware that they were under orders of deportation.  See, Petitioners' Exhibit E, herein incorporated by reference.  Such persons who responded to the call-in letters were immediately detained, in contemplation of deportation.  In this regard, the Court may take judicial notice of the administrative files of Jaime Gonzalez-Alvarez, A34 008 773, and Jorge Luis Palacios Vallejas, A21 338 881, who sought the services of the undersigned in order to halt their threatened deportation, Petitioners' Exhibit F, herein incorporated by reference.  Some victims of the hoax, who were not sufficiently sophisticated to seek counsel, may already have been deported.

Given doubt that exists as to whether an amicable settlement could otherwise be reached, and enforced, it is urged that certification of the instant class is necessary to protect vital interests of the class, and that it is in the interests of the class that such certification be accomplished as soon as possible.

B.   THE REQUIREMENTS OF A CLASS ACTION ARE SATISFIED HEREIN.

Rule 23, F.R.Civ.P., sets forth the requirements for maintaining a class action.  These are as follows:

    1.  the class is so numerous that joinder of all members is impracticable;
    2.  there are questions of law or fact common to the class;
    3.  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
    4.  the representative parties will fairly and adequately protect the interests of the class.

In addition, it is required that one of three other criteria be satisfied, including the following:

    (2)  the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

It is submitted that each and every requirement is satisfied.

1.   THE CLASS IS SUFFICIENTLY NUMEROUS THAT JOINDER IS
IMPRACTICABLE

First, the class is sufficiently numerous that joinder is impracticable.  By their failure to deny same, Defendants have admitted, (Exhibit F, Request No. 22), that the number of class members in the instant action exceeds two hundred.  However, even if, in fact, there were only twenty or thirty members at present,

3

/36

joinder would still be impracticable, given that their identity is known only to Defendants, and there exists substantial doubt as to whether even Defendants are able to identify current class members.

In addition, in the absence of an enforceable order, the class will doubtless continue to grow. Joinder of new class members as they came into existence would also be impracticable, given the inability of Petitioners' counsel to know of their existence.

### 2. THERE ARE QUESTIONS OF LAW AND FACT COMMON TO THE CLASS

The underlying legal issue herein is whether lawful permanent residents are entitled to documents which demonstrate this status clearly, and unequivocally, in a form which does not place them under a cloud in the eyes of those who may examine their documents, such as potential employers, and even Immigration Agents. This issue is common to the entire class. In addition, there are factual issues, common to the class, such as what constitutes adequate evidence of lawful permanent resident status.

### 3. THE CLAIMS OF THE NAMED PLAINTIFFS ARE TYPICAL OF THE CLASS.

The claims of the two named Plaintiffs are typical of the class. Both are lawful permanent residents, under deportation proceedings, from whom Defendants confiscated their "green cards," without providing adequate substitute documents.

This caused Plaintiff Herrera great inconvenience, and, particularly given the timing, as he was arranging for the sale of the harvest from his family's lands in Mexico, threatened substantial business interests. Plaintiff Gracia was deterred from exercising his right to make brief, casual, and innocent visits to Mexico until adequate substitute documents were provided, which was, in his case, a very protracted process.

4

/37

CXMPDF - www.texlra.com

4. THE REPRESENTATIVE PARTIES WILL FAIRLY AND ADEQUATELY
REPRESENT THE INTERESTS OF THE CLASS

The named Petitioners have demonstrated their commitment to the case. In addition, by their failure to deny same, Defendants have admitted that the undersigned have the ability, commitment, and resources, to adequately represent the instant class, (<u>Exhibit F</u>, Request No. 23). Even without this admission, this Court could take judicial notice of the legal experience, and dedication to their clients, of the undersigned.

5. DEFENDANTS HAVE ACTED ON GROUNDS APPLICABLE TO THE CLASS
AS A WHOLE, MAKING INJUNCTIVE AND/OR DECLARATORY RELIEF
APPROPRIATE HEREIN.

The actions of Defendants herein have been taken on grounds applicable to the class as a whole; i.e., Defendants have confiscated Plaintiffs' "green cards" because they were placed under exclusion or deportation proceedings. Only injunctive, or corresponding declaratory, relief, can resolve the problem for the class as a whole, and prevent other lawful permanent residents from being subjected to the same treatment, thereby becoming class members as well. Defendants have a history of difficulties in convincing all of their agents to abide by agreements made by their attorneys, if those agreements are not embodied in Court Orders. The instant issues are too important to leave them to the haphazard enforcement which would result if injunctive and/or declaratory relief is not granted.

