United States District Court
Southern District of Texas
FILED

OCT 19 1998

Michael N. Milby, Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,            )
                                  )
v.                                )      C.A. No.  B-94-215
                                  )
TROMINSKI, et al.                 )
_____ )

PLAINTIFFS' REPLY TO
DEFENDANTS' RESPONSE TO PETITIONER'S MEMORANDUM AND ORDER AND
DEFENDANTS' MOTION RE-URGING PRIOR MOTIONS

Come Plaintiffs, by and through the undersigned, and respectfully
file the instant reply to Defendants' Response To Petitioners'
Memorandum and Order, (hereinafter cited as (INS:___)), and to
Defendant's Motion Re-Urging its four prior motions, filed prior to
April 14, 1998, (hereinafter cited as (INS2:___)).

I.   TREATMENT OF PLEADINGS AS MOTION TO ALTER OR AMEND JUDGMENT

First, since the Court's Memorandum and Order was entered prior to
the expiration of the twenty days granted by the local rules for
response to motions, and INS' pleadings were filed on the twentieth
day, Plaintiffs would construe said pleadings as a Motion to Alter
or Amend Judgment, under Rule 59(e), F.R.Civ.Procedure.  Given that
the Court's Order could be considered to have been prematurely
entered, Plaintiffs would, in fact, join in said motion, and urge
that the Court vacate its prior Memorandum and Order.

II.   MOTION TO RE-URGE PRIOR PLEADINGS

Second, Plaintiffs do not object to the re-urging of all prior
motions, both those by Plaintiff, and those of INS, and would note
that this is, in effect, what Plaintiffs previously requested.  By
proposing a Memorandum and Order in which such motions were
adjudicated, Plaintiffs likewise filed a "motion" requesting that
they be considered, and adjudicated, on their merits. As defined by
Black's Law Dictionary, Fifth Edition, a motion is an "application

106

made to a court or judge for purpose of obtaining a rule or order directing some act to be done in favor of the applicant." *See also*, F.R.Civ.P. 7, and Local Rule 6. By requesting an order adjudicating its motion for summary judgment, Plaintiffs were re-urging that motion, within the meaning of the Court's order of May 21, 1998. Indeed, in its Order, the Court specifically stated that it was considering said motions. [1]

Therefore, INS' claim that Plaintiffs did not re-urge their prior motions would elevate form over substance. As held in *Torres v. Oakland Scavenger Co.*, 108 S.Ct. 2405, 2408-09 (1988):

> We do not dispute the important principle for which Foman stands [2] --that the requirements of the rules of procedure should be liberally construed and that "mere technicalities" should not stand in the way of consideration of a case on its merits. Ibid. Thus, if a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires.

Plaintiffs' written submission of a proposed Order, addressing their motion for summary judgment on the merits, was clearly the "functional equivalent" of a motion to re-urge said motion.

### III.   SUBSTANTIVE ISSUES RAISED BY DEFENDANTS' RESPONSE TO PETITIONERS' MEMORANDUM AND ORDER

A. THE ISSUES IN THE CASE AT BAR HAVE NOT BEEN "NARROWED" IN THE MANNER OR TO THE EXTENT SUGGESTED BY DEFENDANTS.

---

[1]   That INS also viewed Plaintiffs' September 11, 1998 filing as a "motion" is also shown by the fact that, in accordance with Local Rule 6, their reply was filed on the 20th day thereafter.

[2]   *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227 (1962)

107

Plaintiffs also take issue with INS' presentation of "selected" portions of the transcript of the various proceedings conducted herein. [3]   If INS does not present the entire transcript, Plaintiffs would urge the Court to not give controlling weight to an "edited" version, and to consider the issues on a *de novo* basis.

If INS does tender the entire transcript, the Court will find that the resolution suggested by Plaintiffs, and previously adopted by the Court, is consistent with the tone, and over-all content, of the comments made from the bench at the various prior hearings.

And contrary to INS' suggestion, (INS:4,n.2;6), no binding "Oral Decision," let alone one completely disposing of the case, was issued on July 31, 1996. [4]   Rather, the Court hoped that a partial resolution had been found.  Even this hope, however, proved futile. This is amply demonstrated by the fact that the instant case was

---

[3]   INS submitted a portion of the transcript of the April 1995 hearing, and claims that they will forward "pertinent" parts of the July 31, 1996 transcript, once received. (INS:3,n.1).  There is no mention, however, of the initial hearing. The full transcript, if presented, would reveal that:  (1)  Defendants initially agreed to settle a major portion of this action, and then reneged upon that agreement;  (2)  On July 31, 1996, the Court expressed outrage at the fact that Defendants returned to Mexico certain class members pending the outcome of their exclusion cases, with no hearing as to whether they should be paroled into the country while their cases were pending; and (3) The Court made no final rulings at that time, but attempted to resolve those issues which were not seriously disputed, only to discover that the parties were unable to come to agreement even as to the details of those issues.  Plaintiffs submit that it is for this reason that the Court did not adopt either of the competing, proposed orders submitted by the parties.

