111

United States District Court
Southern District of Texas
FILED
JAN 25 1999
Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUANA ASCENCIO-GUZMAN, et al.,

Plaintiffs,

v.

E.M. TROMINSKI, District Director, Immigration and Naturalization Service, HON. JANET RENO, United States Attorney General, and IMMIGRATION AND NATURALIZATION SERVICE,

Defendants.

C.A. No. B-94-215

**DEFENDANTS' MOTION FOR STAY OF THE COURT'S JUDGMENT PENDING APPEAL**

Pursuant to Fed. R. Civ. P. 62 and Fed. R. App. P. 8, defendants, who are United States Government officials and Executive agencies, hereby move for a stay of the Court's January 13, 1999 judgment in favor of plaintiffs in accordance with the Memorandum and Order entered on November 25, 1998.

**FACTUAL BACKGROUND**

**A. Background Facts**

On July 15, 1994, plaintiffs filed a class action lawsuit against the defendants. Plaintiffs sought to represent all members of the class defined as all lawful permanent residents

> who are under deportation or exclusion proceedings, in whose cases no final order of deportation or exclusion has been entered, who are not presently held in detention, whose I-151 or I-155 cards have been confiscated by Defendants, and are being retained by or under the authorization of the Harlingen Office of the Immigration and Naturalization Service.

25

Plaintiffs' Second Amended Petition ("the complaint") at 12. All the issues raised by plaintiffs related to the defendants' Harlingen, Texas office and/or the defendants' Harlingen, Texas branch offices. Plaintiffs Juana Ascencio-Guzman, Efrain Merino, Arturo Lopez-Lozano, Alejandra Gutierrez, Juan Sanchez-Salinas, Adelita Cantu de Cabrera, and Ramiro Gracia-Cantu are all lawful permanent residents of the United States. Plaintiffs Ascencio, Merino, Gutierrez, Sanchez, and Cabrera were all in exclusion proceedings, and plaintiffs Gracia and Lopez were in deportation proceedings, in the Harlingen INS district when the original complaint was filed. Plaintiffs Cabrera and Lopez have since been granted relief by an immigration judge, and have had their proceedings terminated.

**B. The Complaint**

Plaintiffs' Second Amended Petition For Writ Of Habeas Corpus And Class Action Complaint For Declaratory Judgment And Injunctive Relief purports to raise seven causes of action. First, the complaint alleges that the confiscation of the I-151 or I-551 card of a lawful permanent resident who is in an ongoing deportation or exclusion proceeding, but who is not held in detention, violates that person's rights as a lawful permanent resident, interfering with his privileges and restraining his liberty. Complaint at 13. The complaint states that cards with (a) a time limit on validity, or (b) a notation that the person is under exclusion or deportation proceedings or is out on bond, unaccompanied by an "employment authorized" stamp, or (c) a



26

ClibPDF - www.fastio.com

notation that the document is not valid for re-entry interfere with the rights of lawful permanent residents, including the ability to obtain and maintain employment and travel freely. Complaint at 13-14. Plaintiffs allege that lawful permanent resident aliens who have documents which have such limitations are less likely to obtain work, are more likely to be detained upon seeking admission, and are more likely to have bond canceled. Complaint at 14.

The second cause of action alleges that plaintiffs are entitled to injunctive relief because this "cloud" placed on their status deprives them of liberty and property interests without due process of law. Complaint at 15. The third cause of action alleges that, on this basis, they are entitled to declaratory relief stating that the INS's policy of confiscating green cards violates the rights of lawful permanent residents. Complaint at 15. The fourth cause of action seeks declaratory relief stating that the departure of a lawful permanent resident from the country while in deportation proceedings is not a permissible consideration in determining whether or not the departure from the United States is "meaningful." Complaint at 15-16. The fifth cause of action alleges that plaintiffs are entitled to a preliminary and permanent injunction, restraining and enjoining defendants from considering the fact that a lawful permanent resident already is under deportation proceedings, or has posted bond in conjunction therewith, in determining whether to place him in exclusion proceedings rather than to admit him.





ClibPDF - www.fastio.com

Complaint at 16-17. The sixth cause of action alleges that the cancellation or forfeiture of bond solely because the alien made a departure from the United States deprives that person of liberty without due process. Complaint at 16-17. Finally, the seventh cause of action seeks an injunction restraining and enjoining the agents of the defendants from forfeiting or canceling the bond in deportation proceedings of a lawful permanent resident solely because he made a departure from the United States. Complaint at 17.

**C. The Court's Memorandum and Order**

The Court's Memorandum and Order ("Memorandum and Order") entered November 25, 1998, made several findings of facts based on there being "no genuine issue of material fact" following consideration of the cross motions for summary judgment. First, the Court observed that a memorandum issued by former INS Commissioner Gene McNary, dated March 14, 1990 ("the McNary memo"), set forth the conditions under which INS has authorized the confiscation of "green cards" issued to permanent residents who are placed under expulsion proceedings and the form of the substitute document which must be provided. Memorandum and Order at 1. The Court concluded that INS agents in the Harlingen, Texas district frequently act inconsistently with the McNary Memo, in that they: (1) routinely confiscated green cards of lawful permanent residents placed in deportation proceedings; (2) placed notations on replacement documents not authorized by the McNary memo; and (3) failed or refused in some cases to issue any



28

ClibPDF - www.fastio.com

replacement document or to place a notation that the holder was authorized to be employed in the United States. Memorandum and Order at 1-2. As for lawful permanent residents placed in exclusion proceedings and paroled into the country, the Court concluded that defendants failed to follow the McNary memo in that they: (1) refused to provide any substitute document; (2) failed to specify that the lawful permanent resident is authorized to be employed in the United States; and (3) in some cases placed notations stating that the holder is not authorized to be employed. Memorandum and Order at 2. Additionally, noted the Court, the defendants also confiscated other lawfully issued documents which do not constitute bona fide evidence of unlawful conduct. Memorandum and Order at 2.

The Court also found that when lawful permanent resident aliens seeking admission are detained for major offenses, such as trafficking in controlled substances or undocumented aliens, they usually are paroled into the U.S. for criminal prosecution and are detained thereafter at the INS detention center, where they have access to counsel and are allowed frequently to post bond. Memorandum and Order at 2. The Court observed that other permanent residents detained at a land border for minor infractions, such as attempting to smuggle relatives into the United States, are subjected to another procedure. Memorandum and Order at 2. The Court found that these latter aliens have their green cards confiscated and are generally returned to Mexico, where access to counsel is more difficult, to await a



29

ClibPDF - www.fastio.com

hearing. The Court observed that they are not given notice of the possibility of parole unless they affirmatively inquire, are afforded no hearing before they are returned to Mexico, and have no appeal available from the decision to return them. Memorandum and Order at 2. The Court found that notice of hearings sent to Mexican addresses are not always received in a timely fashion, if at all. Id. at 2.

