114

United States District Court
Southern District of Texas
RECEIVED
MAR 0 5 1999
Michael N. Milby, Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al, )
)
v. ) C.A. No. B-94-215
)
TROMINSKI, et al. )
_____)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR STAY OF
THE COURT'S JUDGMENT PENDING APPEAL

Come Plaintiffs, through the undersigned, and respectfully file the instant opposition to Defendants' Motion For Stay of the Court's Judgment Pending Appeal, (herein cited as (INS:___)).

There are two short answers to INS' motion. First, the arguments raised therein do not differ significantly from those which have already been considered, and rejected, by this Court. Second, the claim that 8 USC §1252(g) deprives this Court of jurisdiction has been definitively settled by the Supreme Court in its recent decision in *Reno v. American-Arab Anti-Discrimination Committee*, 1999 WL 88922, *7 (U.S. February 24, 1999) (8 U.S. §1252(g) is to be narrowly construed, and restricts jurisdiction only over the specific acts enumerated therein, to wit, to commence proceedings, adjudicate cases, or execute removal orders) (hereinafter, "AADC").

I. THIS COURT'S JURISDICTION IS NOT AFFECTED BY 8 USC §1252(g)

First, it would appear from INS' characterization of "The Complaint," (INS:2-4), that Plaintiffs had not challenged INS' practice of "summarily excluding" some lawful permanent residents while their administrative cases were being adjudicated. In fact, this claim is at the heart of Plaintiffs' second amended complaint. As explained in the Prayer For Relief, at page 18:

> Plaintiffs also request both preliminary and permanent injunctive relief, enjoining and restraining Defendants from taking any actions that would interfere with the right of a lawful permanent resident of the United States to live and work in this country, including, but not limited to, failing to parole a lawful permanent resident placed in exclusion proceedings into the United States during the pendency of such proceedings, and failing to re-parole such a person back into the United States following a brief, casual, and innocent departure.

Neither this aspect, nor any other aspect of the instant action is barred by 8 USC §1252(g). *See*, (INS:9-14). In AADC, the Court unequivocally held that 8 §1252(g) does not apply to cases such as the one at bar, *supra* at *7 (emphasis added):

> That belief,[1] however, rests on the unexamined assumption that § 1252(g) covers the universe of deportation claims--that it is a sort of "zipper" clause that says "no judicial review in deportation cases unless this section provides judicial review." In fact, what § 1252(g) says is much narrower. *The provision applies only to three discrete actions that the Attorney General may take: her "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders."* (Emphasis added.) There are of course many other decisions or actions that may be part of the deportation process--such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order.
>
> It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.

All the actions challenged herein, to wit, the arbitrary lifting of

---

[1] To wit, the belief that §1252(g) bars jurisdiction in all cases relating to immigration expulsion proceedings.

green cards, placing extraneous notations on substitute documents, confiscating other lawfully issued documents which are not in good faith considered to be *bona fide* evidence of unlawful activity, and the "summary exclusion" of lawful permanent residents seeking re-admission to the U.S., while their administrative cases are pending, are clearly within the type of actions that the Court held to be permissible. INS' jurisdictional arguments therefore fail.

II. NOR DOES 8 USC §1226(e) DEPRIVE THE COURT OF JURISDICTION

INS also claims that 8 USC §1226(e) bars this Court from finding that Plaintiffs' Due Process rights are violated where a lawful permanent resident is returned to Mexico pending exclusion or removal proceedings, without a hearing, and without even being advised of the right to request parole, particularly since this tends to occur more frequently in cases where the infraction is minor, such as attempting to unlawfully bring a relative into the United States.[2] In support of this claim, INS cites *Richardson v. Reno*, 162 F.3d 1338 (11th Cir. 1998).

Ironically, *Richardson* involved the inverse problem, to wit, persons who *were* paroled into the United States, detained under 8 USC §1226, and held without bond. It is not the amount of bond, or even whether bond should be available, which is at issue herein. In fact, by definition, the persons involved in *Richardson* were arrested and detained on a warrant issued by the Attorney General, under 8 USC §1226(a). Those affected by this Court's ruling are those currently processed under 8 USC §1225(2)(C), which purports to give a statutory basis to the practice of the Attorney General

---

[2] For example, Plaintiffs Ascencio and Merino attempted to bring in a sick nephew for medical treatment. Plaintiff Guttierez was attempting to bring in her sister, to protect her from an abusive husband. All were returned to Mexico without a hearing on the question of parole, or even an advisal that it existed.

