permanent resident status until ordered excluded. Such evidence shall be in the form of a temporary Form I-551 issued for a period sufficient to accomplish the exclusion proceedings. A person in deportation proceedings shall be entitled to evidence of permanent resident status until ordered deported or excluded. Issuance of an Permanent Resident Card to a person in exclusion or deportation proceedings, provided the person had status as a lawful permanent resident when the proceeding commenced, shall not affect those proceedings.

Because the district court erred to the extent that its order relied on the McNary Memorandum, we vacate the order and remand so the court can determine whether an injunction is appropriate in light of § 264.5(g). In doing so, we make a number of observations regarding the scope and meaning of that regulation.

Section 264.5(g) requires that the INS issue the temporary Form I-551 to persons in exclusion proceedings.[10] By contrast, the regulation does not specify the form of documentation with respect to those in deportation proceedings.

In addition, § 264.5(g) requires only that the INS provide documentary evidence of LPR status. The regulation plainly does *not* restrict the INS from attaching *additional notations* to caution employers that a potential worker, although an LPR and therefore *currently* authorized to work in the United States, is also facing pending deportation proceedings and thus may not be available for an extended period of employment.

The Attorney General is free to issue new regulations and amend the requirements of § 264.5(g) (provided, of course, that the requisite procedure is followed). Absent any legal authority to the contrary, however, the district court may not interfere with the Attorney General's statutory discretion to balance an LPR's interest in possessing particular forms of documentation against an employer's interest in knowing a potential employee's present and future immigration status.

III.

The government also challenges the portion of the order respecting the Attorney General's discretion to grant parole within the United States. The Attorney General is vested with broad powers over the custody of all aliens (including LPR's) against whom deportation or exclusion proceedings are pending.[11] "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Where such an alien "is arriving on land (whether or not at a

---

[10] We reject the government's contention that the requirement of evidence "*in the form of* a temporary Form I-551" is satisfied by the issuance of any form that is similar to a Form I-551, for that is not the most reasonable construction of the regulation. Instead, under the plain meaning of § 264.5(g), the INS must issue the temporary Form I-551 to persons in exclusion proceedings; substitute forms are not sufficient.

[11] An "alien" is "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). The term thus includes LPR's. *See also* 8 U.S.C. § 1101(a)(20) ("The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed.").

designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(C).

Alternatively, instead of paroling the individual out of the United States,

> [o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [P]ending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole.

8 U.S.C. § 1226(a).[12]

---

[12] *See also* 8 U.S.C. § 1182(d)(5)(A) ("The Attorney General may ... in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any (continued...)

The plaintiffs argue that, pursuant to *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), due process requires the INS to provide an LPR with notice of his right to parole within the United States[13] and with a parole hearing before the Attorney General decides how to exercise her discretion. Congress, however, has denied the district court jurisdiction to adjudicate deprivations of the plaintiffs' statutory and constitutional rights to parole.[14]

The plaintiffs respond that the Attorney General's parole authority at issue in this case is found not in 8 U.S.C. § 1226, but instead in 8 U.S.C. § 1225(b)(2)(C). Therefore, they ar-

---

[12](...continued) other applicant for admission to the United States."); 8 C.F.R. § 212.5; 8 C.F.R. § 235.3(c)-(d).

[13] *But see City of West Covina v. Perkins*, 525 U.S. 234, 240-41 (1999) ("A primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful .... No similar rationale justifies requiring individualized notice of state-law remedies which ... are established by published, generally available state statutes and case law. Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The City need not take other steps to inform him of his options.").

[14] *See Lopez-Elias v. Reno*, 209 F.3d 788, 793 (5th Cir. 2000) ("Federal courts derive their power to adjudicate from Congress, and not from the Constitution alone."), *petition for cert. filed*, 69 U.S.L.W. 3128 (July 28, 2000) (No. 00-164); 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.").

7

gue, the bar on judicial review contained in § 1226(e), which applies only to "this section," does not bar this suit. But § 1225(b)(2)(C) only authorizes the Attorney General to return an applicant for admission to Mexico pending the exclusion proceedings. It is § 1226(a), by contrast, that authorizes her to grant parole within the United States to an LPR subject to removal proceedings.

