United States District Court
Southern District of Texas
FILED

JUL 23 2001

Michael N. Milby, Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

```
ASCENCIO-GUZMAN et al,      )
                            )
v.                          )    C.A. No.  B-94-215
                            )
TROMINSKI, et al.           )
_____)
```

PLAINTIFFS' POST-REMAND STATEMENT OF OUTSTANDING ISSUES,

Come Plaintiffs, by and through the undersigned, and, following discussions with counsel for Respondents wherein agreement was not reached with respect to what issues, if any, remain open, respectfully submit the instant post-remand memorandum, setting forth, in summary form, Plaintiffs' understanding of outstanding issues, both as left open by the Fifth Circuit, and as affected by recent Supreme Court cases, specifically, *INS v. St. Cyr,* 121 S.Ct. 2271 (2001), and *Calcano v. INS,* 121 S.Ct. 2268 (2001).

I. THE FIFTH CIRCUIT'S DECISION DOES NOT AFFECT THIS COURT'S RULING WITH RESPECT TO LIMITING THE CONFISCATION OF DOCUMENTS OTHER THAN "GREEN CARDS" FROM LPRs PLACED UNDER PROCEEDINGS, NOR DID THE COURT DISTURB THE SCOPE OF THE CLASS CERTIFIED HEREIN.

As this Honorable Court is aware the Fifth Circuit vacated its prior decision in the case at bar, and remanded for further proceedings, with certain guiding principles, and limitations.

First, Plaintiffs would note that two key aspects of this Court's ruling were not disturbed on appeal. The Court did not reverse this Court's Order granting class action status, or the definition of the class. Nor did the Court reverse this Court's Order, insofar as it precludes Respondents from confiscating documents which were lawfully issued to class members, absent a good faith belief that they constitute bona fide evidence of unlawful conduct. These are important victories.



Moreover, Plaintiffs will show that there is much less to the Fifth Circuit's ruling than meets the eye with respect to the other two issues in controversy: to wit, whether this Court has jurisdiction over the manner in which the parole authority is exercised with respect to LPRs seeking admission at a port of entry, and the form of substitute documentation given when INS does confiscate I-551s.

II. PLAINTIFFS WILL SHOW THAT THIS COURT HAS JURISDICTION TO HEAR THEIR CHALLENGES TO THE MANNER IN WHICH THE PAROLE AUTHORITY IS EXERCISED WITH RESPECT TO LPRs SEEKING ADMISSION, BOTH BECAUSE SUCH PERSONS ARE NOT ARRESTED ON A WARRANT PRIOR TO BEING RETURNED TO MEXICO TO AWAIT THEIR HEARINGS, AND, IN THE ALTERNATIVE, BECAUSE THE SUPREME COURT HAS JUST RE-AFFIRMED THIS COURT'S JURISDICTION IN HABEAS CORPUS UNDER 28 U.S.C. §2241.

In its opinion herein, the Fifth Court held, *inter alia,* that 8 U.S.C. §1226(e) deprived this Court of jurisdiction over the manner in which the Attorney General's parole authority is exercised **with respect to aliens who are arrested "[o]n a warrant issued by the Attorney General."** In discussing the parole authority, the Court referred to the Attorney General's powers under 8 U.S.C. §1226(a), which the Court quoted as follows (Decision at 7) (emphasis added):

> Alternatively, instead of paroling the individual out of the United States,
>
> > **[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the Untied States** ... [P]ending such decision, the Attorney General - -
>
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on -
>     (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>     (B) conditional parole.

2

ClibPDF - www.fastio.com

For purposes of this action, where an LPR is arrested "[o]n a warrant issued by the Attorney General," Plaintiffs do not contest the authority of the Attorney General under §1226(a) to " ... detain the arrested alien; and .. release the alien on ... bond ... or conditional parole." Rather, Plaintiffs will show that this authority is irrelevant to the case at bar, in that arriving lawful permanent residents ("LPRs") who are returned to Mexico under 8 U.S.C. §1225(b)(2)(C) are **not** arrested "[o]n a warrant issued by the Attorney General..," a precondition to exercising this authority. Plaintiffs would further show that the authority to parole LPRs who are seeking admission at a port of entry is found in 8 U.S.C. §1182(d)(5), not §1226(a). [1] Therefore, the jurisdictional limitations of 8 U.S.C. §1226(e) are inapposite.

In the alternative, this Court asserted jurisdiction under, *inter alia*, 28 U.S.C. §2241, to hear Plaintiffs' challenge to the manner in which LPRs seeking admission are returned to Mexico to await a hearing, under 8 U.S.C. §1225(b)(2)(C), without advising them of the possibility of being paroled into the U.S., pursuant to 8 U.S.C. §1182(d)(5)(A), during the often prolonged period that their cases may be pending, or affording Due Process in the adjudication of their requests for parole. This procedure deprives them of fundamental liberty interests, and constitutes "custody" for purposes of habeas corpus. [2] There is no alternative forum where

---

[1] Plaintiffs have this day prepared and served on Defendants their first, post-remand set of requests for admission, covering this issue, and the other points discussed herein.

