/33

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 1 3 2001

Michael N. Milby
Clerk of Court

ASCENCIO-GUZMAN et al,  )
                        )
v.                      )    C.A. No. B-94-215
                        )
TROMINSKI, et al.       )
_____)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS FOR RULING THAT PLAINTIFFS' FIRST POST-REMAND REQUESTS FOR ADMISSION ARE UNAUTHORIZED, FOR PROTECTIVE ORDER, OR, ALTERNATIVELY, FOR AN EXTENSION OF TIME TO ANSWER SAID REQUESTS FOR ADMISSION, AND MOTION TO AMEND PLEADINGS, PURSUANT TO RULE 15, F.R.Civ.P.

Plaintiffs, through the undersigned, respectfully file the instant Opposition to Defendants' Motions, filed on or about August 3, 2001, requesting: (1) that the Court rule that Plaintiffs' First Post-Remand Requests for Admission are "unauthorized;" (2) that the Court issue a protective order, and (3) that, in the alternative, they be granted an extension of time in which to answer said requests for admission. Said pleading will hereinafter be referred to as "INS' motion," and will be cited as (INS:__).

The disputed requests for admission relate to the fact that a lawful permanent resident, ("LPR"), seeking admission who is placed in proceedings and returned to Mexico, under the authority of 8 U.S.C. §1225(b)(2)(C), is **not** arrested on a "warrant issued by the Attorney General," as required for a grant of conditional parole under 8 U.S.C. §1226(a)(2)(B). To the contrary, as Plaintiffs would show through these requests, parole in such cases is governed by 8 U.S.C. §1182(d)(5), to which no jurisdictional bars apply.

As is shown below, said issue was addressed by both parties early in the case, and was not, as Defendants subsequently asserted, taken off the table by Judge Vela in the hearing on July 1996, on

Plaintiffs' motion for summary judgment.[1]

## I. INTRODUCTION

INS' current motions follow a now familiar pattern of avoiding discovery, and admitting true facts,[2] virtually at all costs. The majority of the pleadings filed herein, and almost all of the delay, resulted from INS' obstinance with respect to discovery.[3] Said motions also illustrate the inconsistent positions which INS has taken in the case at bar. One of their major issues before the Fifth Circuit, to which they devoted six pages of their opening

---

[1] INS' motion for summary judgment was untimely filed, and was therefore never properly before the Court. INS received one extension of time to file it, but their second and third such motions were denied, as was their motion to file said pleading instanter. See, docket No. 50, granting No. 45 (first motion to extend time); and docket No. 96, denying Nos. 51 (second motion); 52 (third motion) and 51 (motion to file instanter). Nor did INS request leave to re-urge these motions. See, docket No. 98.

[2] For example, INS asserts that Magistrate Garza "ordered that the Defendants be granted leave to present amended answers to the Plaintiffs' filings," and that, in response thereto, INS filed, *inter alia,* "amended answers to the Second Amended Complaint." (INS:2). In fact, what Magistrate Garza granted was what Defendants had requested: leave to amend their answers to Plaintiffs' First and Second Sets of Requests for Admissions, all of which had been deemed admitted by INS' failure to timely respond. Magistrate Garza did not (and could not) grant what INS had **not** requested: leave to amend their Answer to Plaintiffs' Second Amended Complaint, on the grounds that they had truthfully admitted facts which, for tactical reasons, they later wished to retract. To do so would have been an even greater violation of Plaintiffs' rights than anything INS has asserted, because Plaintiffs never had a chance to oppose what INS had not requested, to wit, leave to amend their answer to the Second Amended Complaint. INS' attempt to take advantage of the vague wording of the Magistrate's Order illustrates the truth of his comments at the April 26, 1995 status conference, as to "Defendants' apparent lack of good faith," and that their "right hand doesn't know what the left hand is doing." Transcript, at 3.

[3] Ironically, in conjunction with its claim that there *were* genuine issues of material fact, INS asserted to the Fifth Circuit that "because the parties did not engage in discovery, the plaintiffs offered no independent supporting evidence." Opening brief for Defendants/Appellants, at page 36.

