Case 1:94-cv-00215   Document 134   Filed in TXSD on 08/13/2001   Page 1 of 26



United States District Court
Southern District of Texas
FILED

AUG 1 3 2001

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,       )
                             )
v.                           )       C.A. No.  B-94-215
                             )
TROMINSKI, et al.            )
_____)

PLAINTIFFS' OPPOSED MOTION TO AMEND PLEADINGS
WITH INCORPORATED POINTS AND AUTHORITIES

Plaintiffs, through the undersigned, respectfully file the instant
(opposed) motion, requesting leave to amend their pleadings, in
accordance with Rule 15(a) and/or (b), Fed. Rules Civil Proc.

I.  INTRODUCTION

Plaintiffs would first note that each and every one of the seven
named Plaintiffs herein ultimately won his or her immigration case,
and remains in this country as a lawful permanent resident ("LPR").
The instant action is therefore not about delaying the removal of
undesirable aliens.  It is about treating LPRs, and by extension,
their family members within the United States, in a fair and humane
manner, consistent with Due Process, while it is being decided
whether the offenses they have committed (or are *accused* of having
committed) are so serious as to warrant their deportation, or
whether, if they committed the offenses at all, they are
sufficiently minor, and the residents' equities so great, that they
should be allowed to remain, as lawful permanent residents.

For example, Plaintiffs Ascencio and Merino were caught trying to
use their son's birth certificate bring their sick nephew into the
U.S. for medical treatment.  Similarly, Plaintiff Gutierrez was
apprehended when she attempted to bring her sister and sister's
children into the U.S., to protect them from further abuse by her
sister's husband.  None of these offenses was considered
sufficiently serious to warrant criminal prosecution.  Rather, all
three Plaintiffs were placed in exclusion proceedings, their "green

cards" and other documents were seized, and they were returned to Mexico to await a hearing. Because they were in Mexico, they had difficulty locating and making arrangements to hire an attorney skilled in immigration cases, who could advise them of the possibility of parole, and help them request it. At her first hearing, six weeks after she was sent to Mexico, Ms. Ascencio asked the Immigration Judge about getting a "permit" to visit her infant son in Houston, and to arrange for her daughter to go to school, but neither the Judge nor the INS attorney could provide any useful information, beyond suggesting that she "talk to the District Director," or seek information at the bridge. (R:969-972). It took two more months for her and her husband, Plaintiff Merino, to obtain counsel, and shortly thereafter, they was paroled into the United States. Similarly, Plaintiff Gutierrez was stranded in Mexico for five months before she obtained counsel, and it took a few more weeks for her to be paroled into the U.S. (R:1292-1293).

## II.  MATTERS TO BE ADDRESSED

At the recent status conference, Defendants complained about the manner in which this Court handled the case previously. They asserted that this Court had reached issues which were foreclosed by alleged orders from Judge Vela. Based on their brief to the Fifth Circuit, it appears that Defendants allege three such points.

The first is whether INS may seize from LPRs such lawfully issued documents as Social Security Cards, drivers licenses, and Mexican passports, absent a good faith belief that they are evidence of unlawful conduct. Second is whether LPRs are entitled to notice of the possibility of parole, and a hearing on any request for parole, before they are returned to Mexico under 8 U.S.C. §1225(b)(2)(C). The third is the modification of the class, [1] from LPRs in

---

[1]  Amending the definition of the class is within this Court's discretion under Rule 23(c)(1) ("An order under this subdivision ... may be altered or amended before the decision on the merits.").

exclusion and deportation, to those in removal proceedings. [2]

Of these three points, the Fifth Circuit expressed reservations
only about the parole issues.  Even there, the jurisdictional
concerns were coupled with an admonishment to INS that they were
also obliged to respect the Constitution, even when the Court
lacked jurisdiction to force them to do so. [3] (Opinion, at page 8).

The first issue involves a form of relief that was addressed by
both Plaintiffs and Defendants early in the case, and was not, as
Defendants have asserted, taken off the table by Judge Vela in the
July 1996 hearing on Plaintiffs' motion for summary judgment. [4]
The second was implicit in Plaintiffs' pleadings, and was made
explicit by Judge Vela himself at that hearing.

---

[2]  The class definition was amended due to the Illegal
Immigration Reform and Immigrant Responsibility Act, ("IIRIRA"),
which took effect April 1, 1997.  The parties briefed pertinent
aspects of IIRIRA, which did not include the change in the name of
the proceedings, from exclusion and deportation, to removal,
(R:187-260), which, as it was correctly characterized by the Fifth
Circuit was simply one of nomenclature. (Opinion at p.1,n.1).

