147.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 2 1 2001

Michael N. Milby
Clerk of Court

JUANA ASCENCIO-GUZMAN, et al.,  )
            Plaintiffs,  )
                           )
            v.                )    C.A. No. B-94-215
                           )
E.M. TROMINSKI, District  )
Director, Immigration and  )
Naturalization Service;  )
JOHN D. ASHCROFT, United States )
Attorney General; and  )
IMMIGRATION AND NATURALIZATION  )
SERVICE,  )
            Defendants.  )
_____ )

DEFENDANTS' STATEMENT OF OUTSTANDING ISSUES IN RESPONSE TO
PLAINTIFFS' POST-REMAND STATEMENT OF OUTSTANDING ISSUES AND
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 56

# TABLE OF CONTENTS

I.   STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT .... 1

II.  STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ........ 2

   A.   COURSE OF THE PROCEEDINGS ........................... 2

   B.   THE SECOND AMENDED COMPLAINT ...................... 5

   C.   RULINGS MADE BY JUDGE VELA ........................ 6

   D.   PLAINTIFFS' STATEMENT OF THE CASE BEFORE THE FIFTH
        CIRCUIT'S DECISION, AS EXPRESSED IN THIS COURT'S
        JANUARY 13, 1999 ORDER ............................ 9

   E.   DEFENDANTS' STATEMENT OF THE CASE BEFORE THE FIFTH
        CIRCUIT'S DECISION ............................... 10

        1.   Procedural Objections ....................... 11

        2.   Substantive Objections ...................... 12

   F.   THE FIFTH CIRCUIT'S DECISION ..................... 14

        1.   Identification of Issues in the Court's Order . 14

        2.   Substantive Rulings ........................ 15

             a.   Seizure of green cards and issuance of
                  temporary documents .................... 15

             b.   Parole decisions of the Attorney
                  General ................................ 17

   G.   FIFTH CIRCUIT'S DECISION DENYING PETITIONS FOR
        REHEARING ........................................ 18

III. DEFENDANTS' STATEMENT OF OUTSTANDING ISSUES ............ 19

   A.   SUMMARY OF ARGUMENT .............................. 19

# TABLE OF CONTENTS

I.   STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT .... 1

II.  STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ........ 2

     A.   COURSE OF THE PROCEEDINGS ........................... 2

     B.   THE SECOND AMENDED COMPLAINT ........................ 5

     C.   RULINGS MADE BY JUDGE VELA .......................... 6

     D.   PLAINTIFFS' STATEMENT OF THE CASE BEFORE THE FIFTH
          CIRCUIT'S DECISION, AS EXPRESSED IN THIS COURT'S
          JANUARY 13, 1999 ORDER .............................. 9

     E.   DEFENDANTS' STATEMENT OF THE CASE BEFORE THE FIFTH
          CIRCUIT'S DECISION ................................. 10

          1.   Procedural Objections ......................... 11

          2.   Substantive Objections ........................ 12

     F.   THE FIFTH CIRCUIT'S DECISION ....................... 14

          1.   Identification of Issues in the Court's Order . 14

          2.   Substantive Rulings ........................... 15

               a.   Seizure of green cards and issuance of
                    temporary documents ..................... 15

               b.   Parole decisions of the Attorney
                    General ................................. 17

     G.   FIFTH CIRCUIT'S DECISION DENYING PETITIONS FOR
          REHEARING .......................................... 18

III. DEFENDANTS' STATEMENT OF OUTSTANDING ISSUES ............. 19

     A.   SUMMARY OF ARGUMENT ................................ 19

B.  THE FIFTH CIRCUIT DECISION AFFECTS THIS COURT'S
    DECISION WITH RESPECT TO CONFISCATION OF DOCUMENTS
    OTHER THAN "GREEN CARDS" .......................... 20

C.  THE ISSUES IN THIS CASE DO NOT INCLUDE PLAINTIFFS'
    CLAIM WITH RESPECT TO THE CONFISCATION OF OTHER
    DOCUMENTS ......................................... 22

D.  THE FIFTH CIRCUIT'S OCTOBER 31, 2000 SUBSTANTIVE
    RULINGS ........................................... 26

    1.  Parole Claim ................................. 26

    2.  Green Card Claim ............................. 33

    3.  Remaining Issue for this Court- - Whether an
        injunction is appropriate in light of
        8 C.F.R. § 264.5(g) .......................... 36

IV.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FILED PURSUANT TO
     FEDERAL RULE OF CIVIL PROCEDURE 56 ..................... 37

    A.  STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING  37

    B.  ARGUMENT ......................................... 38

        1.  Standard for Summary Judgment  ............... 38

        2.  Statement of undisputed facts ................ 40

        3.  Under the governing statutory and regulatory
            provisions, a Form I-94 constitutes a
            "temporary Form I-551" and, therefore, the
            defendants do not violate plaintiffs' rights by
            issuing it as evidence of registration to those
            LPRs in the United States placed in immigration
            proceedings. ................................. 41

CONCLUSION ................................................. 46

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Amoco Production Co. v. Village of Gambell,
    480 U.S. 531 (1987) ..................................... 45

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ................................. 38, 39

Calcano-Martinez v. INS,
    - - U.S. - -, 121 S. Ct. 2268 (2001) ................... 33

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ................................. 38, 39

Chevron v. Natural Resources Defense Council, Inc.,
    467 U.S. 837 (1984) ..................................... 43

City of West Covina v. Perkins,
    525 U.S. 234 (1999) ........................... 14, 18, 44

Crowe v. Smith
    - - F.3d - -, 2001 WL 902038 (5th Cir. Aug. 27, 2001) ... 30

Daly v. Sprague, M.D.,
    742 F.2d 896 (5th Cir. 1984) .................... 26, 31, 36

Fano v. O'Neill,
    806 F.2d 1262 (5th Cir. 1987) ...................... 13, 15

Florida v. Callaway,
    489 F.2d 567 (5th Cir. 1974) ........................... 46

Giddings v. Chandler,
    979 F.2d 1104 (5th Cir. 1992) ......................... 32

Gregory v. Mitchell,
    634 F.2d 199 (5th Cir. 1981) .......................... 26

Hang On, Inc. v. City of Arlington,
    65 F.3d 1248 (5th Cir. 1995) .......................... 27

Harris v. Sentry Title Co.,
    806 F.2d 1278 (5th Cir. 1987) ......................... 36

Hathcock v. Acme Truck Lines,
    - - F.3d - -, 2001 WL 946407,
    (5th Cir. September 6, 2001) ........................... 38

Hayles v. General Motors Corp.,
    82 F. Supp. 2d 650 (S.D. Tex. 1999) ..................... 39

INS v. St. Cyr,
    --U.S.--, 121 S.Ct. 2271 (2001) ........................ 33

Johnson v. Uncle Ben's, Inc.,
    965 F.2d 1363, 1370 (5th Cir. 1992) ................... 35

Little v. Liquid Air Corp.,
    37 F.3d 1069 (5th Cir. 1994) .......................... 39

Loa-Herrera v. E.M. Trominski,
    231 F.3d 984 (5th Cir. 2000) ................... 1, passim

Maleng v. Cook,
    490 U.S. 488 (1989) ................................... 32

Marcello v. Bonds,
    349 U.S. 302 (1955) ............................... 13, 45

Matsushita Elec. Inc. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) ................................... 39

Preiser v. Rodriquez,
    411 U.S. 475 (1973) ................................... 32

Santana v. Chandler,
    961 F.2d 514 (5th Cir. 1992) .......................... 32

Schwartz v. NMS Industries, Inc.,
    575 F.2d 553 (5th Cir. 1978) .......................... 31

Transitional Learning Community at Galveston, Inc. v.
U.S. Office of Personnel Management,
    220 F.3d 427 (5th Cir. 2000) .......................... 43

U.S. v. O'Keefe,
    128 F.3d 885 (5th Cir. 1997) .......................... 24

United States v. Becerra,
    155 F.3d 740 (5th Cir. 1998) .......................... 35

## STATUTES

The Immigration and Nationality Act of 1952, as amended:

Section 235(b)(2)(C),
    8 U.S.C. § 1225(b)(2)(C) ........................... 18, 29

Section 236,
    8 U.S.C. § 1226 ..................................... 13, 30

Section 236(a),
    8 U.S.C. § 1226(a) ..................................... 29

Section 236(e),
    8 U.S.C. § 1226(e) ........................... 17, _passim_

Section 264(b),
    8 U.S.C. § 1304(b) ..................................... 19

Section 264(d),
    8 U.S.C. § 1304(d) ............................. 16, 41,43

Section 274A(a)(1)(A),
    8 U.S.C. § 1324a(a)(1)(A) ............................ 41

Section 274A(h)(3),
    8 U.S.C. § 1324a(h)(3) .............................. 41

## OTHER STATUTES

5 U.S.C. § 552a(b) ........................................ 19

28 U.S.C. § 2241 ............................... 19, 31, 32,33

## REGULATIONS

8 C.F.R. § 264.1(b) (2000) ........................... 40, 42

8 C.F.R. § 264.5(g) ............................... 16, _passim_

## MISCELLANEOUS

Fed. R. Civ. P. 23 ...................................... 12

Fed. R. Civil. P. 56 .............................. 1, 2, 38

Fed. R. Civ. P. 56(c) .................................. 38

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUANA ASCENCIO-GUZMAN, et al.,  )
             Plaintiffs,  )
                           )
           v.  )   C.A. No. B-94-215
                           )
E.M. TROMINSKI, District  )
Director, Immigration and  )
Naturalization Service;  )
JOHN D. ASHCROFT, United States )
Attorney General; and  )
IMMIGRATION AND NATURALIZATION  )
SERVICE,  )
             Defendants.  )
_____)

**DEFENDANTS' STATEMENT OF OUTSTANDING ISSUES IN RESPONSE TO
PLAINTIFFS' POST-REMAND STATEMENT OF OUTSTANDING ISSUES AND
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 56**

I.    <u>STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT</u>

On August 1, 2001, this Court set a schedule for determining

the remaining issues in the case following decision and order of

the United States Court of Appeals for the Fifth Circuit's

("Fifth Circuit") of October 31, 2000 vacating of the Court's

January 13, 1999 final Order. <u>Loa-Herrera v. E.M. Trominski</u>, 231

F.3d 984, 986 (5th Cir. 2000); R. 131.[1] The scheduling order set

the timetable for the parties to identify and address what issues

remain for the Court's adjudication of the Fifth Circuit's order.

---

     [1] The abbreviation "R." followed by a number refers to a
document filed with this Court as listed on the docket sheet.
Numbers following the docket entry refer to page numbers of the
document.

It also ordered that the parties should file dispositive motions
if deemed appropriate.  Id.  The defendants, pursuant to the
Court's order, hereby respond to plaintiffs' statement of
outstanding issues and identify the remaining issue for this
Court's consideration and, additionally, respectfully move the
Court to grant summary judgment on behalf of the defendants under
Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56.[2]

## II.  **STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS**

### A.   **COURSE OF THE PROCEEDINGS**

On July 15, 1994, plaintiffs brought this civil action in
District Court for the Southern District of Texas, Brownsville,
Texas ("Court"), on a Petition for Writ of Habeas Corpus and
Class Action Complaint for Declaratory Judgment and Injunctive
Complaint.  R. 1 at 1402, accompanied by a Motion for Preliminary
Injunction.  R. 2 at 1392-99.  Plaintiffs filed a motion for
class certification on December 6, 1994.  R. 11 at 1335-60.  On
July 28, 1994, plaintiffs amended their Complaint.  R. 7.  On
January 17, 1995, plaintiffs filed a motion for leave to file
another amended complaint, accompanied by their Second Amended
Petition and Complaint ("Second Amended Complaint").  R. 14 at

---

[2] Accompanying this memorandum and motion is defendants'
motion for an enlargement of the page limit governing this
memorandum from twenty-four to forty-six pages.

1326-28; R. 15 at 1287-1325.[3]

On June 12, 1995, plaintiffs filed their motion for partial summary judgment based on the Second Amended Complaint.  R. 40. Defendants filed their response and motion for summary judgment on August 28, 1995.  R. 53.  On April 14, 1998, this case was reassigned to the Honorable District Court Judge Hilda G. Tagle, who currently presides over the matter.  See Docket Sheet at 11. The previously presiding District Court Judge, the Honorable Filemon B. Vela ("Judge Vela"), issued an Order on May 21, 1998, which directed all pending motions, including the cross motions for summary judgment, to be dismissed without prejudice and granted leave to the parties to resubmit any motions which had been dismissed.  R. 96.

On or about September 11, 1998, although they had not resubmitted their motion for summary judgment, plaintiffs submitted to this Court two documents, one entitled "Notice of Submission of Proposed Order", Exhibit 1 (Tab 1), and the other

---

[3]  On January 14, 1995, plaintiffs moved the Court to permit them to amend the complaint by, in part, asserting additional members and claims.  R. 14 at 1326.  This case was at that time referred to Magistrate Judge Fidencio G. Garza, Jr., who did not issue a written decision on plaintiffs' motion.  Instead in open court on April 26, 1995, and in response to the plaintiffs' comments and oral request for a ruling on the motion, Magistrate Judge Garza stated "We're flying with the second amended complaint and they filed their response to that, and that's the pleading we're going to sink or swim with."  R. 71 at 45.  The parties interpreted Judge Garza, as a result of his response, as having granted plaintiffs' motion to amend.

3

entitled "Memorandum and Order."  Exhibit 2 (Tab 2).  These documents are not reflected in the Court's docket sheets as having been filed.  On September 30, 1998, this Court signed the Memorandum and Order without modification and issued it as its own.  R. 97 at 168-72.  The Order dismissed the case and granted summary judgment for plaintiffs.  Id.

The defendants, on October 15, 1998, filed a motion to alter and set aside the Memorandum and Order of September 30, 1998, R. 101 at 94-104, and a reply on October 19, 1998.  R. 100 at 106-18.  In response, the plaintiffs filed another proposed order with the Court similar to the one filed on September 30, 1998. The Court adopted the proposed memorandum and order on November 25, 1998.  R. 104.  The Order became final on January 13, 1999. R. 109.

The defendants timely appealed the Court's January 13, 1999 Order to the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit").  R. 110.  On October 31, 2000, the Fifth Circuit vacated the Court's decision, reached several legal conclusions, and remanded for further necessary proceedings.  R. 121.  On December 13, 2000, the plaintiffs moved the Fifth Circuit to rehear the matter.  Exhibit 3 (Tab 3), Petition for Rehearing.  The plaintiffs additionally requested that the Fifth Circuit rehear the matter en banc.  Exhibit 4 (Tab 4), Petition for En Banc Rehearing.  The Fifth Circuit denied the plaintiffs'

4

requests on January 4, 2001.  The mandate issued in the case on January 12, 2001.  R. 121.

On July 23, 2001, the Court held a status conference in the matter to determine what issues remain to be adjudicated after the Fifth Circuit's decision.  R. 122.  Plaintiffs argued that most issues "are still alive" after the Fifth Circuit's decision; defendants argued that the Fifth Circuit's decision narrowed the issues for this Court's consideration.  R. 130.  On August 1, 2001, in an effort to determine "what issues remain before the Court in the case at bar", this Court established a schedule for determining the remaining issues and for filing of dispositive motions.  R. 131.

### B.    THE SECOND AMENDED COMPLAINT

The Second Amended Complaint lists seven causes of actions and requests several prayers for relief.  R. 15 at 13-17.  In essence, the first cause and prayer for relief seek a writ of habeas corpus based on the charge that the defendants violate the due process rights of a lawful permanent resident ("LPR"), who is not in detention, by seizing his/her Form I-151 or I-551 ("green card") prior to the issuance of a final deportation order and then not replacing the green card with a suitable replacement document that contains an employment authorized stamp and by placing notations on the replacement document as to the alien having been placed in proceedings.  R. 15 at 13-14, 17.

The second cause of action and prayer for relief requests that the Court enjoin the defendants from engaging in the alleged conduct, while the third cause and prayer request that the Court declare the alleged action a violation of a LPR's rights.  <u>Id</u>. at 15, 18.  The plaintiffs also seek declaratory relief and to enjoin the defendants from not paroling a LPR placed in exclusion proceedings into the United States.  R. 15 at 18-19.

The Second Amended Complaint's fourth cause of action and accompanying prayer for relief request that the Court grant declaratory relief based on the allegation that defendants impermissibly take into consideration the facts that an LPR is in immigration proceedings, and/or is released on bond, in determining whether a LPR should be readmitted to the United States, or held, when they apply for readmission to the country. R. 15 at 16.  The fifth cause of action and companion prayer for relief seek injunctive relief based on the same allegation.  <u>Id</u>. at 16, 19.  The sixth and seventh causes of actions and plaintiffs' prayers for relief request declaratory and injunctive relief based on the claim that an LPR's rights are violated by the defendants allegedly cancelling or forfeiting bond because the alien has departed the country.  R. 15 at 17, 19.

### C.   RULINGS MADE BY JUDGE VELA

Prior to the case being transferred, Judge Vela conducted a hearing on July 16, 1996, to discuss the pending cross-motions

for summary judgment.  At the hearing, Judge Vela made various
findings and narrowed the issues of the case.  Specifically,
Judge Vela requested that the parties brief only two issues.

In limiting the issues of the case, Judge Vela orally held
that defendants may confiscate the green cards issued to LPRs.
R. 118 at 7-10, 14.  He also held that defendants may issue the
Form I-94 as a replacement document when the green card is
confiscated, id.; may continue their practice of limiting the
duration of the Form I-94's validity, id. at 10; and must,
although it had not been a matter in dispute, note on the Form I-
94 that it is renewable, id. at 10, 14.

Judge Vela stated that "the only issue" before the court and
the "only thing that remains pending" is whether the defendants
violate the LPR's rights when noting on the Form I-94 that such
an alien is in immigration proceedings and whether the notation
interferes with the alien's ability to obtain employment.  R. 118
at 17.  Having informed the plaintiffs that they would have to
convince the court that such notation violated their rights,
Judge Vela ordered them to brief the matter from the perspective
of "[plaintiffs] as against the [defendants] and from the
"standpoint of the employer."  Id. at 17.  Judge Vela commented,
"in other words, why shouldn't the employer know that's a third
party and there may not be any legal effect upon that, I don't
know."  Id.

7

Subsequently, Judge Vela identified an additional question on which he would like briefing.  R. 118 at 38-39, 42.  Judge Vela ordered the defendants to present a brief advising, "where is the authority of the United States and Immigration and Naturalization Service to deny [a lawful permanent resident] admission into the country[.]"  Id. at 38-39.  He indicated that this question was presented so that he could consider the issue of whether the defendants violate the rights of lawful permanent residents by not paroling such aliens into the United States.  R. 118 at 27-39.

In limiting the issues for consideration, Judge Vela denied plaintiffs' request to brief the issue of whether the defendants violate the rights of a lawful permanent resident alien when they confiscate the "driver's license, Social Security card and other documents that bear on their right to live and work in the United States."  R. 118 at 44.  Judge Vela stated that the issue of whether defendants act in violation of the aliens' rights by confiscating documents other than the green card would not have to be reached, if the court determined that the defendants had not violated the aliens' right by not paroling the alien into the United States.  Id. at 44-45.  Furthermore, as noted, Judge Vela, on May 21, 1998, directed all pending motions, including the cross motions for summary judgment, to be dismissed without prejudice and granted leave to the parties to resubmit any

8

motions which had been dismissed.  R. 96.

D.   **PLAINTIFFS' STATEMENT OF THE CASE BEFORE THE FIFTH CIRCUIT'S DECISION, AS EXPRESSED IN THIS COURT'S JANUARY 13, 1999 ORDER**

Without having re-urged their summary judgment motion, the plaintiffs submitted to this Court on or about September 11, 1998, a "Memorandum and Order". Exhibit 2.  The Court signed the Order without modification on September 30, 1998.  The plaintiffs then submitted a second similar memorandum and order that the Court again signed without modification on November 25, 1998.  R. 97, R. 104.  The Court's order, therefore, reflects the plaintiffs' statement of the issues of the case.[4]  R. 104.

Plaintiffs' submissions, as adopted by the Court, identify three issues in the case.  First, plaintiffs raised as an issue the alleged practice of the taking of green cards from LPRs and the issuance of replacement cards pending removal proceedings ("green card claim").  Loa-Herrera v. E.M. Trominski, 231 F.3d at 986.  In particular, they alleged that the defendants act arbitrarily and capriciously, inconsistent with Due Process, when they allegedly confiscate green cards from non-arriving permanent residents not held in custody, without making the determination on a case by case basis as required by an internal INS document,

_____

[4]  The Court also modified the definition of the class to include individuals who meet the requirements but were placed in removal proceedings, not just exclusion or deportation proceedings.  R. 103.

9

the McNary Memorandum, and when having confiscated such a card, they fail to provide a replacement document evidencing the resident's status as a LPR, or they place notations on a replacement document which are not authorized by Operating Instruction 264.2, such as notations that the person is under proceedings, or is not entitled to be employed in the United States.  R. 104 at 3.

Plaintiffs additionally claimed "that LPR's are entitled to notice and hearing to determine whether they should be paroled within the United States pending a final determination in their removal proceedings."  Loa-Herrera v. E.M. Trominski, 231 F.3d at 986.  This "parole claim", once adopted by the Court, resulted in the INS having to hold a hearing before determining whether an LPR should be paroled into the United States pending a final order of removal.  Id.  The plaintiffs also proposed that the defendants violated the Due Process and the Fourth Amendment of the United States Constitution, when they allegedly confiscated other lawfully issued documents, absent a good faith belief that they are bona fide evidence of unlawful conduct.  R. 104 at 4, ("other documents claim").

### E.   DEFENDANTS' STATEMENT OF THE CASE BEFORE THE FIFTH CIRCUIT'S DECISION

The Defendants' appeal of the Court's order to the Fifth Circuit sets forth their position with respect to the issues of the case after Judge Vela's order.  Exhibit 5 (Tab 5),

10

Appellant's Brief.   In essence, the defendants argued that this Court's January 13, 1999 Order addressed issues that were not ripe for adjudication as Judge Vela had previously limited the issues for consideration during the July 16, 1996 hearing held on the parties' cross-motions for summary judgment.   R. 79 at 422. In addition, the defendants argued that many of the legal conclusions reached by the Court in signing plaintiffs' Memorandum and Order were in error.[5]

### 1.   Procedural Objections

In the appeal, the defendants raised several procedural objections to the Court's January 13, 1999 Order.   Defendants argued that the Court erred by depriving them of notice that the facts would be reached and that the case would not be decided upon the law as was ruled by Judge Vela.   Judge Vela decided that the case would turn only upon two legal questions - - whether defendants violate LPRs' rights when noting on Form I-94 "in immigration proceedings" and whether such notations interfere with the alien's ability to obtain employment, R. 118 at 17; whether defendants have authority to deny admission to an LPR, i.e., do defendants violate the LPR's rights by not granting parole, R. 118 at 38-39, 42.   Exhibit 5 at 32.

The Court's January 13, 1999 final order went beyond the

---

[5] Plaintiffs' Response Brief challenged the defendants' characterization of the issues in the case.

issues in the case.  For example, this Court found that the defendants "confiscated other lawfully issued documents which do not constitute bona fide evidence of unlawful conduct".  R. 104 at 4.  Judge Vela expressly stated that the issue of the "other documents claim" would not be considered by the Court.  R. 118 at 44.  Additionally, defendants contended that the Court's factual finding was not supported by the evidence of record.  Exhibit 5. In short, the Court's decision to go beyond Judge Vela's decision and accept the plaintiffs' averments of fact and to reject the defendants' averment resulted in substantial prejudice to the defendants.  After narrowing the issues, Judge Vela had requested briefing on only two legal questions.[6]

## 2.    Substantive Objections

The defendants also raised several substantive challenges to this Court's January 13, 1999 Order.  Initially, the defendants argued that the plaintiffs lacked standing to pursue the matter. The defendants also challenged the Court's "green card claim", which found the defendants had violated the plaintiffs' rights by not complying with the McNary Memorandum.  While raising factual

---

[6]  The defendants additionally challenged the modification of the class definition.  The modification was done without any notice to defendants and there was no motion before the court asking for such relief.  See Fed. R. Civ. P. 23.  The modification was done without compliance with the duty of the court to inquire into the ability of aliens in exclusion and deportation proceedings to represent aliens in removal proceedings.  Exhibit 5 at 35.

challenges to the finding, the defendants argued that they are authorized to confiscate green cards and that the Court erred by giving the McNary Memorandum the force of law as it is an internal memorandum intended for internal use.  See Fano v. O'Neill, 806 F.2d 1262, 1263 (5th Cir. 1987);  Exhibit 5 at 42-45.

The defendants submitted that the plaintiffs' "parole claim" was a challenge to the Attorney General's selected method for implementing parole, including under 8 U.S.C. § 1226, and to the district director's decisions to parole certain aliens but not others.  Exhibit 5 at 48.  In essence, they argued that the Court lacked jurisdiction to enter or set aside the Attorney General's actions or decisions regarding parole of certain aliens.

The defendants further argued that even if the Court had jurisdiction to consider the "parole claim", the Court improperly supplanted the selected mode of enforcement by dictating the procedures by which the agency must operate.  Exhibit 5 at 48-59. The Court's decision that a parole hearing must be held before a person whom it deems to be an "impartial adjudicator" conflicted with the holding in Marcello v. Bonds, 349 U.S. 302, 311 (1955), in which the Supreme Court concluded that parole can occur before the INS, and not an "impartial adjudicator".  Similarly, the defendants argued that the Court's decision that plaintiffs are entitled to notice of the availability of parole conflicts with

13

the finding in <u>City of West Covina v. Perkins</u>, 525 U.S. 234, 240-41 (1999), where the Supreme Court decided that due process does not require additional notice of available procedures where those procedures are established by published, generally available statutes, such as the parole statute and regulations.  <u>See</u> Exhibit 5 at 48-57.[7]

### F.    THE FIFTH CIRCUIT'S DECISION

#### 1.    <u>Identification of Issues in the Court's Order</u>

On October 31, 2000, the Fifth Circuit issued its decision in the case.  <u>Loa-Herrera v. E.M. Trominski</u>, 231 F.3d 984.  As an initial matter, it found that the plaintiffs had standing to pursue the case and identified the issues raised by plaintiffs in their pleadings.  <u>Id</u>. at 987-98.  Moreover, the Fifth Circuit characterized this Court's order of January 13, 1999, as one which,

> regulates the seizure of an LPR's green card and issuance of temporary documents pending removal proceedings, requires the INS to hold a hearing before determining whether an LPR should be paroled into the United States pending a final order of removal, and guarantees LPR's the right not to have their other lawfully issued documents confiscated unless those documents constitute *bona fide* evidence of unlawful conduct.

<u>Id</u>. at 986.  Finally, without specifying the challenges, it noted

---

[7]    The defendants also challenged this Court's June 12, 1995 order directing defendants to issue work authorization for Mr. Garza-Pacheco.  The defendants argued that Mr. Garza-Pacheco's case was not properly before the Court in the class action case. Exhibit 5 at 57-60.

that the defendants' appeal "present[ed] a series of procedural and substantive objections to the order." <u>Id.</u> at 987.

Upon identifying the issues raised in this Court's order, the Fifth Circuit made substantive rulings and vacated the order. In doing so, it elected not to address defendants' procedural and factual objections because of its rulings made with respect to the substantive issues. <u>Loa-Herrera v. E.M. Tominski</u>, 231 F.3d at 988. It did, however, specify that the remand was, in part, "to ensure that the government has ample opportunity to press its factual and legal contentions before the district court." <u>Id</u>. at 987. Conversely, the decision to remand does not state that it was done to allow plaintiffs to again raise new arguments and claims or to present arguments considered and rejected by the court of appeals.

### 2.   <u>Substantive Rulings</u>

#### a.   **Seizure of green cards and issuance of temporary documents**

The Fifth Circuit also rendered rulings on some of the substantive issues raised in this Court's Order. First, it addressed the seizure of green cards and issuance of temporary documents. While noting that this Court relied on the McNary Memorandum, it concluded that,

> [t]he district court erred in relying on the McNary Memorandum, for an agency's internal personnel guidelines "neither confer upon [plaintiffs] substantive rights nor provide procedures upon which [they] may rely. *Fano v.*

> _O'Neil_, 806 F.2d 1262, 1264 (5th Cir. 1987).  The
> memorandum merely articulates internal guidelines
> for INS personnel; it does not establish judically
> enforceable rights.

Loa-Herrera v. E.M. Trominski, 231 F.3d at 989.  Notwithstanding

its McNary Memorandum finding, the Fifth Circuit concluded that 8

U.S.C. § 1304(d) provides that every alien in the United States

shall be issued a registration document prescribed under the

regulations by the Attorney General.  Id. at 988.  The Court

identified 8 C.F.R. § 264.5(g)[8] as the authority under which the

defendants give registration documentation to LPR's placed in

immigration proceedings and who are not in custody.  Id. at 989.

As it had not been addressed by this Court or the parties, it

remanded the proceedings in part so the Court could determine

whether an injunction is appropriate in light of the regulation.

---

[8]   8 C.F.R. § 264.5(g) provides:

> A person in exclusion proceedings shall be
> entitled to evidence of permanent resident status
> until ordered excluded. Such evidence shall be in
> the form of a temporary Form I-551 issued for a
> period sufficient to accomplish the exclusion
> proceedings.  A person in deportation proceedings
> shall be entitled to evidence of permanent
> resident status until ordered deported or
> excluded.  Issuance of an Permanent Resident Card
> to a person in exclusion or deportation
> proceedings, provided the person had status as a
> lawful permanent resident when the proceeding
> commenced, shall not affect those proceedings.

16

The Fifth Circuit also made observations regarding the scope and
meaning of the regulation.

The Fifth Circuit found that the INS must issue a "temporary
Form I-551" to persons in exclusion proceedings who are in the
United States, while the regulation does not specify the form of
documentation with respect to deportation proceedings.  It also
concluded that the Court may not interfere with the INS's
discretion to balance an LPR's interest in possessing particular
forms of documentation against an employer's interest in knowing
a potential employee's present and future immigration status,
absent contrary legal authority.  Loa-Herrera v. E.M. Trominski,
231 F.3d at 989-90.

### b.  Parole decisions of the Attorney General

The Fifth Circuit next addressed the Court's decision
requiring the INS to hold a hearing before determining whether a
LPR should be paroled into the United States pending a final
order.  Loa-Herrera v. E.M. Trominski, 231 F.3d at 990-91.  It
characterized the issue as whether:

> due process requires the INS to provide an LPR
> with notice of his right to parole within the
> United States and with a parole hearing before the
> Attorney General decides how to exercise her
> discretion.

Id. at 990.  Citing Section 236(e) of the INA, 8 U.S.C. §
1226(e), the Fifth Circuit concluded that this Court lacked
jurisdiction to "adjudicate deprivations of the plaintiffs'

statutory and constitutional rights to parole." Id. at 990-91.

The Fifth Circuit specifically noted that the plaintiffs raised the argument that the authority at issue in the case was 8 U.S.C. § 1225(b)(2)(C), not 8 U.S.C. § 1226(e). However, it specifically rejected the plaintiffs' argument. Id. at 991. It concluded that 8 U.S.C. § 1226(e) governs the issue and denied jurisdiction to consider the Attorney General's discretionary judgment regarding the application of parole, including the manner in which that discretionary judgment is exercised. Id. The Fifth Circuit, therefore, vacated the portions of this Court's decision requiring parole hearings, noting that it lacked jurisdiction to consider plaintiffs' constitutional claims.[9] Id. at 991.

### G.   FIFTH CIRCUIT'S DECISION DENYING PETITIONS FOR REHEARING

After the October 31, 2000, decision, the plaintiffs petitioned the Fifth Circuit for panel and en banc rehearing. Exhibit 3 and Exhibit 4. Like their argument on appeal, the plaintiffs contended that the Fifth Circuit erred in finding that

---

[9] While not addressing the merits of plaintiffs' claim, the Fifth Circuit noted the decision in City of West Covina v. Perkins, 525 U.S. 234, 240-41 (1999), in which the Supreme Court concluded that due process does not require that the government provide notice of the availability of remedies where the remedies are noticed in publically available statutes. Loa-Herrera v. E.M. Tominski, 231 F.3d at 990. The Fifth Circuit also vacated the preliminary order issued on behalf of Mr. Garza-Pacheco as he was not a member of the named class. Id. at 991.

it lacked jurisdiction under 8 U.S.C. § 1226(e) to adjudicate
their claims of deprivations of their statutory and
constitutional rights to parole.  Plaintiffs alternatively argued
that the Court had jurisdiction to consider their challenges
pursuant to 28 U.S.C. § 2241.  Furthermore, while not addressed
in this Court's January 13, 1999, decision, the plaintiffs argued
that in light of 8 U.S.C. § 1304(b) and 5 U.S.C. § 552a(b), the
INS erred in noting an alien's immigrant status on documents
evidencing permanent resident status.  Exhibit 3 and Exhibit 4.
Upon consideration of plaintiffs' arguments, the Fifth Circuit
denied the petitions for rehearing on January 4, 2001.

### III. <u>DEFENDANTS' STATEMENT OF OUTSTANDING ISSUES</u>

#### A.    SUMMARY OF ARGUMENT

The plaintiffs have argued that the Fifth Circuit's decision
has little, if any, affect on what issues remain for this Court
to consider on remand.  R. 128, R. 130.  They assert that all
issues, except for Mr. Garza-Pacheco's preliminary injunction,
remain for the Court's consideration on remand.  <u>Id.</u>  In essence,
plaintiffs argue that the Fifth Circuit's decision has no bearing
on the issues in the case.

The Fifth Circuit's October 31, 2000 decision, however, was
not an exercise in futility.  Rather, the decision narrows the
scope of the proceedings and settles many of the legal questions

19

properly raised.[10]   In addition, the decision specifies the

issues ripe for consideration on remand.   The Fifth Circuit's

decision represents the law of the case and any disagreement that

the plaintiffs may have with the decision should have been made

to the Supreme Court, not this Court on remand.

In light of the Fifth Circuit's decision and a review of the

issues properly presented to this Court, only one issue remains

for this Court's consideration.   As specified by the Fifth

Circuit, the Court should consider whether an injunction is

appropriate in light of 8 C.F.R. § 264.5(g).   Loa-Herrera v. E.M.

Trominski, 231 F.3d at 989.   All other issues in this Court's

January 13, 1999 Order are not properly before the Court or have

been disposed of by the Fifth Circuit's decision.

There is no genuine issues of material fact with respect to

whether defendants comply with 8 C.F.R. § 264.5(g).   Accordingly,

the case is ripe for summary judgment.   The Court should grant

defendants' motion for summary judgment considering that the

issued replacement documents fully comply with the statutory and

regulatory cited by the Fifth Circuit.

> **B.   THE FIFTH CIRCUIT DECISION AFFECTS THIS COURT'S
> DECISION WITH RESPECT TO CONFISCATION OF DOCUMENTS
> OTHER THAN "GREEN CARDS"**

Plaintiffs claim that the Fifth Circuit's decision contains

---

[10]   In fact, as is argued, the Fifth Circuit addressed some
issues not raised in the plaintiffs' Second Amended Complaint.

"important victories" as it allegedly did not "reverse" this
Court's decision with respect to the definition of the class or
the "other documents claim", namely that the INS violates an
LPR's constitutional rights when it allegedly confiscates
lawfully issued documents other than green cards absent a good
faith belief that they constitute *bona fide* evidence of unlawful
conduct.  R. 128 at 1.[11]  The plaintiffs' assertion, however,
ignores the aspect of the Fifth Circuit's order vacating the
entirety of this Court's decision and remanding the case for
consideration of defendants' factual and legal arguments.

The decision to vacate this Court's January 13, 1999
decision does not constitute an approval of those issues not
addressed in the Fifth Circuit's substantive analysis.  Rather,
in addition to specific legal rulings, the Fifth Circuit remanded
the matter for "any further <u>necessary</u> proceedings".  <u>Loa-Herrera</u>
<u>v. E.M. Trominski</u>, 231 F.3d at 992 (emphasis added).  In its
decision, the Fifth Circuit identifies the two specific reasons
why remand to this Court was <u>necessary</u>, one being to "ensure that
the government has ample opportunity to press its factual and
legal contentions before the court."  <u>Id</u>. at 987.  The
defendants' factual and legal contentions include challenges to

---

[11]  As the Court can dispose of the case in light of the
issues identified by the Fifth Circuit, the defendants need not
now raise their objections to the Court's modification of the
class definition.

this Court's findings addressing the "other documents claim".

The Fifth Circuit's decision therefore does not set forth

"important victories" for the plaintiffs.[12]

> ### C. THE ISSUES IN THIS CASE DO NOT INCLUDE PLAINTIFFS' CLAIM WITH RESPECT TO THE CONFISCATION OF OTHER DOCUMENTS.

