*148*

United States District Court
Southern District of Texas
FILED

NOV 0 5 2001

Michael N. Milby
Clerk of Court

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

ASCENCIO-GUZMAN et al,       )
                            )
v.                          )        C.A. No.  B-94-215
                            )
TROMINSKI, et al.           )
_____ )

**ENUMERATION OF INCORRECT AND MISLEADING STATEMENTS
IN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
TABLE OF CONTENTS**

Since the instant pleading is organized as a page by page rebuttal of INS' incorrect and misleading statements, there are no separate headings which can be set forth in a Table of Contents.

And to the extent it is subject to the 20 page limit, Plaintiffs request leave to exceed that limit, noting that INS' motion covered 46 pages, and Plaintiffs have not opposed their request to exceed, by more than double, the 20 page limit preferred by this Court.

**TABLE OF AUTHORITIES
CASES**

*Brady v. Maryland,*
     373 U.S. 83 (1963) . . . . . . . . . . . . . . . 33

*Calcano-Martinez v. INS,*
     121 S.Ct. 2268 (2201) . . . . . . . . . . . . . 39

*City of West Covina v. Perkins,*
     525 U.S. 234 (1999) . . . . . . . . . . . . . . 41

*Crowe v. Smith,*
     261 F.3d 558 (5th Cir. 2001) . . . . . . . . . 36

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.,*
     137 F.3d 1475 (Fed.Cir. Tex. 1998) . . . . . . . 35

*Hang On, Inc. v. City of Arlington,*
     65 F.3d 1248 (5th Cir. 1995) . . . . . . . . . 28, 29

*Industrial Dev. Bd. Town of Section, Alabama v. Fuqua Ind. Inc.*,
523 F.2d 1226 (5th Cir.1975) . . . . . . . . . . . . . 20

*INS v. St. Cyr*,
121 S.Ct. 2271 (2001) . . . . . . . . . . . . . 18, 37-39

*Koetting v. Thompson*,
995 F.2d 37 (5th Cir.1993) . . . . . . . . . . . . . 39

*Laird v. Integrated Resources*,
897 F.2d 826 (5th Cir.1990) . . . . . 4, 20, 21, 25, 28-30

*Landon v. Plasencia*,
459 U.S. 21 (1982) . . . . . . . . . . . . . . 12, 39

*Mathews v. Eldridge*,
424 U.S. 319 (1976) . . . . . . . . . . . . . . 12

*Molina v. Sewell*,
983 F.2d 676 (5th Cir. 1993) . . . . . . . . . . . . 12

*U.S. v. Becerra*,
155 F.3d 740 (5th Cir. 1998) . . . . . . . . . . 36, 38

*U.S. v. Darensbourg*,
524 F.2d 233 (5th Cir.1975) . . . . . . . . . . . . 35

**STATUTES**

28 U. S. C. §2101(e) . . . . . . . . . . . . . . 37

28 U.S.C. §2241 . . . . . . . . . . . . . . . 37-39

5 U.S.C. §552a(b) . . . . . . . . . . . . . . 8, 9

8 U.S.C. §1182(d)(5)(A) . . . . . 17, 32, 34, 37, 42

8 U.S.C. §1225(b)(2)(C) . . . . . . . 12, 31-33, 41

8 U.S.C. §1226 . . . . . . . . . . . . 17, 32, 34

8 U.S.C. §1226(a) . . . . . . . . . . . 17, 31, 35

8 U.S.C. §1226(a)(2)(B) . . . . . . . . 17, 18, 32, 34, 37

8 U.S.C. §1226(e) . . . . . . . . . . 18, 31, 32, 34, 35, 38, 39

8 U.S.C. §1304(b) . . . . . . . . . . . . . . . . . . . . 8, 9

## REGULATIONS

8 C.F.R. §212.5 . . . . . . . . . . . . . . . . . . . . . 42

8 C.F.R. §236.1(b) . . . . . . . . . . . . . . . . . . . . 33

8 C.F.R. §264.5(g) . . . . . . . . . . . . . 7, 18, 19, 39, 40

8 C.F.R. §287.5(e)(2) . . . . . . . . . . . . . . . . . . . 33

8 C.F.R. §287.5(e)(3) . . . . . . . . . . . . . . . . . . . 33

## OTHER AUTHORITIES

Federal Rules of Civil Procedure,
     23(c)(1) . . . . . . . . . . . . . . . . . . . . . . 16

Federal Rules of Civil Procedure,
     Rule 7(b) . . . . . . . . . . . . . . . . . . . 3, 16

Federal Rules of Civil Procedure,
     Rule 8(a) . . . . . . . . . . . . . . . . . 4, 20, 21

Federal Rules of Civil Procedure,
     Rule 8(e)(1) . . . . . . . . . . . . . . . . . . 3, 16

Federal Rules of Civil Procedure,
     Rule 8(f) . . . . . . . . . . . . . . . . . . . 3, 16

Federal Rules of Civil Procedure,
     Rule 56(e) . . . . . . . . . . . . . . . . . . . . . 15

INS Operation Instruction 264.2 . . . . . . . . . . . . . . 41

Rules of the Supreme Court,
     Rule 11 . . . . . . . . . . . . . . . . . . . . . . 37

United States District Court, Southern District of Texas
     Local Rule 6(b) . . . . . . . . . . . . . . . . . 2, 16

Plaintiffs, through the undersigned, hereby attempt to separate the actual issues in the instant case from the "red herrings." To that end, they address the substantive issues raised by "Defendants' Statement of Outstanding Issues In Response to Plaintiffs' Post-Remand Statement of Outstanding Issues and Defendants' Motion for Summary Judgement Pursuant to Federal Rule of Civil Procedure 56" in their Opposition to said motion, filed simultaneously.

In the instant document, Plaintiffs enumerate and clarify the incorrect and misleading statements found in INS' motion. It is organized page by page, for easy reference, should the Court have questions about any particular statement or claim made by INS.

**Page 2.** INS states that in its scheduling Order this Court "ordered that the parties should file dispositive motions if deemed appropriate." This is misleading. In fact, the Order set a firm date only for filing INS' summary judgment motion, contemplating if it were denied, discovery would be conducted before Plaintiffs filed a similar motion. The Order specified as follows:

> **IT IS FURTHER ORDERED** that should the Court grant the Defendants' motion to dismiss and/or motion for summary judgment, this would obviate the need for further proceedings. Should the Court deny said motion, the Parties shall abide by whatever schedule for discovery as the Court may establish ... . In that context, following the completion of any discovery permitted by the Court, the Parties shall have 45 (forty-five) days to file motions for summary judgment ...

**Page 3.** INS states that "Defendants filed their response [to Plaintiffs' motion for partial summary judgment' on August 28, 1995." This is also misleading. INS *submitted* its response and counter-motion on that date, but the response and motion were never properly filed. After having received one extension of time, until July 26, 1995, (Docket entry No. 50), INS missed two other, self-imposed deadlines, and finally presented the pleading with a motion

1

for leave to file instanter on August 28, 1995. (Docket entry No. 53). However, their motion for leave to file instanter was denied when Judge Vela transferred the case to this Honorable Court, (Docket No. 96), and was not among the motions INS re-urged on October 1, 1998 (Docket No. 98). Therefore, Plaintiffs' summary judgment motion, which was re-urged by virtue of their submissions of September 11, 1998, (see, Supplemental Record 1), and October 19, 1998, (Docket No. 100), was, under Local Rule 6, unopposed.

**Pages 3-4.** INS asserts as follows:

> On or about September 11, 1998, although they had not resubmitted their motion for summary judgment, plaintiffs submitted to this Court two documents, one entitled "Notice of Submission of Proposed Order", Exhibit 1 (Tab 1), and the other entitled "Memorandum and Order." Exhibit 2 (Tab 2). These documents are not reflected in the Court's docket sheets as having been filed.

Again, this is misleading. It implies both that the documents may have been "submitted" without being properly filed, and that the exact date was unknown. During proceedings at the Fifth Circuit, it came to light that these documents had been inadvertently omitted from the record. With the concurrence of INS, the record was therefore supplemented to include *file-stamped* copies thereof. (Supplemental Record 1) As shown by the Fifth Circuit Docket:

> 2/28/00   Unopposed motion filed by Appellee Julio Loa-Herrera, Appellee Ramiro Cantu-Gracia, Appellee Juana Guzman-Ascencio, Appellee Efrain Merino, Appellee Arturo Lozano-Lopez, Appellee Alejandra Gutierrez, Appellee Juan Sanchez-Salinas, Appellee Adelita Cantu-Cabrera de to supplement the record on appeal with file stamped copies of the "Notice of Submission of Proposed Order," and the proposed Memorandum and Order, which were submitted to the Court on 9/11/98, [omitted] from the record herein. [1553976-1] Excess Pages? (Y/N) n [99-40122] (dms)
> 2/28/00   CLERK Order filed granting appellees' unopposed motion to supplement the record with file stamped copies of the "Notice of Submission of Proposed Order," and the proposed Memorandum and Order, which were submitted to

2

the Court on 9/11/98, omitted from the record herein
[1553976-1]. Copies to all counsel. [99-40122] (dms)
2/28/00 Supplemental record on appeal filed. Supplement
#: 1 Vol(s) of Pleadings: 1 [99-40122] (hjg)

This claim is misleading in a third aspect as well. It fails to
address the fact that, (as has been repeated pointed out to them,
including in Plaintiffs' brief to the Fifth Circuit, at p.13,n.24),
the "Notice of submission of Proposed Order" and proposed Order
fulfilled the requirements of a motion, defined as an "application
to the court for an order," under Rule 7(b) F.R.Civ.P.. Therefore,
they constituted a request for the relief requested therein, i.e.,
for summary judgment on those claims.  The Notice was in writing,
signed, and, through the accompanying proposed order, stated
exactly the relief sought. *See*, Rules 8(e)(1), F.R.Civ.P., "... No
technical forms of pleading or motions are required," and 8(f),
"All pleadings shall be so construed as to do substantial justice."

