*/49*

United States District Court
Southern District of Texas
FILED

NOV 0 5 2001

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,         )
                              )
v.                            )      C.A. No.  B-94-215
                              )
TROMINSKI, et al.             )
_____)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND REQUEST FOR ORAL ARGUMENT OR FURTHER STATUS CONFERENCE

TABLE OF CONTENTS

I.    REQUEST FOR HEARING OR STATUS CONFERENCE ............... 1

II.   STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ... 5

III.  STATEMENT OF THE ISSUES TO BE ADDRESSED HEREIN ........ 7

IV.   SUMMARY OF ARGUMENT .................................... 7

V.    ARGUMENT .............................................. 8

      A.  THE RECORD CONCLUSIVELY DEMONSTRATES THAT DURING THE
      SUMMARY JUDGMENT HEARING, JUDGE VELA MADE NO RULINGS
      WHICH ARE INCONSISTENT WITH THIS COURT'S ORDER ...   8

      B.  THE REMEDIES SOUGHT BY PLAINTIFFS ARE CONSISTENT WITH
      THE FIFTH CIRCUIT'S OPINION, PARTICULARLY WHERE THE
      PAROLE ASPECT THEREOF IS BASED ON AN INCORRECT FACTUAL
      PREMISE, AND EVEN WITHOUT CONSIDERING THE IMPACT OF
      RECENT SUPREME COURT DECISIONS...................   12

      C.  SINCE THE PAROLE ISSUES AND "OTHER DOCUMENTS" CLAIM
      WERE PROPERLY PLED, IN THAT BOTH THE UNDERLYING FACTS,
      AND ADEQUATE INJURY WERE PROPERLY ALLEGED, THIS COURT MAY
      GRANT ANY AND ALL APPROPRIATE REMEDIES, REGARDLESS OF THE
      REMEDIES REQUESTED IN THE COMPLAINT.............   15

      D.  INS IS NOT ENTITLED TO SUMMARY JUDGMENT ON ANY OF THE
      CLAIMS INVOLVED HEREIN ......................... 15

VI.   CONCLUSION ........................................... 20

CitePDF - www.texto.com

# TABLE OF AUTHORITIES

## CASES

*Brady v. Maryland,*
     373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . 3

*City of West Covina v. Perkins,*
     525 U.S. 234 (1999) . . . . . . . . . . . . . . . . 17

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.,*
     137 F.3d 1475 (Fed.Cir. Tex. 1998) . . . . . . . . . . 14

*Hawkins v. Frick-Reid Supply Corp.,*
     154 F.2d 88 (5th Cir.1946) . . . . . . . . . . . . . . 15

*Industrial Development Board of the Town of Section, Alabama v.
Fuqua Industries Inc.,*
     523 F.2d 1226 (5th Cir.1975) . . . . . . . . . . . . . 15

*INS v. St. Cyr,*
     121 S.Ct. 2271 (2001) . . . . . . . . . . . . . . . . 14

*Laird v. Integrated Resources,*
     897 F.2d 826 (5th Cir.1990) . . . . . . . . . . 8, 12, 15

*Landon v. Plasencia,*
     459 U.S. 21 (1982) . . . . . . . . . . . . . . . . . . 5

*Max-George v. Reno,*
     205 F.3d 94 (5th Cir.2000) . . . . . . . . . . . . . . 14

*Molina v. Sewell,*
     983 F.2d 676 (5th Cir. 1993) . . . . . . . . . . . . . 5

*U.S. v. Beggerly,*
     524 U.S. 38 (1998) . . . . . . . . . . . . . . . . . . 14

*U.S. v. Darensbourg,*
     524 F.2d 233 (5th Cir.1975) . . . . . . . . . . . . . 14

*U.S. v. O'Keefe*,
   128 F.3d 885 (5th Cir. 1997) . . . . . . . . . . . . 10


**STATUTES**

28 U.S.C. §2241 . . . . . . . . . . . . . . . . . . . . 14

5 U.S.C. §552a(b) . . . . . . . . . . . . . . . . . . . 17

8 U.S.C. §1182(d)(5) . . . . . . . . . . . . . . . . . . 1

8 U.S.C. §1182(d)(5)(A) . . . . . . . . . 2, 3, 13, 17, 19

8 U.S.C. §1182(d)(5)(A) . . . . . . . . . . . . . . . . . 2

8 U.S.C. §1225(b)(2)(C) . . . . . . . 1, 3, 4, 13, 14, 17, 19

8 U.S.C. §1226(a) . . . . . . . . . . . . . . . . . . . . 1

8 U.S.C. §1226(a)(1) . . . . . . . . . . . . . . . . . . 2

8 U.S.C. §1226(a)(2)(A) . . . . . . . . . . . . . . . . . 1

8 U.S.C. §1226(a)(2)(B) . . . . . . . . . . . . . . 1-3, 14

8 U.S.C. §1226(e) . . . . . . . . . . . . . . 1, 4, 8, 13, 14

8 U.S.C. §1304(b) . . . . . . . . . . . . . . . . . . . 17


**REGULATIONS**

8 C.F.R. Part 287 . . . . . . . . . . . . . . . . . . . . 2

8 C.F.R. §212.5 . . . . . . . . . . . . . . . . . . . . 17

8 C.F.R. §236.1(b) . . . . . . . . . . . . . . . . . . . 4

8 C.F.R. §236.1(c)(4) . . . . . . . . . . . . . . . . . . 2

8 C.F.R. §236.1(c)(5) . . . . . . . . . . . . . . . . . . 2

-iii-

8 C.F.R. §264.5(g) . . . . . . . . . . . . . . .   6, 8, 13, 15, 16

8 C.F.R. §287.1(d) . . . . . . . . . . . . . . . . . . . 2

8 C.F.R. §287.5(d)(2) . . . . . . . . . . . . . . . . . 2

8 C.F.R. §287.5(e)(2) . . . . . . . . . . . . . . . . . 4

8 C.F.R. §287.5(e)(3) . . . . . . . . . . . . . . . . . 4

8 C.F.R. §287.8(b) . . . . . . . . . . . . . . . . . . . 2

## OTHER AUTHORITIES

Federal Rules of Civil Procedure,
      Rule 8(a) . . . . . . . . . . . . . . . . . . .   12

Federal Rules of Civil Procedure,
      Rule 8(a)(3) . . . . . . . . . . . . . . . . . .   15

Operation Instruction 264.2 . . . . . . . . . . . . .   16

Southern District of Texas, Rules of Court
      Local Rule 6(b) . . . . . . . . . . . . . . . . 8

Southern District of Texas, Rules of Court
      Local Rule 7.5 . . . . . . . . . . . . . . . . . 1

Texas Disciplinary Rules of Professional Conduct,
      Rule 3.03(a)(1) . . . . . . . . . . . . . . . . 3

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND REQUEST FOR ORAL ARGUMENT OR FURTHER STATUS CONFERENCE**

Plaintiffs, through counsel, oppose Defendants' Motion For Summary
Judgment, (cited as (INS:___). Simultaneously, pursuant to LR7.5,
Plaintiffs request that the Court either grant oral argument on
this and other pending motions, or call another status conference.

## I.   REQUEST FOR HEARING OR STATUS CONFERENCE

Plaintiffs first note that a "new" issue has been added on remand.
It is whether the Immigration and Naturalization Service, acting in
the name of the United States Department of Justice, should be
allowed to perpetuate before this Honorable Court the false factual
premise created before the Fifth Circuit, which false premise
underlay that Court's conclusion that 8 U.S.C. §1226(e) barred
jurisdiction over the parole issues presented herein. [1]

INS first raised §1226(e) in its motion to stay judgment pending
appeal, (R:38-41), too late for Plaintiffs to demonstrate its false
factual premise by evidentiary means.   In said motion, INS also
made what can only be considered a "false statement of law,"
claiming that 8 U.S.C. §1182(d)(5) simply "provid[ed] the
circumstances" under which the Attorney General could utilize the
power granted by 8 U.S.C. §1226(a)(2)(B) to parole into the U.S.
aliens seeking admission. As INS asserts, (R:39) (emphasis added):

> ... [A]n alien, whether or not he is seeking admission,
> may be held by the INS pending a determination of whether
> that alien is to be removed from the United States.   8
> U.S.C. § 1226(a).   The Attorney General may release such
> aliens on bond or conditional parole.   8 U.S.C. §§

---

[1]   By its terms, 8 U.S.C. §1226(e) bars jurisdiction only over
decisions under "this section."   The power of "conditional parole"
under that section applies only to aliens arrested on a "warrant
issued by the Attorney General," whereas 8 U.S.C. §1182(d)(5)(A)
gives INS the power to parole "any alien applying for admission."
INS has never denied, (although it is doing everything possible to
avoid admitting), that the Attorney General does not issue warrants
where LPRs seeking admission are placed in proceedings, and sent
back to Mexico to await their hearings, under §1225(b)(2)(C), who
may therefore be paroled only pursuant to 8 U.S.C. §1182(d)(5)(A).

1226(a)(2)(A) & (B). **INA § 212(d)(5)(A) [8 U.S.C. §1182(d)(5)] provides for the circumstances under which such aliens may obtain release from custody ...** [2]

Note the sleight of legal hand. By using the phrase "such aliens" in both sentences, INS conveys the impression that §1226(a)(2)(B) and §1182(d)(5)(A) apply to the same group of people. This is not true. By their terms, §1226(a)(2)(B) applies only to aliens arrested on a "warrant issued by the Attorney General," and §1182(d)(5)(A) applies only to applicants for admission. While an applicant for admission *could*, in theory, be arrested on a warrant, only if this were necessarily true in all cases could one plausibly argue, as INS claimed, that §1226(a)(2)(B) creates the general power to parole aliens, and §1182(d)(5)(A) only "provides for the circumstances" under which that power is to be exercised. [3]

---

[2] The narrative portion of the first sentence is technically true, but the citation to 8 U.S.C. §1226(a) makes it misleading. §1226(a) applies only to aliens arrested on a "warrant issued by the Attorney General," while §1225(b)(2) allows INS to detain applicants for admission indefinitely, without issuing a warrant:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240 [8 U.S.C. §1229a].

Notwithstanding INS' "head in the sand" approach to the factual premise to its jurisdictional argument, warrants are not generally used when applicants for admission are detained, or returned to Mexico. In most cases, warrants are issued only with respect to aliens already within the United States. *See,* 8 C.F.R. Part 287 "Field Officers; Powers and Duties," and in particular, 8 C.F.R. §287.1(d), which defines the term "arrested;" §287.5(d)(2), which specifies which officers may issue arrest warrants, and §287.8(b), authorizing "Interrogation and detention not amounting to arrest."

[3] Even then, there would be textual conflicts, since 8 C.F.R. §§236.1(c)(4) and (5) preclude the release on bond *or* "conditional parole" (under 8 U.S.C. §1226(a)(1)) of innumerable classes of arriving aliens, (e.g., those convicted of certain serious crimes, fugitives, and those ineligible for any form of relief from deportation), whereas 8 U.S.C. §1182(d)(5)(A) permits the Attorney

CISUPDF - www.tesive.com

The attorneys representing INS herein are based in Washington, D.C., and therefore may be unfamiliar with day to day operations on the border, and with the differences in the meaning of the term "parole" as used in 8 U.S.C. §1182(d)(5)(A) and "conditional parole," as used in §1226(a)(2)(B). [4] They therefore may have initially made this false representation in good faith, believing that warrants were used whenever an alien was detained, be it an LPR seeking admission, or someone already in the country.

However, once the mistake has been pointed out to them, it is their duty to correct their error. This INS refuses to do. Nor do they assert that the original claim was correct. Rather, they studiously avoid the issue, apparently believing that since the Fifth Circuit implicitly accepted this falsehood, it must be followed by this Court.   INS doggedly seeks to avoid admitting what they cannot truthfully deny: that LPRs returned to Mexico under §1225(b)(2)(C) are **not arrested on a "warrant issued by the Attorney General"** and may be paroled *only* under the authority of 8 U.S.C. §1182(d)(5)(A).

All attorneys are bound by the disciplinary rules mandating "candor toward the tribunal." [5] But Department of Justice Attorneys have an obligation above and beyond that of ordinary litigants. *See, Brady*

General to parole "any alien applying for admission."

[4] In fact, the term "parole" has completely different meanings in 8 U.S.C. §1182(d)(5)(A) and §1226(a)(2)(B).  In §1182(d)(5)(A), "parole" is a legal fiction, meaning that the person may physically come into the country, without being "admitted."  Such persons may still be detained, such as where they are paroled for prosecution. As used in §1226(a)(2)(B), "conditional parole" means release from custody, under certain conditions, such as geographic restrictions and reporting requirements, but without payment of a bond.

[5] *See, e.g.,* Rule 3.03(a)(1), Texas Disciplinary Rules of Professional Conduct, which provides that:

    (a)  A lawyer shall not knowingly:
        (1) make a false statement of material fact or law to a tribunal ...

CutePDF - www.fastio.com

*v. Maryland,* 373 U.S. 83,88 (1963) (footnote in original):

> An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: "The United States wins its point whenever justice is done its citizens in the courts." [FN2]
>
> FN2. Judge Simon E. Sobeloff when Solicitor General put the idea as follows in an address before the Judicial Conference of the Fourth Circuit on June 29, 1954:
>
>> "The Solicitor General is not a neutral, he is an advocate; but an advocate for a client whose business is not merely to prevail in the instant case. My client's chief business is not to achieve victory but to establish justice. We are constantly reminded of the now classic words penned by one of my illustrious predecessors, Frederick William Lehmann, that the Government wins its point when justice is done in its courts."

INS must answer two basic questions.  1) Are warrants issued and served when LPRs seeking admission are placed in proceedings and returned to Mexico under §1225(b)(2)(C)? [6] 2) Are arriving LPRs paroled under the authority of §1182(d)(5)(A), [7] or §1226(a)(2)(B)? With truthful answers to these two questions, INS' jurisdictional argument under §1226(e) will crumble like the house of cards it is.


Since INS refuses to respond to Plaintiffs' Post-Remand Requests for Admission, and their pleadings are evasive on this point, this Honorable Court should pose these questions directly, at a Status Conference, or hearing on their motion for summary judgment.

---

[6]    The issuance and service of warrants, (Form I-200), is governed by 8 C.F.R. §236.1(b).  They may be issued only by a very small group of officials, as designated by 8 C.F.R. §287.5(e)(2), and served only by officers listed in §287.5(e)(3).  If they were utilized, counsel would have found copies in Plaintiffs' INS files.

    Actually, this question is answered by the parole documents of Plaintiffs Sanchez and Cabrera, (Copies of which are found in INS' Appendix at pp. 72-73).  Both I-94s bear a pre-printed stamp, "PAROLED PURSUANT TO SEC. 212(d)(5) OF THE I & N ACT."

4

## II.  STATEMENT OF THE NATURE AND STAGE OF THE INSTANT PROCEEDINGS.

Lawful permanent residents ("LPRs") are entitled to full Due Process protections, even though non-citizens seeking initial admission have virtually no constitutional rights; *Landon v. Plasencia,* 459 U.S. 21,32-33 (1982); *Molina v. Sewell,* 983 F.2d 676,680 (5th Cir. 1993) ("*Landon* recognized that, unlike an alien seeking to enter the United States for the first time, a returning resident alien retains a constitutional right to due process.").

In this context, Plaintiffs would first note that each and every one of the seven named Plaintiffs herein ultimately won his or her immigration case, and remains in this country as a lawful permanent resident.  The instant action is therefore not about delaying the removal of undesirable aliens.  It is about treating LPRs, and by extension, their family members within the United States, in a fair and humane manner, consistent with Due Process and their status as LPRs, while it is decided whether the offenses they committed (or are *accused* of having committed), [8] are so serious as to warrant deportation, or whether, if they committed the offenses at all, they are sufficiently minor, and their equities so great, that they should be allowed to remain, as permanent residents. [9]

This Court previously granted three forms of relief.  Following Supreme Court and Fifth Circuit precedent, the Court noted that as LPRs, Plaintiffs enjoy Due Process protection in matters affecting their right to enter (or be paroled) into the United States.  The

---

[8]  Not all LPRs stopped at the border are inadmissible.  *See,* Plaintiffs' Exhibits "Y" (R:1002), and "LL," filed herewith.

[9]  For example, Plaintiffs Ascencio and Merino tried to use their U.S. citizen son's birth certificate to take a sick nephew to Houston for medical treatment.  Plaintiff Gutierrez attempted to bring her sister and sister's children into the U.S., to protect them from further abuse by her sister's husband.  None of these offenses was prosecuted criminally.  Rather, all three Plaintiffs were placed in exclusion proceedings, stripped of their green cards and other documents, and returned to Mexico to await a hearing.

5

CUTEPDF - www.texio.com

Court therefore ordered that, prior to returning an LPR to Mexico to await a hearing under 8 U.S.C. §1225(b)(2)(C), INS provide notice of the possibility of being paroled into the country, (under 8 U.S.C. §1182(d)(5)(A)), and that prior to denying such requests for parole, a hearing be conducted before an impartial adjudicator. The Court also ordered INS to abide by the terms of the so-called "McNary Memorandum," [10] in determining when LPRs green cards should be confiscated, and the form of substitute documents to be issued. And finally, the Court ordered that INS not confiscate lawfully issued documents (drivers' licenses, Social Security cards, etc.), from class members, absent a good faith belief that they constituted evidence of unlawful conduct. [11]   INS appealed.

INS' appeal was devoted primarily to procedural complaints about this Court's Order. As seen from their opening brief, (found at Tab 5 of INS' Appendix), INS raised no substantive challenges to the Court's orders modifying the class, or limiting the confiscation of documents such as drivers' licenses. Nor did the Fifth Circuit *sua sponte* find fault with this Court's order on either point. Notably, the Fifth Circuit left untouched this Court's Orders granting and modifying class certification.   Therefore, it would be INS' burden to convince this Court that these Orders are *substantively* flawed.

It was INS' appeal.   Issues they did not raise were not before the Court.   Yet INS claims that the Court excluded these issues, and

---

[10]   Plaintiffs are jointly responsible with INS for failing to note that INS had promulgated a regulation, 8 C.F.R. §264.5(g), superceding the McNary Memo.   Said regulation, rather than the Memo, should have formed the basis of this aspect of the Order.

[11] INS never claimed that Plaintiffs' documents had evidentiary value, or that they have a right to confiscate them in the absence thereof.   The record herein, including the Declarations of Plaintiffs Ascencio and Merino, (Exhibit "KK"), shows, *inter alia*, that their driver's licenses, etc., had no evidentiary value. And although INS has "not admitted that they confiscate other documents without a good faith belief that they are bona fide evidence [of] unlawful conduct," (INS:23), they have submitted no evidence to counter Plaintiffs' *prima facie* showing on this point.

that "this case can be decided without consideration" of the very procedural complaints [12] which formed the primary basis of the remand. This would turn the Fifth Circuit's opinion on its head.[13]

### III.   STATEMENT OF THE ISSUES TO BE ADDRESSED HEREIN

**A.  THE RECORD DEMONSTRATES THAT JUDGE VELA MADE NO BINDING RULINGS ON ANY OF THE ISSUES INVOLVED HEREIN, AND THAT, TO THE CONTRARY, THE REMEDIES GRANTED BY THIS COURT ARE CONSISTENT WITH HIS LEANINGS AS EXPRESSED AT THE HEARING ON JULY 31, 1996.**

**B.  THE REMEDIES SOUGHT BY PLAINTIFFS ARE CONSISTENT WITH THE FIFTH CIRCUIT'S OPINION, PARTICULARLY WHERE THE PAROLE ASPECT THEREOF IS BASED ON AN INCORRECT FACTUAL PREMISE, AND EVEN WITHOUT CONSIDERING THE IMPACT OF RECENT SUPREME COURT DECISIONS.**

**C.   SINCE THE PAROLE ISSUES AND "OTHER DOCUMENTS" CLAIM WERE PROPERLY PLED, IN THAT BOTH THE UNDERLYING FACTS, AND ADEQUATE INJURY WERE PROPERLY ALLEGED, THIS COURT MAY GRANT ANY APPROPRIATE REMEDIES, REGARDLESS OF THE REMEDIES REQUESTED IN THE COMPLAINT.**

**D.  BECAUSE FACTUAL ISSUES REMAIN WITH RESPECT TO THE "GREEN CARD" AND PAROLE CLAIMS, SUMMARY JUDGMENT FOR INS WOULD BE INAPPROPRIATE.**

### IV.  SUMMARY OF ARGUMENT

The record shows that Judge Vela did not limit the issues as INS claims, and the remedies granted by this Court were consistent with his rulings.  Nor did the Fifth Circuit exclude the issues it did not address. Issues INS did not raise were not before the Court. The posture of the case is unaffected by the denial without opinion of Plaintiffs' petitions for rehearing. The Fifth Circuit held that

---

[12]  INS claims that Plaintiffs improperly included matters in the proposed Order that Judge Vela had excluded from the case, but admits that they were "not before the Fifth Circuit" (INS:25), thereby conceding that they failed to appeal them on the merits.

