*154*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

DEC 0 3 2001

Michael N. Milby
Clerk of Court

ASCENCIO-GUZMAN et al,          )
                                )
v.                              )        C.A. No.  B-94-215
                                )
TROMINSKI, et al.               )
_____)

**PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS, AND FOR AN EVIDENTIARY**
**HEARING, WITH INCORPORATED POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

I.      BACKGROUND ........................................    1

II.     THE DECISION OF THE FIFTH CIRCUIT ...................    5

III.    PROCEEDINGS ON REMAND ...............................    7

IV.     THE RECENT EXCHANGES BETWEEN THE PARTIES ............    8

V.      CONCLUSION ..........................................   15

**TABLE OF AUTHORITIES**

**CASES**

*Lopez-Elias v. Reno,*

    209 F.3d 788 (5th Cir. 2000) . . . . . . . . . . . . . . 5

*Mathews v. Eldridge,*

    424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) . . . . . 5

*U.S. v. Becerra,*

    155 F.3d 740 (5th Cir. 1998) . . . . . . . . . . . . . . 6

## STATUTES

8 U.S.C. §1182(d)(5) . . . . . . . . . . . . . . . . 7, 12

8 U.S.C. §1182(d)(5)(A) . . . . . . . . . 2-4, 10, 12, 14, 15

8 U.S.C. §1225(b)(2) . . . . . . . . . . . . . . . . . 3

8 U.S.C. §1225(b)(2)(A) . . . . . . . . . . . . . . . . 2

8 U.S.C. §1226 . . . . . . . . . . . . . . . 2-5, 9-11, 14

8 U.S.C. §1226(a) . . . . . . . . . . . . . . . 2, 3, 6, 10

8 U.S.C. §1226(a)(2) . . . . . . . . . . . . . . . 3, 4, 14

8 U.S.C. §1226(a)(2)(B) . . . . . . . . . . . . . . 2, 9, 14

8 U.S.C. §1226(e) . . . . . . . . . . . . . . . . 1, PASSIM

8 U.S.C. §1229a . . . . . . . . . . . . . . . . . . . . 2

## ADMINISTRATIVE DECISIONS

*Matter of Drysdale,*
    20 I&N Dec. 815 (BIA 1994) . . . . . . . . . . . . . 14

*Matter of Patel,*
    15 I&N Dec. 666 (BIA 1976) . . . . . . . . . . . . . 14

## REGULATIONS

8 C.F.R. §236.1 . . . . . . . . . . . . . . . . . 10-13

2

8 C.F.R. §236.1(d)(1) . . . . . . . . . . . . . . . . . . .  12

## OTHER AUTHORITIES

Federal Rules of Civil Procedure,
     Rule 11  . . . . . . . . . . . . . . . . . . . . . 8, 10

Federal Rules of Civil Procedure,
     Rule 11(b) . . . . . . . . . . . . . . . . . . . . . 9

Federal Rules of Civil Procedure,
     Rule 11(b)(2)  . . . . . . . . . . . . . . . . . . 1, 15

Federal Rules of Civil Procedure,
     Rule 11(c) . . . . . . . . . . . . . . . . . . . . . 9

Plaintiffs, through counsel, urge that Defendants' counsel have violated Rule 11(b)(2), and request a hearing to determine whether sanctions are appropriate.  Plaintiffs file this motion because: 1) Defendants urged a clearly incorrect legal theory, first before this Court, and then to the Fifth Circuit, (which incorrect theory that Court adopted, in concluding that 8 U.S.C. §1226(e) barred jurisdiction over Plaintiffs' parole claims), and 2) Defendants are now insisting that the Court's opinion on this point is the law of the case, even though Defendants have, in essence, admitted that their prior theory was incorrect, and are now urging an entirely different, and equally untenable, theory to justify their position.

## I.  BACKGROUND

In their Motion For Stay of the Court's Judgment Pending Appeal, Docket No. 111, at pp. 14 - 17, Defendants argued that jurisdiction over the manner in which the parole of class members [1] was administered was barred by 8 U.S.C. §1226(e).  In urging this position, Defendants made a number of statements of law which can only be characterized as false.  For example, at page 14, Defendants summarized their claim as follows (emphasis added): [2]

**b.  The court's review is prohibited by INA § 236(e)**

The district court's jurisdiction is barred by INA §236(e), 8 U.S.C. §1226(e). ... **Section 236 of the INA provides for the detention of aliens who are in removal proceedings and bars judicial review of the Attorney General's determinations regarding detention or parole**:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of

---

[1]  Plaintiffs use the term "class members" herein to refer to that subsection of the class involved in the parole issues, to wit, arriving LPRs detained under 8 U.S.C. §1225(b)(2)(A), placed in proceedings, and returned to Mexico, pursuant to §1225(b)(2)(C).

[2]  Copies of the pertinent pages are attached as Exhibit SS.

> any alien or the grant, revocation, or denial of
> bond or parole.

By this, Defendants clearly urged that detention of class members
subject to this Court's Order regarding parole was authorized by 8
U.S.C. §1226, and that the order was therefore barred by §1226(e).
It is equally clear that this is false. *See,* Plaintiffs' Exhibits
RR and UU.   Said section only applies to aliens arrested on a
warrant, and Defendants now admit that class members are not
arrested on warrants, but are detained, *without issuance of a
warrant,* under §1225(b)(2)(A).   *See,* Plaintiffs' Exhibit YY, at
page 2 (emphasis added) ("... both the defendants and the Fifth
Circuit logically concluded that the Court's final order implicated
parole under INA § 236, **notwithstanding the absence of a warrant.**")

Said motion then continues as follows, at page 15 (emphasis added):

> In general, the Attorney General is authorized to detain
> "an alien seeking admission [who] is not clearly and
> beyond a doubt entitled to be admitted, pending
> proceedings under section 240 [8 U.S.C. §1229a]."   8
> U.S.C. § 1225(b)(2)(A).   Section 236(a) of the INA
> provides that an alien, **whether or not he is seeking
> admission**, may be held by the INS pending a determination
> of whether that alien is to be removed from the United
> States.  8 U.S.C. § 1226(a).   The Attorney General may
> release such aliens on bond or conditional parole.   8
> U.S.C. §§ 1226(a)(2)(A) & (B).   INA § 212(d)(5)(A)
> provides for the circumstances under which such aliens
> may obtain release from custody.

This statement suffers from a similar infirmity.   It conveys the
impression that 8 U.S.C. §1226(a) provides the **authority** to hold
class members pending a hearing and to parole them into the United
States, and that §1182(d)(5)(A) only **defines the "circumstances"**
under which they may be paroled. [3]   Defendants now admit that class

---

[3]   Defendants repeat this assertion in their recent letter,
(exhibit   , page 2).   However, they still refuse to admit that it

2

members are not arrested on a "warrant issued by the Attorney
General," (Exhibit YY, p.2), and that the authority to detain them
is therefore not found in §1226(a), but solely in §1225(b)(2)(A).
Therefore, they may **not** be released under §1226(a), either on bond,
or "conditional parole," and the claim that "[t]he Attorney General
may release such aliens on bond or conditional parole" under 8
U.S.C. §1226(a)(2) is, with respect to class members, simply false.

Defendants then continue as follows, pp. 15-16 (emphasis added):

> Section 236(e) bars the court's jurisdiction in two ways.
> The first sentence of INA § 236(e) expressly and
> categorically bars judicial review of discretionary
> judgments made by the Attorney General regarding the
> **detention or release of any alien**.  The delegation of
> authority to make detention decisions constitutes a
> **discretionary action by the Attorney General respecting
> the application of INA § 236**.

This is false for the same reason.  8 U.S.C. §1226(e) only applies
to decisions made under §1226, and not to the "detention or release
of *any alien*."  Decisions regarding the "detention or release" of
class members are made under §1225(b)(2), not §1226.  Therefore,
the delegation of that authority is not a "discretionary action ...
respecting the application of INA § 236."  (Exhibits RR and UU).

Defendants then continue as follows, at p. 16 (emphasis added):

> The district court's jurisdiction is precluded by INA §
> 236(e) for a second reason.  The second sentence of INA
> § 236(e) expressly and unequivocally bars any court from
> setting aside any action or decision by the Attorney
> General under INA § 236 regarding the detention of an
> alien or the denial of bond or parole to an alien pending
> a decision whether to remove the alien from the United
> States.  Not only is **promulgation of the regulatory**

---

is misleading, if not simply false, to claim that §1182(d)(5)(A)
provides the "circumstances" for the parole of class members, after
having claimed that the *power* to do so is found in §1226(a).

> **scheme establishing procedures for parole and bond requests and "action" by the Attorney General regarding the "detention or release of [an] alien" under INA § 236,** but the district director's **decisions to parole certain aliens but not others also is [sic] a decision regarding the "detention or release of [an] alien under INA § 236.** In short, plaintiffs' action before the district court is a challenge to both the Attorney General's selected method for implementing section 236 and other parole provisions and to the district director's decision under INA § 236. Section 236(e) clearly precludes all courts from setting aside decisions and actions of either the Attorney General or her designees. 8 U.S.C. § 1226(e).

Again, it cannot be seriously urged that the "promulgation of the regulatory establishing procedures for parole ... requests [by class members] an 'action' by the Attorney General regarding the 'detention or release of [an] alien' under INA § 236." Parole of class members is governed by 8 U.S.C. §1182(d)(5)(A), not §1226.

Nor is the "district director's decision[] to parole certain [class members] but not others also... a decision regarding the "detention or release of [an] alien under INA § 236." That decision can undisputedly be made only under 8 U.S.C. §1182(d)(5)(A).

Virtually identical representations were made before the Fifth Circuit. The pertinent pages of Defendants' brief are attached hereto as Exhibit TT. [4] However, since those misrepresentations were made to the Fifth Circuit, and not to this Court, Plaintiffs are not seeking Rule 11 sanctions with respect thereto. Those misrepresentations are nonetheless pertinent, in order for this Court to understand how the Fifth Circuit reached its conclusions, and why Plaintiffs maintain that it is unethical for Defendants to maintain that those conclusions are "law of the case."

_____

[4] Note the use of the phrase "INA § 212(d)(5)(A) provides the circumstances under which such aliens may obtain release from custody," (at p.49), reinforcing the impression that this section merely refines the general powers of 8 U.S.C. §1226(a)(2).

4

## II.  THE DECISION OF THE FIFTH CIRCUIT

In its Opinion herein, the Fifth Circuit adopted the theories urged
by Defendants, as outlined above, concluding as follows, *id.* at
pages 990-991 (footnote 13 omitted; footnote 14 in original):

> The plaintiffs argue that, pursuant to Mathews v.
> Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18
> (1976), due process requires the INS to provide an LPR
> with notice of his right to parole within the United
> States ... and with a parole hearing before the Attorney
> General decides how to exercise her discretion.
> Congress, however, has denied the district court
> jurisdiction to adjudicate deprivations of the
> plaintiffs' statutory and constitutional rights to
> parole. [FN14]
>
> FN14. *See* Lopez-Elias v. Reno, 209 F.3d 788, 793 (5th
> Cir.2000) ("Federal courts derive their power to
> adjudicate from Congress, and not from the Constitution
> alone."), *petition for cert. filed,* 69 U.S.L.W. 3128
> (July 28, 2000) (No. 00-164); 8 U.S.C. § 1226(e) ("The
> Attorney General's discretionary judgment regarding the
> application of this section shall not be subject to
> review. No court may set aside any action or decision by
> the Attorney General under this section regarding the
> detention or release of any alien or the grant,
> revocation, or denial of bond or parole.").
>
> The plaintiffs respond that the Attorney General's parole
> authority at issue in this case is found not in 8 U.S.C.
> § 1226, but instead in 8 U.S.C. § 1225(b)(2)(C). [5]

---

[5] Plaintiffs' brief on this point was too condensed, and was
misunderstood by the Court. Plaintiffs did not claim that the
*parole* of such LPRs was governed by §1225(b)(2)(C), but urged at p.
54, that the power to return such LPRs to Mexico was found therein:

> Defendants also invoke 8 U.S.C. §1226(e). (INS:46-48).
> However, their authority to return aliens to Mexico to
> await their hearings derives from §1225(b)(2)(c), not
> §1226. By its terms, §1226(e) applies only to "the
> application of this section," and "any action or decision
> ... under this section." It therefore has no bearing on
> whether §1225(b)(2)(c) was intended to apply, or can be
> constitutionally applied, to lawful permanent residents.

Therefore, they argue, the bar on judicial review contained in § 1226(e), which applies only to "this section," does not bar this suit. But § 1225(b)(2)(C) only authorizes the Attorney General to return an applicant for admission to Mexico pending the exclusion proceedings. **It is § 1226(a), by contrast, that authorizes her to grant parole within the United States to an LPR subject to removal proceedings**.

[6] In sum, "[t]he Attorney General's discretionary judgment regarding the application of" parole--including the *manner* in which that discretionary judgment is exercised, and whether the procedural apparatus supplied satisfies regulatory, statutory, and constitutional constraints--is "not ... subject to review." § 1226(e). Without reaching the merits of the plaintiffs' constitutional claims, we therefore vacate those portions of the order that require the INS to hold parole hearings. In doing so, we note that the executive branch, of course, has an independent duty to uphold the Constitution, irrespective of whether its actions are subject to judicial review.

While there was a dissent to this (and other) portions of the holding, even the dissenting Judge did not realize that the Court had been misled by the Defendants, that §1226(a) does **not** authorize the Attorney General to parole class members into the country, and that the jurisdictional bar of §1226(e) is simply inapposite.

Plaintiffs sought both panel and en banc rehearing, which petitions were denied, without dissent. Since the case was remanded, these denials were viewed in that context. Egregious misrepresentations of the law, and the resulting erroneous conclusions of the Fifth Circuit, could be addressed on remand, without running afoul of the principle of "law of the case." *U.S. v. Becerra*, 155 F.3d 740,752-53 (5th Cir. 1998) (internal citations omitted):

The law of the case doctrine, however, is not inviolate. We have explained that "a prior decision of this court will be followed without re-examination ... unless (i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a

6

contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice." ...

A corollary of the law of case doctrine, known as the mandate rule, provides that a lower court on remand must "implement both the letter and the spirit of the [appellate court's] mandate," and may not disregard the "explicit directives" of that court. ...

Consequently, unless one of the exceptions to the law of the case doctrine applies, the district court was bound to follow our mandate and to resentence the defendants based on the testimony at trial.

In other words, where, as here, one or more exceptions to the law of the case doctrine **do** exist, [6] this Court may address the obvious error into which the Fifth Circuit was led by the Defendants.

### III.   PROCEEDINGS ON REMAND

On remand, Defendants first attempted to block Plaintiffs' attempt to bring before the Court the true facts (that class members are not arrested on warrants), and law (that the authority to parole class members derives from §1182(d)(5), not §1226(a)(2)). Once it became clear that they would be unable to do so, Defendants began to shift legal ground.  In their letter of November 27, 2001, responding to Plaintiffs' ultimatum that Defendants advise the Court of the erroneous premise, or face a Rule 11 motion, (Exhibit YY), Defendants urge as follows, at p. 1 (emphasis added):

Simply put, the defendants' arguments have been made in good faith and are supported by the record.  Your disagreement with defendants' arguments is now before the

---

[6]   Here, two exceptions apply.  First, this aspect of the decision "was clearly erroneous and would work a manifest injustice."  Second, although there was no evidence in the record previously that class members were not arrested on a "warrant issued by the Attorney General," Defendants have now so admitted, (Exhibit YY, at p.2), so the evidence is "substantially different."

7

Court as plaintiffs argued the position that the law of
the case does not apply in their opposition to summary
judgment. **This is the proper context in which the Court
should address the question, and not through a Rule 11
motion.** [7]

However, Defendants recently filed a motion to strike "Plaintiffs'
Enumeration of Incorrect and Misleading Statements in Defendants'
Motion For Summary Judgment," in which Plaintiffs attempted to
flesh out Defendants' misstatements on remand, one by one, and page
by page. What Defendants seek is to have this Court adjudicate
their summary judgment motion, without having before it a full
exposition of the extent to which Defendants have, in the past,
misled the Fifth Circuit, and are now attempting to mislead this
Honorable Court as well.  In their motion to strike Plaintiffs
enumeration of their incorrect and misleading statements, at pp. 2-
3, Defendants asserted, *inter alia,* as follows (emphasis added):

> The plaintiffs' filing is not well-taken as it fails to
> conform to the rules of this Court. **The filing is not an
> approved method of communicating with the Court.**

In this regard, Defendants may be correct.  In order for a listing
of incorrect and misleading statements by a party to constitute an
"approved method of communicating with the Court," it should be
submitted in connection with a Rule 11 motion.  Plaintiffs have
therefore herewith re-submitted, said enumeration, as "Exhibit AAA,
In Support of Plaintiffs' Motion for Rule 11 Sanctions And For An
Evidentiary Hearing With Respect Thereto." As such, it is clearly
"an approved method of communicating with the Court."

### IV.   THE RECENT EXCHANGES BETWEEN THE PARTIES

Following this Court's Order of November 6, 2001, granting

---

[7]   Defendants also justify their prior misrepresentations, by
reference to a footnote in their most recent pleading. (Exhibit YY,
p. 3). But that pleading is also replete with misrepresentations,
which Plaintiffs have not yet had time to document.

Defendants' motion for a protective order, Plaintiffs began to collect other evidentiary material to demonstrate that, if for no other reason than that class members (as defined above) are not arrested on a "warrant issued by the Attorney General," their parole is not and could not be governed by 8 U.S.C. §1226(a)(2)(B), and jurisdiction over constitutional infirmities in the manner in which the parole of class members was handled was not precluded by §1226(e). Plaintiffs also concluded that Defendants needed to be directly confronted with the falsity of this argument.

Consequently, on November 19, 2001, faxed a letter to Defendants' counsel, (Exhibit VV), advising him, *inter alia,* that Plaintiffs:

> ...consider unethical your continued advocacy, even as "law of the case," of the false legal claim that arriving aliens may be released on "conditional parole" under 8 U.S.C. §1226(a)(2)(B). ...

> You should also be forewarned that, should you persist in your advocacy of this clearly false legal position, I will shortly be filing a motion for sanctions, under Rule 11(b) and (c), Federal Rules of Civil Procedure.

Shortly thereafter, Plaintiffs received a response, dated November 20, 2001, (Exhibit WW), together with Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion For Summary Judgment, etc., and Motion to Strike Plaintiffs' enumeration of Defendants' false legal positions. Said letter stated, *inter alia*, that:

> In short, the defendants have not misled the Fifth Circuit or District Court with respect to the applicability of 8 U.S.C. § 1226 to these proceedings. The section is relevant because the District Court's January 13, 1999 final judgment, as proposed by the plaintiffs, requires an immigration judge to consider an arriving alien for parole under 8 U.S.C. § 1226, thereby rendering 8 U.S.C. § 1226(a)(2)(B) relevant. Considering the judgment's requirement, the Fifth Circuit's decision is not in error and the defendants' argument with respect to law of the case is not unethical.

In other words, Defendants now claim that, by devising a *remedy* to cure constitutional violations in the way a given statute (8 U.S.C. §1182(d)(5)(A)) was administered, and ordering Defendants to provide a certain type of hearing [8] on requests for parole by class members, to correct a constitutional violations, this Court destroyed its own jurisdiction over the issue. This is radically different from the prior theories as to why 8 U.S.C. §1226(e) barred jurisdiction (set forth above), that Defendants urged before this Court, and the Fifth Circuit. It is also so clearly incorrect that it is difficult to accept that it is being made in good faith.

Consequently, Plaintiffs responded, faxing and mailing a second letter, dated November 26, 2001, (Exhibit XX), pointing out these obvious infirmities, and noting as follows, (*id.* at page 2):

> Indeed, I take your letter of November 20, 2001 as an admission that you are aware that jurisdiction to parole an arriving LPR is found **only** under 8 U.S.C. §1182(d)(5)(A), because such persons are not arrested on a "warrant issued by the Attorney General," as required by §1226(a), and will give you until Friday, November 30, 2001, to file a pleading with the District Court acknowledging this fact, before filing a motion for Rule 11 sanctions.

By response dated November 27, 2001, (Exhibit YY), Defendants finally admitted that class members are not arrested on warrants, and that "but for" this Court's Order, parole would be governed only by 8 U.S.C. §1182(d)(5)(A). *Id.* at page 2 (emphasis added):

> As noted in your letter, however, the order specifically requires a hearing "in accordance with 8 C.F.R. § 236.1." Under that regulation, "the immigration judge is authorized to exercise the authority in section 236 of the Act." Thus, in accord with the regulation, an immigration judge is limited to action set forth in INA

---

[8]   To wit, to conduct a hearing on parole requests, (made under 8 U.S.C. §1182(d)(5)(A)), in same the manner as a bond hearing, under 8 U.S.C. §1226(a), as set forth in 8 C.F.R. §236.1.

§ 236, and **it necessarily follows that the judgment,
which was drafted by the plaintiffs, called for an
immigration judge "to determine" an arriving alien's
eligibility for parole under that section.** Dkt. No. 104
at 5. [9] The defendants' reading of the Court's order as
raising the applicability of INA § 236 to these
proceedings is clearly reasonable.

