United States District Court
Southern District of Texas
FILED

DEC 0 2 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,        )
                             )
v.                           )     C.A. No.  B-94-215
                             )
TROMINSKI, et al.            )
_____)


PLAINTIFFS' MOTION TO SUMMARY JUDGMENT, AND (OPPOSED) MOTION FOR
ORDER SETTING DATE BY WHICH DEFENDANTS MUST RESPOND TO PLAINTIFFS'
FIRST SET OF POST-REMAND REQUESTS FOR ADMISSION AND FOR LEAVE TO
SUPPLEMENT THE SUMMARY JUDGMENT MOTION ONCE DEFENDANTS HAVE EITHER
RESPONDED (OR DEFAULTED)


## TABLE OF CONTENTS

I.  REQUEST FOR ORDER SETTING DEADLINE FOR DEFENDANTS TO RESPOND
TO PLAINTIFFS "FIRST AMENDED POST-REMAND REQUESTS FOR ADMISSION"
AND PERMITTING PLAINTIFFS TO THEREAFTER SUPPLEMENT THE INSTANT
MOTION ...................................................... 1

II.  PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ................. 2

III.  ISSUES TO BE ADDRESSED ................................. 3

IV.  SUMMARY OF ARGUMENT .................................... 4

    A.  THE MANNER IN WHICH DEFENDANTS ADMINISTER 8 U.S.C.
    §1182(d)(5) IS UNCONSTITUTIONAL AS APPLIED TO THE PLAINTIFF
    CLASS ................................................... 5

    B.  PUTTING NOTATIONS ON DOCUMENTS USED AS EVIDENCE OF
    PLAINTIFFS' LPR STATUS WHICH REVEAL PERSONAL INFORMATION
    BEYOND THAT SPECIFIED BY THE REGULATIONS VIOLATES THEIR LEGAL
    RIGHTS UNDER BOTH THE PRIVACY ACT, AND THE INA ........... 7

V.  ARGUMENT ................................................ 7

A.  INS' FAILURE TO PROVIDE NOTICE OF THE AVAILABILITY OF
PAROLE UNDER §1182(d)(5), AND DUE PROCESS HEARINGS BEFORE SUCH
REQUESTS ARE FINALLY DENIED, DEPRIVES THE PLAINTIFF CLASS OF
DUE PROCESS .............................................. 7

   1.  PETITIONERS ARE ENTITLED TO NOTICE OF THE RIGHT TO
   APPLY FOR PAROLE UNDER 8 U.S.C. §1182(d)(5)(A), AND OF
   THE MEANS BY WHICH SUCH APPLICATIONS ARE MADE ........ 7

   2. THE PLAINTIFF CLASS IS ALSO ENTITLED TO DUE PROCESS
   IN THE ADJUDICATION OF ANY REQUESTS FOR PAROLE MADE BY
   THEM ................................................ 13

B. UNDER 8 U.S.C. §1304(b) AND 5 U.S.C. §552a(b), THE ATTORNEY
GENERAL MAY NOT DISSEMINATE PERSONAL INFORMATION ABOUT CLASS
MEMBERS ................................................ 14

   1.  UNDER 8 U.S.C. §1304(b), THE ATTORNEY GENERAL IS
   BARRED FROM DISCLOSING PERSONAL INFORMATION SUCH AS IS
   COMMONLY NOTED ON THE I-94s WHICH ARE GIVEN PLAINTIFFS
   AS TEMPORARY PROOF OF LPR STATUS .................... 14

   2.  THE PRIVACY ACT ALSO BARS SUCH DISCLOSURE .......... 16

   3. INS IS NOT IN COMPLIANCE WITH 8 C.F.R. §264.5(g) .... 17

VI.  PROPOSED FINDINGS OF FACT .............................. 18

VII.  PROPOSED CONCLUSIONS OF LAW ........................... 20

## TABLE OF AUTHORITIES
### CASES

*Argento v. Horn,*
    241 F.2d 258 (6th Cir. 1957) . . . . . . . . . . . . . . .  15

*Cerda v. Trominski et al,*
    CA B-02-109 (S.D.Tx pending) . . . . . . . . . . . . . . . .  4

*City of West Covina v. Perkins,*
    525 U.S. 234 (1999) . . . . . . . . . . . . . 5, 7-9, 11, 13

*Crumpton v. Stone,*
    59 F.3d 1400 (D.C.Cir. 1995) . . . . . . . . . . . . . . . .  16

*Goldberg v. Kelly,*
    397 U.S. 254 (1970) . . . . . . . . . . . . . . . . . . 7, 14

*Hernandez-Leija et al v. Trominski et al,*
    C.A. B-01-206 (S.D.Tx pending) . . . . . . . . . . . . . . .  6

*Landon v. Plasencia,*
    459 U.S. 21 (1982) . . . . . . . . . . . . . . . . . . . 4, 14

*Loa-Herrera, et al v. Trominski, et al,*
    231 F.3d 984 (5th Cir. 2000) . . . . . . . . . . . 5, 10, 13

*Marcello v. Bonds,*
    349 U.S. 302 (1955) . . . . . . . . . . . . . . . . . . . .  6

*Mathews v. Eldridge,*
    96 S.Ct. 893 (1976) . . . . . . . . . . . . . . . . . . . .  14

*Memphis Light v. Craft,*
    436 U.S. 1 (1978) . . . . . . . . . . . . . . . . 8, 9, 12, 13

*Molina v. Sewell,*
    983 F.2d 676 (5th Cir. 1993) . . . . . . . . . . . . . . .  4

*Parra v. Perryman,*
    172 F.3d 954 (7th Cir.1999) . . . . . . . . . . . . . . .  4

*Rafeedie v. INS,*
    880 F.2d 506 (D.C.Cir. 1989) . . . . . . . . . . . . . . 7, 14

*Velasquez v. Legal Services Corp.,*
    164 F.3d 757 (2nd Cir.1999) . . . . . . . . . . . . . . .  15

**STATUTES**

5 U.S.C. §552a(a)(4) . . . . . . . . . . . . . . . . . 16

5 U.S.C. §552a(b) . . . . . . . . . . . . 2, 7, 14, 16, 17

5 U.S.C. §552a(b)(1) - (12) . . . . . . . . . . . . . 16

8 U.S.C. §1182(d)(5)(A) . . . . . . . 1-3, 5, 7-9, 12, 13, 18-20

8 U.S.C. §1225(b)(2)(C) . . . . . . . . . . 2, 5, 9, 13, 18, 19

8 U.S.C. §1226(a)(2)(B) . . . . . . . . . . . . . . . 5, 10

8 U.S.C. §1226(e) . . . . . . . . . . . . . . . . . . 13

8 U.S.C. §1304(a) . . . . . . . . . . . . . . . . . . 14

8 U.S.C. §1304(b) . . . . . . . . . . . . 1, 2, 7, 15, 20

8 U.S.C. §1304(e) . . . . . . . . . . . . . . . . . . 15

8 U.S.C. §1324a(b)(1) . . . . . . . . . . . . . . . . 15

8 U.S.C. §1357(f)(2) . . . . . . . . . . . 1, 2, 14, 15

8 U.S.C. §1360(a) . . . . . . . . . . . . . . . . . . 15

18 U.S.C. §506(b) . . . . . . . . . . . . . . . . . . 15

**REGULATIONS**

8 C.F.R. §18.31 . . . . . . . . . . . . . . . . . . . 6

8 C.F.R. §18.32 . . . . . . . . . . . . . . . . . . . 6

8 C.F.R. §212.5 . . . . . . . . . . . . . . . . . . . 12

8 C.F.R. §240.1(a)(1)(ii) . . . . . . . . . . . . 10, 19

8 C.F.R. §264.5 . . . . . . . . . . . . . . . . . 16, 20

8 C.F.R. §264.5(g) . . . . . . . . . . . . . . . 2, 7, 17

**OTHER AUTHORITIES**

Collins Spanish Dictionary, (Second Ed., 1988) . . . . . . . 10

Operations Instruction 264.2 . . . . . . . . . . . . 16, 17, 20

## I. REQUEST FOR ORDER REQUIRING DEFENDANTS TO RESPOND TO PLAINTIFFS' PENDING REQUESTS FOR ADMISSION.

In its recent Order, the Court identified two pending issues:

1) Whether the manner in which the INS exercises its parole authority with respect to legal permanent residents seeking admission who were not arrested on a warrant prior to being returned to their native country is constitutional; and
2) Whether there are certain legal authorities for limiting the INS' ability to place notations on the substitute I-151 or I-551 documents which disclose personal information to anyone why may view the documents.

Defendants have not yet responded to Plaintiffs' pending Requests for Admission, three of which (9 - 11) relate to the second issue:[1]

9.  If a potential employer, an attorney who claims to represent such a person, or other individual or agency, including those who may lawfully require that an LPR show proof of his or her immigration status, (other than a law enforcement agency, to the extent permitted by 8 U.S.C. §1357(f)(2), or other persons or agencies which have been properly designated by the Attorney General in accordance with 8 U.S.C. §1304(b)), requests information from INS about that person other than whether that person is authorized to be employed in the United States, and the date of expiration, if any, of any such authorization, current policies and procedures as set forth in the Operations Instructions, which policies and procedures were designed, *inter alia*, to ensure compliance with the statutory mandates of 8 U.S.C. §1304(b) and 5 U.S.C. §552a(b), would not authorize an officer or agent of INS to provide such information, absent a sufficient document executed by that LPR giving consent to the disclosure of such information.

10.  Potential employers, as a group, have not been designated by the Attorney General under the authority conferred by 8 U.S.C. §1304(b) as persons authorized to receive registration and fingerprint records made under the provisions of Title 8, United States Code.

11.  There are procedures in effect by which an officer, employee or agent of INS may be disciplined for providing

---

[1]    The remaining requests relate to the fact that LPRs detained at the ports of entry and placed in proceedings as arriving aliens are not arrested on a "warrant issued by the Attorney General." Although Defendants have, in essence, admitted this fact in open Court, Plaintiffs would prefer formal admissions.

information from records kept by INS about individual LPRs, other than whether that LPR is authorized to be employed in the United States, and the date of expiration, if any, of any such authorization, to persons or agencies other than those authorized by 8 U.S.C. §1304(b), and/or 8 U.S.C. §1357(f)(2) to receive the information provided, if that person or agency does not have the appropriate form of consent from the affected LPR.

