174

United States District Court
Southern District of Texas
FILED

DEC 0 2 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUANA ASCENCIO-GUZMAN, et al., )
Plaintiffs/Petitioner, )
)
v. ) C.A. No. B-94-215
)
E.M. TROMINSKI, District )
Director, Immigration and )
Naturalization Service; )
JOHN D. ASHCROFT, United States )
Attorney General; and )
IMMIGRATION AND NATURALIZATION )
SERVICE, )
Defendants/Respondents )
_______________________________)

DEFENDANTS'/RESPONDENTS' BRIEFING WITH RESPECT TO THE TWO ISSUES IDENTIFIED BY THE COURT AS REMAINING FOR ADJUDICATION FOLLOWING THE FIFTH CIRCUIT'S REMAND AND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

DEFENDANTS'/RESPONDENTS' BRIEFING WITH RESPECT TO THE TWO ISSUES IDENTIFIED BY THE COURT AS REMAINING FOR ADJUDICATION FOLLOWING THE FIFTH CIRCUIT'S REMAND AND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . 2

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. PAROLE . . . . . . . . . . . . . . . . . . . . . . . . 3

A. Statutory and Regulatory Provisions Regarding the Detention and Parole of Arriving Aliens . . 5

B. The Plaintiffs' Claim Regarding Individualized Notice of Parole Is Without Merit . . . . . . . . 8

C. The Plaintiffs' Claim Arguing That Due Process Requires An "Impartial Adjudicator" To Hear Parole Requests Is Without Merit . . . . . . . . 15

D. The Mathews v. Eldridge Test . . . . . . . . . . 16

1. Plaintiffs Have No Liberty Interest In Parole 17

2. The Balance Of Due Process Factors Favors The Government . . . . . . . . . . . . . . . . . . . . 20

II. LEGAL AUTHORITIES FOR LIMITING THE INS'S ABILITY TO PLACE NOTATIONS ON THE SUBSTITUTE I-151 OR I-551 DOCUMENTS . . . . . . . . . . . . . . . . . . . . . . . . 24

A. Privacy Act- 5 U.S.C. § 552a(b) . . . . . . . . 26

B. 8 U.S.C. § 1304(b) . . . . . . . . . . . . . . . . 29

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## TABLE OF AUTHORITIES

### CASES

Abernethy v. I.R.S.,
909 F. Supp. 1562 (D. Ga. 1995) . . . . . . . . . . . . . . 29

Askew v. United States,
680 F.2d 1206 (8th Cir. 1982) . . . . . . . . . . . . . . . 28

Atkins v. Parker,
472 U.S. 115 (1985) . . . . . . . . . . . . . . . . . . 12, 13

Carlson v. Landon,
342 U.S. 524 (1952) . . . . . . . . . . . . . . . . . . . . 9

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . 5

City of West Covina v. Perkins,
525 U.S. 234 (1999) . . . . . . . . . . . . . . 10, 11, 12, 13

Connecticut Bd. of Pardons v. Dumschat,
452 U.S. 458 (1982) . . . . . . . . . . . . . . . . . . . . 18

Doyle v. Behan,
670 F.2d 535 (5th Cir. 1982) . . . . . . . . . . . . . . . 28

Dusenbery v. United States,
122 S.Ct. 694 (2002) . . . . . . . . . . . . . . . . . . . 10

Federal Crop Insurance, Corp. v. Merrill,
332 U.S. 380 (1947) . . . . . . . . . . . . . . . . . . 11, 14

Finlay v. INS,
210 F.3d 556 (5th Cir. 2000) . . . . . . . . . . . . . . . 18

Gisbert v. U.S. Atty. Gen.,
988 F.2d 1437 (5th Cir. 1993) . . . . . . . . . 16, 18, 21, 22

Gonzalez-Torres v. INS,
213 F.3d 899 (5th Cir. 2000) . . . . . . . . . . . . . . . 16

Hayles v. General Motors Corp.,
82 F. Supp. 2d 650 (S.D. Tex. 1999) . . . . . . . . . . . . 24

Knauff v. Shaughnessy,
338 U.S. 537 (1950) . . . . . . . . . . . . . . . . . . . . 14

Landon v. Plasencia,
459 U.S. 21 (1982) . . . . . . . . . . . . . . . . . . 15, passim

Loa-Herrera v. E.M. Trominski,
231 F.3d 984 (5th Cir. 2000) . . . . . . . . . . . . . 3, passim

Marcello v. Bonds,
349 U.S. 302 (1955) . . . . . . . . . . . . . . . . . . . . 22

Mathews v. Eldridge,
424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . . 10, 17

Mejia-Rodriguez v. Reno,
178 F.3d 1139 (11th Cir. 1999),
cert. denied, 121 S.Ct. 563 (2000) . . . . . . . . . . . . 18

Mullane v. Central Hanover Bank & Trust,
339 U.S. 306 (1950)] . . . . . . . . . . . . . . . . . . . 10

North American Express, Inc. V. U.S.,
585 F.2d 783 (5th Cir. 1978) . . . . . . . . . . . . . . . 14

Olim v. Wakinekona,
461 U.S. 238 (1983) . . . . . . . . . . . . . . . . . . . . 16

Shavartsman v. Apfel,
138 F.3d 1196 (7th Cir. 1998) . . . . . . . . . . . . . . 16

Sierra v. INS,
258 F.3d 1213 (10th Cir. 2001) . . . . . . . . . . . . . 19

Tefel v. Reno,
180 F.3d 1286(11th Cir. 1999),
cert. denied, 530 U.S. 1228 (2000) . . . . . . . . . . . . 18

