*184*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 21 2003

Michael N. Milby
Clerk of Court

JUANA ASCENCIO-GUZMAN, et al.,    )
      Plaintiffs/Petitioners,    )
                             )
          v.    )    C.A. No. B-94-215
                             )
E.M. TROMINSKI, District    )
Director, Immigration and    )
Naturalization Service;    )
JOHN D. ASHCROFT, United States )
Attorney General; and    )
IMMIGRATION AND NATURALIZATION    )
SERVICE,    )
      Defendants/Respondents    )
_____)

DEFENDANTS'/RESPONDENTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND REPLY TO PLAINTIFFS' SUMMARY JUDGMENT
OPPOSITION

**TABLE OF CONTENTS**

DEFENDANTS'/RESPONDENTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND REPLY TO PLAINTIFFS' SUMMARY JUDGMENT
OPPOSITION ................................................... 1

SUMMARY JUDGMENT AND INJUNCTION STANDARDS ..................... 2

ARGUMENT ..................................................... 4

    I.    PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY MERIT
        SUMMARY JUDGMENT WITH RESPECT TO THE ISSUE OF WHETHER
        THE MANNER IN WHICH THE HARLINGEN INS EXERCISES ITS
        PAROLE AUTHORITY WITH RESPECT TO LEGAL PERMANENT
        RESIDENTS SEEKING ADMISSION THAT WERE NOT ARRESTED
        ON A WARRANT PRIOR TO BEING RETURNED TO THEIR NATIVE
        COUNTRY IS CONSTITUTIONAL ........................... 4

        A.    Substantial Threat of Irreparable Injury and
            Genuine Issue of Material Facts ............... 4

        B.    Plaintiffs Have Failed to Establish That They
            Merit Summary Judgment as a Matter of Law with
            Respect to Their Parole Claim Because They of
            Not Show a Likelihood of Success on the
            Merits ....................................... 8

            1.    Due Process Interest ..................... 8

            2.    Fair Hearing- Notice of Right to Parole .. 17

            3.    Fair Hearing- Adjudication of Parole
                Request .................................. 23

    I.    PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY MERIT SUMMARY
        JUDGMENT WITH RESPECT TO THE ISSUE OF WHETHER THE INS
        VIOLATES 5 U.S.C. § 552a(b) OR 8 U.S.C. § 1304(b) IN
        CREATING A TEMPORARY REGISTRATION DOCUMENT ......... 28

        A.    Substantial Threat of Irreparable Injury and
            Genuine Issue of Material Facts ............... 28

B.    Plaintiffs Have Failed To Demonstrate That
      Either 5 U.S.C. § 552a(b) Or 8 U.S.C. §
      1304(b) Prohibits The Harlingen INS From
      Placing Their Immigration Status On A
      Temporary Registration Document And, As Such,
      Have Failed To Show A Likelihood Of Success
      On The Merits ................................. 31

      1.    Privacy Act- 5 U.S.C. § 552a(b) .......... 32

      2.    8 U.S.C. § 1304(b) ....................... 37

CONCLUSION ............................................... 38

EXHIBIT A

EXHIBIT B

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

### CASES

Albright v. United States,
    732 F.2d 181 (D.C. Cir. 1984) ........................... 36

Alfarache v. Cravener,
    203 F.3d 381 (5th Cir. 2000) .......................... 10

Amoco Production Co. v. Village of Gambell,
    480 U.S. 531 (1987) ..................................... 3

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ..................................... 2

Anwar v. INS,
    116 F.3d 140 (5th Cir. 1997) .......................... 24

Askew v. United States,
    680 F.2d 1206 (8th Cir. 1982) ......................... 32

Atkins v. Parker,
    472 U.S. 115 (1985) ................................... 21

Baker v. Dept. of the Navy,
    814 F.2d 1381 (9th Cir. 1987) ......................... 33

Board of Regents of State Colleges v. Roth,
    408 U.S. 564 (1972) .................................... 9

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ................................. 2, 5

Chapman v. NASA,
    736 F.2d 238 (5th Cir. 1984) .......................... 35

Cherokee Pump & Equip., Inc. v. Aurora Pump,
    38 F.3d 246 (5th Cir. 1994) ............................ 3

City of West Covina v. Perkins,
    525 U.S. 234 (1999) ........................... 12, passim

Connecticut Bd. of Pardons v. Dumschat,
    452 U.S. 458 (1982) ................................... 24

Devine v. U.S.,
    202 F.3d 547 (2nd Cir. 2000) ............................ 35

Doyle v. Behan,
    670 F.2d 535 (5th Cir. 1982) ............................ 35

Federal Crop Insurance, Corp. v. Merrill,
    332 U.S. 380 (1947) ..................................... 19

Finlay v. INS,
    210 F.3d 556 (5th Cir. 2000) ............................ 25

Freeman v. City of Dallas,
    186 F.3d 601 (5th Cir. 1999),
    reversed on rehearing en banc on other grounds,
    242 F.3d 642 (5th Cir. 2001) ............................ 9

Garcia-Mir v. Meese,
    788 F.2d 1446 (11th Cir. 1986) .......................... 11

Gisbert v. U.S. Attorney General,
    988 F.2d 1437 amended,
    997 F.2d 1122 (5th Cir. 1993) .................. 11, passim

Goldberg v. Kelly,
    397 U.S. 254 (1970) ..................................... 12

Gonzalez-Torres v. INS,
    213 F.3d 899 (5th Cir. 1999) ............................ 11

Harper v. Lindsay,
    616 F.2d 849 (5th Cir. 1980) ............................ 17

Hathcock v. Acme Truck Lines,
    262 F.3d 522 (5th Cir. 2001) ............................ 2

Hayles v. General Motors Corp.,
    82 F. Supp. 2d 650 (S.D. Tex. 1999) .................... 28

Kwong Hai Chew v. Colding,
    344  U.S. 590 (1953) ............................. 13, 14, 23

Landon v. Plasencia,
    459 U.S. 21 ............................... 13, 14, 23, 27

-iv-

Loa-Herrera v. Trominski,
    231 F.3d 984 (5th Cir. 2000) ................ 3, 18, 31, 34

Lopez v. U.S. INS,
    758 F.2d 1390 (10th Cir. 1985) ......................... 4

Lujan v. Defenders of Wildlife,
    504 U.S. 560 ......................................... 31

Mathews v. Eldridge,
    424 U.S. 319 (1976) ........................... 12, passim

Mejia Rodriguez v. Reno,
    178 F.3d 1139 (11th Cir. 1999) .................... 20, 24

Memphis Light, Gas and Water Division v. Craft,
436 U.S. 1 (1978) .............................. 12, passim

Mullane v. Central Hanover Bank & Trust Co.,
    339 U.S. 306 (1950) .............................. 9, 17

Public Citizen, Inc. v. Bomer,
    274 F.3d 212 (5th Cir. 2001) ........................ 31

Quinn v. Stone,
    978 F.2d 126 (3d Cir. 1992) ......................... 33

Rosenberg v. Fleuti,
    374 U.S. 449 (1963) .............................. 14, 15

Schowengerdt v. General Dynamics Corporation,
    823 F.2d 1328 (9th Cir. 1987) .................... 33, 35

Sierra v. INS,
    258 F.3d 1213 (10th Cir. 2001) ...................... 13

Tefel v. Reno,
    180 F.3d 1286 (11th Cir. 1999) ...................... 25

U.S. v. Campos-Serrano,
    404 U.S. 293 (1971) ................................. 37

U.S. v. Campos-Serrano,
    430 F.2d 173 (7th Cir. 1970),
    affirmed, 404 U.S. 293 (1971) ........................... 36

U.S. v. Lopez-Ortiz,
    313 F.3d 225 (5th Cir. 2001) ........................... 12

United States v. Encarnacion-Galvez,
    964 F.2d 402 (5th Cir. 1992) ........................... 24

United States v. Verdugo-Urquidez,
    494 U.S. 259 (1990) .................................... 13

White v. Carlucci,
    862 F.2d 1209 (5th Cir.1989) ........................... 3

Wisdom v. Department of Hous. & Urban Dev.,
    713 F.2d 422 (8th Cir. 1983) ........................... 35

Zadvydas v. Davis,
    121 S. Ct. 2491 (2001) ................................ 13

**ADMINISTRATIVE DECISIONS**

Matter of Matelot,
    18 I. & N. Dec. 334 (BIA 1982) ........................ 20

Matter of Wong Kai Yuk,
    14 I. & N. Dec. 504 (BIA 1973) ........................ 20

**STATUTES**

**The Immigration and Nationality Act of 1952, as amended:**

Section 101(a)(13)(C)(i-iv),
    8 U.S.C. § 1101(a)(13)(C)(i-vi) (Supp. IV 1998) ........ 15

Section 212(d)(5)(A),
    8 U.S.C. § 1182(d)(5)(A) (Supp. IV 1998) ........ 5, passim

Section 235(b)(2)(A),
    8 U.S.C. § 1225(b)(2)(A) (Supp. IV 1998) .............. 16

