188

United States District Court
Southern District of Texas
FILED

MAR 1 4 2003

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,           )
                                 )
v.                               )      C.A. No.  B-94-215
                                 )
TROMINSKI, et al.                )
_____)

PLAINTIFFS' REPLY TO DEFENDANTS'/RESPONDENTS' OPPOSITION TO THEIR
MOTION TO SUMMARY JUDGMENT

TABLE OF CONTENTS

I.      STANDARDS FOR ADJUDICATING PLAINTIFFS'
        SUMMARY JUDGMENT MOTION ............................    1

II.     PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT .............    2

III.    ARGUMENT............................................    3

        A.   PLAINTIFFS HAVE MET THEIR BURDEN OF SHOWING THAT
        PUTTING CLASS MEMBERS' PERSONAL INFORMATION ON DOCUMENTS
        PROVIDED AS EVIDENCE OF THEIR LPR STATUS, VIOLATES THEIR
        RIGHTS UNDER BOTH THE PRIVACY ACT, AND THE IMMIGRATION
        AND NATIONALITY ACT, AND THAT THEY MERIT SUMMARY JUDGMENT
        WITH RESPECT TO THIS ISSUE ............................    3

                1.   THE LEGAL FRAMEWORK ........................    3
                2.   PLAINTIFFS HAVE SHOWN INJURY-IN-FACT, TO
                WIT, THE INVASION OF THEIR LEGALLY PROTECTED
                INTERESTS ........................................    7
                3.   PLAINTIFFS HAVE SHOWN A COGNIZABLE DANGER
                OF RECURRENT VIOLATIONS .........................    9
                4.   THE THREATENED INJURY IS ONE WHICH CANNOT
                BE COMPENSATED, OR FOR WHICH THE COMPENSATION
                CANNOT BE MEASURED BY ANY CERTAIN PECUNIARY
                STANDARD .........................................    10

**B.  PLAINTIFFS ARE ALSO ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIM REGARDING NOTICE OF THE AVAILABILITY OF PAROLE, AND TO A DUE PROCESS HEARING, HOWEVER SUMMARY, BEFORE A PAROLE REQUEST IS FINALLY DENIED** . . . . . . . . . . . .  **11**

    **1.  THE FACT THAT DEFENDANTS MAY NOW BE "VOLUNTARILY" ADVISING CLASS MEMBERS OF THE POSSIBILITY OF PAROLE DOES NOT DEFEAT THE NEED FOR AN INJUNCTION** . . . . . . . . . . . . . . . . . . . . . . . . .  **12**

    **2.  THE SAME ANALYSIS APPLIES TO PLAINTIFFS' REQUEST FOR A DUE PROCESS HEARING PRIOR TO THE FINAL DENIAL OF A PAROLE REQUEST** . . . . . . . . . . . . . . . . .  **14**

    **a.  Given INS' Past History, And The Lack of Any New Regulation Or Other Indication That the Change In Policy Is Permanent, A Permanent Injunction Is Warranted** . . . . . . . . . . . . . . . . . . . . . . . . . .  **15**

    **b. As Lawful Permanent Residents, Plaintiffs Are Entitled to Notice And to a Due Process Hearing, However Summary** . . . . . . . . . . . . . . . . . . . . . . . . .  **16**

        **i.  Due Process** . . . . . . . . . . . . . . . . . . . . . . . . . .  **16**
        **ii.  Right to Notice of Parole** . . . . . . . . . . . . .  **19**
        **iii.  Adjudication of Parole Request** . . . . . . . .  **19**

## TABLE OF AUTHORITIES
### CASES

*Anwar v. INS,*
    116 F.3d 140 (5th Cir. 1997) . . . . . . . . . . . . . . . 20

*Bridges v. Wixon,*
    326 U.S. 135 (1945) . . . . . . . . . . . . . . . . . 17

*Caboni v. GMC,*
    278 F.3d 448 (5th Cir. 2002) . . . . . . . . . . . . . . 1, 11

*Chapman v. NASA,*
    736 F.2s 238 (5th Cir. 1984) . . . . . . . . . . . . . 7

*Doe v. Duncanville Ind. School Dist.,*
    994 F.2d 160 (5th Cir. 1993) . . . . . . . . . . . . 13

*Etuk v. Slattery,*
    936 F.2d 1433 (2nd Cir. 1991) . . . . . . . . . . . . 8

*Hernandez-Leija et al v. Trominski et al,*
    C.A. B-01-206 (S.D. Texas pending) . . . . . . . . 14, 15

*James v. City of Dallas,*
    254 F.3d 551 (5th Cir. 2001) . . . . . . . . . . . . 6

*Koetting v. Thompson,*
    995 F.2d 37 (5th Cir. 1993) . . . . . . . . . . 16, 19

*Landon v. Plasencia,*
    459 U.S. 21 (1982) . . . . . . . . . . . . . . . 17, 18

*Loa-Herrera v. Trominski,*
    231 F.3d 984 (5th Cir. 2000) . . . . . . . . . . 3, 5, 6

*Lopez v. INS,*
    758 F.2d 1390 (10th Cir. 1985) . . . . . . . . . . 2, 3

*M.L.B. v. S.L.J.,*
    117 S.Ct. 555 (1996) . . . . . . . . . . . . . . . 16

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) . . . . . . . . . . . . . . . 18

Meltzer v. Board of Pub. Instruction,
      548 F.2d 559 (5th Cir. 1977),
      cert. denied, 439 U.S. 1089 (1979) . . . . . . . . . . 13

Memphis Light v. Craft,
      436 U.S. 1 (1978) . . . . . . . . . . . . . . . . . . 19

