198

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

SEP 25 2003

Michael N. Milby
Clerk of Court

**JUANA ASCENCIO-GUZMAN, et al,**

**Plaintiffs/Petitioners,**

**v.**

**E.M. Trominski, et al.,**

**Defendants/Respondents.**

**No. B-94-215**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS/RESPONDENTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND RESPONSE TO PLAINTIFFS' OBJECTIONS**

ROBERT D. McCALLUM, JR.
Assistant Attorney General
Civil Division

ERNESTO H. MOLINA, JR.
Senior Lit. Counsel
Office of Immigration Litigation

ANTHONY C. PAYNE
Trial Attorney
Attorney in Charge
U.S. Dept. of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878
Washington, DC 20044
Tel: (202) 616-3264
Fax: (202) 616-4975

MICHAEL T. SHELBY
United States Attorney
Southern District of Texas

LISA M. PUTNAM
Special Assistant U.S. Attorney
Ga. Bar No. 590315/
Federal Bar No. 23937
P.O. Box 1711
Harlingen, Texas 78551
Tel: (956) 389-7051
Fax: (956) 389-7057

**TABLE OF CONTENTS**

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING . . . . . 1

STATEMENT OF THE ISSUES PRESENTED TO BE RULED UPON BY THE COURT. . . . . 5

BACKGROUND-THE REPORT AND RECOMMENDATION . . . . . 6

SUMMARY OF ARGUMENT . . . . . 8

ARGUMENT. . . . . 12

I. THE COURT SHOULD REJECT THE REPORT'S IDENTIFICATION OF THE ISSUES PROPER FOR CONSIDERATION . . . . . 12

A. The Report Fails to Address the Defendants' September 21, 2001 Motion to Dismiss . . . . . 13

B. In Light of the Second Amended Complaint, the Fifth Circuit's Decision, and this Court's Denial of the Plaintiffs' Motion to Amend the Complaint after Remand, the Report's Identification of the Issues Remaining for Adjudication Is in Error. . . . . . 18

1. Second Amended Complaint. . . . . 18

2. Fifth Circuit's Decision . . . . . 23

II. THE COURT SHOULD REJECT THE REPORT'S CONCLUSION THAT THE DEFENDANTS VIOLATE 8 U.S.C § 1304(b), WHEN A TEMPORARY FORM I-551 IS ISSUED TO A LAWFUL PERMANENT RESIDENT PLACED INTO IMMIGRATION PROCEEDINGS . . . . . 26

A. The Court Should Reject the Report and Dismiss the Claims of Plaintiffs That 8 U.S.C. § 1304(b) Prohibits a Notation on the Replacement Document Provided to a Lawful Permanent Resident Which Indicates Pending in Removal Proceedings . . . . . . . . . 26

1. 8 U.S.C. § 1304. . . . . . . . . . 26

2. 8 C.F.R. § 264.5(g) . . . . . . . . 35

B. Alternatively, The Court Should Reject the Report's Suggestion That There Is No Genuine Issues of Material Fact. . . . . . . . 39

III. IN LIGHT OF THIS COURT'S REASONING IN HERNANDEZ-LEIJA V. E.M. TROMINSKI, B-01-206, AND THE SEVENTH CIRCUIT'S DECISION IN SAMIRAH V. O'CONNELL, 335 F.3d 545 (7th Cir. 2003), THE PLAINTIFFS PAROLE CLAIM IS WITHOUT MERIT AND SHOULD BE DISMISSED. . . . . . . . . 42

A. For the Reasoning Set Forth in this Court's Decision in Hernandez-Leija v. E.M. Trominski, B-01-206, dated September 15, 2003, the Plaintiffs' "Parole Claim" is Without Merit . . . . . . . . . . . . 45

B. Because the Plaintiffs' Parole Claim Is Not a Valid Constitutional Challenge, Samirah v. O'Connell, 335 F.3d 545 (7th Cir. 2003), Precludes this Court's Jurisdiction. . . . . 46

CONCLUSION . . . . . . . . . . . . . . . . . . 48

CERTIFICATE OF SERVICE

ORDER

**TABLE OF AUTHORITIES**

**CASES**

Board of Pardons v. Allen, 482 U.S. 369 (1987) . . . . . . . . . . . . . . 47

CDI Information Servs. Inc. v. Reno,

278 F.3d 616 (6th Cir. 2002) . . . . . . . . . . . 38

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . . . . . 19

Crowe v. Smith,
261 F.3d 558 (5th Cir. 2001) . . . . . . . . . . 24

Demore v. Kim,
123 S.Ct. 1708 (2003) . . . . . . . . . . . 5, 6, 42

Gisbert v. U.S. Attorney General,
988 F.2d 1437 (5th Cir. 1993) . . . . . . . . . . 46

Hang On, Inc. v. City of Arlington,
65 F.3d 1248 (5th Cir. 1995) . . . . . . . . . . 23

Harris v. Sentry Title Co.,
806 F.2d 1278 (5th Cir. 1987) . . . . . . . . . . 25

Heckler v. Chaney,
470 U.S. 821 (1985) . . . . . . . . . . . . 11, passim

Isreal Hernandez-Leija, et. al v. E.M. Trominski, et. al,
C.A. No. B-01-206 . . . . . . . . . . . . . 23, passim

Leroy v. City of Houston,
906 F.2d 1068 (5th Cir. 1990) . . . . . . . . . 14, 15

Loa-Herrera v. E.M. Trominski,
231 F.3d 984 (5th Cir. 2000) . . . . . . . . 2, passim

Ponce-Gonzalez v. INS,
775 F.2d 1342 (5th Cir. 1985) . . . . . . . . . 12, 37

Public Citizen, Inc. v. Bomer,
274 F.3d 212 (5th Cir. 2001) . . . . . . . . . 10, 33

Samirah v. O'Connell,
335 F.3d 545 (7th Cir. 2003) . . . . . . . . 5, passim

Torres-Aguilar v. INS,
246 F.3d 1267 (9th Cir. 2000) . . . . . . . . . . 48

U.S. v. Campos-Serrano,
404 U.S. 293 (1971) . . . . . . . . . . . . . 31

Van Dinh v. Reno,

197 F.3d 427 (10th Cir. 1999) . . . . . . . . . . 38

**STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING**

On July 15, 1994, plaintiffs brought this civil action in District Court for the Southern District of Texas, Brownsville, Texas ("Court"), on a Petition for Writ of Habeas Corpus and Class Action Complaint for Declaratory Judgment and Injunctive Complaint accompanied by a Motion for Preliminary Injunction. Docket Entry 1 and Docket Entry 2.[2] Plaintiffs filed a motion for class certification on December 6, 1994. Docket Entry 11. On July 28, 1994, plaintiffs amended their Complaint. Docket Entry 7. On January 17, 1995, plaintiffs filed a motion for leave to file another amended complaint, accompanied by their Second Amended Petition and Complaint ("Second Amended Complaint"). Docket Entry 14; Docket Entry 15.

On June 12, 1995, plaintiffs filed their motion for partial summary judgment based on the Second Amended Complaint. Docket Entry 40. Defendants filed their response and motion for summary judgment on August 28, 1995. Docket Entry 53. On April 14, 1998, this case was reassigned to this Court. The previously presiding District Court Judge, the Honorable Filemon B. Vela ("Judge Vela"), issued an Order on May 21, 1998, which directed all pending motions, including the cross-motions for summary judgment, to be dismissed without prejudice and granted leave to

---

[2] In referring to a "Docket Entry", defendants cite to a filing with this Court as listed on the Court's Docket Sheet.

the parties to resubmit any motions which had been dismissed. Docket Entry at 96.

On or about September 11, 1998, although they had not resubmitted their motion for summary judgment, plaintiffs submitted to this Court two documents, one entitled "Notice of Submission of Proposed Order" and the other entitled "Memorandum and Order." On September 30, 1998, this Court signed the Memorandum and Order without modification and issued it as its own. Docket Entry 97. The Order dismissed the case and granted summary judgment for plaintiffs. Id.

The defendants, on October 15, 1998, filed a motion to alter and set aside the Memorandum and Order of September 30, 1998, Docket Entry 101, and a reply on October 19, 1998. Docket Entry 100. In response, the plaintiffs filed another proposed order with the Court similar to the one filed on September 30, 1998, and the Court adopted it on November 25, 1998 ("Court's Order"). Docket Entry 104. The order became final on January 13, 1999. Docket Entry 109.

The defendants timely appealed the Court's January 13, 1999 Order to the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit"). Docket Entry 110. On October 31, 2000, the Fifth Circuit vacated the entirety of this Court's Order, reached several legal conclusions, and remanded for further necessary proceedings. Loa-Herrera v. E.M. Trominski, 231 F.3d 984, 986

(5th Cir. 2000); Docket Entry 121. The mandate issued on January 12, 2001. Id.

On July 23, 2001, this Court held a status conference to determine what issues remain to be adjudicated after the Fifth Circuit's decision. Docket Entry 122. Plaintiffs argued that most issues "are still alive" after the Fifth Circuit's decision; defendants argued that the Fifth Circuit's decision narrowed the issues for this Court's consideration. Docket Entry 130. On July 23, 2001, plaintiffs filed a Notice of Post-Remand Statement of Outstanding Issues. Docket Entry 128. On August 1, 2001, in an effort to determine "what issues remain before the Court in the case at bar," this Court established a schedule for determining the remaining issues and for filing of dispositive motions. Docket Entry 131.

On August 13, 2001, plaintiffs filed a third Motion to Amend the Pleadings; the defendants opposed the motion. Docket Entries 134 and 140. On September 21, 2001, the defendants filed their response to plaintiffs' Statement of Outstanding Issues as well as a Motion for Summary Judgment. Docket Entry 147. Plaintiffs filed their opposition to the motion on November 5, 2001. Docket Entry 149. On November 6, 2001, the Court denied the plaintiffs' third motion to amend the pleadings. Docket Entry 150.

On January 31, 2002, the Court referred the matter to Magistrate Judge Felix Recio ("Judge Recio"). On September 18,

2002, Judge Recio indicated at a status conference that defendants' motion for summary judgment will be reviewed. Docket Entry 163. On September 25, 2002, Judge Recio issued an order finding the following:

> [T]his Court has determined that there are two issues to be determined after the Court of Appeals' remand:
>
> 1. Whether the manner in which the INS exercises its parole authority with respect to legal permanent residents seeking admission that were not arrested on a warrant prior to being returned to their native country is constitutional; and
>
> 2. Whether there are certain legal authorities for limiting the INS's ability to place notations on the substitute I-151 or I-551 documents which disclose personal information to anyone who may view the documents.
>
> This determination does not effect the Defendant's Motion for Summary Judgment (Doc # 147), which will remain pending. However, both parties are now required to brief the aforementioned two issues and/or file dispositive motions.

Docket Entry 165. December 2, 2003, the parties filed briefing respective motions for summary judgment.[3] Docket Entries 172 and 174. The plaintiffs filed their opposition to the defendants' motion on January 9, 2003, and the defendants filed their

[3] The defendants' motion served to supplement its prior motion filed on September 21, 2001.

opposition on February 21, 2003. Docket Entries 179 and 184. On August 20, 2003, Judge Recio issued his Report and Recommendations ("Report") that plaintiffs' Motion for Summary Judgement should be granted in part and denied in part; additionally, he recommended that defendants' Motion for Summary Judgment be granted in part and denied in part. Docket Entry 191.

**STATEMENT OF THE ISSUES PRESENTED TO BE RULED UPON BY THE COURT**

1. Whether the Report addresses the arguments in defendants' September 21, 2001 Motion to Dismiss.

2. Whether the Report properly identifies the issues properly before the Court on remand in light of the Second Amended Complaint, the Court of Appeals' order, and this Court's denial of plaintiffs' attempt after remand to amend the Complaint for a third time.

3. Whether the Court should reject to Report's conclusion that placing a notation on a Temporary Form I-551 that a lawful permanent resident is in deportation proceedings violates 8 U.S.C. § 1304(b) where there is a genuine issue of material fact, where the plaintiffs have not established standing with respect to the issue, and where the Report errs as a matter of law.

4. Whether the Court lacks jurisdiction to consider whether the replacement documentation given to the plaintiffs violates 8 C.F.R. § 264.5(g), and, if so, whether the Co, if so, whether the Court should reject to Report's conclusion where there exists a genuine issue of material fact and, as a matter of law, the Report is in error.

5. Whether the Court should adopt the Report's recommendation that the Supreme Court's decision in Demore v. Kim, 123 S.Ct. 1708 (2003), "as well as 8 U.S.C. § 1226(e), have foreclosed all of the Plaintiffs' arguments with regard to parole.".

6. Whether the Court should adopt the Report's conclusion with respect to the plaintiffs' parole claim where it considered and rejected a similar claim in its recent order in Hernandez-Leija v. Trominski, 01-206, and, alternatively and for the reasons set forth in Samirah v. O'Connell, 335 F.3d 545 (7th Cir. 2003), it lacks jurisdiction over the brought by the plaintiffs with respect to the issue.

**BACKGROUND**

**THE REPORT AND RECOMMENDATION**

The Report correctly notes that on October 31, 2000, the Fifth Circuit vacated this Court's January 13, 1999 final order. The Report, without discussion, states that the parties were only permitted to brief the two issues identified by Judge Recio in his September 26, 2002 order. Report at 1-2.

In the "Analysis" sections, the Report recommends that the plaintiffs' arguments with regard to parole have been foreclosed by the Supreme Court's decision in Demore v. Kim, 123 S.Ct. 1708 (2003), and 8 U.S.C § 1226(e). Report at 3. Specifically, the Report states that "[t]he procedures in place [for parole] in the Harlingen INS are discretionary, therefore this Court, in accordance with Section 1226(e), is barred from reviewing the issue." Report at 4. The Report also concludes that "[t]he Supreme Court ruled that individualized determinations of whether aliens posed a flight risk were unnecessary in preserving the Due Process rights of LPRs." Id. The Report, accordingly, recommends that the defendants' Motion for Summary Judgment with

respect to the issue be granted and the plaintiffs' Motion for Summary Judgment to the same be denied. Report at 5.

The Report identifies the second issue for consideration as whether the "the documents provided by the Harlingen INS District, which are in accordance with 8 C.F.R. § 264.5(g), nevertheless violate both the Privacy Act and 8 U.S.C. 1304(b) because the notations made on the document reveal that the Plaintiffs are in deportation proceedings." Report at 5. The Report finds that:

> The practice of some INS agents of putting notations about a Plaintiff's legal problems on said documents, without the Plaintiff's consent, violated the clear meaning of 8 U.S.C. Section 1304(b). If an alien is expected to carry one of these documents at all times, the personal information noted on the document is indirectly disclosed to anyone who asks to see the form. Therefore, when a Harlingen INS official makes these type of notations, they are violating Section 1304(b).

Report at 7-8. In so doing, the Report acknowledges that there is no formal form or document entitled "Temporary Form I-551," but determines that "INS's Operations Instruction ("OI") 264.2 specifies the manner in which an I-94 used for this purpose is prepared." Report at 8. The Report concludes:

> Any modifications to the INS's own Operating Instructions within the Harlingen INS District are inconsistent and should be prohibited. Additionally, the practice of some INS agents inscribing personal information about Plaintiffs' legal problems on the I-94s provided as temporary proof of

> their LPR status, without Plaintiffs' consent, violates their rights under 8 U.S.C. Section 1304(b).

Report at 8-9. The Report, therefore, recommends that Plaintiffs' Motion for Summary Judgement with respect to the issue be granted and that the Defendants' corresponding Motion for Summary Judgment be denied. Report at 9.

## SUMMARY OF ARGUMENT

The Court should reject the Report's identification of the issues that are ripe for consideration in this remanded matter. The Second Amended Complaint, the Fifth Circuit's decision, and this Court's denial of plaintiffs' attempt to amend the Complaint after remand indicate that only one issue was proper for consideration in the motions for summary judgment. Because the Second Amended Complaint only lists causes of action challenging the defendants confiscation of a "green card" from a plaintiff class member, the Court's consideration is limited to the claims relating to that issue.

Additionally, the Fifth Circuit's decision was not an exercise in futility. Rather, the decision further narrows the scope of the proceedings by specifying the issues ripe for consideration on remand. Finally, this Court denied the plaintiffs attempt after the Fifth Circuit's remand to again amend the Complaint to raise new issues and arguments. The only issue before the Court, as specified by the Fifth Circuit, is

whether an injunction is appropriate in light of 8 C.F.R. § 264.5(g). Loa-Herrera v. E.M. Trominski, 231 F.3d at 989. All other issues identified by the Report are not properly before the Court.

Even if the plaintiffs had properly raised the claims identified by the Report, the Court should reject its recommendation with respect to the issue of the confiscation of an plaintiff class member's registration card and replacement with a card that complies with 8 C.F.R. § 264.5(g) and 8 U.S.C. § 1304. As an initial matter, there is a genuine issue of material fact with respect to the practice of the defendants. The Report concludes that it is the defendants current practice to place inappropriate "personal information" on replacement registration cards given to plaintiff class members. In light of a September 28, 1999 Memorandum contrary to the Report's finding and an affidavit indicating that the Memorandum is currently followed, the Report's factual finding that notations are placed on documents is erroneous and should not be adopted.

