United States District Court
Southern District of Texas
FILED

NOV 0 7 2003

Michael N. Milby
Clerk of Court

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ASCENCIO-GUZMAN et al, | ) | C.A. No.  B-94-215 |
| | ) | |
| v. | ) | PLAINTIFFS' REPLY TO DEFENDANTS' |
| | ) | OBJECTIONS TO THE MAGISTRATE |
| TROMINSKI, et al. | ) | JUDGE'S REPORT AND RECOMMENDATION |

## TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ...................   1

II.  THE FIFTH CIRCUIT'S DECISION .........................   5

III.  THE CURRENT POSTURE OF THE CASE .....................   7

IV.  THE IMPACT OF *DEMORE v. KIM* ON THE CASE AT BAR AND THE
     REASONS THAT *SAMIRAH V. O'CONNELL* IS NOT ON POINT......   8

V.   DEFENDANTS' OBJECTIONS TO THE DOCUMENTATION ISSUES .....  11
     A.   THERE ARE NO GENUINE ISSUES OF MATERIAL FACT .......  11
     B.   DEFENDANTS' ARGUMENTS WITH RESPECT TO 8 U.S.C.
          §1304(b) .........................................  14

VI.  CONCLUSION ...........................................  16

## TABLE OF AUTHORITIES
### CASES

*Caboni v. GMC,*
     278 F.3d 448 (5th Cir. 2002) . . . . . . . . . . . . .  14

*Demore v. Kim,*
     123 S.Ct. 1708 (2003) . . . . . . . . . . . . 7-10, 17

*Etuk v. Slattery,*
     936 F.2d 1433 (2nd Cir. 1991) . . . . . . . . . . . .  12

*Forsyth v. Barr,*
     19 F.3d 1527 (5th Cir. 1994) . . . . . . . . . . . . . 6

*Gisbert v. Attorney General,*
     988 F.2d 1437 (5th Cir. 1993)   .  .  .  .  .  .  .  .  .  .  .  .   10

*Hernandez-Leija v. Trominski,*
     CA B-01-206 (S.D. Tx, 2003, appeal pending)   .  .  .  .  .   9, 11

*Kwong Hai Chew v. Colding,*
     344 U.S. 590 (1953)   .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .   10

*Laird v. Integrated Resources,*
     897 F.2d 826 (5th Cir. 1990)   .  .  .  .  .  .  .  .  .  .  .  .  .  .   4

*Landon v. Placencia,*
     459 U.S. 21 (1982)   .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .   10

*Loa-Herrera v. Trominski,*
     231 F.3d 984 (5th Cir. 2000)   .  .  .  .  .  .  .   3, 5-7, 12, 16

*Mathews v. Eldridge,*
     424 U.S. 319 (1976)   .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .   11

*Molina v. Sewell,*
     983 F.2d 676 (5th Cir. 1993)   .  .  .  .  .  .  .  .  .  .  .  .   10, 17

*Samirah v. O'Connell,*
     335 F.3d 545 (7th Cir. 2003)   .  .  .  .  .  .  .  .  .  .   7, 8, 11

*U.S. ex rel. Accardi v. Shaughnessy,*
     347 U.S. 260 (1954)   .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .   17

*Zadvydas v. Davis,*
     533 U.S. 678 (2001)   .  .  .  .  .  .  .  .  .  .  .  .  .   2, 9-11, 17

**STATUTES**

5 U.S.C. §552(a)(1)(C)   .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .   15

5 U.S.C. §552a(b)   .  .  .  .  .  .  .  .  .  .  .  .  .  .  .   7, 13, 16, 18

8 U.S.C. §1101(a)(13)(C)(v)   .  .  .  .  .  .  .  .  .  .  .  .  .  .  .   10

8 U.S.C. §1182(a)(2)(C)   .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .   10

8 U.S.C. §1182(d)(5)(A) . . . . . . . . . . . . . . . . . 6–8

8 U.S.C. §1225(b)(2)(C) . . . . . . . . . . . . . . . . . . 8

8 U.S.C. §1226 . . . . . . . . . . . . . . . . . . . . . . 2

8 U.S.C. §1226(a)(2) . . . . . . . . . . . . . . . . . . 6, 7

8 U.S.C. §1226(c) . . . . . . . . . . . . . . . . . . . 9, 10

8 U.S.C. §1226(e) . . . . . . . . . . . . . . 2, 6, 7, 9, 16, 17

8 U.S.C. §1252(a)(2)(B)(ii) . . . . . . . . . . . 2, 7, 11, 17

8 U.S.C. §1304(b) . . . . . . . . . . . . . . 1, 7, 13–15, 18

8 U.S.C. §1304(d) . . . . . . . . . . . . . . . . 12, 14, 15

## REGULATIONS

8 C.F.R. §236.1 . . . . . . . . . . . . . . . . . . . . . . 2

8 C.F.R. §264.1 . . . . . . . . . . . . . . . . . . . . . . 15

8 C.F.R. §264.1(a) . . . . . . . . . . . . . . . . . . . . 15

8 C.F.R. §264.1(h) . . . . . . . . . . . . . . . . . . 12, 14

8 C.F.R. §264.5(g) . . . . . . . . . . . . . . 5, 6, 8, 12, 14

8 CFR §3.19(h)(2)(ii) (2002) . . . . . . . . . . . . . . . 9

## OTHER AUTHORITIES

Federal Rules of Civil Procedure,
      Rule 54(c) . . . . . . . . . . . . . . . . . . . . . 4

