## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| Juana ASCENCIO-GUZMAN, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| Michael CHERTOFF, Secretary, | ) | C.A. No. B-94-215 |
| Department of Homeland Security, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## DEFENDANTS' MOTION TO COMPEL PLAINTIFFS
## TO RESPOND TO DEFENDANTS' FIRST SET OF INTERROGATORIES

Defendants, through undersigned counsel, move this Court to compel each

of the seven named Plaintiffs to provide full and complete responses to

Defendants' First Set of Interrogatories, served June 21, 2008.  This motion is

filed pursuant to Rule 37(a)(3)(B)(iii) of the Federal Rules of Civil Procedure.

### ISSUE TO BE RULED UPON BY THE COURT

Whether Plaintiffs' refusal to provide complete responses to Defendants'

interrogatories constitutes a violation of Plaintiffs' obligations under Rule 33 of

the Federal Rules of Civil Procedure, and this Court's April 22, 2008 scheduling

order.

## NATURE AND STAGE OF PROCEEDINGS

In the instant case, which began in 1994, Plaintiffs challenge Defendants' practice of replacing confiscated I-551 cards of permanent resident aliens who have been placed in removal proceedings with Temporary I-551 cards evincing their resident status.  Plaintiffs also claim to challenge Defendants' purported practice of confiscating "other documents" of resident aliens who are placed in removal proceedings.

Proceedings were re-instituted in this Court pursuant to the Fifth Circuit's remand order issued on June 5, 2007.  See Loa-Herrera v. Department of Homeland Sec. ("**Loa-Herrera**"), No. 06-40561, 239 Fed. App'x. 875 (5th Cir. June 5, 2007).  On March 31, 2008, the parties submitted a Joint Discovery/Case Management Plan and Proposed Scheduling Order.  See Ex. 1.[1]  Among other things, and of relevance here, it provided that the parties' initial disclosures would be served by

---

[1]    The abbreviations, Ex. 1 through Ex. 8 refer to:
    (i)      Exhibit 1, Joint Discovery/Case Management Plan, dated March 31, 2008;
    (ii)    Exhibit 2, this Court's scheduling order, dated April 22, 2008;
    (iii)   Exhibit 3, Defendants' interrogatories, dated June 18, 2008;
    (iv)   Exhibit 4, Plaintiffs' partial responses to Defendants' interrogatories, received July 13, 2008, and August 7, 2008;
    (v)    Exhibit 5, Defendants' letter dated August 4, 2008;
    (vi)   Exhibit 6, Plaintiffs' letter dated August 25, 2008;
    (vii)  Exhibit 7, Defendants' letter dated August 29, 2008; and
    (viii)  Exhibit 8, Plaintiffs' letter dated August 30, 2008.

May 22, 2008, and that interrogatories would be served by June 22, 2008.  Id. at 7.

Pursuant to the foregoing, Defendants served counsel for Plaintiffs, Lisa Brodyaga, with Defendants' First Set of Interrogatories for each of the seven named Plaintiffs on June 19, 2008.  See generally Ex. 3.  Plaintiffs' responses were therefore due by July 21, 2008.  Fed R. Civ. P. 33(b)(2).

On July 13, 2008, Defendants received a single, partially completed response to their interrogatories from Plaintiff Gracia-Cantu only.  Ex. 4.  Through counsel, Plaintiff Gracia-Cantu objected to discovery as a whole, citing Defendants' prior assertions that there were no material facts at issue in the case. Id. at 1.  This objection notwithstanding, Gracia-Cantu provided a partial response. That is, he answered Defendants' first five interrogatories but refused to address interrogatories six through eleven (11).  Id. at 2-4.  In explanation, Gracia-Cantu submitted that the unaddressed interrogatories exceed the allowances under the rules so that, for example, the interrogatory requesting an address history including a job description, time period of employment, location, address, and phone number of the employer, and reason for cessation of employment, constitutes six separate interrogatories rather than one.  See id. at 2-3.

Two weeks after Plaintiffs' responses were due, on August 4, 2008 — having received only a partially completed response from Plaintiff Gracia-Cantu,

3

— Defendants served Plaintiffs with a letter requesting the missing responses from the other named Plaintiffs and responding to Plaintiff Gracia-Cantu's objections to the numeration of the interrogatories and to discovery as a whole. <u>See</u> Ex. 5 at 3-4. Defendants explained that while they had previously **assumed**, for purposes of various summary judgment motions, that some of the facts alleged in the complaint were true, they had never **conceded** as much. <u>See id.</u> at 3-4. Citing to the language of the rule, case law, and advisory committee notes, Defendants also clarified that, as per the "discreet sub-parts" instruct of the federal rules, their eleven (11) interrogatories fell well within the number allowed. <u>See id.</u> at 1-3.

On August 7, 2008, Defendants were served with partial responses from two of the other six named Plaintiffs. <u>See generally</u> Ex. 4. Again, those responses answered only the first five of Defendants' eleven (11) interrogatories. <u>See id.</u>

Then, on August 25, 2008, Defendants received Plaintiffs' response to Defendants' letter of August 4. <u>See generally</u> Ex. 6. In that letter, Plaintiffs argued that the "discreet subparts" instruction to the federal rules applies only to "communications" so that, for example, a question requesting a name, alias, and Alien number, constitutes three rather than, as per Defendants, one interrogatory. <u>See id.</u> at 1-2. In other words, Plaintiffs insisted that Defendants' interrogatories exceeded the allowable number under the federal rules. <u>See id.</u> Plaintiffs added

4

that the issues would anyhow be better addressed via requests for admissions, which mechanism would also prove much more convenient to them.  See id. at 2.

In response to Plaintiffs' arguments — and in a good-faith attempt to resolve the dispute without seeking this Court's intervention — Defendants responded with a second letter on August 29, 2008, addressing Plaintiffs' concerns.  See generally, Ex. 7.  Citing case law and other relevant authority, Defendants addressed each interrogatory individually, explaining that each had been properly numerated and that the total amounted to less than the twenty-five (25) allowed.  See generally id.  Defendants also agreed to consider replacing some of the interrogatories with requests for admission **if** Plaintiffs would identify the specific interrogatories that could be answered in that manner, but declined to rewrite their interrogatories in anticipation of such concessions.  Id. at 5.  Nevertheless, Defendants reiterated that Plaintiffs' objections regarding numeration were unwarranted and reminded Plaintiffs that Defendants had yet to receive responses from four of the named Plaintiffs.  Id.  Finally, Defendants advised that Plaintiffs were in apparent violation of their obligations under the federal rules and that, given the already lengthy delays on the relatively short discovery period, Defendants would have no choice but to file a motion to compel if the situation was not resolved.  Id.

5

Finally, on August 30, 2008, Defendants received another letter from Plaintiffs.  See generally, Ex. 8.  **First**, Plaintiffs argued that Defendants had not addressed their "primary objection" regarding whether any material facts remained at issue.  Id. at 1.  Included with the letter were separate responses, signed on behalf of the seven named Plaintiffs, raising only this objection.  Id.  **Second**, Plaintiffs reiterated that Defendants' First Set of Interrogatories were excessive under Local Rule 33.1.  Id. at 3-4.  **Lastly**, Plaintiffs asserted that, until their objection regarding the dispute over material facts was resolved, they saw no point in addressing either the numeration issue or their prior request to reframe Defendants' interrogatories as requests for admission.  Id. at 4.

The instant motion followed.

## ARGUMENT

### I.    Plaintiffs' Unilateral Refusal to Participate in Discovery is Indefensible

Plaintiffs have attempted to justify their refusal to respond by claiming that Defendants have previously asserted that there are no material facts at issue in the case.  Ex. 8 at 1.  Further, they submit that "[t]he decisions of the Fifth Circuit do not change the basis for this assertion . . . ."  Id.

Plaintiffs' position is unsustainable.  **First**, it directly contradicts the Fifth Circuit's remand order, which states that "on remand, the government remains free

6

to press any additional legal **or factual** arguments it wishes to make, both with respect to the extraneous notations claim and the other government documents claim . . . ." Loa-Herrera, 239 Fed.App'x at 882 (emphasis added and internal quotation marks omitted). Indeed, Plaintiffs' attempt to prohibit Defendants from engaging in discovery effectively precludes Defendants from pursuing any factual defenses. **Second**, whereas Defendants have previously assumed (for the purposes of summary judgment) that the issues could be decided solely on the basis of the law and undisputed material facts, those assertions were made prior to the Fifth Circuit's Loa-Herrera decision, which changed the scope and focus of the instant case. Loa-Herrera, 239 Fed.App'x at 881-82 (specifying that Defendants are permitted to raise any factual and legal defenses).

## II.    Plaintiffs Have Failed to Comply With Their Obligations Under the Federal Rules of Civil Procedure by Refusing to Provide Complete Answers to Defendants' Interrogatories.

Plaintiffs' answer to Defendants' First Set of Interrogatories is insufficient. Foremost, four of the seven named Plaintiffs have yet to address **any** of the interrogatories. Further, the three named Plaintiffs who **did** address the interrogatories only did so partially — claiming that Defendants' interrogatories exceed the allowable number under the federal rules.

Contrary to Plaintiffs' contentions, however, Rule 33(a)(1) of the Federal

Rules of Civil Procedure states that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."  By specifically stating that "discrete subparts" are counted as separate interrogatories, the language of the rule necessarily allows for single interrogatories containing non-discrete subparts.  To hold otherwise would render the word "discrete" superfluous.  The advisory committee notes support this interpretation, stating that "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each communication."  The scope of the term "discrete subpart" has also been addressed in numerous cases decided after the 1993 amendments which added the foregoing language to Rule 33.  While there are minor variations in tests and standards articulated, courts have generally held that subparts do not count against the numeric limit where they are closely related to the primary question, or where they pertain to a single line of inquiry.  See e.g., Safeco of America v. Rawstron, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (subparts are not discrete if they are "logically or factually subsumed within and necessarily related to the primary question"); Willingham v. Ashcroft, 226 F.R.D. 57, 59 (D. D.C. 2005) (a subpart is only discrete if it "introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that

precedes it").

Defendants' August 29, 2008 letter to Plaintiffs explained in detail why each of Defendants' eleven (11) interrogatories were properly numerated.  <u>See</u> <u>generally</u>, Ex. 7 at 2-5.  In response, Plaintiffs attempted to rely on Local Rule 33.1, attributing dispositive weight to the absence of the word "discrete."  <u>See</u> Ex. 8 at 2.  Simply put, Plaintiffs suggested that any subpart, no matter how closely related to the overarching question, constitutes a separate interrogatory under the local rules.  <u>See</u> <u>id.</u>

Plaintiffs' argument posits form over substance and otherwise misses the boat.  That is, Fed. R. Civ. P. 83 requires that local rules be consistent with the federal rules.  Local Rule 33.1 thus cannot be read as limiting the number of interrogatories allowed under Fed. R. Civ. P. 33.  <u>See, e.g.</u>, <u>St. Paul Fire and</u> <u>Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP</u>, 217 F.R.D. 288, 289 (D. Mass. 2003); <u>see also</u> Fed. R. Civ. P. 26(b)(2)(A) (permitting limits on requests for admission either by order **or by rule** but allowing limits on interrogatories only by order).  Plaintiffs' reliance on <u>Valdez v. Ford Motor Co.</u>, 134 F.R.D. 296, 298 (D. Nev. 1991), which involved an interpretation of a local rule in effect **prior to** the

1993 amendments to the federal rules, is therefore unavailing.[2]

In sum, Plaintiffs' objection to the numeration of Defendants' First Set of Interrogatories does not justify their refusal to provide complete responses.

### III.    Plaintiffs' Refusal to Comply to Their Obligations Under the Federal Rules is Prejudicial.

Plaintiffs' non-response to Defendants' First Set of Interrogatories clearly prejudices Defendants. **First**, Plaintiffs' responses are, as of this writing, almost two months overdue.[3] **Second**, Plaintiffs' refusal to participate in discovery comes more than four months after the agreed-upon discovery period began, and less than two months before it closes. **Third**, Plaintiffs' failure to divulge the basic information requested in the interrogatories, see generally, Ex. 3, has impeded Defendants from pursuing further discovery.

