IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

APR 1 6 2009

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| JUANA ASCENCIO-GUZMAN, ET AL., | § |
| | § |
| Plaintiffs, | § |
| | § |
| v. | § |
| | § |
| MICHAEL CHERTOFF, ET AL., | § |
| | § |
| Defendants. | § |

CIVIL ACTION NO. B-94-215

## OPINION & ORDER

BE IT REMEMBERED that on April 15, 2009, the Court considered Plaintiffs' Motion for Summary Judgment on Both Claims Remanded by the Fifth Circuit, Dkt. No. 243; Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, Cross-Motion for Summary Judgment, and Request for Evidentiary Hearings, Dkt. No. 255; Plaintiffs' Response in Opposition to Defendants' Cross-Motion for Summary Judgment, Dkt. No. 260; Plaintiffs' Reply in Support of their Motion for Summary Judgment on Both Claims Remanded by the Fifth Circuit, Dkt. No. 261; and Defendants' Reply to Plaintiffs' Response to Defendant's Cross-Motion for Summary Judgment, Dkt. No. 264.

## I.    Background

On July 15, 1994, Plaintiffs, a class of legal permanent residents, ("LPRs"), facing pending deportation or exclusion proceedings, filed a petition for a writ of habeas corpus and a class action complaint which sought declaratory and injunctive relief. Dkt. No. 1. On November 24, 1998, this Court granted summary judgment in favor of Plaintiffs. Dkt. Nos. 104, 109 (relying on an internal memorandum to hold that Defendants unlawfully confiscated green cards, failed to provide documentation evidencing the resident's lawful permanent status, and placed notations on replacement documents). The decision was appealed. Dkt. No. 110. The Fifth Circuit vacated this Court's decision and remanded the

1

case. Dkt. No. 120; Loa-Herrera, et al. v. Trominski, et al., 231 F.3d 984, 988 (5th Cir. 2000) (holding that this Court improperly relied on the internal memorandum in limiting Defendants' discretion).

On remand, the magistrate court wrote a Report and Recommendations which reasoned that 8 U.S.C. § 1304(b) restricted Defendants' statutory discretion to issue temporary documents that failed to state that the alien was an LPR and that § 1304 barred extraneous notations on the temporary forms because Defendants were required to keep the personal information confidential. Dkt. No. 191, at 7-8. This Court declined in part to adopt the Report and Recommendations and denied Plaintiffs' motion for summary judgment and granted Defendants' motion for summary judgment. Dkt. Nos. 214, 215 (holding that 8 C.F.R. § 264.5(g) did not limit Defendants' discretion regarding confiscation of, issuance of, and notation on immigration documents). Plaintiffs appealed. Dkt. No. 216. The Fifth Circuit affirmed in part and vacated in part. Dkt. No. 227.

The Fifth Circuit held that this Court construed too narrowly the Fifth Circuit's mandate to consider 8 U.S.C. § 1304(b) and therefore vacated the section of the Order regarding the temporary documents issue and instructed that this Court "determine whether an injunction is appropriate given the requirements of § 26[4].5(g), with consideration devoted to whether any other legal authority contravenes the Attorney General's statutory discretion to balance the interests of LPRs and employers as reflected in § 264.5(g)." Id. at 14. The Fifth Circuit also held that this Court should have considered the other government documents claim and therefore mandated that this Court consider that issue on remand. Id. at 15. The Fifth Circuit then reminded this Court that "on remand, the government remains free to 'press any additional legal or factual arguments it wishes to make,' both with respect to the extraneous notations claim and the other government documents, claim, as provided in the previous mandate." Id.

Thus, two of Plaintiffs' claims are before this Court: (1) Plaintiff's claim that Defendants improperly "seiz[e] a [legal permanent resident]'s laminated Form I-151 or I-551 ('green card') and issu[e] in its place an I-94 "Temporary Evidence of Lawful Permanent Resident" form with extraneous notations revealing that the holder is facing removal proceedings"; and (2) Plaintiffs' claim that Defendants "improperly confiscate[]

2

other government documents from LPRs, such as driver's licenses and social security cards." Dkt. No. 227, at 2. Regarding these claims, Plaintiffs seek declaratory and injunctive relief. Dkt. No. 15, at 15-17.

Both parties have moved for summary judgment. Dkt. Nos. 243, 255. Plaintiffs move for summary judgment on both the extraneous notation issue and the other documents issue. Dkt. No. 243. Regarding the extraneous notation claim, Plaintiffs assert that two statutes limit Defendants' discretion, 8 U.S.C. § 1304(b) and The Privacy Act, 5 U.S.C. § 552a(b). *Id.* at 14. Defendants contend that Plaintiffs have failed to cite legal authority that contravenes Defendants' discretion to issue temporary immigration documents with notations; Plaintiffs have failed to establish that they are entitled to injunctive relief on their extraneous notation claim; Plaintiffs have failed to adequately plead their Other Documents claim; and therefore, Defendants are entitled to judgment as a matter of law. Dkt. No. 255, at 7-8.