III. PLANTIFFS HAVE ATTEMPTED TO CONSULT WITH DEFENDANTS
WITH RESPECT TO THE INSTANT MOTION

The undersigned attempted to consult with counsel for Defendants with respect to the instant motion, but so far without success. On December 5, 1994, counsel spoke with INS General Attorney Bill Peterson, who had been designated as local contact person on the

5

138

case, and was informed that he was leaving the area for six months, and would not be working on the case during that period. Nancy Masso, AUSA, will be on leave until the first of the year. Early in the morning of December 6, 1994, counsel called Howard Rose, SAUSA, and was informed that he would be in trial all week. She left a message with the secretary who answered the phone, advising her that the call was in reference to a proposed motion for class certification, and requesting that Mr. Rose return the call. However, no return call had been received as of the time the instant motion was prepared.

It is therefore urged that a hearing be held on the instant motion for class certification, and that following said hearing, the putative class as set forth herein be certified.

Respectfully Submitted,

Lisa S. Brodyaga
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226

Thelma O. Garcia
301 E. Madison
Harlingen, Texas 78550
(210) 425-3701

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing were served as follows: by personal service on the Office of the United States Attorney, Nancy Masso, Esq., AUSA, 1036 E. Levee, Brownsville, TX, and by first-class mail, postage prepaid, to Howard Rose, SAUSA, Office of the U.S. Attorney, Civil Division, 910 Travis, #1500, Houston, Texas 77002, and Bill Peterson, General Attorney, INS, 2102 Teege, Harlingen, Texas 78550, this 6th day of December, 1994.



139

**ATTACHMENT (3)**

140

CVxPDF – www.fasiso.com

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUANA ASCENCIO-GUZMAN,                    )
                                          )
EFRAIN MERINO,                            )
                                          )
ARTURO LOPEZ-LOZANO,                      )
                                          )
ALEJANDRA GUTIERREZ,                      )
                                          )
JUAN SANCHEZ-SALINAS,                     )
                                          )
ADELITA CANTU de CABRERA,                 )
                                          )
        and                               )
                                          )
RAMIRO GRACIA-CANTU,                      )
                                          )
        In their own right and name       )
        and as representatives of         )
        others similarly situated,        )
                                          )
        Plaintiffs,                       )
                                          )
v.                                        )       C.A. No. B-215
                                          )
E.M. TROMINSKI,                           )
                                          )
        District Director,                )
        Immigration and                   )
        Naturalization Service,           )
                                          )
HON. JANET RENO,                          )
                                          )
        United States                     )
        Attorney General                  )
                                          )
        and                               )
                                          )
IMMIGRATION AND NATURALIZATION            )
        SERVICE,                          )
                                          )
        Defendants.                       )
_____ )

141

PLAINTIFFS' SECOND AMENDED PETITION
FOR WRIT OF HABEAS CORPUS AND
CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF

Come Juana Ascencio-Guzman, Efrain Merino, Arturo Lopez-Lozano, Alejandra Gutierrez, Juan Sanchez-Salinas, Adelita Cantu de Cabrera, and Ramiro Gracia-Cantu, in their own name and in the name of all others similarly situated, and file their Second Amended Petition for a Writ of Habeas Corpus, and Class Action Complaint, seeking declaratory and injunctive relief, and in support of same, respectfully shows as follows:

## I.  JURISDICTION

1.   Jurisdiction over the instant action is laid under 28 USC 1346(a)(2) (action against and agency and/or officers of the United States); 8 USC 1329 (action arising under the Immigration and Nationality Act); 28 USC 2201 et seq (declaratory judgment action); and 5 USC 702 et seq, (action by one adversely affected by final agency action), coupled with 28 USC 1331 (federal question).

## II.  THE PARTIES

2. Petitioners Juana Ascencio-Guzman, Efrain Merino, Arturo Lopez-Lozano, Alejandra Gutierrez, Juan Sanchez-Salinas, Adelita Cantu de Cabrera, and Ramiro Gracia-Cantu are all lawful permanent residents of the United States.  Petitioners Sanchez, and Cantu de Cabrera, reside in Weslaco, Texas; Petitioners Lopez and Gracia reside in Brownsville, and Edinburg, respectively, within the jurisdiction of this Court.  Petitioners Ascencio, Merino, Gutierrez, and Cabrera were stopped by Defendants at Ports of Entry, also within the jurisdiction of this Court, and placed in exclusion proceedings.

3.  Respondent Immigration and Nationality Service is an executive agency of the United States, with offices in Harlingen, Texas,

2

142

within the jurisdiction of this Court.

4.   Respondent E.M. Trominski is the District Director of the Harlingen, Texas, District of Respondent Immigration and Nationality Service, with offices in Harlingen, Texas, within the jurisdiction of this Court.