[4]   INS' claim that there was such an Oral Decision, and that it "still stands," (INS:5), is inconsistent with their admission that they have not implemented the terms of the supposed decision, even with respect to issues as to which the parties agree, such as placing on a substitute document a notation that it is renewable. *See*, (INS:4,n.2) (emphasis added), that Defendants were "*prepared to issue a directive requiring the Form I-94 to contain a notation consistent with the Court's directive.*"  Yet, no such directive was ever issued, as would have been done, had INS truly believed that a binding Oral Decision had been issued at the hearing.

109

transferred to the docket of this Honorable Court. If a binding
Oral Decision had been rendered, and all that remained was to
formalize the Decision, the case would not have been transferred to
this Court's docket.  This is also consistent with this Court's
order of May 21, 1998.  If the case were resolved, there would have
been no "pending motions" to be denied, subject to being re-urged.

Even assuming, *arguendo*, that the Court's comments of July 31, 1996
were intended to dispose of the case, and/or to limit the issues
herein, that would not bar this Honorable Court from addressing the
issues on a *de novo* basis.  INS has cited no authority for the
implied proposition that when a case is transferred to its docket,
the Court lacks the power to consider it *de novo,* and has not even
alleged that it relied to its detriment on its purported belief
that such a binding order was issued.  To the contrary, as noted
above, INS admits that it has not even *begun* to comply with the
supposedly binding Oral Decision, issued over two years ago.

> 1.  PLAINTIFFS CONCUR, AND THE COURT HAS ALREADY FOUND,
>     THAT THERE EXIST NO UNRESOLVED ISSUES OF MATERIAL FACT.

INS correctly notes that on April 26, 1995, the parties agreed,
and the Court found, that there were no outstanding issues of
material fact.  (INS:3-4).  By this, Plaintiffs understood that INS
did not contest Plaintiffs' evidence, or (verified) factual claims.
At that time, INS had not filed an answer, and the tardy replies to
the Requests for Admission were only handed to Plaintiffs as they
entered Court on that day, so INS could not have realistically
believed that any "denials" made therein had "convinced" Plaintiffs
of the falsity of any of the requests for admission, such as would
render these issues no longer in dispute.  INS' continued assertion
that, as of April 26, 1995, there were no outstanding issues of
material fact constitutes an admission that the facts as set forth
by Plaintiffs prior to that time are not subject to dispute.

4

109

CAMPDF – www.fesnio.com

*See also,* Petitioners' Amended Statement of Material Facts As To Which There Exists No Genuine Controversy," filed June 12, 1995, page 1, (hereinafter cited as (FACTS:__), wherein Plaintiffs note:

> At the status conference conducted on April 26, 1995, both Parties represented to the Court that the facts which are material at this stage of the instant action are not in dispute. These representations are fully supported by the record herein.
>
> As of April 26, 1995, Respondents had neither contested, nor provided any evidence tending to disprove, the material facts set forth by Petitioners. All the factual material contained in the record was submitted by Petitioners, although much of it originated with Respondents.

The limited Factual Background, as set forth in the Memorandum and Order, is consistent with the facts as understood by the parties, and the Court, in April of 1995, and INS' current protestations regarding these facts are not substantiated by the record.

First, INS objects, (INS:7,n.7), to the finding that "some branches of INS" routinely confiscate resident's green cards when they are placed under proceedings, rather than doing so on a case-by-case basis, as required by the McNary Memo. Curiously, INS now objects to this factual finding, which it has previously admitted. *See,* Defendants' Statement of Material Facts As To Which There Exists No Substantial Controversy, And Objections to Plaintiffs' Amended Statement of Material Facts," filed August 28, 1995, (hereinafter cited as (INSFACTS:__), at pages 12-13. *See also,* (FACTS:15,17).

In support of its objection, INS asserts that Plaintiffs already acknowledged INS' right to confiscate green cards, and points to page 9 of Plaintiffs' Second Amended Petition. However, that section is limited to residents who are applying for admission as returning residents, and are placed under what were previously

110

CXMPDF - www.foxiia.com

called exclusion proceedings.  The McNary Memo authorizes, (as does
the Court's Memorandum and Order), INS' right to routinely
confiscate such cards.  Nor do Plaintiffs dispute this right.