The Court also found that proceedings involving a non-frivolous defense or administrative relief are frequently protracted. Memorandum and Order at 2-3. Where an individual is not detained at government expense, it may take eight to ten months from the date of initial apprehension for the immigration judge to issue his or her order. Memorandum and Order at 3. If an appeal is taken by either party, proceedings may last two to four years. Memorandum and Order at 3. The Court added that complex cases, where a remand is required, may drag on for as long as seven years. Memorandum and Order at 3.

The Court then reached several conclusions of law. First, the Court concluded that it had jurisdiction under 28 U.S.C. § 1331, 5 U.S.C. § 702, 28 U.S.C. § 1346(a)(2), and 28 U.S. C. § 2201. Memorandum and Order at 3. Alternatively, the Court held that it had jurisdiction pursuant to habeas corpus. Memorandum and Order at 3.

The Court concluded that the defendants acted arbitrarily and capriciously, inconsistent with due process, when they confiscated green cards from non-arriving permanent residents





ClibPDF - www.fastio.com

placed under expulsion proceedings and not held in custody, without making the determination on a case-by-case basis as "required" by the McNary memo, and when, having confiscated such a card, they failed to provide a replacement document evidencing the resident's status as a lawful permanent resident or they placed notations on a replacement document which are not authorized by Operation Instructions 264.2, such as notations that the person is under proceedings or is not entitled to be employed in the United States. Memorandum and Order at 3.

The Court similarly concluded that the defendants act arbitrarily and capriciously in paroling into the United States most arriving permanent resident aliens who are accused of serious criminal activity, while returning to Mexico those in whose cases criminal prosecution is not contemplated (1) without advising them that they might be able to be paroled into the United States with or without payment of a bond and (2) without providing a parole hearing before an impartial adjudicator. Memorandum and Order at 3-4.

Finally, the Court held that the defendants act arbitrarily and capriciously, inconsistent with due process and the Fourth Amendment, when they confiscate other lawfully issued documents, absent a good faith belief that there are bona fide evidence of unlawful conduct. Memorandum and Order at 4.

On the basis of these findings of fact and conclusions of law, the Court issued several orders. First, it ordered that the defendants shall only confiscate the laminated Form I-151 or I-



31

ClibPDF - www.fastio.com

551 of a non-arriving permanent resident placed under expulsion proceedings and not held in custody, when the INS district Director, chief patrol agent, or officer in charge determines that a temporary document is needed for a justifiable, particularized reason, based on the individual facts of the case. Memorandum and Order at 4-5. The Memorandum and Order further provides that when a green card is confiscated, the defendants shall provide temporary evidence of lawful permanent resident status, which shall be prepared in accordance with Operation Instruction 264.2, shall be issued for at least six months, and shall contain a notation that it is renewable. Memorandum and Order at 5.

The Memorandum and Order also directed that when a lawful permanent resident applying for admission to the United States is placed under expulsion proceedings, defendants may confiscate the resident's green card, but shall afford that person a prompt hearing before an immigration judge, in accordance with 8 C.F.R. § 236.1, to determine whether he or she should be paroled into the United States during the pendency of proceedings, and if so, under what conditions. If the person is so paroled, and not held in custody, defendants shall provide a substitute document evidencing permanent resident status, and entitlement to be employed in the United States. Memorandum and Order at 5.

Finally, the Court's Memorandum and Order directs that the defendants shall not confiscate any other lawfully issued documents from a permanent resident, absent a good faith belief



ClibPDF - www.fastio.com

that such documents constitute bona fide evidence of unlawful conduct. Memorandum and Order at 5.

## DISCUSSION

### THE COURT'S ORDER SHOULD BE STAYED PENDING APPEAL

In Hilton v. Braunskill, 481 U.S. 770, 776-77 (1987), the Supreme Court held that four principal factors should guide courts in determining whether to grant a stay:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

A stay may be granted on a lesser showing of a "substantial case on the merits" when "the balance of the equities weighs heavily in favor of granting the stay." Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir. 1981) (per curiam), cert. denied, 460 U.S. 1042 (1983).

**A. Defendants Are Likely to Prevail on the Merits**

**1. The Court Lacks Jurisdiction Over Removal Proceedings**

**a. The Court lacks jurisdiction to review challenges to orders of removal and the procedures afforded therefor**

The Court improperly exercised jurisdiction in immigration matters which are reviewable solely in the court of appeals. Review of final orders of deportation and exclusion have long been within the sole province of the court of appeals. The Supreme Court has affirmed this principle: "[INA § 106] eliminated district court review of deportation orders under § 10 of the Administrative Procedure Act, 5 U.S.C. § 702 (1976 ed.),



33

ClibPDF - www.fastio.com

and replaced it with direct review in the courts of appeals based on the administrative record." Agosto v. INS, 436 U.S. 748, 752-53 (1978); see also Foti v. INS, 375 U.S. 217, 224 (1963) ("[T]he declared purpose of § 106(a) [is] to eliminate the District Court stage of the judicial review process in an effort to prevent dilatory tactics"). There was a minor exception to this exclusive scheme for review, permitting habeas corpus review for aliens in actual custody. 8 U.S.C. § 1105a(a)(10)(1994). This exception, however, was repealed by section 401(e) of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 14-132, 110 Stat. 1214 (1996). Auguste v. Attorney General, 152 F.3d 1325, 1329 n.9 (11th Cir. 1998).

Even if some doubt remained regarding the prohibition against district court review of a final order of removal, the amendments made by the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1998), eliminated such doubt and expressly divested the district courts of jurisdiction over other matters relating to removal as well, even where no final order is involved. IIRIRA § 306(a)(2) amended INA § 242(g) to read:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

8 U.S.C. § 1252(g). INA § 242(g) functions to bar jurisdiction under both federal question jurisdiction, 28 U.S.C. § 1331, and



34

ClibPDF - www.fastio.com

habeas corpus, 28 U.S.C. § 2241. Richardson v. Reno, --- F.3d ---, 1998 WL 889376 at *14 (11th Cir. Dec. 22, 1998) (section 242(g) bars review under 28 U.S.C. § 2241); Ramallo v. Reno, 114 F.3d 1210, 1211 (D.C. Cir. 1997), petition for cert. filed, 66 U.S.L.W. 3264 (Sep. 24, 1997) (No. 97-526) (section 242(g) bars review under 28 U.S.C. § 1331); Yang v. INS, 109 F.3d 1185 (7th Cir. 1997), cert. denied, 118 S. Ct. 624 (1997) (Section 242(g) abolishes review under 28 U.S.C. § 2241). Thus, former INA § 106 and new INA § 242(g) preclude review in the district court and place such review solely in the purview of the court of appeals.

In this case the Court attempts to modify and prescribe what form of procedures must be afforded to lawful permanent residents in deportation, exclusion, and removal proceedings. Memorandum and Order at 3-5. This represents a challenge to the commencement and adjudication of removal proceedings, and thus jurisdiction is barred by INA § 242(g). Lawful permanent residents may be subject to exclusion or removal upon their return from abroad. Landon v. Plasencia, 459 U.S. 21, 25 (1982); Richardson v. Reno, 1998 WL 889376 at *31 n.179. They may judicially challenge the mechanisms of these processes only in the court of appeals after the entry of a final order and after the exhaustion of administrative remedies. Richardson, 1998 WL 889376 at *31.