3

of returning certain aliens arriving by land from a contiguous foreign country to that country, pending administrative proceedings. It is the application of this procedure to lawful permanent residents that Plaintiffs challenge, under cases such as *Landon v. Plasencia,* 459 U.S. 21 (1982) (lawful permanent residents have enhanced constitutional status), and *Zinermon v. Burch*, 110 S.Ct. 975, 984 (1990):

> Due process, as this Court often has said, is a flexible concept that varies with the particular situation. To determine what procedural protections the Constitution requires in a particular case, we weigh several factors:
>
> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).
>
> Applying this test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property. See, e.g., Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (" '[T]he root requirement' of the Due Process Clause" is " 'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest' "; hearing required before termination of employment (emphasis in original)); Parham v. J.R., 442 U.S. 584, 606-607, 99 S.Ct. 2493, 2506, 61 L.Ed.2d 101 (1979) (determination by neutral physician whether statutory admission standard is met required before confinement of child in mental hospital); Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 18, 98 S.Ct. 1554, 1564, 56 L.Ed.2d 30 (1978) (hearing required before cutting off utility service); Goss v. Lopez, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975) (at minimum, due process requires "some kind of notice and ... some kind of hearing" (emphasis in

original); informal hearing required before suspension of students from [494 U.S. 128] public school); *Wolff v. McDonnell*, 418 U.S. 539, 557-558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (hearing required before forfeiture of prisoner's good-time credits); *Fuentes v. Shevin*, 407 U.S. 67, 80-84, 92 S.Ct. 1983, 1994-96, 32 L.Ed.2d 556 (1972) (hearing required before issuance of writ allowing repossession of property); *Goldberg v. Kelly*, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970) (hearing required before termination of welfare benefit.

The interest of a lawful permanent resident to be able to reside and work in the United States can hardly be overstated. *Landon v. Plasencia, supra*. That the risk of erroneous adjudication is high, indeed, is shown by the fact that all of the named Plaintiffs herein who were under exclusion proceedings have won their cases, and been admitted as returning lawful permanent residents to the U.S.. The value to the lawful permanent resident of having a hearing before an Immigration Judge would be great, and the burden to the INS of providing hearings for such persons is slight. It is therefore respectfully submitted that INS' chances of winning on this issue as well are slight.

### III. THE COURT'S FACTUAL FINDINGS ARE AMPLY SUPPORTED BY THE RECORD AS A WHOLE.

INS' attack on the factual findings of the Court is also without merit. The prior ruling of the Court was not that the facts were not germane to this case, but rather, that there was no substantial dispute with respect thereto.[3] In fact, it is difficult to imagine *any* case where the facts are not relevant. There exists no "law of the case" to that effect herein, nor has INS presented a transcript to back up its assertions on this point. Contrary to Defendants' assertion, (INS:18), although defendants never

---

[3] This is amply shown by the fact that both sides submitted proposed factual findings as to which no material dispute existed.

5

11

requested discovery, discovery was conducted, and there were even discovery disputes, regarding Plaintiffs' Requests for Admission. Plaintiffs submitted extensive documentation in support of their motion for summary judgment, none of which was rebutted by INS. Defendants also submitted evidence, including the McNary Memo, which forms the basis of a large part of the Court's Order. [4]

The record does contain evidence, from the administrative cases of the named Plaintiffs, of the fact that administrative proceedings may last for many years, and of the delay between the time when an LPR is turned away at the border, to the issuance of the decision of the Immigration Judge. INS made no claim that the cases of the named Plaintiffs were not typical of the class. Indeed, INS never filed any opposition to Plaintiffs' motion for class certification.

Far from being "clearly erroneous," the Court's findings in this regard are amply supported by the record herein.

IV. THE CLASS CERTIFICATION ORDER WAS APPROPRIATELY MODIFIED

INS also objects to the modification of the class certification order, even though such modification is expressly permitted by F.R.Civ.Proc. Rule 23(c)(1). INS complains that it occurred with no opportunity to brief the differences between the new and old proceedings. Yet both sides presented evidence and argument to the Court regarding the new procedures brought about by the 1996 amendments to the Immigration and Nationality Act. Nor has INS identified any difference between the procedures which would be pertinent to whether a class member should be summarily excluded from the United States while administrative proceedings are pending. In fact, there is none, and the amendment was more nearly

---

[4] Ironically, although Defendants submitted the McNary memo to the Court, they now claim that Plaintiffs have no right to complain about their failure to abide by its terms, and that the Court has no power to insist that they abide by them. (INS:38).

technical than substantive.