In sum, "[t]he Attorney General's discretionary judgment regarding the application of" parole—including the *manner* in which that discretionary judgment is exercised, and whether the procedural apparatus supplied satisfies regulatory, statutory, and constitutional constraints—is "not . . . subject to review." § 1226(e). Without reaching the merits of the plaintiffs' constitutional claims, we therefore vacate those portions of the order that require the INS to hold parole hearings. In doing so, we note that the executive branch, of course, has an independent duty to uphold the Constitution, irrespective of whether its actions are subject to judicial review.[15]

IV.

Before the subject order was entered, the district court granted preliminary relief to Jesus Garza-Pacheco. On appeal, the government asserts that the court had no authority to grant any relief whatsoever to him, because he is neither a named plaintiff nor a member of the plaintiff class.

We quickly dispense with the plaintiffs' assertion that this court has no appellate jurisdiction to review the Garza-Pacheco order. Appellants have the "choice of appealing from [a preliminary] order within fifteen days or of awaiting a final decree, for all interlocutory orders are reviewable on appeal from the final decree." *Gloria Steamship Co. v. Smith*, 376 F.2d 46, 47 (5th Cir. 1967) (citations omitted). And although the government's notice of appeal designates only the January 13, 1999, order, a "notice of appeal to this Court from the final decree of the District Court invoked the jurisdiction of this Court to examine the interlocutory order as well as the final decree." *Id.*

We also agree with the government's argument on the merits. The plaintiff class is restricted to LPR's "who are under deportation or exclusion proceedings, in whose cases no final order of deportation or exclusion has been entered." Garza-Pacheco therefore was not a valid member of the class, because a final order of deportation has been executed against him. "In the complaint the title of the action shall include the names of all the parties." FED. R. CIV. P. 10(a). Failure to name a party denies a court jurisdiction over that party.[16]

We therefore VACATE the final order of January 13, 1999, and the preliminary order regarding Garza-Pacheco, and we REMAND for any further necessary proceedings.

---

[15] *See* U.S. CONST. art. VI, cl. 3 ("all executive . . . Officers . . . shall be bound by Oath or Affirmation, to support this Constitution"); David P. Currie, THE CONSTITUTION IN CONGRESS: THE FEDERALIST PERIOD 1789-1801 at ix-x (Chicago 1997) ("Members of Congress and executive officers, no less than judges, swear to uphold the Constitution, and they interpret it every day in making and applying the law. . . . [B]oth Congress and the Executive have a great deal to tell us about the Constitution.").

[16] *See National Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989) (holding that "the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them").

8

DENNIS, Circuit Judge, concurring in part and dissenting in part.

I concur in vacating the final order of January 13, 1999 and the preliminary order regarding Garza-Pacheco, and I agree in part with the reasoning of the majority opinion. I disagree, however, with part of the reasons assigned by the majority and with the limits it imposes upon further proceedings in the district court.

I concur in the following parts of the majority opinion: (1) Part I holding that the plaintiffs have standing; (2) Part II insofar as it recognizes that LPRs are authorized to seek employment and work in the United States; that a person's LPR status, including its attendant benefits such as the right to work and to have documentation certifying that right and the right to be in the United States, does not terminate until an order of deportation is affirmed by the Board of Immigration Appeals (BIA) or otherwise becomes administratively final; and that the district court erroneously relied upon the McNary Memorandum as establishing judicially enforceable rights; and (3) Part IV with respect to this court's appellate jurisdiction to review the Garza-Pacheco order.

I respectfully disagree with the majority opinion in the limits it places on the remand instructions and in the following respects:

1.

An alien who is a lawful permanent resident of the United States, and remains physically present here, is a person within the protection of the Fifth Amendment who may not be deprived of his life, liberty, or property without due process of law. <u>United States v. Verdugo-Urquidez</u>, 494 U.S. 259, 271 (1990); <u>Landon v. Plasencia</u>, 459 U.S. 21, 32-34 (1982); <u>Kwong Hai Chew v. Colding</u>, 344 U.S. 590, 596 (1953); <u>Wong Wing v. United States</u>, 163 U.S. 228, 238 (1896). Accordingly, he may not be deported without notice, a hearing, and an opportunity to be heard, before such determination is made. <u>Chew</u>, 344 U.S. at 597-98. Likewise, because LPRs in exclusion proceedings must also be accorded procedural due process, <u>Landon</u>, 459 U.S. 33-37, the same constitutional protections extend to resident aliens seeking reentry after a brief trip abroad not meaningfully interruptive of the alien's continued United States residence. <u>Zadvydas v. Underdown</u>, 185 F.3d 279, 295 & n.17 (5th Cir. 1999) (citing <u>Landon</u>, 459 U.S. at 32-24); see also <u>Verdugo-Urquidez</u>, 494 U.S. 259, 271 (1990)(citing cases recognizing various constitutional rights of resident aliens: e.g., <u>Bridges v. Wixon</u>, 326 U.S. 135, 148 (1945)(resident aliens have First Amendment rights); <u>Wong Wing</u>, 163 U.S. at 238 (resident aliens entitled to Fifth and Sixth Amendment rights); <u>Yick Wo v. Hopkins</u>, 118 U.S. 356, 369 (1886)(Fourteenth Amendment protects resident aliens)). Although an LPR may later be found excludable or deportable, he is,