[2] *See, Koetting v. Thompson*, 995 F.2d 37 (5th Cir. 1993) (although a "detainer" issued in connection with a parole violation does not constitute custody for habeas purposes where no liberty interest is impinged, custody does exist where such an interest is implicated because the detainer interferes with the petitioner's ability to defend against the parole revocation proceedings); and *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("Further, she may lose the right to rejoin her immediate family, a right that ranks high

3

it may be determined whether this deprivation of liberty violates the Due Process Clause of the Constitution. Under the reasoning of *St. Cyr* and *Calcano,* habeas corpus therefore remains available under 28 U.S.C. §2241 to test this type of custody. Consequently, even if the Fifth Circuit were correct in assuming that 8 U.S.C. §1226(a)(2)(B) embodied the Attorney General's authority to parole into the United States members of the Plaintiff class who seek admission, rather than return them to Mexico to await their hearings, under *St. Cyr* and *Calcano,* this Court would still have jurisdiction in habeas corpus to hear their challenges.

III. WITH RESPECT TO THE ISSUE OF THE FORM OF SUBSTITUTE DOCUMENTATION GIVEN, THE FIFTH CIRCUIT'S DECISION, IN ESSENCE, REQUIRES THIS COURT TO SPECIFY THE "LEGAL AUTHORITY" FOR LIMITING INS' ABILITY TO PLACE NOTATIONS ON THE SUBSTITUTE DOCUMENTS WHICH DISCLOSE PERSONAL INFORMATION TO EMPLOYERS AND OTHERS WHO MAY VIEW THOSE DOCUMENTS, WHICH "LEGAL AUTHORITY" IS FOUND IN THEIR RIGHT TO PRIVACY, AS PROTECTED BY 8 U.S.C. §1304(b) AND 5 U.S.C. §552a(b).

In its decision herein, at page 6 (emphasis added) the Court made the following statement with respect to any order by this Court relating to the propriety of placing extraneous notations, such as the fact that an LPR has been released on bond, or is under proceedings, on any substitute documentation issued by INS when it lifts the "green cards" of LPRs placed under proceedings:

> **Absent any legal authority to the contrary**, however, the district court may not interfere with the Attorney General's statutory discretion to balance an LPR's interest in possessing particular forms of documentation against an employer's interest in knowing a potential employee's present and future immigration status.

It cannot be disputed that potential employers may be "interested"

among the interests of the individual," citing *Moore v. City of East Cleveland*, 431 U.S. 494, 499, 503-504 (1977) (plurality opinion); and *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)).

4

in knowing the present, and possible future, immigration status of an LPR. However, absent written permission from the affected LPR, INS is precluded by statute from providing such information (other than whether the LPR is authorized to be employed, and if so, the expiration of that authorization), to potential employers, or others not authorized to receive it under 8 U.S.C. §1304(b) and 5 U.S.C. §552a(b). There is nothing to prevent LPRs from giving such written consent to potential employers. But, under the law as it currently exists, the choice must be that of the affected LPR.

It is therefore submitted that the concern of the Fifth Circuit, as expressed in this paragraph, related to the lack of any discussion of the legal authority, beyond the McNary Memo, for the limitations which this Court placed on ability of INS to divulge information from records kept by them, such as the fact that an LPR was under proceedings, or on bond. The Court explicitly left open the possibility that such "legal authority to the contrary" might exist. And, it is submitted, that said legal authority is found in the requirements of the Privacy Act, 5 U.S.C. §552 et seq, and the provisions of 8 U.S.C. §1304(b).

Plaintiffs would further advise the Court that only limited discovery will be necessary with respect to these issues, and that the case will thereafter again be ripe for summary judgment.

Respectfully Submitted,

*[signature: Lisa S. Brodyaga]*

Lisa S. Brodyaga
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226

Thelma O. Garcia
301 E. Madison
Harlingen, TX 78550
(956) 435-3701

Texas Bar: 03052800
Fed. ID: 1178

## CERTIFICATE OF SERVICE

I certify that the foregoing document was mailed, first-class postage prepaid, to Anthony C. Payne, Attorney, OIL, P.O. Box 878, Ben Franklin Sta., Wash., D.C. 20044, on July 23, 2001, and, in addition, pursuant to prior agreement, was transmitted to him by fax, c/o Lisa Putnam, SAUSA, at (956) 389-7057, at approximately 11:45 a.m. on July 23, 2001.

2