2

brief, was their contention that this Court's Order was procedurally flawed because it had been issued prior to the parties conducting discovery, and that there remained genuine dispute as to the material facts, rendering summary judgment inappropriate. As this section of their brief was captioned: [4]

> THE DISTRICT COURT'S ORDER SHOULD BE REVERSED BECAUSE THERE ARE DISPUTED GENUINE ISSUES OF MATERIAL FACT.

Now, INS is taking the opposite position, (INS:6), asserting that:

> THE COURT SHOULD RULE THAT THE PLAINTIFFS' REQUESTS FOR ADMISSION ARE UNAUTHORIZED AS IT HAS PREVIOUSLY HELD THAT ONLY LEGAL ISSUES REMAIN PENDING IN THIS MATTER.

It must not be forgotten that whether there are, indeed, genuine issues of material fact as to whether arriving LPRS who are returned to Mexico pursuant to 8 U.S.C. §1225(b)(2)(C) are arrested on a "warrant issued by the Attorney General" can only be determined *after* INS has responded to the instant requests for admission. As INS well knows, truthful responses will demonstrate that there are no such genuine issues.

Furthermore, it is submitted that granting INS' motions, in whole or in part, would not only cause further delay in the instant case, (which has already been pending for over seven years), but could potentially create a grave injustice. Allowing INS to avoid admitting the truth of the requested admissions would tend to continue the obfuscation of the true facts, and thereby further the confusion which was sowed before the Fifth Circuit as to the legal basis for paroling into the United States lawful permanent residents, ("LPRs"), who are seeking admission as returning residents, and manner in which the parole authority is administered along the border. This would further the erroneous impression

---

[4] A copy of the Table of Contents of INS' opening brief is attached, and incorporated herein, as Plaintiffs' Exhibit II.

3

that, apart from its jurisdiction in habeas corpus, under 28 U.S.C. §2241,[5] this Honorable Court is powerless to address the extreme suffering caused to LPRs and their U.S. citizen family members when they are returned to Mexico to await hearings, without even being advised of the existence of the possibility of parole, much less how to go about requesting it. As INS affirmatively stated in their Statement of Material Facts as to Which There Exists No Substantial Controversy,[6] (R:810-811) (footnote omitted):

> When a lawful permanent resident applies for admission as a returning resident at a port of entry under the jurisdiction of the Harlingen, Texas, INS Office, and Respondents have reason to believe that said person has committed an act which would subject him or her to exclusion proceedings, if criminal prosecution is also contemplated, it is the practice of Respondents to parole the individual into the United States for prosecution, and place him or her under exclusion proceedings. If the prosecution results in a conviction, it is the practice of Defendants to detain said individual at the Service Processing Center at Los Fresnos, Texas, pending exclusion proceedings. Upon request of counsel, and in some cases upon payment of a bond, such persons are frequently paroled into the United States. If criminal prosecution is not contemplated, it is the practice of Defendants to initiate exclusion proceedings, and, in most instances, return said person to Mexico, without advising him or her of the possibility of being paroled into the United States.

II. INS' MOTIONS SHOULD BE DENIED IN THE INTERESTS OF JUSTICE

In its motion to stay the Court's order pending appeal, INS claimed, for the first time, that 8 U.S.C. §1226(e) deprived the

---

[5] This jurisdiction was conclusively established in *INS v. St. Cyr*, 121 S.Ct. 2271 (2001).

[6] Said pleading was **not** among those wherein INS purported to file an amended pleading, on the basis of the vague wording of Magistrate Garza's order granting their motion to file amendments to the initial requests for admission, on which INS had defaulted. Therefore, they cannot "take back" this particular statement.

4

Court of jurisdiction over the manner in which LPRs seeking re-admission, and placed under proceedings, are returned to Mexico to await their hearings, without being advised of the possibility of parole, or given a hearing on any request that they be paroled into the United States while their cases are pending. (R:38-41). In making this claim, Defendants asserted as follows (emphasis added):

> Section 236(a) of the INA provides that an alien, **whether or not he is seeking admission**, may be held by the INS pending a determination of whether that alien is to be removed from the United States. 8 U.S.C. § 1226(a). **The Attorney General may release such aliens on bond or conditional parole. 8 U.S.C. §§ 1226(a)(2)(A) & (B).**