[3]  As discussed *infra,* at n.7, this jurisdictional concern was
based on an erroneous factual premise, to wit, that LPRs returned
to Mexico to await a hearing, under 8 U.S.C. §1225(b)(2)(C), are
arrested on a "warrant issued by the Attorney General," such that
parole would be authorized by 8 U.S.C. §1226(a)(2)(B), and
therefore, subject to the jurisdictional bar of §1226(e). Rather,
as Plaintiffs will show, *inter alia,* by their pending requests for
admission, such persons are not arrested on a warrant, and requests
for parole in such cases are governed only by 8 U.S.C. §1182(d)(5).

[4]  Defendants' motion for summary judgment was not timely
filed, and therefore was never properly before the Court.  They
received one extension of time to file it, but their second and
third such motions were denied, as was their motion to file said
pleading instanter.  See, docket No. 50, granting No. 45 (first
motion to extend time); and docket entry No. 96, denying Nos. 51
(second motion); 52 (third motion) and 51 (Defendants' motion to
file instanter).  None of these motions was among those which
Defendants requested leave to re-urge. *See,* docket No. 98.

3

CVISPDF - www.fastio.com

Defendants recently filed three motions, seeking to postpone or avoid responding to Plaintiffs' post-remand requests for admission. At page 5 thereof, Defendants note that in their October 15, 1998 pleading, requesting that the Court's Order of September 30, 1998 be set aside, (R:123-127), they had argued, *inter alia*:

> that by adopting the Plaintiffs' "Memorandum and Order", the Court's order was inconsistent with Judge Vela's rulings which narrowed the issues and determined that the case would be decided upon the legal issues he identified. [5]

In their reply to this pleading, (R:107-09), Plaintiffs argued that no binding order had emanated from that hearing, as seen, *inter alia,* from the fact that Judge Vela never signed either of the dueling proposed orders submitted by the parties.

Thus, this argument was raised by Defendants and rebutted by Plaintiffs before the Court ever issued its final decision. However, in order to pre-empt further procedural complaints, Plaintiffs would request leave to amend their pleadings, in accordance with Rule 15(a) and/or (b), to specifically request the two forms of relief which INS argues were not properly before the Court. [6] It is highly doubtful that there are will be genuine disputes at to any material fact with respect to these claims, with the exception, as Plaintiffs noted at the recent status conference, of the question of whether the statute and regulations governing parole and the practical aspects of how to go about requesting it would be "generally available" to an LPR who had been returned to

---

[5] This is particularly ironic, as Defendants argued to the Fifth Circuit that "the District Court's Order Should Be Reversed Because There Are Disputed Genuine Issues Of Material Fact." *See,* Appellants' Opening Brief, herein cited as (APP:___), at page 36.

[6] Defendants may also request reconsideration of this Court's order modifying the definition of the class, if they so choose, and raise therein any substantive objections they may have.

CSsPDF - www.fasiio.com

Mexico to await a hearing. [7]   Even that point is nearly self-
evident, but Plaintiffs stand ready to prove that, in contrast to
the situation in *West Covina,* an LPR returned to Mexico to await a
hearing cannot readily "turn to ... public sources [in Mexico] to
learn about the remedial procedures available to him." [8]

II.  THE BEST MEANS OF COMPLYING WITH THE FIFTH CIRCUIT'S MANDATE
THAT INS BE GIVEN "AMPLE OPPORTUNITY TO PRESS ANY ADDITIONAL LEGAL
OR FACTUAL ARGUMENTS IT WISHES TO MAKE" AND "THEREBY CURE ANY
PROCEDURAL DEFECTS REGARDING [THIS COURT'S] ORDER" IS FOR
PLAINTIFFS TO AMEND THEIR COMPLAINT TO EXPLICITLY REQUEST ALL THE
FORMS OF RELIEF GRANTED THEREIN.

In its opinion in the case at bar, the Fifth Circuit noted that INS
had raised certain procedural complaints, and made the following
observation. Opinion, at page 4:

---------------------------

[7]     In the pending motions, INS seeks to avoid responding to
Plaintiffs' requests for admission on the theory that Judge Vela
previously concluded that there were no genuine issues of material
fact.  This is incorrect for two reasons.  First, it is the opinion
of the Fifth Circuit herein, and subsequent developments from the
Supreme Court, which now control the case, not what Judge Vela did
or did not order at a prior hearing.  Even more fundamentally,
however, whether there *is* a genuine issue of material fact can only
be determined once Defendants respond to these requests.  In fact,
Plaintiffs and Defendants both know that the matters set forth
therein are true, and do not raise genuine issues of material fact.