Before the Fifth Circuit, the defendants argued that this

Court mistakenly considered and reached the "other documents

claim" included in plaintiffs' memorandums and orders submitted

to this Court. R. 104. The plaintiffs improperly included in

their submissions to this Court as an issue in the case the claim

that defendants act inconsistent with the United States

Constitution when they allegedly "confiscate other lawfully

issued documents, absent a good faith belief that they are *bona*

*fide* evidence of unlawful conduct." Id. The record reflects

that the "other documents claim" was not an issue in the case

when this Court issued its decision and, accordingly, is not an

issue on remand.

As an initial matter, neither the plaintiffs' Complaint,

their First Amended Complaint, nor their Second Amended Complaint

state as a claim the issue of "other documents" which the

plaintiffs included in the Memorandum and Order submitted to this

_____

[12] Despite the plaintiffs' claimed "important victories", it should be mentioned that they have moved to this Court to grant leave to amend their complaint for a third time so that the issues may be "clarified" by the Court on remand. R. 134.

Court on September 11, 1998.  R. 1, R. 7, R. 15.  While the
Second Amended Complaint alleges that the INS confiscates non-INS
documents, it does not claim a cause of action based on the
alleged facts or request any explicit relief.  R. 15.  In
addition, as argued to the Fifth Circuit and despite plaintiffs'
argument to the contrary, the defendants dispute that they act in
such a manner as alleged and submit that there has been no
factual finding or discovery with respect to the issue.  <u>See</u>
Exhibit 5 at 36-41.  In particular, defendants have not admitted
that they confiscate other documents without a good faith belief
that they are bona fide evidence on unlawful conduct.  R. 28 at
7; R. 77 (granting government's motion for leave to file answers
to Second Amended Complaint and requests for admissions).
Accordingly, this issue is outside the scope of the plaintiffs'
Second Amended Complaint and should not be considered by this
Court on remand for that reason alone.

Furthermore, the question of "other documents" was not
before this Court in light of Judge Vela's oral decisions on July
31, 1996.  During the hearing before Judge Vela, the following
conversation transpired:

>           MS. BRODYAGA:  And then I believe the - - the
>      final issue, Your Honor, in terms of people in
>      exclusion proceedings, where the Government picks
>      up their cards and throws them back, they often
>      take their driver's license, Social Security card
>      and other documents that bear on their right to
>      live and work in the United States.  And we claim
>      that unless there is bona fide evidence in the

case they don't have a right to do that.

THE COURT: Well, let's first pass on issue one and then we will address the other part of that. If I make a decision to the effect what they are doing is in nonconformance with their own regulation, that moots the question doesn't it?

MS. BRODYAGA: I would think so. That they would - -

THE COURT: In other words, if they have to parole them or specifically parole them or whatever into the country, that is pretty much going to moot that question.

R. 118 at 44-45. Judge Vela's order denied the plaintiffs' request to have the Court consider the issue. In fact, plaintiffs have admitted that it was their understanding that the issue was not before the Court as:

[i]t was Plaintiffs' understanding at the July 31, 1996 hearing that the Court had advised Plaintiffs that this issue would ride with the underlying issue of whether INS has the authority to return class members to Mexico to await their exclusion hearings, <u>and had declined to hear argument at that time</u>.

R. 89 at 1-2 (emphasis added).[13] This Court was bound by Judge Vela's decision and was required to follow the ruling as it had not decided the ruling to be erroneous, no longer sound, or would create injustice. <u>U.S. v. O'Keefe</u>, 128 F.3d 885, 891 (5th Cir. 1997) ("Generally, under the law of the case doctrine, a successor judge must defer to the order of a prior judge.").

---

[13] After Judge Vela's order, the defendants admittedly incorrectly stated that plaintiffs failed to brief the issue. R. 87 at 1-2.

Accordingly, the plaintiffs incorrectly included the issue in its
proposed orders and memorandums which this Court adopted as its
own on September 30, 1998 and November 25, 1998. See R. 104.
The issue was not before the Fifth Circuit and is not before this
Court on remand.

Recently, the plaintiffs moved for leave to amend their
complaint for a third time. R. 134. Plaintiffs argued that the
Court should grant leave to the amendment in order to address the
procedural objections raised to the Fifth Circuit by the
defendants. Id. Defendants opposed the motion for leave to
amend the complaint because it is contrary to this Court's August
1, 2001 order and would create undue delay and prejudice the
defendants. R. 140. In part, defendants argued that the Court
should not grant leave because the case is ripe for adjudication
without consideration of the defendants' procedural objections
made prior to the Fifth Circuit's substantive rulings and
vacation of this Court's Order. Id. In determining that the
case is ripe for adjudication, however, the Court must decide
what issues remain after the Fifth Circuit's remand. In so
doing, it should consider defendants' assertion that the "other
documents claim" is not at issue in the case as it has not been
properly raised.

Plaintiffs' motion seeking leave to amend their complaint
for a third time to "clarify" the issue is, in effect, an

25

admission that the issue was not properly raised prior to the
Fifth Circuit's decision.  To allow the plaintiffs to again amend
their complaint a third time some seven years after the
commencement of proceedings creates delay that would prejudice
the defendants.  <u>See</u> <u>Gregory v. Mitchell</u>, 634 F.2d 199 (5th Cir.
1981).  In addition, the Fifth Circuit did not remand the case
"for a reconsideration of the whole controversy."  <u>Daly v.
Sprague, M.D.</u>, 742 F.2d 896, 900 (5th Cir. 1984).

### D.   THE FIFTH CIRCUIT'S OCTOBER 31, 2000 SUBSTANTIVE RULINGS

In addition to the "other document" claim that was not
properly before this Court, the Fifth Circuit identified two
other legal issues in this Court's January 13, 1999 Order.  The
Fifth noted that the Order "regulates the seizure of an LPR's
green card and issuance of temporary documents pending removal
proceedings, [and] requires the INS to hold a hearing before
determining whether an LPR should be paroled into the United
States pending a final order of removal. . . ."  <u>Loa-Herrera v.
E.M. Trominski</u>, 231 F.3d at 986.

### 1.   <u>Parole Claim</u>

The plaintiffs urged this Court to find that "LPS's are
entitled to notice and a hearing to determine whether they should
be paroled within the United States pending a final determination
in their removal proceedings."  <u>Loa-Herrera v. E.M. Trominski</u>,
231 F.3d at 986.  This Court's final order granted injunctive

26

relief providing that when a permanent resident applying for admission to the United States is placed in "expulsion" proceedings, the defendants must provide notice and a parole hearing before an immigration judge.  R. 105 at 5.

The plaintiffs' claim, however, is not properly before the Court on remand.  In particular, similar to the "other documents claim", plaintiffs' Second Amended Complaint does not include allegations, causes of action, or prayers for relief relating to the claim that the defendants' violate the rights of the class by not providing notice and a hearing on parole before an "impartial adjudicator".  R. 15 at 13-19.  Instead, the Second Amended Complaint concerns the defendants' decision whether or not to parole.  Namely, it requests that the Court grant declaratory and injunctive relief based on the claim that defendants violate a class member's right by not paroling, or re-paroling, the individual into the United States.  R. 15 at 18-19.  Therefore, plaintiffs included in the memorandums and orders submitted to this Court a second issue that was not raised in their Second Amended Complaint and which, therefore, is not <u>necessary</u> for the Court to address on remand.  <u>See Hang On, Inc. v. City of Arlington</u>, 65 F.3d 1248, 1255 (5th Cir. 1995) (holding that district court properly did not consider issue not raised in complaint).  This fact is highlighted by plaintiffs' attempt on remand to reopen the proceedings to further lengthy litigation by

27

requesting leave of Court to amend their complaint for a third
time to "clarify" the issue.  R. 134.

In addition to the issue not having been raised in the
Second Amended Complaint, Judge Vela did not raise the issue sua
sponte.  In the hearing conducted on July 31, 1996, Judge Vela
did inquire of the defendants' "[a]re the people informed that
they can come into the country and ask for parole, asked to be
paroled into the United States?  Are they informed they can ask
to be paroled into the United States[?]"  R. 118 at 33.  The
Court did not pursue the issue, however, and instead stated that
it wished to have briefing on the question "[i]n all cases where
individuals who are legal and permanent residents of the United
States who leave the country.  Where is the authority of the
United States and Immigration Service to deny them admission into
the country."  R. 118 at 39.  Judge Vela, accordingly, did not
raise the issue of notice and hearing of parole in the case sua
sponte.  He made no indication that he wanted to consider the
issue, nor did plaintiffs request leave to again amend their
complaint for consideration of the issue.  Accordingly, the
plaintiffs incorrectly included the issue in their memorandums
and orders submitted to this Court.  Plaintiffs' parole claim is
not an issue that has been properly raised to this Court and,
therefore, it is not <u>necessary</u> for the Court to consider the

28

issue on remand.[14]

Furthermore, even if the issue is considered, the Fifth Circuit determined that this Court's Order erred because, "Congress . . . has denied the district court jurisdiction to adjudicate deprivations of the plaintiffs' statutory and constitutional rights to parole." Loa-Herrera v. E.M. Trominski, 231 F.3d at 990-91.  It concluded that 8 U.S.C. § 1226(e) bars this Court's jurisdiction over the Attorney General's discretionary decision regarding parole.  Id.  In sum, the statute provides that application of parole is a discretionary decision not subject to review by any court.  Id.

The Fifth Circuit specifically stated that it considered plaintiffs' argument that the "parole claim" is not governed by 8 U.S.C. § 1226(a), but by 8 U.S.C. § 1225(b)(2)(C).  Id. at 991. Plaintiffs also raised the same argument in their petitions for panel and en banc rehearing.[15]  The Fifth Circuit rejected

---

[14]   Defendants did not specifically raise to the Fifth Circuit, the propriety of the plaintiffs having included the issue in the memorandum and orders signed by this Court.  The Fifth Circuit decision, however, specifically states that the defendants should be allowed to "press any additional legal or factual arguments it wishes to make" on remand.  Loa-Herrera v. E.M. Trominski, 231 F.3d at 988.  As the record indicates that the issue was not properly pleaded to or considered by this Court, it is clear that the Court need not consider it on remand.

[15]   Plaintiffs charge that the Fifth Circuit was mislead by the defendants about the factual and legal basis of the claim. See R. 142 6-7.  The record reflects that there has been no factual discovery with respect to the claim and plaintiffs' Second Amended Complaint did not raise the claim as an issue.  It

29

plaintiffs' argument and concluded that 8 U.S.C. § 1226
controlled the case as this Court's injunctive order required the
defendants to conduct a parole hearing.  _Id._  It determined that
in light of its finding, this Court lacks jurisdiction to review
plaintiffs' "parole claim".

Although plaintiffs raised their argument concerning 8
U.S.C. § 1226 at least three times to the court of appeals, they
allege that the Fifth Circuit did not exercise independent
judgment and, as a result, erred in its decision.  R. 133 at 5.
Without addressing whether the Fifth Circuit is able to exercise
its own judgment, this Court is bound by the Fifth Circuit's
decision as it represents the law of the case.  The law of the
case doctrine "prevents a district court on remand from
revisiting an issue of law or fact decided on appeal."  _Crowe v._
_Smith_, - - F.3d - -, 2001 WL 902038 (5th Cir. Aug. 27, 2001).
The "law of the case" rule is based on the salutary and sound
public policy that litigation should come to an end.  It is
predicated on the premise that there would be no end to a suit if
every obstinate litigant could, by repeated appeals, compel a
court to listen to criticisms on higher court opinions or
speculate of chances from changes in its membership.  It would be
impossible for a court "to perform its duties satisfactorily and

_____

is therefore meritless for the plaintiffs to assert that the
defendants somehow misled the Fifth Circuit about an issue that
was not even raised in their complaint.

efficiently" and expeditiously "if a question, once considered
and decided by it were to be litigated anew in the same case upon
any and every subsequent appeal" thereof.  See Schwartz v. NMS
Industries, Inc. 575 F.2d 553, 554 (5th Cir. 1978).

If plaintiffs wished to challenge the Fifth Circuit's
ruling, they should have filed for a writ of certiorari with the
Supreme Court.  Their failure to do so does not grant this Court
appellate jurisdiction over the Fifth Circuit's decision.
Instead, the Fifth Circuit's decision should be followed as it is
the law of the case.  Moreover, plaintiffs should not be allowed
to amend their complaint to again raise their "parole claim" on
remand.  R. 134 at 14-17.  The claim has been rejected and the
Fifth Circuit remanded the case on specific and narrow grounds,
not for reconsideration of the whole controversy.  See Daly v.
Sprague , M.D., 742 F.2d at 900.  "Once a case has been decided
on appeal, the rule adopted is to be applied, right or wrong,
absent exceptional circumstances in the disposition of the law
suit." Schwartz v. NMS Industries, 575 F.2d at 554.

Plaintiffs also claim that the Fifth Circuit erred in not
finding that this Court properly exercised jurisdiction under 28
U.S.C. § 2241 habeas corpus jurisdiction.  This Court's January
13, 1999 Order raised 28 U.S.C. § 2241 as a ground for
jurisdiction over the "parole claim".  R. 104.  The Fifth Circuit
considered this Court's order and determined that it was without

31

jurisdiction. The Fifth Circuit's decision is the law of the case and should be followed by this Court.

Furthermore, 28 U.S.C. § 2241, provides that "the writ of habeas corpus shall not extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or laws or treaties of the United States." In essence, "habeas corpus is an attack by a person in custody upon the legality of *that* custody ..." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973) (emphasis added). The named parties were not "in custody" at the time of the filing of their action. The Supreme Court has opined that the "in **custody**" requirement is met only if the person is restrained or confined at the time his or her habeas petition is filed and that the possibility of other adverse consequences does not, by itself, satisfy the "in custody" requirement. See Maleng v. Cook, 490 U.S. 488 (1989). At the time of filing of the initial complaint, it appears that none of the plaintiffs were restrained or confined by the INS. Furthermore, the named plaintiffs had not been issued INS "detainers" at the time of filing, even if the Court were to consider a detainer evidence of custody, which it is not.[16] See Santana v. Chandler, 961 F.2d 514, 516 (5th

---

[16] "Filing a detainer is an informal procedure in which the INS informs prison officials that a person is subject to deportation and requests that officials give the INS notice of the person's death, impending release, or transfer to another institution." Giddings v. Chandler, 979 F.2d 1104, 1105 n.3 (5th Cir. 1992).

32

Cir. 1992) (holding that a state prisoner under INS detainer is not in custody of INS for habeas purposes).  In fact, plaintiffs have not explained how the "in custody" requirement has been satisfied when it seems that at least one of the named plaintiffs was in Mexico at the time of the filing of the Second Amended Complaint.  R. 15 at 7.

Plaintiffs also now argue that under the recent Supreme Court's decisions, the Court is vested with habeas jurisdiction over their claim.  See INS v. St. Cyr, - - U.S. - -, 121 S.Ct. 2271 (2001); Calcano-Martinez v. INS, - - U.S. - -, 121 S.Ct. 2268 (2001).  R. 128 at 4.  However, the Supreme Court decisions do not change the requirement that an applicant for the writ demonstrate "custody".  St. Cyr, 121 S.Ct. at 2282.  Thus, even if the Supreme Court cases address the issues of this case, the plaintiffs have not demonstrated the requisite "custody" for habeas corpus jurisdiction under 28 U.S.C. § 2241.

## 2.  **Green Card Claim**

The Fifth Circuit's decision also makes a substantive ruling with respect to the one legal issue in this Court's January 13, 1999 Order that was also properly raised as an issue in plaintiffs' Second Amended Complaint and before this Court.  In particular, the decision addressed this Court's order granting injunctive relief based on plaintiffs' "green card claim".  This Court's January 13, 1999 order had concluded that an injunction

33

is warranted, based on the instructions of the McNary Memorandum,
because the INS acted arbitrarily and capriciously when seizing
green cards and replacing the documents with temporary forms that
contain notations.  R. 104.  The Order specifically indicates
that an injunction was based on the "the intent of the McNary
Memorandum".  R. 104 at 4.

The Fifth Circuit determined that in granting injunctive
relief, this Court improperly relied on the McNary Memorandum.
It concluded that "an agency's internal personnel guidelines
neither confer upon [plaintiffs] substantive rights nor provide
procedures upon which [they] may rely."  Loa-Herrera v. E.M.
Trominski, 231 F.3d at 989 (internal quotes omitted).  The Fifth
Circuit determined that there was no legal basis in the record to
support this Court's finding that the INS's internal memorandum
provided a legal basis for granting an injunction based on
plaintiffs' claim.  Id.

Plaintiffs have indicated that they wish to present
additional argument and other legal authority on remand as to why
an injunction should be granted with respect to the claim.  R.
128 at 4-5.  In essence, they assert that other legal authority
serves as a sufficient basis to grant an injunction.  However,
while the Fifth Circuit's decision remands the case for "any
further necessary proceedings", it specifically provides what
proceedings it deems to be necessary, and allowing the plaintiffs

34

to further extend the litigation by raising new arguments is not among the reasons for remand. <u>Loa-Herrera v. E.M. Trominski</u>, 231 F.3d at 992. In particular, the decision specifies only two reasons why remand is necessary - - 1) for consideration of defendants' legal and factual arguments and 2) so the Court can determine if the INS is in compliance with 8 C.F.R. 264.5(g). <u>Id.</u> at 988-89.[17]

The Fifth Circuit's mandate proscribes the issues the Court should consider on remand. The mandate rule provides that a district court on remand must " 'implement both the letter and spirit of the [appellate court's] mandate,' and may not disregard the 'explicit directives' of that court." <u>United States v. Becerra</u>, 155 F.3d 740, 752 (5th Cir. 1998) (quoting <u>Johnson v. Uncle Ben's, Inc.</u>, 965 F.2d 1363, 1370 (5th Cir. 1992)). Where,

---

[17] Plaintiffs have asserted that the Fifth Circuit's decision should also be read to permit consideration of any legal and factual arguments that they may have with respect to the Court's January 13, 1999 order. In essence, they claim that their due process rights would be violated if they were not allowed to pursue arguments outside of those identified in the Court's order. The Fifth Circuit's decision, however, properly limits remand to the defendants' claims considering the nature of this Court's January 13, 1999 order. The fact is that the plaintiffs submitted the memorandum and order that the Court adopted as its Order. Any claim or argument that plaintiffs wished to raise in the case is therefore reflected in the Order. The plaintiffs' sole basis for the "green card claim" as set forth in the Court's order is the "McNary Memorandum". R. 104. The Fifth Circuit apparently recognized that permitting plaintiffs to pursue new argument would only serve to allow them to prolong the proceedings by presenting claims that could and should have been previously submitted to this Court.

as here, further proceedings in the district court " 'are
specified in the mandate [of the Court of Appeals], the district
court is limited to holding such as are directed.' " <u>Harris v.
Sentry Title Co.</u>, 806 F.2d 1278, 1279 (5th Cir. 1987).  This
Court should determine that the Fifth Circuit's order specifies
the reasons for remand and that the only issue left for
consideration on remand with respect to the "green card· claim" is
whether the INS is in compliance with 8 C.F.R. § 264.5(g).  It
does not permit plaintiffs to raise new issues on remand.  <u>Daly
v. Sprague, M.D.</u>, 742 F.2d at 900.  The Fifth Circuit's decision
finding that the McNary Memorandum is not sufficient legal basis
for the Court's injunction order is the law of the case.

### 3.   Remaining Issue for this Court- - Whether an injunction is appropriate in light of 8 C.F.R. § 264.5(g)

The Fifth Circuit did not limit its decision to the finding
with respect to plaintiffs' green card claim to the determination
that this Court erred in relying on the McNary Memorandum.
Instead, the decision holds that while the McNary Memorandum does
not govern, 8 C.F.R. § 264.5(g) provides legal authority for the
INS's replacement of green cards with temporary documents that
contain notations.  <u>Loa-Herrera v. E.M. Trominski</u>, 231 F.3d at
989.  Specifically, the INS must issue a temporary Form I-551 to
persons in exclusion proceedings, while the INS can provide any
evidence of permanent resident status to those individuals in

36

deportation proceedings.  Id.

The Fifth Circuit's decision, accordingly, specifies a
second and final reason for remand to this Court.  As neither the
parties nor the Court identified 8 C.F.R. § 264.5(g) as
controlling legal authority, there has been no factual finding
whether the documents issued by the INS comply with the
regulation's mandate.  The Fifth Circuit has, therefore, remanded
the proceedings "so the court can determine whether an injunction
is appropriate in light of § 264.5(g)."  Loa-Herrera v. E.M.
Trominski, 231 F.3d at 989.  As is argued in the accompanying
summary judgment motion and argument below, the forms provided by
the INS satisfy the regulation's criteria.

IV.  **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FILED PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 56**

A.  **STATEMENT OF THE NATURE AND STAGE OF THE
PROCEEDING**

The only issue that remains for consideration involves
federal regulation 8 C.F.R. § 264.5(g) (2000).  As described in
more detail below, this regulation governs what type of
documentation must be given as evidence of registration to an
alien who is a lawful permanent resident, not in custody, and
placed in either exclusion or deportation proceedings.  The
plaintiff class in the case "object to INS's practice of seizing
an LPR's Laminated Form I-151 or I-551 ("green card') and other
government documents and issuing, in their place, an I-94

37

"Temporary Evidence of Lawful Permanent Resident" form containing
extraneous information announcing the holder's pending removal
proceedings." <u>Loa-Herrera v. E.M. Trominski</u>, 231 F.3d at 989.
In light of the Fifth Circuit's decision in this case and the
regulation, the Court should grant defendants' motion for summary
judgment. <u>See</u> Fed. R. Civil. P. 56.

> **B.   ARGUMENT**
>
> ### 1.   <u>Standard for Summary Judgment</u>

Summary judgment should be granted when the evidence
indicates "that there is no genuine issue as to any material fact
and that the moving party is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S.
317, 322 (1986).  In determining whether a genuine issue of
material fact exists, courts must construe all facts in the light
most favorable to the nonmoving party and draw all reasonable and
justifiable inferences in favor of that party.  <u>See Anderson v.
Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  An issue is
material if its resolution could affect the outcome of the
action.  <u>Hathcock v. Acme Truck Lines</u>, - - F.3d - -, WL 946407 *2
(5th Cir. September 6, 2001).  The burden is on the moving party
to convince the court that no genuine issue of material fact
exists as to the claims asserted by the non-movant.  <u>Celotex
Corp. v. Catrett</u>, 477 U.S. at 322-23.

If the defendant is the moving party, then the defendant

must affirmatively offer evidence that undermines one or more of
the essential elements of plaintiffs' case, or must demonstrate
that the evidence in the summary judgement record falls short of
establishing an essential element of the plaintiff's case.
Hayles v. General Motors Corp., 82 F. Supp. 2d 650, 654 (S.D.
Tex. 1999).  "If defendant does so, then the plaintiff, as the
nonmoving party, must point to evidence in the summary judgment
record sufficient for a reasonable fact finder to decide in her
favor."  Id.  The non-moving party may not rest solely on its
pleading, however.  For issues on which the non-movant will bear
the burden of proof at trial, that party must produce summary
judgment evidence and designate specific facts which indicate
that there is a genuine issue for trial.  Celotex Corp. v.
Catrett, 477 U.S. at 322-24.

The non-movant "must do more than simply show that there is
some metaphysical doubt as to the material facts."  Matsushita
Elec. Inc.  v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986).
To meet its burden, the non-moving party must show specific facts
showing that there is a genuine issue for trial.  Little v.
Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  If the
evidence rebutting the summary judgment motion is only colorable
or not significantly probative, summary judgment should be
granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.

39

## 2.   Statement of undisputed facts

1.   The Attorney General has not formally prescribed as a form
     constituting proper evidence of an alien's registration in
     the country a document titled "temporary Form I-551".   In
     other words, there is no formal form known as a "temporary
     Form I-551" which is used to show evidence of an alien's
     status.   See 8 C.F.R. § 264.1(b) (2000).

2.   The Attorney General, through her delegates the INS, has
     designated Form I-94, Arrival-Departure Record ("I-94"), for
     use as a "temporary Form I-551".   Exhibit 6 (Tab 6),
     Declaration of INS Agent Larry P. Doyle; Exhibit 7 (Tab 7),
     letter from plaintiffs' counsel to INS.

3.   The Harlingen INS issues an I-94 to lawful permanent
     residents in immigration proceedings who are in the United
     States or paroled in the United States.   Exhibit 6.

4.   The defendants have issued I-94s to those named LPR
     plaintiffs paroled in the United States whose green cards
     have been seized and placed in exclusion proceedings.
     Exhibit 8 (Tab 8), Plaintiffs' Exhibit I.

3.  **Under the governing statutory and regulatory provisions, a Form I-94 constitutes a "temporary Form I-551" and, therefore, the defendants do not violate plaintiffs' rights by issuing it as evidence of registration to those LPRs in the United States placed in immigration proceedings.**

The Fifth Circuit's decision in this case sets forth the governing statutory and regulatory provisions governing plaintiffs' remaining issue on remand.  Federal law authorizes LPR's to work in the United States until a final order of deportation has been issued.  See 8 U.S.C. § 1324a(a)(1)(A), (h)(3).  To that end:

> [e]very alien in the United States . . . shall be
> issued a certificate of alien registration or an
> alien registration receipt card in such form and
> manner and at such time as shall be prescribed
> under regulations issued by the Attorney General.

8 U.S.C. § 1304(d) (emphasis added).  In essence, while a LPR in the United States who is not in custody is entitled to evidence of registration, the type of documentation that is given to LPR's as evidence of registration is left strictly to the discretion of the Attorney General.  See Loa-Herrera v. E.M. Trominski, 231 F.3d at 988.

As set forth in the Fifth Circuit's decision, 8 C.F.R. § 264.5(g) sets forth the Attorney General's decision with respect to the type of documentation that should be provided to LPR's in the United States who are placed in immigration proceedings.  The regulation states in its entirety:

41

> A person in exclusion proceedings shall be
> entitled to evidence of permanent resident status
> until ordered excluded.  Such evidence shall be in
> the form of a temporary Form I-551 issued for a
> period sufficient to accomplish the exclusion
> proceedings. A person in deportation proceedings
> shall be entitled to evidence of permanent
> resident status until ordered deported or
> excluded. Issuance of an Permanent Resident Card
> to a person in exclusion or deportation
> proceedings, provided the person had status as a
> lawful permanent resident when the proceeding
> commenced, shall not affect those proceedings.

8 C.F.R. § 264.5(g).  As such, the defendants are required to
issue to LPR's in the United States, a temporary Form I-551 to
persons if in exclusion proceedings, while the regulation does
not specify the form of documentation with respect to deportation
proceedings.  Loa-Herrera v. E.M. Trominski, 231 F.3d at 989.
Furthermore, the regulation does not prohibit the defendants from
attaching additional notations indicating that the LPR has been
placed in immigration proceedings.  Id.

The plaintiffs cannot prevail because the INS is in
compliance with 8 C.F.R. § 264.5(g).  As an initial matter, the
defendants' practice is to issue a I-94 to lawful permanent
residents placed in deportation proceedings.  Exhibit 6.  With
notations, the I-94 is sufficient evidence of lawful permanent
resident status.  Loa-Herrera v. E.M. Trominski, 231 F.3d at 989.

Similarly, when a LPR placed in exclusion proceedings is
paroled into the United States and has his or her green card
seized, the green card is replaced with a I-94.  Exhibit 6 and 7;

42

Exhibit 8.  The I-94 is not only in the form of a "temporary Form I-551", it is in fact the "temporary Form I-551".  Exhibit 6; 8 C.F.R. § 264.1(b).  As 8 C.F.R. § 264.5(g) requires the issuance of a "temporary Form I-551", the defendants act in compliance with the regulation.

A segment of the plaintiff class is not entitled to any documentation under the Fifth Circuit's decision.  In particular, LPSs who are seeking admission into the United States and placed in proceedings, but who are not actually in the country, are not entitled to a registration documentation.  This is because 8 U.S.C. § 1304(d) provides that evidence of registration must only be given only to those individuals "<u>in the United States</u>".  Chapter 8 C.F.R. § 264.5(g) derives from the authority of 8 U.S.C. § 1304(d).  <u>Loa-Herrera v. E.M. Trominski</u>, 231 F.3d at 988 n.8.  The defendants, thus, have interpreted the regulation not to apply to LPRs placed in proceedings who are not in the United States.  Under <u>Chevron v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984), the Supreme Court articulated rules to govern judicial review of an agency's interpretation of statutes and regulations.  A court shall give controlling weight to an agency's interpretation of statutes and regulations unless the court determines that the agency's decision is "arbitrary, capricious, or manifestly contrary." <u>Id.</u> at 844; <u>Transitional Learning Community at Galveston, Inc. v. U.S. Office of Personnel</u>

Management, 220 F.3d 427, 430 (5th Cir. 2000).

An I-94 is therefore only required as a replacement by 8 C.F.R. § 264.5(g) for those LPR's placed in exclusion proceedings, if the alien has been paroled into the United States, or is in deportation proceedings after having been admitted. As noted, the Fifth Circuit has determined that 8 U.S.C. § 236(e) precludes jurisdiction to consider whether due process requires that members of the plaintiff class be given notice of parole or a parole hearing before an impartial adjudicator, such as an immigration judge. Loa-Herrera v. E.M. Trominski, 231 F.3d at 991. Even if the Court did have jurisdiction to consider the claim, it has no merit.

The Supreme Court has determined that where an individual seeks to protect a property interest or liberty interest, due process does not require additional notice of available procedures where those procedures are established by published, generally available statutes. City of West Covina v. Perkins, 525 U.S. 234, 240-41 (1999); see Loa-Herrera v. E.M. Trominski, 231 F.3d at 990 n.13. "A primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful." City of West Covina, 525 U.S. at 240-41. However, where the remedial procedures are available through a published statute, the alien "can turn to these public sources to learn about the remedial procedures available to him." Id. In

44

the instant case, public sources are readily available indicating that parole may be sought.

Furthermore, the Supreme Court has found that a hearing of parole does not have to be before an "impartial adjudicator" to satisfy due process. In <u>Marcello v. Bonds</u>, 349 U.S. 302, the Supreme Court addressed a challenge alleging that parole hearings must occur before an "impartial adjudicator." The Supreme Court unequivocally rejected such a challenge:

> Petitioner would have us hold that the presence of this relationship [an authorized INS official] so strips the hearing of fairness and impartiality as to make the procedure violative of due process. The contention is without substance when considered against the long-standing practice in deportation proceedings, judicially approved in numerous decisions in the federal courts, and against the special considerations applicable to deportation which the Congress may take into account in exercising its particularly broad discretion in immigration matters.

<u>Marcello</u>, 349 U.S. at 311. Thus, plaintiffs have no due process rights to have a parole hearing before an "impartial adjudicator".

The Fifth Circuit remanded this case for consideration of whether injunctive relief is warranted under 8 C.F.R. § 264.5(g). <u>Loa-Herrera v. E.M. Trominski</u>, 231 F.3d at 987. Pursuant to the undisputed facts, plaintiffs are unable to meet their burden for injunctive relief considering that their claim is without merit and they have shown no injury. See <u>Amoco Production Co. v. Village of Gambell</u>, 480 U.S. 531, 546 (1987) (holding the

45

standard for a permanent injunction is the same as a preliminary injunction except actual success on the merits must be demonstrated rather than just a substantial likelihood); <u>Florida v. Callaway</u>, 489 F.2d 567 (5th Cir. 1974) (listing preliminary injunction standards). In short, the record reflects that the defendants are in compliance with 8 C.F.R. § 264.5(g). The I-94 given to LPR's in the United States who are placed in proceedings is a sufficient replacement card as mandated by the regulation. Accordingly, judgment for the defendants should be entered on this claim.

## CONCLUSION

For the reasons stated above and on the undisputed facts of this case, summary judgment should be granted to the defendant and the Complaint should be dismissed with prejudice.

Respectfully submitted,

ROBERT D. MCCALLUM, JR.
Assistant Attorney General

DAVID V. BERNAL
Assistant Director
Office of Immigration Litigation

*Anthony C. Payne (by Brenda Ellison*

ANTHONY C. PAYNE
Attorney-in-Charge
Office of Immigration Litigation
Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 616-3264

September 20, 2001

## CERTIFICATE OF SERVICE

I hereby certify that on this **20th** day of September, 2001,

a copy of Defendants' Statement of Outstanding Issues in Response

to Plaintiffs' Post-Remand Statement of Outstanding Issues and

Defendants' Motion for Summary Judgment Pursuant to Federal Rule

of Civil Procedure 56 and Proposed Order was mailed to counsel

for plaintiffs by first class mail, addressed as follows:

> Elizabeth S. Brodyaga, Esquire
> 17891 Landrum Park Road
> San Benito, Texas 78586
>
> Thelma O. Garcia
> 301 E. Madison
> Harlingen, TX 78550
> (956) 435-3701

Anthony Payne (by Brenda Ellison)

Anthony Payne
Attorney for Defendants

United States District Court
Southern District of Texas
FILED

SEP 2 1 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUANA ASCENCIO-GUZMAN, et al.,      )
            Plaintiffs,      )
                        )
         v.              )  C.A. No. B-94-215
                        )  APPENDIX - EXHIBITS TO
E.M. TROMINSKI, District            )  DEFENDANTS' STATEMENT OF
Director, Immigration and           )  OUTSTANDING ISSUES IN
Naturalization Service;             )  RESPONSE TO PLAINTIFFS'
JOHN D. ASHCROFT, United States     )  POST-REMAND STATEMENT OF
Attorney General; and               )  OUTSTANDING ISSUES AND
IMMIGRATION AND NATURALIZATION      )  DEFENDANTS' MOTION FOR
SERVICE,                            )  SUMMARY JUDGMENT PURSUANT
            Defendants.      )  TO FEDERAL RULE OF CIVIL
_____)  PROCEDURE 56

# TABLE OF CONTENTS

| DESCRIPTION | TAB NO. | PAGE NO |
|---|---|---|
| Exhibit 1<br>Notice of Submission<br>of Proposed Order | 1 | 1 |
| Exhibit 2<br>Memorandum and Order | 2 | 2-6 |
| Exhibit 3<br>Petition for Rehearing | 3 | 7-28 |
| Exhibit 4<br>Petition for En Banc<br>Rehearing | 4 | 29-74 |
| Exhibit 5<br>Appellants' Opening<br>Brief | 5 | 75-157 |
| Exhibit 6<br>Declaration of INS<br>Agent Larry P. Doyle | 6 | 158-59 |
| Exhibit 7<br>Letter from Plaintiffs'<br>Counsel to INS | 7 | 160 |
| Exhibit 8<br>Plaintiffs' Exhibit I | 8 | 161-62 |

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,         )
                              )
v.                            )        C.A. No. B-94-215
                              )
TROMINSKI, et al.             )
_____)

### NOTICE OF SUBMISSION OF PROPOSED ORDER

Come Plaintiffs, by and through the undersigned, and respectfully submits, for consideration by the Court, a Proposed Memorandum and Order in the instant case.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney at Law
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(956) 421-3226

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and attached proposed Memorandum and Order were served, first class postage prepaid, on Regina Byrd, Attorney, OIL, Box 878, Ben Franklin Sta., Washington, D.C. 20044, on September 11, 1998.



UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


JUANA ASCENCIO-GUZMAN, et al    )
                               )
v.                             )          No. B-94-215
                               )
E.M. TROMINSKI, et al.         )
_____)


MEMORANDUM AND ORDER

Upon consideration of the Parties' cross motions for summary
judgment and the record as a whole, and good cause appearing
therefore, the Court enters the following Order:


I.   FACTUAL BACKGROUND


There appears to be no genuine issue of material fact with respect
to the following matters:


1.  A Memorandum issued by former Commissioner of INS Gene McNary,
on March 14, 1990, (the "McNary Memo"), sets forth the conditions
under which INS has authorized the confiscation of green cards [1]
issued to permanent residents who are placed under expulsion
proceedings, and the form of the substitute document which must be
provided, Government Exhibit 1, at pp. 1-2.  The practices of INS
agents operating in the Harlingen, Texas district have frequently
been inconsistent with the McNary Memo, in such particulars as the
routine, (instead of case-by-case), confiscation of green cards of
residents placed under proceedings by some branches of INS;
arbitrary placement of extraneous notations not authorized by the
McNary Memo on replacement documentation; the failure in some cases
to issue any replacement documentation; the refusal in others to

_____

[1]  The term "green card" as used herein means a laminated I-551
or I-151, evidencing the status of the holder as a lawful permanent
resident of the United States.