In their pleadings of October 19 and 21, 1998, (Docket Entries Nos.
100 and 102) (reproduced in Plaintiffs' Appendix, Tabs 3 and 4),
Plaintiffs addressed INS' claim that, in its prematurely entered
Order of September 30, 1998, the Court had adopted Plaintiffs'
order, in essence granting summary judgment, even though Plaintiffs
had allegedly never "re-urged" their motion.  In these pleadings,
Plaintiffs pointed out that by "requesting an order adjudicating
its motion for summary judgment, Plaintiffs were re-urging that
motion, within the meaning of the Court's order of May 21, 1998."
(R:107). *See also*, (R:92) (Plaintiffs' Appendix, Tabs 3 and 4).

**Page 5**.  INS asserts as follows:

> [At the July 23, 2001, status conference] Plaintiffs
> argued that most issues "are still alive" after the Fifth
> Circuit's decision; defendants argued that the Fifth
> Circuit's decision narrowed the issues for this Court's
> consideration.  R. 130.  On August 1, 2001, in an effort
> to determine "what issues remain before the Court in the
> case at bar", this Court established a schedule for

3

> determining the remaining issues and for filing of
> dispositive motions. R. 131.

This statement is also misleading for two reasons. It conveys the
impression that the quotation, ("what issues remain before the
Court in the case at bar"), was drawn from the Court's Order. That
phrase came not from the Court's Order, but from the accompanying
pleading filed by the Parties, and is, even there, taken out of
context. Further, as in INS' claim on page 2, discussed *supra*, the
scheduling Order did not "establish a schedule for determining the
remaining issues and for filing of dispositive motions." Rather,
it set a preliminary framework, including a timetable for INS'
initial motion to dismiss and/or for summary judgment. It also
contemplated that if said motion were denied, a discovery schedule
would be established, and only when discovery was completed, would
a schedule for "dispositive motions" by *both* parties be set.

**Pages 5-6.** In purporting to specify all the forms of relief
requested in Plaintiffs' Second Amended Complaint, INS omits
certain aspects of the relief granted by the Court, implying that
said relief was not requested. However, INS fails to mention that
the Complaint included the *operative facts* with respect to all the
issues on which this Court granted relief. *See, Laird v.
Integrated Resources*, 897 F.2d 826,841 (5th Cir.1990) (Rule 8(a)
F.R.Civ.P. permits this Court to grant "any relief that the pleaded
claim supports; requesting an improper remedy is not fatal."). INS
also fails to note Plaintiffs' request, (R:1305) (emphasis added):

> And finally, Plaintiffs seek costs, reasonable attorneys'
> fees, and **such other and further relief as this Court may
> deem appropriate and justified under all of the
> circumstances herein.**

**Page 7.** Under the heading of "Rulings Made By Judge Vela" at the

July, 1996 [1] hearing, INS first asserts that Judge Vela "requested that the parties brief only two issues." This is incorrect. The Court identified three issues for immediate briefing, (two for Plaintiffs, and one for INS), and left one for later determination, depending on the outcome of the issue which INS was to brief.

The Court requested briefs on the issues of: 1) extraneous notations on substitute documentation, (Transcript, Docket entry No. 118, at pp. 13,16-17); 2) INS' authority to return LPRs to Mexico to await their hearings (*id.* at 38-40); and 3) whether LPRs who have been paroled for hearings should have the same right as those under deportation proceedings to continue to come and go from the United States while proceedings are pending, *id.* at 42).

**Page 7.** INS also asserts that Judge Vela made certain oral rulings with respect to the confiscation of "green cards," and the form of any replacement documentation. While Plaintiffs disagree with some of the specifics of INS' assertions, the question of what Judge Vela did or did not hold was pre-empted by the Fifth Circuit's ruling (which neither party contests), that this aspect of the case must be reconsidered in light of 8 C.F.R. §264.5(g).

**Page 7.** INS then claims that Judge Vela stated that 'the only issue' before the court and the 'only thing that remains pending'" was whether the defendants violated the rights of an LPR by putting extraneous notations on the substitute documentation given when green cards were confiscated. This is patently untrue.

The transcript reveals that Judge Vela was concerned by the fact that INS treated similarly situated people differently, in terms of the notations placed on any substitute documentation. But before he reached the issue of whether that such disparate treatment was

---

[1]   The hearing was conducted July 31, 1996, not July 16, 1996.

improper, he wanted to ascertain whether these notations violated Plaintiffs' rights. The phrases "only issue" and "only thing that remains pending" were used in this context. *See*, Transcript of proceedings, (Docket No. 118), at pages 15-18 (emphasis added):

> THE COURT:  Do all cards have the fact that that person is going to have a hearing for deportation, or not?
> INS:  Not all of them do it.  Not all of them have - -
> THE COURT: Why do some do and some not?
> INS:  I believe that some of the officers who have issued replacement documentation have felt that it was warranted in the particular case so that [if] - - that alien was [re-apprehended], Your Honor, for another violation.  The subsequent officer would know.
> THE COURT:  If this is only going to be done in situations where a person is actually facing deportation, ... or hearing for deportation, not deportation itself, because that has to be adjudicated, and nobody else, why couldn't you generally do one thing or another, always do one thing or another?
>     And **before you do that, in other words, before you include that matter**, I would like for the petitioner to favor me with a brief from this standpoint, first. Number 1, does the right of the person who is legally here and has legal status here, who is facing an application to be deported, go beyond a substitute card, go beyond just having that substitute card to work and go to and from the country, as we have already described and generally been agreed to, to the extent that the Government cannot include therein a provision to the effect - - or notice to the effect that this person is subject to a hearing for deportation.
>     You [Plaintiffs] favor me with a brief to that effect. ... And then the Government will have three days to respond to that. ...  Remember [speaking to the INS] this is step two.  Step one has been agreed to, so there won't be any question about it. [2] ... I am going to give

---

[2]  When attempting to draft an agreed Order, it was discovered that the Parties disagreed as to whether Judge Vela had only addressed certain aspects of the I-94's to be given when green cards *were* confiscated, or whether he had also ruled that INS could confiscate green cards "at will," and then discussed the form of the substitute documentation.  However, this aspect of the case is

6

an order to that effect. We won't adjudicate that anymore. That's water under the bridge. It has been agreed to. This is as would regard phase two. ... I will give [Plaintiffs] 15 days and I will give the Government five days to respond. ...

THE COURT [TO INS]: **You understand the only issue** [to be briefed by INS with respect to phase two]?

INS: Yes, I do, Your Honor.

...

THE COURT: Then after you [brief] it from the standpoint of the petitioner as against the respondent, also, I want both of you to address it from the standpoint of employer. In other words, why shouldn't the employer know that's a third party and that's a third party and there may not be any legal effect upon that? **I don't know.**

...

That's phase one. I mean that's concern Number 1, phase one.

**Phase two is the only thing that remains pending.** Let's go to concern - - problem Number 2.

[Plaintiffs]: **There are three and four.** We haven't gotten to them yet but they are minor.

THE COURT: Let's go to the other one. I have a trial I must start pretty soon here.

[Plaintiffs] **Phase two, Your Honor, is the question of the lawful permanent resident who has gone across to what we call a Fleuti-type departure.** May have left kids in school and be back to the job in the afternoon, or whatever. Comes back to the border and is told that we believe you are excludable. At the time the person left and the time the person presented him or herself for return there was nothing pending.

THE COURT: You understand that scenario?

[INS]: Yes, Your Honor.

THE COURT: My question to the Government, in that case why shouldn't they be entitled to some type of due process before they come and summarily are engaged in at the bridge? Because if what she is telling me is true, then you are then and there in effect making a finding to the effect that they are excludable.

When the hearing was continued that afternoon, issues "three and four" were addressed. Transcript, at pp. 40-44. And at the very

pre-empted by the subsequent regulation, 8 C.F.R. §264.5(g).

7

end, the Judge asked whether there was "[a]nything else?" *Id.* at 45. Two issues were left for further development after the Judge had ruled on related questions. First, was the "other documents" problem, which he thought would by resolved by his anticipated ruling that INS had to parole LPRs into the country under all circumstances. Second, the Judge left open the question of whether it was proper for INS to put extraneous notations on the replacement documents of some Plaintiffs, but not others, until he had decided whether such notations were permissible at all.

The transcript taken as a whole reveals that the only matters that Judge Vela considered final were:  1) that he would require INS to put certain clarifications on the substitute documents issued when green cards *were* lifted, Transcript, at pp. 7-17, and 2) that he would not entertain Plaintiffs' complaint that LPRs whose deportation cases were on appeal should be permitted to make cross-border visits, *id.* at p. 44.  Everything else was either to be briefed, or deferred until other matters were resolved.

**Page** 7.  INS (correctly) notes that Judge Vela wondered aloud whether it would violate Plaintiffs' rights for INS to advise potential employers, by means of the extraneous notations on the substitute documents, of Plaintiffs' pending legal problems. Both Judge Vela, and the Fifth Circuit, left this open as a question of law.  As stated by the Fifth Circuit, at page 6 (emphasis added):

> **Absent any legal authority to the contrary,** the district court may not interfere with the Attorney General's statutory discretion to balance an LPR's interest in possessing particular forms of documentation against an employer's interest in knowing a potential employee's present and future immigration status.

Plaintiffs contend that such "legal authority to the contrary" is found both in the Privacy Act, 5 U.S.C. §552a(b), and in 8 U.S.C. §1304(b).  As discussed in Plaintiffs' Post-Remand Statement of

CutePDF - www.fasisa.com

Outstanding Issues, Docket No. 128:

> It cannot be disputed that potential employers may be
> "interested" in knowing the present, and possible future,
> immigration status of an LPR. However, absent written
> permission from the affected LPR, INS is precluded by
> statute from providing such information (other than
> whether the LPR is authorized to be employed, and if so,
> the expiration of that authorization), to potential
> employers, or others not authorized to receive it under
> 8 U.S.C. §1304(b) and 5 U.S.C. §552a(b). There is nothing
> to prevent LPRs from giving such written consent to
> potential employers. But, under the law as it currently
> exists, the choice must be that of the affected LPR.