[13]  As stated in Defendants' Opposition to Plaintiffs' Motion to Amend Pleadings, (Docket Entry No. 140), at page 5:

> [B]ecause this case can be decided without consideration of the Defendants' procedural objections, to allow Plaintiffs to amend the complaint for the sole purpose of pre-empting those objections would create undue delay and undue prejudice.

7

CutePDF - www.tevisa.com

all the causes of action were well pled, and it is irrelevant that Plaintiffs did not initially request the specific relief granted. *Laird v. Integrated Resources,* 897 F.2d 826 (5th Cir.1990).

Nor did the Fifth Circuit bar the relief sought. It left intact the class certification, and legal bases for the "other documents" claim; permits a showing that INS is not complying with 8 C.F.R. §264.5(g) and allowed for legal argument on the issue of extraneous notations.  This Court may also consider whether, under the true facts, the bar of §1226(e) actually applies, and if not, revisit the so-called "parole" claims, particularly since the Fifth Circuit reminded INS, (p.8,n.15), of its duty to uphold the Constitution.

## V.  ARGUMENT

### A.  THE RECORD SHOWS THAT JUDGE VELA MADE NO RULINGS INCONSISTENT WITH THIS COURT'S ORDER DURING THE SUMMARY JUDGMENT HEARING. [14]

Plaintiffs briefed INS' claim that Judge Vela limited the issues before the Fifth Circuit. [15]  As noted in their summary of the course of proceedings, *id.* at pp. 10-12 (footnotes in original):

> At [the summary judgment hearing] hearing, Judge Vela expressed great concern about the practice of returning LPRs, (and possibly U.S. citizens), to Mexico to await their exclusion hearings, without informing them that parole existed, much less providing a meaningful opportunity to request it, or any kind of due process in

---

[14]  INS' summary judgment motion and opposition to Plaintiffs' motion for summary judgment was never properly filed.  After having received one extension of time in which to file it, (Docket entry No. 50), they missed two other, self-imposed deadlines, finally presenting the pleading with a motion for leave to file instanter. (Docket entry No. 53).  However, their motion to file it instanter was denied when Judge Vela transferred the case to this Honorable Court, (Docket entry No. 96), and was not among the motions INS re-urged on October 1, 1998 (Docket No. 98).  Therefore, Plaintiffs' summary judgment motion, which was re-urged by virtue of their submissions of September 11, 1998, (*see,* Supplemental Record), and October 19, 1998, (Docket No. 100), was, under Local Rule 6(b), unopposed.

[15]  Citations to (INS:__) are to INS' opening brief. References to the record are by Volume and Page, e.g., (R9:16) is Vol.9, p.16.

8

adjudicating a request.  He was particularly concerned that this procedure applied only to LPRs accused of minor infractions, since those accused of major offenses were paroled in for prosecution. (R9:18,21-23,25-40).

Judge Vela also extracted concessions from Defendants on some aspects of the dispute about the *form* of the I-94s provided when green cards *were* confiscated, and requested an order encompassing these points. (R9:16) ("Because I am going to ask Ms Brodyaga, together with [Mr. Muir], [16] to give me an order to the effect what we have agreed to because I think that is very important")  During recess, the parties discussed draft orders, but had very different understandings of what had been "agreed," and returned empty-handed.  After further argument, the hearing was adjourned without resolution, other than a briefing schedule.

Defendants argue that binding orders resulted from this hearing.  (INS:11-16,30-35). But the minute entry shows otherwise.  (R2:417):

> Parties present for hearing.  Court hears arguments from counsel.  Motions taken under advisement pending further briefs by counsel. Court orders briefs to be filed within 15 days and responsive briefs within 5 days thereafter

This can also be seen from a review of the transcript, *as a whole*, and the fact that the Judge never signed either of the proposed orders submitted by the parties. ...

In the argument section of their brief, Plaintiffs expanded on these points as follows, *id.* at pp. 35-39, (footnotes in original):

### 1.  THE ISSUES ADDRESSED BY JUDGE TAGLE WERE PROPERLY BEFORE THE COURT

INS claims that Judge Vela made important "oral decisions" at the summary judgment hearing which were "law of the case," and were improperly revisited by Judge Tagle. (INS:31).  Specifically, INS asserts that Judge Vela "narrowed the issues before the court" to two questions: (1) "whether defendants violate LPRs' rights when noting on the Form I-94 in immigration proceedings and whether the notations interfere with the alien's

---

[16]  Another SAUSA from the Harlingen Office.

CPAPDF - www.fasttio.com

ability to obtain employment," [sic] and (2) "whether defendants' violate the LPRs' rights by not granting parole." (INS:31-32). [17] ...

This is incorrect, both because the issues were not so limited, and because, even if they were, it would have been within the province of Judge Vela, and therefore of Judge Tagle, to revisit them. [18] Defendants cite O'Keefe, supra at 891, (INS:32). As noted therein:

> Under the law of the case doctrine and general principles of comity, a successor judge has the same discretion to reconsider an order as would the first judge, but should not overrule the earlier judge's order or judgment merely because the latter judge might have decided matters differently.

Since the issues addressed in her order were all briefed after the summary judgment hearing, (mostly at Judge Vela's request), Judge Tagle "had the same discretion" to reconsider Judge Vela's (alleged) tentative rulings as he would have had, on the grounds that they did not adequately consider the authorities presented in the post-hearing briefs. However, it is unnecessary to reach that question, as Judge Tagle's order was consistent with the matters on which Judge Vela expressed a firm opinion, and largely consistent with his leanings, as expressed at the hearing, on the remaining questions.
...

Judge Vela also accepted, (and INS did not contest), Plaintiffs' representations that extraneous notations on an I-94 interfere with the enjoyment of the rights and privileges which attend LPR status, (including making it difficult to get a job, (R9:8), because employers often refused to hire an LPR under such circumstances, (R9:12)). Rather, Judge Vela wondered aloud whether employers had a right to know, for example, that a potential employee was under deportation proceedings, and asked Plaintiffs to brief that point.

---

[17] Actually, neither of these statements correctly reflects the issues raised herein.

[18] INS' claim, (INS:34), that Judge Tagle deprived them of the opportunity to present evidence, is bogus. Defendants were free to (and did) submit evidence at will. (R3:713-801). Moreover, the time to do so was before, not after, the summary judgment hearing.

> The Parties' differing understandings of the outcome of the hearing is evidenced by their inability to agree on a stipulated order... The fact that Judge Vela did not sign Defendants' proposed order constituted notice that he might agree.

> In their post-hearing brief, Defendants asserted that Judge Vela had decided certain issues, but acknowledged that they might be "mistaken as to the Court's holding." (R2:296). Therefore, if Defendants opted to "not respond to Plaintiffs' arguments" (R2:295), on the grounds that the Court had allegedly "already decided" the issues, *id.*, they did so at their own risk.

Yet INS asserts that Judge Vela concluded "that 'the only issue' before the court and the 'only thing that remains pending'" was whether INS violated the LPR's rights in making extraneous notations on the substitute documentation, (INS:7). Clearly, Judge Vela would not order INS to brief some issues, and Plaintiffs to brief others, if he had made "binding" rulings on those issues.

Particularly frivolous is INS' assertion that Judge Vela rejected Plaintiffs' claim with respect to the confiscation of other lawfully issued documents. (INS:24). Even a cursory reading of the transcript of that hearing demonstrates that Judge Vela intended to rule that INS was obliged to admit or parole LPRs into the country under all circumstances, (including parole for prosecution, which would imply physical detention), and that he believed this would cure the problem of their confiscation of other documents. With the passage of IIRIRA, and the grant of statutory authority for INS to return individuals to Mexico to await their hearings, however, a ruling that INS either had to admit or parole all LPRs seeking admission was no longer legally tenable. Therefore, the question of the confiscation of documents such as drivers' licenses and Social Security cards was "severed," so to speak, from the parole issues.

In response to Plaintiffs' pleading, addressing the points on which Judge Vela had requested supplemental briefing at the hearing of July 31, 1996, INS asserted that the Judge had ordered Plaintiffs to brief this issue, and that they had failed to do so. (R:293-94). In reply, Plaintiffs said, (R:261-62) (emphasis added):

CHiPDF - www.fenlio.com

.

> It was Plaintiffs' understanding at the July 31, 1996
> hearing that the Court had advised Plaintiffs that this
> issue would ride with the underlying issue of whether INS
> has the authority to return class members to Mexico to
> await their exclusion hearings, and **had declined to hear
> argument at that time.**

INS now construes this statement, quoted at (INS:24), as Plaintiffs having "admitted that it was [Plaintiffs'] understanding that the issue was not before the Court." *Id.* This borders on the bizarre.

INS devotes five of its forty-six pages to a discussion of the issues on the merits. The rest is procedural objections. [19] And, as Plaintiffs urged in their pending motion to amend their complaint to specifically request the relief at issue, the most efficient means of "cutting to the chase," as it were, would be to grant said motion. [20] Otherwise, a whole new round of litigation will ensue, as to what Judge Vela was thinking, and what his comments meant. [21] The instant case has dragged on for over seven years. It is long past time to join the issues on the merits.

---

[19]   Plaintiffs are filing an "Enumeration of Incorrect and Misleading Statements in Defendants' Motion For Summary Judgment." It is organized page by page, for easy reference, should the Court have questions about any particular statement or claim made by INS.

[20]   INS' claim that the motion to amend is "contrary to the Court's August 1, 2001 order," (INS:25) ignores the "Parties Proposed Joint Scheduling Order," Docket Entry 131. It was signed by both parties, and states, at p. 1, (emphasis added):

> [The Parties] disagree as to what issues remain outstanding.... The Plaintiffs have filed a "Post-Remand Statement of Outstanding Issues" **and may file an additional document addressing the issue.**

[21]   INS also asserts that the issues are not properly before the Court because the Second Amended Complaint did not specifically request the exact forms of relief ultimately granted. This is incorrect. Rule 8(a) F.R.Civ.P. permits this Court to grant "any relief that the pleaded claim supports; requesting an improper remedy is not fatal." *Laird v. Integrated Resources, supra* at 841. As the Fifth Circuit held, (Opinion, p.3, n.4), all of Plaintiffs' claims were properly pled, and adequate injury was alleged with respect to all the issues on which this Court granted relief.

CutePDF - www.texio.com

**B.  THE REMEDIES SOUGHT BY PLAINTIFFS ARE CONSISTENT WITH THE FIFTH CIRCUIT'S OPINION, PARTICULARLY WHERE THE PAROLE ASPECT THEREOF IS BASED ON AN INCORRECT FACTUAL PREMISE, AND EVEN WITHOUT CONSIDERING THE IMPACT OF RECENT SUPREME COURT DECISIONS.**

After setting forth the contents of this Court's order, the Fifth Circuit summarized its conclusions as follows, (Opinion at page 3):

> The government presents a series of procedural and substantive objections to the order.  With respect to the seizure of green cards and issuance of temporary documents, we conclude that the order was too sweeping in light of 8 C.F.R. § 264.5(g), which is cited by neither party nor the district court.  In addition, we conclude that federal courts have no jurisdiction to review parole decisions of the Attorney General.  Finally, we decide that remand is appropriate to ensure that the government has ample opportunity to press its factual and legal contentions before the district court.

Although this Court's order was "too sweeping in light of 8 C.F.R. § 264.5(g)," one which takes said regulation into account would be appropriate. [22]  And, even without reference to this Court's habeas jurisdiction, the fact that 8 U.S.C. §1226(e) only applies to the "conditional parole" of persons arrested on a "warrant issued by the Attorney General," and that, as a factual matter, LPRs sent to Mexico under §1225(b)(2)(C) are not arrested on warrants, and therefore can be (and are) paroled only under 8 U.S.C. §1182(d)(5), **was not decided by the Fifth Circuit.**  And finally, a remand "to ensure that the government has ample opportunity to press its factual and legal contentions" clearly does not preclude the Court from considering the issues to which those contentions related.

Unfortunately, Plaintiffs' discussion of §1226(e) was too condensed, and the Fifth Circuit misinterpreted their argument.  Plaintiffs never contended that the parole of arriving aliens was governed by 8 U.S.C. §1225(b)(2)(C).  What they intended to convey, but did so imperfectly, was that parole of LPRs returned to Mexico

---

[22]  Plaintiffs' Exhibits "LL" and "MM" show that INS is still not issuing appropriate documents to all LPRs paroled into the U.S. for removal proceedings, whose "green cards" have been confiscated.

under §1225(b)(2)(C) was **not** governed by §1226(a)(2)(B), but by §1182(d)(5)(A). And since INS first raised §1226(e) in its post-judgment motion, the necessary factual predicate had not been laid.

The denial of Plaintiffs' petitions for rehearing, without opinion, does not mean that the issue is foreclosed. [23] And the Fifth Circuit's broad reading of the "court stripping" provisions of IIRIRA relating to habeas corpus, 28 U.S.C. §2241, was rejected by the Supreme Court in *INS v. St. Cyr,* 121 S.Ct. 2271 (2001). [24]

But most importantly, the conclusion that §1226(e) barred the parole claims is no more expansive than §1226(e), which bars review only of decisions of the Attorney General "under this section." And §1226 applies only to aliens arrested on a "warrant issued by the Attorney General." The opinion does not preclude this Court from addressing parole procedures under §1182(d)(5)(A), as applied to LPRs who were never arrested on a "warrant issued by the Attorney General." And the Fifth Circuit might not be pleased that its opinion rests on a false factual premise. *See U.S. v. Beggerly,*

---

[23] Absent the requisite factual foundation, it could mean that it was best left to be sorted out on remand. *See generally, Exxon Chem. Patents, Inc. v. Lubrizol Corp.,* 137 F.3d 1475,1481-82 (Fed.Cir. Tex. 1998). This inference is doubly appropriate herein because Judge Dennis, who dissented from this aspect of the panel decision, did not dissent from the denial of rehearing, as commonly occurs where such a denial finally disposes of a case. *See, e.g., U.S. v. Darensbourg,* 524 F.2d 233 (5th Cir.1975) ("GODBOLD, Circuit Judge (dissenting): For the reasons set out in my dissenting opinion, I dissent from the denial of petition for rehearing.").

[24] *See, Max-George v. Reno,* 205 F.3d 94 (5th Cir.2000) (federal statute providing that "notwithstanding any other provision of law" no court shall have jurisdiction to review final order of removal against alien who is removable by reason of having committed certain covered offenses was explicit manifestation of Congress' intent to eliminate even the habeas corpus jurisdiction of federal courts). The language of §1226(e) on which the Court relied was even less explicit: "... shall not be subject to review" and "No court may set aside..." Therefore, this aspect of the Fifth Circuit's decision was overruled by *St. Cyr,* to the extent that this Court relied on its habeas jurisdiction under 28 U.S.C. §2241.

14

524 U.S. 38,44 (1998) ("This rule does not limit the power of a court to ... set aside a judgment for fraud upon the court.").

**C.   SINCE THE PAROLE ISSUES AND "OTHER DOCUMENTS" CLAIM WERE PROPERLY PLED, IN THAT BOTH THE UNDERLYING FACTS, AND ADEQUATE INJURY WERE PROPERLY ALLEGED, THIS COURT MAY GRANT ANY APPROPRIATE REMEDIES, REGARDLESS OF THE REMEDIES REQUESTED IN THE COMPLAINT.**

In *Laird v. Integrated Resources,* 897 F.2d 826 (5th Cir. 1990), the Fifth Circuit held, *id.* at 841-42 (footnote in original):

> We have consistently interpreted [Rule 8(a)(3), F.R.Civ.P.] to allow a plaintiff any relief that the pleaded claim supports; requesting an improper remedy is not fatal. [FN69] ... The plaintiffs properly pled a claim ... upon which other relief can be granted ...
>
> FN69. *Industrial Development Board of the Town of Section, Alabama v. Fuqua Industries Inc., 523 F.2d 1226, 1235 (5th Cir.1975)* ("Under the liberal pleading standard required by the federal rules, the complaint here would seem to encompass relief based on any suitable theory...."); ... *Hawkins v. Frick-Reid Supply Corp., 154 F.2d 88, 89 (5th Cir.1946)* ("'... every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.' Accordingly, a complaint is sufficient if it sets forth facts which show that the plaintiff is entitled to any relief which the court can grant...").

**D.   INS IS NOT ENTITLED TO SUMMARY JUDGMENT ON ANY OF THE CLAIMS INVOLVED HEREIN.**

With respect to the "green card" claim, INS asserts, (INS:42), that "INS is in compliance with 8 C.F.R. § 264.5(g)."   In support thereof, INS presents a Declaration from Larry Doyle, ADDE.  (INS' Exhibit 6).  In his Declaration, Mr. Doyle states, in relevant part:

> 3.   There does not exist in the lexicon of documents used for immigration purposes by the INS a formal form or document entitled "temporary Form I-551".  Rather, Form I-94 is designated for use as the "temporary Form I-551" and serves as evidence of lawful permanent resident status;
>
> 4.   If a lawful permanent resident alien, who is either in

15

CutePDF - www.fazisa.com

> the United States or paroled into the United States, is
> placed in immigration proceedings, the Harlingen District
> Office seizes the "green card" of the lawful permanent
> resident and replaces the green card with a I-94.

Note the absence of any assertion that "green cards" are routinely
replaced with I-94s which, in fact, demonstrate LPR status.   INS
also claims that I-94s not only are in the form of a "temporary
Form I-551," as mandated by 8 C.F.R. §264.5(g), but that they are,
in fact "temporary Form I-551". (INS:43). Form I-94 has multiple
uses: not all are "temporary Forms I-551."  The "devil is in the
details." OI 264.2 governs how I-94s must be prepared in order to
provide temporary proof of LPR status.   It mandates use of the
phrase "Temporary Evidence of Lawful Admission for permanent
residence," (R:720), and specifies that the *admissions* portion of
Form I-94 be utilized, (R:720-721).  It further states, *id.,* that:

> A photo of the applicant must be attached to the block
> next to the admission block, thereby obliterating the
> admission number.  The Service seal shall then be placed
> half over the admission block and half over the photo.

In her individual capacity, counsel has recently represented only
one class member, Jose Lopez.  He was paroled into the U.S., and
given an I-94 which makes no mention of LPR status. (Plaintiffs'
Exhibits "LL" and "MM." *See* Appendix, Tabs 10 and 11). This shows
that INS does not always comply with 8 C.F.R. §264.5(g), but the
extent of the problem can only be determined after discovery. [25]

INS also claims (INS:42), that because §264.5(g) "does not prohibit
the defendants from attaching additional notations indicating that
the LPR has been placed in immigration proceedings" they are free
to do so.  Under the Fifth Circuit's opinion, p. 6, this would only
be true "absent any legal authority to the contrary." The existence

---

[25]   The absence of meaningful discovery to date is not due to
lack of effort by Plaintiffs. INS has so far been very successful
in avoiding discovery. *See,* (INS:29) ("The record reflects that
there has been no factual discovery with respect to the claim...").

of such "legal authority to the contrary" was not addressed in this Court's initial Order, and was therefore not resolved by the Fifth Circuit. In their motion for summary judgment, Plaintiffs will show that 5 U.S.C. §552a(b), and 8 U.S.C. §1304(b) bar such notations.

INS also asserts, (INS:44), that the parole claims of LPRs who are sent back to Mexico under 8 U.S.C. §1225(b)(2)(C) have "no merit." With respect to the "notice" aspect of the claim, INS relies on *City of West Covina v. Perkins*, 525 U.S. 234,240-41 (1999), holding that individualized notice of possible remedies is not required where information about the remedial procedures is "generally available" through published statutes and case law, and the individual "can turn to these public sources" to learn about them.

As applied to the parole issues, this type of information is not "generally available" even to LPRs **within the United States.** INS has identified no "generally available ... public sources" from which an LPR who does not speak, let alone read or write English, can obtain a meaningful explanation of where and how a request for parole may be made under 8 U.S.C. §1182(d)(5)(A). In order to make such a request, one would need to know, at a minimum, 1) the fact that parole exists, 2) address of the INS District Office, and 3) the criteria considered in evaluating such a request.