You characterize the defendants' understanding of the
Court's final order as "circular" (and therefore, wrong),
because plaintiffs raised 8 C.F.R. § 236.1 only as a
"remedy." Your distinction, however, wrongly assumes
that 8 C.F.R. § 236.1 authorizes an immigration judge to
determine eligibility and to grant parole independent of
INA § 236. [10] Because 8 C.F.R. §236.1 only provides an
immigration judge with the authority to consider
eligibility for remedies under INA § 236, both the
defendants and the Fifth Circuit logically concluded that
the Court's final order implicated parole under INA §
236, **notwithstanding the absence of a warrant.**

This purported justification is both disingenuous in the extreme,
and inconsistent with Defendants prior representations both to this
Court, and the Fifth Circuit. And while it would seem to open the
door to a resolution of the controversy, (*i.e.,* through an Order
which requires a hearing, but without explicit reference to 8
C.F.R. §236.1), Defendants attempted to slam that door shut, again,
by invoking the "law of the case" doctrine. (Exhibit YY, at p.3):

---

[9] Actually, the Order, at p. 5, requires a hearing:

to determine whether [the class member] **should be paroled**
into the U.S. during the pending of said proceedings, and
if so, under what conditions.

This is clearly different from a hearing "'to determine' an
arriving alien's eligibility for parole under [INA Section 236],"
as Defendants claim to have interpreted the Order.

[10] This is also false. Plaintiffs do not "assume," and this
Court's Order does not contemplate, "that 8 C.F.R. § 236.1
authorizes an immigration judge to determine eligibility and to
grant parole independent of INA § 236." To the contrary, precisely
because an immigration is **not** so authorized, it was necessary for
the Court to issue an Order, empowering the Judges to do so.

11

> The defendants have noted that INA § 212(d)(5) would apply to these proceedings but for plaintiffs' proposed order requiring a hearing in accordance with 8 C.F.R. §236.1. Dkt. No. 151 at 13, n.7. However, because of the nature of the proposed order, the law of the case doctrine is applicable on remand.

Here, Defendants admit that they first raised their current theory in a footnote in Docket No. 151: Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion or Summary Judgment, etc., which pleading was filed *after* Plaintiffs had threatened sanctions if they continued to urge the prior theory, even as "law of the case."

Said pleading contains its own set of incorrect and misleading statements, not the least of which is the footnote in question, wherein Defendants assert as follows (emphasis added):

> The defendants agree with the plaintiffs that 8 U.S.C. § 1182(d)(5) is the proper mechanism for parole of the class members in question. However, this Court's final judgment, as drafted by the plaintiffs, does not permit an immigration judge conducting a hearing under 8 C.F.R. § 236.1(d)(1) to consider parole eligibility under that section. Rather, the immigration judge is limited to relief under 8 U.S.C. § 1226(a). In short, an immigration judge cannot consider 8 U.S.C. §1182(d)(5) eligibility under the regulation. **The fact that the plaintiffs now admit that their filing was legally flawed should not serve as a basis to reopen the issue to consideration.**

Plaintiffs have not admitted, and do not admit, that "their filing was legally flawed." The regulations which implement 8 U.S.C. §1182(d)(5) do not contemplate granting parole to class members, and make no provision for considering the relevant factors, such as, for example, were set forth in Plaintiffs' Opposition to Defendants' Motion For Summary Judgment, at p. 17, n.26:

> There is no set "list" of factors [for granting parole under 8 U.S.C. §1182(d)(5)(A)]. As ADDE Larry Doyle said in his first Declaration, (R:725):

Each request for parole is reviewed by myself on a case by case basis, in which I carefully consider the factors presented in each request for parole. In determining whether or not an alien shall be paroled into the United States, I consider the likelihood that the alien will abscond or pose a security risk.

Even as an attorney who has been certified as a specialist in immigration and nationality law for twenty years, the undersigned knows of no source, other than personal experience, from which to obtain this information. To her knowledge, there is not even any "case law" which covers the issue. From experience, the undersigned knows to look for and document such factors as the presence in the U.S. of minor, U.S. citizen or LPR dependents; the fact that such dependents are dependent on the applicant for support; whether the applicant has urgent medical needs, significant property, business, or other family ties to the United States; whether it appears that there are bona fide legal arguments that the LPR is not subject to removal, and if so, whether relief from removal would be available. Plaintiffs' Exhibit "LL," incorporated herein, wherein counsel recently made a successful request for parole for a class member.

That these are, in fact, the types of factors which should be considered can be seen from the comments of the Immigration Judge when Plaintiff Ascencio asked him about getting a "permit" to go to Houston, to see her infant son, and enroll her eight year old daughter in school. (R:971-72):

IMMIGRATION JUDGE: I would think that the INS would be receptive to granting you parole into the United States, but I cannot speak for them, in view of the..your status as a lawful permanent resident and in view of the young age of your child. But you'll have to ask the District...
MS. ASCENCIO: Because my daughter is leaving on Monday to go to classes, she needs to go into school.
IJ: In Houston?
MS. ASCENCIO: In Houston.
IJ: Well, that's a double reason. You'll have to talk to the District Director.

By contrast, case law developed in the context of *bond* proceedings, held under 8 C.F.R. §236.1, *does* mandate consideration of such

13

factors, in the context of determining whether the individual poses a risk of flight, or a danger to society. *See, Matter of Drysdale,* 20 I&N Dec. 815 (BIA 1994) ("Once it is determined that an alien does not present a danger to the community or any bail risk, then no bond should be required."); *Matter of Patel*, 15 I&N Dec. 666 (BIA 1976) (Where it appeared from the record that respondent was living with his wife and U.S. citizen child, had worked for the same employer for almost two years and had kept the Immigration and Naturalization Service informed of his address changes; and that respondent had never been arrested or convicted of any crime and had never been involved with narcotics or involved in any subversive or immoral activities, there was no reason to justify holding respondent under even a minimal bond, and respondent was ordered released from custody of his own recognizance). [11]

It therefore makes perfect sense for this Court to remedy a constitutional violation in the manner in 8 U.S.C. §1182(d)(5)(A) has been implemented, by importing procedures from §1226(a)(2), and pertinent case law standards developed for bond hearings. This does not mean, however, that this Court is conducting review of "[t]he Attorney General's discretionary judgment regarding the application of [§1226]," or that the Court is "set[ting] aside any action or decision by the Attorney General under [§1226]...," such as would fall within the jurisdictional bar of 8 U.S.C. §1226(e).

Just as it is difficult to grasp that Defendants' original claims under §1226(e), as set forth above, could have been made in good faith, it is difficult to believe that any attorney representing the Attorney General of the United States could honestly believe that, by invoking the procedures provided for under one statute (8 U.S.C. §1226) to cure a constitutional violation of the manner in

---

[11]   Note the use of the phrase "released from custody of his own recognizance."  This is a synonym for release on "conditional parole," as used in 8 U.S.C. §1226(a)(2)(B).

14

which another statute (8 U.S.C. §1182(d)(5)) is being administered, this Court was conducting any form of review under the former, or setting aside any decision made thereunder.

### V.  CONCLUSION

It is therefore urged that this Court issue an Order to Show Cause why current and prior counsel for Defendants, Anthony Payne, Esq., and Regina Byrd, Esq., should not be held in violation of Rule 11(b)(2), Federal Rules of Civil Procedure, and that an evidentiary hearing be conducted with respect thereto.

Respectfully Submitted,



Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID.  1178
Texas Bar 03052800

Thelma O. Garcia, Attorney
301 E. Madison
Harlingen, TX 78550
(956) 425-3701
(956) 428-3731

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, with proposed Order, and Exhibits RR through AAA, was mailed, first-class postage prepaid, to Anthony Payne, Attorney, OIL Box 878, Ben Franklin Sta., D.C., Wash., D.C. 20044, and that the foregoing, with proposed order only, was also were sent to him by fax, to (202) 616-4975, on December 3, 2001.

15

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,           )
                                 )
v.                               )        C.A. No.  B-94-215
                                 )
TROMINSKI, et al.                )
_____  )

EXHIBIT "RR"
FILED IN SUPPORT OF

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AND FOR
AN EVIDENTIARY HEARING WITH RESPECT THERETO

Come Plaintiffs, and file herewith, in support of their Motion For
Rule 11 Sanctions, And For An Evidentiary Hearing With Respect
Thereto, a second copy of Exhibit RR, the Affidavit of Attorney
Robert Crane, previously submitted as a stand-alone exhibit.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731
Fed. ID.  1178
Texas Bar 03052800

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were mailed, first-class postage prepaid, to Anthony
Payne, Attorney, OIL, P.O. Box 878, Ben Franklin Sta., Wash., D.C.
20044, on December 3, 2001.

_____

## AFFIDAVIT OF ROBERT H. CRANE, ESQ.

STATE OF TEXAS      )
COUNTY OF HIDALGO )

     BEFORE ME, the undersigned authority, on this day personally appeared ROBERT H. CRANE, who, being by me duly sworn, made the following statements and swore that they were true:

"I am an attorney at law, duly licensed by the State of Texas, with offices in Weslaco, Texas. I have practiced immigration law in the Rio Grande Valley for over twenty years, and have been certified by the Texas Board of Legal Specialization in Immigration and Nationality Law since 1984. The following analysis relates to the law as it stood prior to the recent enactment of Senate Bill 1501, known as the "Uniting and Strengthening America Act" of 2001. I am not aware of any changes effected by that legislation relating to the matters set forth below, but have not yet studied it in depth.

During the past twenty years, I have represented many lawful permanent residents, ("LPRs"), in deportation, exclusion, and removal proceedings, including a number who were stopped at a land port of entry on their return from Mexico and placed under proceedings. Some such LPRs were sent back to Mexico to await their hearings. Others were paroled into the United States for prosecution, and after the criminal cases were completed, detained at the Port Isabel Service Processing Center near Los Fresnos, Texas. Occasionally, such persons are paroled into the U.S. for purposes of conducting hearings at the time they seek admission. Until April 1, 1997, such proceedings were called "exclusion" proceedings. Since that time, they have been called "removal" proceedings for "arriving aliens," or for "applicants for admission." INS has always had statutory authority to detain such individuals who seek admission without issuing and serving a warrant of arrest. Both prior to and after the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, ("IIRIRA"), effective April 1, 1997, that authority has been found at 8 U.S.C. §1225(b), and the authority to parole such persons into the United States, for prosecution, or for immigration proceedings, has been found at 8 U.S.C. §1182(d)(5)(A).

I have also represented numerous LPRs who have been placed under proceedings while they were within the United States. This commonly occurs at the time of a criminal conviction, but sometimes not for years thereafter, as, for example, in situations where the offense, (e.g., transporting aliens, in violation of 8 U.S.C. §1324(a)(1)(A)(ii)), was not grounds for deportation at the time of the conviction, but has retroactively been made into grounds for removal. In such cases, INS issues a "charging document," previously known as an Order to Show Cause, "OSC" (for deportation proceedings), and now called a Notice to Appear, "NTA" (for removal proceedings). An OSC or NTA is frequently, but not always, accompanied by a warrant of arrest, currently issued under the authority of 8 U.S.C. §1226(a), and before April 1, 1997, under 8 U.S.C. §1252(a). With certain exceptions, enacted by IIRIRA, INS has had the authority to release such a person on bond, or under "conditional parole," which is a form of release on personal recognizance, with a variety of conditions, such as geographical limitations, and reporting requirements. Before April 1, 1997, that authority was found at 8 U.S.C. §1252(a)(2). Now, it is found at 8 U.S.C. §1226(a)(2)(B).

The terms "parole" (as used in 8 U.S.C. §1182(d)(5)(A)), and "conditional parole," (as found first in 8 U.S.C. §1252(a)(2), and now, in 8 U.S.C. §1226(a)(2)(B)), have completely different meanings.

As used in §1182(d)(5)(A), "parole" is a legal fiction, allowing the person to be physically present in the United States, without being considered to have made an "entry," or to have been "admitted" to the United States. It can only be granted to an applicant for admission to the United States. In order to cope with this limitation, I have seen dozens of instances in which INS Criminal Investigators at the Harlingen District will physically accompany undocumented alien cooperating witnesses to a bridge Port of Entry and have the alien depart and re-enter the United States so that he or she could be placed in "parole" status and be issued Form I-94 Arrival/Departure Records annotated with "Sec. 212(d) Parole". In this way the undocumented cooperating alien witness can be "documented" without being arrested and subjected to deportation or removal proceedings.

By contrast, the "conditional parole" of (former) §1252(a)(2), and currently, of §1226(a)(2)(B), is a form of release on recognizance. As was the case under 8 U.S.C. §1252(a), pursuant to §1226(a), it can only be utilized where the person has been arrested on a warrant issued by the Attorney General.

When I represent immigrants in deportation, exclusion, or removal proceedings, I customarily request copies of their immigration files. In my review of such files, I do not recall having ever seen an instance where a warrant of arrest was issued by the Attorney General (or his or her designate), in connection with exclusion proceedings, or "removal" proceedings for an "arriving" applicant for admission. Under 8 U.S.C. §1225(b), such persons are not considered to have been "arrested," but only "detained," and warrants are not required. The distinction between being "arrested" and being "detained" is established, inter alia, by 8 U.S.C. §1357, and the implementing regulation, 8 C.F.R. §287.

For example, 8 U.S.C. §1357(a)(1) gives certain INS employees the right, without warrant, "to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." Similarly, 8 U.S.C. §1357(a)(2) gives such INS employees the right, without warrant, "to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation..." These distinctions are more fully developed in 8 C.F.R. §287.8(b), which defines and establishes the parameters for an "[i]nterrogation and detention not amounting to arrest."

Notably, the authority to issue warrants of arrest is strictly circumscribed by 8 C.F.R. §236.1(b)(1), in conjunction with 8 C.F.R. §287.5(e)(2), and is much more narrow than the authority found at 8 U.S.C. §1225(b)(2)(C) to institute removal proceedings against an arriving alien, and to return that alien to Mexico to await a hearing. Under 8 C.F.R. §235.6(a)(1), the power to institute proceedings in such cases may be exercised by any immigration officer. And the authority to return to Mexico to await such proceedings any alien arriving by land from Mexico established by 8 U.S.C. §235(b)(2)(C) has never been the subject of an implementing regulation. Consequently, one could either argue that it may be exercised only by the Attorney General, the individual to whom it is statutorily entrusted, or by any immigration officer, under the theory that it has not been circumscribed by the regulations. In practice, INS takes the latter position, and permits the decision to return such a person to Mexico to be made by the officer or officers on duty, very few of whom are authorized to issue arrest warrants under 8 C.F.R. §236.1(b)(1). To the contrary, it is common knowledge among immigration attorneys that arrest warrants are not utilized in such cases, but are reserved for situations where an individual placed under proceedings is "taken into custody," as contemplated by 8 C.F.R. §236.1(b)(1). An individual placed under proceedings and returned to Mexico under 8 U.S.C. §1225(b)(2)(C) is only

considered to be "detained," and is not "taken into custody" within the meaning of 8 C.F.R. §236.1(b)(1).

_____
Robert H. Crane


SIGNED under Oath before me on November 15, 2001.


_____
Notary Public, State of Texas
Commission Expires:
Typed or Printed Name of Notary:

ODILIA MARROQUIN
MY COMMISSION EXPIRES
March 5, 2005

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,           )
                                 )
v.                               )        C.A. No.  B-94-215
                                 )
TROMINSKI, et al.                )
_____)

EXHIBIT "SS"
FILED IN SUPPORT OF

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AND FOR
AN EVIDENTIARY HEARING WITH RESPECT THERETO

Come Plaintiffs, and file herewith, in support of their Motion For
Rule 11 Sanctions, And For An Evidentiary Hearing With Respect
Thereto, Exhibit SS, consisting of a copy of pages 14 - 17 of
Defendants' Motion For Stay of the Court's Judgment Pending
Appeal," Docket No. 111, filed January 25, 1999.


Respectfully Submitted,



Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731
Fed. ID.  1178
Texas Bar 03052800

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were mailed, first-class postage prepaid, to Anthony
Payne, Attorney, OIL, P.O. Box 878, Ben Franklin Sta., Wash., D.C.
20044, on December 3, 2001.

_____

who generally have no other means of review available, and the
class is not so limited.  Accordingly, review is only appropriate
in the court of appeals, after the entry of a final order, and
after the exhaustion of administrative remedies.  <u>Mejia-Rodriguez
v. Reno</u>, --- F.3d ---, 1999 WL 1762 at *4-5 (11th Cir. January 4,
1999) (non-criminal aliens); <u>Richardson</u>, 1998 WL 889376 at *31
(criminal aliens).

     **b.   The court's review is prohibited by INA § 236(e)**

The district court's jurisdiction is barred by INA § 236(e),
8 U.S.C. § 1226(e).  <u>Richardson</u>, 1998 WL 889376 at *9.  Section
236 of the INA provides for the detention of aliens who are in
removal proceedings and bars judicial review of the Attorney
General's determinations regarding detention or parole:

> The Attorney General's discretionary judgment
> regarding the application of this section shall
> not be subject to review.  No court may set aside
> any action or decision by the Attorney General
> under this section regarding the detention or
> release of any alien or the grant, revocation, or
> denial of bond or parole.

8 U.S.C. § 1226(e).

The Court's Memorandum and Order makes substantial
modifications to present INS parole procedures.  In pertinent
part, the Memorandum and Order directs the INS to bring arriving
lawful permanent resident aliens before an immigration judge for
a parole determination.  Memorandum and Order at 5.  The present
INS procedure, however, requires an alien to seek parole from the
district director.  The structure by which an arriving alien may
obtain release from detention is set forth by the INA and the

14

regulations promulgated thereunder.   In general, the Attorney
General is authorized to detain "an alien seeking admission [who]
is not clearly and beyond a doubt entitled to be admitted,
pending proceedings under section 240 [8 U.S.C. § 1229a]."  8
U.S.C. § 1225(b)(2)(A).   Section 236(a) of the INA provides that
an alien, whether or not he is seeking admission, may be held by
the INS pending a determination of whether that alien is to be
removed from the United States.  8 U.S.C. § 1226(a).   The
Attorney General may release such aliens on bond or conditional
parole.  8 U.S.C. §§ 1226(a)(2)(A) & (B).   INA § 212(d)(5)(A)
provides for the circumstances under which such aliens may obtain
release from custody:

> The Attorney General may . . . in his discretion
> parole into the United States temporarily under
> such conditions as he may prescribe only on a
> case-by-case basis for urgent humanitarian reasons
> or significant public benefit any alien applying
> for admission to the United States, but such
> parole of such alien shall not be regarded as an
> admission of the alien . . . .

8 U.S.C. § 1182(d)(5)(A) (emphasis added).   The district director
has been delegated the authority for deciding applications for
parole pursuant to INA § 212(d)(5)(A).   8 C.F.R.
§ 103.1(g)(2)(ii)(B).   Immigration judges, however, lack such
authority.   8 C.F.R. § 3.19.

Section 236(e) of the INA bars the court's jurisdiction in
two ways.  The first sentence of INA § 236(e) expressly and
categorically bars judicial review of discretionary judgments
made by the Attorney General regarding the detention or release
of any alien.  The delegation of authority to make detention

15

decisions constitutes a discretionary action by the Attorney
General respecting the application of INA § 236.  See INA § 103,
8 U.S.C. § 1103; Chevron, USA v. Natural Resources Defense
Council, 467 U.S. 837, 843-44 (1984) ("If Congress has explicitly
left a gap for the agency to fill, there is an express delegation
of authority to the agency to elucidate a specific provision of
the statute by regulation); Vermont Yankee v. Natural Resources
Defense Council, 435 U.S. 519, 544 (1978) (agency choice of
procedures is discretionary).  Thus, INA § 236(e) precludes any
challenge to the discretionary selection of the means by which
the Attorney General implements INA § 236 and other parole
provisions by assigning release determinations concerning
arriving aliens in petitioner's situation to the INS district
director rather than the immigration judge.

     The district court's jurisdiction is precluded by INA
§ 236(e) for a second reason.  The second sentence of INA
§ 236(e) expressly and unequivocally bars any court from setting
aside any action or decision by the Attorney General under INA §
236 regarding the detention of an alien or the denial of bond or
parole to an alien pending a decision whether to remove the alien
from the United States.  Not only is promulgation of the
regulatory scheme establishing procedures for parole and bond
requests an "action" by the Attorney General regarding the
"detention or release of [an] alien" under INA § 236, but the
district director's decisions to parole certain aliens but not
others also is a decision regarding the "detention or release of

16

[an] alien" under INA § 236.   In short, plaintiffs' action before the district court is a challenge to both the Attorney General's selected method for implementing section 236 and other parole provisions and to the district director's decision under INA § 236.   Section 236(e) clearly precludes all courts from setting aside detention decisions and actions of either the Attorney General or her designees.   8 U.S.C. § 1226(e).