Plaintiffs therefore urge the Court to order Defendants to respond to Plaintiffs' First Amended Post-Remand Requests for Admission, and permit Plaintiffs to thereafter supplement the instant motion.

## II.  PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs hereby request summary judgment on the two issues set forth in the Court's Order of September 25, 2002. Specifically, Plaintiffs will show that the answer to the first question is "NO;" and to the second, "YES." Defendants exercise the parole authority of 8 U.S.C. §1182(d)(5) in a manner inconsistent with Due Process, and the practice of placing personal notations on substitute I-551 documents violates two statutory bars against divulging personal information about Plaintiffs except under specified circumstances.

This Court previously granted three forms of relief.  Following Supreme Court and Fifth Circuit precedent, the Court noted that as LPRs, Plaintiffs enjoy Due Process protection in matters affecting their right to enter (or be paroled into) the United States.  The Court therefore ordered that on returning an LPR to Mexico to await a hearing under 8 U.S.C. §1225(b)(2)(C), INS provide notice of the possibility parole under 8 U.S.C. §1182(d)(5)(A), and that prior to denying such a request, the LPR be given a hearing before an impartial adjudicator.  The Court also ordered INS to abide by the "McNary Memorandum" [2] in determining when to confiscate LPRs' green cards, and the form of substitute documents issued. The Court also

---

[2]  Neither Plaintiffs nor INS noted that 8 C.F.R. §264.5(g) had superceded the McNary Memo.  Said regulation, rather than the Memo, should have formed the basis of this aspect of the Order.

ordered INS not to confiscate such lawfully issued documents as drivers' licenses or Social Security cards from LPRs, absent a good faith belief that they evidenced unlawful conduct.  INS appealed.

INS' appeal was devoted primarily to procedural complaints. As shown by their second motion for summary judgment, [3] which included their brief to the Fifth Circuit, (Appendix, at Tab 5), INS raised no substantive challenges to the Court's orders regarding class certification, and limiting the confiscation of documents such as drivers' licenses. [4]  The Fifth Circuit did not *sua sponte* find fault with this Court's treatment either of class certification, or of the "other documents" issue, and this Court did not identify either point as an outstanding issue in its Order of September 25, 2002.  Therefore, Plaintiffs take these aspects of this Court's prior orders as settled, and will not further address them herein.

### III.   ISSUES TO BE ADDRESSED

**A.  INS' FAILURE TO PROVIDE NOTICE OF THE AVAILABILITY OF PAROLE UNDER 8 U.S.C. §1182(d)(5), OR ANY TYPE OF HEARING, BEFORE PAROLE REQUESTS ARE DENIED, DEPRIVES THE PLAINTIFF CLASS OF DUE PROCESS.**

**B.  INS' PRACTICE OF PUTTING PERSONAL INFORMATION NOT CONTAINED ON FORM I-551 ON DOCUMENTS WHICH ARE PROVIDED AS EVIDENCE OF THEIR LPR STATUS, VIOLATES PLAINTIFFS' RIGHTS UNDER BOTH THE PRIVACY ACT, AND THE IMMIGRATION AND NATIONALITY ACT.**

---

[3] *See, e.g.,* (INSsj2:12-14), summarizing the substantive complaints INS raised before the Fifth Circuit, and (INSsj2:19-20), "Defendants' Statement of Outstanding Issues," neither of which addressed the "other documents" issue, or class certification.

[4] INS never gave a reason for confiscating such documents from the named Plaintiffs. The record, including the Declarations of Plaintiffs Ascencio and Merino, (Exhibit "KK"), shows that these documents had no evidentiary value.  In their second Summary Judgment Motion, ([Dkt. 55], cited as (INSsj2:__) at 23), INS noted that it has "not admitted that they confiscate other documents without a good faith belief that they are bona fide evidence [of] unlawful conduct." But they have submitted no evidence on this point, so Plaintiffs' showing stands unchallenged that the other documents taken from Plaintiffs had no evidentiary value.

## IV.  SUMMARY OF ARGUMENT

It is undisputed that non-citizens seeking initial admission to the United States have virtually no constitutional rights.  However, it is equally well settled that lawful permanent residents ("LPRs") are entitled to full Due Process protections, even at the border.[5]

In this context, Plaintiffs would again note all seven named Plaintiffs ultimately won their immigration cases and remain in the U.S. as LPRs (or naturalized U.S. citizens). The instant action is therefore not about delaying the removal of undesirable aliens. [6] Rather, it is about treating LPRs, and their family members within the U.S., in a fair and humane manner, consistent with Due Process and their status as LPRs, while it is decided whether the offenses they committed (or are accused of having committed), are so serious as to warrant deportation, or, if they committed the offenses at all, [7] they are sufficiently minor, and their equities so great, that they should be allowed to retain their LPR status. [8]

---

[5]   *See, Landon v. Plasencia,* 459 U.S. 21,32-33 (1982); *Molina v. Sewell,* 983 F.2d 676,680 (5th Cir.1993) ("*Landon* recognized that, unlike an alien seeking to enter the United States for the first time, a returning resident alien retains a constitutional right to due process").  INS' second Summary Judgment motion urged primarily that the Court should not reach the claim on remand (INSsj2:26-33).

[6]   *Parra v. Perryman,* 172 F.3d 954,958 (7th Cir.1999), holding that 8 U.S.C. §1226(c) does not violate Due Process as applied to a "criminal alien who insists on postponing the inevitable..."

[7]   Not all LPRs stopped at the border are inadmissible.  *See,* Exhibits "Y" and "LL," and *Cerda v. Trominski et al,* CA B-02-109, involving an LPR accused, but never convicted, of smuggling drugs.

[8]   For example, Plaintiffs Ascencio and Merino tried to use their U.S. citizen son's birth certificate to take a sick nephew to Houston for medical treatment.  Plaintiff Gutierrez attempted to bring her sister and sister's children into the U.S., to protect them from further abuse by her sister's husband. None of these offenses was prosecuted criminally.  Rather, these Plaintiffs were stripped of their green cards, Social Security cards, and other documents, and returned to Mexico to await exclusion hearings.

**A.  THE MANNER IN WHICH DEFENDANTS ADMINISTER 8 U.S.C. §1182(d)(5)
    IS UNCONSTITUTIONAL AS APPLIED TO THE PLAINTIFF CLASS.**

In their (second) Motion for Summary Judgment, (INSsj2:44), INS
asserted that the parole claims of LPRs sent back to Mexico under
§1225(b)(2)(C) had "no merit." [9]  With respect to the notice issue,
INS relied on *City of West Covina v. Perkins,* 525 U.S. 234,240-41
(1999), holding that individualized notice of possible remedies is
not required where that information is "generally available"
through published statutes and case law, and the affected
individual "can turn to these public sources" to learn about them.

*West Covina* actually supports Plaintiffs' position. Even if a class
member already knew that a procedure existed which might allow him
or her to physically enter the U.S. while proceedings were pending,
information about parole would be difficult to find in Mexico.
Without this knowledge, it would be virtually impossible. By
definition, the LPR had requested admission, and been rejected. And
even if the person were able to locate a copy of the U.S. Code,
and/or Vol. 8 of the C.F.R., use of the term "parole" to cover both
this procedure, and "conditional liberty" for one arrested on a
warrant within the U.S., is so counter-intuitive that it even
confused the Fifth Circuit, which understandably, but mistakenly,
accepted INS' claim that "parole" had the same meaning in 8 U.S.C.
§1182(d)(5)(A) and §1226(a)(2)(B). *Loa-Herrera v. Trominski,* 231
F.3d 984,991 (5th Cir.2000). An LPR, with a more limited education,
stranded in Mexico, cannot be expected to have better access to,
and understanding of, immigration law than the Fifth Circuit!

Plaintiffs also urge that before a parole request is denied, they
are entitled to a Due Process hearing, however summary. Before the

---

    [9]  INS has not contested Plaintiffs' right to Due Process in
adjudicating requests for parole. Rather, they assert that current
procedures satisfy Due Process, because Due Process allegedly does
not require an "impartial adjudicator." *See, e.g.,* (INSsj2:45).

Fifth Circuit, INS urged that *Marcello v. Bonds*, 349 U.S. 302 (1955), addressed, and rejected, "a challenge alleging that parole hearings must occur before an 'impartial adjudicator.'" (Opening Brief at 52). This is not actually the holding of *Marcello*, [10] but to simplify the issue, Plaintiffs would reformulate their demand as a "Due Process hearing, however summary." At present, no hearings, or even face-to-face interviews, are required. Rather, requests are made in writing, and a written response provided. As seen from *Hernandez-Leija et al v. Trominski et al*, C.A. B-01-206, (Exhibits G and Q), [11] such denials rarely exceed two or three sentences, and, if any reason at all is given, they may be based on factors as arbitrary as an assertion that parole is not in INS' interest. [12]

The lack of any hearing at all, coupled with INS' sometimes bizarre reasons for denying parole, and the fact that, after two denials by INS, an Immigration Judge granted a parole bond to Mr. Grimaldo, show that current procedures are inadequate, and do not comply with even rudimentary Due Process requirements. [13] And since Immigration

---

[10] The issue in *Marcello* revolved around the fact that at that time, immigration judges were under INS' control. They are now under a separate division, the EOIR, and their impartiality is protected by 8 C.F.R. §§18.31 and 18.32, so this is not an issue.

[11] Pursuant to Rule 201(d), Fed. Rules of Evidence, Plaintiffs urge this Honorable Court to take judicial notice of the entire record in *Hernandez-Leija et al v. Trominski et al*, CA B-01-206.