U.S. v. Campos-Serrano,
430 F.2d 173 (7th Cir. 1970),
affirmed, 404 U.S. 293 (1971) . . . . . . . . . . . . . . 29

U.S. v. Verdugo-Uriquidez,
494 U.S. 259 (1990) . . . . . . . . . . . . . . . . . . . . 14

Vermont Yankee v. Natural Resources Defense Council,
435 U.S. 519 (1978) . . . . . . . . . . . . . . . . . . . . 9

Zadvydas v. Davis,
121 S. Ct. 2491 (2001) . . . . . . . . . . . . . . . . . . 19

Zerilli v. Smith,
656 F.2d 705 (D.C. Cir. 1981) . . . . . . . . . . . . . . . 28

**ADMINISTRATIVE DECISIONS**

Matter of Matelot,
18 I. & N. Dec. 334 (BIA 1982) . . . . . . . . . . . . . . 13

Matter of Wong Kai Yuk,
14 I. & N. Dec. 504 (BIA 1973) . . . . . . . . . . . . . . . . 13

**STATUTES**

**The Immigration and Nationality Act of 1952, as amended:**

Section 101(a)(13)(C),
8 U.S.C. § 1101(a)(13)(C) (Supp. IV 1998) . . . . . . . . 21

Section 212(d)(5)(A),
8 U.S.C. § 1182(d)(5)(A) (Supp. IV 1998) . . . . . . 7, passim

Section 235(b)(2)(C),
8 U.S.C. § 1225(b)(2)(C) . . . . . . . . . . . . . . 5, 7, 8, 20

Section 236(e),
8 U.S.C. §1226(e) (Supp.IV 1998) . . . . . . . . . . 6, 7, 22

Section 240,
8 U.S.C. § 1229a (Supp. IV 1998) . . . . . . . . . . 7, 15, 20

Section 264(d),
8 U.S.C. § 1304(d) (Supp. IV 1998) . . . . . . . . 26, 29, 30

Section 287(f)(2),
8 U.S.C. §1357(f)(2) (Supp. IV 1998) . . . . . . . . . . . 30

**OTHER STATUTES**

5 U.S.C. § 552a(b) . . . . . . . . . . . . . . . . . . . . 26, 28

44 U.S.C. § 1507 . . . . . . . . . . . . . . . . . . . . . . . 14

**REGULATIONS**

8 C.F.R. § 3.19 . . . . . . . . . . . . . . . . . . . . . . . . 8

8 C.F.R. § 103.1(g)(2)(ii)(B) (2001) . . . . . . . . . . . . . . 8

8 C.F.R. § 212.5 . . . . . . . . . . . . . . . . . . . . . . 8, 12

8 C.F.R. § 235.3(c) (2001) . . . . . . . . . . . . . . . . . . . 9

8 C.F.R. § 264.5(g) . . . . . . . . . . . . . . . . 4, 26, 27, 28

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUANA ASCENCIO-GUZMAN, et al., Plaintiffs,

v. ) C.A. No. B-94-215

E.M. TROMINSKI, District Director, Immigration and Naturalization Service; JOHN D. ASHCROFT, United States Attorney General; and IMMIGRATION AND NATURALIZATION SERVICE, Defendants. ) Defendants.

DEFENDANTS'/RESPONDENTS' BRIEFING WITH RESPECT TO THE TWO ISSUES IDENTIFIED BY THE COURT AS REMAINING FOR ADJUDICATION FOLLOWING THE FIFTH CIRCUIT'S REMAND AND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

As required by the Court, the defendants hereby submit their brief and supplemental motion for summary judgment with respect to the two legal issues identified in its September 26, 2002 order. The Court requested briefing with respect to the following issues:

> 1. Whether the manner in which the INS exercises its parole authority with respect to legal permanent residents seeking admission that were not arrested on a warrant prior to being returned to their native country is constitutional; and
>
> 2. Whether there are certain legal authorities for limiting the INS's ability to place notations on the substitute I-151 or I-551 documents which disclose personal information to anyone who may view the documents

Dkt. No. 165. As a matter of law, the defendants/respondents respectfully move the Court to grant summary judgment with

respect to the identified issues pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56.[1]

**PROCEDURAL BACKGROUND**

On October 31, 2000, the Fifth Circuit vacated the district court's January 13, 1999 final judgment that: (1) regulated the seizure of a lawful permanent resident's ("LPR") green card and issuance of a temporary document evidencing LPR status pending immigration proceedings and; (2) required the Immigration and Naturalization Service ("INS") to hold a hearing before determining whether an LPR should be paroled into the United States pending a final order of removal or deportation. Loa-Herrera v. E.M. Trominski, 231 F.3d 984 (5th Cir. 2000).

Upon vacating the district court's decision, the Fifth Circuit remanded the matter to the district court for further proceedings. The Fifth Circuit "vacate[d] the order and remand[ed] so the court can determine whether an injunction is appropriate in light of § 264.5(g)." Loa-Herrera v. E.M. Trominski, 231 F.3d at 989. In addition, the Fifth Circuit "decide[d] that remand is appropriate to ensure that the government has ample opportunity to press its factual and legal contentions before the district court." Loa-Herrera v. E.M. Trominski, 231 F.3d at 987 (emphasis added). The government had

[1] Accompanying this memorandum and motion is defendants' motion for an enlargement of the page limit governing this memorandum from twenty-four to thirty pages.

argued that the district court's order addressed issues not properly before the court.