Section 235(b)(2)(C),
    8 U.S.C. § 1225(b)(2)(C) (Supp. IV 1998) .............. 16

Section 240,
    8 U.S.C. § 1229 (Supp. IV 1998) .......................... 15

Section 264(b),
    8 U.S.C. § 1304(b) ............................. 28, _passim_

Section 274A,
    8 U.S.C. § 1324a (Supp. IV 1998) ....................... 31

Section 274B(a),
    8 U.S.C. § 1324b(a) (Supp. IV 1998) ................. 29, 30

Section 287(f)(2),
    8 U.S.C. §1357(f)(2) (Supp. IV 1998) ................... 37

**OTHER STATUTES**

5 U.S.C. § 552a(b) ............................. 28, 31, 32, 33

5 U.S.C. § 552b(1) ........................................ 37

5 U.S.C. § 552b(3) ........................................ 37

**REGULATIONS**

5 C.F.R. § 297.102 (2001) (emphasis added) .............. 33, 34

8 C.F.R. § 3.19 .......................................... 10

8 C.F.R. § 103.1(g)(2)(ii)(B) (2001) ...................... 10

8 C.F.R. § 212.5(a) (2001) ......................... 10, 19, 20

8 C.F.R. § 235.3(c) (2001) ............................... 10

8 C.F.R. § 264.5(g) ................................ 32, 34, 36

**MISCELLANEOUS**

Fed. R. Civ. P. 56(c) ..................................... 2

Federal Rule of Civil Procedure 50(a) ...................... 2

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 ........ 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUANA ASCENCIO-GUZMAN, et al.,        )
    Plaintiffs/Petitioners,          )
                                     )
    v.                               )    C.A. No. B-94-215
                                     )
E.M. TROMINSKI, District              )
Director, Immigration and             )
Naturalization Service;               )
JOHN D. ASHCROFT, United States       )
Attorney General; and                 )
IMMIGRATION AND NATURALIZATION        )
SERVICE,                              )
    Defendants/Respondents            )    Defendants.
_____)

DEFENDANTS'/RESPONDENTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND REPLY TO PLAINTIFFS' SUMMARY JUDGMENT
OPPOSITION

On September 26, 2002, this Court ordered briefing with respect to the following issues:

> 1.  Whether the manner in which the INS exercises its parole authority with respect to legal permanent residents seeking admission that were not arrested on a warrant prior to being returned to their native country is constitutional; and

> 2.  Whether there are certain legal authorities for limiting the INS's ability to place notations on the substitute I-151 or I-551 documents which disclose personal information to anyone who may view the documents

Dkt. No. 165.  Plaintiffs responded to the Court's order on December 2, 2002, by filing a motion for summary judgment; Plaintiffs request declaratory and injunctive relief with respect to the identified issues. Dkt. No. 172.  The Respondents respectfully oppose the motion as the Plaintiffs have failed to

demonstrate that they merit summary judgment under Federal Rule
of Civil Procedure ("Fed. R. Civ. P.") 56.  In so opposing,
Respondents also reply to Plaintiffs' opposition to their motion
for summary judgment.

### SUMMARY JUDGMENT AND INJUNCTION STANDARDS

Summary judgment should be granted when the evidence
indicates "that there is no genuine issue as to any material fact
and that the moving party is entitled to judgment as a matter of
law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S.
317, 322 (1986).  In determining whether a genuine issue of
material fact exists, courts must construe all facts in the light
most favorable to the nonmoving party and draw all reasonable and
justifiable inferences in favor of that party.  See Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  An issue is
material if its resolution could affect the outcome of the
action.  Hathcock v. Acme Truck Lines, 262 F.3d 522, 524 (5th
Cir. 2001).  The burden is on the moving party to convince the
court that no genuine issue of material fact exists as to the
claims asserted by the non-movant.  Celotex Corp. v. Catrett, 477
U.S. at 322-23.  "[T]h[e] standard [for granting summary
judgment] mirrors the standard for a directed verdict under
Federal Rule of Civil Procedure 50(a). . . . "  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Any injunctive relief is considered "an extraordinary

2

and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." White v. Carlucci, 862 F.2d 1209, 1211 (5th Cir.1989) (quoting Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992, 997 (5th Cir. 1985)). A district court may grant an injunction only if the movant establishes four requirements: First, the movant must establish a substantial likelihood of success on the merits. Second, there must be a substantial threat of irreparable injury if the injunction is not granted. Third, the threatened injury to the plaintiff must outweigh the threatened injury to the defendant. Fourth, the granting of the preliminary injunction must not disserve the public interest. Cherokee Pump & Equip., Inc. v. Aurora Pump, 38 F.3d 246, 249 (5th Cir. 1994) (citations omitted); accord Amoco Production Co. v. Village of Gambell, 480 U.S. 531, 546 (1987) (holding the standard for a permanent injunction is the same as a preliminary injunction except actual success on the merits must be demonstrated rather than just a substantial likelihood).

In its October 31, 2000 decision, the Fifth Circuit vacated the entirety of the district court's January 13, 1999 final order granting the Plaintiffs injunctive relief. Loa-Herrera v. Trominski, 231 F.3d 984, 992 (5th Cir. 2000). This Court has only permitted briefing with respect to the two specific issues identified in its September 26, 2002 order. Plaintiffs have not

3

carried their burden of establishing that they merit injunctive relief with respect to the identified issues.[1]  Respondents, therefore, hereby oppose Plaintiffs' motion for summary because they have failed to meet their burden of establishing that they warrant the action as a matter of law.

**ARGUMENT**

I.  **PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY MERIT SUMMARY JUDGMENT WITH RESPECT TO THE ISSUE OF WHETHER THE MANNER IN WHICH THE HARLINGEN INS EXERCISES ITS PAROLE AUTHORITY WITH RESPECT TO LEGAL PERMANENT RESIDENTS SEEKING ADMISSION THAT WERE NOT ARRESTED ON A WARRANT PRIOR TO BEING RETURNED TO THEIR NATIVE COUNTRY IS CONSTITUTIONAL**

    A.  **Substantial Threat of Irreparable Injury and Genuine Issue of Material Facts**

As argued in Respondents' pending motions for summary judgment, the exact nature of Plaintiffs' "parole claim" was unclear because it had not been properly raised to this Court. See Dkt. Nos. 147, 151, 174.  Because the parole claim was not properly set forth in Plaintiffs' Second Amended Complaint, the Respondents were unclear as to the factual basis for the claim.

---

[1]  It should be noted that the Plaintiffs additionally request injunctive relief with respect to their claim that the Respondents impermissibly confiscate "other documents" from of members of it class. Dkt. No, 172 at 3.  The Court has not identified this as an issue in this case; as such, the Respondents will abide by the Court's order and address only the Plaintiffs' request for injunctive relief with respect to the identified issues.  However, if the Court were to consider the claim, it fails as a matter of fact and law.  See Lopez v. U.S. INS, 758 F.2d 1390, 1393 (10th Cir. 1985) (holding that the INS has sufficient authority to take state drivers' licenses away from aliens whom they have reason to believe are in violation of the immigration laws).

4

The Plaintiffs' summary judgment motion and proposed order, including the proposed findings of fact and law, as well as the amended complaint in Hernandez-Leija, et al, v. E.M. Trominski, et al, No. B-01-206, shed light on the nature of the Plaintiffs' argument in this matter; essentially two claims are raised with respect to parole: (1) that the Plaintiffs are entitled as a matter of Due Process to specific notice of the availability of parole under Section 212(d)(5)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1182(d)(5)(A) (Supp. IV 1998); and (2) that they are entitled as a matter of due process to a hearing on their eligibility for parole that only considers whether the class member constitutes a danger to the community. Dkt. No. 172 at 20.  However, with respect to the identified claims, there exists a genuine issue of material fact and, as such, the Plaintiffs have failed to demonstrate a substantial threat of irreparable injury.  The Plaintiffs have not met their burden of showing they merit summary judgment. Celotex Corp. v. Catrett, 477 U.S. at 322-23.

The Plaintiffs motion for summary judgment lists proposed findings of fact.  There are genuine issues of fact with respect to many of these proposed findings.  Plaintiffs contend that Respondents admit that they do not advise class members of the availability of parole under INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A).  Dkt No. 172 at 18.  Additionally, it is alleged

that Plaintiffs are not provided a hearing with respect to
parole.  Plaintiffs allege injury because, as a result of the
alleged lack of notice and hearing, they are unaware of the
availability of parole and, even if they apply for the relief, it
is denied without a hearing for arbitrary reasons.