Molex, Inc. v. Nolen,
      759 F.2d 474 (5th Cir. 1985) . . . . . . . . . . . . . 6

Molina v. Sewell,
      983 F.2d 676 (5th Cir. 1993) . . . . . . . . . . . . . 8

Moore v. City of East Cleveland,
      431 U.S. 494 (1977) . . . . . . . . . . . . . . . . . 17

Mullane v. Central Hanover Bank,
      339 U.S. 306 (1950) . . . . . . . . . . . . . . . . . 19

National Treasury Employees Union v. U.S. Dep't of Treasury,
      25 F.3d 237 (5th Cir.1994) . . . . . . . . . . . . . . 5

National Wildlife Fed. v. Hodel,
      839 F.2d 694 (D.C Cir.1988) . . . . . . . . . . . . . 5

Pederson v. La. State Univ.,
      213 F.3d 858 (5th Cir.2000) . . . . . . . . . . . . . 6

Ragas v. Tennessee Gas Pipeline,
      136 F.3d 455 (5th Cir. 1998) . . . . . . . . . . . . . 1

Rosenberg v. Fleuti,
      374 U.S. 449 (1963) . . . . . . . . . . . . . . . . . 16

*Santosky v. Kramer,*
    455 U.S. 745 (1982) . . . . . . . . . . . . . . . . 17

*Shanks v. Dallas,*
    752 F.2d 1092 (5th Cir. 1985) . . . . . . . . . . . 6

*Stanley v. Illinois,*
    405 U.S. 645 (1972) . . . . . . . . . . . . . . . . 17

*Troxel v. Granville,*
    120 S.Ct. 2054 (2000) . . . . . . . . . . . . . . . 18

*Washington v. Glucksberg,*
    521 U.S. 702 (1997) . . . . . . . . . . . . . . . . 18

*Wisdom v. HUD,*
    713 F.2d 422 (8th Cir. 1983) . . . . . . . . . . . 7

*Zadvydas v. Davis,*
    121 S.Ct. 2491 (2001) . . . . . . . . . . . . . . . 18

**STATUTES**

8 U.S.C. §1182(d)(5)(A) . . . . . . . . . . . -i-, 2, 11

8 U.S.C. §1324a(h)(3) . . . . . . . . . . . . . . . . 8

8 U.S.C. §1342a(b) . . . . . . . . . . . . . . . . 10

8 U.S.C. §1357(f)(2) . . . . . . . . . . . . . . . 4, 7

**REGULATIONS**

5 C.F.R. §297.102 . . . . . . . . . . . . . . . . . 4

**OTHER AUTHORITIES**

Operations Instruction 264.2 . . . . . . . . . . . . 9

## I.  STANDARDS FOR ADJUDICATING PLAINTIFFS' SUMMARY JUDGMENT MOTION

The applicable test for summary judgment is best summarized by the
following two quotations.  First, as explained in *Caboni v. GMC*,
278 F.3d 448,451 (5th Cir. 2002) (some internal citations omitted):

> "Summary judgment is proper only 'if the pleadings,
> depositions, answers to interrogatories and admissions on
> file, together with the affidavits, if any, show that
> there is no genuine issue as to any material fact and
> that the moving party is entitled to judgment as a matter
> of law.'" *Turner v. Houma Mun. Fire & Police Civil Serv.
> Bd.*, 229 F.3d 478, 482 (5th Cir. 2000) ... In making this
> assessment, this court will not weigh the evidence or
> evaluate the credibility of witnesses. ...
>
> "Courts of Appeals consider the evidence in the light
> most favorable to the nonmovant, yet the nonmovant may
> not rely on mere allegations in the pleadings; rather,
> the nonmovant must respond to the motion for summary
> judgment by setting forth particular facts indicating
> that there is a genuine issue for trial." *See Spivey v.
> Robertson*, 197 F.3d 772, 774-75 (5th Cir. 1999) (citing
> *Anderson*, 477 U.S. at 248-49), *cert. denied*, 120 S. Ct.
> 2659 (2000) ... After the nonmovant has been given an
> opportunity to raise a genuine factual issue, if no
> reasonable juror could find for the nonmovant, summary
> judgment will be granted. *See* Fed. R. Civ. P. 56(c);
> *Celotex Corp.*, 477 U.S. at 322.

*See also, Ragas v. Tennessee Gas Pipeline*, 136 F.3d 455,458 (5th
Cir. 1998) (some internal citations omitted) (emphasis added):

> Summary judgment is not a "disfavored procedural
> shortcut, but rather an integral part of the Federal
> Rules as a whole, which are designed 'to secure the just,
> speedy and inexpensive determination of every action.'"
> *Celotex*, 477 U.S. at 327. When ruling on a motion for
> summary judgment, "the inferences to be drawn from the
> underlying facts . . . must be viewed in the light most
> favorable to the party opposing the motion." ...
>
> Needless to say, unsubstantiated assertions are not
> competent summary judgment evidence. *Celotex*, 477 U.S.
> at 324. **The party opposing summary judgment is required
> to identify specific evidence in the record and to
> articulate the precise manner in which that evidence
> supports his or her claim. See *Forsyth v. Barr*, 19 F.3d**

1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed. 2d 127 (1994). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 ... (1992).

Plaintiffs will demonstrate herein that:

1) They met their initial burden of demonstrating eligibility for summary judgment;

2) INS has failed to set forth "particular facts indicating that there is a genuine issue for trial." Nor have they "identif[ied] specific evidence in the record and to articulate the precise manner in which that evidence supports [Defendants'] claim," and

3) Plaintiffs are entitled to judgment as a matter of law.