Moreover, the Report also erroneously concludes that 8 U.S.C. § 1304(b) prohibits the notation of pending removal proceedings on a class members registration card. The statute only requires that the defendants keep confidential the records made by a class member to register as required by 8 U.S.C. §

1302. It does not proscribe the information that may be provided on a registration card issued pursuant to 8 U.S.C. § 1304(d).

In addition, the plaintiffs have not shown standing with respect to the claim. Standing, at its "irreducible constitutional minimum," requires a plaintiff "to demonstrate: they have suffered an 'injury in fact'; the injury is 'fairly traceable' to the defendant's actions; and the injury will 'likely ... be redressed by a favorable decision.'" Public Citizen, Inc. v. Bomer, 274 F.3d 212, 217 (5th Cir. 2001) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). Plaintiffs raise the theoretical claim that they suffer injury on account of a notation that indicates pending immigration proceedings because a "potential" employer would tend not to offer employment to any such alien. The Immigration and Nationality Act, however, prohibits a potential employer from engaging in citizenship status discrimination. See 8 U.S.C. § 1324b(a). As such, a potential employer may not decline to hire a lawful permanent resident status notwithstanding the alien has been placed in proceedings. Moreover, the defendants are not responsible for the unlawful actions of a third party. The absence of a defined injury creates a standing issue with respect to the Plaintiffs' challenge to the alleged notations.

The Report further errs in concluding that the defendants do not comply with 8 C.F.R. § 264.5(g). The Immigration and Nationality Act provides that is within the Attorney General's

express discretion to determine what constitutes a proper registration card under 8 U.S.C. § 1304(d). The Attorney General has set forth in 8 C.F.R. § 264.5(g), what documents satisfy the requirements of 8 U.S.C. § 1304(d) for members of the class. The Fifth Circuit has already specified that for class members placed in deportation proceedings, or the removal proceeding equivalent, the regulation does not specify the nature of the documentation. The documents provided to those plaintiff class members is, therefore, subject to the Attorney General unreviewable discretion because the Court lacks judicable standards with which to review. See Heckler v. Chaney, 470 U.S. at 830 (1985).

Similarly, 8 C.F.R. § 264.5(g) prescribes the type of registration card that is provided those class member placed in exclusion proceedings, or the removal equivalent, namely, as found by the Fifth Circuit, a Temporary Form I-551. However, as correctly found by the Report, neither the statute nor the regulations provide the standards for what constitutes a Temporary Form I-551. The nature of the documentation, therefore, is within the unfettered discretion of the Attorney General and not subject to this Court's review. See Heckler v. Chaney, 470 U.S. at 830 (1985). The Report also erroneously relies on internal INS Operation Instructions to specify what constitutes a Temporary I-551. As found by the Fifth Circuit, "[t]he Operations Instructions are, however, only internal guidelines for INS personnel, and neither confer upon petitioner substantive rights nor provide procedures upon which he may

rely." Ponce-Gonzalez v. INS, 775 F.2d 1342, 1346 (5th Cir. 1985).

Furthermore, for all members of the class, the Court lacks jurisdiction to consider whether the defendants provide documentation compliant with 8 C.F.R. § 264.5(g). Because the regulations do not define the standards of the documents provided, what is listed on the documents, as noted by the Fifth Circuit, is within the Attorney General's "express discretion." 8 U.S.C. § 1252(a)(2)(B)(ii) precludes this Court's jurisdiction over the Attorney General's discretion decision.

Finally, for the reasons set forth in its September 15, 2003 order in Hernandez-Leija v. Trominski, 01-206, the Court should adopt the Report's recommendation that the defendant's motion for summary judgment be granted with respect to the plaintiffs' parole claim. The Court's September 15, 2003 order considered and rejected the parole claim. As the plaintiffs claim is not a colorable constitutional challenge, the Court it lacks jurisdiction to consider the action for the reasons set forth in Samirah v. O'Connell, 335 F.3d 545 (7th Cir. 2003).

**ARGUMENT**

**I. THE COURT SHOULD REJECT THE REPORT'S IDENTIFICATION OF THE ISSUES PROPER FOR CONSIDERATION**

The Court should reject the Report's identification of the issues that are ripe for consideration after the Fifth Circuit's remand of the matter.

**A. The Report Fails to Address the Defendants' September 21, 2001 Motion to Dismiss**

As an initial matter, the Report fails to address the arguments in the defendants' September 21, 2001 motion to dismiss with respect to what issues are properly before the Court. On November 25, 1998, this Court adopted the plaintiffs' proposed order and memorandum of law and issued its final judgment on January 13, 1999. Docket Entries 104 and 109. The defendants appealed the Court's Order to the Fifth Circuit which, on January 12, 2001, issued as a mandate its decision vacating this Court's Order and remanding the case, in part, "for any further proceedings that may be required." Loa-Herrera v. E.M. Trominski, 231 F.3d at 987.

The Fifth Circuit identified this Court's Order as ordering the following:

> 1. Pursuant to the intent of the McNary Memorandum, Defendants shall only confiscate the laminated Form I-151 or I-551 of a non-arriving lawful permanent resident placed under expulsion proceedings, and not held in custody, when the INS District Director, chief patrol agent, or officer in charge determines that a temporary document is needed for a justifiable, particularized reason, based on the individual facts of the case. When such a resident's green card is confiscated, Defendants shall provide temporary evidence of lawful permanent resident status, which shall be prepared in accordance with Operation Instruction 264.2, and shall be issued for at least six months, and shall contain a notation that it is renewable.
>
> 2. When a permanent resident applying for admission to the U.S. is placed under expulsion proceedings, Defendants may

> confiscate the resident's green card, but shall afford said person a prompt hearing before an Immigration Judge, in accordance with 8 C.F.R. § 236.1, to determine whether he or she should be paroled into the U.S. during the pendency of said proceedings, and if so, under what conditions. If the person is so paroled, and not held in custody, Defendants shall provide a substitute document evidencing permanent resident status, and entitlement to be employed in the U.S.; and
>
> 3. Defendants shall not confiscate any other lawfully issued documents from permanent residents, absent a good faith belief that such documents constitute bona fide evidence of unlawful conduct.

Loa-Herrera v. E.M. Trominski, 231 F.3d at 986 n.3; Docket Entry 104. In its decision, the Fifth Circuit expressly stated that "we vacate the order and remand for further proceedings." Loa-Herrera v. E.M. Trominski, 231 F.3d at 987. When the Fifth Circuit expressly states that it "vacates" a district court's judgment, it "obviously means the *entire* judgment." Leroy v. City of Houston, 906 F.2d 1068, 1076 (5th Cir. 1990). Accordingly, the Fifth Circuit's order expressly vacated this Court's Order, not just those issues it specifically addressed in its decision, and remanded the matter for proceedings consistent with its order.

On July 23, 2001, the Court held a status conference in the matter to determine what issues remain to be adjudicated after the Fifth Circuit's decision. Docket Entry 122. On August 1, 2001, in an effort to determine "what issues remain before the Court in the case at bar," this Court established a schedule for

determining the remaining issues and for filing of dispositive motions. Docket Entry 131.

Pursuant to the Court's order, the defendants, on September 21, 2001, filed a Motion for Summary Judgment which served to identified and addressed the issue believed to be remaining for adjudication upon remand. Docket Entry 147. In effect, the defendants argued that in light of the Second Amended Complaint, the Fifth Circuit's decision, and this Court's denial of the plaintiffs' attempt to amend their complaint after remand, the issues remaining for consideration on remand were narrowed and only one issue remained ripe for adjudication. Docket Entries 147 and 151. The plaintiffs filed their opposition to the motion on November 5, 2001. Docket Entry 149. On December 5, 2001, the Court ordered the parties to cease filing documents "until such time as the Court rules on the Motion for Summary Judgment (Dkt. 147). Docket Entry 156.

On January 31, 2002, the matter was referred to Judge Recio and a status conference was held on September 18, 2002. Docket Entries 158 and 163. At the status conference, Judge Recio "addresse[d] the parties and state[d] the motion for Summary Judgment will be reviewed." Docket Entry 163. Judge Recio also reminded the parties that this Court's December 5, 2001 order prohibiting the filing of documents until the adjudication of the Motion for Summary Judgement remained in effect. Id.

As indicated, Judge Recio, in a September 26, 2002 order, identified two issues to be briefed by the parties on remand;

additionally, he specified that "this determination does not effect the Defendant's Motion for Summary Judgment (Doc. # 147), which will remain pending." Docket Entry 165. He ordered the filing of briefing and dispositive motions relating to the two identified issues; pursuant to the Court's order, the parties filed briefs, dispositive motions, and responses to the identified issues. Docket Entries 165, 172, 174, 179, 184, and 188.[4]

The Report was issued on August 21, 2003. Docket Entry 191. The Report, however, fails to adjudicate the arguments set forth in defendants' Motion for Summary Judgment filed on September 21, 2001. Docket Entry 147. Specifically, despite the assurances that the Motion for Summary Judgment would be reviewed and that it was pending at the time of its issuance (Docket Entries 163 and 165), the Report provides no discussion with respect to the issues remaining for this Court's consideration. Docket Entry 191.[5]

[4] The parties were not permitted to brief any issues not identified in the order, such as the "other document" finding in this Court's Order.

[5] The Report identifies Docket Entry 147, the defendants' September 21, 2001, Motion for Summary Judgement, as the filing which is recommended to be denied in part and granted in part. Report 2. The Report, however, does not address the arguments with respect to the issues properly before the Court on remand, instead, it focuses on those issues ordered to be briefed in the September 26, 2002 briefing order. In effect, the Report fails to identify the basis for the conclusion that the issues identified by the September 26, 2002 order are properly before the Court on remand.

Before the Fifth Circuit, the defendants presented a series of procedural and substantive objections to the issues identified in this Court's January 13, 1999 judgment, including the argument that they were not given an opportunity to present argument before the Court issued its order. Loa-Herrera v. E.M. Trominski, 231 F.3d at 987-88. In vacating the order, the Fifth Circuit expressly stated:

> [W]e vacate the order and remand for further proceedings, during which the INS assuredly will have ample opportunity to press any additional legal or factual arguments it wishes to make and thereby cure any procedural defects.

Loa-Herrera v. E.M. Trominski, 231 F.3d at 988. Respectfully, the Report issued on August 21, 2003, violates the Fifth Circuit remand order because it fails to address the arguments of the defendants' September 21, 2001 Motion for Summary Judgment. Accordingly, as the Report does not address the defendants' claims, the Court should reject its identification of the issues remaining on remand.

**B. In Light of the Second Amended Complaint, the Fifth Circuit's Decision, and this Court's Denial of the Plaintiffs' Motion to Amend the Complaint after Remand, the Report's Identification of the Issues Remaining for Adjudication Is in Error**

As noted in the Report, this matter "has a long, complicated history in the nine years since it was originally filed." Report at 1. One of the main issues that faced this Court on remand was the identification of the issues properly raised over the course

of the proceedings. The Report allowed briefing only on the following issues:

> 1. Whether the manner in which the INS exercises its parole authority with respect to legal permanent residents seeking admission that were not arrested on a warrant prior to being returned to their native country is constitutional; and
>
> 2. Whether there are certain legal authorities for limiting the INS's ability to place notations on the substitute I-551 or I-551 documents which disclose personal information to anyone who may view the documents.

Report at 1. In light of the issues raised in the Second Amended Complaint, as narrowed by the Fifth Circuit's mandate, and as limited by this Court's denial of plaintiffs' attempt to amend the complaint after remand, the Report's identification of the issues in this matter is in error.

**1. Second Amended Complaint**

On January 17, 1995, plaintiffs filed a motion for leave to file an amended complaint, accompanied by the Second Amended Petition and Complaint ("Second Amended Complaint"). Docket Entry 14; Docket Entry 15. This case was at that time referred to Magistrate Judge Fidencio G. Garza, Jr. ("Judge Garza"), who did not issue a written decision on plaintiffs' motion. Instead in open court on April 26, 1995, and in response to the plaintiffs' comments and oral request for a ruling on the motion, Magistrate Judge Garza stated "[w]e're flying with the second amended complaint and they filed their response to that, and that's the pleading we're going to sink or swim with." Docket

Entry 71. The parties interpreted Judge Garza, as a result of his response, as having granted plaintiffs' motion to amend.

The general rules of pleading provide that a complaint must contain, in part, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has indicated that under the federal rules a complaint must evidence a short and plain statement of the claim "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). The Fifth Circuit, guided by Conley, has indicated that a plaintiff's claims are provided by the causes of action listed in the complaint. In re R. Burzynski, M.D., 989 F.2d 733, 738 (5th Cir. 1993).

The Second Amended Complaint lists seven causes of actions and requests several prayers for relief. Docket Entry 15 at 13-17. In essence, the first cause seeks a writ of habeas corpus based on the charge that the defendants violate the due process rights of a LPR, who is not in detention, by seizing his/her Form I-151 or I-551 ("green card") prior to the issuance of a final deportation order and then not replacing the green card with a suitable replacement document that contains an employment authorized stamp and by placing notations on the replacement document as to the alien having been placed in proceedings. Id. at 13-14, 17.

The second cause of action suggests that the confiscation of a lawful permanent resident's green card violates Due Process,

while the third cause also requests that the Court find that the confiscation of a green card and issuance of a replacement document violates a lawful permanent resident's ("LPR") rights. Id. at 15, 18. The fourth and fifth causes of actions allege that defendants impermissibly take into consideration the facts that an LPR is in immigration proceedings, and/or is released on bond, in determining whether a LPR should be readmitted to the United States, or held, when they apply for readmission.[6] The sixth and seventh causes of action claim that an LPR's rights are violated by the defendants allegedly cancelling or forfeiting bond because the alien has departed the country. Docket Entry 15 at 17, 19.

The Report identifies as an issue in this matter the INS's seizure of a lawful permanent resident's green card and the issuance of temporary documents pending removal proceedings. Docket Entry 191 at 1. While challenging the legal basis for the Report's recommendation with respect to the issue, the defendants do not dispute that this "green card claim" was an issue raised in the plaintiffs' Second Amended Complaint, although, as will be argued, the Fifth Circuit's decision further narrowed the issue for consideration on remand. The Second Amended Complaint gives the defendants notice of the claim. In particular, the first,

---

[6] After the commencement of proceedings, Congress enacted INA § 101(a)(13)(C), 8 U.S.C. § 1101(a)(13)(C) (Supp. IV 1998), which defines when an alien lawfully admitted for permanent residence is seeking admission into the United States for purpose of the immigration laws. Accordingly, under the current statutory framework, the causes of actions are no longer relevant.

second, and third causes of action relate to the issue of confiscation of lawful permanent residents' "green card" and the issuance of replacement documents. See Docket Entry 15 at 13-17.

The Report, however, identifies two issues that are not properly before this Court. First, the Report identifies as an issue a "parole claim", namely "the manner in which the INS exercises its parole authority with respect to [LPRs] seeking admission that were not arrested on a warrant prior to being returned to their native country." Docket Entry 191 at 1. In addition, in its proposed order, the Report provides the following:

> This Court also re-issues part of a previous order (Doc. # 104). To wit, the Harlingen INS District is hereby prohibited from confiscating lawfully possessed items from the Plaintiffs, such as drivers licenses and Social Security cards, absent a good faith belief that said documents constitute evidence of unlawful conduct.

Docket Entry 191. This "other documents claim" and the "parole claim", however, were not raised before this Court as causes of actions in plaintiffs' Second Amended Complaint.

In particular, the Second Amended Complaint does not contain "short and plain" statements concerning either the "other documents claim" or "parole claim". Specifically, the causes of action do not concern "other documents" or "parole". See Docket Entry No. 15 at 13-17. In other words, while the Second Amended Complaint's fact section contains statements relating to "other documents" and "parole", the filing's causes of action provide

short and plain statements only to the issues of the form of documentation given to LPRs who have their "green cards" seized, the admission of LPRs, and procedure for bond of LPRs, while the "other documents claim" and "parole claim" are not properly listed. Id. Thus, the defendants were not given fair notice and the grounds upon which the grounds rest. See In re R. Burzynski, 989 F.2d at 738. The only issue raised by the plaintiffs' complaint that was properly before the Court, and is now before the Court on remand, is the claim relating to the confiscation of an LPR's "green card", as limited by the Fifth Circuit's decision. The "other documents claim" and "parole claim" are not, and were not, before this Court. See Hang On, Inc. v. City of Arlington, 65 F.3d 1248, 1255 (5th Cir. 1995) (holding that district court properly did not consider issue not raised in complaint).