Federal Rules of Civil Procedure,
      Rule 8(a)(3) . . . . . . . . . . . . . . . . . . . . 4

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ASCENCIO-GUZMAN et al, | ) | C.A. No.  B-94-215 |
| | ) | |
| v. | ) | PLAINTIFFS' REPLY TO DEFENDANTS' |
| | ) | OBJECTIONS TO THE MAGISTRATE |
| TROMINSKI, et al. | ) | JUDGE'S REPORT AND RECOMMENDATION |
| | ) | |

Plaintiffs, through counsel, and without prejudice to their pending
motion to strike same, or, should ot be denied, to seek leave to
file an additional reply, addressing some of the minutia contained
therein, herewith reply to Defendants' Memorandum in support of
their objections to the Magistrate's Report and Recommendation. [1]

### I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs would first note that, in their Objections, Defendants
continue their practice of shading facts in a manner which appears
calculated to mislead the Court. [2]  For example, Defendants assert
that "The Court Should Reject the Report's Conclusion That the
Defendants Violate 8 U.S.C. §1304(b), When a Temporary Form I-551
Is Issued To a Lawful Permanent Resident Placed Into Immigration
Proceedings." (DefObj:iv).  But the Magistrate did *not* conclude
that Defendants violate 8 U.S.C. §1304(b) when a temporary I-551 is
issued to an LPR placed in proceedings.  Rather, he *correctly* found
that it violates §1304(b) to put notations about LPRs' immigration
problems on the documents used as proof of their LPR status, where
such notations are not authorized by the statute, regulations,
Operations Instructions, or even the McNary Memorandum.

---

[1]  Said Report is cited herein, by page, as (R&R:__), and
Defendants' Objections thereto, as (DefObj:__).

[2]  This problem has characterized Defendants' approach to the
case from its inception.  *See, e.g.,* Plaintiffs' Motion for Rule 11
Sanctions and for Evidentiary Hearing, and Notice of Enumeration of
Incorrect and Misleading Statements.  [Dkt. 154] (Exhibit "AAA").

Further, Defendants previously conceded that 8 U.S.C. §1226(e) does not bar jurisdiction over claims relating to parole under 8 U.S.C. §1182(d)(5) for LPRs seeking readmission as returning residents, since such persons are not arrested on a "warrant issued by the Attorney General," a precondition for invoking 8 U.S.C. §1226. They defend their argument to the Fifth Circuit that said section barred jurisdiction as based solely on this Court's reference to 8 C.F.R. §236.1 in formulating the relief granted by its prior Order. Yet, they now imply that the Magistrate correctly concluded that §1226(e) bars jurisdiction over the parole issues, urging the Court to "adopt the Report's conclusion" on this point. (DefObj:41). [3]

A second pervasive problem is that Defendants apparently prefer to ignore, rather than address, the arguments which Plaintiffs have previously made with respect to the issues raised. In some cases, they even ignore the fact that the Fifth Circuit has considered, and rejected, the precise positions they now urge. For example, the claims that Plaintiffs did not request all the forms of relief ultimately granted, and/or that they lack standing, (DefObj:18-22, 30-33), ignore the facts that: 1) all pertinent facts and injuries were pled in the Second Amended Complaint, 2) problems relating to confiscating documents such as drivers' licenses and parole of LPRs under proceedings [4] have been at issue from very early in the

---

[3]    Nor, as discussed below, is jurisdiction barred by 8 U.S.C. §1252(a)(2)(B)(ii), which applies only to decisions which are in fact discretionary. *See Zadvydas v. Davis,* 533 U.S. 678,688 (2001).

[4]    *See,* Transcript of Status Conference, February 9, 1995, [Dkt. 115]. The attorney for Defendants informed the Court that the sole sticking point was the issue of paroling LPRs into the U.S. during proceedings. *Id.* at pp. 2-4. As he explained, *id.* at 3:

> Your Honor, the issue is whether the Government must parole a lawful permanent resident during exclusion proceedings. The Government is taking the position that [this] is strictly a discretionary matter ...

Defendants' attorney also represented that the parties were going to work out "two-thirds" of the case, and "we'll be down, I think, to that single narrow issue." *Id.* at 4. Defendants admitted, as a

proceedings, 2) Judge Vela was extremely concerned about the parole issue,[5] and ordered INS to brief it, [6] and 3) the Fifth Circuit found that Plaintiffs had standing on all the issues. [7] *Loa-Herrera v. Trominski*, 231 F.3d 984,987,n.4 (5th Cir. 2000): [8]

> Although it seeks reversal of the entirety of the district court's order on standing grounds, the INS presents argument only with respect to an LPR's right to hold a green card or other evidence of immigration status. Because the plaintiffs adequately allege injury in the balance of their complaint, we limit our analysis accordingly.

---

material fact "not in dispute," that they summarily returned LPRs accused only of minor offenses to Mexico to await a hearing, without informing them that parole existed, [Dkt. 54] (R:810-811).