---

[2]  The reasoning in Valdez was also: (i) criticized by a subsequent decision within the same district, Ginn v. Gemini, Inc., 137 F.R.D. 320, 321-22 (D. Nev. 1991); and (ii) rejected by at least one district court within the Fifth Circuit, Clark v. Burlington Northern R.R., 112 F.R.D. 117, 119 (N.D. Miss. 1986).

[3]  This Court should note that Plaintiffs did not file a motion for a protective order prior to the deadline for serving their responses.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to compel should be granted.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General
Civil Division

DAVID V. BERNAL
Assistant Director


    /s   Anthony Payne
ANTHONY C. PAYNE
Senior Litigation Counsel
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel:202-616-3264
Fax:202-616-8779
Attorney–in-charge


/s  Ana Zablah-Monroe  (by SSN w/perm.)      /s  ssnickum
ANA T. ZABLAH-MONROE              STUART S. NICKUM
Trial Attorney                   Trial Attorney
Office of Immigration Litigation Office of Immigration Litigation
Attorney for Respondent          Attorney for Respondent

## **DEFENDANTS' CERTIFICATION**

Counsel for Defendants certify that they have conferred with Plaintiffs'

counsel in a good faith effort to resolve this dispute, but have been unable to reach

an agreement.  Defendants' attorneys Anthony C. Payne, Stuart S. Nickum, and

Ana T. Zablah-Monroe, have conferred with Plaintiffs' counsel Lisa S. Brodyaga,

through an exchange of letters dated August 4, 2008, August 25, 2008, August 29,

2008, and August 30, 2008.  See generally, Ex. 5-8.


        s/  Anthony Payne
ANTHONY C. PAYNE
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice
Attorney–in-charge


 s/ Ana Zablah-Monroe  (by SSN w/perm.)      s/  ssnickum
ANA T. ZABLAH-MONROE                      STUART S. NICKUM
Trial Attorney                           Trial Attorney
Office of Immigration Litigation         Office of Immigration Litigation
Attorney for Respondent                  Attorney for Respondent

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2008, one copy of Defendants' Motion to Compel Plaintiffs to Respond to Defendants' First Set of Interrogatories, was served on the Plaintiffs' counsel, via Federal Express Next Day Delivery, addressed to:

Lisa S. Brodyaga
17891 Landrum Park Rd.
San Benito, TX 78586


     s/  ssnickum
STUART S. NICKUM
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-8779
Dated: September 9, 2008       Attorney for Respondent

## DEFENDANTS' EXHIBITS: TABLE OF CONTENTS

Exhibit 1: Joint Discovery/Case Management Plan

Exhibit 2: April 22, 2008 Scheduling Order

Exhibit 3: Defendants' First Set of Interrogatories

Exhibit 4: Plaintiffs' Partial Responses to Defendants' First Set of Interrogatories

Exhibit 5: Defendants' August 4, 2008 letter to Plaintiffs

Exhibit 6: Plaintiffs' August 25, 2008 letter to Defendants

Exhibit 7: Defendants' August 29, 2008 letter to Plaintiffs

Exhibit 8: Plaintiffs' August 30, 2008 letter to Defendants

# Exhibit 1:

## Joint Discovery/Case Management Plan
## Dated March 31, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| JUANA ASCENCIO-GUZMAN, et al., | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. B-94-215 |
| | ) |
| E.M. TROMINSKI, District | ) |
| Director, Immigration and | ) |
| Naturalization Service; | ) |
| JOHN D. ASHCROFT, United States | ) |
| Attorney General; and | ) |
| IMMIGRATION AND NATURALIZATION | ) |
| SERVICE, | ) |
| Defendants. | ) |

TO THE UNITED STATES DISTRICT JUDGE:

NOW COMES, Plaintiffs and Defendants and file this their Joint Discovery/Case

Management Plan and Proposed Scheduling Order, pursuant to Rule 26(f) of the Federal Rules of

Civil Procedure.

1.    **State where and when the meeting of the parties required by Rule 26(f) was held, and
identify the counsel who attended for each party.**

**Answer:**

It is our understanding that when this particular litigation commenced in 1994, there
was no Rule 26(f) conference held at the initiation of the action. However, following the
Court's March 6, 2008 order, the parties conferred by telephone on March 28, 2008 regarding
the remaining issues to be adjudicated following the United States Court of Appeals for the
Fifth Circuit's ("Fifth Circuit") June 5, 2007 decision. The parties were represented as
follows:

Plaintiffs:

Elisabeth S. Brodyaga
17891 Landrum Park Road
San Benito, Texas 78586

Defendants:

Anthony C. Payne
Senior Litigation Counsel
Stuart Nickum
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
Ben Franklin Station
P.O. Box 878
Washington, D.C.  20044

2.    **List the cases related to this one that are pending in any state or federal court with the case number and court.**

    **Answer**:

       Elias Pantoja-Castillo, et al. v. Dora J. Sanchez, Field Officer in Charge, U.S.C.I.S., Harlingen, Texas, et. al., No: 7:07-cv-00204 (SD Tex. 2007), the case is only related in that the issuance of Temporary I-551s by U.S.C.I.S. in Harlingen is a collateral issue in that case.

3.    **Briefly describe what this case is about.**

    **Answer**:

       The Fifth Circuit identified the issues remaining for this Court's consideration in its June 5, 2007 decision.  See Loa-Herrera, et al. v. Department of Homeland Security, 239 Fed.Appx. 875 ("Loa-Herrera II").

    A.  Temporary I-551

       In its decision, the Fifth Circuit noted that the Plaintiffs initially challenged "DHS's practice of seizing an LPR's laminated Form I-151 or I-551 ("green card") and issuing in its place an I-94 'Temporary Evidence of Lawful Permanent Resident' form with extraneous notations revealing that the holder is facing removal proceedings.'" Loa-Herrera II, 239 Fed.Appx. 875, 877.  In January 1999, this Court granted "injunctive relief to [P]laintiffs, issuing an order regulating DHS's confiscation of green cards and issuance of I-94 forms." Id. at 878.  On October 31, 2000, the Fifth Circuit held, in part, that the Court improperly relied on an internal government policy memorandum in granting Plaintiffs relief on the question of confiscation and issuance of immigration documents; accordingly, it remanded "so the [district] court can determine whether an injunction is appropriate in light of" 8 C.F.R. § 264.5(g) (2000)." Id. at 878 (quoting Loa-Herrera v. Trominski, 231 F.3d 984, 988 (5th Cir. 2000) ("Loa-Herrera I")).  On remand, the Court "construed [the Fifth Circuit's]

mandate narrowly, looking only at whether the terms of § 264.5(g) proscribe extraneous notations on the relevant immigration documents," and granted the government's motion for summary judgment. Loa-Herrera II, 239 Fed.Appx. 875, 881.

On appeal, Plaintiffs argued that the district court excessively limited the scope of proceedings on remand and should have considered their claims that extraneous notations are barred by other legal authority, such as 8 U.S.C. § 1304(b) and the Privacy Act, 5 U.S.C. § 552a(b). Id. The Fifth Circuit concluded that this Court's reading of its prior decision was too narrow and, accordingly, remanded proceedings "so that the [C]ourt can determine whether an injunction is appropriate given the requirements of § 265.5(g), with consideration devoted to whether any other legal authority contravenes the [government's] statutory discretion to balance the interests of [lawful permanent residents] and employers as reflected in § 264.5(g)." Id. at 881-82. In short, the case is now limited to whether DHS places or placed "extraneous notations" on Temporary I-551s, and if so, whether this is in violation of 8 C.F.R. § 264.5(g), or any other legal authority, such that a permanent injunction is warranted.

B. Other Documents

As found in Loa-Herrera II, "[p]laintiffs also contend that DHS improperly confiscates other government documents from LPRs, such as driver's licenses and social security cards." 239 Fed.Appx. 875, 877. In Loa-Herrera I, the Fifth Circuit did not explicitly address this claim. Loa-Herrera II, 239 Fed.Appx. 875, 882. Similarly, this Court's summary judgment order "did not explicitly address this claim, and it is unclear whether the court believed that it was prevented from doing so under the terms of the mandate or whether the court disposed of the claim for some other reason." Loa-Herrera II, 239 Fed.Appx. 875, 882. Accordingly, the Fifth Circuit has remanded Plaintiffs' claim "for the district court's consideration of [P]laintiffs' sought injunction concerning the confiscation of other government documents." Id. In so doing, however, the Fifth Circuit noted that "the government remains free to press any additional legal or factual arguments it wishes to make, both with respect to the extraneous notations claim and the other government documents claim." Id. (internal quotation marks omitted).

C. Parole

Finally, Plaintiffs contended that the DHS improperly "fails to provide LPRs with notice and a hearing to determine whether they should be paroled within the United States pending a final determination in their removal proceedings." The Fifth Circuit rejected the Plaintiffs' claim in Loa-Herrera I and confirmed in Loa-Herrera II that the claim is no longer at issue in this case. Loa-Herrera II, 239 Fed.Appx. 875, 879-82.

4.    **Specify the allegations of federal jurisdiction.**

    **Answer**:

        This case involves a federal question. The Plaintiffs contend that federal jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201 (declaratory relief), 8 U.S.C. § 1329 (action arising under the Immigration and Naturalization Act), 5 U.S.C. § 702 (person adversely affected or aggrieved by agency action), and 28 U.S.C. § 1346(a)(2) (action against an agency or officer of the United States).

5.    **Name the parties who disagree and the reasons.**

    **Answer**:

            None.

6.    **List anticipated additional parties that should be included, when they can be added, and by whom they are wanted.**

    **Answer**:

        The parties do not anticipate any additional parties at this time. The caption of the case, however, should be amended to reflect the current government officeholders. Therefore, Secretary of the Department of Homeland Security Michael Chertoff should be substituted for former Attorney General Janet Reno.[1] In addition, because the responsibilities formerly handled by the Immigration and Naturalization Service ("INS") have been transferred to three separate bureaus within DHS, the following three officials should also be substituted for former District Director E.M. Trominski:

•    Dora J. Sanchez, Field Office Director for Harlingen, Texas, U.S. Citizenship and Immigration Services;
•    Assistant Field Office Director for Harlingen, Texas, U.S. Immigration and Customs Enforcement;
•    Michael T. Freeman (Brownsville); Noel Sanchez (Progresso); Hector Mancha (Hidalgo/Pharr); Joseph Mongiello (Rio Grande); Crescencio Cantu Jr., (Roma); Port of Entry Directors, U.S. Customs and Border Protection, Harlingen, Texas.

---

[1] On March 3, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency within the Department of Justice, and its enforcement functions were transferred to the Department of Homeland Security ("DHS"). See Homeland Security Act of 2002, Pub. L. No. 107-296, § 441, 116 Stat. 2135.

4

7.  **List anticipated interventions**.

    <u>Answer</u>:

    The parties do not anticipate any interventions at this time.

8.  **Describe class-action issues.**

    <u>Answer</u>:

    There are no remaining class action issues. As stated by the Fifth Circuit, the class is defined as "lawful permanent residents ('LPRs') who are faced with pending deportation or exclusion [or removal] proceedings in which no final order of deportation or exclusion [or removal] has yet been entered, who are not presently held in detention, and whose immigration documents have been confiscated by the Harlingen, Texas, office of the Department of Homeland Security." <u>Loa-Herrera II</u>, 239 Fed.Appx. 875, 876.

9.  **State whether each party represents that it has made the initial disclosures required by Rule 26(a). If not, describe the arrangements that have been made to complete the disclosures**

    <u>Answer</u>:

    At the time of the commencement of proceedings in 1994, initial disclosures were apparently made. However, given the age of this matter, the parties agree that new disclosures will be made within thirty (30) days after the entry of a scheduling order by the court.

10. **Describe the proposed agreed discovery plan, including:**

    A.  **Responses to all the matters raised in Rule 26(f).**

        *(1)*   *what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;*

    <u>Answer</u>:

    The parties agree that new disclosures will be made within thirty (30) days after the entry of a scheduling order by the court.

*(2)    the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;*

**Answer**:

Issue 1: Temporary I-551

As identified by the Fifth Circuit, Plaintiffs seek declaratory and injunctive relief with respect to the Harlingen, Texas DHS's confiscation of green cards and issuances of Temporary I-551s. Loa-Herrera II, 239 Fed.Appx. at 877. At issue, therefore, is the practice of the Harlingen, Texas DHS in issuing Temporary I-551s to members of the Plaintiff class. Accordingly, discovery will be limited to the threshold issue of the policies and practices of the DHS for Harlingen, Texas, regarding the issuance and form of Temporary I-551s. The parties believe discovery regarding this issue could be completed within one hundred eighty (180) days of the entry of a scheduling order.