## II.    Summary Judgment Standard

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the Court demonstrate that no genuine issue of material fact exists, and the movant is thus entitled to judgment as a matter of law. FED. R. CIV. P. 56(c) (West 2009); Piazza's Seafood World, LLC v. Odom, 448 F.3d 744, 752 (5th Cir. 2006); Lockett v. Wal-Mart Stores, Inc., 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's Seafood World, LLC*, 448 F.3d at 752 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court must view all evidence in a light most favorable to the non-moving party. *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 36 F.3d 1069, 1075 (5th Cir. 1994). Thus, the Court will not, "*in the absence of proof, assume that the nonmoving party could or would prove the*

3

necessary facts." *Id.* (emphasis in original) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)).

If the movant satisfies its initial burden, the non-movant must then come forward with specific evidence to show that there is a genuine issue of fact. *Lockett*, 337 F. Supp. 2d at 891; *see also* Ashe v. Corley, 992 F.2d 540, 543 (5th Cir. 1993). The nonmovant may not merely rely on conclusory allegations or the pleadings. *Lockett*, 337 F. Supp. 2d at 891. Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. FED. R. CIV. P. 56(e); *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)). Thus, once it is shown that a genuine issue of material fact does not exist, "[s]ummary judgment is appropriate . . . if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" Arbaugh v. Y&H Corp., 380 F.3d 219, 222–23 (5th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

Plaintiffs assert that there exists no genuine issues of material fact as to the claims and therefore they are entitled to declaratory and injunctive relief. Dkt. No. 243, at 36-37. Defendants argue that Plaintiffs have failed to establish that declaratory or injunctive relief is warranted and therefore Defendants are entitled to judgment as a matter of law. Dkt. No. 255, at 7-8.

## III.   Discussion

The Attorney General is responsible for the administration and enforcement of the federal laws relating to immigration and naturalization. 8 U.S.C. § 1103 (2004). The Attorney General has delegated that authority and discretion to the Department of Homeland Security. 8 C.F.R. § 2.1 (2009). However, that authority and discretion may be circumscribed by congressionally imposed limits. INS v. Chadha, 462 U.S. 919, 953 n.16 (1983). Where an agency acts within its congressionally granted limits, the agency's

4

discretion must be given deference. *Compare* Kleindienst v. Mandel, 408 U.S. 753, 770 (1972) (affording substantial deference to Executive action with respect to the exclusion of an unadmitted and nonresident alien), Bertrand v. Sava, 684 F.2d 204, 211 (2d Cir. 1982) (affording substantial deference to Executive action with respect to the decision not to parole an unadmitted alien), *with* Etuk v. Slattery, 936 F.2d 1433, 1443-44 (2d Cir. 1991) (affording less deference to Executive action where the agency took action with respect to legal permanent residents who lost their green cards and were issued temporary proof of resident status).

The Fifth Circuit on remand instructed this Court to consider two issues: (1) whether any legal authority contravenes the Attorney General's statutory discretion to issue and include notations on temporary documents and (2) whether the Defendants have discretion to confiscate other government documents. Dkt. No. 227.

### A. Extraneous Notations Claim

The Fifth Circuit has stated twice in this case that "[8 C.F.R.] § 264.5(g) does not prohibit the placement of extraneous notations on temporary immigration documents and that '[a]bsent any legal authority to the contrary,' the district court may not interfere with the Attorney General's statutory discretion as expressed in the terms of the regulation." Dkt. No. 227, at 13 (quoting *Loa-Herrera*, 231 F.3d at 989-90). Defendants are afforded certain statutory discretion to balance the interests of LPRs and employers when issuing temporary immigration documents. 8 C.F.R. § 264.5(g). The applicable regulation states:

> Eligibility of a card while in deportation or exclusion proceedings. A person in exclusion proceedings shall be entitled to evidence of permanent resident status until ordered excluded. Such evidence shall be in the form of a temporary Form I-551 issued for a period sufficient to accomplish the exclusion proceedings. A person in deportation proceedings shall be entitled to evidence of permanent resident status until ordered deported or excluded. Issuance of an Permanent Resident Card to a person in exclusion or deportation proceedings, provided the person had status as a lawful permanent resident when the proceeding commenced, shall not affect those proceedings.

8 C.F.R. § 264.5(g).  *See* Santillan v. Gonzalez, 388 F. Supp. 2d 1065, 1079 (N.D. Cal. 2005) (extending the guarantee of documentation provided for in § 264.5(g) to LPRs facing removal proceedings).

Plaintiffs assert that 8 C.F.R. § 299.1 provides the Attorney General with limited discretion to determine what personal information may be contained in the temporary documentation provided to LPRs.  Dkt. No. 243, at 8.  Plaintiffs reason that as the only form specific by regulation § 299.1 is a Form I-551, Defendants may not use their discretion to include notations on temporary I-551s that would not be found on the permanent, laminated version of an I-551.  *Id.*  Plaintiffs further state that 8 U.S.C. § 1304(b) and the Privacy Act, 5 U.S.C. § 552a(b), limit Defendants' discretion to provide personal information on temporary I-551s.  *Id.* at 19.

The registration card, a permanent Form I-551, commonly referred to as a "green card," is an important document for an LPR.  *Etuk*, 936 F.2d at 1436-37 ("While not the exclusive means of providing proof of lawful immigrant status . . . , the green card is the most widely utilized and accepted means of proving LPR status.").  The Supreme Court in *U.S. v. Campos-Serrano*, stated that an alien registration card essentially had two purposes: (1) to identify the bearer as a lawfully registered alien residing in the United States; and (2) to govern the alien's activities and presence within the country.  404 U.S. 293, 299-300 (1971) (cited in U.S. v. Ritter, 752 F.2d 435, 438 (9th Cir. 1985)).  The Second Circuit explained, "presentation of a green card is not the exclusive manner by which an LPR can establish eligibility to work. . . .  However, possession of a green card is often a prerequisite for obtaining some of the other documents such as a driver's license or a social security card."  *Etuk*, 936 F.2d at 1437.