5.   Respondent Hon. Janet Reno is the duly appointed Attorney General of the United States.

### III.   THE FACTS

6.   Ramiro Gracia-Cantu, (A26 948 199), is a native and citizen of Mexico, who has resided in the United States as a lawful permanent resident since June 25, 1984.  His wife and daughter are citizens of the United States.

7.   On or about December 11, 1992, Mr. Gracia was convicted in State Court in Illinois of an offense allegedly relating to the distribution of a controlled substance, for which offense he was fined and sentenced to four years' probation.

9.   In approximately June, 1994, Defendants contacted Mr. Gracia, and asked him to present himself to the Investigations branch of the INS office in Harlingen, Texas.  Mr. Gracia obtained counsel, who was informed by the INS agent in charge of the case that he was to be served with an Order to Show Cause, (an "OSC"), initiating deportation proceedings, and a warrant of arrest.  It was agreed that Mr. Gracia would surrender on June 22, 1994, for service of the OSC, and to post bond.

10.  On June 22, 1994, Mr. Gracia appeared at the INS office in Harlingen, Texas, with counsel.  The OSC was served, and bond was posted.  During the processing the INS agent asked whether Mr.

3

143

Gracia had his resident alien card with him. [1]   Counsel inquire
whether it was the agent's intention to confiscate his green card
and was told that it was.  The agent informed her that it was th
practice of the Investigations branch of the Harlingen INS Offic
to confiscate green cards in such cases, for fear that, if th
individual were ultimately deported, he or she might not surrende
it, but might continue to use it illegally.

11.  Counsel inquired of the Assistant District Director fo
Investigations, and of the INS District Counsel, whether this wa
in fact the practice.  Both confirmed that it was.

12.  Under protest, Mr. Gracia surrendered his green card, and wa
given an I-94, valid only until December 21, 1994, with his photo
and a very small, almost illegible stamp, stating that it is a
"Temporary Form I-551," and indicating that he was admitted fo
permanent residence at "HLG/IR6/06-2584," and that he is unde
bond, Plaintiffs' Exhibit A.  The I-94 contained no "employment
authorization" stamp.  Rather, in large, fully legible letters, it
bore the following notation:

> "DEPORTATION PROCEEDINGS INITIATED
> 241(a)(2)(B)(i) & 241(a)(2)(A)(iii)."

13.  Said document placed a cloud over Mr. Gracia's status as a
lawful permanent resident, interfering with the exercise of the
rights which attend that status.  Ultimately, at the insistence of
counsel, Mr. Gracia was issued a new replacement card, which does
not bear the offending notation.

14.  Plaintiff Arturo Lopez-Lozano, (A37 522 584), has been a
lawful permanent resident of the United States since June 16, 1981.

---

[1]   Hereinafter, resident alien cards, issued on forms I-551
and I-151, will be referred to as "green cards."

4

144

On May 2, 1988, Mr. Lopez was convicted in the 105th District Court of Kleberg County, Texas, of the aggravated possession of marijuana, and placed under probation for a period of ten years. The following day, Defendants initiated deportation proceedings against Mr. Lopez, who conceded deportability, and applied for relief from deportation under Section 212(c) of the Act, (8 USC Sec. 1182(c)). Following a hearing, an Immigration Judge in Harlingen, Texas, denied said application in the exercise of discretion. Mr. Lopez appealed this decision to the Board of Immigration Appeals, ("BIA"), who, on August 25, 1994, granted his appeal, and remanded the case to the Immigration Judge for further proceedings and entry of a new decision.

15. Mr. Lopez' wife, three children, and step child, with whom he resides in Brownsville, Texas, are all United States Citizens.

16. On Thursday, December 22, 1994, Mr. Lopez made a casual and innocent departure from Brownsville, Texas, to Matamoros, Mexico, for the purpose of attempting to locate a stolen automobile that belonged to his sister-in-law, and to buy some sodas for the holidays. He returned in the early morning hours of Friday, December 23, 1994, and presented himself for inspection at the Port of Entry in Brownsville, Texas, tendering his green card to the official, Plaintiffs' Exhibit H, herein incorporated by reference.

17. The official asked some questions, as to where he was coming from, and what he was bringing. Mr. Lopez stated that he was only bringing some sodas, and attempted to explain about the car. The official also asked why the car he was driving had Florida plates, and he explained that he and his wife were migrants, and that it had been purchased in Florida. Mr. Lopez has a speech impediment, and had difficulty making himself understood, Id..