The portion of the Memorandum and Order to which INS objects,
(INS:7,n.7), relates to residents apprehended in the interior, and
placed under what were previously called deportation proceedings.
In those cases, the McNary Memo (and the Court's Memorandum and
Order), mandate that the decision to lift a green card be made on
a case-by-case basis.  And when such a card is confiscated, the
McNary Memo, (and the Court's Memorandum and Order), require that
an adequate replacement document be issued, which INS also admits
does not always occur. (INSFACTS:5,8-9,12-13).

INS' claim that Plaintiffs have recognized that the decision to
confiscate a resident's green card is based on INS' belief that
"criminal activity is afoot" is a distortion of Plaintiffs'
position.  The cited pleading, page 9 of Plaintiffs' Second Amended
Petition, is precisely that portion of the (verified) Petition
wherein Plaintiffs allege that the decision of whether to return an
arriving LPR to Mexico pending proceedings, or parole the person
into the United States, depends largely on the gravity of the
offense committed.  As asserted therein, and as found by the Court,
if the offense is sufficiently serious that criminal prosecution is
contemplated, it is INS' practice to parole the resident into the
United States for prosecution, but where the offense is minor, and
prosecution is not contemplated, it is INS' practice to force the
resident to return to Mexico to await proceedings, without even
advising the person of the possibility of parole, much less
providing a hearing with respect thereto.  Again, INS has admitted
that this is its practice, (INSFACTS:9-10).

INS' other factual objections are equally frivolous.  INS objects
to the finding that it "frequently" confiscates documents other
than green cards.  Apparently, it is only the term "frequently" to

which INS objects, as the record indisputably establishes that this has occurred, and that INS has refused, in writing, to return such documents to their rightful owners, even when requested by counsel. *See*, (FACTS:12). INS has never claimed that it did not do so in the specific instances cited by Plaintiffs, much less tendered evidence tending to show that these were isolated incidents.

Rather, INS characterizes this as "immaterial," (INSFACTS:15) since Plaintiffs do not contest their "right to seize certain documents for the purpose of using them as evidence." Indeed, Plaintiffs neither contest, nor would the Court's Order interfere, with the seizure of evidence. Rather, Plaintiffs object to, and the Court's Order would prohibit, the seizure of "lawfully issued documents which are not *bona fide* evidence of unlawful conduct." INS makes no attempt to justify the seizure of such documents.

INS also objects to the finding that hearing notices to residents who are returned to Mexico are sent by mail, and "frequently" are not received in a timely fashion, (INS:7,n.7). Again, it appears to be the term "frequently" to which INS objects. INS cannot dispute that such notices are served in Mexico by mail. Plaintiff Merino's case establishes that, at least in some instances, hearing notices are mailed to Mexican addresses, and do not arrive in a timely fashion. Indeed, this Court could take judicial notice of the fact that mail services in Mexico are less reliable than those in the U.S., and that even in this country, letters sent by regular mail do not always reach their destination in a prompt fashion, and in some instances, are misdirected, or lost in the mail.

Finally, INS objects to the finding that administrative proceedings are "frequently protracted" where there is a non-frivolous defense to the charges, or a contested application for relief. Again, this finding is supported by the record, including the cases of the named Plaintiffs herein, wherein proceedings dragged on for up to

112

seven years.[5]  Moreover, the cases of *all* the named Plaintiffs were ultimately resolved in their favor.  This removes any question that INS' improper actions could be considered "harmless error."

2.  THE LEGAL ISSUES PRESENTED HEREIN WERE NOT "NARROWED" BY THE COURT AT THE JULY 1996 HEARING - RATHER, THE COURT ONLY REQUESTED SUPPLEMENTAL BRIEFING ON CERTAIN, COMPLEX, LEGAL ISSUES.

INS also claims that the legal issues raised herein had been narrowed by the Court on July 31, 1998, and did not include the questions of (1) whether INS was required to follow its own directives, (e.g., the McNary Memo), in determining under what circumstances a resident's green card should be confiscated, and (2) whether INS may appropriately confiscate such lawfully issued documents as driver's licenses, social security cards, when they do not constitute *bona fide* evidence of unlawful conduct. (INS:8,n.8).