Moreover, the Court improperly exercises jurisdiction to dictate which officers are required to provide parole determinations. Memorandum and Order at 5. Detention of aliens





ClibPDF - www.fastio.com

pending removal proceedings has long been considered an essential part of the removal procedure. Detention is "necessary to give effect to the provisions for the exclusion or expulsion of aliens . . . ." Wong Wing v. United States, 163 U.S. 228, 235 (1896); see Carlson v. Landon, 342 U.S. 524, 538 (1952). Thus, any claim raised by plaintiffs or relief granted by the Court which effectively challenges or dictates the procedures afforded for the parole of aliens, including who must consider a parole request, must be brought "only in the court of appeals, only after a final removal order has been issued, and only after [the alien] has exhausted all administrative remedies." Richardson, 1998 WL 889376 at *31. Thus, the Court lacked jurisdiction to issue its order modifying removal procedures.

Additionally, the Court's order requires that notice must be afforded to aliens in exclusion or removal proceedings. Memorandum and Order at 5. This notice requirement directly affects the Attorney General's actions in adjudicating or executing removal orders and constitutes a challenge thereto. Accordingly, the district court lacks jurisdiction to mandate.

The Court's curtailing of the INS authority to confiscate green cards and issue replacement documentation with factually correct notations is similarly barred by INA § 242(g). The INS confiscates green cards, issues replacement documents with certain factual notations as a part of its effort to insure that the alien will show for removal proceedings. The factual notations — including employment authorization, time limits on



36

ClibPDF - www.fastio.com

the validity of the document, and the fact that the alien is out on bond — are a part of the commencement and adjudication of cases. As such, any claim or cause challenging the Attorney General's actions in that regard may not be brought in district court. Richardson, 1998 WL 889376 at *14.

The Court finds that habeas corpus is a viable alternative for plaintiffs, relying on cases such as Lerma de Garcia v. INS, 141 F.3d 215 (5th Cir. 1998), Henderson v. INS, 157 F.3d 106 (2d Cir. 1998), petition for cert. filed sub nom. Reno v. Navas, 67 U.S.L.W. 3409 (U.S. Dec. 17, 1998)(No. 98-996), Magana-Pizano v. INS, 152 F.3d 1213 (9th Cir. 1998), as amended 159 F.3d 1217 (9th Cir. 1998), petition for cert. filed, 67 U.S.L.W. 3364 (U.S. Nov. 18, 1998) (No. 98-836), and Cantu-Salinas v. Trominski, CA B-97-183 (S.D. Tex. 1998). This reliance is misplaced. First, Lerma does not purport to find that habeas corpus is available; rather, while suggesting that habeas may be available in cases involving criminal aliens, the court expressly declines to make such a determination. Lerma, 141 F.3d at 217. Indeed, the court in Henderson acknowledged that were it not bound by prior precedent, it would have adopted the government's position that habeas corpus was unavailable and that any remaining review could only be had in the court of appeals. Henderson, 157 F.3d at 119 n.9. Moreover, cases such as Magana-Pizano and Henderson involve criminal aliens who cannot obtain review in the court of appeals. Magana-Pizano, 152 F.3d at 1215-16; Henderson, 157 F.3d at 118-19. The instant case does not purport to involve criminal aliens



37

ClibPDF - www.fastio.com

who generally have no other means of review available, and the class is not so limited. Accordingly, review is only appropriate in the court of appeals, after the entry of a final order, and after the exhaustion of administrative remedies. Mejia-Rodriguez v. Reno, --- F.3d ---, 1999 WL 1762 at *4-5 (11th Cir. January 4, 1999) (non-criminal aliens); Richardson, 1998 WL 889376 at *31 (criminal aliens).

**b. The court's review is prohibited by INA § 236(e)**

The district court's jurisdiction is barred by INA § 236(e), 8 U.S.C. § 1226(e). Richardson, 1998 WL 889376 at *9. Section 236 of the INA provides for the detention of aliens who are in removal proceedings and bars judicial review of the Attorney General's determinations regarding detention or parole:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e).

The Court's Memorandum and Order makes substantial modifications to present INS parole procedures. In pertinent part, the Memorandum and Order directs the INS to bring arriving lawful permanent resident aliens before an immigration judge for a parole determination. Memorandum and Order at 5. The present INS procedure, however, requires an alien to seek parole from the district director. The structure by which an arriving alien may obtain release from detention is set forth by the INA and the



ClibPDF - www.fastio.com

regulations promulgated thereunder. In general, the Attorney General is authorized to detain "an alien seeking admission [who] is not clearly and beyond a doubt entitled to be admitted, pending proceedings under section 240 [8 U.S.C. § 1229a]." 8 U.S.C. § 1225(b)(2)(A). Section 236(a) of the INA provides that an alien, whether or not he is seeking admission, may be held by the INS pending a determination of whether that alien is to be removed from the United States. 8 U.S.C. § 1226(a). The Attorney General may release such aliens on bond or conditional parole. 8 U.S.C. §§ 1226(a)(2)(A) & (B). INA § 212(d)(5)(A) provides for the circumstances under which such aliens may obtain release from custody:

> The Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien . . . .

8 U.S.C. § 1182(d)(5)(A) (emphasis added). The district director has been delegated the authority for deciding applications for parole pursuant to INA § 212(d)(5)(A). 8 C.F.R. § 103.1(g)(2)(ii)(B). Immigration judges, however, lack such authority. 8 C.F.R. § 3.19.

Section 236(e) of the INA bars the court's jurisdiction in two ways. The first sentence of INA § 236(e) expressly and categorically bars judicial review of discretionary judgments made by the Attorney General regarding the detention or release of any alien. The delegation of authority to make detention





ClibPDF - www.fastio.com

decisions constitutes a discretionary action by the Attorney General respecting the application of INA § 236. See INA § 103, 8 U.S.C. § 1103; Chevron, USA v. Natural Resources Defense Council, 467 U.S. 837, 843-44 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation); Vermont Yankee v. Natural Resources Defense Council, 435 U.S. 519, 544 (1978) (agency choice of procedures is discretionary). Thus, INA § 236(e) precludes any challenge to the discretionary selection of the means by which the Attorney General implements INA § 236 and other parole provisions by assigning release determinations concerning arriving aliens in petitioner's situation to the INS district director rather than the immigration judge.

The district court's jurisdiction is precluded by INA § 236(e) for a second reason. The second sentence of INA § 236(e) expressly and unequivocally bars any court from setting aside any action or decision by the Attorney General under INA § 236 regarding the detention of an alien or the denial of bond or parole to an alien pending a decision whether to remove the alien from the United States. Not only is promulgation of the regulatory scheme establishing procedures for parole and bond requests an "action" by the Attorney General regarding the "detention or release of [an] alien" under INA § 236, but the district director's decisions to parole certain aliens but not others also is a decision regarding the "detention or release of



40

[an] alien" under INA § 236. In short, plaintiffs' action before the district court is a challenge to both the Attorney General's selected method for implementing section 236 and other parole provisions and to the district director's decision under INA § 236. Section 236(e) clearly precludes all courts from setting aside detention decisions and actions of either the Attorney General or her designees. 8 U.S.C. § 1226(e).