V. INS' CLAIM THAT THE COURT'S ASSERTION OF JURISDICTION OVER DUE PROCESS VIOLATIONS REGARDING LAWFUL PERMANENT RESIDENTS CONTRAVENES THE DOCTRINE OF "SEPARATION OF POWERS" IS VACUOUS.

In order to conclude that INS is grasping at straws in asserting that the Court has violated the doctrine of "separation of powers," or otherwise erred, in asserting jurisdiction over, and devising remedies to correct, Due Process violations affecting lawful permanent residents seeking re-admission to the United States, one need look no further than *Landon v. Plasencia, supra,* wherein the Supreme Court held that such persons are entitled to Due Process. *Marcello v. Bonds*, 349 U.S. 302 (1955) does not hold to the contrary. The language quoted by INS, (INS:28) from that case related to the claim that a hearing officer under the control of INS was inherently biased. Here, *no* hearing is provided.

Nor does *Landon v. Plasencia, supra,* hold that a "lawful permanent resident is wholly subject to the procedures afforded in exclusion proceedings." (INS:28). To the contrary, that case was *remanded* by the Supreme Court to determine whether the procedures afforded in the exclusion hearing complied with Due Process. 459 U.S. at 37.

VI. INS' "RIGHT" TO CONTROL GREEN CARDS DOES NOT EXTEND TO AN ACTION WHICH INTERFERES WITH THE RIGHT OF A LAWFUL PERMANENT RESIDENT TO ENJOY HIS OR HER STATUS AS SUCH IN THE UNITED STATES.

INS appears to be stuck in its belief that its power over aliens, including lawful permanent residents, is "plenary," (INS:29-36), and that nothing it does to such residents can form the basis of a complaint. First, Plaintiffs are not contesting the right of INS to confiscate green cards. Rather, they urge that this may not be done in an arbitrary and capricious manner, nor in a way which interferes with the enjoyment of the resident's status. *Etuk v.*

*Slattery*, 936 F.2d 1433 (2nd Cir. 1991); *Molina v. Sewell,* 983 F.2d 676, 680 (5th Cir. 1993) (fact that lawful permanent resident is under deportation proceedings does not alter his status.)

VI. INS ALL BUT ADMITS THAT THE COURT'S ORDER DOES NOT IMPOSE ANY HARDSHIP ON DEFENDANTS.

Finally, INS argues that the "balance of equities" lies in their favor, and that since they have "clearly" shown that they will prevail on the merits, "the hardships need not weigh in their favor." (INS:40). First, it is untrue that the equities favor Defendants, and, as shown above, it is highly doubtful that they will prevail on the merits.

INS also mischaracterizes the Court's ruling, claiming that it orders the Court to "provide every lawful permanent resident class member in removal proceedings with a parole hearing before an immigration judge." (INS:40). This is incorrect. The parole hearing only applies to those class members who are arriving aliens, and whom INS opts to return to Mexico to await exclusion or removal proceedings. This is a very small group. [5]

And INS' claim that Plaintiffs "face little likelihood of harm" is belied by the record herein. A lawful permanent resident whose driver's license and social security card have been confiscated, for no valid reason, faces great harm. A lawful permanent resident exiled to Mexico for the duration of administrative proceedings, which may last for years, with no right to a hearing as to whether he or she should be paroled into the United States during that

---

[5] The Immigration Court schedules hearings at the bridge in Brownsville only one day a month. These hearings are not only for lawful permanent residents who were returned to Mexico to await hearings, but also for others who are seeking to enter, and whose right to do so was challenged. Consequently, the number of persons affected by the Court's ruling cannot be very large.

8

14

period faces extreme harm. Residents who have trouble obtaining jobs because employers are suspicious of cardboard cards which will expire in the near future, and have notations about deportation or other types of hearings, also face great harm. INS' crocodile tears about the Court's supposed interference with its unfettered right to do what it will to lawful permanent residents do not outweigh these obvious harms.

It is therefore urged that INS' motion for a stay be denied.

Respectfully Submitted,



Lisa S. Brodyaga, Attorney at Law
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(956) 421-3226


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served, first class postage prepaid, on Ernesto Molina, Attorney, OIL, Box 878, Ben Franklin Sta., Washington, D.C. 20044, on March 5, 1999.

9

15