2

ClibPDF - www.fastio.com

nonetheless, entitled to due process before such determination is made. Chew, 344 U.S. at 597-98. "Although Congress may prescribe conditions for his expulsion and deportation, not even Congress may expel him without notice and a fair opportunity to be heard." Id.

Consequently, an alien's LPR status includes elements of liberty and property rights of which he cannot be deprived without due process of law. For example, the right to seek and engage in employment, to travel, and to qualify for other benefits and entitlements are attributes or inherent characteristics of LPR status. Therefore, the government cannot deprive an LPR of these rights or entitlements or significantly damage them without first affording the LPR due process of law guaranteed by the Fifth Amendment. For instance, the INS and other government agents may not, without affording an LPR such due process of law, (1) confiscate his green card without providing him a reasonably adequate substitute document that will afford him equal access to all attributes of LPR status or (2) deny an LPR readmission. Of course, an LPR can be investigated, arrested, or prosecuted for a crime just as any other alien or citizen. But an LPR cannot be deprived of any of the attendant rights of his status without due process of law, because the Due Process clause of Fifth Amendment does not acknowledge any distinction between citizens and resident aliens. See Galvan v. Press, 347 U.S. 522 (1954) ("[Because] an

3

alien who legally became part of the American community ... is a 'person,' [he] has the same protection for his life, liberty and property under the Due Process Clause as is afforded to a citizen."); Bridges, 326 U.S. at 161 (Murphy, J., concurring) ("None of these provisions acknowledges any distinction between citizens and resident aliens.").

2.

Accordingly, I do not agree that an LPR's right to adequate documentation to verify his right to work and remain in the country is totally within the express discretion of the Attorney General. Although the Attorney General may prescribe reasonable regulations for administrative purposes, not even the Attorney General may deprive an LPR of his rights or entitlements protected by the Fifth Amendment without affording him due process. Similarly, although the INS may enjoy some discretion in providing documentary evidence of LPR status, it may not do so in a way that deprives or damages an LPR's status and its attendant rights and entitlements without complying with the requirements of the Fifth Amendment. Thus, although the courts may not have jurisdiction to review the exercise of discretion in matters of parole and documentation by the Attorney General or the INS, the courts most assuredly do have the power and duty to hear cases under the Constitution involving the alleged deprivation of life, liberty, or property of a resident

4

alien without due process of law. See, e.g., Johnson v. Robison, 415 U.S. 361, 374 (1974) (holding that provisions of the Veterans' Readjustment Act, while precluding judicial review of administrative decisions, did "not extend the prohibitions of that section to actions challenging the constitutionality of laws"); Parra v. Perryman, 172 F.3d 954, 957 (7th Cir. 1999) (recognizing that although a court may not be able to review a decision implementing 1226, 1226(e) does *not* purport to foreclose challenges" to 1226 itself"). Moreover, I do not read any of the statutes or regulations as being in conflict with these constitutional principles. Consequently, I would remand the case for further proceedings in accordance with the requirements of the Fifth Amendment, applying the laws and regulations consistently with the constitutional framework.

3.

Finally, I dissent from the limitations that the majority places upon further proceedings and relief with respect to Garza-Pacheco. From the available information, it is unclear that Garza-Pacheco should be excluded from the class. The Appellants contend that Garza-Pacheco's case is not sufficiently related for him to be a member of the class because Garza-Pacheco was not an LPR at the time the District Court granted him preliminary relief.

But, it is not clear that he was given notice and an

5

opportunity to be heard before his green card was confiscated and before he was initially ordered deported or that his second deportation was administratively final at the time the district court granted him preliminary relief.  Consequently, Garza-Pacheco's case should be remanded to the district court for further proceedings and resolution of these issues.

Accordingly, I would vacate the district court's orders and remand the case for further proceedings consistent with the foregoing reasons.

6