A similar claim was made before the Fifth Circuit. However, by its terms, 8 U.S.C. §1226(a) applies only to aliens arrested "[o]n a warranted issued by the Attorney General." By asserting that the "conditional parole" power of 8 U.S.C. §1226(a)(2)(B) extends to LPRs seeking admission who are returned to Mexico to await their hearings, and that 8 U.S.C. §1226(e) therefore precludes this Court from exercising jurisdiction over this aspect of Plaintiffs' case, INS implied (and the Fifth Circuit apparently believed) that such persons are arrested on a "warrant issued by the Attorney General." The main thrust of the pending requests for admission is to show that this is not the case. Such persons are not arrested "on a warrant," but are unceremoniously returned to Mexico pursuant to the power conferred by 8 U.S.C. §1225(b)(2)(C), without the need for, or resort to, a warrant. INS should not be allowed make untrue factual assertions, even implicitly, and then claim that because it was concluded that there were no genuine issues of material fact, Plaintiffs cannot debunk these untruths by asking INS to admit that such persons are not arrested "on a warrant." This would be to perpetuate a fraud upon the Court.

Plaintiffs continue to believe that there are, in fact, no genuine issues of material fact, with the exception, as Plaintiffs noted at

5

the recent status conference, of the question of whether the statute and regulations governing parole and the practical aspects of how to go about requesting it would be "generally available" to an LPR who had been returned to Mexico to await a hearing.[7] Even that point is nearly self-evident, but Plaintiffs stand ready to prove that, in contrast to the situation in *West Covina,* an LPR returned to Mexico to await a hearing cannot readily "turn to ... public sources [in Mexico] to learn about the remedial procedures available to him."[8]

None of the named Plaintiffs herein who were placed in exclusion proceedings and returned to Mexico to await a hearing was arrested "on a warrant issued by the Attorney General."[9] There is no

---

[7] In the instant motions, INS seeks to avoid responding to Plaintiffs' requests for admission on the theory that Judge Vela previously concluded that there were no genuine issues of material fact. Not only is this incorrect for the reasons set forth before the Fifth Circuit, *see,* excerpt from Plaintiffs' brief, at *infra,* but it is the opinion of the Fifth Circuit herein, and subsequent developments from the Supreme Court, which now control the case, not what Judge Vela did or did not order at a prior hearing.

It should not be surprising, however, that INS wants to avoid admitting these facts. To admit them would be to admit that their claim that 8 U.S.C. §1226(e) applies to requests for parole made by LPRs who have been returned to Mexico under 8 U.S.C. §1225(b)(2)(C) rests on an untrue factual premise, to wit, that arriving LPRs returned to Mexico under §1225(b)(2)(C) are arrested "[o]n a warrant issued by the Attorney General." Arrest on such a warrant is a precondition to the applicability of §1226(a), and therefore, of §1226(e). As a matter of law, therefore, parole of LPRs who have been returned to Mexico to await their hearings, without having been arrested on a "warrant issued by the Attorney General," is authorized by 8 U.S.C. §1182(d)(5), not §1226(a)(2)(B), and the jurisdiction of the Court in such cases is unaffected by §1226(e).

[8] *City of West Covina v. Perkins*, 525 U.S. 234,240-41 (1999), as quoted in the opinion of the Fifth Circuit, at page 7, n.13.

[9] As counsel for the Plaintiffs in their immigration proceedings, the undersigned obtained copies of their files through the Freedom of Information Act. However, it is difficult to prove a negative, to wit, that said files did not contain any warrants.

6

requirement that warrants be issued before 8 U.S.C. §1225(b)(2)(C) is invoked, and no procedures are in place for issuing warrants under such circumstances. The Defendants themselves raised a (false) issue of material fact, after judgment, and led the Fifth Circuit to believe that this falsehood was truth. They cannot now complain that Plaintiffs seek to demonstrate the falsity of their (implied) assertion, by asking them to admit it.

III. JUDGE VELA DID NOT LIMIT THE ISSUES AS CLAIMED BY INS, AND EVEN IF HE HAD, IT WOULD HAVE BEEN WITHIN THIS COURT'S PROVINCE TO RECONSIDER THOSE RULINGS, IN LIGHT OF THE BRIEFS LATER SUBMITTED BY THE PARTIES (AT JUDGE VELA'S REQUEST).