It is not surprising, however, that INS wants to avoid admitting
these facts. To admit them would be to admit that their claim that
8 U.S.C. §1226(e) applies to requests for parole made by LPRs who
have been returned to Mexico under 8 U.S.C. §1225(b)(2)(C) rests on
an untrue factual premise, to wit, that arriving LPRs returned to
Mexico under §1225(b)(2)(C) are arrested "[o]n a warrant issued by
the Attorney General."  Arrest on such a warrant is a precondition
to the applicability of §1226(a), and therefore, of §1226(e). As a
matter of law, therefore, parole of LPRs who have been returned to
Mexico to await their hearings, without having been arrested on a
"warrant issued by the Attorney General," is authorized by 8 U.S.C.
§1182(d)(5), not §1226(a)(2)(B), and the jurisdiction of the Court
in such cases is unaffected by §1226(e).

[8]  *City of West Covina v. Perkins*, 525 U.S. 234,240-41 (1999),
as quoted in the opinion of the Fifth Circuit, at page 7, n.13.

5

CSHPDF - www.testiq.com

> More troubling is the government's contention that the
> district court failed to give the government an
> opportunity to present argument before issuing its order.
> Because of our rulings on the government's substantive
> claims, which we discuss below, we do not address these
> allegations. Instead, we vacate the order and remand for
> further proceedings, **during which INS assuredly will have
> ample opportunity to press any additional legal or
> factual arguments it wishes to make and thereby cure any
> procedural defects regarding the order**.

In fact, INS had "ample opportunity" to present argument before the
Court issued its final Order. The proposed order was tendered and
served, with a pleading requesting that it be adopted, on September
11, 1998.  However, it was submitted to, and signed by, this Court
on September 30, 1998, one day before the twenty-day time frame for
presenting opposed motions. Defendants' opposition to the proposed
order was filed the twentieth day, October 1, 1998, and on October
15, 1998, Defendants filed a motion to alter or set aside September
30, 1998 Order, in which request the Plaintiffs joined. (R:94,106).

Defendants' motion to set aside was devoted to three propositions.
First, they (correctly) noted that the order was issued prior to
the expiration of the allotted period. They also claimed that,
because Plaintiffs had not formally re-urged the motions which had
been denied by Judge Vela when the case was transferred to this
Court, Plaintiffs had nothing pending.  Third, they asserted that
the matters addressed therein were not properly before the Court.
They then requested the following remedy (R:97) (emphasis added):

> The Court should set aside its Order of September 30,
> 1998 **or hold in abeyance the entry of the judgment until
> such time as the Court has afforded the defendants an
> opportunity to be heard.**

That opportunity was provided.  On October 19, 1998, Plaintiffs
addressed the substance of INS' October 1, 1998, opposition to the
proposed Order. In that pleading, Plaintiffs formally re-urged the

6

CVisPDF - www.fasiio.com

prior motions which Judge Vela had denied when he transferred the case to this Honorable Court. [9]  They also demonstrated therein that the issues had not been narrowed in the manner INS claimed, and defended other aspects of the proposed Order, including the modification of the definition of the class. (R:106-118).

Two days later, Plaintiffs responded to Defendants' motion to set aside the Order.  They noted that Defendants had requested "an opportunity to be heard" with respect thereto, and concurred that the Order of September 30, 1998, should be set aside, in order for the Court to consider the points raised in INS' October 1, 1998 pleading, and to give INS the opportunity to present any further arguments they might choose to make. (R:93).  Simultaneously, Plaintiffs submitted, and served on Defendants, an additional Exhibit, and two proposed orders, one modifying the class, and the other, setting forth the substantive relief requested. (R:118).

Even though they had expressly requested an opportunity to do so, Defendants did not respond further.  The twenty-day period for opposing Plaintiffs' explicit "re-urging" of their prior motions, and request that the Court adopt the attached proposed orders, came and went.  On November 24, 1998, more than five weeks later, the Court issued its Orders, modifying the class, and granting essentially the same relief as previously.

Yet INS still complains that they were not given an opportunity to be heard.  Granting the instant motion will (hopefully) dispose of that claim, as well as INS' contention that the issues addressed in the Court's substantive Order were not properly before the Court. As Plaintiffs indicated during the recent status conference, the best way to ensure that INS has full opportunity to address these issues on the merits is to amend the complaint.  Notably, the

---

[3]  Plaintiffs also noted that their pleading of September 10, 1998, with proposed order, constituted such a motion, (R:106-107).

7

proposed amendments only specify the exact nature of the relief sought, in light of the changes effected by IIRIRA, and do not require that any new facts be pleaded, or proven. If such leave to amend is granted, Defendants will be obliged to respond to the merits of the issues, or to forever hold their peace.

Notably, the Fifth Circuit did not disapprove of the substance of this Court's order that INS be enjoined from confiscating such documents as drivers licences, etc., absent a good faith belief that they constituted bona fide evidence of unlawful conduct. Nor did the Court criticize the modification of the class.