2

place annotations specifying that the holder is authorized to be employed in the United States, and in some instances, particularly where the resident was held in custody for a period of time, the failure and/or refusal to provide any replacement documentation as required by the McNary Memo.   For permanent residents detained at a port of entry, placed under proceedings, and paroled into the United States, (with or without bond), agents in the Harlingen Office of the INS have frequently failed to follow the McNary Memo in such particulars as the refusal to provide any substitute document, or to specify thereon that the resident is authorized to be employed in the United States, and have in some cases, placed notations stating that the holder is *not* authorized to be employed.

2.   When lawful permanent residents seeking readmission as returning residents are detained for major violations of law, such as for attempting to smuggle large quantities of controlled substances, or undocumented immigrants, such persons are usually paroled into the U.S. for criminal prosecution, and are thereafter detained at the INS detention center, where they have access to counsel, and are frequently, (but not always), allowed to post bond. By contrast, lawful permanent residents detained at a land border for minor infractions, such as attempting to smuggle relatives into the U.S., are generally subjected to a different procedure.   In such cases, Defendants confiscate their green cards, and frequently, other documents as well, such as social security cards, and drivers' licenses.   They are then generally returned to Mexico to await a hearing before an Immigration Judge.   They are not afforded a hearing before they are returned to Mexico, and no administrative appeal may be taken from the decision to return them to Mexico.   Notice of hearings sent to Mexican addresses are sent by ordinary mail, and are frequently not received in a timely fashion, if at all.   This often results in further delays, and in some cases, *in absentia* orders of exclusion or removal.

3

3.   In cases where there exists a non-frivolous defense to the charges, or a possibility of administrative relief, the proceedings are frequently protracted.  Where the individual is not detained at government expense, it frequently takes eight to ten months from the date of initial apprehension to the date the Immigration Judge issues his or her order.   If an appeal is taken by either party, proceedings typically last from two to four years.  Complex cases, or where a remand is required, sometimes drag on much longer.

## II.   CONCLUSIONS OF LAW

1. This Court has jurisdiction herein under 28 USC §1331 (federal question), coupled with 5 USC §702 et seq (Administrative Procedure Act); 28 USC §1346(a)(2) (action against an agency and/or officers of the United States), and 28 USC §2201 (Declaratory Judgment Act).

2.  Defendants act arbitrarily and capriciously, inconsistent with Due Process, when they confiscate green cards from lawful permanent residents who are placed under expulsion proceedings, but who are not being held in custody, without making the determination to do so on a case by case basis, as required by the McNary Memo, and when, having confiscated a lawfully issued green card, they fail to provide a replacement document evidencing the person's status as a lawful permanent resident, or place notations on any replacement document which are not authorized by Operation Instruction 264.2, such as notations that the person is under proceedings, is on bond, has been paroled into the U.S., or is not entitled to be employed in the U.S..    They also act arbitrarily and capriciously, inconsistent with Due Process, when they confiscate other documents lawfully issued to the resident which are not *bona fide* evidence of unlawful conduct.   *Etuk v. Slattery*, 936 F.2d 1433 (2nd Cir. 1991).

3.  Defendants act arbitrarily and capriciously, inconsistent with Due Process, when they routinely parole into the U.S., permanent

4

residents accused of serious criminal activity, but return to Mexico those in whose cases criminal prosecution is not currently contemplated, with no opportunity to challenge the decision that they not be paroled into the United States, with or without payment of a bond. They also act arbitrarily and capriciously, inconsistent with Due Process, when they fail to provide a custody hearing for lawful permanent residents who are placed under proceedings at the time of arrival at a port of entry. *Molina v. Sewell*, 983 F.2d 676, 680 (5th Cir. 1993) ("The fact that an [arriving] alien is subject to deportation proceedings does not affect his status as a permanent resident alien."); *Plyler v. Doe*, 102 S.Ct. 2382 (1982) (even aliens *unlawfully* in the United States are entitled to Equal Protection); *Richardson v. Reno*, 994 F.Supp. 1466 (S.D.Fla. 1998) (In IRRIRA, Congress did not intend to overrule the *Fleuti* doctrine regarding arriving permanent residents presenting themselves for inspection; not reaching Constitutional issues); *Ekekhor v. Aljets*, 979 F. Supp. 640, 643 (N.D.Ill. 1997) (IJ properly exercised authority in releasing resident alien on bond pending exclusion hearing); *St. John v. McElroy*, 917 F. Supp. 243, 251 (S.D.N.Y. 1996) (permanent resident entitled to a parole hearing before an impartial adjudicator while awaiting exclusion hearing).

### III.  ORDER

In light of the foregoing, IT IS HEREBY ORDERED that:

1.   In accordance with the intent of the McNary Memorandum, Defendants shall only confiscate the laminated Form I-151 or I-551 of a non-arriving lawful permanent resident placed under expulsion proceedings, and not held in custody, when the INS District Director, chief patrol agent, or officer in charge determines that a temporary document is needed for a justifiable, particularized reason, based on the individual facts of the case, but shall not

5

confiscate other lawfully issued documents which are not *bona fide*
evidence of unlawful conduct, When such a resident's green card is
confiscated, Defendants shall provide temporary evidence of lawful
permanent resident status, which shall be prepared in accordance
with Operation Instruction 264.2, and shall be issued for at least
six months, and shall contain a notation that it is renewable.

2.  When a lawful permanent resident who applies for admission to
the U.S. is placed under proceedings, in accordance with 8 USC
§1229a, Defendants shall not confiscate any other lawfully issued
documents unless they are *bona fide* evidence of unlawful conduct,
but may confiscate the resident's green card.  In such cases,
Defendants shall provide a substitute document evidencing status as
a lawful permanent resident, and entitlement to be employed in the
U.S.; and shall afford said person a prompt hearing before an
Immigration Judge, in accordance with 8 CFR §236.1, to determine
whether he or she should be paroled into the United States during
the pendency of said proceedings, and if so, under what conditions.

IT IS FURTHER ORDERED that any other form of relief requested by
Plaintiffs which is not addressed herein is either moot, or DENIED;

IT IS FURTHER ORDERED that the Clerk of Court shall send certified
copies of the instant Order to all counsel of record.

DONE AT BROWNSVILLE, TEXAS

this _____ day of _____, 1998.

_____
HON. HILDA G. TAGLE
JUDGE PRESIDING

5

**DEFENDANT'S EXHIBIT**

_3_

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JULIO LOA-HERRERA,                        )
RAMIRO CANTU-GRACIA,                      )
JUANA ASCENCIO-GUZMAN,                    )
EFRAIN MERINO,                            )
ARTURO LOPEZ-LOZANO,                      )
ALEJANDRA GUTIERREZ,                      )
JUAN SANCHEZ-SALINAS, and                 )
ADELITA CANTU DE CABRERA,                 )
　　　PLAINTIFFS/APPELLEES,               )
　On behalf of themselves, and            )
　All others similarly situated,          )
                                          )
v.                                        )      No. 99-40122
                                          )
E.M. TROMINSKI, INS DISTRICT              )
　　　DIRECTOR,                           )
JANET RENO, UNITED STATES                 )
　　　ATTORNEY GENERAL, and the           )
IMMIGRATION AND NATURALIZATION            )
　　　SERVICE,                            )
　　　DEFENDANTS/APPELLANTS.              )
_____  )

_____

PLAINTIFFS'/APPELLEES' PETITION FOR PANEL REHEARING

_____

Lisa S. Brodyaga        and        Thelma O. Garcia
REFUGIO DEL RIO GRANDE, INC.        LAW OFFICES OF THELMA GARCIA
17891 Landrum Park Road             301 E. Madison
San Benito, TX  78586               Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701

Attorneys for Plaintiffs/Appellees

December 8, 2000

8

# TABLE OF CONTENTS

I. ERRORS OF LAW . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 2

  A.  THE MAJORITY INCORRECTLY CONCLUDED THAT U.S.C. §1226(e)
      DEPRIVED THE DISTRICT COURT OF JURISDICTION TO REVIEW THE
      MANNER IN WHICH PERMANENT RESIDENTS ARE AFFORDED, (OR, AS
      WAS DEMONSTRATED HEREIN, DEPRIVED OF), MEANINGFUL ACCESS
      TO THE PROCEDURES FOR REQUESTING PAROLE UNDER 8 U.S.C.
      §1182(d)(5)(A) . . . . . . . . . . . . . . . . . . . 2

      1.  THE COURT ERRED IN CONCLUDING THAT THE PAROLE OF
          ALIENS SEEKING ADMISSION IS GOVERNED BY 8 U.S.C.
          §1226(a) . . . . . . . . . . . . . . . . . . . 3

          a.  THE "CONDITIONAL PAROLE" OPTION OF §1226(a)
              ONLY APPLIES TO ALIENS ALREADY WITHIN THE
              UNITED STATES WHO HAVE BEEN ARRESTED "ON A WARRANT"
              . . . . . . . . . . . . . . . . . . . . . . 4
          b.  LPRs SEEKING ADMISSION WHO ARE RETURNED TO
              MEXICO ARE NOT ARRESTED "ON A WARRANT" AND MAY
              BE PAROLED ONLY UNDER 8 U.S.C. §1182(d)(5)
              . . . . . . . . . . . . . . . . . . . . . . 5

      2.  PLAINTIFFS SEEK FAIR PAROLE PROCEDURES, NOT REVIEW
          OF INDIVIDUAL, DISCRETIONARY, PAROLE DECISIONS . 6

      3.  ALTERNATIVELY, THE DISTRICT COURT APPROPRIATELY
          CONCLUDED THAT SHE HAD JURISDICTION UNDER 28 U.S.C.
          §2241, AS A PETITION FOR A WRIT OF HABEAS CORPUS,
          WHICH CANNOT BE SUSPENDED, ABSENT AN EQUIVALENT
          PROCEDURE FOR DETERMINING THE LAWFULNESS OF THE
          DETENTION AT ISSUE . . . . . . . . . . . . . . 7

  B.  THE DISTRICT COURT CORRECTLY CONCLUDED THAT PLAINTIFFS
      ARE CONSTITUTIONALLY ENTITLED TO NOTICE OF THE
      AVAILABILITY OF PAROLE, AND FAIR PROCEDURES IN
      ADJUDICATING THEIR APPLICATIONS. . . . . . . . . . . 7

      1.  FOR CLASS MEMBERS STRANDED IN MEXICO, WHERE THERE
          ARE FEW IF ANY PUBLIC SOURCES RELATING TO U.S.
          IMMIGRATION LAW, AND EVEN A QUERY POSED AT AN
          EXCLUSION HEARING YIELDED NO  HELPFUL INFORMATION
          AS TO HOW TO APPLY FOR PAROLE, IT IS, AS CONCEDED
          BELOW, VERY DIFFICULT FOR CLASS MEMBERS TO
          ASCERTAIN AND FOLLOW THE PROCEDURES FOR REQUESTING
          PAROLE . . . . . . . . . . . . . . . . . . . . 8

      2.  THE PLAINTIFF CLASS IS ALSO ENTITLED TO DUE PROCESS
          IN THE ADJUDICATION OF THEIR REQUESTS FOR PAROLE,
          MADE UNDER 8 U.S.C. §1182(d)(5)(A) . . . . . . 11

C.  IN CONCLUDING THAT THE ATTORNEY GENERAL HAS DISCRETION TO INFORM EMPLOYERS (AND OTHERS) OF AN LPR's IMMIGRATION PROBLEMS, THE COURT OVERLOOKED TWO CRUCIAL FACTS:  FIRST, THAT SHE IS BARRED BY STATUTE FROM DISCLOSING SUCH PERSONAL INFORMATION, AND SECOND, THAT 8 C.F.R. §264.5(g) DOES NOT APPLY TO LPRs IN REMOVAL PROCEEDINGS . . .  12

    1.  WITH EXCEPTIONS NOT PERTINENT HEREIN, RESPONDENTS ARE BARRED BY 8 U.S.C. §1304(b) AND 5 U.S.C. §552a(b) FROM DISSEMINATING PERSONAL INFORMATION ABOUT CLASS MEMBERS  . . . . . . . . . . . . . .  12

    2.  8 C.F.R. §264.5(g) DOES NOT ADDRESS THE DOCUMENTS TO BE GIVEN PERMANENT RESIDENTS UNDER REMOVAL PROCEEDINGS  . . . . . . . . . . . . . . .  13

    3.  WHERE THE I-551 IS THE ONLY ALIEN REGISTRATION FORM AUTHORIZED FOR LPRs IN REMOVAL PROCEEDINGS AND WHERE INS CONFISCATES SUCH DOCUMENTS ARBITRARILY, AND NOT ONLY IN ACCORDANCE WITH BONA FIDE LAW ENFORCEMENT NEEDS, THE DISTRICT COURT MAY LOOK TO THE McNARY MEMO FOR GUIDANCE IN FORMULATING APPROPRIATE EQUITABLE REMEDIES . . . . . . . .  14

III.  CONCLUSION  . . . . . . . . . . . . . . . . . . . .  15

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . .  15

APPENDIX:

1.  Opinion of the Court herein, dated October 31, 2000; and

2.  Parole documents of Plaintiffs Sanchez and Cabrera, showing that they were paroled pursuant to §212(d)(5) of the Immigration and Nationality Act, and that bond was posted for Plaintiff Cabrera.

10

# TABLE OF AUTHORITIES
## CASES

*Boz v. U.S.,*
     228 F.3d 1290 (11th Cir. 2000) . . . . . . . . . . . . 7

*City of West Covina v. Perkins,*
     525 U.S. 234 (1999) . . . . . . . . . . . . . . . . 8-11

*Etuk v. Slattery,*
     936 F.2d 1433 (2nd Cir. 1991) . . . . . . . . . . . 6

*Gonzalez-Torres v. INS,*
     213 F.3d 899 (5th Cir. 2000) . . . . . . . . . . . 6

*Landon v. Plasencia,*
     459 U.S. 21 (1982) . . . . . . . . . . . . . . . 12

*Mathews v. Eldridge,*
     424 U.S. 319 (1976) . . . . . . . . . . . . . . 3, 12

*Max-George v. Reno,*
     205 F.3d 194 (5th Cir. 2000) . . . . . . . . . . . 7

*Mississippi State Chapter, Operation Push v. Mabus,*
     932 F.2d 400 (5th Cir. 1991) . . . . . . . . . . . 15

*Molina v. Sewell,*
     983 F.2d 676 (5th Cir. 1993) . . . . . . . . . . . 11

*Parra v. Perryman,*
     172 F.3d 954 (7th Cir. 1999) . . . . . . . . . . . 6

*Rosenberg v. Fleuti,*
     374 U.S. 449 (1963) . . . . . . . . . . . . . . 11

*Schroeder v. City of New York,*
     371 U.S. 208 (1962) . . . . . . . . . . . . . . 9

*Swain v. Pressley,*
     430 U.S. 372 (1977) . . . . . . . . . . . . . . 7

*Wilson v. Layne,*
     141 F.3d 111 (4th Cir. 1998) . . . . . . . . . . . 14

*Zadvydas v. Underdown,*
      185 F.3d 279 (5th Cir. 1999) . . . . . . . . . . . . . . . 7

## ADMINISTRATIVE DECISIONS

*Matter of Adeniji,*
      Interim Decision 3417 (BIA 1999) . . . . . . . . . . . . 5

## STATUTES

5 U.S.C. §552a(a)(4)  . . . . . . . . . . . . . . . . . .  13

5 U.S.C. §552a(b)  . . . . . . . . . . . . . . . . . . 2, 13

8 U.S.C. §1101(a)(13)  . . . . . . . . . . . . . . . . . . 11

8 U.S.C. §1182(d)(5)  . . . . . . . . . . . . . . . 3-5, 10

8 U.S.C. §1182(d)(5)(A)  . . . . . . . . . . . . . 1-3, 5, 6

8 U.S.C. §1182(d)(5)(B)  . . . . . . . . . . . . . . . . . 5

8 U.S.C. §1225(b)(2)  . . . . . . . . . . . . . . . . . . . 2

8 U.S.C. §1225(b)(2)(A)  . . . . . . . . . . . . . . . . 2, 5

8 U.S.C. §1225(b)(2)(C)  . . . . . . . . . . . . . . 1-6, 5

8 U.S.C. §1226  . . . . . . . . . . . . . . . . . . . . 4, 6

8 U.S.C. §1226(a)  . . . . . . . . . . . . . . . . . 1, 3-6

8 U.S.C. §1226(e)  . . . . . . . . . . . . . . . . 3, 6, 11

8 U.S.C. §1229a  . . . . . . . . . . . . . . . . . . . . 2, 5

8 U.S.C. §1304(a)  . . . . . . . . . . . . . . . . . . . 13

8 U.S.C. §1304(b)  . . . . . . . . . . . . . . . . . . 2, 12

8 U.S.C. §1304(d)  . . . . . . . . . . . . . . . . . . 13, 14

8 U.S.C. §1357(f)(2)  . . . . . . . . . . . . . . . . . . 13

28 U.S.C. §2241 . . . . . . . . . . . . . . . . . . . . 1, 7

iv

12

Illegal Immigration Reform and Immigrant Responsibility Act,
    §309(d)(2) . . . . . . . . . . . . . . . . . . . . . 13

## REGULATIONS

8 C.F.R. Part 240, Subpart A . . . . . . . . . . . . . . . 14

8 C.F.R. Part 240, Subpart D . . . . . . . . . . . . . . . 14

8 C.F.R. Part 240, Subpart E . . . . . . . . . . . . . . . 14

8 C.F.R. §3.19(g)(2) . . . . . . . . . . . . . . . . . . 4

8 C.F.R. §212.5 . . . . . . . . . . . . . . . . . . . . . 5

8 C.F.R. §236.1(c) . . . . . . . . . . . . . . . . . . . 5

8 C.F.R. §264.5(g) . . . . . . . . . . . . . . . 1, 2, 12-14

## OTHER AUTHORITIES

INS Operations Instruction 264.2 . . . . . . . . . . . . . 14

United States Constitution,
    Article 1, § 9, cl. 2 ("Suspension Clause") . . . . . . 7

13

## I.  ERRORS OF LAW

A.  8 U.S.C. §1226(e) DOES NOT DEPRIVE THE DISTRICT COURT OF
JURISDICTION TO REVIEW THE MANNER IN WHICH LPRs ARE AFFORDED, (OR,
AS WAS DEMONSTRATED HEREIN, DEPRIVED OF), MEANINGFUL ACCESS TO THE
PROCEDURES FOR REQUESTING PAROLE UNDER 8 U.S.C. §1182(d)(5)(A).

    1.  THE COURT ERRED IN CONCLUDING THAT THE PAROLE OF LPRs
    SEEKING ADMISSION IS GOVERNED BY 8 U.S.C. §1226(a).

        a. "CONDITIONAL PAROLE" UNDER §1226(a) APPLIES
        ONLY TO LPRs ARRESTED ON A WARRANT IN THE U.S.

        b. LPRs PROCESSED AND RETURNED TO MEXICO UNDER
        8 U.S.C. §1225(b)(2)(C), ARE NOT ARRESTED ON A
        WARRANT AND MAY BE PAROLED INTO THE U.S. ONLY
        UNDER THE AUTHORITY OF 8 U.S.C. §1182(d)(5).

    2. PLAINTIFFS' CHALLENGE TO THE ADMINISTRATION OF PAROLE
    FOR LPRs RETURNED TO MEXICO IS NOT BARRED BY §1226(e).

    3.  IN THE ALTERNATIVE, THE DISTRICT COURT PROPERLY
    CONCLUDED THAT SHE HAD JURISDICTION UNDER 28 U.S.C.
    §2241, AS A PETITION FOR A WRIT OF HABEAS CORPUS, WHICH
    CANNOT BE SUSPENDED ABSENT AN EQUIVALENT PROCEDURE FOR
    DETERMINING THE LAWFULNESS OF THE CHALLENGED DETENTION.

B. WHEN PERMANENT RESIDENTS ARE RETURNED TO MEXICO TO AWAIT THEIR
HEARINGS, NOTICE OF THE AVAILABILITY OF PAROLE, AND FAIR PROCEDURES
IN ADJUDICATING PAROLE REQUESTS, ARE CONSTITUTIONALLY MANDATED.

    1.  FOR LPRs RETURNED TO MEXICO, WHERE THERE ARE FEW
    PUBLIC RESOURCES ABOUT U.S. IMMIGRATION LAW, AND EVEN A
    QUERY POSED AT AN EXCLUSION HEARING YIELDED NO HELPFUL
    INFORMATION, IT IS, AS CONCEDED BELOW, VERY DIFFICULT TO
    LEARN ABOUT THE EXISTENCE AND MEANS OF ACCESSING PAROLE,
    AND DUE PROCESS MANDATES ADVISALS OF SUCH POSSIBLE RELIEF

    2.  PLAINTIFFS ARE ALSO ENTITLED TO DUE PROCESS IN THE
    ADJUDICATION OF THEIR REQUESTS FOR PAROLE.

C. IN HOLDING THAT THE ATTORNEY GENERAL HAS DISCRETION TO BROADCAST
TO EMPLOYERS, AND OTHERS, PERSONAL INFORMATION ABOUT LPRs, THE
MAJORITY OVERLOOKED TWO CRUCIAL FACTS: FIRST, THAT SHE IS BARRED BY
TWO STATUTES FROM DISCLOSING THIS KIND OF INFORMATION, AND SECOND,
THAT 8 C.F.R. §264.5(g) DOES NOT APPLY TO REMOVAL PROCEEDINGS.

    1.  INS IS BARRED BY 8 U.S.C. §1304(b) AND 5 U.S.C.
    §552a(b) FROM DISCLOSING PERSONAL INFORMATION ABOUT LPRs

14

EXCEPT UNDER LIMITED CIRCUMSTANCES, WHICH DO NOT INCLUDE
BROADCASTING AN LPR'S IMMIGRATION PROBLEMS TO POTENTIAL
EMPLOYERS AND OTHERS TO WHOM THEY MUST SHOW LPR STATUS.

2.   INSOFAR AS 8 C.F.R. §264.5(g) DOES NOT ADDRESS WHAT
FORM OF ALIEN REGISTRATION MAY BE PROVIDED TO LPRs UNDER
REMOVAL PROCEEDINGS, THE I-551 REMAINS THE ONLY SUCH FORM
SPECIFIED BY THE REGULATIONS FOR SUCH PERSONS, AND WHICH,
ABSENT *BONA FIDE* LAW ENFORCEMENT CONCERNS, THE ATTORNEY
GENERAL MAY THEREFORE PROVIDE, UNDER 8 U.S.C. §1304(b).

3.   WHERE THE I-551 IS THE SOLE ALIEN REGISTRATION FORM
AUTHORIZED TO BE ISSUED TO LPRs UNDER REMOVAL PROCEEDINGS
AND WHERE INS ARBITRARILY CONFISCATES I-551s FROM CLASS
MEMBERS, THE DISTRICT COURT MAY LOOK TO THE McNARY MEMO
AS A GUIDE IN FORMULATING APPROPRIATE EQUITABLE REMEDIES.

## II.   ARGUMENT

**A.   8 U.S.C. §1226(e) DOES NOT DEPRIVE THE DISTRICT COURT OF
JURISDICTION TO REVIEW THE MANNER IN WHICH LPRs ARE AFFORDED, (OR,
AS WAS DEMONSTRATED HEREIN, DEPRIVED OF), MEANINGFUL ACCESS TO THE
PROCEDURES FOR REQUESTING PAROLE UNDER 8 U.S.C. §1182(d)(5)(A).**

Even LPRs seeking admission must satisfy the Immigration Examiner
of their right to be admitted.  8 U.S.C. §1225(b)(2):

(A)  In general. Subject to subparagraphs (B) and (C), in
the case of an alien who is an applicant for admission,
if the examining immigration officer determines that an
alien seeking admission is not clearly and beyond a doubt
entitled to be admitted, the alien shall be detained for
a proceeding under section 240 [8 U.S.C. §1229a].
. . .
(C)    ...  In the case of an alien described in
subparagraph (A) who is arriving on land (whether or not
at a designated port of arrival) from a foreign territory
contiguous to the  United States, the Attorney General
may return the alien to that territory pending a
proceeding under section 240 [8 U.S.C. §1229a].

**1.   THE COURT ERRED IN CONCLUDING THAT THE PAROLE OF
ALIENS SEEKING ADMISSION IS GOVERNED BY 8 U.S.C. §1226(a)**

In its opinion, (hereinafter cited as (OPINION:___), at pages 7-8,

2

15

this Court concluded that 8 U.S.C. §1226(e) divested the District Court of jurisdiction over Plaintiffs' complaints relating to the arbitrary return to Mexico of lawful permanent residents, ("LPRs"), placed in proceedings at ports of entry.  Plaintiffs urged, and the District Court held, that cases such as *Mathews v. Eldridge*, 424 U.S. 319 (1976) mandate that before the authority of 8 U.S.C. §1225(b)(2)(C) be exercised with respect to LPRs, Respondents must advise them of the possibility of seeking parole under 8 U.S.C. §1182(d)(5)(A), and provide them with a hearing before an impartial adjudicator.  In rejecting this conclusion, this Court assumed that the power to parole LPRs seeking admission was found in 8 U.S.C. §1226(a), and referred to the parole powers conferred by 8 U.S.C. §1182(d)(5) only on a "*see also*" basis.   (OPINION:7,n.12).

The Court's Opinion appears to confuse the parole of an alien into the U.S., under §1182(d)(5)(A), and parole out of custody, under §1226(a), of one already within the U.S., who has been arrested on a warrant. [1]  The Court characterized the District Court's Order as relating to the Attorney General's "discretion to grant parole within the United States."  If, by this, the Court is referring to

---

[1]      The majority incorrectly opined, (OPINION:7), that the alternatives to "paroling an individual out of the United States" under §1225(b)(2)(C) include "conditional parole," as found at §1226(a),  This is incorrect.  The alternatives to §1225(b)(2)(C) are physical detention, as initially occurred with Plaintiff Cabrera, or parole under §1182(d)(5)(A), with or without payment of a bond, such as she posted when she was paroled under §1182(d)(5). (R5:1324).  But the majority did correctly note that the District Court's Order relates to procedures for "determining whether an LPR should be paroled into the United States pending a final order of removal," (OPINION:2), or, as occurred herein, **pending the successful termination of proceedings in the Plaintiffs' favor.**

16

the discretion found in §1226(a) to parole out of custody an alien
arrested within the U.S., said discretion is not at issue.  Rather,
the District Court addressed, and found wanting, the procedures by
which permanent residents seeking admission may be paroled *into* the
U.S., under §1182(d)(5), in lieu of actual detention, or returning
them to Mexico to await their hearings, under §1225(b)(2)(C).

### a. THE "CONDITIONAL PAROLE" OPTION OF §1226(a) ONLY APPLIES TO ALIENS ALREADY WITHIN THE U.S. WHO HAVE BEEN ARRESTED "ON A WARRANT"

While it is true, as the Court noted, (OPINION:6-7), that 8 U.S.C.
§1226(a) vests the Attorney General with the discretion to release
certain aliens on "conditional parole," the plain language thereof
limits it to those arrested "on a warrant issued by the Attorney
General."  This does **not** include LPRs seeking admission. [2]

Only aliens who were admitted to the U.S., or who entered illegally
are arrested on a warrant and may be paroled under §1226(a). After
such an arrest, INS has various options under §1226(a), depending
on factors such as whether the alien is considered a flight risk,
or threat to the community. [3]  These concerns are not present when

---

[2]  8 C.F.R. §236.1(d)(1) allows Immigration Judges to exercise
"the authority in section 236 of the Act," including "conditional
parole." That applicants for admission are excluded is seen from 8
C.F.R. §3.19(h)(2), precluding IJs from granting bond or parole to
**aliens in exclusion proceedings, arriving aliens, or those who were
"paroled after arrival pursuant to section 212(d)(5) of the Act."**

[3]  *See,* 8 C.F.R. §236.1(c); *Matter of Adeniji,* I.D. 3417 (BIA
1999).  For example, Plaintiff Gracia was arrested on a warrant, in
the U.S., and posted bonded under §1226(a). (R5:1289,¶9;1216).

LPRs are sent to Mexico under §1225(b)(2)(C), but may come into play if they are paroled under §1182(d)(5), as with Plaintiffs Sanchez and Cabrera, who posted bonds as a condition of parole under §1182(d)(5). Even then, such aliens are not arrested "on a warrant," as required for conditional parole under §1226(a).

> **b. LPRs SEEKING ADMISSION WHO ARE RETURNED TO MEXICO ARE NOT ARRESTED "ON A WARRANT" AND MAY BE PAROLED ONLY UNDER 8 U.S.C. §1182(d)(5)(A).**

For LPRs and others seeking admission, parole powers derive not from 8 U.S.C. §1226(a), but from §1182(d)(5)(A) (emphasis added):

> The Attorney General may except [under circumstances not pertinent herein] in his discretion parole into the United States ... **any alien applying for admission to the United States** ... and when the purposes of such parole shall ... have been served the alien shall forthwith ... be returned **to the custody from which he was paroled**...

Clearly, §1182(d)(5)(A) was specifically designed to allow for the parole of applicants for admission, such as Plaintiffs Ascencio, Merino, Gutierrez, Sanchez and Cabrera. When, under 8 U.S.C. §1225(b)(2)(A), an LPR is "detained for a proceeding" under §1229a, INS has three options: physical detention, without a warrant, at a facility within the U.S., as initially occurred with Plaintiffs Sanchez and Cabrera. Alternatively, pursuant to §1225(b)(2)(C), INS may return the person to Mexico to await a hearing, such as initially occurred with Plaintiffs Ascencio, Merino, and Gutierrez. Or, under §1182(d)(5)(A), INS may parole the person into the U.S. while proceedings are pending, as with Plaintiffs Sanchez, Cabrera Ascencio, Merino and Gutierrez, **after** they obtained counsel. None

5

18

of these five Plaintiffs was arrested "on a warrant." [4]

By its terms, 8 U.S.C. §1226(e) bars jurisdiction only over actions under §1226. It did not affect the District Court's jurisdiction to review the procedures by which permanent residents are returned to Mexico under §1225(b)(2)(C), in lieu of being granted parole under §1182(d)(5)(A). Therefore, the conclusion of the District Court that she had jurisdiction over this claim should be upheld.

### 2. PLAINTIFFS SEEK FAIR PAROLE PROCEDURES, NOT REVIEW OF INDIVIDUAL, DISCRETIONARY, PAROLE DECISIONS.

Furthermore, the preclusion of §1226(e) applies only to review of *discretionary* determinations, not challenges to the administration of the parole authority in general. *Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999). *See also, Gonzalez-Torres v. INS*, 213 F.3d 899,901 (5th Cir. 2000) (review of "application of law to factual determinations" in suspension application not precluded by IIRIRA §309(c)(4)(E), which provides that "there shall be no appeal of any discretionary decision" in the denial of a suspension application).

---

[4]   Petitioners Sanchez and Cabrera were initially detained at "PISPC" (Port Isabel Service Processing Center). They were paroled under §1182(d)(5), and received I-94s containing a stamp, "PAROLED PURSUANT TO SEC. 212(d)(5) OF THE I&N ACT..." *See,* (R5:1316,1324). Similarly, Plaintiff Gutierrez requested, and was granted, parole pursuant to 8 C.F.R. §212.5, (R5:1218,1314). *See also,* Respondents' Motion For Summary Judgment, discussing the parole authority under 8 U.S.C. §1182(d)(5), and 8 C.F.R. §212.5 (R3:688-9). In their brief before this Court, at pp. 47 and 49, Respondents acknowledge that §1182(d)(5) governs parole of LPRs seeking admission. Yet they imply at page 49, that §1226(a) may also apply in such cases without addressing the fact that §1226(a) only applies to aliens already in the U.S., who were arrested "on a warrant."

19

**3. ALTERNATIVELY, THE DISTRICT COURT PROPERLY CONCLUDED THAT SHE HAD JURISDICTION UNDER 28 U.S.C. §2241, AS A PETITION FOR A WRIT OF HABEAS CORPUS, WHICH CANNOT BE SUSPENDED, ABSENT AN EQUIVALENT PROCEDURE FOR DETERMINING THE LAWFULNESS OF THE DETENTION AT ISSUE.**

In the alternative, the District Court based her jurisdiction to issue the instant order on 28 U.S.C. §2241. Under the Suspension Clause of the U.S. Constitution, jurisdiction in habeas corpus may not be suspended unless an equivalent form of review is provided elsewhere. *Swain v. Pressley,* 430 U.S. 372 (1977) (substitution of collateral remedy for habeas corpus does not violate the Suspension Clause where the remedy is co-extensive with the review provided by habeas corpus, and is not "inadequate or ineffective" to test the legality of the detention). *See also, Max-George v. Reno,* 205 F.3d 194,200-201 (5th Cir.2000); *Zadvydas v. Underdown*, 185 F.3d 279,285-86 (5th Cir. 1999); *Boz v. U.S.,* 228 F.3d 1290,1293 (11th Cir. 2000). No substitute form of review exists herein, and repeal of the jurisdictional basis for the Court to issue a writ of habeas corpus would, under these circumstances, violate the Suspension Clause.

**B. THE DISTRICT COURT CORRECTLY CONCLUDED THAT PLAINTIFFS ARE CONSTITUTIONALLY ENTITLED TO NOTICE OF THE AVAILABILITY OF PAROLE, AND FAIR PROCEDURES IN ADJUDICATING THEIR APPLICATIONS.**

Having found that the District Court lacked jurisdiction over this issue, the Court did not address the merits, although it did note that the executive branch has an "independent duty to uphold the Constitution," (OPINION:8). However, the Court's citation to *City of West Covina v. Perkins,* 525 U.S. 234,240-41 (1999), is trouble-

7

some, as it could be read as implying that, if jurisdiction did exist, notice to class members of the availability of parole would still not be constitutionally mandated.  This would be incorrect.

> **1.   FOR LPRs STRANDED IN MEXICO, WHERE THERE ARE FEW IF ANY PUBLIC RESOURCES RELATING TO U.S. IMMIGRATION LAW, AND EVEN A QUERY POSED AT AN EXCLUSION HEARING YIELDED NO HELPFUL INFORMATION AS TO HOW TO APPLY FOR PAROLE, IT IS, AS CONCEDED BELOW, VERY DIFFICULT FOR CLASS MEMBERS TO ASCERTAIN AND FOLLOW THE PROCEDURES FOR REQUESTING PAROLE**

*West Covina* held that when the police seize property for a criminal investigation, due process does not require that they provide the owner with notice of state law remedies which are established by published, generally available state statutes and case law.  The key to said decision, and the reason it is inapplicable herein, lies in the phrase "generally available." In *West Covina,* the police seized some property from Perkin's home. They left a Notice, with a name and telephone number to call for information.  As the Court elaborated, 525 U.S. at 237 (internal citations omitted):

> Not long after the search, Perkins called Ferrari, one of the detectives listed on the Notice, and inquired about return of the seized property. ... One of the detectives told Perkins he needed to obtain a court order authorizing the property's return. ...

> About a month after the search, Perkins went to the Citrus Municipal Court to see Judge Oki, who had issued the warrant.  He learned Judge Oki was on vacation. ... He tried to have another judge release his property but was told the court had nothing under Perkins' name. ...

Without more, he filed suit.  As the Court continued, *id.* at 238:

> The District Court granted summary judgment for the City and its officers. ...  The court, however, invited supplemental briefing on an issue respondents had not

8

21

> raised:  whether available remedies for the return of
> seized property were adequate to satisfy due process. ...

From this, it is clear that, while the Notice did not advise the

owner of the *precise procedures* for seeking the return of his

property, it did include the name and telephone number of someone

who could, and did, provide that information.  Perkins was also in

the U.S.. Published statutes were "readily available," and he had

ready access to counsel. Moreover, it was his property interests,

not his liberty, which was at stake. Under these circumstances, it

was not unreasonable to expect that he could ascertain, and access,

the available legal remedies. As noted in *Covina, supra* at 240-241:

> It follows that when law enforcement agents seize
> property pursuant to warrant, due process requires them
> to take reasonable steps to give notice that the property
> has been taken so the owner can pursue available remedies
> for its return.  Cf. Schroeder v. City of New York, 371
> U.S. 208, 214, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962)
> (requiring a city to provide adequate notice of the
> deprivation--the city's condemnation of certain water
> rights--which created the property owner's right to
> pursue damages claims and triggered the statute of
> limitations on those claims).  Individualized notice
> that the officers have taken the property is necessary in
> a case such as the one before us because the property
> owner would have no other reasonable means of
> ascertaining who was responsible for his loss.
>
> No similar rationale justifies requiring individualized
> notice of state-law remedies which, like those at issue
> here, are established by published, *generally available*
> state statutes and case law.  Once the property owner is
> informed that his property has been seized, he can turn
> to these public sources to learn about the remedial
> procedures available to him.