**Page 8.** One of INS' most indefensible and blatant distortions of
the record is found at page 8 (emphasis added):

> In limiting the issues for consideration, Judge Vela
> denied plaintiffs' request to brief the issue of whether
> the defendants violate the rights of a lawful permanent
> resident alien when they confiscate the "drivers license,
> Social Security card and other documents that bear on
> their right to live and work in the United States." R.
> 118 at 44. *Judge Vela stated that the issue of whether*
> *defendants act in violation of the aliens' rights by*
> *confiscating documents other than the green card would*
> *not have to be reached, if the court determined that the*
> *defendants had not violated the aliens' right[s] by not*
> *paroling the alien into the United States.* Id. at 44-45.

First, it is true that, as discussed above, Judge Vela did limit
the issues to be considered in two instances. However, where they
occurred, these limitations were **explicit**. Judge Vela was clear
that he did not wish to revisit the concessions he had extracted
from INS about certain aspects of the substitute documents to be
given, when actual green cards were confiscated, and that he would
not entertain Plaintiffs' complaint that LPRs whose deportation
cases were on appeal should be allowed to make cross border trips.
**In no other instance did Judge Vela rule on any aspect of the case**.
Indeed, apart from the question of the extraneous notations on the

9

CMPDF - www.fewia.com

I-94s, [3] there is no basis even to *infer* that Judge Vela was *inclined* to deny Plaintiffs' request for any other form of relief, and he clearly **was inclined** to grant relief on the issue of INS summarily returning LPRs to Mexico to await their hearings.

More importantly however, INS has turned upside-down Judge Vela's comments on the issue of INS confiscating drivers' licenses, etc., when LPRs were returned to Mexico to await their hearings.   Judge Vela did **not** say that this issue "would not have to be reached, if the court determined that the defendants had not violated the aliens' right[s] by not paroling the alien into the United States." He said exactly the opposite.   He also made it clear that this issue would remain open, even if he found against Plaintiffs on the parole question. *Id.* at p.45 (emphasis added):

> THE COURT: If I make a decision to the effect that what they are doing is in nonconformance with their own regulation, that moots the question, doesn't it? ... In other words, if they have to parole them or specially parole them or whatever into the country, that is pretty much going to moot that question. ... **I think one thing will take care of the other.**
>
> Anything else?
>
> Now, you owe me briefs within 15 days and counter-briefs within five days. Until I decide the issue, don't ask me permission to submit briefs.  Just submit then, until I decide the issue, if you run across something else you want me to know. ...
> . . .
> Let's do it that way.  **Then we will cross that bridge when we get to it.**

**Page 9**.   INS again asserts that Plaintiffs submitted the proposed

---

[3] As discussed *supra* this issue must be revisited in light of 8 C.F.R. §264.5(g) and Plaintiffs' claim that their privacy rights confer the "legal authority to the contrary" with respect to which the Fifth Circuit left the matter open for Plaintiffs to show.

CVirPDF - www.fastio.com

"Memorandum and Order" to the Court "on or about September 11, 1998," and that they did so "[w]ithout having re-urged their summary judgment motion." For the reasons discussed, *supra,* this is incorrect. First, it implies that the exact date was unknown, notwithstanding that INS agreed to supplement the record before the Fifth Circuit with a file-stamped copy thereof, showing that it was filed **on** September 11, 1998. And, as discussed *supra,* INS doggedly ignores the fact that, pursuant to Rules 7(b), 8(e)(1) and 8(f), F.R.Civ.Proc. the two documents together fulfilled the requirements of a motion seeking the relief set forth in the proposed Order.

**Page 9**. INS also asserts that the proposed Order submitted by Plaintiffs on September 11, 1998 "reflects the plaintiffs' statement of the issues of the case." This is true, with several important qualifications. First, the proposed order excluded that relief Plaintiffs had requested, but which Judge Vela had definitively rejected at the summary judgment hearing. [4] It also sidestepped the issue of whether INS had a "right" to inform potential employers (and others to whom they had to present proof of LPR status) of their legal problems by adopting INS' own remedy, to wit, by ordering INS to comply with the McNary Memorandum.

The proposed order also incorporated changes to the law which had transpired subsequent to the July 31, 1996 hearing. Specifically, IIRIRA, enacted September 30, 1996, provided statutory authority for INS' practice of returning to Mexico to await their hearings, those LPRs who were accused of minor infractions and who were therefore not paroled into the U.S. for prosecution. This rendered untenable Judge Vela's tentative suggestion that **all** LPRs whose admissibility was challenged be paroled into the U.S., (either for prosecution, and therefore detained, or for purposes of conducting

---

[4] To wit, whether LPRs whose deportation cases were on appeal could make cross-border visits. Transcript, at page 44.

a hearing, with or without a bond). [5]  Since such an order would no
longer be legally defensible, this also impacted his conclusion
that such an order would also cure the problem of INS' confiscating
documents such as drivers' licenses when such LPRs were returned to
Mexico, regardless of whether they were needed as evidence. [6]

Therefore, Plaintiffs' proposed order differed in two other aspects
from the tentative conclusions reached by Judge Vela.  First, it
adopted a suggestion made by Judge Vela **before** he appeared to
conclude that such LPRs should *always* be paroled. Transcript at 34:

> Why could not there be a system by which that person
> could be informed of parole pending [a hearing] and that
> the issue of parole be passed upon by some judicial
> officer? [7]

Second, this disposition of the parole issue would not always cure
the problem of INS' confiscation of other documents, as Judge Vela
had anticipated.  Therefore, Plaintiffs included a separate
provision, forbidding INS from confiscating such documents unless
they believed in good faith that they would be needed as evidence.

---

[5]  Judge Vela clearly expressed agreement with this aspect of
Plaintiffs' case at the hearing, see, Transcript, at pp.27-40.

[6]  *See*, Transcript at pp. 44-45.

[7]  This solution is consistent both with Judge Vela's stated
inclinations, and with INS' newly granted statutory discretion to
return arriving aliens to Mexico to await a hearing, under 8 U.S.C.
§1225(b)(2)(C).  It is limited to lawful permanent residents, who,
under *Landon v. Plasencia*, 459 U.S. 21 (1982) and *Molina v. Sewell*,
983 F.2d 676 (5th Cir. 1993), are entitled to Due Process when
requesting admission. It provides **notice** of the possibility of
parole, which INS concededly does not give, (*Id.* at 33), and which
is very difficult for LPRs stranded in Mexico to obtain, (*see*
Plaintiffs' Exhibit "KK").  It also provides for a Due Process
**hearing** as to whether parole should be granted, in accordance with
*Mathews v. Eldridge,* 424 U.S. 319, 334 (1976).

CPDF · www.fxxbx.com

**Page 10.**  INS' asserts that their appeal to the Fifth Circuit set forth "their position with respect to the issues of the case after Judge Vela's order."  However, Judge Vela never issued any "order." The parties submitted competing proposed orders, and Judge Vela never signed either.  Further, the transcript as a whole shows that this Court's Order was consistent with Judge Vela's rulings and inclinations at the hearing, and the minute entry from that hearing shows that the contested matters were taken under advisement.

**Page 11.**  INS asserts that this Court's Order of January 13, 1999 "addressed issues that were not ripe for adjudication as Judge Vela had previously limited the issues for consideration during the July 16, 1996 hearing." [8]  As seen above, and as this Court can confirm by reading the transcript of, and minute entry resulting from, that hearing, this Court's order contained nothing inconsistent with Judge Vela's rulings and positions as expressed at that hearing.

**Page 11**.  INS charges that this Court "erred by depriving them of notice that the facts would be reached and that the case would not be decided upon the law as was ruled by Judge Vela."

This is simply wrong, for two reasons.  First, as discussed above, none of the relief granted by this Court was inconsistent with what had transpired at that hearing. Moreover, Plaintiffs **properly filed and served** a notice and proposed order. [9]  Thus INS was on notice that Plaintiffs were requesting the relief set forth therein.  And although the Court erroneously signed the Order on the twentieth day, it was vacated, and INS was given every opportunity (of which they chose not to avail themselves), to respond on the merits.

---

[8]  Again, the hearing was July 31, 1996, not July 16, 1996.

[9]  INS timely received these documents, on September 15, 1998, as seen by the copies submitted in their Appendix, Tabs 1 and 2.

13

In a post-hearing pleading, (Docket No. 87, filed August 30, 1996), INS asserted that Judge Vela had decided certain issues, but acknowledged that they might be "mistaken as to the Court's holding." (R:296). Therefore, if they opted to "not respond to Plaintiffs' arguments" (R:295), on the grounds that Judge Vela had "already decided" the issues, *id.*, they did so at their own risk.

**Page 11.** INS again asserts that Judge Vela had "decided" that the case would turn only upon two legal questions, to wit:

> whether defendants violate LPRs' rights when noting on Form I-94 "in immigration proceedings" and whether such notations interfere with the alien's ability to obtain employment, R.118 at 17; whether defendants have authority to deny admission to an LPR, i.e., do defendants violate the LPR's rights by not granting parole, R.118 at 38-39, 42.

As seen above, one only need read the transcript, *as a whole*, and the minute entry which followed, to realize that this is a gross misrepresentation of what actually transpired at that hearing.

**Page 12.** INS repeats its assertion that "Judge Vela expressly stated that the issue of the 'other documents claim' would not be considered by the Court." This is simply false. As shown above, since INS only confiscated such documents from people who were denied admission at the border, Judge Vela expected that this problem would be resolved by his anticipated ruling that all such affected LPRs would have to be paroled into the United States. However, he also stated that, in the alternative, he would "cross that bridge when we get to it." Transcript at p. 45.

**Page 12.** INS complains that this Court "found that the defendants 'confiscated other lawfully issued documents which do not constitute bona fide evidence of unlawful conduct,'" and urges that this factual finding "was not supported by the evidence of record."