Indeed, Plaintiffs' counsel is unaware of any such sources, let alone any which are "generally available," or published in Spanish. Even assuming, *arguendo*, that an LPR could locate (and understand), 8 C.F.R. §212.5, which is the implementing regulation for parole under 8 U.S.C. §1182(d)(5)(A), it would be of little help. It does not set forth the factors which are, as a practical matter, taken into consideration in determining whether LPRs who have been returned to Mexico to await a hearing will be paroled. [26]   And it

---

[26]   There is no set "list" of factors. As ADDE Larry Doyle said in his first Declaration, (R:725):

is an entirely different matter when an LPR is stranded abroad. If such "public sources" are scarce or non-existent within the United States, they are certainly not "readily available" in Mexico.

INS further asserts, without authority, that in "the instant case, public sources are readily available indicating that parole may be sought." (INS:45). Even assuming, *arguendo*, that this were true for LPRs within the U.S., it is certainly not the case that public sources regarding *the practical aspects of parole* are readily available in Mexico. As asserted in the Declaration of ADDE Larry Doyle, (R:725) (emphasis added), the "officers in secondary inspection and at the information desks in the Ports of Entry **can** answer questions about the parole procedure." But it is not always true that they **do** answer such questions in a helpful manner.

At her first hearing, Plaintiff Ascencio asked the Immigration

---

Each request for parole is reviewed by myself on a case by case basis, in which I carefully consider the factors presented in each request for parole. In determining whether or not an alien shall be paroled into the United States, I consider the likelihood that the alien will abscond or pose a security risk.

Even as an attorney who has been certified as a specialist in immigration and nationality law for twenty years, the undersigned knows of no source, other than personal experience, from which to obtain this information. To her knowledge, there is not even any "case law" which covers the issue. From experience, the undersigned knows to look for and document such factors as the presence in the U.S. of minor, U.S. citizen or LPR dependents; the fact that such dependents are dependent on the applicant for support; whether the applicant has urgent medical needs, significant property, business, or other family ties to the United States; whether it appears that there are bona fide legal arguments that the LPR is not subject to removal, and if so, whether relief from removal would be available. Plaintiffs' Exhibit "LL," incorporated herein, wherein counsel recently made a successful request for parole for a class member.

The suggestion that an unrepresented class member would be able to learn, from "generally available" sources, that this is what is required to obtain parole, would be laughable, if the absence of such resources did not have such tragic consequences.

Judge about getting "a permit" to go to Houston to see her infant son, (R:971).[27]  The following discussion then ensued (R:971-72):

> IMMIGRATION JUDGE:  I would think that the INS would be receptive to granting you parole into the United States, but I cannot speak for them, in view of the..your status as a lawful permanent resident and in view of the young age of your child. But you'll have to ask the District...
> MS. ASCENCIO:  Because my daughter is leaving on Monday to go to classes, she needs to go into school.
> IJ:  In Houston?
> MS. ASCENCIO:  In Houston.
> IJ:  Well, that's a double reason.  You'll have to talk to the District Director.
> ...
> IJ to INS:  Now where would she.. go ..?  Do you have any idea where she could go to [request] advance parole? [28]
> INS:  They, they can start at the information desk downstairs; they can direct her.

Ms. Ascencio did as she was told, and was not given any information at all.  Plaintiffs' Exhibit KK, (Plaintiffs' Appendix, Tab 9):

> After the hearing, someone from INS accompanied me downstairs, and I got in line to request information. When it was my turn, I did exactly what the Judge and INS attorney had told me to do:  I said that I wanted to ask the Director of Immigration about getting a permit to go to Houston.  The person who attended me asked where I was coming from.  I said that I was coming from upstairs, and that I had just had an appointment with the Judge.  She immediately said that I could not get any permit.  When I persisted, she said that if the Judge had said "no," then it was "no."  I tried to explain, but she would not listen to me.  Instead, she told me rather sternly to go sit down, because other people were waiting.  I did as I was told, thinking that she had told me to sit down because someone else would come talk to me.  But they just left me sitting there, and after a while, when no-one attended me, I left...

This clearly shows (as common sense also indicates), that materials regarding parole under §1182(d)(5)(A) are not "generally available" to LPRs sent to Mexico to await a hearing, under §1225(b)(2)(C).

---

[27]  The transcript is found in Plaintiffs' Appendix, Tab 6.

[28]  This shows that even the Immigration Judge had no idea how, as a practical matter, an LPR stuck in Mexico could request parole.

19

Finally, although INS does not admit that they regularly confiscate drivers licenses, etc., from LPRs returned to Mexico to await their hearings, they have tendered no evidence to contest the *prima facie* showing made by Plaintiffs. INS did not dispute the authenticity of the exhibit regarding Ester Martinez, showing that they confiscated such documents, and refused to return them until she won her case. INS also admitted that such documents were taken from Plaintiffs Lopez, Ascencio and Merino, characterizing this as "immaterial facts not in dispute," (R:821). Nor has INS ever argued that in any of these cases, the documents could be needed as evidence. [29]

## VI.   CONCLUSION

In conclusion, it is urged that INS' motion for summary judgment be denied. It is further urged that, to avoid delay, Plaintiffs' motion to amend be granted, and that a discovery schedule be set, following which, a timetable be established for filing Plaintiffs' summary judgment motion, and any responsive pleadings by INS.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney       Thelma O. Garcia, Attorney
17891 Landrum Park Road          301 E. Madison
San Benito, TX 78586             Harlingen, TX 78550
(956) 421-3226                   (956) 425-3701
(956) 421-3423 (fax)             (956) 428-3731
Fed. ID.  1178
Texas Bar 03052800

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, with the proposed Order, was sent by UPS to Anthony Payne, Attorney, OIL, at 1331 Penn Ave. N.W. D.C., Wash., D.C. 20004, on November 5, 2001.

[29] *See also*, Plaintiffs' Exhibit "OO" (Appendix, Tab 13), showing that the same occurred with class member Isidro Reyna.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,       )
                             )
v.                           )        C.A. No.  B-94-215
                             )
TROMINSKI, et al.            )
_____)

EXHIBIT "KK"
FILED IN SUPPORT OF

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT


Come Plaintiffs, and file herewith the Declarations of Plaintiffs
Ascencio and Guzman, in support of their opposition to Defendants'
Motion For Summary Judgment.


Respectfully Submitted,


Lisa S. Brodyaga, Attorney         Thelma O. Garcia, Attorney
17891 Landrum Park Road            301 E. Madison
San Benito, TX 78586              Harlingen, TX 78550
(956) 421-3226                     (956) 425-3701
(956) 421-3423 (fax)               (956) 428-3731

Fed. ID.  1178
Texas Bar 03052800


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were sent by UPS to Anthony Payne, Attorney, OIL, at 1331
Penn Ave. N.W. D.C., Wash., D.C. 20004, on November 5, 2001.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,            )
                                 )
v.                               )      C.A. No.  B-94-215
                                 )
TROMINSKI, et al.                )
_____)

DECLARATION OF PLAINTIFF ASCENCIO-GUZMAN

I, Juana Ascencio-Guzman, hereby declare under penalty of perjury
of the laws of the United States as follows:

I am a lawful permanent resident of the United States, and a named
Plaintiff in the instant action.  I reside in Houston, Texas, with
my husband, Efrain Merino, and our children, two of whom are
native-born citizens of the United States.

In July of 1994, my husband and I were stopped at the international
bridge in Brownsville, Texas.  We were trying to bring a nephew
into the United States for medical treatment, using our infant U.S.
citizen son's birth certificate.  Our U.S. citizen daughter, who
was about eight, was also with us.  When we were challenged, we
admitted that the nephew was not our son, and explained that all we
wanted to do was to take him to Houston for medical treatment.  We
were then told to go inside, where other officers talked to us.

We were told that we would have to have a hearing with the
Immigration Judge, to decide whether or not we would be allowed to
come into the United States, and that we would have to wait in
Mexico until we had our hearings.  We were not advised that there
was a procedure by which we could request permission to come into
the United States while our cases were pending.  All of our
documents, including my resident alien card and Texas
identification card, were confiscated.  We told them that our other

children were in Houston, including our infant U.S. citizen son, but they still sent us back to Mexico. We wanted to make arrangements to send our daughter back up to Houston, but they would not let her go by herself, and would not let us even go into Brownsville to make arrangements to put her on a bus, and have my sister-in-law pick her up in Houston.  So far as I know, we were never actually "arrested."  Rather, we were just told that we could not enter, and were sent back to Mexico.

Notice of my first appointment with the Immigration Judge was sent to Houston, and our family there advised me of the hearing date. It was in early August, 1994.  My husband and I were staying with my family in the state of Guerrero, Mexico, where neither of us had been able to find work, and we were already out of money.  My husband had not received a appointment notice, and it seemed like an unnecessary expense for him to accompany me, so I went alone.

My hearing was held in a room on the second floor of the bridge in Brownsville, Texas. I told the Judge that my husband had not received notice of the hearing, and he gave me a new date, for both of us to come.  While I was in the hearing, I asked the Judge if I could get a permit to go to Houston, to visit my son, who was only 18 months old, and to enroll my daughter in school.  The Judge told me that I had to ask the Director of Immigration, and the INS Attorney said that the people downstairs could give me information.

After the hearing, someone from INS accompanied me downstairs, and I got in line to request information.  When it was my turn, I did exactly what the Judge and INS attorney had told me to do:  I said that I wanted to ask the Director of Immigration about getting a permit to go to Houston.  The person who attended me asked me where I was coming from.  I said that I was coming from upstairs, and that I had just had an appointment with the Judge.  She immediately said I could not get any permit. When I persisted, she said that if the Judge had said "no," then it was "no." I tried to explain, but

2

she would not listen to me.  Instead, she told me told me rather
sternly to go sit down, because other people were waiting. I did as
I was told, thinking that she had told me to sit down because
someone else would come talk to me.  But they just left me sitting
there, and after a while, when no-one attended me, I left, and went
back to Guerrero, where we were staying.

When I returned, my husband and I talked about the situation.  We
also consulted with my sister-in-law in Houston, who was caring for
our children, and decided that the most important thing was to get
an attorney to represent us.  My sister-in-law encouraged us to go
to the hearing, and sent us $250, to use for the trip, and to see
if we could hire an attorney. But finding an attorney was not easy.
We did not know any lawyers.  Also, we had been living in Houston,
and did not have anyone near the border who could help us.

So when it was time for our next hearing, we came early, and
started talking to other people who were waiting in the lobby.
That was how we met attorney Lisa Brodyaga.  I saw her talking to
another man, and when she went to do something else, I asked him if
he was there for a hearing with the Judge.  He said he was.  I
asked if he had an attorney.  He said that she was his attorney,
and suggested I talk to her.  I approached her, and explained our
situation, and she agreed to help us, even though we only had $200,
and no certainty that we would be able to get any more.  It was
through her that we were able to get permits to go to Houston while
our hearings were pending.  She also arranged for us to get permits
to go to Mexico when my mother was gravely ill.

3

The foregoing was translated to me into Spanish by Attorney Nancy Falgout.  It is true and correct to the best of my knowledge and belief, and in witness thereof, I have signed below.


*Juana   Ascencio*

Juana Ascencio-Guzman
October 15, 2001

4

I, Nancy A. Falgout, orally translated the attached Declaration of Plaintiff Juana Ascencio-Guzman into Spanish for Ms. Ascencio-Guzman's benefit and she indicated that she understood its contents before signing the Declaration.  I am competent in English and Spanish to render such translation.

Signed:  _Nancy A. Falgout_

Nancy A. Falgout

_10-15-01_

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ASCENCIO-GUZMAN et al, | ) | |
| | ) | |
| v. | ) | C.A. No. B-94-215 |
| | ) | |
| TROMINSKI, et al. | ) | |
| _____ | ) | |

DECLARATION OF PLAINTIFF EFRAIN MERINO

I, Efrain Merino, hereby declare under penalty of perjury of the laws of the United States as follows:

I am a lawful permanent resident of the United States, and a named Plaintiff in this case. I reside in Houston, Texas, with my wife, Juana Ascencio, and our children, two of whom are U.S. citizens.

In July of 1994, my wife and I were stopped at the international bridge in Brownsville, Texas. We were trying to bring our nephew into the United States for medical treatment, using our U.S. citizen son's birth certificate. Our U.S. citizen daughter was also with us. But our son was younger than our nephew, and the person who checked our documents apparently noticed the difference.

When we were challenged, we immediately admitted that he was not our son. We were sent inside. Inside, we were separated from our daughter, who was about eight at the time. She was very upset. She told the officials that she was an American, and wanted to be with her parents, but they refused.

We were taken to the back, where I explained that we were trying to take our nephew to Houston for medical treatment. They told me that we would have to have a hearing with the Immigration Judge, and that we would have to wait in Mexico until we had our hearings.

I gave them the address in Guerrero where we would be staying, with
my wife's family.  I told them that our other children were in
Houston, including our U.S. citizen son, who was not quite a year
and a half, whose birth certificate we had tried to use to bring in
our nephew, and asked if I could send our daughter to Houston, so
that she could be with our son, who was very accustomed to her
presence, and so that she could go back to school in the fall.
They refused.  They said that since she was a minor, she could not
travel alone.  I asked if I could put her on a bus, and arrange for
my sister to pick her up, and, if necessary, prepare some documents
with a Notary Public for that purpose, but they refused.  We did
not know anyone in the Valley who could come get her, so she had to
go to Mexico with us.

At no time was I told that there was a procedure by which we could
request permission to come into the United States while our cases
were pending.  To the contrary, I was given the impression that the
hearing with the Judge was just a formality, because I would be
deported anyway, and that I would not be allowed to return to the
United States any time soon, if at all.  One of the officials told
me that I would be "castigado por muchos anos," (punished for many
years), before I could return. So far as I know, I was not actually
"arrested."  Rather, they took all my documents, including my
"green card" and driver's license, and sent us all back to Mexico.

We only had about $60 or $80 with us, which was not even enough to
get us all back to Guerrero.  So we went to Monterrey, and stayed
with a friend for a few days, while we arranged to have some money
sent to us to continue the trip.

In Guerrero, neither my wife nor I could find employment.  As a
result, we lost our apartment in Houston, with most of its
contents.  My sister removed what she was able to store for us, but
we lost almost everything, including our bed, and those of the
children, some of our clothes, most of the children's toys, kitchen

2

equipment, etc. We never got them back. The time we spent there was also very hard for our daughter, as she had lived in Houston her whole life, and had difficulty adjusting to live in Guerrero.

My wife's first appointment with the Immigration Judge was in early August, 1994. Since we were in Guerrero, a largely agricultural area, neither of us had been able to find work. Therefore, we didn't have any money. I had not received a appointment notice, so I did not know that I was supposed to have a hearing on that day, and it seemed like an unnecessary expense to accompany her. So my wife went to the first hearing by herself.

When she returned, she told me that the Judge had given her a new date, and that both of us were supposed to attend. We talked about the situation. We decided that the most important thing was to get an attorney to represent us, but finding one was difficult. My sister in Houston, who was caring for our children sent us $250, which was all she could afford at the time. But we did not know any lawyers. Also, we had been living in Houston, and did not know anyone near the border to help us.

So when it was time for our next hearing, we came early, and started asking people in the lobby whether they were also waiting for the Immigration Judge, and if so, whether they had an attorney to represent them. That was how we met attorney Lisa Brodyaga, who had come to the bridge for a hearing with someone else. We explained our situation, and she agreed to help us, even though we only had $200. Through her we were able to get permits to go to Houston while our cases were pending.

When we were finally able to return to Houston, we had to stay with my sister. It was very crowded, but at least we could put our daughter in school. It took about two months before I could get my job back, even though I had worked at the same restaurant for five years. Not long after, we were able to get another apartment. But

we still could not travel to Mexico, even when my mother-in-law was very ill, unless our attorney was able to get special permission.

At our hearing in Brownsville, the Immigration Judge ordered that we be deported. Our attorney appealed, and it was a number of years before she won the appeal, and we finally had a hearing to decide whether we would be allowed to remain in the United States. Only after we won our cases, and they gave us back our "green cards," did our lives return to normal.

The foregoing was translated to me into Spanish by Attorney Nancy Falgout, and is true and correct to the best of my knowledge and belief, and in witness thereof, I have signed below.


*EFRAIN L. MERINO*

Efrain Merino
October __15__, 2001

4

I, Nancy A. Falgout, orally translated the attached Declaration of Plaintiff Efrain Merino into Spanish for Mr. Merino's benefit and he indicated that he understood its contents before signing the Declaration.  I am competent in English and Spanish to render such translation.

Signed: _____
Nancy A. Falgout

10-15-01

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,                )
                                      )
v.                                    )    C.A. No.  B-94-215
                                      )
TROMINSKI, et al.                     )
_____ )

EXHIBIT "LL"
FILED IN SUPPORT OF

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Come Plaintiffs, and file herewith, in support of their opposition
to Defendants' Motion For Summary Judgment, a copy of the
(successful) request that class member Jose Rosales Lopez, A91 240
328, be released on parole, pending his removal hearing.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731

Fed. ID.  1178
Texas Bar 03052800

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were sent by UPS to Anthony Payne, Attorney, OIL, at 1331
Penn Ave. N.W. D.C., Wash., D.C. 20004, on November 5, 2001.



# LAW OFFICES OF LISA S. BRODYAGA
## 17891 Landrum Park Rd.
## San Benito, Texas 78586
## (956) 421-3226
## FAX: 421-3423
October 3, 2001

Cecilio Ruiz, ADDD
2201 Teege
Harlingen, TX 78550          HAND DELIVERED

Re: Jose Rosales Lopez
    A91 240 328

Dear Mr. Ruiz:

Request is hereby made that the NTA served on Mr. Lopez, (but apparently not yet filed with the Immigration Court), be canceled.

In the alternative, it is requested that he be released on parole, preferably, without bond.

The reasons for this request, and supporting documents, are enclosed. Basically, it is another case where an LPR was stopped at the port of entry, and accused of smuggling drugs, but was acquitted in criminal court. When he was stopped, an NTA was issued, on the alleged basis of "reason to believe" he is a drug trafficker, even though he is an LPR.

Sincerely,

Lisa S. Brodyaga,
Attorney at Law

Encl/ As stated.

IMMIGRATION AND NATURALIZATION SERVICE

In re

JOSE ROSALES-LOPEZ
A91 240 328

REQUEST FOR CANCELLATION OF NTA AS IMPROVIDENTLY ISSUED,
OR, IN THE ALTERNATIVE, TO RELEASE RESPONDENT ON PAROLE

Comes Respondent, by and through the undersigned, and requests that
the Notice to Appear herein be cancelled as improvidently issued.
*See,* 8 C.F.R. §239.2(a)(2), on the grounds that he is not
inadmissible as charged. In the alternative, it is requested that
Respondent be released on recognizance.

I. THE FACTS PERTINENT TO CANCELLATION OF NTA

Respondent is a native and citizen of Mexico, and a lawful
permanent resident of the United States. He is employed as a
commercial bus driver for a "Faisan" bus, a division of Adame Bus
Lines. On June 22, 2001, his bus was referred to secondary at the
Roma, Texas, port of entry. By means of a "vacis gamma ray
inspection," it was discovered that there was a density discrepancy
in the spare tire. The tire was removed, and found to contain 148.7
pounds of cocaine mix. An NTA was issued, and Respondent was
paroled into the United States for prosecution. (Exhibit A,
incorporated by reference).

At all times, Respondent has protested his innocence. Clearly, a
number of people other than the driver of a bus would have access
to the spare tire, and the fact that the cocaine was discovered
only by means of a density scan of that tire demonstrates that its
presence would not necessarily have been obvious to the driver. In
fact, Respondent was acquitted of all charges. (Exhibit B,
incorporated by reference).

Nonetheless, INS continues to hold Respondent as an "arriving
alien," and seeks to remove him from the United States.

## II.   UNDER 8 U.S.C. §1101(a)(13), RESPONDENT IS NOT AN "ARRIVING ALIEN" UNLESS HE HAS, IN FACT, COMMITTED AN OFFENSE DESCRIBED IN 8 U.S.C. §1182(a).

As a returning lawful permanent resident, Respondent is not seeking "admission" into the United States, even under the new version of §101(a)(13) of the Act, unless certain, specified conditions exist. Pertinent to this case is §101(a)(13)(C)(v), i.e., if he has:

> ...committed an offense identified in section 212(a)(2), unless since such offense [he] has been granted relief...

In other words, it would not be grounds for considering Respondent to be an "arriving alien," even if there were "reason to believe" that he had committed an offense, as would be the case if he were not a lawful permanent resident. [1]   Rather, it must be shown that he has, in fact, committed such an offense.  Here, the NTA does not even allege that he committed the offense, but only that there is "reason to believe" that he did.  That is simply not sufficient to make an LPR inadmissible, and the NTA is facially defective.