**2.   The Court's Factual Findings Are Clearly Erroneous**

The Court's factual determinations are clearly erroneous because they fail to comport with the law of the case and are without any support in the record.   Generally, under the law of the case doctrine, a successor judge must defer to the order of a prior judge.   <u>U.S. v. O'Keefe</u>, 128 F.3d 885, 891 (5th Cir. 1997).   The successor judge is not free to simply rule differently from a prior judge, but must "follow a ruling made by an earlier court unless the prior decision was erroneous, is no longer sound, or would create injustice. " <u>Id</u>. at 891.   Here, on April 26, 1995, Judge Vela issued a bench order, and the parties agreed, that no discovery was required to resolve the litigation because the case could be decided on purely legal grounds without regard to factual findings.   Defendants' Opposition To Plaintiffs' (Opposed) Motion To Compel Production Of Documents And Motion To Hold Discovery In Abeyance at 4.   The Court's Memorandum and Order of November 25, 1998 made certain factual findings despite the Court's earlier decision that the facts were not germaine to the case.   The Court ignored the law of the case

17

41

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,          )
                                )
v.                              )          C.A. No.  B-94-215
                                )
TROMINSKI, et al.               )
_____ )

EXHIBIT "TT"
FILED IN SUPPORT OF

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AND FOR
AN EVIDENTIARY HEARING WITH RESPECT THERETO

Come Plaintiffs, and file herewith, in support of their Motion For
Rule 11 Sanctions, And For An Evidentiary Hearing With Respect
Thereto, Exhibit TT, consisting of a copy of pages 46 - 53 of
Defendants' (Appellants') Opening Brief before the Fifth Circuit.


Respectfully Submitted,

Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731
Fed. ID.  1178
Texas Bar 03052800


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were mailed, first-class postage prepaid, to Anthony
Payne, Attorney, OIL, P.O. Box 878, Ben Franklin Sta., Wash., D.C.
20044, on December 3, 2001.

### A. The Court Improperly Seeks To Supplant The Agency's Selected Procedures For Dealing With Lawful Permanent Residents Who Are Placed In Removal Proceedings

#### 1. INA § 236(e) Provides That the District Court Has No Jurisdiction To Review or To Establish Parole Procedures Impacting Upon Aliens In Removal Proceedings

The district court was without jurisdiction to enter review or set aside the Attorney General's actions or decisions regarding parole of aliens in removal proceedings. That court is barred by the mandate that Congress issued when it enacted INA § 236(e), 8 U.S.C. § 1226(e). Section 236 of the INA provides for the detention of aliens who are in "removal proceedings" and bars judicial review of the Attorney General's determinations regarding detention or parole:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

The District Court's Order makes substantial modifications to defendants' parole procedures for arriving aliens placed in removal proceedings. In pertinent part, the Order directs defendants to bring arriving lawful permanent resident aliens before an immigration judge for a parole determination. R. 104 at 90. The procedure established by the Attorney General, however, requires an alien to seek parole from the district director. The structure by which an arriving alien may

46

132

obtain release from detention is set forth by the INA and the regulations

promulgated thereunder. The district director has been delegated the authority for

deciding applications for parole pursuant to INA § 212(d)(5)(A).  8 C.F.R.

§ 103.1(g)(2)(ii)(B).  Immigration judges, however, lack such authority.

8 C.F.R. § 3.19.

Section 236(e) of the INA bars the court's jurisdiction in two ways.  The

first sentence of INA § 236(e) expressly and categorically bars judicial review of

discretionary judgments made by the Attorney General regarding the detention or

release of any alien.  The delegation of authority to make detention decisions

constitutes a discretionary action by the Attorney General respecting the

application of INA § 236.  See INA § 103, 8 U.S.C. § 1103. Thus, INA § 236(e)

precludes any challenge to the discretionary selection of the means by which the

Attorney General implements INA § 236 and other parole provisions by assigning

release determinations concerning arriving aliens to the defendants' district

director rather than the immigration judge.

The district court's jurisdiction is precluded by INA § 236(e) for a second

reason.  The second sentence of INA § 236(e) expressly and unequivocally bars

any court from setting aside any action or decision by the Attorney General under

INA § 236 regarding the detention of an alien or the denial of bond or parole to an

133

alien pending a decision whether to remove the alien from the United States. Not only is promulgation of the regulatory scheme establishing procedures for parole and bond requests an "action" by the Attorney General regarding the "detention or release of [an] alien" under INA § 236, but the district director's decisions to parole certain aliens but not others also is a decision regarding the "detention or release of [an] alien" under INA § 236. In short, plaintiffs' action before the district court is a challenge to both the Attorney General's selected method for implementing section 236 and other parole provisions and to the district director's decision under INA § 236. Section 236(e) clearly precludes all courts from setting aside detention decisions and actions respecting arriving aliens made by the Attorney General or her designees. 8 U.S.C. § 1226(e).

> **2. Congress Delegated Its Authority Over Immigration Matters To The Attorney General, Whose Established Parole Procedure for Aliens In Removal Proceeding Has Improperly Been Set Aside By The District Court**

The court improperly seeks to supplant the defendants' selected mode of enforcement by dictating the procedures by which the agency must operate. The courts are required to show proper deference to an agency's discretionary choice of procedures. <u>Vermont Yankee v. Natural Resources Defense Council</u>, 435 U.S. 519, 544 (1978).

The structure by which an alien may obtain release from detention is set

forth by the INA and the regulations promulgated thereunder.  In general, the

Attorney General is authorized to detain "an alien seeking admission [who] is not

clearly and beyond a doubt entitled to be admitted, pending proceedings under

section 240 [8 U.S.C. § 1229a]."  8 U.S.C. § 1225(b)(2)(A).  INA § 212(d)(5)(A)

provides for the circumstances under which such aliens may obtain release from

custody:

> The Attorney General may . . . in his discretion parole
> into the United States temporarily under such conditions
> as he may prescribe only on a case-by-case basis for
> urgent humanitarian reasons or significant public benefit
> any alien applying for admission to the United States, but
> such parole of such alien shall not be regarded as an
> admission of the alien . . . .

8 U.S.C. § 1182(d)(5)(A) (emphasis added).  The district director has been

delegated the authority for deciding applications for parole pursuant to section

212(d)(5)(A).  8 C.F.R. § 103.1(g)(2)(ii)(B).  Immigration judges, however, lack

such authority.  8 C.F.R. § 3.19.

Section 236(a) of the INA provides that an alien, whether or not he is

seeking admission, may be held by the defendants pending a determination of

whether that alien is to be removed from the United States.  8 U.S.C. § 1226(a).

The Attorney General may release such aliens on bond or conditional parole.  8

U.S.C. §§ 1226(a)(2)(A) & (B).  An alien seeking such release on bond or parole

135

must satisfy the requirements of INA § 212(d)(5)(A). It was improper for the Court to upset the regulatory scheme and to direct who must provide what type of hearing. Such decisions lie within the purview of the administrative agency and are entitled to substantial deference. <u>Vermont Yankee</u>, 435 U.S. at 544. Accordingly, it was improper for the Court to order that the defendants provide arriving lawful permanent resident aliens with a prompt hearing before an immigration judge.

### B. The Court Improperly Makes An Effort To Afford An Alien In Exclusion Proceedings The Same Procedures Afforded To An Alien In Deportation Proceedings

The court inappropriately attempts to afford an alien in exclusion proceedings the same procedures afforded to an alien in deportation procedures. Through its Order of November 25, 1998, the court attempts to impose the "independent adjudicator" for parole hearings afforded to an alien in deportation proceedings to an alien in exclusion proceedings. R. 104 at 89-90. Moreover, the court attempts to impose a notice requirement regarding the availability of parole in exclusion proceedings. The court may not do either of these actions because the

50

136

"entry" doctrine established in <u>Fleuti v. Rosenberg</u>, 374 U.S. 449 (1963), has been supplanted by new procedures for determining whether a lawful permanent resident may be placed in exclusion proceedings.   Congress made major revisions to INA § 101(a)(13) in enacting IIRIRA.  The term "entry" was specifically deleted and replaced with the "admission" concept.  <u>Richardson v. Reno</u>, 162 F.3d 1338, 1347-48 (11th Cir.1998).  Congress provided that lawful permanent residents shall not be regarded as seeking an admission into the United States unless they come within one or more of six categories in INA § 101(a)(13)(C)(i)-(vi):

> An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws <u>unless</u> the alien —
>
>         *      *      *
>
> (i)    has abandoned or relinquished that status,
> (ii)   has been absent from the United States for a continuous period in excess of 180 days,
> (iii)  has engaged in illegal activity after having departed the United States,
> (iv)  has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this chapter and extradition proceedings,
> (v)   has committed an offense identified in section 1182(a)(2) of this title, unless since such offense the alien has been granted relief under section 1182(h) or 1229b(a) of this title, or

51

137

(vi)    is attempting to enter at a time or place other than as
        designated by immigration officers or has not been
        admitted to the United States after inspection and
        authorization by an immigration officer.

8 U.S.C. § 1101(a)(13)(C)(i)-(vi).  The language is explicit and non-discretionary.

Thus, under the "plain meaning" rule, Congress has supplanted the Fleuti doctrine

except as preserved by the new statue.  Richardson, 162 F.3d at 1348.

### C.  The Court Incorrectly Ordered The Defendants To Provide A Parole Hearing Before What The Court Perceives As An "Impartial Adjudicator"

The court's decision that a parole hearing must be held before a person

whom it deems to be an "impartial adjudicator" is in direct conflict with the

express holding of the Supreme Court.  See R. at 89.  In Marcello v. Bonds, 349

U.S. 302 (1955), the Supreme Court addressed a challenge alleging that parole

hearings must occur before an "impartial adjudicator."  The Supreme Court

unequivocally rejected such a challenge:

> Petitioner would have us hold that the presence of this
> relationship [that the special inquiry officer was subject
> to the supervision and control of officials in the
> Immigration Service charged with investigative and
> prosecuting functions] so strips the hearing of fairness
> and impartiality as to make the procedure violative of
> due process.  The contention is without substance when
> considered against the long-standing practice in
> deportation proceedings, judicially approved in
> numerous decisions in the federal courts, and against the
> special considerations applicable to deportation which

52

138

the Congress may take into account in exercising its
particularly broad discretion in immigration matters.

Marcello, 349 U.S. at 311.  Inasmuch as the court in the case at bar has concluded

that a parole hearing must occur before an impartial adjudicator, Marcello controls

the outcome of this issue.  Consequently, the court must be reversed.

### D.  Lawful Permanent Residents Are Not Entitled To Notice Of The Availability Of Parole

The court's November 25, 1998 Memorandum and Order requires that LPRs

seeking admission must be given notice of the availability of parole.  Id. at 90.

The court is mistaken for several reasons.

First, upon seeking admission, a LPR is wholly subject to the procedures

afforded in exclusion proceedings.  Landon, 459 U.S. at 21.  Moreover, an alien is

entitled to no more protection than that afforded to citizens claiming liberty and

property rights.  The Supreme Court has recently determined that where a citizen

seeks to protect a property right or liberty interest, due process does not require

additional notice of available procedures where those procedures are established

by published, generally available statutes.  City of West Covina v. Perkins, --- U.S.

---, 1999 WL 9696 at *4-5 (U.S. January 13, 1999).  "A primary purpose of the

notice required by the Due Process Clause is to ensure that the opportunity for a

hearing is meaningful."  City of West Covina, 1999 WL 9696 at *4.  However,

53

139

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,           )
                                 )
                                 )
v.                               )        C.A. No.  B-94-215
                                 )
TROMINSKI, et al.                )
_____)

EXHIBIT "UU"
FILED IN SUPPORT OF

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AND FOR
AN EVIDENTIARY HEARING WITH RESPECT THERETO

Come Plaintiffs, and file herewith, in support of their Motion For
Rule 11 Sanctions, And For An Evidentiary Hearing With Respect
Thereto, Exhibit UU, consisting of the "Denial of Motion For Bond
Or Conditional Parole Under Section 236(a)(2) of the Act, 8 U.S.C.
§1226(a)(2)," issued November 29, 2001, by Immigration Judge David
Ayala, in response to the *pro se* request for bond or conditional
parole under that section made by Carlos Calvillo-Lopez, A44 332
239, a lawful permanent resident being held as an "arriving alien."

Respectfully Submitted,

Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731
Fed. ID.  1178
Texas Bar 03052800

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were mailed, first-class postage prepaid, to Anthony
Payne, Attorney, OIL, P.O. Box 878, Ben Franklin Sta., Wash., D.C.
20044, on December 3, 2001.



UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION REVIEW
PORT ISABEL SERVICE PROCESSING CENTER
LOS FRESNOS, TEXAS

IN THE MATTER OF                    )
                                    )
CALVILLO-LOPEZ, CARLOS              )       In Bond Proceedings
                                    )
Respondent.                         )       A44 332 239
_____)

### DENIAL OF MOTION FOR BOND OR CONDITIONAL PAROLE UNDER SECTION 236(a)(2) OF THE ACT, 8 U.S.C. §1226(a)(2)

The Respondent herein, acting *pro se*, has requested that this Immigration Court grant bond, or "conditional parole," based on §236(a)(2) of the Immigration and Nationality Act, as amended. The request is denied for lack of jurisdiction.

## I.  BACKGROUND

Respondent is a lawful permanent resident of the United States, who is currently detained, without bond, for removal proceedings as an "arriving alien," although he does not concede that he is in fact properly considered to be such an "arriving alien."

The Respondent has informed the Court that, in *Ascencio-Guzman, et al v. Trominski, et al*, No. CA B-94-215, in a pleading filed January 25, 1999, Docket entry No. 111, (at page 39 of the record of proceedings), the Office of Immigration Litigation, ("INS"), which represents the Defendants therein, represented to the United States District Court as follows (emphasis added):

> ... [A]n alien, whether or not he is seeking admission, may be held by the INS pending a determination of whether that alien is to be removed from the United States. 8 U.S.C. § 1226(a). **The Attorney General may release such aliens on bond or conditional parole. 8 U.S.C. §§ 1226(a)(2)(A) & (B).** INA § 212(d)(5)(A) [8 U.S.C. §1182(d)(5)] provides for the circumstances under which such aliens may obtain release from custody ...

Apparently, INS made similar representations to the Fifth Circuit in the initial appeal of that case, *Loa-Herrera v. Trominski,* 231 F.3d 984 (5th Cir. 2001), as seen from the Court's holding therein, *id.* at 991-92 (since the authority to parole an arriving alien is conferred by 8 U.S.C. §1226, the manner in which

that authority is exercised is immune from judicial review under §1226(e)).

As the Respondent herein correctly notes, the Attorney General has delegated to the Immigration Court the authority to grant bond, or "conditional parole," under 8 U.S.C. §1226(a)(2). *See* 8 C.F.R. §3.10 (authorizing Immigration Judges to "exercise the powers and duties in this chapter regarding the conduct of exclusion, deportation [and] removal ... proceedings") and §236.1(d):

> After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 240 becomes final, request amelioration of the conditions under which he or she may be released.  Prior to such final order, and except as otherwise provided in this chapter, the immigration judge is authorized to exercise the authority in section 236 of the Act (or Section 242(a)(1) of the Act as designated prior to April 1, 1997").

The Respondent has requested that this Court either grant bond or "conditional parole" under §236(a)(2) of the Act, or issue a written decision, giving the Court's reasons for refusing to do so.

As a matter of undisputed immigration law, summarized below, this Court does not have jurisdiction to grant bond or "conditional parole" to arriving aliens under 8 U.S.C. §1226(a)(2). Such persons may be paroled only pursuant to 8 U.S.C. §1182(d)(5)(A), which power has **not** been delegated to the Immigration Court.  The "conditional parole" of §1226(a)(2) is a form of release on recognizance, not the kind of "parole" which allows an alien to be physically present in the United States, without having been "admitted," or making an "entry."  Moreover, arriving aliens are simply "detained" under 8 U.S.C. §1225(b)(2)(A), not arrested on a "warrant issued by the Attorney General," a prerequisite to the exercise of the "conditional parole" power of §1226(a)(2)(B).

Since *Loa-Herrera* was remanded to the District Court, it is presumed that the clear error of law reached therein will be corrected on remand. Therefore, this Immigration Court declines to accept INS' theory, or to apply the holding of *Loa-Herrera*, by exercising jurisdiction under 8 U.S.C. §1226(a)(2).

## II.  LEGAL ANALYSIS

First, the authority to detain arriving aliens, including lawful permanent residents who are seeking admission as returning residents, is found at §235(b)(2) of the Act (8 U.S.C. §1225(b)(2)), which provides, in relevant part, as follows:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly

2

and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240 [8 U.S.C. §1229a].

In such cases, warrants of arrest, as authorized by 8 U.S.C. §1226(a), are neither required, nor utilized. The power to arrest aliens within the United States, and detain them pending removal hearings, is found at 8 U.S.C. §1226(a). It is only where, on a "warrant issued by the Attorney General," an alien has been "arrested and detained," that this Court may entertain applications for bond, or "conditional parole," under 8 U.S.C. §1226(a)(2).

Moreover, the term "conditional parole" as used in §1226(a)(2)(B) has an entirely different meaning than the term "parole," as used in 8 U.S.C. §1182(d)(5)(A). The "conditional parole" of §1226(a)(2)(B) is similar to what is called "release on recognizance" in criminal cases. It means that the person will be released from custody, without payment of a bond, but under certain conditions, typically, reporting requirements, and geographic limitations. By contrast, the term "parole" as used in §1182(d)(5)(A) is a legal fiction, under which an applicant for admission is allowed to physically pass into the United States, without being considered to have made an "entry," or having been "admitted" to the United States. See, e.g., 8 C.F.R. §1.1(q)

> (q) - The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains such even if paroled pursuant to section 212(d)(5) of the Act, except that an alien who was paroled before April 1, 1997, or an alien who was granted advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States, shall not be considered an arriving alien for purposes of section 235(b)(1)(A)(i) of the Act.

The authority to grant "parole" under 8 U.S.C. §1182(d)(5)(A) has not been delegated to the Immigration Court. See, e.g., Matter of United Airlines Flight UA802, Int. Dec. 3396 (BIA 1999):

> It is well established... that the district director has exclusive jurisdiction to parole an alien into the United States pursuant to 8 C.F.R. § 212.5(a) (1999). Matter of Matelot, 18 I. & N. Dec. 334 (BIA 1982). The Board does not have authority to review the manner in which the district director exercises that power.

3

And arriving aliens, even permanent residents, are not eligible for bond or "conditional parole" under §236(a)(2) of the Act. They have not been arrested on a "warrant issued by the Attorney General," which is a prerequisite for granting bond or "conditional parole" under that section.   Even if warrants were utilized, a bond or "conditional parole" would be conceptually impossible, unless the person were also granted "parole" under §1182(d)(5)(A), allowing him or her to be physically inside the United States.   Therefore, even if the person had been arrested on a warrant, this Court could not grant bond or "conditional parole" unless the District Director had first granted "parole" under §1182(d)(5)(A). Even then, whether this Court had the authority to do so would be highly problematic.

**WHEREFORE**, in accordance with settled principles of immigration law, the application of the Respondent herein for bond, or "conditional parole" under 8 U.S.C. §1226(a)(2) must be, and the same hereby is, **DENIED FOR LACK OF JURISDICTION.**

DONE this _29TH_ day of _NOVEMBER_, 2001.

_____
DAVID AYALA
U.S. IMMIGRATION JUDGE

4

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,          )
                                )
v.                              )        C.A. No.  B-94-215
                                )
TROMINSKI, et al.               )
_____ )

EXHIBIT "VV"
FILED IN SUPPORT OF

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AND FOR
AN EVIDENTIARY HEARING WITH RESPECT THERETO

Come Plaintiffs, and file herewith, in support of their Motion For
Rule 11 Sanctions, And For An Evidentiary Hearing With Respect
Thereto, Exhibit VV, consisting of Plaintiffs' letter, (with
attachment), faxed to Defendants' counsel on November 19, 2001,

Respectfully Submitted,


Lisa S. Brodyaga, Attorney              Thelma O. Garcia, Attorney
17891 Landrum Park Road                 301 E. Madison
San Benito, TX 78586                    Harlingen, TX 78550
(956) 421-3226                          (956) 425-3701
(956) 421-3423 (fax)                    (956) 428-3731
Fed. ID.  1178
Texas Bar 03052800


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were mailed, first-class postage prepaid, to Anthony
Payne, Attorney, OIL, P.O. Box 878, Ben Franklin Sta., Wash., D.C.
20044, on December 3, 2001.

# LAW OFFICES OF LISA S. BRODYAGA
## 17891 Landrum Park Rd.
## San Benito, Texas 78586
## (956) 421-3226
## FAX: 421-3423
November 19, 2001


Anthony Payne, Attorney
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Sta.
Washington, D.C. 20044
and by FAX to: (202) 616-4975

Re: Ascencio et al v. Trominski et al
    CA B-94-215

Dear Mr. Payne:

Attached is a pleading, and affidavit, which I am filing in
District Court. Please be advised that I consider unethical your
continued advocacy, even as "law of the case," of the false legal
claim that arriving aliens may be released on "conditional parole"
under 8 U.S.C. §1226(a)(2)(B). My next step will be to collect and
submit Orders from the local Immigration Judges, denying, for lack
of jurisdiction, *pro se* applications for bond or "conditional
parole" under 8 U.S.C. §1226(a)(2) from LPRs being detained as
arriving aliens. I have spoken to some of the Judges (in the
presence of INS counsel), advising them that they will begin to
receive such requests. (A draft of the *pro se* motion which will be
circulated to such persons is also attached, for your information).
The Judges readily acknowledge the legal principles involved, and
the fact that, while they could not give affidavits to that effect,
they are bound to make rulings on any such requests.

You should also be forewarned that, should you persist in your
advocacy of this clearly false legal position, I will shortly be
filing a motion for sanctions, under Rule 11(b) and (c), Federal
Rules of Civil Procedure.