[12] For example, Plaintiff Grimaldo's initial denial was based on a claim that parole was not in INS' interest. *Hernandez-Leija*, Exh. G at p.4. After the BIA reopened proceedings to allow him to seek relief, he renewed his request. This application was denied with no explanation. Eventually, an Immigration Judge ordered his release on $2,500 bond, *id.*, (Exhibit Q), although INS refused to accept his money, and eventually freed him without bond.

[13] To conserve resources, Plaintiffs envision a two-step process, with a parole request first evaluated by the INS District Director. If granted, there would be no need for a hearing. Only if the District Director were inclined to deny the request would it be referred to a hearing officer, such as an Immigration Judge.

Judges regularly conduct hearings at ports of entry, (Plaintiffs' Exhibit X), any additional burden on INS would be minimal. *See, Goldberg v. Kelly*, 397 U.S. 254 (1970) (whether procedural due process must be afforded before adverse administrative action depends on whether the affected party may suffer grievous loss, and whether the interest in avoiding that loss outweighs governmental interests in summary adjudication); and *Rafeedie v. INS*, 880 F.2d 506 (D.C.Cir. 1989) (avoiding constitutional issue by interpreting the statute providing for summary disposition of cases involving exclusion of aliens as inapplicable to an LPR seeking readmission).

**B.   PUTTING NOTATIONS ON DOCUMENTS USED AS EVIDENCE OF PLAINTIFFS' LPR STATUS WHICH REVEAL PERSONAL INFORMATION BEYOND THAT SPECIFIED BY THE REGULATIONS VIOLATES THEIR LEGAL RIGHTS UNDER BOTH THE PRIVACY ACT, AND THE INA.**

In its prior summary judgment motion, (INSsj2:42), INS asserted that because 8 C.F.R. §264.5(g) "does not prohibit the defendants from attaching additional notations indicating that the LPR has been placed in immigration proceedings" they are free to do so. Under the Fifth Circuit's opinion, p. 6, this would only be true "absent any legal authority to the contrary." As shown herein, 5 U.S.C. §552a(b), and 8 U.S.C. §1304(b) bar such notations. [14]

**V.   ARGUMENT**

**A.   INS' FAILURE TO PROVIDE NOTICE OF THE AVAILABILITY OF PAROLE UNDER §1182(d)(5), AND DUE PROCESS HEARINGS BEFORE SUCH REQUESTS ARE FINALLY DENIED, DEPRIVES THE PLAINTIFF CLASS OF DUE PROCESS.**

**1.   PETITIONERS ARE ENTITLED TO MEANINGFUL NOTICE OF THE RIGHT TO APPLY FOR PAROLE UNDER 8 U.S.C. §1182(d)(5)(A), AND OF THE MEANS BY WHICH SUCH APPLICATIONS ARE MADE.**

It is undisputed that under *City of West Covina v. Perkins*, 119

---

[14]   It is primarily with respect to this issue that Plaintiffs seek a response to their post-remand requests for admission. These admissions would show that INS is aware that it lacks authority to give out personal information about LPRs, to potential employers or others, and that INS employees who do so are subject to discipline.

S.Ct. 678 (1999), the issue of whether Plaintiffs are entitled to individual notice of the existence of parole under §1182(d)(5), and the means of requesting it, turns on whether such information is otherwise "generally available;" and whether Plaintiffs have "other reasonable means" of obtaining it, and can "reasonably be expected to educate [themselves] about the procedures..." In *West Covina*, the police seized property from Mr. Perkin's home.  They left a note, with a name and telephone number to call for information.  As the Court elaborated, 525 U.S. at 237 (internal citations omitted):

> Not long after the search, Perkins called Ferrari, one of the detectives listed on the Notice, and inquired about return of the seized property. ... One of the detectives told Perkins he needed to obtain a court order authorizing the property's return. ...

> About a month after the search, Perkins went to the Citrus Municipal Court to see Judge Oki, who had issued the warrant.  He learned Judge Oki was on vacation. ... He tried to have another judge release his property but was told the court had nothing under Perkins' name. ...

Without more, he filed suit.  As the Court continued, *id.* at 238:

> The District Court granted summary judgment for the City and its officers. ... The court, however, invited supplemental briefing on an issue respondents had not raised:  whether available remedies for the return of seized property were adequate to satisfy due process. ...

While the notice did not explain the procedure for returning the property, it did give the name and telephone of someone who could, and did, provide that information. Mr. Perkins was also in the U.S., where published statutes and savvy attorneys were "readily available." Moreover, it was his property, not personal liberty, at stake. Under all the circumstances, it was not unreasonable to expect him to ascertain, and access, the available legal remedies.

*West Covina* distinguished *Memphis Light v. Craft,* 436 U.S. 1 (1978), on which the lower court relied in mandating individualized notice, as follows, 119 S.Ct. at 681-82 (emphasis added).

8

*In Memphis Light, the Court held* that a public utility must make available to its customers the opportunity to discuss a billing dispute with a utility employee who has authority to resolve the matter before terminating utility service for nonpayment. 436 U.S., at 16-17, 98 S.Ct. 1554. The Court also held *that due process required the utility to inform the customer not only of the planned termination, but also of the availability and general contours of the internal administrative procedure for resolving the accounting dispute.* Id., at 13-15, 98 S.Ct. 1554. In requiring notice of the administrative procedures, however, we relied not on any general principle that the government must provide notice of the procedures for protecting one's property interests but on the fact that the administrative procedures at issue were not described in any publicly available document. *A customer who was informed that the utility planned to terminate his service could not reasonably be expected to educate himself about the procedures available to protect his interests*:

> "[T]here is no indication in the record that a written account of [the utility's dispute resolution] procedure was accessible to customers who had complaints about their bills. [The plaintiff's] case reveals that the opportunity to invoke that procedure, if it existed at all, depended on the vagaries of 'word of mouth referral.' " Id., at 14...

While **Memphis Light demonstrates that notice of the procedures for protecting one's property interests may be required when those procedures are arcane and are not set forth in documents accessible to the public**, it does not support a general rule that notice of remedies and procedures is required.

To say that the existence of "parole" under §1182(d)(5)(A), and the procedure for requesting it, "are arcane and are not set forth in documents accessible to [the Plaintiff class]" would be, at best, an understatement.  The term is not defined in the Immigration and Nationality Act, or the implementing regulations.  And neither the NTA given to an LPR detained under 8 U.S.C. §1225(b)(2), nor that section of law, gives any hint that there may be some *temporary* remedy, called parole, buried in another section of the law. The

9

(English language) "Notice to Respondent" [15] which accompanies and forms part of the NTA, provides information about the LPR's rights. It asserts that s/he "will be advised by the immigration judge... of any relief from removal..." But "parole" is not a form of relief under the Judge's jurisdiction, (See, 8 C.F.R. §240.1(a)(1)(ii)) and, as seen from the transcript in Ms. Ascencio's case, the Immigration Judge was unable to tell her how to request it. [16]

Even in the U.S., few if any documents "accessible to the public" provide notice that a temporary remedy exists, called "parole," or basic information as to how to go about requesting it.  To the contrary, it is a classic "chicken/egg" dilemma. Before learning that parole exists, one would have to know it is called "parole."[17] Even for native English-speakers, "parole" more nearly evokes a release from prison following a criminal sentence, than conditional entry into the U.S..  The only definition given by Collins Spanish Dictionary, (Second Ed., 1988), derives from the term "word," and relates to what is called "release on recognizance" in English.  In fact, this is the meaning of the term as used in §1226(a)(2)(B), a fact which confused even the Fifth Circuit.  *Loa-Herrera, supra.*

Therefore, even if Plaintiffs could find (and understand) books on U.S. immigration law in Mexico, they would have no "reasonable

---

[15]   *See*, Plaintiffs' Exhibit CCC, incorporated by reference.

[16]   Plaintiffs' Exhibit X, (Record, Vol. 4, at pp. 971-72).

[17]   This is the fundamental flaw in INS' argument, (INSsj2:45), that "public sources are readily available indicating that parole may be sought." Assuming, *arguendo*, that 8 U.S.C. and 8 C.F.R. were "readily available" in Mexico, and that class members could read and understand them, before they would be of use, the LPR would have to know that the procedure is called "parole." Neither volume has a substantive index which provides this information.
Further, the Declaration of Fernando Gutierrez, (incorporated as Plaintiffs' Exhibit BBB), shows that even a well-educated Mexican professional could not locate this information *anywhere* in Reynosa.

means" of utilizing them to discover that there exists a form of provisional admission called "parole," let alone how to request it. With the added complication of language and educational barriers, and the fact that class members are stranded in Mexico, they cannot "reasonably be expected to educate [themselves] about parole." This is a far cry from the situation in *West Covina*, where the property owner could reasonably be expected to think that a remedy existed, and was given the name and telephone of someone who could (and did) start him on the road to discovering it.    The Supreme Court therefore mandated individualized notice of who had seized the property, but not of how the owner could get it back.    *Id*. at 679:

> Individualized notice that officers have taken property is necessary in a case such as the one before us *because the property owner would have no other reasonable means of ascertaining* who was responsible for his loss.

> No similar rationale justifies requiring individualized notice of state-law remedies... established by published, generally available state statutes and case law. *Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available...*

This reasoning supports a mandate that Defendants notify members of the Plaintiff class of the possibility of parole for LPRs returned to Mexico. They "would have no other reasonable means of ascertaining" either that such a thing existed, or how to request it. This is borne out by Ms. Ascencio's initial hearing, (R4:971-72), and her affidavit. As she explained, (Plaintiffs' Exh. KK):

> ... While I was in the hearing, I asked the Judge if I could get a permit to go to Houston, to visit my son, who was only 18 months old, and to enroll my daughter in school. The Judge told me that I had to ask the Director of Immigration, and the INS Attorney said that the people downstairs could give me information.