As argued in the motion for summary judgment and reply to the plaintiffs' opposition to motion, the respondents submit that the Fifth Circuit's decision limits the issues now ripe for consideration on remand. Dkt. No. 147 and 151. It particular, the Fifth Circuit indicated that the remand was not intended to allow plaintiffs to restructure their claims and to present new argument. Accordingly, insofar as this Court's September 26, 2002 order requires briefing on other issues, the respondents respectfully preserve their argument set forth in the pending motion for summary judgment motion and corresponding reply that the sole issue remaining in this case is the one specifically identified by the Fifth Circuit, whether the document provided to returning LPRs who are charged with being inadmissible from the United States complies with 8 C.F.R. § 264.5(g) (2000) in that it is a Temporary Form I-551.

## DISCUSSION

### I. PAROLE

This Court has ordered the respondents to address the manner in which the INS exercises its parole authority with respect to legal permanent residents seeking admission that were not arrested on a warrant prior to being returned to their native country. The issue identified by the Court is at issue and

pending before the district court in Hernandez-Leija, et al, v. E.M. Trominski, et al, No. B-01-206. In light of the similarity of the issues in the two cases, the respondent incorporates the arguments made in the their filings in Hernandez-Leija. The respondents move for summary judgment on the legal issue as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

It is the respondents' understanding that the "parole" claim in this matter involves the constitutionality of the process employed by the INS when an LPR is initially denied admission to the United States, placed in immigration proceedings, and not immediately paroled in the United States. See 8 U.S.C. § 1225(b)(2)(C). The claim only involves a small segment of the plaintiff class identified by the Fifth Circuit as "LPRs faced with pending deportation or exclusion proceedings in which no final order of deportation or exclusion has yet been entered, who are not presently held in detention, and whose immigration documents have been confiscated by the Harlingen, Texas, office of the [INS]." Loa-Herrera v. E.M. Trominski, 231 F.3d at 984. At issue is whether an LPR whom an inspection officer charges as inadmissible is denied constitutional protections with respect to the opportunity to seek parole into the United States pending a final determination in their immigration proceedings.

**A. Statutory and Regulatory Provisions Regarding the Detention and Parole of Arriving Aliens**

The district court's January 13, 1999 order required "the INS to hold a hearing before determining whether an LPR should be paroled into the United States pending a final order of removal. Loa-Herrera v. E.M. Trominski, 231 F.3d at 986; Dkt. No. 104. In essence, the district court concluded that the INS's parole process violated an LPR's due process rights. In its October 21, 2000 decision, the Fifth Circuit determined that "federal courts have no jurisdiction to review parole decisions of the Attorney General." Loa-Herrera v. E.M. Trominski, 231 F.3d at 987. In rendering the decision, the Fifth Circuit relied upon Section 236(e) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(e) (Supp. IV 1998).[2]

As is evident from the many pleadings filed since the Fifth Circuit's remand order, the parties are in dispute as to whether the Fifth Circuit erred in finding that 8 U.S.C. § 1226(e) is applicable to this matter. The respondents, as set forth in the reply to the plaintiffs' opposition to motion for summary

---

[2] 8 U.S.C. § 1226(e) provides,

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

judgment, assert that the statute was first raised by the plaintiffs and is applicable to the proceedings in light of the district court's January 13, 1999 order. See Dkt. No. 151 at 9-15. The plaintiffs assert that the respondents improperly first raised 8 U.S.C. § 1226(e) in a post-judgment motion and that the Fifth Circuit's reliance was inappropriate. See Dkt. No. 152 at 13-14.

In any case, this Court has ordered briefing as to the parole authority with respect to legal permanent residents seeking admission that were not arrested on a warrant prior to being returned to Mexico. Absent consideration of whether the Fifth Circuit properly found that 8 U.S.C. § 1226(e) applies to the proceedings, INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A) (Supp. IV 1998), provides the authority for the INS to parole into the United States an LPR not arrested on a warrant. The parole authority is part of a larger scheme providing for the detention and release of suspected inadmissible LPRs.

In general, Congress has provided that

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [Section 240 of the INA, 8 U.S.C. § 1229a (Supp. IV 1998)].

8 U.S.C. § 1225(b)(2)(A) (Supp. IV 1998) (emphasis added). Congress also directed that aliens arriving on land from a

contiguous foreign territory may be returned to the foreign territory pending their proceedings. INA § 235(b)(2)(C), 8 U.S.C. § 1225(b)(2)(C) (Supp. IV 1998). The structure by which an alien may obtain release from detention upon being denied admission to the United States is set forth by the INA and the regulations promulgated thereunder. 8 U.S.C. § 1182(d)(5)(A) provides for the circumstances under which such aliens may obtain release from custody:

> The Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for <u>urgent humanitarian reasons</u> or <u>significant public benefit</u> any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien . . . .

8 U.S.C. § 1182(d)(5)(A) (emphasis added).

The Attorney General's regulations give effect to this scheme. The Attorney General has specified that the Commissioner's authority to continue custody or grant parole may be exercised by the district director or chief patrol agent. 8 C.F.R. § 212.5(a) (2001); <u>see also</u> 8 C.F.R. § 103.1(g)(2)(ii)(B) (2001). Immigration judges, however, lack such authority. <u>See</u> 8 C.F.R. § 3.19. Furthermore, the Attorney General's regulations provide that:

> Arriving aliens placed in proceedings under section 240 of the Act. Except as otherwise provided in this chapter, any arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal

> proceedings pursuant to section 240 of the Act shall be detained in accordance with section 235(b) of the Act. Parole of such aliens shall only be considered in accordance with § 212.5(b) of this chapter. . . .