The Respondents dispute Plaintiffs proposed findings of
fact.  Contrary to the Plaintiffs assertions, it is not only the
current practice of the INS provide the members of the Plaintiff
class in question notice of the availability of parole under INA
§ 212(d)(5)(A), but it is the practice to automatically consider
the members for parole under Section 212(d)(5) of the INA, 8
U.S.C. § 1182(d)(5) (Supp. IV 1998), on a case-by case basis.
Furthermore, if an alien is a member of the Plaintiffs class for
which parole under INA § 212(d)(5)(A) is at issue, it has been
the recent practice to grant those individuals parole.
Accordingly, there exists a genuine issue of material fact with
the Plaintiffs' claim that members of the certified class are
denied Due Process because they are denied individualized notice
and hearing of parole.

In particular, on September 28, 1999, the District Director
of the Harlingen INS, E.M. Trominski, issued a memorandum with
the subject title "Parole Request."  Exhibit A, September 28,
1999.  The memorandum served to "notify Harlingen Inspectors at
Harlingen District Ports of Entry of new procedures" with respect

an alien who meets the following criteria:

>     1.   A lawful permanent resident;
>     2.   Who has applied for admission to the United
>     States;
>     3.   Who has been denied admission to the United
>     States;
>     4.   Who has been placed in proceedings;
>     5.   Who is not in custody; and
>     6.   Whose Form I-151 or I-551 has been or will be
>     confiscated by the INS.

In other words, members of the Plaintiff class.  The Memorandum

directs that an alien who meets criteria is automatically

considered for parole into the United States pursuant to Section

212(d)(5)(A) of the INA, 8 U.S.C. § 1182(d)(5)(A).  Exhibit A at

2, section a.  As reflected in the declaration of Mr. Larry P.

Doyle, the Assistant District Director for Inspections for the

Harlingen INS, it is the current practice of the Harlingen INS to

follow the September 28, 1999 memorandum except with respect to

the procedure of conducting a parole hearing before an

immigration judge as set forth in section b.  See Exhibit B,

Doyle Declaration.[2]  As a practical matter, the procedure for a

hearing before the immigration judge is a moot because

individuals who satisfy the listed criteria are granted parole by

the Harlingen INS.  Id.

In light of the Harlingen INS' practice of following

September 28, 1999 memorandum, the Respondents dispute the

-----

[2]  The original version of the document will be submitted to the
Court upon receipt.

7

Plaintiffs apparent factual allegations that the described aliens are not provided notice of the availability of parole under INA § 212(d)(5)(A) and that a hearing is not provided to those same individuals.  Furthermore, the Plaintiffs have not satisfied their burden of showing a substantial threat of irreparable injury such that injunctive relief is warranted.  Because members of the class are given notice, a hearing, and, in practice, paroled into the United States, Plaintiffs suffer no injury, much less irreparable injury.

    **B.    Plaintiffs Have Failed to Establish That They Merit Summary Judgment as a Matter of Law with Respect to Their Parole Claim Because They of Not Show a <u>Likelihood of Success on the Merits</u>**

        **1.    Due Process Interest**

In its September 26, 2002 order, this Court specifically ordered the parties to address the issue of "[w]hether the manner in which the INS exercises its parole authority with respect to legal permanent residents seeking admission that were not arrested on a warrant prior to being returned to their native country is constitutional."  Dkt. No. 167.  Plaintiffs argue that the Harlingen INS violates their Due Process rights as provided by the United States Constitution by not providing individualized notice of parole and not allowing for a parole hearing.  Dkt. No. 172 at 7-14.  The Plaintiffs, however, have failed to establish that they merit summary judgment as a matter of law in that they have not established a likelihood of success on the merits.

The United States Constitution prohibits the government from depriving any person of **life, liberty, or property**, without due process of law. U.S.C.A Const. Amend. 5. As such, the "government must give reasonable notice to an individual of its intention to deprive him of **life, liberty, or property**." See Freeman v. City of Dallas, 186 F.3d 601, 606 (5th Cir. 1999) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313-15 (1950)) (emphasis added), reversed on rehearing en banc on other grounds, 242 F.3d 642 (5th Cir. 2001). As the discretionary relief of parole under INA § 212(d)(5), 8 U.S.C. § 1182(d)(5)(A), does not involve an individual's life, liberty, or property rights, the Plaintiffs are unable to establish a Due Process violation as a matter of law and, as such, a likelihood of success on the merits. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71 (1972) ("[T]o determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake . . . We must look to see if the interest is within the . . . protection of liberty and property.").

The structure by which an alien may obtain release from detention upon being denied admission to the United States is set forth by the INA and the regulations promulgated thereunder. INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A), provides for the circumstances under which certain aliens not arrested on a

9

warrant may obtain release from custody:

> The Attorney General may . . . in his discretion
> parole into the United States temporarily under
> such conditions as he may prescribe only on a
> case-by-case basis for <u>urgent humanitarian reasons</u>
> or <u>significant public benefit</u> any alien applying
> for admission to the United States, but such
> parole of such alien shall not be regarded as an
> admission of the alien . . . .

8 U.S.C. § 1182(d)(5)(A) (emphasis added). The Attorney

General's regulations give effect to this scheme. The Attorney

General has specified that the Commissioner's authority to

continue custody or grant parole may be exercised by the district

director or chief patrol agent. 8 C.F.R. § 212.5(a) (2001); <u>see</u>

<u>also</u> 8 C.F.R. § 103.1(g)(2)(ii)(B) (2001). Immigration judges,

however, lack such authority. <u>See</u> 8 C.F.R. § 3.19. Furthermore,

the Attorney General's regulations provide that:

> Arriving aliens placed in proceedings under
> section 240 of the Act. Except as otherwise
> provided in this chapter, any arriving alien who
> appears to the inspecting officer to be
> inadmissible, and who is placed in removal
> proceedings pursuant to section 240 of the Act
> shall be detained in accordance with section
> 235(b) of the Act. Parole of such aliens shall
> only be considered in accordance with § 212.5(b)
> of this chapter. . . .

8 C.F.R. § 235.3(c) (2001). The Attorney General's parole

authority, therefore, is discretionary because, "'as a piece of

legislative grace, it conveyed no rights, it conferred no

status." <u>Alfarache v. Cravener</u>, 203 F.3d 381 (5th Cir.

2000)(quoting <u>Cadby v. Savoretti</u>, 256 F.2d 439, 443 (5th Cir.

1956)).

In light of its discretionary nature, Plaintiffs have no
protected constitution, liberty or property, interest in parole
under INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A), their lawful
permanent resident status notwithstanding. See Garcia-Mir v.
Meese, 788 F.2d 1446, 1452 (11th Cir. 1986) (holding that where a
statute or regulation does not limit the executive's discretion
to award relief, an expectancy of such relief does not give rise
to a liberty interest protected by the Due Process Clause).  In
particular, the Fifth Circuit has found that an alien subject to
exclusion proceedings (now an alien charged with being
inadmissible and subject to removal proceedings) has no liberty
interest in parole. Gisbert v. U.S. Attorney General, 988 F.2d
1437, 1443, amended 997 F.2d 1122 (5th Cir. 1993); see also
Gonzalez-Torres v. INS, 213 F.3d 899, 903 (5th Cir. 1999)(alien
has no constitutional right to discretionary relief over which
the Attorney General exercises "unfettered discretion").  Indeed,
this is particularly appropriate for an alien at the border, like
the members of the Plaintiff class in question, where the only
rights aliens have been those afforded by Congress. Gisbert, 988
F.2d at 1442.  Because eligibility for parole under INA §
212(d)(5) is not a protected constitutional interest warranting
due process protection, the Plaintiffs' have not shown a
likelihood of success on their Due Process challenge to the

11

manner in which the Harlingen INS exercises the Attorney

General's discretionary authority and, as a result, their summary

judgment motion fails as a matter of law.  See U.S. v.

Lopez-Ortiz, 313 F.3d 225, 231 (5th Cir. 2001).

In their motion, Plaintiffs cite to several cases in support

of their claim that the Harlingen INS violates their Due Process

rights with respect to parole.  Dkt. No. 172 at 7-14.  The cited

cases, however, all involved an interest protected by the

Constitution.[3]  Here, because parole under INA § 212(d)(5)(A), 8

U.S.C. § 1182(d)(5)(A), is a matter left to the unfettered

discretion of the Attorney General, the Plaintiffs' claims are

distinguishable from the cited cases.[4]  The Plaintiffs have no

constitutionally protected interest in discretionary relief and

are not entitled to summary judgment on this aspect of their

suit.  The Fifth Circuit has rejected claims of a general liberty

---

[3]  In Goldberg v. Kelly, 397 U.S. 254 (1970), the Supreme Court
found that a statute created an entitlement to welfare benefits
that was properly considered "property" for purpose of a
constitutional challenge.  397 U.S. 254, 262-63 n.8.  Similarly,
in both Memphis Light, Gas and Water Division v. Craft, 436 U.S.
1, 10-12 (1978), and Mathews v. Eldridge, 424 U.S. 319, 332
(1976), the Supreme Court found a protected "property" interest
in the plaintiffs' "legitimate claim of entitlement" to,
respectively, utility service where state law obligated service
and to statutory mandated Social Security benefits.  In City of
West Covina v. Perkins 525 U.S. 234, 240 (1999), the Supreme
Court determined that the seizure of personal property implicated
a protected interest.