## II.  PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs are seeking summary judgment on the two issues set forth in the Court's Order of September 25, 2002. Specifically, in their summary judgment motion, filed December 2, 2002, Plaintiffs showed that Defendants exercise the parole authority of 8 U.S.C. §1182(d)(5) in a manner inconsistent with Due Process, and that the practice of placing personal notations on substitute I-551 documents violates two statutory bars against divulging personal information about Plaintiffs except under specified circumstances.

As indicated in their summary judgment motion, at p. 3, the Fifth Circuit did not disapprove either this Court's order granting, and amending class certification, nor of the relief granted with respect to the "other documents" issue. Although INS purports not to address the latter, they cite *Lopez v. INS*, 758 F.2d 1390 (10th Cir. 1985), for the proposition that INS may take state drivers' licenses from aliens whom they have reason to believe are in the U.S. unlawfully. (INSoppSJ:3,n.4). As Plaintiffs argued to the

2

Fifth Circuit, apparently convincingly, *Lopez* is not on point. [1]

INS has not, however, disputed the class certification. So at least this aspect can safely be taken as uncontested, and Plaintiffs continue to assume that the other documents issue was also settled in their favor by *Loa-Herrera v. Trominski*, 231 F.3d 984 (5th Cir. 2000), and that they should be granted similar relief on remand.

### III.  ARGUMENT

**A.  PLAINTIFFS HAVE MET THEIR BURDEN OF SHOWING THAT PUTTING CLASS MEMBERS' PERSONAL INFORMATION ON DOCUMENTS PROVIDED AS EVIDENCE OF THEIR LPR STATUS, VIOLATES THEIR RIGHTS UNDER BOTH THE PRIVACY ACT, AND THE IMMIGRATION AND NATIONALITY ACT, AND THAT THEY ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO THIS ISSUE.**

#### 1.  THE LEGAL FRAMEWORK

INS relies primarily on two theories in claiming that Plaintiffs have not met their burden on the extraneous notations issue. First, INS contends that placing such notations on documents given as proof of LPR status does not "broadcast" that information to those to whom Plaintiffs are required to show such documents.  INS also contends that Plaintiffs must show that Defendants the disclosure was "so 'patently egregious and unlawful' that anyone undertaking the conduct should have known that it was 'unlawful'" (INSoppSJ:35), and that in the absence of such a showing, Plaintiffs' case fails.  Neither claim has merit.

---

[1]  Lopez was a garden variety undocumented immigrant, not an LPR.  Moreover, unlike Plaintiffs, he was in detention when his license was confiscated.  As the Court explained, *id.* at 1391:

> Pursuant to their standard practice, the INS officials returned plaintiff's license, which they had taken at the detention center, to the Colorado Department of Revenue, which initiated proceedings to determine whether plaintiff's driver's license should be cancelled.  The state authorities conducted a hearing .. [following which] Colorado revoked plaintiff's license.

3

INS takes issue with the term "broadcast." (INSoppSJ:29). There is no meaningful basis for this objection, [2] since INS does not seem to contend that there is any means by which Plaintiffs can show their temporary documents to potential employers and others to whom they are required, by law, to show proof of LPR status, without these persons viewing the extraneous notations placed on these documents by Defendants. Rather, INS asserts that the **purpose** of the notations is to provide "evidence of the alien's status not only to the alien, but also to law enforcement agencies." [3]

Apart from its frivolous claim that the OMB has defined "disclosure" for purposes of the (entire) Privacy Act in 5 C.F.R. §297.102, (INSoppSJ:33), INS takes refuge in an equally frivolous claim that the "Privacy Act protects only against the willful and intentional disclosure to a third party...," and that Plaintiffs have to prove that their actions were so "patently egregious and unlawful" that the person who provided the unlawful disclosure had to have been aware that it was unlawful. (INSoppSJ:35). [4]

Both the intent of the disclosure, and the knowledge, or lack thereof, of the person making the disclosure, are irrelevant. The

---

[2]    Once again, INS has misrepresented the law to the Court, claiming that the term "disclosure" as used in the Privacy Act is as defined by 5 C.F.R. §297.102 (2001) (INSoppSJ:33). By its terms, this definition applies **only** "as used in this part." The "part" at issue is Chapter I - Office of Personnel Management - Subchapter b - Civil Service Regulations - Part 297 - Privacy Procedures for Personnel Records. It has no bearing whatsoever herein, and it is very hard to believe that the claim is made in good faith.

[3]    INS is only entitled to give out this type information to other law enforcement agencies **on request**. 8 U.S.C. §1357(f)(2).

[4]    This may be the test for obtaining **damages** under the Privacy Act, but not for determining whether the disclosure is legal. If so, the agency could simply ensure that its employees were totally ignorant of the law, and provide information willy-nilly. In essence, this is what INS has done, and continues to do.

4

issue is not whether INS intends to harm Plaintiffs, or even whether the Official putting the notations on the I-94 knows that it violates the Privacy Act. A plaintiff has standing to challenge even conduct that indirectly causes injury. *See, National Wildlife Fed. v. Hodel*, 839 F.2d 694,705 (D.C Cir.1988): "We are concerned here not with the length of the chain of causation, but [with] the plausibility of each of the links that comprise the chain."

It must also not be forgotten that the Fifth Circuit concluded that Plaintiffs had standing with respect to each and every cause of action on which this Court granted relief. *Loa-Herrera, supra* at 987. As the Court explained, *quoting National Treasury Employees Union v. U.S. Dep't of Treasury*, 25 F.3d 237, 241 (5th Cir.1994):

> "[T]he critical standing question is whether the plaintiff has demonstrated a personal, distinct, and palpable injury-in-fact that is fairly traceable to the defendant's allegedly unlawful conduct, and that such an injury is likely to be redressed by a favorable judicial decision." ...