The plaintiffs have effectively admitted that the issues were not properly pled by seeking to amend their complaint on remand. Docket Entry 134. This Court recognized that the motion to amend was an attempt by plaintiffs to "restructure their pleading" and would only serve to cause "undue prejudice and delay." Docket Entry 150 at 6. After the Court denied the plaintiffs' motion to amend on November 6, 2001, the "parole" and "other documents"[7] claims were effectively raised in a separate

---

[7] It should be noted that even if the "other documents" claim has been properly pled, the defendants have been denied an opportunity to brief the issue on remand. In particular, the (continued...)

action filed in this Court on December 17, 2001, Isreal Hernandez-Leija, et. al v. E.M. Trominski, et. al, C.A. No. B-01-206. This Court recently dismissed the action in a decision dated September 15, 2003. Exhibit 5.

**2. Fifth Circuit's Decision**

In addition to the claims at issue being limited to those properly pled in the Second Amended Complaint, the Report correctly finds that the Fifth Circuit's decision significantly narrowed the issues for consideration on remand. Report at 1. As argued (Docket Entries 147 and 151), the Fifth Circuit's decision is explicit regarding the purpose of remand. The case was remanded for "any further necessary proceedings". Loa-Herrera v. E.M. Trominski, 231 F.3d at 992 (emphasis added). The Fifth Circuit's decision identifies the two specific reasons why remand to this Court is necessary, namely to "ensure that the government has ample opportunity to press its factual and legal contentions before the court" and "so the court can determine whether an injunction is appropriate in light of [8 C.F.R.] § 264.5(g)." Id. at 987, 989.

The mandate rule, which is a corollary to the law of the case doctrine, provides that a district court must implement both the letter and the spirit of an appellate court's mandate, and

---

[7] (...continued) September 26, 2002 order in this case (Docket Entry 165) limited briefing only on those issues identified by Judge Recio. In that the issue appears in the Report's proposed order, the defendants should have been afforded an opportunity to address the merits of the claim.

may not disregard explicit directives of appellate court. Crowe v. Smith, 261 F.3d 558, 562 (5th Cir. 2001). As the Fifth Circuit is explicit in its reasons for remand, this Court should limit its consideration to those issues explicitly identified in the Fifth Circuit's decision.

This Court has recognized the explicit nature of the Fifth Circuit's remand order. The Court found that the "Fifth Circuit specifically stated," that the remand in this case was so that the government could pursue its claims, not so that the plaintiffs could restructure the proceedings. Docket Entry 150 at 6 (emphasis added). Because of the Fifth Circuit's decision specifying the necessary proceedings in this case, proceedings are limited as directed. See Harris v. Sentry Title Co., 806 F.2d 1278, 1279 (5th Cir. 1987). In essence, the Fifth Circuit's remand order did not allow the Judge Recio to permit the plaintiffs to raise new claims or arguments. Respectfully, the Report incorrectly identifies the reasons for which the Fifth Circuit remanded this matter. In essence, the Fifth Circuit's October 31, 2000 decision was not an exercise in futility. The decision narrowed the scope of the proceedings and settled many of the legal questions properly raised. In so doing, the Court should find that the "parole claim" and "other documents claim" are not at issue.[8]

---

[8] Even if the Court finds that the "other document claim" is at issue, the parties should be permitted to brief the claim. In particular, Judge Recio never ordered that the parties were only (continued...)

## II. THE COURT SHOULD REJECT THE REPORT'S CONCLUSION THAT THE DEFENDANTS VIOLATE 8 U.S.C § 1304(b), WHEN A TEMPORARY FORM I-551 IS ISSUED TO A LAWFUL PERMANENT RESIDENT PLACED INTO IMMIGRATION PROCEEDINGS

### A. The Court Should Reject the Report and Dismiss the Claims of Plaintiffs That 8 U.S.C. § 1304(b) Prohibits a Notation on the Replacement Document Provided to a Lawful Permanent Resident Which Indicates Pending Removal Proceedings

#### 1. 8 U.S.C. § 1304

The Court should grant the defendants motion for summary judgment and reject the Report's "green card claim" recommendation because, as a matter of law, it is in error. Section 1302(a) at Title 8, U.S. Code requires members of the plaintiff class to have applied "for registration and to be fingerprinted." Pursuant to the requirement, the Attorney General "is authorized and directed to prepare forms for the registration and fingerprinting of aliens under section 262 . . ." 8 U.S.C. § 1304(a). As recognized by in the Fifth Circuit's decision, 8 C.F.R. § 264.1 lists the registration record that an alien is required to complete in order to register. <u>See</u> <u>Loa-Herrera v. E.M. Trominski</u>, 231 F.3d at 989 n.10. Section 264.1(a) provides that for a majority of the identified

[8] (...continued)
permitted to the issues identified in his September 26, 2002 order to be briefed. Docket Entry 165. As noted, the Fifth Circuit's order clearly vacated the entirety of this Court's prior Order. To make findings with respect to an issue in the Order without identifying the factual and legal basis for the claim and permitting briefing violates the spirit, if not letter, of the Fifth Circuit's remand.

plaintiffs class members, Form I-485,[9] "Application for Status as Permanent Resident," is required to be filed for purpose of registration.[10]

In addition to the registration requirement 8 U.S.C. § 1304(d) mandates that every alien who has properly registered with the INS, "shall be issued a certificate of alien registration or an alien registration receipt card in such form and manner and at such time as shall be prescribed by the Attorney General." The alien is required to carry the document at all times. See 8 U.S.C. § 1304(e). As found by the Fifth Circuit, the Attorney General has set out in 8 C.F.R. § 264.5(g) the forms of the registration receipt card for the plaintiff class. Loa-Herrera v. E.M. Trominski, 231 F.3d at 988. In particular, the regulation provides:

> *Eligibility for a card while in deportation or exclusion proceedings.* A person in exclusion proceedings shall be entitled to evidence of permanent resident status until ordered excluded. Such evidence shall be in the form of a Temporary I-551 issued for a period sufficient to accomplish the exclusion proceedings. A person in deportation proceedings shall be entitled to evidence of permanent resident status until ordered deported or excluded.

8 C.F.R. § 245.5(g). The Fifth Circuit clearly held that the

---

[9] Attached as Exhibit 3 for the Court's convenience.

[10] In fact, Form I-485 specifies that, "[t]his form is used by a person who is in the United States to apply to the Immigration and Naturalization Service (INS) to adjust to permanent resident status or register for permanent residence." Exhibit 3 (emphasis added).

regulation does not prohibit the INS from noting on the registration card that an alien is in removal proceedings. Loa-Herrera v. E.M. Trominski, 231 F.3d at 989-90.

Despite the Fifth Circuit's explicit statement that remand in this matter was appropriate "so that the court can determine whether an injunction in light of § 264.5(g) is appropriate". Judge Recio permitted the plaintiffs to raise new arguments with respect to whether the INS may indicate on a registration document that a plaintiff class member is in immigration proceedings. Docket Entry 165; see Loa-Herrera v. E.M. Trominski, 231 F.3d at 989-90. In their Motion for Summary Judgement, plaintiffs, in effect, argued that 8 U.S.C. § 1304(b)[11], prohibits the notation on a registration document that a plaintiff class member is in immigration proceedings. Docket Entry 172. The Report describes the plaintiffs' argument as, essentially:

> [T]hat since LPRs over eighteen are required to carry proof of their status at all times, and must provide it to potential employers, putting extraneous personal information on substitute I-551s or I-151s (such as "in deportation proceedings") is prohibited within the meaning of Section 1304(a)

---

[11] The statute provides:

> CONFIDENTIAL NATURE- All registration and fingerprint records made under provisions of this title shall be confidential, and shall be made available only (1) pursuant to section 287(f)(2), and (2) to such persons or agencies as may be designated by the Attorney General.

Report at 6.

The Report recommends granting the plaintiffs' Motion for Summary Judgment with respect to the issue. Report at 7-9. Although it acknowledges that issuing a registration document is a "completely legal act that is important to the Government's responsibility of tracking immigrants within the United States," the Report effectively concludes that placing of "a plaintiff's legal problems on said documents, without consent, violates the clear meaning of 8 U.S.C. § 1304(b)." Report at 8-9. The Court should reject the report and dismiss the claim.

Initially, the defendants agree with the Report's finding that 8 U.S.C. § 1304(b) prohibits the disclosure of certain information to non-law enforcement officials. Report at 7. In particular, the registration and fingerprints records made by an alien as required by 8 U.S.C. § 1304(a), are specified to be confidential. However, the notation on a registration receipt card that a plaintiff is in removal proceedings does not violate the statute.

As noted, in order to register, the plaintiffs were required to file a Form I-485. Exhibit 1. Form I-485, however, does not require that an alien disclose whether he or she is in proceedings, instead, the form simply requires that the aliens list their immigration status. <u>See</u> <u>id</u> at Part 1. In fact, when members of the plaintiff class registered, they were not most likely in removal proceedings. Even if the defendants placed a notation of pending proceedings on plaintiff's registration card,

it has not broken the confidential requirement of 8 U.S.C. § 1304(b).

That a notation of pending removal proceedings does not violate 8 U.S.C. § 1304(b) is clearly supported by the expressed purpose of requiring registration. As noted, the document is provided directly to the alien and the notation added as "evidence of permanent resident status until ordered deported or excluded." See 8 C.F.R. § 264.5(g) (emphasis added). If the Court were to find, as the Report does, that 8 U.S.C. § 1304(b) prohibits the listing of any information which is also noted on an I-485, then a registration receipt card could not contain any indication of an alien's name or alien number, much less immigration status, as that information is also provided on the I-485. See Exhibit 3.

An interpretation that 8 U.S.C. § 1304(b) prohibits the notation of an information provided in a registration record made by an alien also conflicts with the Supreme Court's and Fifth Circuit's understanding of the registration requirement, as well as Congressional intent for the provision. The Supreme Court has held:

> The essential purpose [of an alien's registration receipt card] is . . . to identify the bearer as . . . a lawfully registered alien residing in the United States. It is issued to an alien after he has taken up residence in this country. It is intended to govern his activities and presence within this country.

U.S. v. Campos-Serrano, 404 U.S. 293, 299-300 (1971). In addition, Congress indicated that:

> In general, the provisions have been modified in some respects to require, so far as practicable, the registration and fingerprinting of all aliens in the country and to assist in the enforcement of those provisions.

2 U.S.Code Cong. & Ad. News 1723 (1952). Thus, the alien registration card lists immigration information necessary to identify the nature of the alien's presence in the United States. Id. The information listed of immigration information helps track alien's in the United States and their status. If the Report's interpretation of 8 U.S.C. § 1304(b), the defendants would not be permitted to issue a registration card because it contains information obtained from the alien. In this case, the Fifth Circuit has indicated that such an interpretation is incorrect by stating that the nature of the registration card provided under 8 U.S.C. § 1304(d) "is within the express discretion of the Attorney General." Loa-Herrera v. E.M. Trominski, 231 F.3d at 989-90. The Court should therefore reject the Report's recommendation that 8 U.S.C. § 1304(d) prohibits the notation of removal proceedings on a registration card.

Furthermore, even if the Report's interpretation is correct, the plaintiffs have not established standing with respect to their claim that a notation of removal proceedings would result in difficulty in obtaining employment. Plaintiffs raise the theoretical claim that they suffer injury on account of a

notation that indicates pending immigration proceedings because a "potential" employer would tend not to offer employment to any such alien. This is not the sort of "concrete" injury required for standing. The Immigration and Nationality Act prohibits a potential employer from engaging in citizenship status discrimination. See 8 U.S.C. § 1324b(a).[12] Thus, a potential

---

[12] The statute provides, in relevant part:

> (a) Prohibition of discrimination based on national origin or citizenship status.
>
> (1) General rule. It is an unfair immigration-related employment practice for a person or other entity to discriminate against any individual (other than an unauthorized alien) with respect to the hiring, or recruitment or referral for a fee, of the individual for employment or the discharging of the individual from employment-
>
> (B) in the case of a citizen or intending citizen (as defined in paragraph (3)), because of such individual's citizenship status.
>
> (3) Definition of citizen or intending citizen. As used in paragraph (1), the term "citizen or intending citizen" means an individual who-
>
> (B) is an alien who--
>
> (i) is lawfully admitted for permanent residence . . .

(continued...)

employer may not decline to hire a lawful permanent resident status notwithstanding the alien has been placed in proceedings.

The absence of a defined injury creates a standing issue with respect to the Plaintiffs' challenge to the alleged notations. Standing, at its "irreducible constitutional minimum," requires a plaintiff "to demonstrate: they have suffered an 'injury in fact'; the injury is 'fairly traceable' to the defendant's actions; and the injury will 'likely ... be redressed by a favorable decision.'" Public Citizen, Inc. v. Bomer, 274 F.3d 212, 217 (5th Cir. 2001) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). "[A]n injury in fact [is] an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. In its decision, the Fifth Circuit found that the plaintiffs' established standing with respect their challenge to the form of the temporary registration document provided by the

difficult to be readmitted to the United States, rather, they argue that a potential employer would not hire a lawful permanent resident solely because his or her registration card contains the notation. The plaintiffs, however, have not established a real threat of injury because, as shown, any such action by a potential employer would be illegal breaking any chain of causation relating to respondents. Accordingly, notwithstanding the Fifth Circuit's decision, plaintiffs have failed to show standing with respect to the issue.[13]

**2. 8 C.F.R. § 264.5**

In addition to finding that the Report erred in finding that 8 U.S.C. § 1304(b) limits notations on a registration card, the Court should also find the it errs in finding that the documents provided to the plaintiffs fail to satisfy 8 C.F.R. § 264.5(g). It is a well-settled principle that agency action committed to the absolute discretion of an agency is not reviewable. See

---

[13] Along the same lines, the Report errs in finding that the INS breaks the confidentiality provision of 8 U.S.C. § 1304(b) because it "discloses" information by providing an alien a registration receipt card. Specifically, the Report errs in finding that "[i]f an alien is expected to carry one of these types of documents at all times, their personal information noted on the document is indirectly being disclosed to anyone who asks to see the form." A plaintiff, however, is not required to provide the document "to anyone who asks to see the form." As noted, the registration receipt card's primary purpose is so that the plaintiff can establish his or her status to immigration officials. While the registration receipt card is often used to show authorization for employment, the alien is not required to present the document to prospective employers as other documentation may be sufficient to establish identity and authorization. See 8 U.S.C. § 1324a(b)(1)(C) & (D) (listing that other forms may suffice); Form I-9 (Exhibit 4) (listing documents).

Heckler v. Chaney, 470 U.S. 821, 830 (1985). As noted, the requirements of a registration card are within the Attorney General's "express discretion". The Fifth Circuit recognized that the Attorney General has specified 8 C.F.R. § 264.5(g) as providing the form of registration receipt given to the plaintiffs. Loa-Herrera v. E.M. Trominski, 231 F.3d at 989-90. In so doing, it also held that, "the regulation plainly does not restrict the INS from placing additional notations" on a registration card. Id. at 889.

The Report acknowledges that 8 C.F.R. § 264.5(g) "covers LPRs in removal proceedings, as well as exclusion and deportation proceedings." Report at 8. For members of the plaintiff class placed in exclusion proceedings or the removal equivalent, the regulation, as found by the Fifth Circuit, "requires that the INS issue the temporary Form I-551." Loa-Herrera v. E.M. Trominski, 231 F.3d at 989.[14] The Report correctly finds that neither the Immigration and Nationality Act nor the federal regulations specify what constitutes a "'formal form or document entitled 'Temporary Form I-551''". Report at 8 (quoting an affidavit from Harlingen INS official Larry Doyle). Because there are no

[14] The Fifth Circuit expressly indicated that the requirement of the issuance of a Temporary Form I-551 only applies to those plaintiff class members in exclusion proceedings, or the removal equivalent. Loa-Herrera v. E.M. Trominski, 231 F.3d at 989 ("By contrast, the regulation does not specify the form of documentation with respect to those in deportation proceedings"). Accordingly, inasmuch as the Report finds that a Temporary Form I-551 must be provided to all plaintiff class members, it is in error.

standards to judge whether the document provided is a Temporary Form I-551 as required the regulation, the Court, pursuant to Heckler v. Chaney, 470 U.S. at 830 (1985), is unable to review whether the document provided is a temporary Form I-551 and, as such, the plaintiffs have failed to state a claim upon which the Court may act.

Contrary to Heckler, the Report concludes that although there are no formal standards by which the Court can judge whether the defendants provide a Temporary Form I-551 to those members of the plaintiff class designated to receive such a document, "INS's Operations Instruction ("OI") 264.2 specifies the manner in which an I-94 used [as a Temporary Form I-551] is prepared." Report at 8. The Report concludes that "[t]he Government should be held to its own Operations Instructions," and that "any modifications to the INS's own Operating Instructions within the Harlingen INS District are inconsistent and should be prohibited." Id. at 8-9. The Report erroneously relies on Operation Instruction 264.2 to concluded that the defendants do not issue a Temporary Form I-551 as set in 8 C.F.R. § 264.5(g).