[5]  *See,* Transcript [Dkt. 118, at pp. 18,21-23,25-40]. For example, with respect to the practice of returning LPRs to Mexico to await a hearing, Judge Vela inquired, "[w]hy wouldn't that be summary exclusion?" *id.* at 34. He also wondered "[w]hy could not there be a system by which that person could be informed of parole pending [resolution of the exclusion case] and that the issue of parole be passed upon by some judicial officer?" (*Id.* at 27).

[6]  Whether INS could confiscate documents such as drivers licenses of LPRs in exclusion proceedings was to ride with this issue. [Dkt. 118,44-45]. They now seek leave to brief the issue, (DefObj:24,n.8), although they only claimed authority to lift such documents "for use as evidence in exclusion cases, or because the documents are suspected to be counterfeit or otherwise not properly in the possession of the applicant." [Dkt.55,R:702]. This Court's Order did not preclude confiscation under such circumstances, and Defendants assert that it is not their practice to do so, (DefObj: 40,n.16). Plaintiffs alleged, [Dkt.15,R:1292-93], and Defendants admitted [Dkt.54,R:821], that they confiscated Plaintiffs' drivers licenses and Texas ID cards, and never claimed that they were "evidence." But if the Court wishes briefing as to whether they can be confiscated in such cases, Plaintiffs would not be opposed.

[7]  Defendants contest the finding of standing by asserting that Plaintiffs did not claim that these notations caused problems obtaining employment, (DefObj:32-3). This is untrue. The claim was clearly pled, [Dkt.15,R:1293], Defendants stated that "no material facts [were] in dispute." [Dkt.54,R:815]. *See also,* [Dkt.71] [Dkt.115], and the Court found standing with respect to *all* issues.

[8]  The Fifth Circuit also noted that "threatened injury is sufficient" to confer standing.  231 F.3d at 988.

3

The Court's observations that INS challenged the entire order on standing grounds, and that "plaintiffs adequately allege injury" with respect to all the issues, are in keeping with the principle that it is not the *relief sought* which must be adequately pled, but the facts *upon which relief can be granted,* including those necessary to confer standing. Indeed, the Federal Rules of Civil Procedure now specifically address this point, although Defendants also have chosen to ignore this fact. Rule 54(c) (emphasis added):

> Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in the party's pleadings.*

That this has long been the law can be seen from *Laird v. Integrated Resources,* 897 F.2d 826, 841-42 (5th Cir. 1990):

> We have consistently interpreted [Rule 8(a)(3), F.R.Civ.P.] to allow a plaintiff any relief that the pleaded claim supports; requesting an improper remedy is not fatal. [FN69] ... The plaintiffs properly pled a claim ... upon which other relief can be granted ...

Plaintiffs have repeatedly argued this point. *See, e.g,* Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, {Dkt. 149], at 15-16; and Exh. "AAA," *supra,* at 4, 20, 21, 25, 28-30. But Defendants neither acknowledge Rule 54(c), nor address *Laird.*

Thus, even without further amending the Complaint, [9] the fact that all the specific forms of relief were not initially demanded is irrelevant. The pertinent facts were adequately pled. [Dkt.15]. Nor, given the history of the case, including Defendants' assertion

---

[9]    Plaintiffs emphatically reject the suggestion that by seeking to amend the Complaint to specify the relief requested, they "effectively admitted that the issues were not properly pled." (DefObj:22). They simply sought to put a bogus issue to rest. Similarly, this Court's denial of the motion to amend can also been seen as simply acknowledging that it was not necessary to amend the pleadings in order to address the issue, since, as the Fifth Circuit specifically held, the facts had been adequately pled.

in 1995, [Dkt.115], that the parole issue was the sole sticking
point, the discussion of the issues before Judge Vela, Plaintiffs'
early pleadings, e.g., [Dkt. 40,41], and Defendants' admission that
they lifted Plaintiffs' drivers licenses, even while claiming that
it was not at issue, [Dkt.54,R:821], can they credibly assert lack
of "fair notice" that the claims were on the table. (DefObj:21-22).

## II.   THE FIFTH CIRCUIT'S DECISION

Defendants also distort the Fifth Circuit's opinion herein, and the
scope of the remand.   After disposing of Defendants' complaints
about standing, the Court stated, 231 F.3d at 988:

> More troubling is the government's contention that the
> district court failed to give the government an
> opportunity to present argument before issuing its order.
> Because of our rulings on the government's substantive
> claims, which we discuss below, we do not address these
> allegations.  Instead, we vacate the order and remand for
> further proceedings, during which the INS assuredly will
> have ample opportunity to press any additional legal or
> factual arguments it wishes to make and thereby to cure
> any procedural defects regarding the order. [10]

The Court next observed, id., that "[t]he government's substantive
objections to the order regard the issuance and confiscation of
immigration documents."   After discussing the importance of such
documents, the Court noted that "[i]n granting the plaintiffs
injunctive relief on the question of LPR documentation, the
district court relied substantially on a 1990 internal INS policy
clarification, (the 'McNary Memorandum')," id., which, the Court
held, "merely articulates internal guidelines for INS personnel;
[but] does not establish judicially enforceable rights," id. at
989.   After noting that all concerned had overlooked 8 C.F.R.
§264.5(g), the Court continued, 231 F.3d at 989 (emphasis added):

> Because the district court *erred to the extent that its*

---

[10]   Clearly, this language does not imply that the purpose of
the remand was *solely* to permit INS to press additional arguments.
To the contrary, it would be absurd to permit them to raise such
arguments, and then not rule on the issues which they addressed.