Issue 2: Other Documents

As identified by the Fifth Circuit, the parties are not in agreement as to whether the Plaintiffs' "other documents" claim is an issue properly before this court. Loa-Herrera II, 239 Fed.Appx. 875, 882 n.4. Nevertheless, the parties agree that, in the interest of bringing these proceedings to a conclusion, discovery on the "other documents" claim should be allowed to proceed, and that once discovery is completed, the Court should make a determination as to whether the claim is properly before the Court. Discovery will be limited to the threshold issue of the policies and practices of the DHS for Harlingen, Texas, with respect to the confiscation of "other documents" from members of the Plaintiff class. The parties believe discovery regarding this issue could be completed within one hundred eighty (180) days of the entry of a scheduling order.

*(3)    any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced;*

**Answer**:

There are no issues concerning the disclosure or discovery of electronically stored information. In addition to the requirements of Rule 34, the parties agree that, to the extent practicable, electronically stored documents should be produced in Portable Document Format ("pdf.").

*(4)    any issues about claims of privilege or of protection as trial-preparation materials, including--if the parties agree on a procedure to assert these claims after production--whether to ask the court to include their agreement in an order;*

**Answer**:

At this time, there are no issues relating to claims of privilege or protection of trial-preparation material.

> **(5)**  *what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and*

**Answer**:

The parties do not seek any changes regarding limitations on discovery imposed by local rules, nor do they seek any specific limitations on discovery other than as identified in question 10(A)(2).

> **(6)**  *any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).*

**Answer**:

The parties do not seek any other orders issued by the court under Rule 26(c) or Rule 16(b) and (c).

**B.**    **When and to whom the plaintiff anticipates it may send interrogatories.**

**Answer**:

Plaintiffs anticipate sending out interrogatories to the issues of the issuance and form of Temporary I-551s and the confiscation of "other documents" by the Harlingen, Texas DHS within sixty (60) days of the entry of a scheduling order.

**C.**    **When and to whom the defendant anticipates it may send interrogatories.**

**Answer**:

Defendants anticipate sending out interrogatories to the issues of the issuance and form of Temporary I-551s and the confiscation of "other documents" by the Harlingen, Texas DHS within sixty (60) days of the entry of a scheduling order.

**D.      Of whom and by when the plaintiff anticipates taking oral depositions.**

**Answer**:

    Plaintiffs anticipate taking depositions of the Defendants' witnesses, limited to the issues of the issuance and form of Temporary I-551s and the confiscation of "other documents" within ninety (90) days of receipt of Plaintiffs' discovery requests.

**E.      Of whom and by when the defendant anticipates taking oral depositions.**

**Answer**:

    Defendants anticipate taking depositions of the Plaintiffs and Plaintiffs' witnesses limited to the issues of the issuance and form of Temporary I-551s and the confiscation of "other documents" within ninety (90) days of receipt of Defendants' discovery requests.

**F.      When the plaintiff (or the party with the burden of proof on an issue) will be able to designate experts and provide the reports required by Rule 26(a)(2)(B), and when the opposing party will be able to designate responsive experts and provide their reports.**

**Answer**:

    Plaintiffs do not have any experts; however, if Defendants secure any experts, Plaintiffs will designate responsive experts, if any, and provide expert reports within thirty (30) days of receiving the Defendants' designation of experts and expert reports.

    Defendants do not have any experts; however, if Plaintiffs secure any experts, Defendants will designate responsive experts, if any, and provide expert reports within thirty (30) days of receiving the Plaintiffs' designation of experts and expert reports.

**G.      List expert depositions the plaintiff (or the party with the burden of proof on an issue) anticipates taking and their anticipated completion date. See Rule 26(a)(2)(B) (expert report).**

**Answer**:

    At this time, Plaintiffs do not have any experts. However, Plaintiffs anticipate taking the depositions of experts designated by Defendants (if any) within thirty (30) days of their designation and receipt of experts' reports.

H.    **List expert depositions the opposing party anticipates taking**

**Answer**:

At this time, Defendants do not have any experts.  However, Defendants anticipate taking the depositions of experts designated by Plaintiffs (if any) within thirty (30) days of their designation and receipt of experts' reports.

11.    **If the parties are not agreed on a part of the discovery plan, describe the separate views and proposals of each party.**

**Answer:**

Apart from the issue discussed in question 22(B), the parties are in agreement as to the contents of the discovery plan.

12.    **Specify the discovery beyond initial disclosures that has been undertaken to date.**

**Answer**:

In September of 1996, the Defendants filed responses to the Plaintiffs' first and second requests for admissions.  To date, this is the only discovery that has been conducted in the case.  These responses were the subject of a motion to strike, however, that motion was denied by the  Court on May 21, 1998.  Nevertheless, given that circumstances have likely changed since the commencement of proceedings in 1994, the parties agree that new requests for admissions are appropriate and shall be made within one hundred and fifty (150) days of the entry of a scheduling order by the Court.

13.    **State the date the planned discovery can reasonably be completed.**

**Answer**:

The proposed limited discovery should be completed within one hundred and eighty (180) days after the entry of a scheduling order.

14.    **Describe the possibilities for a prompt settlement or resolution of the case that were discussed in your Rule 26(f) meeting.**

**Answer**:

The parties discussed the possibility of pursuing mediation following completion of preliminary discovery.

15.   **Describe what each party has done or agreed to do to bring about a prompt resolution.**

    <u>Answer</u>:

        The Plaintiffs and Defendants are investigating the facts of this case and will consider a prompt resolution of this matter, if possible.

16.   **From the attorneys' discussion with the client, state the alternative dispute resolution techniques that are reasonably suitable, and state when such a technique may be effectively used in this case.**

    <u>Answer</u>:

        Possible mediation following completion of preliminary discovery, if mediation would be considered beneficial to a resolution of the case.

17.   **Magistrate judges may now hear jury and non-jury trials.  Indicate the parties' joint position on a trial before a magistrate judge.**

    <u>Answer</u>:

        The parties do not agree to a trial before a magistrate judge.

18.   **State whether a jury demand has been made and if it was made on time.**

    <u>Answer</u>:

        No jury demand has been made in this case.

19.   **Specify the number of hours it will take to present the evidence in this case.**

    <u>Answer</u>:

        At this time, the parties anticipate it will take approximately 2 to 3 days to present all of the evidence in this case.

20.   **List pending motions that could be ruled on at the initial pretrial and scheduling conference.**

    <u>Answer</u>:

        None.

21.  **List other motions pending.**

    **Answer**:

        None.

22.  **Indicate other matters peculiar to this case, including discovery, that deserve the special attention of the court at the conference.**

    **Answer**:

    A.    The parties agree that a time frame should be set for determining whether the Plaintiffs' "other documents" claim is properly at issue in these proceedings.

    B.    Defendants request that, for the two remaining issues in this case, each party be limited to fifty requests for admissions per issue (100 total). Plaintiffs disagree that any limitation should be place on the number of requests for admissions.

23.  **List the names, bar numbers, addresses and telephone numbers of all counsel.**

Counsel for Plaintiffs:

Elisabeth S. Brodyaga
17891 Landrum Park Road
San Benito, Texas 78586
Tel: 956-421-3226
Texas State Bar #

Counsel for Defendants:

Anthony C. Payne
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
Ben Franklin Station, P.O. Box 878
Washington, D.C.  20044
Tel: 202-616-3264
Maryland Bar and New York Bar

Stuart S. Nickum
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
Ben Franklin Station, P.O. Box 878
Washington, D.C.  20044
Tel: 202-616-8779
Washington State Bar # 38453

**UNITED STATES DISTRICT COURT**             **SOUTHERN DISTRICT OF TEXAS**

§
§
§
*VERSUS*                                    §              CIVIL ACTION B-
§
§
§

## Proposed Scheduling Order

1. Trial:  Estimated time to try:___2-3___ days.                    ☒ Bench    ☐ Jury
                                                                   The parties do not anticipate
                                                                   adding new parties. See 6(a)
2. New parties must be joined by:

         *Furnish a copy of this scheduling order to new parties.*

                                                                   60 days from the date
3. The plaintiff's experts will be named with a report furnished by:    of this order.

4. The defendant's experts must be named with a report furnished
   within 30 days of the deposition of the plaintiff's expert.
                                                                   180 days from the date
5. Discovery must be completed by:                                 of this order.

         *Counsel may agree to continue discovery beyond the deadline, but there will be no intervention by the court.*
         *No continuance will be granted because of information acquired in post-deadline discovery.*

*****************************  The court will provide these dates.  ****************************

6. Dispositive Motions will be filed by:                           _____

7. Joint pretrial order is due:                                    _____

         *The plaintiff is responsible for filing the pretrial order on time.*

8. Docket Call and final pretrial conference is set for 1:30 p.m. on:    _____

9. Jury Selection is set for 9:00 a.m. on:                         _____

The case will remain on standby until tried.

         Signed _____, 20___, at Brownsville, Texas.


                                    _____
                                    Hilda G. TAGLE
                                    United States District Judge

*Counsel, please sign on the back.*

*Scheduling Order--Page Two*

_Lisa Brodyaga_ (By ACP with permission)
Lisa S. Brodyaga
Counsel for __Plaintiffs__

_____
Counsel for _____

_____
Counsel for _____

_Anthony C. Payne_
Anthony C. Payne
Counsel for __Defendants__

_Stuart Nickum_
Stuart S. Nickum
Counsel for __Defendants__

_____
Counsel for _____

Exhibit 2:

April 22, 2008 Scheduling Order

UNITED STATES DISTRICT COURT          ☆          SOUTHERN DISTRICT OF TEXAS

JULIO LOA-HERRERA, et al                    §

vs.                                         §          Civil Action No. B- 94-215

E. M. TROMINSKI, District Director,         §
Immigration and Naturalization Service, et al

United States District Court
Southern District of Texas
ENTERED

APR 2 2 2008

Michael N. Milby, Clerk of Court
By Deputy Clerk

## SCHEDULING ORDER

1. Trial: Estimated time to try: __2-3__ days.                    ■ Bench    ❏ Jury

2. New parties must be joined by:                                          **5/9/2008**
   *Furnish a copy of this scheduling order to new parties.*

3. The plaintiff's experts, if any, will be named with a report furnished by:    **6/23/2008**

4. The defendant's experts, if any, must be named with a report furnished by:    **9/22/2008**

5. Parties to mediate case by:                                             **9/30/2008**

6. Discovery must be completed by:                                         **10/20/2008**
   *Counsel may agree to continue discovery beyond the deadline, but there will be no intervention by the court.*
   *No continuance will be granted because of information acquired in post-deadline discovery.*

7. Dispositive Motions will be filed by:                                   **10/30/2008**

8. Joint pretrial order is due:                                            **1/13/2009**

9. Docket Call and final pretrial conference is set for 1:30 p.m. on:      **1/27/2009**

10. Jury Selection is set for 9:00 a.m. on:                                __N/A__
    *(The case will remain on standby until tried)*

Signed_____*April 22*_____, 2008, at Brownsville, Texas.


Hilda G. Tagle
United States District Judge

Exhibit 3:

Defendants' First Set of Interrogatories
Dated June 18, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **JUANA ASCENCIO-GUZMAN, et al.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| **MICHAEL CHERTOFF, Secretary, Department** | ) | **C.A. No. B-94-215** |
| **of Homeland Security, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**DEFENDANTS' FIRST SET OF INTERROGATORIES**
**TO PLAINTIFF**

TO:  Ramiro Cantu-Gracia, by and through his attorney of record, Lisa S. Brodyaga,
      17891 Landrum Park Road, San Benito, Texas 78586.

PLEASE TAKE NOTE that, pursuant to Rule 33 of the Federal Rules of Civil Procedure,
Ramiro Cantu-Gracia is hereby required to answer, under oath, the interrogatories set forth
below.

**DEFINITIONS**

1.  **Immigration Authorities**.  The term "Immigration Authorities" refers to any United
    States immigration entity and its authorized officers or employees, including but not
    limited to:
    a.    the former Immigration and Naturalization Service;
    b.    the Department of Homeland Security ("DHS"); and
    c.    the component entities of DHS, including:
          i.     Citizenship and Immigration Services ("CIS");
          ii.    Customs and Border Protection ("CBP");
          iii.   Immigration and Customs Enforcement ("ICE"); and
    d.    the Executive Office for Immigration Review ("EOIR").