Defendants contend that for this Court to grant Plaintiffs summary judgment the Court must hold that (1) there is legal authority limiting Defendants' discretion to include notations on temporary immigration documents and (2) injunctive relief is the appropriate remedy.  Dkt. No. 255, at 10.  Defendants assert that Plaintiffs have failed to identify any such contravening statutory authority or establish that Plaintiffs would suffer future irreparable harm.  *Id.*

Basically, Defendants must provide registered LPRs with proof of their legal status, LPRs must carry the proof, and LPRs must support themselves. 8 U.S.C. §§ 1304(d),(e), 1251(a)(1),(8). Because of her status, an LPR is authorized to be employed in the United States. *See* 8 U.S.C. § 1324a(h)(3) ("[T]he term 'unauthorized alien' means, with respect to the employment of an alien at a particular time, that the alien is not at that time . . . an alien lawfully admitted for permanent residence."). The Form I-551 issued to an LPR must clearly and unambiguously state that the holder is an LPR and authorized for employment in the United States of America. *Etuk*, 936 F.2d at 1444.

The Second Circuit in *Etuk* tackled a nearly identical issue in 1991. Etuk v. Slattery, 936 F.2d 1433 (2d Cir. 1991). The United States Government issued LPRs temporary I-551s which included notations on the back of the cards. *Id.* at 1445. The notations instructed the holder "[r]etain this permit in your possession; *you must surrender it when you leave the U.S.* . . . You are authorized to stay in the U.S. only until the date written on this form." *Id.* The Circuit Court held that the language impermissibly implied that the holder was not an LPR and that her employment was temporarily restricted. *Id.* (emphasis in original). The Circuit Court reasoned that the language was "misleading and potentially damaging to an LPR's ability to secure employment as well as to his or her ability to provide LPR status." *Id* at 1445-46. As LPRs do not lose their status as LPRs unless a final immigration order has stripped them of their status, the Court held that the immigration agencies "cannot completely interfere with an LPR's ability to earn a living and provide for himself or family during the pendency of deportation proceedings." *Id.* at 1447 (concerning the confiscation of green cards and adequacy of replacement immigration forms).

Section 1304 provides that:

(a) Preparation; contents

The Attorney General . . . [is] authorized and directed to prepare forms for the registration of aliens under section 1301 of this title, and the Attorney General is authorized and directed to prepare forms for the registration and fingerprinting of aliens under section 1302 of this title. Such forms shall contain inquiries with respect to (1) the date and place of entry of the alien into the United States; (2) activities in which he has been and intends to be engaged; (3) the length of time he expects to remain in the United States; (4)

the police and criminal record, if any, of such alien; and (5) such additional matters as may be prescribed.

(b) Confidential nature

**All registration and fingerprint records** made under the provisions of this subchapter **shall be confidential**, and shall be made available only (1) pursuant to section 1357(f)(2)[, concerning photographs and fingerprints], and (2) to such persons or agencies as may be designated by the Attorney General.

. . .

(d) Certificate of alien registration or alien receipt card

Every alien in the United States who has been registered and fingerprinted . . . shall be issued a certificate of alien registration or an alien registration receipt card **in such form and manner and at such time as shall be prescribed under regulations issued by the Attorney General**.

8 U.S.C. § 1304(a),(b),(d) (1996) (emphasis added).

Plaintiffs assert that Section 1304(b) limits Defendants' discretion to include extraneous notations on temporary I-551s. Dkt. No. 243, at 23. Plaintiffs assert that because an LPR must show proof of her legal status and eligibility to work in order to obtain employment, "a driver's license, Social Security card, or federally funded legal services" an extraneous notation on a temporary I-551 violates the confidentiality provision of § 1304. *Id.*

Defendants argue that the confidentiality provision, § 1304(b), does not restrict the discretion of the Attorney General to place notations on temporary immigration documents and that Plaintiffs' construction of § 1304(b) would lead to an absurd result where even a laminated Form I-551 would violate § 1304(b). Dkt. No. 255, at 16. However, Plaintiffs contend that "to hold, as Defendants urge, that there are no limits on the personal data which can be divulged, would render 8 U.S.C. § 1304(b) meaningless." Dkt. No. 260, at 18. Plaintiffs reason that construction of § 1304(b) requires contextual analysis of the statute as a whole and that the "only way to give effect to all of these provisions is to read 8 U.S.C. § 1304 as mandating that the necessary information be collected, registration forms be prepared as directed, and that they must be carried by the alien, but that all other information be held confidential, and disclosed only as provided in § 1304(b)." *Id.* at 18-19.

When interpreting a statute courts must first look to the plain meaning of the text. Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts – at least where the disposition requested by the text is not absurd – is to enforce it according to its terms.") (internal citations and internal quotations marks omitted). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 809 (1989). Moreover, the statute shall not be interpreted as to render one provision superfluous. Duncan v. Walker, 533 U.S. 167, 174 (2001) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."). Similarly, the canon, *in pari materia*, explains that where multiple statutes address the same subject matter they should be read consistently and should serve as a larger context for statutory analysis. Wachovia Bank v. Schmidt, 546 U.S. 303, 315-16 (2006).