18. The Officer requested that he get out of the car. He complied. The vehicle, which was NOT carrying contraband, was

5

145

searched, both manually, and with a dog. In the process, the
lining of the ceiling was ripped. Eventually, Mr. Lopez was told
to go inside, where he was questioned further. During the
questioning, the officers indicated that he was not supposed to
have gone to Mexico, to which he replied that it was his
understanding that he was now permitted to do so. Nonetheless,
his resident alien card, and his Texas driver's license, were
confiscated by Defendants, and he was returned to Mexico, Id..

19. Later in the day, his wife contacted his attorneys, the
undersigned, who, given his membership in the putative class
herein, contacted counsel for Defendants. It was ascertained that
he had been denied admission because the remand from the BIA had
not been entered in INS' computer, which error was corrected.
Defendants' counsel advised Mr. Lopez' counsel that he should
return to the Port of Entry, and that he would be admitted. Mr.
Lopez' wife went back to Matamoros, and returned with him to the
Brownsville Port of Entry, arriving at approximately 3:30 p.m..
They again requested that Mr. Lopez be admitted as a returning
resident, and informed the official on duty that the computer now
would reflect the fact that he was entitled to readmission. The
official refused to re-admit Mr. Lopez, or even check the computer,
and instructed his wife that she would have to go to the INS Office
in Harlingen, Texas, on Tuesday, December 27, to get some "paper"
stating that INS had agreed to let him return to the United States.
By this time, it was late in the afternoon, on the Friday before
Christmas, Mr. Lopez' counsel had left the office, so there was
nothing to do but wait, Id..

20. On Tuesday, December 27, 1994, Mrs. Lopez went with counsel to
the INS Office in Harlingen, and requested that he be re-admitted
to the United States. Eventually, that request was granted, and on
the afternoon of December 27, 1994, he was finally re-admitted, Id.

21. Plaintiffs Juana Ascencio-Guzman, (A90 775 805), and Efrain

6

146

Merino, (A91 495 976), are husband and wife, and are both lawful permanent residents of the United States, who reside in Houston, Texas. They have two United States citizen children. On or about July 3, 1994, they were stopped at the Brownsville, Texas, Port of Entry, following a brief departure to Mexico, and placed in exclusion proceedings, for allegedly attempting to illegally bring Mr. Merino's nephew, who was ill, into the United States for medical treatment. Their resident alien cards, Mr. Merino's Texas driver's license, and Ms. Ascencio's Texas I.D. card, were all confiscated by Defendants, who forced them to return to Mexico, where they were required to remain, causing great personal hardship to themselves, and their United States citizen children. They finally secured counsel, who, on October 31, 1994, was able to obtain permission for them to be paroled into the United States pending completion of their exclusion proceedings.

22. However, the parole documents given to Plaintiffs Ascencio and Merino, (Plaintiffs' Exhibit I, herein incorporated by reference), carry a notation that they have been paroled pending determination of their right to re-enter, thereby placing a cloud over their status as lawful permanent residents, and interfering with the exercise of the attendant rights, including the right to make innocent, brief, and casual border crossings, and, in the current political climate, to obtain employment in the United States.

23. Plaintiff Alejandra Gutierrez, (A41 858 559), is a lawful permanent resident of the United States. On or about August 4, 1994, she was stopped at the Brownsville, Texas, Port of Entry, and placed in exclusion proceedings, for allegedly attempting to illegally cross her sister into the United States. Defendants confiscated her green card, and forced her to return to Mexico. On January 6, 1995, Ms. Gutierrez obtained counsel, who immediately filed a request that she be paroled into the United States, without bond, (Plaintiffs' Exhibit J, herein incorporated by reference). To date, no reply has been received to said request.

147

24. Juan Sanchez-Salinas (A13 102 286) obtained lawful permanent residency in 1964. As a result of complicated circumstances following a conviction for an offense involving a controlled substance, Mr. Sanchez was placed in exclusion proceedings, paroled into the U.S., and, ultimately, held in detention at the Port Isabel Service Processing Center. His motion to terminate exclusion proceedings is pending before an Immigration Judge. Though counsel, Mr. Sanchez sought permission to be released from detention, upon payment of a bond. Said request was granted, and on or about August 17, 1994, Mr. Sanchez posted bond, and was released. He was given an I-94, with his photo and fingerprint. However, the document initially given Mr. Sanchez specified that it was "Not Valid For Employment," Plaintiffs' Exhibit K, herein incorporated by reference, which defect was cured only through the intervention of the SAUSA handling the instant action.

25. The new card still places a cloud over Mr. Sanchez' residency, as it specifies that he is in exclusion proceedings. Mr. Sanchez needs medical treatment which he desires to obtain in Mexico. His counsel has raised the issue with Defendants, who have refused assurances that he would be re-paroled into the U.S.. As a result, he has been unable to obtain the needed medical treatment.