These claims were never "dismissed" by the Court.  The fact that the Court did not request additional briefing with respect to these questions at the July 31, 1996 hearing may simply reflect the fact that the Court considered their resolution to be self-evident. This is consistent with the facts that: (1) INS has never disputed that it was bound by the McNary Memo, and in fact, affirmatively presented said Memo to the Court,[6] and (2) INS has never claimed the legal authority to confiscate lawfully issued documents other

---

[5]  Petitioner Lopez-Lozano was under proceedings from May of 1988 until after June of 1995. Petitioner Cantu de Cabrera was under proceedings from 1993 until 1995; and Petitioners Sanchez, Ascencio and Merino, from 1994 until 1998. Indeed, Petitioner Sanchez' case was finally resolved just last month. Petitioners' Exhibit HH, herein incorporated by reference.

[6]  INS admits that the confiscation of cards is inconsistent. Some local branches, including Deportations, confiscate such cards only rarely, if at all, while others, including Investigations, do so routinely. (INSFACTS:12-13). INS also obliquely admits that it has not fully implemented the McNary Memo, (INSFACTS:4-5,8-9). Improvements flowed only from the instant action, and there is no guarantee that they would continue, absent Court order.

than a resident's green card, unless said documents were believed to be *bona fide* evidence of unlawful conduct.

Nor is it the appropriateness of such conduct that INS would now assert. Rather, it appears that INS does not want to be under a judicial *mandate* to follow the law.

> 2. THE DISCUSSIONS REGARDING PAROLE AT THE PRIOR HEARING RELATED TO PLAINTIFFS' REQUEST THAT A PAROLE, ONCE GRANTED, BE VALID FOR MULTIPLE BORDER CROSSINGS, NOT TO THEIR CLAIM THAT THE RETURN OF PLAINTIFFS TO MEXICO TO AWAIT HEARINGS, WITH NO OPPORTUNITY TO CONTEST THAT RETURN, VIOLATED DUE PROCESS, WITH WHICH CLAIM THE COURT EXPRESSED STRONG AGREEMENT AT THE PRIOR HEARING.

INS' contention, (INS:4), that on July 31, 1996, the Court held that a lawful permanent resident alien, "similar to a United States citizen charged with a criminal offense, does not have a right to parole" is simply incorrect. The Court made no such ruling.

The exchange to which INS apparently refers related to Plaintiffs' request that, once paroled, such a person be allowed to come and go, and that the parole document be construed as granting the right of a permanent resident in parole status to travel to Mexico, and return, without filing a new request for parole. This latter request was one on which the Court requested, and Plaintiffs filed, supplemental briefing. However, due to a combination of factors, including the Court's expressed scepticism with respect to this claim, changes in the law which would affect it, and the fact that it was only a minor aspect of Plaintiffs' case, this request was dropped in the proposed Memorandum and Order filed by Plaintiffs.

The claim which Plaintiffs have pursued, and which was included in the Memorandum and Order adopted by this Court, is the one with which the Court expressed strong agreement at the hearing of July 31, 1996, to wit, Petitioner's challenge to INS' practice of



returning certain lawful permanent residents to Mexico to await exclusion proceedings, without affording a hearing on the issue of whether they should be paroled into the United States, or even informing them, (unless they affirmatively inquire), about the possibility of being paroled into the country during proceedings.

Mr. Sanchez, whose case involved a large quantity of marijuana, and accusations of bail jumping, was paroled in for prosecution, and subsequently released under bond.   Mr. Merino and his wife, Ms. Ascencio, were returned to Mexico, without being advised of the possibility of parole.   Their error consisted of using their own child's birth certificate to try to bring their sick nephew into the U.S. to see a doctor, and criminal prosecution was not sought. In both cases, proceedings lasted approximately four years.   To parole in serious offenders, but return persons such as Mr. Merino and Ms. Ascencio to Mexico, without a hearing as to whether they should be paroled into the U.S., is arbitrary, and is inconsistent with their status as lawful permanent residents. *Molina v. Sewell*, 983 F.2d 676, 680 (5th Cir. 1993) ("The fact that an [arriving] alien is subject to deportation proceedings does not affect his status as a permanent resident alien."); *Plyler v. Doe*, 102 S.Ct. 2382 (1982) (even aliens *unlawfully* in the U.S. are entitled to Equal Protection); *Richardson v. Reno,* 994 F.Supp. 1466 (S.D.Fla. 1998) (In IRRIRA, Congress did not intend to overrule the *Fleuti* doctrine regarding arriving permanent residents presenting themselves for inspection; not reaching Constitutional issues); *Ekekhor v. Aljets*, 979 F.Supp. 640,643 (N.D.Ill. 1997) (IJ properly exercised authority in releasing resident alien on bond pending exclusion hearing); *St. John v. McElroy*, 917 F. Supp. 243, 251 (S.D.N.Y. 1996) (permanent resident entitled to a parole hearing before an impartial adjudicator while awaiting exclusion hearing).