**2. The Court's Factual Findings Are Clearly Erroneous**

The Court's factual determinations are clearly erroneous because they fail to comport with the law of the case and are without any support in the record. Generally, under the law of the case doctrine, a successor judge must defer to the order of a prior judge. U.S. v. O'Keefe, 128 F.3d 885, 891 (5th Cir. 1997). The successor judge is not free to simply rule differently from a prior judge, but must "follow a ruling made by an earlier court unless the prior decision was erroneous, is no longer sound, or would create injustice." Id. at 891. Here, on April 26, 1995, Judge Vela issued a bench order, and the parties agreed, that no discovery was required to resolve the litigation because the case could be decided on purely legal grounds without regard to factual findings. Defendants' Opposition To Plaintiffs' (Opposed) Motion To Compel Production Of Documents And Motion To Hold Discovery In Abeyance at 4. The Court's Memorandum and Order of November 25, 1998 made certain factual findings despite the Court's earlier decision that the facts were not germaine to the case. The Court ignored the law of the case



41

ClibPDF - www.fastio.com

without notifying parties or providing explanation. This was an error, and the Court's factual findings were improper.

Moreover, wholly apart from this failure to follow the law of the case, the Court's factual findings find absolutely no support in the record. Indeed, with respect to each finding, there are genuine issues of fact to be resolved. Among other factual findings, the Court concluded that "[t]he practices of INS agents in the Harlingen, Texas district have frequently been inconsistent with the McNary Memo . . . ." Memorandum and Order at 1-2. This factual determination, as well as the others contained in Paragraph 1 of the Memorandum and Order's factual findings, is unsupported by any evidence in the record. No discovery was conducted, plaintiffs never provided evidence, and defendants were never given an opportunity to rebut any such evidence. Thus, the factual determinations in Paragraph 1 are clearly erroneous, and it cannot be said that there is no genuine issue of material fact.

Similarly, the Court makes several unsupported factual determinations in Paragraph 2 of the Memorandum and Order's factual findings. Memorandum and Order at 2. For example, the Court concludes that returning lawful permanent residents convicted of major offenses, such as trafficking in controlled substances or undocumented aliens, usually are paroled into the United States for criminal prosecution, and are detained at the INS detention center, where they have access to counsel and frequently are allowed to post bond, while minor criminal





ClibPDF - www.fastio.com

offenders are not paroled or permitted to post bond. The findings that undocumented or serious criminal aliens "usually" are paroled into the United States and that they "frequently" are permitted to post bond are again without any support in the record and are made despite the fact that plaintiffs have provided no evidence of any such regularity. Indeed, there is no evidence that minor offenders are subject to different procedures. Accordingly, the factual findings in Paragraph 2 are clearly erroneous, and it cannot be said that there is no genuine issue of material fact.

The Court's factual findings at Paragraph 3 also are improper and clearly erroneous and involve genuine issues of material fact. The Court concludes that proceedings involving a non-frivolous defense or a request for administrative relief are frequently protracted, in some cases taking eight to ten months before an immigration judge and upwards of two to four -- and at times, even as many as seven -- years where administrative or judicial review is utilized. Memorandum and Order at 2-3. Yet, the record contains no evidence of any such time periods: plaintiffs have provided no evidence of such time periods, and defendants have not been provided an opportunity to rebut any such evidence. These findings also are, therefore, clearly erroneous, rendering the legal conclusions based upon them unsound.

**3. The Court Improperly Modified The Class**

The defendants are also likely to prevail on the merits



43

ClibPDF - www.fastio.com

regarding the Court's sua sponte decision to amend the certification of class. When originally certified, the class was defined as follows:

> All those lawful permanent residents who are under deportation or exclusion proceedings, in whose cases no final order of deportation or exclusion has been entered, who are not presently held in detention, whose I-151 or I-551 cards have been confiscated by Defendants, and are being retained by or under the authority of the Harlingen Office of the Immigration and Naturalization Service.

Order Granting Class Certification at 2. In its Order Modifying Order Granting Class Certification, the Court redefined the class as follows:

> All those permanent residents of the United States who have been or will be placed by Defendants under expulsion proceedings, including deportation, exclusion, or removal proceedings, who are not held in detention, in whose cases no administratively final order has been issued, and whose I-151 or I-551 cards have been confiscated by Defendants, and are being retained by or under the authority of the Harlingen District of the Immigration and Naturalization Service.

Order Modifying Order Granting Class Certification at 1.

In modifying a class definition, the Court is bound by Fed. R. Civ. P. 23 and must consider each of its requirements before certifying or amending the class. The Court, however, never gave notice that it intended to modify the class. Nor was there a motion before the Court asking for such relief. It was incumbent upon the Court to provide the parties with an opportunity to discuss the propriety of the expanded class definition, including the opportunity to explain whether there were any class representatives in removal proceedings such that lawful permanent residents would be adequately represented. Far from a mere



44

ClibPDF - www.fastio.com

technicality, this goes to the heart of whether a class may be maintained. The Court cannot assume that aliens in removal proceedings face identical problems to those in exclusion or deportation proceedings; indeed, aliens in removal proceedings face vastly different rules. See, e.g., 8 U.S.C. § 1101(a)(13) (West supp. 1998). The Court, however, failed to comply with its duty to inquire into the ability of aliens in exclusion proceedings to represent aliens in removal proceedings, nor did it solicit a full briefing regarding such a substantial modification of the class. This is in violation not only of the Federal Rules of Civil Procedure, but also of the guarantees of due process. Accordingly, the modification of the class was inappropriate and the scope of relief afforded is unwarranted and improper.

**4. The Court's improperly attempts to modify the parole procedures afforded to lawful permanent residents**

**a. The Court's Memorandum and Order violate the separation of powers doctrine by interfering with the Executive's prerogative to choose the means by which to implement immigration statutes**

In directing that arriving lawful permanent resident class members who are placed in exclusion, deportation, or removal proceedings be granted a parole hearing before an immigration judge, the Court violates the separation of powers doctrine.

> The Constitution separates governmental powers into three coordinate branches. . . . It is this separation of powers that serves as a safeguard against the encroachment or aggrandizement of one branch at the expense of another.

U.S. v. Coastal Refining and Marketing, 911 F.2d 1036 (5th Cir.