Defendants assert that Judge Vela made a binding order limiting the issues herein, and that "[t]his Court is bound by Judge Vela's decision regarding the issues remaining in the matter." (INS:7). This is incorrect both as a matter of fact, and of law. According to INS, there were only two issues outstanding after the hearing on Plaintiffs' summary judgment motion, *id.*, to wit:

> 1) whether the Defendants violate a lawful permanent resident's (LPR's) rights when noting on the Form I-94 (document replacement for Form I-551) that such alien is in immigration proceedings and whether the notation interferes with the alien's ability to obtain employment and, 2) what is the authority of the Defendants to deny an LPR admission into the country. R.118 at 15-16, 39.

INS made the same arguments before the Fifth Circuit. As Plaintiffs responded at that time, (brief for Plaintiffs, at pages 35-38 (footnotes in original) (citations to INS' opening brief):

> Apparently, INS considers a request for supplement briefing on some issues to be a *sub silentio* ruling, (of

---

For this reason, Plaintiffs seek to prove that INS' implied assertion that they were arrested on "warrant[s] issued by the Attorney General" by means of the instant requests for admission.

7

such finality as to constitute the law of the case), that these were the *only* issues before the Court.

This is incorrect, both because the issues were not so limited, and because, even if they were, it would have been within the province of Judge Vela, and therefore of Judge Tagle, to revisit them. [10] Defendants cite *O'Keefe, supra* [128 F.3d 885] at 891, (INS:32). As noted therein:

> Under the law of the case doctrine and general principles of comity, a successor judge has the same discretion to reconsider an order as would the first judge, but should not overrule the earlier judge's order or judgment merely because the later judge might have decided matters differently.

Since the issues addressed in her order were all briefed *after* the summary judgment hearing, (mostly at Judge Vela's request), Judge Tagle "had the same discretion" to reconsider Judge Vela's (alleged) tentative rulings as he would have had, on the grounds that they did not adequately consider the authorities presented in the post-hearing briefs. However, it is unnecessary to reach that question, as Judge Tagle's order was consistent with the matters on which Judge Vela expressed a firm opinion, and largely consistent with his leanings, as expressed at the hearing, on the remaining questions. Judge Tagle ordered relief on three points:

1. The "summary exclusion," or parole issue, on which Judge Vela was clearly inclined to rule in Plaintiffs' favor, and which he ordered INS to brief, (R9:18-24,25-40).
2. The confiscation of drivers' licenses, social security cards, etc., which issue Judge Vela deferred,

---

[10] INS' claim, (INS:34), that Judge Tagle deprived them of the opportunity to present evidence, is bogus. Defendants were free to (and did) submit evidence at will. (R3:713-801). Moreover, the time to do so was *before*, not after, the summary judgment hearing.

8

expecting that it would be resolved (also in Plaintiffs' favor), by his anticipated ruling on the parole issue, (R9:44-45) ("In other words, if they have to parole them or specially parole them or whatever into the country, that is pretty much going to moot that question");

3. Compliance with the limitations of the McNary Memo regarding arbitrary confiscation of I-551s, and provision of adequate substitute documents. The former issue was not addressed at the hearing. Rather, argument focused on the *form* of the I-94 provided when one was lifted, but even that was not resolved. (R9:4):

> THE COURT: As I understand how it works, there is an application to deport and then they say, "Give me your card."
> MS. BRODYAGA: Correct.
> THE COURT: I guess they are left without anything.
> MS. BRODYAGA: Frequently they are left without anything. Sometimes they give them something that says you are under deportation proceedings or you committed this offense.
> THE COURT: I understand that. ...

Defendants represented that adequate I-94s were *then* being provided, (R9:7), and the following discussion ensued, (R:8-13):

> THE COURT: ... Why wouldn't that be sufficient?
> MS. BRODYAGA: It would be sufficient, Your Honor, if they did not also place on it other notations that violate their rights of privacy and make it very difficult for them to get jobs, ...
> ...
> THE COURT: What you are saying it [is that] hampers them in seeking employment.
> MS. BRODYAGA: It hampers them in living their life as a lawful permanent resident. It hampers them in the enjoyment of the privileges.
> ...