Further, as discussed in note 7, *supra*, INS' argument, and the Fifth Circuit's conclusion, that §1226(e) applies to requests for parole by LPRs returned to Mexico to await their hearings was based on the erroneous factual assumption that such persons are arrested on a "warrant issued by the Attorney General," pursuant to 8 U.S.C. §1226(a), and that "conditional parole" could be granted under §1226(a)(2)(B), thus triggering the jurisdictional bar of §1226(e).

Said erroneous factual premise was implicit, (and, at times, very nearly explicit), in INS' assertions that 8 U.S.C. §1226(e) bars this Honorable Court from addressing issues relating to the parole of LPRs seeking admission who are returned to Mexico under §1225(b) (2)(C). These assertions were made both to the Fifth Circuit and in INS' motion that the Court stay its judgment pending appeal. [10]

---

[10] *See, e.g.,* Defendants' motion to stay the Court's Judgment pending appeal, (R:38-41) (emphasis added):

> Section 236(a) of the INA provides that an alien, **whether or not he is seeking admission,** may be held by the INS pending a determination of whether that alien is to be removed from the United States. 8 U.S.C. § 1226(a). **The Attorney General may release such aliens on bond or conditional parole. 8 U.S.C. §§ 1226(a)(2)(A) & (B).**

8

Since this claim was first raised in Defendants' motion for a stay
pending appeal, Plaintiffs had no opportunity before the case went
to the Fifth Circuit to present evidence, such as they are now
seeking by virtue of their outstanding requests for admission, to
show that, as a matter of undisputed fact, this premise is untrue.

Furthermore, there have been significant legal developments since
the Fifth Circuit issued its decision herein. One of the
jurisdictional bases this Court invoked was habeas corpus, under 28
U.S.C. §2241. (R:88). In other cases, the Fifth Circuit has
concluded that certain jurisdictional preclusions of IIRIRA
overrode §2241. *See, Max-George v. Reno*, 205 F.3d 194 (95th Cir.
2000). Although the Court was less specific herein, its holding
that 8 U.S.C. §1226(e) deprived this Court of jurisdiction, even in
habeas corpus, implicitly derives from the same reasoning.

On June 25, 2001, the Supreme Court overruled *Max-George*, and held
that the provisions of IIRIRA at issue therein did not repeal, in
whole or part, 28 U.S.C. §2241. *INS v. St. Cyr,* 121 S.Ct. 2271
(2001). So even if the factual premise of the Fifth Circuit's
conclusion were not incorrect, *St. Cyr* validated this Court's
holding that it has jurisdiction over this claim in habeas corpus.

### A. THE CONFISCATION OF DOCUMENTS OTHER THAN GREEN CARDS.

The factual underpinnings of the issue of whether Defendants may
lawfully confiscate such documents, absent a bona fide belief that
they constitute evidence of unlawful conduct, were set forth in
Plaintiffs' Second Amended Complaint, at paragraph 18, ("[Plaintiff
Lopez'] ... Texas drivers license [was] confiscated by
Defendants..."), and 21, ("...Ms. Ascencio's Texas I.D. card [was]
confiscated by Defendants...") (R:1292,1293). In their Answer to
this Complaint, Defendants admitted these facts. (R:1217). Further
evidence with respect to this issue was presented in Plaintiffs'

9

Exhibit L. (R:1318-1322). [11]

Although no explicit relief with respect to this problem was specified in their Complaint, Plaintiffs did request "such other and further relief as this Court may deem appropriate and justified under all of the circumstances." (R:1305). Further, in their summary judgment motion, Plaintiffs sought both injunctive and declaratory relief with respect to this issue. (R:1113-1114). In their opposition thereto, INS asserted as follows, (R:701):

> In Plaintiffs' Second Amended Petition, however, although they allege that the INS does lift such non-INS documents "regardless of whether such documents had any evidentiary value in either the criminal prosecution or exclusion proceedings ... Plaintiffs do not seek any relief from the court in regard to such alleged actions by Defendants. In their Amended Statement of Material Facts as to Which There Exists No Substantial Controversy, Plaintiffs omit the claim that the non-INS documents are seized regardless of whether they have any evidentiary value. [12] Accordingly, it appears that Plaintiffs are claiming that seizure by the Defendants of non-INS documents, even where they have evidentiary value for an exclusion proceeding, is contrary to law.

---

[11] Said exhibit related to Esther Martinez, an LPR paroled in for prosecution. Her green card, Social Security card, and drivers license were all confiscated by INS. After the criminal charges were dismissed, she was allowed to return home to Florida. She retained an attorney, who made a written request for the documents, but INS **refused** to return them, asserting that her right to possess these documents would be determined at her exclusion hearing. Nor did INS provide her with any form of substitute document until the undersigned made a demand, based on the (then) pending settlement which was reached in the early days of the case at bar, but was later repudiated by INS. (R:1128-35,1238-46,1256-82); Transcripts of August 1, 1994, at pages 1-3; and of April 26, 1995, at page 3).