Applied to the case at bar, the test would be whether, when they

are returned to Mexico to await a hearing, the Plaintiff class has

"reasonable means" of ascertaining the remedies available to them.
In other words, are resources relating to U.S. immigration law
"generally available" in Mexico, so that they can "turn to these
public sources to learn about the remedial procedures available" to
them, to wit, the existence of parole under 8 U.S.C. §1182(d)(5),
and the procedures by which an application may be made. The record
establishes that the answer to this question is "no." INS concedes
that LPRs returned to Mexico are not even advised that parole is
possible. (R3:811). As seen from the case of Plaintiff Ascencio,
and, as conceded by Respondents, (R5:1219,1295), [5] it is very
difficult for LPRs stranded in Mexico to ascertain, and follow, the
procedures for requesting parole.  In response to her query, the
Immigration Judge told her to "talk to the District Director," and
the INS Attorney could only suggest that she "start at the
information desk downstairs..." (R4:971-72). [6] That even this was
insufficient is seen from the fact that she was not **granted** parole
until after she obtained counsel, several months later. (R5:1312).

Given the 1996 amendments to 8 U.S.C. §1101(a)(13), eliminating the
so-called *Fleuti* departure as a defense to inadmissability of LPRs

---

[5] Respondents later quibbled with the qualifier "very," but
not with the fact that it is "difficult for an alien to ascertain,
and follow, the procedures necessary to request that he or she be
paroled into the U.S. during exclusion proceedings," which they
characterized as an "immaterial fact[] not in dispute" (R3:821-22).

[6] Respondents note that INS officials at ports of entry "can
answer questions about the parole procedure," (R3:725), not that
they **do** answer such questions in a sufficiently effective manner to
enable LPRs to meaningfully access the procedures without counsel.

23

based on factors such as past criminal conduct, together with the expansion of offenses constituting grounds of inadmissibility, and the retroactive nature of this expansion, the problem has, if anything, grown. [7] Now, LPRs may suddenly find themselves stranded in Mexico, due to relatively minor offenses committed years ago, even though they are fully rehabilitated. And, like Ms. Ascencio, they may find it virtually impossible to ascertain, much less gain meaningful access to, the procedures for requesting parole under §1182(d)(5)(A). This is a far cry from situation in *West Covina*.

### 2. THE PLAINTIFF CLASS IS ALSO ENTITLED TO DUE PROCESS IN THE ADJUDICATION OF ANY REQUESTS FOR PAROLE MADE BY THEM.

The District Court further held that lawful permanent residents are constitutionally entitled to a parole hearing before an impartial adjudicator. Although concluding that this claim was also barred by §1226(e), this Court noted, (OPINION:8) (emphasis added):

> Without reaching the merits of the plaintiffs' constitutional claims, we therefore vacate those portions of the order that require the INS to hold parole hearings. *In doing so, we note that the executive branch, of course, has an independent duty to uphold the Constitution, irrespective of whether its actions are subject to judicial review.*

Unfortunately, the executive branch is failing in this "independent duty." Although none was paroled until after they obtained counsel, *all five named Plaintiffs* under exclusion proceedings ultimately

---

[7] *See, e.g., Molina v. Sewell*, 983 F.2d 676 (5th Cir. 1993) (LPR who departed U.S. while under deportation proceedings for drug conviction not making an "entry" on his return).

11

24

won their cases. (R1:113). This shows that there is little if any correlation between the manner in which parole is administered, and the merits of particular cases. Yet fundamental liberty interests are at stake. *Landon v. Plasencia,* 459 U.S. 21,34 (1982) ("...the right to rejoin her immediate family ... ranks high among the interests of the individual."). Consequently, as intimated by this Court in the above quotation, and in accordance with the balancing test of *Mathews v. Eldridge, supra,* the District Court's Order that Plaintiffs are entitled to Due Process in the adjudication of their requests for parole should also be sustained.

**C.  IN CONCLUDING THAT THE ATTORNEY GENERAL HAS THE DISCRETION TO INFORM EMPLOYERS OF A POTENTIAL EMPLOYEE'S IMMIGRATION PROBLEMS,[8] THE COURT OVERLOOKED TWO CRUCIAL FACTS:  FIRST, SHE IS BARRED BY STATUTE FROM DISCLOSING PERSONAL INFORMATION, AND SECOND, 8 C.F.R. §264.5(g) DOES NOT APPLY TO LPRs IN REMOVAL PROCEEDINGS.**

> **1.  WITH EXCEPTIONS NOT PERTINENT HEREIN, RESPONDENTS ARE BARRED BY 8 U.S.C. §1304(b) AND 5 U.S.C. §552a(b) FROM DISSEMINATING PERSONAL INFORMATION ABOUT CLASS MEMBERS.**

There are two statutory bars which forbid the Attorney General from disclosing personal information to employers or others to whom LPRs must show proof of LPR status.  8 U.S.C. §1304(b) mandates that:

> All registration and fingerprint records made under the provisions of this title shall be confidential, and shall be made available only (1) pursuant to [8 U.S.C. §1357(f)(2)] and (2) to such persons or agencies as may be designed by the Attorney General.

8 U.S.C. §1304(a) requires that INS obtain, *inter alia,* the "police

---

[8]  The Court cited the Attorney General's supposed "statutory discretion" to provide such information to employers, (OPINION:6), but did not state the statutory source of this alleged discretion.

25

and criminal record" of aliens. INS may not disclose these records
to employers, or to agencies such as employment offices, which are
neither included in §1357(f)(2), nor have been so designated. The
Privacy Act also bars dissemination of personal information about
LPRs. As defined by 5 U.S.C. §552a(a)(4), a "record" is "any item,
collection, or grouping of information about an individual that is
maintained by an agency." §552a(b), in turn, provides that:

> No agency shall disclose any record which is contained in
> a system of records by any means of communication to any
> person, or to another agency, except pursuant to a
> written request by, or with the prior written consent of,
> the individual to whom the record pertains...

The Court did not consider these bars in holding that the Attorney
General has "statutory discretion" to broadcast such information to
employers and others to whom LPRs must show proof of their status.

### 2. 8 C.F.R. §264.5(g) DOES NOT ADDRESS THE DOCUMENTS TO BE GIVEN PERMANENT RESIDENTS UNDER REMOVAL PROCEEDINGS.

In addressing the "scope and meaning" of 8 C.F.R. §264.5(g), [9]
(OPINION:6), the Court overlooked the fact that, by its terms,
§264.5(g) applies only to exclusion and deportation proceedings,
not removal proceedings. Therefore, the I-551 remains the sole
document specified by the regulations, and thus authorized by 8
U.S.C. §1304(d), to be issued to such persons. Consequently, as

_____

[9]    IIRIRA §309(d)(2) equates *orders* of deportation and
exclusion with orders of removal, but removal *proceedings* remain
procedurally distinct from exclusion and deportation proceedings.
*See*, 8 C.F.R. Part 240, Subpart A (removal proceedings); Subpart D
(exclusion proceedings) and Subpart E (deportation proceedings).
The slight procedural differences, however, are not pertinent to
any of the issues raised herein.

13

26

discussed in Appellee's opening brief, (pp.46-49), the exclusive authority to confiscate I-551s under such circumstances lies in Respondents' "implied authority to take reasonable law enforcement actions..." *Wilson v. Layne,* 141 F.3d 111,117 (4th Cir. 1998). *See also, Etuk v. Slattery,* 936 F.2d 1433 (2nd Cir. 1991).

As conceded below, some branches of INS do not confiscate I-551s of LPRs placed in proceedings. Others do so routinely, and provide I-94s which do not comply with INS' own internal Memo, [10] under which they must be prepared pursuant to OI 264.2. [11] (R3:813-4). As also conceded, when LPRs are released on bond, **no** provisional documents are provided, absent a specific request. (R3:604;R8:29). Virtually by definition, these are not "reasonable law enforcement actions."

> **3. WHERE THE I-551 IS THE ONLY ALIEN REGISTRATION FORM AUTHORIZED FOR PERMANENT RESIDENTS IN REMOVAL PROCEEDINGS AND WHERE INS ARBITRARILY CONFISCATES SUCH DOCUMENTS, THE DISTRICT COURT MAY APPROPRIATELY LOOK TO THE McNARY MEMO FOR GUIDANCE IN FORMULATING EQUITABLE REMEDIES.**

The question then becomes one of remedies. Plaintiffs do not assert that the McNary memo, *per se*, grants them any rights. Rather, as discussed above, the rights at issue derive from 8 U.S.C. §1304(d)

---

[10] Not coincidentally, the McNary Memo does not recognize any "discretion" to place notations on these documents about personal matters, such as that deportation proceedings are pending, or the LPR was released on bond. Rather, it specifies that such documents be prepared in the same manner as those given to LPRs who have lost their I-551s, and to those being issued cards for the first time.

[11] Said OI specifies use of the *admissions* portion of the I-94, and dictates the precise wording to be placed thereon. (R3:720-21).

27

(as to the form of alien registration to be issued); and 8 U.S.C. §1304(b) and 5 U.S.C. §552a(b) (prohibiting the dissemination of personal information about LPRs). Particularly where these rights are being violated on a class-wide basis, the District Court has substantial discretion to fashion remedies. *See, Mississippi State Chapter, Operation Push v. Mabus*, 932 F.2d 400,405-407 (5th Cir. 1991) (discussing district court's equitable powers to fashion remedies). There could be no better guidance in this task than Respondents' own stated policies, as expressed by the McNary Memo.

## III.   CONCLUSION

WHEREFORE, it is urged that the Court retract its opinion herein, and affirm the District Court, for the reasons stated above and those expressed by Circuit Judge Dennis in his separate opinion, concurring in part and dissenting in part. [12]

Respectfully Submitted,

Lisa S. Brodyaga                          Thelma O. Garcia
17891 Landrum Park Road                   301 E. Madison
San Benito, TX 78586                      Harlingen, TX 78550
(956) 421-3226                            (956) 435-3701

### CERTIFICATE OF SERVICE

I certify that two copies of the instant brief were mailed, first-class postage prepaid, to Regina Byrd, Attorney, OIL, P.O. Box 878, Ben Franklin Sta., Wash., D.C. 20044, on December 14, 2000.

--------

[12]    Since this Court did not overturn the District Court's Order with respect to the confiscation of other documents, such as drivers licenses, Social Security cards, Mexican passports, etc., this issue is not addressed herein.

15

28

DEFENDANT'S
EXHIBIT
4

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

| | | |
|---|---|---|
| JULIO LOA-HERRERA, | ) | |
| RAMIRO GRACIA-CANTU, | ) | |
| JUANA ASCENCIO-GUZMAN, | ) | |
| EFRAIN MERINO, | ) | |
| ARTURO LOPEZ-LOZANO, | ) | |
| ALEJANDRA GUTIERREZ, | ) | |
| JUAN SANCHEZ-SALINAS, and | ) | |
| ADELITA CANTU DE CABRERA, | ) | |
|     PLAINTIFFS/APPELLEES, | ) | |
| On behalf of themselves, and | ) | |
| All others similarly situated, | ) | |
| | ) | |
| v. | ) | No. 99-40122 |
| | ) | |
| E.M. TROMINSKI, INS DISTRICT | ) | |
|     DIRECTOR, | ) | |
| JANET RENO, UNITED STATES | ) | |
|     ATTORNEY GENERAL, and the | ) | |
| IMMIGRATION AND NATURALIZATION | ) | |
|     SERVICE, | ) | |
|     DEFENDANTS/APPELLANTS. | ) | |

PLAINTIFFS'/APPELLEES' PETITION FOR EN BANC REHEARING

Lisa S. Brodyaga          and          Thelma O. Garcia
REFUGIO DEL RIO GRANDE, INC.           LAW OFFICES OF THELMA GARCIA
17891 Landrum Park Road                301 E. Madison
San Benito, TX  78586                  Harlingen, TX 78550
(956) 421-3226                         (956) 425-3701

Attorneys for Plaintiffs/Appellees

December 14, 2000

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel for Appellees hereby certifies that the following listed persons have an interest in the outcome of this case.  These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

1.   The Immigration and Naturalization Service, ("INS");

2.   Appellees, all of whom are lawful permanent residents, ("LPRs"), and their LPR and U.S. citizen immediate family members:

    a.   Ramiro Gracia-Cantu, wife Anaberta, and daughter Jovanna;

    b.   Juana Ascencio-Guzman, husband (Plaintiff) Efrain Merino, son Rosalino, and daughter Cristal;

    c.   Arturo Lopez-Lozano, wife Sonia, and daughters, Gracie and Erica,

    d.   Juan Sanchez-Salinas, wife Gloria, and children, Juan Jr., Maria, Jose, Oralia, Juanita, and Lupe Sanchez;

    e.   Alejandra Gutierrez;

    f.   Adelita Cantu de Cabrera, husband Noe, and children Noelia, Noe Arturo, Arnoldo, and Abigail; and

    g.   The certified class of permanent residents they represent.

3.   Counsel for Appellees, Lisa S. Brodyaga, and Thelma O. Garcia.


_____
Lisa S. Brodyaga
Attorney for Appellees

## STATEMENT OF COUNSEL PURSUANT TO FRAP 35(b)(1)

The undersigned attorney for Plaintiffs/Appellees hereby certifies that, in accordance with Rule 35(b)(2)(B), Fed. Rules App. Proc., the case at bar involves three questions of exceptional importance.

First, as noted by Circuit Judge Dennis in his separate Opinion, concurring in part and dissenting in part, the majority Opinion, holding that 8 U.S.C. §1226(e) deprives the District Court of all jurisdiction over the manner in which the Attorney General's parole authority is exercised, conflicts with *Parra v. Perryman,* 172 F.3d 954 (7th Cir.1999) (jurisdictional bar of 8 U.S.C. §1226(e) applies only to the review of *discretionary decisions*, not to challenges to the administration of the parole authority in general). [1]

Further, the majority Opinion incorrectly assumes that 8 U.S.C. §1226(e) is pertinent herein. By its terms, §1226(a) applies only to aliens who are arrested pursuant to "a warrant issued by the Attorney General." Permanent residents seeking admission who are returned to Mexico to await their hearings, under 8 U.S.C. §1225(b)(2)(C), are not arrested on a warrant, and may not be paroled under §1226(a). Rather, the statutory authority for paroling LPRs under these circumstances derives from 8 U.S.C. §1182(d)(5)(A), which

---

[1]     *See also, Gonzalez-Torres v. INS,* 213 F.3d 899,901 (5th Cir. 2000) (judicial review of the "application of law to factual determinations" in suspension application not precluded by IIRIRA §309(c)(4)(E), which provides that "there shall be no appeal of any discretionary decision" in the denial of a suspension application).

authorizes the parole of applicants for admission. [2]

Second, this aspect of the majority Opinion also conflicts with *Swain v. v. Pressley,* 430 U.S. 372 (1977) (the substitution of a collateral remedy for habeas corpus does not violate the Suspension Clause where the remedy is co-extensive with the review provided by habeas corpus, and is not "inadequate or ineffective" to test the legality of the challenged custody). [3]

The District Court asserted jurisdiction under, *inter alia,* 28 U.S.C. §2241, to hear Plaintiffs' challenge to the manner in which LPRs seeking admission are returned to Mexico to await a hearing, under 8 U.S.C. §1225(b)(2)(C), without advising them of the possibility of being paroled into the U.S., pursuant to 8 U.S.C. §1182(d)(5)(A), during the often prolonged period that their cases may be pending, or affording Due Process in the adjudication of their requests for parole. This procedure deprives them of fundamental liberty interests, and constitutes "custody" for purposes of habeas corpus. But there is no alternative forum where

---

[2] The parole powers of 8 U.S.C. §1226(a) apply only to aliens in the U.S.. 8 C.F.R. §236.1(d)(1) authorizes Immigration Judges to "exercise the authority in section 236 of the Act..." That this does not include applicants for admission is seen from §3.19(h)(2), specifying that they may not redetermine the custody conditions of aliens in exclusion proceedings, arriving aliens, or those "paroled after arrival pursuant to section 212(d)(5) of the Act."

[3] *See also, Max-George v. Reno,* 205 F.3d 194,200-201 (5th Cir. 2000); *Zadvydas v. Underdown,* 185 F.3d 279,285-86 (5th Cir. 1999); and *Boz v. U.S.,* 228 F.3d 1290,1293 (11th Cir. 2000).

it may be determined whether this deprivation of liberty violates the Due Process Clause of the Constitution of the United States. [4]

Finally, the majority Opinion conflicts with *Etuk v. Slattery*, 936 F.2d 1433 (2nd Cir. 1991). It allows INS to broadcast the fact that Plaintiffs are experiencing immigration problems to employers and others to whom they must show proof of LPR status by placing notations to that effect on their alien registration forms. As held in *Etuk,* the failure to provide alien registration as prescribed by 8 U.S.C. §1304(d) interferes with the ability of LPRs to obtain employment, and to exercise other rights pertaining to LPR status. This is particularly damaging since, as occurred herein, the aliens may ultimately win their cases, and retain their LPR status. [5] The Court also failed to consider that these notations violate two distinct statutory bars; 8 U.S.C. §1304(b) and 5 U.S.C. §552a(b).

---

[4] *See, Koetting v. Thompson*, 995 F.2d 37 (5th Cir. 1993) (although a "detainer" issued in connection with a parole violation does not constitute custody for habeas purposes where no liberty interest is impinged, custody does exist where such an interest is implicated because the detainer interferes with the petitioner's ability to defend against the parole revocation proceedings); and *Landon v. Plasencia,* 459 U.S. 21,34 (1982) ("Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual," citing *Moore v. City of East Cleveland*, 431 U.S. 494, 499, 503-504 (1977) (plurality opinion); and *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)).

[5] *See also, Molina v. Sewell*, 983 F.2d 676 (5th Cir. 1993) (the fact that permanent resident is under deportation proceedings does not affect his LPR status).

34

# TABLE OF CONTENTS

I.  ISSUES PRESENTED . . . . . . . . . . . . . . . . . . 1

II.  COURSE OF PROCEEDINGS . . . . . . . . . . . . . . . 1

III.  PERTINENT FACTS . . . . . . . . . . . . . . . . . . 1

IV.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . 3

A.  THE MAJORITY OPINION INCORRECTLY CONCLUDED THAT THERE IS
NO JURISDICTION TO REVIEW THE MANNER IN WHICH PERMANENT
RESIDENTS ARE AFFORDED, (OR, AS WAS DEMONSTRATED HEREIN,
DEPRIVED OF), MEANINGFUL ACCESS TO THE PROCEDURES FOR
REQUESTING PAROLE UNDER 8 U.S.C. §1182(d)(5)(A) . . . 3

1.  THE COURT ERRED IN CONCLUDING THAT THE PAROLE OF
ALIENS SEEKING ADMISSION TO THE UNITED STATES IS
GOVERNED BY 8 U.S.C. §1226(a) . . . . . . . . . 3

a.  THE "CONDITIONAL PAROLE" OPTION OF §1226(a)
APPLIES ONLY TO ALIENS ALREADY WITHIN THE
UNITED STATES, WHO ARE ARRESTED "ON A WARRANT"
. . . . . . . . . . . . . . . . . . . . . 5

b.  LPRs SEEKING ADMISSION WHO ARE RETURNED TO
MEXICO UNDER 8 U.S.C. §1225(b)(2)(C) ARE NOT
ARRESTED "ON A WARRANT" AND MAY BE PAROLED
ONLY UNDER 8 U.S.C. §1182(d)(5)
. . . . . . . . . . . . . . . . . . . . . 5

2.  PLAINTIFFS SEEK FAIR PAROLE PROCEDURES, NOT REVIEW
OF INDIVIDUAL, DISCRETIONARY, PAROLE DECISIONS . 7

3.  IN THE ALTERNATIVE, THE DISTRICT COURT PROPERLY
CONCLUDED THAT SHE HAD JURISDICTION UNDER 28 U.S.C.
§2241, AS A PETITION FOR A WRIT OF HABEAS CORPUS,
WHICH CANNOT BE SUSPENDED, ABSENT AN EQUIVALENT
PROCEDURE FOR DETERMINING THE LAWFULNESS OF THE
DETENTION AT ISSUE . . . . . . . . . . . . . . 7

B.  THE DISTRICT COURT CORRECTLY CONCLUDED THAT PLAINTIFFS
ARE CONSTITUTIONALLY ENTITLED TO NOTICE OF THE
AVAILABILITY OF PAROLE, AND FAIR PROCEDURES IN
ADJUDICATING THEIR PAROLE APPLICATIONS. . . . . . . 8

v

35

1.   FOR CLASS MEMBERS STRANDED IN MEXICO, WHERE THERE
     ARE FEW IF ANY PUBLIC RESOURCES RELATING TO U.S.
     IMMIGRATION LAW, AND EVEN A QUERY POSED AT AN
     EXCLUSION HEARING YIELDED NO HELPFUL INFORMATION AS
     TO HOW TO APPLY FOR PAROLE, IT IS, AS FOUND BELOW,
     VERY DIFFICULT FOR CLASS MEMBERS TO ASCERTAIN AND
     FOLLOW THE PROCEDURES FOR REQUESTING PAROLE . . 8

2.   THE PLAINTIFF CLASS IS ALSO ENTITLED TO DUE PROCESS
     IN THE ADJUDICATION OF ANY REQUESTS FOR PAROLE MADE
     BY THEM . . . . . . . . . . . . . . . . . . 11

C.   IN CONCLUDING THAT THE ATTORNEY GENERAL HAS DISCRETION TO
     INFORM EMPLOYERS OF A POTENTIAL EMPLOYEE'S IMMIGRATION
     PROBLEMS, THE COURT OVERLOOKED TWO KEY FACTS: FIRST, THAT
     SHE IS BARRED BY STATUTE FROM DISCLOSING SUCH PERSONAL
     INFORMATION, AND SECOND, THAT 8 C.F.R. §264.5(g) DOES NOT
     APPLY TO LPRs IN REMOVAL PROCEEDINGS . . . . . . . 12

     1.   WITH EXCEPTIONS NOT PERTINENT HEREIN, RESPONDENTS
          ARE BARRED BY 8 U.S.C. §1304(b) AND 5 U.S.C.
          §552a(b) FROM DISSEMINATING PERSONAL INFORMATION
          ABOUT CLASS MEMBERS . . . . . . . . . . . . 12

     2.   8 C.F.R. §264.5(g) DOES NOT ADDRESS WHAT FORM OF
          ALIEN  REGISTRATION MAY BE GIVEN LPRs IN REMOVAL
          PROCEEDINGS . . . . . . . . . . . . . . . . 13

     3.   SINCE THE I-551 IS THE ONLY REGISTRATION FORM
          AUTHORIZED FOR LPRs IN REMOVAL PROCEEDINGS, AND INS
          ARBITRARILY CONFISCATES SUCH DOCUMENTS, THE
          DISTRICT COURT MAY APPROPRIATELY USE THE McNARY
          MEMO AS A GUIDE IN FORMULATING EQUITABLE REMEDIES
          . . . . . . . . . . . . . . . . . . . . . 14

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . 15

APPENDIX:

1.   Opinion of the Court herein, dated October 31, 2000; and

2.   Parole documents of Plaintiffs Sanchez and Cabrera,
     showing that they were paroled pursuant to §212(d)(5)
     of the Immigration and Nationality Act.

vi

36

# TABLE OF AUTHORITIES
## CASES

*Boz v. U.S.,*
    228 F.3d 1290 (11th Cir. 2000) . . . . . . . . . . . iii, 7

*City of West Covina v. Perkins,*
    525 U.S. 234 (1999) . . . . . . . . . . . . . . . 8-11

*Etuk v. Slattery,*
    936 F.2d 1433 (2nd Cir. 1991) . . . . . . . . . . . . iv

*Gonzalez-Torres v. INS,*
    213 F.3d 899 (5th Cir. 2000) . . . . . . . . . . . ii, 7

*Koetting v. Thompson,*
    995 F.2d 37 (5th Cir. 1993) . . . . . . . . . . . . iii

*Landon v. Plasencia,*
    459 U.S. 21 (1982) . . . . . . . . . . . . . . . iv, 12

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) . . . . . . . . . . . . . . . 3, 12

*Max-George v. Reno,*
    205 F.3d 194 (5th Cir. 2000) . . . . . . . . . . . iii, 7

*Mississippi State Chapter, Operation Push v. Mabus,*
    932 F.2d 400 (5th Cir. 1991) . . . . . . . . . . . . 15

*Molina v. Sewell,*
    983 F.2d 676 (5th Cir. 1993) . . . . . . . . . . . iv, 11

*Moore v. City of East Cleveland,*
    431 U.S. 494 (1977) . . . . . . . . . . . . . . . iii

*Parra v. Perryman,*
    172 F.3d 954 (7th Cir. 1999) . . . . . . . . . . . ii, 7

*Rosenberg v. Fleuti,*
    374 U.S. 449 (1963) . . . . . . . . . . . . . . . 11

*Schroeder v. City of New York,*
    371 U.S. 208 (1962) . . . . . . . . . . . . . . . 9

37

*Stanley v. Illinois*,
     405 U.S. 645 (1972) . . . . . . . . . . . . . . . iii

*Swain v. Pressley*,
     430 U.S. 372 (1977) . . . . . . . . . . . . . iii, 7

*Wilson v. Layne*,
     141 F.3d 111 (4th Cir. 1998) . . . . . . . . . . 14

*Zadvydas v. Underdown*,
     185 F.3d 279 (5th Cir. 1999) . . . . . . . . . iii, 7

## ADMINISTRATIVE DECISIONS

*Matter of Adeniji*,
     Interim Decision 3417 (BIA 1999) . . . . . . . . . . 6

## STATUTES

5 U.S.C. §552a(a)(4) . . . . . . . . . . . . . . . . . 13

5 U.S.C. §552a(b) . . . . . . . . . . . . . . . iv, 12, 13

8 U.S.C. §1101(a)(13) . . . . . . . . . . . . . . . . 11

8 U.S.C. §1182(d)(5) . . . . . . . . . . . . . . 4, 6, 10

8 U.S.C. §1182(d)(5)(A) . . . . . . . . . . . iii, 1, 3-5

8 U.S.C. §1182(d)(5)(B) . . . . . . . . . . . . . . . . 5

8 U.S.C. §1225(b)(2) . . . . . . . . . . . . . . . . . 3

8 U.S.C. §1225(b)(2)(A) . . . . . . . . . . . . . . 3, 5

8 U.S.C. §1225(b)(2)(C) . . . . . . . . . . . . . iii, 3-6

8 U.S.C. §1226 . . . . . . . . . . . . . . . . . . 4, 6

8 U.S.C. §1226(a) . . . . . . . . . . . . . . ii,iii,3-6

8 U.S.C. §1226(e) . . . . . . . . . . . . . . ii, 3, 6, 11

38

8 U.S.C. §1229a . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

8 U.S.C. §1304(a) . . . . . . . . . . . . . . . . . . . . . 13

8 U.S.C. §1304(b) . . . . . . . . . . . . . . . . iv, 12, 13

8 U.S.C. §1304(d) . . . . . . . . . . . . . . . . . . iv, 14

8 U.S.C. §1357(f)(2) . . . . . . . . . . . . . . . . . . 13

28 U.S.C. §2241 . . . . . . . . . . . . . . . . . . . iii, 7

Illegal Immigration Reform and Immigrant Responsibility Act,
    §309(c)(4)(E) . . . . . . . . . . . . . . . . . . . . 2, 7

Illegal Immigration Reform and Immigrant Responsibility Act,
    §309(d)(2) . . . . . . . . . . . . . . . . . . . . . 14

## REGULATIONS

8 C.F.R. Part 240, Subpart A . . . . . . . . . . . . . . . 14

8 C.F.R. Part 240, Subpart D . . . . . . . . . . . . . . . 14

8 C.F.R. Part 240, Subpart E . . . . . . . . . . . . . . . 14

8 C.F.R. §212.5 . . . . . . . . . . . . . . . . . . . . . . 5

8 C.F.R. §236.1(c) . . . . . . . . . . . . . . . . . . . . 6

8 C.F.R. §236.1(d)(1) . . . . . . . . . . . . . . . . ii, 4

8 C.F.R. §264.5(g) . . . . . . . . . . . . . . . 1, 12, 13

8 C.F.R. §3.19(h)(2) . . . . . . . . . . . . . . . . . ii, 4

## OTHER AUTHORITIES

Federal Rules of Appellate Procedure,
    Rule 35(b)(2)(B) . . . . . . . . . . . . . . . . . . ii

Operations Instruction 264.2 . . . . . . . . . . . . . . 14

United States Constitution,
    Article 1, § 9, cl. 2 ("Suspension Clause") . . . iii, 7, 8

39

## I.   ISSUES PRESENTED

A. THE MAJORITY INCORRECTLY CONCLUDED THAT THERE IS NO JURISDICTION TO REVIEW THE MANNER IN WHICH PERMANENT RESIDENTS ARE AFFORDED, (OR, AS WAS DEMONSTRATED HEREIN, DEPRIVED OF), MEANINGFUL ACCESS TO THE PROCEDURES FOR REQUESTING PAROLE UNDER 8 U.S.C. §1182(d)(5)(A).

B. WHEN AN LPR SEEKING ADMISSION IS RETURNED TO MEXICO TO AWAIT A HEARING, NOTICE OF THE AVAILABILITY OF PAROLE, AND FAIR PROCEDURES IN ADJUDICATING ANY PAROLE REQUEST, ARE CONSTITUTIONALLY MANDATED.

C.   IN CONCLUDING THAT THE ATTORNEY GENERAL HAS DISCRETION TO DISCLOSE TO EMPLOYERS PERSONAL INFORMATION ABOUT CLASS MEMBERS, THE MAJORITY OVERLOOKED TWO CRUCIAL FACTS: FIRST, THAT SHE IS BARRED BY TWO STATUTES FROM DISCLOSING THIS KIND OF INFORMATION, AND SECOND, THAT 8 C.F.R. §264.5(g) DOES NOT APPLY TO REMOVAL PROCEEDINGS.

## II.   COURSE OF PROCEEDINGS

The instant action was filed in 1994. The seven named Plaintiffs are LPRs who were then under exclusion and deportation proceedings, but all of whom eventually won their cases. The eighth Plaintiff is deceased. Class action status was granted in 1996. The District Court granted summary judgment for Plaintiffs in 1998. Respondents appealed, and, on October 31, 2000, in a two-to-one decision, the Court vacated the decision, and remanded for further proceedings.

## III.   PERTINENT FACTS

The District Court made the following pertinent findings of fact, based largely on INS' admissions (R1:86-7) (footnote omitted):

> 1.   A Memorandum issued by former Commissioner of INS Gene McNary, on March 14, 1990, (the "McNary Memo"), sets forth the conditions under which INS has authorized the confiscation of green cards issued to permanent residents who are placed under expulsion proceedings, and the form of the substitute document which must be provided, Government Exhibit 1. The practices of INS agents in the Harlingen, Texas district have frequently been inconsistent with the McNary Memo, in such particulars as (1) the routine, (instead of case-by-case), confiscation of green cards of residents placed under what were previously called deportation proceedings by some

40

branches of INS; (2) arbitrary placement on replacement documents of notations not authorized by the McNary Memo; and (3) the failure or refusal in some cases to issue any replacement document, or to place thereon an annotation that the holder is authorized to be employed in the United States. For permanent residents detained at a port of entry, placed under what were previously called exclusion proceedings, and paroled into the country, (with or without bond), Defendants have also failed to follow the McNary Memo in such particulars as the refusal to provide any substitute document, or to specify thereon that the resident is authorized to be employed in the United States, and have in some cases, placed notations stating that the holder is *not* authorized to be employed. At times, Defendants also confiscate other lawfully issued documents which do not constitute *bona fide* evidence of unlawful conduct.

2. When permanent residents seeking admission as returning residents are detained for major offenses, such as attempting to smuggle large quantities of controlled substances, or undocumented immigrants, such persons are usually paroled into the U.S. for criminal prosecution, and are thereafter detained at the INS detention center, where they have ready access to counsel, and are frequently, (but not always), allowed to post bond. By contrast, permanent residents detained at a land border for minor infractions such as attempting to smuggle relatives into the U.S., are generally subjected to a different procedure. In such cases, INS confiscates their green cards and then generally returns them to Mexico, where access to counsel is quite difficult, to await a hearing. They are not advised of the possibility of parole, unless they affirmatively inquire, nor afforded a hearing before they are returned to Mexico, and no appeal may be taken from the decision to return them to Mexico. Notice of hearings sent to Mexican addresses are not always received in a timely fashion, if at all.

The Court ordered, *inter alia,* that INS follow the McNary Memo, advise LPRs of the possibility of parole before returning them to Mexico, and provide a Due Process hearing on their parole requests. The McNary Memo was superceded by 8 C.F.R. §264.5(g) for LPRs in exclusion and deportation proceedings. But it is virtually moot, since, by its terms, it is inapplicable to removal proceedings.

2

41

IV.  ARGUMENT

**A.  THE MAJORITY INCORRECTLY HELD THAT THERE IS NO JURISDICTION TO REVIEW THE MANNER IN WHICH PERMANENT RESIDENTS ARE AFFORDED, (OR, AS WAS DEMONSTRATED HEREIN, DEPRIVED OF), MEANINGFUL ACCESS TO THE PROCEDURES FOR REQUESTING PAROLE UNDER 8 U.S.C. §1182(d)(5)(A).**

Even LPRs seeking admission must satisfy the Immigration Examiner

of their right to be admitted, failing which, they may be returned

to Mexico to await a hearing.  8 U.S.C. §1225(b)(2):

> (A)  In general. Subject to subparagraphs (B) and (C), in
> the case of an alien who is an applicant for admission,
> if the examining immigration officer determines that an
> alien seeking admission is not clearly and beyond a doubt
> entitled to be admitted, the alien shall be detained for
> a proceeding under section 240 [8 U.S.C. §1229a].
> . . .
> (C) . . . In the case of an alien described in subparagraph
> (A) who is arriving on land . . . from a foreign territory
> contiguous to the  United States, the Attorney General
> may return the alien to that territory pending a
> proceeding under section 240 [8 U.S.C. §1229a].

**1.   THE COURT ERRED IN CONCLUDING THAT THE PAROLE OF ALIENS SEEKING ADMISSION IS GOVERNED BY 8 U.S.C. §1226(a)**

In its Opinion, (hereinafter cited as (OPINION:___), at pages 7-8,

the majority concluded that 8 U.S.C. §1226(e) divested the District

Court of jurisdiction over Plaintiffs' complaints relating to the

arbitrary return to Mexico of LPRs placed in proceedings at a port

of entry.  Plaintiffs urged, and the District Court concluded, that

cases such as *Mathews v. Eldridge*, 424 U.S. 319 (1976) mandate that

before the authority of 8 U.S.C. §1225(b)(2)(C) be exercised with

respect to members of the Plaintiff class, Respondents must advise

them of the possibility of seeking parole under 8 U.S.C.

3

42

§ 1182(d)(5)(A), and provide them with a hearing before an impartial adjudicator. In rejecting this conclusion, the majority assumed that the parole power for LPRs seeking admission was found in 8 U.S.C. §1226(a), and referred to the parole powers conferred by 8 U.S.C. §1182(d)(5) only on a "*see also*" basis. (OPINION:7,n.12).

The power to parole an alien into the U.S. lies in §1182(d)(5)(A). Conditional parole under §1226(a) applies only to those arrested on a warrant in the U.S. [6] The District Court's Order does not relate to the "discretion to grant parole within the United States." [7] The discretion of §1226(a) to parole out of custody LPRs arrested on a warrant, in the U.S., (such as Plaintiff Gracia (R5:1289,¶9;1216)), is not at issue herein. Rather, the District Court addressed, and found wanting, the procedures by which LPRs seeking admission may be paroled into the U.S., in lieu of actual detention, or returning them to Mexico to await a hearing, pursuant to §1225(b)(2)(C).

---

[6] 8 C.F.R. §236.1(d)(1) authorizes Immigration Judges to "exercise the authority in section 236 of the Act..." But §3.19(h)(2) specifies that they may not redetermine the custody conditions of aliens in exclusion proceedings, arriving aliens, or those "paroled after arrival pursuant to section 212(d)(5) of the Act."

[7] The majority incorrectly opined, (OPINION:7), that the alternatives to "paroling an individual out of the United States" under §1225(b)(2)(C) were found at §1226(a), which includes "conditional parole." The alternatives to §1225(b)(2)(C) are physical detention, or parole *into* the United States, under §1182(d)(5)(A). *But see*, (OPINION:2) (emphasis added), where the majority correctly notes that the District Court's Order related to procedures for "determining whether an LPR should be *paroled into the United States* pending a final order of removal" or, as occurred with all seven surviving named Plaintiffs, pending the *successful termination* of proceedings, and retention of their LPR status).

### a. THE "CONDITIONAL PAROLE" OPTION OF §1226(a) APPLIES ONLY TO ALIENS ARRESTED "ON A WARRANT"

As the majority noted, (OPINION:6-7), 8 U.S.C. §1226(a) authorizes the Attorney General to release certain detained aliens on "conditional parole." However, the plain language thereof limits its applicability to aliens arrested "on a warrant issued by the Attorney General." This does **not** include LPRs seeking admission.