CVISPDF - www.fenrir.com

The record contains ample (uncontroverted) evidence to support this finding. Notably, at the July 31, 1996 hearing, INS did not deny that such documents are routinely confiscated when an LPR is returned to Mexico to await a hearing. Nor has INS ever presented any evidence to counter Plaintiffs' evidentiary showing on this issue. Such documents were not only confiscated from Plaintiffs Ascencio, Merino, and Lopez, but also from Ester Martinez. In none of their cases could it be reasonably inferred that these documents were needed as evidence. *See*, Plaintiffs' *Verified* Second Amended Complaint, and the evidentiary material submitted therewith. (R:1287-1325). *See also*, Plaintiffs' Exhibit "KK."

**Page 12.** INS then asserts as follows:

> In short, the Court's decision to go beyond Judge Vela's decision and accept the plaintiffs' averments of fact and to reject the defendants' averment resulted in substantial prejudice to the defendants. After narrowing the issues, Judge Vela had requested briefing on only two legal questions. [10]

First, it was not just "averments of fact" from Plaintiffs that this Court accepted, it was an uncontroverted evidentiary showing. It is hornbook law that in defending against summary judgment, one cannot rely on one's "averments," but must produce affidavits or other evidentiary material. Fed.R.Civ.P. 56(e) provides:

> .... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

---

[10]   As discussed above, Judge Vela requested briefs on three issues, not two.

**Page 12.** INS repeats its (incorrect) assertion that, "[a]fter narrowing the issues, Judge Vela had requested briefing on only two legal questions." *See,* discussion, *supra* at page 5.

**Page 12, n.6.** INS also asserts that the modification to the definition of the class "was done without any notice to defendants and there was no motion before the Court asking for such relief."

This is simply false. Plaintiffs' pleading of October 19, 1998, (Docket Entry No. 100), included a full page discussion of the fact that the change in the name of the proceedings, from deportation and exclusion to removal, did not affect the issues in the case, or the certification of the class. (R"116-117). Plaintiffs also observed that F.R.Civ.P. 23(c)(1) "expressly permits the Court to amend its class certification order at any time 'before the decision on the merits.'" (R:117). They also observed that all of INS' objections to the Court's (premature) order were procedural. (R:117-118). Plaintiffs then concluded as follows, (R:118):

> It is therefore urged that, in order to ensure that INS' procedural objections have been met, the Court (1) amend the Order granting class certification, and thereafter (2) vacate the Memorandum and Order of September 30, 1998, and enter a similar one, granting the same relief.

Together with this pleading, Plaintiffs attached, and served, two proposed orders: one modifying the definition of the class, and the other, vacating the September 30, 1998 Order, and then granting essentially the same relief. Under F.R.Civ.P. Rules 7(b), 8(e)(1) and 8(f), this was clearly a motion requesting that the Court amend the definition of the class, in accordance with the proposed order.

**INS NEVER RESPONDED TO THIS MOTION**. Under Local Rule 6(b), it was therefore unopposed. INS has no basis for complaining that it had no notice of the proposed modification, or that there was no motion pending before the Court requesting that the class be modified.

16

**Page 13**.   Without even mentioning the limitation of 8 U.S.C. §1226(a) to persons arrested on a "warrant issued by the Attorney General," INS reiterates its assertion that:

> ... plaintiffs "parole claim" was a challenge to the Attorney General's selected method for implementing parole, including under 8 U.S.C. § 1226, ...  In essence, they argued that the Court lacked jurisdiction to enter or set aside the Attorney General's actions or decisions regarding parole of certain aliens.

While it is true that INS made this claim before the Fifth Circuit, after all the discussion on remand of the warrant requirement, and the fact that the authority to parole LPRs into the United States is found at 8 U.S.C. §1182(d)(5)(A), not §1226(a)(2)(B), [11] INS' continued avoidance of the issue is all but incomprehensible.

**Pages 14 through 18**.  Plaintiffs consider that this Court does not need the assistance of the Parties in reading and understanding the decision of the Fifth Circuit.

**Page 19**.   INS characterizes Plaintiffs' position on remand as one which, "[i]n essence, [argues] that the Fifth Circuit's decision has no bearing on the issues in the case."

This is incorrect.   Plaintiffs' position with respect to the various issues can be summarized as follows:

1.   Plaintiffs do not challenge the Fifth Circuit's ruling dissolving the injunction with respect to Mr. Garza-Pacheco. [12]

---

[11]   *See, e.g.,* the parole documents of Plaintiffs Sanchez and Cabrera, (Copies of which are found in INS' Appendix at pp. 72-73). Both bear a pre-printed stamp, "PAROLED PURSUANT TO SEC. 212(d)(5) OF THE I & N ACT," showing that this was the authority under which they were paroled into the U.S. during their exclusion proceedings.

[12]   The injunction is, in any event, moot, now that this Court has granted his petition for habeas corpus, (*Garza-Pacheco v.*

2. Nor do Plaintiffs challenge the Fifth Circuit's holding that 8 C.F.R. §264.5(g) essentially pre-empted the McNary Memorandum, or the remand for this Court to "determine whether an injunction is appropriate in light of § 264.5(g)."

3. With respect to the parole issues, Plaintiffs make two observations. First, as previously mentioned, the Fifth Circuit's jurisdictional holding under 8 U.S.C. §1226(e) is flawed, when viewed in light of the recent decision in *INS v. St. Cyr,* 121 S.Ct. 2271 (2001). And second, as has been discussed at length, it is based on the erroneous factual premise that LPRs denied admission and returned to Mexico to await their hearings are arrested on a "warrant issued by the Attorney General," a precondition to a grant of "conditional parole" under §1226(a)(2)(B). [13]

4. The Fifth Circuit did not address the merits of the "other documents" issue. Nor did it vacate this Court's Order modifying of

_____

*Trominski,* No. C.A. B-97-145), and INS has withdrawn its appeal therefrom, (Fifth Circuit, No. 98-41334). His case has since been remanded to the Immigration Court, with the following instructions, (*see,* Plaintiffs' Exhibit "NN" herein incorporated by reference, found at Appendix, at Tab 12, page 2):

> [O]n remand the issue of the respondent's attempted collateral attack on his prior deportation should be considered. This issue should be considered in light of the apparently undisputed material facts set forth in the June 10, 1995, decision, of the United States District Court for the Southern District of Texas, in *Ascencio v. Trominski,* which is included in the Record of Proceedings.

[13] Even if this Court were to conclude that *St. Cyr* provided insufficient basis for this aspect of the injunction, there is no reason that the issue cannot be revisited, explicitly excluding any LPRs who are arrested on such warrants. This would not only be consistent with the Fifth Circuit's express holding, but also with its reminder to INS that it has an independent obligation to grant Plaintiffs Due Process. (Opinion, at page 8, n. 15).

the class.  It was INS' appeal, and INS did not brief the **merits** of
these issues on appeal.  They cannot now claim that they have been
eliminated from the case.  To the contrary, the primary purpose of
the remand was for this Court to reconsider its order, in light of
the substantive rulings which the Court *did* make, and any "factual
and legal contentions" that INS might wish to press on remand.

After setting forth the contents of this Court's order, the Fifth
Circuit summarized its conclusions as follows, (Opinion at page 3):

> The government presents a series of procedural and
> substantive objections to the order.  With respect to the
> seizure of green cards and issuance of temporary
> documents, we conclude that the order was too sweeping in
> light of 8 C.F.R. § 264.5(g), which is cited by neither
> party nor the district court.  In addition, we conclude
> that federal courts have no jurisdiction to review parole
> decisions of the Attorney General.  Finally, we decide
> that remand is appropriate to ensure that the government
> has ample opportunity to press its factual and legal
> contentions before the district court.

A remand "to ensure that the government has ample opportunity to
press its factual and legal contentions" would make no sense if
this Court could not consider the issues to which those contentions
related. Indeed, one could read the opinion as holding, in essence,
that INS' purely *procedural* objections would, virtually by
definition, be cured, if INS were given the opportunity to press
its *substantive* (factual and legal) contentions before this Court!

**Page 20**.  INS' claim that the Fifth Circuit's "decision specifies
the issues ripe for consideration on remand" is incorrect.  The
opinion made rulings on some specific matters, as seen from the
above summary.  But it nowhere stated, or even implied, what this
Court should do with respect to the other issues on remand, (such
as the "other document" claim, legal prohibitions on extraneous
notations, etc), so long as INS received "ample opportunity to
press its factual and legal contentions before the district court."

**Pages 21-22.** INS takes issue with Plaintiffs' characterization as "important victories," the fact that the Fifth Circuit did not, *sua sponte*, disapprove of this Court's orders modifying the class, and with respect to the "other documents" issue.

This Court's order, modifying the definition of the class, was not vacated by the Fifth Circuit.   This is an "important victory." Similarly, while the *relief* granted by this Court on the "other documents" issue was part of the Memorandum Order which was vacated, the Fifth Circuit did not disapprove of its substance in any manner.   This is also an "important victory."   Finally, the fact that the Fifth Circuit found that Plaintiffs had adequately alleged injury with respect to *all forms of relief granted by this Court* [14] lays to rest INS' claim that these issues were not before the Court. [15]   This is also an "important victory,"

Indeed, INS all but concedes that these matters remain viable on

---

[14]   After summarizing this Court's order, and its conclusions, the Fifth Circuit noted, (page 3,n.4) (emphasis added):

> Although it seeks reversal of the entirety of the district court's order on standing grounds, the INS presents argument only with respect to an LPR's right to hold a green card or other evidence of immigration status.  **Because the plaintiffs adequately allege injury in the balance of their complaint, we limit our analysis accordingly.**

[15]   Plaintiffs pled all the operative facts in their Second Amended Complaint, and sought a variety of specific forms of relief.   They also made a general request, (R:1305), for "such other and further relief as this Court may deem appropriate and justified under all of the circumstances herein."