Nor would there be grounds for issuance of a superceding NTA, charging that he actually "committed" the offense at issue.  There is no probative evidence that he did.  The I-213 prepared when Respondent was stopped at a port of entry indicates that the cocaine was found during a routine check, and that there was no "suspicious" behavior on the part of Respondent.  Clearly, the **driver** of a commercial bus is not the person most likely to have had surreptitious access to the spare tire.  Rather, it would be mechanics, night guards, and similar personnel.  Nor was the cocaine secreted in such a manner that its existence would have been likely to have come to the attention of the driver.  It could not be seen, or smelled, and would not have affected the

---

[1]   Respondent also disputes that there is any such "reason to believe" he possessed the cocaine at issue, and would request an evidentiary hearing with respect to the charge.

2

functioning of the bus in any way which the driver would have been likely to notice.

Respondent has always maintained his innocence, and was acquitted of the criminal charges. He is therefore simply not inadmissible, and the NTA should be canceled, as provided by 8 C.F.R. §239.2(a)(2). Under that section, the NTA may be canceled by any officer authorized to issue such NTAs udner 8 C.F.R. §239.1(a), so long as it has not been filed with the Immigration Court. Thereafter, it must be done upon a motion to dismiss.

III. IN THE ALTERNATIVE, RESPONDENT SHOULD BE PAROLED INTO THE U.S.

In the alternative, Respondent should be paroled into the United States, with no bond, or bond not exceeding $500. He owns his home, where he resides, at 7822 ½ Channelside, Houston, TX 77012. His whole family also reside lawfully in the United States: some are permanent residents, others, United States citizens. He reports his income, pays his taxes, and is a law-abiding member of the community. *See,* Exhibit C, incorporated by reference.

Further, Respondent has everything to gain, and nothing to lose, by attending his hearings. His residence is on the line, and there is every reason to believe that by simply showing up, the charges will ultimately have to be dismissed.

WHEREFORE, it is urged that the NTA be canceled, and, in the alternative, that Respondent be released on parole.

Sincerely,

Lisa S. Brodyaga, Attorney at Law
17891 Landrum Park Rd.
San Benito, TX 78586
(956) 421-3226

3

Sep-28-01  01:01pm  From-CALVIN RICHARDSON VERNER             +                    T-759  P.05/12  F-008

U.S. Department of Justice
Immigration and Naturalization Service

# Notice to Appear

In removal proceedings under section 240 of the Immigration and Nationality Act

File No:  __A91 240 329__

In the Matter of:

Respondent:  __ROSALES LOPEZ, Jose__ _____

currently residing at:
**(956) 547 1759**

__Pispc Rt. 3 Box 341 Contact Duty Supervisor   Los Fresnos TX 78566__
(Number, street, city, state and ZIP code)                                        (Area code and phone number)

☒ 1. You are an arriving alien.

☐ 2. You are an alien present in the United States who has not been admitted or paroled.

☐ 3. You have been admitted to the United States, but are deportable for the reasons stated below.

The Service alleges that you

```
1. You are not a citizen or national of the United States.

2. You are a native of MEXICO and a citizen of MEXICO.

3. On November the 8th of 1989 you were admitted as a permanent resident to
   the United States.

4. On June 22, 2001 you arrived at the Roma Tx. Port of Entry as the driver
   of a commercial bus.
```

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:
```
Section 212(a)(2)(C) of the Immigration and Nationality Act (Act), as amended,
in that a consular or immigration officer knows or has reason to believe you
are an alien who is or has been an illicit trafficker in any controlled
substance or who is or has been a knowing assister, abettor, conspirator, or
```

### SEE CONTINUATION FORM I-831 ATTACHED

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

☐ Section 235(b)(1) order was vacated pursuant to:  ☐ 8 CFR 208.30(f)(2)  ☐ 8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at: _____
**201 E.JACKSON STREET    HARLINGEN, TX 78550**
(Complete Address of Immigration Court, including Room Number, if any)
on __TO BE SET__  at __TO BE SET__  to show why you should not be removed from the United States based on the
(Date)                 (Time)
charge(s) set forth above.

_____ IMMIGRATION INSPECTOR
(Signature and Title of Issuing Officer)

Date: __06/22/2001__              __Roma, Texas__
                                    (City and state)

### See reverse for important information

Form I-862 (Rev. 4-1-97)

CutePDF - www.fastio.com

Case 1:94-cv-00215  Document 149  Filed in TXSD on 11/05/2001  Page 42 of 101

# U.S. Department of Justice
Immigration and Naturalization Service

Continuation Page for Form _____ I-862

| Alien's Name | File Number | Date |
|---|---|---|
| ROSALES LOPEZ, Jose | A91 240 329 | 06/22/2001 |

ALLEGATIONS CONTINUED:

5. Upon inspection of the bus 148.70 lbs of a white powdery substance was
   found in the spare tire. The substance was field tested, with a positive
   result for cocaine.

You are ineligible for admission to the United States because the consular or
immigration officer has reason to believe that you are or have been an illicit
trafficker of a controlled substance, or were or have been a knowing assister,
abettor, conspirator, or colluder with others in the illicit trafficking of a
controlled substance.


PROVISIONS CONTINUED:

colluder with others in the illicit trafficking in any such controlled
substance.

| Signature | Title |
|---|---|
| DEANNA KELSEY DIAZ | IMMIGRATION INSPECTOR |

_2_ of _2_ Pages

Form I-831 Continuation Page (Rev.6/12/92)

*1*

Admission Number

**606179027 09** JUL 21/2001

Immigration and
Naturalization Service
I-94
Arrival Record

PROSECUTION

408    Greft
              2019

1 Family Name
ROSALES LOPEZ

2 First (Given) Name
JOSE

3 Birth Date (Day/Mo/Yr)
14.04.46

4 Country of Citizenship
MEXICO

5 Sex (Male or Female)
MALE

6 Passport Number
F 91,340,329

7 Airline and Flight Number
LAND

8 Country Where You Live
U.S.A

9 City Where You Boarded
M. ALAMAN

10 City Where Visa Was Issued
WSC

11 Date Issued (Day/Mo/Yr)
08.11.95

12 Address While in the United States (Number and Street)
HIDALGO COUNTY JAIL

13 City and State
EDINBURG, TX

Departure Number

**606179027 09**

Immigration and
Naturalization Service
I-94
Departure Record

JUL 21/2001

PROSECUTION

408    Greft
              2019

14 Family Name
ROSALES LOPEZ

15 First (Given) Name
JOSE

16 Birth Date (Day/Mo/Yr)
14.04.46

17 Country of Citizenship
MEXICO

See Other Side                      English                      STAPLE HE[RE]

Sep-28-01  01:02pm  From-CALVIN RICHARDSON VERNER                    +                    T-759   P.08/12   F-009

U.S. Department of Justice
Immigration and Naturalization Service

# Record of Deportable/Inadmissible Alien

| Family Name (CAPS) | First | Middle | | Sex | Hair | Eyes | Complan |
|---|---|---|---|---|---|---|---|
| ROSALES LOPEZ, Jose | | | | M | GRA | BRO | MED |

| Country of Citizenship | Passport Number and Country of Issue | | File Number | Height | Weight | Occupation |
|---|---|---|---|---|---|---|
| Mexico | | | A91 240 329 | 5'4" | 167 lbs | BUS DRIVER |

| U.S. Address | | | | Scars and Marks |
|---|---|---|---|---|
| 7822 1/2 Channelside.  Houston, TX  77012 | | | | None Visible |

| Date, Place, Time, and Manner of Last Entry | | Passenger Boarded at | F B I Number | | ☐ Single ☐ Married |
|---|---|---|---|---|---|
| 06/22/2001,  Roma Texas Port Of Entry,  Commercial Bus,  11:30 AM | | | | | ☐ Divorced ☐ Widowed ☐ Separated |

| Number, Street, City, Province(State) and Country of Permanent Residence | | Method of Location/Apprehension |
|---|---|---|
| | | Customs Inspectors |

| Date of Birth | Date of Action | Location Code | At/Near | Date/Hour |
|---|---|---|---|---|
| 04/14/1948 | 06/22/2001 | ROM | ROMA TX | 06/22/2001, 11:30A |

| City, Province (State) and Country of Birth | | AR ☐ | Form (Type and No.) | Lifted ☐ | Not Lifted ☐ | By | |
|---|---|---|---|---|---|---|---|
| Tlaxmalac, Guerrero, Mexico | | | I-861, A91240329 | | | Deanna Kelsey Diez | |

| NIV Issuing Post and NIV Number | Social Security Account Name | | Status at Entry | Status When Found |
|---|---|---|---|---|
| | Ernestina Rosales / Mexico | | RESIDENT | RESIDENT |

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. |
|---|---|---|
| | 451350374 | |

| Immigration Record | Criminal Record |
|---|---|
| Legal Permanent Resident | None Claimed |

| Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children |
|---|---|
| Buena Ventura Carmen Lopez / Mexico | |

| Father's Name, Nationality, and Address, if Known | Mother's Present and Maiden Name, Nationality, and Address, if Known |
|---|---|
| Zenon Lopez / Mexico (deceased) | Ernestina Rosales / Mexico |

| Monies Due/Property in U.S. Not in Immediate Possession | Fingerprinted? | | INS Systems Checks | Charge Code Word(s) |
|---|---|---|---|---|
| Two Houses, Misc. Belongings | ☑ Yes | ☐ No | CIS TECS | 212(a)(2)(C) |

| Name and Address of (Last)(Current) U.S. Employer | Type of Employment | Salary | | Employed from/to |
|---|---|---|---|---|
| Adame Bus Line | Bus Driver | 0.00 | Hr. | 06/15/2001 - 06/22/2001 |

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place, and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

SUBJECT ARRIVED AT THE ROMA TEXAS PORT OF ENTRY ON 06/22/2001 AT APPROXIMATELY
11:30 A.M. AS THE DRIVER FOR A FAISAN BUS, A DIVISION OF ADAME BUS LINES. THE
SUBJECTS BUS WAS REFERRED INTO THE CUSTOMS SECONDARY INSPECTIONS AREA FOR
FURTHER INSPECTION AND VACIS GAMMA RAY INSPECTION. THE VACIS SEARCH RESULTED IN
A DISCREPANCY IN THE DENSITY OF THE SPARE TIRE. THE TIRE WAS REMOVED AND
MANUALLY CHECKED WITH A "BUSTER" WHICH RESULTED IN A DENSITY READING OF 76 TO
116. A K-9 OF THE AREA RESULTED IN A POSITIVE RESPONSE TO THE SPARE TIRE FROM
THE K-9. THE TIRE WAS THEN DRILLED WITH THE RESULT OF A WHITE POWDERY
SUBSTANCE. FURTHER INSPECTION RESULTED IN A TOTAL OF 148.70 POUNDS OF THE WHITE
POWDERY SUBSTANCE WHICH FIELD TESTED POSITIVE FOR COCAINE.

AS PER A.U.S.A MCCORMICK, S.A. LUNA ADVISED FEDERAL PROSECUTION HAS EXCEPTED.

SUBJECT APPEARS INADMISSIBLE PURSUANT TO SECTION 212(A)(2)(C) OF IIRAIRA 96 OF
THE INA. SUBJECT WAS SERVED WITH THE I-863, NOTICE TO APPEAR. SUBJECT WAS NTA'D
AS PER H. CORTEZ, PORT DIRECTOR FOR PROSECUTION AND PAROLED INTO THE CUSTODY OF
CUSTOM'S AGENTS FOR TRANSFER TO HIDALGO COUNTY JAIL.

| | 06/22/2001, DMK | | |
|---|---|---|---|
| Alien has been advised of communication privileges | (Date/Initials) | | Signature and Title of INS Official |

| Distribution | Received (Subject and Documents) (Report of Interview) |
|---|---|
| | Officer: D. Kelsey Diez |
| | on 06/22/2001 at 11:15 (time) |
| | Disposition: |
| | Examining Officer: |

Form I-213 (Rev 4-1-97)Y

Case 1:94-cv-00215   Document 149   Filed in TXSD on 11/05/2001   Page 45 of 101

U.S. Department of Justice

Immigration and Naturalization Service

# Immigration Detainer - Notice of Action

| File No | A91 240 329 |
|---------|-------------|
| Date | 06/22/2001 |

| To: (Name and title of institution) | From: (INS office address) |
|---|---|
| **HIDALGO COUNTY JAIL**<br>**P.o. Box 359**<br>**3100 S. Highway 281**<br>**Edinburg, TX 78539** | **PISPC**<br>**Rt. 3 Box 341**<br>**Contact Duty Supervisor**<br>**Los Fresnos,, TX 78566** |

Name of alien:   **ROSALES LOPEZ, Jose**

Date of birth:   **04/14/1948**          Nationality:   **MEXICO**                          Sex:   **M**

You are advised that the action noted below has been taken by the Immigration and Naturalization Service concerning the above-named inmate of your institution:

- ☒ Investigation has been initiated to determine whether this person is subject to removal from the United States.

- ☐ A Notice to Appear or other charging document initiating removal proceedings, a copy of which is attached, was served on

  _____
  (Date)

- ☐ A warrant of arrest in removal proceedings, a copy of which is attached, was served on _____
  (Date)

- ☐ Deportation or removal from the United States has been ordered.

## It is requested that you:

Please accept this notice as a detainer. This is for notification purposes only and does not limit your discretion in any decision affecting the offender's classification, work and quarters assignments, or other treatment which he or she would otherwise receive.

- ☐ Federal regulations (8 CFR287.7) require that you detain the alien for a period not to exceed 48 hours (excluding Saturdays, Sundays and Federal holidays) to provide adequate time for INS to assume custody of the alien. You may notify INS by calling _____ during business hours or _____ after hours in an emergency.

- ☐ Please complete and sign the bottom block of the duplicate of this form and return it to this office.  ☐ A self-addressed stamped envelope is enclosed for your convenience.   ☐ Please return a signed copy via facsimile to _____
  (Area code and facsimile number)

  Return fax to the attention of _____ , at _____
  (Name of INS officer handling case)        (Area code and phone number)

- ☒ Notify this office of the time of release at least 30 days prior to release or as far in advance as possible.

- ☒ Notify this office in the event of the inmate's death or transfer to another institution.

- ☐ Please cancel the detainer previously placed by this service on _____ .

_____   **DEANNA KELSEY DIAZ**          _____   **IMMIGRATION INSPECTOR**
(Signature of INS official)                                                                  (Title of INS official)

Receipt acknowledged:

Date of latest conviction: _____ ' Latest conviction charge: _____
Estimated release date: _____

Signature and title of official: _____  5/A    3 6 06  1

Form I-247 (Rev. 4-1-97)N

CitePDF - www.texis.com

Case 1:94-cv-00215    Document 149    Filed in TXSD on 11/05/2001    Page 46 of 101

10/02/01   TUE 10:39 FAX 956 631 8647        FPD SDTX MCALLEN                                      002

TXS-McAllen (1/89) CRIMINAL MINUTES-ARR/TRIAL
HONORABLE _____RICARDO H. HINOJOSA_____, Presiding
Deputy Clerk __Sylvia S. Martinez__, Law Clerk _____
ERO: _Tony Tijerina_____ Interpreter:_Jonathan Gonzalez (used)
USPO: _____ PSA: _____
TIME SET: 9:45 ___ a.m./p.m.
A.M. 9:58 / 10:02  P.M. 2:53 / 2:59  DATE _September 26, 2001_
     10:30   12:15        4:07   4:10

United States District Court
Southern District of Texas
FILED

SEP 26 2001

Michael N. Milby, Clerk

CR. NO. __M-01-494____ DEFT. NO.(S) _01___

Appearances:

UNITED STATES OF AMERICA                    )    PATRICIA C. PROFIT_____ .AUSA
                                            )
v.                                          )
                                            )
JOSE LOPEZ-ROSALES_____                 )    KYLE B. WELCH, AFPD
_____                   )    _____
_____                   )    _____

## THIRD DAY OF JURY/COURT TRIAL

✓___ New Sentencing Guidelines case (Offense prior to 11/1/87)
___ Defendant(s) _01__ appeared with counsel.
___ Defendant(s) _____ failed to appear (LFUG) bench warrant(s) to issue (ORDBWI)
___ Jury trial begins, jury selected (JYTRBG)(VDIREG) ____ Court trial begins (BTRBG)
___ Defendant(s) _____ rearraigned, plea(s) of GUILTY entered (REARRH)  (PLG)
___ Govt./Deft(s) evidence presented.
___ Defendant(s) _____ Motion f/mistrial GRANTED (MOTGRMT) /DENIED (MOTDNMT)
✓___ Defendant(s) Motion f/judgment of acquittal on cts _____ GRANTED (MOTGRJQ)
✓___ Defendant(s) Motion f/judgment of acquittal on cts _1 + 2_ DENIED (MOTDNJQ)
___ Defendant(s) _____ Motion _____ GRANTED / DENIED
___ Defendant(s) _____ Motion _____ GRANTED / DENIED
✓___ Evidence concluded / Final arguments / Court's Charge to Jury / Jury deliberates____
___ Deft(s) _____ jury verdict - GUILTY on Counts _____ (JYVG)
✓___ Deft(s) _01__ jury verdict - NOT GUILTY on Counts _1 and 2_ (JGMG)
___ Deft(s) _____ Court verdict GUILTY on Counts _____ (JGMG)
___ Deft(s) _____ Court verdict NOT GUILTY on Counts _____ (JGMNG)
✓___ Jury trial ends (JYTREND) _____ Court trial ends (BTREND)
___ PSI ordered completed by __/__/__, Objections due by __/__/__, Final PSI __/__/__
___ SENTENCING SET FOR _____ at _9:30 a.m._
___ Hearing held, BOND continued (BAILC) _____ BOND to stand as bond on appeal (DNDSTDBNDAP)
✓___ REMANDED to custody of U.S. Marshal for processing
OTHER PROCEEDINGS: ___ Jury trial ends at 4:10 p.m. _____
_____
_____
_____

Case 1:94-cv-00215   Document 149   Filed in TXSD on 11/05/2001   Page 47 of 101

TRIAL MINUTES CONTINUED
Criminal No. M-01-494-01
UNITED STATES OF AMERICA v. JOSE LOPEZ-ROSALES
THIRD DAY OF JURY TRIAL
September 26, 2001

At 9:58 a.m. Jury trial is called on the docket. All present. Outside the presence of the jury the Court reviews the jury instructions filed by Defendant. Defense will not call any witnesses. Each party will have 22 minutes for closing arguments. Jury is brought in. Mr. Welch moves for the admission of Defense exhibit No. 1 and No. 6. Court admits same. Defense rests. Parties close. Outside the presence of the jury, Defense orally moves for a rule 29 judgment of acquittal as to counts 1 and 2. Government responds. Court DENIES the rule 29 judgment of acquittal as to counts 1 and 2. At 10:56 a.m. parties give their closing arguments. Jury is charged. At 12:11 the two alternate jurors are released and the Court sends the jury to lunch to come back by 1:30 p.m. to start deliberating. Ends. 12:15.

At 2:53 p.m. Jury Note No. 1. Jury is brought in and the Court responds to the Note with all parties present. At 4:07 p.m. the jury is present with a verdict. Defendant is found NOT GUILTY as to Count 1 and NOT GUILTY as to Count 2. Jury is discharged. Court orders that the verdict form be filed and the Defendant is discharged. The Court orders that all exhibits admitted be returned to the party admitting same. No opposition. Ends. 4:10 p.m.