Sincerely,

Lisa S. Brodyaga,
Attorney at Law

Encl: As stated.
cc: Lisa Putnam, SAUSA

**UNITED STATES DEPARTMENT OF JUSTICE**
**OFFICE OF IMMIGRATION REVIEW**
**BEFORE THE IMMIGRATION JUDGE**

In re:


MOTION FOR BOND OR CONDITIONAL PAROLE UNDER
SECTION 236(a)(2) OF THE ACT, 8 U.S.C. §1226(a)(2)

TO THE HONORABLE IMMIGRATION COURT:

Comes Respondent, *pro se*, and respectfully advises this Honorable
Immigration Court of the following:


I am a lawful permanent resident of the United States, and am
currently be detained for removal proceedings as an "arriving
alien," although I do not concede that I am in fact properly
considered to be such an "arriving alien." My green card, and
other lawfully issued documents, such as my drivers license, and
Social Security card, were taken from me by INS when I was detained
and placed in proceedings, and I am being held without bond.


I have been informed that, in the case of *Ascencio-Guzman, et al v.
Trominski, et al,* No. CA B-94-215, in a pleading filed January 25,
1999, Docket entry No. 111, (at page 39 of the record of
proceedings), the Office of Immigration Litigation, which
represents Respondents Ashcroft and Trominski herein, advised the
United States District Court as follows:

> ... [A]n alien, whether or not he is seeking admission,
> may be held by the INS pending a determination of whether
> that alien is to be removed from the United States. 8
> U.S.C. § 1226(a). The Attorney General may release such
> aliens on bond or conditional parole. 8 U.S.C. §§
> 1226(a)(2)(A) & (B). INA § 212(d)(5)(A) [8 U.S.C.
> §1182(d)(5)] provides for the circumstances under which
> such aliens may obtain release from custody ...

By this, it is clear that the attorneys for Respondents Ashcroft

and Trominski are taking the position that lawful permanent residents such as I, who are seeking admission to the U.S. as returning residents, may be granted bond or conditional parole, under 8 U.S.C. §1226(a)(2), subject to any "conditions" imposed by 8 U.S.C. §1182(d)(5). This is contrary to what I have been told by others, who have told me that I am eligible for parole only under 8 U.S.C. §1182(d)(5)(A), and that since I was not arrested "on a warrant issued by the Attorney General," I am ineligible for release either on bond, or conditional parole, under §1226(a)(2).

It is also my understanding that, although this discrepancy has been pointed out to them, the attorneys for Respondents Ashcroft and Trominski continue to urge before the District Court that the authority to grant bond or parole to people in my situation is found under 8 U.S.C. §1226(a)(2), and that therefore, because of 8 U.S.C. §1226(e), the United States District Court does not have jurisdiction to address constitutional concerns about the manner in which it is handled by the Immigration and Naturalization Service.

It is difficult for me to believe that attorneys who work for the United States Department of Justice would advocate a legal position before the United States District Court which is either incorrect as a matter of undisputed law, or based on a false factual premise. Therefore, in the event that the Department of Justice is correct in the position it is urging before the United States District Court, I hereby request that this Honorable Immigration Court grant me bond, or conditional parole, under 8 U.S.C. §1226(a)(2). *See also,* 8 C.F.R. §§3.10 (authorizing Immigration Judges to "exercise the powers and duties in this chapter regarding the conduct of exclusion, deportation [and] removal ... proceedings") and 236.1(d) ("After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order un 8 CFR part 240 becomes final, request amelioration of the conditions under which he or she may be

2

released.   Prior to such final order, and except as otherwise provided in this chapter, the immigration judge is authorized to exercise the authority in section 236 of the Act (or Section 242(a)(1) of the Act as designated prior to April 1, 1997").

In the event, however, that this Court concurs with the advice I have been given by others, and finds that I am ineligible for bond or conditional parole under 8 U.S.C. §1226(a)(2), because I am an arriving alien, and/or because I was not arrested on a "warrant issued by the Attorney General," I hereby request a written Order from this Court, setting forth its conclusions of law and/or findings of fact, so that I may present a copy of this request, and of that Order, to the United States District Court, and, hopefully, convince that Honorable Court that jurisdiction over constitutional aspects of the manner in which parole of arriving lawful permanent residents is administered is **not** barred by 8 U.S.C. §1226(e).

Respectfully Submitted,

_____

Respondent, *Pro Se*

### CERTIFICATE OF SERVICE

I, the undersigned Respondent, hereby certify that a copy of the foregoing was personally handed to the INS Attorney at the same time as it was delivered to this Court.

_____

Respondent, *Pro Se*

3

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,           )
                                 )
v.                               )        C.A. No.  B-94-215
                                 )
TROMINSKI, et al.                )
_____)

EXHIBIT "WW"
FILED IN SUPPORT OF

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AND FOR
AN EVIDENTIARY HEARING WITH RESPECT THERETO

Come Plaintiffs, and file herewith, in support of their Motion For
Rule 11 Sanctions, And For An Evidentiary Hearing With Respect
Thereto, Exhibit WW, consisting of Defendants' response, dated
November 20, 2001, to Plaintiffs' letter of November 19, 2001,


Respectfully Submitted,


Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731
Fed. ID.  1178
Texas Bar 03052800


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were mailed, first-class postage prepaid, to Anthony
Payne, Attorney, OIL, P.O. Box 878, Ben Franklin Sta., Wash., D.C.
20044, on December 3, 2001.



**U.S. Department of Justice**

Civil Division

DVB:ACP:cmm
39-74-1172

Telephone: (202) 616-3264

November 20, 2001

**MAILED VIA FEDERAL EXPRESS**

Elisabeth S. Brodyaga, Esq.
17891 Landrum Park Road
San Benito, Texas 78586

  Re: Ascencio-Guzman, et al. v. E.M. Trominski,
    District Director, et al.,
    <u>Civil Case No. B-94-215 (S.D. Tex.)</u>

Dear Ms. Brodyaga:

  Enclosed are copies of (1) Defendants' Reply to Plaintiffs'
Opposition to Defendants' Motion for Summary Judgment and Request
for Oral Argument or Further Status Conference and (2) Defendants'
Motion to Strike Plaintiffs' Enumeration of Incorrect and Misleading
Statements in Defendants' Motion for Summary Judgment.

  The Defendants' reply also addresses your November 19, 2001
letter threatening to file a motion for sanctions. Fed. R. Civ. P.
11(b), (c). In short, the defendants have not misled the Fifth
Circuit or District Court with respect to the applicability of 8
U.S.C. § 1226 to these proceedings. The section is relevant because
the District Court's January 13, 1999 final judgment, as proposed by
the plaintiffs, requires an immigration judge to consider an
arriving alien for parole under 8 U.S.C. § 1226, thereby rendering 8
U.S.C. § 1226(a)(2)(B) relevant. Considering the judgment's
requirement, the Fifth Circuit's decision is not in error and the
defendants' argument with respect to law of the case is not
unethical.

        Sincerely,

        ANTHONY C. PAYNE
        Office of Immigration litigation
        Civil Division
        P.O. Box 878, Ben Franklin Station
        Washington, D. C. 20044

# LAW OFFICES OF LISA S. BRODYAGA
**17891 Landrum Park Rd.**
**San Benito, Texas 78586**
**(956) 421-3226**
**FAX: 421-3423**
November 26, 2001

Anthony Payne, Attorney
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Sta.
Washington, D.C. 20044
and by FAX to:  (202) 616-4975

Re:  Ascencio et al v. Trominski et al
     CA B-94-215

Dear Mr. Payne:

Thank you for your response to my letter of November 19, 2001.
However, you gravely misinterpret the Court's Order of January 13,
1999, finalizing her Memorandum and Order of November 24, 1998.

First, said Memorandum and Order does not, as you state, "require[]
an immigration judge to consider an arriving alien for parole under
8 U.S.C. §1226."  Rather, it requires that the Judge:

> ... conduct a hearing ... in accordance with 8 CFR
> §236.1, to determine whether [an arriving LPR] should be
> paroled into the U.S. during the pendency of said
> proceedings, and if so, under what conditions.

In other words, the hearing is to be conducted in accordance with
8 C.F.R. §236.1, in order to determine whether the individual
merits parole, and if so, under what conditions.

More importantly, however, this is simply the **remedy** ordered by the
Court to correct a constitutional violation. This is very different
from a conclusion of law that the Immigration Judge has independent
jurisdiction under that section to grant parole to an arriving LPR.

Further, the pleadings which your office has filed to date, both to
the Fifth Circuit and the District Court, are not based on the
theory set forth in your recent letter. Rather, they were designed
to convince the Court (and did so convince the Fifth Circuit), that
the authority to parole an arriving LPR derives from 8 U.S.C.
§1226(a)(1)(B), and that therefore, the jurisdictional bar of
§1226(e) precludes the Court from exercising jurisdiction over a
complaint as to the manner in which that authority is exercised.

As stated in Defendants' motion to stay the Court's Judgment, filed
January 25, 1999, Docket entry No. 111, (Record, page 39):

> ... [A]n alien, whether or not he is seeking admission,
> may be held by the INS pending a determination of whether
> that alien is to be removed from the United States.  8

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,          )
                                )
v.                              )          C.A. No.  B-94-215
                                )
TROMINSKI, et al.               )
_____ )

EXHIBIT "XX"
FILED IN SUPPORT OF

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AND FOR
AN EVIDENTIARY HEARING WITH RESPECT THERETO

Come Plaintiffs, and file herewith, in support of their Motion For
Rule 11 Sanctions, And For An Evidentiary Hearing With Respect
Thereto, Exhibit XX, consisting of Plaintiffs' Reply, dated
November 26, 2001, to Defendants' response of November 20, 2001,


Respectfully Submitted,



Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731
Fed. ID.  1178
Texas Bar 03052800


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were mailed, first-class postage prepaid, to Anthony
Payne, Attorney, OIL, P.O. Box 878, Ben Franklin Sta., Wash., D.C.
20044, on December 3, 2001.

U.S.C. § 1226(a). The Attorney General may release such
aliens on bond or conditional parole. 8 U.S.C. §§
1226(a)(2)(A) & (B). INA § 212(d)(5)(A) [8 U.S.C.
§1182(d)(5)] provides for the circumstances under which
such aliens may obtain release from custody ...

As stated in Defendant's Brief to the Fifth Circuit, pages 47-48:

The district court's jurisdiction is precluded by INA
§236(e) for a second reason. The second sentence of INA
§236(e) expressly and unequivocally bars any court from
setting aside any action or decision by the Attorney
General under INA §236 regarding the detention of an
alien or the denial of bond or parole to an alien pending
a decision to remove the alien from the United States.
Not only is promulgation of the regulatory scheme
establishing procedures for parole and bond requests an
"action" by the Attorney General regarding the "detention
or release of [an] alien under INA §236, but the district
director's decisions to parole certain aliens but not
others also is a decision regarding the "detention or
release of [an] alien" under INA §236. ... Section 236(e)
clearly precludes all courts from setting aside detention
decisions and actions respecting arriving aliens made by
the attorney General or her designees. ...

Finally, your reasoning is circular. Even under your interpretation
of the District Court's order herein, §236(e) would only come into
play **after** an Immigration Judge had held a hearing under 8 C.F.R.
§236.1. The District Court's Order does not contest the **results** of
any such hearings, but only requires that they be conducted. Thus,
there is absolutely no manner in which you can ethically claim that
the Order of the District Court violates 8 U.S.C. §1226(e).

Indeed, I take your letter of November 20, 2001 as an admission
that you are aware that jurisdiction to parole an arriving LPR is
found **only** under 8 U.S.C. §1182(d)(5)(A), because such persons are
not arrested on a "warrant issued by the Attorney General," as
required by §1226(a), and will give you until Friday, November 30,
2001, to file a pleading with the District Court acknowledging this
fact, before filing a motion for Rule 11 sanctions.

Sincerely,

Lisa S. Brodyaga,
Attorney at Law

cc:  Lisa Putnam, SAUSA (by fax to 389-7057)
     Nancy Masso, AUSA (by fax to 548-2711)

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,           )
                                 )
v.                               )      C.A. No.  B-94-215
                                 )
TROMINSKI, et al.                )
_____)

EXHIBIT "YY"
FILED IN SUPPORT OF

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AND FOR
AN EVIDENTIARY HEARING WITH RESPECT THERETO

Come Plaintiffs, and file herewith, in support of their Motion For
Rule 11 Sanctions, And For An Evidentiary Hearing With Respect
Thereto, Exhibit YY, consisting of Defendants' further response,
dated November 27, 2001, to Plaintiffs' Reply of November 26, 2001,

Respectfully Submitted,



Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731
Fed. ID.  1178
Texas Bar 03052800

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were mailed, first-class postage prepaid, to Anthony
Payne, Attorney, OIL, P.O. Box 878, Ben Franklin Sta., Wash., D.C.
20044, on December 3, 2001.

_____



**U.S. Department of Justice**

Civil Division

DVB:ACP:acp
39-74-1172

Telephone: (202) 616-3264

November 27, 2001

**MAILED VIA FEDERAL EXPRESS**

Elisabeth S. Brodyaga, Esq.
17891 Landrum Park Road
San Benito, Texas 78586

     Re:  Ascencio-Guzman, et al. v. E.M. Trominski,
          District Director, et al.,
          <u>Civil Case No. B-94-215 (S.D. Tex.)</u>

Dear Ms. Brodyaga:

    I have received your November 26, 2001 letter in which you
again threaten to file a motion for sanctions under Federal Rule
of Civil Procedure 11 unless the defendants file a pleading in
District Court by November 30, 2001, agreeing with your posture
of the case with respect to the improperly pled parole claim and
the law of the case doctrine.  Notwithstanding that the Court has
granted a protective order on November 6, 2001, specifically
indicating that the defendants need not respond to your request
for admissions concerning parole until it has decided the issues
in the case, you persist with the charge that the defendants have
engaged in unethical conduct because of your disagreement with
defendants' contention that the Court should determine whether
the law of the case doctrine applies.  Simply put, the
defendants' arguments have been made in good faith and are
supported by the record.  Your disagreement with defendants'
arguments is now before the Court as plaintiffs argued the
position that the law of the case does not apply in their
opposition to summary judgment.  This is the proper context in
which the Court should address the question, and not through a
Rule 11 motion.

    You are maintaining that the defendants' counsel's conduct
is unethical despite our November 20, 2001 response to your
argument that the law of the case doctrine does not apply because
the parole of an arriving alien is found only under INA §
212(d)(5)(A).  First, you allege that the defendants' reading of
the Court's January 13, 1999 order is incorrect because
defendants, and, evidently, the Fifth Circuit, read it to require
an immigration judge to consider an arriving alien for parole

under INA § 236.  As noted in your letter, however, the order
specifically requires a hearing "in accordance with 8 C.F.R. §
236.1."  Under the regulation, "the immigration judge is
authorized to exercise the authority in section 236 of the Act."
Thus, in accord with the regulation, an immigration judge is
limited to action set forth in INA § 236, and it necessarily
follows that the judgment, which was drafted by the plaintiffs,
called for an immigration judge "to determine" an arriving
alien's eligibility for parole under that section.  Dkt. No. 104
at 5.  The defendants' reading of the Court's order as raising
the applicability of INA § 236 to these proceedings is clearly
reasonable.

    You characterize the defendants' understanding of the
Court's final order as "circular" (and, therefore, wrong) because
plaintiffs raised 8 C.F.R. § 236.1 only as a "remedy".  Your
distinction, however, wrongly assumes that 8 C.F.R. § 236.1
authorizes an immigration judge to determine eligibility and to
grant parole independent of INA § 236.  Because 8 C.F.R. § 236.1
only provides an immigration judge with the authority to consider
eligibility for remedies under INA § 236, both the defendants and
the Fifth Circuit logically concluded that the Court's final
order implicated parole under INA § 236, notwithstanding the
absence of a warrant.

    You also allege that INA § 236(e) only applies to the
results of a hearing conducted pursuant to 8 C.F.R. § 236.1, and
not to the order that such hearings be conducted.  As the Fifth
Circuit found, however, INA § 236(e) not only applies to results,
but also to the "*manner* in which that discretionary judgment is
exercised."  <u>Loa-Herrera v. E.M. Trominski</u>, 231 F.3d 984, 991
(5th Cir. 2000).  Thus, the section applies to the Court's order
that hearings be conducted in accordance with INA § 236.

    Next, you speculate that filings by prior defendants'
counsel were "designed to convince the Court (and did so convince
the Fifth Circuit), that the authority to parole an arriving LPR
derives from 8 U.S.C. § 1226(a)(1)(B)."  While the filings may
have been more specific, your conjecture ignores the fact that
each of the filings note that INA § 212(d)(5)(A) provides for the
circumstances under which such aliens may obtain release from
custody by filing applications for parole with the district
director.  Dkt. No. 111 at 15; Appellant's Brief at 49.  The
filings cite to INA § 236 in support of the argument that "it was
improper for the Court to order that the defendants provide
arriving lawful permanent resident aliens with a prompt hearing
before an immigration judge."  Appellant's Brief at 46-50; <u>see</u>
Dkt. No. 111 at 14.

The defendants' argument with respect to the law of the case doctrine has been made in good faith. As such, the defendants will not be submitting an additional filing with the Court indicating that the law of case doctrine does not apply because the parole of an arriving alien is found only under INA § 212(d)(5). The defendants have noted that INA § 212(d)(5) would apply to these proceedings but for plaintiffs' proposed order requiring a hearing in accordance with 8 C.F.R. § 236.1. Dkt. No. 151 at 13 n.7. However, because of the nature of the proposed order, the law of the case doctrine is applicable on remand. Furthermore, the Court has specifically limited the issues it is presently considering and defendants decline to file unnecessary pleadings.

Sincerely,

ANTHONY C. PAYNE
Office of Immigration litigation
Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D. C.  20044

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,      )
                            )
v.                          )        C.A. No.  B-94-215
                            )
TROMINSKI, et al.           )
_____)

EXHIBIT "ZZ"
FILED IN SUPPORT OF

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AND FOR
AN EVIDENTIARY HEARING WITH RESPECT THERETO

Come Plaintiffs, and file herewith, in support of their Motion For
Rule 11 Sanctions, And For An Evidentiary Hearing With Respect
Thereto, Exhibit ZZ, the final installment in the correspondence
between the parties, consisting of Plaintiffs' letter to
Defendants' counsel, faxed on November 29, 2001, with a copy of the
Order of Immigration Judge David Ayala, denying a *pro se* motion for
bond or "conditional parole" filed by a lawful permanent resident
being held as an "arriving alien," (Plaintiffs' Exhibit UU).

Respectfully Submitted,



Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731
Fed. ID.  1178
Texas Bar 03052800

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were mailed, first-class postage prepaid, to Anthony
Payne, Attorney, OIL, P.O. Box 878, Ben Franklin Sta., Wash., D.C.
20044, on December 3, 2001.

# LAW OFFICES OF LISA S. BRODYAGA
## 17891 Landrum Park Rd.
## San Benito, Texas 78586
## (956) 421-3226
## FAX: 421-3423
November 29, 2001

Anthony Payne, Attorney
By FAX to: (202) 616-4975

Re:  Ascencio et al v. Trominski et al
     CA B-94-215

Attached is the first of the Orders in response to the pro se
applications which I previously sent you requesting bond or
"conditional parole" under §236 of the Act.  I have scanned, but
have not yet had an opportunity to study in depth, your recent
letter, but assure you that it will not change my mind with respect
to the Rule 11 motion, which will be filed on Monday.

Sincerely,

Lisa S. Brodyaga
Ayyorney

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION REVIEW
PORT ISABEL SERVICE PROCESSING CENTER
LOS FRESNOS, TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF | ) | |
| | ) | |
| CALVILLO-LOPEZ, CARLOS | ) | In Bond Proceedings |
| | ) | |
| Respondent. | ) | A44 332 239 |
| _____ | ) | |

## DENIAL OF MOTION FOR BOND OR CONDITIONAL PAROLE UNDER SECTION 236(a)(2) OF THE ACT, 8 U.S.C. §1226(a)(2)

The Respondent herein, acting *pro se*, has requested that this Immigration Court grant bond, or "conditional parole," based on §236(a)(2) of the Immigration and Nationality Act, as amended. The request is denied for lack of jurisdiction.

### I.  BACKGROUND

Respondent is a lawful permanent resident of the United States, who is currently detained, without bond, for removal proceedings as an "arriving alien," although he does not concede that he is in fact properly considered to be such an "arriving alien."

The Respondent has informed the Court that, in *Ascencio-Guzman, et al v. Trominski, et al*, No. CA B-94-215, in a pleading filed January 25, 1999, Docket entry No. 111, (at page 39 of the record of proceedings), the Office of Immigration Litigation, ("INS"), which represents the Defendants therein, represented to the United States District Court as follows (emphasis added):

> ... [A]n alien, whether or not he is seeking admission, may be held by the INS pending a determination of whether that alien is to be removed from the United States. 8 U.S.C. § 1226(a).  **The Attorney General may release such aliens on bond or conditional parole.  8 U.S.C. §§ 1226(a)(2)(A) & (B).**  INA § 212(d)(5)(A)  [8 U.S.C. §1182(d)(5)] provides for the circumstances under which such aliens may obtain release from custody ...