> After the hearing, someone from INS accompanied me downstairs, and I got in line to request information. When it was my turn, I did exactly what the Judge and INS attorney had told me to do: I said that I wanted to ask the

11

Director of Immigration about getting a permit to go to
Houston.  The person who attended me asked me where I was
coming from.  I said that I was coming from upstairs, and
that I had just had an appointment with the Judge.  She
immediately said I could not get any permit. When I
persisted, she said that if the Judge had said "no," then
it was "no." I tried to explain, but she would not listen
to me.  Instead, she told me told me rather sternly to go
sit down, because other people were waiting. I did as I was
told, thinking that she had told me to sit down because
someone else would come talk to me.  But they just left me
sitting there, and after a while, when no-one attended me,
I left, and went back to Guerrero, where we were staying.

While INS Officers "can answer questions" about parole, (R3:725),
the one who responded to Ms. Ascencio's inquiry apparently thought
that it was unavailable to LPRs in proceedings. Other than asking
INS agents for information, which, if provided at all, [18] would be
verbal, and thus inadequate, no known sources are accessible, let
alone any in Spanish, or "generally available" in Mexico. (Exhibits
KK and BBB). Even assuming, *arguendo*, that an LPR could find §1182
(d)(5), or 8 C.F.R. §212.5, they would be useless.  They neither
mention parole for LPRs in proceedings, nor the factors actually
considered in adjudicating a parole request. [19] As in *Memphis Light*,

---

[18] As seen from Exhibit BBB, a Mexican professional who already
*had* a parole document was able to obtain verbal confirmation that
it existed, if little more, from an INS official at a port of entry

[19] There is no list of factors. As Larry Doyle said, (R3:725):

Each request for parole is reviewed by myself on a case
by case basis, in which I carefully consider the factors
presented in each request for parole.  In determining
whether or not an alien shall be paroled into the United
States, I consider the likelihood that the alien will
abscond or pose a security risk.

Even as a 20-year immigration law specialist, the undersigned knows
of no source, other than personal experience, from which to obtain
this information. From experience, the undersigned knows to look
for and document such factors as the presence in the U.S. of minor,
U.S. citizen or LPR dependents; whether the applicant has urgent
medical needs, significant property, business, family or other ties
in this country; whether there are bona fide legal arguments that
the LPR is not deportable, or that relief would be available. *See,*

12

Plaintiffs cannot "reasonably be expected to educate [themselves] about [parole]." No named Plaintiff was able to figure out how request it, much less, how to do so successfully, without counsel. Still, INS asserts, without authority or evidentiary backing, that in "the instant case, public sources are readily available indicating that parole may be sought." (INSsj2:45).

The record shows (and common sense indicates) that this is not so. Materials regarding parole under §1182(d)(5)(A) are not readily available to LPRs sent to Mexico under §1225(b)(2)(C). They cannot "reasonably be expected to educate [themselves]" about parole. Under *West Covina*, and *Memphis Light*, Plaintiffs are therefore entitled to summary judgment on this aspect of their suit.

### 2. THE PLAINTIFF CLASS IS ALSO ENTITLED TO DUE PROCESS IN THE ADJUDICATION OF ANY REQUESTS FOR PAROLE MADE BY THEM.

In its 1998 Order, this Court also held that Due Process entitled Plaintiffs to Due Process parole hearings. In *Loa-Herrera*, the Fifth Circuit accepted INS' erroneous claim that 8 U.S.C. §1226(e) barred even constitutional complaints about the parole procedures. Still, that Court noted, 231 F.3d at 991 (emphasis added):

> Without reaching the merits of the plaintiffs' constitutional claims, we therefore vacate those portions of the order that require the INS to hold parole hearings. *In doing so, we note that the executive branch, of course, has an independent duty to uphold the Constitution, irrespective of whether its actions are subject to judicial review*.

The executive branch has failed miserably in this duty. After they obtained counsel, all five Plaintiffs in exclusion proceedings were granted parole, and won their cases. (R1:113). This shows that

---

Plaintiffs' Exhibit "LL," for an example of a successful parole request for a detained LPR. The suggestion that an unrepresented class member would be able to learn from "generally available" sources what is required to obtain parole, would be laughable, if the lack of such resources did not have such tragic consequences.

there is no correlation between the merits of a given case, and the means by which parole is administered. Mr. Grimaldo's saga under-scores this point. Twice, INS denied him parole, but an Immigration Judge ordered his release on a $2,500 parole bond. And although INS refused his money, after transferring him to Nebraska, they set him free. Vital liberty interests are at stake, [20] and INS never denied that LPRs are entitled to Due Process in adjudicating parole requests. Thus, cases such as *Goldberg v. Kelly*, *Mathews v. Eldridge*, 96 S.Ct. 893 (1976), and *Rafeedie v. INS*, mandate that LPRs receive a Due Process hearing before such requests are denied.

**B. INS' CLAIM THAT THE ATTORNEY GENERAL MAY GIVE EMPLOYERS PERSONAL INFORMATION ABOUT POTENTIAL EMPLOYEES OVERLOOKS 8 U.S.C. §1304(b) AND 5 U.S.C. §552a(b), WHICH, WITH EXCEPTIONS NOT PERTINENT HEREIN, BAR DISSEMINATION OF PERSONAL INFORMATION ABOUT CLASS MEMBERS.**

Two statutes limit INS' authority to give personal information about LPRs to employers or others to whom they must show proof of status. Neither permits random disclosure. Yet when they confiscate LPRs' green cards, INS Officers feel free to scribble any number of notations about their criminal convictions and immigration status on the I-94s they provide as temporary proof of LPR status.

**1.    UNDER 8 U.S.C. §1304(b), THE ATTORNEY GENERAL IS BARRED FROM DISCLOSING PERSONAL INFORMATION SUCH AS IS NOTED ON THE I-94s GIVEN AS TEMPORARY PROOF OF LPR STATUS**

The first bar is that of 8 U.S.C. §1304(b), which mandates that:

> All registration and fingerprint records made under the provisions of this title shall be confidential, and shall be made available only (1) pursuant to [8 U.S.C. §1357(f)(2)] and (2) to such persons or agencies as may be designed by the Attorney General.

Under 8 U.S.C. §1304(a), INS must obtain the "police and criminal record" of aliens. But INS may not release these records to

---

[20] *Plasencia, supra* at 34 ("the right to rejoin her immediate family... ranks high among the interests of the individual.").

employers, or to agencies such as employment offices, which are neither included in §1357(f)(2), [21] nor have been so designated. [22]

Any such designations would presumably be found in the Code of Federal Regulations or Operations Instructions. While several provisions authorize disclosure of information about possible violations of law to the responsible agencies, such as the U.S. Attorney, IRS, and Selective Service, [23] a search of the C.F.R. and O.I.s reveals no such corresponding authorization to provide information to private individuals. An inference can therefore be drawn that potential employers, as a group, are not so designated. Likewise, in neither volume is there a corresponding authorization for employment agencies, or others which provide social services to U.S. citizens and lawful permanent residents, but are barred from giving such services to other classes of non-citizens. [24] Since LPRs over eighteen are required to carry proof of their status at all times, (8 U.S.C. §1304(e)), and must provide it to potential employers, (8 U.S.C. §1324a(b)(1)), putting extraneous personal information on substitute I-551s is a prohibited form of "[making] available" that information, withing the meaning of §1304(b).

---

[21]    Said section requires disclosure of fingerprints and photographs of aliens in removal proceedings to "Federal, State, and local law enforcement agencies **upon request**." (emphasis added).

[22]    One old case addressing §1304(b), *Argento v. Horn,* 241 F.2d 258 (6th Cir.1957), an extradition case, held that, absent proof to the contrary, it was presumed that the AG had authorized release of the information.  This is very different from broadcasting such information to all who must view proof of Plaintiffs' LPR status.

[23]    Under 8 U.S.C. §1360(a), the Attorney General also has broad authority to provide information to "the security and enforcement agencies of the Government of the United States."

[24]    *E.g., Velasquez v. Legal Services Corp.,* 164 F.3d 757,760 (2nd Cir.1999) upholds the ban on providing legal representation to most non-citizens by organizations such as Texas Rural Legal Aid, and 18 U.S.C. §506(b) doubles the potential fine, and triples the sentence, for counterfeiting certain documents "with the intent or effect of facilitating an alien's application for, or receipt of, a Federal benefit to which the alien is not entitled..."

15

### 2.  THE PRIVACY ACT ALSO BARS SUCH DISCLOSURE.

The Privacy Act also bars dissemination of personal information about LPRs.  As defined by 5 U.S.C. §552a(a)(4), a "record" is "any item, collection, or grouping of information about an individual that is maintained by an agency."  Certainly, the fact that an LPR is under proceedings, or on bond, is information "maintained" by INS about that person.  5 U.S.C. §552a(b), in turn, provides that:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains...

Although there are a dozen exceptions to this rule, §552a(b)(1) - (12), none applies herein. Nor does the Freedom of Information Act, which mandates certain disclosures, apply if the information was never requested. *Crumpton v. Stone,* 59 F.3d 1400 (D.C.Cir. 1995).

Therefore, INS' practice of placing personal notations on LPRs' temporary I-551s gratuitously, and unlawfully, broadcasts that information to any and all who have occasion to see the document.

INS has never claimed that any exemption to 8 U.S.C. §1304(b), and/ or 5 U.S.C. §552a(b), permits such disclosure.  Rather, they assert that because it is not prohibited by 8 C.F.R. §264.5, they are entitled to place such notations on Plaintiffs' temporary I-551s. (INSsj2:42).  This is a classic *non sequiter*.  Moreover, OI 264.2 submitted by INS, (R3:717-21), shows that INS recognizes what information is, and what is not, appropriately placed thereon. [25]

These statutes belie any claim that INS is authorized to broadcast

---

[25]  Some information found on an I-551 (e.g., date of entry), may not be available, and some of the blanks on Form I-94 (e.g., address), are not found on Form I-551.  Thus, OI 264.2 states that:

> Only the information regarding the alien's name, date of birth, country of citizenship, and alien registration number need be included.

16

information about LPRs other than that provided on their permanent "green cards" to employers and others to whom they must show proof of their LPR status. Once INS has responded to Plaintiffs' pending Requests for Admission, it should become obvious that INS is well aware that it does not have this authority, and has even taken steps to ensure that the privacy rights of LPRs are protected.