8 C.F.R. § 235.3(c) (2001).

As set in plaintiffs' amended complaint in Hernandez-Leija, et al, v. E.M. Trominski, et al, No. B-01-206, and apparently the basis for the plaintiffs' argument in this matter, essentially two claims are raised with respect to parole: (1) that the plaintiffs are entitled as a matter of due process to specific notice of the availability of parole; and (2) that they are entitled as a matter of due process to a hearing before an "impartial adjudicator," i.e., an immigration judge, as opposed to the District Director, on their applications for parole.[3] Their claims lack merit as a matter of law.

**B. The Plaintiffs' Claim Regarding Individualized Notice of Parole Is Without Merit**

Parole under INA § 212(d)(5)(A) (and other custody determinations) are specified to be within the Attorney General's discretion. 8 U.S.C. § 1182(d)(5)(A) ("the Attorney General may . . . in his discretion. . ."); see Carlson v. Landon, 342 U.S. 524, 538 (1952); see also Vermont Yankee v. Natural Resources

---

[3] Because plaintiffs' Second Amended Complaint in this matter does not raise the "parole issue", the respondents will assume for purposes of this filing that the basis of their argument is identical to that which is set out in plaintiffs' amended complaint in Hernandez-Leija, et al, v. E.M. Trominski, et al, No. B-01-206.

Defense Council, 435 U.S. 519, 544 (1978). Plaintiffs claim that they have a right to specific individual notice of their privilege to apply for parole pending removal proceedings. It appears that the plaintiffs argue that individualized notice is required to satisfy due process and wish to use the procedural due process test enunciated in Mathews v. Eldridge, 424 U.S. 319 (1976).

The Supreme Court recently explained that, in evaluating whether individualized notice is required, the Mathews test is not the appropriate test. Dusenbery v. United States, 122 S.Ct. 694, 699 (2002). "[W]e have never viewed Mathews as announcing an all-embracing test for deciding due process claims." Id. at 699. As the Supreme Court explained, "The Mathews balancing test was first conceived in the context of a due process challenge to the adequacy of administrative procedures used to terminate Social Security disability benefits." Id. However, "since [Mullane v. Central Hanover Bank & Trust, 339 U.S. 306 (1950)] was decided, we have regularly turned to it when confronted with questions regarding the adequacy of the method used to give notice." Id. (citations omitted). Under the Mullane test, the relevant question before the Court is whether notice was "reasonably calculated under all the circumstances." Dusenbery, 121 S.Ct. at 700; Mullane, 339 U.S. at 309-310.

The instant case is governed by the Supreme Court's Mullane

decision and its progeny, including City of West Covina v. Perkins, 525 U.S. 234 (1999). In West Covina, the Supreme Court considered whether the City of West Covina provided adequate notice of available remedies where a litigant was informed of the search and seizure of certain property by the police, but where the litigant was not given individualized notice of the available remedies for recovering property. Id. at 236-37. The Supreme Court held that individualized notice of the available procedures for getting back seized property was not required by due process. Id. at 241. The Court observed that notice of the seizure of property was necessary

> because the property owner would have no other reasonable means of ascertaining who was responsible for his loss.

Id. at 241. However, the Court pointedly noted:

> No similar rationale justifies requiring individualized notice of state law remedies which, like those at issue here, are established by published, generally available state statutes and case law. Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The City need not take other steps to inform him of his options.

Id. at 241 (citations omitted). The Supreme Court has long held that publication of government procedures is sufficient notice of those procedures. Federal Crop Insurance, Corp. v. Merrill, 332 U.S. 380, 384 (1947).

The instant case is not different from West Covina or Dusenbury. Here, the availability of parole, like other forms of administrative relief, are all a matter of public record, located both in Title 8 of the United States Code (8 U.S.C. § 1182(d)(5)(A)) and Title 8 of the Code of Federal Regulations (8 C.F.R. § 212.5). Once put on notice, it is up to plaintiffs to pursue their remedies. See Atkins v. Parker, 472 U.S. 115 (1985) ("The entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny"). Thus, under West Covina, this form of notice regarding the particular administrative remedies available is sufficient.

Despite that inference by the Fifth Circuit that City of West Covina is applicable to these proceedings, plaintiffs assert that the decision does not apply because there are no generally available sources addressing the "practical aspects of parole". Dkt. No. 149 at 17-18; see Loa-Herrera v. Trominski, 231 F.3d at 990 n.13. In particular, they assert that for parole notice to be established by a "generally available" source, the source must provide the existence of parole, the address of the INS District Office, and the criteria considered in evaluating a parole request. Dkt. No. 149 at 17.

In order to satisfy due process concerns, however, the Supreme Court does not require that the published, generally

available notice list the factors used in deciding if the remedy is warranted. Rather, as identified in City of West Covina, the notice simply has to provide that the relief is available and from whom it can be obtained. See 525 U.S. at 239, 241-42 (citing to case law and California Penal Code Annotated § 1536 (West 1982)[4]). There is no question that notice of parole is published in the federal statute. Moreover, the Board of Immigrations Appeals' published decisions of administrative case law indicate that parole is obtained from the District Director. See Matter of Wong Kai Yuk, 14 I. & N. Dec. 504, 506 (BIA 1973) (finding that substantive contentions with respect to parole should be raised with the District Director); accord Matter of Matelot, 18 I. & N. Dec. 334, 336 (BIA 1982). City of West Covina holds that because the required information is available in published statutes and case law, the defendants "need not take other steps to inform [plaintiffs] of [their] options." 525 U.S. at 241. The "structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny."