[4]  INA § 212(d)(5)(A) provides that "[t]he Attorney General **may** .
. . **in his discretion** parole into the United States temporarily."
8 U.S.C. § 1182(d)(5)(A) (emphasis added).

interest in freedom as the basis for a challenge to the denial of parole.[5]  Gisbert, 988 F.2d at 1443.

Plaintiffs further argue that by virtue of their lawful permanent resident status, they have a protected liberty and property interest in parole.  An alien who is a lawful permanent resident of the United States, and remains physically present, is a person within the protection of the Constitution who may not be deprived of his life, liberty, or property without due process of law.  United States v. Verdugo-Urquidez, 494 U.S. 259, 271 (1990).  A continuously present resident alien is, therefore, entitled to a fair hearing when threatened with exclusion or removal.  Landon v. Plasencia, 459 U.S. at 32-34.  Thus, the government is not free to remove an alien from the United States unless it has first accorded him the most basic procedural protections--notice and a hearing at a meaningful time and in a

---

[5]  As noted in Respondents' motion for summary judgment, the Supreme Court's decision in Zadvydas v. Davis, 121 S. Ct. 2491 (2001), is not to the contrary.  Zadvydas made no finding regarding a liberty interest.  Rather, the Supreme Court merely commented that to hold that a deportable alien could be held indefinitely would present a serious constitutional question. Zadvydas, 121 S. Ct. at 2498.  Indeed, the Zadvydas Court expressly noted that aliens at the border do not possess the same rights as aliens within the United States, acknowledging that the former type of alien is not "in" the United States and does not obtain the protection of the Fifth Amendment.  Id. at 2500.  The Plaintiffs here are all detained at the border and are not within the scope of Zadvydas.  See Sierra v. INS, 258 F.3d 1213, 1218 (10th Cir. 2001) (noting that whatever procedures Congress establishes for aliens seeking admission is due process so far as such aliens are concerned).  Therefore, their due process rights are at a minimum.  Landon v. Plasencia, 459 U.S. 21, 33 (1982).

13

meaningful manner. Id. at 32-33; Kwong Hai Chew v. Colding, 344
U.S. 590, 597 (1953) (emphasis added).  Members of the Plaintiffs
class are entitled to similar Due Process because they are,
"[f]or purposes of [their] constitutional right[s] to due process
. . . assimilate[d] . . . to that of an alien continuously
residing and physically present in the United States."  Kwong Hai
Chew v. Colding, 344 U.S. 590, 596.

     Although the theoretical members of the Plaintiffs' class
who await proceedings in Mexico do not lose their lawful
permanent resident status, they have not shown a right or
entitlement to enjoy the status in the United States until it is
established that they are admissible through immigration
proceedings.  Lawful permanent residents at the border have very
limited rights, and the extent of their rights is consummate only
with those procedures necessary to determine whether they will be
excluded or removed.  A lawful permanent resident therefore has a
protected interest in the process of removal, not in parole.  See
Rosenberg v. Fleuti, 374 U.S. 449, 460 (1963) ("the returning
resident alien is entitled as a matter of due process to a
hearing on the charges underlying any attempt to exclude him.").
The determinations of both "admission" and existence of
inadmissibility grounds are made in a removal hearing, not a
parole determination.  See Landon v. Plasencia, 459 U.S. at 32
(analyzing former exclusion proceedings).   The Plaintiffs do not

14

dispute that they are provided Due Process with respect to removal proceedings.  See Dkt. No. 172 ("[A]ll seven named Plaintiffs ultimately won their immigration cases and remain in the U.S. as LPRs (or naturalized U.S. citizens).").

"Congress unquestionably has the power to exclude all classes of aliens from this country."  Rosenberg v. Fleuti, 374 U.S. 449, 461 (1963).  Congress has provided that certain theoretical members of the Plaintiffs' class, returning lawful resident aliens deemed to be seeking admission and returned to Mexico to await removal proceedings, do not have any entitlement to admission into the United States to exercise their status until after the completion of proceedings under held pursuant to Section 240 of the INA, 8 U.S.C. § 1229 (Supp. IV 1998).  In particular, Congress has provided a returning lawful permanent resident who is described in Section 101(a)(13)(C)(i-iv) of the INA, 8 U.S.C. § 1101(a)(13)(C)(i-vi) (Supp. IV 1998),[6] shall be

---

[6]  The Section provides in relevant part:

> (C) An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien-

>> i.  has abandoned or relinquished status,
>> ii.  has been absent from the United States for continuous period in excess of 180 days,
>> iii. has engaged in illegal activity after having departed the United States;
>> iv.  has departed from the United State while under legal process seeking removal of the

15

regarded as "seeking an admission" into the United States.  If an INS examining officer determines that an alien returning lawful permanent resident arriving on land from a contiguous foreign territory is seeking admission and is not clearly and beyond doubt entitled to be admitted, that alien may be returned to the foreign territory pending removal.  INA § 235(b)(2)(A) & (C), 8 U.S.C. § 1225(b)(2)(A) & (C) (Supp. IV 1998).

Although the examining officer is commanded to detain an alien or return the alien to the contiguous territory, Congress has also specified that such arriving aliens may apply for discretionary parole under INA § 212(d)(5)(A).  However, parole is subject to the unfettered discretion of the Attorney General and the language of the statute does not require the parole of any alien, nor does it mandate parole on any particular finding or findings or place any substantive restriction on the authority to deny parole.  Gisbert, 988 F.2d at 1443.  Under INA § 212(d)(5)(A), Plaintiffs have no right or entitlement to parole and cannot be said to have a constitutionally protected interest in the relief.  Cf. Memphis Light, Gas and Water Division v. Craft, 436 U.S. at 10-12 (1978); Mathews v. Eldridge, 424 U.S. at

---

alien from the United States . . .,
v.   has committed an offense identified in section 212(a)(2) . . ., or
vi.  is attempting to enter at a time or place other than as designated . . .

16

332 (1976).  Because it is the process of removal that determines

whether an alien remains a lawful resident and can enjoy the

benefits of such status, the Plaintiffs' class Due Process

interest lies in the process of removal, not parole.  Plaintiffs

have not established a likelihood of success on the merits.

### 2.   Fair Hearing- Notice of Right to Parole

The Due Process Clause requires that the deprivation of

life, liberty, or property by adjudication be preceded by notice

and opportunity for a hearing appropriate to the nature of the

case.  Mullane, 339 U.S. 306, 313-15 (1950).  The fundamentals of

Due Process require notice and a meaningful opportunity to be

heard.  See Harper v. Lindsay, 616 F.2d 849, 858 (5th Cir. 1980).

Therefore, even if the Plaintiffs can show a protected interest

in parole under INA § 212(d)(5)(A), they still must show that

they have been denied notice and a meaningful opportunity to be

heard.  Plaintiffs claim that the Harlingen INS violates their

Due Process rights because they have a right to specific

individual notice of their privilege to apply for parole pending

removal proceedings.  The Plaintiffs argue that individualized

notice of parole to returning lawful permanent residents denied

admission to the United States is required to satisfy due process

as "they would have no other reasonable means of ascertaining"

either that the relief existed, or how to request parole.  Dkt.

No. 172 at 11.  In essence, the Plaintiffs argue that under the

17

Supreme Court's decisions in <u>City of West Covina</u>, 525 U.S. 234 (1999), and <u>Memphis Light</u>, 436 U.S. 1 (1978), they are entitled to individualized notice of parole because the issue "turns on whether such information is otherwise 'generally available;' and whether Plaintiffs have 'other reasonable means of obtaining it', and can reasonably be expected to educate [themselves] about the procedures." Dkt. No. 172 at 7-8.

The Respondents' assert that they provided members of the Plaintiff class with individualized notice of the availability of parole. Exhibits A and B. Nevertheless, even if such notice was not provided, Plaintiffs have not established a likelihood of success on the merits. In <u>City of West Covina</u>, the Supreme Court considered whether the City of West Covina provided adequate notice of available remedies where a litigant was informed of the search and seizure of certain property by the police, but where the litigant was not given individualized notice of the available remedies for recovering property. <u>Id</u>. at 236-37. As recognized by the Fifth Circuit, the Supreme Court held that individualized notice of the available procedures for getting back seized property was not required by due process where notice was available in a "published, generally available document". <u>Id</u>. at 241-42; <u>see</u> <u>Loa-Herrera v. Trominski</u>, 231 F.3d 984, 991 n.13 (5th Cir. 2000). Although individualized notice is required if no other reasonable means are available, such notice is not required

18

by due process where, as here, the information can be found in published statutes and case law.  Id. at 241.  The Court observed that:

> No similar rationale justifies requiring
> individualized notice of state law remedies
> which, like those at issue here, are
> established by published, generally available
> state statutes and case law.  Once the
> property owner is informed that his property
> has been seized, he can turn to these public
> sources to learn about the remedial
> procedures available to him.  The City need
> not take other steps to inform him of his
> options.