The Court continued as follows, *id.* (emphasis added):

> As plaintiffs adequately allege, inadequate immigration documents result in a greater degree of harassment by the INS and diminished employment opportunities. **Indeed, the government admits that aliens who hold only temporary I-94 forms are "more likely to be more closely inspected" than are holders of green cards.** Although the government argues that plaintiffs fail to identify a single LPR who has *actually* suffered such injury, actual injury is not constitutionally required.
>
> **Mere threatened injury is sufficient, and the threat in this case is real.** For example, according to the plaintiffs, "[a]s a result of INS' arbitrary confiscation of his I-551, Loa [a former plaintiff, now deceased] endured almost two hours of detention at the border, and an unreasonable search, causing 'inconvenience, and public humiliation.'" Plaintiffs therefore have

5

asserted sufficient injury to confer standing.

As further explained in *James v. City of Dallas*, 254 F.3d 551,563 (5th Cir. 2001), quoting *Pederson v. La. State Univ.*, 213 F.3d 858,866 (5th Cir.2000), "As a general matter, injury in fact is the invasion of a legally protected interest." *James* also explained the relationship between the injury needed for Article III standing, and that required to obtain a permanent injunction. *Id.*:

> For injunctions, an additional inquiry is required, namely that Plaintiffs show that they are likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (" 'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.' " (quoting *O'Shea*, 414 U.S. at 495-96, 94 S.Ct. 669)); *see also Pederson*, 213 F.3d at 869 ("Additionally, courts have refused to adjudicate cases that raise only generalized grievances."). However, if the injury is accompanied by "any continuing, present adverse effects," standing for injunctive relief can be found.

*See also, Shanks v. Dallas*, 752 F.2d 1092,1097 (5th Cir. 1985):

> Thus, to obtain a preliminary injunction, a movant must prove a substantial threat that he will suffer irreparable harm [5] if the injunction is not granted. *City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525 (5th Cir. 1983); *Callaway, supra*, at 572. ... To obtain permanent equitable relief, a party need only show that "there exists some cognizable danger of recurrent violation, something more than the mere possibility which

---

[5]     The term "irreparable" was defined as follows in *Molex, Inc. v. Nolen*, 759 F.2d 474,477 (5th Cir. 1985):

> Under Texas law, the irreparable harm required for a permanent injunction is defined as "an injury which cannot be compensated or for which compensation cannot be measured by any certain pecuniary standard." ...

6

serves to keep the case alive." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 ... (1953).

In other words, the test for whether Plaintiffs have made a sufficient showing of harm, or the possibility thereof, to sustain a permanent injunction can be summarized as follows:

1. Have Plaintiffs shown an injury-in-fact, *i.e.*, "the invasion of a legally protected interest."
2. Have they shown that "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." [6]

Plaintiffs have met each and every one of these elements.

### 2. PLAINTIFFS HAVE SHOWN AN INJURY-IN-FACT, *i.e.*, THE INVASION OF A LEGALLY PROTECTED INTEREST.

Plaintiffs have shown the invasion of a legally protected interest, by showing that the use of extraneous notations violates their rights under the Privacy Act, and 8 U.S.C. §1357(f)(2). INS continues to urge that it is not INS that has "disclosed" the information INS places on the temporary cards. (INSoppSJ:32-35). Plaintiffs addressed this claim in their Opposition to Defendants' Motion For Summary Judgment, at pp. 13-17, invoking the principle of indirect action, and that the government cannot accomplish a forbidden result indirectly, [Dkt.179] (hereinafter, (PsOppSJ:___)). INS has not meaningfully responded to these arguments.

Citing *Wisdom v. HUD,* 713 F.2d 422,425 (8th Cir. 1983), and *Chapman*

---

[6] Even if one adds the qualifier "irreparable," it would only be necessary to show that the threatened injury, *i.e.*, "the invasion of a legally protected interest," is one which "cannot be compensated or for which compensation cannot be measured by any certain pecuniary standard."

*v. NASA,* 736 F.2s 238,242-43 (5th Cir. 1984), INS asserts that the Privacy Act allegedly "protects only against the willful and intentional disclosure" of information, asserting that Plaintiffs bear the burden of proving that the government's actions were so "'patently egregious and unlawful' that anyone undertaking the conduct should have known [it] was 'unlawful.'" However, this standard applies only to **damage actions,** and Plaintiffs are seeking an injunction, not damages.  As explained in *Wisdom, supra* at 424:

> The Privacy Act prohibits disclosure of any records on an individual without the individual's consent. 5 U.S.C. §§ 552a(b). ... However, a violation of the Act alone is not enough for Wisdom to recover damages; he must show that the violation had an adverse impact on him, *id.* §§ 552a(g)(1)(D), and that the agency acted intentionally or willfully. *Id.* §§ 552a(g)(4).

Significantly, INS makes the following admission, (INSoppSJ:36):

> One of the primary purposes of issuing and requiring the possession of alien registration cards is essentially for the government to be aware of the number of aliens in the country and their status. [7]  ... By indicating that an alien is in proceedings, the document simply informs [8] that the Plaintiff class member's immigration status may

---

[7]  By definition, the "status" of the Plaintiff class is that of lawful permanent residents. *See, Molina v. Sewell,* 983 F.2d 676 (5th Cir. 1993) (fact that LPR is under deportation proceedings does not affect his status as an LPR).