The Fifth Circuit has held that "an agency's internal personnel guidelines 'neither confer upon [plaintiffs] substantive rights nor provides procedures upon which [they] may rely.'" Loa-Herrera v. E.M. Trominski, 231 F.3d 984, 989 (quoting Fano v. O'Neill, 806 F.2d 1262, 1264 (5th Cir. 1987)). In particular, the Fifth Circuit has further concluded that,

"[t]he Operations Instructions are, however, only internal guidelines for INS personnel, and neither confer upon petitioner substantive rights nor provide procedures upon which he may rely." Ponce-Gonzalez v. INS, 775 F.2d 1342, 1346 (5th Cir. 1985). The Report's reliance on Operation Instruction 264.2 to "specify" the requirements of a Temporary Form I-551, therefore, is clearly contrary to Fifth Circuit law and its recommendation should not be adopted. What constitutes a "Temporary Form I-551" is "within the express discretion of the Attorney General," and INS's Operation Instructions provide no rights upon which the plaintiffs may rely. Loa-Herrera v. E.M. Trominski, 231 F.3d at 989; see Heckler v. Chaney, 470 U.S. at 830.

Finally, because the form of the registration document provided to the plaintiffs is left to the Attorney General's discretion, this Court lacks jurisdiction to consider whether the defendants comply with 8 C.F.R. § 264.5(g). The Fifth Circuit has specified that the registration card provided the plaintiffs pursuant to 8 U.S.C. § 1304(d) is within the Attorney General's "express discretion". Loa-Herrera v. E.M. Trominski, 231 F.3d at 989. 8 U.S.C. § 1252(a)(2)(B)(ii) provides:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review-
>
> (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . .

As the statutory provision is not limited to removal orders, because replacement registration cards are issued pursuant to the

Attorney General's discretion under 8 U.S.C. § 1304(d), and the statute is within the specified subchapter (Subchapter II of Chapter 12 of Title 8, includes §§ 1151-1378), this Court lacks jurisdiction to review that plaintiffs' challenge to the nature of the document provided. See CDI Information Servs. Inc. v. Reno, 278 F.3d 616, 620 (6th Cir. 2002); accord Van Dinh v. Reno, 197 F.3d 427, 434 (10th Cir. 1999).

**B. Alternatively, The Court Should Reject the Report's Suggestion That There Is No Genuine Issues of Material Fact**

Alternatively, the Court should reject to Report's grant of plaintiffs' summary judgement motion because there is a genuine issue of material fact. The Fifth Circuit identified the "green card" claim in this matter as follows:

> Plaintiffs object to INS's practice of seizing an LPR's laminated Form I-151 or I-551 ("green card") and other government documents and issuing, in their place, and I-94 "Temporary Evidence of Lawful Permanent Resident" form containing extraneous information announcing the holder's pending removal proceedings.

Loa-Herrera v. E.M. Trominski, 231 F.3d at 986. The Fifth Circuit found that 8 C.F.R. § 264.5(g) clearly controls the issuance document evidencing a LPRs' status pending proceedings and additionally concluded:

> The regulation plainly does not restrict the INS from attaching *additional notations* to caution employers that a potential worker, although an LPR and therefore *currently* authorized to work in the United States, is also facing pending deportation proceedings and thus may not be available for an extended

period of employment.

Loa-Herrera v. E.M. Trominski, 231 F.3d at 986. In light of its substantive holding, the Fifth Circuit remanded the proceedings "so the court can determine whether an injunction is appropriate in light of § 264.5(g)." Loa-Herrera v. E.M. Trominski, 231 F.3d at 989.

The Report is inconsistent with the Fifth Circuit's remand. The Report is inconsistent because it is not narrowly tailored as specified by the Fifth Circuit and, as a result, is overly broad and vague. The Report identifies the issue as:

> Whether there are certain legal authorities for limiting the INS's ability to place notations on the substitute I-151 or I-551 document which disclose personal information to anyone who may view the documents.

Report at 1 (emphasis added). The Report, however, does not define "personal information" except to conclude that, "the practice of some INS agents inscribing personal information about Plaintiffs' legal problems on the I-94s provided as temporary proof of their LPR stats, without Plaintiffs' consent, violates their rights under 8 U.S.C. Section 1304(b)." Report at 9. Insofar as the Report's recommendation applies to any notation other than "information announcing the holder's pending removal proceedings", as specified by the Fifth Circuit, it addresses issues not appropriate for consideration on remand. Loa-Herrera v. E.M. Trominski, 231 F.3d at 986.

Moreover, in their opposition to plaintiffs' Motion for Summary Judgement (Docket Entry 184), the defendants attached a

September 28, 1999 memorandum and an affidavit suggesting that the current practice with respect to the confiscation of "green cards" is similar as order in this Court's January 13, 1999 Order, subsequently vacated by the Fifth Circuit.[15] In particular, the policy memorandum states:

> Confiscation of I-551s
>
> Confiscation of permanent residence cards (I-551s or I-151s) at the [port of entry] will continue to be governed by the McNary Memorandum (see attached). Confiscation should only take place after a case-by-case evaluation. Aliens in proceedings shall be allowed to retain evidence of alien registration. When the permanent residence card (I-551 or I-151s) is recovered during processing, the issuance of temporary documentation is mandated as instructed in the McNary Memorandum.
>
> A temporary I-94 document will be annotated with six-month time duration, and arrangements will be made for issuance of an I-688B, employment authorization card. The only notations which should be placed in the card are those described in the McNary Memorandum. Any additional annotation should be cleared through the ADDE. Other identification documentation (i.e., drivers license, social security card) should NOT be recovered unless it constitutes bona fide evidence of illegal conduct.
>
> The instructions contained in this memorandum are to be incorporated immediately and will be followed until other wise notified.

Exhibit 1. Moreover, the attached affidavit indicated that the defendants are guided by the September 28, 1999 memorandum.

---

[15] The September 28, 1999 policy memorandum and affidavit are attached to this filing, respectively, as Exhibit 1 and 2.

Exhibit 2. Accordingly, at the very least, the Report errs in implicitly finding that there is no genuine issue of material fact with respect to the practice of the defendants in confiscating "green cards" from members of the plaintiff class and, the Court, therefore, should not reject its recommendation that the plaintiffs' Motion for Summary Judgment be granted.[16]

## III. IN LIGHT OF THIS COURT'S REASONING IN *HERNANDEZ-LEIJA V. E.M. TROMINSKI*, B-01-206, AND THE SEVENTH CIRCUIT'S DECISION IN *SAMIRAH V. O'CONNELL*, 335 F.3d 545 (7th Cir. 2003), THE PLAINTIFFS PAROLE CLAIM IS WITHOUT MERIT AND SHOULD BE DISMISSED

---

[16] In addition, to the INS's current practice, it should also be noted that the defendants denied many of the plaintiffs' factual allegations in their answer to the Second Amended Complaint and various requests for admissions. Over the course of proceedings, there was an extended dispute concerning whether the defendants answers to the Second Amended Complaint and subsequent requests for admissions should be considered timely filed. Docket Entries 19, 20, 23, 25, 28, 59, 62. However, the defendants submit that on July 16, 1999, Magistrate Judge Garza issued the following order:

> This Court should not attempt to resolve the factual dispute of what agreement, if any, was entered between the parities' counsel regarding discovery, responses for requests for admissions or denials and agreed extensions of deadlines to respond to pleadings; Government should be allowed to amend its answers.

Docket Entry 77 (emphasis added). Accordingly, the defendants' responses are properly before the Court. For example, the defendants denied the factual allegation in the Second Amended Complaint that it is their practice to confiscate 'other documents in [an alien placed in proceedings and denied parole into the United States] possession, such as their drivers' licenses or identification cards, regardless of whether such documents had any evidentiary value in either the criminal prosecution or exclusion proceedings." Docket Entry 15 ¶ 29, Docket Entry 28 ¶ 29(B).

In addition to its "green card" claim finding, the Report concludes that, "[t]he United States Supreme Court's recent decision in Demore v. Kim, as well as 8 U.S.C. Section 1226(e), have foreclosed all of the Plaintiffs' arguments with regard to parole." Report at 3. The Court should adopt the Report's conclusion and grant the defendants' motion for summary judgment.

As is evident from the many pleadings filed since the Fifth Circuit's remand order, the parties are in dispute as to whether 8 U.S.C. § 1226(e) is applicable to this matter. The defendants, as set forth in the reply to the plaintiffs' opposition to motion for summary judgment, assert that the statute was first raised by the plaintiffs and is applicable to the proceedings in light of the district court's January 13, 1999 order. See Docket Entry No. 151 at 9-15. The plaintiffs assert that the defendants improperly first raised 8 U.S.C. § 1226(e) in a post-judgment motion and that the Fifth Circuit's reliance was inappropriate. See Docket Entry No. 152 at 13-14. The record reflect that the Fifth Circuit heard and rejected the plaintiffs' arguments in their petitions for rehearing.

Nevertheless, absent consideration of whether 8 U.S.C. § 1226(e) applies to the proceedings, the plaintiffs arguments are still without merit and the Court should grant the defendants' motion for summary judgment. 8 U.S.C. § 1182(d)(5)(A) provides the authority for the INS to parole into the United States an LPR not arrested on a warrant. The parole authority is part of a

larger scheme providing for the detention and release of suspected inadmissible LPRs.

In general, Congress has provided that:

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [8 U.S.C. § 1229a].

8 U.S.C. § 1225(b)(2)(A) (Supp. IV 1998) (emphasis added). Congress also directed that aliens arriving on land from a contiguous foreign territory may be returned to the foreign territory pending their proceedings. 8 U.S.C. § 1225(b)(2)(C). The structure by which an alien may obtain release from detention upon being denied admission to the United States is set forth by the INA and the regulations promulgated thereunder. 8 U.S.C. § 1182(d)(5)(A) provides for the circumstances under which such aliens may obtain release from custody, or allowed in the country to await their proceedings:

> The Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien . . . .

8 U.S.C. § 1182(d)(5)(A) (emphasis added). The determination to parole the an alien is firmly committed to the discretion of the Attorney General. Id. The federal regulations provide that "the district director or chief patrol agent may, after review of the

accordance with [8 U.S.C. § 1182(d)(5)(A)], any alien applicant for admission, under such terms and conditions . . . as he or she may deem appropriate." 8 C.F.R. 212.5(c).

At most, the plaintiffs argue that for those class members who arrive on land from a contiguous foreign territory and returned to the foreign territory pending their proceedings pursuant to 8 U.S.C. § 1225(b)(2)(C), the manner in which the defendants exercise parole authority is inconsistent with Due Process. For the reasons set forth in this Court's decision in Hernandez-Leija v. E.M. Trominski, B-01-206, and the Seventh Circuit's Decision in Samirah v. O'Connell, 335 F.3d 545 (7th Cir. 2003), the Court should adopt the result of the Report with respect to the issue and grant the defendants summary judgment on the issue.

**A. For the Reasoning Set Forth in this Court's Decision in *Hernandez-Leija v. E.M. Trominski*, B-01-206, dated September 15, 2003, the Plaintiffs' "Parole Claim" is Without Merit**

In a recent decision, this Court considered the plaintiffs' parole claim. Specifically, in Hernandez-Leija v. E.M. Trominski, B-01-206,[17] dated September 15, 2003, the Court considered whether an LPR "should have been given prompt hearing [on parole eligibility] by an impartial adjudicator" and whether the LPR should "receive prompt notice of the 'right to parole upon detention by the INS.'" Exhibit 5 at 11. The Court

[17] Attached as Exhibit 5 for the Court's convenience.

concluded that the claims were did not rise to a Due Process violation. For the reasons set forth therein, the Court should adopt the Report's conclusion and grant the defendants' Motion for Summary Judgment with respect to the issue.

In essence, the language of 8 U.S.C. § 1182(d)(5)(A) is not mandatory and the statute does not place procedural requirements on the Attorney General's exercise of his authority. Exhibit 5 at 11. Because the plaintiffs' parole interests are contingent on the Attorney General's discretion, they have no liberty interest in being paroled. Id. (citing Gisbert v. U.S. Attorney General, 988 F.2d 1437, 1443 (5th Cir. 1993). As found by the Court, "[w]ithout a liberty interest in being paroled, there can be no procedural due process violation." Furthermore, because neither the INS or the federal regulations mandate procedures for parole determination or notice of paroled, "the courts cannot impose procedures that entitle Petitioners to rights they do not have under the Constitution." Id. at 12.

**B. Because the Plaintiffs' Parole Claim Is Not a Valid Constitutional Challenge, *Samirah v. O'Connell*, 335 F.3d 545 (7th Cir. 2003), Precludes this Court's Jurisdiction**

Considering this Court's decision in Hernandez-Leija v. E.M. Trominski, it is clear that the plaintiffs' parole claim in not a colorable constitutional challenge. Insofar as the plaintiffs seek the Court's review on a non-constitutional basis, the Court lacks jurisdiction to consider the claim. Specifically, the plaintiff class members challenge the INS's parole authority of 8

plaintiff class members challenge the INS's parole authority of 8 U.S.C. § 1182(d)(5), as it applies to members of the class outside of the United States. The United States Court of Appeals for the Seventh Circuit ("Seventh Circuit") recently addressed a similar challenge to the Attorney General's parole authority and concluded that it was without jurisdiction to consider the claim. See Samirah v. O'Connell, 335 F.3d 545 (7th Cir. 2003). For the reasons set forth in the Seventh Circuit's decision, the Court lacks jurisdiction over the plaintiffs' parole claim insofar as the challenge raises non-constitutional arguments. In essence, the Court lacks habeas corpus jurisdiction under 28 U.S.C. § 2241 over the plaintiffs claim both because they are not in "custody" and because they have not named a proper custodian. See Samirah v. O'Connell, 335 F.3d at 549-552. Furthermore, 8 U.S.C. § 1252(a)(2)(B)(ii) precludes other avenues of jurisdiction for the non-constitutional claim.[18]

---

[18] Respectfully, the defendants disagree with the Court's conclusion in Hernandez-Leija v. E.M. Trominski that the parole claim therein "constitute collateral challenges to alleged unconstitutional practices and policies employed by the agency." Exhibit 5 at 5. Like the prisoner in Board of Pardons v. Allen, 482 U.S. 369, 381 (1987), who sought federal-court review of the discretionary decision denying him parole eligibility, removable aliens seeking parole have a due process liberty right to have the defendants conduct the procedures that the Attorney General has, in his discretion, put in place. The plaintiffs, however, are not challenging the defendants' application of the current procedures and polices that the Attorney General, in his discretion, has formulated for parole under 8 U.S.C. § 1185(d)(5)(A). Instead, the plaintiffs essentially argue that the Attorney General should have selected other procedures and policies in exercising his parole discretion. As found by the Ninth Circuit, although the Court retains "jurisdiction to review (continued...)

## CONCLUSION

For the foregoing reasons, the Court should find that the Report errs in identifying the issues ripe for consideration and find that the only issue before it is whether the defendants comply with the requirements of 8 C.F.R. § 264.5(g), find that the plaintiffs have failed to state a claim with respect to whether the defendants comply with the regulation, and dismiss the matter.

Alternatively, the Court should adopt the Report's conclusion that the defendants merit summary judgment with respect to the "parole claim" issue, decline to adopt the Report with respect to the confiscation of both "green cards" and "other documents", and grant defendants' Motion for Summary Judgment.

[18] (...continued)
abuse of discretion argument in constitutional garb." Torres-Aguilar v. INS, 246 F.3d 1267, 1271 (9th Cir. 2000). It is the defendants' position that because the plaintiffs' challenge is properly considered a discretionary challenge, 8 U.S.C. § 1252(a)(2)(B)(ii) precludes that Court from exercising most of its jurisdiction over the claim and, for the reasoning expressed in Samirah v. O'Connell, it lacks habeas jurisdiction.

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General
Civil Division

ERNESTO H. MOLINA, JR.
Senior Litigation Counsel
Office of Immigration Litigation

for ANTHONY C. PAYNE
Trial Attorney
Attorney in Charge
U.S. Dept. of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878
Washington, DC 20044
Tel: (202) 616-3264
Fax: (202) 616-4975

MICHAEL T. SHELBY
United States Attorney
Southern District of Texas

LISA M. PUTNAM
Special Assistant U.S. Attorney
Ga. Bar No. 590315/
Federal Bar No. 23937
P.O. Box 1711
Harlingen, Texas 78551
Tel: (956) 389-7051
Fax: (956) 389-7057

ATTORNEYS FOR DEFENDANTS/RESPONDENTS

Date: September 25, 2003

# CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2003, a copy of Defendants/Respondents' Objections to the Magistrate Judge's Report and Recommendation and **Memorandum of Law in Support of Defendants/Respondents' Objections to the Magistrate Judge's Report and Recommendation and Response to Plaintiffs' Objections** was served on Plaintiffs by U.S. Mail, first-class postage, addressed to:

Lisa Brodyaga
17891 Landrum Park Road
San Benito, TX 78586

Lisa M. Putnam
Special Assistant U.S. Attorney

EXHIBIT 1



U.S. Department of Justice
Immigration and Naturalization Service

HLG 120/17

*2102 Teege Street*
*Harlingen, Texas 78550*

September 28, 1999

MEMORANDUM FOR LARRY P. DOYLE
ASSISTANT DISTRICT DIRECTOR FOR EXAMINATIONS
HARLINGEN DISTRICT OFFICE
HARLINGEN, TEXAS

FROM: E.M. Trominski
District Director
Harlingen District Office
Harlingen, Texas

SUBJECT: PARLE REQUEST

As a result of an order issued by the federal district court in Brownsville, Texas, procedures regarding the parole of returning resident aliens whose Form I-151 or I-551 has been or will be confiscated by the INS, and who are placed under proceedings have been modified in the Harlingen District. This memorandum serves as a general reminder of the circumstances in which paroling aliens into the United States is permissible and also serves to notify Harlingen Inspectors at Harlingen District Ports of Entry of new procedures implemented as the result of the aforementioned lawsuit.