> *order relied on the McNary Memorandum*, we vacate the
> order and remand so the court can determine whether an
> injunction is appropriate in light of §264.5(g).

Contrary to Defendants' assertions, this passage does not mandate
a conclusion that this Court *incorrectly decided the issue*, but
only that it was based on inadequate authority, and therefore had
to be revisited. The Court next observed that §264.5(g) did not
restrict INS from attaching additional notations to the temporary
I-551, [11] before concluding that, 231 F.3d at 990 (emphasis added):

> *Absent any legal authority to the contrary*, however, the
> district court may not interfere with the Attorney
> General's statutory discretion to balance an LPR's
> interest in possessing particular forms of documentation
> against an employer's interest in knowing a potential
> employee's present and future immigration status.

Since the issue of whether there existed "legal authority to the
contrary" was not previously litigated, it is clear that the Court
left open that possibility.  Otherwise, the phrase would have been
superfluous.   While there is no maxim for construing judicial
opinions which directly corresponds to that involving statutes, to
wit, that which "precludes one part being read so as to render
another superfluous," [12] common sense yields the same result.

The Court next addressed the issue of parole.  Unfortunately, this
aspect of the Court's opinion reflects the confusion generated by
Defendants' claim that jurisdiction over the issue was barred by 8
U.S.C. §1226(e). Unfortunately, the Court accepted INS' premise
that parole in such cases was governed by 8 U.S.C. §1226(a)(2), [13]

---

[11]  At the risk of restating the obvious, Plaintiffs would note
that the absence of *restrictions* is not the same as *authorization*.

[12]  *Forsyth v. Barr,* 19 F.3d 1527,1543 (5th Cir. 1994).

[13]  Defendants have acknowledged that parole of arriving aliens
is governed by §1182(d)(5), and that §1226(e) does not apply.  Yet
because the Magistrate lost track of this fact, Defendants now urge

and concluded that §1226(e) barred review even of constitutional
issues with respect thereto. *Loa-Herrera,* at 990-91.  Under *Demore
v. Kim,* 123 S.Ct. 1708 (2003), however, this would be incorrect,
even if it were the "conditional parole" (release on recognizance),
of §1226(a)(2)(B), rather than parole of arriving aliens, which is
exclusively under §1182(d)(5). [14]  The Magistrate's error in this
regard is therefore doubly surprising, and Defendants' assertion
that this Court should adopt that error, and find that the "parole
claim" is "not at issue," (DefObj:24), is equally disingenuous.

### III.  **THE CURRENT POSTURE OF THE CASE**

Plaintiffs requested summary judgment on both issues set forth in
the Magistrate's Order of September 25, 2002.  They argued that
with respect to LPRs, Defendants exercise the parole authority of
§1182(d)(5) in a manner inconsistent with Due Process, and that the
practice of placing personal notations on their substitute I-551
documents violates two statutory bars against divulging LPRs'
personal information except under specified circumstances. [15]

This Court previously granted three forms of relief.  Following
Supreme Court and Fifth Circuit precedent, the Court noted that as
LPRs, Plaintiffs enjoy Due Process protection in matters affecting
their right to enter (or be paroled into) the United States. [16]  The

---

the Court to adopt his clearly erroneous legal conclusion.

[14]  The dissent by Judge Dennis focused on the point discussed
in *Kim, i.e.,* that §1226(e) barred jurisdiction over individual
claims, not constitutional challenges to the statutory scheme.  But
even Judge Dennis did not grasp the distinction between the
"conditional parole" of §1226(a)(2)(B), and that of §1182(d)(5).

[15]  The Magistrate ruled in Plaintiffs' favor on the basis of
8 U.S.C. §1304(b), without reaching their claim under the Privacy
Act, 5 U.S.C. §552a(b).  Plaintiffs continue to urge this claim,
which they consider just as strong as the claim under §1304(b).

[16]  Their LPR status is only one difference between Plaintiffs'
case and *Samirah v. O'Connell,* 335 F.3d 545 (7th Cir. 2003), which
involved an attack on an individual, discretionary, decision.  And

Court therefore ordered that on returning an LPR to Mexico under 8 U.S.C. §1225(b)(2)(C), INS provide notice of the possibility of parole under 8 U.S.C. §1182(d)(5)(A), and that before finally denying such a request, provide the LPR with a hearing. The Court also ordered INS to abide by the "McNary Memorandum" in determining when to confiscate LPRs' green cards, and the form of substitute documents issued. [17] The Court further ordered that INS not confiscate such documents lawfully issued as drivers' licenses or Social Security cards, absent a good faith belief that they constituted bona fide evidence of unlawful conduct: the only circumstance under which Defendants claimed such authority.