2.  **Documents**.  The term "Document" means: the original, or any copy (whether identical
    or non-identical due to notations or otherwise), of any words or information, whether
    produced in original or in copy form by printing, typing, long-hand, or other process, and
    regardless of the form.  The term "Document" includes, but is not limited to:
    a.    any item described in List A, B, or C, of the attached Form I-9;
    b.    any published materials, correspondence, telegrams, teletype printouts, contracts,
          agreements, memoranda (including inter and intra-office memoranda, memoranda

for files, pencil jottings, margin notations, daily entries, desk calendar entries, reported recommendations and any other written form of notation of events or intentions), transcripts, recordings of conversations, and telephone calls, minutes or notes of meetings, computer generated records, data compilations, books, records, photographs, reports, tabulations, charts, books of account, receipts, ledgers, statements, invoices, financial statements, deposit slips, checks and bank records.

3.    **Green Card**.  The term "Green Card" refers to a Form I-551 Permanent Resident Card.

4.    **Temporary I-551**.  The term "Temporary I-551" refers to any document issued by Immigration Authorities that is intended to constitute temporary evidence of an alien's registration for lawful permanent residence, including but not limited to, an annotated Form I-94 and/or any other document that is issued as a purported temporary substitute for a Green Card.

## INSTRUCTIONS

1.    As used here, a request to "**Identify**," requests that:

  a.    with regard to **Documents**, please provide:
        i.      the date of each such Document;
        ii.     the author thereof;
        iii.    the signer thereof;
        iv.     the person to whom each such Document was addressed, if any;
        v.      any file, index or other identifying number affixed to it;
        vi.     its general common generic name; and
        vii.    the person having custody or control thereof.

  b.    with regards to **persons**, please provide:
        i.      the full name of each person;
        ii.     his or her place of employment;
        iii.    his or her job title or designation;
        iv.     his or her home and business address; and
        v.      his or her home and business telephone number.

2.    All interrogatories should be answered on the basis of your knowledge or information and belief, including that of your representatives, attorneys, employees, agents, and contractors.
  a.    If any answer is given on **information** and **belief**, rather than **knowledge**, such fact should be stated in the answer.
  b.    If any information called for in an interrogatory is being withheld on the ground that it is subject to attorney-client **privilege** or any other privilege, state with respect to such interrogatory that information is being withheld and state the alleged ground of the privilege.

3.    Unless otherwise noted, your responses to the following interrogatories should cover the
      time period:
      –      beginning on either July 15, 1993 or the date upon which your Green Card was
             first confiscated by Immigration Authorities, whichever is earlier; and
      –      continuing through the present date.

4.    As required by Rule 26(e)(1) of the Federal Rules of Civil Procedure, these
      interrogatories impose a continuing obligation of disclosure, and must be supplemented
      and/or corrected in a timely manner if a party learns that the prior response was
      incomplete or incorrect.

## INTERROGATORIES

**Interrogatory No. 1:**

1.    Please provide your full name, your Alien Identification Number, and any and all aliases
      which you use or have used, as well as any Alien Identification Number that you use or
      have used in connection with those aliases.

**ANSWER:**

**Interrogatory No. 2:**

2.    Please list all physical addresses where you have resided, including your current address,
      and the dates during which you have resided at each address.

**ANSWER:**

**Interrogatory No. 3:**

3.    Please describe your employment history, including but not limited to:
      a.      a description of each job you have held;
      b.      the time period of employment;
      c.      the location, address, and telephone number of your employer;
      d.      the reason for cessation of employment.

**ANSWER:**

**Interrogatory No. 4:**

4.      If you have ever been issued a Temporary I-551, please describe, in detail, the circumstances under which the Temporary I-551 was issued.  In describing each such instance, detail all the surrounding circumstances, regardless of whether they are specifically listed below, and:

      a.      provide the date that the Document was issued;

      b.      provide the location where the Document was issued; and

      c.      describe the form of the Document itself, including any stamps or annotations that appear on the Document.

**ANSWER:**

**Interrogatory No. 5:**

5.      Please describe, in detail, any and all instances in which you used, or attempted to use, your Temporary I-551 as evidence of employment authorization.  In describing each such instance, detail all the surrounding circumstances, regardless of whether they are specifically listed below, and:

      a.      provide the date;

      b.      Identify the employer or potential employer;

      c.      Identify the specific person to whom you offered the Temporary I-551 as evidence of employment authorization;

      d.      describe the reason or reasons why you offered the Temporary I-551, including whether someone requested to see it or whether you volunteered to show it;

      e.      explain whether the Temporary I-551 was accepted or rejected as evidence of employment authorization; and

      f.      describe the outcome of your use or attempted use of the Temporary I-551 as evidence of employment authorization, including but not limited to:

           i.      whether you were eventually offered employment or, if applicable, whether you were allowed to retain your employment; and

           ii.     if applicable, whether you accepted any resulting employment offer.

**ANSWER:**

**Interrogatory No. 6:**

6.  Please describe, in detail, any and all instances in which you contacted Immigration Authorities regarding any matter pertaining to your Temporary I-551, including but not limited to, any and all efforts you made to obtain a different type of Temporary I-551 or other employment authorization Document. In describing each such instance, detail all the surrounding circumstances, regardless of whether they are specifically listed below, and:

    a.     provide the date;

    b.     provide the location of the request;

    c.     Identify the person to whom the request was made; and

    d.     describe the result of the request.

**ANSWER:**

**Interrogatory No. 7:**

7.  During any time-period in which you were seeking employment, please Identify any and all Documents mentioned in the attached Form I-9 List A, B, or C, which you possessed.

**ANSWER:**

**Interrogatory No. 8:**

8.  Please describe, in detail, any and all adverse employment consequences that you attribute to your use or attempted use of a Temporary I-551 as evidence of employment authorization.

**ANSWER:**

**Interrogatory No. 9:**

9.    Please describe, in detail, any and all instances in which you used, or attempted to use, your Temporary I-551 to re-enter the United States. For each such instance, please detail the circumstances of your re-entry, including any and all delays or difficulties that you attribute to your use or attempted use of a Temporary I-551.

**ANSWER:**

**Interrogatory No. 10:**

10.    Please describe, in detail, any and all other instances that are not covered by the above situations, and that you have not already discussed in response to the foregoing interrogatories, in which you used or attempted to use your Temporary I-551 as evidence of lawful permanent resident status.

**ANSWER:**

**Interrogatory No. 11:**

11.    Please describe, in detail, any and all instances in which Immigration Authorities confiscated any of your identity or employment authorization Documents (including but not limited to, a Green Card, a driver's license, an identity card, a social security card, a passport, or a birth certificate, or any other Document listed in the attached Form 1-9 list A, B, and C). In describing each such instance, detail all the surrounding circumstances, regardless of whether they are specifically listed below, and:

a.    provide the date;

b.    Identify the Document that was confiscated;

c.    describe the reason or reasons given by the applicable Immigration Authorities, if any, for confiscating the Document; and

d.    describe whether the Document was returned to you.

**ANSWER:**

Respectfully submitted, this 19th day of June, 2008.


ANTHONY C. PAYNE
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Attorney for Respondent

STUART S. NICKUM
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Attorney for Respondent

**<u>AFFIDAVIT</u>**

THE STATE OF _____

COUNTY OF _____

      BEFORE ME, the undersigned authority, on this day personally appeared

_____, who by me being duly sworn on his oath deposed and says:


      My name is _____, and I am the Plaintiff in the above-styled and numbered

cause; that I have read the above and foregoing answers to said interrogatories; and that every

statement contained therein is within my knowledge and is true and correct.


                                    _____

                                      Signature


      SUBSCRIBED AND SWORN TO BEFORE ME, on this the ___ day of _____, 2007,

to certify which witness my hand and seal of office.


                                      _____

                                      NOTARY PUBLIC IN AND FOR

                                      THE STATE OF _____

                                      My Commission Expires: ____

Exhibit 4:

Plaintiffs' Partial Responses to Defendants'
First Set of Interrogatories

Received July 13, 2008, and August 7, 2008

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,            )
                                 )
v.                               )        C.A. No.  B-94-215
                                 )
TROMINSKI, et al.                )
_____)

OBJECTIONS AND REPLY OF PLAINTIFF RAMIRO GRACIA-CANTU TO
DEFENDANTS' FIRST SET OF INTERROGATORIES

Plaintiff Ramiro Gracia-Cantu hereby objects, and responds, to
Defendants' First Set of Interrogatories.

Plaintiff first objects to the Interrogatories posed on the grounds
that for the first fourteen years during which the instant
litigation has been ongoing, Defendants consistently and repeatedly
objected to discovery in the instant case, asserting that there no
material facts were at issue, and that the instant case could and
should be decided solely upon the law.  The decisions of the Fifth
Circuit do not change the basis for this assertion, and nothing in
any of the interrogatories posed is relevant to any disputed fact
which is material to the issues presently before the Court.

The fourteen year delay has impacted Plaintiff's ability to recall
details of events which occurred prior to, or in the early stages
of the litigation.  He therefore responds only to the best of his
present recollection, giving only approximate dates, and
incorporates by reference, as his prior recorded recollection, the
factual allegations he made in the Second Amended Complaint herein,
filed January 17, 1995, which are appended hereto.

Plaintiff also notes that, pursuant to Local Rule 33.1, "No more
than twenty five interrogatories (counting sub-parts) without leave
of court.  The interrogatories as served contain far more than this
limit.  Consequently, without waiving other objections, Plaintiff
will respond only to the first twenty-five sub-parts.  Numbering by
Defendants is shown in **bold**.  Numbering to indicate the sub-parts,

from one to twenty-five, is enclosed in parentheses.

**Interrogatory No. 1**

(1) Please provide your full name

Ramiro Gracia-Cantu

(2) your Alien Identification Number,

A█████████████

(3) any and all aliases which you use or have used, and

Guadalupe Fuentes-Contreras, and Ricardo Garcia

(4) any Alien Identification Number that you use or have used in connection with those aliases.

N/A

**Interrogatory No. 2**

(5) Please list all physical addresses where you have resided, including your current address, and

I have lived at the same physical location since 1984. At first, it was ████████████, Edinburg, TX, but about two years ago, it was changed to ███████████████ Edinburg, Texas.

(6) the dates during which you have resided at each address.

I have lived there from 1984 to the present.

**Interrogatory No. 3**

Please describe your employment history, including but not limited to:

(7) a description of each job you have held

Migrant farm worker,

Trucker, and owner of trucking company.

(8) the time period of each employment

Migrant farm worker: 1984 to 1987

Trucker and owner of trucking company, 1988 to present.

(9) the location,

Edinburg, Texas

(10) address, and

2

██████████ Edinburg, Texas

(11) telephone number of your employer
     N/A self-employed

(12) the reason for cessation of employment.
     N/A

**Interrogatory No. 4.**

If you have ever been issued a Temporary I-551, please describe, in detail,

(13) the circumstances under which the Temporary I-551 was issued. In describing such instance, detail all the surrounding circumstances, regardless of whether they are specifically listed below,

> I have had three such documents.  They are all in the record, and copies are attached hereto

(14) provide the date that the Document was issued;

> As shown therein: June 22, 1994; (approximately) September 16, 1994 and September 26, 1994.

(15) provide the location where the document was issued, and

> All three were issued in Harlingen, Texas

(16) describe the form of the document itself, including any stamps or annotations that appear on the document.

> The documents are in the record.  Copies are attached hereto.

**Interrogatory No. 5**

(17) Please describe, in detail, any and all instances in which you used, or attempted to use, your Temporary I-551 as evidence of employment authorization.