The text of § 1304(d) affords the Attorney General discretion regarding the form, manner, and time immigration cards are issued. However, § 1304(b) limits that discretion by requiring that registration records be made confidential. 8 U.S.C. § 1304(b). To interpret section (d) in such a way that it is limitless would render the confidentiality afforded by section (b) meaningless. *Duncan*, 533 U.S. at 174. Similarly, the confidentiality section may not be given such strength that it bars any personal information on the registration cards required by section (d). *Id.* Rather this Court must consider the context of § 1304 and interpret the provisions so that neither provision is rendered superfluous and so that the result is not absurd. *Lamie*, 540 U.S. at 534. This Court will also look to the this and other statutes concerning immigration documentation for LPRs. *Wachovia Bank*, 546 U.S. at 315-16.

Section 1304(d), § 264.5(g), and § 299.1 require that the Attorney General issue LPRs registration cards. However, § 1304(b) requires that certain registration information be kept confidential. The Court will afford all provisions meaning and to not render them superfluous. Read together the provisions can be interpreted to give the Attorney General discretion to include information on registration cards that is reasonably necessary and

9

related to the purpose of those cards.  The Attorney General, however, may not include information contrary section (b) and not in keeping with the purpose of the cards.

As the Second Circuit explained in *Etuk*, the purpose of registration cards issued by the Attorney General to LPRs is twofold: (1) to provide proof of LPR status and (2) to state eligibility for unencumbered employment.  *Etuk*, 936 F.2d at 1444, 1446 (The temporary form I-94s or I-551s must "provide LPRs with *clear and unambiguous proof* of their legal status and eligibility to work.") (emphasis added).  Extraneous notations that state or imply that the holder is not an LPR with all the rights associated with that status does not comport with the purpose of the card and therefore is not within the discretion afforded to the Attorney General.  *See id.* at 1445.  The Circuit Court held that notations indicating the holder must surrender the temporary form I-94 when leaving the United States and that the holder was only eligible to stay in the United States until the date written on the form implied that the holder was not an LPR and therefore the notations were in violation of immigration laws affording LPRs documentation stating that they are LPRs and are authorized for employment.  *Id.*  The Court stated definitively that "[t]he legal rights of LPRs cannot fall victim to the INS's concerns for administrative convenience." *Id.* at 1446.  As demonstrated in examples listed below, Defendants have failed to issue temporary form I-94s or I-551s that "provide LPRs with *clear and unambiguous proof* of their legal status and eligibility to work." *Id.* (emphasis added).

Plaintiffs point to multiple temporary I-551s which they allege are insufficient and violate the confidentiality provision.  Dkt. No. 243, at 25 (citing Dkt. Nos. 149, at 72; 172, at 46-48; 229; 235).  One temporary form, an I-94, for Plaintiff Jose Rosales Lopez indicated that on April 2, 2002 there were "[p]ending [r]emoval [p]roceedings." Dkt. No. 149, at 72.  Plaintiffs assert that the form I-94 failed to state that Plaintiff Rosales Lopez was an LPR or was authorized for employment.  Dkt. No. 243, at 20 n.26.  The Court will not consider that document further as the remaining text is in Spanish and a translated copy was not provided.  Dkt. No. 149, at 72.

The temporary form issued to Plaintiff Elisa Barron-Iracheta contained a stamp which stated that on April 9, 2002, she was paroled "pending completion of prosecution." Dkt. No. 172, at 46.  Moreover, what seems to be the back of the form indicated that

Plaintiff Barron-Iracheta was "in removal proceedings" and that the form was "valid for 6 [months]." *Id.* Nothing on either side of the document stated that the holder was an LPR or that she was authorized for employment.

The temporary form issued to Plaintiff Ruben Dario Prado Rivera stated that he was "[r]eleased on [p]arole [b]ond pending immigration proceedings" and that the form was "[p]roof of legal status." *Id.* at 47. Below that information was the statement "employment authorized." *Id.* The back of the form included the information that Plaintiff Prado-Rivera was "released on bond parole pending decision by EOIR in immigration proceedings." *Id.* The form did not state that Plaintiff was an LPR.

The form for Yesenia Rios Tanguna stated that it was "temporary proof of legal status pending completion of proce[e]dings," that it was "valid until 08/07/01," and that "employment [was] authorized." *Id.* at 48. However, the form was issued on July 2, 2001. *Id.* ("Date Issued (Day/Mo/Yr) 020701"). The document did not state that Plaintiff was an LPR. Plaintiffs did not provide the Court with a copy of the back of the temporary document issued to Plaintiff Rios Tanguna.

The temporary form I-94 issued to Plaintiff Blanca J. Avila de Reyes indicated that she was "paroled" for "[u]rgent [h]umanitarian [r]easons." Dkt. No. 229, at 8. The back of Ms. Avila de Reyes' form stated that there was a pending immigration proceeding. *Id.* at 9 ("Pending Immigration Court"). The document did not state that she was an LPR or that she was authorized for employment.