26. Adelita Cantu de Cabrera, (A38 102 369), was paroled into the United States on November 9, 1993, pending exclusion proceedings, Plaintiffs' Exhibit "M", herein incorporated by reference, but was initially denied employment authorization, unless and until she paid a fee, which error Defendants offered to cure only after being told that she was to be added as a Plaintiff herein.

27. A lawful permanent resident who makes a "brief, casual, and innocent" departure from the U.S. and seeks readmission as a returning resident, who presents an I-94 such as Exhibits "A" "B" and "D", is more likely to be detained, and placed in exclusion proceedings, than would be the case if he presented his green card.

8

148

28.  When a lawful permanent resident applies for admission as a
returning resident at a port of entry under the jurisdiction of the
Harlingen, Texas, INS Office, and Defendants have reason to believe
that said person has committed an act which would subject him or
her to exclusion proceedings, if criminal prosecution is also
contemplated, it is the practice  [2]  of Defendants to parole the
individual into the United States for prosecution, and place him or
her under exclusion proceedings.  If the prosecution results in a
conviction, it is the practice of Defendants to detain said
individual at the Service Processing Center at Los Fresnos, Texas,
pending exclusion proceedings. Upon request of counsel, it is also
Defendants' practice to permit said person to be paroled into the
United States pending conclusion of the exclusion proceedings, and
released from detention, usually upon payment of a bond.

29.  When a lawful permanent resident applies for admission as a
returning resident at a port of entry under the jurisdiction of the
Harlingen, Texas, INS Office, and Defendants have reason to believe
that said person has committed an act which would subject him or
her to exclusion proceedings, if criminal prosecution is not
contemplated, it is the practice of Defendants to initiate
exclusion proceedings, and force said person to return to Mexico,
without advising him or her of the possibility of being paroled
into the United States.  In such cases, unless the individual
obtains counsel, it is very difficult to ascertain, and follow, the
procedures necessary to request parole into the United States.

29.  In the Harlingen, Texas, INS District, when Defendants place a
lawful permanent resident under exclusion proceedings, it was, at
the time of filing the instant action, Defendants' practice to
confiscate their green cards, and other documents in their
possession, such as their drivers' licenses or identification

---

[2]  As used herein, the term "practice" means an act performed
or procedure followed in more than half of the instances described.

9

cards, regardless of whether such documents had any evidentiary value in either the criminal prosecution or exclusion proceedings, and to refuse to return said documents, regardless of whether the individual was returned to Mexico, or paroled into the United States, and subsequently released, with or without bond, unless and until all expulsion proceedings are terminated, in the alien's favor, Plaintiffs' Exhibit L, herein incorporated by reference.

30.  INS has previously asserted to this Court that when a lawful permanent resident who has posted bond in connection with deportation proceedings, departs from the United States, the bond is subject to either forfeiture or cancellation, in the discretion of the Defendants, and has never retracted said assertion. [3]

31.  Many lawful permanent residents whose green cards have been confiscated by Defendants because they have been placed in exclusion or deportation proceedings have legitimate business and personal needs which require them to make "casual, brief, and

---

[3]   In this regard, Plaintiffs would request that this Court take judicial notice of Respondent's Answer to Petition for Writ of Habeas Corpus and Request for Dismissal of Action, filed May 30, 1986, in the case of Lozano-Molina v. Sewell, C.A. B-86-101, at paragraph 13, where Defendants assert that a departure to Mexico by a lawful permanent resident who is at liberty on bond while under deportation proceedings constitutes a violation of the terms of the bond "because a demand upon the obligor to present the [alien] would have been impossible."

In Molina v. Sewell, 983 F.2d 676 (5th Cir. 1993), the Court reaffirmed the principle that a lawful permanent resident in deportation proceedings does not lose his status as a lawful permanent resident, or the rights and privileges attendant upon that status.  It is also requested that this Court take judicial notice of the fact that, notwithstanding this decision, however, Defendants continued to prosecute exclusion proceedings against Mr. Lozano-Molina, on the theory that his departure to Mexico, while under deportation proceedings, was a factor "to be given some weight in determining whether [his] departure was a meaningful one," In re Lozano-Molina, A36 599 698, "Service Response to Applicant's Motion To Terminate," filed on or about May 5, 1994, at page 2, (Plaintiffs' Exhibit C, herein incorporated by reference).

innocent" trips across the border into Mexico, and back, but are deterred from making such trips by the action of Defendants in confiscating their green cards, and providing them either with no substitute documentation, or with substitute documentation which greatly increases the possibility that they would not be allowed to re-enter, or be re-paroled, into the United States on their return.