It must also not be forgotten that INS has admitted that this is

10

their practice. *See,* (INSFACTS:9-10) (footnote omitted):

> 18. When a lawful permanent resident applies for admission as a returning resident at a port of entry under the jurisdiction of the Harlingen, Texas, INS Office, and Respondents have reason to believe that said person has committed an act which would subject him or her to exclusion proceedings, if criminal prosecution is also contemplated, it is the practice of Respondents to parole the individual into the United States for prosecution, and place him or her under exclusion proceedings. If the prosecution results in a conviction, it is the practice of Defendants to detain said individual at the Service Processing Center at Los Fresnos, Texas, pending exclusion proceedings. Upon request of counsel, and in some cases upon payment of a bond, such persons are frequently paroled into the United States. If criminal prosecution is <u>not</u> contemplated, it is the practice of Defendants to initiate exclusion proceedings, and, in most instances, return said person to Mexico, without advising him or her of the possibility of being paroled into the United States.

The injustice of such a situation is self-evident. And it was this practice which elicited the greatest scepticism from the Court at the hearing on July 31, 1996.

> 4. THE FACT THAT THE NAMES OF THE PROCEEDINGS AFFECTING CLASS MEMBERS HAVE BEEN CHANGED DOES NOT AFFECT THE REAL ISSUES IN THIS CASE, OR THE CLASS AS CERTIFIED HEREIN.

Finally, INS objects to the terminology utilized in the Court's Memorandum and Order, relating to "expulsion," rather than simply exclusion and deportation proceedings. (INS:7,n.6). At the time the instant class was certified, these terms covered all expulsion proceedings. Since then, such proceedings have been re-named, and are now called "removal" proceedings. However, INS makes no claim that the re-naming of the proceedings affects the issues involved herein. Petitioners are not challenging the new procedures, but only such tangential issues as the provision of adequate substitute documents, and the right to a hearing regarding parole for those

11

116

CVISPDF - www.texiss.com

persons who are returned to Mexico when placed under proceedings.

Plaintiffs allege that INS' practices in this regard violate Equal Protection, and Due Process.  Paroling in persons such as Plaintiff Sanchez, but returning persons such as Plaintiffs Merino and Ascencio to Mexico, without a parole hearing, violates Equal Protection, and constitutes unlawful summary exclusion.   While Congress has now statutorily endorsed the procedure of returning to Mexico applicants for admission *at land borders* who are placed under removal proceedings, 8 USC §1225(b)(2)(C), this does not remove the possibility of paroling such a person into the country. Nor does it alleviate the injustice of paroling serious offenders into the U.S., while summarily returning persons to Mexico who are alleged to have committed only minor offenses, without giving them a meaningful opportunity to be paroled into the country while proceedings are pending.  *See,* 8 CFR §§212.5(a) and 235.3(c).

Moreover, F.R.Civ.P. 23(c)(1) expressly permits the Court to amend its class certification order at any time "before the decision on the merits." Therefore, to eliminate any concern that the scope of the prior certification does not extend to residents placed under the new proceedings, the prior order may be appropriately amended.

Although INS does not specifically address its prior arguments, or Plaintiffs' response thereto, Plaintiffs would note that the habeas corpus basis for jurisdiction herein, under 28 USC §2241 and the Suspension Clause of the U.S. Constitution, has been strengthened by the recent decisions in cases such as *Lerma de Garcia v. INS,* 141 F.3d 215 (95th Cir. 1998); *Magana-Pizano v. INS,* 152 F.3d 1213 (9th Cir. 1998); *Henderson v. INS*, 1998 WL 665783 (2nd Cir. 9/18/98), and *Cantu-Salinas v. Trominski,* CA B-97-183, (S.D.Tx 1998).

Notably, all of INS' objections to the Court's Memorandum and Order

12

117

CVisPDF - www.tesisx.com

are procedural. Other than by referring to its prior pleadings, at
no time does INS even attempt to argue that the provisions thereof
would be improper. It is therefore urged that, in order to ensure
that INS' procedural objections have been met, the Court (1) amend
the Order granting class certification, and thereafter (2) vacate
the Memorandum and Order of September 30, 1998, and enter a similar
one, granting the same relief.


Respectfully Submitted,


Lisa S. Brodyaga, Attorney at Law
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(956) 421-3226


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, with Exhibit HH, and
attached proposed Orders, were served, first class postage prepaid,
on Regina Byrd, Attorney, OIL, Box 878, Ben Franklin Sta.,
Washington, D.C. 20044, on October 19, 1998.



13

118