45

ClibPDF - www.fastio.com

1990). It has long been established that immigration matters are solely within the purview of the Legislative and Executive branches. "[C]ontrol over matters of immigration is a sovereign prerogative, largely within the control of the Executive and the Legislature.. . . The role of the judiciary is limited . . . ." Landon v. Plasencia, 459 U.S. 21, 34 (1982), citing Fiallo v. Bell, 430 U.S. 787, 792-93 (1977). "The exclusion of aliens is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation." Knauff v. Shaughnessy, 338 U.S. 537, 542 (1950). "The power to expel aliens, being essentially a power of the political branches of government, the legislative and executive, may be exercised entirely through executive officers. . . ." Carlson v. Landon, 342 U.S. 524, 533 (1952).

> It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.

Lewis v. Casey, 518 U.S. 343, 348 (1996).

The Court has over-stepped the boundaries delineated by the separation of powers doctrine. The Attorney General's regulations provide that the district director, not the immigration judge, make the decision of whether to parole an alien into the United States. 8 C.F.R. § 103.1(g)(2)(ii)(B) (1997). Congress has expressly delegated sole authority to the



ClibPDF - www.fastio.com

Attorney General to implement parole procedures and the INA. 8 U.S.C. §§ 1103(a) & 1182(d)(5)(A). Thus, it is for the Attorney General, not the Court, to decide who should implement certain procedures. Accordingly, the Court over-steps its authority by directing that parole hearings be conducted before an immigration judge rather than the official whom the Attorney General has designated. Lewis, 518 U.S. at 348. The Court's authority is limited to ordering either that an official meeting certain requisites conduct the parole hearing or that the alien be released. The Court is not free to rewrite the regulations, nor may it order an official to act ultra vires. See Lewis, 518 U.S. at 348-50. Accordingly, it was improper for the Court to order lawful permanent resident be given a prompt hearing before an immigration judge.

**b. The Court improperly seeks to supplant the agency's selected procedures for dealing with lawful permanent residents who are placed in removal proceedings**

The Court improperly seeks to supplant the INS's selected mode of enforcement by dictating the procedures by which the agency must operate. The courts are required to show proper deference to an agency's discretionary choice of procedures. Vermont Yankee v. Natural Resources Defense Council, 435 U.S. 519, 544 (1978).

The structure by which an alien may obtain release from detention is set forth by the INA and the regulations promulgated thereunder. In general, the Attorney General is authorized to detain "an alien seeking admission [who] is not clearly and



47

ClibPDF - www.fastio.com

beyond a doubt entitled to be admitted, pending proceedings under section 240 [8 U.S.C. § 1229a]." 8 U.S.C. § 1225(b)(2)(A). INA § 212(d)(5)(A) provides for the circumstances under which such aliens may obtain release from custody:

> The Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien . . . .

8 U.S.C. § 1182(d)(5)(A) (emphasis added). The district director has been delegated the authority for deciding applications for parole pursuant to section 212(d)(5)(A). 8 C.F.R. § 103.1(g)(2)(ii)(B). Immigration judges, however, lack such authority. 8 C.F.R. § 3.19.

Section 236(a) of the INA provides that an alien, whether or not he is seeking admission, may be held by the INS pending a determination of whether that alien is to be removed from the United States. 8 U.S.C. § 1226(a). The Attorney General may release such aliens on bond or conditional parole. 8 U.S.C. §§ 1226(a)(2)(A) & (B). An alien seeking such release on bond or parole must satisfy the requirements of INA § 212(d)(5)(A). It was improper for the Court to upset the regulatory scheme and to direct who must provide what type of hearing. Such decisions lie within the purview of the administrative agency and are entitled to substantial deference. Vermont Yankee, 435 U.S. at 544. Accordingly, it was improper for the Court to order that the INS provide arriving lawful permanent resident aliens with a prompt





ClibPDF - www.fastio.com

hearing before an immigration judge.

**c. The Court improperly makes an effort to afford an alien in exclusion proceedings the same procedures afforded to an alien in deportation procedures**

Moreover, the Court inappropriately attempts to afford an alien in exclusion proceedings the same procedures afforded to an alien in deportation procedures. The Court's Memorandum and Order attempts to impose the "independent adjudicator" for parole hearings afforded to an alien in deportation to an alien in exclusion proceedings. Memorandum and Order at 4-5. Moreover, the Court attempts to impose a notice requirement regarding the availability of parole in exclusion proceedings. The court may not do either of these actions because the "entry" doctrine established in Fleuti v. Rosenberg, 374 U.S. 449 (1963), has been supplanted by new procedures for determining whether a lawful permanent resident may be placed in exclusion proceedings. Congress made major revisions to INA § 101(a)(13) in enacting IIRIRA. The term "entry" was specifically deleted and replaced with the "admission" concept. Richardson, 1998 WL 889376 at *6. Congress provided that lawful permanent residents shall not be regarded as seeking an admission into the United States unless they come within one or more of six categories in INA § 101(a)(13)(C)(i)-(vi):

> An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien —
>
> * * *
>
> (i) has abandoned or relinquished that status,





(ii) has been absent from the United States for a continuous period in excess of 180 days,
(iii) has engaged in illegal activity after having departed the United States,
(iv) has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this chapter and extradition proceedings,
(v) has committed an offense identified in section 1182(a)(2) of this title, unless since such offense the alien has been granted relief under section 1182(h) or 1229b(a) of this title, or
(vi) is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer.

8 U.S.C. § 1101(a)(13)(C)(i)-(vi). The language is explicit and non-discretionary. Thus, under the "plain meaning" rule, Congress has supplanted the Fleuti doctrine except as preserved by the new statue. Richardson, 1998 WL 889376 at *6.

Even if the language were not so plain, the district court would still have erred, because the Attorney General's interpretation of the INA and the regulations is reasonable. Chevron, 467 U.S. at 843. Where Congressional intent is not express, the BIA is entitled to deference if its interpretation is reasonable. Perlera-Escobar v. Executive Office for Immigration, 894 F.2d 1292, 1296 (11th Cir. 1990), citing Chevron, 467 U.S. 837. If Congress has not spoken to the issue, a court is not free to substitute its own construction of a statutory provision; rather, "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer. . . ." Chevron, 467 U.S. at 844. The Board interpreted the 1996 amendment to the INA as





ClibPDF - www.fastio.com

supplanting the Fleuti doctrine. Observing that Congress specifically removed the "entry" language formerly contained by INA § 101(a)(13) on which the Fleuti doctrine was based, that Congress introduced the concept of "admission" and "admitted," and that Congress established that legal permanent residents are not "arriving aliens," except for six categories codified at INA § 101(a)(13)(C)(i)-(vi), the Board found that the Fleuti doctrine did not apply to the amended section 101(a)(13)(C). Matter of Collado, Int. Dec. No. 3333 (BIA Dec. 18, 1997). The district court was obliged to defer to the BIA's reasonable interpretation. Perlera-Escobar, 894 F.2d at 1296. The BIA made a reasonable, sensible, and permissible interpretation of INA § 101(a)(13)(C). As such, it is entitled to deference. Chevron, 467 U.S. at 843.

The Court, however, while impliedly rejecting the "plain meaning" of the statute, made no investigation into whether the agency had interpreted the statute. Nor did it defer to the agency. Rather, the Court glossed over the issue entirely, despite the fact that among the Court's few citations to law is the citation relying upon the Fleuti doctrine. Memorandum and Order at 4. Thus, the Court was in error.