9

> THE COURT [to DEFENDANTS]: Do you always include in this interim card the fact that they are subject to deportation and all this other stuff - -
> MR. MUIR: Sometimes, Your Honor - -
> ...
> But the front of the card clearly says that they are authorized to be employed and that they are permanent residents.
> ...
> THE COURT: Why shouldn't the employer know that ... there is a pending application for [deportation] hearing?
> MS. BRODYAGA: A lot of times, Your Honor, an employer will not give a person a job if the employer believes - -
> THE COURT: I understand that. But why shouldn't the employer know, independent of what we are talking about from a legal standpoint? That is, whether the Government has a right to go that far when a person has been not adjudicated deportable and is legally here... ? ...
> MS. BRODYAGA: Your Honor, that should be between the employer and the employee. That is very similar to the situation where - -
> THE COURT: ... If it is between the employer and the employee, how are they going to be prejudiced if the employer is simply being told that by virtue of what's on this information? ... If he wants to, or he or she wants to hire him, they can under those circumstances.
> ...
> You will have to brief that for me ...

The extensive argument about the format of provisional documentation eclipsed the question of when INS could confiscate green cards, although, as shown above, Plaintiffs indicated that the two issues were interrelated. Defendants represented that INS was (by then) largely in compliance with their policy memo, and Judge Vela primarily addressed the issues not covered

therein.

Judge Vela also accepted, (and INS did not contest), Plaintiffs' representations that extraneous notations on an I-94 interfere with the enjoyment of the rights and privileges which attend LPR status, (including making it difficult to get a job, (R9:8), because employers often refused to hire an LPR under such circumstances, (R9:12)). Rather, Judge Vela wondered aloud whether employers had a right to know, for example, that a potential employee was under deportation proceedings, and asked Plaintiffs to brief that point.

The Parties' differing understandings of the outcome of the hearing is evidenced by their inability to agree on a stipulated order. That Plaintiffs believed that Judge Vela had not resolved the question of when INS could lift an LPR's green card is also seen by their post-hearing brief. [11] The fact that Judge Vela did not sign Defendants' proposed order constituted notice that he might agree.

In their post-hearing brief, Defendants asserted that Judge Vela had decided certain issues, but acknowledged that they might be "mistaken as to the Court's holding." (R2:296). Therefore, if Defendants opted to "not respond to Plaintiffs' arguments" (R2:295), on the grounds that the Court had allegedly "already decided" the issues, *id.*, they did so at their own risk.

The Fifth Circuit examined Defendants' complaints. But rather than find they were valid, the Court remanded to ensure that INS had full opportunity to make any factual or legal arguments which they felt that they had been precluded from making previously. Instead of doing so, INS insists on trying to avoid the questions. It is for this reason that Plaintiffs are filing the accompanying motion, requesting leave to further amend their Second Amended Complaint, by interlineation, to specify exactly the relief requested.

---

[11] Plaintiffs argued therein that it "violated their liberty interests for INS to arbitrarily lift their green cards," (R2:395).

11

IV. THE EASIEST WAY OF FOREVER LAYING THESE PROCEDURAL CLAIMS TO REST IS BY GRANTING PLAINTIFFS' PENDING MOTION TO FURTHER AMEND THEIR SECOND AMENDED COMPLAINT, BY INTERLINEATION, TO SPECIFICALLY REQUEST THE FORMS OF RELIEF WHICH ARE AT ISSUE, SO THAT INS WILL BE FORCED TO ADDRESS THEM ON THE MERITS, OR FOREVER HOLD THEIR PEACE.

The instant case has been pending for seven years, and INS is still trying to avoid discovery, on the basis of inconsistent claims as to whether there are genuine issues of material fact, and by taking out of context certain remarks made by Judge Vela at the hearing on Plaintiffs' motion for summary judgment. It is time that the instant litigation moved forward to a conclusion. For this reason, it is urged that this Honorable Court deny INS' current motions in their entirety, and grant Plaintiffs' accompanying (opposed) motion to amend, to forever lay to rest any concerns about what Judge Vela intended at the hearing on July 31, 1996.

Respectfully Submitted,

*/s/ Lisa S. Brodyaga*

Lisa S. Brodyaga, Attorney at Law
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)

Fed. ID. 1178
Texas Bar 03052800

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing with attached exhibit and proposed Order were served, first class postage prepaid, on Anthony Payne, Attorney, OIL, Box 878, Ben Franklin Sta., Washington, D.C. 20044, on August 13, 2001.

*/s/*

12