[12] In fact, the confiscation of such documents from Plaintiffs Ascencio, Merino, and Lopez, (under circumstances rendering it clear that they were not seized for any evidentiary purpose), *was* raised in Petitioners' Amended Statement of Material Facts As To Which There Exists No Substantial Controversy," (R:1048-1049).

10

Having made this largely **in**accurate procedural point, INS then defended the practice on the merits, but limited its defense to situations where the documents were either not lawfully issued to the LPR, or were, in fact, seized as evidence. (R:702):

> The INS officers are clearly authorized to temporarily confiscate such documents as evidence in exclusion cases, or because the documents are suspected to be counterfeit or otherwise not properly in the possession of the applicant for admission.

At the summary judgment hearing, the issue was discussed in a context which made it clear that Plaintiffs' claim was limited to situations where the documents *were* lawfully issued, and did *not* constitute evidence of any form of unlawful conduct. It was equally clear at that time that Judge Vela considered it to be a viable claim (Transcript of July 31, 1996, at pp. 44-45) (emphasis added):

> Plaintiffs:  And then I believe the - the final issue, Your Honor, in terms of people in exclusion proceedings, where the Government picks up their [green] cards and throws them back [into Mexico], they often also take their driver's license, Social Security card, and other documents that bear on their right to live and work in the United States.  And we claim that unless [they are] bona fide evidence in the case they don't have the right to do that.
> The Court: **Well, let's first pass on issue one and then we will address the other part of that.**  If I make a decision to the effect that what they are doing is in nonconformance with their own regulation, that moots the question, doesn't it?
> Plaintiffs:  I would think so.  That they would - -
> The Court:  In other words, if they have to parole them or specially parole them or whatever into the country, that is pretty much going to moot that question.

Thus, far from ruling that the issue was not properly before the Court, or rejecting it on its merits, Judge Vela indicated that he planned to order Defendants to parole persons such as Plaintiffs

CVISPDF – www.feisio.com

CVISPDF – www.fasiso.com

CVISPDF – www.fastio.com

Ascencio, Merino, and Gutierrez into the United States to await their hearings. [13]   And, since INS did not regularly confiscate such documents when LPRs are paroled into the U.S., except, (as in the case of Ester Martinez, note 11, *supra*), when an LPR was paroled for prosecution and was physically detained, Judge Vela considered that this should also take care of the problem of INS seizing other types of documents.  Plaintiffs concurred. *Id.* at 45.

However, because of IIRIRA, (giving INS the statutory authority to return applicants for admission to Mexico to await their hearings), the relief requested by Plaintiffs in their proposed order, which relief was granted by this Court, was more limited than what Judge Vela had indicated he would provide.  Instead of mandating that INS parole such persons into the U.S. *under all circumstances,* (either for prosecution, or at liberty, pending their hearings), this Court ordered INS to provide notice of the possibility of such parole, and a hearing to determine whether they should be so paroled.  This more limited relief did not, however, render the question of the confiscation of other documents moot, so it was appropriately addressed separately by Plaintiffs in their proposed Order, and in the relief ultimately granted by this Court. [14]

In their Response to Plaintiffs' proposed order,  Defendants (incorrectly)   asserted   that   Judge   Vela   had   requested   that Plaintiffs brief the issue "whether defendants may confiscate non-INS documents in the possession of an alien who is placed in exclusion proceedings," and noted, (R:126,n.8), that Plaintiffs

---

[13]   Significantly, INS did not assert at the summary judgment hearing that the issue was not properly before the Court.

[14]   Ironically, because this Court granted more limited relief than what Plaintiffs originally requested, and what Judge Vela had indicated that he would order, and because this more limited relief had not been explicitly requested in the Second Amended Complaint, Defendants were able to claim that the request for this more limited form of relief was not properly before the Court.

CutePDF - www.testia.com

sought a ruling which would provide that:

> [T]he defendants "act arbitrarily and capriciously" ...
> by confiscating other documents which do not provide
> "*bona fide* evidence of unlawful conduct," among other
> legal conclusions.

Defendants coupled this statement with a vague allegation that the
proposed order "exceed[ed] the legal issues identified by the Court
on July 31, 1998, (R:125-26). But their assertion, however
erroneous, that Judge Vela had requested Plaintiffs to brief this
issue amply shows that Defendants were well aware *at that time* that
Judge Vela had left it very much alive. Their claims to the
contrary, first urged before the Fifth Circuit, [15] are also amply
contradicted by the transcript of the hearing as a whole.