### b. LPRs SEEKING ADMISSION WHO ARE RETURNED TO MEXICO ARE NOT ARRESTED "ON A WARRANT" AND MAY BE PAROLED ONLY UNDER 8 U.S.C. §1182(d)(5)(A).

For LPRs and others seeking admission, parole powers derive not from 8 U.S.C. §1226(a), but from §1182(d)(5)(A) (emphasis added):

> The Attorney General may... in his discretion parole into the United States ... **any alien applying for admission to the United States**... and when the purposes of such parole shall... have been served the alien shall forthwith... be returned **to the custody from which he was paroled**...

Clearly, §1182(d)(5)(A) was specifically designed to allow for the parole of applicants for admission to the United States. When, pursuant to 8 U.S.C. §1225(b)(2)(A), a class member is "detained for a proceeding" under §1229a, INS has three options. The person may be physically detained, (without a warrant), at a facility within the United States, such as occurred with Plaintiffs Sanchez and Cabrera. Alternatively, pursuant to §1225(b)(2)(C), INS may return the person to Mexico to await a hearing, as occurred with Plaintiffs Ascencio, Merino and Gutierrez. [8] Or, under §1182(d)(5),

---

[8] Petitioners Sanchez and Cabrera were initially detained at "PISPC" (Port Isabel Service Processing Center). They were paroled

INS may parole the person into the U.S. while proceedings are conducted. Plaintiffs Ascencio, Merino and Gutierrez were granted such parole, after they obtained counsel. In none of these five cases was the Plaintiff arrested pursuant to a warrant. Rather, warrants are employed where aliens (such as Plaintiff Gracia), who have already been admitted, or entered illegally, are placed under proceedings, *and* where certain criteria are met, e.g., where the alien is a flight risk, or a threat to the community. *See,* 8 C.F.R. §236.1(c); *In re Adeniji*, I.D. 3417 (BIA 1999). These concerns are not present when LPRs are returned to Mexico under §1225(b)(2)(C).

By its terms, 8 U.S.C. §1226(e) bars jurisdiction only over actions under §1226. It did not affect the District Court's jurisdiction to review the procedures by which permanent residents are returned to Mexico under §1225(b)(2)(C), in lieu of being granted parole under §1182(d)(5)(A). Therefore, the conclusion of the District Court that she had jurisdiction over this claim should be upheld.

---

under §1182(d)(5), and received I-94s containing a **stamp**, "PAROLED PURSUANT TO SEC. 212(d)(5) OF THE I&N ACT..." *See,* (R5:1316,1324). Similarly, Plaintiff Gutierrez requested, and was granted, parole pursuant to 8 C.F.R. §212.5, (R5:1218,1314). *See also,* Respondents' Motion For Summary Judgment, discussing their parole authority under 8 U.S.C. §1182(d)(5), and 8 C.F.R. §212.5 (R3:688-9).

In their brief before this Court, at pp. 47 and 49, Respondents acknowledge that §1182(d)(5) governs the parole of LPRs seeking admission. Yet they imply, (without actually so stating), at p. 49, that §1226(a) may also apply in such cases. This overlooks the fact that LPRs seeking admission, who are returned to Mexico to await their hearings, are processed under 8 U.S.C. §1225(b)(2)(C), and are not arrested on "a warrant issued by the Attorney General."

45

## 2. PLAINTIFFS SEEK FAIR PAROLE PROCEDURES, NOT REVIEW OF INDIVIDUAL, DISCRETIONARY, PAROLE DECISIONS.

Furthermore, as held in *Parra v. Perryman,* 172 F.3d 954 (7th Cir. 1999) the preclusion of §1226(e) applies to review of *discretionary* determinations, not challenges to the administration of the parole authority in general. *See also, Gonzalez-Torres v. INS,* 213 F.3d 899,901 (5th Cir. 2000) (review of "application of law to factual determinations" in suspension application not precluded by IIRIRA §309(c)(4)(E), which provides that "there shall be no appeal of any discretionary decision" in the denial of a suspension application).

## 3. ALTERNATIVELY, THE DISTRICT COURT PROPERLY CONCLUDED THAT SHE HAD JURISDICTION UNDER 28 U.S.C. §2241, AS A PETITION FOR A WRIT OF HABEAS CORPUS, WHICH CANNOT BE SUSPENDED, ABSENT AN EQUIVALENT PROCEDURE FOR DETERMINING THE LAWFULNESS OF THE DETENTION AT ISSUE.

In the alternative, the District Court based her jurisdiction to issue the instant order on 28 U.S.C. §2241. Under the Suspension Clause of the U.S. Constitution, jurisdiction in habeas corpus may not be suspended unless an equivalent form of review is provided elsewhere. *Swain v. Pressley,* 430 U.S. 372 (1977) (substitution of collateral remedy for habeas corpus does not violate the Suspension Clause where the remedy is co-extensive with the review provided by habeas corpus, and is not "inadequate or ineffective" to test the legality of the detention). *See also, Max-George v. Reno,* 205 F.3d 194,200-201 (5th Cir.2000); *Zadvydas v. Underdown,* 185 F.3d 279,285-86 (5th Cir. 1999); *Boz v. U.S.,* 228 F.3d 1290,1293 (11th Cir. 2000).

46

No substitute form of review exists herein, and repealing the jurisdictional basis for the Court to issue a writ of habeas corpus would, under these circumstances, violate the Suspension Clause.

**B.   THE DISTRICT COURT CORRECTLY CONCLUDED THAT PLAINTIFFS ARE CONSTITUTIONALLY ENTITLED TO NOTICE OF THE AVAILABILITY OF PAROLE, AND FAIR PROCEDURES IN ADJUDICATING THEIR APPLICATIONS.**

Having found that the District Court lacked jurisdiction over this issue, the Court did not address the merits, although it did note that the executive branch has an "independent duty to uphold the Constitution," (OPINION:8). However, the Court's citation to *City of West Covina v. Perkins*, 525 U.S. 234,240-41 (1999), is trouble-some, as it could be read as implying that, if jurisdiction did exist, notice to class members of the availability of parole would still not be constitutionally mandated.   This would be incorrect.

> **1.   FOR CLASS MEMBERS STRANDED IN MEXICO, WHERE THERE ARE FEW IF ANY PUBLIC SOURCES RELATING TO IMMIGRATION LAW, AND EVEN A QUERY POSED AT AN EXCLUSION HEARING YIELDED NO HELPFUL INFORMATION AS TO HOW TO APPLY FOR PAROLE, IT IS, AS FOUND BELOW, VERY DIFFICULT FOR CLASS MEMBERS TO ASCERTAIN AND FOLLOW THE PROCEDURES FOR REQUESTING PAROLE**

*West Covina* held that when the police seize property for a criminal investigation, due process does not require that they provide the owner with notice of state law remedies which are established by published, generally available state statutes and case law.   The key to said decision, and the reason it is inapplicable herein, lies in the phrase "generally available." In *West Covina*, the police seized some property from Perkin's home. They left a Notice,

8

47

with a name and telephone number to call for information. As the Court elaborated, 525 U.S. at 237 (internal citations omitted):

> Not long after the search, Perkins called Ferrari, one of the detectives listed on the Notice, and inquired about return of the seized property. ... One of the detectives told Perkins he needed to obtain a court order authorizing the property's return. ...
>
> About a month after the search, Perkins went to the Citrus Municipal Court to see Judge Oki, who had issued the warrant. He learned Judge Oki was on vacation. ... He tried to have another judge release his property but was told the court had nothing under Perkins' name. ...

Without more, he filed suit. As the Court continued, *id.* at 238:

> The District Court granted summary judgment for the City and its officers. ... The court, however, invited supplemental briefing on an issue respondents had not raised: whether available remedies for the return of seized property were adequate to satisfy due process. ...

From this, it is clear that, while the Notice left did not advise the owner of the *precise procedures* for seeking the return of his property, it included the name and telephone number of someone who could, and did, provide that information. Moreover, Perkins was in the U.S., and published statutes were "readily available." He had easy access to counsel, and it was property, not his liberty, which was being restrained. Under all of the circumstances, it was not unreasonable to expect that he could ascertain, and follow, the available legal remedies. As noted in *Covina, supra* at 240-241:

> It follows that when law enforcement agents seize property pursuant to warrant, due process requires them to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return. Cf. Schroeder v. City of New York, 371

9

48

U.S. 208, 214, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962)
(requiring a city to provide adequate notice of the
deprivation--the city's condemnation of certain water
rights--which created the property owner's right to
pursue damages claims and triggered the statute of
limitations on those claims). Individualized notice
that the officers have taken the property is necessary in
a case such as the one before us because the property
owner would have no other reasonable means of
ascertaining who was responsible for his loss.

No similar rationale justifies requiring individualized
notice of state-law remedies which, like those at issue
here, are established by published, *generally available*
state statutes and case law. Once the property owner is
informed that his property has been seized, he can turn
to these public sources to learn about the remedial
procedures available to him.

As applied herein, the test is whether LPRs sent to Mexico to await
their hearings, have "reasonable means" of discovering the remedies
available. In other words, can they "turn to [any] public sources
to learn about the remedial procedures," i.e., that parole under 8
U.S.C. §1182(d)(5) exists, and the procedures by which applications
are made. The record establishes that they cannot. INS concedes
that LPRs returned to Mexico are not told that parole is possible,
(R3:811), but assuming that they can learn of its existence, assert
that INS officers at ports of entry "can answer questions about the
parole procedure." (R3:725). Still, as Respondents conceded, it is
very difficult for LPRs stranded in Mexico to ascertain and follow
the procedures for requesting parole. (R5:1219,1295) [9] In response
to Ms. Ascencio's inquiry, the Immigration Judge told her to "talk

[9] Respondents later quibbled about the qualifier "very," but
characterized the fact that it was "difficult" to obtain this
information as an "immaterial fact[] not in dispute." (R3:821-22).

10

49

to the District Director," and the INS Attorney suggested that she
"start at the information desk downstairs." (R4:971-2). But she was
not paroled until she obtained counsel, months later. (R5:1312).

Given the 1996 amendments to 8 U.S.C. §1101(a)(13), eliminating the
so-called *Fleuti* departure as a defense to inadmissability of LPRs
based on factors such as past criminal conduct, plus the expansion
of offenses which constitute grounds for inadmissibility, and the
retroactive nature of this expansion, the problem has, if anything,
grown worse. [10]  Now, LPRs may suddenly find themselves stranded in
Mexico, due to minor offenses committed many years ago, even though
they are fully rehabilitated. And like Ms. Ascencio, they may find
it difficult, if not impossible, to ascertain, much less gain
meaningful access to, the procedures for requesting parole under
§1182(d)(5)(A).  This is a far cry from situation in *West Covina*.

**2. THE PLAINTIFF CLASS IS ALSO ENTITLED TO DUE PROCESS IN
THE ADJUDICATION OF ANY REQUESTS FOR PAROLE MADE BY THEM.**

The District Court further held that lawful permanent residents are
constitutionally entitled to a parole hearing before an impartial
adjudicator.  Although concluding that this claim was also barred
by §1226(e), the majority noted, (OPINION:8) (emphasis added):

> Without reaching the merits of the plaintiffs'
> constitutional claims, we therefore vacate those portions

---

[10]  *See, e.g.*, *Molina v. Sewell*, 983 F.2d 676 (5th Cir. 1993)
(LPR who departed U.S. while under deportation proceedings for drug
conviction not making an "entry" on his return, and therefore was
improperly placed in exclusion proceedings).

11

*SO*

of the order that require the INS to hold parole
hearings. *In doing so, we note that the executive
branch, of course, has an independent duty to uphold the
Constitution, irrespective of whether its actions are
subject to judicial review.*

Unfortunately, the executive branch is failing in this "independent

duty." Although none was given parole until they obtained counsel,

*all five named Plaintiffs* under exclusion proceedings ultimately

won their cases. (R1:113). This shows that there is little if any

correlation between the manner in which parole is administered, and

the merits of particular cases. Yet fundamental liberty interests

are at stake. *Landon v. Plasencia,* 459 U.S. 21,34 (1982) ("...the

right to rejoin her immediate family ... ranks high among the

interests of the individual."). Consequently, as intimated by this

Court in the above quotation, and in accordance with the balancing

test of *Mathews v. Eldridge, supra,* the District Court's Order that

Plaintiffs are entitled to Due Process in the adjudication of their

requests for parole should also be sustained.

**C. IN CONCLUDING THAT THE ATTORNEY GENERAL HAS THE DISCRETION TO
INFORM EMPLOYERS OF A POTENTIAL EMPLOYEE'S IMMIGRATION PROBLEMS,
THE COURT OVERLOOKED TWO KEY FACTS: FIRST, THAT SHE IS BARRED BY
STATUTE FROM DISCLOSING SUCH PERSONAL INFORMATION, AND SECOND, THAT
8 C.F.R. §264.5(g) DOES NOT APPLY TO LPRs IN REMOVAL PROCEEDINGS.**

> **1. WITH EXCEPTIONS NOT PERTINENT HEREIN, RESPONDENTS ARE
> BARRED BY 8 U.S.C. §1304(b) AND 5 U.S.C. §552a(b) FROM
> DISSEMINATING PERSONAL INFORMATION ABOUT CLASS MEMBERS.**

There are two statutory bars which forbid the Attorney General from

disclosing personal information to employers or others to whom LPRs

5/

must show proof of LPR status.  8 U.S.C. §1304(b) mandates that:

> All registration and fingerprint records made under the
> provisions of this title shall be confidential, and shall
> be made available only (1) pursuant to [8 U.S.C.
> §1357(f)(2)] and (2) to such persons or agencies as may
> be designed by the Attorney General.

8 U.S.C. §1304(a) requires that INS obtain, *inter alia,* the "police

and criminal record" of aliens. INS may not disclose these records

to employers, or to agencies such as employment offices, which are

neither included in §1357(f)(2), nor have been so designated. The

Privacy Act also bars dissemination of personal information about

LPRs.  As defined by 5 U.S.C. §552a(a)(4), a "record" is "any item,

collection, or grouping of information about an individual that is

maintained by an agency." §552a(b), in turn, provides that:

> No agency shall disclose any record which is contained in
> a system of records by any means of communication to any
> person, or to another agency, except pursuant to a
> written request by, or with the prior written consent of,
> the individual to whom the record pertains...

The Court did not consider these bars in holding that the Attorney

General has "statutory discretion" to broadcast such information to

employers and others to whom LPRs must show proof of their status.

### 2.  8 C.F.R. §264.5(g) DOES NOT ADDRESS WHAT FORM OF ALIEN REGISTRATION MAY BE GIVEN LPRs IN REMOVAL PROCEEDINGS

In addressing the "scope and meaning" of 8 C.F.R. §264.5(g),

(OPINION:6), the majority overlooked the fact that, by its terms,

§264.5(g) applies only to exclusion and deportation proceedings,

not removal proceedings.  Therefore, the I-551 remains the sole

document specified by the regulations, and thus authorized by 8

13

52

U.S.C. §1304(d), to be issued to such persons. [11]   Consequently, the sole authority to lift I-551s under such circumstances lies in Respondents' "implied authority to take reasonable law enforcement actions..." *Wilson v. Layne,* 141 F.3d 111,117 (4th Cir. 1998).

As conceded below, some branches of INS do not confiscate I-551s of LPRs placed in proceedings.   Others do so routinely, and provide I-94s which do not comply with INS' own internal Memo, [12] under which they must be prepared pursuant to OI 264.2. [13]  Virtually by definition, these are not "reasonable law enforcement actions."

### 3. AS THE I-551 IS THE ONLY REGISTRATION FORM AUTHORIZED FOR LPRs IN REMOVAL PROCEEDINGS, AND INS ARBITRARILY CONFISCATES SUCH DOCUMENTS, THE COURT MAY USE THE McNARY MEMO AS A GUIDE IN FORMULATING EQUITABLE REMEDIES.

The question then becomes one of remedies. Plaintiffs do not assert that the McNary memo, *per se*, grants them any rights.   Rather, as discussed above, the rights at issue derive from 8 U.S.C. §1304(d) (as to the form of alien registration to be issued); and 8 U.S.C.

---

[11]   IIRIRA §309(d)(2) equates *orders* of deportation and exclusion with orders of removal, but removal *proceedings* remain procedurally distinct from exclusion and deportation proceedings. *See,* 8 C.F.R. Part 240, Subpart A (removal proceedings); Subpart D (exclusion proceedings) and Subpart E (deportation proceedings).

[12]  Not coincidentally, the McNary Memo does not recognize any "discretion" to place notations on these documents about personal matters, such as that deportation proceedings are pending, or the LPR was released on bond. Rather, it specifies that such documents be prepared in the same manner as those given to LPRs who have lost their I-551s, and to those being issued cards for the first time.

[13]  Said OI specifies that the *admissions* half of the I-94 be employed, and dictates the precise wording to be used. (R3:720-21).

14

53

§1304(b) and 5 U.S.C. §552a(b) (prohibiting the disclosure of personal information). Particularly where these rights are being violated on a class-wide basis, the District Court has substantial discretion to fashion remedies. *See generally, Mississippi State Chapter, Operation Push v. Mabus*, 932 F.2d 400,405-407 (5th Cir. 1991) (discussing district court's equitable powers to fashion remedies). There could be no better guidance in this task than Respondents' own stated policies, as expressed by the McNary Memo.

## V. CONCLUSION

WHEREFORE, it is urged that this Court, *en banc*, retract the majority opinion herein, and affirm the District Court, for the reasons stated above and those expressed by Circuit Judge Dennis in his separate opinion, concurring in part and dissenting in part. [14]

Respectfully Submitted,

Lisa S. Brodyaga                    Thelma O. Garcia
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 435-3701

### CERTIFICATE OF SERVICE

I certify that two copies of the instant brief were mailed, first-class postage prepaid, to Regina Byrd, Attorney, OIL, P.O. Box 878, Ben Franklin Sta., Wash., D.C. 20044, on December 14, 2000.

---

[14] Since the majority Opinion did not overturn the District Court's Order with respect to the confiscation of other documents, such as drivers licenses, Social Security cards, Mexican passports, etc., that issue is not addressed herein.

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

```
JULIO LOA-HERRERA, et al        )
    PLAINTIFFS/APPELLEES,        )
 On behalf of themselves, and   )
 All others similarly situated, )
                                )
v.                              )        No. 99-40122
                                )
E.M. TROMINSKI, INS DISTRICT    )
    DIRECTOR, et al,            )
    DEFENDANTS/APPELLANTS.      )
_____)
```

---

## APPENDIX

---

1.  Opinion of the Court herein, dated October 31, 2000, and

2.  Parole documents of Plaintiffs Sanchez and Cabrera,
    showing that they were paroled pursuant to §212(d)(5)
    of the Immigration and Nationality Act [8 U.S.C.
    §1182(d)(5)].

55

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

--------------------

No. 99-40122

--------------------

U.S. COURT OF APPEALS

FILED

OCT 3 1 2000

CHARLES R. FULBRUGE III
CLERK

JULIO LOA-HERRERA; RAMIRO CANTU-GRACIA; JUANA
GUZMAN-ASCENCIO; EFRAIN MERINO; ARTURO LOZANO-LOPEZ;
ALEJANDRA GUTIERREZ; JUAN SANCHEZ-SALINAS; ADELITA CANTU DE
CABRERA

                    Plaintiffs - Appellees

     v.

E M TROMINSKI, District Director, Immigration and
Naturalization Service; JANET RENO, Attorney General, USA;
IMMIGRATION AND NATURALIZATION SERVICE

                    Defendants - Appellants

--------------------
     Appeal from the United States District Court for the
          Southern District of Texas, Brownsville
--------------------

O R D E R:

        IT IS ORDERED that appellees' motion to take judicial

notice is GRANTED.

                              /s/ JERRY E SMITH
                         _____
                              JERRY E SMITH
                         UNITED STATES CIRCUIT JUDGE

MOT-21

56

# United States Court of Appeals

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

CHARLES R. FULBRUGE III
CLERK

October 31, 2000

TEL. 504-589-6514
600 CAMP STREET
NEW ORLEANS, LA 70130

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW
Regarding:  Fifth Circuit Statement on Petitions for Rehearing or
Rehearing En Banc

> No. 99-40122 Loa-Herrera v. Trominski
> USDC No. B-94-CV-215
> ------------------------------------------------

Enclosed is a copy of the court's decision.  The court has entered
judgment under FED. R. APP. P. 36.  (However, the opinion may yet
contain typographical or printing errors which are subject to
correction.)

FED. R. APP. P.'s 39 through 41, and 5TH CIR. RULES 35, 39, and 41 govern
costs, rehearings, and mandates.  **5TH CIR. RULES 35 and 40 require
you to attach to your petition for panel rehearing or rehearing
en banc an unmarked copy of the court's opinion or order.**  Please
read carefully the Internal Operating Procedures (IOP's) following
FED. R. APP. P. 40 and 5TH CIR. R. 35 for a discussion of when a rehearing
may be appropriate, the legal standards applied and sanctions which
may be imposed if you make a nonmeritorious petition for rehearing
en banc.

<u>Direct Criminal Appeals</u>.  5TH CIR. R. 41 provides that a motion for a
stay of mandate under FED. R. APP. P. 41 will not be granted simply
upon request.  The petition must set forth good cause for a stay or
clearly demonstrate that a substantial question will be presented to
the Supreme Court.  Otherwise, this court may deny the motion and
issue the mandate immediately.

<u>Pro Se Cases</u>.  If you were unsuccessful in the district court and/or
on appeal, and are considering filing a petition for <u>certiorari</u> in the
United States Supreme Court, you do not need to file a motion for stay
of mandate under FED. R. APP. P. 41.  The issuance of the mandate does not
affect the time, or your right, to file with the Supreme Court.

The judgment entered provides that appellees pay to appellants the
costs on appeal.

Sincerely,

CHARLES R. FULBRUGE III, Clerk

By:
Rhonda Flowers, Deputy Clerk

Enclosure
Ms Lisa S Brodyaga
Mr David V Bernal
Ms Regina Byrd
Ms Mary A Kenney

57

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
FILED

OCT 3 1 2000

CHARLES R. FULBRUGE III
CLERK

Nº 99-40122

JULIO LOA-HERRERA, RAMIRO CANTU-GRACIA, JUANA GUZMAN-ASCENCIO,
EFRAIN MERINO, ARTURO LOZANO-LOPEZ, ALEJANDRA GUTIERREZ,
JUAN SANCHEZ-SALINAS, AND ADELITA CANTU DE CABRERA,
ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

Plaintiffs-Appellees,

VERSUS

E.M. TROMINSKI,
IMMIGRATION AND NATURALIZATION SERVICE DISTRICT DIRECTOR,
JANET RENO,
UNITED STATES ATTORNEY GENERAL,
AND
IMMIGRATION AND NATURALIZATION SERVICE,

Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH and DENNIS, Circuit
Judges, and HARMON,* District Judge.

JERRY E. SMITH, Circuit Judge:

---

* District Judge of the Southern District of
Texas, sitting by designation.

The plaintiff class is comprised of lawful
permanent residents ("LPR's") faced with
pending deportation or exclusion proceedings[1]

---

[1] The Illegal Immigration Reform and Immi-
gration Responsibility Act of 1996 ("IIRIRA")
(continued...)

in which no final order of deportation or exclusion has yet been entered, who are not presently held in detention, and whose immigration documents have been confiscated by the Harlingen, Texas, office of the Immigration and Naturalization Service ("INS"). Plaintiffs object to INS's practice of seizing an LPR's laminated Form I-151 or I-551 ("green card")[2] and other government documents and issuing, in their place, an I-94 "Temporary Evidence of Lawful Permanent Resident" form containing extraneous information announcing the holder's pending removal proceedings. They additionally claim that LPR's are entitled to notice and a hearing to determine whether they should be paroled within the United States pending a final determination in their removal proceedings.

The district court granted the plaintiffs' request for injunctive relief. Its final order, dated January 13, 1999, regulates the seizure of an LPR's green card and issuance of temporary documents pending removal proceedings, requires the INS to hold a hearing before determining whether an LPR should be paroled into the United States pending a final order of removal, and guarantees LPR's the right not to have their other lawfully issued documents confiscated unless those documents constitute *bona fide* evidence of unlawful conduct.[3]

---

[1](...continued) "changed the nomenclature of immigration orders so that orders of deportation and orders of exclusion are both now referred to as 'orders of removal.'" *Cardoso v. Reno*, 216 F.3d 512, 515 n.3 (5th Cir. 2000). *See also* IIRIRA § 309(d)(2), 110 Stat. 3009-546, 3009-627 (1996) (stating that "any reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation.").

[2] *See Etuk v. Slattery*, 936 F.2d 1433, 1436 (2d Cir. 1991) ("The INS regulations provide for the issuance of either of two registration forms to LPRs—the Form I-151 or Form I-551. Form I-151 registration cards were issued to LPR's before June 1987. Since then, LPR's have been issued the I-551 form. Both of these forms provide LPR's with proof of their alien registration and legal status. The documents are popularly referred to as 'green cards.'").

---

[3] The order states:

1. Pursuant to the intent of the McNary Memorandum, Defendants shall only confiscate the laminated Form I-151 or I-551 of a non-arriving lawful permanent resident placed under expulsion proceedings, and not held in custody, when the INS District Director, chief patrol agent, or officer in charge determines that a temporary document is needed for a justifiable, particularized reason, based on the individual facts of the case. When such a resident's green card is confiscated, Defendants shall provide temporary evidence of lawful permanent resident status, which shall be prepared in accordance with Operation Instruction 264.2, and shall be issued for at least six months, and shall contain a notation that it is renewable.

2. When a permanent resident applying for admission to the U.S. is placed under expulsion proceedings, Defendants may confiscate the resident's green card, but shall afford said person a prompt hearing before an Immigration Judge, in accordance with 8 C.F.R. § 236.1, to determine whether he or she should be paroled into the U.S. during the pendency of said proceedings, and if so, under what conditions. If the person is   so paroled, and not held in custody, Defendants shall provide a substitute document evi-

(continued...)

The government presents a series of procedural and substantive objections to the order. With respect to the seizure of green cards and issuance of temporary documents, we conclude that the order was too sweeping in light of 8 C.F.R. § 264.5(g), which is cited by neither party nor the district court. In addition, we conclude that federal courts have no jurisdiction to review parole decisions of the Attorney General. Finally, we decide that remand is appropriate to ensure that the government has ample opportunity to press its factual and legal contentions before the district court.

We therefore vacate the order and remand for any further proceedings that may be required. We also vacate an earlier, preliminary order benefiting an individual who is not a member of the plaintiff class.

## I.

The government claims the plaintiffs lack standing.[4] "[T]he critical standing question is whether the plaintiff has demonstrated a

---

[3](...continued)

        dencing perma-
        nent resident
        status, and enti-
        tlement to be
        employed in the
        U.S.; and

3. Defendants shall not confiscate any other lawfully issued documents from permanent residents, absent a good faith belief that such documents constitute *bona fide* evidence of unlawful conduct.

[4] Although it seeks reversal of the entirety of the district court's order on standing grounds, the INS presents argument only with respect to an LPR's right to hold a green card or other evidence of immigration status. Because the plaintiffs adequately allege injury in the balance of their complaint, we limit our analysis accordingly.

personal, distinct, and palpable injury-in-fact that is fairly traceable to the defendant's allegedly unlawful conduct, and that such an injury is likely to be redressed by a favorable judicial decision." *National Treasury Employees Union v. United States Dep't of Treasury*, 25 F.3d 237, 241 (5th Cir. 1994). In identifying an injury that confers standing, courts look exclusively to the time of filing. *See Pederson v. Louisiana State Univ.*, 213 F.3d 858, 870 (5th Cir. 2000).

We reject the government's contention that the plaintiffs lack standing, for want of injury, to challenge their denial of immigration documentation. Green cards "play a significant role in the day-to-day lives of LPRs."[5] And although the I-94 forms issued in place of the green cards do evidence LPR status, they additionally state:

> Warning—A nonimmigrant who accepts unauthorized employment is subject to deportation.

> Important—Retain this permit in your possession; you must surrender it when you leave the U.S. Failure to do so may delay your entry into the U.S. in the future.

> You are authorized to stay in the U.S. only until the date written on this form. To remain past this date, without permission from immigration authorities, is a violation of the law.

---

[5] *Etuk*, 936 F.2d at 1437 (". . . Congress increased the importance of the green card with its adoption of the Immigration Reform and Control Act of 1986 . . . in order to establish one's eligibility for a variety of government funded assistance programs . . . [and in the area of] employment authorization.").

As plaintiffs adequately allege, inadequate immigration documents result in a greater degree of harassment by the INS and diminished employment opportunities. Indeed, the government admits that aliens who hold only temporary I-94 forms are "more likely to be more closely inspected" than are holders of green cards. Although the government argues that plaintiffs fail to identify a single LPR who has *actually* suffered such injury, actual injury is not constitutionally required.

Mere threatened injury is sufficient,[6] and the threat in this case is real. For example, according to the plaintiffs, "[a]s a result of INS' arbitrary confiscation of his I-551, Loa [a former plaintiff, now deceased] endured almost two hours of detention at the border, and an unreasonable search, causing 'inconvenience, and public humiliation.'" Plaintiffs therefore have asserted sufficient injury to confer standing.

More troubling is the government's contention that the district court failed to give the government an opportunity to present argument before issuing its order. Because of our rulings on the government's substantive claims, which we discuss below, we do not address these allegations. Instead, we vacate the order and remand for further proceedings, during which the INS assuredly will have ample opportunity to press any additional legal or factual arguments it wishes to make and thereby to cure any procedural defects regarding the order.

II.

The government's substantive objections to the order regard the issuance and confiscation of immigration documents. LPR's are authorized to work in the United States.[7] Even "LPRs who are placed in deportation proceedings do not lose the status of lawful residents and its attendant benefits until . . . a final deportation order [has been] issued." *Etuk,* 936 F.3d at 1447. Until deported or excluded, LPR's are fully entitled to remain in the United States and seek employment, for "[t]he fact that an alien is subject to deportation proceedings does not affect his status as a permanent resident alien. A permanent resident alien's status terminates only when the order of deportation is affirmed by the BIA or otherwise becomes administratively final." *Molina v. Sewell,* 983 F.2d 676, 680 (5th Cir. 1993).

In addition, federal law guarantees LPR's certain rights of documentation they can use to prove, to potential employers and others, their right to be in the United States. How that right is protected in practice, however, is within the express discretion of the Attorney General.[8]

---

[6] *See City of Los Angeles v. Lyons,* 461 U.S. 95, 105 (1983) ("Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers."); *Friends of the Earth, Inc. v. Crown Cent. Petroleum,* 95 F.3d 358, 360 (5th Cir. 1996); *Hernandez v. Cremer,* 913 F.2d 230, 234 (5th Cir. 1990) ("Although at present Hernandez is safely inside the United States, he is . . . entitled to travel to and from Mexico without deprivation of his Fifth Amendment due process rights. We think there is at the very least a reasonable expectation that Hernandez will exercise his right to travel. Indeed, Hernandez testified that he would like to return to Mexico, but did not 'want to run the risk of something like this happening again.'") (citation omitted).

[7] *See* 8 U.S.C. § 1324a(a)(1)(A), (h)(3).

[8] *See* 8 U.S.C. § 1304(d) ("Every alien in the United States who has been registered and fingerprinted under the provisions of the Alien
(continued...)

4

6/

In granting the plaintiffs injunctive relief on the question of LPR documentation, the district court relied substantially on a 1990 internal INS policy clarification (the "McNary Memorandum"),[9] which directed the INS not

to seize green cards absent individualized circumstances and must "be followed until appropriate regulations and operations instructions are published." The district court erred in relying on the McNary Memorandum, for an agency's internal personnel guidelines "neither confer upon [plaintiffs] substantive rights nor provide procedures upon which [they] may rely." *Fano v. O''Neill*, 806 F.2d 1262, 1264 (5th Cir. 1987). The memorandum merely articulates internal guidelines for INS personnel; it does not establish judicially enforceable rights.

Inexplicably, neither the district court nor any of the parties cite 8 C.F.R. § 264.5(g) (2000), which states in its entirety:

A person in exclusion proceedings shall be entitled to evidence of

---

[8](...continued)
Registration Act, 1940, or under the provisions of this chapter shall be issued a certificate of alien registration or an alien registration receipt card in such form and manner and at such time as shall be prescribed under regulations issued by the Attorney General."); *Etuk*, 936 F.2d at 1444 ("The INA mandates that the Attorney General provide LPRs who register with proof of their legal status."). *See also* 8 C.F.R. § 264.1 (listing forms).

[9] The McNary Memorandum states:

Litigation over the disposition of Forms I-151 and I-551 once the holders have been placed in deportation . . . proceedings has revealed a need for clarification of Service policy in this area. The instructions contained in this memorandum are effective upon receipt, and will be followed until appropriate regulations and operations instructions are published.

DEPORTATION PROCEEDINGS

A lawful permanent resident alien in deportation proceedings is required to be registered under section 261 or 262 of the Immigration and Nationality Act, as amended, and to be in possession of evidence of such registration. Form I-151 or I-551 [green card] is the appropriate evidence of alien registration for lawful permanent residents in the United States. Accordingly, when an order to show cause is issued, and the recipient is the holder of Form I-151 or I-551 and is not detained or incarcerated, he or she shall be allowed to retain possession of evidence of alien
(continued...)

---

[9](...continued)
registration. If the alien has no evidence of alien registration, Form I-90 will be filed and processed, and the appropriate documentation will be issued by the office having jurisdiction.

. . . If the district director, chief patrol agent or officer in charge determines that a temporary document is needed to assure the alien's appearance at hearings, or for other justifiable reasons, the [green card] will be lifted, and a temporary I-551 issued. In these cases, temporary Forms I-551 will be prepared in accordance with the guidance in O.I. 264.1, and will be issued for a period sufficient to allow completion of the deportation proceedings, but in no case less than six months.

McNary Memorandum, Memorandum from Office of Commissioner to All District Directors (Mar. 14, 1990).

*Etuk*, 936 F.2d at 1442.

permanent resident status until ordered excluded. Such evidence shall be in the form of a temporary Form I-551 issued for a period sufficient to accomplish the exclusion proceedings. A person in deportation proceedings shall be entitled to evidence of permanent resident status until ordered deported or excluded. Issuance of an Permanent Resident Card to a person in exclusion or deportation proceedings, provided the person had status as a lawful permanent resident when the proceeding commenced, shall not affect those proceedings.

Because the district court erred to the extent that its order relied on the McNary Memorandum, we vacate the order and remand so the court can determine whether an injunction is appropriate in light of § 264.5(g). In doing so, we make a number of observations regarding the scope and meaning of that regulation.

Section 264.5(g) requires that the INS issue the temporary Form I-551 to persons in exclusion proceedings.[10] By contrast, the regulation does not specify the form of documentation with respect to those in deportation proceedings.

In addition, § 264.5(g) requires only that the INS provide documentary evidence of LPR status. The regulation plainly does *not* restrict the INS from attaching *additional*

*notations* to caution employers that a potential worker, although an LPR and therefore *currently* authorized to work in the United States, is also facing pending deportation proceedings and thus may not be available for an extended period of employment.

The Attorney General is free to issue new regulations and amend the requirements of § 264.5(g) (provided, of course, that the requisite procedure is followed). Absent any legal authority to the contrary, however, the district court may not interfere with the Attorney General's statutory discretion to balance an LPR's interest in possessing particular forms of documentation against an employer's interest in knowing a potential employee's present and future immigration status.

III.

The government also challenges the portion of the order respecting the Attorney General's discretion to grant parole within the United States. The Attorney General is vested with broad powers over the custody of all aliens (including LPR's) against whom deportation or exclusion proceedings are pending.[11] "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Where such an alien "is arriving on land (whether or not at a

---

[10] We reject the government's contention that the requirement of evidence *"in the form of* a temporary Form I-551" is satisfied by the issuance of any form that is similar to a Form I-551, for that is not the most reasonable construction of the regulation. Instead, under the plain meaning of § 264.5(g), the INS must issue the temporary Form I-551 to persons in exclusion proceedings; substitute forms are not sufficient.

[11] An "alien" is "any person not a citizen or national of the United States." 8 U.S.C. § 1101-(a)(3). The term thus includes LPR's. *See also* 8 U.S.C. § 1101(a)(20) ("The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed.").

63

designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(C).

Alternatively, instead of paroling the individual out of the United States,

> [o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . . . [P]ending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole.

8 U.S.C. § 1226(a).[12]

---

[12] *See also* 8 U.S.C. § 1182(d)(5)(A) ("The Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any
(continued...)