Rule 8(a) F.R.Civ.P. permits this Court to grant "any relief that the pleaded claim supports; requesting an improper remedy is not fatal." *Laird v. Integrated Resources, supra*; *See also*, *Industrial Dev. Bd. of the Town of Section, Alabama v. Fuqua Ind. Inc.*, 523 F.2d 1226,1235 (5th Cir.1975).

remand, so long as this Court hears out INS' "factual and legal contentions" with respect thereto.  Notably, INS has not yet made any such (meaningful) contentions, but is still trying to assert that these are not viable issues on (frivolous) procedural reasons. INS nowhere asserts that LPRs in deportation and exclusion proceedings cannot properly represent those in removal proceedings with respect to the issues involved herein.  Nor do they claim the right to confiscate "other documents," absent a good faith belief that they constitute *bona fide* evidence of unlawful conduct.

For this reason, Plaintiffs continue to consider these aspects of the case to be "important victories."  If INS had any (substantive) "factual [or] legal contentions" to raise with respect thereto before this Court, certainly they would have done so by now!

**Page 22**.  INS claims that the "record reflects that the 'other documents' claim was not an issue in the case when this Court issued its decision and, accordingly, is not an issue on remand."

As shown above, this is simply false.  All the operative facts were pled in the Second Amended Complaint, and various forms of relief were requested.  Plaintiffs also made a general request, (R:1305), for "such other and further relief as this Court may deem appropriate and justified under all of the circumstances herein."

Rule 8(a) F.R.Civ.P. permits this Court to grant "any relief that the pleaded claim supports," and, in finding that Plaintiffs had standing with respect to all the forms of relief granted.  By this, the Fifth Circuit held, in essence, that the "pleaded claims" supported all the forms of relief granted, and they are all properly before the Court. *Laird v. Integrated Resources, supra*.

**Page 23**.  In support of their assertion that the "other documents" claim was not properly before the Court, INS (correctly) notes

21

that, "[w]hile the Second Amended Complaint alleges that the INS confiscates non-INS documents, it does not claim a cause of action based on the alleged facts or request any explicit relief." INS also (correctly) notes that, in their Answer to Plaintiffs' Second Amended Complaint, they denied the allegation that they regularly seized such documents, regardless of their evidentiary value.

Paragraph 29 of Plaintiffs' Second Amended Complaint asserted as follows, (R:1295-96) (emphasis added):

> In the Harlingen, Texas, INS District, when Defendants place lawful permanent resident[s] under exclusion proceedings, it was, at the time of filing the instant action, Defendants' practice to confiscate their green cards, and other documents in their possession, such as their drivers' licenses or identification cards, **regardless of whether such documents had any evidentiary value** in either the criminal prosecution or exclusion proceedings, and to refuse to return said documents, regardless of whether the individual was returned to Mexico, or paroled into the United States, and subsequently released, with or without bond, unless and until all expulsion proceedings are terminated, in the alien's favor.

In addition to alleging that such documents had been confiscated from Plaintiffs Ascencio, Merino and Lopez, Plaintiffs attached and incorporated by reference Exhibit L, the pertinent correspondence between the attorney for Ester Martinez, and the Assistant District Director for Examinations of the INS Harlingen Office. [16]  In none

---

[16]  Ester Martinez is an LPR domiciled in Florida. She was detained in the Harlingen District in April, 1994, and placed under exclusion proceedings because the vehicle in which she was riding carried drugs. She was paroled for prosecution, and her green card, Mexican passport, driver's license and other documents were confiscated. Criminal charges were dropped, and she was freed, but no I-94 was provided, and her other documents were not returned. Her Florida attorney requested their return. (R:1318-22). On July 19, 1994, the Assistant District Director for Examinations denied the request, pending "a hearing before an Immigration Judge

of these instances has INS claimed that there were any grounds for believing that the documents might have evidentiary value.

Therefore, even without a specific request for relief, the issue was properly before the Court. The "pleaded claim" supports the grant of such relief. *Laird v. Integrated Resources, supra*. It was briefed in Plaintiffs' summary judgment motion, (R:1099-1100). In its opposition, (assuming, *arguendo*, that said opposition was properly filed), INS asserted only the right to confiscate such documents for use as evidence. (R:789-791)[17] The problem was raised at the hearing on July 31, 1996. Transcript, at pp. 44-45. By virtue of the "Notice" and proposed order filed on September 11, 1996, (Supp. Rec. 1), and Plaintiffs' pleadings of October 19 and 21, 1996, (R:93,111-14,118), INS was informed of the relief sought on this point. And, as previously discussed, INS denied the practice in its Answer to the Second Amended Complaint, (R:1220), but tendered no evidence to counter Plaintiffs' *prima facie* showing. INS never challenged the documents submitted with respect to Ester Martinez. *See also,* Plaintiffs Exhibit "OO" (Appendix, Tab 13), showing that the same happened to class member Isidro Reyna. INS also admitted that such documents were confiscated from Plaintiffs Lopez, Ascencio and Merino, but characterized this as "immaterial facts not in dispute," (R:821). If anything, summary judgment for Plaintiffs on this issue would be appropriate!

---

concerning her admission to the United States *and return of her documents.*" (R:1319) (emphasis added). Plaintiffs' counsel intervened in October, 1994, and she received an I-94, (but not her other documents), just days before INS stipulated to her admission as a returning resident. (R:1321-22).

[17] INS also noted that Plaintiffs had not requested any specific relief on this point, (R:790), characterized the claim as one which encompassed the seizure of all such documents, regardless of their evidentiary value, *id.*, and asserted that Plaintiffs had no "property" interest in such documents, (R:791).

23

**Pages 23-24**.  INS quotes (part of) the discussion at the summary judgment hearing relating to the "other documents" issue, and characterizes Judge Vela's statement that he thought that his anticipated ruling that INS had to either admit or parole all LPRs seeking admission would "pretty much moot that question" as an "order den[ying] the plaintiffs' request to have the Court consider the issue." (INS:23).  INS also characterizes Plaintiffs' statement that Judge Vela "had declined to hear argument *at that time*" on this issue as an admission "that it was their understanding that the issue was not before the Court." *Id*.

Both claims are patently false.  INS omits from its quotation Judge Vela's statements, following his musing that the problem would probably be cured by his contemplated ruling on the parole issue, that: "I think one thing will take care of the other," and "Let's do it that way.  **Then we will cross that bridge when we get to it**."  Transcript at p. 45.  By this, he clearly left the door open for further consideration, should the "one thing [not] take care of the other." *Id*.  That Plaintiffs understood his comments in this manner is seen by their statement, quoted at (INS:23), that Judge Vela "had declined to hear argument *at that time*."

**Page 24**.  INS asserts that "[t]his Court was bound by Judge Vela's decision and was required to follow the ruling ..."

To the extent this is true, it would backfire against INS.  The transcript as a whole demonstrates that Judge Vela initially considered issuing an order requiring that LPRs denied admission "be informed of parole pending [their hearings] and that the issue of parole be passed upon by some judicial officer," *id*. at p. 34.  Later, he indicated that he would order INS to admit or parole all LPRs seeking admission, and that he believed this would also cure

the "other documents" problem, *id*. at 44-45.  Further, Judge Vela instructed the parties that they should continue favoring the Court with briefs, as new matters came to their attention, *id*. at 45. Certainly, the leanings he expressed on these matters were as strong as, if not stronger than, his inclination to allow INS to continue placing extraneous notations on substitute documents, even though he intended to return to the question of whether it was proper to do so on substitute documents of some, but not all, LPRs.

**Page 25.**  INS again asserts that the "other documents" issue was "incorrectly included" in the "proposed orders and memorandums" submitted by Plaintiffs, and that the "issue was not before the Fifth Circuit and is not before this Court on remand."

It is true that this issue was not before the Fifth Circuit. INS did not raise it in their appeal, as they should have done, if they considered that it had been "incorrectly included" in the proposed orders. In addition to the reasons discussed above, the admission that INS failed to raise the issue at the Fifth Circuit reinforces the conclusion that it is very much alive before this Court.

**Page 25.**  INS asserts that, in adjudicating Plaintiffs' pending motion to remand, this Court should "consider defendants' assertion that the 'other documents claim' is not at issue in the case as it has not been properly raised."

Yes, this Court should "consider" this assertion, and reject it. As shown above, the fact that Plaintiffs did not request specific relief with respect to this issue does not mean that the issue was not properly before the Court.  The "pleaded claim" supported the grant of such relief. Therefore, "requesting an improper remedy is not fatal." *Laird v. Integrated Resources, supra*.

25

**Pages 25-26.** INS asserts as follows:

> Plaintiffs' motion seeking leave to amend their complaint
> for a third time to "clarify" the issue is, in effect,
> and admission that the issue was not properly raised
> prior to the Fifth Circuit's decision.

For the reasons explained above, this is not true. Plaintiffs are simply hoping to cut through all the frivolous procedural objections, and force INS to join the issue on its merits.

**Page 26.** INS claims that allowing such an amendment "creates delay that would prejudice the defendants."

To the contrary, seven years later, INS has never joined the issue on the merits. They have never even claimed the *right* to confiscate such "other documents," absent a good faith belief that they would be used as evidence. And the only "prejudice" to INS would be to deprive them of any basis for continuing to urge their frivolous procedural objections to adjudicating the issue.

**Page 26.** INS reiterates its claim that "the Fifth Circuit did not remand the case 'for a reconsideration of the whole controversy.'"

True. The Fifth Circuit remanded for this Court to consider any *substantive* "factual and legal contentions" as INS chooses to urge. It did not remand for the purpose of allowing INS to endlessly delay final resolution with frivolous procedural objections.

**Page 27.** In addition to claiming that the "other documents" claim is not before the Court because relief was not specifically requested in the Second Amended Complaint, INS makes the same argument with respect to the parole issues.

For the same reasons, this argument fails here as well. The Second

26

Amended Complaint alleges the necessary factual basis, including the manner in which INS denied admission as returning residents to Plaintiffs Ascencio, and Merino, and "forced them to return to Mexico, where they were required to remain, causing great personal hardship to themselves and their United States citizen children." (R:1293). A similar allegation was made with respect to Plaintiff Gutierrez. *Id.* Plaintiffs further alleged as follows, (R:1295):

> When a lawful permanent resident applies for admission as a returning resident at a port of entry under the jurisdiction of the Harlingen, Texas, INS Office, and Defendants have reason to believe that said person has committed an act which would subject him or her to exclusion proceedings, if criminal prosecution is <u>not</u> contemplated, it is the practice of Defendants to initiate exclusion proceedings, and force said person to return to Mexico, without advising him or her of the possibility of being paroled into the United States. In such cases, unless the individual obtains counsel, it is very difficult to ascertain, and follow, the procedures necessary to request parole into the United States.