Case 1:94-cv-00215   Document 149   Filed in TXSD on 11/05/2001   Page 48 of 101

United States District Court
Southern District of Texas
FILED

SEP 2 6 2001

# *UNITED STATES DISTRICT COURT*

Michael N. Milby, Clerk

## SOUTHERN DISTRICT OF TEXAS

# VERDICT

**UNITED STATES OF AMERICA**

**v.**                    **CASE NUMBER:** **M-01-494-01**

**JOSE LOPEZ-ROSALES**

WE, THE JURY, FIND: JOSE LOPEZ-ROSALES, the Defendant,

_Not guilty_ , **as to Count 1**
[Insert "GUILTY" or "NOT GUILTY"]

_Not guilty_ , **as to Count 2**
[Insert "GUILTY" or "NOT GUILTY"]

_Esmeralda de la Garza_          9-26-01
FOREPERSON'S SIGNATURE                    DATE





# TEXAS
### DEPARTMENT OF PUBLIC SAFETY
### COMMERCIAL DRIVER LICENSE

CLASS: A         CDL: 00995430
DOB: 04-15-48    HT: 5-04
EXPIRES: 11-15-06  EYES: BRN
REST:            SEX: M
END: P

LOPEZ, JOSE ROSALES
7822 1/2 CHANNELSIDE
HOUSTON TX 77012



Case 1:94-cv-00215 Document 149 Filed in TXSD on 11/05/2001 Page 50 of 101

# VER HOJA NO. 5

ibn

PASAPORTE
PASSPORT    A    -B-HOU-4639    FILIACION DEL TITULAR
PASSEPORT

APELLIDOS, SURNAMES NOMS                    ESTATURA

**LOPEZ ROSALES**                          **1.57 mts.**

NOMBRES GIVEN NAMES PRENOMS                 TEZ

**JOSE**                                    **MORENA**

FECHA DE NACIMIENTO DATE OF BIRTH DATE DE NAISSANCE    OJOS

**15 DE ABRIL, 1948**                       **CAFES**

LUGAR DE NACIMIENTO PLACE OF BIRTH LIEU DE NAISSANCE    PELO

**TLAIMALAC, GUERRERO**                     **ENTRECANO**

SEXO SEX SEXE    ESTADO CIVIL               SEÑAS PARTICULARES

**MASC.**        **CASADO**                 **LUNAR EN LA NARIZ**

DATED DOCE  EXPEDIDO EL DELIVRE LE          EXPIRA EL EXPIRES ON EXPIRE LE

**20 DE OCTUBRE, 1998**    **19 DE OCTUBRE, 1999**

ESTE PASAPORTE FUE EXPEDIDO POR:

## CONSULADO GENERAL

EN:  HOUSTON, TEXAS



FIRMA DEL TITULAR
HOLDER'S SIGNATURE
SIGNATURE DU TITULAIRE



Case 1:94-cv-00215   Document 149   Filed in TXSD on 11/05/2001   Page 51 of 101







Case 1:94-cv-00215 Document 149 Filed in TXSD on 11/05/2001 Page 52 of 101

# VER HOJA NO. 5

ibn

PASAPORTE
PASSPORT
PASSEPORT  ~B~HOU~4831

**FILIACION DEL TITULAR**

APELLIDOS : NOMBRES NOMS

**LOPEZ BARTOLO**
NOMBRES GIVEN NAMES PRENOMS

**OSCAR**

FECHA DE NACIMIENTO · DATE OF BIRTH · DATE DE NAISSANCE

**27 DE SEPTIEMBRE, 1972**

LUGAR DE NACIMIENTO · PLACE OF BIRTH · LIEU DE NAISSANCE

**IXTACALCO, MEXICO, DISTRITO FEDERAL**

SEXO / SEX · SEXE     ESTADO CIVIL

**MASC.     SOLTERO**

EXPEDIDO EL · ISSUED ON · DELIVR...

**30 DE OCTUBRE, 1998**

ESTATURA · PH

**1.68 mts.**

TEZ

**MORENA**

OJOS

**CAPES**

PELO

**CASTAÑO**

SEÑAS PARTICULARES

**CIC. ACNE EN LA CARA**

EXPIRA EL · EXP...

**29 DE OCTUBRE, 1999**

ESTE PASAPORTE FUE EXPEDIDO POR:

## CONSULADO GENERAL

EN: **HOUSTON, TEXAS**

FIRMA DEL TITULAR
HOLDER'S SIGNATURE
SIGNATURE DU TITULAIRE



RECTOR AGUILA MEZA
CONSUL



## PERMANENT RESIDENT CARD

NAME LOPEZ BARTOLO, MARIA G



INS A# 091-240-332

Birthdate          Sex
12/12          W18       F

Country of Birth
Mexico

CARD EXPIRES 02/07/11

Resident Since 11/08/89



```
C1USA0912403329WAC0106254628<<
7312128F1103078MEX<<<<<<<<<<<2
LOPEZ<BARTOLO<<MARIA<GUADALUPE
```

## TEXAS

DEPARTMENT OF PUBLIC SAFETY
DRIVER LICENSE

CLASS:C        DL.  14932302
DOB: 12-12-73        HT: 5-00
EXPIRES: 12-12-01    EYES: BRN
REST: A              SEX: F
END:

LOPEZ,MARIA GUADALUPE
7822 CHANNELSIDE
HOUSTON TX 77012







Case 1:94-cv-00215   Document 149   Filed in TXSD on 11/05/2001   Page 54 of 101



CERTIFICATION OF BIRTH

**City of Houston, Texas**

ANTHONY MARTINEZ

09-30-97  MALE

HARRIS COUNTY, TEXAS

MAX MARTINEZ

MARIA GUADALUPE LOPEZ

FILED 09-19-97          DATE ISSUED 11-25-97

This is a true certification of name and birth facts as recorded in this office.

C147944                      R. W. Hook
ALTERATION, LAMINATION, OR        R. W. Hook, Registrar
ERASURE VOIDS THIS CARD       BUREAU OF VITAL STATISTICS

TO REMOVE CARD—CAREFULLY SEPARATE FORM.

DO NOT LAMINATE CARD



CutePDF - www.fastio.com

Case 1:94-cv-00215 Document 149 Filed in TXSD on 11/05/2001 Page 55 of 101











Oct-02-01  11:09am   From-CALV.N RICHARDSON VERNER                    T-763   P 10/25   F-034

EXHIBIT "A"

HCT28 REV. 11-86

**CARL S. SMITH**
Assessor and Collector of Taxes, Harris County
HOUSTON, TEXAS
Phone 224-1919, Ext. 261

Statement of Tax due, as shown by the
Delinquent Tax Records of Harris County, Texas

NAME, ADDRESS AND PROPERTY DESCRIPTION

| ACCOUNT NO. | | | | |
|---|---|---|---|---|
| NO. | PAGE | SUB | ITEM | |
| 016 | 158 | 000 | 0008 | (057079000031) |

PLEASE NOTE

LOPEZ JOSE R &BUENAVENTURA
7822 CHANNELSIDE
HOUSTON TX    77012

LT 8 BLK 79 HARRISBURG

KNOWN OWNER IF NOT FOUND

TO:   AUGUST 31,    1990

ADDITIONAL CHARGES AFTER THIS DATE

CODE NUMBERS OF SCHOOLS AND CITIES

1989 APPR. VALUE =   119140

| NAME | TO WHOM ASSESSED AS SHOWN BY TAX RECORDS | YEAR DELINQUENT | PENALTY AND INTEREST MAINT. | CO. CG. WIDE DIST'G TAX | PENALTY AND INTEREST | CITY OF HO. | PENALTY AND INTEREST | A CODES SCHOOL OR VALUE | PENALTY AND INT'ST | TOTAL BY YEAR |
|---|---|---|---|---|---|---|---|---|---|---|
| LOPEZ JOSE R PAGE NO: 02515 | 1985 | .00 | 575.66 | 385.69 | 204.14 | .00 | 3.07 PEM | .00 | 1566.49 |
| LOPEZ JOSE R PAGE NO: 02474 | 1986 | .00 | 575.66 | 316.61 | 304.68 | .00 | 76.32 | .00 | 2030.20 |
| LOPEZ JOSE R PAGE NO: 02506 | 1987 | .00 | 575.66 | 247.53 | 351.11 | .00 | 168.63 | .00 | 1873.013 |
| LOPEZ JOSE R &BUENAVE PAGE NO: 04212 | 1988 | .00 | 518.92 | 160.86 | 638.39 | .00 | 136.94 | .00 | 1678.82 |
| LOPEZ JOSE R &BUENAVE PAGE NO: 04334 | 1989 | .00 | 583.25 | 110.82 | 205.59 | .00 | 150.32 | .00 | 1474.89 |
| | | | | | 124.67 | | | .00 | | |

TOTALS   .00   2828.13   1221.51   1160.02   492.01   8603.48

FOR 5 YEARS

TOTAL FORWARDED   .00

TOTAL DELINQUENT TAX DUE
(With Penalty, Interest and Cost)        8603.48

PAY THIS AMOUNT   ───►    8603.48

PROPERTY TAX CODE
STATE OF TEXAS
SUBCHAPTER C. DELINQUENT TAX SUITS

§33.41 Suit to Collect Delinquent Tax
(a) At any time after a tax becomes delinquent, a taxing unit may file suit to foreclose the lien securing payment of the tax, to enforce personal liability for the tax, or both. The suit must be in a court of competent jurisdiction for the county in which the tax was imposed.

PLEASE RETURN THIS STATEMENT WITH REMITTANCE

Case 1:94-cv-00215   Document 149   Filed in TXSD on 11/05/2001   Page 57 of 101

# HARRIS COUNTY TAX OFFICE
## REFUND

# 0263098

263098

JUNE 17, 1991

$475.69

NAME OF RECIPIENT

LOPEZ, JOSE R
AND BUENAVENTURA
7822 CHANNELSIDE
HOUSTON, TX 77012

LT 8 BLK 79

DESCRIPTION OF PROPERTY  HARRISBURG
OR REFERENCE

ACCT # 016-158-000-0008
1984 PRIOR YEAR REFUND     HCAD VALUE REDUCTION
DETACH THIS PORTION AND RETAIN FOR YOUR RECORDS

858234

ClicPDF - www.fastio.com

# ENFORCEMENT OF TAX LIEN

ACCOUNT NUMBER
0161580000008

Il..ll..ll....ll.l.l.l.l.l.l....ll...l.l..l.l.l.l
LOPEZ JOSE R &              003-001-0210      TRS 7A & 8 BLK 79
BUENAVENTURA               21343             HARRISBURG
7822 CHANNELSIDE ST        0003403
HOUSTON TX  77012-2506

                                            7822 CHANNELSIDE ST  77012

Last month we reminded you that your property tax account was delinquent, and that short of full payment legal action was imminent.

Unfortunately, now we must advise you that we are in the process of filing lawsuits against taxpayers who remain delinquent.

**TAKE NOTE**: At any time after a tax becomes delinquent, the taxing unit may enforce its right to collect the unpaid delinquent tax by filing a lawsuit to collect the tax, penalty, interest and fees and foreclosing on the lien.

## IF YOU ARE UNABLE TO PAY IN FULL, CONTACT OUR OFFICE.
## TAKE THIS OPPORTUNITY TO AVOID A LAWSUIT

**For questions contact**                   **To make payment**
Linebarger Heard Goggan Blair              Make check payable to: Paul Bettencourt
Graham Pena & Sampson, LLP                 Mail to:  Paul Bettencourt
Attorneys at Law                           Harris County Tax Assessor/Collector
1021 Main Street, 15th Floor               P.O. Box 4576
Houston, Texas 77002                       Houston, TX 77210-4576
713-844-3561 - fax 713-844-3501

If you think these taxes are paid, please contact the Harris County Tax Office at 713-368-2100. If you are current in paying your taxes under an installment agreement or are a debtor in a pending bankruptcy, please contact us so we can code your account to avoid further mailings to you. If you are in bankruptcy, we will need your cause number. If you are represented by a lawyer, please forward this letter to him/her

      To ensure proper credit, please detach and enclose the bottom portion of this notice with your check

| ACCOUNT NUMBER | MONTH PAID | AMOUNT DUE |
|---|---|---|
| 0161580000008 | February 2001 | $11,052.80 |
| | March 2001 | $11,109.29 |
| | AMOUNT OF YOUR CHECK | |

YEARS DUE:  1985-1999

PLEASE RETURN THIS PORTION WITH YOUR PAYMENT

**PAUL BETTENCOURT**                        LOPEZ JOSE R &
**HARRIS COUNTY TAX ASSESSOR-COLLECTOR**    BUENAVENTURA
**P.O. BOX 4576**                           7822 CHANNELSIDE ST
**HOUSTON, TEXAS 77210-4576**               HOUSTON TX  77012-2506

        0161580000008 8599 001105280 001110929

Case 1:94-cv-00215   Document 149   Filed in TXSD on 11/05/2001   Page 59 of 101

STATE OF TEXAS, COUNTY OF HARRIS
CARL S. SMITH ASSESSOR AND COLLECTOR

TAX STATEMENT 1988

RECEIPT NUMBER
(88) 1-027450

e87598  DO NOT DETACH  RETURN ALL COPIES

ACCOUNT NUMBER
016-158-000-0008

CORRECTION # 13
(SCH 001)

| | 100% LAND VALUE | 15020 |
| (MARKET VALUE) | 100% BUILDING VALUE | 15450 |
| | 100% TOTAL VALUE | 30470 |

*PRIOR YEARS
TAXES DUE ON
THIS ACCOUNT

TAXES
PAYABLE
OCT 1
THRU
JAN. 31

PENALTY
AND
INTEREST
12%

LOPEZ JOSE R &
BUENAVENTURA
7822 CHANNELSIDE
HOUSTON TX 77012

LT 8 BLK 79
HARRISBURG

TAX RATE CALCULATED PER 1/100 VALUE

HONESTEAD ALLOWED

| UNITS | TAX RATE | TAXABLE VALUE | TAXES |
|---|---|---|---|
| CO | .29455 | 25470 | 75.02 |
| FC | .03764 | 25470 | 9.59 |
| SE | .00362 | 25470 | .92 |
| NA | .01091 | 25470 | 2.78 |
| HO | .14621 | 25470 | 37.24 |
| C41 | .63000 | 25470 | 160.46 |

-113090

-90

PEN. & INT AFTER 12-31-90  =
TOTAL TAXES DUE  286.01
AMOUNT DUE

PAID RECEIPT WHEN MACHINE VALIDATED

Case 1:94-cv-00215   Document 149   Filed in TXSD on 11/05/2001   Page 60 of 101



**Department of the Treasury**
**Internal Revenue Service**
AUSTIN, TX  73301

Date of this notice    SEP. 17, 2001
Taxpayer Identifying Number    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
Form  1040EZ
Tax Period    DEC. 31, 2000

For assistance you may
call us at

1-800-829-1040

Or you may write to us at
the address shown at the
left. If you write, be
sure to attach the bottom
part of this notice

CALLER ID:  946583

BUENAVENTURA C  LOPEZ
7822 CHANNELSIDE
HOUSTON  TX  77012-2506226

**OVERPAID TAX APPLIED TO**
**OTHER FEDERAL TAXES OWED ON**
**SECONDARY SOCIAL SECURITY NUMBER**

OUR RECORDS SHOW YOU OWED OTHER FEDERAL TAXES UNDER SOCIAL SECURITY  NUMBER
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, THEREFORE        $285.70 OF THE OVERPAID TAX ON YOUR TAX RETURN FOR THE
ABOVE YEAR HAS BEEN APPLIED TO THE UNPAID AMOUNT.  THE FIGURES BELOW SHOW THE AMOUNT OF
ANY REFUND DUE YOU.  IF SO, A CHECK WILL BE SENT TO YOU FOR THE TOTAL AMOUNT DUE IF IT IS
MORE THAN $1 AND YOU OWE NO OTHER OBLIGATIONS.  HOWEVER, IF THE AMOUNT DUE YOU IS LESS
THAN $1, IT WILL BE SENT TO YOU ONLY IF YOU ASK FOR IT.

**TAX STATEMENT**

YOUR OVERPAID TAX ON RETURN.........................$285.70
AMOUNT OF OVERPAID TAX APPLIED.......................$285.70

AMOUNT TO BE APPLIED TO OTHER OBLIGATIONS,
REFUNDED, OR APPLIED TO YOUR ESTIMATED TAX..............$.00

(IF YOU ARE DUE A REFUND FROM THE INTERNAL REVENUE SERVICE, YOUR CHECK WILL BE MAILED
IN 6 TO 8 WEEKS.  ANY INTEREST DUE YOU WILL BE ADDED).

**HOW YOUR OVERPAID TAXES WERE APPLIED**

| SOCIAL SECURITY NUMBER | FORM(S) | TAX PERIOD(S) | AMOUNT APPLIED |
|---|---|---|---|
| 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 | 1040 | DEC. 31, 1989 | $285.70 |

THIS IS NOT A BILL.  YOU MAY RECEIVE ANOTHER NOTICE IN THE NEXT FEW WEEKS.

To make sure that IRS employees give courteous responses and correct information to taxpayers, a second IRS employee sometimes listens in on
telephone calls.
Overlay 5 Form 8489 (Rev 8-91)
**Keep this part for your records**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**Return this part to us with your check or inquiry**

| Your telephone number | Best time to call |
|---|---|
| (   )   —  |   |

200156              18207-112-45087-1

INTERNAL REVENUE SERVICE          BUENAVENTURA C  LOPEZ
AUSTIN, TX  73301                 7822 CHANNELSIDE
                                  HOUSTON TX  77012-2506226

(42)

452934567 IH 0000 00   200012

CutePDF · www.foxitsoftware.com

Case 1:94-cv-00215   Document 149   Filed in TXSD on 11/05/2001   Page 61 of 101

UI Support & Customer Service
TEXAS WORKFORCE COMMISSION
BOX 131408
HOUSTON TX 77219-1408

### RESOLUCION SOBRE EL PAGO DE BENEFICIOS DE DESEMPLEO
#### Fecha de envío: Febrero 27, 2001

JOSE R LOPEZ
7822 CHANNELSIDE ST
HOUSTON TX 77012-2506

Número de seguro social:   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
Nombre de patrón: PBL INC
Cómo:

Núm. de cuenta del patrón: 01-951584-2
Las fechas se escriben según
el sistema de: mes-día-año.

---

**Decisión**

Asunto: Disponibilidad-Por no ser ciudadano/a
Decisión: Podemos pagarle beneficios.
Base de la decisión: Nuestra investigación ha revelado que usted tiene autorización legal para trabajar en este país
Cita jurídica: Sección 207.021(a)(3) de la Ley de Compensación de Desempleo de Tejas.

---

**Resolución de posibles recargos al Patrón**

---

**Qué hacer si usted no está de acuerdo con esta decisión**

Si no está de acuerdo con esta decisión, puede apelar. Envíe su apelación por fax, o si la envía por correo asegúrese de que el matasellos indique la fecha de **03-13-01** o antes. Su apelación deberá presentarse por escrito y enviarse a la siguiente dirección:

Appeal Tribunal
Texas Workforce Commission
101 E. 15th Street
Austin, TX 78778-0002
FAX (512) 475-1135

Para saber cómo apelar, sírvase pasar al dorso de esta hoja.

| Case No. | 2 |
|---|---|
| Claim ID | 02-13-01 |
| Claim Date | 02-14-01 |

**SERVICIO PARA CLIENTES SORDOS**
Relay Texas TDD Núm.: 1-800-735-2989

803005 08/28/96

CSMPDF - www.fesisa.com

Case 1:94-cv-00215   Document 149   Filed in TXSD on 11/05/2001   Page 62 of 101

U: Support & Customer Service
TEXAS WORKFORCE COMMISSION
BOX 131406
HOUSTON TX 77219-1408

## DETERMINATION ON PAYMENT OF UNEMPLOYMENT BENEFITS
### Date Mailed:   February 27, 2001

JOSE R LOPEZ
7822 CHANNELSIDE ST
HOUSTON TX 77012-2506
llllllllllllllllllllllllllllllllllllllllllllll

Social Security Number: 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
Employer:  PBL INC
As:
Employer Account No.:  01-951584-2

| Decision |
|---|

**Issue:** Availability-Non-citizen
**Decision:** We can pay you benefits
**Reason for Decision:** Our investigation found you have legal authorization to work in this country.
**Law Reference:** Subsection 207.021(a)(4) of the Texas Unemployment Compensation Act.

| Determination of Potential Chargeback for the Employer |
|---|

| If You Disagree With This Decision |
|---|

If you disagree with this decision, you may appeal. Fax or have any appeal you may file postmarked on or before 03-13-01.
Please include a copy of this notice with Appeals correspondence. The Appeal must be in writing to this address:

Appeal Tribunal
Texas Workforce Commission
101 E. 15th Street
Austin, TX 78778-0002
FAX (512) 475-1135

Please see reverse for how to file an appeal.

| Case No   2 |
|---|
| Claim ID   02-18-01 |
| Claim Date   02-18-01 |
| FOR HEARING IMPAIRED CLIENTS |
| Relay Texas TDD No   1-800-735-2989 |

BD300E 07/21/96

CutePDF - www.tsolex.com

. Oct-02-01  11:12am  From-CALVIN RICHARDSON VERNER       +        T-769  P 17/26  F-034

**TAX OFFICE**
**3233 Wesleyan, Suite A100**
**Houston, Texas 77027**
**(713) 892-7700**
**May 18, 1995**
ACCOUNT NUMBER
016/139/000/0008

NOTICE OF SECTION 33.07 PENALTY?

Pursuant to Section 33.07 Texas Property Tax Code, taxes that remain delinquent for the Houston Independent School District in 1994 on July 1 of the year in which they become delinquent incur additional penalty, in the amount of fifteen percent (15%) of the taxes, penalty, and interest due to defray the costs of collections as authorized by the Houston Independent School District.