Apparently, INS made similar representations to the Fifth Circuit in the initial appeal of that case, *Loa-Herrera v. Trominski*, 231 F.3d 984 (5th Cir. 2001), as seen from the Court's holding therein, *id.* at 991-92 (since the authority to parole an arriving alien is conferred by 8 U.S.C. §1226, the manner in which

that authority is exercised is immune from judicial review under §1226(e)).

As the Respondent herein correctly notes, the Attorney General has delegated to the Immigration Court the authority to grant bond, or "conditional parole," under 8 U.S.C. §1226(a)(2).  See 8 C.F.R. §3.10 (authorizing Immigration Judges to "exercise the powers and duties in this chapter regarding the conduct of exclusion, deportation [and] removal ... proceedings") and §236.1(d).

> After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 240 becomes final, request amelioration of the conditions under which he or she may be released.  Prior to such final order, and except as otherwise provided in this chapter, the immigration judge is authorized to exercise the authority in section 236 of the Act (or Section 242(a)(1) of the Act as designated prior to April 1, 1997").

The Respondent has requested that this Court either grant bond or "conditional parole" under §236(a)(2) of the Act, or issue a written decision, giving the Court's reasons for refusing to do so.

As a matter of undisputed immigration law, summarized below, this Court does not have jurisdiction to grant bond or "conditional parole" to arriving aliens under 8 U.S.C. §1226(a)(2). Such persons may be paroled only pursuant to 8 U.S.C. §1182(d)(5)(A), which power has **not** been delegated to the Immigration Court.  The "conditional parole" of §1226(a)(2) is a form of release on recognizance, not the kind of "parole" which allows an alien to be physically present in the United States, without having been "admitted," or making an "entry."  Moreover, arriving aliens are simply "detained" under 8 U.S.C. §1225(b)(2)(A), not arrested on a "warrant issued by the Attorney General," a prerequisite to the exercise of the "conditional parole" power of §1226(a)(2)(B).

Since *Loa-Herrera* was remanded to the District Court, it is presumed that the clear error of law reached therein will be corrected on remand. Therefore, this Immigration Court declines to accept INS' theory, or to apply the holding of *Loa-Herrera*, by exercising jurisdiction under 8 U.S.C. §1226(a)(2).

## II.  LEGAL ANALYSIS

First, the authority to detain arriving aliens, including lawful permanent residents who are seeking admission as returning residents, is found at §235(b)(2) of the Act (8 U.S.C. §1225(b)(2)), which provides, in relevant part, as follows:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly

2

and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240 [8 U.S.C. §1229a].

In such cases, warrants of arrest, as authorized by 8 U.S.C. §1226(a), are neither required, nor utilized. The power to arrest aliens within the United States, and detain them pending removal hearings, is found at 8 U.S.C. §1226(a). It is only where, on a "warrant issued by the Attorney General," an alien has been "arrested and detained," that this Court may entertain applications for bond, or "conditional parole," under 8 U.S.C. §1226(a)(2).

Moreover, the term "conditional parole" as used in §1226(a)(2)(B) has an entirely different meaning than the term "parole," as used in 8 U.S.C. §1182(d)(5)(A). The "conditional parole" of §1226(a)(2)(B) is similar to what is called "release on recognizance" in criminal cases. It means that the person will be released from custody, without payment of a bond, but under certain conditions, typically, reporting requirements, and geographic limitations. By contrast, the term "parole" as used in §1182(d)(5)(A) is a legal fiction, under which an applicant for admission is allowed to physically pass into the United States, without being considered to have made an "entry," or having been "admitted" to the United States. *See, e.g.,* 8 C.F.R. §1.1(q)

> (q) - The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains such even if paroled pursuant to section 212(d)(5) of the Act, except that an alien who was paroled before April 1, 1997, or an alien who was granted advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States, shall not be considered an arriving alien for purposes of section 235(b)(1)(A)(i) of the Act.

The authority to grant "parole" under 8 U.S.C. §1182(d)(5)(A) has not been delegated to the Immigration Court. *See, e.g., Matter of United Airlines Flight UA802,* Int. Dec. 3396 (BIA 1999):

> It is well established... that the district director has exclusive jurisdiction to parole an alien into the United States pursuant to 8 C.F.R. § 212.5(a) (1999). Matter of Matelot, 18 I. & N. Dec. 334 (BIA 1982). The Board does not have authority to review the manner in which the district director exercises that power.

3

And arriving aliens, even permanent residents, are not eligible for bond or "conditional parole" under §236(a)(2) of the Act. They have not been arrested on a "warrant issued by the Attorney General," which is a prerequisite for granting bond or "conditional parole" under that section.   Even if warrants were utilized, a bond or "conditional parole" would be conceptually impossible, unless the person were also granted "parole" under §1182(d)(5)(A), allowing him or her to be physically inside the United States.   Therefore, even if the person had been arrested on a warrant, this Court could not grant bond or "conditional parole" unless the District Director had first granted "parole" under §1182(d)(5)(A). Even then, whether this Court had the authority to do so would be highly problematic.

**WHEREFORE**, in accordance with settled principles of immigration law, the application of the Respondent herein for bond, or "conditional parole" under 8 U.S.C. §1226(a)(2) must be, and the same hereby is, **DENIED FOR LACK OF JURISDICTION.**

DONE this _29TH_ day of _NOVEMBER_ , 2001.

_____
DAVID AYALA
U.S. IMMIGRATION JUDGE

4

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,                )
                                      )
v.                                    )     C.A. No.  B-94-215
                                      )
TROMINSKI, et al.                     )
_____ )

EXHIBIT "AAA"
FILED IN SUPPORT OF

PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS AND FOR
AN EVIDENTIARY HEARING WITH RESPECT THERETO

Come Plaintiffs, and file herewith, in support of their Motion For
Rule 11 Sanctions, And For An Evidentiary Hearing With Respect
Thereto, Exhibit AAA, the "Enumeration of Incorrect and Misleading
Statements In Defendants' Motion For Summary Judgment," previously
filed as a "stand-alone" pleading, but which is the subject of a
pending Motion To Strike, filed by Defendants.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731
Fed. ID.  1178
Texas Bar 03052800

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were mailed, first-class postage prepaid, to Anthony
Payne, Attorney, OIL, P.O. Box 878, Ben Franklin Sta., Wash., D.C.
20044, on December 3, 2001.



CA DISTRICT COURT
SOUTHERN DISTRICT TEXAS
FILED *Rec'd*

MICHAEL N. MILBY, CLERK

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS** NOV -5 PM 2:22
**BROWNSVILLE DIVISION**

ASCENCIO-GUZMAN et al,                )
                                      )
v.                                    )        C.A. No.  B-94-215
                                      )
TROMINSKI, et al.                     )
_____)

**ENUMERATION OF INCORRECT AND MISLEADING STATEMENTS**
**IN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Since the instant pleading is organized as a page by page rebuttal
of INS' incorrect and misleading statements, there are no separate
headings which can be set forth in a Table of Contents.

And to the extent it is subject to the 20 page limit, Plaintiffs
request leave to exceed that limit, noting that INS' motion covered
46 pages, and Plaintiffs have not opposed their request to exceed,
by more than double, the 20 page limit preferred by this Court.

**TABLE OF AUTHORITIES**
**CASES**

*Brady v. Maryland,*
    373 U.S. 83 (1963) . . . . . . . . . . . . . . .  33

*Calcano-Martinez v. INS,*
    121 S.Ct. 2268 (2201)  . . . . . . . . . . . . .  39

*City of West Covina v. Perkins,*
    525 U.S. 234 (1999) . . . . . . . . . . . . . .  41

*Crowe v. Smith,*
    261 F.3d 558 (5th Cir. 2001) . . . . . . . . . .  36

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.,*
    137 F.3d 1475 (Fed.Cir. Tex. 1998) . . . . . . . .  35

*Hang On, Inc. v. City of Arlington,*
    65 F.3d 1248 (5th Cir. 1995)  . . . . . . . . . .  28, 29

*Industrial Dev. Bd. Town of Section, Alabama v. Fuqua Ind. Inc.,*
    523 F.2d 1226 (5th Cir.1975) . . . . . . . . . . . . . 20

*INS v. St. Cyr,*
    121 S.Ct. 2271 (2001) . . . . . . . . . . . . . 18, 37-39

*Koetting v. Thompson,*
    995 F.2d 37 (5th Cir.1993) . . . . . . . . . . . . . 39

*Laird v. Integrated Resources,*
    897 F.2d 826 (5th Cir.1990) . . . . . 4, 20, 21, 25, 28-30

*Landon v. Plasencia,*
    459 U.S. 21 (1982) . . . . . . . . . . . . . . . . 12, 39

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . 12

*Molina v. Sewell,*
    983 F.2d 676 (5th Cir. 1993) . . . . . . . . . . . . . 12

*U.S. v. Becerra,*
    155 F.3d 740 (5th Cir. 1998) . . . . . . . . . . . 36, 38

*U.S. v. Darensbourg,*
    524 F.2d 233 (5th Cir.1975) . . . . . . . . . . . . . 35

**STATUTES**

28 U. S. C. §2101(e) . . . . . . . . . . . . . . . . . 37

28 U.S.C. §2241 . . . . . . . . . . . . . . . . . 37-39

5 U.S.C. §552a(b) . . . . . . . . . . . . . . . . . 8, 9

8 U.S.C. §1182(d)(5)(A) . . . . . . . 17, 32, 34, 37, 42

8 U.S.C. §1225(b)(2)(C) . . . . . . . . 12, 31-33, 41

8 U.S.C. §1226 . . . . . . . . . . . . . 17, 32, 34

8 U.S.C. §1226(a) . . . . . . . . . . . . . 17, 31, 35

8 U.S.C. §1226(a)(2)(B) . . . . . . . . . . 17, 18, 32, 34, 37

-ii-

8 U.S.C. §1226(e) . . . . . . . . . .   18, 31, 32, 34, 35, 38, 39

8 U.S.C. §1304(b) . . . . . . . . . . . . . . . . . . . . . 8, 9


## REGULATIONS

8 C.F.R. §212.5 . . . . . . . . . . . . . . . . . . . . . .   42

8 C.F.R. §236.1(b) . . . . . . . . . . . . . . . . . . . . .   33

8 C.F.R. §264.5(g) . . . . . . . . . . . . . . 7, 18, 19, 39, 40

8 C.F.R. §287.5(e)(2) . . . . . . . . . . . . . . . . . . .   33

8 C.F.R. §287.5(e)(3) . . . . . . . . . . . . . . . . . . .   33


## OTHER AUTHORITIES

Federal Rules of Civil Procedure,
    23(c)(1) . . . . . . . . . . . . . . . . . . . . . . .   16

Federal Rules of Civil Procedure,
    Rule 7(b) . . . . . . . . . . . . . . . . . . . . . . 3, 16

Federal Rules of Civil Procedure,
    Rule 8(a) . . . . . . . . . . . . . . . . . . . . 4, 20, 21

Federal Rules of Civil Procedure,
    Rule 8(e)(1) . . . . . . . . . . . . . . . . . . . . 3, 16

Federal Rules of Civil Procedure,
    Rule 8(f) . . . . . . . . . . . . . . . . . . . . . . 3, 16

Federal Rules of Civil Procedure,
    Rule 56(e) . . . . . . . . . . . . . . . . . . . . . .   15

INS Operation Instruction 264.2 . . . . . . . . . . . . . .   41

Rules of the Supreme Court,
    Rule 11 . . . . . . . . . . . . . . . . . . . . . . . .   37

United States District Court, Southern District of Texas
    Local Rule 6(b) . . . . . . . . . . . . . . . . . . . 2, 16

Plaintiffs, through the undersigned, hereby attempt to separate the
actual issues in the instant case from the "red herrings." To that
end, they address the substantive issues raised by "Defendants'
Statement of Outstanding Issues In Response to Plaintiffs' Post-
Remand Statement of Outstanding Issues and Defendants' Motion for
Summary Judgement Pursuant to Federal Rule of Civil Procedure 56"
in their Opposition to said motion, filed simultaneously.

In the instant document, Plaintiffs enumerate and clarify the
incorrect and misleading statements found in INS' motion. It is
organized page by page, for easy reference, should the Court have
questions about any particular statement or claim made by INS.

**Page 2.** INS states that in its scheduling Order this Court
"ordered that the parties should file dispositive motions if deemed
appropriate." This is misleading. In fact, the Order set a firm
date only for filing INS' summary judgment motion, contemplating if
it were denied, discovery would be conducted before Plaintiffs
filed a similar motion. The Order specified as follows:

> **IT IS FURTHER ORDERED** that should the Court grant the
> Defendants' motion to dismiss and/or motion for summary
> judgment, this would obviate the need for further
> proceedings. Should the Court deny said motion, the
> Parties shall abide by whatever schedule for discovery as
> the Court may establish ... . In that context, following
> the completion of any discovery permitted by the Court,
> the Parties shall have 45 (forty-five) days to file
> motions for summary judgment ...

**Page 3.** INS states that "Defendants filed their response [to
Plaintiffs' motion for partial summary judgment' on August 28,
1995." This is also misleading. INS *submitted* its response and
counter-motion on that date, but the response and motion were never
properly filed. After having received one extension of time, until
July 26, 1995, (Docket entry No. 50), INS missed two other, self-
imposed deadlines, and finally presented the pleading with a motion

1

for leave to file instanter on August 28, 1995.  (Docket entry No. 53).  However, their motion for leave to file instanter was denied when Judge Vela transferred the case to this Honorable Court, (Docket No. 96), and was not among the motions INS re-urged on October 1, 1998 (Docket No. 98).  Therefore, Plaintiffs' summary judgment motion, which was re-urged by virtue of their submissions of September 11, 1998, (see, Supplemental Record 1), and October 19, 1998, (Docket No. 100), was, under Local Rule 6, unopposed.

**Pages 3-4.**  INS asserts as follows:

> On or about September 11, 1998, although they had not resubmitted their motion for summary judgment, plaintiffs submitted to this Court two documents, one entitled "Notice of Submission of Proposed Order", Exhibit 1 (Tab 1), and the other entitled "Memorandum and Order." Exhibit 2 (Tab 2).  These documents are not reflected in the Court's docket sheets as having been filed.

Again, this is misleading. It implies both that the documents may have been "submitted" without being properly filed, and that the exact date was unknown. During proceedings at the Fifth Circuit, it came to light that these documents had been inadvertently omitted from the record.  With the concurrence of INS, the record was therefore supplemented to include *file-stamped* copies thereof. (Supplemental Record 1)  As shown by the Fifth Circuit Docket:

> 2/28/00   Unopposed motion filed by Appellee Julio Loa-Herrera, Appellee Ramiro Cantu-Gracia, Appellee Juana Guzman-Ascencio, Appellee Efrain Merino, Appellee Arturo Lozano-Lopez, Appellee Alejandra Gutierrez, Appellee Juan Sanchez-Salinas, Appellee Adelita Cantu-Cabrera de to supplement the record on appeal with file stamped copies of the "Notice of Submission of Proposed Order," and the proposed Memorandum and Order, which were submitted to the Court on 9/11/98, [omitted] from the record herein. [1553976-1] Excess Pages? (Y/N) n [99-40122] (dms)
> 2/28/00   CLERK Order filed granting appellees' unopposed motion to supplement the record with file stamped copies of the "Notice of Submission of Proposed Order," and the proposed Memorandum and Order, which were submitted to

> the Court on 9/11/98, omitted from the record herein
> [1553976-1]. Copies to all counsel. [99-40122] (dms)
> 2/28/00 Supplemental record on appeal filed. Supplement
> #: 1 Vol(s) of Pleadings: 1 [99-40122] (hjg)

This claim is misleading in a third aspect as well. It fails to address the fact that, (as has been repeated pointed out to them, including in Plaintiffs' brief to the Fifth Circuit, at p.13,n.24), the "Notice of submission of Proposed Order" and proposed Order fulfilled the requirements of a motion, defined as an "application to the court for an order," under Rule 7(b) F.R.Civ.P.. Therefore, they constituted a request for the relief requested therein, i.e., for summary judgment on those claims. The Notice was in writing, signed, and, through the accompanying proposed order, stated exactly the relief sought. *See,* Rules 8(e)(1), F.R.Civ.P., "... No technical forms of pleading or motions are required," and 8(f), "All pleadings shall be so construed as to do substantial justice."

In their pleadings of October 19 and 21, 1998, (Docket Entries Nos. 100 and 102) (reproduced in Plaintiffs' Appendix, Tabs 3 and 4), Plaintiffs addressed INS' claim that, in its prematurely entered Order of September 30, 1998, the Court had adopted Plaintiffs' order, in essence granting summary judgment, even though Plaintiffs had allegedly never "re-urged" their motion. In these pleadings, Plaintiffs pointed out that by "requesting an order adjudicating its motion for summary judgment, Plaintiffs were re-urging that motion, within the meaning of the Court's order of May 21, 1998." (R:107). *See also*, (R:92) (Plaintiffs' Appendix, Tabs 3 and 4).

**Page 5**. INS asserts as follows:

> [At the July 23, 2001, status conference] Plaintiffs
> argued that most issues "are still alive" after the Fifth
> Circuit's decision; defendants argued that the Fifth
> Circuit's decision narrowed the issues for this Court's
> consideration. R. 130. On August 1, 2001, in an effort
> to determine "what issues remain before the Court in the
> case at bar", this Court established a schedule for

3

> determining the remaining issues and for filing of
> dispositive motions. R. 131.

This statement is also misleading for two reasons. It conveys the
impression that the quotation, ("what issues remain before the
Court in the case at bar"), was drawn from the Court's Order. That
phrase came not from the Court's Order, but from the accompanying
pleading filed by the Parties, and is, even there, taken out of
context. Further, as in INS' claim on page 2, discussed *supra*, the
scheduling Order did not "establish a schedule for determining the
remaining issues and for filing of dispositive motions." Rather,
it set a preliminary framework, including a timetable for INS'
initial motion to dismiss and/or for summary judgment. It also
contemplated that if said motion were denied, a discovery schedule
would be established, and only when discovery was completed, would
a schedule for "dispositive motions" by *both* parties be set.

**Pages 5-6.** In purporting to specify all the forms of relief
requested in Plaintiffs' Second Amended Complaint, INS omits
certain aspects of the relief granted by the Court, implying that
said relief was not requested. However, INS fails to mention that
the Complaint included the *operative facts* with respect to all the
issues on which this Court granted relief. *See, Laird v.
Integrated Resources*, 897 F.2d 826,841 (5th Cir.1990) (Rule 8(a)
F.R.Civ.P. permits this Court to grant "any relief that the pleaded
claim supports; requesting an improper remedy is not fatal."). INS
also fails to note Plaintiffs' request, (R:1305) (emphasis added):

> And finally, Plaintiffs seek costs, reasonable attorneys'
> fees, and **such other and further relief as this Court may
> deem appropriate and justified under all of the
> circumstances herein.**

**Page 7.** Under the heading of "Rulings Made By Judge Vela" at the

July, 1996 [1] hearing, INS first asserts that Judge Vela "requested that the parties brief only two issues." This is incorrect. The Court identified three issues for immediate briefing, (two for Plaintiffs, and one for INS), and left one for later determination, depending on the outcome of the issue which INS was to brief.

The Court requested briefs on the issues of: 1) extraneous notations on substitute documentation, (Transcript, Docket entry No. 118, at pp. 13,16-17); 2) INS' authority to return LPRs to Mexico to await their hearings (*id.* at 38-40); and 3) whether LPRs who have been paroled for hearings should have the same right as those under deportation proceedings to continue to come and go from the United States while proceedings are pending, *id.* at 42).

**Page 7**. INS also asserts that Judge Vela made certain oral rulings with respect to the confiscation of "green cards," and the form of any replacement documentation. While Plaintiffs disagree with some of the specifics of INS' assertions, the question of what Judge Vela did or did not hold was pre-empted by the Fifth Circuit's ruling (which neither party contests), that this aspect of the case must be reconsidered in light of 8 C.F.R. §264.5(g).

**Page 7**. INS then claims that Judge Vela stated that 'the only issue' before the court and the 'only thing that remains pending'" was whether the defendants violated the rights of an LPR by putting extraneous notations on the substitute documentation given when green cards were confiscated. This is patently untrue.

The transcript reveals that Judge Vela was concerned by the fact that INS treated similarly situated people differently, in terms of the notations placed on any substitute documentation. But before he reached the issue of whether that such disparate treatment was

---

[1]   The hearing was conducted July 31, 1996, not July 16, 1996.

improper, he wanted to ascertain whether these notations violated Plaintiffs' rights. The phrases "only issue" and "only thing that remains pending" were used in this context. *See,* Transcript of proceedings, (Docket No. 118), at pages 15-18 (emphasis added):

> THE COURT: Do all cards have the fact that that person is going to have a hearing for deportation, or not?
> INS: Not all of them do it. Not all of them have - -
> THE COURT: Why do some do and some not?
> INS: I believe that some of the officers who have issued replacement documentation have felt that it was warranted in the particular case so that [if] - - that alien was [re-apprehended], Your Honor, for another violation. The subsequent officer would know.
> THE COURT: If this is only going to be done in situations where a person is actually facing deportation, ... or hearing for deportation, not deportation itself, because that has to be adjudicated, and nobody else, why couldn't you generally do one thing or another, always do one thing or another?
>     And **before you do that, in other words, before you include that matter**, I would like for the petitioner to favor me with a brief from this standpoint, first. Number 1, does the right of the person who is legally here and has legal status here, who is facing an application to be deported, go beyond a substitute card, go beyond just having that substitute card to work and go to and from the country, as we have already described and generally been agreed to, to the extent that the Government cannot include therein a provision to the effect - - or notice to the effect that this person is subject to a hearing for deportation.
>     You [Plaintiffs] favor me with a brief to that effect. ... And then the Government will have three days to respond to that. ... Remember [speaking to the INS] this is step two. Step one has been agreed to, so there won't be any question about it. [2] ... I am going to give

_____

[2]  When attempting to draft an agreed Order, it was discovered that the Parties disagreed as to whether Judge Vela had only addressed certain aspects of the I-94's to be given when green cards *were* confiscated, or whether he had also ruled that INS could confiscate green cards "at will," and then discussed the form of the substitute documentation. However, this aspect of the case is

an order to that effect.  We won't adjudicate that
anymore.  That's water under the bridge.  It has been
agreed to.  This is as would regard phase two.  ... I
will give [Plaintiffs] 15 days and I will give the
Government five days to respond. ...