### 3. INS IS NOT IN COMPLIANCE WITH 8 C.F.R. §264.5(g)

The Fifth Circuit implicitly found that §264.5(g) covers LPRs in removal, as well as exclusion and deportation proceedings. Said regulation provides, in pertinent part, as follows:

> A person in exclusion proceedings shall be entitled to evidence of permanent resident status until ordered excluded. Such evidence shall be in the form of a temporary Form I-551 issued for a period sufficient to accomplish the exclusion proceedings. A person in deportation proceedings shall be entitled to evidence of permanent resident status until ordered deported or excluded. ...

The second Declaration of Larry Doyle, submitted with INS' summary judgment motion (Appendix, at Tab 6), asserts as follows:

> There does not exist in the lexicon of documents used for immigration purposes by the INS a formal form or document entitled "temporary Form I-551". Rather, Form I-94 is designated for use as the "temporary Form I-551" and serves as evidence of lawful permanent resident status.

This is true. But "the devil is in the details." OI 264.2 specifies the manner in which an I-94 used for this purpose is prepared. [26] Not coincidentally, its requirements are consistent with both 8 U.S.C. §1304(b) and 5 U.S.C. §552a(b), *i.e.*, it does not require INS to divulge information not contained on the permanent I-551. Not only does INS routinely ignore OI 264.2, in that they often use the "departure," rather than the "arrival" portion of the I-94, but the manner in which such I-94s are prepared varies dramatically.

---

[26] Said OI specifies that the *admissions* half of the I-94 be employed, and dictates the precise wording to be used. (R3:720-21).

17

For example, the I-94 given to Elisa Barron, A44 082 136, neither mentions that she is an LPR, nor states that she is authorized to be employed. (Plaintiffs' Exhibit DDD, incorporated by reference, at p.1). The I-94s given to Ruben Prado, A34 586 508, and Yesenia Rios, A36 595 234, contain employment authorization, but claim to be proof (or temporary proof) "of legal status," which is not necessarily the same as LPR status. (*Id.* at pp.2-3). While the "proof of legal status on Mr. Prado's I-94 is barely legible, the document also notes, twice, in bold type, that he is in "IMMIGRATION PROCEEDINGS" and "ON BOND." (*Id.* at p.2).

Thus INS is NOT "in compliance with 8 C.F.R. §264.5." (INSsj2:42). An I-94 which does not mention LPR status is not a "temporary I-551." These problems are exacerbated by the extraneous notations, to the effect that the person was paroled "for prosecution," is on bond, or in proceedings. That the I-94s invariably include other information, such as the LPR's address, only adds insult to injury.

**VI. PROPOSED FINDINGS OF FACT AS TO WHICH NO GENUINE ISSUE EXISTS**

1. There are no "published, generally available ... statutes and case law [addressing parole under 8 U.S.C. §1182(d)(5)(A)]" to which members of the Plaintiff class who have been returned to Mexico to await hearings under 8 U.S.C. §1225(b)(2)(C) "can turn ... to learn about the remedial procedures available," nor can they "reasonably be expected to educate [themselves]" about parole. To the contrary, the procedures for requesting parole under 8 U.S.C. §1182(d)(5)(A) are "arcane and are not set forth in documents accessible" to members of the Plaintiff class stranded in Mexico;

2. The Notice to Appear ("NTA"), served on Plaintiffs gives no hint of a provisional remedy called "parole" which can be sought prior to their hearing with the Immigration Judge. Defendants admit that they do not advise class members that parole is possible, and the English-language advisals in the NTA, that when they appear at the hearing, the Immigration Judge will advise them "of any relief from removal for which [they] may appear eligible." and give them "a

18

reasonable opportunity" to apply for such relief, plus the fact
that the class member already requested admission and was not only
refused, but sent back to Mexico, can reasonably be expected to
create the impression that there is no lawful means of physically
entering the country before the hearing with the Immigration Judge;

3.   Since parole under 8 U.S.C. §1182(d)(5)(A) is not a form of
relief from removal within the jurisdiction of the Immigration
Judge under 8 C.F.R. §240.1(a)(1)(ii), Immigration Judges do not
routinely advise class members of its existence, or the means of
requesting it, even when a class member such as Plaintiff Ascencio
poses a direct question as to how to go about getting a "permit" to
come into the United States while his or her case is pending.

4.   Requests for parole under §1182(d)(5) must be submitted to the
INS District Director in writing and are decided without a hearing,
and in general, without even a face-to-face interview.   As with
Plaintiff Grimaldo in B-01-206, the reasons for denying parole are
sometimes arbitrary, (e.g., that parole is not in INS' interest),
although the Immigration Judge who conducted his parole hearing
concluded that he is not a danger to society, and that a $2,500
bond is adequate to ensure his appearance at subsequent hearings.

5.   Since Defendants give members of the Plaintiff class various
documents before returning them to Mexico under 8 U.S.C. §1225(b)
(2)(C) to await their hearings, and since removal hearings for
class members are regularly held at a port of entry in Brownsville,
the inconvenience to Defendants of giving Plaintiffs written notice
of the possibility of parole, and information as to how to request
it, and of conducting parole hearings before denying any parole
requests, would be extremely minor, particularly in comparison to
the value to the Plaintiff class of such additional procedures.

6.  Placing notations about Plaintiffs' legal problems on documents
used as temporary proof of LPR status broadcasts that information,
without Plaintiffs' permission, to all who have occasion to require
proof of their LPR status, including potential employers, and
workers in various social service agencies.

19

## VII.   PROPOSED CONCLUSIONS OF LAW

And it is therefore urged that this Court conclude as follows:

1.   The manner in which Defendants currently exercise the parole authority of 8 U.S.C. §1182(d)(5)(A) is unconstitutional as applied to the Plaintiffs herein. As lawful permanent residents, Plaintiffs enjoy full Due Process rights, even when seeking admission to the U.S. as returning residents, and are therefore entitled to notice of the existence of parole and means of requesting it, and to a Due Process hearing, however summary, before such requests are denied;

2. The practice of some INS agents of putting personal information about Plaintiffs' legal problems on the I-94s provided as temporary proof of their LPR status, without Plaintiffs' consent, violates their rights under 5 U.S.C. §552a(b) and 8 U.S.C. §1304(b), and

3.   A "temporary Form I-551," as that phrase is used in 8 C.F.R. §264.5(g), refers to an I-94 prepared in conformity with established, and published, procedures, to wit, in the manner specified by Operations Instruction 264.2, and the phrase "evidence of permanent resident status" as used therein means either a permanent, or a temporary, Form I-551.


Finally, Plaintiffs urge that this Court re-issue its prior Order prohibiting the confiscation from Plaintiffs of documents lawfully possessed by them, such as drivers' licenses and Social Security cards, absent a good faith belief that said documents constitute evidence of unlawful conduct.   INS has not claimed authority to confiscate such documents under other circumstances, and the Order limiting their confiscation was neither challenged on the merits before the Fifth Circuit, nor disapproved by that Court *sua sponte*.


Respectfully Submitted,

Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney

20

17891 Landrum Park Road                301 E. Madison
San Benito, TX 78586                   Harlingen, TX 78550
(956) 421-3226                         (956) 425-3701
(956) 421-3423 (fax)                   (956) 428-3731
Fed. ID.  1178
Texas Bar 03052800

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and two proposed
Orders, were mailed, first-class postage prepaid, to Anthony Payne,
Attorney, OIL, at Box 878, Ben Franklin Station, Washington, D.C.
20044, on December 2, 2002.



UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,            )
                                 )
v.                               )        C.A. No.  B-94-215
                                 )
TROMINSKI, et al.                )
_____ )

### ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Before the Court are the competing motions for summary judgment
filed by Plaintiffs and Defendants.  On consideration thereof, and
of the record as a whole, and good cause appearing therefor, the
Court is of the opinion that Defendants' motion should be denied,
and Plaintiffs' motion should be granted.

**WHEREFORE,** the Court makes the following Findings of Fact and
Conclusions of Law, and enters the following Order:

### I.  FINDINGS OF FACT AS TO WHICH NO GENUINE ISSUES EXISTS

The Court finds that there exist no genuine issues with respect to
the following material facts:

1. There are no published, generally available statutes and case
law [addressing parole under 8 U.S.C. §1182(d)(5)(A)] to which
members of the Plaintiff class who have been returned to Mexico to
await hearings under 8 U.S.C. §1225(b)(2)(C) can turn to learn
about the remedial procedures available, nor can they reasonably be
expected to educate themselves about parole.  To the contrary, the
procedures for requesting parole under 8 U.S.C. §1182(d)(5)(A) are
arcane and are not set forth in documents accessible to members of
the Plaintiff class returned to Mexico to await their hearings;

2. The Notice to Appear ("NTA"), served on Plaintiffs gives no hint
of a provisional remedy called "parole" which can be sought prior
to their hearing with the Immigration Judge.  Defendants admit that
they do not advise class members that parole is possible, and the

English-language advisals in the NTA, that when they appear at the hearing, the Immigration Judge will advise them "of any relief from removal for which [they] may appear eligible." and give them "a reasonable opportunity" to apply for such relief, plus the fact that the class member already requested admission and was not only refused, but sent back to Mexico, can reasonably be expected to create the impression that there is no lawful means of physically entering the country before the hearing with the Immigration Judge;

3.  Since parole under 8 U.S.C. §1182(d)(5)(A) is not a form of relief from removal within the jurisdiction of the Immigration Judge under 8 C.F.R. §240.1(a)(1)(ii), Immigration Judges do not routinely advise class members of its existence, or the means of requesting it, even when a class member such as Plaintiff Ascencio poses a direct question as to how to go about getting a "permit" to come into the United States while his or her case is pending.

4.  Requests for parole under §1182(d)(5) must be submitted to the INS District Director in writing and are decided without a hearing, and in general, without even a face-to-face interview.  As with Plaintiff Grimaldo in B-01-206, the reasons for denying parole are sometimes arbitrary, (e.g., that parole is not in INS' interest), although the Immigration Judge who conducted his parole hearing concluded that he is not a danger to society, and that a $2,500 bond was adequate to ensure his appearance at subsequent hearings.