---

[4] California Penal Code Annotated § 1536 provides:

> All property or things taken on a warrant must be retained by the officer in his custody, subject to the order of the court to which he is required to return the proceedings before him, or of any other court in which the offense in respect to which the property or things taken is triable.

Atkins v. Parker, 472 U.S. 115, 131 (1985).

Plaintiffs also argue extensively that even if sources are available in the United States, such materials are "certainly not readily available, in Mexico" such that due process is satisfied. Dkt. No. 149 at 18. In essence, the plaintiffs argue that while due process might be satisfied for individuals in the United States it "certainly" is not for those class members in Mexico. The Supreme Court and the Fifth Circuit have held that publication in the Federal Register is legally sufficient notice to all interested or affected persons. Federal Crop Ins. Corp. v. Merrill, 332 U.S. at 385; North American Express, Inc. V. U.S., 585 F.2d 783, 787 (5th Cir. 1978); see 44 U.S.C. § 1507. Similarly, published statutes and case law certainly provide as much, if not more, notice than publication in the Federal Register.

Moreover, plaintiffs' argument is essentially that those class members outside of the United States have a greater due process claim to notice than those individuals in the United States. But see U.S. v. Verdugo-Uriquidez, 494 U.S. 259, 271 (1990) Inasmuch as the parole claim applies only to aliens seeking admission and returned to Mexico, plaintiffs are entitled only to those due process rights as are provided by law or derived from their permanent resident status. Knauff v. Shaughnessy, 338 U.S. 537, 544 (1950) ("Whatever the procedure

authorized by Congress is, it is due process as far as an alien denied entry is concerned."); accord Landon v. Plasencia, 459 U.S. 21, 32 (1982). As their lawful permanent resident status gives them no right to parole or parole notice, any due process interest that the plaintiffs have must necessarily flow from procedures provided by statute. In other words, because parole is subject to the discretion of the Attorney General, the plaintiffs have no liberty interest in the relief and any interest in notice of the relief must flow from the statute. See U.S. v. Lopez-Ortiz, - - F.3d - -, 2002 WL 31546535 *4 (5th Cir. Nov. 18, 2002) (holding that an alien's eligibility for discretionary waiver of removal was not a liberty or property interest warranting due process protection, and thus, immigration judge's failure to inform alien of his eligibility to apply for discretionary waiver of removal did not render the removal proceeding fundamentally unfair).

While Congress has legislated for parole, it has not created a statutory procedure for the notice of parole. Congress, therefore, has not specified that the Attorney General must give parole notice to any alien, or, if the Attorney General elects to give notice, the nature of that notice. Congress' decision not to specify the process for parole notice results in the plaintiffs not having any established liberty interest in the apprisal. Cf. 8 U.S.C. § 1229(a).

Moreover, there is no interest in procedures for adjudicating an underlying claim apart from any interest in the underlying claim itself. Shavartsman v. Apfel, 138 F.3d 1196, 1199 (7th Cir. 1998) (holding that "defining access to procedures as a protectable property interest would eliminate the distinction between property and the procedures that are constitutionally required to protect it."). Thus, where, as here, there is no entitlement to a statutory benefit of parole, the procedures for obtaining parole do not give rise to a protected liberty interest. See Gisbert v. U.S. Atty. Gen., 988 F.2d 1437, 1443 (5th Cir. 1993) (holding that because parole is contingent upon the Attorney General's discretion, there is no liberty interest in being paroled); see also Gonzalez-Torres v. INS, 213 F.3d 899, 903 (5th Cir. 2000) (finding that no constitutionally protected interest arises from the INS's actions in granting or denying requests for discretionary relief). "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." Olim v. Wakinekona, 461 U.S. 238, 250 (1983). The plaintiffs have no due process interest in notice of parole as they have no protected interest in parole itself.

**C. The Plaintiffs' Claim Arguing That Due Process Requires An "Impartial Adjudicator" To Hear Parole Requests Is Without Merit**

Plaintiffs also claim to raise a due process challenge to the absence of an "impartial adjudicator" in their cases. They apparently desire to have parole hearings before an immigration judge rather than making their parole request to the District Director. While the Mathews v. Eldridge test is not the appropriate test of Congress's and the Attorney General's authority in this area, their claim is without merit even under that test.

**D. The Mathews v. Eldridge Test**

Under the traditional Mathews v. Eldridge test for procedural due process, where a liberty or property interest is implicated, the Court will conduct a balancing of three factors:

> the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures.

Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976). In performing this analysis, however, the Court must bear in mind that "[t]he role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy." Landon v.

Plasencia, 459 U.S. 21, 34-35 (1982) (emphasis added). Additionally, to raise an adequate due process claim, the alien must have been actually or substantially prejudiced by the alleged inadequacy of the process afforded. Mejia-Rodriguez v. Reno, 178 F.3d 1139, 1146 (11th Cir. 1999), cert. denied, 121 S.Ct. 563 (2000).

**1. Plaintiffs Have No Liberty Interest In Parole**

As shown, plaintiffs have no liberty interest in receiving parole into the United States, their lawful permanent resident status notwithstanding. An alien subject to exclusion proceedings (now an alien charged with being inadmissible) has no liberty interest in parole. Gisbert v. U.S. Attorney General, 998 F.2d at 1443; see also U.S. v. Lopez-Ortiz, - - F.3d - -, 2002 WL 31546535 *4; Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 264-65 (1982) (no liberty interest in discretionary relief); Finlay v. INS, 210 F.3d 556 (5th Cir. 2000), citing Tefel v. Reno, 180 F.3d 1286, 1299-1300 (11th Cir. 1999), cert. denied, 530 U.S. 1228 (2000) (no liberty interest in discretionary relief from removal). Indeed, this is particularly appropriate for an alien at the border, like the plaintiffs, where the only rights aliens have are those afforded by Congress. Gisbert, 988 F.2d at 1442.