Id. at 241 (citations omitted).  The Supreme Court has long held that publication of government procedures is sufficient notice of those procedures.  Federal Crop Insurance, Corp. v. Merrill, 332 U.S. 380, 384 (1947) ("[E]veryone is charged with knowledge of the United States Statutes at Large. . . .").

In order to satisfy due process concerns, the Supreme Court does not require that the published, generally available notice list the factors used in deciding if the remedy is warranted. Rather, if notice is required, it simply has to provide that the relief is available and from whom it can be obtained.  See generally City of West Covina, 525 U.S. at 239, 241-42 (citing to case law and California Penal Code Annotated § 1536 (West 1982)). The availability of parole is published in the INA and that the federal regulations provided from whom it is available.  See 8

19

U.S.C. § 1182(d)(5)(A); 8 C.F.R § 212.5 (2001).[7]  Accordingly,
while the INA does not define the term "parole," its availability
of the relief is public and available.  Furthermore, federal and
administrative case law define parole and indicate that it may be
obtained from the District Director.  See Mejia Rodriguez v.
Reno, 178 F.3d 1139, 1147 n.7 (11th Cir. 1999) ("[I]n the
immigration context, "parole" refers to the practice of
allowing aliens to enter the United States while their
immigration proceedings are completed."); Matter of Wong Kai Yuk,
14 I. & N. Dec. 504, 506 (BIA 1973) (finding that substantive
contentions with respect to parole should be raised with the
District Director); accord Matter of Matelot, 18 I. & N. Dec.
334, 336 (BIA 1982).  Because the required information is
available in published materials, the Respondents "need not take
other steps to inform [plaintiffs] of [their] options."  City of
West Covina, 525 U.S. at 241.

    The Plaintiffs argue that in order to satisfy Due Process,
there must be a showing that they "can be reasonably expected to

---

[7]  In addition to INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A),
the published implementing regulation, provides that:

> [t]he district director or chief patrol agent may,
> after review of the individual case, parole into
> the United States temporarily in accordance with
> section 212(d)(5)(A) of the Act, and applicant for
> admission under such terms and conditions . . . as
> he or she may deem appropriate.

8 C.F.R. § 212.5(d) (2001) (emphasis added).

20

educate [themselves] about the procedures. . . ."  Dkt. No. 172
at 8.  City of West Covina, however, does not require that the
government bear the burden of showing that an individual can be
reasonably expected to understand and educate themselves about
the contents of a publically available document.  Rather, the
Supreme Court held that once it is established that the
information is publically available, the individual can turn to
these sources and learn about the remedial procedures available.
City of West Covina, 525 U.S. at 241 (citing Hudson v. Palmer,
468 U.S. 517 (1984)).  The Supreme Court concluded that the
government "need not take other steps to inform him of his
options," in order to satisfy Due Process.  Id.  The "structure
of our democratic government rests on the premise that the
individual citizen [or lawful permanent resident alien] is
capable of informing himself about the particular policies that
affect his destiny."  Atkins v. Parker, 472 U.S. 115, 131 (1985).
As such, because the availability of parole is provided by
statute and regulation, the fact that "parole" is a term of art
and not specifically defined by the INA does not require the
government to provide individualized notice of its availability
in order to satisfy Due Process, nor does it require the
government to prove that every potential applicant to parole has
an understanding of the immigration statues.

        The Supreme Court's decision in Memphis Light, 436 U.S. 1

                                21

(1978), also does not support the Plaintiffs' contention that Due Process requires individual notice of parole.  In Memphis Light, the Supreme Court required individualized notice where "the administrative procedures at issue were not described in any publically available document."  City of West Covina, 525 U.S. at 242.  As the information was not publically available, the customer in Memphis Light had no means to "educate himself about the procedures available to protect his interests."  Id.  Here, however, because the INA, federal regulations, and case law provide notice of parole and its procedures in publically available documents, the demands of Due Process do not require the Harlingen INS to provide further individualized notice.  Id.

Finally, Plaintiffs urge that even if the availability of parole and the procedures for obtaining it are publically available in the United States, their Due Process rights were violated because such materials are not readily available to those theoretical members of the Plaintiffs' class who are not admitted and would await their proceedings in Mexico.  Dkt. No. 172 at 10-11.  They assert that Due Process demands that the Harlingen INS is required to provide individualized notice of parole because they "cannot be reasonably expected to educate [themselves] about parole," in Mexico.  Dkt. No. 172 at 13. However, the theoretical members of the Plaintiffs' class in Mexico, "for purposes of [their] constitutional right to due

22

process . . . assimilate[d] . . . to that of an alien
continuously residing and physically present in the United
States." Kwong Hai Chew v. Colding, 344 U.S. at 596.  The
theoretical members are therefore entitled to no more Due Process
protection than that given to lawful permanent residents already
admitted to the United States.  Landon, 459 U.S. at 33.  Thus,
Due Process is satisfied for lawful permanent residents in both
the United States and elsewhere where the INA, federal
regulations, and case law provided for parole and are publically
available, even if the availability of the documents in that
country is limited.  City of West Covina, 525 U.S. at 241;
Landon, 459 U.S. at 33.  The members of the Plaintiffs' class are
not entitled to any more Due Process protection than those lawful
permanent resident aliens in the United States.[8]

### 3.   Fair Hearing- Adjudication of Parole Request

The Plaintiffs additionally argue that the Harlingen INS
violates their Due Process in the manner in which parole requests
are adjudicated.  Dkt. No. 172 at 13-14.  As noted, "procedural
due process imposes constraints on governmental decisions
which deprive individuals of "liberty" or "property" interests
within the meaning of the Due Process Clause of the Fifth or

---

[8]  Whether the procedures of parole are specifically detailed in
the published materials is irrelevant considering that class
members are automatically considered for the relief upon seeking
admission.  See Exhibits 2 and 2.

Fourteenth Amendment." <u>Mathews v. Eldridge</u>, 424 U.S. 319, 332
(1976).  If a protected interest is involved, then some form of
hearing is required before an individual is finally deprived of a
property interest.  <u>Id</u>. at 333.  To raise an adequate Due Process
claim, the alien must have been actually or substantially
prejudiced by the alleged inadequacy of the process afforded.
<u>Mejia-Rodriguez v. Reno</u>, 178 F.3d at 1146.

     As argued <u>supra</u>, the Plaintiffs have no constitutional
protected interest in parole.  In particular, Congress has left
parole under INA § 212(d)(5)(A) in the unfettered discretion of
the Attorney General.  Specifically, the language of the statute
does not require the Attorney General to parole any alien, even
if a lawful permanent resident, nor does it mandate parole on any
particular finding or findings or place any substantive
restriction on the authority to deny parole.  <u>Gisbert</u>, 988 F.2d
at 1443.  The Plaintiffs have no protected interest in such
discretionary relief.  <u>See</u> <u>Connecticut Bd. of Pardons v.</u>
<u>Dumschat</u>, 452 U.S. 458, 264-65 (1982) (no liberty interest in
discretionary relief); <u>Finlay v. INS</u>, 210 F.3d 556 (5th Cir.
2000), <u>citing</u> <u>Tefel v. Reno</u>, 180 F.3d 1286, 1299-1300 (11th Cir.
1999) (no liberty interest in discretionary relief).

     Moreover, under <u>Mathews v. Eldridge</u>, 424 U.S. 319, 332
(1976), the Plaintiffs have not shown that the current procedure
for parole violates Due Process as the balance of the risk of

                               24

erroneous deprivation is minimal, the value of additional procedures is de minimus, and government retains a strong interest in the procedures presently afforded for parole.

The risk of an erroneous deprivation of parole is minimal. As noted, Congress has placed parole within the unfettered discretion of the Attorney General. Indeed, as the Fifth Circuit has stated: "The language of the statute does not require the Attorney General to parole any alien, nor does it mandate parole on any particular finding or findings or place any substantive restriction on the authority to deny parole." Gisbert, 988 F.2d at 1443. Because there is no case in which the Attorney General must grant parole, the risk of an erroneous deprivation is minimal.

In addition, no matter the type of hearing provided to those members of the class seeking parole, they have not shown any prejudice. The members of the class in question are granted parole, as noted by Mr. Doyle in his declaration. Exhibit 2. Accordingly, they are unable to establish a Due Process violation. See United States v. Encarnacion-Galvez, 964 F.2d 402, 407 (5th Cir. 1992); Anwar v. INS, 116 F.3d 140, 144 (5th Cir. 1997) ("Due process challenges . . . require an initial showing of substantial prejudice.").