[8]  The phrase "the document simply informs" is left without an object: informs whom?  Plaintiffs urge that it informs, at the least, all who have a legal right to view it, including potential employers, and providers of services available only to LPRs. *See, e.g., Etuk v. Slattery,* 936 F.2d 1433 (2nd Cir. 1991) (On appeal, the court found that defendant failed to provide plaintiffs with clear proof of their legal status because the wording on the back of the temporary departure form, but not the arrival form, indicated the LPRs were limited in their work eligibility contrary to 8 U.S.C. §§1342a(b)(1)(B)(v) and 1324a(h)(3)).

> be subject to upcoming change or be reaffirmed. [9] Such
> information unquestionably aids in the purpose of
> tracking aliens.

This is pure double-talk. If the purpose of the notation were to
"track aliens," this information would be kept in a computer,
readily available to any INS officer or other authorized user of
the computer system. INS cannot meaningfully "track[] aliens" by
putting handwritten notes on their provisional documents showing
LPR status, to the effect that they are on bond, under deportation
proceedings, etc.. As it is, such information is noted by some
officers, but not by all. If it were important to field officers,
the regulations, or, at the very least, the Operating Instructions,
would require it. And the pertinent Operations Instruction, OI
264.2, does not mention it. *See,* (R3:720-721)

### 3. PLAINTIFFS HAVE SHOWN A COGNIZABLE DANGER OF RECURRENT VIOLATIONS.

Particularly where INS continues to urge that it is legally
entitled to place such notations on LPRs' temporary proof of
status, there can be little question but that there is a
"cognizable" danger of recurrent violations. Furthermore, in
Exhibit "DDD" filed December 2, 2002, in support of Plaintiffs'
motion for summary judgment, Plaintiffs submitted three recent, and
very objectionable, I-94s, given to LPRs who were paroled into the
country for proceedings. [10] The document given to Elisa Barron, A44

---

[9] This is the whole point: it "informs" everyone to whom the
LPR must show the document that s/he is under expulsion
proceedings. This is an invasion of the class member's privacy.

[10] *See also,* Exhibit A, (First I-94 given to Plaintiff Gracia:
with no Employment authorization, and with notation that
"DEPORTATION PROCEEDINGS INITIATED"); Exhibits B and D (I-94s for
Plaintiff Herrera, containing employment authorization, and
notation "UNDER DEPORTATION PROCEEDINGS," and "OUT ON BOND");
Exhibit K (I-94 given Plaintiff Sanchez-Salinas when he posted
bond, with notation "not valid for employment"); Exhibit L (I-94
for Ester Martinez, "paroled pending determination of right to
reenter. Employment authorized"); Exhibit M (I-94 given to

9

082 136, does not even mention that she is an LPR, or that she is entitled to be employed.  Those of Ruben Prado, A34 586 508, and Yesenia Rios, A36 595 234, claim to be "proof of legal status," but likewise fail to mention that they are LPRs.  All three carry expiration dates (without the notation that they can be renewed which INS promised Judge Vela would be placed on such cards).  And all state in one way or another that the LPR is in proceedings.

Given the extreme variations in the form of the I-94s which INS continues to issue, including many which do not even state that the class member is an LPR, or that s/he is authorized to be employed, it is urged that there is no genuine issue of material fact but that there is a "cognizable danger" that the violations will recur.

**4.   THE THREATENED INJURY, *I.E.,* "THE INVASION OF A LEGALLY PROTECTED INTEREST." IS ONE WHICH "CANNOT BE COMPENSATED OR FOR WHICH COMPENSATION CANNOT BE MEASURED BY ANY CERTAIN PECUNIARY STANDARD."**

Finally, there is no genuine issue of material fact on Plaintiffs' claim that the threatened injury is "irreparable."  The injury resulting from an invasion of their rights to privacy cannot be "measured by any certain pecuniary standard."  It includes, for example, humiliation of having to present a document when applying for unemployment compensation which states that the LPR is "on bond" and under proceedings.  It includes the very real possibility that a potential employer will chose not to hire the person. And contrary to INS' claim, (INSoppSJ:29-31), this would not violate 8 U.S.C. §1324B(a).  Even assuming that the person could prove that this was the reason for the denial, it would not be based either on the LPR's national origin, or on his or her citizenship status.  It

---

Plaintiff Cantu de Cabrera, "bond posted" "Conclusion of Exclusion Proceedings" but no employment authorization stamp); Exhibits V and W (second and third I-94s given to Plaintiff Gracia); and Exhibit MM (I-94 given to class member Jose Rosales Lopez, with no indication of LPR status, or employment authorization).

also includes, particularly for unrepresented class members, the possibility that they will be denied the services they seek: such as medical assistance or food stamps, because the document presented does not even indicate that the person is a lawful permanent residents, and therefore entitled to the benefit sought. There are no genuine issues of **material** fact with respect to any of these issues, and INS' analysis of the law is patently incorrect. On the basis of the exhibits submitted by the Parties, viewed in the context of the finding of the Fifth Circuit that Plaintiffs had adequately alleged standing with respect to all causes of action with respect to which this Court previously granted relief, and the state of the law, both with respect to the issues raised, and the test for summary judgment, Plaintiffs are entitled to relief. As set forth in *Caboni v. GMC*, 278 F.3d at 451:

> After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable [factfinder] could find for the nonmovant, summary judgment will be granted.

Plaintiffs are therefore entitled to summary judgment on the issue.