**1. Parole Generally**

Provisions allowing the Attorney General to parole aliens temporarily into the United States pending resolution of removal or exclusion proceedings are found in the Immigration and Nationality Act ("INA") at § 212(d)(5) with related regulations located at 8 C.F.R. 212.5. Aliens seeking admission to the United States who have been found inadmissible may nonetheless be paroled by the District Director through an exercise of discretion for urgent humanitarian reasons or for significant public benefit. The District Director's decision making should be guided by the equities each alien possesses, as stated in the regulations, along with the various humanitarian concerns involved with each application. Each application for parole should be assessed on a case-by-case basis.

2. Aliens Covered by the District Court Order:

a. Processing for Parole by the IIs

At this time an additional procedure is being added to the processing of aliens who are returning lawful permanent residents who have been found inadmissible at the POE and who do not qualify as mandatory detainees. The lawsuit in Brownsville has resulted in an order from the Federal District Court ordering the immigration judges to hold parole hearings for certain lawful permanent residents. To be covered by the District Court order the alien must be:

1. A lawful permanent resident;
2. Who has applied for admission to the United States;
3. Who has been denied admission to the United States;
4. Who has been placed in proceedings;
5. Who is not in custody; and
6. Whose Form I-151 or I-551 has been or will be confiscated by the INS.

These aliens are to be automatically considered for parole into the United States, without the alien's specific request. The II makes a prima facie determination of parole eligibility. If the prima facie requirements are met, the II passes the request telephonically to the Assistant District Director for Examinations (ADDE). The ADDE makes the final determination of parole eligibility and, if the decision is to grant parole, the alien is processed for an I-94 at the POE. With a favorable determination by the ADDE, the alien will be paroled into the United States to await a determination of his or her admissibility by an immigration judge.

If the ADDE is not available or cannot be contacted, efforts will be made for authorization through the regular chain of command (Deputy District Director, District Director, etc.). If for some reason contact cannot be made, the procedures in section b (below) apply. The alien will be instructed to contact the District Office to pursue efforts for a parole or wait for a parole hearing before an immigration judge.

b. Processing for Parole by the Immigration Judge

If the ADDE determines that the alien does not warrant parole into the United States to await a determination on his or her admissibility, the attached "Notice and Advisal to Returning Lawful Permanent Residents: Opportunity for Parole" (Notice) must be completed. If the alien is not immediately granted parole after being denied admission, the attached notification is to be executed, even if further efforts will be made to bring additional information to the District Director that may result in a parole. Since subsequent efforts may not result in a parole, the process for the alien to have a parole hearing before an immigration judge will already be initiated, and the Notice is to be completed and processed.

The Notice informs the alien of the availability of a parole hearing before an immigration judge. The alien must complete the section requesting a parole hearing and the form must bear

the alien's signature. Finally, the Notice has a section where the II can annotate the date and time of the parole hearing before the immigration judge.

The II will schedule the parole hearing before the immigration judge on the Friday of the week following the completion of the Notice (i.e., an alien processed on August 9, 1999, will have his hearing scheduled for August 20, 1999). All hearings will be scheduled for 9:00 a.m.

The completed Notice, together with a copy of the NTA, will be sent by facsimile to the number designated by the Executive Office for Immigration Review (EOIR) at (956) 427 8905. The hearings will be held in the courtroom currently set-up for hearings at the Gateway International Bridge in Brownsville, Texas. The Immigration Judge will be physically present on the first Friday of the month. All other hearings will be telephonic. This allows easy processing for the POE inspections as well as a predictable and relatively rapid parole hearing for the alien. Once the II has faxed the Notice, it should be placed into the alien's file together with the facsimile receipt sheet. This Notice will be included in the standard forms when an NTA is processed to begin removal proceedings. When assembling the forms into the alien file, the parole request will become part of the alien's permanent record.

The file containing the NTA, the Notice, and the facsimile receipt must be immediately forwarded to the Office of the District Counsel in Harlingen. This is necessary so that an Assistant District Counsel can review the NTA for legal sufficiency and to prepare for the parole hearing.

c. Confiscation of I-551s

Confiscation of permanent residence cards (I-551s or I-151s) at the POE will continue to be governed by the McNary Memorandum (see attached). Confiscation should only take place after a case-by-case evaluation. Aliens in proceedings shall be allowed to retain evidence of alien registration. When the permanent residence card (I-551 or I-151s) is recovered during processing, the issuance of temporary documentation is mandated as instructed in the McNary Memorandum.

A temporary I-94 document will be annotated with six-month time duration, and arrangements will be made for issuance of an I-688B, employment authorization card. The only notations which should be placed in the card are those described in the McNary memorandum. Any additional annotation should be cleared through the ADDE. Other identification documentation (i.e., driver's license, social security card) should NOT be recovered unless it constitutes bona fide evidence of illegal conduct.

The instructions contained in this memorandum are to be incorporated immediately and will be followed until otherwise notified.

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ASCENCIO-GUZMAN, et al. | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | B-94-215 |
| TROMINSKI, et al. | ) | |
| | ) | |
| | ) | |

DECLARATION

The undersigned Declarant, being an Immigration Officer, authorized by Section 287(b) of the Immigration and Nationality Act, 8 U.S.C. § 1357, and 8 C.F.R. § 103.1(q), states under penalty of perjury as permitted under 28 U.S.C. § 1746, that:

1. I, Larry Paul Doyle, was formerly the Assistant District Director for Examinations for the Harlingen District of the Immigration and Naturalization Service (Harlingen INS). I am currently the Assistant District Director for Inspections;

2. I am the officer in charge of all ports of entry in the Harlingen District. It is my duty to be aware of all procedures and policies affecting the ports of entry and personnel employed therein;

3. With respect to the parole of lawful permanent residents placed in what is now known as removal proceedings, it is the

general practice of the Harlingen INS to follow the guidelines set forth in the attached September 28, 1999 memorandum, except for section b. Exhibit 1. In essence, returning lawful permanent residents who are denied immediate admission to the United States and are placed in removal proceedings are automatically considered for parole into the United States pursuant to 8 U.S.C. § 1182(d)(5).

4. Moreover, prior to the consideration of the aforementioned lawful permanent resident for parole, it is the present practice to provide notice of the availability of parole to any alien who establishes the following listed criteria, namely:

1. A lawful permanent resident:
2. Who has applied for admission to the United States; and
3 Who has been denied admission to the United States; and
4. Who has been placed in exclusion or removal proceedings; and
5. Who is not in custody;
6. Whose Form I-151 or I-551 has been or will be confiscated by the INS.

In practice, unless circumstance require otherwise, if the alien meets the criteria, parole under INA § 212(d)(5)(A) has been granted by the Harlingen INS. Since a short time after the issuance of the memorandum, I am unaware of any instance where an individual who satisfies the above factors has not been paroled in the United States. It is not the policy or practice for the Harlingen INS to deny parole for "arbitrary" reasons.

5. The "confiscation" of a permanent residence card, also known as a "green card", from a lawful permanent resident paroled into the United States and placed into removal proceedings is done on a case-by-case basis and the issuance of an appropriate temporary documentation is guided by the September 28, 1999 policy memorandum. Specifically, when a "green card" is confiscated, it is the practice, as directed by the "McNary Memorandum", to attach the following legend, or its functional equivalent, on a I-94 in order to create a Temporary I-551:

> Paroled: Returning Resident Applicant at ____(port) on ______ (date). ,Paroled Pending Determination of Right to Reenter. Employment Authorized.

Any additional notations must be cleared through my office. Few, if any, additionally notations have been authorized. A sample Temporary I-551 is attached. Exhibit 2. If, for whatever reason, a lawful permanent resident is not provided a Temporary I-551 in conformance with the September 28, 1999 memorandum, or its functional equivalent, it is the Harlingen INS's practice to correct such an error when it is brought to the office's attention.

5. Finally, if a potential employer of a lawful permanent contacts the INS, it is not the practice of the Harlingen INS to disclose "personal information" with respect to the alien. In addition, any notation placed on a temporary document provided as evidence of lawful permanent resident status indicating the alien is in proceedings is for purpose of providing the alien with

evidence of his or her status and serves to notify employees of the Immigration and Naturalization Service and other law enforcement agencies of that status. Any notation about parole or pending proceedings is not intended to notify a non-governmental third-party that the alien's employment authorization or legal status could be temporary.

Executed this 19th day of February, 2003.

[signature] For

Larry P. Doyle
Assistant District Director for Inspections
Immigration & Naturalization Service
Harlingen, Texas 78550

EXHIBIT 3

U.S. Department of Justice
Immigration and Naturalization Service

OMB No. 1115-0053

# Form I-485, Application to Register Permanent Residence or Adjust Status

**Purpose of This Form.**
This form is used by a person who is in the United States to apply to the Immigration and Naturalization Service (INS) to adjust to permanent resident status or register for permanent residence. It may also be used by certain Cuban nationals to request a change in the date their permanent residence began.

**Who May File.**
**Based on an immigrant petition.** You may apply to adjust your status if:

- an immigrant visa number is immediately available to you based on an approved immigrant petition; or
- you are filing this application with a complete relative, special immigrant juvenile or special immigrant military petition, which if approved, would make an immigrant visa number immediately available to you.

**Based on being the spouse or child (derivative) at the time another adjustment applicant (principal) files to adjust status or at the time a person is granted permanent resident status in an immigrant category that allows derivative status for spouses and children.**

- **If the spouse or child is in the United States,** the individual derivatives may file their Form I-485 adjustment of status applications concurrently with the Form I-485 for the principal beneficiary, or file the Form I-485 at anytime after the principal is approved, if a visa number is available.
- **If the spouse or child is residing abroad,** the person adjusting status in the United States should file the **Form I-824, Application for Action on an Approved Application or Petition, concurrently** with the principal's adjustment of status application to allow the derivates to immigrate to the United States without delay, if the principal's adjustment of status application is approved. **No I-824 fee will be refunded if the principal's adjustment is not granted.**

**Based on admission as the fiance(e) of a U. S. citizen and subsequent marriage to that citizen.** You may apply to adjust status if you were admitted to the U. S. as the K-1 fiance(e) of a U. S. citizen and you married that citizen within 90 days of your entry. If you were admitted as the K-2 child of such a fiance(e), you may apply based on your parent's adjustment application.

**Based on asylum status.** You may apply to adjust status if you have been granted asylum in the U. S. after being physically present in the U. S. for one year after the grant of asylum, if you still qualify as an asylee or as the spouse or child of a refugee.

**Based on Cuban citizenship or nationality.** You may apply to adjust status if:

- you are a native or citizen of Cuba, were admitted or paroled into the U.S. after January 1, 1959, and thereafter have been physically present in the U.S. for at least one year; or
- you are the spouse or unmarried child of a Cuban described above, and regardless of your nationality, you were admitted or paroled after January 1, 1959, and thereafter have been physically present in the U.S. for at least one year.

**Based on continuous residence since before January 1, 1972.** You may apply for permanent residence if you have continuously resided in the U.S. since before January 1, 1972.

**Applying to change the date your permanent residence began.** If you were granted permanent residence in the U. S. prior to November 6, 1966, and are a native or citizen of Cuba, his or her spouse or unmarried minor child, you may ask to change the date your lawful permanent residence began to your date of arrival in the U. S. or May 2, 1964, whichever is later.

**Other basis of eligibility.** If you are not included in the above categories, but believe you may be eligible for adjustment or creation of record of permanent residence, contact your local INS office.

**Persons Who Are Ineligible.**
Unless you are applying for creation of record based on continuous residence since before January 1, 1972, or adjustment of status under a category in which special rules apply (such as asylum adjustment, Cuban adjustment, special immigrant juvenile adjustment or special immigrant military personnel adjustment), **you are not eligible for adjustment of status if any of the following apply to you:**

- you entered the U.S. in transit without a visa;
- you entered the U.S. as a nonimmigrant crewman;
- you were not admitted or paroled following inspection by an immigration officer;
- your authorized stay expired before you filed this application; you were employed in the U.S. prior to filing this application, without INS authorization; or you otherwise failed to maintain your nonimmigrant status, other than through no fault of your own or for technical reasons, unless you are applying because you are an immediate relative of a U.S. citizen (parent, spouse, widow, widower or unmarried child under 21 years old), a K-1 fiance(e) or K-2 fiance(e) dependent who married the U.S. petitioner within 90 days of admission or an "H" or "I" or special immigrant (foreign medical graduates, international organization employees or their derivative family members);
- you are or were a J-1 or J-2 exchange visitor, are subject to the two-year foreign residence requirement and have not complied with or been granted a waiver of the requirement;
- you have an A, E or G nonimmigrant status, or have an occupation which would allow you to have this status, unless you complete Form I-508 (I-508F for French nationals) to wave diplomatic rights, privileges and immunities, and if you are an A or G nonimmigrant, unless you submit a complete Form I-566;
- you were admitted to Guam as a visitor under the Guam visa waiver program;
- you were admitted to the U.S. as a visitor under the Visa Waiver Pilot Program, unless you are applying because you are an immediate relative of a U.S. citizen (parent, spouse, widow, widower or unmarried child under 21 years old);
- you are already a conditional permanent resident;
- you were admitted as a K-1 fiance(e) but did not marry the U.S. citizen who filed the petition for you, or were admitted as the K-2 child of a fiance(e) and your parent did not marry the U.S. citizen who filed the petition.

**General Filing Instructions.**
Please answer all questions by typing or clearly printing in black ink. Indicate that an item is not applicable with **"N/A."** If the answer is **"none,"** write **"none."** If you need extra space to answer any item, attach a sheet of paper with your name and your alien registration number (A#), if any, and indicate the number of the item to which the answer refers.You must file your application with the required **Initial Evidence** described below, beginning on this page. Your application must be properly signed and filed with the correct fee. If you are under 14 years of age, your parent or guardian may sign your application.

**Translations.** Any foreign language document must be accompanied by a full English translation which the translator has certified as complete and correct, and by the translator's certification that he or she is competent to translate the foreign language into English.

**Copies.** If these instructions state that a copy of a document may be filed with this application, and you choose to send us the original, we may keep the original for our records.

**Initial Evidence.**
You must file your application with the following evidence:

- **Birth certificate.** Submit a copy of your foreign birth certificate or other record of your birth that meets the provisions of secondary evidence found in 8 CFR 103.2(b)(2).
- **Copy of passport page with nonimmigrant visa.** If you have obtained a nonimmigrant visa(s) from an American consulate abroad within the last year, submit a photocopy(ies) of the page(s) of your passport with the visa(s).
- **Photos.** Submit two (2) identical natural color photographs of yourself, taken within 30 days of the application. Photos must have a white background, be unmounted, printed on thin paper and be glossy and unretouched. They must show a three-quarter frontal profile showing the right side of your face, with your right ear visible and with your head bare. You may wear a headdress if required by a religious order of which you are a member. The photos must be no larger than 2 X 2 inches, with the distance from the top of the head to just below the chin about 1 and 1/4 inches. Lightly print your A# (or your name if you have no A#) on the back of each photo, using a pencil.
- **Fingerprints.** If you are between the ages of 14 and 75, you must be fingerprinted. After filing this application, INS will notify you in writing of the time and location where you must go to be fingerprinted. Failure to appear to be fingerprinted may result in denial of your application.
- **Police clearances.** If you are filing for adjustment of status as a member of a special class described in an I-485 supplement form, please read the instructions on the supplement form to see if you need to obtain and submit police clearances, in addition to the required fingerprints, with your application.
- **Medical examination (Section 232 of the Act).** When required, submit a medical examination report on the form you have obtained from INS.

-- **A. Individuals applying for adjustment of status through the INS Service Center: 1) General:** If you are filing your adjustment of status application with the INS Service Center, include your medical exam report with the application, unless you are a refugee or asylee. **2) Refugees:** If you are applying for adjustment of status one year after you were admitted as a refugee, you only need to submit a vaccination supplement with your adjustment of status application, not the entire medical report, **unless** there were medical grounds of inadmissibility that arose during the initial exam you had overseas.

-- **B. Individuals applying for adjustment of status through the local INS office and asylees applying for adjustment of status through the Service Center:** If you are filing your adjustment of status application with the local INS office, or if you are an asylee filing an adjustment of status application with the Service Center, one year after you were granted asylum, do not submit a medical report with your adjustment of status application. Wait for further instructions from INS about how and where to take the medical exam and submit the medical exam report.