INS appealed, primarily raising procedural complaints. As shown by their second motion for summary judgment, [Dkt. 147] [18] which included their brief to the Fifth Circuit, (Appendix Tab 5), INS raised no substantive challenges to the Court's orders on class certification, and limiting the confiscation of documents such as drivers' licenses. Nor did the Fifth Circuit *sua sponte* fault with the Court's treatment either of class certification, or of the "other documents" issue, and the Magistrate did not identify either point as an outstanding issue in the September 25, 2002 Order. [19]

### IV.  THE IMPACT OF *DEMORE v. KIM* ON THE CASE AT BAR AND THE REASONS THAT *SAMIRAH V. O'CONNELL* IS NOT ON POINT.

In his Report, the Magistrate Judge concluded that, (RR:3-4):

---

the fact that at the time they seek admission, they are only *accused* of being deportable, (and may not in fact *be* deportable), is one of several key factors distinguishing it from *Demore v. Kim.*

[17]  Neither Plaintiffs nor INS noted that 8 C.F.R. §264.5(g) had superceded the McNary Memo.  Said regulation, rather than the Memo, should have formed the basis of this aspect of the Order.

[18]  *See, e.g.,* [Dkt.147:12-14], summarizing the substantive complaints INS raised before the Fifth Circuit, and (*id.* at 19-20), "Defendants' Statement of Outstanding Issues," neither of which addressed the "other documents" issue, or class certification.

[19]  While the Court vacated the Order granting relief, it does not vacate the class certification orders, which were separate.

8

The United States Supreme Court's recent decision in *Demore v. Kim,* as well as 8 U.S.C. Section 1226(e), have foreclosed all of the Plaintiffs' arguments with regard to parole. The Supreme Court ruled in *Kim* that Congress, justifiably concerned that deportable criminal aliens who were not detained would continue to engage in crime and would fail to appear for their removal hearings in large numbers, could require that such aliens be detained for a brief period for their removal proceedings, without providing an individualized determination as to whether the aliens presented flight risks.

First, 8 U.S.C. §1226(e) is inapplicable. Further, *Kim* supports Plaintiffs' claims, both on jurisdiction and on the merits, as does *Zadvydas, supra.* In *Kim,* the Court upheld the constitutionality of a statute mandating detention, without individualized hearings, of non-citizens who had conceded they were *deportable.* The Court's reasoning depended heavily on the availability of individual hearings *where deportability was contested,* 123 S.Ct. at 1712-13:

> [Kim] also did not dispute the INS' conclusion that he is subject to mandatory detention under § 1226(c)... In conceding that he was deportable, respondent forwent a hearing at which he would have been entitled to raise any nonfrivolous argument available to demonstrate that he was not properly included in a mandatory detention category. See 8 CFR § 3.19(h)(2)(ii) (2002); *In re Joseph,* 22 I. & N. Dec. 799 (1999). n3

> n3 This "*Joseph* hearing" is immediately provided to a detainee who claims that he is not covered by § 1226(c). ... At the hearing, the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the INS is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention. ... Such individualized review is available, however, and the dissent is mistaken if it means to suggest otherwise.

Here, Plaintiffs challenge procedures which *precede* any finding of deportability. Not all LPRs put in proceedings are deportable, [20]

---

[20]    *See, e.g.,* the case of Ester Martinez, (R5:1318-22), and that of Ana Cerda in *Hernandez-Leija, supra;* B-01-206 and 02-109. Although she was not convicted of any offense, she was put into

9

and many, such as Plaintiffs Ascencio, Merino, and Gutierrez, while inadmissible, would not have been subject to §1226(c) had they been "arrested on a warrant" within the U.S.. [21]  There is no mechanism equivalent to *Joseph* hearings in such cases. As LPRs, Plaintiffs are entitled to Due Process in matters relating to their right to re-enter the U.S.. [22] As Judge Vela noted [Dkt. 118], parole becomes relevant when they are summarily denied admission as returning LPRs.[23]  It is therefore is part and parcel of the same process.

---

proceedings on the theory that if there was "reason to believe" she was a drug trafficker, under 8 U.S.C. §1182(a)(2)(C), she had "committed an offense," within the meaning of §1101(a)(13)(C)(v), and was therefore an "arriving alien." The Immigration Judge disagreed, and terminated proceedings. Exh. HHH [Dkt. 192].

[21]  To the contrary, Defendants admit that arriving LPRs who have committed serious offenses, such as would subject them, within the U.S., to mandatory detention, are not returned to Mexico to await their hearings. [Dkt. 54](R:810-811); [Dkt. 118], at 18-34.

[22]  Plaintiffs' LPR status distinguishes this case from *Gisbert v. Attorney General,* 988 F.2d 1437 (5th Cir. 1993). *See, Landon v. Placencia,* 459 U.S. 21 (1982); *Molina v. Sewell,* 983 F.2d 676 (5th Cir. 1993), making this case more akin to *Zadvydas* than *Gisbert*. It is also what distinguishes the instant case from all known cases involving parole. As noted in *Demore v. Kim,* 123 S.Ct. at 1729-30:

> And in *Kwong Hai Chew* v. *Colding,* 344 U.S. 590, 97 L. Ed. 576, 73 S. Ct. 472 (1953), we read the word "excludable" in a regulation as having no application to LPRs, since such a reading would have been questionable given "a resident alien's constitutional right to due process." *Id.,* at 598-599, 97 L Ed 576, 73 S Ct 472. n7  *Kwong Hai Chew* adopted the statement of Justice Murphy, concurring in *Bridges*, that "'once an alien lawfully enters and resides in this country he becomes invested with the rights guaranteed by the Constitution to all people within our borders.  Such rights include those protected by the First and the Fifth Amendments and by the due process clause of the Fourteenth Amendment.