> To the best of my recollection, I never needed to use my temporary I-551 as evidence of employment authorization

In describing each such instance, detail all the surrounding circumstances, regardless of whether they are specifically listed

3

below, and

(18) provide the date
    N/A
(19) Identify the employer or potential employer,
    N/A
(20) Identify the specific person to whom you offered the Temporary I-551 as evidence of employment authorization,
    N/A
(21) describe the reason or reasons why you offered the Temporary I-551, including whether someone requested to see it or whether you volunteered to show it,
    N/A
(22) explain whether the Temporary I-551 was accepted or rejected as evidence of employment authorization, and
    N/A
(23) whether you were eventually offered employment, or
    N/A
(24) if applicable, whether you were allowed to retain you employment, and
    N/A
(25) if applicable, whether you accepted any resulting employment offer.
    N/A


STATE OF TEXAS
COUNTY OF Cameron

Before, the undersigned authority, on this day personally appeared Ramiro Gracia-Cantu, who by me being duly sworn did state:

>My name is Ramiro Gracia-Cantu and I am a Plaintiff in the above styled and numbered cause; that I have the above and foregoing answers to said interrogatories read and translated to me into Spanish, and that every statement therein is true and correct to the best of my knowledge and belief.

4

*Ramiro Garcia*

SUBSCRIBED AND SWORN TO BEFORE ME, on this the <u>10th</u> day of July, 2008, to certify which witness my hand and seal of office.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

My commission expires:

<u>10/12/2011</u>

MA DOLORES REYNA
Notary Public, State of Texas
My Commission Expires
10-12-2011

5

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,                    )
                                          )
v.                                        )    C.A. No.  B-94-215
                                          )
TROMINSKI, et al.                         )
_____ )

OBJECTIONS AND REPLY OF PLAINTIFF JUANA ASCENCIO-GUZMAN TO
DEFENDANTS' FIRST SET OF INTERROGATORIES

Plaintiff Juana Ascencio-Guzman hereby objects, and responds, to
Defendants' First Set of Interrogatories.

Plaintiff first objects to the Interrogatories posed on the grounds
that for the first fourteen years during which the instant
litigation has been ongoing, Defendants consistently and repeatedly
objected to discovery in the instant case, asserting that there no
material facts were at issue, and that the instant case could and
should be decided solely upon the law.  The decisions of the Fifth
Circuit do not change the basis for this assertion, and nothing in
any of the interrogatories posed is relevant to any disputed fact
which is material to the issues presently before the Court.

Plaintiff also notes that the fourteen year delay has impacted her
ability to remember details of events which occurred prior to or
early in the litigation.  In addition, Plaintiff was diagnosed with
cancer in approximately 2005, and received chemotherapy. It greatly
affected her memory, and she has very little recollection any more
of the events at issue herein. She therefore responds only to the
best of her present recollection, and all dates are approximate.

Plaintiff also notes that, pursuant to Local Rule 33.1, "No more
than twenty five interrogatories (counting sub-parts) without leave
of court." The interrogatories as served contain far more than this
limit.  Consequently, without waiving other objections, Plaintiff
will respond only to the first twenty-five sub-parts.  Numbering by
Defendants is shown in **bold.**  Numbering to indicate the sub-parts,

from one to twenty-five, is enclosed in parentheses.

**Interrogatory No. 1**
(1) Please provide your full name
    Juana Ascencio-Guzman
(2) your Alien Identification Number,
    A ███████████
(3) any and all aliases which you use or have used, and
    None
(4) any Alien Identification Number that you use or have used in
connection with those aliases.
    N/A

**Interrogatory No. 2**
(5) Please list all physical addresses where you have resided,
including your current address, and
    ███████████, Houston, Texas 77088
    ███████████, Houston, Texas 77006
    ███████████ Houston, Texas 77098
    ███████████, Houston, Texas 77019
    ███████████ Houston, TX 77006
(6) the dates during which you have resided at each address.
    ███████████, Houston, Texas 77088
    January 2003 to present
    ███████████, Houston, Texas 77006
    August 2000 to January 2003
    ███████████, Houston, Texas 77098
    February 1995 to August 2000
    ███████████ Houston, Texas 77019
    November 1994 to February 1995
    ███████████, Houston, TX 77006
    Unk. 1990 to July 1994

**Interrogatory No. 3**

Please describe your employment history, including but not limited to:

(7)  a description of each job you have held

I have worked in several restaurants, as a cook, busgirl, and kitchen help.

(8)  the time period of each employment

Cook: August 2003 to the present
Busgirl, kitchen help: February 1995 to August 2003
Busgirl, 1988 to 1993

(9)  the location,

Houston, Texas

(10)  address, and

Ocean Air Seafood Room, 5061 Westheimer, Houston, TX
    November 2006 to present
Between approximately June and November 2006, Plaintiff
    was unable to work, because of her chemotherapy.
Twisted Fork Restaurant,
    Unknown 2004 to June, 2006
Josephine's Ristorante, 1209 Caroline, Houston, TX
    August 2003 to unknown 2004
Crostini, Inc. 2411 S. Shepard Dr. Houston, TX
    February 1995 to August 2003
La Strada Restaurant, 322 Westheimer, Houston, TX
    unknown 1988 to unknown 1993

(11)  telephone number of your employer

Ocean Air Seafood Room  832-487-8862
Twisted Fork Restaurant (defunct)
Josephine's Ristorante, 713-759-9323
Crostini, Inc., 713-524-8558
La Strada Restaurant, 713-523-1014

(12)  the reason for cessation of employment.

Twisted Fork   The restaurant was closed, and sold
Josefina's   The pay was much lower than at Twisted Fork
Crostini, Inc., 713-524-8558 The restaurant was closed
La Strada Restaurant, 713-523-1014 I was let go in favor
    of a man, whom they said could do more work.

**Interrogatory No. 4.**

If you have ever been issued a Temporary I-551, please describe, in detail,

3

Please describe your employment history, including but not limited to:

(7) a description of each job you have held

I have worked in several restaurants, as a cook, busgirl, and kitchen help.

(8) the time period of each employment

Cook: August 2003 to the present
Busgirl, kitchen help: February 1995 to August 2003
Busgirl, 1988 to 1993

(9) the location,

Houston, Texas

(10) address, and

Ocean Air Seafood Room, 5061 Westheimer, Houston, TX
    November 2006 to present
Between approximately June and November 2006, Plaintiff
    was unable to work, because of her chemotherapy.
Twisted Fork Restaurant,
    Unknown 2004 to June, 2006
Josephine's Ristorante, 1209 Caroline, Houston, TX
    August 2003 to unknown 2004
Crostini, Inc. 2411 S. Shepard Dr. Houston, TX
    February 1995 to August 2003
La Strada Restaurant, 322 Westheimer, Houston, TX
    unknown 1988 to unknown 1993

(11) telephone number of your employer

Ocean Air Seafood Room  832-487-8862
Twisted Fork Restaurant (defunct)
Josephine's Ristorante, 713-759-9323
Crostini, Inc., 713-524-8558
La Strada Restaurant, 713-523-1014

(12) the reason for cessation of employment.

Twisted Fork    The restaurant was closed, and sold
Josefina's    The pay was much lower than at Twisted Fork
Crostini, Inc., 713-524-8558 The restaurant was closed
La Strada Restaurant, 713-523-1014 I was let go in favor
    of a man, whom they said could do more work.

**Interrogatory No. 4.**

If you have ever been issued a Temporary I-551, please describe, in detail,

3

(13) the circumstances under which the Temporary I-551 was issued. In describing such instance, detail all the surrounding circumstances, regardless of whether they are specifically listed below, and

> My husband and I were stopped at the port of entry, trying to bring a nephew in illegally for medical treatment. We were returned to Mexico. Ultimately, we obtained counsel, who was able to get permission for us to be paroled into the United States. *See*, Declaration dated October 15, 2001, (Exhibit "KK") attached hereto and incorporated herein. On or about November 21, 1994, I was issued a "parole" document. See, Document 15 at page 168. The parole document did not state that it was temporary evidence of lawful admission as a permanent resident, and had no photo.

> I no longer recall whether I was given a different document when I returned from Mexico after visiting my mother in Mexico.

(14) provide the date that the Document was issued;
> The first I-94 was issued on November 21, 1994
> I do not recall beyond that.

(15) provide the location where the document was issued, and
> It was issued at Brownsville, Texas.

(16) describe the form of the document itself, including any stamps or annotations that appear on the document.
> See copy attached.

**Interrogatory No. 5**

(17) Please describe, in detail, any and all instances in which you used, or attempted to use, your Temporary I-551 as evidence of employment authorization.

> I do not recall whether I ever had to use a temporary document in seeking employment. To the best of my present recollection, I did not, because I worked at the same place (Crostini, Inc.), from 1995 to 2003, and they did not request further proof of my LPR status.

In describing each such instance, detail all the surrounding circumstances, regardless of whether they are specifically listed below, and

(18) provide the date

N/A

(19) Identify the employer or potential employer,

N/A

(20) Identify the specific person to whom you offered the Temporary I-551 as evidence of employment authorization,

N/A

(21) describe the reason or reasons why you offered the Temporary I-551, including whether someone requested to see it or whether you volunteered to show it,

N/A

(22) explain whether the Temporary I-551 was accepted or rejected as evidence of employment authorization, and

N/A

(23) whether you were eventually offered employment, or

N/A

(24) if applicable, whether you were allowed to retain you employment, and

N/A

(25) if applicable, whether you accepted any resulting employment offer.

N/A

STATE OF TEXAS

COUNTY OF HARRIS

Before, the undersigned authority, on this day personally appeared Juana Ascencio-Guzman, who by me being duly sworn did state:

My name is Juana Ascenio-Guzman and I am a Plaintiff in the above styled and numbered cause; that I have had the above and foregoing answers to said interrogatories read and translated to me into Spanish, and that every statement therein is true and correct to the best of my knowledge and belief.

5

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,        )
                             )
v.                           )        C.A. No.  B-94-215
                             )
TROMINSKI, et al.            )
_____)

OBJECTIONS AND REPLY OF PLAINTIFF EFRAIN MERINO TO
DEFENDANTS' FIRST SET OF INTERROGATORIES

Plaintiff  Efrain  Merino  hereby  objects,  and  responds,  to
Defendants' First Set of Interrogatories.

Plaintiff first objects to the Interrogatories posed on the grounds
that  for  the  first  fourteen  years  during  which  the  instant
litigation has been ongoing, Defendants consistently and repeatedly
objected to discovery in the instant case, asserting that there no
material facts were at issue, and that the instant case could and
should be decided solely upon the law.  Nothing in the decisions of
the Fifth Circuit which would change the basis for this assertion,
and there is nothing in any of the interrogatories posed which is
relevant to any disputed material fact.

Plaintiff also notes that the fourteen year delay has impacted his
ability to remember details of events which occurred prior to or
early in the litigation.  He therefore responds only to the best of
his present recollection, and all dates are approximate.

Plaintiff also notes that, pursuant to Local Rule 33.1, "No more
than twenty five interrogatories (counting sub-parts) without leave
of court."  The interrogatories as served contain far more than this
limit.  Consequently, without waiving other objections, Plaintiff
will respond only to the first twenty-five sub-parts.  Numbering by
Defendants is shown in **bold.**  Numbering to indicate the sub-parts,
from one to twenty-five, is enclosed in parentheses.

**Interrogatory No. 1**

(1) Please provide your full name
    Efrain Merino
(2) your Alien Identification Number,
    A██████████
(3) any and all aliases which you use or have used, and
    None
(4) any Alien Identification Number that you use or have used in connection with those aliases.
    N/A

**Interrogatory No. 2**

(5) Please list all physical addresses where you have resided, including your current address, and
    ████████, Houston, Texas 77088
    ████████, Houston, Texas 77006
    There was another address near Portsmouth, but I no longer
      remember what it was
    ████████, Houston, Texas 77098
    ████████, Texas 77019
    ████████, Houston, TX 77006

(6) the dates during which you have resided at each address.
    ████████, Houston, Texas 77088
      January 2003 to present
    I lived at an address I no longer recall, near the Portsmouth
      location, for a few months in 2002
    ████████, Houston, Texas 77006
      August 2000 to January 2003
      (with the exception of a few months in 2002)
    ████████, Houston, Texas 77098
      February 1995 to August 2000
    ████████, Houston, Texas 77019
      November 1994 to February 1995
    ████████, Houston, TX 77006
      Unk. 1990 to July 1994

**Interrogatory No. 3**

Please describe your employment history, including but not limited to:

(7) a description of each job you have held

In the late 1980s, I worked as an agricultural laborer. Starting in about 1989, I began working as a waiter

(8)  the time period of each employment

Agricultural worker:
Waiter: 1989 to the present

(9)  the location,

Agricultural worker: various locations.  In order to give precise information, I would have to get a copy of my SAW application through the Freedom of Information Act.