Plaintiff Amilcar Prado-Alvarez filed an affidavit with the Court in which he stated that Defendants issued him a form I-94 which failed to identify him as an LPR or that he was authorized for employment. Dkt. No. 250, at 2-4. One form I-94 issued to Plaintiff in 1988 stated that he was an LPR and was authorized for employment. *Id.* at 5. However, another form I-94 issued to Plaintiff in 2007 stated that he was paroled "pending N-600 petition." *Id.* at 8. It failed to state that the holder was an LPR or that he was authorized for employment. *Id.* In 2009 Plaintiff obtained a form I-94 that included the notation "temporary evidence of lawful admission for residence." *Id.* at 11. The form also stated "employment authorized." *Id.*

11

Plaintiff Ruben Elizondo-Gonzalez was issued a form I-94 which stated that he was an LPR and was eligible for employment; however, because the form I-94 was not valid for more than six (6) months at a time he could not obtain a Texas Driver's License. Dkt. No. 252, at 2-6.  Communication between Defendants and counsel for Plaintiff Elizondo-Gonzalez indicated that Defendants were unwilling to extend the validity of the form I-94 past the next immigration court date.  *Id.* at 10.

This Court holds that § 1304(b) bars extraneous notations that imply that the holder is not an LPR with all the rights and abilities afforded her because of her status and that are not necessary or related to the purpose of the registration card.  Temporary cards which are issued for mere months at a time and which have notations of parole or immigration proceedings and which fail to state that the holder is an LPR do not make it clear that the holder has all the rights afforded an LPR, including eligibility for employment. *See Etuk*, 936 F.2d at 1446 (holding that the statement "authorized to stay in the U.S. only until the date" was a limitation on an LPR's authorization to remain in the United States and was "plainly [] inconsistent with LPR status").  While 8 C.F.R. § 274a.12(a)(1) states that the expiration date found on a form I-551 "reflects only that the card must be renewed, not that the bearer's work authorization has expired," taken in the larger context of all the extraneous notations on the temporary form I-94s and I-551s, the notation implies that the eligibility for employment is temporary.  Such notations are not administratively necessary and disclose confidential information that incorrectly implies the holder is not an LPR who is eligible to work in the United States.  As this Court holds that § 1304(b) bars extraneous notations on temporary registration cards, the Court will not address whether the notations are barred by the Privacy Act.

### B. Other Documents Claim

Plaintiffs challenge Defendants' alleged practice of confiscating documents such as driver's licenses and Social Security cards when the documents offer little or no evidentiary value to the immigration proceeding and request injunctive relief.  Dkt. No. 243, at 27-28. Defendants contend that the Other Documents claims was not properly pled and injunctive relief is inappropriate as there exists no threat of irreparable injury.  Dkt. No. 255, at 23-28.

12

Rule 8(a)(2) requires "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957) (quoting FED. R. CIV. P. 8(a)(2)). The complaint essentially must state enough facts to "give rise to a legal basis for recovery as long as fair notice of the nature of the action is provided to the opposing party." 5 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216 (3d ed. 2004). "Pursuant to Rule 8(a), a complaint will be deemed inadequate only if it fails to (1) provide notice of circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist." General Star Indemnity, Co. v. Vesta Fire Ins., Corp., 173 F.3d 946, 950 (5th Cir. 1999) (citing Walker v. S. Cent. Bell Tel. Co., 904 F.2d 275, 277 (5th Cir. 1990)).

Rule 8(a) also requires that a plaintiff include in the complaint demand for relief. FED. R. CIV. P. 8(a)(3). However, "a plaintiff's failure to request *appropriate* relief does not prevent the award of available relief." Laird v. Integrated Resources, Inc., 897 F.2d 826, 842 (5th Cir. 1990) (emphasis added). *See* Schott v. Ierubino, No. 08-61037-CIV, slip op., 2009 WL 790117, at *2 (S.D. Fla. March 25, 2009) (holding that a compliant that failed to include any request for relief should be dismissed without prejudice), Jones v. Wisconsin Div. of Unemployment Ins., No. 09-cv-149-bbc , slip op., 2009 WL 814297, at *2 (W.D. Wis. March 25, 2009) (dismissing a complaint pursuant to Rule 8 where the complaint failed to request relief from the court), Santa Clara Valley Water Dist. v. Olin Corp., No. C-07-03756 RMW, slip op, 2009 WL 667429, at *2 (N.D. Cal. March 13, 2009) (stating that a defendant is entitled to "notice of the nature or magnitude" of the relief sought), Ransom v. Winter, No. 4:06cv1702 FRB, 2007 WL 1992299, at *2 (E.D. Mo. July 3, 2007) (holding that a complaint that merely requested that the court make a "judicious decision in favor of complainant" was not so vague as to warrant requiring plaintiff to file a more definite statement).

Plaintiffs assert that the other documents claim was adequately pled pursuant to Rule 8 of the Federal Rules of Civil Procedure. Dkt. No. 243, at 28-30. Plaintiffs state that the Second Amended Complaint, Dkt. No. 15, satisfies the requirements of Rule 8 and articulates that other documents were confiscated from three Plaintiffs independent of

evidentiary value to the immigration proceedings and that the confiscation violates their liberty without due process. *Id.* at 30. Plaintiffs further contend that their issue was not excluded from the case and it has subsequently been litigated by consent as Defendants included the issue in their motion for summary judgment in 1995. *Id.* at 31-32 (citing Leonberger v. Martin Marietta Materials, Inc., 231 F.3d 396, 398 (7th Cir. 2000)).