32. A lawful permanent resident seeking employment who presents to a potential employer a substitute document such Exhibits "A" "B" "D" "I" "K" and "M" is more likely to be denied employment than would be the case if he presented his green card, or substitute documentation which places no cloud over his or her status as a lawful permanent resident.

33. When Defendants provide replacement documentation to lawful permanent residents whose green cards were confiscated because they were placed in deportation or exclusion proceedings, it is Defendants' practice to limit the validity of those I-94's to a period of six (6) months, and to require that the residents return to the Harlingen Office of INS to renew their I-94's every six months, for the duration of the expulsion proceedings.

34. Many lawful permanent residents whose green cards have been confiscated and who have received replacement documents which are valid for only six months either reside or are seasonally employed outside of the Rio Grande Valley, and are greatly inconvenienced by the requirement that they return to the Valley to renew them.

IV.  CLASS ALLEGATIONS

35.  The confiscation of the green cards of lawful permanent residents placed in deportation or exclusion proceedings in the Harlingen INS District, without provision of substitute documents which place no cloud over their status as lawful permanent residents, and the resultant curtailment of their rights and

11

privileges, has been a source of controversy with the Harlingen Office of INS for at least a dozen years.

36. On information and belief, Plaintiffs allege that at the time of filing the instant action, it was the practice of one or more branches of the Harlingen INS Office to confiscate the green cards of lawful permanent residents who were placed under deportation or exclusion proceedings, and to refuse to return the cards or provide adequate substitute documentation for those who are released from, or are not held in, detention.

37. When Defendants confiscate the green card of a lawful permanent resident placed in exclusion or deportation proceedings, and do issue replacement documentation, it is their practice to place notations on the replacement documentation which interfere with the resident's ability to exercise the rights and privileges of lawful permanent resident status, such as, inter alia, the notation that the person is under deportation or exclusion proceedings, is on bond, is not authorized to be employed, and/or that the card is not valid for re-entry to the United States.

38. Plaintiffs seek to represent the class of all those lawful permanent residents who are under deportation or exclusion proceedings, in whose cases no final order of deportation or exclusion has been entered, who are not presently held in detention, whose I-151 or I-551 cards have been confiscated by Defendants, and are being retained by or under the authority of the Harlingen Office of the Immigration and Naturalization Service.

39. Mr. Gracia's and Lopez' claims are typical of the claims of those putative class members under deportation proceedings, and they will fairly and adequately protect the interests of the class.

40. The claims of Plaintiffs Ascencio, Merino, Gutierrez, and Sanchez are typical of the claims of those putative class members

12

152

under exclusion proceedings, and they will fairly and adequately protect the interests of the class.

41.  The class is so numerous that joinder of all members is impracticable, and there are questions of law and fact which are common to the class.

42.  The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for the Defendants.

43.  Defendants have also acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the whole class.

44.  Attorney Lisa Brodyaga has been certified as an immigration specialist by the Texas Board of Legal Specialization for over ten years, and is experienced in federal court litigation in cases involving immigration matters.  Co-counsel, Thelma O. Garcia, is also an experienced litigator.  The two have frequently collaborated in federal litigation involving INS.  They are able, and have the necessary resources, and commitment, to adequately represent the interests of the instant class.

## V.   FIRST CAUSE OF ACTION - HABEAS CORPUS

45.  Plaintiffs herein incorporate by reference the allegations of Paragraphs 1 - 44, inclusive.

46.  The confiscation of the I-151 or I-551 card of a lawful permanent resident, who is under deportation or exclusion proceedings, but who is not held in detention, prior to the issuance of a final order of deportation or exclusion, and without provision of replacement documentation which places no cloud over

13

153

the status of the resident, violates that person's rights as a lawful permanent resident alien, in that it interferes with the exercise of the rights and privileges attendant upon that status, and constitutes an undue restriction on that person's liberty.

47. Particularly where any replacement document provided is valid only for a limited period of time, carries a notation that the person is under exclusion or deportation proceedings, is out on bond, is not stamped "employment authorized," and/or states that it is not valid for re-entry, or for employment, it places a cloud over the person's status as a lawful permanent resident, interfering with the exercise of his or her rights as a lawful permanent resident, including the ability to obtain and maintain employment, and to travel freely.

48. A lawful permanent resident who presents a document such as Exhibits "A" "B" "D" "I" "K" or "M" to a potential employer is more likely to be denied employment, than if s/he presented a green card, or other document which places no cloud over his or her status as a lawful permanent resident.

49. A lawful permanent resident who makes a "brief, casual, and innocent" departure from the United States and thereafter applies for admission as a returning resident, presenting a document such as Exhibits "A" "B" or "D," is more likely to be detained and placed in exclusion proceedings upon return, than would be the case if he or she presented a green card.