**d. The Court incorrectly requires the INS to provide a parole hearing before what the Court perceives as an "impartial adjudicator"**

The Court's decision that a parole hearing must be held before an "impartial adjudicator" is in direct conflict with the express holding of the Supreme Court. In Marcello v. Bonds, 349



ClibPDF - www.fastio.com

U.S. 302 (1955), the Supreme Court addressed a challenge alleging that parole hearings must occur before an "impartial adjudicator." The Supreme Court unequivocally rejected such a challenge:

> Petitioner would have us hold that the presence of this relationship [that the special inquiry officer was subject to the supervision and control of officials in the Immigration Service charged with investigative and prosecuting functions] so strips the hearing of fairness and impartiality as to make the procedure violative of due process. The contention is without substance when considered against the long-standing practice in deportation proceedings, judicially approved in numerous decisions in the federal courts, and against the special considerations applicable to deportation which the Congress may take into account in exercising its particularly broad discretion in immigration matters.

Marcello, 349 U.S. at 311.

Here, the Court has concluded that a parole hearing must occur before an impartial adjudicator. Memorandum and Order at 5. In light of Marcello, this conclusion is erroneous.

**e. Lawful permanent residents are not entitled to notice of the availability of parole**

The Court's Memorandum and Order requires that lawful permanent residents seeking admission must be given notice of the availability of parole. Memorandum and Order at 4. The court is mistaken for several reasons.

First, upon seeking admission, a lawful permanent resident is wholly subject to the procedures afforded in exclusion proceedings. Landon v. Plasencia, 459 U.S. 21, 25 (1982); Richardson, 1998 WL 889376 at *31 n.179. Moreover, an alien is entitled to no more protection than that afforded to citizens





ClibPDF - www.fastio.com

claiming liberty and property rights. The Supreme Court has recently determined that where a citizen seeks to protect a property right or liberty interest, due process does not require additional notice of available procedures where those procedures are established by published, generally available statutes. City of West Covina v. Perkins, --- U.S. ---, 1999 WL 9696 at *4-5 (U.S. January 13, 1999). "A primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful." City of West Covina, 1999 WL 9696 at *4. However, where the remedial procedures are available through a published statute, the alien "can turn to these public sources to learn about the remedial procedures available to him." Id. at *5. In the instant case, public sources are readily available indicating that parole may be sought. See, e.g., 8 U.S.C. § 212(d)(5)(A); 8 C.F.R. § 212.5(b) (1998). Accordingly, the Court's Memorandum and Order improperly imposes notice requirements beyond those required by due process, and it should be stayed pending appeal.

Based on the foregoing independent and adequate recitations of errors of law and fact, the defendants have clearly demonstrated a strong likelihood of success on the merits. Thus, they have met the first requirement of a stay request.

**5. The Court improperly curtails INS authority to provide, control, and confiscate green cards**

**a. The INS is authorized to confiscate green cards pursuant to its authority to implement and enforce the INA**

There is little doubt that the INS has the authority to



53

ClibPDF - www.fastio.com

confiscate green cards. The INS derives its authority to lift alien registration and provide alternate documentation to aliens from a number of sources. First, the Executive has vast powers over immigration matters. "It is an accepted maxim of international law that every sovereign nation has the power . . . to forbid the entrance of foreigners within its dominions, or to admit them in such cases and upon such conditions as it may see fit to prescribe." Nishimura Ekiu v. United States, 142 U.S. 651, 659 (1892). It is settled law that the government's power over immigration matters is plenary and that "it is not within the province of any Court, unless expressly authorized by law, to review the determination of the political branch of government." Kleindienst v. Mandel, 408 U.S. 753 (1972); Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206 (1953); Bertrand v. Sava, 684 F.2d 204 (2d Cir. 1982).

The second source of authority INS has over immigration matters stems from the power delegated to it by Congress, through statutes, such as the Immigration and Nationality Act (INA). Through the INA, Congress has conferred on INS broad authority over the control of aliens. Under the INA, the INS is given authority: to inspect aliens, 8 U.S.C. § 1225; parole aliens under such conditions as it may prescribe, 8 U.S.C. § 1182; interrogate, arrest and deport aliens in the United States in violation of law, 8 U.S.C. §§ 1357(a)(1), (a)(2) and 1252, respectively; control the unlawful employment of aliens, 8 U.S.C. § 1324a; register aliens, 8 U.S.C. § 1302; require documents for



54

ClibPDF - www.fastio.com

admission, 8 U.S.C. § 1181; restrict and prohibit certain acts regarding documentation, 8 U.S.C. § 1185; and issue and restrict visa and entry permits, 8 U.S.C. §§ 1201, et seq. These provisions reveal Congress' commitment to effective enforcement of the nation's immigration laws. Lopez v. United States, 758 F.2d 1390, 1392 (10th Cir. 1985). The government's power to lift green cards it has provided to aliens and to provide such aliens with alternate documentation can readily be inferred from these statutes. 8 U.S.C. §§ 1201, et seq.; cf. Lopez v. United States, 758 F.2d at 1392 (lifting State drivers' license of alien is lawful exercise of federal authority); Blackie's House of Beef, Inc. v. Castillo, 659 F.2d 1211, 1219 (D.C. Cir. 1981), cert. denied., 102 S.Ct 1432 (D.C. 1982) (inferring authority to search commercial establishments for illegal aliens). Such action is particularly appropriate here, given that the document being lifted has been provided to the alien by the government primarily so that the INS can register and thereafter be able to identify the alien. United States v. Campos-Serrano, 404 U.S. 293, 299-300 (1971).

Finally, a third source of authority can be derived directly from 8 U.S.C. § 1103. Congress' plenary power over immigration matters permits Congress "to make remarkably broad delegations of its authority in the immigration field." Jean v. Nelson, 727 F.2d 957, 964 (11th Cir. 1984) (en banc), aff'd 472 U.S. 846 (1985). The Attorney General has been broadly empowered, pursuant to 8 U.S.C. § 1103, to perform such "acts as she deems



55

ClibPDF - www.fastio.com

necessary for carrying out her authority under the provisions of the [Immigration and Nationality Act]." Pursuant to 8 C.F.R. § 100.2, the Attorney General in turn has delegated this power to the Commissioner of the INS, who has authorized, under limited circumstances, that the registration document of certain aliens be lifted and that they be provided with alternate documentation.