Nonetheless, it is urged that the best means of permanently laying
to rest these procedural complaints would be for Plaintiffs to
further amend their Second Amended Complaint, by interlineation, to
explicitly request the following relief:

> 1. That this Court declare that Defendants lack any
> authority, in law or equity, to confiscate lawfully
> issued documents such as driver's licenses, Social
> Security cards, and Mexican passports, from lawful
> permanent residents who are placed under removal
> proceedings, absent a good faith belief that said
> documents constitute *bona fide* evidence of unlawful
> conduct; and
>
> 2. That this Court issue a permanent injunction,
> enjoining and restraining Defendants from confiscating
> lawfully issued documents such as driver's licenses,
> Social Security cards, and Mexican passports, from lawful
> permanent residents who are placed under removal
> proceedings, absent a good faith belief that said
> documents constitute *bona fide* evidence of unlawful
> conduct.

---

[15] Notably, this issue was not raised in Defendants' 42 page
Motion For Stay of the Court's Judgment Pending Appeal. (R:25-67).

CUtePDF - www.fastio.com

B.  THE QUESTION OF NOTICE OF THE AVAILABILITY OF PAROLE, AND A
HEARING ON ANY APPLICATION THEREFORE, FOR LPRs WHOM INS CHOOSES TO
    RETURN TO MEXICO, PURSUANT TO 8 U.S.C. §1225(b)(2)(C).

When an individual applies for admission at a land border, and the
INS official on duty is not fully convinced that the person has a
right to enter, 8 U.S.C. §1225(b)(2)(C) (now) gives INS the power
to set the person up for removal proceedings, and return him or her
the country of origin, here, Mexico, to await a hearing.  This
provision applies to a U.S. citizen whose claim INS questions, to
a potential visitor, student, or other non-immigrant, where INS
doubts the validity of the visa, and to a lawful permanent
resident, whom INS believes to fall under one of the provisions of
8 U.S.C. §1101(a)(13)(C), and therefore, to be inadmissible.

The practice of returning LPRs to Mexico to await exclusion
hearings preceded the grant of statutory authority to do so.  At
the hearing on Plaintiffs' summary judgment motion, Judge Vela
expressed outrage at this situation, particularly insofar as it
could affect U.S. citizens as well as LPRs, and indicated an intent
to rule, as Plaintiffs had urged, that INS could not return LPRs to
Mexico in such situations. (Transcript, July 31, 1996, at pages 25-
40). But in September of 1996, Congress enacted IIRIRA, and granted
INS the discretion to do so. It is highly doubtful that Congress
contemplated the application of this discretionary power to U.S.
citizens or lawful permanent residents, but the terms of the
§1225(b)(2)(C) make no exceptions for such persons.

After IIRIRA was enacted, pleadings were submitted by both sides,
briefing its applicability to the case at bar.  Among the issues
discussed was (new) §1225(b)(2)(C)  (R:187-254).  So this is not an
issue which took INS by surprise, as it were.  However, under the
law as amended by IIRIRA, the complexion of the issue changed, from
whether INS had the *authority* to return LPRs to Mexico to await a
removal hearing, to whether LPRs were entitled to Due Process in

14

the determination of whether they would be returned to Mexico under 8 U.S.C. §1225(b)(2)(C), or paroled into the U.S., pursuant to 8 U.S.C. §1182(d)(5), while their cases were pending.

It should be noted that this problem arises primarily in situations where an LPR was convicted of (or granted deferred adjudication for) an offense some time ago, or is presently engaged in conduct which, although illegal, does not warrant criminal prosecution. [16] As Judge Vela noted at the summary judgment hearing, (Transcript, July 31, 1996, at pages 22-23,25-26,30), when it is discovered that someone seeking admission is caught with drugs, aliens, or other contraband, Defendants are not likely to forego criminal prosecution, and simply return the LPR to Mexico to await a removal hearing. As Judge Vela summarized the distinction, "[if they] come with a hundred pounds of marijuana, we are going to keep them here." *Id.* at page 30. [17]   In some cases, such as occurred with

---

[16]    For example, this is what occurred with Plaintiffs Ascencio, Merino and Gutierrez. *See* note 1, *supra*.

[17]    Defendants also admitted this obvious fact in their own Statement of Material Facts as to Which There Exists No Substantial Controversy. As stated therein, (R:810-811) (footnote omitted):

When a lawful permanent resident applies for admission as a returning resident at a port of entry under the jurisdiction of the Harlingen, Texas, INS Office, and Respondents have reason to believe that said person has committed an act which would subject him or her to exclusion proceedings, if criminal prosecution is also contemplated, it is the practice of Respondents to parole the individual into the United States for prosecution, and place him or her under exclusion proceedings.  If the prosecution results in a conviction, it is the practice of Defendants to detain said individual at the Service Processing Center at Los Fresnos, Texas, pending exclusion proceedings.  Upon request of counsel, and in some cases upon payment of a bond, such persons are frequently paroled into the United States.  If criminal prosecution is not contemplated, it is the practice of Defendants to initiate exclusion proceedings, and, in most instances, return said person to Mexico, without advising him or her of the possibility of being paroled into the United States.