The plaintiffs argue that, pursuant to *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), due process requires the INS to provide an LPR with notice of his right to parole within the United States[13] and with a parole hearing before the Attorney General decides how to exercise her discretion. Congress, however, has denied the district court jurisdiction to adjudicate deprivations of the plaintiffs' statutory and constitutional rights to parole.[14]

The plaintiffs respond that the Attorney General's parole authority at issue in this case is found not in 8 U.S.C. § 1226, but instead in 8 U.S.C. § 1225(b)(2)(C). Therefore, they ar-

---

[12](...continued)
other applicant for admission to the United States."); 8 C.F.R. § 212.5; 8 C.F.R. § 235.3(c)-(d).

[13] *But see City of West Covina v. Perkins*, 525 U.S. 234, 240-41 (1999) ("A primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful . . . . No similar rationale justifies requiring individualized notice of state-law remedies which . . . are established by published, generally available state statutes and case law. Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The City need not take other steps to inform him of his options.").

[14] *See Lopez-Elias v. Reno*, 209 F.3d 788, 793 (5th Cir. 2000) ("Federal courts derive their power to adjudicate from Congress, and not from the Constitution alone."), *petition for cert. filed*, 69 U.S.L.W. 3128 (July 28, 2000) (No. 00-164); 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.").

64

gue, the bar on judicial review contained in § 1226(e), which applies only to "this section," does not bar this suit. But § 1225(b)(2)(C) only authorizes the Attorney General to return an applicant for admission to Mexico pending the exclusion proceedings. It is § 1226(a), by contrast, that authorizes her to grant parole within the United States to an LPR subject to removal proceedings.

In sum, "[t]he Attorney General's discretionary judgment regarding the application of" parole—including the *manner* in which that discretionary judgment is exercised, and whether the procedural apparatus supplied satisfies regulatory, statutory, and constitutional constraints—is "not . . . subject to review." § 1226(e). Without reaching the merits of the plaintiffs' constitutional claims, we therefore vacate those portions of the order that require the INS to hold parole hearings. In doing so, we note that the executive branch, of course, has an independent duty to uphold the Constitution, irrespective of whether its actions are subject to judicial review.[15]

## IV.

Before the subject order was entered, the district court granted preliminary relief to Jesus Garza-Pacheco. On appeal, the government asserts that the court had no authority to grant any relief whatsoever to him, because he is neither a named plaintiff nor a member of the plaintiff class.

We quickly dispense with the plaintiffs' assertion that this court has no appellate jurisdiction to review the Garza-Pacheco order. Appellants have the "choice of appealing from [a preliminary] order within fifteen days or of awaiting a final decree, for all interlocutory orders are reviewable on appeal from the final decree." *Gloria Steamship Co. v. Smith,* 376 F.2d 46, 47 (5th Cir. 1967) (citations omitted). And although the government's notice of appeal designates only the January 13, 1999, order, a "notice of appeal to this Court from the final decree of the District Court invoked the jurisdiction of this Court to examine the interlocutory order as well as the final decree." *Id.*

We also agree with the government's argument on the merits. The plaintiff class is restricted to LPR's "who are under deportation or exclusion proceedings, in whose cases no final order of deportation or exclusion has been entered." Garza-Pacheco therefore was not a valid member of the class, because a final order of deportation has been executed against him. "In the complaint the title of the action shall include the names of all the parties." FED. R. CIV. P. 10(a). Failure to name a party denies a court jurisdiction over that party.[16]

We therefore VACATE the final order of January 13, 1999, and the preliminary order regarding Garza-Pacheco, and we REMAND for any further necessary proceedings.

---

[15] *See* U.S. CONST. art. VI, cl. 3 ("all executive . . . Officers . . . shall be bound by Oath or Affirmation, to support this Constitution"); David P. Currie, THE CONSTITUTION IN CONGRESS: THE FEDERALIST PERIOD 1789-1801 at ix-x (Chicago 1997) ("Members of Congress and executive officers, no less than judges, swear to uphold the Constitution, and they interpret it every day in making and applying the law. . . . [B]oth Congress and the Executive have a great deal to tell us about the Constitution.").

[16] *See National Commodity & Barter Ass'n v. Gibbs,* 886 F.2d 1240, 1245 (10th Cir. 1989) (holding that "the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them").

65

DENNIS, Circuit Judge, concurring in part and dissenting in part.

I concur in vacating the final order of January 13, 1999 and the preliminary order regarding Garza-Pacheco, and I agree in part with the reasoning of the majority opinion. I disagree, however, with part of the reasons assigned by the majority and with the limits it imposes upon further proceedings in the district court.

I concur in the following parts of the majority opinion: (1) Part I holding that the plaintiffs have standing; (2) Part II insofar as it recognizes that LPRs are authorized to seek employment and work in the United States; that a person's LPR status, including its attendant benefits such as the right to work and to have documentation certifying that right and the right to be in the United States, does not terminate until an order of deportation is affirmed by the Board of Immigration Appeals (BIA) or otherwise becomes administratively final; and that the district court erroneously relied upon the McNary Memorandum as establishing judicially enforceable rights; and (3) Part IV with respect to this court's appellate jurisdiction to review the Garza-Pacheco order.

I respectfully disagree with the majority opinion in the limits it places on the remand instructions and in the following respects:

1.

An alien who is a lawful permanent resident of the United States, and remains physically present here, is a person within the protection of the Fifth Amendment who may not be deprived of his life, liberty, or property without due process of law.  United States v. Verdugo-Urquidez, 494 U.S. 259, 271 (1990);  Landon v. Plasencia, 459 U.S. 21, 32-34 (1982); Kwong Hai Chew v. Colding, 344 U.S. 590, 596 (1953); Wong Wing v. United States, 163 U.S. 228, 238 (1896).  Accordingly, he may not be deported without notice, a hearing, and an opportunity to be heard, before such determination is made.  Chew, 344 U.S. at 597-98.  Likewise, because LPRs in exclusion proceedings must also be accorded procedural due process, Landon, 459 U.S. 33-37, the same constitutional protections extend to resident aliens seeking reentry after a brief trip abroad not meaningfully interruptive of the alien's continued United States residence.  Zadvydas v. Underdown, 185 F.3d 279, 295 & n.17 (5th Cir. 1999) (citing Landon, 459 U.S. at 32-24); see also Verdugo-Urquidez, 494 U.S. 259, 271 (1990)(citing cases recognizing various constitutional rights of resident aliens: e.g., Bridges v. Wixon, 326 U.S. 135, 148 (1945)(resident aliens have First Amendment rights); Wong Wing, 163 U.S. at 238 (resident aliens entitled to Fifth and Sixth Amendment rights); Yick Wo v. Hopkins, 118 U.S. 356, 369 (1886)(Fourteenth Amendment protects resident aliens)). Although an LPR may later be found excludable or deportable, he is,

2

67

nonetheless, entitled to due process before such determination is made.  Chew, 344 U.S. at 597-98.  "Although Congress may prescribe conditions for his expulsion and deportation, not even Congress may expel him without notice and a fair opportunity to be heard."  Id.

Consequently, an alien's LPR status includes elements of liberty and property rights of which he cannot be deprived without due process of law.  For example, the right to seek and engage in employment, to travel, and to qualify for other benefits and entitlements are attributes or inherent characteristics of LPR status.  Therefore, the government cannot deprive an LPR of these rights or entitlements or significantly damage them without first affording the LPR due process of law guaranteed by the Fifth Amendment.  For instance, the INS and other government agents may not, without affording an LPR such due process of law, (1) confiscate his green card without providing him a reasonably adequate substitute document that will afford him equal access to all attributes of LPR status or (2) deny an LPR readmission.  Of course, an LPR can be investigated, arrested, or prosecuted for a crime just as any other alien or citizen.  But an LPR cannot be deprived of any of the attendant rights of his status without due process of law, because the Due Process clause of Fifth Amendment does not acknowledge any distinction between citizens and resident aliens.  See Galvan v. Press, 347 U.S. 522 (1954) ("[Because] an

3

68

alien who legally became part of the American community ... is a 'person,' [he] has the same protection for his life, liberty and property under the Due Process Clause as is afforded to a citizen."); <u>Bridges</u>, 326 U.S. at 161 (Murphy, J., concurring) ("None of these provisions acknowledges any distinction between citizens and resident aliens.").

2.

Accordingly, I do not agree that an LPR's right to adequate documentation to verify his right to work and remain in the country is totally within the express discretion of the Attorney General. Although the Attorney General may prescribe reasonable regulations for administrative purposes, not even the Attorney General may deprive an LPR of his rights or entitlements protected by the Fifth Amendment without affording him due process. Similarly, although the INS may enjoy some discretion in providing documentary evidence of LPR status, it may not do so in a way that deprives or damages an LPR's status and its attendant rights and entitlements without complying with the requirements of the Fifth Amendment. Thus, although the courts may not have jurisdiction to review the exercise of discretion in matters of parole and documentation by the Attorney General or the INS, the courts most assuredly do have the power and duty to hear cases under the Constitution involving the alleged deprivation of life, liberty, or property of a resident

4

35   69

alien without due process of law.  See, e.g., Johnson v. Robison,

415 U.S. 361, 374 (1974) (holding that provisions of the Veterans'

Readjustment   Act,   while   precluding   judicial   review   of

administrative decisions, did "not extend the prohibitions of that

section to actions challenging the constitutionality of laws");

Parra v. Perryman, 172 F.3d 954, 957 (7th Cir. 1999) (recognizing

that although a court may not be able to review a decision

implementing 1226, 1226(e) does *not* purport to foreclose

challenges" to 1226 itself").  Moreover, I do not read any of the

statutes   or   regulations   as   being   in   conflict   with   these

constitutional principles.  Consequently, I would remand the case

for further proceedings in accordance with the requirements of the

Fifth Amendment, applying the laws and regulations consistently

with the constitutional framework.

3.

Finally, I dissent from the limitations that the majority

places upon further proceedings and relief with respect to Garza-

Pacheco.   From the available information, it is unclear that

Garza-Pacheco should be excluded from the class.  The Appellants

contend that Garza-Pacheco's case is not sufficiently related for

him to be a member of the class because Garza-Pacheco was not an

LPR at the time the District Court granted him preliminary relief.

But, it is not clear that he was given notice and an

5

70

opportunity to be heard before his green card was confiscated and before he was initially ordered deported or that his second deportation was administratively final at the time the district court granted him preliminary relief. Consequently, Garza-Pacheco's case should be remanded to the district court for further proceedings and resolution of these issues.

Accordingly, I would vacate the district court's orders and remand the case for further proceedings consistent with the foregoing reasons.

6

71

Departure Number

# 043627632 02

Immigration and
Naturalization Service

I-94
Departure Record

```
PAROLED PURSUANT TO SEC. 212(d) (5)
OF THE I & N ACT TO:
INDEFINITELY
PURPOSE: PENDING
EXCLUSION PROCEEDINGS
PISPC 08/17/94  P03
(Port)      (Date)      (Officer)
```

*NOT VALID FOR EMPLOYMENT.*

14 Family Name
S A N C H E Z  S A L I N A S

15 First (Given) Name
J U A N

16 Birth Date (Day Mo Yr)
28 07 29

17 Country of Citizenship
M E X I C O

A# 13-102-286

**See Other Side**                    **STAPLE HERE**

Warning - A nonimmigrant who accepts unauthorized employment is subject to
deportation

Important - Retain this permit in your possession, *you must surrender it when you
leave the U.S.* Failure to do so may delay your entry into the U.S. in the future.
You are authorized to stay in the U.S. only until the date written on this form. To
remain past this date, without permission from immigration authorities, is a
violation of the law.
Surrender this permit when you leave the U.S.:
  By sea or air, to the transportation line,
  Across the Canadian border, to a Canadian Official,
  Across the Mexican border, to a U.S. Official
Students planning to reenter the U.S. within 30 days to return to the same school,
see "Arrival-Departure" on page 2 of Form I-20 prior to surrendering this permit.

Record of Changes

Port:

Date:

Carrier:

Flight #/Ship Name:

Departure Record

For sale by the Superintendent of Documents, U.S. Government Printing Office
Washington, D.C. 20402

13/6    72

Número de salida

**25 20 36117 01**

Servicio de Inmigración
y Naturalización

I-94
Registro de salida

A38 102 369

PAROLED PURSUANT TO SEC. 212(d)(5)
OF THE I & N ACT TO:
Conclusion of

PURPOSE: Exclusion
Proceedings

| (Port) | (Date) | (INS #) |
|--------|--------|---------|
| PISPC | 11/9/93 | DP |

BOND POSTED

14 Apellido
C A N T U - D E   C A B R E R A

15 Primer nombre
A d e l i t a

16. Fecha de nac. (dia/mes/año)
2 4 0 4 5 6

17 Ciudadanía
M e x i c o

1324    73

**Aviso** Si la persona que no es inmigrante acepta empleo sin autorización está sujeta a deportación

**Nota importante** - Retenga Ud. este permiso que debe presentar al salir de E.U. Al no hacerlo prolongaría su entrada a E.U. en el futuro

UD. está autorizado a quedarse en E.U. solamente hasta la fecha indicada en esta planilla. Al pasar la fecha indicada sin el permiso de las autoridades de Inmigración sería violar la ley

Entregue este permiso al salir de E.U.
- A la línea de transportación, ya sea por mar o por aire,
- al oficial canadiense al cruzar la frontera canadiense,
- —l cruzar la frontera mejicana

- —a entrar a los E.U. con plazo de 30 días para asistir a
- —a y salida" en página 2  Formulario I-20 antes de

-Record of Changes

R T

Departure Record

Flight #/Ship Name:

1325       74

Bernal ✓

# No. 99-40122

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

ASCENCIO-GUZMAN, ET AL.,

Plaintiffs/Appellees,

v.

E. M. TROMINSKI, DISTRICT DIRECTOR, IMMIGRATION AND
NATURALIZATION SERVICE, HONORABLE JANET RENO, UNITED STATES
ATTORNEY GENERAL, AND U. S. IMMIGRATION AND NATURALIZATION
SERVICE,

Defendants/Appellants.

APPELLANTS' OPENING BRIEF

DAVID W. OGDEN
Acting Assistant Attorney General
Civil Division

DAVID V. BERNAL
Assistant Director
Office of Immigration Litigation

REGINA BYRD
Attorney
Office of Immigration Litigation
Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C.  20044
(202) 616-4860

ATTORNEYS FOR RESPONDENT/APPELLANTS



75

# STATEMENT REGARDING ORAL ARGUMENT

Appellants do believe that oral argument is necessary for the resolution of this case.

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION AND TIMELINESS . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.   Nature Of The Case And Proceedings Below  . . . . . . . . . . . . . . . . . 4

    B.   Statement Of The Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2. Proceedings Before The Magistrate  . . . . . . . . . . . . . . . . . . . . . . 8

           a. Order Granting Injunctive Relief in the
              Case of Garza-Pacheco . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

           b. April 26, 1995 Status Conference Before
              the Magistrate  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

           c. The Magistrate's Unchallenged Report
              and Recommendation of July 16, 1996 . . . . . . . . . . . . . . . 10

        3. Proceedings Before Judge Filemon B. Vela . . . . . . . . . . . . . . . 11

           a. Oral Decision Rendered . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

              i. Issues Decided By Judge Vela . . . . . . . . . . . . . . . . . . . . 11

              ii. Issues Not Specifically Decided by
                 Judge Vela . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

              iii. Remaining Issues Judge Vela Stated
                  Would Be Decided . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

77

iv.  Issues That Judge Vela Either
Specifically Determined Would Not
Be Decided Or The Parties Agreed Were Not
Before the Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

4. Documents Filed After Judge Vela's Oral Decision
of July 31, 1996 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

5. Proceedings After Case Reassigned to District
Court Judge Hilda G. Tagle . . . . . . . . . . . . . . . . . . . . . . 19

6. Judge Tagle's Memorandum and Order . . . . . . . . . . . . . . . . . . 22

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

I.   STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . 25

II.  THE COURT SHOULD REVERSE THE DISTRICT COURT'S
ORDER BECAUSE IT LACKED JURISDICTION TO DECIDE
THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

III. JUDGE TAGLE'S DECISION TO DISREGARD THE ORAL
DECISION ISSUED BY JUDGE VELA RESULTED IN
SUBSTANTIAL PREJUDICE TO THE DEFENDANTS . . . . . . . 30

A. Defendants Were Substantially Prejudiced By
Judges Tagle's Decision to Reach Beyond
Judge Vela's Oral Decisions . . . . . . . . . . . . . . . . . . . . . 30

B.  Judge Tagle's Decision to Modify the Certified
Class Without Notice to Defendants Violated the
Fed. R. Civ. P. and Denied Defendants' Due
Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

-ii-

78

IV.  THE DISTRICT COURT'S ORDER SHOULD
BE REVERSED BECAUSE THERE ARE DISPUTED
GENUINE ISSUES OF MATERIAL FACTS .................. 36

V.  JUDGE TAGLE ERRED IN ISSUING SUMMARY
JUDGMENT AGAINST DEFENDANTS BASED
IN PART UPON THE FINDING THAT DEFENDANTS
FAILED TO COMPLY WITH THE MCNARY
MEMORANDUM ...................................... 42

A.  The Court Improperly Seeks To Supplant
The Agency's Selected Procedures For
Dealing With Lawful Permanent Residents Who
Are Placed In Removal Proceedings ..................... 46

1.  INA § 236(e) Provides That the District Court
Has No Jurisdiction To Review or To
Establish Parole Procedures Impacting
Upon Aliens In Removal Proceedings ............ 46

2.  Congress Delegated Its Authority Over Immigration
Matters To The Attorney General, Whose
Established Parole Procedure for Aliens In
Removal Proceeding Has Been Set Aside
Improperly By The District Court ................ 48

B.  The Court Improperly Makes An Effort To Afford
An Alien In Exclusion Proceedings The Same Procedures
Afforded To An Alien In Deportation Proceedings ........ 50

C.  The Court Incorrectly Ordered The Defendants
To Provide A Parole Hearing Before What The Court
Perceives As An "Impartial Adjudicator" ................. 52

D.  Lawful Permanent Residents Are Not Entitled To
Notice Of The Availability Of Parole .................... 53

79

E. The Defendants Is Authorized To Confiscate Green
Cards Pursuant To Its Authority To Implement
And Enforce The INA .............................. 54

VI. GARZA-PACHECO'S DISPUTE WAS NOT
PROPERLY BEFORE THE DISTRICT COURT
IN THIS CLASS ACTION CASE ........................ 57

A. The District Court Lacked Jurisdiction to
Order Preliminary Injunctive Relief to
Garza-Pacheco .................................. 58

B. The District Court Erred In Ordering The
Issuance of Work Authorization For Garza-
Pacheco ........................................ 59

CONCLUSION .............................................. 61

ATTACHMENTS

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

80

# TABLE OF AUTHORITIES

## CASES

Bertrand v. Sava,
    684 F.2d 204 (2d Cir. 1982) ....................................... 54

Blackie's House of Beef, Inc. v. Castillo,
    659 F.2d 1211 (D.C. Cir. 1981),
    cert. denied., 102 S. Ct. 1432 (D.C. 1982) ........................... 55

City of West Covina v. Perkins, ---,
    U.S. -, 1999 WL 9696 (U.S. January 13, 1999) ...................... 53

Dong Sik Kwon v. INS,
    646 F.2d 909, 918-19 (5th Cir. 1981) .............................. 44

Fano v. O'Neill,
    806 F.2d 1262 (5th Cir.1987) ..................................... 43

Fiallo v. Bell,
    430 U.S. 787 (1977) ............................................. 50

Fleuti v. Rosenberg,
    374 U.S. 449 (1963) .......................................... 50, 52

Jean v. Nelson,
    727 F.2d 957 (11th Cir. 1984),
    aff'd, 472 U.S. 846 (1985) ....................................... 56

Kleindienst v. Mandel,
    408 U.S. 753 (1972) ............................................. 54

Knauff v. Shaughnessy,
    338 U.S. 537 (1950) ............................................. 54

Landon v. Plasencia,
      459 U.S. 21 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 53

Lopez v. United States,
      758 F.2d 1390 (10th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 55, 56

Lyng v. Payne,
      476 U.S. 926 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Marcello v. Bonds,
      349 U.S. 302 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

National Treasury Employees Union,
      25 F.3d 240-41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

National Commodity and Barter Association v. Gibbs,
      886 F.2d 1240 (10th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

New York Life Insurance Co. v. Brown,
      84 F.3d 137 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 34

Nishimura Ekiu v. United States,
      142 U.S. 651 (1892) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Richardsond v. Reno,
      162 F.3d 1338 (11th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 51, 52

Schweiker V. Hansen,
      450 U.S. 785 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Sierra Club v. Peterson et al,
      185 F.3d 349 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

U.S. v. Coastal Refining and Marketing,
      911 F.2d 1036 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

82

U.S. v. O'Keefe,
    128 F.3d 885 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

United States v. Campos-Serrano,
    404 U.S. 293 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

United States v. Jagmohan,
    909 F.2d 61 (2nd Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Vermont Yankee v. Natural Resources Defense Council,
    435 U.S. 519 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 49

## STATUTES

### Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 3009:

Section 301(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Section 302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Section 302(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

### Immigration and Nationality Act of 1952, as amended:

Section 101(a)(13),
    8 U.S.C. § 1101(a)(13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 51

Section 101(a)(13)(C)(i)-(vi),
    8 U.S.C. § 1101(a)(13)(C)(i)-(vi) . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 51

Section 101(a)(43),
    8 U.S.C. § 1101(a)(43) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Section 103,
    8 U.S.C. § 1103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

83

Section 103,
    8 U.S.C. § 1103 ............................................ 47, 56

Section 211,
    8 U.S.C. § 1181 ............................................ 55

Section 212,
    8 U.S.C. § 1182 ............................................ 51

Section 212(a)(6)(E)(i),
    8 U.S.C. § 1182(a)(6)(E)(i) ............................... 4

Section 212(d)(5)(A),
    8 U.S.C. § 212(d)(5)(A) ................................ 46, 49, 54

Section 221,
    8 U.S.C. § 1201 ............................................ 55

Section 235,
    8 U.S.C. § 1225 ............................................ 18, 55

Section 235(b),
    8 U.S.C. § 1225(b) ........................................ 17

Section 235(b)(2)(A),
    8 U.S.C. § 1225(b)(2)(A) ................................. 18, 49

Section 235(b)(2)(C)
    8 U.S.C. § 1225(b)(2)(C)................................. 18

Section 236
    8 U.S.C. § 1226 ............................................ 48

Section 236(a),
    8 U.S.C. § 1226(a) ........................................ 49

84

Section 236(a)(2)(A),
    8 U.S.C. § 1226(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Section 236(a)(2)(B),
    8 U.S.C. § 1226(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Section 236(e),
    8 U.S.C. § 1226(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46, 47, 48

Section 240,
    8 U.S.C. § 1229a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Section 262,
    8 U.S.C. § 1302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Section 274,
    8 U.S.C. § 1324 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 55

Section 287(a)(1),
    8 U.S.C. § 1357(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

## **REGULATIONS**

8 C.F.R. § 3.19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 49

8 C.F.R. § 100.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

8 C.F.R. § 103.1(g)(2)(ii)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46, 49

8 C.F.R. § 212.5(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

8 C.F.R. § 236.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

8 C.F.R. § 274.12(c)(13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

8 C.F.R. § 274a.12(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59, 60

85

8 C.F.R. § 274a.12(c)(13) ............................................. 59

## MISCELLANEOUS

28 U.S.C. § 1291 ................................................... 2

86

No. 99-40122

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

JUANA  ASCENCIO-GUZMAN, ET. AL.,[1]
**Plaintiffs/Appellees,**

v.

E.M. TROMINSKI, DISTRICT DIRECTOR,
IMMIGRATION AND NATURALIZATION SERVICE,
HONORABLE JANET RENO,
UNITED STATES ATTORNEY GENERAL, AND U.S.
IMMIGRATION AND NATURALIZATION SERVICE,
**Defendants/Appellants.**

_____

APPELLANTS' OPENING BRIEF
_____

**STATEMENT OF JURISDICTION AND TIMELINESS**

E.M. Trominski, District Director, Immigration Naturalization Service

["INS"], Harlingen Texas District, et al., ["defendants"] through their timely filed

---

[1] This case was initially captioned Herrera-Loa et. al., v. Trominski, et. al. See Record ["R."] 1 at 1402. On January 14, 1995, after the death of Mr. Herrera-Loa, plaintiffs moved the District Court to permit them to amend their complaint by removing Mr. Herrera-Loa from their pleading and by asserting additional member and claims. R. 14 at 1326. This case was at that time referred to Magistrate Judge Fidencio G. Garza, Jr., who did not issue a written decision on plaintiffs' motion. Instead, in open court on April 26, 1995, in response to the plaintiffs' comments and oral request for a ruling on the motion, Magistrate Judge Garza stated "We're flying with the second complaint and they filed their response to that, and that's the pleading we're going to sink or swim with." R. 71 at 45. The parties interpreted Judge Garza, as a result of his response, as having granted plaintiffs' motion to amend. Thus, defendants request the Court to strike Mr. Herrera-Loa's name as a party to this case.

appeal, request the Court to review the Final Order entered on January 13, 1999,

by the United States District Court, Southern District of Texas, Brownsville

Division ("District Court" or "court"). R. 109, R. 110. This Court has jurisdiction

to review the District Court's order pursuant to 28 U.S.C. § 1291, which authorizes

federal courts of appeal to review "appeals from all final decisions of the district

courts of the United States. . .

## STATEMENT OF THE ISSUES

1. Whether the Court should reverse the District Court's Order of

November 25, 1998 and Final Order of January 13, 1999, where plaintiffs' failure

to demonstrate standing rendered the District Court without jurisdiction to hear the

case.

2. Whether this Court should reverse the November 25, 1998 and January

13, 1999 Orders of the District Court, which contain errors that caused substantial

prejudice to defendants  inasmuch as, without notice or an opportunity to be heard,

the District Court amended the certified class and decided the parties' motions for

summary judgment inconsistently with the oral decisions previously rendered by

the presiding District Court Judge Filemon B. Vela.

3. Whether the record supports the District Court's factual findings and

conclusions of law where they are based upon plaintiffs' averments that the only

2

facts before the court were those set forth in plaintiffs' Second Amended

Complaint and their First and Second Sets of Requests for Admissions,

notwithstanding the Honorable Judge Vela's written Order granting defendants

leave to amend their answers, which defendants did do.

4. Whether the Court should reverse the November 25, 1998 Order and the

Final Order of January 13, 1999, which are not only unsupported by the record

evidence, but are also erroneously premised upon a finding and a conclusion that a

Memorandum and an Operating Instruction issued by the defendants conferred

substantive and procedural due process rights upon plaintiffs.

5. Whether the Court should find that the District Court over-reached its

authority and reverse its Orders of November 25, 1998 and January 13, 1999,

inasmuch as through those Orders the District Court directed defendants to give

notice of the possibility of parole and to hold parole hearings before an

immigration judge, as opposed to the INS District Director, notwithstanding the

Attorney General's clear delegation of such authority to her District Directors.

6. Whether the Court should reverse the District Court's July 10, 1995

interlocutory order directing defendants to issue work authorization to an alien

whom the Attorney General deems ineligible.

3

# STATEMENT OF THE CASE

## A.    Nature Of The Case And Proceedings Below

This is an immigration case in which all of the named plaintiffs have been

subjected to proceedings to determine whether they should be excluded or

deported from the United States on grounds ranging from aggravated felony drug

trafficking convictions to alien smuggling.[2]  On July 15, 1994, plaintiffs brought

this civil action in District Court for the Southern District of Texas, Brownsville,

Texas, on a Petition for Writ of Habeas Corpus and Class Action Complaint for

Declaratory Judgment and Injunctive Complaint, R. 1 at 1402-30, accompanied by

a Motion for Preliminary Injunction.  R. 2 at 1392-99.  Plaintiffs filed a motion for

class certification on December 6, 1994.  R. 11 at 1335-60.  On January 17, 1995,

plaintiffs filed a motion for leave to file their Second Amended Complaint, therein

giving notice of Mr. Herrera-Loa's death, R. 14 at 1326-28, see n.1.

Accompanying their motion was the Second Amended Complaint.  R. 15 at 1287-

1325.  On June 12, 1995, plaintiffs filed their motion for partial summary

judgement.  R. 40.  Defendants filed their response and motion for summary

judgement on August 28, 1995.  R. 53.  Thus, the parties filed their cross-motions

---

[2]  Aggravated felony crimes for the purpose of the immigration laws are defined at INA
§ 101(a)(43), 8 U.S.C. § 1101(a)(43); alien smuggling is a grounds for exclusion (INA §
212(a)(6)(E)(i),  8 U.S.C. § 1182(a)(6)(E)(i)) as well as a crime (INA § 274, 8 U.S.C. § 1324).

4

90

for summary judgment notwithstanding the plaintiffs' opposed discovery request, R. 31, R. 38; R. R.35, which the District Court denied without prejudice on May 21, 1998. R. 96.

On April 14, 1998, this case was reassigned to District Court Judge Hilda G. Tagle. See Docket Entry at 13. The previously presiding District Court Judge issued an Order on May 21, 1998, which directed all pending motions to be dismissed without prejudice and granted leave to the parties to resubmit any of the motions which had been dismissed. R. 96. On September 30, 1998, the District Court issued the court's Order on the parties' motions for summary judgment, ruling in favor of plaintiffs. R. 97.

In response to defendants' October 15, 1998 motion to alter and set aside the Memorandum and Order of September 30, 1998, R. 101 at 94-104, and defendants' October 19, 1998 reply, R. 100 at 106-18, the District Court modified its September 30, 1998 Order and issued a similar Order on November 25, 1998. R. 104. The Order became final on January 13, 1999. R. 109. The defendants filed timely their appeal on January 25, 1999. R. 110.

B.   **Statement Of The Facts**

**1. Factual Background**

The Complaint and request for injunctive relief filed by plaintiffs on July

91

15, 1994, stemmed from defendants' act of confiscating, during deportation

proceedings, the Form I-551 or I-151[3] issued to lawful permanent residents [or

"LPR"], and issuing in its stead, temporary proof of the LPRs' status until

deportation proceedings are completed.[4] Id. Plaintiffs argued that the Form I-94,

issued by the defendants, are inadequate indicia of their status, and consequently,

deprived them of the rights and liberties to which they are entitled as lawful

permanent residents of this country. R. 1 at 1410-11. Namely, plaintiffs state that

issuing Form I-94s with notations revealing that they are in immigration

proceedings, under bond, or on parole and not authorized to be employed, deprive

them of employment opportunities and property interest, and interfere with their

rights and liberty to depart the United States and return. Id. at 1410-13.

At the time plaintiffs filed their original Complaint, they named two class

representatives, Julio Herrera-Loa and Ramiro Garcia-Cantu, both of whom were

in deportation proceedings. See R.1 at 1417, 1419. Plaintiffs then sought to

represent "all [LPRs] who are under deportation proceedings, in whose case no

---

[3] The Form I-551 or I-151 is commonly referred to as the "green card." It is issued to evidence he LPR's immigration status.

[4] The Form I-94 is the "Departure and Arrival Record" issued when traveling to and from the United States. See R. 55 at 766 (Plaintiffs' Exhibit (6)). The Form has two parts, one for departure and the other for arrival. The defendants issue the Form I-94 as a temporary document to evidence the immigration status of an alien.

92

final order of deportation has been entered, who are not presently held in detention, whose lawful permanent resident cards have been confiscated by [defendants], and are being retained by or under the authorization of the Harlingen Office of the Immigration and Naturalization Service." Id. at 1410. Plaintiffs amended their Complaint on July 28, 1994, R. 7, and again on January 17, 1995. R. 15.[5] It is plaintiffs' January 17, 1995 Complaint ["Second Amended Complaint"], which is currently before the Court. R. 15.

Plaintiffs' Second Amended Complaint retained Garcia-Cantu as a named class representative and deleted Herrera-Loa from the class as a result of his death. See R. 13, 15. Plaintiffs named six additional aliens, five of whom were in exclusion proceedings -- Juana Ascencio-Guzman, Efran Merino, Alejandra Gutierrez, Juan Sanchez-Salinas, and Adelita Cantu de Cabrera -- as their representatives, R. 15 at 1292-94, and one of whom was in deportation proceedings -- Auturo Lopez-Lozano, R. 15 at 1289-91. Lopez-Lozano together with Garcia-Cantu, named in the original Complaint, were said to represent similarly situated aliens in deportation proceedings. Id.

---

[5] One of the amendments made by plaintiffs on July 28, 1994, was the expansion of the class to include "LPRs in exclusion proceedings," although plaintiffs had not named a LPR in such proceedings. R. 7 at 1374.

By amending their Complaint on January 17, 1995, so as to name LPRs in

exclusion proceedings as class representatives, plaintiffs made their Complaint

consistent with their motion for class certification. R. 11, 15. On December 12,

1994, plaintiffs had filed a motion for class certification noting their desire to

represent all LPRs in exclusion and deportation proceedings meeting the class

criterion. R. 14. Thus, plaintiffs advised the District Court, through their Second

Amended Complaint, that they sought to represent the class defined as all LPRs:

> who are under deportation or exclusion proceedings, in
> whose cases no final order of deportation or exclusion
> has been entered, who are not presently held in
> detention, whose I-151 or I-155 cards have been
> confiscated by [defendants], and are being retained by or
> under the authorization of the Harlingen Office of the
> Immigration and Naturalization Service.

R. 15 at 1298. Plaintiffs raised four (4) issues on behalf of the class, within which

are several sub-issues. See id. at 1297-99. All of the issues concern the

defendants' Harlingen, Texas offices.

## 2. Proceedings Before The Magistrate

### a. Order Granting Injunctive Relief in the Case of Garza-Pacheco

During a status conference held on April 26, 1995, plaintiffs made an oral

request to have defendants grant work authorization to Garza-Pacheco. R. 71 at

94

43-44.  In light of defendants' averments that the immigration laws do not provide

for issuance of work authorization for an alien like Garza-Pacheco, who re-entered

the United States after being deported based upon an administratively final order

of deportation, the Magistrate directed plaintiffs to prepare and submit a proposed

order granting their oral request for temporary injunctive relief.[6]  R. 71 at 43-44.

On May 30, 1995, defendants filed their opposition to the proposed order.  R. 36 at

1136-63.

The Magistrate adopted, without amendment, the proposed order filed and,

on June 12, 1995, granted plaintiffs' oral request for temporary injunctive relief.

R. 39 at 1116-22.  Defendants interpreted the Order of June 12, 1995, as the

Magistrate's Report and Recommendation.  See R. 46 at 887-88.  Consequently, on

June 22, 1995, defendants filed their objections.  Id. at 877-36.  Plaintiffs replied

on June 30, 1995, urging the District Court to adopt the Magistrate's Report and

Recommendation.  R. 47 at 86.  On July 10, 1995, the District Court issued its

decision and order, which adopted the Magistrate's Report and Recommendation

with few modifications.  R. 49 at 841-23.

---

[6] Neither the docket entry sheet nor does the record contained the unsigned proposed
order filed by plaintiffs.

95

**b. April 26, 1995 Status Conference Before the Magistrate**

On April 26, 1995, the Magistrate addressed plaintiffs' Motion for Default

Judgment, R. 5-12, 21-24, determined that the case was ripe for summary

judgment, and the parties agreed, R. 71 at 31-33, see also R. 30.  Regarding the

cross-motions for summary judgment, on June 12, plaintiffs filed their motion for

Partial Summary Judgment, and supported their request with their amended

Statement of Material Facts.  R. 40 at 1063-1115, R. 41 at 1042-1062.  On August

28, 1995, defendants opposed plaintiffs' Motion for Partial Summary Judgment

and moved the court to grant summary judgment in their favor.  R. 55 at 657-801.

Defendants also filed a Statement of Material Facts.  R. 54 at 802-24.  On

November 13, 1995, plaintiffs moved the District Court to hold a hearing on all

pending non-dispositive motions on the ground that the court may not rule on the

dispositive motions until it first resolved the "controversy regarding [defendants']

First and Second Sets of Requests for Admission[.]"  R. 69 at 457.

**c. The Magistrate's Unchallenged Report and Recommendation of
July 16, 1996**

The Magistrate recommended that defendants' motion for class certification

be granted, R. 78, and that their Motion for Default Judgment be denied.  R. 77 at

426.  He also recommended that the defendants "be allowed to amend their

10

96

answers." Id. Further the Magistrate recommended that the District Court hold a hearing on the parties' dispositive motions, id. at 427.

Neither party objected to the Magistrate's report. On September 9, 1996, defendants amended their answers to plaintiffs' Second Amended Complaint, R. 88 at 281-84; see also R. 28 at 1214-27, and to plaintiffs' First and Second Request for Admissions, R. 58 at 601-13, R. 88 at 286-87, by incorporating the answers, with the exception of specifically identified changes, which they had previously served upon plaintiffs.