In their Statement of Material Facts as to Which There Exists No Substantial Controversy, (Docket Entry No. 54) [18] INS made the following admission, among the matters which they characterized as "material facts," (R:810-11) (footnotes omitted):

> When a lawful permanent resident applies for admission as a returning resident at a port of entry under the jurisdiction of the Harlingen, Texas, INS Office, and Respondents have reason to believe that said person has committed an act which would subject him or her to exclusion proceedings, if criminal prosecution is also contemplated, it is the practice of Respondents to parole the individual into the United States for prosecution, and place him or her under exclusion proceedings. If the

---

[18] Notably, this is **not** one of the documents which INS purported to "amend," on the basis of the ambiguous wording of Magistrate Garza's order permitting them to respond to Plaintiffs' First and Second Sets of Requests for Admission, (Docket Entry 77).

27

prosecution results in a conviction, it is the practice of Defendants to detain said individual at the Service Processing Center at Los Fresnos, Texas, pending exclusion proceedings. Upon request of counsel, and in some cases upon payment of a bond, such persons are frequently paroled into the United States. If criminal prosecution is <u>not</u> contemplated, it is the practice of Defendants to initiate exclusion proceedings, and, in most instances, return said person to Mexico, without advising him or her of the possibility of being paroled into the United States.

Here, Plaintiffs not only pled the operative facts, but INS admitted them, and acknowledged that they were "material" to the issues raised herein. Thus, the fact that Plaintiffs did not request specific relief with respect to this issue does not mean that it was not properly before the Court. The "pleaded claim" supported the grant of such relief, and "requesting an improper remedy is not fatal." *Laird v. Integrated Resources, supra.*

That *both* the "other documents" and "parole" issues were properly before the Court can also be seen from the Fifth Circuit's opinion, which noted, (at page 3, n.4), that "the plaintiffs adequately allege injury in the balance of their complaint."

**Page 27.** Nor does the citation to *Hang On, Inc. v. City of Arlington,* 65 F.3d 1248,1255 (5th Cir. 1995) advance INS' argument. As the Court noted therein, *id.* at 1255-56:

> The district court did not address the merits of this argument because Hang On failed to include it in its complaint and raised this claim for the first time in its response to Arlington's motion for summary judgment. Although Hang On renews this allegation on appeal, we agree with the district court that, because Hang On did not raise the state constitutional claim in its complaint nor provide any authority for its allegation, we should not address its merits.

28

In the case at bar, the Fifth Circuit has already *held* that Plaintiffs "adequately allege[d] injury in ... their complaint" with respect to **all** of the forms of relief granted by this Court.

**Pages 27-28**.  INS asserts that it is therefore not "necessary" for this Court to address the issue on remand, and repeats its claim that this "is highlighted" by Plaintiffs' motion to amend, because it is allegedly "not properly before the Court on remand."

Again, this is simply false.  In contrast to *Hang On, supra,* the Fifth Circuit has already held that, with respect to all issues, prejudice was adequately alleged.  Even if Plaintiffs requested the "wrong" form of relief, the "pleaded claim" supported the grant of such relief.  Therefore, "requesting an improper remedy is not fatal." *Laird v. Integrated Resources, supra.*

**Page 28**.  INS asserts that, after having inquired of INS whether people were informed that they can ask for parole, the Court "did not pursue the issue .. and instead stated that it wished briefing" on a broader issue, to wit, INS' right to right to refuse to admit them altogether.  From this, INS concludes that Judge Vela:

> ...made no indication that he wanted to consider the issue, nor did plaintiffs request leave to again amend their complaint for consideration of the issue.

This misrepresents both Judge Vela's comments and the state of the law.  The *issue* was before the Court.  It was pled, and joined in the motions for summary judgment.  It was raised at the summary judgment hearing, where Judge Vela asked, Transcript at 34:

> Why could not there be a system by which that person could be informed of parole pending [a hearing] and that the issue of parole be passed upon by some judicial officer?

29

It was the question of the appropriate *remedy* that remained open. Judge Vela contemplated granting a broader remedy than he had suggested at page 34, to wit, that of requiring INS to either admit or parole all LPRs seeking admission. Plaintiffs are not required to amend their Complaint each time a new *remedy* is considered. *Laird v. Integrated Resources, supra,* although they sincerely wish the Court would do so in the instant case, simply to cut through the chaff and get to the heart of the matter without further delay through endless, frivolous, procedural objections by INS.

**Page 28.** INS continues to assert that:

> Plaintiffs' parole claim is not an issue that has been properly raised to this Court and, therefore, it is not <u>necessary</u> for the Court to consider the issue on remand.

Again, this is based on the fact that Plaintiffs' Second Amended Complain did not request the specific remedy ultimately granted. The underlying cause of action was, however, well pled, and well joined in the summary judgment proceedings.

**Page 29, n.14.** INS acknowledges that they did not raise the "propriety" of Plaintiffs having included the issue in the proposed orders submitted to the Court, and assert that:

> As the record indicates that the issue was not properly pleaded to or considered by this Court, it is clear that the Court need not consider it on remand.

INS continues to confuse the question of whether the issue was properly pled, (which it was), with that of whether the relief eventually granted was specifically requested in the complaint, (which it was not). But INS' distortion of Judge Vela's comments, in an attempt to show that the issue was not (properly) "considered by this Court" is less easily explained away.

30

**Page 29.** INS finally gets to the heart of the parole issue, but in a manner which borders on the unethical. They note the conclusion of the Fifth Circuit that 8 U.S.C. §1226(e) "bars this Court's jurisdiction over the Attorney General's discretionary decision regarding parole." Then, in footnote 15, they continue as follows:

> Plaintiffs charge that the Fifth Circuit was mislead [sic] by the defendants about the factual and legal basis of the claim. See R. 143 6-7. The record reflects that there has been no factual discovery with respect to the claim and plaintiffs' Second Amended Complaint did not raise the claim as an issue. It is therefore meritless for the plaintiffs to assert that the defendants somehow misled the Fifth Circuit about an issue that was not even raised in their complaint.

As has been discussed at great length, *supra,* Plaintiffs did properly plead the issue in their Complaint, and, as the Fifth Circuit held, adequately alleged injury with respect thereto. It was the specific *remedy* which was not requested in the Complaint, but since Plaintiffs did request *some* remedy, this was not "fatal."

INS ducks the question of whether LPRs denied admission and sent back to Mexico to await their hearings are arrested on a "warrant issued by the Attorney General" by changing the subject to whether discovery was ever conducted. INS knows full well that warrants are not utilized under such circumstances, and that their legal argument was based on a false factual premise. After this fact has been brought to their attention, their continued pursuit of this theory borders on an attempt to perpetuate a fraud upon the Court.

**Page 29.** INS notes that the Fifth Circuit had "considered plaintiffs' argument that the 'parole claim' is not governed by 8 U.S.C. § 1226(a), but by 8 U.S.C. § 1225(b)(2)(C)."

It is true that the Fifth Circuit made this comment. However, in

31

so doing, it misconstrued Plaintiffs' claim.  Plaintiffs did not and do not urge that the "parole claim" is governed by 8 U.S.C. §1225(b)(2)(C).  Rather, that is the provision which gives INS the authority to return LPRs to Mexico to await their hearings, *without* arresting them on a "warrant issued by the Attorney General."  INS' authority to parole LPRs into the United States, after it invokes its power under §1225(b)(2)(C) to return them to Mexico to await their hearings, **in lieu of arresting them on a warrant,** is found exclusively at 8 U.S.C. §1182(d)(5)(A); not in §1225(b)(2)(C), or the power to grant "conditional parole" found at §1226(a)(2)(B).

**Pages 29-30.**   INS claims that:

> Plaintiffs also raised the same argument in their petitions for panel and en banc rehearing.  The Fifth Circuit rejected plaintiffs' argument and concluded that 8 U.S.C. 1226 controlled the case as this Court's injunctive order required the defendants to conduct a parole hearing.  Id.  It determined that in light of its finding, this Court lacks jurisdiction to review plaintiffs' "parole claim."

This is very misleading.   If INS is referring to the Fifth Circuit's misapprehension of Plaintiffs' position, i.e., that the parole issue was governed by 8 U.S.C. §1225(b)(2)(C), Plaintiffs did not raise "the same argument" in their petitions for panel and en banc rehearing.  Rather, they urged that the jurisdictional bar of §1226(e) applied only to aliens arrested on a "warrant issued by the Attorney General," a prerequisite to granting "conditional parole" under §1226(a)(2)(B), and that since this did not include LPRs who were returned to Mexico under §1225(b)(2)(C), such persons could only be paroled under 8 U.S.C. §1182(d)(5)(A).

Unfortunately, since INS first raised the question of the alleged jurisdictional bar of §1226(e) in its motion for a stay of this Court's judgment pending appeal, the requisite factual basis to demonstrate that INS' argument rested on a false factual premise

32

was not in the record.  Plaintiffs are willing to give INS' counsel the benefit of the doubt, to the extent that, because they are based in Washington, D.C., they may be unfamiliar with the day-to-day practices on the border, and may initially have made this (implicit) misrepresentation in good faith.

The error has now been brought to their attention, and they have had ample time to verify it.  By now, they must be aware that the factual premise was false.  To continue urging a legal position before this Court, **knowing that it is based on a false factual premise**, comes very close to, if it does not actually cross, the ethical boundary of the disciplinary rules mandating "candor toward the tribunal." [19]  Further, Department of Justice Attorneys have an obligation above and beyond that of ordinary litigants. *See, Brady v. Maryland,* 373 U.S. 83,88 (1963) (footnote omitted):

> An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: "The United States wins its point whenever justice is done its citizens in the courts."