NOTICE TO TAXPAYERS AGE 65 OR OLDER

If this property is your homestead and you are sixty-five (65) or older and have applied to have the collection of taxes on your homestead deferred the penalty will be imposed on taxes which remain delinquent more than 90 days after the date the deferral period expires.

| OWNER NAME AND ADDRESS | PROPERTY DESCRIPTION |
|---|---|
| LOPEZ JOSE R &<br>BUENAVENTURA<br>7822 CHANNELSIDE ST<br>HOUSTON, TX  77012-2506 | TRS 7A & 8 BLK 79<br>HARRISBURG |

| YEAR | ENTITY | BASE TAX | IF PAID IN MAY 1995 | | IF PAID IN JUNE 1995 | | IF PAID IN JULY 1995 | |
|---|---|---|---|---|---|---|---|---|
| | | | PENALTY & INTEREST | TOTAL | PENALTY & INTEREST | TOTAL | PENALTY & INTEREST | TOTAL |
| 94 | HISD | 368.14 | 47.86 | 416.00 | 55.22 | 423.36 | 131.43 | 499.57 |
| 93 | HISD | 368.14 | 173.76 | 541.90 | 178.00 | 546.14 | 182.23 | 550.37 |
| 92 | HISD | 125.55 | 76.59 | 202.14 | 78.03 | 203.58 | 79.47 | 205.02 |
| 92 | HCED | 242.59 | 147.98 | 390.57 | 150.77 | 393.36 | 153.56 | 396.15 |
| 91 | HISD | 71.82 | 53.73 | 125.55 | 54.54 | 126.36 | 55.37 | 127.19 |
| 91 | HCED | 207.48 | 155.20 | 362.68 | 157.58 | 365.06 | 159.97 | 367.45 |
| 90 | HISD | 266.00 | 235.68 | 501.68 | 238.74 | 504.74 | 241.79 | 507.79 |
| 89 | HISD | 180.52 | 184.86 | 365.38 | 186.93 | 367.45 | 189.01 | 369.53 |
| 88 | HISD | 161.29 | 161.45 | 322.74 | 163.31 | 324.60 | 165.16 | 326.45 |
| 87 | HISD | 239.01 | 310.71 | 549.72 | 313.46 | 552.47 | 316.21 | 555.22 |
| 86 | HISD | 264.89 | 380.92 | 645.81 | 383.96 | 648.85 | 387.00 | 651.89 |

| TOTAL AMOUNT DUE | $4,424.17 | $4,455.97 | $4,556.63 |
|---|---|---|---|

PLEASE DETACH AND RETURN BOTTOM PORTION WITH YOUR PAYMENT

MAKE YOUR CHECK, MONEY ORDER
OR CASHIER'S CHECK PAYABLE TO
**HOUSTON INDEPENDENT
SCHOOL DISTRICT**

**HOUSTON INDEPENDENT SCHOOL DISTRICT**

| ACCOUNT NUMBER | MONTH PAID | AMOUNT DUE |
|---|---|---|
| 016/139/000/0008 | MAY 1995 | $4,424.17 |
| | JUNE 1995 | $4,455.97 |
| | JULY 1995 | $4,556.63 |
| | AMOUNT OF YOUR CHECK | |

H.I.S.D. TAX COLLECTION OFFICE
P.O. BOX 4668
HOUSTON, TEXAS 77210-4668

LOPEZ JOSE R &
BUENAVENTURA
7822 CHANNELSIDE ST
HOUSTON, TX  77012-2506

0001615800000089000044241700004455970000455663

Case 1:94-cv-00215 Document 149 Filed in TXSD on 11/05/2001 Page 64 of 101



RECEIPT FOR TEXAS TITLE APPLICATION/REGISTRATION/MOTOR VEHICLE TAX

Y674251

**DUPLICATE ORIGINAL OWNER'S COPY 5**

THIS REGISTRATION RECEIPT MUST BE CARRIED ON ALL COMMERCIAL VEHICLES

Oct-02-01  11:13am   From-CALVIN RICHARDSON VERVER                    T-709   P 18/20   F-034

**Report of Individual**
**Income Tax Examination Changes**

**Department of the Treasury**
**Internal Revenue Service**

---

| NAME AND ADDRESS OF TAXPAYER: | DATE OF REPORT: | 09/28/92 |
|---|---|---|
| JOSE R & B CARMEN LOPEZ | SOC. SEC. NUMBER: | 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 |
| | FORM: | 1040 |
| 7822 CHANNELSIDE | YEAR: | 1989 |
| HOUSTON, TX.          77012-2506 | FILING STATUS: | JOINT |
| | EXAMINING DISTRICT: | 076 |
| NAME AND TITLE OF PERSON WITH WHOM | NAME OF EXAMINER: | G.M.REL |
| CHANGES WERE DISCUSSED: | IN REPLY REFER TO: | HOA2509GR |

---

| EXPLANATION NUMBERS | | INCOME AND DEDUCTION AMOUNTS ADJUSTED | ADJUSTMENT INCREASE (DECREASE) |
|---|---|---|---|
| 1406 | (N) | 1099-INCOME:JACAMAN TRANS. | 23,509.00 |
| 1406 | (N) | 1099-INCOME:KELLY TRANS.INC. | 1,791.00 |
| 8142 | | NEGLICENCE | |
| 8214 | (N) | SELF-EMPLOYMENT TAX-TAXPAYER | |
| 7601 | | EARNED INCOME CREDIT | |

---

A. ADJUSTMENTS TO INCOME AND/OR DEDUCTIONS - INCREASE          25,300.00

B. PLUS TAXABLE INCOME AS SHOWN ON RETURN                    (10,116.00)

C. CORRECTED TAXABLE INCOME                                    15,184.00

D. TAX COMPUTED WITH  6 EXEMPTIONS    TAX TABLE                 2,276.00

E. PLUS OTHER TAXES:
     SELF EMPLOYMENT TAX              3,294.00
     TOTAL OTHER TAXES                                          3,294.00

F. CORRECTED TAX   CARRIED TO NEXT PAGE                         5,570.00

---

Case 1:94-cv-00215   Document 149   Filed in TXSD on 11/05/2001   Page 66 of 101

Report of Individual
Income Tax Examination Changes

Department of the Treasury
**Internal Revenue Service**

| | | |
|---|---|---|
| NAME AND ADDRESS OF TAXPAYER:<br>JOSE R & B CARMEN LOPEZ<br><br>7822 CHANNELSIDE<br>HOUSTON, TX,           77012-2506 | DATE OF REPORT:<br>SOC. SEC. NUMBER:<br>FORM:<br>YEAR:<br>FILING STATUS: | 09/28/92<br>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<br>1040<br>1989<br>JOINT |
| NAME AND TITLE OF PERSON WITH WHOM<br>CHANGES WERE DISCUSSED: | EXAMINING DISTRICT:<br>NAME OF EXAMINER:<br>IN REPLY REFER TO: | 076<br>G.M.REL<br>HOA2509GR |

F. CORRECTED TAX    FROM PRECEDING PAGE                              5,570.00

G. LESS TAX AS SHOWN ON RETURN                                          0.00
   AND EARNED INCOME CREDIT ADJUSTMENT                           (     910.00)

H. DEFICIENCY                                                       6,480.00

I. BALANCE DUE                                                      6,480.00

J. PENALTIES:
   ACCURACY RELATED PENALTY, SEC. 6662(a) I.R.C.                   1,114.00

ALTHOUGH THIS REPORT IS SUBJECT TO REVIEW, YOU MAY CONSIDER IT AS YOUR
NOTICE THAT YOUR CASE IS CLOSED IF YOU ARE NOT NOTIFIED OF AN EXCEPTION
TO THESE FINDINGS WITHIN 15 DAYS AFTER A SIGNED COPY OF THIS REPORT OR A
SIGNED WAIVER, FORM 870, IS RECEIVED BY THE DISTRICT DIRECTOR. IF YOU
AGREE, PLEASE SIGN ONE COPY OF THIS REPORT, AND RETURN IT IN THE ENCLOSED
ENVELOPE.   KEEP THE OTHER COPY WITH YOUR RECORDS.

CONSENT TO ASSESSMENT AND COLLECTION - I DO NOT WISH TO EXERCISE MY APPEAL
RIGHTS WITH THE INTERNAL REVENUE SERVICE OR TO CONTEST IN THE UNITED STATES
TAX COURT THE FINDINGS IN THIS REPORT.  THEREFORE; I CONSENT TO:  THE
IMMEDIATE ASSESSMENT AND COLLECTION OF THE TOTAL DUE ON THE ATTACHED
EXPLANATION OF ADJUSTMENTS.

YOUR SIGNATURE                      DATE        SPOUSE'S SIGNATURE              DATE
                                                (IF JOINT RETURN FILED)

1                                          PAGE  2

Case 1:94-cv-00215   Document 149   Filed in TXSD on 11/05/2001   Page 67 of 101

Report of Individual
Income Tax Examination Changes

Department of the Treasury
Internal Revenue Service

## EXPLANATION OF ADJUSTMENTS

JOSE R & B CARMEN LOPEZ                1989      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      09/28/92

THE PENALTY ITEM INDICATORS LISTED BELOW CORRESPOND TO THE ITEM(S)
ADJUSTED FOR WHICH A PENALTY HAS BEEN ASSERTED.
    (N)  NEGLIGENCE
    (F)  FRAUD
    (O)  VALUATION OVERSTATEMENT-10% (V)-20% (E)-30% (R)-40%
    (U)  SUBSTANTIAL UNDERSTATEMENT
    (T)  TAX MOTIVATED TRANSACTIONS
    (P)  NEGLIGENCE - INCOME REPORTED ON FORM 1099 AND CERTAIN OTHER INCOME

TOTAL AMOUNT DUE AS A RESULT
OF THE EXAMINATION ON 09/28/92    $    9,680.25

    ADDITIONAL TAXES:
      BALANCE DUE                              6,480.00
    TOTAL ADDITIONAL TAXES:                      6,480.00

    INTEREST:
      INTEREST DUE BASED ON STATUTORY
                    INTEREST RATES            1,780.20
    TOTAL ADDITIONAL TAXES PLUS INTEREST        8,260.20

    PENALTIES:

  - SEE ATTACHED COMPUTATION

    ACCURACY RELATED I.R.C. 6662(a)           1,114.00
    INTEREST ON ACCURACY RELATED PENALTY        306.05
    TOTAL PENALTIES                            1,420.05

                CONTINUED ON NEXT PAGE

                    PAGE  3                                    1

Oct-02-01  11:15am   From-CALVIN RICHARDSON VERNER              +         T-760   P 22/26   F-034

Report of Individual                                                    Internal Revenue Service
Income Tax Examination Changes

EXPLANATION OF ADJUSTMENTS


JOSE R & B CARMEN LOPEZ                    1989      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      09/28/92

CONTINUED FROM PRECEDING PAGE


XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
TOTAL ADDITIONAL TAXES, INTEREST AND
PENALTIES AS OF 09/28/92                                  $     9,630.23
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

     ADDITIONAL INTEREST WILL BE CHARGED AT THE CURRENT RATE OF 09
PERCENT COMPOUNDED DAILY.  INTEREST IS CHARGED FROM THE ORIGINAL DUE
DATE OF THE RETURN TO THE EARLIER OF THE DATE OF PAYMENT, A DATE 30 DAYS
AFTER AN AGREEMENT TO THE ADDITIONAL TAX IS SIGNED, OR THE ASSESSMENT DATE.
NEGLIGENCE AND FRAUD PENALTIES, IF APPLICABLE, WILL ALSO CONTINUE
TO BE CHARGED.  GENERALLY, IF NOTICE AND DEMAND IS MADE FOR PAYMENT
OF ANY AMOUNT, AND THAT AMOUNT IS PAID WITHIN 10 DAYS AFTER THE
DATE OF THE NOTICE AND DEMAND, INTEREST ON THE AMOUNT PAID WILL NOT
BE CHARGED AFTER THE DATE OF THE NOTICE AND DEMAND.
SINCE ADDITIONAL TAX IS DUE, YOU MAY WANT TO PAY IT NOW AND LIMIT THE
INTEREST AND PENALTY CHARGES.  PLEASE MAKE YOUR CHECK PAYABLE TO
INTERNAL REVENUE SERVICE.

     IN ARRIVING AT YOUR TAX DEFICIENCY, AMOUNTS HAVE BEEN ROUNDED
TO THE NEAREST DOLLAR.

     IRS HAS EXCHANGE AGREEMENTS WITH STATE TAX AGENCIES
UNDER WHICH INFORMATION ABOUT INCREASES OR DECREASES IN
FEDERAL TAX LIABILITY IS EXCHANGED WITH STATES.  YOU
SHOULD CHECK YOUR STATE TAX RETURN AND FILE AN AMENDED
RETURN IF THIS CHANGE AFFECTS YOUR STATE INCOME TAX
LIABILITY.

     YOU MAY BE SUBJECT TO BACKUP WITHHOLDING IF YOU
UNDERREPORT YOUR INTEREST, DIVIDEND, OR PATRONAGE
DIVIDEND INCOME AND DO NOT PAY THE TAX.  BACKUP
WITHHOLDING, AT THE RATE OF 20 PERCENT, MAYBE ORDERED
BY THE IRS AFTER YOU HAVE RECEIVED FOUR NOTICES ABOUT
BACKUP WITHHOLDING, ISSUED OVER 120 DAYS, AND THE TAX
HAS BEEN ASSESSED AND REMAINS UNPAID.

     1406  1099-INCOME:JACAMAN TRANS.
          WE HAVE ADJUSTED YOUR INCOME TO
     INCLUDE THE AMOUNT SHOWN ON FORM 1099-MISC.

                    CONTINUED ON NEXT PAGE
                         PAGE  4

Report of Individual
Income Tax Examination Changes

Department of the Treasury
**Internal Revenue Service**

EXPLANATION OF ADJUSTMENTS

JOSE R & B CARMEN LOPEZ          1989    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    09/28/92

CONTINUED FROM PRECEDING PAGE

|  |  |  |
|---|---|---|
| SHOWN ON RETURN OR AS PREV. ADJUSTED | $ | 0.00 |
| CORRECTED AMOUNT | $ | 23,509.00 |
| ADJUSTMENT | $ | 23,509.00 |

1406  1099-INCOME:KELLY TRANS.INC.
     WE HAVE ADJUSTED YOUR INCOME TO
INCLUDE THE AMOUNT SHOWN ON FORM 1099-MISC.

|  |  |  |
|---|---|---|
| SHOWN ON RETURN OR AS PREV. ADJUSTED | $ | 0.00 |
| CORRECTED AMOUNT | $ | 1,791.00 |
| ADJUSTMENT | $ | 1,791.00 |

8142  NEGLIGENCE
     YOU ARE LIABLE FOR THE ACCURACY-RELATED PENALTY
IMPOSED UNDER SECTION 6662(a) OF INTERNAL REVENUE CODE
BECAUSE YOU WERE NEGLIGENT (OR DISREGARDED RULES AND
REGULATIONS) AND YOU HAVE NOT SHOWN YOU HAD REASONABLE
CAUSE FOR THE UNDERPAYMENT OF TAX AND THAT YOU ACTED IN
GOOD FAITH.  THE PENALTY IS TWENTY (20) PERCENT OF THE
PORTION OF THE UNDERPAYMENT OF TAX WHICH IS ATTRIBUTABLE
TO NEGLIGENCE (OR DISREGARD OF RULES OR REGULATIONS).
THIS PENALTY SECTION IS EFFECTIVE FOR TAX RETURNS DUE
AFTER DECEMBER 31, 1989.

8214  SELF-EMPLOYMENT TAX-TAXPAYER
     SELF-EMPLOYED PERSONS WHO HAVE NET
EARNINGS OF AT LEAST $400 FROM THIS WORK ARE
REQUIRED TO PAY SELF-EMPLOYMENT TAX.

7601  EARNED INCOME CREDIT
     SINCE WE HAVE CHANGED YOUR ADJUSTED
GROSS INCOME OR EARNED INCOME REPORTED ON YOUR
RETURN, WE HAVE ALSO ADJUSTED YOUR EARNED INCOME
CREDIT.

PAGE  5

Case 1:94-cv-00215 Document 149 Filed in TXSD on 11/05/2001 Page 70 of 101

Report of Individual
Income Tax Examination Changes

**Department of the Treasury
Internal Revenue Service**

EXPLANATION OF ADJUSTMENTS

JOSE R & B CARMEN LOPEZ                1989      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      09/28/92

COMPUTATION OF ACCURACY RELATED PENALTY I.R.C. 6662

| | | |
|---|---|---|
| 1. DEFICIENCY (UNDERSTATEMENT) COMPUTED WITH ALL THE ADJUSTMENTS | | 6,480.00 |
| 2. DEFICIENCY (UNDERSTATEMENT) ATTRIBUTABLE TO I.R.C. SECTION 6663 (CIVIL FRAUD) | | .00 |
| 3. ADJUSTMENTS EXCLUDING I.R.C. SECTIONS 6662 AND 6663 ADJUSTMENTS | .00 | |
| 4. TAXABLE INCOME PER RETURN | ( 10,116.00) | |
| | -------------- | |
| 5. 'ADJUSTED' TAXABLE INCOME (LINES 3 PLUS 4) | ( 10,116.00) | |
| 6. CORRECT TAX ON LINE 5 PLUS APPLICABLE ADJUSTMENTS TO EARNED INCOME CREDIT AND SPECIAL FUELS CREDIT | 910.00 | |
| 7. TAX PER RETURN | .00 | |
| | -------------- | |
| 8. DEFICIENCY (UNDERSTATEMENT) EXCLUDING I.R.S. SECTIONS 6662 AND 6663 ADJUSTMENTS (LINE 6 LESS LINE 7) | | 910.00 |
| 9. DEFICIENCY (UNDERSTATEMENT) ATTRIBUTABLE TO I.R.C. SECTION 6662 (LINE 1 LESS LINES 2 AND 8) | | 5,570.00 |
| 10. PREPAYMENT CREDITS ATTRIBUTABLE TO I.R.C. SECTION 6662 ADJUSTMENTS | | .00 |
| 11. UNDERPAYMENT ATTRIBUTABLE TO I.R.C. SECTION 6662 (LINE 9 LESS LINE 10 - ZERO IF LESS THAN ZERO) | | 5,570.00 |
| 12. UNDERPAYMENT ATTRIBUTABLE TO I.R.C. SECTION 6662(h) (40% PENALTY) | | .00 |
| | | -------------- |
| 13. UNDERPAYMENT TO WHICH THE 20% I.R.C. SECTION 6662 PENALTY APPLIES (LINE 11 LESS LINE 12) | | 5,570.00 |
| 14. 40% OF LINE 12 | .00 | |
| 15. PREVIOUSLY ASSESSED 40% ACCURACY PENALTY | .00 | |
| | -------------- | |
| 16. 40% ACCURACY PENALTY I.R.S. 6662(h) (LINE 14 LESS LINE 15) | | $ .00 |
| 17. 20% OF LINE 13 | 1,114.00 | |
| 18. PREVIOUSLY ASSESSED 20% ACCURACY PENALTY | .00 | |
| | -------------- | |
| 19. 20% ACCURACY PENALTY I.R.C. 6662(a) (LINE 17 LESS LINE 18) | | $ 1,114.00 |

PAGE  6                                                           1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,          )
                                )
v.                              )      C.A. No.  B-94-215
                                )
TROMINSKI, et al.               )
_____)

EXHIBIT "MM"
FILED IN SUPPORT OF

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Come Plaintiffs, and file herewith, in support of their opposition
to Defendants' Motion For Summary Judgment, a copy of the Parole
document given to class member Jose Rosales Lopez, A91 240 328,
when he was released on parole, pending his removal hearing.


Respectfully Submitted,


Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731

Fed. ID.  1178
Texas Bar 03052800


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were sent by UPS to Anthony Payne, Attorney, OIL, at 1331
Penn Ave. N.W. D.C., Wash., D.C. 20004, on November 5, 2001.

Oct-04-01  02:22pm   From-CALVIN RICHARDSON VERNER            +            T-780   P 03/03   F-057



046281905 02

April 02, 2002
Pending Removal
Proceedings

PSC   10-03-01   JLA/DPO

Apellido
R O S A L E S   L O P E Z

Primer nombre                                    Fecha de nacimiento
J O S E                                          1 5 0 4 4 8

Ciudadanía
M E X I C A N

Vea el reverso                                   **STAPLE HERE**

Aviso - Si la persona que no es inmigrante acepta empleo sin autorización está sujeta a deportación.

**Nota importante** - Retenga Ud. este permiso que debe presentar al salir de E.U. *Al no hacerlo prolongaría su entrada a E.U. en el futuro.*

UD. está autorizado a quedarse en E.U. solamente hasta la fecha indicada en esta planilla. Al pasar la fecha indicada sin el permiso de las autoridades de Inmigración sería violar la ley.

**Entréguele este permiso al salir de E.U.**
   – A la línea de transportación, ya sea por mar o por aire,
   – al oficial canadiense, al cruzar la frontera canadiense;
   – al oficial estadounidense, al cruzar la frontera mejicana.