THE COURT [TO INS]:  **You understand the only issue** [to be
briefed by INS with respect to phase two]?

INS:  Yes, I do, Your Honor.

...

THE COURT:  Then after you [brief] it from the standpoint
of the petitioner as against the respondent, also, I want
both of you to address it from the standpoint of
employer. In other words, why shouldn't the employer know
that's a third party and that's a third party and there
may not be any legal effect upon that?  **I don't know**.

...

That's phase one. I mean that's concern Number 1, phase
one.

**Phase two is the only thing that remains pending**. Let's
go to concern - - problem Number 2.

[Plaintiffs]:  **There are three and four**.  We haven't
gotten to them yet but they are minor.

THE COURT:  Let's go to the other one.  I have a trial I
must start pretty soon here.

[Plaintiffs]  **Phase two, Your Honor, is the question of
the lawful permanent resident who has gone across to what
we call a Fleuti-type departure.**  May have left kids in
school and be back to the job in the afternoon, or
whatever.  Comes back to the border and is told that we
believe you are excludable.  At the time the person left
and the time the person presented him or herself for
return there was nothing pending.

THE COURT:  You understand that scenario?

[INS]:  Yes, Your Honor.

THE COURT:  My question to the Government, in that case
why shouldn't they be entitled to some type of due
process before they come and summarily are engaged in at
the bridge?  Because if what she is telling me is true,
then you are then and there in effect making a finding to
the effect that they are excludable.

When the hearing was continued that afternoon, issues "three and
four" were addressed. Transcript, at pp. 40-44.  And at the very

_____

pre-empted by the subsequent regulation, 8 C.F.R. §264.5(g).

7

end, the Judge asked whether there was "[a]nything else?" *Id.* at 45. Two issues were left for further development after the Judge had ruled on related questions. First, was the "other documents" problem, which he thought would by resolved by his anticipated ruling that INS had to parole LPRs into the country under all circumstances. Second, the Judge left open the question of whether it was proper for INS to put extraneous notations on the replacement documents of some Plaintiffs, but not others, until he had decided whether such notations were permissible at all.

The transcript taken as a whole reveals that the only matters that Judge Vela considered final were: 1) that he would require INS to put certain clarifications on the substitute documents issued when green cards *were* lifted, Transcript, at pp. 7-17, and 2) that he would not entertain Plaintiffs' complaint that LPRs whose deportation cases were on appeal should be permitted to make cross-border visits, *id.* at p. 44. Everything else was either to be briefed, or deferred until other matters were resolved.

**Page 7**. INS (correctly) notes that Judge Vela wondered aloud whether it would violate Plaintiffs' rights for INS to advise potential employers, by means of the extraneous notations on the substitute documents, of Plaintiffs' pending legal problems. Both Judge Vela, and the Fifth Circuit, left this open as a question of law. As stated by the Fifth Circuit, at page 6 (emphasis added):

> **Absent any legal authority to the contrary,** the district court may not interfere with the Attorney General's statutory discretion to balance an LPR's interest in possessing particular forms of documentation against an employer's interest in knowing a potential employee's present and future immigration status.

Plaintiffs contend that such "legal authority to the contrary" is found both in the Privacy Act, 5 U.S.C. §552a(b), and in 8 U.S.C. §1304(b). As discussed in Plaintiffs' Post-Remand Statement of

Outstanding Issues, Docket No. 128:

> It cannot be disputed that potential employers may be "interested" in knowing the present, and possible future, immigration status of an LPR. However, absent written permission from the affected LPR, INS is precluded by statute from providing such information (other than whether the LPR is authorized to be employed, and if so, the expiration of that authorization), to potential employers, or others not authorized to receive it under 8 U.S.C. §1304(b) and 5 U.S.C. §552a(b). There is nothing to prevent LPRs from giving such written consent to potential employers. But, under the law as it currently exists, the choice must be that of the affected LPR.

**Page 8.** One of INS' most indefensible and blatant distortions of the record is found at page 8 (emphasis added):

> In limiting the issues for consideration, Judge Vela denied plaintiffs' request to brief the issue of whether the defendants violate the rights of a lawful permanent resident alien when they confiscate the "drivers license, Social Security card and other documents that bear on their right to live and work in the United States." R. 118 at 44. *Judge Vela stated that the issue of whether defendants act in violation of the aliens' rights by confiscating documents other than the green card would not have to be reached, if the court determined that the defendants had not violated the aliens' right[s] by not paroling the alien into the United States.* Id. at 44-45.

First, it is true that, as discussed above, Judge Vela did limit the issues to be considered in two instances. However, where they occurred, these limitations were **explicit**. Judge Vela was clear that he did not wish to revisit the concessions he had extracted from INS about certain aspects of the substitute documents to be given, when actual green cards were confiscated, and that he would not entertain Plaintiffs' complaint that LPRs whose deportation cases were on appeal should be allowed to make cross border trips. **In no other instance did Judge Vela rule on any aspect of the case**. Indeed, apart from the question of the extraneous notations on the

9

I-94s, [3] there is no basis even to *infer* that Judge Vela was *inclined* to deny Plaintiffs' request for any other form of relief, and he clearly **was inclined** to grant relief on the issue of INS summarily returning LPRs to Mexico to await their hearings.

More importantly however, INS has turned upside-down Judge Vela's comments on the issue of INS confiscating drivers' licenses, etc., when LPRs were returned to Mexico to await their hearings.  Judge Vela did **not** say that this issue "would not have to be reached, if the court determined that the defendants had not violated the aliens' right[s] by not paroling the alien into the United States." He said exactly the opposite.  He also made it clear that this issue would remain open, even if he found against Plaintiffs on the parole question. *Id.* at p.45 (emphasis added):

> THE COURT:  If I make a decision to the effect that what they are doing is in nonconformance with their own regulation, that moots the question, doesn't it? ... In other words, if they have to parole them or specially parole them or whatever into the country, that is pretty much going to moot that question. ...  **I think one thing will take care of the other.**
>
> Anything else?
>
> Now, you owe me briefs within 15 days and counter-briefs within five days.  Until I decide the issue, don't ask me permission to submit briefs.  Just submit then, until I decide the issue, if you run across something else you want me to know. ...
> ...
> Let's do it that way.  **Then we will cross that bridge when we get to it.**

**Page 9**.  INS again asserts that Plaintiffs submitted the proposed

---

[3]  As discussed *supra* this issue must be revisited in light of 8 C.F.R. §264.5(g) and Plaintiffs' claim that their privacy rights confer the "legal authority to the contrary" with respect to which the Fifth Circuit left the matter open for Plaintiffs to show.

"Memorandum and Order" to the Court "on or about September 11, 1998," and that they did so "[w]ithout having re-urged their summary judgment motion." For the reasons discussed, *supra,* this is incorrect. First, it implies that the exact date was unknown, notwithstanding that INS agreed to supplement the record before the Fifth Circuit with a file-stamped copy thereof, showing that it was filed **on** September 11, 1998. And, as discussed *supra*, INS doggedly ignores the fact that, pursuant to Rules 7(b), 8(e)(1) and 8(f), F.R.Civ.Proc. the two documents together fulfilled the requirements of a motion seeking the relief set forth in the proposed Order.

**Page 9**. INS also asserts that the proposed Order submitted by Plaintiffs on September 11, 1998 "reflects the plaintiffs' statement of the issues of the case." This is true, with several important qualifications. First, the proposed order excluded that relief Plaintiffs had requested, but which Judge Vela had definitively rejected at the summary judgment hearing. [4] It also sidestepped the issue of whether INS had a "right" to inform potential employers (and others to whom they had to present proof of LPR status) of their legal problems by adopting INS' own remedy, to wit, by ordering INS to comply with the McNary Memorandum.

The proposed order also incorporated changes to the law which had transpired subsequent to the July 31, 1996 hearing. Specifically, IIRIRA, enacted September 30, 1996, provided statutory authority for INS' practice of returning to Mexico to await their hearings, those LPRs who were accused of minor infractions and who were therefore not paroled into the U.S. for prosecution. This rendered untenable Judge Vela's tentative suggestion that **all** LPRs whose admissibility was challenged be paroled into the U.S., (either for prosecution, and therefore detained, or for purposes of conducting

---

[4] To wit, whether LPRs whose deportation cases were on appeal could make cross-border visits. Transcript, at page 44.

a hearing, with or without a bond). [5] Since such an order would no longer be legally defensible, this also impacted his conclusion that such an order would also cure the problem of INS' confiscating documents such as drivers' licenses when such LPRs were returned to Mexico, regardless of whether they were needed as evidence. [6]

Therefore, Plaintiffs' proposed order differed in two other aspects from the tentative conclusions reached by Judge Vela.  First, it adopted a suggestion made by Judge Vela **before** he appeared to conclude that such LPRs should *always* be paroled. Transcript at 34:

> Why could not there be a system by which that person could be informed of parole pending [a hearing] and that the issue of parole be passed upon by some judicial officer? [7]

Second, this disposition of the parole issue would not always cure the problem of INS' confiscation of other documents, as Judge Vela had anticipated.  Therefore, Plaintiffs included a separate provision, forbidding INS from confiscating such documents unless they believed in good faith that they would be needed as evidence.

---

[5]  Judge Vela clearly expressed agreement with this aspect of Plaintiffs' case at the hearing, *see,* Transcript, at pp.27-40.

[6]  *See,* Transcript at pp. 44-45.

[7]  This solution is consistent both with Judge Vela's stated inclinations, and with INS' newly granted statutory discretion to return arriving aliens to Mexico to await a hearing, under 8 U.S.C. §1225(b)(2)(C).  It is limited to lawful permanent residents, who, under *Landon v. Plasencia*, 459 U.S. 21 (1982) and *Molina v. Sewell,* 983 F.2d 676 (5th Cir. 1993), are entitled to Due Process when requesting admission. It provides **notice** of the possibility of parole, which INS concededly does not give, (*Id.* at 33), and which is very difficult for LPRs stranded in Mexico to obtain, (*see* Plaintiffs' Exhibit "KK").  It also provides for a Due Process **hearing** as to whether parole should be granted, in accordance with *Mathews v. Eldridge,* 424 U.S. 319, 334 (1976).

**Page 10.**  INS' asserts that their appeal to the Fifth Circuit set forth "their position with respect to the issues of the case after Judge Vela's order." However, Judge Vela never issued any "order." The parties submitted competing proposed orders, and Judge Vela never signed either. Further, the transcript as a whole shows that this Court's Order was consistent with Judge Vela's rulings and inclinations at the hearing, and the minute entry from that hearing shows that the contested matters were taken under advisement.

**Page 11.**  INS asserts that this Court's Order of January 13, 1999 "addressed issues that were not ripe for adjudication as Judge Vela had previously limited the issues for consideration during the July 16, 1996 hearing." [8]  As seen above, and as this Court can confirm by reading the transcript of, and minute entry resulting from, that hearing, this Court's order contained nothing inconsistent with Judge Vela's rulings and positions as expressed at that hearing.

**Page 11**.  INS charges that this Court "erred by depriving them of notice that the facts would be reached and that the case would not be decided upon the law as was ruled by Judge Vela."

This is simply wrong, for two reasons.  First, as discussed above, none of the relief granted by this Court was inconsistent with what had transpired at that hearing. Moreover, Plaintiffs **properly filed and served** a notice and proposed order. [9]  Thus INS was on notice that Plaintiffs were requesting the relief set forth therein.  And although the Court erroneously signed the Order on the twentieth day, it was vacated, and INS was given every opportunity (of which they chose not to avail themselves), to respond on the merits.

---

[8]  Again, the hearing was July 31, 1996, not July 16, 1996.

[9]  INS timely received these documents, on September 15, 1998, as seen by the copies submitted in their Appendix, Tabs 1 and 2.

13

In a post-hearing pleading, (Docket No. 87, filed August 30, 1996), INS asserted that Judge Vela had decided certain issues, but acknowledged that they might be "mistaken as to the Court's holding." (R:296). Therefore, if they opted to "not respond to Plaintiffs' arguments" (R:295), on the grounds that Judge Vela had "already decided" the issues, *id.,* they did so at their own risk.

**Page 11.** INS again asserts that Judge Vela had "decided" that the case would turn only upon two legal questions, to wit:

> whether defendants violate LPRs' rights when noting on Form I-94 "in immigration proceedings" and whether such notations interfere with the alien's ability to obtain employment, R.118 at 17; whether defendants have authority to deny admission to an LPR, i.e., do defendants violate the LPR's rights by not granting parole, R.118 at 38-39, 42.

As seen above, one only need read the transcript, *as a whole*, and the minute entry which followed, to realize that this is a gross misrepresentation of what actually transpired at that hearing.

**Page 12.** INS repeats its assertion that "Judge Vela expressly stated that the issue of the 'other documents claim' would not be considered by the Court." This is simply false. As shown above, since INS only confiscated such documents from people who were denied admission at the border, Judge Vela expected that this problem would be resolved by his anticipated ruling that all such affected LPRs would have to be paroled into the United States. However, he also stated that, in the alternative, he would "cross that bridge when we get to it." Transcript at p. 45.

**Page 12.** INS complains that this Court "found that the defendants 'confiscated other lawfully issued documents which do not constitute bona fide evidence of unlawful conduct,'" and urges that this factual finding "was not supported by the evidence of record."

14

The record contains ample (uncontroverted) evidence to support this finding. Notably, at the July 31, 1996 hearing, INS did not deny that such documents are routinely confiscated when an LPR is returned to Mexico to await a hearing. Nor has INS ever presented any evidence to counter Plaintiffs' evidentiary showing on this issue. Such documents were not only confiscated from Plaintiffs Ascencio, Merino, and Lopez, but also from Ester Martinez. In none of their cases could it be reasonably inferred that these documents were needed as evidence. *See,* Plaintiffs' *Verified* Second Amended Complaint, and the evidentiary material submitted therewith. (R:1287-1325). *See also,* Plaintiffs' Exhibit "KK."

**Page 12.** INS then asserts as follows:

> In short, the Court's decision to go beyond Judge Vela's decision and accept the plaintiffs' averments of fact and to reject the defendants' averment resulted in substantial prejudice to the defendants. After narrowing the issues, Judge Vela had requested briefing on only two legal questions. [10]

First, it was not just "averments of fact" from Plaintiffs that this Court accepted, it was an uncontroverted evidentiary showing. It is hornbook law that in defending against summary judgment, one cannot rely on one's "averments," but must produce affidavits or other evidentiary material. Fed.R.Civ.P. 56(e) provides:

> .... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

---

[10] As discussed above, Judge Vela requested briefs on three issues, not two.

15

**Page 12.**  INS repeats its (incorrect) assertion that, "[a]fter narrowing the issues, Judge Vela had requested briefing on only two legal questions." *See,* discussion, *supra* at page 5.

**Page 12, n.6.**  INS also asserts that the modification to the definition of the class "was done without any notice to defendants and there was no motion before the Court asking for such relief."

This is simply false.  Plaintiffs' pleading of October 19, 1998, (Docket Entry No. 100), included a full page discussion of the fact that the change in the name of the proceedings, from deportation and exclusion to removal, did not affect the issues in the case, or the certification of the class.  (R"116-117).  Plaintiffs also observed that F.R.Civ.P. 23(c)(1) "expressly permits the Court to amend its class certification order at any time 'before the decision on the merits.'" (R:117).  They also observed that all of INS' objections to the Court's (premature) order were procedural. (R:117-118).  Plaintiffs then concluded as follows, (R:118):

> It is therefore urged that, in order to ensure that INS' procedural objections have been met, the Court (1) amend the Order granting class certification, and thereafter (2) vacate the Memorandum and Order of September 30, 1998, and enter a similar one, granting the same relief.

Together with this pleading, Plaintiffs attached, and served, two proposed orders:  one modifying the definition of the class, and the other, vacating the September 30, 1998 Order, and then granting essentially the same relief.  Under F.R.Civ.P. Rules 7(b), 8(e)(1) and 8(f), this was clearly a motion requesting that the Court amend the definition of the class, in accordance with the proposed order.

**INS NEVER RESPONDED TO THIS MOTION.**  Under Local Rule 6(b), it was therefore unopposed.  INS has no basis for complaining that it had no notice of the proposed modification, or that there was no motion pending before the Court requesting that the class be modified.

**Page 13**.   Without even mentioning the limitation of 8 U.S.C. §1226(a) to persons arrested on a "warrant issued by the Attorney General," INS reiterates its assertion that:

> ... plaintiffs "parole claim" was a challenge to the Attorney General's selected method for implementing parole, including under 8 U.S.C. § 1226, ... In essence, they argued that the Court lacked jurisdiction to enter or set aside the Attorney General's actions or decisions regarding parole of certain aliens.

While it is true that INS made this claim before the Fifth Circuit, after all the discussion on remand of the warrant requirement, and the fact that the authority to parole LPRs into the United States is found at 8 U.S.C. §1182(d)(5)(A), not §1226(a)(2)(B), [11] INS' continued avoidance of the issue is all but incomprehensible.

**Pages 14 through 18.**  Plaintiffs consider that this Court does not need the assistance of the Parties in reading and understanding the decision of the Fifth Circuit.

**Page 19**.   INS characterizes Plaintiffs' position on remand as one which, "[i]n essence, [argues] that the Fifth Circuit's decision has no bearing on the issues in the case."

This is incorrect.   Plaintiffs' position with respect to the various issues can be summarized as follows:

1.   Plaintiffs do not challenge the Fifth Circuit's ruling dissolving the injunction with respect to Mr. Garza-Pacheco. [12]

---

[11]   *See, e.g.,* the parole documents of Plaintiffs Sanchez and Cabrera, (Copies of which are found in INS' Appendix at pp. 72-73). Both bear a pre-printed stamp, "PAROLED PURSUANT TO SEC. 212(d)(5) OF THE I & N ACT," showing that this was the authority under which they were paroled into the U.S. during their exclusion proceedings.

[12]   The injunction is, in any event, moot, now that this Court has granted his petition for habeas corpus, (*Garza-Pacheco v.*

2. Nor do Plaintiffs challenge the Fifth Circuit's holding that 8 C.F.R. §264.5(g) essentially pre-empted the McNary Memorandum, or the remand for this Court to "determine whether an injunction is appropriate in light of § 264.5(g)."

3. With respect to the parole issues, Plaintiffs make two observations. First, as previously mentioned, the Fifth Circuit's jurisdictional holding under 8 U.S.C. §1226(e) is flawed, when viewed in light of the recent decision in INS v. St. Cyr, 121 S.Ct. 2271 (2001). And second, as has been discussed at length, it is based on the erroneous factual premise that LPRs denied admission and returned to Mexico to await their hearings are arrested on a "warrant issued by the Attorney General," a precondition to a grant of "conditional parole" under §1226(a)(2)(B).[13]

4. The Fifth Circuit did not address the merits of the "other documents" issue. Nor did it vacate this Court's Order modifying of

---

Trominski, No. C.A. B-97-145), and INS has withdrawn its appeal therefrom, (Fifth Circuit, No. 98-41334). His case has since been remanded to the Immigration Court, with the following instructions, (see, Plaintiffs' Exhibit "NN" herein incorporated by reference, found at Appendix, at Tab 12, page 2):

> [O]n remand the issue of the respondent's attempted collateral attack on his prior deportation should be considered. This issue should be considered in light of the apparently undisputed material facts set forth in the June 10, 1995, decision, of the United States District Court for the Southern District of Texas, in Ascencio v. Trominski, which is included in the Record of Proceedings.

[13] Even if this Court were to conclude that St. Cyr provided insufficient basis for this aspect of the injunction, there is no reason that the issue cannot be revisited, explicitly excluding any LPRs who are arrested on such warrants. This would not only be consistent with the Fifth Circuit's express holding, but also with its reminder to INS that it has an independent obligation to grant Plaintiffs Due Process. (Opinion, at page 8, n. 15).

18

the class.  It was INS' appeal, and INS did not brief the **merits** of these issues on appeal. They cannot now claim that they have been eliminated from the case.  To the contrary, the primary purpose of the remand was for this Court to reconsider its order, in light of the substantive rulings which the Court *did* make, and any "factual and legal contentions" that INS might wish to press on remand.