5.  Since Defendants give members of the Plaintiff class various documents before returning them to Mexico to await their hearings under 8 U.S.C. §1225(b)(2)(C), and since removal hearings for class members are regularly held at a port of entry in Brownsville, the inconvenience to Defendants of giving Plaintiffs written notice of the possibility of parole, and information as to how to request it, and of conducting a parole hearing before denying an LPR's parole request, would be extremely minor, particularly in comparison to the value to the Plaintiff class of such additional procedures.

6.  Placing notations about Plaintiffs' legal problems on documents given to them as temporary proof of their LPR status broadcasts

that information, without Plaintiffs' permission, to all who have occasion to require proof of their LPR status, including potential employers, and workers in various social service agencies.

## II.    CONCLUSIONS OF LAW

The Court further makes the following Conclusions of Law:

1.    The manner in which Defendants currently exercise the parole authority of 8 U.S.C. §1182(d)(5)(A) is unconstitutional as applied to the Plaintiffs herein. As lawful permanent residents, Plaintiffs enjoy full Due Process rights, even when seeking admission to the U.S. as returning residents. On balance, this Court therefore concludes that they are entitled to written notice of the existence of parole and of the means for requesting it, and to a Due Process hearing, however summary, before such requests are finally denied.

2. The practice of some INS agents of putting personal information about Plaintiffs' legal problems on the I-94s provided as temporary proof of their LPR status, without Plaintiffs' consent, violates their rights under 5 U.S.C. §552a(b) and 8 U.S.C. §1304(b), and

3.    A "temporary Form I-551," as that phrase is used in 8 C.F.R. §264.5(g), refers to an I-94 prepared in conformity with established, and published, procedures, to wit, in the manner specified by Operations Instruction 264.2, and the phrase "evidence of permanent resident status" as used therein means either a permanent, or a temporary, Form I-551.

## III.    ORDER

In light of the foregoing, the Court enters the following Order:

1.    Defendants shall provide written information, in Spanish and English, explaining the nature of, and procedures for requesting parole under 8 U.S.C. §1182(d)(5)(A), to all lawful permanent residents who are placed in proceedings and returned to Mexico to await their hearings under the authority of 8 U.S.C. §1225(b)(2)(C) within the jurisdiction of the Harlingen, Texas, office of the

Immigration and Naturalization Service;

2. Before a request for parole under 8 U.S.C. §1182(d)(5)(A) made by a member of the Plaintiff class is denied, Defendants shall provide that person with a Due Process hearing, however summary, at which the LPR's entitlement to parole shall be determined on the basis of whether he or she constitutes a danger to the community, and whether any condition, or combination of conditions, can reasonably be expected to ensure the person's appearance at future immigration hearings;

3. When Defendants provide evidence of lawful permanent residence to class members, in accordance with 8 C.F.R. §264.5(g), that evidence shall either consist of an I-551, or a temporary I-551, (to wit, one prepared in accordance with Operations Instruction 264.2). Temporary I-551s shall be issued for at least six months, and shall contain a notation that they are renewable. and shall not contain personal data which would not be found on a laminated I-551, such as the fact that the person is under proceedings, or on bond, or has been paroled into the U.S. pending determination of his or her right to be re-admitted. For Plaintiffs' own protection, however, the document may contain a notation that it is "not valid for re-entry," and

4. Defendants shall not confiscate any lawfully issued documents from lawful permanent residents placed in removal proceedings other than their laminated I-551s, absent a good faith belief that such documents constitute *bona fide* evidence of unlawful conduct.

DONE this _____ day of _____, 2003
at Brownsville, Texas.

_____
HILDA G. TAGLE, JUDGE PRESIDING

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,          )
                                )
v.                              )          C.A. No.  B-94-215
                                )
TROMINSKI, et al.               )
_____ )

ORDER GRANTING PLAINTIFFS' MOTION TO REQUIRE DEFENDANTS
TO RESPOND TO PLAINTIFFS' FIRST AMENDED POST-REMAND
REQUESTS FOR ADMISSION

Before the Court is Plaintiffs' motion, urging the Court to order
Defendants to respond to Plaintiffs' First Amended Post-Remand
Requests for Admission, and to permit Plaintiffs to thereafter
supplement the instant motion.  On consideration thereof, and of
the record as a whole, and good cause appearing therefor, the Court
is of the opinion that Plaintiffs' motion should be granted.

**WHEREFORE,** the Court enters the following Order:

**IT IS HEREBY ORDERED** that, within 30 days from the entry of the
instant Order, Defendants' shall prepare and file on Plaintiffs,
truthful and non-evasive answers to Plaintiffs' First Amended Post-
Remand Requests for Admission, and that should Defendants' fail to
do so, the truth of the matters set forth therein shall be taken as
established for purposes of the case at bar.

**IT IS FURTHER ORDERED** that, within 30 days of the receipt thereof,
or the expiration of Defendants' time to respond, Plaintiffs shall
be permitted to supplement their Motion for Summary Judgment with
the responses provided by Defendants, or in the absence thereof,
with the matters thereby deemed admitted.

DONE this _____ day of _____, 2003
at Brownsville, Texas.


_____
HILDA G. TAGLE, JUDGE PRESIDING

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,           )
                                 )
v.                               )      C.A. No.  B-94-215
                                 )
TROMINSKI, et al.                )
_____)

EXHIBIT "BBB"
FILED IN SUPPORT OF

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Come Plaintiffs, and file herewith, in support of their Motion For
Summary Judgment, an affidavit regarding the unavailability in
Mexico of materials relating to "parole" of LPRs returned to Mexico
to await their hearings, under 8 U.S.C. §1225(b)(2)(C).


Respectfully Submitted,



Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731
Fed. ID.  1178
Texas Bar 03052800

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were mailed, first-class postage prepaid, to Anthony
Payne, Attorney, OIL, at P.O. Box 878, Ben Franklin Station,
Washington, D.C., 20044, on December 2, 2002.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
AT BROWNSVILLE, TEXAS


JUANA ASCENCIO-GUZMAN, et al )
                             )
v.                           )            CA B-94-215
                             )
E.M. TROMINSKI, et al.       )
_____)


DECLARATION OF FERNANDO GUTIERREZ-BRINGAS

I, Fernando Gutierrez-Bringas, hereby declare under penalty of
perjury of the laws of the United States as follows:

I am a native and citizen of Mexico, born November 4, 1946, in
Minatitlan, Veracruz, Mexico.  I am an industrial chemical
engineer, and own two businesses in Mexico.  I currently reside in
Mission, Texas, and am applying to adjust my status to that of a
lawful permanent resident of the United States, through my
naturalized U.S. citizen son, Fernando Gutierrez-Espinoza, born
August 26, 1972.  As part of that process, my attorney, Lisa
Brodyaga, arranged a document for me called an "advance parole,"
which allows me to come and go from Mexico while my application for
lawful permanent resident status is pending.

Ms. Brodyaga explained to me the problem of persons such as Ms.
Ascencio, who was detained at the border trying to cross a nephew
by using the birth certificate of her son, and who was returned to
Mexico to await "exclusion" proceedings when this fact was
discovered.  She asked me to check around in Mexico, to see if
there was anyone who could have given information to Ms. Ascencio
about the possibility of "parole" into the United States while her
immigration case was pending.  I did as she requested, and, apart
from an Official of the U.S. Immigration at the international
bridge, was not able to find anyone who even knew that the
possibility of "parole" existed under such circumstances.  Nor
could I find any reference to it in any library, even though she
had told me that the term for the remedy was "parole."

First, I went to ask Lic. Ernesto Solis-Herrera, Chief of the
Office of External Relations, with offices in Reynosa, Tamaulipas,
right at the entrance to the international bridge.  He told me that

there was no document with the term "parole" or any literature to orient people about parole.   He directed me to the Secretary of Government, National Institute of Migration, where I spoke with Technical Supervisor Eduardo A. Ruiz Galan, whose business card is attached, with telephone numbers on the reverse.   This is the office where people can obtain the document known as "Forma 13" which is used to obtain a Mexican passport.   I thought that if they did not know about "parole" there, then no-one would know.   Mr. Galan told me that there was no such thing, and that he had never heard of such a remedy.

Not satisfied, I went to see my attorney, Victor Hugo Soveron, tel. 22-8074, with offices at Aguas Calientes Street, No. 804, in Reynosa.  He is the person who deals with the legal necessities of my businesses.  After I explained my concerns, and the problem that had been explained to me, he told me that there was no literature relating to any legal or judicial process called "parole."

In addition, I went to the three libraries in Reynosa; Agapito Zepeda, Petrolios Mexicanos, (Empresa Estatal), and that of the Preparatory School Escandon.  In none of them was there any information about "parole" into the United States.   I also went to the Human Rights Commission, based in Reynosa.   The Director, Arturo Solis, who is well-known internationally for his human rights work, told me that there was no such literature or information, and that no-one had ever asked him about this before.

Finally, I went to the International Bridge, and asked the official of the U.S. Immigration about my own document, (a copy of which is also attached), since I had never noticed that it said "parole." I asked him what "parole" meant, and he told me that it was a permit to cross the border as often as I wanted.   I also asked about a situation where someone had a legal problem in the United States, and whether that person could get "parole" to cross back and forth to attend his hearings.  He said that yes, this was the function of "parole."

However, it is clear to me that a person such as Ms. Ascencio would be completely without resources, in Mexico, to defend him or herself under these circumstances. Even knowing the name of the remedy, the only person I located who knew of its existence was an official of the U.S. Immigration Service.   Therefore, I am asking this Court to assist in resolving the problem of the unavailability

2

of information about "parole," so that there would be such literature available at the Department of External Relations, to assist Mexican citizens with this type of problem. I would also request that such information be available at the U.S. Consulates, so that permanent residents of the United States would have some means of learning that "PAROLE" exists, even if they do not know the name of the remedy.

The foregoing was dictated by me to Attorney Lisa Brodyaga, who translated it into English, and read it back to me in Spanish. It is true and correct to the best of my knowledge and belief, and in witness thereof, I have signed the same in her presence this 15th day of November 2002.