Plaintiffs may argue that by virtue of their lawful permanent resident status, they obtain a liberty interest in

parole. It is true that in determining whether or not a lawful permanent resident alien will be excluded from the United States, the alien may have some liberty interests, see Landon v. Plasencia, 459 U.S. 21, 33 (1982). That, however, does not translate into a liberty interest to be at liberty in the United States pending those proceedings. See generally Jay v. Boyd, 351 U.S. 345 (1956). The Supreme Court specified that such aliens remain subject to the procedures Congress imposes and that whatever the scope of that right, courts are not empowered to displace congressional choices. Landon v. Plasencia, 459 U.S. at 33. Lawful permanent residents at the border have very limited rights, and the extent of their rights is consummate only with those procedures necessary to determine whether they will be excluded. The Fifth Circuit has rejected claims of a general liberty interest in freedom as the basis for a challenge to the denial of parole.[5]

---

[5] The Supreme Court's decision in Zadvydas v. Davis, 121 S. Ct. 2491 (2001), is not to the contrary. Zadvydas made no finding regarding a liberty interest. Rather, the Supreme Court merely commented that to hold that a deportable alien could be held indefinitely would present a serious constitutional question. Zadvydas, 121 S. Ct. at 2498. Indeed, the Zadvydas Court expressly noted that aliens at the border do not possess the same rights as aliens within the United States, acknowledging that the former type of alien is not "in" the United States and does not obtain the protection of the Fifth Amendment. Id. at 2500. The plaintiffs here are all detained at the border and are not within the scope of Zadvydas. See Sierra v. INS, 258 F.3d 1213, 1218 (10th Cir. 2001) (noting that whatever procedures Congress establishes for aliens seeking admission is due process so far as such aliens are concerned). Therefore, their due

Indeed, parole is not among the "rights" enjoyed by lawful permanent resident aliens. The plaintiffs have been deemed by Congress to be seeking admission upon their return to the United States. As such, they are subject to the procedures specified by Congress for aliens seeking admission. These procedures include inspection upon application for admission under INA § 235(a)(3), 8 U.S.C. § 1225(a)(3) (Supp. 1997). Upon their inspection, Congress provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [INA § 240, 8 U.S.C. § 1229a (Supp. 1997)]." INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A) (Supp. 1997) (emphasis added). As noted, Congress also directed that aliens arriving on land from a contiguous foreign territory may be returned to the foreign territory pending their removal. INA § 235(b)(2)(C). Although the examining officer is commanded to detain the alien or return him to the contiguous territory, Congress also specified that such arriving aliens may apply for discretionary parole under INA § 212(d)(5)(A).

Even with respect to the availability of parole, the Fifth Circuit has explained the tenuous interest an alien has in

---

process rights are at a minimum. Landon v. Plasencia, 459 U.S. at 33.

parole:

> The petitioners' interest in immigration parole is created by the immigration statutes and is subject to the exercise of discretion by the Attorney General. 8 U.S.C. § 1182(d)(5)(A). The language of the statute does not require the Attorney General to parole any alien, nor does it mandate parole on any particular finding or findings or place any substantive restriction on the authority to deny parole. Because petitioners' interests here are contingent upon the Attorney General's discretion, they have no liberty interest in being paroled.

Gisbert, 988 F.2d at 1443. It is important to note that Congress specifically chose not to exempt lawful permanent resident aliens from the need to make a showing regarding parole. Indeed, while Congress provided that returning lawful permanent resident aliens are generally not subject to parole requirements by virtue of not "seeking admission," Congress specifically exempted certain aliens, such as the plaintiffs, from that general exception, indicating an intent to make such aliens face parole requirements. INA § 101(a)(13)(C), 8 U.S.C. § 1101(a)(13)(C) (Supp. IV 1998). Accordingly, plaintiffs have no liberty interest in parole and can raise no due process claim regarding the procedures they are afforded.

**2. The Balance Of Due Process Factors Favors The Government**

The balance of the risk of erroneous deprivation is minimal, the value of additional procedures is de minimus, and government retains a strong interest in the procedures presently afforded

for parole.

The risk of an erroneous deprivation of parole is minimal. Congress has placed parole within the unfettered discretion of the Attorney General. Indeed, as the Fifth Circuit has stated: "The language of the statute does not require the Attorney General to parole any alien, nor does it mandate parole on any particular finding or findings or place any substantive restriction on the authority to deny parole." Gisbert, 988 F.2d at 1443. Because there is no case in which the Attorney General must grant parole, the risk of an erroneous deprivation is minimal.[6]

Moreover, the value of additional procedures - namely, a hearing before an immigration judge - is negligible. Plaintiffs point to nothing that can be done in a request to an immigration judge which cannot be presented to the District Director. Even without a hearing before an immigration judge, Plaintiffs are able to submit in support of their parole requests a variety of different forms of evidence. Indeed, there is no suggestion that there is anything which can be submitted to the immigration judge which cannot be submitted to the District Director. Thus, the

---

[6] It bears emphasizing that Plaintiffs appear to want to force the INS to grant parole to all lawful permanent residents. First Amended Complaint at 15. That, however, is expressly contrary to the finding of the Fifth Circuit that the statute does not mandate the grant of parole in any case. Gisbert, 988 F.2d at 1443.

probable value of additional procedures would be minimal. The Supreme Court has previously held that due process - even the due process afforded to lawful permanent resident aliens - does not require an "independent adjudicator." Marcello v. Bonds, 349 U.S. 302, 311 (1955).[7]

As for the government interest in the present procedures, the Supreme Court has already stressed the weighty interest of the government:

> The government's interest in efficient administration of the immigration laws at the border also is weighty. Further, it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.