It is the current procedure of the Harlingen INS to automatically considers the members of the Plaintiffs' class at

issue for parole and, as such, it protects against an erroneous deprivation of any right that exists to the relief.  Exhibit 2. The Plaintiffs, therefore, have not established that they are prejudiced by the current parole process.  The Plaintiffs' claim that the Respondents deny arbitrarily deny parole under the current procedure is unfounded and disputed.  Exhibit A and B. The current procedure provides consideration of the Plaintiffs' parole requests that conform to the requirements of Due Process. The current procedures allow for a lawful permanent resident to submit to evidence in support of a parole claim.  Exhibit B.  In fact, members of the Plaintiff class at issue are automatically considered for review.  Finally, in practice, the class members in question are granted parole.  Exhibit 2.  Thus, the probable value of additional procedures would be minimal and the Plaintiffs have shown a substantial likelihood of success.

In fact, it is Plaintiffs' proposed order that infringes on the concept of parole as provided by Congress in INA § 212(d)(5). The Plaintiffs would require that the Respondents' adjudicate a lawful permanent resident's parole requests only under the standard of "whether he or she constitutes a danger to the community, and whether any condition, or combination of conditions, can reasonably be expected to ensure a person's appearance at future immigration hearings.  Dkt. No. 172 at Order Granting Plaintiff's Motion for Summary Judgment, ¶2.  The

proposed order, however, is in direct conflict with the intent of Congress that "[t]he Attorney General **may** . . . **in his discretion** parole into the United States temporarily **under such conditions as he may prescribe**." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). Congress has elected not to create an entitlement to parole for lawful permanent residents, the Court cannot impose procedures that dislodge that intent.  See Landon v. Plasencia, 459 U.S. 21, 34-35 (1982) ("[t]he role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy.").

    As for the government interest in the present procedures, the Supreme Court has already stressed the weighty interest of the government:

> The government's interest in efficient
> administration of the immigration laws at the
> border also is weighty.  Further, it must weigh
> heavily in the balance that control over matters
> of immigration is a sovereign prerogative, largely
> within the control of the executive and the
> legislature.

Landon v. Plasencia, 459 U.S. at 34.  Here, the Attorney General has elected to delegate parole authority to the District Director.  The importance of this choice cannot be underestimated.  The parole decision is one of sovereign prerogative, and stands as a last protection against the entry of

27

aliens whose presence Congress and the Executive deems to be not in the national interest. The Attorney General's delegation reflects a desire to reserve that sovereign authority in a manner more accountable to the needs of the Executive. While Plaintiffs are presently able to fully develop their cases under the current procedures, Congressional intent and the government's interest in how it exercises its discretion clearly outweighs any right the Plaintiffs might have in a change in the current policy. Accordingly, Plaintiffs are unable to prevail on their claim that the INS violates their due process rights by denying sufficient notice of parole and a constitutionally adequate adjudication of the relief. See Hayles v. General Motors Corp., 82 F. Supp. 2d 650, 654 (S.D. Tex. 1999).

II.  **PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY MERIT SUMMARY JUDGMENT WITH RESPECT TO THE ISSUE OF WHETHER THE INS VIOLATES 5 U.S.C. § 552a(b) OR 8 U.S.C. § 1304(b) IN CREATING A TEMPORARY REGISTRATION DOCUMENT.**

A.  **Substantial Threat of Irreparable Injury and Genuine Issue of Material Facts**

As an initial matter, Plaintiffs' assert that there exists no genuine issue of material fact with respect to the following statement:

> Placing notations about Plaintiffs' legal problems on documents used as temporary proof of LPR status broadcasts that information, without Plaintiffs' permission, to all who have occasion to require proof of their LPR status, including potential employers, and workers in various social service agencies.

28

Dkt. No. 172 at 19.  Respondents dispute with the "factual" statement.  First, the statement calls for a legal conclusion, not a factual finding.  Specifically, it is not a fact that the placement of any type of notation on a registration document is a "broadcast."  Moreover, the Respondents dispute that any such notations "broadcast" Plaintiffs' "legal problems" to all those who require proof of LPR status.  In essence, notations are placed on registration documents in order to provided evidence of the alien's status not only to the alien, but also to law enforcement agencies.  Exhibit A.  The Harlingen INS does not place notations respecting whether an alien is in proceedings with the intent that the information be broadcasted to other non-agency individuals.  Accordingly, there is a genuine issue of material fact with respect to this aspect of the Plaintiffs' claim.

Moreover, even if the notations of pending legal proceedings are viewed by potential employers, Plaintiffs have not established a substantial threat of irreparable injury such that they merit summary judgment.  Plaintiffs raise the theoretical claim that they suffer injury on account of a notation that indicates pending immigration proceedings because a "potential" employer would tend not to offer employment to any such alien.  The INA, however, prohibits a potential employer from engaging in citizenship status discrimination.  See Section 274B(a) of the

29

INA, 8 U.S.C. § 1324b(a) (Supp. IV 1998).[9]  As such, a potential employer may not decline to hire a lawful permanent resident status notwithstanding the alien has been placed in proceedings. The Plaintiffs have not presented evidence from any potential employer that admits engaging in such illegal practices.  As such, the Plaintiffs have not established a substantial threat of irreparable harm such that they merit injunctive or declaratory

_____

[9]  The statute provides, in relevant part:

> (a)  Prohibition of discrimination based on national origin or citizenship status.
>
> > (1)  General rule.  It is an unfair immigration-related employment practice for a person or other entity to discriminate against any individual (other than an unauthorized alien) with respect to the hiring, or recruitment or referral for a fee, of the individual for employment or the discharging of the individual from employment-
> >
> > > (B)  in the case of a citizen or intending citizen (as defined in paragraph (3)), because of such individual's citizenship status.
> >
> > (3)  Definition of citizen or intending citizen.  As used in paragraph (1), the term "citizen or intending citizen" means an individual who-
> >
> > > (B)  is an alien who--
> > >
> > > > (i)  is lawfully admitted for permanent residence . . .

8 U.S.C. § 1324b (Supp. IV 1998).

30

relief.[10]  It should also be noted that an alien need not present

evidence of his or her immigration status and employment

authorization until an offer has extended and he or she has been

"hired" within the meaning of the INA.  See Section 274A of the

INA, 8 U.S.C. § 1324a (Supp. IV 1998).

> **B.  Plaintiffs Have Failed To Demonstrate That Either 5 U.S.C. § 552a(b) or 8 U.S.C. § 1304(b) Prohibits the Harlingen INS From Placing Their Immigration Status On A Temporary Registration Document And, As Such,**

---

[10]  Furthermore, the absence of a defined injury creates a standing issue with respect to the Plaintiffs' challenge to the alleged notations.  Standing, at its "irreducible constitutional minimum," requires a plaintiff "to demonstrate: they have suffered an 'injury in fact'; the injury is 'fairly traceable' to the defendant's actions; and the injury will 'likely ... be redressed by a favorable decision.'" Public Citizen, Inc. v. Bomer, 274 F.3d 212, 217 (5th Cir. 2001) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). "[A]n injury in fact [is] an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560.  In its decision, the Fifth Circuit found that the Plaintiff's established standing with respect their challenge to the form of the the temporary registration document provided by the INS in light of the government admission that aliens who hold temporary registration cards are "'more likely to be more closely inspected' than are holders of green cards.'" Loa-Herrera v. Trominski, 231 F.3d at 987-88.  The Court concluded that the mere threat of injury was real and sufficient.  Here, however, the Plaintiffs' allegation is not that the notation of pending immigration proceedings renders it more difficult to be readmitted to the United States, rather, they argue that a potential employer would not hire a lawful permanent resident solely because his or her registration card contains the notation.  The Plaintiffs, however, have not established a real threat of injury because, as shown, any such action by a potential employer would be illegal breaking any chain of causation relating to respondents.  Accordingly, notwithstanding the Fifth Circuit's decision, Plaintiffs have failed to show standing with respect to the issue.

**Have Failed to Show A Likelihood of Success
on the Merits**

1.   **Privacy Act- 5 U.S.C. § 552a(b)**

a.   Disclosure

The Plaintiffs have not established a substantial likelihood of success with respect to the Privacy Act.[11] In particular, the INS is not prohibited by the Privacy Act, 5 U.S.C. § 552a(b), from indicating on a temporary registration document given to the Plaintiff class that a lawful permanent resident has been paroled into the United States or is in immigration proceedings. The Privacy Act provides, in relevant part, that:

> (b) Conditions of disclosure.--No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, . . .

5 U.S.C. § 552a(b) (2002) (emphasis added). A plaintiff has the burden of demonstrating that a disclosure by the agency has occurred. See, e.g., Askew v. United States, 680 F.2d 1206, 1209-11 (8th Cir. 1982). The placement of a notation of pending immigration proceedings by the Harlingen INS on a document

---

[11] Contrary to the specific issues that this Court identified as being ripe for briefing, Plaintiffs also assert that the registration documents provided by the Respondents fail to comply with 8 C.F.R. § 264.5(g). Dkt. No. 172. Rather than again fully briefing the issue, Respondents' adopt the argument presented in the pending September 21, 2002 motion for summary judgment respecting the claim. Dkt. No. 142 at 38-46.

evidencing an alien's lawful immigration status is not a disclosure within the meaning of the Privacy Act.