## B. PLAINTIFFS ARE ALSO ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIM REGARDING NOTICE OF THE AVAILABILITY OF PAROLE, AND A DUE PROCESS HEARING, HOWEVER SUMMARY, BEFORE A PAROLE REQUEST IS FINALLY DENIED

Notwithstanding INS' crocodile tears to the effect that they "were unclear as to the factual basis" of the parole claim, [11] this issue is properly before the Court. The operative facts were well-pled, the matter was briefed and argued before Judge Vela, and before the Fifth Circuit. Although INS disputed jurisdiction, and the merits, they never previously claimed to have been "unclear as to the

---

[11] Current counsel may have been unclear, but the "factual basis" was made exquisitely clear by Judge Vela at the summary judgment hearing. (R9:18,21-23,25-40). Both the notice and hearing aspects of the claim were also fully briefed, by both sides, before the Fifth Circuit. There was even an *amicus* brief on the issue.

factual basis for the claim." Said claim is disingenuous.
Further, the arguments made and evidence submitted in this round of
pleadings show that Defendants' claim in their third summary
judgment motion, that conducting parole hearings would place a
"huge administrative burden" on INS, (INSsj3:22), was, if possible,
even more disingenuous. According to Mr. Doyle, this Court's prior
Order was implemented in September, 1999, and to date, every single
class member has been granted parole without the need for a
hearing. (Defendants' Exhibit B, at page 2). However, the matter
is not therefore moot, or resolved, as Defendants suggest.

### 1. THE FACT THAT DEFENDANTS MAY NOW BE ADVISING CLASS MEMBERS OF THE POSSIBILITY OF PAROLE DOES NOT DEFEAT THE NEED FOR AN INJUNCTION.

Plaintiffs are glad to hear that INS is **now** advising class members
of the right to request parole, [12] considering them for parole, and
apparently granting parole to most, if not all, without the need
for a hearing. However, INS previously admitted that, when the
instant action was filed, they did not do so. *See,* (R3:810-11),
wherein Defendants stated as follows (emphasis added):

> When a lawful permanent resident applies for admission as
> a returning resident at a port of entry under the
> jurisdiction of the Harlingen, Texas, INS Office, and
> Respondents have reason to believe that said person has
> committed an act which would subject him or her to
> exclusion proceedings, if criminal prosecution is also
> contemplated, it is the practice of Respondents to parole
> the individual into the United States for prosecution,
> and place him or her under exclusion proceedings. If the
> prosecution results in a conviction, it is the practice
> of Defendants to detain said individual at the Service
> Processing Center at Los Fresnos, Texas, pending
> exclusion proceedings. Upon request of counsel, and in
> some cases upon payment of a bond, such persons are

---

[12] Actually, if one takes Mr. Doyle's Declaration at face
value, **NO** class member has ever been advised of the possibility of
parole, because they were all paroled into the U.S. immediately.
This is consistent with the fact that the written advisal which was
supposed to be attached to the 1999 Memo has not been provided.

frequently paroled into the United States.  **If criminal prosecution is not contemplated, it is the practice of Defendants to initiate exclusion proceedings, and, in most instances, return said person to Mexico, without advising him or her of the possibility of being paroled into the United States.**

The fact that Defendants may now be giving an advisal does not defeat Plaintiffs' right to an *order*, requiring them to do so.  The voluntary cessation of misconduct during the pendency of litigation neither renders the issue moot, nor precludes a grant of injunctive relief. [13]  *See, e.g., Doe v. Duncanville Ind. School Dist.*, 994 F.2d 160,166 (5th Cir. 1993), quoting *Meltzer v. Board of Pub. Instruction*, 548 F.2d 559,566 n.10 (5th Cir. 1977):

> [M]ere voluntary cessation of misconduct when a suit is filed does not necessarily render a case moot or remove the necessary justiciability. The crucial test, in an action involving a request for injunctive or declaratory relief, where defendant has voluntarily ceased his allegedly illegal conduct, is whether it can be said with assurance that there is no reasonable expectation that the wrong will be repeated.

The Declaration of Larry Doyle was written February 19, 2003, (prior to the date INS ceased to exist), and the Department of Homeland Security took over its functions.  It states that it was issued "as a result" of this Court's Order, and appears to have been superceded by a Memorandum issued November 28, 2001, by Michael Pearson, (then) Executive Associate Commissioner, Office of Field Operations. (Petitioner's Exhibit FFF, incorporated by reference).  The fact that Mr. Doyle does not even mention this

---

[13]  The evidence that the practice has changed consists solely of the Declaration of Larry Doyle, unsupported by any memoranda, or written sheets which could be given to members of the Plaintiff class.  This does not lead to a compelling conclusion that once the litigation is over, Defendants will not cease to give such voluntary advisals.  Moreover, Plaintiffs are requesting that the advisals be given in writing, and, although the 1999 Memo references a written attachment, no attachment was provided.

later Memorandum, much less discuss its effect on the one he issued in 1999, greatly undermines the weight which it can be given. [14]

Finally, the Declaration leaves a number of unanswered questions. It first states, (Government Exhibit B, at p.2):

> In essence, returning lawful permanent residents who are denied immediate admission to the United States and are placed in removal proceedings are automatically considered for parole...

However, in the next paragraph, Mr. Doyle states that one criteria for considering parole, and apparently, for providing notice of the availability of parole if the person is not immediately paroled, is that the LPR not be "in custody."  This apparently means "not detained by INS," and not "arrested on a warrant..."  Not only are LPRs taken into custody (i.e., detained by INS), not considered for parole, (unless and until a request is made by counsel), but they are not even informed of the possibility of parole.  *See, e.g.,* Declaration of Ana Patricia Cerda, filed in the related case, *Hernandez-Leija et al v. Trominski et al,* C.A. B-01-206, a copy of which is attached, and incorporated herein as Exhibit GGG.