-- **Fiance(e)s:** If you are a K-1 fiance(e) or K-2 dependent who had a medical exam within the past year as required for the nonimmigrant fiance (e) visa, you only need to submit a vaccination supplement, not the entire medical report. You may include the vaccination supplement with your adjustment of status application.

-- **Individuals not required to have a medical exam:** The medical report is not required if you are applying for creation of a record for admission as a lawful permanent resident under section 249 of the Act as someone who has continuously resided in the United States since January 1, 1972 (registry applicant).

- **Form G-325A, Biographic Information Sheet.** You must submit a completed G-325A if you are between 14 and 79 years of age.
- **Evidence of status.** Submit a copy of your Form I-94, Nonimmigrant Arrival/Departure Record, showing your admission to the U.S. and current status, or other evidence of your status.
- **Affidavit of Support/Employment Letter.**

-- **Affidavit of Support.** Submit the Affidavit of Support (Form I-864) if your adjustment of status application is based on your entry as a fiance(e), or a relative visa petition (Form I-130) filed by your relative or on an employment based visa petition (Form I-140) based on a business that is five percent or more owned by your family.

-- **Employment Letter.** If your adjustment of status application is based on an employment based visa petition (Form I-140), you must submit a letter on the letterhead of the petitioning employer which confirms that the job on which the visa petition is based is still available to you. The letter must also state the salary that will be paid.

(Note: The affidavit of support and/or employment letter are not required if you applying for creation of record based on continuous residence since before January 1, 1972, asylum adjustment, or a Cuban or a spouse or unmarried child of a Cuban who was admitted after January 1, 1959.)

- **Evidence of eligibility.**

-- **Based on an immigrant petition.** Attach a copy of the approval notice for an immigrant petition which makes a visa number immediately available to you, or submit a complete relative, special immigrant juvenile or special immigrant military petition which, if approved, will make a visa number immediately available to you.

-- **Based on admission as the K-1 fiance(e) of a U.S. citizen and subsequent marriage to that citizen.** Attach a copy of the fiance(e) petition approval notice, a copy of your marriage certificate and your Form I-94.

-- **Based on asylum status.** Attach a copy of the letter or Form I-94 which shows the date you were granted asylum.

-- **Based on continuous residence in the U.S. since before January 1, 1972.** Attach copies of evidence that shows continuous residence since before January 1, 1972.

-- **Based on Cuban citizenship or nationality.** Attach evidence of your citizenship or nationality, such as a copy of your passport, birth certificate or travel document.

-- **Based on derivative status as the spouse or child of another adjustment applicant or person granted permanent residence based on issuance of an immigrant visa.** File your application with the application of that other applicant, or with evidence that it is pending with the Service or has been approved, or evidence that your spouse or parent has been granted permanent residence based on an immigrant visa and:

- If you are applying as the spouse of that person, also attach a copy of your marriage certificate and copies of documents showing the legal termination of all other marriages by you and your spouse;
- If you are applying as the child of that person, also attach a copy of your birth certificate, and if the other person is not your natural mother, copies of evidence (such as a marriage certificate and documents showing the legal termination of all other marriages and an adoption decree) to demonstrate that you qualify as his or her child.

- **Other basis for eligibility.** Attach copies of documents proving that you are eligible for the classification.

**Where to File.**
File this application at the INS office having jurisdiction over your place of residence.

**Fee.** The fee for this application is **$220**, except that it is **$160** if you are less than 14 years old. There is no application fee if you are filing as a refugee under section 209(a) of the Act. If you are between the ages of 14 and 75, there is a $25 fingerprinting fee in addition to the application fee. For example, if your application fee is $220 and you are between the ages of 14 and 75, the total fee you must pay is $245. You may submit one check or money order for both the application and fingerprinting fees. Fees must be submitted in the exact amount. **DO NOT MAIL CASH.** Fees cannot be refunded. All checks and money orders must be drawn on a bank or other institution located in the United States and must be payable in United States currency. The check or money order should be made payable to the Immigration and Naturalization Service, except that:

-- if you live in Guam and are filing this application in Guam, make your check or money order payable to the "Treasurer, Guam."

-- if you live in the U.S. Virgin Islands and are filing this application in the U.S. Virgin Islands, make your check or money order payable to the "Commissioner of Finance of the Virgin Islands."

Checks are accepted subject to collection. An uncollected check in payment of an application fee will render the application and any document issued invalid. A charge of $30 will be imposed if a check in payment of a fee is not honored by the bank on which it is drawn.

**Processing Information.**

**Acceptance.** Any application that is not signed, or is not accompanied by the correct application fee, will be rejected with a notice that the application is deficient. You may correct the deficiency and resubmit the application. An application is not considered properly filed until accepted by the INS.

**Initial Processing.** Once an application has been accepted, it will be checked for completeness, including submission of the required initial evidence. If you do not completely fill out the form, or file it without required initial evidence, you will not establish a basis for eligibility, and we may deny your application.

**Requests for More Information.** We may request more information or evidence. We may also request that you submit the originals of any copy. We may return these originals when they are no longer required.

**Interview.** After you file your application you will be notified to appear at an INS office to answer questions about the application. You will be required to answer these questions under oath or affirmation. You must bring your Arrival-Departure Record (Form I-94) and any passport to the interview.

**Decision.** You will be notified in writing of the decision on your application.

**Selective Service Registration.** If you are a male at least 18 years old, but not yet 26 years old, and required according to the Military Selective Service Act to register with the Selective Service System, the INS will help you register. When your signed application is filed and accepted by the INS, we will transmit your name, current address, Social Security number, date of birth and the date you filed the application to the Selective Service to record your registration as of the filing date. If the INS does not accept your application, and if still so required, you are responsible to register with the Selective Service by other means, provided you are under 26 years of age. If you have already registered, the Selective Service will check its records to avoid any duplication. **(Note: men 18 through 25 years old, who are applying for student financial aid, government employment or job training benefits should register directly with the Selective Service or such benefits may be denied. Men can register at a local post office or on the Internet at http://www.sss.gov).**

**Travel Outside the U.S. for Adjustment of Status Applicants Under Sections 209 and 245 of the Act and Registry Applicants Under Section 249 of the Act.** Your departure from the U.S. (including brief visits to Canada or Mexico) constitutes an abandonment of your adjustment of status application, unless you are granted permission to depart and you are inspected upon your return to the U.S. Such permission to travel is called "advance parole." To request advance parole, you must file Form I-131, with fee, with the INS office where you applied for adjustment of status.

-- **Exceptions: 1) H and L nonimmigrants:** If you are an H or L nonimmigrant who continues to maintain his or her status, you may travel on a valid H or L visa without obtaining advance parole. **2) Refugees and Asylees:** If you are applying for adjustment of status one year after you were admitted as a refugee or one year after you were granted asylum, you may travel outside the United States on your valid refugee travel document, if you have one, without the need to obtain advance parole.

-- **WARNING:** Travel outside of the U.S. may trigger the 3-and 10-year bars to admission under section 212(a)(9)(B)(i) of the Act for adjustment applicants, but not registry applicants. This ground of inadmissibility is triggered if you were unlawfully present in the U.S. (i.e., you remained in the United States beyond the period of stay authorized by the Attorney General) for more than 180 days before you applied for adjustment of status, and you travel outside of the U.S. while your adjustment of status application is pending. **(Note:** Only unlawful presence that accrued on or after April 1, 1997, counts towards the 3-and 10-year bars under section 212 (a)(9)(B)(i) of the Act.)

-- If you become inadmissible under section 212(a)(9)(B)(i) of the Act while your adjustment of status application is pending, you will need a waiver of inadmissibility under section 212(a)(9)(B)(v) of the Act before your adjustment of status application can be approved. This waiver, however, is granted on a case-by-case basis and in the exercise of discretion. It requires a showing of extreme hardship to your U.S. citizen or lawful permanent resident spouse or parent, unless you are a refugee or asylee. For refugees and asylees, the waiver may be granted for humanitarian reasons, to assure family unity or if it is otherwise in the public interest.

**Penalties.** If you knowingly and willfully falsify or conceal a material fact or submit a false document with this request, we will deny the benefit you are filing for and may deny any other immigration benefit. In addition, you will face severe penalties provided by law and may be subject to criminal prosecution.

**Privacy Act Notice.** We ask for the information on this form and associated evidence to determine if you have established eligibility for the immigration benefit you are seeking. Our legal right to ask for this information is in 8 USC 1255 and 1259. We may provide this information to other government agencies, including the Selective Service System. Your failure to provide this information on this form and any requested evidence may delay a final decision or result in denial of your application.

**Paperwork Reduction Act Notice.** A person is not required to respond to a collection of information unless it displays a current valid OMB number. We try to create forms and instructions that are accurate, can be easily understood and which impose the least possible burden on you to provide us with information. Often this is difficult because some immigration laws are very complex. The estimated average time to complete and file this application is computed as follows: (1 ) 20 minutes to learn about the law and form; (2) 25 minutes to complete the form and (3) 270 minutes to assemble and file the application, including the required interview and travel time -- for a total estimated average of 5 hours and 15 minutes per application. If you have comments regarding the accuracy of this estimate or suggestions to make this form simpler, you should write to the Immigration and Naturalization Service, 425 I Street, N.W., Room 5307, Washington, D.C. 20536; OMB No. 1115-0053. **DO NOT MAIL YOUR COMPLETED APPLICATION TO THIS ADDRESS.**

OMB No. 1115-0053

**U.S. Department of Justice**
Immigration and Naturalization Service

# Form I-485, Application to Register Permanent Resident or Adjust Status

## START HERE - Please Type or Print

## Part 1. Information About You.

| Family Name | Given Name | Middle Initial |
|---|---|---|
| Address - C/O | | |
| Street Number and Name | | Apt. # |
| City | | |
| State | Zip Code | |
| Date of Birth (month/day/year) | Country of Birth | |
| Social Security # | A # (if any) | |
| Date of Last Arrival (month/day/year) | I-94 # | |
| Current INS Status | Expires on (month/day/year) | |

## Part 2. Application Type. *(check one)*

**I am applying for an adjustment to permanent resident status because:**

a. ☐ an immigrant petition giving me an immediately available immigrant visa number has been approved. (Atttach a copy of the approval notice-- or a relative, special immigrant juvenile or special immigrant military visa petition filed with this application that will give you an immediately available visa number, if approved.)

b. ☐ my spouse or parent applied for adjustment of status or was granted lawful permanent residence in an immigrant visa category that allows derivative status for spouses and children.

c. ☐ I entered as a K-1 fiance(e) of a U.S. citizen whom I married within 90 days of entry, or I am the K-2 child of such a fiance(e). [Attach a copy of the fiance(e) petition approval notice and the marriage certificate.]

d. ☐ I was granted asylum or derivative asylum status as the spouse or child of a person granted asylum and am eligible for adjustment.

e. ☐ I am a native or citizen of Cuba admitted or paroled into the U.S. after January 1, 1959, and thereafter have been physically present in the U.S. for at least one year.

f. ☐ I am the husband, wife or minor unmarried child of a Cuban described in (e) and am residing with that person, and was admitted or paroled into the U.S. after January 1, 1959, and thereafter have been physically present in the U.S. for at least one year.

g. ☐ I have continuously resided in the U.S. since before January 1, 1972.

h. ☐ Other basis of eligibility. Explain. (If additional space is needed, use a separate piece of paper.)

**I am already a permanent resident and am applying to have the date I was granted permanent residence adjusted to the date I originally arrived in the U.S. as a nonimmigrant or parolee, or as of May 2,1964, whichever date is later, and:** *(Check one)*

i. ☐ I am a native or citizen of Cuba and meet the description in (e), above.

j. ☐ I am the husband, wife or minor unmarried child of a Cuban, and meet the description in (f), above.

**FOR INS USE ONLY**

| Returned | Receipt |
|---|---|
| Resubmitted | |
| Reloc Sent | |
| Reloc Rec'd | |
| Applicant Interviewed | |

**Section of Law**
- ☐ Sec. 209(b), INA
- ☐ Sec. 13, Act of 9/11/57
- ☐ Sec. 245, INA
- ☐ Sec. 249, INA
- ☐ Sec. 2 Act of 11/2/66
- ☐ Sec. 2 Act of 11/2/66
- ☐ Other ______

**Country Chargeable**

**Eligibility Under Sec. 245**
Approved Visa Petition
Dependent of Principal Alien
Special Immigrant
Other ______

**Preference**

**Action Block**

**To be Completed by**
***Attorney or Representative,* if any**

☐ Fill in box if G-28 is attached to represent the applicant.

VOLAG #

ATTY State License #

*Continued on back*

## Part 3. Processing Information.

| A. City/Town/Village of Birth | Current Occupation |
|---|---|
| Your Mother's First Name | Your Father's First Name |

Give your name exactly how it appears on your Arrival /Departure Record (Form 1-94)

| | |
|---|---|
| Place of Last Entry Into the U.S. (City/State) | In what status did you last enter? *(Visitor, student, exchange alien, crewman, temporary worker, without inspection, etc.)* |
| Were you inspected by a U.S. Immigration Officer? ☐ Yes ☐ No | |
| Nonimmigrant Visa Number | Consulate Where Visa Was Issued |
| Date Visa Was Issued (month/day/year) Sex: ☐ Male ☐ Female | Marital Status ☐ Married ☐ Single ☐ Divorced ☐ Widowed |

Have you ever before applied for permanent resident status in the U.S.? ☐ No ☐ Yes If you checked "Yes," give date and place of filing and final disposition.

**B.** List your present husband/wife and all your sons and daughters. (If you have none, write "none." If additional space is needed, use a separate piece of paper.)

| | | | |
|---|---|---|---|
| Family Name | Given Name | Middle Initial | Date of Birth (month/day/year) |
| Country of Birth | Relationship | A # | Applying with You? ☐ Yes ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth (month/day/year) |
| Country of Birth | Relationship | A # | Applying with You? ☐ Yes ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth (month/day/year) |
| Country of Birth | Relationship | A # | Applying with You? ☐ Yes ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth (month/day/year) |
| Country of Birth | Relationship | A # | Applying with You? ☐ Yes ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth (month/day/year) |
| Country of Birth | Relationship | A # | Applying with You? ☐ Yes ☐ No |

C. List your present and past membership in or affiliation with every political organization, association, fund, foundation, party, club, society or similar group in the United States or in other places since your 16th birthday. Include any foreign military service in this part. If none, write "none." Include the name(s) of the organization(s), location(s), dates of membership from and to, and the nature of the organization (s). If additional space is needed, use a separate piece of paper.

## Part 3. Processing Information. *(Continued)*

Please answer the following questions. (If your answer is "Yes" to any one of these questions, explain on a separate piece of paper. Answering "Yes" does not necessarily mean that you are not entitled to adjust your status or register for permanent residence.)

1. Have you ever, in or outside the U. S.:
   a. knowingly committed any crime of moral turpitude or a drug-related offense for which you have not been arrested? ☐ Yes ☐ No
   b. been arrested, cited, charged, indicted, fined or imprisoned for breaking or violating any law or ordinance, excluding traffic violations? ☐ Yes ☐ No
   c. been the beneficiary of a pardon, amnesty, rehabilitation decree, other act of clemency or similar action? ☐ Yes ☐ No
   d. exercised diplomatic immunity to avoid prosecution for a criminal offense in the U. S.? ☐ Yes ☐ No
2. Have you received public assistance in the U.S. from any source, including the U.S. government or any state, county, city or municipality (other than emergency medical treatment), or are you likely to receive public assistance in the future? ☐ Yes ☐ No
3. Have you ever:
   a. within the past ten years been a prostitute or procured anyone for prostitution, or intend to engage in such activities in the future? ☐ Yes ☐ No
   b. engaged in any unlawful commercialized vice, including, but not limited to, illegal gambling? ☐ Yes ☐ No
   c. knowingly encouraged, induced, assisted, abetted or aided any alien to try to enter the U.S. illegally? ☐ Yes ☐ No
   d. illicitly trafficked in any controlled substance, or knowingly assisted, abetted or colluded in the illicit trafficking of any controlled substance? ☐ Yes ☐ No
4. Have you ever engaged in, conspired to engage in, or do you intend to engage in, or have you ever solicited membership or funds for, or have you through any means ever assisted or provided any type of material support to, any person or organization that has ever engaged or conspired to engage, in sabotage, kidnapping, political assassination, hijacking or any other form of terrorist activity? ☐ Yes ☐ No
5. Do you intend to engage in the U.S. in:
   a. espionage? ☐ Yes ☐ No
   b. any activity a purpose of which is opposition to, or the control or overthrow of, the government of the United States, by force, violence or other unlawful means? ☐ Yes ☐ No
   c. any activity to violate or evade any law prohibiting the export from the United States of goods, technology or sensitive information? ☐ Yes ☐ No
6. Have you ever been a member of, or in any way affiliated with, the Communist Party or any other totalitarian party? ☐ Yes ☐ No
7. Did you, during the period from March 23, 1933 to May 8, 1945, in association with either the Nazi Government of Germany or any organization or government associated or allied with the Nazi Government of Germany, ever order, incite, assist or otherwise participate in the persecution of any person because of race, religion, national origin or political opinion? ☐ Yes ☐ No
8. Have you ever engaged in genocide, or otherwise ordered, incited, assisted or otherwise participated in the killing of any person because of race, religion, nationality, ethnic origin or political opinion? ☐ Yes ☐ No
9. Have you ever been deported from the U.S., or removed from the U.S. at government expense, excluded within the past year, or are you now in exclusion or deportation proceedings? ☐ Yes ☐ No
10. Are you under a final order of civil penalty for violating section 274C of the Immigration and Nationality Act for use of fradulent documents or have you, by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the U.S. or any immigration benefit? ☐ Yes ☐ No
11. Have you ever left the U.S. to avoid being drafted into the U.S. Armed Forces? ☐ Yes ☐ No
12. Have you ever been a J nonimmigrant exchange visitor who was subject to the two-year foreign residence requirement and not yet complied with that requirement or obtained a waiver? ☐ Yes ☐ No
13. Are you now withholding custody of a U.S. citizen child outside the U.S. from a person granted custody of the child? ☐ Yes ☐ No
14. Do you plan to practice polygamy in the U.S.? ☐ Yes ☐ No

*Continued on back*

## Part 4. Signature. *(Read the information on penalties in the instructions before completing this section. You must file this application while in the United States.)*

I certify, under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it is all true and correct. I authorize the release of any information from my records which the INS needs to determine eligibility for the benefit I am seeking.