See, also *Landon v. Plasencia, supra*; and *Molina v. Sewell, supra*.

[23]  Defendants also argue that the Court should reject Plaintiffs' parole claims "insofar as the challenge raises non-constitutional arguments," (DefObj:45).  Plaintiffs' claims are

Nor do Plaintiffs challenge the constitutionality of a statute; let alone one which *mandates* their detention. Defendants clearly have the discretion to parole members of the Plaintiff class into the U.S., under §1182(d)(5). And unlike *Samirah*, Plaintiffs do not challenge a discretionary denial, *id.* at 549: [24]

> The plain meaning of §§ 1252(a)(2)(B)(ii)'s text is that "no court shall have jurisdiction to review" any decision of the Attorney General to deny discretionary relief "specified under this subchapter."

No statute bars this Court's jurisdiction to determine whether the manner in which Defendants *administer* this discretionary parole authority offends Due Process. *See, Zadvydas, supra.* Thus there is no reason not to apply the balancing test mandated by cases such as *Mathews v. Eldridge*, 424 U.S. 319 (1976). For the same reasons, Plaintiffs continue to urge their notice claim, which is independent of the hearing claim, as it relates to their ability to make parole requests to the District Director.

### V.    DEFENDANTS' OBJECTIONS TO THE DOCUMENTATION ISSUES
### A.    THERE ARE NO GENUINE ISSUES OF MATERIAL FACT

On the "documentation" issues, the Magistrate correctly concluded, as Defendants affirmatively asserted during the prior proceedings, {Dkt.54,R:815}, that there were no genuine issues of material fact, and that Plaintiffs were entitled to judgment as a matter of law.

Defendants claim that there is no such thing as a temporary form I-551, (evidence of permanent resident status), and that the contents of such forms are thus within their "unfettered discretion," (DefObj:11,34-36). This is incorrect. It is literally true that

---

purely constitutional. As they are not raised in habeas, there is no need for "'custody' and... a proper custodian." (DefObj:45).

[24] *See, Zadvydas, supra*, rejecting a claim that §1252(a)(2)(B)(ii) barred jurisdiction, because the challenge was not to an "exercise of discretion," but to the "extent of the Attorney General's authority under the post-removal-period detention statute." For this reason, Plaintiffs' appealed this Court's contrary ruling in *Hernandez-Leija v. Trominski*, CA B-01-206.

there is no document "*entitled* Temporary Form I-551," but it is not true that the regulations do not specify what constitutes such a document, if under a slightly different "title." 8 C.F.R. §264.1(h) provides that "Form I-94, appropriately endorsed, may be issued as temporary evidence of... lawful admission for permanent residence" Plaintiffs do not challenge use of the I-94 for this purpose. They do assert, however, that adding notations not called for by Form I-94 violates the regulations. Defendants previously argued that 8 C.F.R. §264.5(g), permitted them to issue anything "similar" to such a form. The Court disagreed, *Loa-Herrera, supra* at 989,n.10:

> We reject the government's contention that the requirement of evidence "*in the form of* a temporary Form I-551" is satisfied by the issuance of any form that is similar to a Form I-551, for that is not the most reasonable construction of the regulation. Instead, under the plain meaning of § 264.5(g), the INS must issue the temporary Form I-551 to persons in exclusion proceedings; substitute forms are not sufficient.

The adequacy of the I-94 form itself; e.g., whether one uses the arrival or departure portion of the I-94, [25] is clearly distinct from the extraneous notation issue. At the very least, the concept of a "form" requires standardization: with the same information. Otherwise, they are not "forms," as required by 8 U.S.C. §1304(d).

Defendants claim that because 8 C.F.R. §264.5(g) only covers LPRs in exclusion proceedings, or the removal equivalent, they are not required to provide I-94s to all Plaintiff class members. (DefObj: 34,n.14). This is incorrect. 8 U.S.C. §1304(d) mandates that they be provided proof of registration "in such form" as prescribed by regulation. The regulations allows only the I-551 or I-94 to be used as proof of LPR status. Defendants' failure to give all members of the Plaintiff class one or the other would be illegal.

Defendants also claim that issues of material fact were created by a conclusory Declaration, (DefObj:Exh.2), to the effect that, apart

---

[25]  *See, e.g., Etuk v. Slattery*, 936 F.2d 1433 (2nd Cir. 1991).

from giving parole hearings to LPRs who are not immediately granted parole, they were still "guided by the September 28, 1999 memorandum," ("the 1999 Memo") (DefObj:Exh.1), to wit, a Memo from Defendant Trominski to the Assistant District Director for Examinations, purporting to implement this Court's initial Order. Said Memo does not, however, create a form of legal authority such as would override 8 U.S.C. §1304(b), and the Privacy Act. Further, the claim that they still follow the 1999 Memo directly contradicts their prior claim, [Dkt.55] (R3:680), that they have discretion to use the "departure" portion of the I-94 in creating temporary documents, since its use is specifically prohibited by the McNary Memo, and thus also by the 1999 Memo. In the 1999 Memo, at p.3, Defendant Trominski: 1) mandates that the issuance of temporary documentation be "as instructed in the McNary Memorandum," but 2) specifies that any notations *other* than those described in the McNary Memorandum "should be cleared through the ADDE." This implicitly delegates authority to the ADDE to contravene the Order of January 13, 1999, by going outside the McNary Memorandum.