Waiter: Houston, Texas

(10)  address, and

Thai Pepper Restaurant, 2049 W. Alabama, Houston, Texas

(11)  telephone number of your employer

Thai Pepper Restaurant, 713-520-8225

(12)  the reason for cessation of employment.

N/A I have worked at the same restaurant since about 1989

**Interrogatory No. 4.**

If you have ever been issued a Temporary I-551, please describe, in detail,

(13)  the circumstances under which the Temporary I-551 was issued. In describing such instance, detail all the surrounding circumstances, regardless of whether they are specifically listed below, and

My wife and I were stopped at the port of entry, trying to bring a nephew in illegally for medical treatment.  We were returned to Mexico.   Ultimately, we obtained counsel, who was able to get permission for us to be paroled into the United States.  *See*, Declaration dated October 15, 2001, (Exhibit "KK") attached hereto and incorporated herein.  On or about November 21, 1994, I was issued a "parole" document. See, Document 15 at page 168.   The parole document did not state that it was temporary evidence of lawful admission as a permanent resident, and had no photo.

3

> After our attorney obtained permission to go to Mexico to
> visit my wife's mother-in-law, we were issued different
> documents, which had our photo.    I do not recall the
> date, and no longer have a copy of that document.

(14)   provide the date that the Document was issued;

> November 21, 1994.   I do not recall the date of the later
> document.

(15)   provide the location where the document was issued, and

> Brownsville, Texas

(16)   describe the form of the document itself, including any stamps
or annotations that appear on the document.

> The first document was on an I-94, departure record.
> *See,* Document 15 at page 168.   It stated "Returning
> resident applicant at BRO on 11/21/94.   Paroled pending
> determination of right to reenter.   Employment Auth."   It
> also had a stamp, "EMPLOYMENT AUTHORIZED."   I do not
> recall any details about the later one, except that it
> had my photo.

**Interrogatory No. 5**

(17) Please describe, in detail, any and all instances in which you
used, or attempted to use, your Temporary I-551 as evidence of
employment authorization.

> To the best of my recollection, I never had to use it as
> evidence of employment authorization, since I returned to
> work for the same employer, and they did not request new
> evidence of my LPR status.

In describing each such instance, detail all the surrounding
circumstances, regardless of whether they are specifically listed
below, and

(18) provide the date

> N/A

(19) Identify the employer or potential employer,

> N/A

(20) Identify the specific person to whom you offered the Temporary
I-551 as evidence of employment authorization,

> N/A

(21) describe the reason or reasons why you offered the Temporary

4

I-551, including whether someone requested to see it or whether you volunteered to show it,

   N/A

(22) explain whether the Temporary I-551 was accepted or rejected as evidence of employment authorization, and

   N/A

(23) whether you were eventually offered employment, or

   N/A

(24) if applicable, whether you were allowed to retain you employment, and

   N/A

(25) if applicable, whether you accepted any resulting employment offer.

   N/A


   I would also like to state that when we were detained at the port of entry, INS took all of our documents, including my drivers license, my Social Security card, and my "green card." These documents were never returned. After our attorney obtained permission for us to be paroled into the United States, we returned to Houston, Texas, where we obtained the services of attorney Nancy Falgout. She aided us in obtaining replacement documents.

STATE OF TEXAS

COUNTY OF HARRIS

Before, the undersigned authority, on this day personally appeared Efrain Merino, who by me being duly sworn did state:

   My name is Efrain Merino and I am a Plaintiff in the above styled and numbered cause; that I have had the above and foregoing answers to said interrogatories read and translated to me into Spanish, and that every statement therein is true and correct to the best of my knowledge and belief.

   *EFRAIN L MERINO*
   Efrain Merino

SUBSCRIBED AND SWORN TO BEFORE ME, on this the ___4___ day of ~~July,~~ August 2008, to certify which witness my hand and seal of office.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

My commission expires:

_____
12/29/2010

CATALINA ACUÑA
Notary Public, State of Texas
My Commission Expires
December 29, 2010

6

Exhibit 5:

Defendants' August 4, 2008 letter to Plaintiffs



**U.S. Department of Justice**

Civil Division

ATZ, SSN; 39-74-1172

_____

*Washington, D.C. 20530*

**Via Federal Express**                    August 4, 2008

ELISABETH S. BRODYAGA
17891 Landrum Park Road
San Benito, Texas 78586

RE:    <u>Ascencio-Guzman v. Trominski</u>, S.D. Tex. (Brownsville) No. B-94-215

Dear Ms. Brodyaga:

We have received Plaintiff Gracia-Cantu's answer to our interrogatories. We have yet to receive, however, the answers from the other named Plaintiffs. The interrogatories were served on June 19, 2008 and the answers were consequently due by July 21, 2008. The answers are thus two weeks overdue as of the date of this letter.

Further, the answer we did receive from Plaintiff Gracia-Cantu is incomplete. Rule 33(a)(1) of the Federal Rule of Civil Procedure provides that, "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." As per the advisory committee notes to the 1993 amendments, this limit was instituted "to reduce the frequency and increase the efficiency of interrogatory practice." Yet, because the goal is not to prevent discovery, "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication." Fed. R. Civ. Pro. 33 advisory committee's notes. This specification squarely applies to our interrogatories.

-2-

Plaintiff Gracia-Cantu's renumeration is thus inaccurate. Take the Defendants' first interrogatory:

> Please provide your full name, your Alien Identification Number, and any and all aliases which you use or have used, as well as any Alien Identification Number that you use or have used in connection with those aliases.

According to the Advisory Committee notes, this constitutes **one** single interrogatory with discreet subparts (rather than four, as Gracia-Cantu contends). Likewise, Defendants' Second Interrogatory consists of one question (rather than two) and so on, and so forth. By not answering all the interrogatories extended by Defendants (which numbered eleven (11) and were thus well within the allowable limits), Gracia-Cantu has failed to comply with his obligations under the federal rules.[1] We therefore expect that Plaintiff Gracia-Cantu and all the other named Plaintiffs will provide complete answers

---

[1] See, e.g., U.S. ex rel. Englund v. Los Angeles County, 235 F.R.D. 675, 679 (E.D. Cal. 2006) (ruling that interrogatory, asking county to separately state for certain fiscal years the amount of funds received from the state from seven specified alternative funding sources, did not constitute seven different interrogatories); Trevino v. ACB American, Inc., 232 F.R.D. 612, 614 (N.D. Cal. 2006) ("[C]ourts generally agree that 'interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question.'" (quoting Safeco of America v. Rawstron, 181 F.R.D. 441, 445 (C.D. Cal. 1998)); Estate of Manship v. United States, 232 F.R.D. 552, 554 n.2 (M.D. La. 2005) ("Identifying a person by name, address, phone number and place of employment is necessary to accurately identify a person and does not count as four separate interrogatories."); Cardenas v. Dorel Juvenile Group, Inc., 231 F.R.D. 616, 619 -620 (D. Kan. 2005) (ruling that interrogatory in products liability action, seeking particular statement as to each element of product's design contended to be defective, as well as explanation of how design was defective and how design had caused injuries in question, was not multiple interrogatories masquerading as single one). See also Allahverdi v. Regents of University of New Mexico, 228 F.R.D. 696, 698 (D. N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has be propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the Defendants waived this objection.").

-3-

to the interrogatories as properly numerated in the original version served by Defendants on June 19, 2008. If Plaintiffs intend to ignore their obligations under the federal rules by not answering the interrogatories fully, please promptly inform us so that we may take appropriate action.

We would also like to correct what appears to be a critical misunderstanding on the part of the Plaintiffs. In responding to our interrogatories, Gracia-Cantu objected that we have "consistently and repeatedly . . . [asserted] that . . . no material facts were at issue" in the instant case. While we have, for purposes of our various summary judgment motions, *assumed arguendo* that some of the facts alleged in Plaintiffs' complaint were true, we have not *conceded* as much. Were that not the case — if, as Gracia-Cantu alleges, we believed that there are no factual issues to be resolved in this case — then discovery, and indeed, the trial itself, would be superfluous. Defendants have not conceded, nor intend to concede, the facts as alleged. Rather, we expect Plaintiffs to provide sufficient evidence to establish those facts at trial.

In this respect, we are troubled both by the "Post-Remand Exhibits" that were recently filed in Plaintiffs' behalf and by the statement in Plaintiffs' initial disclosures (which were filed almost two months after the May 22, 2008 deadline, halfway through the discovery period) that "call[s Defendants'] attention to" the allegations of various newly-identified class members. That is, these new individuals neither are named class representatives nor have been previously mentioned in the instant proceedings.

First, given that only one named Plaintiff has answered our interrogatories, we are concerned that you may be intending to rely on these newly-identified individuals in presenting Plaintiffs' case-in-chief. As you are aware, however, the class was certified long ago, the representative Plaintiffs have already been named, and the deadline for adding new parties (May 9, 2008) passed almost three months ago. If the named Plaintiffs are not available to answer discovery requests, then they are no longer capable of adequately representing the interests of the class members and the class will have to be decertified. See Fed. R. Civ. Pro. 23; Richardson v. Byrd, 709 F.2d 1016, 1019 (5th Cir. 1983) ("Under Rule 23 the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. . . . [and] must define, redefine, subclass, and decertify as appropriate in response to the progression of

- 4 -

the case from assertion to facts."); City of San Antonio v. Hotels.com, 2008 WL 2486043, *4 n.5 (W.D.Tex., 2008) (reaffirming Richardson after the 2003 amendments to Rule 23); accord, McNamara v. Felderhof, 410 F.3d 277, 280 (5th Cir. 2005) ("on remand, a district court is free to reconsider its class certification ruling as often as necessary before judgment").

Second, to the extent that Plaintiffs mean to rely on these newly-identified individuals in presenting their case-in-chief, Defendants would object. That is, Defendants would be prejudiced by both: (i) the lengthy delay in identifying these individuals; and (ii) the limitations on discovery against non-representative class members. See Baldwin & Flynn v. National Safety Associates, 149 F.R.D. 598, 600 (N.D. Cal., 1993) ("Defendants must have leave of court to take depositions of members of a putative class, other than the named class members-after first showing that discovery is both necessary and for a purpose other than taking undue advantage of class members." (citing Clark v. Universal Builders, Inc., 501 F.2d 324, 340-341 (7th Cir. 1974))). Defendants will thus oppose any effort by Plaintiffs to rely on non-representative class members in presenting their case-in-chief. We therefore request that you clarify Plaintiffs' intent with regard to these newly-identified individuals so that we may take appropriate action.

Sincerely,


ANTHONY C. PAYNE
Senior Litigation Counsel

ANA T. ZABLAH-MONROE
Trial Attorney

_____

STUART S. NICKUM
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-8779

Exhibit 6:

Plaintiffs' August 25, 2008 letter to Defendants

## LAW OFFICES OF LISA S. BRODYAGA

**17891 Landrum Park Rd.**
**San Benito, Texas 78586**
**(956) 421-3226**
**FAX: 421-3423**
August 25, 2008

Anthony Payne,
Ana Zablah-Monroe,
Stuart Nickum,
Attorneys, Office of Immigration Review
Box 878, Ben Franklin Sta.
Washington, D.C. 20044
(also by e-mail)

Re: *Ascencio-Guzman v. Trominski,*
    *B-94-215 (S.D.Tx)*

Gentlepersons:

With reference to your letter dated August 4, 2008, first, I apologize for the delay in responding. It resulted from difficulty in recovering from Hurricane Dolly. We were without power for a week, and the insurance adjuster finally came yesterday morning. Also there was much other backed-up work, (including a Fifth Circuit brief which just went out this morning).

Nonetheless, I have thought a great deal in the interim about the nature of your objection to our responses, and the meaning of the term "communications" as used in the advisory committee notes to the 1993 amendments. As you quote those notes, they state:

> [A] question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.

You also assert that this specification "squarely applies to our interrogatories." I respectfully disagree.

I have reviewed the first five interrogatories, which include twenty-five subsections, and fail to see how any of them can fairly be characterized as "communications" in the sense used above. In none do you request "the time, place, persons present, and contents" of a given communication. Under the canon of statutory construction that "inclusio unius est exclusio alterius," the very

mention of "communications" as an exception to the general rule excludes exceptions of other types, including the situations involved in your first five interrogatories. *See, for example, In re Bouchie*, 324 F.3d 780, 784 (5th Cir. 2003):

> Under the well-known canon *inclusio unius est exclusio alterius*, this indicates that the legislature intentionally excluded the other factors from the rural/urban determination.