Defendants assert that the Other Documents claim was not properly pled and did not give them "fair notice" of the claim. Dkt. No. 255, at 24, 26. Defendants point to the Amended Complaint which lists seven causes of action, none of which include the Other Documents claim. *Id.* In response, Plaintiffs state Defendants have had fair notice of the Other Documents claim as it was alleged in the Second Amended Petition and in Plaintiffs' Motion for Summary Judgment in 1995. Dkt. No. 260, at 22.

Plaintiffs' Second Amended Petition states in the Prayer for Relief:

Plaintiffs also request both preliminary and permanent injunctive relief, enjoining and restraining Defendants from confiscating the green cards of lawful permanent resident aliens who have been placed in deportation or exclusion proceedings, against who there is no final deportation order, and who are not held in custody, and from not returning the green cards of such lawful permanent residents from whom they have been previously confiscated, or from not providing substitute documentation which places no cloud over their status as lawful permanent residents.

Plaintiffs also request both preliminary and permanent injunctive relief, enjoining and restraining Defendants from taking any actions that would interfere with the right of a lawful permanent resident of the United States to live and work in this country . . . .

Plaintiffs also seek declaratory judgment, declaring that the confiscation of, and the refusal to return, the green cards of lawful permanent resident aliens placed in deportation or exclusion proceedings, who are not held in custody, and against whom there exists no final order of deportation or exclusion, without provision of a substitute document which places no cloud over their status as lawful permanent residents, is a violation of their rights as lawful permanent residents.

. . .

And finally, Plaintiffs seek . . . such other and further relief as this Court may deem appropriate and justified under all of the circumstances herein.

14

Dkt. No. 15, at 18, 19.  None of the enumerated causes of action specifically concern the confiscation of other documents, although the causes of action "incorporate by reference the allegations" found in the Facts Section.  The Facts Section of the Petition states that Defendants confiscated multiple Plaintiffs' driver's licenses or other state identification cards.  *Id.* at 6, 7.  In fact, the Petition alleges that

> when Defendants place lawful permanent resident[s] under exclusion proceedings, it was, at the time of filing the instant action, Defendants' practice to confiscate their green cards, and other documents in their possession, such as their drivers' licenses or identification cards, regardless of whether such documents had any evidentiary value in either the criminal prosecution or exclusion proceedings, and to refuse to return said documents . . . unless and until all expulsion proceedings are terminated.

*Id.* at 9-10.

Moreover, Plaintiffs address the Other Documents claim in their initial Motion for Summary Judgment.  Dkt. No. 40, at 24 (alleging that confiscation of green cards and other documents is a violation of due process and the right to travel).  With regard to the Other Documents claim, Defendants state that because Plaintiffs did not request relief regarding the confiscation of other documents, the Other Documents claim is not properly pled and should be dismissed.  Dkt. No. 55, at 74-75.  This Court implicitly found that the Other Documents claim was properly pled as the Court granted injunctive relief and ordered that Defendants "shall not confiscate" "other lawfully issued documents" which are not "*bona fide* evidence of unlawful conduct."  Dkt. No. 97, at 5; Dkt. No. 104, at 5.

Additionally, Defendants state that the Other Documents claim was not part of the class allegation and not adequately pled because the "class allegation did not cover individuals whose 'other documents' were confiscated."  Dkt. No. 266, at 26.  Conversely, Defendants assert that if the Other Documents claim was an individual claim it was similarly inadequately pled as none of the causes of action mentioned individual Plaintiffs. *Id.*  In response, Plaintiffs urge that "[t]he class does not *exclude* those [legal permanent residents] whose other documents had also been confiscated. . . .  Logically, defining the class in term of [legal permanent residents] whose green cards had been confiscated would therefore *include* those whose other documents had been lifted, whereas it would

15

not be the case that Defendants lifted other documents, without lifting green cards." Dkt. No. 260, at 23 (emphasis in original).

This Court agrees with Plaintiffs that the Other Documents claim was part of the class allegation and again holds that the Other Documents claim was properly pled. Plaintiffs did not request specific relief with respect to the Other Documents claim. However, the Prayer for Relief requests injunctive relief to stop Defendants from interfering with Plaintiffs' right to live and work in this country and "such other and further relief as this Court may deem appropriate and justified under all of the circumstances herein." Dkt. No. 15, at 18-19. Moreover, in every cause of action they incorporate by reference the facts in the Petition which alleged that on multiple occasions Defendants improperly confiscated other documents belonging to Plaintiffs and maintained a policy to do so. *See* Dkt. No. 15, at 6, 7, 9-10. Therefore, Plaintiffs meet the requirements for Rule 8(a) with respect to the Other Documents claim.

Plaintiffs assert that they are entitled to declaratory judgment on this claim as the confiscation of other documents unlawfully strips them of their liberty without due process and rights to live and work in the United States. Dkt. No. 243, at 32. Plaintiffs contend that a driver's license is an essential document in obtaining and maintaining employment and that without it the right to work is curtailed. *Id.* at 33. Furthermore, Plaintiffs state that their fundamental right to inter-state travel is restricted without documents such as a driver's license or social security card. *Id.* at 33-34. Plaintiffs identify four (4) examples where other documents were confiscated by Defendants without a good faith basis that the documents were evidence of unlawful conduct. *Id.* at 34-36.