50. In the case of lawful permanent resident in exclusion proceedings who has been paroled into the United States, and makes a "brief, casual and innocent" departure from the United States and thereafter returns, presenting a document such as Exhibits "I" "K" or "M" it is the practice of Defendants not to re-parole the individual into the United States, unless the person makes a new application for parole to the INS District Director, which process

14

usually takes approximately two to four weeks.

51. Plaintiffs are being deprived of their liberty, without Due Process of Law, in that they are subject to restrictions on their liberty not shared by the population at large, and they are entitled to a Writ of Habeas Corpus, freeing them from this unlawful restraint.

### VI.   SECOND CAUSE OF ACTION - INJUNCTIVE RELIEF

52. Plaintiffs hereby incorporate by reference the allegations of Paragraphs 1 through 51 above.

53. The confiscation of Plaintiffs' lawful permanent resident cards, and provision of substitute documents which place a cloud over their status as lawful permanent residents, deprives them of both liberty and property interests, without Due Process of Law, and Plaintiffs are entitled to injunctive relief, enjoining and restraining Defendants from such conduct.

### VII.   THIRD CAUSE OF ACTION - DECLARATORY JUDGMENT

54. Plaintiffs hereby incorporate by reference the allegations of Paragraphs 1 through 52 above.

55. The confiscation of Plaintiffs' lawful permanent resident cards, and provision of substitute documents which place a cloud over their status as lawful permanent residents, deprives them of liberty and property interests, without Due Process of Law, and Plaintiffs are entitled to declaratory relief, declaring that such conduct is a violation of the rights and privileges attendant upon their status as lawful permanent residents of the United States.

### VIII.   FOURTH CAUSE OF ACTION - DECLARATORY JUDGMENT

155

56.  Plaintiffs herein incorporate by reference the allegations of Paragraphs 1 through 55 above.

57.  Under Molina v. Sewell, 983 F.2d 676 (5th Cir. 1993), the facts that a lawful permanent resident is under deportation proceedings, and/or has posted bond in conjunction with such proceedings, are not relevant factors to be taken into consideration in determining whether or not a departure from the United States is a "meaningful" one, as that term is used in Rosenberg v. Fleuti, 374 U.S. 449 (1963).

58.  The consideration of such facts in determining whether or not to re-admit a class member who is applying for admission as a returning resident of the United States violates that person's rights as a lawful permanent resident.

59.  Plaintiffs are therefore entitled to a declaratory judgment, declaring that it is a violation of their rights as lawful permanent residents of the United States for Defendants to take into consideration the facts that they are under deportation proceedings, and/or are under bond, in determining whether to readmit them as lawful permanent residents or to hold them in exclusion proceedings when they apply for readmission as returning residents of the United States.

IX.  FIFTH CAUSE OF ACTION - INJUNCTIVE RELIEF

60.  Plaintiffs hereby incorporate by reference the allegations of Paragraphs 1 through 59 above.

61.  Plaintiffs are entitled to a preliminary and permanent injunction, restraining and enjoining Defendants from considering the fact that a lawful permanent resident is under deportation proceedings, or has posted bond in conjunction therewith, in determining whether he should be admitted to the United States as

16

a returning resident, or held in exclusion proceedings.

## X.    SIXTH CAUSE OF ACTION - DECLARATORY JUDGMENT

62.  Plaintiffs hereby incorporate by reference the allegations of Paragraphs 1 through 61 above.

63.  The cancellation or forfeiture of the bond of a class member, for the sole reason that he has made a departure from the United States, deprives that person of liberty without Due Process of Law.

64.  Plaintiffs are therefore entitled to a declaratory judgment, declaring that the cancellation or forfeiture of the bond of a class member, for the sole reason that he has made a departure from the United States, deprives him of liberty and property interests, without Due Process of Law.

## XI.    SEVENTH CAUSE OF ACTION - INJUNCTIVE RELIEF

65.  Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 64 above.

66.  Plaintiffs are therefore entitled to preliminary and permanent injunctive relief, restraining and enjoining agents of the Defendants from forfeiting or canceling the bond of a lawful permanent resident who is under deportation proceedings, for the sole reason that he has made a departure from the United States.

## PRAYER FOR RELIEF

Plaintiffs therefore seek a Writ of Habeas Corpus, ordering Defendants to free them from the unlawful restraints which they have placed on them, by returning their green cards, evidencing their status as lawful permanent residents of the United States, or by providing them with substitute documentation which places no

17

157

cloud over their status as lawful permanent residents.