Indeed, the case relied upon by the Court and plaintiffs — Etuk v. Slattery, 936 F.2d 1433 (2d Cir. 1991) — places no limit on the authority of the INS to confiscate such documents. Indeed, the series of Etuk cases supports the proposition that the INS has full authority to confiscate green cards. In Etuk v. Blackman, 748 F.Supp. 990 (E.D.N.Y. 1990) (hereinafter, Etuk I), the district court enjoined the INS from confiscating green cards of aliens in deportation proceedings without the provision of adequate temporary replacements. Etuk I, 748 F.Supp. at 1001. Thus, the Etuk court clearly acknowledged that the INS has the right to lift the cards of lawful permanent residents, as long as adequate replacement documentation is provided. As the district court stated:

> The policy of confiscating green cards is rationally related to the INS's statutory mandate to enforce these laws. The card is a valuable aid to aliens who seek to evade enforcement of United States law and remain and work in this country. Possession of a green card with no expiry date, or a date far in the future, is a disincentive to comply with a deportation or exclusion order, or even to appear at deportation and exclusion proceedings, when an adverse decision and confiscation of the card is anticipated.

Etuk I, 748 F.Supp. at 1000. On appeal, the Second Circuit agreed with the district court on this point: "[W]e do not



56

ClibPDF - www.fastio.com

intend to undervalue the INS' legitimate concerns for ensuring the appearance at a deportation proceeding of those who have had deportation proceedings instituted against them." Etuk v. Slattery, 936 F.2d 1433, 1447 (2d Cir. 1991) ("Etuk II"). What the Court of Appeals stated that the INS could not do was to "revoke" or confiscate the green cards without providing any replacement documentation. Id. at 1447. The Court of Appeals did allow the INS to lift the green cards of lawful permanent residents in deportation proceedings as long as the replacement documentation was "subject to the same standards as [those applied to] lawful permanent residents who are seeking replacement documentation" (i.e., the same standards as applied to lawful permanent residents who had lost their green cards). Id. at 1447. The Second Circuit subsequently held that the arrival portion of the Form I-94 -- the substitute document provided to lawful permanent residents to demonstrate their lawful status -- was a valid temporary proof of status as a lawful permanent resident and of unrestricted work authorization. Etuk v. Slattery, 973 F.2d 60, 63 (2d Cir. 1992) (hereinafter, Etuk III). Thus, the actions of defendants which this Court has restricted -- i.e., lifting green cards and providing replacement documentation -- were in fact permitted by the very court upon whose authority this Court relies. Moreover, with the exception of two cases which were corrected immediately upon discovery, there is no evidence that the INS fails to provide adequate replacement documentation. Thus, any finding that the INS



51

ClibPDF - www.fastio.com

regularly has failed in such regard is without a factual basis.

**b. The Constitution affords plaintiffs no entitlement to their green cards**

To establish a constitutionally-protected interest, an individual must first establish an entitlement to the property at issue. Board of Regents v. Roth, 408 U.S. 564, 577 (1972); Dean Tarry Corp. v. Friedlander, 826 F.2d 210 (2d Cir. 1987). Plaintiffs have failed to establish, as is their burden, any constitutionally-protected interest in the registration card.

The green card is not a personal document which "belongs" to the alien. The United States Courts of Appeals for the First and Third Circuits have held that a foreign passport is not a personal document, and that the government can seize it at the border, without violating the Fifth Amendment to the United States Constitution. U.S. v. Anello, 765 F.2d 253, 260 (1st Cir. 1985); DaCruz v. Holland, 241 F.2d 118, 119 (3rd Cir. 1957). The Third Circuit has also found that confiscation of a non-immigrant visa without a prior hearing did not violate the alien's due process rights. David v. INS, 548 F.2d 219, 222 (8th Cir. 1977). The Tenth Circuit has held that the INS was not required to hold a due process hearing either before or after confiscating identification papers that could assist an alien in avoiding detection (a state driver's license). Lopez v. INS, 758 F.2d 1390, 1393 (10th Cir. 1985).

The Supreme Court has long recognized that there is a significant public interest in effective enforcement of the United States immigration laws and the control of aliens. See



ClibPDF - www.fastio.com

INS v. Miranda, 459 U.S. 14, 19 (1982); United States v. Brignoni-Ponce, 422 U.S. 873, 878-79 (1975). Lifting alien registration from certain aliens placed into immigration proceedings, and providing alternate documentation to them, represents a reasonable effort by the government to fulfill its obligation to protect the public at large, through effective enforcement of immigration laws. See United States v. Elder, 601 F. Supp. 1574 (S.D. Tex. 1985). The alien green card is a government document issued so that the United States can register and thereby identify aliens in the United States. 8 U.S.C. §§ 1301-1306. See United States v.Campos-Serrano, 404 U.S. 293, 299-300 (registration card is principally an identity document). Therefore, the card primarily benefits the United States, the identifier, rather than the alien, the person being identified. As plaintiffs have no entitlement to a green card in particular, the green card may be lifted by INS. Plaintiffs do not possess a constitutionally-protectable interest in it. See United States v. Anello, 765 F.2d at 260 (passport is not personal property of holder and government may seize it); David v. INS, 548 F.2d at 222 (no protected interest in immigration visa).

In fact, the United States Supreme Court has recognized that the Immigration and Naturalization Service has the authority to decide which documents may be used to facilitate entry at the border. The Supreme Court noted that, if the INS wished, it could even designate a document such as a driver's license to serve as evidence of lawful admission for permanent residence



59

ClibPDF - www.fastio.com

when presenting oneself for entry into the United States. United States v. Campos-Serrano, 404 U.S. at 299. The Supreme Court clearly recognized that the INS has the right to designate which documents aliens may possess and use to evidence their status, as long as their status is evidenced. It is clearly the status itself which is privileged, not the card which happens to have been designated by the INS at any given time for the lawful permanent resident to carry. Saxbe v. Bustos, 419 U.S. 65, 72 (1974). The alien registration receipt card's "essential purpose ... [is] to identify the bearer as a lawfully registered alien residing in the United States." Campos-Serrano, supra.

Thus, it is not the green card which gives the lawful permanent resident his status and the accompanying privileges which that status entails; rather, the INS grants the lawful permanent resident his status, and the green card merely serves as a document which identifies the lawful permanent resident as having that status. The lawful permanent resident has no right to the green card itself, as the law leaves the INS free to provide other documents which may serve in the green card's place. Accordingly, it was improper for the Court to order that the INS may only confiscate green cards on a case-by-case basis.

**c. The INS may make appropriate notations on any document evincing work authorization**

Plaintiffs have identified various notations which have been placed on the I-94's that have been issued, which they feel place a "cloud" over the lawful permanent resident's status, and which they allege interfere with the privileges that the lawful



60

ClibPDF - www.fastio.com

permanent resident's status provides. Complaint at 13. The Court's Memorandum and Order attempts to limit the authority of the INS to affix, or fail to affix, notations on replacement documents. Memorandum and Order at 3.

With respect to plaintiffs' complaints about the absence of an "employment authorized" notation or the presence of a "not valid for reentry" notation, only two such errors have been identified by Plaintiffs, and both were quickly corrected by the INS upon learning of the situation. (See Defendants' Statement of Uncontroverted Facts at 8-9.) Plaintiffs never claimed that these two short-lived errors in any way prejudiced their abilities to work or remain in this country. Clearly, aliens lawfully admitted for permanent residence retain their status and are authorized to be employed, reside in the United States, and make insignificant departures from the United States, so long as no administratively final order of deportation has been entered against them. Rivera v. INS, 810 F.2d 540, 542 (5th Cir. 1987); 8 U.S.C. § 1101(a)(20). Thus, plaintiffs have not identified an actual injury that requires redress.