15

Plaintiff Lopez, the LPR may have an absolute right to re-enter. *See also,* (R:1003-04). But because of faulty information in INS' computer, his drivers license and green card were seized, his car searched so thoroughly that the ceiling was ripped, and he was unceremoniously returned to Mexico. (R:1290-92).

Again, to avoid future procedural complaints, Plaintiffs would amend the specifics of their requests for relief to conform to the issue as it is played out under IIRIRA. Therefore, Plaintiffs urge that they be allowed to amend their Second Amended Complaint, by interlineation, to incorporate the following requests:

> 1.    That this Court declare that a lawful permanent resident of the United States applying for admission a land border in whose case, pursuant to 8 U.S.C. §1225(b)(2)(A), the inspecting Immigration Officer is not convinced that the resident is "clearly and beyond a doubt entitled to be admitted," and who is therefore placed in removal proceedings under 8 U.S.C. §1229a, but who is not arrested on "a warrant issued by the Attorney General," is entitled to Due Process in any determination that he or she be returned to Mexico to await a hearing, in accordance with 8 U.S.C. §1225(b)(2)(C), and that, under such circumstances, Due Process requires that he or she be advised of the right to request parole under 8 U.S.C. §1181(d)(5), and informed of the procedures for making such a request, and be granted a hearing on any such parole request before an impartial adjudicator; and

> 2.    That this Court issue a permanent injunction, enjoining and restraining Defendants from returning to Mexico, pursuant to 8 U.S.C. §1225(b)(2)(C), any lawful permanent resident seeking admission at a land border whom the Immigration Officer is not convinced to be "clearly and beyond a doubt entitled to be admitted," and who is therefore placed in removal proceedings under 8 U.S.C. §1229a, but who is not arrested on "a warrant issued by the Attorney General," without advising said resident of the possibility of requesting parole under 8 U.S.C. §1182(d)(5) and of the procedures for making such a request, and affording a hearing on any such request for parole before an impartial adjudicator.

16

## C.  THE CHANGE IN THE DEFINITION OF THE CLASS

As the Fifth Circuit noted, at page 1, (footnote in original):

> The plaintiff class is comprised of lawful permanent
> residents ("LPR's") faced with pending deportation or
> exclusion proceedings [1] in which no final order of
> deportation or exclusion has yet been entered, who are
> not presently held in detention, and whose immigration
> documents have been confiscated by the Harlingen, Texas,
> office of the Immigration and Naturalization Service
> ("INS").

> ───────
>
> [1]  The Illegal Immigration Reform and Immiration
> Responsibility Act of 1996 ("IIRIRA") "changed the
> nomenclature of immigration orders so that orders of
> deportation and orders of exclusion are both now referred
> to as 'orders of removal'" *Cardoso v. Reno*, 216 F.3d 512,
> 515 n.3 (5th Cir. 2000).  *See also,* IIRIRA § 309(d)(2),
> 110 Stat. 3009-546. 3009-627 (1996) (stating that "any
> reference in law to an order of removal shall be deemed
> to include a reference to an order of exclusion and
> deportation or an order of deportation.").

It is clear from this that the Fifth Circuit recognized that the
difference in "nomenclature" does not affect the substance of the
instant action, and did not further address defendants' complaints
about the change in the definition of the class.  Defendants have
made vague assertions that the named Plaintiffs cannot adequately
represent LPRs in "removal" proceedings, but have never identified
any differences *which would affect any aspect of the case at bar*.


In keeping with the spirit of the Fifth Circuit's opinion, however,
Plaintiffs would request that Defendants be given an opportunity to
file a motion, requesting that this Court reconsider the amendment
to the definition of the class, in which they may raise any and all
substantive concerns to the composition of the class.

## III.  CERTIFICATE OF CONSULTATION

The undersigned has attempted to contact counsel for Defendants
with respect to the instant motion, and left a message to the
effect that, if he did not return her call, it would be presumed
that Defendants were opposed.  Since he did not return her call, it
is therefore presumed that Defendants oppose the instant motion.


Respectfully Submitted,

Lisa S. Brodyaga, Attorney at Law
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)

Fed. ID.  1178
Texas Bar 03052800


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing and attached proposed
Order were served, first class postage prepaid, *and by fax* on Anthony Payne,
Attorney, OIL, Box 878, Ben Franklin Sta., Washington, D.C. 20044,
on August 13, 2001.