### 3. Proceedings Before Judge Filemon B. Vela

#### a. Oral Decision Rendered

##### i. Issues Decided By Judge Vela

On July 16, 1996, the Honorable Judge Filemon B. Vela held a hearing on the parties' cross-motions for summary judgment. R. 79 at 422. Judge Vela issued an oral decision holding that defendants may confiscate the green cards issued to LPRs. R. 118 at 7-10, 14. He also held that defendants may issue the Form I-94 as a replacement document when the green card is confiscated, id.; may continue their practice of limiting the duration of the Form I-94's validity, id. at 10; and must, although it had not been a matter in dispute, note on the Form I-94 that it is renewable, id. at 10, 14.

11

97

### ii. Issues Not Specifically Decided by Judge Vela

Although Judge Vela did not make a specific finding regarding whether or not the defendants noted on the Form I-94 that the LPR has work authorization, he stated that the defendants indicate that they provide substitute documents that authorized the LPR to "work here and to come to and from and out of this country." R. 118 at 8. Judge Vela further stated, and obtained the defendants' agreement to the same, that if substitute documents were not being issued which note that the alien is authorized to work and permit the alien to leave and be admitted into this country that defendants would agree to issue a substitute document that complied. R 118 at 8. Thereafter, the court **directed the parties** to **prepare an order** for his signature **setting forth the matters already agreed upon.**[7] R. 118 at 16, 17, 21-22. The **court stated** that the **agreed upon matters would no longer be adjudicated.** Id. at 16-17.

### iii. Remaining Issues Judge Vela Stated Would Be Decided

Judge Vela stated that "the only issue" before the court and the "only thing that remains pending" is whether the defendants violate the LPR's rights when

---

[7] The parties did not jointly prepare the order which Judge Vela directed them to prepare and submit because they were unable to agree upon the precise wording. See R. 90 at 256. Accordingly, on October 7, 1996, defendants notified the court of the matter. Id. at 255-57. The notice was accompanied by an order, prepared by defendants, which set forth the court's oral rulings of July 16, 1996. Id. at 259-60.

98

noting on the Form I-94 that such alien is in immigration proceedings and whether the notation interferes with the alien's ability to obtain employment. R. 118 at 17. Judge Vela noted that the identified issue contained three sub-parts: (1) whether the **defendants act within their rights** in noting on the Form I-94 that the alien is under immigration proceedings; (2) whether **defendants violate the aliens rights** as a LPR by noting on the Form I-94 that the alien is in immigration proceedings; and (3) how the alien is prejudiced in terms of employment opportunities by such notations. See R. 118 at 12-13, 15-16. Having informed the plaintiffs that they would have to convince the court that such notation violated their rights, Judge Vela ordered them to brief the matter from the perspective of "[plaintiffs] as against the [defendants] and from the "standpoint of the employer." Id. at 17. Judge Vela commented, "In other words, why shouldn't the employer know that's a third party and there may not be any legal effect upon that. I don't know." Id. Defendants were ordered to file a response to the plaintiffs' brief. Id.

Notwithstanding the initial determination that only one issue remained for resolution, Judge Vela subsequently identified an additional question on which the court would rule. R. 118 at 38-39, 42. Judge Vela ordered the defendants to present a brief advising, "Where is the authority of the United States and Immigration and Naturalization Service to deny [a lawful permanent resident]

13

99

admission into the county[.]" Id. at 38-39. Judge Vela indicated that this question was presented so that a determination could be made on whether the defendants violate the rights of lawful permanent residents by not paroling such aliens into the United States, and requiring them to remain in Mexico until termination of their exclusion proceedings. See id. at 27-39.

### iv. Issues That Judge Vela Either Specifically Determined Would Not Be Decided Or The Parties Agreed Were Not Before the Court

Judge Vela denied plaintiffs' request for further hearing on the question of whether LPRs, placed in exclusion proceedings and paroled into the United States, but not detained, have a right to depart the country pending termination of such proceeding, and be re-paroled automatically into the United States upon their request. Id. at 40-44. Judge Vela also **denied plaintiffs' request** to **brief the issue** of whether the defendants violate the rights of a lawful permanent resident alien when they confiscate the **"driver's license, Social Security card and other documents** that bear on their right to live and work in the United States."** Id. at 44. (Emphasis added.) Judge Vela stated that the issue of whether defendants act in violation of the aliens' rights by confiscating documents other than the green card would not have to be reached, if the court determined that the defendants had not violated the aliens' right by not paroling the alien into the United States. See

14

id. at 44-45.  In addition, Judge Vela stated that if defendants were found to have violated the aliens' right by not paroling them into the United States to await the termination of their exclusion proceedings, the defendants would also be found to have violated the aliens' right by confiscating documents other than the green card. Id.

Additionally, although the plaintiffs stated in passing that the defendants do not give notice of the right to request parole, they did not ask Judge Vela to determine whether the defendants violate their rights in so doing.  R. 118 at 27. Judge Vela did not on his own decide to consider the issue.  See R. 118.

On another matter, Judge Vela asked whether a hearing was given before a decision is made regarding the parole of a LPR placed in exclusion proceedings. R. 118 at 28.  That matter had not been raised by plaintiffs, and was mentioned for the first time by Judge Vela during the July 31, 1996 status conference.  Judge Vela first asked "are they given some kind of hearing of any type before anybody in Immigration and Naturalization Service?"  Id. at 29.  Second, Judge Vela asked defendants whether "there is some provision of law that the Service feels is available or under the rules and regulations by which they can without any particular type of hearing exclude persons."  Id.  Judge Vela abandoned this issue at the request of the parties, who agreed that the issue was whether lawful

101

permanent residents could be required "to wait in Mexico pending their exclusion proceedings." Id.

### 4. Documents Filed After Judge Vela's Oral Decision of July 31, 1996

On August 15, 1996, plaintiffs filed their supplemental brief which addressed the first issue identified by Judge Vela -- whether the defendants violate their rights by noting on the Form I-94 that they are in immigration proceedings. R. 84 at 395-408. Basically, plaintiffs argued that the defendants arbitrarily confiscate green cards and fail to operate within the guidelines established in the McNary Memorandum when they confiscate the green card of a LPR who is not in detention"[8] Id. at 397-406. The plaintiffs also argued that when the green card is confiscated, the McNary Memorandum does not authorize the defendants "to place extraneous notations on the substitute documents, [Form I-94], such as the person

---

[8]  On March 14, 1990, former INS Commissioner Gene McNary issued a Memorandum, which, among other things, set forth guidelines to be followed when issuing a temporary document/green card to a LPR whose green card has been confiscated and the alien placed in exclusion proceedings. See R. 53 at 715-16. He stated that the temporary document "will be prepared in accordance with the guidance in O.I. 264.2." See R. 53 at 718-21. "If, however, the alien is to be paroled into the United States pending the completion of exclusion proceedings, the alien shall be provided with Form I-94 reflecting his or her status as a returning resident applicant for admission, and which shall be endorsed with the alien's "A" number and the following legend:

> Returning resident applicant at ____(port) on ____(date).  Paroled
> pending determination of right to reenter.  Employment
> authorized."

See R. 53 at 716, id. at 721.

16

102

is on bond, or under deportation proceedings[.]"  Id. at 397, 399.

On August 23, 1996, defendants filed their supplemental brief addressing the issues of whether they have authority to deny a LPR's request to enter the United States, and to detain such alien by requiring him to remain in Mexico.  R. 85.  Defendants, citing  INA § 235(b), 8 U.S.C. § 1255(b)(1994), argued that they act within the authority granted by Congress when refusing to admit into the United States all persons claiming to be lawful permanent residents.  R. 85 at 375-79.  Defendants also argued that they are required by Congress to detain all lawful permanent residents admitted who are placed in exclusion proceedings. Id. at 379-93.  Detention, the defendants argued, may be accomplished by (1) placing the alien in a detention facility within the United States, (2) declining to permit the alien to enter the United States pending completion of exclusion proceedings, and (3) paroling the alien into this country pending completion of deferred inspection by an immigration officer or termination of the exclusion proceedings.  R. 85 at 380-81.

On August 30, 1996, defendants filed their response to plaintiffs' August 15, 1996 supplemental brief.  R. 87 at 293-317.  Addressing an argument made by plaintiffs, defendants argued that plaintiffs failed to identify a class member who has been injured as a result of the Form I-94 containing information about pending

17

103

immigration proceedings, that they lacked standing to challenge the notations. R. 87 at 299-304.

On February 5, 1997, as a result of the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ["IIRIRA"], Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996), defendants filed a memorandum to supplement their August 23, 1996 supplemental brief. R. 91 at 216-54. Therein, defendants informed the court that through the passage of IIRIRA § 302(a), amending INA § 235(b)(2)(A), (C) and creating new INA § 235, Congress confirm that the defendants have correctly defined the word "detained," found at INA § 235(b), 8 U.S.C. § 1225(b)(1994), as including requiring the LPR to remain in the contiguous territory until resolution of the exclusion proceedings. See R. 91 at 217-19, see also id. at 220-24. Defendants argued that IIRIRA § 302 recognized and upheld their "long-held practice of detaining [LPRs] at the land border port of entry and requiring such aliens to await resolution of the exclusion proceedings in the contiguous country outside the land border port of entry where admission is sought." Id. at 219. Defendants also argued that through IIRIRA § 301(a), amending INA § 101(a)(13) [new INA § 101(a)(13)(A)], Congress overruled the requirement established by Fleuti to first determine the intent of the LPR. In other words, the defendants are no longer required to determine whether the LPR

18

104

intends to make a brief, casual, and innocent departure. Id. at 219-20, 224-44.
Moreover, citing to the comments made by Congress, defendants argued that
IIRIRA § 301(a) makes clear that an alien who departs the United States while
under proceedings will not automatically be paroled into the United States. See
H.R.Rep No. 104-469(I) at 225 (footnotes omitted).

### 5. Proceedings After Case Reassigned to District Court Judge Hilda G. Tagle

On April 14, 1998, this case was reassigned to District Court Judge Hilda G.
Tagle. See Docket Entry at 13. However, on May 21, 1998, Judge Vela, the
District Court Judge initially assigned this case, directed that "**[a]ll pending
motions filed on or before April 14, 1998, are hereby DENIED without
prejudice.**" R. 96 at 174. (Emphasis added). The parties' cross-motions for
summary judgment were among the motions denied. See id. In addition, Judge
Vela provided the parties leave to re-urge any of the motions which had been
dismissed. Id.

On or about September 11 , 1998, plaintiffs filed with Judge Tagle two
documents, one entitled "Notice of Submission of Proposed Order," Attachment
(1), and the other entitled "Memorandum and Order," Attachment (2). The filing
of these documents are reflected neither in the court's docket entry sheets, see

19

105

Docket Entry at 13-14, nor are they contained in the court's records. However, on September 30, 1998, nineteen days after the date on which plaintiffs filed Attachments (1) and (2), Judge Tagle signed the Memorandum and Order without modification and issued it as her own. R 97 at 168-72. The Order dismissed the case and granted summary judgment for plaintiffs. Id.

On September 30, 1998, unaware that Judge Tagle had issued the proposed order filed by plaintiffs, defendants, pursuant to Judge Vela's Order of May 21, 1998, granting the parties leave to "re-urge any" pending motion filed before April 14, 1998, mailed their motion to the court. R. 98 at 163-65,, R. 96. Defendants "re-urged" consideration of their "Supplemental Brief In Support Of Defendants' Counter Motion For Summary Judgment," "Response To Petitioners' [sic] Supplemental Points And Authorities In Support Of Motion For Partial Summary Judgment," "Memorandum To Supplement [] Supplemental Brief In Support Of [] Counter Motion For Summary Judgment," and "Memorandum And Proposed Order Setting Forth The Court's Oral Decision Of July [31], 1996. R. 98 at 163. Defendants argued that only the identified motions should be considered because the court, through Judge Vela's oral decisions of July 16, 1997, narrowed the issues by directing the parties to file supplemental briefs on the issues which he determined were still before the court. Id. at 164; see R.96 at 163.

20

106

Accompanying their motion re-urging, defendants forwarded their response to plaintiffs' Memorandum and Order, which was filed by the court on October 1, 1998. See R. 99 at 119-62. Therein, defendants argued that the court should not adopt the proposed memorandum and order because: (1) plaintiffs' failure to re-urge the court to consider any of their previously filed motions dismissed without prejudice by Judge Vela means that there are no motions before the court on which it may rule; (2) the proposed memorandum and order would cause the court to rule inconsistently with Judge Vela's oral rulings and would result in the court reaching factual findings and issues not identified by Judge Vela as being before the court; (3) the court will rule on factual matters that are not before the court, make factual findings that are not supported by the record, and render legal conclusions on matters raised for the first time in the proposed order; (4) the parties agreed, and Judge Vela so held, that this case would be resolved based upon the law; and (5) plaintiffs cannot prevail as a matter of law. See R. 99 at 119-27.

Defendants learned of Judge Tagle's September 30, 1998 Order on October 6, 1998. See R. 101 at 95. Consequently, on October 15, 1998, defendants filed a motion with the court requesting that the order of September 30, 1998 be altered and set aside. R. 101 at 94-104. In support of their motion, defendants argued, among other things, that the court erred in entering the order inasmuch as there

21

(o7

were no motions before the court on which it could rule. Id. 94-95, 96-97. By adopting the proposed memorandum and order, defendants argued, the court's order is inconsistent with the rulings made by Judge Vela, who narrowed the issues and determined that the case would be decided upon the law. Id. at 97. Additionally, defendants argued that the court issued its order of September 30, 1998, without affording them an opportunity to be heard. Id. at 97-98. Fairness, defendants stated, "requires that at the very least [they] be provided notice and an opportunity to respond to [plaintiffs'] proposed Memorandum and Order." Id. at 98.

Thereafter, plaintiffs filed another proposed order with the court similar to the one filed on September 30, 1998. See id. at 118. They also filed a proposed order amending the class certified on July 16, 1996, so as to include lawful permanent resident aliens in removal proceedings. Id.; see R. 77. Judge Tagle adopted both proposed orders without modification and issued them as the Orders of the court on November 25, 1998. See R. 104 at 86-90.

### 6. Judge Tagle's Memorandum and Order

The court first made its findings of fact and conclusions of law. R. 104 at 86-89. Based on the court's findings and legal conclusions, it issued the following orders to defendants:

22

108

(1) adhere to the intent of the McNary Memorandum when confiscating the green card from LPRs placed in **deportation proceedings**, but not held in custody, by

    (a)    not confiscating the green card unless the "INS Director, chief patrol agent, or officer in charge **determines** that a temporary document is needed for a **justifiable, particularized reason**, based on the **individual facts of the case[,]**" R. 104 at 89-90 (emphasis added),

    (b)    provide "**temporary evidence** of the aliens lawful permanent resident status **in accordance** with the **INA**

    (c)    execute the temporary evidence/document valid for at least six months, id.; and

    (d)    note on the temporary document that it is renewable, id.

(2) in the case of a LPR in **exclusion proceedings** while applying for admission, defendants may confiscate the green card of such alien, but shall

    (a)    afford such alien "a **prompt hearing** before **an immigration judge**, in accordance with **8 C.F.R. § 236.1**, to determine whether [the alien] should be paroled into the United States during the pendency of proceedings, and if so, under what conditions[,]" R. 104 at 90 (emphasis added);

    (b)    if the alien is granted parol by the immigration judge, "and not held in custody, [defendants] **shall provide** a substitute document **evidencing permanent resident status**, and **entitlement to be employed** in the United States[,]" id. (emphasis added).

(3) defendants "shall not **confiscate any other lawfully issued documents** from a permanent resident, absent a good faith belief that such documents constitute bona fide evidence of unlawful conduct[,]" id. (emphasis added).

On January 13, 1999, the court issued the final judgment. R. 109 at 70-71.

109

# SUMMARY OF THE ARGUMENT

This Court should reverse the District Court's November 25, 1998 Order issuing summary judgment in favor of plaintiffs because the court lacked jurisdiction in the first instance to hear the case in light of plaintiffs' failure to demonstrate standing. In addition, all of the District Court's findings are in dispute because the court deprived the defendants of notice that the facts would be reached and that the case would not be decided upon the law as was ruled by the previously presiding judge; also the record is devoid of evidence supporting the findings; and the findings are erroneously based upon a determination that defendants violated an internal memorandum. In addition, the District Court found that defendants violated plaintiffs' rights by not holding a parole hearing before an immigration official to whom the Attorney General has not granted such authority. This finding is clearly erroneous and must be reversed. Also, the District Court found that defendants violated plaintiffs' rights by not advising them of the possibility of parole. For those reasons, summary judgment is not appropriate because there are issues of genuine material facts disputed by defendants. Moreover, defendants are entitled to summary judgment as a matter of law.

110

# ARGUMENT

## I.   STANDARD OF REVIEW

The Court reviews "a district court's decision to issue an injunction for abuse of discretion, meaning that the factual underpinnings of the decision are reviewed for clear error, while the application of legal principles is reviewed de novo." Sierra Club v. Peterson et al, 185 F.3d 349, 364 (5th Cir. 1999).

## II.   THE COURT SHOULD REVERSE THE DISTRICT COURT'S ORDER BECAUSE IT LACKED JURISDICTION TO DECIDE THE CASE

Plaintiffs lacked standing to challenge defendants' practice of confiscating their green card and issuing a temporary document, Form I-94, because they fail to identify even one LPR who has suffered an injury as a result of either the receipt of the Form I-94 or the notations placed thereon.  Plaintiffs brought this civil action requesting relief from defendants' practice of confiscating their green cards based on their assertion that such practice violates their rights, liberties, privileges, and deprives them of their property interest.  In support of their claim, plaintiffs asserted that those of them who are issued the Form I-94 are  more likely to be denied employment opportunities, inhibited in their ability to travel freely to and from the United States, and more likely to be stopped at ports of entry.  R. 15 at 1297-99.  Thus, to demonstrate that they are raising questions on which the

25

District Court could rule, plaintiffs were required to demonstrate a case or

controversy as to the alleged matters.

To demonstrate a case or controversy, plaintiffs were required to identify a

named class representative who has a personal stake in the outcome of the case,

i.e., that a case or controversy exists which is capable of being resolved by the

Court. "[T]he critical standing question is whether the [plaintiffs have]

demonstrated a personal, distinct, and palpable injury-in-fact that is fairly

traceable to the defendant's allegedly unlawful conduct, and that such an injury is

likely to be redressed by a favorable judicial decision." Nat'l Treasury Employees

Union, 25 F.3d 237, 241 (5th Cir. 1994) (citations omitted). Thus, for purposes of

this Court's inquiry, the question is whether these plaintiffs have shown that they

have been personally injured in the manner in which they claim --more likely to be

denied employment opportunities, inhibited in their ability to travel freely to and

from the United States, and more likely to be stopped at ports of entry. For

without making such a showing that there is a case or controversy, the District

Court lacked jurisdiction to decide plaintiffs' case and was required to dismiss it.

See Nat'l Treasury Employees Union, 25 F.3d at 240-41 (citations omitted).

26

112

Although plaintiffs assert that the confiscation of their green card and

issuance of allegedly inadequate temporary documents, Form I-94, places a cloud

over their status as LPRs by making them more likely to be denied employment

opportunities, inhibited in their ability to travel freely to and from the United

States, and more likely to be stopped at ports of entry, they have not identified one

class representative who has been injured or claims to have sustained a personal

injury from defendants' act. R. 15 at 1298-99. In fact, plaintiffs have themselves

admitted that they have not identified such a representative. They state that:

> If an evidentiary hearing were held, [plaintiffs] would affirm,
> as an offer of proof, that, even apart from the offending
> annotations, a great many local employers are distrustful of the
> cardboard substitute documents, and that it often requires
> intervention by legal counsel, to convince them that they are
> valid. The placement of notations on such cards regarding
> deportation proceedings, bond, etc., only aggravates the
> problem . . . .

R. 84 at 406-07. In fact, plaintiffs suggest that they would have identified the

class members who have suffered an injury as a result of the notations placed on

the Form I-551 had defendants not "re-asserted their supposed right to make such

notations." Id. 11-12. In other words, as will be discussed, plaintiffs state that had

Judge Vela not allowed defendants to amend their answers -- otherwise deemed

admitted because defendants did not timely file answers to plaintiffs' Second

113

Amended Complaint and answers to plaintiffs' First and Second Request for
Admissions -- they would have been able to meet their burden of proof.[9]  Plaintiffs
cannot await an evidentiary hearing to meet their burden as they desired to do.
They were required to meet the requirement to demonstrate the existence of a case
or controversy before the court could even accept their case for review.  See  Nat'l
Treasury Employees Union, 25 F.3d at 240-41 (citation omitted).

Of the seven aliens named as class representatives, none claimed to have
experienced problems on account of the Form I-94 in obtaining employment; none
claimed to have been inhibited or hindered in his or her ability to travel freely to
and from the United States, and none claimed to have been stopped at ports of
entry.  Specifically, only three of the seven representatives complained about the
Form I-94 issued to them. R. 41 at 1046-47, R. 54 at 806 (Garcia-Cantu no
employment authorization stamp on the Form I-94); R. 54 at 810, R. 41 at 1051
(Sanchez issued Form I-94 stamped "not valid for employment"); id. (Cabrera
issued Form I-94 with no stamp at all regarding employment eligibility).  As
acknowledged by plaintiffs, when the problems were brought to defendants'
attention, they were promptly corrected by issuance of a Form I-94 which bore a

---

[9] See R. 89 at 263-64 (where plaintiffs admit without excuse that "[i]t is true that [we] have not identified any specific class members who have been denied employment on this basis." Id. at 263-64.

28

114

stamp noting employment authorized. Id. Neither Garcia-Cantu, Sanchez, nor Cabrera claimed that they attempted to obtain employment, to leave the country, or to enter and were stopped at the port of entry let alone claimed that such acts occurred due to the Form I-94 they were issued.

Although plaintiffs assert that the Form I-94 makes them more likely to be stopped at a port of entry, of the five who experienced problems when attempting to enter the United States, none was attempting to enter with a Form I-94. See R. 41 at 1049, R. 54 at 808 (Ascencio-Guzman and Merino attempting to enter the country with their green card when stopped at the port of entry for illicit trafficking in a controlled substance); R. 41 at 1041, R. 54 at 809 (Gutierrez attempting to enter with green card when stopped for alien smuggling); id. (Sanchez attempting to enter with green card when stopped for illicit trafficking in a controlled substance); and R. 41 at 1051-52, R. 54 at 810 (Cabrera attempting to enter with green card when stopped for illicit trafficking of a controlled substance). Clearly, these class representatives cannot be said to have experienced problems attempting to enter this country due to the Form I-94 issued to them because they all had their green cards when the difficulties were encountered.

Plaintiffs argue simply that defendants' practice of placing notations on the temporary Form I-551 other than the LPR's name, immigration status, and

29

authorization to work places a cloud over their status as LPRs. Their unsupported averments were not sufficient to have enable them to meet their burden of proof.[10] Thus, plaintiffs lack standing.

### III. JUDGE TAGLE'S DECISION TO DISREGARD THE ORAL DECISION ISSUED BY JUDGE VELA RESULTED IN SUBSTANTIAL PREJUDICE TO THE DEFENDANTS

#### A. Defendants Were Substantially Prejudiced By Judges Tagle's Decision to Reach Beyond Judge Vela's Oral Decisions

Should this Court determine that the District Court had jurisdiction to review this case, it should nevertheless reverse that court's January 13, 1999 Final Order. Defendants base this request upon Judge Tagle's decision to both render findings of facts without first advising the parties that the court would make such findings and to decide legal questions rejected by Judge Vela through his oral decisions of July 31, 1996. Judge Tagle's decisions deprived defendants of

---

[10] Plaintiffs also claimed, and the District Court found, that they were denied a hearing prior to being returned to Mexico and that "unless the individual obtains counsel, it is very difficult to ascertain, and follow, the procedures necessary to request parole into the United States[,]" R, 15 at 1295-96, R. 104 at 87; that defendants confiscate their driver's license and other non-immigration documentation regardless of its evidentiary value in criminal prosecution exclusion proceedings, refuse to return such documents regardless of whether the alien is in Mexico or the United States, until exclusion proceedings are completed in the alien's case, R. 15 at 1296, R. 104 at 87; and that defendants failed to advise them of the possibility of parole, R. 15 at 1295, R. 104 at 87. In addition, plaintiffs claimed, although based on the District Court's November 25, 1998 Order, their claim was "either [deemed] moot, or denied," that defendants also forfeit or cancel their bond if they leave the country during deportation proceedings. R. 15 at 1296; R. 104 at 89. None of these claims were supported by the plaintiffs because they failed to identify a class member who has been injured by those acts even if true.

30

procedural due process.

This Court has held consistently that ""[o]rdinarily all that due process requires in a civil case is proper notice and service of process and a court of competent jurisdiction; procedural irregularities during the course of a civil case, even serious ones, will not subject the judgment to collateral attack." New York Life Insurance Co. v. Brown, 84 F.3d 137, 143 (5th Cir. 1996). This Court held further that "[u]nder our system of justice, the opportunity to be heard is the most fundamental requirement." As such, this Court has held, that its "injury is whether the district court acted in a manner so inconsistent with due process as to render the judgment void." Id.

As set forth in the statement of the facts, here Judge Vela, sitting as the presiding judge initially assigned to this case, made several very important oral decisions regarding disposition of this case. Having accepted the Magistrate's decision and the parties' position that this case should be determined upon the parties' motions for summary judgment because the questions before the court turn upon questions of law, R. 71 at 31-33, Judge Vela, through a decision issued from the bench, narrowed the issues before the court. R. 118 at 17 (whether defendants violate LPRs' rights when noting on the Form I-94 in immigration proceedings and whether the notations interfere with the alien's ability to obtain employment), R.

31

117

118 at 38-39, 42 (do defendants have authority to deny admission to an LPR; do defendants violate the LPRs' rights by not granting parole).  Accordingly, the parties were on notice as to the issues upon which the case would turn.

Judge Tagle, subsequently assigned this case, was bound by the decision entered by Judge Vela regarding the issues before the court.  See U.S. v. O'Keefe, 128 F.3d 885, 891 (5th Cir. 1997) ("Generally, under the law of the case doctrine, a successor judge must defer to the order of a prior judge[,"] and must "follow a ruling made by an earlier court unless the prior decision was erroneous, is no longer sound, or would create injustice.") Judge Tagle, however, entered findings of facts despite Judge Vela's decision that the case would turn only upon the two identified legal questions -- whether defendants violate LPRs' rights when noting on the Form I-94 "in immigration proceedings" and do such notations interfere with the alien's ability to obtain employment, R. 118 at 17; do defendants have authority to deny admission to an LPR, i.e., do defendants violate the LPR's rights by not granting parole, R. 118 at 38-39, 42.  Thus, Judge Tagle's decision to reach issues that went beyond the issues identified by Judge Vela as being before the court deprived defendants of their right to due process.  Other than their answers to plaintiffs' request for admissions and their answer to the Second Amended Complaint, defendants have not submitted into the record any evidence on which

32

118

the court could determine the facts of the case. All that was before Judge Tagle,

regarding the facts of this case, were plaintiffs' allegations in their Second

Amended Complaint, their First and Second Request for Admission, and their

Statement of Facts, and defendants' answers to those documents and defendants'

Statement of Facts. Defendants were granted permission to file their answers

notwithstanding plaintiffs' motion for default and motion to strike. See R. 23

(plaintiffs' motion to enter default against defendants for failure to file answers to

Complaint and First and Second Request for Admissions); R. 25 (defendants'

opposition to default); R. 557 (plaintiffs' motion to strike defendants' Answer to

Second Amended Complaint and Answers to First and Second Request for

Admissions); R. 58 (defendants' requests for leave to submit answers and

alternatively to withdraw answers); R. 50 (plaintiffs' opposition to defendants'

motion for leave); R. 77 (Magistrate's Order, which among other things, granted

defendants permission to amend answers, to which neither party objected).

Defendants filed their Amended Answers to the Second Amended Complaint and

they served upon plaintiffs the amended answers to plaintiffs' First and Second

Request for Admissions. See R. 88 (amending R. 28 -- Answer to Second

Amended Complaint) and amending ( R. 58-- answer to First and Second Request

for Admission). Therefore, Judge Tagle had no supporting evidence before the

119

court on which a determination could be rendered regarding the truthfulness of the assertions made in the documents filed by the parties.

Judge Tagle's decision to accept the plaintiffs' averments of fact and to reject the defendants' averments substantially prejudiced the defendants, who had proceeded based on the belief that only two questions would be decided, neither of which were factually based. Defendants were deprived of the right to set forth supporting evidence, which they could have done, had Judge Tagle advised of her decision to set aside Judge Vela's order. Consequently, Judge Tagle's decision to modify the September 30, 1998 Order and re-issue it on November 25, 1998, rendering it final on January 13, 1999, did nothing to provide the defendants an opportunity to be heard on the matters that Judge Tagle determined the court would consider. Federal plaintiffs and federal defendants have an equal right to notice and opportunity to be heard. United States v. Jagmohan, 909 F.2d 61, 63-64 (2nd Cir. 1990). Here, the District Court has denied the Federal defendants the most fundamental right of our justice system -- the right to be heard. See New York Life Insurance Co., 84 F.3d at 143. Accordingly, this Court must reverse the District Court's decision.

120

**B. Judge Tagle's Decision to Modify the Certified Class Without Notice to Defendants Violated the Fed. R. Civ. P. and Denied Defendants Due Process**

In modifying a class definition, the judiciary is bound by Fed. R. Civ. P. 23 and must consider each of its requirements before certifying or amending the class. Judge Tagle, however, never gave notice that the court intended to modify the class. Nor was there a motion before the court asking for such relief. It was incumbent upon the court to provide the defendants with notice and an opportunity to discuss the propriety of the expanded class definition, including the opportunity to explain whether there were any class representatives in removal proceedings such that lawful permanent residents would be adequately represented. Far from a mere technicality, this goes to the heart of whether a class may be maintained. The court should not have assumed that aliens in removal proceedings face identical problems to those in exclusion or deportation proceedings; indeed, aliens in removal proceedings face vastly different rules. See, e.g., 8 U.S.C. § 1101(a)(13). Judge Tagle failed to comply with the duty of the court to inquire into the ability of aliens in exclusion and deportation proceedings to represent aliens in removal proceedings. This is in violation not only of the Fed. R. Civ. P., but it is also a violation of the guarantees of due process. Accordingly, the modification of the class without notice to defendants substantially prejudiced them.

35

121

## IV. THE DISTRICT COURT'S ORDER SHOULD BE REVERSED BECAUSE THERE ARE DISPUTED GENUINE ISSUES OF MATERIAL FACTS

As shown, the parties agreed and the District Court, through Judge Vela, ordered that this matter would be resolved by way of summary judgment based on a finding that the resolution of it turned upon questions of law. See R. at 71 at 31-32. As such, Judge Vela, through his Order of April 14, 1998, denied plaintiffs' May 10, 1996 motion to compel production, and discovery was never had. R. 31 (plaintiffs' motion to compel); R. 96 (Judge Vela's Order denying all pending motions filed on or before April 14, 1998). Inasmuch as the parties did not engage in discovery, the plaintiffs offered no independent supporting evidence in support of their factual averments, and both parties submitted statement of facts that differed as to most of the facts on which the District Court based its decision of November 30, 1998, there is no support for the District Court's decision.

Even if plaintiffs were able to avail themselves of some actionable right based on the McNary Memorandum, the District Court issued factual findings on matters that the parties adamantly disputed. The District Court made similar findings regarding LPRs in deportation and in exclusions proceedings as effected by defendants' failure to comply with the McNary Memorandum. See R. 104 at 86-87. Disputed were the District Court's findings that defendants "frequently"

36

122

violate the McNary Memorandum because: (1) they confiscate the green cards issued to a LPR under deportation proceedings by "routine[ly]" as oppose to on a case by case basis, but see R. 54 at 807 (Lopez-Lozano, one of two aliens in deportation proceedings named by plaintiffs was permitted to keep his green card through deportation proceedings after bond was posted);  (2)  they arbitrarily place unauthorized notations on replacement documents, but see R. 54 at 813, para. 24, 25 (where defendants denied this matter stating that their practice is to place the notations required by the McNary Memorandum; notations have sometimes erroneously been placed on card for example, not valid for entry, employment not authorized, or failure to place any stamp on Form I-94 regarding employment authorization; these mistakes have been corrected when called to defendants' attention ), R. 54 at 806 (no employment authorization stamp on card), (stamped not valid for re-entry), R. 54 at 810 (notations that card not valid for employment); (3) refuse in some cases to issue any replacement document, or to place thereon a notation that the holder was authorized to be employed in the United States," but see R. 28 at 1221, para. 36 and R. 58 at 604-05, para. 13 (denied refusing to issue no documentation), and R. 54 at 813, 24, 25 (admitted that errors are made and that one of he class representatives received a card without employment authorized noted, but corrected mistake when notified).

37

123

In addition, defendants disputed the facts which comprise the District Court's findings that they failed to comport with the McNary Memorandum as to LPRs in exclusion proceedings and paroled into the United States by: (1) failing to provide a Form I-94 after green card is confiscated; (2) not specifying on the Form I-94, in those cases where the document is issued, the aliens status as a LPR authorized to be employed in the United States, and (3) in some cases, noting on the Form I-94 that the LPR is not authorized to be employed. Id. at 87. Defendants disputed these findings for the same reasons given in the parenthetical language above. As to the District Court's finding that defendants "confiscated other lawfully issued documents which do not constitute *bona fide* evidence of unlawful conduct" in the possession of LPRs' deportation and those in exclusion proceedings, R. 104 at 87, defendants disputed this finding. See R. 28 at 29(B), R. 54 at 817, para. 3, R. 58 at 627, para. 20.

Defendants also disputed the finding that their treatment of LPRs seeking admission into the United States from a land border depends upon whether the alien is detained for a major or a minor offense. R. 104 at 87; R. 54 at 817 (where defendants averred that parole decision are made on a case by case basis).

38

124

The District Court found further that in the case of a LPR **detained** for **major** offenses such as **trafficking in either controlled substances or undocumented** aliens that (1) defendants "**usually parole[]**" such aliens into the United States "for criminal prosecution;" (2) defendants also **usually detain** the alien at the time of granting parole or detain the alien after criminal prosecution, (3) the alien has "ready access to counsel," and (4) the alien is "frequently, (but not always), allowed to post bond." R. 104 at 87.  In addition, the District Court found that in regard to LPRs detained . . . for **minor offenses** such as "**attempting to smuggle relatives** into the United States," that the defendants: (1) confiscated the alien's green card, (2)"generally return[]" the alien to Mexico to await a hearing, and the alien has a difficult time obtaining "access to counsel" in Mexico.  Id. Defendants stated in their Statement of Facts that they generally take the actions complained of by the plaintiffs in this paragraph, but their decision is based upon an individual determination.  See R.54 at 810-11.  However, plaintiffs' own record evidence cuts against those findings.  While the District Court found that defendants "**usually parole**" and "**usually detain at the time of parole**," for criminal prosecution, aliens placed in exclusion proceedings for **major offenses** such as **illicit trafficking of controlled substances**, of the five aliens representing the class of those in exclusion proceedings, two were placed in those proceedings

for what plaintiffs deem to be a major offense, but only one is alleged to have been

detained for criminal prosecution. See. 41 at 1051 (Cabrera **placed** in exclusion

proceedings for **illicit trafficking of a controlled substance, was paroled** into

the country, plaintiffs do not complain that she was detained, and the record shows

that a **Form I-94** was issued (which generally means that she was not detained));

and R. 41 at 1051 (Sanchez placed in exclusion proceedings for **illicit trafficking**

**in a controlled substance** was **paroled** into the country, detained for prosecution,

bond granted by INS). As to the three remaining class representatives,

representing those aliens in exclusion proceedings for what plaintiffs describe as a

**minor offense** -- alien smuggling of a **relative,** only one -- Gutierrez -- comes

within the District Court's finding that such aliens are **"generally returned"** to

Mexico to await their exclusion hearing. See R. 104 at 87, R. 41 at 1051

(Gutierrez smuggling sisters and niece, returned to Mexico, subsequently paroled,

and issued a Form I-94); but see R. 41 at 1049 (Ascencio and Merino smuggling

two relatives, granted **parole**, neither detained) . Defendants have set forth this

information to press the point that there was no evidence from which the District

Court could have issued any competent findings on this matter adverse to the

defendants.  All that both parties had were the pleadings and their Statement of

Facts.  As can be seen, the named representatives who have committed offenses

40

126

which plaintiffs deem are the type of major offenses that "usually" result in the aliens being paroled for prosecution and "usually" being detained, are in fact being paroled, being given Form I-94s, and are not detained.  Of the three LPRs who committed alien smuggling, an offense that plaintiffs describe as minor and one that will "generally" result in the aliens being returned to Mexico to await a hearing, only one was not permitted to enter. Those facts, which are taken from plaintiffs own Statements of Facts, see R. 41 at 1042-62, demonstrate what the defendants have said all along --while they confiscate the green cards of some aliens, it is done on a case by case basis.  Clearly, there are genuine issues here of material facts because defendants have stated throughout that the allegations brought against them are unfounded in as much as they do not take the complained of actions routinely, but on a case-by-case determination.  Having, however, been found to have committed the acts alleged by plaintiffs, notwithstanding the record evidence set forth above, shows that the District Court has abused its discretion. The Court should accordingly reverse its decision.  This is required because as discussed throughout, defendants were allowed by the Magistrate's July 16, 1996 Order to amend their answers, which they did.  Therefore, Judge Tagle had no competent evidence before her on which she could rule adversely against defendants.