INS must be made to answer two basic questions.  1) Are warrants issued and served when LPRs seeking admission are placed in proceedings and returned to Mexico, pursuant to the authority of §1225(b)(2)(C)? [20]  and 2) Are arriving LPRs to whom admission is initially denied, and who are placed in proceedings, paroled under

---

[19]   *See, e.g.,* Rule 3.03(a)(1), Texas Disciplinary Rules of Professional Conduct, which provides that:

(a)  A lawyer shall not knowingly:
(1) make a false statement of material fact or law to a tribunal ...

[20]   The issuance and service of warrants, (Form I-200), is governed by 8 C.F.R. §236.1(b).  They may be issued only by a very small group of officials, as designated by 8 C.F.R. §287.5(e)(2), and served only by officers listed in §287.5(e)(3).  If they were utilized, counsel would have found copies in Plaintiffs' INS files.

the authority of §1182(d)(5)(A), [21] or §1226(a)(2)(B)?   With truthful answers to these two questions, INS' argument under §1226(e) will crumble like the house of cards it is.

**Page 30.**   INS asserts that:

> Although plaintiffs raised their argument concerning 8 U.S.C. § 1226 at least three times to the court of appeals, they allege that the Fifth Circuit did not exercise independent judgment and, as a result, erred in its decision.   R.133 at 5.

Plaintiffs did not characterize the Fifth Circuit as failing to "exercise independent judgment." There is a world of difference between asserting that the Court was misled as to a factual matter not in the record, and an allegation that it did not "exercise independent judgment."   Nor was the *same* argument raised three times before the Court of Appeals.

Unfortunately, because INS' brief to the Fifth Circuit was replete with the same misrepresentations that fill their current motion, Plaintiffs allowed themselves to be drawn into an attempt to fully debunk all their incorrect and misleading statements, and some of the substantive issues received short shrift.   In particular, Plaintiffs attempted to dispose of INS' argument under 8 U.S.C. §1226(e) in one paragraph.   Lacking the necessary factual record, Plaintiffs did not adequately address the issue in their initial brief to the Fifth Circuit. [22]   As a result, the Court misunderstood

---

[21]   Actually, this question is answered by the parole documents of Plaintiffs Sanchez and Cabrera, (Copies of which are found in INS' Appendix at pp. 72-73).   Both I-94s bear a pre-printed stamp, "PAROLED PURSUANT TO SEC. 212(d)(5) OF THE I & N ACT."

[22]   It is precisely in order to avoid falling into the same trap that Plaintiffs decided to separate the *actual issues in the case,* which are addressed in their opposition to INS' motion for summary judgment, from their attempt to shine some light on the

34

the nature of Plaintiffs' argument, and did not realize that INS' position was based on a false factual premise.

In their petitions for rehearing, (but without the requisite factual basis), Plaintiffs *did* argue that the jurisdictional bar of §1226(e) applied only to "conditional parole" granted to aliens who had been arrested on a "warrant issued by the Attorney General," as required by §1226(a)  Said petitions were denied, without opinion. It is precisely because of the lack of any opinion denying these petitions that there is no merit to INS' claim that the denial necessarily rejected this particular claim.  To the contrary, it could just as well be read to mean that the Court considered that, since it involved a factual foundation not currently in the record, it could best be sorted out on remand. *See generally, Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475,1481-82 (Fed.Cir. Tex. 1998).  This inference is doubly appropriate herein because Judge Dennis, who dissented from this aspect of the panel decision, did not dissent from the denial of rehearing, as commonly occurs where such a denial finally disposes of a case.  *See, e.g., U.S. v. Darensbourg*, 524 F.2d 233 (5th Cir.1975) ("GODBOLD, Circuit Judge (dissenting): For the reasons set out in my dissenting opinion, I dissent from the denial of petition for rehearing.").

**Page 30.**  INS continues as follows:

> Without addressing whether the Fifth Circuit is able to exercise its own judgment, [23] this Court is bound by the Fifth Circuit's decision as it represents the law of the case. ... The "law of the case" rule is based on the salutary and sound public policy that litigation should

---

false and misleading statements INS makes therein, which is the purpose of the instant document.

[23]  Plaintiffs have already addressed this particular "red herring," and will not dignify it with further commentary.

come to an end.  It is predicated on the premise that
there would be no end to a suit if every obstinate
litigant [24] could, by repeated appeals, compel a court to
listen to criticisms on higher court opinions or
speculate of chances from changes in its membership. [25]

In support of this assertion, INS cites *Crowe v. Smith*, 261 F.3d

558 (5th Cir. 2001).  Said case, in turn, relies, *id.* at 562, on

*U.S. v. Becerra,* 155 F.3d 740 (5th Cir. 1998), wherein the Court

explained, at pp. 752-53 (internal citations omitted), that:

> The law of the case doctrine, however, is not inviolate.
> We have explained that "a prior decision of this court
> will be followed without re-examination ... unless (i)
> the evidence on a subsequent trial was substantially
> different, (ii) controlling authority has since made a
> contrary decision of the law applicable to such issues,
> or (iii) the decision was clearly erroneous and would
> work a manifest injustice." ...
>
> A corollary of the law of case doctrine, known as the
> mandate rule, provides that a lower court on remand must
> "implement both the letter and the spirit of the
> [appellate court's] mandate," and may not disregard the
> "explicit directives" of that court. ...
>
> Consequently, unless one of the exceptions to the law of
> the case doctrine applies, the district court was bound
> to follow our mandate and to resentence the defendants
> based on the testimony at trial.

As with virtually every other point that Plaintiffs have made, INS

chose to ignore, rather than address, the two factors which make

"law of the case" inapplicable to the Fifth Circuit's holding that

8 U.S.C. §1226(e) bars this Court's jurisdiction over Plaintiffs'

---

[24] Insofar as their "obstinacy" derives from an unwillingness
to allow INS to "pull the wool" over this Court's eyes, Plaintiffs
are pleased to be characterized as "obstinate" litigants.

[25] Plaintiffs have no idea to what INS is referring with this
comment, but whatever it is, it has nothing to do with this case.

"parole" claim.  First, as previously explained, to the extent that
this Court relied on its habeas jurisdiction under 28 U.S.C. §2241,
the Fifth Circuit's jurisdictional holding is undermined by the
intervening decision of the Supreme Court in *INS v. St. Cyr, supra*.
And second, as has also been previously explained, "law of the
case" would not apply to an Order of this Court limited to LPRs who
were not "arrested on a warrant issued by the Attorney General,"
and were paroled under the authority of 8 U.S.C. §1182(d)(5)(A),
rather than the "conditional parole" powers of §1226(a)(2)(B).

**Page 31.**  INS asserts that if Plaintiffs wished to challenge the
decision, they should have sought *certiorari* to the Supreme Court.

The Fifth Circuit remanded the case, rather than entering a final
"judgment."  Under Rule 11, of the Rules of the Supreme Court,

> A petition for a writ of certiorari to review a case
> pending in a United States court of appeals, before
> judgment is entered in that court, will be granted only
> upon a showing that the case is of such imperative public
> importance as to justify deviation from normal appellate
> practice and to require immediate determination in this
> Court. See 28 U. S. C. §2101 (e).

Where this Court was fully competent to address the question on
remand, petitioning for *certiorari* would not only have been futile,
it would have been silly.

**Page 31.**  INS again asserts that Plaintiffs should "not be allowed
to amend their complaint to again raise their 'parole' claim on
remand," because, according to INS, this "claim has been rejected
and the Fifth Circuit remanded the case on specific and narrow
grounds, not for reconsideration of the whole controversy."

Again, the parole claim was "rejected" only to the extent that the
Fifth Circuit was misled as to the underlying facts.  And, as has

37

been discussed above, the remand was not nearly so "specific and narrow" as INS wishes to believe.

**PAGES 31-32.**  INS again invokes the "law of the case" doctrine in connection with the fact that the Fifth Circuit had considered this Court's reliance on 28 U.S.C. §2241 "as a ground for jurisdiction over the 'parole claim,'" and correctly notes that, notwithstanding this fact, the Court concluded that 8 U.S.C. §1226(e) barred jurisdiction over this claim.

Subsequent to the Fifth Circuit's decision herein, the Supreme Court issued *INS v. St. Cyr, supra,* rejecting Fifth Circuit case law finding that IIRIRA had restricted habeas corpus jurisdiction. Therefore, this aspect of the Fifth Circuit's opinion falls under the second exception to the "law of the case" doctrine, to wit, that "controlling authority has since made a contrary decision of the law applicable to such issues." *U.S. v. Becerra, supra.*

**Pages 32-33.**  INS also asserts that habeas was inappropriate because none of the named Plaintiffs was "in custody" at the time the instant action was filed.

This is incorrect.  Indeed, INS even admits that when the Second Amended Complaint was filed, one of the named Plaintiffs (Plaintiff Gutierrez) was still stuck in Mexico.  She had been placed under exclusion proceedings, but not paroled into the U.S.. [26]  She was unable to rejoin her family, return to her job, or otherwise continue her life as the lawful permanent resident that she was at that time, and continues to be at present.  Not only was she restrained from entering the U.S., but the denial of such

_____

[26]  It is worth recalling in this context that the Fifth Circuit specifically found that the Plaintiffs had adequately alleged injury with respect to all aspects of the case.

38

fundamental liberty interests constitutes "custody" for purposes of 28 U.S.C. §2241. *See, Landon v. Plasencia, supra,* 459 U.S. at 34:

> Plasencia's interest here is, without question, a weighty one.  She stands to lose the right "to stay and live and work in this land of freedom." ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual.

*See also, Koetting v. Thompson,* 995 F.2d 37 (5th Cir.1993) (although a "detainer" issued in connection with a parole violation does not constitute custody for habeas purposes where no liberty interest is impinged, custody does exist where such an interest is implicated because the detainer interferes with the petitioner's ability to defend against the parole revocation proceedings).