Estudiantes que planean volver a entrar a los E.U. con plazo de 30 días para asistir a la misma escuela, léan "Llegada y salida" en página 2. Formulario I-20 antes de entregar este permiso.   **Record of Changes**

A 91 240 328

A 91 240 329   correct A# JLA

Port:                                            Departure Record

Date:

Carrier:

Flight #/Ship Name:

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,      )
                           )
v.                         )      C.A. No.  B-94-215
                           )
TROMINSKI, et al.          )
_____)

EXHIBIT "NN"
FILED IN SUPPORT OF

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Come Plaintiffs, and file herewith, in support of their opposition
to Defendants' Motion For Summary Judgment, a copy of the Decision
of the Board of Immigration Appeals in the case of Jesus Garza-
Pacheco, vacating his deportation order, and remanding the case to
the Immigration Court for further proceedings.


Respectfully Submitted,

Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731

Fed. ID.  1178
Texas Bar 03052800


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were sent by UPS to Anthony Payne, Attorney, OIL, at 1331
Penn Ave. N.W. D.C., Wash., D.C. 20004, on November 5, 2001.





# U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

**Brodyaga, Lisa S.**
**17891 Landrum Park Road,**
**San Benito, TX 78586-0000**

**Office of the District Counsel/EL**
**1545 Hawkins Blvd., Suite 167**
**El Paso, TX 79925**

**Name: GARZA-PACHECO, JESUS**                    A31-298-296

Date of this notice: 08/08/2001

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Very Truly Yours,

Lori Scialabba
Acting Chairman

Enclosure

Panel Members:
    HOLMES, DAVID B.
    HURWITZ, GERALD S.
    MILLER, NEIL P.

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:  A31 298 296 - El Paso

Date:  AUG 0 8 2001

In re:  JESUS GARZA-PACHECO

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:    Lisa S. Brodyaga, Esquire

CHARGE:

Order:    Sec.    241(a)(11), I&N Act [8 U.S.C. § 1251(a)(11)] -
Convicted of controlled substance violation

APPLICATION:  Section 212(c) waiver

ORDER:

PER CURIAM.  This case was previously before us on April 25, 1997, when we dismissed the respondent's appeal from an Immigration Judge's decision denying his application for a waiver of deportation under former section 212(c) of the Immigration and Nationality Act, 8 U.S.C. §1182(c). The Immigration Judge found that the respondent could not qualify for section 212(c) relief because he had not been lawfully admitted for permanent residence.  Our decision in the case was based on the Attorney General's decision in *Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996; A.G. 1997). Under that decision, the respondent was statutorily ineligible for a section 212(c) waiver due to section 440(d) of the Antiterrorism and Effective Penalty Act of 1996, Pub. L.No 104-132, 110 Stat. 1214, 1277 ("AEDPA").

On August 26, 1998, the United States District Court for the Southern District of Texas vacated our decisions in this matter and remanded the case to us, to afford the respondent an opportunity to pursue an application for section 212(c) relief.  On March 27, 2001, the United States Court of Appeals for the Fifth Circuit granted the government's unopposed motion to withdraw and dismiss the appeal it had taken from the district court's decision.  Further, the Attorney General has now established by regulation, codified at 8 C.F.R. § 212.3(g), that section 440(d) of AEDPA shall not apply to any applicant for section 212(c) relief whose deportation proceedings were commenced before the Immigration Court prior to April 24, 1996.  The proceedings in this case were commenced before that date.  In addition, the Supreme Court has recently found that section 212(c) relief remains available to aliens such as the respondent. *INS v St Cyr*, ___ U.S. ___ (2001 WL 703922) (June 25, 2001).

CSdPDF - www.tasw.com

A31 298 296

Upon review of the record, we find that a remand is appropriate. This case has a long and complicated history which goes back many years. The respondent is alleging eligibility for various waivers. We believe the respondent's present eligibility for relief from deportation, as well as the issue of discretion, should eligibility be established, can best be assessed at a new hearing before an Immigration Judge. In addition, on remand the issue of the respondent's attempted collateral attack on his prior deportation should be considered. This issue should be considered in light of the apparently undisputed material facts set forth in the June 10, 1995, decision, of the United States District Court for the Southern District of Texas, in *Ascencio v Trominski*, which is included in the Record of Proceeding. Accordingly, the record is remanded to the Immigration Judge for further proceedings.

_____
FOR THE BOARD

2

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,      )
                           )
v.                         )      C.A. No.  B-94-215
                           )
TROMINSKI, et al.          )
_____    )

EXHIBIT "OO"
FILED IN SUPPORT OF

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Come Plaintiffs, and file herewith, in support of their opposition
to Defendants' Motion For Summary Judgment, copies from the INS A-
file of Isidro Reyna-Sauceda, to wit: 1) a statement of Mr. Reyna,
admitting that he had possessed a "little baggy" of marijuana when
he sought admission to the United States;  2) the Decision of the
Immigration Judge, admitting him as a returning resident, 3) a
receipt for his drivers licence and Social Security Card, returned
to his attorney after the Immigration Judge issued a final
decision, 4) a letter requesting return of his "green card," and 5)
receipt for same, showing that it was returned on October 11, 1994.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731
Fed. ID.  1178
Texas Bar 03052800

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were sent by UPS to Anthony Payne, Attorney, OIL, at 1331
Penn Ave. N.W. D.C., Wash., D.C. 20004, on November 5, 2001.



# UNITED STATES DEPARTMENT OF JUSTICE
### IMMIGRATION AND NATURALIZATION SERVICE

## RECORD OF SWORN STATEMENT AND AFFIDAVIT FORM
### AFFIDAVIT–WITNESS

IN RE: REYNA-Saucedo,Isidro                 FILE NO A090 426 509

EXECUTED AT GW BRIDGE, BROWNSVILLE, TEXAS DATE 07 25 94

In the SPANISH language.  Interpreter NOT used.

I, Isidro REYNA-Saucedo                   acknowledge that the above named officer has identified himself to me as an officer of the United States Immigration and Naturalization Service authorized by law to administer oaths and take testimony in connection with the enforcement of the Immigration and Nationality laws of the United States.  He has informed me that he desires to take my sworn statement regarding my application for admission into the United States.

He has told me that my statement must be made freely and voluntarily.  I am willing to make such a statement. I swear that I will tell the truth, the whole truth, and nothing but the truth, so help me God. My true and correct name is Isidro REYNA-Saucedo, I was born 05 15 59 in Monterrey Nuevo Leon,Mexico. I am now and have always been a native and citizen of Mexico as are both my parents. I became a legal United States res- ident Alien in 1990 through amnesty,President Reagan gave us a chance and I took it. Today I was coming from Matamoros,Ta.,Mexico. I had gone to Mexico to see my parents,while there though,I took advantage and got hold of a friend of mine I asked him if he could get me some marijuana,he said yes and I gave him about $40.00 U.S. dollars and he gave me a little baggy. I put the baggy in my pants near my crouch and proceeded to come to Brownsville. When I got to the bridge the inspec- tor sent me through,but then there was another with a dog. He asked me to go in- to another room and there the dog started sniffing at my crouch,and I decided to take it out and tell the truth. I am very sorry that this happened,I have 5 children that I need to take care of, I have my job and my wife. I know that I did a very stupid thing and I want to say that I am sorry.

I swear that the above statement is true and correct to the best of my knowledge.

Sworn and subscribed to and before me on this 25th day of July 1994, at Brownsville, Texas.

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
OFFICE OF THE IMMIGRATION JUDGE
201 E. JACKSON
HARLINGEN, TEXAS   78550

TO:
Lisa Brodyaga, Esq.
(Hand Served)

District Counsel
U. S. Immigration and
Naturalization Service
2102 Teege Avenue
Harlingen, Texas   78550

IN THE MATTER OF:                 )
Reyna-Salcedo, Isidro             )
              APPLICANT           )     CASE NO. A 90 426 509
                                  )
IN EXCLUSION PROCEEDINGS          )

ORDER

On _October 7, 1994_, the above entitled matter was
called on the Court's docket. The Immigration Service appeared by
and through its Trial Attorney. The applicant was present.

All parties being in agreement,

IT IS ORDERED that Applicant's Request for Admission of July 25, 199?
be granted and that Applicant be admitted
to the United States _as a returning permanent legal residen_
_alien._

Dated this _7th_ day of _October_ 1994.

Howard Achtsam
HOWARD ACHTSAM
Immigration Judge

HEA/gg/0014E

On October 7, 1994, I returned to Lisa Brodyaga the Drivers license and social Security card for Applicant after the Judge issued the final decision.

Ron Muin/TA.

Lisa Brodyaga, Esq.

Case 1:94-cv-00215   Document 149   Filed in TXSD on 11/05/2001   Page 81 of 101

**LAW OFFICES OF REFUGIO DEL RIO GRANDE**

402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(210) 421-3226
October 8, 1994

RECEIVED

94 OCT 12 PM 12: 24

INS HARLINGEN TX

Immigration and Naturalization Service
2102 Teege
Harlingen, Texas 78550

Re:  Isidro Reyna Salceda
     A90 426 509
     Return of Resident Alien Card

Gentlepersons:

Please be advised that Mr. Reyna was admitted as a lawful returning
resident at his hearing yesterday, October 7, 1994.  His social
security card and driver's license were returned to him at that
time, but we were advised that his resident alien card was at the
District Office in Harlingen.

Insofar as he had to return immediately to Louisiana, where he
resides, he requested that his card be returned to me, and that I
forward it to him.  A G-28 signed by him is enclosed.

Sincerely,

Lisa S. Brodyaga
Attorney at Law

*Resident alien Card returned + received by
atty Lisa S. Brodyaga on 10-11-94.*

Case 1:94-cv-00215  Document 149  Filed in TXSD on 11/05/2001  Page 82 of 101

Immigration and Naturalization Service

RECORD OF SECURITY FORMS SENT TO HEG EC URITY          NUMBER

| FORM No. I-551 | NAME AND TITLE OF EMPLOYER ROSIE O. MENDOZA - CLERK | LOCATION BROWNSVILLE, TEXAS |

| SERIAL NUMBER | EXECUTED FOR (NAME AND "A" NUMBER, IF ANY) | DATE 08-03-94 |
| A90 426 509 | REYNA-Saucedo, Isidro          D.O.B: 05-15-59 | |
| | EXCLUSION | |

**RESIDENT ALIEN**

REYNA-SAUCEDO, ISIDRO
NAME
05-15-59
DOB
A090426509
ALIEN NUMBER
08-12-01
CARD EXPIRES

PLEASE ACKNOWLEDGE RECEIPT AND SEND COPY TO BRO.

Rec'd MRamos  8/4/94

10/11/94  Rec'd by:  Lisa S. Brodyaga

8-03-94

VERIFIED

FORM G-625
(Rev. 9-16-74) N
(SIGNATURE OF EMPLOYER)          (SIGNATURE OF SUPERVISOR)

CitiPDF - www.fesio.com

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,          )
                                )
v.                              )      C.A. No.  B-94-215
                                )
TROMINSKI, et al.               )
_____ )

EXHIBIT "PP"
FILED IN SUPPORT OF

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Come Plaintiffs, and file herewith, in support of their opposition
to Defendants' Motion For Summary Judgment, copies of INS Operation
Instruction 212.5, as in effect when the instant action was filed,
and as current in effect, of which subsections (a) and (b), address
the authority to grant parole and the treatment of applicants for
admission.  Subsection (c) addresses "advance parole," i.e.,
requests made by an alien within the United States who wishes to
depart, and be paroled back into the U.S. on his or her return.


Respectfully Submitted,


Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731
Fed. ID.  1178
Texas Bar 03052800


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were sent by UPS to Anthony Payne, Attorney, OIL, at 1331
Penn Ave. N.W. D.C., Wash., D.C. 20004, on November 5, 2001.

## Section 212.5   Parole

### (a)   Authority

The authority of a district director to parole shall not be exercised below the level of an officer in charge or an immigrant inspector in charge of a port of entry. The sole "parole" status authorized by the Immigration and Nationality Act and Service regulations is set forth in section 212(d)(5) of the Act; that extraordinary authority shall be exercised with discretion and shall not be utilized if the case under consideration can be satisfactorily disposed of under any other provision of the Act. Responsibility for each parole rests with the district director having jurisdiction over the paroling office. Except as specifically provided in paragraph (c) of this OI, advance authorization for the parole of an alien outside the United States, except from an area adjacent to our land borders, prior to commencement of his journey to the United States shall be made at the Central Office level. An immigrant shall not be paroled to overcome unavailability of an immigrant visa number except when the Secretary of Defense requests that the alien be paroled in the national interest.

### (b)   Applicants for admission

Parole may be authorized if the district director determines that a case is within the strict statutory limitations. Congress has also authorized the parole of crewmen within the provisions of section 253.

Unless emergent considerations dictate or asylum is granted, an alien seeking admission across the land borders shall not be paroled but shall be advised to remain in the adjacent country pending decision in this case.

The Office of Soviet Union Affairs, Room 4219, Department of State, telephone 202 632–9369, should be notified by telegram or telephone concerning a Soviet crewman for whom repatriation arrangements have not been made and who was paroled for medical treatment but is unable to return to his vessel after completion of medical procedures due to physical disability, or because the vessel has left the area, or because of other reasons.

Any Polish seaman serving aboard a Polish fishing vessel or fishery support vessel who is evacuated from his vessel to the United States for emergency medical treatment shall be allowed 7 days after release from the hospital within which to depart. During the period that the seaman is in the United States, he shall remain under the supervision of a local agent for the Polish fishing company.

Case 1:94-cv-00215   Document 149   Filed in TXSD on 11/05/2001   Page 85 of 101

### (c) Advance authorization

The "Remarks" block of Form I–512 shall show the basis for parole; by whom it was authorized; whether the alien is to be paroled or re-paroled upon arrival; and, for a nonimmigrant, it shall also show the period of parole. Authority to issue Form I–512 shall not be redelegated below the level of Assistant District Director for Travel Control.

When the parole applicant falls within classes (1) through (5) of the 4th subparagraph, his photograph must be affixed to the original copy of Form I–512. The original of Form I–512 shall be impressed with the Immigration and Naturalization Service masceration die so that the stamp is partly on the alien's photograph; Form G–325A checks shall be made unless the file reflects that such checks were previously made or the applicant is a Cuban national in possession of an appointment letter furnished by a United States consular officer in Nassau, Bahamas, or Port-of-Spain, Trinidad, advising him to apply for Form I–512. However, in the case of an alien departing under emergent circumstances, checks may be made on a post-audit basis.

Form I–512 shall be immediately issued pursuant to a request in behalf of a beneficiary spouse and children outside the United States under class (1) of the next subparagraph, except that the validity date shall be left open. Form I–512 shall be forwarded to the American consul having jurisdiction over the beneficiary's place of residence with the request that his records be appropriately checked and the medical examination required by 22 CFR 42.113 be conducted. If no adverse information exists and the beneficiary is found medically qualified, the consuls should be requested to attach a copy of Form FS–398 to the Form I–512, endorse Form I–512 valid for a period to expire in 4 months and deliver it to the beneficiary. If adverse information exists or the beneficiary does not qualify medically, the consul shall be requested to return From I–512 to the issuing office with such adverse information or a copy of Form FS–398, as appropriate. The interested party in the United States shall be notified that Form I–512 has been issued and forwarded to the United States consul for completion of processing including medical examination and that it will be delivered to the beneficiary if otherwise found qualified; similarly, the interested party shall be notified of an adverse decision.

Forms I–512 may be issued to the following classes unless reasons of national security or public order dictates otherwise: (1) A member of the professions or a person having exceptional ability in the sciences or the arts who, on the basis of prior Service policy, had been granted voluntary departure for the duration of the validity of a third-or sixth-preference petition approved on his behalf, or to such a member or person who is a Western Hemisphere native and had applied for an

Case 1:94-cv-00215    Document 149    Filed in TXSD on 11/05/2001    Page 86 of 101

immigrant visa and who had been granted voluntary departure under that policy, who is going abroad in connection with the qualifying profession, art, or science, or to bring his spouse and children to the United States, and to the spouse and children of such member or person who are abroad, notwithstanding that the principal beneficiary may have filed an application for adjustment to permanent resident status under section 245 of the Act; (2) A refugee from Cuba who is in parole or voluntary departure status, or other alien who has been granted asylum and is in parole or voluntary departure status in the United States, who intends to depart temporarily to apply for a U.S. immigrant visa in Canada and is in possession of an American consul's letter of invitation to apply; a Form I–512 issued in such case shall be endorsed "This person is in refugee status in the United States." and shall be limited to one trip for the time necessary for its completion; (3) An alien whose adjustment of status application is being held in abeyance within the purview of OI 245.4(a)(6) and who seeks to depart temporarily from the United States for any bona fide business or personal reason; or any other alien whose adjustment of status application is pending and who, before a decision can be made thereon, finds it necessary to depart temporarily for emergent personal or bona fide business reasons; (4) A lawful permanent resident who, prior to embarkation abroad, has applied to a Service office abroad for a duplicate Form I–551 or for a visa waiver under section 211(b), but who, because of emergent conditions, must embark before action can be completed on his application; (5) An alien who is not an exchange alien subject to the foreign residence requirement, is not the beneficiary of a private bill and is not under deportation proceedings, in whose case parole has been authorized by the district director because of emergent or humanitarian considerations; and (6) An alien in whose case parole prior to embarkation abroad has been authorized by the Central Office.

Notwithstanding the foregoing, issuance of travel documents to conditional entrants or other refugees in the United States shall be governed by 8 CFR 223a and OI 223a, except that Form I–512 may be issued to an alien within class (2) above.

Conditional entrants desiring to travel abroad shall not be issued Form I–512. See OI 223a for issuance of refugee travel documents to conditional entrants who desire to travel abroad.

Parole authorization on Form I–512 may be issued to a principal alien in class (1) by the district director having jurisdiction over the place where the principal alien resides in the United States, and sent to the alien. Return of the principal alien shall be required within 4 months of the date of issuance of the parole authorization, except that

the return of an alien who will be abroad in connection with his qualifying profession or occupation shall be required within the time needed for such purpose, not to exceed one year from date of issuance of the parole authorization. The "Remarks" block of Form I–512 shall set forth the time to which the alien may be paroled and the conditions for re-parole. In the case of the beneficiary of a third- or sixth-preference petition, or his spouse and children, the parole shall be authorized for an indefinite period until an immigrant visa becomes available, conditioned upon retention of the status established in the approved petition.

When requested by an alien in class (3) above, parole authorization on Form I–512 may be issued by the district director having jurisdiction over the alien's adjustment application. The following language shall be inserted in the remarks portion of the Form I–512: "This authorization will permit you to resume your application for adjustment of status on your return to the United States."

The return of such an alien to the United States shall be required within 2 months of the date of issuance of the Form I–512, and upon his return he shall be paroled for an indefinite period provided his prima facie eligibility for adjustment continues except for the unavailability of an immigrant visa number.

Form I–512 may be issued valid for multiple applications for parole into the United States. Generally, multiple applications will only be issued to a principal alien in class (3) who for business purposes frequently departs the United States. Such authority will only be granted on a case-by-case basis depending on the stated or established need for multiple departures and reentries. The "Remarks" block of Form I–512 shall be noted that the document is valid for multiple applications during its validity. Upon applicant's return to the United States the document will be stamped at the port of entry showing the arrival date and if still valid returned to the applicant for future use.

The district director will fix the date by which the return of an alien in class (5) will be required, consistent with the purpose of the emergent or humanitarian factors considered in authorizing the parole.

When a parole request for an alien who does not come within the above classes is received by a field office and it appears that the request is extremely meritorious, a complete report shall be expeditiously submitted to the regional office. If that office finds that parole is warranted, a telephonic or telegraphic report shall be submitted to the Associate Commissioner, Examinations.

For control procedures on parolees see OI 235.11.

Case 1:94-cv-00215   Document 149   Filed in TXSD on 11/05/2001   Page 88 of 101

(d)   **Removed.**

(e)   **Nonresident aliens serving aboard U.S. based fishing vessels.**

Nonresident aliens employed on a United States based fishing vessel arriving at a port of entry may not be classified nor admitted as nonimmigrants pursuant to the provisions of Section 101(a)(15)(D) of the Immigration and Nationality Act. Consequently, it will be necessary for such aliens to present immigrant visas or evidence that they previously have been lawfully admitted for permanent residence. Any such alien, arriving without proper documents to enter the United States, should be detained on board the vessel except in cases where entry can be clearly justified as being for reasons deemed strictly in the national interest or for emergent humanitarian needs. If such justification is furnished, parole may be authorized under Section 212(d)(5) of the Act.