After setting forth the contents of this Court's order, the Fifth Circuit summarized its conclusions as follows, (Opinion at page 3):

> The government presents a series of procedural and substantive objections to the order.  With respect to the seizure of green cards and issuance of temporary documents, we conclude that the order was too sweeping in light of 8 C.F.R. § 264.5(g), which is cited by neither party nor the district court.  In addition, we conclude that federal courts have no jurisdiction to review parole decisions of the Attorney General.  Finally, we decide that remand is appropriate to ensure that the government has ample opportunity to press its factual and legal contentions before the district court.

A remand "to ensure that the government has ample opportunity to press its factual and legal contentions" would make no sense if this Court could not consider the issues to which those contentions related. Indeed, one could read the opinion as holding, in essence, that INS' purely *procedural* objections would, virtually by definition, be cured, if INS were given the opportunity to press its *substantive* (factual and legal) contentions before this Court!

**Page 20**.  INS' claim that the Fifth Circuit's "decision specifies the issues ripe for consideration on remand" is incorrect.  The opinion made rulings on some specific matters, as seen from the above summary.  But it nowhere stated, or even implied, what this Court should do with respect to the other issues on remand, (such as the "other document" claim, legal prohibitions on extraneous notations, etc), so long as INS received "ample opportunity to press its factual and legal contentions before the district court."

19

**Pages 21-22.** INS takes issue with Plaintiffs' characterization as "important victories," the fact that the Fifth Circuit did not, *sua sponte*, disapprove of this Court's orders modifying the class, and with respect to the "other documents" issue.

This Court's order, modifying the definition of the class, was not vacated by the Fifth Circuit. This is an "important victory." Similarly, while the *relief* granted by this Court on the "other documents" issue was part of the Memorandum Order which was vacated, the Fifth Circuit did not disapprove of its substance in any manner. This is also an "important victory." Finally, the fact that the Fifth Circuit found that Plaintiffs had adequately alleged injury with respect to *all forms of relief granted by this Court* [14] lays to rest INS' claim that these issues were not before the Court. [15]   This is also an "important victory,"

Indeed, INS all but concedes that these matters remain viable on

---

[14] After summarizing this Court's order, and its conclusions, the Fifth Circuit noted, (page 3,n.4) (emphasis added):

> Although it seeks reversal of the entirety of the district court's order on standing grounds, the INS presents argument only with respect to an LPR's right to hold a green card or other evidence of immigration status. **Because the plaintiffs adequately allege injury in the balance of their complaint, we limit our analysis accordingly.**

[15] Plaintiffs pled all the operative facts in their Second Amended Complaint, and sought a variety of specific forms of relief. They also made a general request, (R:1305), for "such other and further relief as this Court may deem appropriate and justified under all of the circumstances herein."

Rule 8(a) F.R.Civ.P. permits this Court to grant "any relief that the pleaded claim supports; requesting an improper remedy is not fatal." *Laird v. Integrated Resources, supra; See also, Industrial Dev. Bd. of the Town of Section, Alabama v. Fuqua Ind. Inc.*, 523 F.2d 1226,1235 (5th Cir.1975).

remand, so long as this Court hears out INS' "factual and legal contentions" with respect thereto.  Notably, INS has not yet made any such (meaningful) contentions, but is still trying to assert that these are not viable issues on (frivolous) procedural reasons. INS nowhere asserts that LPRs in deportation and exclusion proceedings cannot properly represent those in removal proceedings with respect to the issues involved herein.  Nor do they claim the right to confiscate "other documents," absent a good faith belief that they constitute *bona fide* evidence of unlawful conduct.

For this reason, Plaintiffs continue to consider these aspects of the case to be "important victories."  If INS had any (substantive) "factual [or] legal contentions" to raise with respect thereto before this Court, certainly they would have done so by now!

**Page 22**.  INS claims that the "record reflects that the 'other documents' claim was not an issue in the case when this Court issued its decision and, accordingly, is not an issue on remand."

As shown above, this is simply false.  All the operative facts were pled in the Second Amended Complaint, and various forms of relief were requested.  Plaintiffs also made a general request, (R:1305), for "such other and further relief as this Court may deem appropriate and justified under all of the circumstances herein."

Rule 8(a) F.R.Civ.P. permits this Court to grant "any relief that the pleaded claim supports," and, in finding that Plaintiffs had standing with respect to all the forms of relief granted.  By this, the Fifth Circuit held, in essence, that the "pleaded claims" supported all the forms of relief granted, and they are all properly before the Court. *Laird v. Integrated Resources, supra*.

**Page 23**.  In support of their assertion that the "other documents" claim was not properly before the Court, INS (correctly) notes

that, "[w]hile the Second Amended Complaint alleges that the INS
confiscates non-INS documents, it does not claim a cause of action
based on the alleged facts or request any explicit relief." INS
also (correctly) notes that, in their Answer to Plaintiffs' Second
Amended Complaint, they denied the allegation that they regularly
seized such documents, regardless of their evidentiary value.

Paragraph 29 of Plaintiffs' Second Amended Complaint asserted as
follows, (R:1295-96) (emphasis added):

> In the Harlingen, Texas, INS District, when Defendants
> place lawful permanent resident[s] under exclusion
> proceedings, it was, at the time of filing the instant
> action, Defendants' practice to confiscate their green
> cards, and other documents in their possession, such as
> their drivers' licenses or identification cards,
> **regardless of whether such documents had any evidentiary
> value** in either the criminal prosecution or exclusion
> proceedings, and to refuse to return said documents,
> regardless of whether the individual was returned to
> Mexico, or paroled into the United States, and
> subsequently released, with or without bond, unless and
> until all expulsion proceedings are terminated, in the
> alien's favor.

In addition to alleging that such documents had been confiscated
from Plaintiffs Ascencio, Merino and Lopez, Plaintiffs attached and
incorporated by reference Exhibit L, the pertinent correspondence
between the attorney for Ester Martinez, and the Assistant District
Director for Examinations of the INS Harlingen Office. [16]  In none

---

[16]  Ester Martinez is an LPR domiciled in Florida.  She was
detained in the Harlingen District in April, 1994, and placed under
exclusion proceedings because the vehicle in which she was riding
carried drugs.  She was paroled for prosecution, and her green
card, Mexican passport, driver's license and other documents were
confiscated. Criminal charges were dropped, and she was freed, but
no I-94 was provided, and her other documents were not returned.
Her Florida attorney requested their return. (R:1318-22).  On July
19, 1994, the Assistant District Director for Examinations denied
the request, pending "a hearing before an Immigration Judge

22

of these instances has INS claimed that there were any grounds for believing that the documents might have evidentiary value.

Therefore, even without a specific request for relief, the issue was properly before the Court. The "pleaded claim" supports the grant of such relief. *Laird v. Integrated Resources, supra.* It was briefed in Plaintiffs' summary judgment motion, (R:1099-1100). In its opposition, (assuming, *arguendo*, that said opposition was properly filed), INS asserted only the right to confiscate such documents for use as evidence. (R:789-791) [17] The problem was raised at the hearing on July 31, 1996. Transcript, at pp. 44-45. By virtue of the "Notice" and proposed order filed on September 11, 1996, (Supp. Rec. 1), and Plaintiffs' pleadings of October 19 and 21, 1996, (R:93,111-14,118), INS was informed of the relief sought on this point. And, as previously discussed, INS denied the practice in its Answer to the Second Amended Complaint, (R:1220), but tendered no evidence to counter Plaintiffs' *prima facie* showing. INS never challenged the documents submitted with respect to Ester Martinez. *See also,* Plaintiffs Exhibit "OO" (Appendix, Tab 13), showing that the same happened to class member Isidro Reyna. INS also admitted that such documents were confiscated from Plaintiffs Lopez, Ascencio and Merino, but characterized this as "immaterial facts not in dispute," (R:821). If anything, summary judgment for Plaintiffs on this issue would be appropriate!

---

concerning her admission to the United States *and return of her documents.*" (R:1319) (emphasis added). Plaintiffs' counsel intervened in October, 1994, and she received an I-94, (but not her other documents), just days before INS stipulated to her admission as a returning resident. (R:1321-22).

[17] INS also noted that Plaintiffs had not requested any specific relief on this point, (R:790), characterized the claim as one which encompassed the seizure of all such documents, regardless of their evidentiary value, *id.*, and asserted that Plaintiffs had no "property" interest in such documents, (R:791).

**Pages 23-24**.  INS quotes (part of) the discussion at the summary judgment hearing relating to the "other documents" issue, and characterizes Judge Vela's statement that he thought that his anticipated ruling that INS had to either admit or parole all LPRs seeking admission would "pretty much moot that question" as an "order den[ying] the plaintiffs' request to have the Court consider the issue."  (INS:23).  INS also characterizes Plaintiffs' statement that Judge Vela "had declined to hear argument *at that time*" on this issue as an admission "that it was their understanding that the issue was not before the Court." *Id*.

Both claims are patently false.  INS omits from its quotation Judge Vela's statements, following his musing that the problem would probably be cured by his contemplated ruling on the parole issue, that: "I think one thing will take care of the other," and "Let's do it that way.  **Then we will cross that bridge when we get to it**."  Transcript at p. 45.  By this, he clearly left the door open for further consideration, should the "one thing [not] take care of the other." *Id*.  That Plaintiffs understood his comments in this manner is seen by their statement, quoted at (INS:23), that Judge Vela "had declined to hear argument *at that time*."

**Page 24**. INS asserts that "[t]his Court was bound by Judge Vela's decision and was required to follow the ruling ..."

To the extent this is true, it would backfire against INS.  The transcript as a whole demonstrates that Judge Vela initially considered issuing an order requiring that LPRs denied admission "be informed of parole pending [their hearings] and that the issue of parole be passed upon by some judicial officer," *id.* at p. 34.  Later, he indicated that he would order INS to admit or parole all LPRs seeking admission, and that he believed this would also cure

24

the "other documents" problem, *id.* at 44-45.  Further, Judge Vela instructed the parties that they should continue favoring the Court with briefs, as new matters came to their attention, *id.* at 45. Certainly, the leanings he expressed on these matters were as strong as, if not stronger than, his inclination to allow INS to continue placing extraneous notations on substitute documents, even though he intended to return to the question of whether it was proper to do so on substitute documents of some, but not all, LPRs.

**Page 25.**  INS again asserts that the "other documents" issue was "incorrectly included" in the "proposed orders and memorandums" submitted by Plaintiffs, and that the "issue was not before the Fifth Circuit and is not before this Court on remand."

It is true that this issue was not before the Fifth Circuit. INS did not raise it in their appeal, as they should have done, if they considered that it had been "incorrectly included" in the proposed orders. In addition to the reasons discussed above, the admission that INS failed to raise the issue at the Fifth Circuit reinforces the conclusion that it is very much alive before this Court.

**Page 25.**  INS asserts that, in adjudicating Plaintiffs' pending motion to remand, this Court should "consider defendants' assertion that the 'other documents claim' is not at issue in the case as it has not been properly raised."

Yes, this Court should "consider" this assertion, and reject it. As shown above, the fact that Plaintiffs did not request specific relief with respect to this issue does not mean that the issue was not properly before the Court.  The "pleaded claim" supported the grant of such relief. Therefore, "requesting an improper remedy is not fatal." *Laird v. Integrated Resources, supra.*

25

**Pages 25-26.**   INS asserts as follows:

> Plaintiffs' motion seeking leave to amend their complaint
> for a third time to "clarify" the issue is, in effect,
> and admission that the issue was not properly raised
> prior to the Fifth Circuit's decision.

For the reasons explained above, this is not true.  Plaintiffs are
simply  hoping  to  cut  through  all  the  frivolous  procedural
objections, and force INS to join the issue on its merits.

**Page 26.**   INS claims that allowing such an amendment "creates delay
that would prejudice the defendants."

To the contrary, seven years later, INS has never joined the issue
on the merits. They have never even claimed the *right* to confiscate
such "other documents," absent a good faith belief that they would
be used as evidence.  And the only "prejudice" to INS would be to
deprive them of any basis for continuing to urge their frivolous
procedural objections to adjudicating the issue.

**Page 26.**   INS reiterates its claim that "the Fifth Circuit did not
remand the case 'for a reconsideration of the whole controversy.'"

True.  The Fifth Circuit remanded for this Court to consider any
*substantive* "factual and legal contentions" as INS chooses to urge.
It did not remand for the purpose of allowing INS to endlessly
delay final resolution with frivolous procedural objections.

**Page 27.**   In addition to claiming that the "other documents" claim
is not before the Court because relief was not specifically
requested in the Second Amended Complaint, INS makes the same
argument with respect to the parole issues.

For the same reasons, this argument fails here as well.  The Second

26

Amended Complaint alleges the necessary factual basis, including
the manner in which INS denied admission as returning residents to
Plaintiffs Ascencio, and Merino, and "forced them to return to
Mexico, where they were required to remain, causing great personal
hardship to themselves and their United States citizen children."
(R:1293). A similar allegation was made with respect to Plaintiff
Gutierrez. *Id.* Plaintiffs further alleged as follows, (R:1295):

> When a lawful permanent resident applies for admission as
> a returning resident at a port of entry under the
> jurisdiction of the Harlingen, Texas, INS Office, and
> Defendants have reason to believe that said person has
> committed an act which would subject him or her to
> exclusion proceedings, if criminal prosecution is <u>not</u>
> contemplated, it is the practice of Defendants to
> initiate exclusion proceedings, and force said person to
> return to Mexico, without advising him or her of the
> possibility of being paroled into the United States. In
> such cases, unless the individual obtains counsel, it is
> very difficult to ascertain, and follow, the procedures
> necessary to request parole into the United States.

In their Statement of Material Facts as to Which There Exists No
Substantial Controversy, (Docket Entry No. 54) [18] INS made the
following admission, among the matters which they characterized as
"material facts," (R:810-11) (footnotes omitted):

> When a lawful permanent resident applies for admission as
> a returning resident at a port of entry under the
> jurisdiction of the Harlingen, Texas, INS Office, and
> Respondents have reason to believe that said person has
> committed an act which would subject him or her to
> exclusion proceedings, if criminal prosecution is also
> contemplated, it is the practice of Respondents to parole
> the individual into the United States for prosecution,
> and place him or her under exclusion proceedings. If the

---

[18]   Notably, this is **not** one of the documents which INS
purported to "amend," on the basis of the ambiguous wording of
Magistrate Garza's order permitting them to respond to Plaintiffs'
First and Second Sets of Requests for Admission, (Docket Entry 77).

prosecution results in a conviction, it is the practice of Defendants to detain said individual at the Service Processing Center at Los Fresnos, Texas, pending exclusion proceedings. Upon request of counsel, and in some cases upon payment of a bond, such persons are frequently paroled into the United States. If criminal prosecution is not contemplated, it is the practice of Defendants to initiate exclusion proceedings, and, in most instances, return said person to Mexico, without advising him or her of the possibility of being paroled into the United States.

Here, Plaintiffs not only pled the operative facts, but INS admitted them, and acknowledged that they were "material" to the issues raised herein. Thus, the fact that Plaintiffs did not request specific relief with respect to this issue does not mean that it was not properly before the Court. The "pleaded claim" supported the grant of such relief, and "requesting an improper remedy is not fatal." *Laird v. Integrated Resources, supra*.

That *both* the "other documents" and "parole" issues were properly before the Court can also be seen from the Fifth Circuit's opinion, which noted, (at page 3, n.4), that "the plaintiffs adequately allege injury in the balance of their complaint."

**Page 27.** Nor does the citation to *Hang On, Inc. v. City of Arlington,* 65 F.3d 1248,1255 (5th Cir. 1995) advance INS' argument. As the Court noted therein, *id.* at 1255-56:

> The district court did not address the merits of this argument because Hang On failed to include it in its complaint and raised this claim for the first time in its response to Arlington's motion for summary judgment. Although Hang On renews this allegation on appeal, we agree with the district court that, because Hang On did not raise the state constitutional claim in its complaint nor provide any authority for its allegation, we should not address its merits.

28

In the case at bar, the Fifth Circuit has already *held* that Plaintiffs "adequately allege[d] injury in ... their complaint" with respect to **all** of the forms of relief granted by this Court.

**Pages 27-28.** INS asserts that it is therefore not "necessary" for this Court to address the issue on remand, and repeats its claim that this "is highlighted" by Plaintiffs' motion to amend, because it is allegedly "not properly before the Court on remand."

Again, this is simply false. In contrast to *Hang On, supra,* the Fifth Circuit has already held that, with respect to all issues, prejudice was adequately alleged. Even if Plaintiffs requested the "wrong" form of relief, the "pleaded claim" supported the grant of such relief. Therefore, "requesting an improper remedy is not fatal." *Laird v. Integrated Resources, supra*.

**Page 28.** INS asserts that, after having inquired of INS whether people were informed that they can ask for parole, the Court "did not pursue the issue .. and instead stated that it wished briefing" on a broader issue, to wit, INS' right to right to refuse to admit them altogether. From this, INS concludes that Judge Vela:

> ...made no indication that he wanted to consider the issue, nor did plaintiffs request leave to again amend their complaint for consideration of the issue.

This misrepresents both Judge Vela's comments and the state of the law. The *issue* was before the Court. It was pled, and joined in the motions for summary judgment. It was raised at the summary judgment hearing, where Judge Vela asked, Transcript at 34:

> Why could not there be a system by which that person could be informed of parole pending [a hearing] and that the issue of parole be passed upon by some judicial officer?

29

It was the question of the appropriate *remedy* that remained open. Judge Vela contemplated granting a broader remedy than he had suggested at page 34, to wit, that of requiring INS to either admit or parole all LPRs seeking admission. Plaintiffs are not required to amend their Complaint each time a new *remedy* is considered. *Laird v. Integrated Resources, supra*, although they sincerely wish the Court would do so in the instant case, simply to cut through the chaff and get to the heart of the matter without further delay through endless, frivolous, procedural objections by INS.

**Page 28.** INS continues to assert that:

> Plaintiffs' parole claim is not an issue that has been properly raised to this Court and, therefore, it is not <u>necessary</u> for the Court to consider the issue on remand.

Again, this is based on the fact that Plaintiffs' Second Amended Complain did not request the specific remedy ultimately granted. The underlying cause of action was, however, well pled, and well joined in the summary judgment proceedings.

**Page 29, n.14.** INS acknowledges that they did not raise the "propriety" of Plaintiffs having included the issue in the proposed orders submitted to the Court, and assert that:

> As the record indicates that the issue was not properly pleaded to or considered by this Court, it is clear that the Court need not consider it on remand.

INS continues to confuse the question of whether the issue was properly pled, (which it was), with that of whether the relief eventually granted was specifically requested in the complaint, (which it was not). But INS' distortion of Judge Vela's comments, in an attempt to show that the issue was not (properly) "considered by this Court" is less easily explained away.

30

**Page 29.**  INS finally gets to the heart of the parole issue, but in a manner which borders on the unethical.  They note the conclusion of the Fifth Circuit that 8 U.S.C. §1226(e) "bars this Court's jurisdiction over the Attorney General's discretionary decision regarding parole."  Then, in footnote 15, they continue as follows:

> Plaintiffs charge that the Fifth Circuit was mislead
> [sic] by the defendants about the factual and legal basis
> of the claim.  See R. 143 6-7.  The record reflects that
> there has been no factual discovery with respect to the
> claim and plaintiffs' Second Amended Complaint did not
> raise the claim as an issue.  It is therefore meritless
> for the plaintiffs to assert that the defendants somehow
> misled the Fifth Circuit about an issue that was not even
> raised in their complaint.

As has been discussed at great length, *supra,* Plaintiffs did properly plead the issue in their Complaint, and, as the Fifth Circuit held, adequately alleged injury with respect thereto.  It was the specific *remedy* which was not requested in the Complaint, but since Plaintiffs did request *some* remedy, this was not "fatal."

INS ducks the question of whether LPRs denied admission and sent back to Mexico to await their hearings are arrested on a "warrant issued by the Attorney General" by changing the subject to whether discovery was ever conducted.  INS knows full well that warrants are not utilized under such circumstances, and that their legal argument was based on a false factual premise.  After this fact has been brought to their attention, their continued pursuit of this theory borders on an attempt to perpetuate a fraud upon the Court.

**Page 29.**  INS notes that the Fifth Circuit had "considered plaintiffs' argument that the 'parole claim' is not governed by 8 U.S.C. § 1226(a), but by 8 U.S.C. § 1225(b)(2)(C)."

It is true that the Fifth Circuit made this comment.  However, in

so doing, it misconstrued Plaintiffs' claim.  Plaintiffs did not and do not urge that the "parole claim" is governed by 8 U.S.C. §1225(b)(2)(C).  Rather, that is the provision which gives INS the authority to return LPRs to Mexico to await their hearings, *without* arresting them on a "warrant issued by the Attorney General."  INS' authority to parole LPRs into the United States, after it invokes its power under §1225(b)(2)(C) to return them to Mexico to await their hearings, **in lieu of arresting them on a warrant,** is found exclusively at 8 U.S.C. §1182(d)(5)(A); not in §1225(b)(2)(C), or the power to grant "conditional parole" found at §1226(a)(2)(B).

**Pages 29-30.**  INS claims that:

> Plaintiffs also raised the same argument in their petitions for panel and en banc rehearing.  The Fifth Circuit rejected plaintiffs' argument and concluded that 8 U.S.C. 1226 controlled the case as this Court's injunctive order required the defendants to conduct a parole hearing.  Id.  It determined that in light of its finding, this Court lacks jurisdiction to review plaintiffs' "parole claim."