Further Declarant sayeth not.

_____
Fernando Gutierrez Bringas

## DECLARATION OF INTERPRETER

I, Lisa Brodyaga, declare that I am competent in the English and Spanish languages, that I prepared the foregoing on the basis of the contemporaneous statements of Mr. Gutierrez, that I translated it back to him in Spanish, that he affirmed the truth of its contents, and in witness thereof, did affix his signature in my presence this 15th day of November, 2002.

_____
Lisa S. Brodyaga

**SECRETARIA DE GOBERNACION**
Instituto Nacional de Migración
Policía Federal de Migración

*Eduardo A. Ruíz Galán*
SUPERVISOR TECNICO

CD REYNOSA, TAM.
MEXICO

3

GARITA JUAREZ
PUENTE INTERNACIONAL
TEL.:(89) 22-13-12
FAX: (89) 22-76-07

U.S. Department of Justice
Immigration and Naturalization Service

AUTHORIZATION FOR PAROLE OF AN ALIEN
INTO THE UNITED STATES

| Name of Alien | (First) | (Middle) | (Last) | Date 06/22/2002 |
|---|---|---|---|---|
| | **Fernando** | **GUTIERREZ BRINGAS** | | File Number **A 78 945 682** |

| Date of Birth (Month) (Day) (Year) **11/04/46** | Place of Birth (City or town) **MINATITLAN** | (State or province) | (Country) **MEXICO** |

| U.S. Address (Apt. number and/ or in care of) **2606 SOLERA DR.    MISSION, TX** | (Number and street) **78572** | (City or town) | (State) | (ZIP Code) |

Presentation of the attached duplicate of this document will authorize a transportation line to accept the named bearer on board for travel to the United States without liability under section 273 of the Immigration and Nationality Act for bringing an alien who does not have a visa.

Presentation of the original of this document prior to _____ *June 21, 2003* _____ will authorize an immigration officer at a port of entry in the United States to permit the named bearer, whose photograph appears hereon, to enter the United States:

[X]   as an alien paroled pursuant to section 212(d)(5) of the Immigration and Nationality Act.

[ ]

Remarks:      MULTIPLE ENTRIES - VALID UNTIL June 21, 2003.

AUTHORIZATION: The holder of this authorization is an applicant for adjustment of status under the Immigration and Nationality Act.  The holder departed the United States temporarily and intends to return to the United States to resume processing of the adjustment of status application. Contingent upon his or her prima facie eligibility, the holder of this document shall be paroled into the United States pursuant to the authority of E.M.Trominski, Harlingen District Director. VALID FOR MULTIPLE APPLICATIONS FOR PAROLE INTO THE UNITED STATES. SEE ATTACHED.

E. M. TROMINSKI, DISTRICT DIRECTOR                HARLINGEN, TX
(Signature of Immigration Officer)                (Authorizing Office )



ARRIVAL STAMP

PAROLED   June 31, 2008

07/05/02   2081

Form I-512 (Rev. 10-1-82) Y                          TO ALIEN

**ATTACHMENT TO FORM I-512, AUTHORIZATION FOR PAROLE OF AN ALIEN INTO THE UNITED STATES**

**NOTICE TO APPLICANT: PRESENTATION OF THIS AUTHORIZATION WILL PERMIT YOU TO RESUME YOUR APPLICATION FOR ADJUSTMENT OF STATUS UPON YOUR RETURN TO THE UNITED STATES. IF YOUR ADJUSTMENT APPLICATION IS DENIED, YOU WILL BE SUBJECT TO REMOVAL PROCEEDINGS UNDER SECTION 235(b)(1) OR SECTION 240 OF THE ACT. IF AFTER APRIL 1, 1997, YOU WERE UNLAWFULLY PRESENT IN THE UNITED STATES FOR MORE THAN 180 DAYS BEFORE APPLYING FOR ADJUSTMENT OF STATUS, YOU MAY BE FOUND INADMISSIBLE UNDER SECTION 212 (a)(9)(B)(I) OF THE ACT WHEN YOU RETURN TO THE UNITED STATES TO RESUME THE PROCESSING OF YOUR APPLICATION. IF YOU ARE FOUND INADMISSIBLE, YOU WILL NEED TO QUALIFY FOR A WAIVER OF INADMISSIBILITY IN ORDER FOR YOUR ADJUSTMENT OF STATUS APPLICATION TO BE APPROVED.**

CEDULA Nº  236674

REGISTRO DEL TITULO Nº  263 DEL LIBRO
X DE INGENIEROS QUIMICOS.





**INSTITUTO FEDERAL ELECTORAL**
REGISTRO FEDERAL DE ELECTORES
**CREDENCIAL PARA VOTAR**

NOMBRE
GUTIERREZ
BRINGAS
FERNANDO

EDAD 45
SEXO H

DOMICILIO
C LAGO DE CUITZEO 205
COL VALLE ALTO 88710
REYNOSA   ,TAMPS.

FOLIO  047822537    AÑO DE REGISTRO  1991 01

CLAVE DE ELECTOR   GTBRFR46110430H200

         28

    032        0001   SECCION 0995



FIRMA DEL INTERESADO

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,           )
                                 )
v.                               )        C.A. No.  B-94-215
                                 )
TROMINSKI, et al.                )
_____ )

EXHIBIT "CCC"
FILED IN SUPPORT OF

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Come Plaintiffs, and file herewith, in support of their Motion For
Summary Judgment, a copy of a "Notice To Appear," ("NTA"), given to
a lawful permanent resident who was detained at a port of entry and
placed in removal proceedings as an "arriving alien."

Respectfully Submitted,

Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731
Fed. ID.  1178
Texas Bar 03052800

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were mailed, first-class postage prepaid, to Anthony
Payne, Attorney, OIL, at P.O. Box 878, Ben Franklin Station,
Washington, D.C., 20044, on December 2, 2002.

U.S. Department of Justice
Immigration and Naturalization Service

**Notice to Appear**

## In removal proceedings under section 240 of the Immigration and Nationality Act

File No:  _A44 082 136_

In the Matter of:

Respondent:  _BARRON-IRACHETA, Elisa_ _____    currently residing at:
**(956) 544 0861**

_C/o Cameron County Jail; 954 East Harrison Street; Brownsville TX 78520_ _____

(Number, street, city, state and ZIP code)    (Area code and phone number)

☒ 1. You are an arriving alien.

☐ 2. You are an alien present in the United States who has not been admitted or paroled.

☐ 3. You have been admitted to the United States, but are deportable for the reasons stated below.

The Service alleges that you:

1. You are a native of MEXICO and a citizen of MEXICO.
2. You are not a Citizen or National of the United States.
3. You arrived from Mexico and applied for admission to the United States as a returning resident alien on April 03, 2002 at the Los Indios, Texas Port of Entry.
4. You appear ineligible for admission to the United States because the consular or immigration officer has reason to believe that you are or have been an illicit trafficker of a controlled substance, or were or have

### SEE CONTINUATION FORM I-831 ATTACHED

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 212(a)(2)(C) of the Immigration and Nationality Act (Act), as amended, in that a consular or immigration officer knows or has reason to believe you are an alien who is or has been an illicit trafficker in any controlled substance or who is or has been a knowing assister, abettor, conspirator, or

### SEE CONTINUATION FORM I-831 ATTACHED

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

☐ Section 235(b)(1) order was vacated pursuant to: ☐ 8 CFR 208.30(f)(2)  ☐ 8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at: _E.O.T.R._
_201 East Jackson Street; Harlingen, Texas   78550_
(Complete Address of Immigration Court, Including Room Number, if any)
on _To Be Set_      at _To Be Set_    to show why you should not be removed from the United States based on the
(Date)       (Time)
charge(s) set forth above.

_IMMIGRATION INSP (SOII)_
(Signature and Title of Issuing Officer)

Date: _04/03/2002_                    _LOS INDIOS, TX_
(City and state)

See reverse for important information

Form I-862 (Rev 4-1-97)

**U.S. Department of Justice**
Immigration and Naturalization Service

Continuation Page for Form _____ I-862 _____

| Alien's Name | File Number | Date |
|---|---|---|
| BARRON-IRACHETA, Elisa | A44 082 136 | 04/03/2002 |

ALLEGATIONS CONTINUED:

been a knowing assister, abettor, conspirator, or colluder with others in
the illicit trafficking of a controlled substance, to wit: your were
found smuggling approximately one hundred two pounds of Marijuana into
the United States during you arrival from Mexico and application for
admission to the United States at the Los Indios Port of Entry on April
03, 2002.

PROVISIONS CONTINUED:

colluder with others in the illicit trafficking in any such controlled
substance.

| Signature | Title |
|---|---|
| JOHN JOEL HARTNETT | IMMIGRATION INSP (SOII) |

_____2_____ of _____2_____ Pages

Form I-831 Continuation Page (Rev.6/12/92)

## Notice to Respondent

**Warning: Any statement you make may be used against you in removal proceedings.**

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or deportable on the charges contained in the Notice to Appear. You will have the opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by an immigration judge.

You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make such an application to the immigration judge.

**Failure to appear:** You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS

## Request for Prompt Hearing

To expedite a determination in my case, I request an immediate hearing. I waive my right to have a 10-day period prior to appearing before an immigration judge.

_____
(Signature of Respondent)

Before: _____

Date: _____

_____
(Signature and Title of INS Officer)

---

### Certificate of Service

This Notice to Appear was served on the respondent by me on ___April 03, 2002___ , in the following manner and in
(Date)
compliance with section 239(a)(1)(F) of the Act:

☒ in person        ☐ by certified mail, return receipt requested        ☐ by regular mail

☒ Attached is a list of organizations and attorneys which provide free legal services.