Plasencia, 459 U.S. at 34. Here, the Attorney General has elected to delegate parole authority to the District Director. The importance of this choice cannot be underestimated, particularly in today's world climate. The parole decision is one of sovereign prerogative, and stands as a last protection against the entry of aliens whose presence Congress and the Executive deems to be not in the national interest. The Attorney General's delegation reflects a desire to reserve that sovereign authority in a manner more accountable to the needs of the Executive.

---

[7] It bears mentioning that INA § 236(a) does not require a hearing before an immigration judge. See 8 U.S.C. § 1226(a). The choice of adjudicator is left to the Attorney General.

Furthermore, the imposition of hearings before immigration judge would require the Executive to exhaust greater administrative resources. There would have to be notices of hearings before an immigration judge; there would be possible delays by aliens and their counsel; there would be rescheduling efforts; there would be translator costs; there would be the time expended by INS attorneys needed to be at the hearing; there would be the time required by the immigration judge to adjudicate more requests; there would be the preparation of decisions by the immigration judges; there would be the time spent notifying the parties of decisions; there would be the time spent on appeal to the Board; there would be transcription costs in case of an appeal to the Board; there would be time spent briefing the issue to the Board; there would be the time spent by the Board considering each appeal; there would be the time spent preparing a decision in each appeal; and there would be the time spent notifying the parties of such decisions. All that time would affect the government's ability to adjudicate other cases. Far from a minimal inconvenience, plaintiffs seek to place a huge administrative burden on the INS, while plaintiffs are presently able to fully develop their cases before the District Director. The government's interest clearly outweighs the utility of additional procedures.

In light of the nature of parole, plaintiffs are unable to

prevail on their claim that the INS violates their due process rights by denying LPRs sufficient notice of parole and a hearing before an immigration judge. See Hayles v. General Motors Corp., 82 F. Supp. 2d 650, 654 (S.D. Tex. 1999).

**II. LEGAL AUTHORITIES FOR LIMITING THE INS'S ABILITY TO PLACE NOTATIONS ON THE SUBSTITUTE I-151 OR I-551 DOCUMENTS**

As identified by the Fifth Circuit, the district court granted the plaintiffs injunctive relief on the question of whether the INS may attach notations to the replacement document given to an LPR placed in proceedings that effectively "caution[s] employers that a potential worker, although an LPR and therefore currently authorized to work in the United States, is also facing pending deportation proceedings and thus may not be available for an extended period of employment." Loa-Herrera v. Trominski, 231 F.3d 984, 989 (5th Cir. 2000). The INS acts in such a manner by indicating that the LPR is placed in proceedings. The Fifth Circuit determined that the district court, in granting injunctive relief on the issue, improperly relied on a 1990 INS internal policy clarification ("McNary Memorandum") as "an agency's internal personnel guidelines 'neither confer upon [plaintiffs] substantive rights nor provide procedures upon which [they] may rely.'" Loa-Herrera v. Trominski, 231 F.3d 984, 990 (5th Cir. 2000) (quoting Fano v. O'Neill, 806 F.2d 1262, 1264 (5th Cir. 1987)). There has been no showing of legal authority to limit the INS's ability to place

certain notations on a temporary document given to an LPR in immigration proceedings.

In its September 26, 2002 order, this Court ordered the parties to address "whether there are certain legal authorities limiting the INS's ability to place notations on substitute documents which disclose personal information to anyone who may view the documents." Dkt. No. 165. Inasmuch as the Court is requesting the parties to address the Fifth Circuit's holding that, "[a]bsent any legal authority to the contrary, however, the district court may not interfere with the Attorney General's statutory discretion to balance an LPR's interest in possessing particular forms of documentation against an employer's interest in knowing a potential employee's present and future immigration status," there has been no identified legal authority which would support an injunction and, accordingly, the claim should be summarily dismissed. Loa-Herrera v. Trominski, 231 F.3d 984, 990 (5th Cir. 2000). The plaintiffs' suggests that 5 U.S.C. § 552a(b) and 8 U.S.C. § 1304(b) bar the notations of pending immigration proceedings. Dkt. No. 149 at 17. As the plaintiffs' new arguments have yet to be fully presented to the Court, the respondents have not had the opportunity to examine the plaintiffs' understanding as to why each statute applies to the immediate proceedings. Nevertheless, while preserving their right to respond to the claims in more detail once fully

developed, the respondents hereby briefly explain why each statute does not apply.