The Privacy Act provides that the Office of Management and Budget (OMB) guidelines and regulations concerning the Privacy Act are entitled to the deference usually accorded the interpretations of the agency that has been charged with the administration of a statute.  See 5 U.S.C. § 552a(v)(2); Quinn v. Stone, 978 F.2d 126, 133 (3d Cir. 1992); Baker v. Dept. of the Navy, 814 F.2d 1381, 1383 (9th Cir. 1987).  Although "disclosure" is not defined in the Privacy Act, OMB has defined it to mean, "providing personal review of a record, or a copy thereof, to someone other than the data subject or the data subject's authorized representative. . . ."  5 C.F.R. § 297.102 (2001) (emphasis added).  As found by OMB, there is no "disclosure" under the Privacy Act, where the information is provided directly to the individual of whom the information relates.  In other words, "[t]he sending of . . . information about an individual to that individual is not a "disclosure" within the meaning of the [Privacy] Act," even if that information is subsequently revealed to someone other than the individual.  Schowengerdt v. General Dynamics Corporation, 823 F.2d 1328, 1341 (9th Cir. 1987).

Section 264(d) of the INA, 8 U.S.C. § 1304(d) (Supp. IV 1998), provides that the INS must provide to every alien registered in the United States an alien registration card.

Moreover, an alien issued such a card must keep it in his or her possession at all times.   INA § 264(e), 8 U.S.C. § 1304(e) (Supp. IV 1998).   As noted by the Fifth Circuit, 8 C.F.R. § 264.5(g) governs the type of document given to members of the Plaintiff class.   Loa-Herrera v. E.M. Trominski, 231 F.3d at 989. Specifically, the regulation provides, in relevant, part:

> Eligibility for a card while in deportation or exclusion proceedings.   A person in exclusion proceedings shall be entitled to evidence of permanent resident status until ordered excluded. Such evidence shall be in the form of a temporary Form I-551 issued for a period sufficient to accomplish the exclusion proceedings.   A person in deportation proceedings shall be entitled to evidence of permanent resident status until ordered deported or excluded. . . .

8 C.F.R. § 264.5(g) (2002).

Plaintiffs seemingly allege that the documents provided by the Harlingen INS in satisfaction of 8 C.F.R. § 264.5(g) violates the Privacy Act because the notations made to create the document improperly reveals that they are in immigration proceedings. However, inasmuch as the documents provided by the Harlingen INS to members of the Plaintiff class note pending proceedings, the document is provided directly to the alien as "evidence of permanent resident status until ordered deported or excluded", See 8 C.F.R. § 264.5(g) (emphasis added); Exhibit A.   Because the document is provided directly to the alien, the "data subject", there has been no "disclosure" of personal information for purpose of the Privacy Act.   5 C.F.R. § 297.102; see generally

34

Federal Deposit Ins. Corp. v. Dye, 642 F.2d F.2d 833, 836 (5th
Cir. Unit B 1981) ("A dissemination of information to a person .
. . who [was] previously aware of the information is not a
disclosure under the Privacy Act."); accord Schowengerdt v.
General Dynamics Corporation, 823 F.2d at 1341.  The subsequent
disclosure of that information by the alien to a non-agency third
party, is not a disclosure by the agency in violation of the
Privacy Act.  See generally Devine v. U.S., 202 F.3d 547 (2nd
Cir. 2000) (finding no violation where information disclosed to a
party covered by exception to Privacy Act notwithstanding
knowledge that information would then be relayed to parties not
covered by an exception).  If an agency's initial disclosure is
not a Privacy Act violation, a subsequent disclosure by the non-
agency party who received the information to a third party is not
a violation by the agency.

    b.   Intentional and Willful

    Furthermore, the Privacy Act protects only against the
willful and intentional disclosure to a third party of records
contained in an agency's system of record.  See Doyle v. Behan,
670 F.2d 535, 538 (5th Cir. 1982).  The Plaintiffs bear the
burden of proving that the government's actions, when considered
in their context, were so "patently egregious and unlawful" that
anyone undertaking the conduct should have known was "unlawful".
Wisdom v. Department of Hous. & Urban Dev., 713 F.2d 422, 425

(8th Cir. 1983); <u>see also</u> <u>Chapman v. NASA</u>, 736 F.2d 238, 242-43 (5th Cir. 1984).

Here, even if the placement of a notation of pending immigration proceedings can be characterized as a disclosure, the Plaintiffs have not shown that the Respondents knew, or should have known, that the notation was unlawful. The Respondents have a legitimate reason for placing a notation of pending proceedings on the registration document. As noted, the document is provided directly to the alien and the notation added as "evidence of permanent resident status <u>until ordered deported or excluded</u>." <u>See</u> 8 C.F.R. § 264.5(g) (emphasis added). One of the primary purposes of issuing and requiring the possession of alien registration cards is essentially for the government to be aware of the number of aliens in the country and their status. <u>See</u> <u>U.S. v. Campos-Serrano</u>, 430 F.2d 173, 176 (7th Cir. 1970), <u>affirmed</u> 404 U.S. 293 (1971). By indicating that an alien is in proceedings, the document simply informs that the Plaintiff class member's immigration status may be subject to upcoming change or be reaffirmed. Such information unquestionably aids in the purpose of tracking aliens. Exhibit B. Given the purpose, there has been no showing that the Harlingen INS places the notation "without grounds for believing [its actions] lawful" of that it "flagrantly disregarded" the rights guaranteed under the Privacy Act. <u>See</u> <u>Albright v. United States</u>, 732 F.2d 181, 189 (D.C. Cir.

1984).

### c.   Need to Know and Routine Use Exceptions

The Privacy Act permits the disclosure of a record to the
INS and other government agencies, federal and state, that aid in
the INS' functions and statutory mandates.  See 5 U.S.C. §
552b(1) and (3); 62 FR 36572.  As shown, the placement of a
notation on a registration document assists with the INS function
of governing and monitoring the alien's activities and presence
within this country.  See U.S. v. Campos-Serrano, 404 U.S. 293,
299-300 (1971).  As such, the "disclosure" is covered by the
exceptions to the Privacy Act.

### 2.   8 U.S.C. § 1304(b)

Similarly, INA § 264(b), 8 U.S.C. § 1304(b) (Supp. IV 1998),
does not prohibit the INS from noting on a "substitute I-151 or
I-551" that a plaintiff is in immigration proceedings.  INA §
264(b) merely directs the INS to keep confidential, and not make
available, the fingerprint and registration records it maintains
to create an alien registration card that the INA requires an
alien to carry and possess.  See INA §§ 264(d) and (e), 8 U.S.C.
§§ 1304(d), (e).

INA § 264(b) essentially prohibits disclosure of certain
biographical information provided by the alien to non-law
enforcement officials.  See INA § 287(f)(2), 8 U.S.C. §
1357(f)(2) (Supp. IV 1998).  The issuance a temporary Form I-551,

37

or its equivalent, to a plaintiff class member is not an INS disclosure of information to a third party. Rather, in issuing the document to a plaintiff class member, the INS is merely issuing an alien registration card as required by INA § 264(d) that an alien must possess pursuant to INA § 264(e).

## CONCLUSION

The Plaintiffs have failed to satisfy their burden of demonstrating that they merit summary judgment. Specifically, they have failed to show that there is no genuine issue of material fact or that they would prevail as a matter of law. Accordingly, because the Plaintiffs' motion for summary judgment should be denied. Conversely, because the Respondents have established that they would prevail as a matter of law, the Court should grant their summary judgment motion and the Complaint should be dismissed with prejudice.

Respectfully submitted,

ROBERT D. MCCALLUM, JR.
Assistant Attorney General

ERNESTO H. MOLINA
Senior Litigation Counsel

ANTHONY C. PAYNE
Attorney-in-Charge
Office of Immigration Litigation
Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 616-3264

38

EXHIBIT A



**U.S. Department of Justice**
Immigration and Naturalization Service

HLG 120/17

*2102 Teege Street*
*Harlingen, Texas 78550*

September 28, 1999

MEMORANDUM FOR        LARRY P. DOYLE
                      ASSISTANT DISTRICT DIRECTOR FOR EXAMINATIONS
                      HARLINGEN DISTRICT OFFICE
                      HARLINGEN, TEXAS

FROM:        E.M. Trominski
             District Director
             Harlingen District Office
             Harlingen, Texas

SUBJECT:     PAROLE REQUEST

     As a result of an order issued by the federal district court in Brownsville, Texas, procedures regarding the parole of returning resident aliens whose Form I-151 or I-551 has been or will be confiscated by the INS, and who are placed under proceedings have been modified in the Harlingen District. This memorandum serves as a general reminder of the circumstances in which paroling aliens into the United States is permissible and also serves to notify Harlingen Inspectors at Harlingen District Ports of Entry of new procedures implemented as the result of the aforementioned lawsuit.