The fact that INS is not voluntarily giving notice of parole to otherwise similarly situated class members who are taken into custody gives rise to an inference that their willingness to do so with respect to those, (if any), who are not detained derives solely from the instant litigation, and that once the litigation is over, if no Order issues, they would not provide such notice.

**2.  THE SAME ANALYSIS APPLIES TO PLAINTIFFS' REQUEST FOR A HEARING, PRIOR TO THE FINAL DENIAL OF A PAROLE REQUEST.**

**a.   Given INS' Past History, And The Lack of Any New**

---

[14]   The 1999 Memo appears to grant a much broader authority to delegate the parole authority than that of 2001.  The former refers to the chain of command, and concludes with an "etc.," while the latter specifies a limited number of officers who can exercise the authority, and specifies that it is not to be further delegated.

14

**Regulation Or Other Indication That the Change In Policy Is Permanent, And Not Simply Designed To Defeat The Instant Litigation, A Permanent Injunction Is Warranted.**

One other significant policy change is apparent from Government's Exhibits A and B. When the instant litigation was commenced, INS' policy with respect to LPRs placed in proceedings when seeking admission at the border was, in their own words, (R3:811),

> If criminal prosecution is not contemplated, it is the practice of Defendants to initiate exclusion proceedings, and, in most instances, return said person to Mexico, without advising him or her of the possibility of being paroled into the United States.

Apparently, the most significant change in this policy relates to whether, in cases where criminal prosecution is not contemplated, and the person therefore not passed to some other agency, the LPR will be detained, (and therefore become a member of the putative class in *Hernandez-Leija, supra*), or whether the person will be returned to Mexico, (and thus be a member of the **certified** class herein). The Declaration of Larry Doyle seems to say that, in all cases where the person is not detained, class members are paroled into the United States. It says nothing about the circumstances under which such persons are currently detained, or how many have actually been paroled into the U.S. under the 1999 Memorandum.

However, this Court may take judicial notice of the pleadings and evidence in *Hernandez-Leija, supra*, which is also pending before this Honorable Court. Rule 201, Fed. Rules of Evidence. From that case, it is clear that INS now detains LPRs placed in proceedings at the border where criminal prosecution is **not** contemplated. Neither Ana Patricia Cerda nor Carlos Calvillo-Lopez was prosecuted criminally. They detained other named Plaintiffs in that case, who were committing **no offenses at the time they sought admission**, but were placed in proceedings solely because of prior convictions, [15]

---

[15]   Plaintiffs Hernandez-Leija, Rivera-Pulvida, and Grimaldo-Barrientos. Although INS also claimed that Petitioner Calvillo-

and INS' position that IIRIRA abrogated the "brief, casual and innocent" departure exception of *Rosenberg v. Fleuti*, 374 U.S. 449 (1963). In the remaining case,[16] criminal prosecution was dropped. Yet all of these LPRs were detained. One can only wonder how many, if any, LPRs seeking admission who were placed under proceedings were actually paroled under the 1999 Memorandum. Defendants have not stated how many were paroled, and Plaintiffs know of none.

### b. As Lawful Permanent Residents, Plaintiffs Are Entitled to Notice And A Due Process Hearing, However Summary

#### i. Due Process

INS' response to Plaintiffs' Due Process argument, (INSoppSJ:8-17), can almost be reduced to the following tautology: because Plaintiffs do not have a right to parole, they do not have a right to parole. They quote the statute, demonstrate that parole is discretionary, and then claim that Plaintiffs have no right to a Due Process hearing because parole is discretionary. This argument fails, however, because fundamental liberty interests are involved.

There is a protected liberty interest in familial relationships.[17] *See, M.L.B. v. S.L.J.*, 117 S.Ct. 555, 557 (1996) ("The interest of

---

Lopez made an oral false claim to U.S. citizenship, the primary reason for his detention was a prior controlled substance offense.

[16]  *E.g,* Petitioner Jose Esparza.

[17]  The deprivation of such weighty liberty interests even constitutes custody for purposes of seeking vindication of those interests in a habeas action. *See, Koetting v. Thompson, supra,* (although a "detainer" issued in connection with a parole violation does not constitute custody for habeas purposes where no liberty interest is impinged, custody does exist where such an interest is implicated because the detainer interferes with the petitioner's ability to defend against the parole revocation proceedings). Here, the lack of parole interferes with the ability of Plaintiffs to defend against the removal charges. For example, Plaintiff Merino missed his initial hearing, because the notice was sent to his Mexican address, and never arrived. It was only because his wife received her hearing notice, and informed the Judge that he had not, that his case was continued, and he was able to attend.

16

parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment"); *Santosky v. Kramer*, 455 U.S. 745,760 (1982) ("[T]he child and his parents share a vital interest in preventing erroneous termination of their natural relationship"). These interests are protected, even for LPRs. *See, Landon v. Plasencia,* 459 U.S. 21,34 (1982), citing *Bridges v. Wixon,* 326 U.S. 135,154 (1945); *Moore v. City of East Cleveland*, 431 U.S. 494,499 (1977), and *Stanley v. Illinois*, 405 U.S. 645,651 (1972). As explained in *Plasencia*, *id* at 34 (emphasis added):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom." ... *Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual.* ...

*Moore* and *Stanley* are both fundamental rights cases, involving family relationships. *Stanley* struck down a conclusive presumption, similar to that involved herein, and *Moore* held that freedom of personal choice in matters of family life is one of the liberties protected by due process, and that the interest advanced by the State was insufficient to justify the particular intrusion into the family unit. As a LPRs, Plaintiffs enjoy the same Due Process rights, including Substantive Due Process rights, to develop and enjoy intimate family relationships in the United States.