**Selective Service Registration. The following applies to you if you are a man at least 18 years old, but not yet 26 years old, who is required to register with the Selective Service System:** I understand that my filing this adjustment of status application with the Immigration and Naturalization Service authorizes the INS to provide certain registration information to the Selective Service System in accordance with the Military Selective Service Act. Upon INS acceptance of my application, I authorize INS to transmit to the Selective Service System my name, current address, Social Security number, date of birth and the date I filed the application for the purpose of recording my Selective Service registration as of the filing date. If, however, the INS does not accept my application, I further understand that, if so required, I am responsible for registering with the Selective Service by other means, provided I have not yet reached age 26.

| ***Signature*** | ***Print Your Name*** | ***Date*** | ***Daytime Phone Number*** |
|---|---|---|---|

***Please Note:*** *If you do not completely fill out this form or fail to submit required documents listed in the instructions, you may not be found eligible for the requested benefit and this application may be denied.*

## Part 5. Signature of Person Preparing Form, If Other Than Above. *(Sign Below)*

**I declare that I prepared this application at the request of the above person and it is based on all information of which I have knowledge.**

| ***Signature*** | ***Print Your Name*** | ***Date*** | ***Daytime Phone Number*** |
|---|---|---|---|

***Firm Name and Address***

EXHIBIT 4

U.S. Department of Justice
Immigration and Naturalization Service

OMB No. 1115-0136

# Employment Eligibility Verification

## INSTRUCTIONS

PLEASE READ ALL INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS FORM.

**Anti-Discrimination Notice.** It is illegal to discriminate against any individual (other than an alien not authorized to work in the U.S.) in hiring, discharging, or recruiting or referring for a fee because of that individual's national origin or citizenship status. It is illegal to discriminate against work eligible individuals. Employers CANNOT specify which document(s) they will accept from an employee. The refusal to hire an individual because of a future expiration date may also constitute illegal discrimination.

**Section 1 - Employee.** All employees, citizens and noncitizens, hired after November 6, 1986, must complete Section 1 of this form at the time of hire, which is the actual beginning of employment. **The employer is responsible for ensuring that Section 1 is timely and properly completed.**

**Preparer/Translator Certification.** The Preparer/Translator Certification must be completed if Section 1 is prepared by a person other than the employee. A preparer/translator may be used only when the employee is unable to complete Section 1 on his/her own. However, the employee must still sign Section 1.

**Section 2 - Employer.** For the purpose of completing this form, the term "employer" includes those recruiters and referrers for a fee who are agricultural associations, agricultural employers or farm labor contractors.

Employers must complete Section 2 by examining evidence of identity and employment eligibility within three (3) business days of the date employment begins. If employees are authorized to work, but are unable to present the required document(s) within three business days, they must present a receipt for the application of the document(s) within three business days and the actual document(s) within ninety (90) days. However, if employers hire individuals for a duration of less than three business days, Section 2 must be completed at the time employment begins. **Employers must record: 1)** document title; **2)** issuing authority; **3)** document number, **4)** expiration date, if any; and **5)** the date employment begins. Employers must sign and date the certification. Employees must present original documents. Employers may, but are not required to, photocopy the document(s) presented. These photocopies may only be used for the verification process and must be retained with the I-9. **However, employers are still responsible for completing the I-9.**

**Section 3 - Updating and Reverification.** Employers must complete Section 3 when updating and/or reverifying the I-9. Employers must reverify employment eligibility of their employees on or before the expiration date recorded in Section 1. Employers CANNOT specify which document(s) they will accept from an employee.

- If an employee's name has changed at the time this form is being updated/ reverified, complete Block A.
- If an employee is rehired within three (3) years of the date this form was originally completed and the employee is still eligible to be employed on the same basis as previously indicated on this form (updating), complete Block B and the signature block.
- If an employee is rehired within three (3) years of the date this form was originally completed and the employee's work authorization has expired or if a current employee's work authorization is about to expire (reverification), complete Block B and:
  - examine any document that reflects that the employee is authorized to work in the U.S. (see List A or C),
  - record the document title, document number and expiration date (if any) in Block C, and
  - complete the signature block.

**Photocopying and Retaining Form I-9.** A blank I-9 may be reproduced, provided both sides are copied. The Instructions must be available to all employees completing this form. Employers must retain completed I-9s for three (3) years after the date of hire or one (1) year after the date employment ends, whichever is later.

**For more detailed information, you may refer to the INS Handbook for Employers, (Form M-274). You may obtain the handbook at your local INS office.**

**Privacy Act Notice.** The authority for collecting this information is the Immigration Reform and Control Act of 1986, Pub. L. 99-603 (8 USC 1324a).

This information is for employers to verify the eligibility of individuals for employment to preclude the unlawful hiring, or recruiting or referring for a fee, of aliens who are not authorized to work in the United States.

This information will be used by employers as a record of their basis for determining eligibility of an employee to work in the United States. The form will be kept by the employer and made available for inspection by officials of the U.S. Immigration and Naturalization Service, the Department of Labor and the Office of Special Counsel for Immigration Related Unfair Employment Practices.

Submission of the information required in this form is voluntary. However, an individual may not begin employment unless this form is completed, since employers are subject to civil or criminal penalties if they do not comply with the Immigration Reform and Control Act of 1986.

**Reporting Burden.** We try to create forms and instructions that are accurate, can be easily understood and which impose the least possible burden on you to provide us with information. Often this is difficult because some immigration laws are very complex. Accordingly, the reporting burden for this collection of information is computed as follows: **1)** learning about this form, 5 minutes; **2)** completing the form, 5 minutes; and **3)** assembling and filing (recordkeeping) the form, 5 minutes, for an average of 15 minutes per response. If you have comments regarding the accuracy of this burden estimate, or suggestions for making this form simpler, you can write to the Immigration and Naturalization Service, HQPDI, 425 I Street, N.W., Room 4034, Washington, DC 20536. OMB No. 1115-0136.

**EMPLOYERS MUST RETAIN COMPLETED FORM I-9**
**PLEASE DO NOT MAIL COMPLETED FORM I-9 TO INS**

U.S. Department of Justice
Immigration and Naturalization Service

OMB No. 1115-0136

# Employment Eligibility Verification

Please read instructions carefully before completing this form. The instructions must be available during completion of this form. ANTI-DISCRIMINATION NOTICE: It is illegal to discriminate against work eligible individuals. Employers CANNOT specify which document(s) they will accept from an employee. The refusal to hire an individual because of a future expiration date may also constitute illegal discrimination.

**Section 1. Employee Information and Verification.** To be completed and signed by employee at the time employment begins

City | State | Zip Code | Social Security #

I am aware that federal law provides for imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form.

I attest, under penalty of perjury, that I am (check one of the following):

- ☐ A citizen or national of the United States
- ☐ A Lawful Permanent Resident (Alien # A____________
- ☐ An alien authorized to work until ___/___/___
  (Alien # or Admission #) __________________

Employee's Signature | Date *(month/day/year)*

## LISTS OF ACCEPTABLE DOCUMENTS

### LIST A

**Documents that Establish Both Identity and Employment Eligibility**

1. U.S. Passport (unexpired or expired)
2. Certificate of U.S. Citizenship *(INS Form N-560 or N-561)*
3. Certificate of Naturalization *(INS Form N-550 or N-570)*
4. Unexpired foreign passport, with *I-551 stamp or* attached *INS Form I-94* indicating unexpired employment authorization
5. Permanent Resident Card or Alien Registration Receipt Card with photograph *(INS Form I-151 or I-551)*
6. Unexpired Temporary Resident Card *(INS Form I-688)*
7. Unexpired Employment Authorization Card *(INS Form I-688A)*
8. Unexpired Reentry Permit *(INS Form I-327)*
9. Unexpired Refugee Travel Document *(INS Form I-571)*
10. Unexpired Employment Authorization Document issued by the INS which contains a photograph *(INS Form I-688B)*

**OR**

### LIST B

**Documents that Establish Identity**

1. Driver's license or ID card issued by a state or outlying possession of the United States provided it contains a photograph or information such as name, date of birth, gender, height, eye color and address
2. ID card issued by federal, state or local government agencies or entities, provided it contains a photograph or information such as name, date of birth, gender, height, eye color and address
3. School ID card with a photograph
4. Voter's registration card
5. U.S. Military card or draft record
6. Military dependent's ID card
7. U.S. Coast Guard Merchant Mariner Card
8. Native American tribal document
9. Driver's license issued by a Canadian government authority

**For persons under age 18 who are unable to present a document listed above:**

10. School record or report card
11. Clinic, doctor or hospital record
12. Day-care or nursery school record

**AND**

### LIST C

**Documents that Establish Employment Eligibility**

1. U.S. social security card issued by the Social Security Administration *(other than a card stating it is not valid for employment)*
2. Certification of Birth Abroad issued by the Department of State *(Form FS-545 or Form DS-1350)*
3. Original or certified copy of a birth certificate issued by a state, county, municipal authority or outlying possession of the United States bearing an official seal
4. Native American tribal document
5. U.S. Citizen ID Card *(INS Form I-197)*
6. ID Card for use of Resident Citizen in the United States *(INS Form I-179)*
7. Unexpired employment authorization document issued by the INS *(other than those listed under List A)*

**Illustrations of many of these documents appear in Part 8 of the Handbook for Employers (M-274)**

EXHIBIT 5

09/16/03 10:45 FAX 956 389 7057 HLG DISTRICT COUNSEL 002

39

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

SEP 15 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

ISRAEL HERNANDEZ-LEIJA, ET. AL §
§
Petitioners, §
§
v. § C.A. No. B-01-206
§ (consolidated with B-02-109)
§
E.M. TROMINSKI, ET. AL §
§
Respondents. §

**ORDER**

BE IT REMEMBERED that on September 10, 2003, the Court considered Respondents'[1] and Petitioners' timely objections to the Magistrate Judge's Report and Recommendation ("R&R"). For the reasons that follow, the Court **DECLINES TO ADOPT** the final determination of the Report and Recommendation and **DENIES** Petitioners' habeas petition.

I. Standard of Review of Magistrate Judge's Report and Recommendation

Petitioners Israel Hernandez-Leija, Carlos Omar-Calvillo-Lopez, Jorge Rivera-Pulido, Jose Antonio Esparza, and Dionicio Grimaldo-Barrientos bring this action pursuant to 28 U.S.C. § 2241 seeking a writ a habeas corpus. After referral to a United States Magistrate Judge, this Court reviews *de novo* those portions of the R&R to which objection is made. "A judge of the court may accept, reject, or modify in whole or in part any findings or recommendations made by the magistrate." 28 U.S.C. §

---

[1]At the time this habeas petition was filed, the Immigration and Naturalization Service ("INS") was an agency organized within the United States Department of Justice. The former INS has now been reorganized into the Bureau of Immigration and Customs Enforcement ("BICE") within the new United States Department of Homeland Security. See Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205 (2002). For ease of reference, this decision will refer to the agency as the INS.



09/15/03 MON 09:42 [TX/RX NO 6250]

SEP-16-2003 12:48 956 389 7057

636(b)(1)(C). Those portions of the R&R for which there are no objections, the Court reviews for clearly erroneous findings and conclusions of law. See United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

II. **Factual and Procedural Background**

Both the Petitioners and Respondents lodged a number of objections to the Magistrate Judge's R&R. Many of Respondents' objections concerning factual findings contained in the R&R pertain to the current immigration status of the Petitioners. For example, one such objection is that Hernandez-Leija was ordered removed on August 5, 2002, and thus his habeas petition is now moot. See Respondents' Objections, at p. 3 [Dkt. No. 34]. Because the Court does not grant any relief to the Petitioners, this opinion does not unnecessarily address whether certain of the Petitioners' claims have become moot or were moot at the time the R&R was written.[2] Additionally, because the Court does not grant relief to any of the Petitioners, the Court does not address class certification, and will deny this request as moot.

The remaining Petitioners are all citizens of Mexico and Lawful Permanent Residents ("LPRs") of the United States. All remaining Petitioners were arrested and charged with drug violations. The charges against Jose Antonio-Esparza were dismissed. Petitioners traveled outside the United States for a brief period of time. When they returned, they each applied for admission to the United States as returning LPRs. At the border, all Petitioners were placed in removal proceedings and detained as arriving aliens pursuant to 8 U.S.C. §§ 1101(a)(13)(C) and 1225(b)(2)(A).

The Magistrate Judge recommended granting relief pursuant to 28 U.S.C. § 2241. Additionally, the Magistrate Judge recommended granting class certification for those aliens who sought or will seek admission to the United States and were or will be placed in removal proceedings as "arriving aliens" under 8 U.S.C. §§ 1101(a)(13)(C) and 1225(b)(2), and were or are detained pending their removal hearings under 8

[2]Petitioners agree that the Court should dismiss Hernandez-Leija and Calvillo-Lopez as named Petitioners because they have been removed from the United States.

U.S.C. § 1225(b)(2)(C).[3] See R&R, at p. 10 [Dkt. No. 32]. More specifically, the Magistrate Judge recommended granting Petitioners' application for declaratory and injunctive relief. This recommendation entailed a directive to the INS to "afford Petitioners Hernandez-Leija and Calvillo-Lopez a bond hearing within 10 days of the proposed order being signed by the district court. At said hearing, the immigration judge shall state clearly, on the record, the basis of an individualized determination whether any condition or combination of conditions of release will reasonably ensure the Petitioners will not flee and will not endanger the public." Id.

Because the Court finds the Magistrate Judge's R&R is not supported by the law, the Court **DECLINES TO ADOPT** the R&R. For the reasons that follow, the Court **DENIES** Petitioners all requested relief.

## III. Legal Framework

Although all Petitioners are LPRs, upon seeking entry to the United States, they were detained and placed in removal proceedings as arriving aliens pursuant to 8 U.S.C. §§ 1101(a)(13)(C) and 1225(b)(2)(A). See also 8 C.F.R. § 1.1(q) ("The term *arriving alien* means an applicant for admission coming or attempting to come into the United States at a port-of-entry . . . ."). Petitioner LPRs were classified as arriving aliens because each was convicted of an offense identified in 8 U.S.C. § 1182(a)(2). See 8 U.S.C. § 1101(a)(13)(C)(v) (stating "[a]n alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien– . . . (v) has committed an offense identified in section 1182(a)(2) of this title . . . .").

Aliens already present in the United States, but whom the INS determines are present in violation of the law because they have committed certain enumerated offenses, are apprehended, arrested, and detained pursuant to 8 U.S.C. § 1226(a). See also 8 U.S.C. § 1226(c)(1) (authorizing the detention of criminal aliens). Conversely, returning LPRs who have committed certain offenses under section

[3]As Petitioners point out, the Magistrate Judge erroneously referred to section 1225(b)(2)(C). The class should have been defined under section 1225(b)(2)(A).

1182(a)(2) are considered arriving aliens and detained pursuant to 8 U.S.C. § 1225(b)(2)(a). Detention of arriving aliens is generally mandatory. The INA provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a reasonable doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240."[4] INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A). The determination to release an arriving alien on parole[5] is firmly committed to the discretion of the Attorney General. INA § 212(d)(5), 8 U.S.C. § 1182(d)(5)(A). [T]he district director or chief patrol agent may, after review of the individual case, parole into the United States temporarily in accordance with section 212(d)(5)(A) of the Act, any alien applicant for admission, under such terms and conditions . . . as he or she may deem appropriate." 8 C.F.R. § 212.5(c). If arriving aliens are not paroled into the United States they are detained under 8 U.S.C. § 1225(b)(2)(A) while removal proceedings are pending.