Even without the benefit of discovery, Plaintiffs have submitted three samples of "temporary I-551s" given to class members which comply neither with the McNary memorandum, nor this Court's prior Order. Exhibit "DDD" [Dkt. 172]. [26] The document given to Elisa Barron fails to mention that she is an LPR, or that she is entitled

---

[26]  *See also*, Exhibit A, (First I-94 given to Plaintiff Gracia: with no Employment authorization, and with notation that "DEPORTATION PROCEEDINGS INITIATED"); Exhibits B and D (I-94s for Plaintiff Herrera, containing employment authorization, and notation "UNDER DEPORTATION PROCEEDINGS," and "OUT ON BOND"); Exhibit K (I-94 given Plaintiff Sanchez-Salinas when he posted bond, with notation "not valid for employment"); Exhibit L (I-94 for Ester Martinez, "paroled pending determination of right to reenter. Employment authorized"); Exhibit M (I-94 given to Plaintiff Cantu de Cabrera, "bond posted" "Conclusion of Exclusion Proceedings" but no employment authorization stamp); Exhibits V and W (second and third I-94s given to Plaintiff Gracia); and Exhibit MM (I-94 given to class member Jose Rosales Lopez, with no indication of LPR status, or employment authorization).

13

to be employed. Those of Ruben Prado and Yesenia Rios claim to be "proof of legal status," which is not the same as LPR status. [27] All three have expiration dates, and although Defendants promised Judge Vela they would put notations on such cards that they can be renewed, (Tr. at 10), none carries such a notation. And all state in one way or another that the LPR is in proceedings. Exhibit "DDD" thus shows that once the Court's prior Order was vacated Defendants returned to the very practices prohibited by said Order, some of which they never abandoned, even when the Order was in effect.

Further, a Declaration which on its face authorizes defiance of this Court's (then binding) Order does not create a genuine issue of material fact as to whether Defendants ceased the challenged practices, and will not return to them in the future. No reasonable factfinder could conclude on the record herein that Defendants are in compliance with 8 C.F.R. §§264.1(h) and 264.5(g), and/or will comply in the future. [28] *See, Caboni v. GMC,* 278 F.3d 448,451 (5th Cir. 2002) (After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable [factfinder] could find for the nonmovant, summary judgment will be granted). [29]

## B.  DEFENDANTS' ARGUMENTS WITH RESPECT TO 8 U.S.C. §1304(b).

The confidentiality mandate of §1304(b) applies to all registration and fingerprint records made under "this title," not just under 8 U.S.C. §1302, as Defendants claim. (DefObj:9-10). And 8 U.S.C. §1304(d) bestows discretion to specify, *by regulation,* the "form"

---

[27]    For example, non-immigrant students have "legal status," but are not LPRs, and are not entitled to be employed.

[28]    Defendants admit that it was their practice when suit was filed to place such notations on temporary I-551s. [Dkt.54,R:813].

[29]    Defendants' assertion, (DefObj:9), that in light of this Declaration, the Magistrate's "Factual finding that notations are placed on documents is erroneous and should not be adopted," is but another example of Defendants' lack of intellectual integrity, where the Declaration itself authorizes such notations, if approved by an intermediate level official, not to mention that Defendants successfully blocked Plaintiffs' attempt to obtain discovery!

14

of alien registration cards. [30] 8 C.F.R. §264.1 prescribes some documents, such as I-485 applications for adjustment of status, as "registration forms," and others, including Orders to Show Cause and I-94s, as "evidence of registration," which are given to the registrant. The use of such "forms" standardizes the information obtained, and that to be divulged in the form given as evidence of registration, which the registrant must carry. 8 U.S.C. §1304(d).

Defendants note that if and when Plaintiffs filed I-485s, they were probably not in deportation proceedings, [31] and that the challenged notations did not come from these forms. This is true. But their claim that the Magistrate's Report finds that §1304(b) "prohibits the listing of any information which is also noted on an I-485," (DefObj:29), is not. 8 C.F.R. §264.1(a) lists Form I-485 as one "registration form," and Forms I-94 and I-551 as "evidence of registration." Clearly, 8 U.S.C. §1304(b) does not contemplate that information gained from the registration forms cannot be used in those provided as evidence of registration. It does, however, contemplate that information requested in a registration form, but not specified by the form to be used as evidence of registration, is confidential, and cannot be revealed. Any other reading of 8 U.S.C. §1304(b) and 8 C.F.R. §264.1 would yield an absurd result.

When deportation proceedings are initiated, an I-551 is lifted, and an I-94 issued, "registration" occurs. Information obtained during *that* process includes the fact that the LPR is under proceedings.

---

[30]   This is very different from giving the Attorney General "unfettered discretion" to decide what information will or will not be included on a given card, as Defendants claim. (DefObj:11,34). *See also,* 5 U.S.C. §552(a)(1)(C), which requires agencies to publish in the Federal Register descriptions of forms available.

[31]   Defendants claim, however, (DefObj:28), that all LPRs "were required to file a Form I-485." This is false. Form I-485 is used only when LPR status is sought by adjusting status in the U.S., not when an immigrant visa is issued by a U.S. Consulate abroad.