Had we gotten as far as your Interrogatory No. 6, I can see how an argument could have been made that it fell at least partially within that exception. But by then, you had already used up your twenty-five sub-parts. And application of the exception to the interrogatories involved herein would accomplish nothing more, or less, than allowing the exception to swallow the rule.

Furthermore, I think we could easily dispose of any relevant remaining questions in the format of requests for admission. This would be far easier for me, and for the clients. It was precisely for this reason that I opposed limiting the number of requests for admission in the joint discovery plan.

Please contact me if you still believe that any of your first five interrogatories involves "communications" within the meaning of the advisory committee notes.

Thank you for your attention.

Sincerely,

s/

Lisa S. Brodyaga
Attorney at Law

2

Exhibit 7:

Defendants' August 29, 2008 letter to Plaintiffs



**U.S. Department of Justice**

Civil Division

ACP; ATZ; SSN; 39-74-1172

_Washington, D.C. 20530_

**Via Federal Express**                              August 29, 2008

ELISABETH S. BRODYAGA
17891 Landrum Park Road
San Benito, Texas 78586

RE:    <u>Ascencio-Guzman v. Chertoff et al.</u>, S.D. Tex. (Brownsville) No. B-94-215

Dear Ms. Brodyaga:

     We have received your response to our letter of August 4 where, among other
things, we expressed our concerns regarding Plaintiffs' apparent non-compliance with
their obligations under the federal discovery rules.  We are also aware that South Texas
has recently been hit with severe weather and that this has delayed your responses both
to our letter and to our discovery requests.  While the discovery period in this case is
quite short, we are certainly willing to make reasonable accommodations for
circumstances that are beyond the parties' control.

     The foregoing delay notwithstanding, the fact that we have still not received
complete responses to the interrogatories from each of the named Plaintiffs is
unacceptable.  Neither the weather nor Plaintiffs' argument regarding the numeration
of Defendants' interrogatories justifies the failure to provide responses for each and all
of the named Plaintiffs.  We remind you that the responses to our interrogatories, which
were served on June 19th, were due by July 21st — more than five weeks ago.  If the
three named Plaintiffs who have not yet responded are unable or unwilling to comply
with Defendants' discovery requests, then they are not adequate class representatives,

and will need to be removed from this case.  See Darvin v. Int'l Harvester Co., 610 F. Supp. 255, 257 (D.C.N.Y. 1985) ("[P]laintiff's failure to fully comply with reasonable discovery requests . . . indicate [sic] that he is not suitable to fulfill the fiduciary obligations of a class representative.").  Your letter of August 15 does not address the status of the foregoing three named Plaintiffs, nor does it indicate whether their responses will be forthcoming.  Defendants do not wish to prejudice themselves by simply assuming that these three individuals are no longer part of the case, but also do not want to waste further time and resources in preparing to try a case against individuals who will not be part of these proceedings.  Your silence on this issue precludes us from making a decision either way.

Moreover, as to those Plaintiffs who *have* responded, the failure to provide complete answers to all the interrogatories is unjustifiable.  Your response to our argument regarding Plaintiffs' re-numeration of the interrogatories (so as to chop them in half) is contrary to the language of the rule, case law, and logic.  Your letter focuses on the use of the term "communications" in the advisory notes, but fails to address the actual substance of our argument.[1]  As the case law cited in our August 4 letter illustrates, the advisory committee notes do not carve out some special exception for "communications."  Rather, that comment provides one specific example of the broader principle that subparts are to be counted as a single interrogatory "if they are logically

---

[1]  With respect to the *expressio unis* argument raised in your letter, the advisory notes do not have the force of law, but are an interpretive guide to the meaning of the rules.  Moody Nat. Bank of Galveston v. GE Life and Annuity Assur. Co., 383 F.3d 249 (5th Cir. 2004).  Accordingly, the advisory committee notes cannot, as you suggest, create substantive exceptions to the rules.  Moreover, your interpretation would allow the advisory notes to defeat the language of the rule itself.  Rule 33 states that "discrete subparts" are counted towards the numeric limitation, which implicitly allows parties to propound interrogatories containing subparts that are non-discrete.  Plaintiffs' division of the Defendants' interrogatories into atomistic subparts, effectively reads the word "discrete" out of the text of the rule.  See Bailey v. United States, 516 U.S. 137, 146 (1995) ("We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning.").

2

or factually subsumed within and necessarily related to the primary question." <u>Trevino v. ACB American, Inc.</u>, 232 F.R.D. 612, 614 (N.D. Cal. 2006) (quoting <u>Safeco of America v. Rawstron</u>, 181 F.R.D. 441, 445 (C.D. Cal. 1998)). In other words, interrogatories may only be divided into discrete subparts when the subpart "introduces a line of inquiry that is **separate and distinct** from the inquiry made by the portion of the interrogatory that precedes it . . . ." <u>Willingham v. Ashcroft</u>, 226 F.R.D. 57, 59 (D. D.C. 2005).

To illustrate: Defendants' **first** interrogatory constitutes a single line of inquiry, requesting that the plaintiff identify him or herself. The fact that the interrogatory requests the plaintiff's identity by name, A-number and alias, does not broaden the request into three separate interrogatories. <u>See e.g.</u>, <u>Estate of Manship v. United States</u>, 232 F.R.D. 552, 554 n.2 (M.D. La. 2005) ("Identifying a person by name, address, phone number and place of employment is necessary to accurately identify a person and does not count as four separate interrogatories."). The **second** interrogatory asks for an address history; the **third** requests an employment history. Again, these clearly constitute single lines of inquiry. <u>See e.g.</u>, <u>Mitchell Co., Inc. v. Campus</u>, 2008 WL 2468564, *8 (S.D. Ala., June 16, 2008) (holding that an interrogatory "which requests the identity of employees, as well as (1) the date of their employment, (2) positions held and (3) job descriptions, should also only be counted as one interrogatory").

Interrogatory **four** similarly constitutes a single interrogatory, as it requests that the plaintiff describe the circumstances of any instance in which a Temporary I-551 was issued. In the context of this general request for a description of any such incident, the specific instructions to identify the date, location, and form of the document issued, simply do not constitute "separate and distinct" lines of inquiry, but instead represent questions that are "factually subsumed within and necessarily related to the primary question." <u>Trevino</u>, 232 F.R.D. at 614. Indeed, it is difficult to see how a person could fully describe the circumstances of the document's issuance, without discussing the date and location of issuance or the form of the document itself.

Interrogatory **five** again constitutes a single inquiry, asking for a description of any instance in which the plaintiff attempted to use a Temporary I-551 as evidence of

employment authorization. See Theobles v. Industrial Maintenance Co., 247 F.R.D. 483, 485 (D. V.I. 2006) ("[A]n interrogatory asking whether an employee was given any warning or reprimand during her employment, to identify the warning or reprimand by date, with a brief description of the incident and the name, gender, position and address of the person who administered the warning or reprimand are all questions designed to describe any warning or reprimand and thus is considered a single interrogatory." (citing Kendall v. GES Exposition Servs. Inc., 174 F.R.D. 684, 686 (D.Nev. 1997))). Without conceding the point, however, we would agree to construe **subpart 5(d)** as a discrete subpart, as it requests the reason for the plaintiff's use of the Temporary I-551. Again, without conceding the point, we would also agree to **construe subparts 5(e) and 5(f)** as part of a single, discrete inquiry concerning the results of the attempted use of the Temporary I-551.

As you acknowledge in your letter, interrogatory **six** constitutes a request to identify a particular communication. The request is therefore directly on point with the specific example given in the advisory notes, which provides that a request for the time, place, and contents of a communication and the identity of the individuals present constitutes a single interrogatory.

Interrogatories **seven**, **eight**, and **ten**, do not contain any subparts and are therefore properly numerated as single interrogatories.

Interrogatory **nine** requests that the plaintiff describe instances in which he or she attempted to use a Temporary I-551 to re-enter the United States. The specific instruction to detail the circumstances of that re-entry, including any difficulties or delays encountered, clearly falls within the general scope of the primary question. Accordingly interrogatory nine constitutes a single inquiry.

Interrogatory **eleven** is also properly numerated. The general request for a description of the circumstances in which the Immigration Authorities confiscated documents from the plaintiff, necessarily subsumes the specific requests for the date of confiscation, the nature of the document confiscated, any reasons given for confiscation, and whether the document was returned.

4

In sum, Defendants' interrogatories do not exceed the numeric limitations set forth in Rule 33(a)(1) of the Federal Rules of Civil Procedure. Plaintiffs have therefore failed to comply with their obligations to respond to our legitimate discovery requests.

In your letter, you claim that the remaining questions could more easily be answered with requests for admissions, and that this would make things easier for you and your clients. While we have no desire to burden Plaintiffs with unnecessary discovery requests, we fail to see how the substantive information sought by our interrogatories (i.e., names, dates, locations, etc.,) could be elicited through requests for admissions. However, if you would like to identify specific interrogatories that you believe can be better addressed through requests for admissions, we are willing to consider them. If, for example, Plaintiffs are willing to admit that they have never suffered any adverse employment consequences from using their Temporary I-551s, we would be willing to withdraw interrogatory number five. However, absent some indication as to what facts Plaintiffs are willing to admit, we do not feel we have an obligation to rewrite our interrogatories in anticipation of potential admissions.

Again, we understand that the delay in responding to our prior letter may have been attributable to the recent severe weather. However, given that the close of discovery is rapidly approaching, and the lack of merit in the argument for withholding full responses from all of the named Plaintiffs, we cannot delay past next week in preparing to seek intervention from the Court. We are therefore anxious to confer with you to resolve this matter, and will be available on Tuesday, Wednesday and Thursday of next week to discuss it. However, absent a meaningful response to our concerns, or an assurance that full responses to our interrogatories from all six of the named Plaintiffs are forthcoming, we anticipate filling a motion to compel, pursuant to Rule 37(a)(3)(B)(iii), with the Court by Tuesday September 9.

Please contact us as soon as possible, if you are willing to further discuss this matter.

Sincerely,

ANTHONY C. PAYNE
Senior Litigation Counsel
Office of Immigration Litigation

ANA T. ZABLAH-MONROE
Trial Attorney
Office of Immigration Litigation

_____
STUART S. NICKUM
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 616-8779

6

Exhibit 8:

Plaintiffs' August 30, 2008 letter to Defendants

# LAW OFFICES OF LISA S. BRODYAGA

**17891 Landrum Park Rd.**
**San Benito, Texas 78586**
**(956) 421-3226**
**FAX: 421-3423**
August 30, 2008

Anthony Payne,
Ana Zablah-Monroe,
Stuart Nickum,
Attorneys, Office of Immigration Review
Box 878, Ben Franklin Sta.
Washington, D.C. 20044
(also by e-mail)

Re: *Ascencio-Guzman v. Trominski*,
    B-94-215 (S.D.Tx)

Gentlepersons:

This will respond to your letter dated August 29, 2008.

First, you have not addressed the primary objection that we raised. As stated in the responses:

> Plaintiff first objects to the Interrogatories posed on the grounds that for the first fourteen years during which the instant litigation has been ongoing, Defendants consistently and repeatedly objected to discovery in the instant case, asserting that there were no material facts were at issue, and that the instant case could and should be decided solely upon the law. The decisions of the Fifth Circuit do not change the basis for this assertion, and nothing in any of the interrogatories posed is relevant to any disputed fact which is material to the issues presently before the Court. [1]

As I view the case, there are two issues currently before the Court. One is whether there is statutory authority which would override any discretion on the part of DHS to put notations which reveal personal information on I-94s, and thereby inform potential employers that the person is, for example, under deportation proceedings. In our brief to the Fifth Circuit, we identified

---

[1] For clarily, I am serving separate responses raising only this objection. Since, I believe, as you have so often asserted, that there are no disputed material facts, and the case can be disposed of on the basis of a motion for summary judgment, I see no point in bothering the remaining named Plaintiffs at this time.

specific authority on which we are relying.  I believe this to be
a pure question of law, and do not understand what material facts
you consider to still exist, and how any of the interrogatories
posed could lead to relevant information with respect thereto.