In addition to arguing that the Other Documents claim is improperly pled, Defendants also argue that injunctive relief cannot be granted as there were genuine issues of material fact as to the threat of future harm. Dkt. No. 255, at 23-28. Moreover, Defendants assert that the instances of confiscation were outdated and taken "by an agency that no longer exists." *Id.* at 27. Defendants do not substantively address the merits of the Other Documents claim.

"[T]he right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the

16

[Fourteenth] Amendment to secure." Stidham v. Tex. Com'n on Private Sec., 418 F.3d 486, 491-92 (5th Cir. 2005) (holding that the publication of information that the plaintiff in operating his business had violated the law deprived plaintiff of his liberty interest without due process of law) (quoting Truax v. Raich, 239 U.S. 33, 41 (1915)). The Supreme Court has previously recognized that "a driver's license is often involved in the livelihood of a person and as such could not be summarily taken without a prior hearing." Parratt v. Taylor, 451 U.S. 527, 538 (1981), *overruled on other grounds*, (citing Bell v. Burson, 402 U.S. 535 (1971) (requiring due process prior to confiscating a driver's license)). *See also* Brooks v. U.S., 127 F.3d 1192, 1194 (9th Cir. 1997) (citing *Bell*, 402 U.S. at 539). However, the Third Circuit has held that the denial of a driver's license does not implicate the fundamental right to travel. Abuhouran v. Social Sec. Admin., 291 Fed. Appx. 469, 473, 2008 WL 2957101 (3d Cir. August 4, 2008) (unpublished).

This Court holds that the confiscation of other documents such as driver's licenses and social security cards without a good faith belief they establish evidence of unlawful conduct infringes upon the liberty and due process interests afforded by our Constitution. *See* Dixon v. Love, 431 U.S. 105, 113-14 (1977) (holding that where the judicial process established a violation for which a driver's license was properly confiscated there was no due process violation and the holder had no right to a hearing).

### C. Injunctive Relief

Plaintiffs seek injunctive relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. Dkt. No. 15. To establish that he is entitled to a permanent injunction, the plaintiff must prove essentially the same elements as those for a preliminary injunction "with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12 (1987). The plaintiff must demonstrate: (1) actual success on the merits; (2) "a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; [(3)] that greater injury will result from denying the temporary restraining order than from its being granted; and [(4)] that a temporary restraining order will not disserve the public interest." Villas at Parkside Partners v. City of Farmers Branch, 577 F. Supp. 2d

17

858, 877 (N.D. Tex. 2008) (citing Clark v. Prichard, 812 F.2d 991, 993 (5th Cir. 1987); Canal Authority v. Callaway, 489 U.S. 567, 572 (5th Cir. 1974) (en banc)). This burden is cumulative. *Id.* (citing Mississippi Power and Light Co. v. United Gas Pipeline, 760 F.2d 618, 621 (5th Cir. 1985), *Clark*, 812 F.2d at 993).

Moreover, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 189 (2000) (concerning dismissal of a claim). While voluntary cessation of the challenged practice does not make the claim moot, the abandonment is an important factor to be considered by a district court when evaluating whether to issue an injunction. City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982). "A case might become moot if subsequent events made it ***absolutely clear*** that the allegedly wrongful behavior could not reasonably be expected to recur." U.S. v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 204 (1968) (emphasis added). However, the party asserting that an issue is moot has the heavy burden of proving that the challenged conduct cannot reasonably be expected to recur. Gates v. Cook, 376 F.3d 323, 337 (5th Cir. 2004) (citing *Friends of the Earth, Inc.*, 528 U.S. at 190).

Defendants' request for an evidentiary hearing on the factual issues concerning the injunctive relief sought is denied. Dkt. No. 264, at 5.

### 1. Extraneous Notations Claim

Plaintiffs contend that there is a cognizable danger of recurrent violations as evidenced by Defendant's continued refusal to stop placing notations on temporary forms. Dkt. No. 243, at 25. Plaintiff provide the Court with three examples of Plaintiffs who received insufficient temporary documents issued by Defendants. *Id.* (citing Dkt. No. 172, at 47-48). Moreover, Plaintiffs assert that the extraneous notations violate their right to privacy and as such the threatened injury is irreparable and requires declaratory and injunctive relief. *Id.* at 25-26 (asserting "the very real threat that a potential employer will cho[o]se not to hire the person, or if hired, and upon being 'cautioned' that the person may not be around for long, place him or her in a lower, non-career, track"). Defendants state

that Plaintiffs have failed to identify legal authority limiting the Attorney General's discretion to issue temporary immigration documents with notations and have failed to satisfy the four requirements to obtain a permanent injunction. Dkt. No. 255, at 18-19.

Additionally, Defendants assert that Plaintiffs' list of potential injuries is insufficient to demonstrate a threat of irreparable injury and only hypothesize that LPRs will suffer "humiliation" or be denied benefits. *Id.* at 19-21. In support of this assertion, Defendants state that none of the six (6) class representatives have suffered any injuries as a result of the notations on their temporary form I-551s. *Id.* at 21 (citing Dkt. No. 255, Ex. 1 at 12-14). Defendants contend that as none of the class representatives "suffered any adverse employment consequences or were denied any government benefit as a result of having used a Temporary I-551" there remains a genuine issue of material fact as to whether they demonstrated a threat of irreparable harm. *Id.* at 21.