Plaintiffs also request both preliminary and permanent injunctive relief, enjoining and restraining Defendants from confiscating the green cards of lawful permanent resident aliens who have been placed in deportation or exclusion proceedings, against whom there is no final deportation order, and who are not held in custody, and from not returning the green cards of such lawful permanent residents from whom they have been previously confiscated, or from not providing substitute documentation which places no cloud over their status as lawful permanent residents.

Plaintiffs also request both preliminary and permanent injunctive relief, enjoining and restraining Defendants from taking any actions that would interfere with the right of a lawful permanent resident of the United States to live and work in this country, including, but not limited to, failing to parole a lawful permanent resident placed in exclusion proceedings into the United States during the pendency of such proceedings, and failing to re-parole such a person back into the United States following a brief, casual, and innocent departure.

Plaintiffs also seek a declaratory judgment, declaring that the confiscation of, and the refusal to return, the green cards of lawful permanent resident aliens placed in deportation or exclusion proceedings, who are not held in custody, and against whom there exists no final order of deportation or exclusion, without provision of a substitute document which places no cloud over their status as lawful permanent residents, is a violation of their rights as lawful permanent residents.

Plaintiffs also seek a declaratory judgment, declaring that it is a violation of Plaintiffs' rights as lawful permanent residents of the United States for Defendants to take any action that interferes with their rights to live and work in this country, including, but

18

not limited to, failing to parole a lawful permanent resident placed in exclusion proceedings into the United States during the pendency of such proceedings, and failing to re-parole such a person back into the United States following a brief, casual, and innocent departure.

Plaintiffs also seek a declaratory judgment, declaring that the facts that a lawful permanent resident is under deportation proceedings, and/or has posted bond in conjunction therewith, are not relevant factors to be taken into consideration in determining whether a departure from the United States is a "meaningful" one, as that term is used in Rosenberg v. Fleuti, 374 U.S. 449 (1963).

Plaintiffs also seek a preliminary and permanent injunction, restraining and enjoining agents of the Defendants from considering the fact that a lawful permanent resident is under deportation proceedings, or has posted bond in conjunction therewith, in determining whether he should be admitted to the United States as a returning resident, or held in exclusion proceedings.

Plaintiffs also seek a preliminary and permanent injunction, restraining and enjoining agents of the Defendants from canceling or forfeiting the bond of a lawful permanent resident who is under deportation proceedings, solely for the reason that the individual has made a departure from the United States.

Plaintiffs also seek a declaratory judgment, declaring that it violates Plaintiffs' rights to cancel or forfeit the bond of a lawful permanent resident under deportation proceedings, solely for the reason that he has made a departure from the United States.

And finally, Plaintiffs seek costs, reasonable attorneys' fees, and such other and further relief as this Court may deem appropriate and justified under all of the circumstances herein.

159

Respectfully Submitted,

Lisa S. Brodyaga
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226

Thelma O. Garcia
301 E. Madison
Harlingen, Texas 78550
(210) 425-3701

## VERIFICATION

I, Lisa S. Brodyaga, hereby certify that I am familiar with the facts set forth above, and that they are true and correct to the best of my knowledge and belief.



## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was personally served on John Carte, SAUSA, and Nancy Masso, AUSA, 1036 E. Levee, Brownsville, Texas, this 17th day of January, 1995.



20

160

## CERTIFICATE OF SERVICE

I hereby certify that on this __30th__ day of September, 1998, a copy of Defendants' Response To Petitioners' Memorandum And Order, was mailed to counsel for plaintiffs, by placing it in a Department of Justice mail room for same day mailing, addressed as follows:

> Lisa S. Brodyaga, Esq.
> 402 E. Harrison, 2nd Floor
> Harlingen, Texas  78550

_____
Regina Byrd
Attorney for Defendants

161

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ASCENCIO-GUZMAN, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| E.M. TROMINSKI, District | ) | |
| Director, Immigration and | ) | |
| Naturalization Service; HON. | ) | C.A. No. B-94-215 |
| JANET RENO, United States | ) | |
| Attorney General; and | ) | |
| IMMIGRATION AND NATURALIZATION | ) | |
| SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Upon consideration of Plaintiffs' Memorandum and Order and the Defendants' Response thereto, the Court hereby declines to accept or adopt the Plaintiffs' Memorandum and Order as it is based upon matters that are not before the Court. In addition, Plaintiffs' Memorandum and Order, if accepted and adopted by the Court would set forth a ruling contradictory to previous rulings issued by the Court.

IT IS HEREBY ORDERED that the Clerk of Court shall send certified copies of the instant Order to all counsel of record. DONE AT BROWNSVILLE, TEXAS,

this _____ day of _____, 1998.

_____
HON. HILDA G. TAGLE
JUDGE PRESIDING

162