This leaves the questions of whether defendants may place a time limitation on the I-94, and whether the I-94 may contain other notations which are factually correct, such as a reference to posting of a bond or to deportation proceedings.[1] While the Court sub silentio rejected plaintiffs' assertion that no time

---

1/ It should be noted that a green card itself contains all sorts of notations and codes on the back of it.



61

limit may be placed on a card, it did require that such cards be effective for no less than six months. However, the Court's sole basis for doing so was its reliance on the McNary memo. This imposition was improper because the McNary memo, much like the Operation Instructions, provides no enforceable right to aliens. Dong Sik Kwon v. INS, 646 F.2d 909, 918 (5th Cir. 1981) (unlike regulations, operation instructions do not have the force of law). Thus, the Court should not have set a minimum time period, particularly where it is possible for an alien's case to be decided in less than six months.

As for the notations concerning posting of bond and codes regarding deportation proceedings, such notations are correct as a matter of fact and thus do not constitute misleading information. In order to support a due process claim, an alien must demonstrate substantial prejudice. Patel v. INS, 803 F.2d 804, 807 (5th Cir. 1986). Truthful notations also do not interfere with the ability of plaintiffs to obtain employment. In fact, none of the named plaintiffs have shown that the I-94's caused them any difficulties in obtaining or keeping employment. Such notations are of little consequence and do not interfere with the lawful permanent resident's ability to work and reside in the United States. Indeed, such notations even exist on green cards.

Plaintiffs' claim that such factually correct notations interfere with their privilege to obtain employment is frivolous because there is no substantial prejudice. Patel, 803 F.2d at



62

ClibPDF - www.fastio.com

807. Temporary, as well as permanent, documents may be used as proof of employment authorization. 8 U.S.C. § 1324a(b)(1)(B)(v); 8 C.F.R. § 274a.2(b)(1)(v)(A)(4), (5) and (v)(C)(7). Moreover, pursuant to 8 U.S.C. § 1324a(b)(1)(C) and 8 C.F.R. § 274a.2(b)(1)(v)(C), plaintiffs may establish employment eligibility through documentation other than that provided by INS, such as a social security card. Pursuant to 8 U.S.C. § 1324a(b)(1)(A) and 8 C.F.R. § 274a.2(b)(1)(v), an employer must accept said documentation and cannot specify which of the documents listed as acceptable by statute and regulation must be presented. It is unlawful for an employer to require a particular type of document to establish an individual's employment eligibility, 8 U.S.C. § 1324a(b)(1)(A); 8 C.F.R. § 274a.2(b)(1)(v). Such conduct is actionable under the anti-discrimination provisions of the Immigration Reform and Control Act ("IRCA"). 8 U.S.C. § 1324b. Moreover, the Social Security Administration will accept a Temporary I-551 in a passport or a Form I-94 as evidence to establish a resident alien's employment eligibility and will issue the individual a Social Security number and card. See 20 C.F.R. § 422.107(e). Accordingly, it is entirely within the power of the lawful permanent resident to obtain a proof of work authorization without any "cloud" he perceives on his temporary form. Indeed, plaintiffs assert that they have been living and working in the United States for many years. As such, they should have Social Security cards and can use these cards to establish employment eligibility. Because no





ClibPDF - www.fastio.com

substantial prejudice could reasonably be established where the alien has it in his power to avoid any "cloud," it is error for this Court to find a due process violation. Patel, 803 F.2d at 807. Accordingly, it was improper for the Court to limit the notations placed on a green card or substitute document.

**B. The Balance Of Equities Sharply Favors The Defendants**

Where movants, as in this case, clearly show that they will prevail on the merits, the hardships need not weigh in their favor. Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir. 1981) (per curiam), cert. denied, 460 U.S. 1042 (1983). Nevertheless, the equities clearly favor defendants.

The Court ordered the defendants to provide every lawful permanent resident class member in removal proceedings with a parole hearing before an immigration judge, contrary to the procedure established by regulation, where the district director has been delegated the authority for deciding applications for parole, 8 C.F.R. § 103.1(g)(2)(ii)(B), but the immigration judges lack such authority. 8 C.F.R. § 3.19. The Supreme Court has recognized that the government's interest in supervising the immigration process is "weighty" and largely entrusted to the sovereign prerogative of the political branches. Landon v. Plasencia, 459 U.S. at 34 (involving a lawful permanent resident in exclusion proceedings). The Supreme Court stated that the courts are not free to simply impose new procedures on the government. Id. The imposition of new procedures is especially burdensome in this case, where border traffic is especially high



64

ClibPDF - www.fastio.com

and where no procedures are in place for conducting such a hearing.

Plaintiffs, on the other hand, face little likelihood of harm. The Court's Memorandum and Order only directs defendants to afford each arriving lawful permanent resident alien an individualized hearing to determine if he will be paroled. The alien, however, is by no means assured of securing release. Moreover, plaintiffs are fully capable of obtaining employment based on either permanent or temporary authorization.

The public interest will be served by granting a stay because the government will not be required to employ superfluous procedures which presently lack any meaningful guidelines as a result of a decision which directly impacts on the administration of the immigration laws. An immigration judge's decision with regard to parole would occur absent any guidelines for what standards should be applied to obtain parole, who may seek an appeal, what procedure is available for parole, etc. The absence of any such guidelines -- particularly with respect to the criteria for the release of an alien -- poses the danger that the public safety may be jeopardized by an improvident release. The public interest lies in the orderly execution of the immigration laws. The public has a weighty interest in not burdening an already taxed immigration court system with yet more procedural requirements -- when aliens' right or interests may be adequately met with existing procedures.

///



65

ClibPDF - www.fastio.com

**CONCLUSION**

The Court should grant defendants' motion to stay pending appeal the district court's judgment of January 13, 1999, entered in favor of plaintiffs in accordance with the Memorandum and Order entered on November 25, 1998.

Respectfully submitted,

FRANK HUNGER
Assistant Attorney General
Civil Division

DAVID V. BERNAL
Assistant Director

For: ERNESTO H. MOLINA, JR., AUSA, w/permission
REGINA BYRD
Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
Post Office Box 878
Ben Franklin Station
Washington, D.C. 20044
(202) 616-9344

Dated: January 25, 1999

ATTORNEYS FOR RESPONDENT



66

ClibPDF - www.fastio.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 1999, one copy of Defendants' Motion For Stay Of The Court's Judgment Pending Appeal was served on plaintiffs by depositing it in the Department of Justice Mail Room for same-day deliver addressed as follows:

Lisa S. Brodyaga
402 E. Harrison, 2nd Floor
Harlingen, TX 78550

For: ERNESTO H. MOLINA, JR., AUSA, w/permission
Attorney
Civil Division
Office of Immigration Litigation
United States Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
(202) 616-9344

67

ClibPDF - www.fastio.com