18

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


ASCENCIO-GUZMAN et al,            )
                                  )
v.                                )        C.A. No.  B-94-215
                                  )
TROMINSKI, et al.                 )
_____)


EXHIBIT "II" IN SUPPORT OF

PLAINTIFFS' OPPOSITION TO INS' MOTIONS TO AVOID OR DELAY RESPONSE
TO PLAINTIFFS' POST-REMAND REQUESTS FOR ADMISSION

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION AND TIMELINESS . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.   Nature Of The Case And Proceedings Below . . . . . . . . . . . . . . . . . 4

    B.   Statement Of The Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    1. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    2. Proceedings Before The Magistrate . . . . . . . . . . . . . . . . . . . . . . 8

      a. Order Granting Injunctive Relief in the
         Case of Garza-Pacheco . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      b. April 26, 1995 Status Conference Before
         the Magistrate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      c. The Magistrate's Unchallenged Report
         and Recommendation of July 16, 1996 . . . . . . . . . . . . . . 10

    3. Proceedings Before Judge Filemon B. Vela . . . . . . . . . . . . . . . 11

      a. Oral Decision Rendered . . . . . . . . . . . . . . . . . . . . . . . . . 11

        i. Issues Decided By Judge Vela . . . . . . . . . . . . . . . . . 11

        ii. Issues Not Specifically Decided by
          Judge Vela . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        iii. Remaining Issues Judge Vela Stated
          Would Be Decided . . . . . . . . . . . . . . . . . . . . . . . . 12

iv.  Issues That Judge Vela Either
Specifically Determined Would Not
Be Decided Or The Parties Agreed Were Not
Before the Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

4.  Documents Filed After Judge Vela's Oral Decision
of July 31, 1996 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

5.  Proceedings After Case Reassigned to District
Court Judge Hilda G. Tagle . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

6.  Judge Tagle's Memorandum and Order . . . . . . . . . . . . . . . . . . . . . 22

SUMMARY OF THE ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

I.    STANDARD OF REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

II.   THE COURT SHOULD REVERSE THE DISTRICT COURT'S
ORDER BECAUSE IT LACKED JURISDICTION TO DECIDE
THE CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

III.  JUDGE TAGLE'S DECISION TO DISREGARD THE ORAL
DECISION ISSUED BY JUDGE VELA RESULTED IN
SUBSTANTIAL PREJUDICE TO THE DEFENDANTS . . . . . . . 30

A.  Defendants Were Substantially Prejudiced By
Judges Tagle's Decision to Reach Beyond
Judge Vela's Oral Decisions  . . . . . . . . . . . . . . . . . . . . . . . . 30

B.   Judge Tagle's Decision to Modify the Certified
Class Without Notice to Defendants Violated the
Fed. R. Civ. P. and Denied Defendants' Due
Process  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

IV.   THE DISTRICT COURT'S ORDER SHOULD
      BE REVERSED BECAUSE THERE ARE DISPUTED
      GENUINE ISSUES OF MATERIAL FACTS ................. 36

V.    JUDGE TAGLE ERRED IN ISSUING SUMMARY
      JUDGMENT AGAINST DEFENDANTS BASED
      IN PART UPON THE FINDING THAT DEFENDANTS
      FAILED TO COMPLY WITH THE MCNARY
      MEMORANDUM .................................... 42

      A. The Court Improperly Seeks To Supplant
         The Agency's Selected Procedures For
         Dealing With Lawful Permanent Residents Who
         Are Placed In Removal Proceedings ..................... 46

            1. INA § 236(e) Provides That the District Court
               Has No Jurisdiction To Review or To
               Establish Parole Procedures Impacting
               Upon Aliens In Removal Proceedings ........... 46

            2. Congress Delegated Its Authority Over Immigration
               Matters To The Attorney General, Whose
               Established Parole Procedure for Aliens In
               Removal Proceeding Has Been Set Aside
               Improperly By The District Court ............... 48

      B. The Court Improperly Makes An Effort To Afford
         An Alien In Exclusion Proceedings The Same Procedures
         Afforded To An Alien In Deportation Proceedings ........ 50

      C. The Court Incorrectly Ordered The Defendants
         To Provide A Parole Hearing Before What The Court
         Perceives As An "Impartial Adjudicator" ................. 52

      D. Lawful Permanent Residents Are Not Entitled To
         Notice Of The Availability Of Parole .................... 53

E. The Defendants Is Authorized To Confiscate Green
Cards Pursuant To Its Authority To Implement
And Enforce The INA .............................. 54

VI. GARZA-PACHECO'S DISPUTE WAS NOT
PROPERLY BEFORE THE DISTRICT COURT
IN THIS CLASS ACTION CASE ......................... 57

A. The District Court Lacked Jurisdiction to
Order Preliminary Injunctive Relief to
Garza-Pacheco ................................. 58

B. The District Court Erred In Ordering The
Issuance of Work Authorization For Garza-
Pacheco ...................................... 59

CONCLUSION .............................................. 61

ATTACHMENTS

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

CitiPDF - www.fastio.com