41

## V.   JUDGE TAGLE ERRED IN ISSUING SUMMARY JUDGMENT AGAINST DEFENDANTS BASED IN PART UPON THE FINDING THAT DEFENDANTS FAILED TO COMPLY WITH THE MCNARY MEMORANDUM

The court's Order of November 25, 1999, is premised in part upon the determination that the defendants are required to comply with the McNary Memorandum and that they frequently act inconsistent with it.  R. 104 at 86 (The court found "A Memorandum issued by former Commissioner Mc Nary . . . sets forth the conditions under which INS has authorized the confiscation of greens . . . and the form of the substitute document which must be provided [].  The practice of defendants' agents in the Harlingen, Texas, district have frequently been inconsistent with the McNary Memo[.]"); see R. 106 at 88 (The court held defendants "act arbitrarily and capriciously, inconsistent with Due Process, when they confiscate green cards from non-arriving permanent residents placed in expulsion proceedings . . . without making the determination on a case by case basis as required by the McNary Memo, when they confiscate such a card[.]")  The District Court, however, has erred in basing its determination that defendants have violated the law, even if evidence supported such a finding, on an application of the McNary Memorandum.

42

128

This Court has adhered to the Supreme Court's determination that "not all agency publications are of binding force." Fano v. O'Neill, 806 F.2d 1262, 1263 (5th Cir.1987) (citing Lyng v. Payne, 476 U.S. 926 (1986)). In Fano, this Court also noted that in its Schweiker V. Hansen, 450 U.S. 785 (1986), the Supreme Court held "that a provision in the Social Security Administration [] Claims Manual instructing [its] employees to encourage claimants to file written applications was not a binding agency rule." Fano, 806 F.2d at 1263. Noting that the Supreme Court found that the Manual had been developed for the internal use of the agency's employees and that "its violation did not entitle the claimant in that case to relief from her failure to file a written application," this Court reversed the district court's grant of summary judgment to an alien who proceeded based upon the claim that the he INS failed to follow its Operation Instructions. Fano, 806 F.2d at 1263. The Court, which assumed that the INS had in fact violated its Operation Instruction, reversed the grant of summary judgment based upon its adherence to the Supreme Court's precedence Schweiker decision. Id. This Court stated that in another case decided based upon Schweiker it held "that OI's are not 'only internal guidelines for INS personnel, and neither confer upon petitioner substantive rights nor provide procedures upon which he may rely." Id. (citation omitted.) In addition, this Court made clear that neither mandatory language nor

43

129

the fact that the Operation Instruction has an impact on substantive rights are

sufficient to raise such instructions to the level of providing a legally actionable

right. Id. Rather, the Court stated that it determines whether the agency rule is

"an exercise of delegated legislative power and do not purport to be anything other

than internal house-keeping measures. Id. (citing Dong Sik Kwon v. INS, 646

F.2d 909, 918-19 (5th Cir. 1981)).

In the present case, the McNary Memorandum, unlike the Operations

Instructions which this Court has found non-binding and non-actionable, is not a

published document. The McNary Memorandum is directed to only its employees

as shown on the first page. See R. 53 at 715-16. The memorandum states that it is

to "All District Directors, All Officers in Charge, All Chief Patrol Agents , All

Service Centers, All Regional Processing Facilities, and Director, Glynco, GA."

Id. The purpose of the memorandum is clearly to provide guidance to defendants'

employees because as stated in its subject column, the memorandum concerns

"Disposition of Alien Registration, Documentation after institution of deportation

or exclusion proceedings." Id. The McNary Memorandum uses the mandatory

term "shall" when providing guidance to its employees on the type of form to be

used as a temporary document when the green card is confiscated and what

language has to be placed on the temporary document. Id. Specifically, the

44

130

memorandum provides that, "If the alien is to be paroled into the United States

pending the completion of exclusion proceedings, the alien **shall** be provided with

Form I-94 reflecting his or her status . . . which **shall** be endorsed with the aliens's

"A" number and the following:

> Returning resident applicant at ____ (port) on ____(date).
> Paroled pending determination of right to reenter.   Employment Authorized.

Id. at 716.  This Court, however, should follow the Supreme Court's Schweiker

decision as it did in Fano and not determine that the McNary Memorandum has

the force of law because it is clearly an internal memorandum intended for internal

use.

In sum, the Court should find that the findings of facts set forth in paragraph

(1) of the November 25, 1998 decision are unsupported and that the District Court

abused its discretion in so entering such findings.  R. 104 at 86.  Based upon that

same logic, the Court should find that the District Court erred in reaching the legal

conclusions set forth in paragraph (1) of the November 25, 1998 decision.  Id. at

88.

131

## A. The Court Improperly Seeks To Supplant The Agency's Selected Procedures For Dealing With Lawful Permanent Residents Who Are Placed In Removal Proceedings

### 1. INA § 236(e) Provides That the District Court Has No Jurisdiction To Review or To Establish Parole Procedures Impacting Upon Aliens In Removal Proceedings

The district court was without jurisdiction to enter review or set aside the Attorney General's actions or decisions regarding parole of aliens in removal proceedings. That court is barred by the mandate that Congress issued when it enacted INA § 236(e), 8 U.S.C. § 1226(e). Section 236 of the INA provides for the detention of aliens who are in "removal proceedings" and bars judicial review of the Attorney General's determinations regarding detention or parole:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

The District Court's Order makes substantial modifications to defendants' parole procedures for arriving aliens placed in removal proceedings. In pertinent part, the Order directs defendants to bring arriving lawful permanent resident aliens before an immigration judge for a parole determination. R. 104 at 90. The procedure established by the Attorney General, however, requires an alien to seek parole from the district director. The structure by which an arriving alien may

46

132

obtain release from detention is set forth by the INA and the regulations

promulgated thereunder. The district director has been delegated the authority for

deciding applications for parole pursuant to INA § 212(d)(5)(A). 8 C.F.R.

§ 103.1(g)(2)(ii)(B). Immigration judges, however, lack such authority.

8 C.F.R. § 3.19.

Section 236(e) of the INA bars the court's jurisdiction in two ways. The

first sentence of INA § 236(e) expressly and categorically bars judicial review of

discretionary judgments made by the Attorney General regarding the detention or

release of any alien. The delegation of authority to make detention decisions

constitutes a discretionary action by the Attorney General respecting the

application of INA § 236. See INA § 103, 8 U.S.C. § 1103. Thus, INA § 236(e)

precludes any challenge to the discretionary selection of the means by which the

Attorney General implements INA § 236 and other parole provisions by assigning

release determinations concerning arriving aliens to the defendants' district

director rather than the immigration judge.

The district court's jurisdiction is precluded by INA § 236(e) for a second

reason. The second sentence of INA § 236(e) expressly and unequivocally bars

any court from setting aside any action or decision by the Attorney General under

INA § 236 regarding the detention of an alien or the denial of bond or parole to an

133

alien pending a decision whether to remove the alien from the United States. Not only is promulgation of the regulatory scheme establishing procedures for parole and bond requests an "action" by the Attorney General regarding the "detention or release of [an] alien" under INA § 236, but the district director's decisions to parole certain aliens but not others also is a decision regarding the "detention or release of [an] alien" under INA § 236. In short, plaintiffs' action before the district court is a challenge to both the Attorney General's selected method for implementing section 236 and other parole provisions and to the district director's decision under INA § 236. Section 236(e) clearly precludes all courts from setting aside detention decisions and actions respecting arriving aliens made by the Attorney General or her designees. 8 U.S.C. § 1226(e).

## 2. Congress Delegated Its Authority Over Immigration Matters To The Attorney General, Whose Established Parole Procedure for Aliens In Removal Proceeding Has Improperly Been Set Aside By The District Court

The court improperly seeks to supplant the defendants' selected mode of enforcement by dictating the procedures by which the agency must operate. The courts are required to show proper deference to an agency's discretionary choice of procedures. Vermont Yankee v. Natural Resources Defense Council, 435 U.S. 519, 544 (1978).

The structure by which an alien may obtain release from detention is set

48

134

forth by the INA and the regulations promulgated thereunder.  In general, the

Attorney General is authorized to detain "an alien seeking admission [who] is not

clearly and beyond a doubt entitled to be admitted, pending proceedings under

section 240 [8 U.S.C. § 1229a]."  8 U.S.C. § 1225(b)(2)(A).  INA § 212(d)(5)(A)

provides for the circumstances under which such aliens may obtain release from

custody:

> The Attorney General may . . . in his discretion parole
> into the United States temporarily under such conditions
> as he may prescribe only on a case-by-case basis for
> urgent humanitarian reasons or significant public benefit
> any alien applying for admission to the United States, but
> such parole of such alien shall not be regarded as an
> admission of the alien . . . .

8 U.S.C. § 1182(d)(5)(A) (emphasis added).  The district director has been

delegated the authority for deciding applications for parole pursuant to section

212(d)(5)(A).  8 C.F.R. § 103.1(g)(2)(ii)(B).  Immigration judges, however, lack

such authority.  8 C.F.R. § 3.19.

Section 236(a) of the INA provides that an alien, whether or not he is

seeking admission, may be held by the defendants pending a determination of

whether that alien is to be removed from the United States.  8 U.S.C. § 1226(a).

The Attorney General may release such aliens on bond or conditional parole.  8

U.S.C. §§ 1226(a)(2)(A) & (B).  An alien seeking such release on bond or parole

135

must satisfy the requirements of INA § 212(d)(5)(A). It was improper for the Court to upset the regulatory scheme and to direct who must provide what type of hearing. Such decisions lie within the purview of the administrative agency and are entitled to substantial deference. <u>Vermont Yankee</u>, 435 U.S. at 544. Accordingly, it was improper for the Court to order that the defendants provide arriving lawful permanent resident aliens with a prompt hearing before an immigration judge.

### B. The Court Improperly Makes An Effort To Afford An Alien In Exclusion Proceedings The Same Procedures Afforded To An Alien In Deportation Proceedings

The court inappropriately attempts to afford an alien in exclusion proceedings the same procedures afforded to an alien in deportation procedures. Through its Order of November 25, 1998, the court attempts to impose the "independent adjudicator" for parole hearings afforded to an alien in deportation proceedings to an alien in exclusion proceedings. R. 104 at 89-90. Moreover, the court attempts to impose a notice requirement regarding the availability of parole in exclusion proceedings. The court may not do either of these actions because the

50

136

"entry" doctrine established in <u>Fleuti v. Rosenberg</u>, 374 U.S. 449 (1963), has been supplanted by new procedures for determining whether a lawful permanent resident may be placed in exclusion proceedings.  Congress made major revisions to INA § 101(a)(13) in enacting IIRIRA.  The term "entry" was specifically deleted and replaced with the "admission" concept.  <u>Richardson v. Reno</u>, 162 F.3d 1338, 1347-48 (11th Cir.1998).  Congress provided that lawful permanent residents shall not be regarded as seeking an admission into the United States unless they come within one or more of six categories in INA § 101(a)(13)(C)(i)-(vi):

> An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws <u>unless</u> the alien —
>
>      \*     \*     \*
>
> (i)    has abandoned or relinquished that status,
> (ii)   has been absent from the United States for a continuous period in excess of 180 days,
> (iii)  has engaged in illegal activity after having departed the United States,
> (iv)   has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this chapter and extradition proceedings,
> (v)    has committed an offense identified in section 1182(a)(2) of this title, unless since such offense the alien has been granted relief under section 1182(h) or 1229b(a) of this title, or

137

> (vi)   is attempting to enter at a time or place other than as
>         designated by immigration officers or has not been
>         admitted to the United States after inspection and
>         authorization by an immigration officer.

8 U.S.C. § 1101(a)(13)(C)(i)-(vi).  The language is explicit and non-discretionary.

Thus, under the "plain meaning" rule, Congress has supplanted the Fleuti doctrine

except as preserved by the new statue.  Richardson, 162 F.3d at 1348.

### C.  The Court Incorrectly Ordered The Defendants To Provide A Parole Hearing Before What The Court Perceives As An "Impartial Adjudicator"

The court's decision that a parole hearing must be held before a person

whom it deems to be an "impartial adjudicator" is in direct conflict with the

express holding of the Supreme Court.  See R. at 89.  In Marcello v. Bonds, 349

U.S. 302 (1955), the Supreme Court addressed a challenge alleging that parole

hearings must occur before an "impartial adjudicator."  The Supreme Court

unequivocally rejected such a challenge:

> Petitioner would have us hold that the presence of this
> relationship [that the special inquiry officer was subject
> to the supervision and control of officials in the
> Immigration Service charged with investigative and
> prosecuting functions] so strips the hearing of fairness
> and impartiality as to make the procedure violative of
> due process.  The contention is without substance when
> considered against the long-standing practice in
> deportation proceedings, judicially approved in
> numerous decisions in the federal courts, and against the
> special considerations applicable to deportation which

52

(38

the Congress may take into account in exercising its
particularly broad discretion in immigration matters.

Marcello, 349 U.S. at 311. Inasmuch as the court in the case at bar has concluded

that a parole hearing must occur before an impartial adjudicator, Marcello controls

the outcome of this issue. Consequently, the court must be reversed.

### D.   Lawful Permanent Residents Are Not Entitled To Notice Of The Availability Of Parole

The court's November 25, 1998 Memorandum and Order requires that LPRs

seeking admission must be given notice of the availability of parole. Id. at 90.

The court is mistaken for several reasons.

First, upon seeking admission, a LPR is wholly subject to the procedures

afforded in exclusion proceedings. Landon, 459 U.S. at 21. Moreover, an alien is

entitled to no more protection than that afforded to citizens claiming liberty and

property rights. The Supreme Court has recently determined that where a citizen

seeks to protect a property right or liberty interest, due process does not require

additional notice of available procedures where those procedures are established

by published, generally available statutes. City of West Covina v. Perkins, --- U.S.

---, 1999 WL 9696 at *4-5 (U.S. January 13, 1999). "A primary purpose of the

notice required by the Due Process Clause is to ensure that the opportunity for a

hearing is meaningful." City of West Covina, 1999 WL 9696 at *4. However,

53

139

where the remedial procedures are available through a published statute, the alien

"can turn to these public sources to learn about the remedial procedures available

to him." Id. at *5.  In the instant case, public sources are readily available

indicating that parole may be sought.  See, e.g., 8 U.S.C. § 1182(d)(5)(A); 8

C.F.R. § 212.5(b) (1998).  Accordingly, the court's Memorandum and Order

improperly imposes notice requirements beyond those required by due process,

and it should be stayed pending appeal.

### E. The Defendants Is Authorized To Confiscate Green Cards Pursuant To Their Authority To Implement And Enforce The INA

There is little doubt that defendants have the authority to confiscate green

cards.  Defendants  derive their authority to lift alien registration cards and provide

alternate documentation to aliens from a number of sources.  First, the Executive

has vast powers over immigration matters.  "It is an accepted maxim of

international law that every sovereign nation has the power . . . to forbid the

entrance of foreigners within its dominions, or to admit them in such cases and

upon such conditions as it may see fit to prescribe."  Nishimura Ekiu v. United

States, 142 U.S. 651, 659 (1892).  It is settled law that the government's power

over immigration matters is plenary and that "it is not within the province of any

Court, unless expressly authorized by law, to review the determination of the

54

140

... of government."   <u>Kleindienst v. Mandel</u>, 408 U.S. 753 (1972);

... <u>United States ex rel. Mezei</u>, 345 U.S. 206 (1953); <u>Bertrand v.</u>

... 204 (2d Cir. 1982).

The ... source of authority defendants have over immigration matters

... from the power delegated to it by Congress, through statutes, such as the

... and Nationality Act (INA). Through the INA, Congress has conferred

... Attorney General, who delegated her authority to the INS, broad authority

... the control of aliens.  Under the INA, the defendants are given authority: to

... aliens, 8 U.S.C. § 1225; parole aliens under such conditions as it may

... the, 8 U.S.C. § 1182; interrogate, arrest and deport aliens in the United

... in violation of law, 8 U.S.C. §§ 1357(a)(1), (a)(2) and 1252, respectively;

... the unlawful employment of aliens, 8 U.S.C. § 1324a; register aliens, 8

... § 1401; require documents for admission, 8 U.S.C. § 1181; restrict and

... certain acts regarding documentation, 8 U.S.C. § 1185; and issue and

... visa and entry permits, 8 U.S.C. §§ 1201, <u>et seq</u>.  These provisions reveal

... Congress' commitment to effective enforcement of the nation's immigration laws.

... <u>v. United States</u>, 758 F.2d 1390, 1392 (10th Cir. 1985).  The government's

... to lift green cards it has provided to aliens and to provide such aliens with

55

alternate documentation can readily be inferred from these statutes. 8 U.S.C. §

1201, et seq.; cf. Lopez, 758 F.2d at 1392 (lifting State drivers' license of alien is

lawful exercise of federal authority); Blackie's House of Beef, Inc. v. Castillo, 659

F.2d 1211, 1219 (D.C. Cir. 1981), cert. denied., 102 S.Ct 1432 (D.C. 1982)

(inferring authority to search commercial establishments for illegal aliens).  Such

action is particularly appropriate here, given that the document being lifted has

been provided to the alien by the government primarily so that the INS can register

and thereafter be able to identify the alien.  United States v. Campos-Serrano, 404

U.S. 293, 299-300 (1971).

Finally, a third source of authority can be derived directly from 8 U.S.C. §

1103.  Congress' plenary power over immigration matters permits Congress "to

make remarkably broad delegations of its authority in the immigration field."  Jean

v. Nelson, 727 F.2d 957, 964 (11th Cir. 1984) (en banc), aff'd 472 U.S. 846

(1985).  The Attorney General has been broadly empowered, pursuant to 8 U.S.C.

§ 1103, to perform such "acts as she deems necessary for carrying out her

authority under the provisions of the [Immigration and Nationality Act]."

Pursuant to 8 C.F.R. § 100.2, the Attorney General in turn has delegated this

power to the Commissioner of the INS, who has authorized, under limited

circumstances, that the registration document of certain aliens be lifted and that

56

142

they be provided with alternate documentation. As a result, defendants have not

taken any actions against plaintiffs that violate plaintiffs' status as LPRs.

**VI.  GARZA-PACHECO'S DISPUTE WAS NOT PROPERLY BEFORE THE DISTRICT COURT IN THIS CLASS ACTION CASE**

On June 12, 1995, the District Court entered an Order directing defendants

to issue work authorization for Garza-Pacheco and to renew it in increments of not

less than six months, until such time as his deportation proceedings were

concluded.  R. 39 at 1112.  The facts of Garza-Pacheco's case is not in any way

similar to those of the named class members or to the class as defined by the

plaintiffs.  As stated, Garza-Pacheco was admitted to the United States as an LPR,

but due to his federal court conviction for 102.6 grams of heroin, he was found

deportable, and deported from the United States based upon a final order of

deportation.  R. 46 at 894-95.  But, most importantly, Garza-Pacheco is an alien,

in light of his having once been deported based upon a final order of deportation,

to whom the defendants have no delegated authority to issue work authorization.

See 8 C.F.R. § 274.12(c)(13)(1994) (Attorney General eliminated authority to

grant work authorization to alien in deportation proceedings.)

57

143

A.    **The District Court Lacked Jurisdiction to Order Preliminary Injunctive Relief to Garza-Pacheco**

Rule 10(a) of the Federal Rules of Civil Procedure provides, inter alia, that "[i]n the complaint, the title of the action shall include the names of all the parties . . . ." Garza-Pacheco was not named as a plaintiff or party, nor is he a member of the class as defined by defendants. As discussed above, the facts of Garza-Pacheco's case and the events which led to the deportation proceedings he was under at the time his green card was confiscated are not in any way similar to those facts presented in the cases of the named plaintiffs, whom plaintiffs hold out as being fair and adequate representatives to protect the interests of the class. The named plaintiffs, unlike Garza-Pacheco, are LPRs who have not undergone deportation proceedings wherein their LPR status was terminated. Namely, unlike the named class members, Garza-Pacheco has had his LPR status terminated and was not an LPR at the time the District Court granted preliminary relief to him through the subject case. Additionally, none of the class members have had final orders of deportations executed against them. Nor have they been deported and subsequently returned to the United States without authorization, as did Garza-Pacheco, while still holding his green card as if he were legally authorized to carry it. See R. 46 at 898. Additionally, Garza-Pacheco's LPR status had been terminated and he, unlike the plaintiffs' identified class as having claims typical of

58


149

the class, was then seeking to have his status restored. Id.

Clearly, Garza-Pacheco cannot reasonably be held out as a member of the class as it is currently defined. Resultantly, to obtain the relief Garza-Pacheco desired, he was required to bring an independent action on his own behalf. The District Court therefore lacked jurisdiction to consider any requests for relief on behalf of Garza-Pacheco. See National Commodity and Barter Ass'n v. Gibbs, 886 F.2d 1240, 1245 (10th Cir. 1989). Its decision to consider and grant the requested relief was improper and should be reversed.

## B.    The District Court Erred In Ordering The Issuance of Work Authorization For Garza-Pacheco

On December 5, 1994, the Attorney General exercised her authority to administer and enforce the INA by eliminating 8 C.F.R. § 274a.12(c)(13) — the regulation which allowed aliens who were in deportation proceedings to apply for work authorization. See R. at 46 at 916-22. This regulation became effective on September 20, 1994. Thereafter, through 8 C.F.R. § 274a.12(a), the Attorney General specifically described twelve classes of aliens who are authorized to receive work authorization. Nowhere in this regulation does the Attorney General make provisions to include those aliens who present the factual predicate demonstrated by Garza-Pacheco. Id.

59

145

Even a cursory reading of 8 C.F.R. § 274a.12(a) reveals that Garza-Pacheco was not among the twelve classes of aliens whom the Attorney General exercised her discretion to provide authorization to work. The INS District Director's denial of Garza-Pacheco's request for work authorization was not only proper, but was required by the Attorney General who exercised her discretion as empowered by Congress in issuing the regulation which mandated the District Director's action. Thus, the District Court's Order to the District Director to issue work authorization, despite the Attorney General's clear directive, must be reversed.

# CONCLUSION

The Court should reverse the District Court's decision based upon the reasons set forth herein, and enter summary judgment for defendants.

Respectfully submitted,

FRANK W. HUNGER
Assistant Attorney General
Civil Division

DAVID V. BERNAL
Assistant Director

REGINA BYRD, Attorney
Office of Immigration Litigation
Department of Justice, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
 (202) 616-4860

Date: October 22, 1999          Attorneys for Appellants

ATTACHMENT (1)

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

3 SEP 15 A 2:40

| | | |
|---|---|---|
| ASCENCIO-GUZMAN et al, | ) | |
| | ) | |
| v. | ) | C.A. No.  B-94-215 |
| | ) | |
| TROMINSKI, et al. | ) | |
| | ) | |

### NOTICE OF SUBMISSION OF PROPOSED ORDER

Come Plaintiffs, by and through the undersigned, and respectfully submits, for consideration by the Court, a Proposed Memorandum and Order in the instant case.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney at Law
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(956) 421-3226

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and attached proposed Memorandum and Order were served, first class postage prepaid, on Regina Byrd, Attorney, OIL, Box 878, Ben Franklin Sta., Washington, D.C. 20044, on September 11, 1998.

149

**ATTACHMENT (2)**

150

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUANA ASCENCIO-GUZMAN, et al )
                             )
v.                           )        No. B-94-215
                             )
E.M. TROMINSKI, et al.       )
_____)

MEMORANDUM AND ORDER

Upon consideration of the Parties' cross motions for summary
judgment and the record as a whole, and good cause appearing
therefore, the Court enters the following Order:

I.   FACTUAL BACKGROUND

There appears to be no genuine issue of material fact with respect
to the following matters:

1.  A Memorandum issued by former Commissioner of INS Gene McNary,
on March 14, 1990, (the "McNary Memo"), sets forth the conditions
under which INS has authorized the confiscation of green cards [1]
issued to permanent residents who are placed under expulsion
proceedings, and the form of the substitute document which must be
provided, Government Exhibit 1, at pp. 1-2.  The practices of INS
agents operating in the Harlingen, Texas district have frequently
been inconsistent with the McNary Memo, in such particulars as the
routine, (instead of case-by-case), confiscation of green cards of
residents placed under proceedings by some branches of INS;
arbitrary placement of extraneous notations not authorized by the
McNary Memo on replacement documentation; the failure in some cases
to issue any replacement documentation; the refusal in others to

_____

[1]  The term "green card" as used herein means a laminated I-551
or I-151, evidencing the status of the holder as a lawful permanent
resident of the United States.

151

place annotations specifying that the holder is authorized to be employed in the United States, and in some instances, particularly where the resident was held in custody for a period of time, the failure and/or refusal to provide any replacement documentation as required by the McNary Memo.   For permanent residents detained at a port of entry, placed under proceedings, and paroled into the United States, (with or without bond), agents in the Harlingen Office of the INS have frequently failed to follow the McNary Memo in such particulars as the refusal to provide any substitute document, or to specify thereon that the resident is authorized to be employed in the United States, and have in some cases, placed notations stating that the holder is *not* authorized to be employed.

2.   When lawful permanent residents seeking readmission as returning residents are detained for major violations of law, such as for attempting to smuggle large quantities of controlled substances, or undocumented immigrants, such persons are usually paroled into the U.S. for criminal prosecution, and are thereafter detained at the INS detention center, where they have access to counsel, and are frequently, (but not always), allowed to post bond. By contrast, lawful permanent residents detained at a land border for minor infractions, such as attempting to smuggle relatives into the U.S., are generally subjected to a different procedure.  In such cases, Defendants confiscate their green cards, and frequently, other documents as well, such as social security cards, and drivers' licenses.  They are then generally returned to Mexico to await a hearing before an Immigration Judge.  They are not afforded a hearing before they are returned to Mexico, and no administrative appeal may be taken from the decision to return them to Mexico.  Notice of hearings sent to Mexican addresses are sent by ordinary mail, and are frequently not received in a timely fashion, if at all.  This often results in further delays, and in some cases, *in absentia* orders of exclusion or removal.

2

3.   In cases where there exists a non-frivolous defense to the charges, or a possibility of administrative relief, the proceedings are frequently protracted.  Where the individual is not detained at government expense, it frequently takes eight to ten months from the date of initial apprehension to the date the Immigration Judge issues his or her order.  If an appeal is taken by either party, proceedings typically last from two to four years.  Complex cases, or where a remand is required, sometimes drag on much longer.

## II.  CONCLUSIONS OF LAW

1. This Court has jurisdiction herein under 28 USC §1331 (federal question), coupled with 5 USC §702 et seq (Administrative Procedure Act); 28 USC §1346(a)(2) (action against an agency and/or officers of the United States), and 28 USC §2201 (Declaratory Judgment Act).

2.  Defendants act arbitrarily and capriciously, inconsistent with Due Process, when they confiscate green cards from lawful permanent residents who are placed under expulsion proceedings, but who are not being held in custody, without making the determination to do so on a case by case basis, as required by the McNary Memo, and when, having confiscated a lawfully issued green card, they fail to provide a replacement document evidencing the person's status as a lawful permanent resident, or place notations on any replacement document which are not authorized by Operation Instruction 264.2, such as notations that the person is under proceedings, is on bond, has been paroled into the U.S., or is not entitled to be employed in the U.S..   They also act arbitrarily and capriciously, inconsistent with Due Process, when they confiscate other documents lawfully issued to the resident which are not *bona fide* evidence of unlawful conduct.  *Etuk v. Slattery*, 936 F.2d 1433 (2nd Cir. 1991).

3.  Defendants act arbitrarily and capriciously, inconsistent with Due Process, when they routinely parole into the U.S., permanent

153

...sidents accused of serious criminal activity, but return to
...xico those in whose cases criminal prosecution is not currently
...ntemplated, with no opportunity to challenge the decision that
...ey not be paroled into the United States, with or without payment
... a bond. They also act arbitrarily and capriciously, inconsistent
...th Due Process, when they fail to provide a custody hearing for
...ful permanent residents who are placed under proceedings at the
...e of arrival at a port of entry. *Molina v. Sewell*, 983 F.2d 676,
... (5th Cir. 1993) ("The fact that an [arriving] alien is subject
   deportation proceedings does not affect his status as a
...manent resident alien."); *Plyler v. Doe*, 102 S.Ct. 2382 (1982)
...en aliens *unlawfully* in the United States are entitled to Equal-
...ection); *Richardson v. Reno*, 994 F.Supp. 1466 (S.D.Fla. 1998)

...RRIRA, Congress did not intend to overrule the *Fleuti* doctrine
...arding arriving permanent residents presenting themselves for
...pection; not reaching Constitutional issues); *Ekekhor v. Aljets*,
... F. Supp. 640, 643 (N.D.Ill. 1997) (IJ properly exercised
...ority in releasing resident alien on bond pending exclusion
...ring); *St. John v. McElroy*, 917 F. Supp. 243, 251 (S.D.N.Y.
... (permanent resident entitled to a parole hearing before an
...rtial adjudicator while awaiting exclusion hearing).


                        III.  ORDER


...ght of the foregoing, IT IS HEREBY ORDERED that:


   In accordance with the intent of the McNary Memorandum,
...dants shall only confiscate the laminated Form I-151 or I-551
... non-arriving lawful permanent resident placed under expulsion
...edings, and not held in custody, when the INS District
...tor, chief patrol agent, or officer in charge determines that
...porary document is needed for a justifiable, particularized
..., based on the individual facts of the case, but shall not

                          4

                              154

confiscate other lawfully issued documents which are not *bona fide* evidence of unlawful conduct,  When such a resident's green card is confiscated, Defendants shall provide temporary evidence of lawful permanent resident status, which shall be prepared in accordance with Operation Instruction 264.2, and shall be issued for at least six months, and shall contain a notation that it is renewable.

2.  When a lawful permanent resident who applies for admission to the U.S. is placed under proceedings, in accordance with 8 USC §1229a, Defendants shall not confiscate any other lawfully issued documents unless they are *bona fide* evidence of unlawful conduct, but may confiscate the resident's green card.  In such cases, Defendants shall provide a substitute document evidencing status as a lawful permanent resident, and entitlement to be employed in the U.S.; and shall afford said person a prompt hearing before an Immigration Judge, in accordance with 8 CFR §236.1, to determine whether he or she should be paroled into the United States during the pendency of said proceedings, and if so, under what conditions.

IT IS FURTHER ORDERED that any other form of relief requested by Plaintiffs which is not addressed herein is either moot, or DENIED;

IT IS FURTHER ORDERED that the Clerk of Court shall send certified copies of the instant Order to all counsel of record.

DONE AT BROWNSVILLE, TEXAS

this _____ day of _____, 1998.


_____
HON. HILDA G. TAGLE
JUDGE PRESIDING

5

155

# CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of October, 1999, two copies of the

Appellants' Opening Brief were served upon plaintiffs' counsel by Federal

Express addressed to:

        Lisa S. Brodyaga, Esquire
        402 E. Harrison, 2nd Floor
        Harlingen, Texas  78550

                REGINA BYRD
                Attorney
                Office of Immigration Litigation
                Civil Division
                U.S. Department of Justice
                P.O. Box 878, Ben Franklin Station
                Washington, D.C.  20044

# CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.2.7(c), I certify that the "Appellants'

Opening Brief" is proportionally spaced face with text being 14-point and

footnotes being 12-point.  This brief contains 13,942 words.


REGINA BYRD
Office of Immigration Litigation
    Civil Division
U.S. Department Of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C.  20044
(202) 616-4860

157

*Payne - P*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN, et al.          )
                                 )
v.                               )          CIVIL ACTION NO
                                 )          B-94-215
TROMINSKI, et al.                )
                                 )
_____)

### DECLARATION

The undersigned Declarant, being an Immigration Officer, authorized by Section 287(b) of the Immigration and Nationality Act, 8 U.S.C. §1357, and 8 C.F.R. §103.1(q), states under penalty of perjury as permitted under 28 U.S.C. §1746, that:

1.   I, Larry Paul Doyle, am the Assistant District Director for Examinations for the Harlingen District of the Immigration and Naturalization Service ("INS");

2.   I am the officer in charge of all ports of entry in the Harlingen District.  It is my duty to be aware of all procedures and policies affecting the ports of entry and personnel employed therein;

*39-74-1172*

3.  There does not exist in the lexicon of documents used for immigration purposes by the INS a formal form or document entitled "temporary Form I-551".  Rather, Form I-94 is designated for use as the "temporary Form I-551" and serves as evidence of lawful permanent resident status;

4.  If a lawful permanent resident alien, who is either in the United States or paroled into the United States, is placed in immigration proceedings, the Harlingen District office seizes the "green card" of the lawful permanent resident and replaces the green card with a I-94.

Executed this *19TH* day of *SEPTEMBER*, 2001.

_____
Larry P. Doyle
Assistant District Director of Examinations
Immigration & Naturalization Service
Harlingen, Texas  78550

LAW OFFICES OF GARCIA, BRODYAGA, & NETTLES
Attorneys - Abogados
402 E. Harrison
2nd Floor - 2° Piso
Harlingen, Texas  78550
(512) 425-9552
February 5, 1981

Hal W. Boldin, District Director
Immigration and Naturalization Service
719 Grimes
Harlingen, Texas 78550

Re:  Porfirio Armando CASTILLO-Beza
     A17 303 622
     Our file:  B-319/81

Dear Mr. Boldin:

This will confirm our conversation of today. Mr. Castillo, a permanent
resident alien, needs some form of document, be it his I-151, an I-94
"temporary" I-151, or other substitute, which will enable him to claim
and enjoy the benefits of his status as lawful permanent resident alien,
specifically the ability to travel outside the United States and seek
readmission as a returning resident.

It is my strong belief that the fact that there are pending deportation
proceedings against Mr. Castillo does not give INS the right to terminate
his status as lawful permanent resident, or to deprive him of the benefits
of such status, until his hearing has been completed, at the earliest,
and probably until a final order of deportation has been rendered.

Mr. Castillo desires to make a brief visit to Mexico this week-end, to
make contact with his fiancee, who is potentially a witness in his case.
Therefore, I urgently request that he be given appropriate documentation
as a lawful permanent resident by February 6, 1981.

Thank you for your consideration.

Very Truly Yours,

Lisa S. Brodyaga
Attorney for Respondent

cc:  client




UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


JUANA ASCENCIO-GUZMAN,                 )
                                       )
et al,                                 )
                                       )
        Plaintiffs,                    )
                                       )
v.                                     )        C.A. No. B-215
                                       )
E.M. TROMINSKI,                        )
                                       )
        District Director,             )
        Immigration and               )
        Naturalization Service,        )
                                       )
HON. JANET RENO,                       )
                                       )
        United States                  )
        Attorney General               )
                                       )
        and                            )
                                       )
IMMIGRATION AND NATURALIZATION         )
        SERVICE,                       )
                                       )
        Defendants.                    )
_____)


EXHIBIT "I"




1311                    161

Departure ...ber

**268752624 04**

Immigration and
Naturalization Service

I-94
Departure Record

Returning resident
applicant at BRO on
11/21/94. Paroled pending
determination of right to
reenter. Employment Auth.

EMPLOYMENT
AUTHORIZED

| 14 Family Name | 16. Birth Date (Day/Mo/Yr) |
|---|---|
| MORINO | |
| 15. First (Given) Name | 0 5  0 9  7 1 |
| Efrain | |
| 17 Country of Citizenship | |
| Mexico | |

See Other Side                    STAPLE HERE

---

Departure Number

**268752606 04**

Immigration and
Naturalization Service

I-94
Departure Record

Returning resident
applicant at BRO on
11/21/94. Paroled pending
determination of right to
reenter. Employment Auth.

EMPLOYMENT
AUTHORIZED

| 14 Family Name | 16. Birth Date (Day/Mo/Yr) |
|---|---|
| ASCENCIO, - Guzman | |
| 15. First (Given) Name | 0 8  0 3  6 2 |
| Juana | |
| 17. Country of Citizenship | |
| Mexico | |

See Other Side                    STAPLE HERE

162