**Page 33.**    INS acknowledges *INS v. St. Cyr, supra,* and *Calcano-Martinez v. INS,* 121 S.Ct. 2268 (2201), as follows:

> Plaintiffs also now argue that under the recent Supreme Court's decisions, the Court is vested with habeas jurisdiction over their claim. ... However, the Supreme Court decisions do not change the requirement that an applicant for the writ demonstrate "custody." ... Thus, even if the Supreme Court cases address the issues the this case, the plaintiffs have not demonstrated the requisite "custody" for habeas corpus jurisdiction under 28 U.S.C. §2241.

By this, INS all but admits that its only defense to the argument that *St. Cyr* supercedes the Fifth Circuit's holding with respect to the jurisdictional bar of 8 U.S.C. §1226(e) is the claim that none of the named Plaintiffs were in "custody" when the action was filed.  As shown above, this is incorrect.

**Pages 33-42.**  With respect to the "green card" claim, INS asserts, (INS:42), that "plaintiffs cannot prevail because the INS is in compliance with 8 C.F.R. § 264.5(g)."  In support thereof, INS

39

presents a Declaration from Larry Doyle, Assistant District Director for Examinations for the Harlingen INS District. (INS' Exhibit 6). In his Declaration, Mr. Doyle states, in relevant part:

> 3. There does not exist in the lexicon of documents used for immigration purposes by the INS a formal form or document entitled "temporary Form I-551". Rather, Form I-94 is designated for use as the "temporary Form I-551" and serves as evidence of lawful permanent resident status;
> 4. If a lawful permanent resident alien, who is either in the United States or paroled into the United States, is placed in immigration proceedings, the Harlingen District Office seizes the "green card" of the lawful permanent resident and replaces the green card with a I-94.

Unfortunately, the above declaration does not assert that the "green cards" of lawful permanent residents are routinely replaced with I-94s which state that the individual is a lawful permanent resident. And even more unfortunately, such I-94s do not always demonstrate the individual's status as a lawful permanent resident. In her individual capacity, the undersigned has only had the opportunity to represent one LPR in recent months who was paroled into the United States and given an I-94 in lieu of his green card. Said I-94 made no mention of the fact that he is a lawful permanent resident. *See*, Plaintiffs' Exhibits "LL" and "MM" (Appendix, Tabs 10 and 11). Discovery will therefore be required to determine whether the problem continues to be widespread. [27]

**Page 42**. INS also asserts that, because 8 C.F.R. § 264.5(g) "does not prohibit the defendants from attaching additional notations indicating that the LPR has been placed in immigration proceedings" they are free to do so.

---

[27] The absence of meaningful discovery to date is not for lack of effort on Plaintiffs' part. Rather, INS has done everything in its power to avoid discovery, and, as they now admit, they have largely been successful. (INS:29) ("The record reflects that there has been no factual discovery with respect to the claim...").

40

Under the explicit terms of the decision of the Fifth Circuit, however, this is only true "[a]bsent any legal authority to the contrary." Because the problem was initially resolved by adopting the McNary Memo, it not addressed below, and the Fifth Circuit did not determine whether such legal authority existed. Therefore, it remains an open legal question, which this Court must address.

**Page 43.**  INS asserts that the "I-94 is not only in the form of a 'temporary Form I-551', it is in fact the 'temporary Form I-551'".

Not every I-94 is, in fact, a "temporary Form I-551." Form I-94 has multiple uses. The "devil is in the details" of how it is prepared.  There is an Operation Instruction, ("OI"), which mandates how an I-94 must be prepared in order to constitute a "temporary Form I-551."  OI 264.2 governs issuance of temporary proof of LPR status.  It mandates use of the phrase "Temporary Evidence of Lawful Admission for permanent residence," (R:720), and specifies that the *admissions* portion of Form I-94 be utilized, (R:720-721).  It further states, *id.*, that:

> A photo of the applicant must be attached to the block
> next to the admission block, thereby obliterating the
> admission number.  The Service seal shall then be placed
> half over the admission block and half over the photo.

The I-94 recently given to class member Rosales, (Appendix, Tab  ), shows that INS does not always comply with OI 264.2.  Just how widespread the problem is can only be determined after discovery.

**Page 44.**  INS asserts, that the parole claims of LPRs who are sent back to Mexico under 8 U.S.C. §1225(b)(2)(C) have "no merit," even if this Court does have jurisdiction to consider the issue.  With respect to the "notice" aspect of the claim, INS relies on *City of West Covina v. Perkins*, 525 U.S. 234, 240-41 (1999), holding that individualized notice of possible remedies is not required where

information about the remedial procedures is "generally available" through published statutes and case law, and the individual "can turn to these public sources" to learn about them.

As applied to the parole issues, this type of information is not "generally available" even to LPRs **within the United States.** INS has identified no "generally available ... public sources" from which an LPR who does not speak, let alone read or write English, can obtain a meaningful explanation of where and how a request for parole may be made under 8 U.S.C. §1182(d)(5)(A). In order to make such a request, one would need to know, at a minimum, 1) the fact that parole exists, 2) address of the INS District Office, and 3) the criteria considered in evaluating such a request.

Indeed, Plaintiffs' counsel is unaware of any such sources, let alone any which are "generally available," or published in Spanish. Even assuming, *arguendo*, that an LPR could locate (and understand), 8 C.F.R. §212.5, which is the implementing regulation for parole under 8 U.S.C. §1182(d)(5)(A), it would be of little help. It does not set forth the factors which are, as a practical matter, taken into consideration in determining whether LPRs who have been returned to Mexico to await a hearing will be paroled into the United States.[28]   And it becomes an entirely different matter

_____

[28]   There is no set "list" of factors.  As ADDE Larry Doyle said in his first Declaration, (R:725):

> Each request for parole is reviewed by myself on a case by case basis, in which I carefully consider the factors presented in each request for parole.  In determining whether or not an alien shall be paroled into the United States, I consider the likelihood that the alien will abscond or pose a security risk.

Even as an attorney who has been certified as a specialist in immigration and nationality law for twenty years, the undersigned knows of no source, other than personal experience, from which to obtain this information. To her knowledge, there is not even any

42

when an LPR is suddenly stranded abroad. If such "public sources" are scarce or non-existent within the United States, they are certainly not "readily available" in Mexico.

**Page 45.** INS asserts that in "the instant case, public sources are readily available indicating that parole may be sought."

INS cites no authority for this claim. Even assuming, *arguendo*, that this were true for LPRs within the U.S., it is certainly not the case that public sources regarding *the practical aspects of U.S. immigration law* are readily available in Mexico. And although it may be true, as asserted in the first Declaration submitted by ADDE Larry Doyle, (R:725) (emphasis added), that the "officers in secondary inspection and at the information desks in the Ports of Entry **can** answer questions about the parole procedure," it is not always true that they **do** answer such questions in a helpful manner.

At her first hearing, Plaintiff Ascencio asked about getting "a permit" to go to Houston to see her infant son. (R:971). The

---

"case law" which covers the issue. From personal experience, the undersigned knows to look for, and present, such factors such as the presence in the United States of minor, U.S. citizen or LPR dependents; the fact that such dependents are dependent on the applicant for support; whether the applicant has any urgent medical needs; significant property, business, or other family ties to the United States; whether it appears that there are bona fide legal arguments that the applicant is not subject to removal, and whether, if removability is established, any relief from removal would be available to the applicant. *See,* Plaintiffs' Exhibit LL, wherein the undersigned recently made a successful request for parole for a class member.

The suggestion that an unrepresented class member would be able to learn, from "generally available" sources, that this is what is required to obtain parole, would be laughable, if the absence of such resources did not have such tragic consequences.

43

following discussion then ensued (R:971-72): [29]

> IMMIGRATION JUDGE:  I would think that the INS would be receptive to granting you parole into the United States, but I cannot speak for them, in view of the..your status as a lawful permanent resident and in view of the young age of your child. But you'll have to ask the District...
> MS. ASCENCIO:  Because my daugher is leaving on Monday to go to classes, she needs to go into school.
> IJ:  In Houston?
> MS. ASCENCIO:  In Houston.
> IJ:  Well, that's a double reason.  You'll have to talk to the District Director.
> MS. ASCENCIO:  Because she can't get adjusted in Monterrey;  she keeps on crying.
> IJ:  Okay.  Well, that's understandable.  How old is your daughter?
> MS. ASCENCIO:  Nine years old.
> IJ:  Nine years old, and she's in the third..second, third grade?
> MS. ASCENCIO:  Fourth.
> IJ to INS:  Now where would she .. go, Ms. Fitting?  Do you have any idea where she could go to [request] advance parole? [30]
> INS:  They, they can start as the information desk downstairs; they can direct her.

Ms. Ascencio did as she was told, and was not given any information at all. *See,* Plaintiffs' Exhibit KK, (Plaintiffs' Appendix, Tab 9):

> After the hearing, someone from INS accompanied me downstairs, and I got in line to request information. When it was my turn, I did exactly what the Judge and INS attorney had told me to do:  I said that I wanted to ask the Director of Immigration about getting a permit to go to Houston.  The person who attended me asked where I was coming from.  I said that I was coming fron upstairs, and that I had just had an appointment with the Judge.  She

---

[29]  The transcript of this hearing if found in Plaintiffs' Appendix, Tab 6.

[30]  From this, it is apparent that while the Immigration Judge knew the type of factors that would be considered in granting parole, he had no idea what the mechanism was for requesting it.

immediately said that I could not get any permit. When I persisted, she said that if the Judge had said "no," then it was "no." I tried to explain, but she would not listen to me. Instead, she told me rather sternly to go sit down, because other people were waiting. I did as I was told, thinking that she had told me to sit down because someone else would come talk to me. But they just left me sitting there, and after a while, when no-one attended me, I left...

On this point also, to the extent summary judgment is appropriate, it should be in **Plaintiffs'** favor. *See also,* Brief of *Amicus Curiae* on the parole issues raised herein. (Appendix, Tab 15).


Respectfully Submitted,


Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731

Fed. ID.  1178
Texas Bar 03052800


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent by UPS to Anthony Payne, Attorney, OIL, at 1331 Penn Ave. N.W. D.C., Wash., D.C. 20004, on November 5, 2001.