## Section 212.6   Nonresident alien border crossing cards.

(a)   **Mexican cards.**

(1)   **Application at Service offices.**

If a Central Office record is located showing that a prior border crossing card has been voided within the past 12 months or that the alien has been apprehended in the United States and granted voluntary departure without creation of an "A" file, the record and the original Form I–190 shall be returned to the submitting office. If a record of an "A" file is located, the original Form I–190 with the file number endorsed thereon will be stamped "Comply with OI 212.6(a)(1)" and will be forwarded to the files control office holding the "A" file. The Central Office will copy the original Form I–190 and any pertinent record located and return such copies to the submitting office.

Upon receipt of a Form FS–257 bearing the above endorsement which shows that the application is pending before an American consular officer in Mexico, the relating file shall be immediately reviewed by a Travel Control supervisor to determine whether the file contains derogatory information bearing the applicant's eligibility for a border-crossing card. If it does, a resume of the derogatory information shall be immediately forwarded with the original Form FS–257 to the consulate which processed the border-crossing card application. If the file contains no significant derogatory information, the original Form FS–257 shall be placed therein and no report need be made to the consulate.

(Matthew Bender & Co., Inc)          (Rel.61–5/93  Pub 325)

Section 212.5  Parole

a--Authority

The authority of a district director to parole shall not be exercised below the level of an officer in charge or an immigrant inspector in charge of a port of entry. The sole ``parole'' status authorized by the Immigration and Nationality Act and Service regulations is set forth in section 212(d)(5) of the Act; that extraordinary authority shall be exercised with discretion and shall not be utilized if the case under consideration can be satisfactorily disposed of under any other provision of the Act. Responsibility for each parole rests with the district director having jurisdiction over the paroling office. Except as specifically provided in paragraph (c) of this OI, advance authorization for the parole of an alien outside the United States, except from an area adjacent to our land borders, prior to commencement of his journey to the United States shall be made at the Central Office level. An immigrant shall not be paroled to overcome unavailability of an immigrant visa number except when the Secretary of Defense requests that the alien be paroled in the national interest.

b--Applicants for admission

Parole may be authorized if the district director determines that a case is within the strict statutory limitations. Congress has also authorized the parole of crewmen within the provisions of section 253. Unless emergent considerations dictate or asylum is granted, an alien seeking admission across the land borders shall not be paroled but shall be advised to remain in the adjacent country pending decision in this case.
The Office of Soviet Union Affairs, Room 4219, Department of State, telephone 202 632-9369, should be notified by telegram or telephone concerning a Soviet crewman for whom repatriation arrangements have not been made and who was paroled for medical treatment but is unable to return to his vessel after completion of medical procedures due to physical disability, or because the vessel has left the area, or because of other reasons.
Any Polish seaman serving aboard a Polish fishing vessel or fishery support vessel who is evacuated from his vessel to the United States for emergency medical treatment shall be allowed 7 days after release from the hospital within which to depart. During the period that the seaman is in the United States, he shall remain under the supervision of a local agent for the Polish fishing company.

c--Advance authorization

The "Remarks" block of Form I-512 shall show the basis for parole; by whom it was authorized; whether the alien is to be paroled or re-paroled upon arrival; and, for a nonimmigrant, it shall also show the period of parole. Authority to issue Form I-512 shall not be redelegated below the level of Assistant District Director for Travel Control.

Case 1:94-cv-00215   Document 149   Filed in TXSD on 11/05/2001   Page 90 of 101

When the parole applicant falls within classes (1) through (5) of the 4th subparagraph, his photograph must be affixed to the original copy of Form I-512. The original of Form I-512 shall be impressed with the Immigration and Naturalization Service masceration die so that the stamp is partly on the alien's photograph; Form G-325a checks shall be made unless the file reflects that such checks were previously made or the applicant is a Cuban national in possession of an appointment letter furnished by a United States consular officer in Nassau, Bahamas, or Port-of-Spain, Trinidad, advising him to apply for Form I-512. However, in the case of an alien departing under emergent circumstances, checks may be made on a post-audit basis.

Form I-512 shall be immediately issued pursuant to a request in behalf of a beneficiary spouse and children outside the United States under class (1) of the next subparagraph, except that the validity date shall be left open. Form I-512 shall be forwarded to the American consul having jurisdiction over the beneficiary's place of residence with the request that his records be appropriately checked and the medical examination required by 22 CFR 42.113 be conducted. If no adverse information exists and the beneficiary is found medically qualified, the consuls should be requested to attach a copy of Form FS-398 to the Form I-512, endorse Form I-512 valid for a period to expire in 4 months and deliver it to the beneficiary. If adverse information exists or the beneficiary does not qualify medically, the consul shall be requested to return From I-512 to the issuing office with such adverse information or a copy of Form FS-398, as appropriate. The interested party in the United States shall be notified that Form I-512 has been issued and forwarded to the United States consul for completion of processing including medical examination and that it will be delivered to the beneficiary if otherwise found qualified; similarly, the interested party shall be notified of an adverse decision.

Forms I-512 may be issued to the following classes unless reasons of national security or public order dictates otherwise: (1) A member of the professions or a person having exceptional ability in the sciences or the arts who, on the basis of prior Service policy, had been granted voluntary departure for the duration of the validity of a third-or sixth-preference petition approved on his behalf, or to such a member or person who is a Western Hemisphere native and had applied for an immigrant visa and who had been granted voluntary departure under that policy, who is going abroad in connection with the qualifying profession, art, or science, or to bring his spouse and children to the United States, and to the spouse and children of such member or person who are abroad, notwithstanding that the principal beneficiary may have filed an application for adjustment to permanent resident status under section 245 of the Act; (2) A refugee from Cuba who is in parole or voluntary departure status, or other alien who has been granted asylum and is in parole or voluntary departure status in the United States, who intends to depart temporarily to apply for a U.S. immigrant visa

2

in Canada and is in possession of an American consul's letter of invitation to apply; a Form I-512 issued in such case shall be endorsed "This person is in refugee status in the United States." and shall be limited to one trip for the time necessary for its completion; (3) An alien whose adjustment of status application is being held in abeyance within the purview of OI 245.4(a)(6) and who seeks to depart temporarily from the United States for any bona fide business or personal reason; or any other alien whose adjustment of status application is pending and who, before a decision can be made thereon, finds it necessary to depart temporarily for emergent personal or bona fide business reasons; (4) A lawful permanent resident who, prior to embarkation abroad, has applied to a Service office abroad for a duplicate Form I-551 or for a visa waiver under section 211(b), but who, because of emergent conditions, must embark before action can be completed on his application; (5) An alien who is not an exchange alien subject to the foreign residence requirement, is not the beneficiary of a private bill and is not under deportation proceedings, in whose case parole has been authorized by the district director because of emergent or humanitarian considerations; and (6) An alien in whose case parole prior to embarkation abroad has been authorized by the Central Office.

Notwithstanding the foregoing, issuance of travel documents to conditional entrants or other refugees in the United States shall be governed by 8 CFR 223a and OI 223a, except that Form I-512 may be issued to an alien within class (2) above.

Conditional entrants desiring to travel abroad shall not be issued Form I-512. See OI 223a for issuance of refugee travel documents to conditional entrants who desire to travel abroad.

Parole authorization on Form I-512 may be issued to a principal alien in class (1) by the district director having jurisdiction over the place where the principal alien resides in the United States, and sent to the alien. Return of the principal alien shall be required within 4 months of the date of issuance of the parole authorization, except that the return of an alien who will be abroad in connection with his qualifying profession or occupation shall be required within the time needed for such purpose, not to exceed one year from date of issuance of the parole authorization. The ``Remarks'' block of Form I-512 shall set forth the time to which the alien may be paroled and the conditions for re-parole. In the case of the beneficiary of a third- or sixth-preference petition, or his spouse and children, the parole shall be authorized for an indefinite period until an immigrant visa becomes available, conditioned upon retention of the status established in the approved petition.

When requested by an alien in class (3) above, parole authorization on Form I-512 may be issued by the district director having jurisdiction over the alien's adjustment application. The following language shall be inserted in the remarks portion of the Form I-512: "This

3

authorization will permit you to resume your application for adjustment of status on your return to the United States."

The return of such an alien to the United States shall be required within 2 months of the date of issuance of the Form I-512, and upon his return he shall be paroled for an indefinite period provided his prima facie eligibility for adjustment continues except for the unavailability of an immigrant visa number.

Form I-512 may be issued valid for multiple applications for parole into the United States. Generally, multiple applications will only be issued to a principal alien in class (3) who for business purposes frequently departs the United States. Such authority will only be granted on a case-by-case basis depending on the stated or established need for multiple departures and reentries. The "Remarks" block of Form I-512 shall be noted that the document is valid for multiple applications during its validity. Upon applicant's return to the United States the document will be stamped at the port of entry showing the arrival date and if still valid returned to the applicant for future use.

The district director will fix the date by which the return of an alien in class (5) will be required, consistent with the purpose of the emergent or humanitarian factors considered in authorizing the parole. When a parole request for an alien who does not come within the above classes is received by a field office and it appears that the request is extremely meritorious, a complete report shall be expeditiously submitted to the regional office. If that office finds that parole is warranted, a telephonic or telegraphic report shall be submitted to the Associate Commissioner, Examinations.

For control procedures on parolees see OI 235.11.

d--Removed.

e--Nonresident aliens serving aboard U.S. based fishing vessels.

Nonresident aliens employed on a United States based fishing vessel arriving at a port of entry may not be classified nor admitted as nonimmigrants pursuant to the provisions of Section 101(a)(15)(D) of the Immigration and Nationality Act. Consequently, it will be necessary for such aliens to present immigrant visas or evidence that they previously have been lawfully admitted for permanent residence. Any such alien, arriving without proper documents to enter the United States, should be detained on board the vessel except in cases where entry can be clearly justified as being for reasons deemed strictly in the national interest or for emergent humanitarian needs. If such justification is furnished, parole may be authorized under Section 212(d)(5) of the Act.

From Matthew Bender & Co., Inc.
Release dated October, 2001

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,          )
                                )
v.                              )          C.A. No.  B-94-215
                                )
TROMINSKI, et al.               )
_____ )

EXHIBIT "QQ"
FILED IN SUPPORT OF

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Come Plaintiffs, and file herewith, in support of their opposition
to Defendants' Motion For Summary Judgment, a copy of Plaintiffs'/
Appellees' Unopposed Motion to Supplement Record before the Fifth
Circuit, with file-stamped copies of the September 11, 1998 "Notice
of Submission of Proposed Order," and accompanying Proposed Order,
together with a copy of the Clerk's Order granting said Motion.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731
Fed. ID.  1178
Texas Bar 03052800

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were sent by UPS to Anthony Payne, Attorney, OIL, at 1331
Penn Ave. N.W. D.C., Wash., D.C. 20004, on November 5, 2001.

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

JULIO LOA-HERRERA,                )
RAMIRO CANTU-GRACIA,              )
    PLAINTIFFS/APPELLEES,        )
                                 )
v.                                )    No. 99-40122
                                 )
E.M. TROMINSKI,  et al,           )
    DEFENDANTS/APPELLANTS.        )
_____ )

### PLAINTIFFS'/APPELLEES' UNOPPOSED MOTION TO SUPPLEMENT RECORD

Come Plaintiffs/Appellees herein, and respectfully file the instant, unopposed, motion to supplement the record with file stamped copies of the "Notice of Submission of Proposed Order," and the proposed Memorandum and Order, which were submitted to the Court on September 11, 1998, and omitted from the record herein.

The undersigned has conferred with Regina Byrd, Attorney for Defendants/Appellants, who state that she does not oppose the instant motion.  Copies of the documents at issue are attached.

Respectfully Submitted,



Lisa S. Brodyaga, Attorney at Law
17891 Landrum Park Road
San Benito, TX 78586

### CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing, and attachments, were mailed, first-class postage prepaid, to Regina Byrd, Attorney, OIL, Box 878, Ben Franklin Sta., Washington, D.C. 20044, on February 19, 2000.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 11 1998

Michael N. Milby
Clerk of Court

ASCENCIO-GUZMAN et al,       )
                             )
v.                           )       C.A. No.   B-94-215
                             )
TROMINSKI, et al.            )
_____)

NOTICE OF SUBMISSION OF PROPOSED ORDER

Come Plaintiffs, by and through the undersigned, and respectfully
submits, for consideration by the Court, a Proposed Memorandum and
Order in the instant case.

Respectfully Submitted,



Lisa S. Brodyaga, Attorney at Law
402 E. Harrison, 2nd Floor
Harlingen, Texas 78550
(956) 421-3226

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and attached
proposed Memorandum and Order were served, first class postage
prepaid, on Regina Byrd, Attorney, OIL, Box 878, Ben Franklin Sta.,
Washington, D.C. 20044, on September 11, 1998.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
RECEIVED

SEP 1 1 1998

Michael N. Milby, Clerk of Court

JUANA ASCENCIO-GUZMAN, et al        )
                                    )
v.                                  )        No. B-94-215
                                    )
E.M. TROMINSKI, et al.              )
_____ )

MEMORANDUM AND ORDER

Upon consideration of the Parties' cross motions for summary
judgment and the record as a whole, and good cause appearing
therefore, the Court enters the following Order:

I.  FACTUAL BACKGROUND

There appears to be no genuine issue of material fact with respect
to the following matters:

1.  A Memorandum issued by former Commissioner of INS Gene McNary,
on March 14, 1990, (the "McNary Memo"), sets forth the conditions
under which INS has authorized the confiscation of green cards [1]
issued to permanent residents who are placed under expulsion
proceedings, and the form of the substitute document which must be
provided, Government Exhibit 1, at pp. 1-2.  The practices of INS
agents operating in the Harlingen, Texas district have frequently
been inconsistent with the McNary Memo, in such particulars as the
routine, (instead of case-by-case), confiscation of green cards of
residents placed under proceedings by some branches of INS;
arbitrary placement of extraneous notations not authorized by the
McNary Memo on replacement documentation; the failure in some cases
to issue any replacement documentation; the refusal in others to

_____

[1] The term "green card" as used herein means a laminated I-551
or I-151, evidencing the status of the holder as a lawful permanent
resident of the United States.

place annotations specifying that the holder is authorized to be employed in the United States, and in some instances, particularly where the resident was held in custody for a period of time, the failure and/or refusal to provide any replacement documentation as required by the McNary Memo.   For permanent residents detained at a port of entry, placed under proceedings, and paroled into the United States, (with or without bond), agents in the Harlingen Office of the INS have frequently failed to follow the McNary Memo in such particulars as the refusal to provide any substitute document, or to specify thereon that the resident is authorized to be employed in the United States, and have in some cases, placed notations stating that the holder is *not* authorized to be employed.

2.   When lawful permanent residents seeking readmission as returning residents are detained for major violations of law, such as for attempting to smuggle large quantities of controlled substances, or undocumented immigrants, such persons are usually paroled into the U.S. for criminal prosecution, and are thereafter detained at the INS detention center, where they have access to counsel, and are frequently, (but not always), allowed to post bond. By contrast, lawful permanent residents detained at a land border for minor infractions, such as attempting to smuggle relatives into the U.S., are generally subjected to a different procedure.   In such cases, Defendants confiscate their green cards, and frequently, other documents as well, such as social security cards, and drivers' licenses.   They are then generally returned to Mexico to await a hearing before an Immigration Judge.   They are not afforded a hearing before they are returned to Mexico, and no administrative appeal may be taken from the decision to return them to Mexico.   Notice of hearings sent to Mexican addresses are sent by ordinary mail, and are frequently not received in a timely fashion, if at all.   This often results in further delays, and in some cases, *in absentia* orders of exclusion or removal.

2

3.   In cases where there exists a non-frivolous defense to the charges, or a possibility of administrative relief, the proceedings are frequently protracted.  Where the individual is not detained at government expense, it frequently takes eight to ten months from the date of initial apprehension to the date the Immigration Judge issues his or her order.   If an appeal is taken by either party, proceedings typically last from two to four years.  Complex cases, or where a remand is required, sometimes drag on much longer.

## II.   CONCLUSIONS OF LAW

1. This Court has jurisdiction herein under 28 USC §1331 (federal question), coupled with 5 USC §702 et seq (Administrative Procedure Act); 28 USC §1346(a)(2) (action against an agency and/or officers of the United States), and 28 USC §2201 (Declaratory Judgment Act).

2.  Defendants act arbitrarily and capriciously, inconsistent with Due Process, when they confiscate green cards from lawful permanent residents who are placed under expulsion proceedings, but who are not being held in custody, without making the determination to do so on a case by case basis, as required by the McNary Memo, and when, having confiscated a lawfully issued green card, they fail to provide a replacement document evidencing the person's status as a lawful permanent resident, or place notations on any replacement document which are not authorized by Operation Instruction 264.2, such as notations that the person is under proceedings, is on bond, has been paroled into the U.S., or is not entitled to be employed in the U.S..   They also act arbitrarily and capriciously, inconsistent with Due Process, when they confiscate other documents lawfully issued to the resident which are not *bona fide* evidence of unlawful conduct.  *Etuk v. Slattery*, 936 F.2d 1433 (2nd Cir. 1991).

3.  Defendants act arbitrarily and capriciously, inconsistent with Due Process, when they routinely parole into the U.S., permanent

3

CX4PDF - www.tavia.com

residents accused of serious criminal activity, but return to Mexico those in whose cases criminal prosecution is not currently contemplated, with no opportunity to challenge the decision that they not be paroled into the United States, with or without payment of a bond. They also act arbitrarily and capriciously, inconsistent with Due Process, when they fail to provide a custody hearing for lawful permanent residents who are placed under proceedings at the time of arrival at a port of entry. *Molina v. Sewell*, 983 F.2d 676, 680 (5th Cir. 1993) ("The fact that an [arriving] alien is subject to deportation proceedings does not affect his status as a permanent resident alien."); *Plyler v. Doe*, 102 S.Ct. 2382 (1982) (even aliens *unlawfully* in the United States are entitled to Equal Protection); *Richardson v. Reno*, 994 F.Supp. 1466 (S.D.Fla. 1998) (In IRRIRA, Congress did not intend to overrule the *Fleuti* doctrine regarding arriving permanent residents presenting themselves for inspection; not reaching Constitutional issues); *Ekekhor v. Aljets*, 979 F. Supp. 640, 643 (N.D.Ill. 1997) (IJ properly exercised authority in releasing resident alien on bond pending exclusion hearing); *St. John v. McElroy*, 917 F. Supp. 243, 251 (S.D.N.Y. 1996) (permanent resident entitled to a parole hearing before an impartial adjudicator while awaiting exclusion hearing).

## III.   ORDER

In light of the foregoing, IT IS HEREBY ORDERED that:

1.   In accordance with the intent of the McNary Memorandum, Defendants shall only confiscate the laminated Form I-151 or I-551 of a non-arriving lawful permanent resident placed under expulsion proceedings, and not held in custody, when the INS District Director, chief patrol agent, or officer in charge determines that a temporary document is needed for a justifiable, particularized reason, based on the individual facts of the case, but shall not

4

confiscate other lawfully issued documents which are not *bona fide* evidence of unlawful conduct, When such a resident's green card is confiscated, Defendants shall provide temporary evidence of lawful permanent resident status, which shall be prepared in accordance with Operation Instruction 264.2, and shall be issued for at least six months, and shall contain a notation that it is renewable.

2. When a lawful permanent resident who applies for admission to the U.S. is placed under proceedings, in accordance with 8 USC §1229a, Defendants shall not confiscate any other lawfully issued documents unless they are *bona fide* evidence of unlawful conduct, but may confiscate the resident's green card. In such cases, Defendants shall provide a substitute document evidencing status as a lawful permanent resident, and entitlement to be employed in the U.S.; and shall afford said person a prompt hearing before an Immigration Judge, in accordance with 8 CFR §236.1, to determine whether he or she should be paroled into the United States during the pendency of said proceedings, and if so, under what conditions.

IT IS FURTHER ORDERED that any other form of relief requested by Plaintiffs which is not addressed herein is either moot, or DENIED;

IT IS FURTHER ORDERED that the Clerk of Court shall send certified copies of the instant Order to all counsel of record.

DONE AT BROWNSVILLE, TEXAS

this _____ day of _____, 1998.


_____
HON. HILDA G. TAGLE
JUDGE PRESIDING

5

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

CHARLES R. FULBRUGE III
CLERK

TEL. 504-589-6514
600 CAMP STREET
NEW ORLEANS, LA 70130

February 28, 2000

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

No. 99-40122 Loa-Herrera v. Trominski
USDC No. B-94-CV-215

The motion to supplement or correct the record has been granted in the appeal referenced above.

Sincerely,

CHARLES R. FULBRUGE III, Clerk

By: Dawn Shulin
Dawn Shulin, Deputy Clerk

/dms
Ms Lisa S Brodyaga
Ms Regina Byrd

MOT-2