This is very misleading.  If INS is referring to the Fifth Circuit's misapprehension of Plaintiffs' position, i.e., that the parole issue was governed by 8 U.S.C. §1225(b)(2)(C), Plaintiffs did not raise "the same argument" in their petitions for panel and en banc rehearing.  Rather, they urged that the jurisdictional bar of §1226(e) applied only to aliens arrested on a "warrant issued by the Attorney General," a prerequisite to granting "conditional parole" under §1226(a)(2)(B), and that since this did not include LPRs who were returned to Mexico under §1225(b)(2)(C), such persons could only be paroled under 8 U.S.C. §1182(d)(5)(A).

Unfortunately, since INS first raised the question of the alleged jurisdictional bar of §1226(e) in its motion for a stay of this Court's judgment pending appeal, the requisite factual basis to demonstrate that INS' argument rested on a false factual premise

32

was not in the record.  Plaintiffs are willing to give INS' counsel the benefit of the doubt, to the extent that, because they are based in Washington, D.C., they may be unfamiliar with the day-to-day practices on the border, and may initially have made this (implicit) misrepresentation in good faith.

The error has now been brought to their attention, and they have had ample time to verify it.  By now, they must be aware that the factual premise was false.  To continue urging a legal position before this Court, **knowing that it is based on a false factual premise**, comes very close to, if it does not actually cross, the ethical boundary of the disciplinary rules mandating "candor toward the tribunal." [19]  Further, Department of Justice Attorneys have an obligation above and beyond that of ordinary litigants. *See, Brady v. Maryland,* 373 U.S. 83,88 (1963) (footnote omitted):

> An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: "The United States wins its point whenever justice is done its citizens in the courts."

INS must be made to answer two basic questions.  1) Are warrants issued and served when LPRs seeking admission are placed in proceedings and returned to Mexico, pursuant to the authority of §1225(b)(2)(C)? [20]  and 2) Are arriving LPRs to whom admission is initially denied, and who are placed in proceedings, paroled under

---

[19]  *See, e.g.,* Rule 3.03(a)(1), Texas Disciplinary Rules of Professional Conduct, which provides that:

(a)   A lawyer shall not knowingly:
    (1) make a false statement of material fact or law to a tribunal ...

[20]  The issuance and service of warrants, (Form I-200), is governed by 8 C.F.R. §236.1(b).  They may be issued only by a very small group of officials, as designated by 8 C.F.R. §287.5(e)(2), and served only by officers listed in §287.5(e)(3).  If they were utilized, counsel would have found copies in Plaintiffs' INS files.

the authority of §1182(d)(5)(A),[21] or §1226(a)(2)(B)?  With truthful answers to these two questions, INS' argument under §1226(e) will crumble like the house of cards it is.

**Page 30.**  INS asserts that:

> Although plaintiffs raised their argument concerning 8 U.S.C. § 1226 at least three times to the court of appeals, they allege that the Fifth Circuit did not exercise independent judgment and, as a result, erred in its decision.  R.133 at 5.

Plaintiffs did not characterize the Fifth Circuit as failing to "exercise independent judgment." There is a world of difference between asserting that the Court was misled as to a factual matter not in the record, and an allegation that it did not "exercise independent judgment."  Nor was the *same* argument raised three times before the Court of Appeals.

Unfortunately, because INS' brief to the Fifth Circuit was replete with the same misrepresentations that fill their current motion, Plaintiffs allowed themselves to be drawn into an attempt to fully debunk all their incorrect and misleading statements, and some of the substantive issues received short shrift.  In particular, Plaintiffs attempted to dispose of INS' argument under 8 U.S.C. §1226(e) in one paragraph.  Lacking the necessary factual record, Plaintiffs did not adequately address the issue in their initial brief to the Fifth Circuit.[22]  As a result, the Court misunderstood

---

[21]  Actually, this question is answered by the parole documents of Plaintiffs Sanchez and Cabrera, (Copies of which are found in INS' Appendix at pp. 72-73).  Both I-94s bear a pre-printed stamp, "PAROLED PURSUANT TO SEC. 212(d)(5) OF THE I & N ACT."

[22]  It is precisely in order to avoid falling into the same trap that Plaintiffs decided to separate the *actual issues in the case,* which are addressed in their opposition to INS' motion for summary judgment, from their attempt to shine some light on the

the nature of Plaintiffs' argument, and did not realize that INS' position was based on a false factual premise.

In their petitions for rehearing, (but without the requisite factual basis), Plaintiffs *did* argue that the jurisdictional bar of §1226(e) applied only to "conditional parole" granted to aliens who had been arrested on a "warrant issued by the Attorney General," as required by §1226(a)  Said petitions were denied, without opinion. It is precisely because of the lack of any opinion denying these petitions that there is no merit to INS' claim that the denial necessarily rejected this particular claim.  To the contrary, it could just as well be read to mean that the Court considered that, since it involved a factual foundation not currently in the record, it could best be sorted out on remand. *See generally, Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475,1481-82 (Fed.Cir. Tex. 1998).   This inference is doubly appropriate herein because Judge Dennis, who dissented from this aspect of the panel decision, did not dissent from the denial of rehearing, as commonly occurs where such a denial finally disposes of a case. *See, e.g., U.S. v. Darensbourg*, 524 F.2d 233 (5th Cir.1975) ("GODBOLD, Circuit Judge (dissenting): For the reasons set out in my dissenting opinion, I dissent from the denial of petition for rehearing.").

**Page 30.**  INS continues as follows:

> Without addressing whether the Fifth Circuit is able to exercise its own judgment, [23] this Court is bound by the Fifth Circuit's decision as it represents the law of the case. ... The "law of the case" rule is based on the salutary and sound public policy that litigation should

---

false and misleading statements INS makes therein, which is the purpose of the instant document.

[23]   Plaintiffs have already addressed this particular "red herring," and will not dignify it with further commentary.

come to an end.  It is predicated on the premise that there would be no end to a suit if every obstinate litigant [24] could, by repeated appeals, compel a court to listen to criticisms on higher court opinions or speculate of chances from changes in its membership. [25]

In support of this assertion, INS cites *Crowe v. Smith*, 261 F.3d 558 (5th Cir. 2001).  Said case, in turn, relies, *id.* at 562, on *U.S. v. Becerra,* 155 F.3d 740 (5th Cir. 1998), wherein the Court explained, at pp. 752-53 (internal citations omitted), that:

> The law of the case doctrine, however, is not inviolate. We have explained that "a prior decision of this court will be followed without re-examination ... unless (i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice." ...
>
> A corollary of the law of case doctrine, known as the mandate rule, provides that a lower court on remand must "implement both the letter and the spirit of the [appellate court's] mandate," and may not disregard the "explicit directives" of that court. ...
>
> Consequently, unless one of the exceptions to the law of the case doctrine applies, the district court was bound to follow our mandate and to resentence the defendants based on the testimony at trial.

As with virtually every other point that Plaintiffs have made, INS chose to ignore, rather than address, the two factors which make "law of the case" inapplicable to the Fifth Circuit's holding that 8 U.S.C. §1226(e) bars this Court's jurisdiction over Plaintiffs'

---

[24] Insofar as their "obstinacy" derives from an unwillingness to allow INS to "pull the wool" over this Court's eyes, Plaintiffs are pleased to be characterized as "obstinate" litigants.

[25] Plaintiffs have no idea to what INS is referring with this comment, but whatever it is, it has nothing to do with this case.

"parole" claim.  First, as previously explained, to the extent that this Court relied on its habeas jurisdiction under 28 U.S.C. §2241, the Fifth Circuit's jurisdictional holding is undermined by the intervening decision of the Supreme Court in *INS v. St. Cyr, supra*. And second, as has also been previously explained, "law of the case" would not apply to an Order of this Court limited to LPRs who were not "arrested on a warrant issued by the Attorney General," and were paroled under the authority of 8 U.S.C. §1182(d)(5)(A), rather than the "conditional parole" powers of §1226(a)(2)(B).

**Page 31.**  INS asserts that if Plaintiffs wished to challenge the decision, they should have sought *certiorari* to the Supreme Court.

The Fifth Circuit remanded the case, rather than entering a final "judgment."  Under Rule 11, of the Rules of the Supreme Court,

> A petition for a writ of certiorari to review a case pending in a United States court of appeals, before judgment is entered in that court, will be granted only upon a showing that the case is of such imperative public importance as to justify deviation from normal appellate practice and to require immediate determination in this Court. See 28 U. S. C. §2101 (e).

Where this Court was fully competent to address the question on remand, petitioning for *certiorari* would not only have been futile, it would have been silly.

**Page 31.**  INS again asserts that Plaintiffs should "not be allowed to amend their complaint to again raise their 'parole' claim on remand," because, according to INS, this "claim has been rejected and the Fifth Circuit remanded the case on specific and narrow grounds, not for reconsideration of the whole controversy."

Again, the parole claim was "rejected" only to the extent that the Fifth Circuit was misled as to the underlying facts.  And, as has

37

been discussed above, the remand was not nearly so "specific and narrow" as INS wishes to believe.

**PAGES 31-32.**   INS again invokes the "law of the case" doctrine in connection with the fact that the Fifth Circuit had considered this Court's reliance on 28 U.S.C. §2241 "as a ground for jurisdiction over the 'parole claim,'" and correctly notes that, notwithstanding this fact, the Court concluded that 8 U.S.C. §1226(e) barred jurisdiction over this claim.

Subsequent to the Fifth Circuit's decision herein, the Supreme Court issued *INS v. St. Cyr, supra,* rejecting Fifth Circuit case law finding that IIRIRA had restricted habeas corpus jurisdiction. Therefore, this aspect of the Fifth Circuit's opinion falls under the second exception to the "law of the case" doctrine, to wit, that "controlling authority has since made a contrary decision of the law applicable to such issues." *U.S. v. Becerra, supra.*

**Pages 32-33.**   INS also asserts that habeas was inappropriate because none of the named Plaintiffs was "in custody" at the time the instant action was filed.

This is incorrect.   Indeed, INS even admits that when the Second Amended Complaint was filed, one of the named Plaintiffs (Plaintiff Gutierrez) was still stuck in Mexico.   She had been placed under exclusion proceedings, but not paroled into the U.S.. [26]   She was unable to rejoin her family, return to her job, or otherwise continue her life as the lawful permanent resident that she was at that time, and continues to be at present. Not only was she restrained from entering the U.S., but the denial of such

---

[26]   It is worth recalling in this context that the Fifth Circuit specifically found that the Plaintiffs had adequately alleged injury with respect to all aspects of the case.

38

fundamental liberty interests constitutes "custody" for purposes of 28 U.S.C. §2241. *See, Landon v. Plasencia, supra,* 459 U.S. at 34:

> Plasencia's interest here is, without question, a weighty one.  She stands to lose the right "to stay and live and work in this land of freedom." ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual.

*See also, Koetting v. Thompson,* 995 F.2d 37 (5th Cir.1993) (although a "detainer" issued in connection with a parole violation does not constitute custody for habeas purposes where no liberty interest is impinged, custody does exist where such an interest is implicated because the detainer interferes with the petitioner's ability to defend against the parole revocation proceedings).

**Page 33.**   INS acknowledges *INS v. St. Cyr, supra,* and *Calcano-Martinez v. INS,* 121 S.Ct. 2268 (2201), as follows:

> Plaintiffs also now argue that under the recent Supreme Court's decisions, the Court is vested with habeas jurisdiction over their claim. ... However, the Supreme Court decisions do not change the requirement that an applicant for the writ demonstrate "custody." ... Thus, even if the Supreme Court cases address the issues the this case, the plaintiffs have not demonstrated the requisite "custody" for habeas corpus jurisdiction under 28 U.S.C. §2241.

By this, INS all but admits that its only defense to the argument that *St. Cyr* supercedes the Fifth Circuit's holding with respect to the jurisdictional bar of 8 U.S.C. §1226(e) is the claim that none of the named Plaintiffs were in "custody" when the action was filed.  As shown above, this is incorrect.

**Pages 33-42.**  With respect to the "green card" claim, INS asserts, (INS:42), that "plaintiffs cannot prevail because the INS is in compliance with 8 C.F.R. § 264.5(g)."   In support thereof, INS

39

presents a Declaration from Larry Doyle, Assistant District Director for Examinations for the Harlingen INS District. (INS' Exhibit 6). In his Declaration, Mr. Doyle states, in relevant part:

> 3. There does not exist in the lexicon of documents used for immigration purposes by the INS a formal form or document entitled "temporary Form I-551". Rather, Form I-94 is designated for use as the "temporary Form I-551" and serves as evidence of lawful permanent resident status;
>
> 4. If a lawful permanent resident alien, who is either in the United States or paroled into the United States, is placed in immigration proceedings, the Harlingen District Office seizes the "green card" of the lawful permanent resident and replaces the green card with a I-94.

Unfortunately, the above declaration does not assert that the "green cards" of lawful permanent residents are routinely replaced with I-94s which state that the individual is a lawful permanent resident. And even more unfortunately, such I-94s do not always demonstrate the individual's status as a lawful permanent resident. In her individual capacity, the undersigned has only had the opportunity to represent one LPR in recent months who was paroled into the United States and given an I-94 in lieu of his green card. Said I-94 made no mention of the fact that he is a lawful permanent resident. *See,* Plaintiffs' Exhibits "LL" and "MM" (Appendix, Tabs 10 and 11). Discovery will therefore be required to determine whether the problem continues to be widespread. [27]

**Page 42**. INS also asserts that, because 8 C.F.R. § 264.5(g) "does not prohibit the defendants from attaching additional notations indicating that the LPR has been placed in immigration proceedings" they are free to do so.

---

[27] The absence of meaningful discovery to date is not for lack of effort on Plaintiffs' part. Rather, INS has done everything in its power to avoid discovery, and, as they now admit, they have largely been successful. (INS:29) ("The record reflects that there has been no factual discovery with respect to the claim...").

Under the explicit terms of the decision of the Fifth Circuit, however, this is only true "[a]bsent any legal authority to the contrary." Because the problem was initially resolved by adopting the McNary Memo, it not addressed below, and the Fifth Circuit did not determine whether such legal authority existed. Therefore, it remains an open legal question, which this Court must address.

**Page 43.**  INS asserts that the "I-94 is not only in the form of a 'temporary Form I-551', it is in fact the 'temporary Form I-551'".

Not every I-94 is, in fact, a "temporary Form I-551." Form I-94 has multiple uses. The "devil is in the details" of how it is prepared.  There is an Operation Instruction, ("OI"), which mandates how an I-94 must be prepared in order to constitute a "temporary Form I-551."  OI 264.2 governs issuance of temporary proof of LPR status.  It mandates use of the phrase "Temporary Evidence of Lawful Admission for permanent residence," (R:720), and specifies that the *admissions* portion of Form I-94 be utilized, (R:720-721).  It further states, *id.,* that:

> A photo of the applicant must be attached to the block
> next to the admission block, thereby obliterating the
> admission number.  The Service seal shall then be placed
> half over the admission block and half over the photo.

The I-94 recently given to class member Lopez, (Appendix, Tab 11), shows that INS does not always comply with OI 264.2.  Just how widespread the problem is can only be determined after discovery.

**Page 44.**  INS asserts, that the parole claims of LPRs who are sent back to Mexico under 8 U.S.C. §1225(b)(2)(C) have "no merit," even if this Court does have jurisdiction to consider the issue.  With respect to the "notice" aspect of the claim, INS relies on *City of West Covina v. Perkins,* 525 U.S. 234, 240-41 (1999), holding that individualized notice of possible remedies is not required where

41

information about the remedial procedures is "generally available"
through published statutes and case law, and the individual "can
turn to these public sources" to learn about them.

As applied to the parole issues, this type of information is not
"generally available" even to LPRs **within the United States.**  INS
has identified no "generally available ... public sources" from
which an LPR who does not speak, let alone read or write English,
can obtain a meaningful explanation of where and how a request for
parole may be made under 8 U.S.C. §1182(d)(5)(A).  In order to make
such a request, one would need to know, at a minimum, 1) the fact
that parole exists, 2) address of the INS District Office, and 3)
the criteria considered in evaluating such a request.

Indeed, Plaintiffs' counsel is unaware of any such sources, let
alone any which are "generally available," or published in Spanish.
Even assuming, *arguendo*, that an LPR could locate (and understand),
8 C.F.R. §212.5, which is the implementing regulation for parole
under 8 U.S.C. §1182(d)(5)(A), it would be of little help.  It does
not set forth the factors which are, as a practical matter, taken
into consideration in determining whether LPRs who have been
returned to Mexico to await a hearing will be paroled into the
United States. [28]    And it becomes an entirely different matter

---

[28]   There is no set "list" of factors.  As ADDE Larry Doyle
said in his first Declaration, (R:725):

> Each request for parole is reviewed by myself on a case
> by case basis, in which I carefully consider the factors
> presented in each request for parole.  In determining
> whether or not an alien shall be paroled into the United
> States, I consider the likelihood that the alien will
> abscond or pose a security risk.

Even as an attorney who has been certified as a specialist in
immigration and nationality law for twenty years, the undersigned
knows of no source, other than personal experience, from which to
obtain this information. To her knowledge, there is not even any

when an LPR is suddenly stranded abroad. If such "public sources" are scarce or non-existent within the United States, they are certainly not "readily available" in Mexico.

**Page 45.**   INS asserts that in "the instant case, public sources are readily available indicating that parole may be sought."

INS cites no authority for this claim.   Even assuming, *arguendo*, that this were true for LPRs within the U.S., it is certainly not the case that public sources regarding *the practical aspects of U.S. immigration law* are readily available in Mexico. And although it may be true, as asserted in the first Declaration submitted by ADDE Larry Doyle, (R:725) (emphasis added), that the "officers in secondary inspection and at the information desks in the Ports of Entry **can** answer questions about the parole procedure," it is not always true that they **do** answer such questions in a helpful manner.

At her first hearing, Plaintiff Ascencio asked about getting "a permit" to go to Houston to see her infant son.   (R:971).   The

---

"case law" which covers the issue. From personal experience, the undersigned knows to look for, and present, such factors such as the presence in the United States of minor, U.S. citizen or LPR dependents; the fact that such dependents are dependent on the applicant for support; whether the applicant has any urgent medical needs; significant property, business, or other family ties to the United States; whether it appears that there are bona fide legal arguments that the applicant is not subject to removal, and whether, if removability is established, any relief from removal would be available to the applicant. *See,* Plaintiffs' Exhibit LL, wherein the undersigned recently made a successful request for parole for a class member.

The suggestion that an unrepresented class member would be able to learn, from "generally available" sources, that this is what is required to obtain parole, would be laughable, if the absence of such resources did not have such tragic consequences.

43

following discussion then ensued (R:971-72): [29]

> IMMIGRATION JUDGE: I would think that the INS would be
> receptive to granting you parole into the United States,
> but I cannot speak for them, in view of the..your status
> as a lawful permanent resident and in view of the young
> age of your child. But you'll have to ask the District...
> MS. ASCENCIO: Because my daugher is leaving on Monday to
> go to classes, she needs to go into school.
> IJ:  In Houston?
> MS. ASCENCIO:  In Houston.
> IJ: Well, that's a double reason.  You'll have to talk
> to the District Director.
> MS. ASCENCIO:   Because she can't get adjusted in
> Monterrey;  she keeps on crying.
> IJ: Okay.  Well, that's understandable.  How old is your
> daughter?
> MS. ASCENCIO:  Nine years old.
> IJ:  Nine years old, and she's in the third..second,
> third grade?
> MS. ASCENCIO:  Fourth.
> IJ to INS: Now where would she .. go, Ms. Fitting?  Do
> you have any idea where she could go to [request] advance
> parole? [30]
> INS:   They, they can start as the information desk
> downstairs; they can direct her.

Ms. Ascencio did as she was told, and was not given any information
at all. *See,* Plaintiffs' Exhibit KK, (Plaintiffs' Appendix, Tab 9):

> After the hearing, someone from INS accompanied me
> downstairs, and I got in line to request information.
> When it was my turn, I did exactly what the Judge and INS
> attorney had told me to do:  I said that I wanted to ask
> the Director of Immigration about getting a permit to go
> to Houston.  The person who attended me asked where I was
> coming from.  I said that I was coming fron upstairs, and
> that I had just had an appointment with the Judge.  She

---

[29]  The transcript of this hearing if found in Plaintiffs'
Appendix, Tab 6.

[30]  From this, it is apparent that while the Immigration Judge
knew the type of factors that would be considered in granting
parole, he had no idea what the mechanism was for requesting it.

immediately said that I could not get any permit. When
I persisted, she said that if the Judge had said "no,"
then it was "no." I tried to explain, but she would not
listen to me. Instead, she told me rather sternly to go
sit down, because other people were waiting. I did as I
was told, thinking that she had told me to sit down
because someone else would come talk to me. But they
just left me sitting there, and after a while, when no-
one attended me, I left...

On this point also, to the extent summary judgment is appropriate,
it should be in **Plaintiffs'** favor. *See also,* Brief of *Amicus
Curiae* on the parole issues raised herein. (Appendix, Tab 15).

Respectfully Submitted,

Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731

Fed. ID.  1178
Texas Bar 03052800

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent by UPS to
Anthony Payne, Attorney, OIL, at 1331 Penn Ave. N.W. D.C., Wash.,
D.C. 20004, on November 5, 2001.

45