☒ The alien was provided oral notice in the ___English and Spanish___ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____        _____ S.O.I.I.
(Signature of Respondent if Personally Served)        (Signature and Title of Officer)

U.S. Department of Justice
Immigration and Naturalization Service

**Notice to Appear**

**In removal proceedings under section 240 of the Immigration and Nationality Act**

File No:    A34 586 508

In the Matter of:

Respondent:    PRADO RIVERA, RUBEN DARIO    currently residing at:
P.I.S.P.C. RT. 3 BOX 341, LOS FRESNOS, TEXAS 78566    **(956) 547-1759**
(Number, street, city, state and ZIP code)    (Area code and phone number)

☒ 1. You are an arriving alien.
☐ 2. You are an alien present in the United States who has not been admitted or paroled.
☐ 3. You have been admitted to the United States, but are deportable for the reasons stated below.

The Service alleges that you:
1. **You are not a citizen or national of the United States;**
2. **You are a native of Mexico and a citizen of Mexico;**
3. **On April 29, 2002 you applied for admission into the United States Presenting you r Resident Alien Card.**
4. **You were, on February 11, 2000, convicted in the 103rd District Court in Brownsville, Texas for the offense of Possession of a Controlled Substance in violation of the law.**

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following
provision (s) of law:

**Section 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act, as amended, in that you are an alien who has been convicted of, or who admits having committed, or admits committing acts which constitute the essential elements of, a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, The United States, or a foreign country relating to a controlled substance (as defined in Section 102 of the Controlled Substances Act, 21 U.S.C. 802)**
☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

☐ Section 235(b)(1) order was vacated pursuant to:    ☐ 8 CFR 208.30(f)(2)   ☐ 8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:
**201 Jackson Street, Harlingen, Texas 78550**
(Complete Address of Immigration Court Including Room Number if any)
on ___**TBS**___ at ___**TBS**___ to show why you should not be removed from the United States based on the
(Date)    (Time)
charge(s) set forth above.

Aaron L. Cabrera
Acting    **Asst. Dist. Dir. for Detention And Deportation**
(Signature and Title of Issuing Officer)

Date: ___May 9, 2002___    Harlingen, Texas
(City and State)

**See reverse for important information**

Form I-862 (Rev. 4-1-97)

## Notice to Respondent

**Warning: Any statement you make may be used against you in removal proceedings.**

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so chose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or deportable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have the right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide and address at which you may be reached during proceedings then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

## Request for Prompt Hearing

To expedite a determination in my case, I request an immediate hearing. I waive my right to have a 10-day period prior to appearing before an immigration judge.

_____
(Signature of Respondent)

Before

_____
Will Oestreich, Deportation Officer
(Signature and Title of INS Officer)

Date **May 9, 2002**

---

### Certificate of Service

This Notice to Appear was served on the respondent by me on _____ May 9, 2002 _____ , in the following manner and in
                                                                                      (date)
compliance with section 239(a)(1)(F) of the Act:

☒ in person          ☐ by certified mail, return receipt requested          ☐ by regular mail

☒ Attached is a list of organizations and attorneys which provide free legal services.

☒ The alien was provided oral notice in the _____ Spanish _____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____
TIBEN DARIO TORRO RIVERA
(Signature of Respondent if Personally Served)

_____
Will Oestreich , Deportation Officer
(Signature and Title of Officer)

Form I-862(Rev 4-1-97)

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,            )
                                 )
v.                               )          C.A. No.  B-94-215
                                 )
TROMINSKI, et al.                )
_____  )

EXHIBIT "DDD"
FILED IN SUPPORT OF

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Come Plaintiffs, and file herewith, in support of their Motion For
Summary Judgment, copies of I-94s given to  lawful permanent
residents who were detained at a port of entry and placed in
removal proceedings as "arriving aliens."


Respectfully Submitted,



Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731
Fed. ID.  1178
Texas Bar 03052800


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and accompanying
Exhibit, were mailed, first-class postage prepaid, to Anthony
Payne, Attorney, OIL, at P.O. Box 878, Ben Franklin Station,
Washington, D.C., 20044, on December 2, 2002.

_____

PAROLED PURSUANT TO SEC. ___ OF ___
OF THE I & N ACT 20:

**09**

PURPOSE: PENDING
COMPLETION OF
Prosecution
(Port)        (Date)
PISPC   04/09/02   DALONISA

| | |
|---|---|
| 1 Family Name **BARRON-IRACHETA** | 3. Birth Date (Day/Mo/Yr) **12 03 84** |
| 2 First (Given) name **ELISA** | 5 Sex (Male or Female) **FEMALE** |
| 4 Country of Citizenship **MEXICO** | 7 Airline and Flight Number |
| 6 Passport Number **A 44 0 82 136** | 9 City Where You Boarded |
| 8 Country Where You Live **USA** | 11. Date Issued (Day/Mo/Yr) |
| 10 City Where Visa Was Issued | |
| 12 Address While in the United States (Number and Street) **1615 HWY 77** | |
| 13 City and State **SAN BENITO, TX 78586** | |

| 18. Occupation | 19. Waivers |
|---|---|
| 20. INS File **A-44-082-136** | 21. INS FCO **HLG** |
| 22. Petition Number | 23. Program Number |
| 24. ☐ Bond | 25. ☐ Prospective Student |

26. Itinerary/Comments

IN REMOVAL PROCEEDINGS
VALID FOR 6 mos.
POE: WSC, COA: F33 DOE: 04-14-93

27. TWOV Ticket Number

Admission Number

**601607582 09**

PAROLED
OF THE I & A Ac
DECEMBER 06, 2002
PURPOSE. Released on Parole
Bond pending immigration
proceedings. Parole at legal date.
PIC    6/7/02    PDM

EMPLOYMENT AUTHORIZED

**1. Family Name**
P R A D O  R I V E R A

**2 First (Given) name**
R U B E N  D A R I O

**3. Birth Date (Day/Mo/Yr)**
2 0 0 9 5 9

**4 Country of Citizenship**
M E X I C O

**5 Sex (Male or Female)**
M A L E

**6 Passport Number**
A 3 4 5 8 6 5 0 8

**7 Airline and Flight Number**

**8. Country Where You Live**
U S A

**9. City Where You Boarded**

**10. City Where Visa Was Issued**
U S A

**11. Date Issued (Day/Mo/Yr)**

**12 Address While in the United States (Number and Street)**
3 7 5  M E D I A  L U N A  APT #108

**13 City and State**
B R O W N S V I L L E  T X  7 8 5 2 0

| 18. Occupation | 19. Waivers |
|---|---|
| 20. INS File<br>A - 34 586 508 | 21. INS FCO<br>HLG |
| 22. Petition Number | 23. Program Number |
| 24. ☒ Bond | 25. ☐ Prospective Student |

**26. Itinerary/Comments**

RELEASED ON BOND PAROLE PENDING DECISION BY
EOIR IN IMMIGRATION PROCEEDINGS.

**27. TWOV Ticket Number**

FROM :JOSE LUIS GARZA          FAX NO. :956 487 1022          Nov. 12 2001 12:47PM P1



**Admission Number**

251 02

TEMPORARY PROOF OF LEGAL
STATUS PENDING COMPLETION
OF PROCEDINGS.
VALID UNTIL 08/07/01
EMPLOYMENT AUTHORIZED.

1 Family Name
R I O S   T A N G U N A

2 First (Given) Name
Y E S E N I A

3 Birth Date (Day/Mo/Yr)
0 7 1 2 7 6

4 Country of Citizenship
M E X I C O

5 Sex (Male or Female)
F E M A L E

6 Passport Number
A 3 6 5 9 5 2 3 4

7 Airline and Flight Number

8 Country Where You Live
U S A

9 City Where You Boarded

10 City Where Visa Was Issued
L O S   F R E S N O S   T X

11 Date Issued (Day/Mo/Yr)
0 2 0 7 0 1

12 Address While in the United States (Number and Street)
1 2 1 0   S A N   B E N I T O   S T R E E T

13 City and State
R I O   G R A N D E   C I T Y ,   T X 7 8 5 8 2

. FROM : JOSE LUIS GARZA          FAX NO. :956 487 1022          Nov. 12 2001 12:47PM  P3

U.S. Department of Justice                                                    **Notice to Appear**
Immigration and Naturalization Service

**In removal proceedings under section 240 of the Immigration and Nationality Act**

File No:  _A36 595 234_

In the Matter of:

**Respondent: RIOS TANGUMA, Yesenia**                        currently residing at:
                                                            **(956) 547 1769**

_Plepc  Rt 3 Box 341 (contact Duty Supervisor) Los Fresnos TX 78566_
                 (Number, street, city, state and ZIP code)                    (Area code and phone number)

☒ 1. You are an arriving alien.

☐ 2. You are an alien present in the United States who has not been admitted or paroled.

☐ 3. You have been admitted to the United States, but are deportable for the reasons stated below.

The Service alleges that you:

1. **You are not a citizen or national of the United States.**

2. **You are a native of MEXICO and a citizen of MEXICO.**

3. **On December 06, 2000 at approximately 8:25 p.m. you arrived at the Roma Port of Entry as a passenger in a 1993 Chevy pickup truck bering Texas plates DC1-432 applying for admission as a returning resident alien (A#36595234).**

4. **A search of the vehicle was conducted and three metal containers with a**

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:
**Section 212(a)(2)(C) of the Immigration and Nationality Act (Act), as amended, in that a consular or immigration officer knows or has reason to believe you are an alien who is or has been an illicit trafficker in any controlled substance or who is or has been a knowing assister, abettor, conspirator, or**

**SEE CONTINUATION FORM I-831 ATTACHED**

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

☐ Section 235(b)(1) order was vacated pursuant to:  ☐ 8 CFR 208.30(f)(2)  ☐ 8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at: _____
**201 E. JACKSON STREET     HARLINGEN, TX 78550**
                 (Complete Address of Immigration Court, Including Room Number, if any)
on _TO BE SET_  at _TO BE SET_  to show why you should not be removed from the United States based on the
      (Date)              (Time)
charge(s) set forth above.

                                                    **IMMIGRATION INSPECTOR**
                                                    (Signature and Title of Issuing Officer)

Date: _12/06/2000_                                  _ROMA, TX_
                                                       (City and state)

**See reverse for important information**

427-8582

Form I-862 (Rev 4-1-97)