**A. Privacy Act- 5 U.S.C. § 552a(b)**

The INS is not prohibited by the Privacy Act, 5 U.S.C. § 552a(b), from indicating on a temporary Form I-551, or equivalent, that an LPR, although authorized to work, is in immigration proceedings. Dkt. No. 149 at 17. INA § 264(d), 8 U.S.C. § 1304(d) (Supp. IV 1998), provides that the INS must provide to every alien registered in the United States an alien registration card. Moreover, an alien issued such a card must keep it in his or her possession at all times. INA § 264(e), 8 U.S.C. § 1304(e) (Supp. IV 1998). As noted by the Fifth Circuit, 8 C.F.R. § 264.5(g) governs the type of document given to members of the plaintiff class. Loa-Herrera v. E.M. Trominski, 231 F.3d at 989. Specifically, the regulation provides, in relevant, part:

> Eligibility for a card while in deportation or exclusion proceedings. A person in exclusion proceedings shall be entitled to evidence of permanent resident status until ordered excluded. Such evidence shall be in the form of a temporary Form I-551 issued for a period sufficient to accomplish the exclusion proceedings. A person in deportation proceedings shall be entitled to evidence of permanent resident status until ordered deported or excluded. . .

8 C.F.R. § 264.5(g) (2002).

The Fifth Circuit found that the regulation "plainly does not restrict the INS from attaching additional notations to

caution employers that a potential worker, although an LPR and therefore currently authorized to work in the United States, is also facing pending deportation proceedings and thus may not be available for an extended period of employment." Loa-Herrera v. E.M. Trominski, 231 F.3d at 989. The plaintiffs apparently argue that the Privacy Act prohibits the INS from indicating on the alien registration card that the aliens in question are subject to immigration proceedings. The Privacy Act provides, in relevant part, that:

> (b) Conditions of disclosure.--No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, . . .

5 U.S.C. § 552a(b) (2002).

The INS does not violate the Privacy Act in noting on an alien registration card that a plaintiff class member, although an LPR and authorized to work, is subject to immigration proceedings. Specifically, the Privacy Act protects against the willful and intentional disclosure to a third party of records contained in an agency's system of record. See Doyle v. Behan, 670 F.2d 535, 538 (5th Cir. 1982). A plaintiff has the burden of demonstrating that a disclosure by the agency has occurred. See, e.g., Askew v. United States, 680 F.2d 1206, 1209-11 (8th Cir. 1982); Zerilli v. Smith, 656 F.2d 705, 715-16 (D.C. Cir. 1981).

Here, the plaintiffs have not met their burden of showing that by noting their pending immigration proceedings on an alien registration card, the INS has "disclosed" information from a system of record in violation of the Privacy Act.

Inasmuch as the INS issues an alien registration card to the plaintiffs that notes pending proceedings, the document is provided directly to the alien as "evidence of permanent resident status until ordered deported or excluded," not to a third party, See 8 C.F.R. § 264.5(g) (emphasis added). The issuance of the registration card is pursuant to INA § 264(d), not pursuant to a request from a third party. Furthermore, the card is issued to the plaintiff class member who must keep it in his or her possession pursuant to INA § 264(e). If the plaintiff class member elects to reveal the information contained therein to a third party, it cannot be said that the INS has made a "disclosure" as contemplated by the Privacy Act. See generally Abernethy v. I.R.S., 909 F. Supp. 1562, 1571 (D. Ga. 1995) (holding that an agency cannot be sued for disclosures which an individual makes himself).

Furthermore, one of the primary purposes of issuing and requiring the possession of alien registration cards is essentially for the government to be aware of the number of aliens in the country and their status. See U.S. v. Campos-Serrano, 430 F.2d 173, 176 (7th Cir. 1970), affirmed 404 U.S. 293

(1971). Accordingly, insofar as the alien registration card sets forth that a plaintiff class member is in proceedings, the information assists the INS and other government agencies, federal and state, to aid the INS to carry out its functions and statutory mandates. Such "disclosure" of information is a "routine use" and is not prohibited by the Privacy Act. See 62 FR 36572; 5 USCA § 552a(b)(3).

**B. 8 U.S.C. § 1304(b)**

Similarly, INA § 264(b), 8 U.S.C. § 1304(b) (Supp. IV 1998), does not prohibit the INS from noting on a "substitute I-151 or I-551" that a plaintiff is in immigration proceedings. INA § 264(b) merely directs the INS to keep confidential, and not make available, the fingerprint and registration records it maintains to create an alien registration card that the INA requires an alien to carry and possess. See INA §§ 264(d) and (e), 8 U.S.C. §§ 1304(d), (e).

INA § 264(b) essentially prohibits disclosure of certain biographical information provided by the alien to non-law enforcement officials. See INA § 287(f)(2), 8 U.S.C. § 1357(f)(2) (Supp. IV 1998). The issuance a temporary Form I-551, or its equivalent, to a plaintiff class member is not an INS disclosure of information to a third party. Rather, in issuing the document to a plaintiff class member, the INS is merely issuing an alien registration card as required by INA § 264(d)

that an alien must possess pursuant to INA § 264(e). If an alien subsequently elects to publish the information to a third party, such as an employer, it is not the INS that has violated the confidentiality of its records. Accordingly, the INA § 264(d) does not prohibit the INS from noting on an alien registration document that an alien is in immigration proceedings.

**CONCLUSION**

For the reasons stated above and set forth in the respondents' motion for summary judgment, summary judgment should be granted to the defendant and the Complaint should be dismissed with prejudice.

Respectfully submitted,

ROBERT D. MCCALLUM, JR.
Assistant Attorney General

DAVID V. BERNAL
Assistant Director
Office of Immigration Litigation

ANTHONY C. PAYNE
By Nancy Masso
Attorney-in-Charge
Office of Immigration Litigation
Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 616-3264

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of December, 2002, a copy of was mailed to counsel for plaintiffs by first class mail, addressed as follows:

Elizabeth S. Brodyaga, Esquire
17891 Landrum Park Road
San Benito, Texas 78586

Anthony Payne
Nancy Masso
Attorney for Defendants