### 1.    Parole Generally

     Provisions allowing the Attorney General to parole aliens temporarily into the United States pending resolution of removal or exclusion proceedings are found in the Immigration and Nationality Act ("INA") at § 212(d)(5) with related regulations located at 8 C.F.R. 212.5. Aliens seeking admission to the United States who have been found inadmissible may nonetheless be paroled by the District Director through an exercise of discretion for urgent humanitarian reasons or for significant public benefit. The District Director's decision making should be guided by the equities each alien possesses, as stated in the regulations, along with the various humanitarian concerns involved with each application. Each application for parole should be assessed on a case-by-case basis.

## 2.    Aliens Covered by the District Court Order:

### a.    Processing for Parole by the IIs

At this time an additional procedure is being added to the processing of aliens who are returning lawful permanent residents who have been found inadmissible at the POE and who do not qualify as mandatory detainees. The lawsuit in Brownsville has resulted in an order from the Federal District Court ordering the immigration judges to hold parole hearings for certain lawful permanent residents.  To be covered by the District Court order the alien must be:

1. A lawful permanent resident;
2. Who has applied for admission to the United States;
3. Who has been denied admission to the United States;
4. Who has been placed in proceedings;
5. Who is not in custody; and
6. Whose Form I-151 or I-551 has been or will be confiscated by the INS.

These aliens are to be automatically considered for parole into the United States, without the alien's specific request. The II makes a prima facie determination of parole eligibility. If the prima facie requirements are met, the II passes the request telephonically to the Assistant District Director for Examinations (ADDE). The ADDE makes the final determination of parole eligibility and, if the decision is to grant parole, the alien is processed for an I-94 at the POE. With a favorable determination by the ADDE, the alien will be paroled into the United States to await a determination of his or her admissibility by an immigration judge.

If the ADDE is not available or cannot be contacted, efforts will be made for authorization through the regular chain of command (Deputy District Director, District Director, etc.). If for some reason contact cannot be made, the procedures in section b (below) apply. The alien will be instructed to contact the District Office to pursue efforts for a parole or wait for a parole hearing before an immigration judge.

### b.    Processing for Parole by the Immigration Judge

If the ADDE determines that the alien does not warrant parole into the United States to await a determination on his or her admissibility, the attached "Notice and Advisal to Returning Lawful Permanent Residents: Opportunity for Parole" (Notice) must be completed. If the alien is not immediately granted parole after being denied admission, the attached notification is to be executed, even if further efforts will be made to bring additional information to the District Director that may result in a parole. Since subsequent efforts may not result in a parole, the process for the alien to have a parole hearing before an immigration judge will already be initiated, and the Notice is to be completed and processed.

The Notice informs the alien of the availability of a parole hearing before an immigration judge. The alien must complete the section requesting a parole hearing and the form must bear

the alien's signature. Finally  : Notice has a section where the II can  notate the date and time of the parole hearing before the immigration judge.

The II will schedule the parole hearing before the immigration judge on the Friday of the week following the completion of the Notice (i.e., an alien processed on August 9, 1999, will have his hearing scheduled for August 20, 1999). All hearings will be scheduled for 9:00 a.m.

The completed Notice, together with a copy of the NTA, will be sent by facsimile to the number designated by the Executive Office for Immigration Review (EOIR) at (956) 427 8905. The hearings will be held in the courtroom currently set-up for hearings at the Gateway International Bridge in Brownsville, Texas. The Immigration Judge will be physically present on the first Friday of the month. All other hearings will be telephonic. This allows easy processing for the POE inspections as well as a predictable and relatively rapid parole hearing for the alien. Once the II has faxed the Notice, it should be placed into the alien's file together with the facsimile receipt sheet. This Notice will be included in the standard forms when an NTA is processed to begin removal proceedings. When assembling the forms into the alien file, the parole request will become part of the alien's permanent record.

The file containing the NTA, the Notice, and the facsimile receipt must be immediately forwarded to the Office of the District Counsel in Harlingen. This is necessary so that an Assistant District Counsel can review the NTA for legal sufficiency and to prepare for the parole hearing.

### c.    Confiscation of I-551s

Confiscation of permanent residence cards (I-551s or I-151s) at the POE will continue to be governed by the McNary Memorandum (see attached).   Confiscation should only take place after a case-by-case evaluation. Aliens in proceedings shall be allowed to retain evidence of alien registration. When the permanent residence card (I-551 or I-151s) is recovered during processing, the issuance of temporary documentation is mandated as instructed in the McNary Memorandum.

A temporary I-94 document will be annotated with six-month time duration, and arrangements will be made for issuance of an I-688B, employment authorization card. The only notations which should be placed in the card are those described in the McNary memorandum. Any additional annotation should be cleared through the ADDE. Other identification documentation (i.e., driver's license, social security card) should NOT be recovered unless it constitutes bona fide evidence of illegal conduct.

The instructions contained in this memorandum are to be incorporated immediately and will be followed until otherwise notified.

Attachments:  As Stated Above

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN, et al.       )
                              )
v.                            )       CIVIL ACTION NO.
                              )         B-94-215
TROMINSKI, et al.             )
                              )
_____)

### DECLARATION

The undersigned Declarant, being an Immigration Officer,
authorized by Section 287(b) of the Immigration and Nationality
Act, 8 U.S.C. § 1357, and 8 C.F.R. § 103.1(q), states under penalty
of perjury as permitted under 28 U.S.C. § 1746, that:

1.   I, Larry Paul Doyle, was formerly the Assistant District
Director for Examinations for the Harlingen District of the
Immigration and Naturalization Service (Harlingen INS).    I am
currently the Assistant District Director for Inspections;

2.   I am the officer in charge of all ports of entry in the
Harlingen District.   It is my duty to be aware of all procedures
and policies affecting the ports of entry and personnel employed
therein;

3.   With respect to the parole of lawful permanent residents
placed in what is now known as removal proceedings, it is the

general practice of the Harlingen INS to follow the guidelines set forth in the attached September 28, 1999 memorandum, except for section b.  Exhibit 1.  In essence, returning lawful permanent residents who are denied immediate admission to the United States and are placed in removal proceedings are automatically considered for parole into the United States pursuant to 8 U.S.C. § 1182(d)(5).

   4.  Moreover, prior to the consideration of the aforementioned lawful permanent resident for parole, it is the present practice to provide notice of the availability of parole to any alien who establishes the following listed criteria, namely:

      1.  A lawful permanent resident:
      2.  Who has applied for admission to the United States; and
      3   Who has been denied admission to the United States;
      and
      4.  Who has been placed in exclusion or removal proceedings; and
      5.  Who is not in custody;
      6.  Whose Form I-151 or I-551 has been or will be confiscated by the INS.

In practice, unless circumstance require otherwise, if the alien meets the criteria, parole under INA § 212(d)(5)(A) has been granted by the Harlingen INS.  Since a short time after the issuance of the memorandum, I am unaware of any instance where an individual who satisfies the above factors has not been paroled in the United States.  It is not the policy or practice for the Harlingen INS to deny parole for "arbitrary" reasons.

5.   The "confiscation" of a permanent residence card, also
known as a "green card", from a lawful permanent resident paroled
into the United States and placed into removal proceedings is done
on a case-by-case basis and the issuance of an appropriate
temporary documentation is guided by the September 28, 1999 policy
memorandum.   Specifically, when a "green card" is confiscated, it
is the practice, as directed by the "McNary Memorandum", to attach
the following legend, or its functional equivalent, on a I-94 in
order to create a Temporary I-551:

> Paroled: Returning Resident Applicant at _____ (port)
> on _____ (date).   Paroled Pending Determination of
> Right to Reenter.   Employment Authorized.

Any additional notations must be cleared through my office.   Few,
if any, additionally notations have been authorized.   A sample
Temporary I-551 is attached.   Exhibit 2.   If, for whatever reason,
a lawful permanent resident is not provided a Temporary I-551 in
conformance with the September 28, 1999 memorandum, or its
functional equivalent, it is the Harlingen INS's practice to
correct such an error when it is brought to the office's attention.

5.   Finally, if a potential employer of a lawful permanent
contacts the INS, it is not the practice of the Harlingen INS to
disclose "personal information" with respect to the alien.   In
addition, any notation placed on a temporary document provided as
evidence of lawful permanent resident status indicating the alien
is in proceedings is for purpose of providing the alien with

evidence of his or her status and serves to notify employees of the Immigration and Naturalization Service and other law enforcement agencies of that status. Any notation about parole or pending proceedings is not intended to notify a non-governmental third-party that the alien's employment authorization or legal status could be temporary.

Executed this _19th_ day of _February_____, 2003.


_Charles Christopher for_

Larry P. Doyle
Assistant District Director for Inspections
Immigration & Naturalization Service
Harlingen, Texas  78550

## CERTIFICATE OF SERVICE

I hereby certify that on this _20_ day of February, 2003, a copy of was mailed to counsel for plaintiffs by Federal Express, addressed as follows:

> Elizabeth S. Brodyaga, Esquire
> 17891 Landrum Park Road
> San Benito, Texas 78586

Anthony Payne
Attorney for Defendants