In *Landon v. Placencia,* the Court further noted as follows, *id.*:

> The government's interest in efficient administration of the immigration laws at the border also is weighty. Further, it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.

The Court resolved the seeming tension between these principles as follows, *id.*, at 34-35:

> The role of the judiciary is limited to determining

17

whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy.

The Court then applied the balancing test of *Mathews v. Eldridge*, 424 U.S. 319,334-335 (1976), and concluded that there was a question as to whether or not the procedures actually received had been adequate, and remanded the case for further proceedings. In other words, the Court did *not* find that Congress' plenary control over immigration diminished the fundamental right involved. To the contrary, the Court analyzed the case as one involving Procedural Due Process, to which INS conceded she was entitled.  There was no claim of any Substantive Due Process violation. The existence of a fundamental right triggers a "compelling state interest" analysis of whether Substantive Due Process is violated by a given abridgement. *Washington v. Glucksberg,* 521 U.S. 702,721 (1997):

> As we stated recently in [*City of Boerne v.] Flores,* the Fourteenth Amendment "forbids the government to infringe ... 'fundamental' liberty interests *at all,* no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest."

A statute may violate Substantive Due Process either on its face, or, (as is the case herein), as applied in a particular situation. *See, Troxel v. Granville*, 120 S.Ct. 2054 (2000) (As applied, Washington statute violated substantive due process rights of mother). *See also, Washington v. Glucksberg, supra* at 720 (The Fourteenth Amendment's Due Process Clause has a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests," including parents' fundamental right to make decisions concerning the care, custody, and control of their children).

This analysis is underscored by *Zadvydas v. Davis*, 121 S.Ct. 2491 (2001), wherein a Substantive Due Process analysis was applied, even though the immigrants had lost all claim to LPR status.

### ii.  Right to Notice of Parole

INS also urges that the right to notice of the existence of parole be tested under the standard of *Mullane v. Central Hanover Bank*, 339 U.S. 306 (1950) (INSoppSJ:17-23).. This is incorrect. The type of notice involved in *Mullane,* notice of the existence of certain proceedings, is fundamentally different from the notice issue involved herein. This aspect of the case was thoroughly explored in Plaintiffs' Opposition to Defendants' Motion For Summary Judgment, at pp. 4-6. INS has ignored the fact that, by definition, Plaintiff class members are stranded in Mexico, and do not have access to the necessary materials. Instead, INS concedes that for Due Process purposes, their status is assimilated to that of LPRs "continuously residing and physically present" in the U.S., (INSoppSJ:23), and attempts to use this doctrine to urge that they are not entitled to "more Due Process" than those who are in the U.S., (and have access to the statutes at issue). This is absurd. Plaintiffs are not requesting "more Due Process." Rather, they claim that, as in *Memphis Light v. Craft*, 436 U.S. 1 (1978), the procedures which Due Process requires depends on the circumstances. Here, INS does not dispute that Plaintiffs have no meaningful access to the statutes and regulations at issue, and therefore, no reasonable means of informing themselves of parole procedures.

### iii.  Fair Hearing - Adjudication of Parole Request

Again, INS urges that Plaintiffs have no "protected interest" in parole. But as seen above, they have a strong interest in defending their cases, which is jeopardized by their inability to return to the U.S. *See, Koetting v. Thompson, supra.* As with Plaintiffs Merino and Ascencio, there is economic loss, due to the loss of employment, which makes it hard to retain counsel. There is an increased danger that they will not receive notice of the hearing, as occurred with Mr. Merino. And there is also the fundamental right to family relationships, which suffer greatly when the LPR is stranded in Mexico. For example, the USC daughter of Merino and

Ascencio was forced to miss school, while their toddler, USC son, was kept apart from his parents for many months.

INS acknowledges that "[i]f a protected interest is involved, then some form of hearing is required before an individual is finally deprived of a property interest." (INSoppSJ;24). Even assuming that this analysis applied only to property interests, Plaintiffs do have such an interest in being able to return to their homes and jobs in the United States. Plaintiff Merino lost his job, as, by definition, would any employed class member stranded in Mexico. Therefore, property interests are also threatened.

Similarly, INS' claim that there is no "prejudice" [18] because they have not recently denied parole to any class member, (INSoppSJ:25), does not defeat Plaintiffs' right to an injunction. As seen above, there is a strong probability that, once the litigation is over, they will revert to their old practices. To the contrary, it appears that they have changed their procedure, such that they now **detain** some, if not most, of the LPRs who would otherwise become class members, thereby defeating their class status.

Respectfully Submitted,

_Lisa S. Brodyaga_

---

[18]  INS quotes _Anwar v. INS_, 116 F.3d 140,144 (5th Cir. 1997) as follow: "Due process challenges ... require an initial showing of substantial prejudice." (INSoppSJ:25), But the full sentence is: "Due process challenges **to deportation proceedings** require an initial showing of substantial prejudice." (emphasis added). Plaintiffs are not challenging "deportation proceedings," and there is no such general principle as advanced by INS, by omitting the crucial qualifier. Unfortunately, this type of intellectual dishonesty has characterized OIL's work in the instant case. _See, e.g._, Plaintiffs' Motion For Rule 11 Sanctions, and should cause this Honorable Court to use extreme caution in accepting, at face value, any representation made by them.

20

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID.  1178
Texas Bar 03052800

Thelma O. Garcia, Attorney
301 E. Madison
Harlingen, TX 78550
(956) 425-3701
(956) 428-3731

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, and modified proposed Order, were mailed, first-class postage prepaid, to Anthony Payne, Attorney, OIL, at Box 878, Ben Franklin Station, Washington, D.C. 20044, on March 14, 2003.

21