The procedures employed for determining whether release from detention is appropriate is dependent upon whether an alien was detained at the border as one seeking admission to the United States or whether an alien was already physically present in the United States and apprehended and arrested by warrant issued by the Attorney General. When an alien is physically present in the United States and is arrested by warrant, the alien is detained pursuant to section 1226(a). See 8 U.S.C. § 1226(a). Procedures governing the release of aliens already present in the United States from detention are established in 8 C.F.R. § 236.1. Under these procedures, appeals of initial custody determinations by district directors may be presented to an

---

[4]Section 240 of the INA governs removal proceedings. See 8 U.S.C. § 1229a.

[5]A paroled alien is one who is temporarily permitted to remain in the United States pending a decision concerning his admission to the United States. Although paroled aliens are permitted to physically enter the United States and pass into the interior, they are considered legally detained at the border within the custody of INS while the agency determines his immigration status. As a result, paroled aliens are not legally admitted to the United States. See 8 U.S.C. § 1182(d)(5)(A).

immigration judge. See 8 C.F.R. §236.1(d)(1). Conversely, parole decisions concerning aliens seeking admission to the United States are governed by procedures established in 8 C.F.R. § 212.5. Under this provision, there is no similar appeal to an immigration judge.[5]

IV. Jurisdiction

The INS argues this Court lacks subject-matter jurisdiction to review any discretionary decisions of the Attorney General concerning parole. Section 242(a)(2)(B)(ii) of the INA states,

> [n]otwithstanding any other provision of law, no court shall have jurisdiction to review . . . (ii) any other decision or action of the Attorney General the authority for which is specified under this title to be in the discretion of the Attorney General, other than the granting of [asylum] relief under section 208(a).

8 U.S.C. § 1252(a)(2)(B)(ii). Section 1182(d)(5), which governs parole, falls within the title and subsection referenced above.

Although the INS acknowledges that any bar to jurisdiction does not preclude review of substantial constitutional questions, see, e.g., Sierra v. INS, 258 F.3d 1213, 1217 (10th Cir. 2001), it argues that Petitioners' due process challenges consist of challenges to the Attorney General's discretionary choice of procedures to apply in reviewing parole requests and in granting such relief from detention. See Respondents' Motion to Dismiss, at p. 14 [Dkt. No. 19]. As such, INS argues Petitioners' claims are not bona fide constitutional challenges. The Court disagrees with Respondents' contentions.

Petitioners' claims do not arise from "a decision or action of the Attorney General . . . [that is] in the discretion of the Attorney General . . . ." 8 U.S.C. § 1252(a)(2)(B)(ii). Rather, the claims constitute collateral challenges to alleged unconstitutional practices and policies employed by the agency. See McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 492 (1991). Given the broad language used in Immigration & Naturalization

---

[5]Petitioners argue in their briefs that they should be treated procedurally in a similar manner as LPRs under 8 U.S.C. § 1226(a).

Serv. v. St. Cyr, 533 U.S. 289, 311-13 (2001), and Calcano-Martinez v. Immigration and Naturalization Service, 533 U.S. 348, 351 (2001), this Court cannot determine that it lacks jurisdiction to review constitutional due process challenges to certain procedures used by INS.[7] The Supreme Court in St. Cyr stated that statutory language limiting judicial review does not bar habeas jurisdiction because "[a]t no point . . . does [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")] make express reference to § 2241. Given the historic use of § 2241 jurisdiction as a means of reviewing deportation and exclusion orders, Congress' failure to refer specifically to § 2241 is particularly significant." Id. at 312 n. 35. See also Calcano-Martinez, 533 U.S. at 351-52. Courts of Appeals in other circuits have determined that IIRIRA does not preclude habeas jurisdiction. See, e.g., Wang v. Ashcroft, No. 02-2045, 2003 WL 255958, at *7-*8 (2d Cir. Feb. 6, 2003); Yuthok v. U.S. Immigration & Naturalization Serv., 51 Fed. Appx. 204, 205 (9th Cir. Nov. 12, 2002) (concerning denial of parole); Riley v. Immigration & Naturalization Serv., 310 F.3d 1253, 1255-56 (10th Cir. 2002).

Furthermore, a recent Supreme Court decision, Denmore v. Hyung Joon Kim, seemingly confirms that this Court has jurisdiction to determine Petitioners' claims. 123 S.Ct. 1708, 1714 (2003). In Denmore, the Supreme Court addressed a related

---

[7]The Court acknowledges that in Loa-Herrera v. E.M. Trominski the Fifth Circuit held that "Congress . . . has denied the district court jurisdiction to adjudicate deprivations of the plaintiffs' statutory and constitutional rights to parole." 231 F.3d 984, 990-91 (5th Cir. 2000). The Fifth Circuit cited section 1226(e) for the proposition that the Attorney General's discretionary determinations regarding parole are not reviewable because challenges to the manner in which INS exercises its discretion is synonymous with challenging the discretion itself. See id. This decision was issued before the Supreme Court's decisions in either Immigration & Naturalization Serv. v. St. Cyr, 533 U.S. 289, 311-13 (2001), or Denmore v. Hyung Joon Kim 123 S.Ct. 1708, 1714 (2003). Indeed, Denmore interprets the same statutory provision, section 1226(e), that the Fifth Circuit interpreted as a ban to habeas jurisdiction. In light of these decisions, this Court determines it retains jurisdiction to review constitutional challenges to the procedures implementing the statutory provisions governing parole. See, e.g., Sierra v. INS, 258 F.3d 1214 (10th Cir. 2001) (holding habeas jurisdiction remains to review alien's constitutional challenge to procedures used in parole proceedings); Jeanty v. Bulger, 204 F. Supp. 2d 1366 (S.D. Fla. 2002) (holding habeas jurisdiction still exists to determine constitutional challenges to the denial of parole).

provision of the statue, section 1226(e), which deprives federal courts of jurisdiction to determine habeas relief for aliens challenging their detention under 1226(c). Section 1226(e) explicitly limits review of "the Attorney General's discretionary judgment" regarding the application of section 1226. Nonetheless, the Supreme Court determined it had jurisdiction to entertain the argument that "the Government may not, consistent with the Due Process Clause of the Fifth Amendment, detain him for the brief period necessary for his removal proceedings." Id. at 1717. The Supreme Court reasoned that "[s]ection 1226(e) contains no explicit provision barring habeas review," and the "clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail." Denmore, 123 S.Ct. at 1714.

Section 1252(a)(2)(B)(ii), the statutory provision governing review of section 1182, contains a similar restriction on judicial review; discretionary acts of the Attorney General are not reviewable. As in Denmore, however, Petitioners here do not contest "a 'decision' that the Attorney General has made regarding [Petitioners'] detention or release." Id. at 1714. Rather, they allege constitutional due process violations because the procedures employed by INS are constitutionally infirm. In light of St. Cyr's edict that Congress must clearly express its intent to foreclose constitutional challenges, and Denmore's determination that a similar statutory provision governing the review of discretionary decisions does not foreclose habeas jurisdiction, this Court determines it has jurisdiction to review Petitioners' due process challenges to the procedures used by INS in notifying arriving aliens of the possibility of parole.

**V. Due Process Claim**

The Supreme Court has many times recognized the authority of the Attorney General to detain and exclude inadmissible aliens. See, e.g., Immigration & Naturalization Serv. v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999) (explaining judicial deference to the executive branch is appropriate where officials exercise discretion in the immigration context and "exercise especially sensitive political functions that implicate questions of foreign relations"); Reno v. Flores, 507 U.S. 292, 305-06 (1993) (stating executive branch has broad scope of authority over aliens); Landon v. Plasencia, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial

admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").

Additionally, it has long been established that resident aliens have the same constitutional rights to due process protections as United States citizens. See Plyler v. Doe, 457 U.S. 202, 210 (1982). Indeed, the courts have always distinguished between those aliens that are arriving and those aliens who are present in the United States. See Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953) (holding immigrants determined to be inadmissible are not entitled to due process protections, unlike those aliens who passed even illegally into the United States). Aliens detained at the border while they await a determination on admission to the United States are not on the same legal footing as those aliens considered to be within the territorial jurisdiction of the United States. See Mezei, 345 U.S. at 212.

The Supreme Court has recently recognized again that more rights are afforded those aliens present in the United States. In Zadvydas v. Davis, 533 U.S. 678, (2001), the Court stated, "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law . . . . " 533 U.S. at 293. The Court opined:

> It is well settled that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders . . . . . But once an alien enters the county, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

Id. (citations omitted). The Zadvydas Court's decision applied purely to "aliens who were admitted to the United States but subsequently [were] ordered removed. Aliens who [had] not yet gained initial admission to this country would present a very different question." Id. at 682. In light of this distinction, the Supreme Court concluded that section 1231(a)(6) "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." Id. at 689.

Despite the distinction between aliens already present in the United States and arriving aliens, and the limited holding of Zadvydas, Petitioners nonetheless ask this Court to issue an injunction. Petitioners request the Court to

> requir[e] Respondents to grant them a prompt hearing on their requests for parole, before an Immigration Judge or other impartial adjudicator, and that at said hearing, their entitlement to parole, with or without payment of a bond, be adjudged in a manner consistent with determinations under 8 U.S.C. § 1226(a)(2) for granting bond or "conditional parole" to otherwise similarly situated LPRs who are arrested on a warrant issued by the Attorney General and detained pending a decision on whether they are to be removed from the United States, to wit that such applications be adjudicated on the basis of whether they present a flight risk, or constitute a threat or danger to the community.

Petitioners' First Amended Petition, at p. 14 [Dkt. No. 2].

Petitioners' request for injunctive relief in essence asks the Court to obliterate the distinction between aliens already present in the United States and arriving aliens. More specifically, Petitioners' request that the Court declare Section 235(b) of the INA does not apply to aliens who are lawful permanent residents because they should not be considered applicants for admission. 8 U.S.C. § 1225(b)(2)(A) (providing that an alien who is an "applicant for admission . . . shall be detained" for a removal proceeding if an immigration officer determines that the alien is not "clearly and beyond a doubt entitled to be admitted"). In this respect, Petitioners ask that they be treated in the same manner as those resident aliens who are apprehended and arrested under section 236(c) of the INA. See 8 U.S.C. § 1226(c). The Court declines to extend this relief to Petitioners.

The Supreme Court's recent decision in Denmore v. Hyung Joon Kim, 123 S.Ct. 1708 (2003), precludes Petitioners' claims concerning due process. In Denmore, a lawful permanent resident was detained pending removal under 8 U.S.C. § 1226(c) because he had previously been convicted of certain crimes. The Petitioner argued that his due process rights were violated under section 1226(c) because INS had not made an individual determination that he specifically posed a risk of flight or a danger to

the community before detaining him. See id. at 1712. Similar to the case now before this Court, the Petitioner in Denmore did not challenge INS's authority to take him into custody based on his prior convictions. Rather, the Petitioner in Denmore argued that mandatory detention without an individualized determination violated his rights. The Supreme Court held:

> [d]etention during removal proceedings is a constitutionally permissible part of that process. See, e.g., Wong Wing v. United States, 163 U.S. 228, 235 (1896) ("We think it clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid"); Carlson v. Lando, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952); Reno v. Flores, 507 U.S. 292, 305-306, 113 S.Ct. 1439, 123 L. Ed.2d 1 (1993). The INS detention of respondent, a criminal alien who has conceded that he is deportable, for the limited period of removal proceedings, is governed by these cases.

Id. at 1721.

Under Denmore, there is no due process right to have an individualized determination that an alien poses a risk of flight before detention pending removal. Because aliens already present in the United States and apprehended and arrested under 1226(c) are traditionally afforded greater due process protections than arriving aliens, there is also no due process right to an individualized determination concerning flight risk under section 1225(b)(2)(a) for an arriving alien. Indeed, the Denmore decision made clear that the due process clause does not require that aliens receive any kind of parole pending their removal proceedings.

Furthermore, even before the Denmore decision, "[t]he right to exclude aliens [was firmly] vested in both the legislative and the executive branches of the federal government." Gisbert v. U.S. Attorney General, 988 F.2d 1437, 1440 (5th Cir. 1993) (citing United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 542 (1950)). As a result, Congress has plenary authority to also establish and implement substantive and procedural rules concerning the admission of aliens. See id. (citing Jean v. Nelson, 727 F.2d 957, 964 (11th Cir. 1984)). Courts give great deference to the agency's

interpretation of the INA, and other statutes it is charged with administering. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984).

Petitioners assert that they should have been given prompt hearings by an impartial adjudicator.[8] In addition, Petitioners argue in their petition and in their objections to the Magistrate Judge's R&R that they should receive prompt notice of the "right to parole upon detention by the INS." Petitioners' Objections, at p. 3 [Dkt. No. 35]. Congress, through its enactment of the INA, as amended, has specifically carved out exceptions for returning lawful permanent aliens who have committed certain offenses. See 8 U.S.C. § 1101(a)(13)(C). By statute, the Attorney General may in his discretion parole certain aliens into the United States on a case-by-case basis for "urgent humanitarian reasons or significant public benefit." INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A). "[P]etitioners' interest in immigration parole is created by the immigration statutes and is subject to the exercise of discretion by the Attorney General." Gisbert, 988 F.2d at 1443 (citing 8 U.S.C. § 1182(d)(5)(A)). As the Fifth Circuit has noted, the language of the statute indicates parole is not mandatory and the statute does not place procedural requirements on the Attorney General's exercise of his authority under section 1182(d)(5)(A). "Because petitioners' interests here are contingent upon the Attorney General's discretion, they have no liberty interest in being paroled." Id. (citing Velasco-Gutierrez v. Crossland, 732 F.2d 792 (10th Cir. 1984)). See also Finlay v. Immigration and Naturalization Service, 210 F.3d 556, 557-58 (5th Cir. 2000) (stating "the denial of discretionary relief does not rise to the level of a constitutional violation, even if [petitioners] would have been eligible for it" (citing Tefel v. Reno, 180 F.3d 1286, 1300 (11th Cir. 1999))).

Without a liberty interest in being paroled, there can be no procedural due process violation. Stated differently, any procedural rights granted to inadmissible

---

[8]Petitioners, however, were afforded the opportunity to be heard. Pursuant to the statute, immigration officials make a case-by-case determination of parole eligibility. See 8 U.S.C. § 1182(d)(5)(A). Indeed, several of the Petitioners in this petition actually received parole after individual determinations.

aliens in Petitioners' position must originate from statute or regulation. Under the regulations promulgated by the agency, the Attorney General has delegated the above discretion and authority to District Directors and other agency officials. See 8 C.F.R. § 212.5 (2001). It is fully within INS's authority to promulgate regulations that foreclose hearings by immigration judges concerning parole determinations under section 1182(d)(5)(A). Similarly, it is within INS's authority to promulgate regulations requiring immigration officers to inform arriving aliens of the possibility of parole. In the absence of such regulations, it is not for this Court to impose additional requirements. When rights do not spring from the Due Process Clause itself, the courts cannot impose procedures that entitle Petitioners to rights they do not have under the Constitution.

## VI. Conclusion

The Court **DECLINES TO ADOPT** the final determination of the R&R and **DENIES** Petitioners' habeas petition [Dkt. No. 2]. Additionally, the Court

1. **DENIES AS MOOT** Petitioners' Motion for Temporary Restraining Order and Preliminary Injunction [Dkt. Nos. 3-1 & 3-2];

2. **DENIES AS MOOT** Petitioner Prado Rivera's Motion to be Joined as a Named Plaintiff [Dkt. No. 16];

3. **DENIES** Petitioners' Motion for Class Certification [Dkt. No. 18];

4. **GRANTS** Respondents' Motion to Dismiss [Dkt. No. 19]; and

5. **DENIES AS MOOT** Petitioners' Motion to Add Three New Named Plaintiffs, in Order to Counter Respondents' Arguments [Dkt. No. 36].

DONE this 10th day of September 2003, at Brownsville, Texas.

Hilda G. Tagle
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **JUANA ASCENCIO-GUZMAN, et al,** | ) | |
| **Plaintiffs/Petitioners,** | ) | |
| | ) | **No. B-94-215** |
| **v.** | ) | |
| **E.M. Trominski, et al.,** | ) | |
| **Defendants/Respondents.** | ) | |

**ORDER**

Upon consideration of *Defendants/Respondents' Motion For Summary Judgment*, and the response filed by Plaintiffs, it is:

ORDERED, that the Court shall not adopt the Report and Recommendation of Magistrate Judge Felix Recio entered on August 21, 2003; and

IT IS ORDERED, that *Defendants/Respondents' Motion for Summary Judgment* is GRANTED; and

IT IS FURTHER ORDERED that Plaintiffs/Petitioners' *Second Amended Petition for Writ of Habeas Corpus and Class Action Complaint for Declaratory and Injunctive Relief* is DISMISSED.

Done at Brownsville, Texas, this _______ day of _________, 2003.

JUDGE HILDA G. TAGLE
United States District Judge