15

Form I-94 has no block calling for such information, so it is protected by §1304(b). Any other construction would render §1304(b) meaningless. This is doubly mandated by the Privacy Act, which, together with 8 U.S.C. §1304(b), constitutes the "legal authority to the contrary," for which the Fifth Circuit left open the door.

Nor does this interpretation undermine the purpose of registration. Defendants admit that LPRs carrying I-94s are "more likely to be more closely inspected" than those with I-551s. 231 F.3d at 987. Given all the data bases to which the Department of Homeland Security and other law enforcement agents are now privy, there are far more reliable means than handwritten notations for officers who encounter a person carrying an I-94, and who need to know whether that person is under proceedings, to obtain that information: means which do not require that it be broadcast to all those to whom the LPR must show proof of LPR status, such as potential employers.[32]

## VI.  CONCLUSION

In conclusion, Plaintiffs respectfully urge that this Court reject Defendants' Objections to the Magistrate Judge's Report and Recommendation.  As the Fifth Circuit correctly found, Plaintiffs have standing on all issues wherein the Court previously granted relief.  The underlying facts were adequately pled, and neither Fifth Circuit precedent, nor the Federal Rules, require that all specific forms of relief be requested.  Further, Defendants were on notice from the earliest stages of the proceedings that these were the forms of relief sought.  Indeed, the parties had at one point reached an agreement on all issues except those relating to parole, all of which agreements Defendants later renounced.  Similarly, the decision of the Fifth Circuit in *Loa-Herrera* does not preclude this

---

[32]  While Plaintiffs may show documents other than proof of LPR status to potential employers, if they possess such documents, in some instances, only proof of LPR status suffices, such as where Plaintiffs seek benefits only available to LPRs or U.S. citizens.

Court from revisiting any of the issues raised herein.

The Court rejected Plaintiffs' parole claims solely on the basis of the alleged applicability of 8 U.S.C. §1226(e), which even Defendants now concede would only be implicated if the Court were again to grant relief in a manner which appeared to fall under that section. Further, cases such as *Zadvydas* clearly establish that neither 8 U.S.C. §1226(e) nor §1252(a)(2)(B)(ii) apply to systemic challenges, such as are raised herein, particularly where those challenges are based on constitutional grounds. Plaintiffs also argue that the fact that the proceedings challenged occur *prior* to any finding that they are subject to removal, and there are no procedures for individual determinations where removability is challenged, distinguish the instant case from *Kim*. And *Kim* would have no relevancy to their notice claim. Further, under cases such as *Molina v. Sewell,* Plaintiffs' LPR status distinguishes their parole claims from those in *Gisbert*. Despite the fact that parole is discretionary, cases such as *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), demonstrate that they are entitled to Due Process with respect thereto.

With respect to the adequacy of the substitute documentation provided when their I-551s are confiscated, the Declaration of Mr. Trominski that they continue to abide by the McNary Memo does not create a genuine issue of material fact as to whether they continue to place notations on I-94s which are not mandated by the *form itself*. Defendants previously admitted that it was their practice, when the instant case was filed, to note on Plaintiffs' I-94s that they were under proceedings, and there is no guarantee that they will not resume the practice once the instant case is concluded. Further, even without discovery, Plaintiffs have uncovered several instances where the I-94s given to members of the Plaintiff class do not comply with the 1999 Memorandum, or constitute an I-94 which is "appropriately endorse," as required by 8 C.F.R. §264.1(h).

17

Defendants claim that there is no such document as a "temporary I-551." The regulations do specify, however, that I-94s can be used as temporary proof of permanent resident status. In fact, I-551s and I-94s are the only documents specified by the regulations for this purpose. In light of the statutory mandate that the Attorney General prescribe "forms" for alien registration, and the fact that the Fifth Circuit rejected Defendants' assertion that "similar" documents would suffice, this Court can clearly consider whether the documents provided fulfill the mandate of the regulations.

Under the Fifth Circuit's decision, the Court can also consider whether there is legal authority which would limit the discretion of the Attorney General to inform potential employers of Plaintiffs' immigration problems. Plaintiffs continue to assert that both 8 U.S.C. §1304(b) and the Privacy Act comprise the "legal authority to the contrary" contemplated by the Fifth Circuit.

With respect to the "other documents" issue, Defendants have admitted that they confiscated such documents from Plaintiffs, although they deny that they do so if they are not needed for evidentiary purposes, or because they are not lawfully in the possession of the Plaintiffs. Plaintiffs clearly do not object to confiscation under such circumstances, and the Court's prior order would not interfere with Defendants' ability to do so. If Defendants wish to brief an alleged right to confiscate such documents under other circumstances, and if the Court wishes to entertain such briefs, Plaintiffs would not object.

Further, if the Court finds that there are, indeed, genuine issues of material fact, Plaintiffs would urge that prior to resolving any such issues, full discovery be allowed.

Respectfully Submitted,

Lisa S. Brodyaga

18

Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731 (fax)
Fed. ID.  1178; Texas Bar 03052800

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, first-class postage prepaid, to Anthony Payne, Attorney, OIL, at Box 878, Ben Franklin Station, Washington, D.C. 20044, on November 7, 2003.



19