The second issue is whether DHS has authority to confiscate
lawfully issued documents such as drivers' licenses, Social
Security cards, etc., in the absence of reason to believe that said
documents were evidence of any unlawful conduct.  Again, I do not
see what material facts you consider to exist with respect to this
issue, or how any of the interrogatories posed could lead to
relevant information with respect thereto.

Unless and until you can give me some reason to believe the
contrary, the dispute over "discrete subparts" (as set forth in
F.R.Civ.P. 33(a)), and "subparts" as used in Local Rule 33.1
(revised 2000), is academic.  However, in order to further advance
the discussion, I will continue to address that question as well.

You appear to be backing off from your prior claim that the comment
regarding "communications" that "squarely applies to our
interrogatories."  Your current contention appears to be that it is
meant as *an example* of questions that are not to be counted as
"discrete" subparts.  I disagree.  But even if you were correct, it
would not change my position, which, if you recall, was not based
on F.R.Civ.P. 33(a)(1), but on Local Rule 33.1, which omits the
qualifier "discrete."

You correctly note that there is authority, although none from this
circuit, which interprets the phrase "discrete subparts" in the
manner you urge.  There is also authority to the contrary.  As
summarized in *Oliver v. City of Orlando* 2007 WL 3232227, 2
(M.D.Fla. 2007) (emphasis added):

> "Resolving questions of whether a subpart to an
> interrogatory is 'discrete' under Rule 33 such that it
> should be counted separately can be a difficult task" and
> "courts considering this question have applied various
> tests." Williams v. Taser Int'l, Inc., No. Civ. 106-cv-
> 51-RWS, 2007 WL 1630875, *2 (N.D.Ga. Jun.4, 2007)
> (determining the actual number of interrogatories and
> discrete subparts when plaintiffs sought to compel
> responses from Taser International, Inc.); Banks v.
> Office of the Senate Sergeant-At-Arms & Doorkeeper, 222
> F.R.D. 7, 10 (D.D.C.2004) (recognizing that identifying
> a "discrete subpart" under Rule 33(a) "has proven
> difficult").  Some courts have applied a "related
> question" test, assessing whether the particular subparts

are logically or factually subsumed within and necessarily related to the primary question. *Williams*, 2007 WL 1630875, *2 (quoting *Ginn v. Gemini, Inc.*, 137 F.R.D. 320, 322 (D.Nev.1991)). If the subparts are subsumed and necessarily related to the primary question, then the subpart is not "discrete" within the meaning of Rule 33(a). *Williams*, 2007 WL 1630875, * 2. *Alternatively, other courts have applied a different "discrete information" standard under which interrogatory subparts which seek discrete pieces of information must be counted separately for purposes of Rule 33(a).* *Williams, 2007 WL 1630875, *2 (citing Prochaska & Assocs. v. Merrill Lynch, Pierce, Fenner & Smith, 155 F.R.D. 189, 191 (D.Neb.1993) ("if the interrogatories require discrete pieces of information, those interrogatories are to be counted as if the sub-parts were specifically itemized")).*

More importantly, there is authority addressing the specific issue at bar, namely, Local Rules which omit the qualifier "discrete." *See, Valdez v. Ford Motor Co.*, 134 F.R.D. 296, 298 (D.Nev. 1991):

> The procedure for interpreting a local rule should parallel the process used in the construction of statutes. "In construing a statute, this court first looks to the plain meaning of the language in question." *Pyramid Lake Paiute Tribe v. U.S. Dept. of Navy*, 898 F.2d 1410,1417 (9th Cir.1990). "The plain meaning governs ... unless such plain meaning would lead to absurd results." *Dyer v. U.S.*, 832 F.2d 1062, 1066 (9th Cir.1987).

> Local Rule 190-1(c) provides in relevant part that "the total number of interrogatories propounded to each party by any other party pursuant to Fed.R.Civ.P. 33 shall be limited to 40 including subparts." The plain meaning of the language in the rule is clear and unambiguous. Local Rule 190-1(c) requires that every part of an interrogatory be counted and subject to the limitation of 40.

> Some courts have adopted local rules limiting the number of interrogatories while not requiring the counting of subparts as separate interrogatories. *Myers v. U.S. Paint Co., Div. of Grow Group, Inc.*, 116 F.R.D. 165 (D.Mass.1987). Other courts that require the counting of each subpart as a separate interrogatory make an exception for subparts that call for information directly

related to the basic interrogatory. *Clark v. Burlington Northern R.R.*, 112 F.R.D. 117, 120 (N.D.Miss.1986).

Local Rule 190-1(c) requires that every propounded subpart of an interrogatory be counted, even when a subpart relates to the main interrogatory. The Ford interrogatories contained subparts and since each subpart propounded must be counted as a separate interrogatory, more than forty (40) interrogatories were served.

*See also, Prochaska & Associates v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 155 F.R.D. 189,191-92 (D.Neb. 1993) (emphasis added):

Not numbering the sub-parts of interrogatories does not change the fact that, if the interrogatories require discrete pieces of information, those interrogatories are to be counted as if the sub-parts were specifically itemized. By interrogatory 4 of defendant's first set of interrogatories to plaintiff, defendant exceeded this court's limit. Interrogatory 4 alone, double spaced, is one and one-half pages long and requires, by my count, *thirty discrete pieces of information*.

However, as previously noted, the first question to resolve is of whether any material facts are disputed. This was the first objection we raised. Until it has been addressed, I do not see the point of proceeding with respect to answers by the remaining named plaintiffs, on the "sub-parts" vs. "discrete sub-parts" issue, or on re-framing the interrogatories as requests for admission.

Thank you for your attention.

Sincerely,

s/
Lisa S. Brodyaga
Attorney at Law

4

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,      )
                            )
v.                          )      C.A. No.   B-94-215
                            )
TROMINSKI, et al.           )
_____)

OBJECTIONS OF PLAINTIFF JUANA ASCENCIO-GUZMAN TO
DEFENDANTS' FIRST SET OF INTERROGATORIES

Plaintiff Juana Ascencio-Guzman hereby objects to Defendants' First
Set of Interrogatories.

Plaintiff objects to the Interrogatories posed on the grounds that
for the first fourteen years during which the instant litigation
has been ongoing, Defendants consistently and repeatedly objected
to discovery in the instant case, asserting that there no material
facts were at issue, and that the instant case could and should be
decided solely upon the law.  Nothing in the decisions of the Fifth
Circuit which would change the basis for this assertion, and there
is nothing in any of the interrogatories posed which is relevant to
any disputed material fact.


Respectfully Submitted,

Lisa S. Brodyaga, Attorney at Law
17891 Landrum Park Rd.
San Benito, TX 78586
(956) 421-3225

August 30, 2008

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,       )
                            )
v.                          )       C.A. No.  B-94-215
                            )
TROMINSKI, et al.           )
_____)

OBJECTIONS OF PLAINTIFF EFRAIN MERINO TO
DEFENDANTS' FIRST SET OF INTERROGATORIES

Plaintiff Efrain Merino hereby objects to Defendants' First Set of
Interrogatories.

Plaintiff objects to the Interrogatories posed on the grounds that
for the first fourteen years during which the instant litigation
has been ongoing, Defendants consistently and repeatedly objected
to discovery in the instant case, asserting that there no material
facts were at issue, and that the instant case could and should be
decided solely upon the law.  Nothing in the decisions of the Fifth
Circuit which would change the basis for this assertion, and there
is nothing in any of the interrogatories posed which is relevant to
any disputed material fact.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney at Law
17891 Landrum Park Rd.
San Benito, TX 78586
(956) 421-3225

August 30, 2008

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,      )
                           )
v.                         )      C.A. No.  B-94-215
                           )
TROMINSKI, et al.          )
_____)

OBJECTIONS OF PLAINTIFF RAMIRO GRACIA-CANTU TO
DEFENDANTS' FIRST SET OF INTERROGATORIES

Plaintiff Ramiro Gracia-Cantu hereby objects to Defendants' First
Set of Interrogatories.

Plaintiff objects to the Interrogatories posed on the grounds that
for the first fourteen years during which the instant litigation
has been ongoing, Defendants consistently and repeatedly objected
to discovery in the instant case, asserting that there no material
facts were at issue, and that the instant case could and should be
decided solely upon the law.  Nothing in the decisions of the Fifth
Circuit which would change the basis for this assertion, and there
is nothing in any of the interrogatories posed which is relevant to
any disputed material fact.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney at Law
17891 Landrum Park Rd.
San Benito, TX 78586
(956) 421-3225

August 30, 2008

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,            )
                                 )
v.                               )        C.A. No.  B-94-215
                                 )
TROMINSKI, et al.                )
_____)

OBJECTIONS OF PLAINTIFF ALEJANDRA GUTIERREZ TO
DEFENDANTS' FIRST SET OF INTERROGATORIES

Plaintiff Alejandra Gutierrez hereby objects to Defendants' First
Set of Interrogatories.

Plaintiff objects to the Interrogatories posed on the grounds that
for the first fourteen years during which the instant litigation
has been ongoing, Defendants consistently and repeatedly objected
to discovery in the instant case, asserting that there no material
facts were at issue, and that the instant case could and should be
decided solely upon the law.  Nothing in the decisions of the Fifth
Circuit which would change the basis for this assertion, and there
is nothing in any of the interrogatories posed which is relevant to
any disputed material fact.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney at Law
17891 Landrum Park Rd.
San Benito, TX 78586
(956) 421-3225

August 30, 2008

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,          )
                               )
v.                             )          C.A. No.  B-94-215
                               )
TROMINSKI, et al.              )
_____)

OBJECTIONS OF PLAINTIFF ADELITA CANTU DE CABRERA TO
DEFENDANTS' FIRST SET OF INTERROGATORIES

Plaintiff Adelita Cantu de Cabrera hereby objects to Defendants'
First Set of Interrogatories.

Plaintiff objects to the Interrogatories posed on the grounds that
for the first fourteen years during which the instant litigation
has been ongoing, Defendants consistently and repeatedly objected
to discovery in the instant case, asserting that there no material
facts were at issue, and that the instant case could and should be
decided solely upon the law.  Nothing in the decisions of the Fifth
Circuit which would change the basis for this assertion, and there
is nothing in any of the interrogatories posed which is relevant to
any disputed material fact.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney at Law
17891 Landrum Park Rd.
San Benito, TX 78586
(956) 421-3225

August 30, 2008

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,      )
                           )
v.                         )      C.A. No.   B-94-215
                           )
TROMINSKI, et al.          )
_____)

OBJECTIONS OF PLAINTIFF JUAN SANCHEZ-SALINAS TO
DEFENDANTS' FIRST SET OF INTERROGATORIES

Plaintiff Juan Sanchez-Salinas hereby objects to Defendants' First
Set of Interrogatories.

Plaintiff objects to the Interrogatories posed on the grounds that
for the first fourteen years during which the instant litigation
has been ongoing, Defendants consistently and repeatedly objected
to discovery in the instant case, asserting that there no material
facts were at issue, and that the instant case could and should be
decided solely upon the law.  Nothing in the decisions of the Fifth
Circuit which would change the basis for this assertion, and there
is nothing in any of the interrogatories posed which is relevant to
any disputed material fact.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney at Law
17891 Landrum Park Rd.
San Benito, TX 78586
(956) 421-3225

August 30, 2008

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ASCENCIO-GUZMAN et al,      )
                           )
v.                         )      C.A. No.  B-94-215
                           )
TROMINSKI, et al.          )
_____)

OBJECTIONS OF PLAINTIFF ARTURO LOZANO-LOPEZ TO
DEFENDANTS' FIRST SET OF INTERROGATORIES

Plaintiff Arturo Lozano-lopez hereby objects to Defendants' First
Set of Interrogatories.

Plaintiff objects to the Interrogatories posed on the grounds that
for the first fourteen years during which the instant litigation
has been ongoing, Defendants consistently and repeatedly objected
to discovery in the instant case, asserting that there no material
facts were at issue, and that the instant case could and should be
decided solely upon the law.  Nothing in the decisions of the Fifth
Circuit which would change the basis for this assertion, and there
is nothing in any of the interrogatories posed which is relevant to
any disputed material fact.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney at Law
17891 Landrum Park Rd.
San Benito, TX 78586
(956) 421-3225

August 30, 2008