Furthermore, Defendants reason that given the newly adopted policies "standardizing the issuance of Temporary I-551s and prohibiting the placement of extraneous notations upon them" whether there remains any threat of irreparable harm is a genuine issue of material fact. *Id.* at 21-22 (citing Dkt. No. 255, Ex. 1 at 1-11). However, Plaintiffs contend that as the case has been litigated for fourteen (14) years, a recent change in Defendants' policy does not strip this Court of its ability to grant declaratory and injunctive relief. Dkt. No. 260, at 9-11. Plaintiffs assert that the newly issued policies do not satisfy the "heavy burden" imposed on Defendants. *Id.* at 11.

Plaintiffs have achieved actual success on the merits pursuant to this Court's previous holding that Defendants shall not include extraneous notations on temporary immigration documents. The Court also finds that given Defendants' newly implemented policies, the purpose of § 1304(b), and Plaintiffs' multiple examples of insufficient and misleading temporary documents an injunction would not disserve public interest. Moreover, the burden of the injunction would not outweigh its benefit as evidenced by the Defendants' newly implemented policies.

At issue remains the second element needed to obtain a permanent injunction: (2) "a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law." *Villas at Parkside Partners*, 577 F. Supp. 2d at 877. While Plaintiffs need

only establish the likelihood of future harm the Court does consider the fact that there is no evidence that any Plaintiff has suffered actual harm in the fourteen (14) years this case has been litigated. *See* Dkt. No. 243, at 25-26 (asserting "the **very real threat** that a potential employer will cho[o]se not to hire the person, or if hired, and upon being 'cautioned' that the person may not be around for long, place him or her in a lower, non-career, track") (emphasis added). However, Plaintiffs contend that they have suffered the immeasurable harm of "the invasion of a legally protected interest" namely "their rights to privacy." *Id.* (emphasis omitted from original). The Court declines to grant summary judgment regarding Plaintiff's claim for injunctive relief given the lack of actual harm suffered by Plaintiffs and Defendants' newly implemented policies. There exists a genuine issue of material fact as to whether injunctive relief is warranted.

### 2. Other Documents Claim

Plaintiffs argue the confiscation of other documents such as driver's licenses and Social Security cards by Defendants independent of evidentiary value deprives Plaintiffs for their liberty without due process and infringes upon their "rights to live and work in this country." Dkt. No. 243, at 32 (citing Dkt. No. 15, at 15, 18). Defendants contend that Plaintiffs have not demonstrated that there continues to exist a present threat of irreparable injury which would warrant injunctive relief as Defendants' policies have been changed. Dkt. No. 255, at 27 ("[I]t is the policy and practice of [Customs and Border Protection] and [Immigration and Customs Enforcement] not to confiscate documents such as driver's licenses or Social Security cards absent a good faith basis for believing that they constitute evidence of unlawful conduct.") (citing Dkt. No. 255, Ex. 1, 2). Defendants state that as the sole example of where agents improperly confiscated other documents of an LPR who is not a class representative and the documents were promptly returned once the error was detected injunctive relief is not warranted. *Id.* at 28. Defendants again assert that as Plaintiffs have failed to address all four elements to obtain the extreme remedy of permanent injunction, summary judgment and injunctive relief may not be granted. *Id.* Additionally, Defendants request an evidentiary hearing regarding injunctive relief. *Id.* at 29.

As discussed above, Plaintiffs have established actual success on the merits of their Other Documents claim. The Court finds that an injunction would not disserve public interest considering the importance of the right to due process concerning the confiscation of driver's licenses and social security cards. As evidenced by Defendants' newly implemented policies, the burden of the injunction would not outweigh its benefit. The remaining issue is whether there exists "a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law." *Villas at Parkside Partners*, 577 F. Supp. 2d at 877.

Plaintiffs cite four instances where other documents were confiscated, including one instance that recently happened to a non-class representative. Dkt. No. 243, at 34-36. Defendants contend that the three older examples occurred "years ago by an agency that no longer exists." Dkt. No. 255, at 27. Moreover, the Defendants assert that since then they have implemented policies which will prevent future occurrences. *Id.* Given that only one incident has occurred recently and when the error was detected it was corrected, Defendants reason that Plaintiffs have failed to demonstrate that there is a threat of irreparable injury warranting injunctive relief. *Id.*

This Court agrees with Defendants and holds that Plaintiffs have failed to establish that summary judgment is appropriate on the issue of injunctive relief. There exists a genuine issue of material fact as to whether there is a threat of irreparable injury justifying a permanent injunction.

## IV.    Conclusion

WHEREFORE, the Court **GRANTS in part** Plaintiffs' Motion for Summary Judgment, Dkt. No. 243, and **DENIES** Defendants' Cross-Motion for Summary Judgment, Dkt. No. 255.

The Court holds that:

1.    Defendants shall not issue temporary form I-551s or I-94s that indicate or imply that the holders are not LPRs or authorized for employment by including notations that the holder is on parole or involved in immigration proceedings or expiring less that six (6) months from the date it is issued.

21

2.    Defendants shall not confiscate other documents such as driver's licenses, social security cards, or other identification cards without a good faith basis for believing the documents provide evidence of unlawful conduct.

DONE at Brownsville, Texas, on April 15, 2009.

Hilda G. Tagle
United States District Judge

22